**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **C.A. NO. _____** |
| **ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, and JESSE GREENBERG,** | § § § § | |
| **Defendants.** | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff National Rifle Association of America (the "NRA") files this Original Complaint against defendants Ackerman McQueen, Inc. ("Ackerman"), Mercury Group, Inc. ("Mercury" and, together with Ackerman, "AMc"), Henry Martin ("Martin"), and Jesse Greenberg ("Greenberg"), based on personal information as to its own actions and on information and belief as to all other matters, as follows:

### I.

### PRELIMINARY STATEMENT

1.      For decades, the NRA trusted its former advertising agency and communications firm, AMc, to shape and disseminate public communications on its behalf in order to advance the interests of the NRA and its members.  During that time, the NRA believed AMc was a valued partner to the NRA and, by extension, the millions of law-abiding gun owners who depend upon the NRA for its Second Amendment advocacy.

2.     Unfortunately, the NRA has recently discovered that AMc betrayed the trust placed in the agency on numerous levels.  Not only did AMc abuse the NRA by regularly overcharging and falsifying invoices, it is now known that defendants (along with others) conspired to mislead the NRA leadership regarding the performance of its signature service – NRATV.  As a result, the NRA and AMc are now embroiled in lawsuits pending in Virginia state court.[1]  In particular, the NRA and Ackerman have each terminated their written collaboration agreement pursuant to which AMc provided services to and for the NRA.

3.     Notwithstanding the termination of the parties' written agreement, AMc continues to improperly make reference, directly and indirectly, to the NRA on Ackerman's website.  Those references are unauthorized and falsely suggest that the NRA continues to be an AMc client and endorser of AMc's services in connection with NRATV when, in fact, the NRA terminated NRATV because of its failure to achieve the objectives for which it was begun.

4.     Similarly, the Ackerman website includes references to other failed client representations – to give the false impression that all of the featured campaigns were successful. Many of these campaigns, which cost clients tens of millions of dollars, were shut down because of their ineffectiveness, costliness, and Ackerman's reluctance to provide performance data in accordance with its client obligations.

5.     Accordingly, the NRA brings this action to enjoin AMc from continuing to falsely associate itself in public as a services provider for the NRA.  In addition, the NRA brings this action to enjoin any further use of its brand or its property by defendants.  Finally, the NRA seeks

---

[1] *See National Rifle Association of America v. Ackerman McQueen, Inc. and Mercury Group. Inc*., Civil Case No. CLI9001757 (Alexandria, Va.); *National Rifle Association of America v. Ackerman McQueen, Inc. and Mercury Group. Inc*., Civil Case No. CL19002067 (Alexandria, Va.).

damages, disgorgement, and other relief to which it is entitled for AMc's continuing and improper actions.

## II.

## PARTIES

### A.    Plaintiff

6.      Plaintiff NRA is a not-for-profit corporation organized under the laws of the State of New York with its principal place of business located in Fairfax, Virginia.  The NRA is America's leading provider of gun-safety and marksmanship education for civilians and law enforcement.  It is also the foremost defender of the Second Amendment of the United States Constitution.  A 501(c)(4) tax-exempt organization, the NRA has over five million members, hundreds of thousands of donors, and many millions more who support its legendary advocacy.

### B.    Defendants

7.      Defendant Ackerman is a for-profit business corporation organized under the laws of the State of Oklahoma with its principal place of business located in Oklahoma City, Oklahoma. Ackerman is an advertising and public relations agency that counted the NRA as its largest client for more than thirty years.  Ackerman maintains a principal office in Dallas, Texas, out of which the NRA's account was serviced.  In particular, that office is located at 1717 McKinney Avenue, Suite 1800, Dallas, Texas 75202.

8.      Defendant Mercury is a for-profit business corporation organized under the laws of the State of Oklahoma with its principal place of business located in Alexandria, Virginia. Mercury is a wholly-owned subsidiary of Ackerman and specializes in public communications strategy, including on behalf of advocacy groups such as the NRA.  At all relevant times, Ackerman acted on behalf of both itself and Mercury pursuant to the "Services Agreement" (defined below) between Ackerman and the NRA.  Mercury maintains a principal office in Dallas,

Texas, from which it serviced the NRA's account.  In particular, that office is located at the same address as Ackerman's Dallas office – 1717 McKinney Avenue, Suite 1800, Dallas, Texas 75202.

9.      Defendant Martin is an individual who resides in Dallas County, Texas.  He has served as Ackerman's Chief Creative Officer since 2010.  He personally participated in the conduct which forms the basis of this suit.

10.      Defendant Greenberg is an individual who resides in Dallas County, Texas.  He has served as Ackerman's Chief Strategy Officer since June 2016.  He personally participated in the conduct which forms the basis of this suit.

### III.

### JURISDICTION AND VENUE

11.      The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367 because this is a civil action involving claims arising under the laws of the United States.

12.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

### IV.

### FACTUAL BACKGROUND

**A.      For Decades, The NRA Relied On AMc To Perform Public Affairs Services On Its Behalf.**

13.      The NRA and AMc worked together since the 1980s.  Over that time, the NRA placed significant trust and confidence in AMc to perform public relations and strategic marketing services, media planning and placement, and management of digital media and websites. Importantly, the operation of NRATV, a digital-media platform, was managed by AMc.  So closely

identified were AMc and the NRA that NRATV was frequently perceived by the public as the "voice" of the NRA.[2]

**B.      The NRA And Ackerman Enter Into, And Then Terminate, The Services Agreement.**

14.      Since at least 1999, AMc's work on behalf of the NRA was governed by successive incarnations of the Services Agreement, which specified the types of work that AMc performed for the NRA.  The NRA and Ackerman first entered into the Services Agreement effective as of May 1, 1999, and last amended the Services Agreement effective as of May 6, 2018.

15.      By letter dated June 25, 2019, the NRA terminated the Services Agreement effective "immediately."  Notably, Ackerman also purported to terminate the Services Agreement by letter dated June 27, 2019, effective "immediately."

**C.      The Services Agreement Provides That The NRA Is The Owner Of All Creative Works And Intellectual Property Previously Developed And Used By AMc.**

16.      Section VI of the Services Agreement is entitled "Ownership of Products."   In particular, it provides that "[a]ll creative works developed by AMc in fulfilling its obligations under this Services Agreement … shall be the property of the NRA."  It continues:  "All other, and further, intellectual property … created or developed by AMc in fulfilling its obligations under this Services Agreement, are NRA's sole and exclusive property, and AMc does hereby assign all right, title and interest in same to NRA …."

17.      Section VI of the Services Agreement also requires AMc to transfer and assign to the NRA the ownership of the copyright to all creative works developed by AMc for the NRA if those works are not otherwise encompassed by the Copyright Act.

---

[2] *See, e.g.*, Jeremy W. Peters & Katie Benner, *Where The N.R.A. Speaks First and Loudest*, THE NEW YORK TIMES, February 21, 2018, https://www.nytimes.com/2018/02/21/us/politics/nratv-nra-news-media-operation.html.

18.     In addition, the NRA separately owns numerous copyrights, including for "NRA" and "National Rifle Association."

**D.      Despite The Termination Of The Services Agreement, AMc Continues To Prominently Reference The NRA And NRATV On Ackerman's Website.**

19.     Despite the termination of the Services Agreement, Ackerman continues to make references, directly and indirectly, to the NRA and NRATV on its website.  Attached hereto as Exhibit A are depictions of those NRA references on Ackerman's website as of August 29, 2019.

20.     Specifically, Ackerman's website, directly and indirectly, references the NRA and NRATV, as follows:

- on the homepage, in describing who it is and what it does, Ackerman mentions its work with a "gun rights organization" and states that it "built media companies on behalf of … the Second Amendment to the Constitution;"

- on a page entitled "Our Media Evolution," the website provides a timeline of Ackerman's projects for its clients, and also contains videos and photos relating to NRATV;

- on a page entitled "Our Team," a photo appears with the caption "NRA Life of Duty;" and

- on pages entitled "Gallery" and "Clients," a total of fifteen different references to the NRA and NRATV appear, which are a greater number of references than to any other AMc client.

21.     Not only are the references on Ackerman's website to the NRA and NRATV unauthorized in light of the termination of the Services Agreement, but those references are also improper because they falsely suggest to the public that the NRA remains an AMc client and endorses the services provided by AMc.  To the contrary, the NRA is no longer an AMc client and does not endorse AMc's services.

22.     For example, Ackerman's website falsely proclaims that NRATV is the "world's most comprehensive video coverage of freedom-related news, events and culture," which creates

the misimpression that NRATV was a successful endeavor that the NRA endorses.  In actuality, the NRA recently concluded, despite years of false reporting from defendants, that NRATV was a failed endeavor under any appropriate performance metric.  In fact, on or about June 25, 2019, the NRA suspended the "live TV" programming of NRATV.

23.     Ackerman's website also prominently features photos and references to the NRA with greater frequency than any other AMc client.  That prominent display of the NRA on Ackerman's website wrongly suggests to the public that the NRA endorses the services that AMc provides and that the NRA is a current AMc client, neither of which is true.

**V.**

**CLAIMS FOR RELIEF**

**A.     Count One: False Representation Of Facts Under 15 U.S.C. § 1125(a)**

24.     The NRA incorporates the allegations in the preceding paragraphs as if fully set forth herein.

25.     By intentionally maintaining numerous references to, and images of, the NRA and NRATV on its website, Ackerman is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the NRA with AMc, or as to the NRA's approval of the services or commercial activities by AMc, in violation of 15 U.S.C. § 1125(a).

26.     AMc is involved in interstate commerce.

27.     Mercury, Martin, and Greenberg directly participated in, or are at least the moving force behind, Ackerman's website continuing to falsely suggest that the NRA remains an AMc client and endorses the services provided by AMc, including NRATV.

28.     The foregoing misconduct is without any legal justification and constitutes a knowing and willful violation of applicable law, including 15 U.S.C. § 1125(a).

29.     Such misconduct must be preliminarily and permanently enjoined, and the NRA should be awarded damages or disgorgement in an amount to be proven at trial.

30.     As a result of such misconduct, the NRA has been required to retain the undersigned counsel to prosecute the claims herein.  Pursuant to 15 U.S.C. § 1117, the NRA seeks to recover its attorneys' fees and costs incurred in this action.

**B.     Count Two:  Copyright Infringement Under 17 U.S.C. § 101 _et seq._**

31.     The NRA incorporates the allegations in the preceding paragraphs as if fully set forth herein.

32.     The NRA owns numerous copyrights, including for "NRA" and "National Rifle Association."  In addition, the NRA owns or is the assignee of the copyright to all creative works developed for the NRA by AMc pursuant to the Services Agreement.

33.     AMc's unauthorized and continued publication of the NRA's copyrighted works constitute unlawful copyright infringement.

34.     The NRA is entitled to preliminary and permanent injunctive relief requiring AMc to immediately and forever remove from Ackerman's website and return all the NRA's copyrighted works.

35.     In addition, the NRA is entitled to an award of actual damages and disgorgement of AMc's profits, or statutory damages, for AMc's infringing use and publication of the NRA's copyrighted works in an amount to be proven at trial.

36.     Pursuant to 17 U.S.C. § 505, the NRA is also entitled to recover its attorneys' fees and costs incurred in this action.

**C.     Count Three:  Conversion**

37.     The NRA incorporates the allegations in the preceding paragraphs as if fully set forth herein.

38.     The NRA is the exclusive owner of, and holds all right, title, and interest to, all creative works and intellectual property developed and used by AMc in fulfilling its obligations to the NRA under the Services Agreement.

39.     Despite the NRA's demands (see, for example, Exhibit B), AMc has refused to remove from Ackerman's website and return all such creative works and intellectual property.  As a result, AMc unlawfully and without authorization continues to exercise control over the NRA's valuable creative works and intellectual property.

40.     Defendants' unauthorized use and publication of the NRA's creative works and intellectual property constitute intentional acts causing substantial interference with the NRA's property rights, to the detriment of the NRA.

41.     The NRA is entitled to preliminary and permanent injunctive relief requiring defendants to immediately and forever remove from Ackerman's website and return the NRA's creative works and intellectual property.

42.     In addition, the NRA is entitled to an award of damages, including punitive damages, attributable to defendants' wrongful refusal to return its valuable creative works and intellectual property in an amount to be proven at trial.

## VI.

## DEMAND FOR JURY TRIAL

43.     The NRA hereby demands a trial by jury on all issues of fact to which it is entitled to a jury trial in this action.

## VII.

## PRAYER

44.     For all the foregoing reasons, the NRA requests that the Court enter judgment in its favor and award it the following relief against AMc, Martin, and Greenberg:

a.      preliminary and permanent injunctive relief prohibiting AMc, Martin, Greenberg, and each of their agents, servants and employees, and those persons in active concert or participation with any of them, from:  (1) showing any references to the NRA on Ackerman's website and in any other form of media; (2) using or displaying any logos or symbols affiliated with the NRA in connection with advertising, distribution, or display for sale of any product or service associated with AMc; (3) making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that AMc is in any manner, currently directly or indirectly, associated, affiliated, connected with, authorized or approved by the NRA; and (4) taking any action, directly or indirectly, in any form or manner whatsoever that is likely to tarnish or disparage the business reputation of the NRA;

b.      damages or disgorgement in an amount in an amount to be proven at trial;

c.      costs of court;

d.      reasonable and necessary attorneys' fees;

e.      pre-judgment and post-judgment interest at the highest lawful rate; and

f.      such other relief, at law or in equity, to which it may be justly entitled.

Dated: August 30, 2019

Respectfully submitted,

**BREWER, ATTORNEYS & COUNSELORS**

By: */s/ Michael J. Collins*
    Michael J. Collins
    State Bar No. 00785493
    mjc@brewerattorneys.com

    1717 Main Street, Suite 5900
    Dallas, Texas 75201
    Telephone: (214) 653-4000
    Facsimile:  (214) 653-1015

**ATTORNEYS FOR PLAINTIFF
NATIONAL RIFLE ASSOCIATION OF
AMERICA**

4813-2859-5874, v. 11