IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | § § § | |
| v. | § § | Case No. 3:19-cv-02074-G |
| ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, and JESSE GREENBERG | § § § § | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Ackerman McQueen, Inc., Mercury Group, Inc., Henry Martin, and Jesse Greenberg file this Brief in support of their Motion to Dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6) (doc. 9).

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................2

TABLE OF AUTHORITIES.............................................................................................3

INTRODUCTION AND SUMMARY .............................................................................4

APPLICABLE LEGAL STANDARDS ...........................................................................6

ARGUMENT AND AUTHORITIES...............................................................................8

      A.    The Complaint is conclusory and fails to state a claim against the
           Mercury Group, Mr. Martin, and/or Mr. Greenberg. ....................................8

      B.    Count One of the Complaint fails to state a claim for false
           association under Section 1125(a) of the Lanham Act. ....................................9

           i.    The NRA lacks standing because there is no allegation of an
               injury to NRA's commercial interests or injury that
               negatively impacts the NRA's ability to compete in the
               marketplace.............................................................................10

           ii.    The Complaint fails to identify anything on the website that
               is false or misleading. .............................................................13

      C.    Count Three fails to state a valid claim for conversion. ...............................16

           i.    The NRA failed to allege all of the elements of conversion.............17

           ii.    The NRA's conversion claim is preempted by the Copyright
               Act. .......................................................................................18

CONCLUSION AND PRAYER ............................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772 (5th Cir. 1999) ............................ 19

*Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699 (5th Cir. 2009) ...................... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 6, 7, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 6, 11

*Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087 (S.D. Cal. 2017) ............. 12

*Carson v. Dynegy, Inc.*, 344 F.3d 446 (5th Cir. 2003 ................................................... 19

*Daboub v. Gibbons*, 42 F.3d 285 (5th Cir. 1995) ................................................... 19, 21

*Dorsey v. Money Mack Music, Inc.*, 304 F. Supp. 2d 858 (E.D. La. 2003) .............................. 20

*GenProbe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948 (S.D. Cal. 1996) ................................... 8

*GlobeRanger Corp. v. Software AG*, 691 F.3d 702 (5th Cir. 2012) ..................................... 19, 21

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787 (5th Cir. 2011) ....................... 8, 11

*I Love Omni, LLC v. Omnitrition Int'l, Inc.*, No. 3:16-CV-2410-G, 2017 U.S. Dist. LEXIS 112818 (N.D. Tex. Jul. 20, 2017) ........................................................... 8, 11, 12

*Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713 (Tex. App.—Dallas 2014, pet denied) ........................................................................................... 17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ............. 4, 7, 11, 12

*McCormick v. AT&T Technologies*, 934 F.2d 531 (4th Cir. 1991) ........................................... 17

*Thompson v. City of Waco*, 764 F.3d 500 (5th Cir. 2014) ........................................................... 7

**Statutes**

15 U.S.C. § 1125 ........................................................................................... 10

17 U.S.C. § 102 ........................................................................................... 19

17 U.S.C. § 301 ........................................................................................... 18

17 U.S.C. § 302 ........................................................................................... 18

## INTRODUCTION AND SUMMARY

1.      The NRA has filed suit against (a) Ackerman McQueen, Inc., the advertising agency and communications firm that worked with the NRA to shape and disseminate public communication on the NRA's behalf for many years; (b) Ackerman McQueen's wholly-owned subsidiary, Mercury Group, Inc., and (c) two of Ackerman McQueen's employees, Henry Martin and Jesse Greenberg.

2.      The Complaint asserts claims for false association under 15 U.S.C. § 1125(a)(1)(A)[1] and conversion against all defendants, and for copyright infringement solely against Akerman McQueen.  All of the NRA's claims arise out alleged direct and indirect references to the NRA on Ackerman McQueen's website, which the NRA contends falsely give the impression that the NRA remains a client of Ackerman McQueen and/or endorses Ackerman McQueen's services.

3.      There are only two references in the Complaint to any act or omission by the Mercury Group, Mr. Martin, and Mr. Greenberg.  In paragraphs 9 and 10 of the Complaint, the NRA alleges that Mr. Martin and Mr. Greenberg "personally participated in the conduct which forms the basis of this suit."  And, in paragraph 27 of the Complaint, the NRA alleges that "Mercury [Group], Martin, and Greenberg directly participated in,

---

[1] The NRA refers to this claim as "false representation of facts under 15 U.S.C. § 1125(a)."  For purposes of this motion, Defendants will follow the Supreme Court's terminology in *Lexmark* and instead refer to such claim as one of "false association."  See *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014) (holding that section 1125(a) "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B).").

or are at least the moving force behind, [Ackerman McQueen's] website continuing to falsely suggest that the NRA remain an [Ackerman McQueen] client and endorses the services provided by [Ackerman McQueen], including NRATV." That's it. There is no other reference anywhere else in the Complaint to anything the Mercury Group, Mr. Martin, or Mr. Greenberg supposedly did or did not do.

4.       Although the Complaint asserts a claim for *false* association based on the content of Ackerman McQueen's website, the Complaint does not identify any false or misleading content on the website. As is discussed in more detail below, the Complaint focuses on references on the website to historic projects that Ackerman McQueen worked on for the NRA in the past. *See* Complaint at ¶¶ 3-4, 19-23. The NRA itself concedes that Ackerman McQueen and the NRA were in business together for many years, *see* Complaint at ¶13, which is all that the website states or implies. Furthermore, lest there be any doubt about the relationship between Ackerman McQueen and the NRA, the current version of Ackerman McQueen's website includes the word "legacy" in connection with references to the NRA (as well as to other legacy clients), thereby rendering the NRA's complaints moot. *See* Appendix at pp. 31-33. Thus, the website is in all respects correct, accurate, and truthful, as it will continue to be.

5.       Furthermore, although a commercial injury is required for prudential standing under the Lanham Act, the Complaint does not allege any commercial injury

proximately caused by any defendant's conduct.  In fact, the NRA makes no allegation regarding any commercial or economic injury at all.

6.      With respect to the NRA's claim for conversion, the Complaint does not allege that the Mercury Group, Mr. Martin, or Mr. Greenberg exercised dominion or control over any of the NRA's property.  Nor does it allege that the NRA made a demand on the Mercury Group, Mr. Martin, or Mr. Greenberg for the return of any property, or that the Mercury Group, Mr. Martin, or Mr. Greenberg refused to comply.  Thus, the NRA failed to allege the requisite elements of a conversion claim as it pertains to the Mercury Group, Mr. Martin, and Mr. Greenberg.

7.      Furthermore, the Complaint also demonstrates that the NRA's state law claim for conversion is preempted under the Copyright Act.  The subject matter of the claim – creative works and intellectual property developed for the NRA – is the subject matter of copyright law, and the claim involves rights of reproduction, distribution, or display.  See Complaint at ¶¶ 38, 40.  Thus, the NRA's state law claim for conversion is preempted by the Copyright Act.

## APPLICABLE LEGAL STANDARDS

8.      To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must allege enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss, a court must accept

all factual allegations in the complaint as true, but need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. To overcome a Rule 12(b)(6) motion, a complaint should plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.; *see also Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (same). A complaint is not sufficient if it merely contains "a formulaic recitation of the elements," or "naked assertions" devoid of factual enhancement. *Iqbal*, 556 U.S. at 678.

9.     Additionally, when the case involves a claim under Section 1125(a) of the Lanham Act, the plaintiff must allege facts to show that the plaintiff falls within the statutory "zone of interests" to be protected, as well as proximate cause. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014). To do so, the plaintiff must "allege an injury to a commercial interest in reputation or sales" and "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id*. at 131-33. Accordingly, to maintain a cause of action under Section 1125(a), a plaintiff must plead (and ultimately prove), an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations. "Only plaintiffs who have suffered an injury that negatively impacts their ability to compete in the marketplace have standing to sue" under the Lanham Act. *I Love Omni, LLC v. Omnitrition Int'l, Inc.*, No. 3:16-CV-2410-G,

2017 U.S. Dist. LEXIS 112818, at *16 (N.D. Tex. Jul. 20, 2017) (Fish, Senior J.) (quoting

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 797 (5th Cir. 2011)).

## ARGUMENT AND AUTHORITIES

**A.    The Complaint is conclusory and fails to state a claim against the Mercury Group, Mr. Martin, and/or Mr. Greenberg.**

10.    The Complaint is conclusory and fails to state a claim against the Mercury

Group, Mr. Martin, and Mr. Greenberg.  The Complaint is so conclusory with respect to

Mercury Group, Mr. Martin, and Mr. Greenberg that neither the Court nor these

defendants can be sure what the NRA's claims against them are, what types of acts are

being alleged as to which defendant, or how each defendant supposedly used or made a

false or misleading designation of origin or sponsorship, description of fact, or

representation of fact, or  converted the NRA's property.

11.    The Complaint merely states that these defendants "directly participated

in, or are at least the moving force behind, [Ackerman McQueen's] website . . . ."

Complaint at p. 7, ¶27.  This allegation is simply a "naked assertion" devoid of factual

enhancement that is insufficient to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.

Furthermore, it amounts to an impermissible group pleading that fails to give each of

these defendants fair notice of the claims against them.  *See GenProbe, Inc. v. Amoco Corp.,

Inc.*, 926 F. Supp. 948, 960-62 (S.D. Cal. 1996) (finding group pleading impermissible

where each count of the complaint contained multiple causes of actions against multiple

defendants and did not explain whether defendants were liable for direct trademark infringement, contributory infringement, or inducement of infringement).

12.    Which of these three defendants directly participated in the website?  Who was merely a "moving force" behind the website?  Who posted what content?  The Complaint does not say.  When and how did these defendants convert the NRA's property?  How did they refuse to return the NRA's property?  Again, the Complaint does not say.  Details regarding these defendants' conduct simply cannot be found anywhere in the NRA's Complaint.

13.    Furthermore, being the "moving force" behind a website is not the same as converting a person's property or using a false designation of origin, false or misleading description of fact, or false or misleading representation of fact.  The Complaint does not even allege that these three defendants are responsible for any specific content on Ackerman McQueen's website.

14.    In sum, the NRA has failed to allege facts sufficient to support a claim for false association or conversion against the Mercury Group, Mr. Martin, or Mr. Greenberg.  Thus, the Court should dismiss the Complaint in its entirety as it pertains to these three defendants for failure to state a claim.

**B.    Count One of the Complaint fails to state a claim for false association under Section 1125(a) of the Lanham Act.**

15.    In addition, the NRA's claim under the Lanham Act fails because the NRA failed to allege (i) that the defendants used a false designation of origin, false or

misleading description of fact, or false or misleading representation of fact that was likely

to cause confusion and (ii) a commercial injury.

16.     Although styled by the NRA as a claim for "false representation of facts

under 15 U.S.C. § 1125(a)," Count One of the Complaint asserts a claim for false

association under Section 1125(a)(1)(A) of the Lanham Act, which provides as follows:

> Any person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any . . . false designation of origin,
> false or misleading description of fact, or false or misleading representation
> of fact, which . . . is likely to cause confusion, or to cause mistake, or to
> deceive as to the affiliation, connection, or association of such person with
> another person, or as to the origin, sponsorship, or approval of his or her
> goods, services, or commercial activities by another person . . . shall be liable
> in a civil action by any person who believes that he or she is or is likely to
> be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).  Thus, to state a claim under this section, a plaintiff must allege

that the defendant used a false designation of origin, false or misleading description of

fact, or false or misleading representation of fact that was likely to cause confusion

regarding affiliation, connection, or association between the plaintiff and the defendant

or the origin, sponsorship, or approval of the defendant's products or services, and that

the plaintiff was injured thereby.  *Id.*

### i.     *The NRA lacks standing because there is no allegation of an injury to NRA's commercial interests or injury that negatively impacts the NRA's ability to compete in the marketplace.*

17.     The Complaint fails to state a claim under the Lanham Act because it does

not allege facts showing that the NRA has suffered a commercial injury proximately

caused by the defendants' actions.  Again, to establish standing under 15 U.S.C. § 1125(a),

a plaintiff "ordinarily must show economic or reputational injury flowing directly from

the deception wrought by the defendant's [conduct]; and that occurs when deception of

consumers causes them to withhold trade from the plaintiff."  *Lexmark Int'l, Inc.*, 572 U.S.

at 133.[2]  "Only plaintiffs who have suffered an injury that negatively impacts their ability

to compete in the marketplace have standing to sue" under the Lanham Act.  *I Love Omni*,

2017 U.S. Dist. LEXIS 112818, at *16; *Harold H Huggins Realty*, 634 F.3d at 797.

18.     Here, the Complaint does not allege any commercial injury.  The Complaint

merely states that Ackerman McQueen's website "is likely to cause confusion, cause

mistake, or to deceive as to the affiliation, connection, or association of the NRA with

[Ackerman McQueen] or as to the NRA's approval of the services or commercial activities

of [Ackerman McQueen]."  *See* Complaint at ¶25.  Setting aside the fact that the website

notes that the NRA is a "legacy" client, this allegation is a mere "formulaic recitation of

the elements" that the Supreme Court cautioned against in *Twombly*.  *See Twombly*, 550

U.S. at 555.  Furthermore, standing alone, it has been deemed insufficient to plead

standing for a Lanham Act claim because it does not amount to an allegation of

commercial injury.  *See, e.g., Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d

---

[2] Although *Lexmark* dealt with a claim for false advertising under section 1125(a)(1)(B), several courts have held that the same analysis applies to claims for false association under section 1125(a)(1)(A).  *See, e.g., UHS of Del., Inc. v. United Health Servs.*, 227 F. Supp. 3d 381, 403 (M.D. Pa. 2016); *Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 932 n.4 (N.D. Ill. 2016); *Lundgren v. AmeriStar Credit Sols., Inc.*, 40 F. Supp. 3d 543, 551 n.4 (W.D. Pa. 2014); *Ahmed v. Hosting.com*, 28 F. Supp. 2d 82, 90-91 (D. Mass. 2014).

1087, 1097 (S.D. Cal. 2017) (holding that allegation that defendant engaged in false advertising by falsely claiming to be associated with the Trump organization was insufficient without allegation of, at the very least, lost sales or damage to reputation).

19.     The NRA's Complaint is insufficient to state a claim because there is no allegation of any "injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentation."  *Lexmark Int'l, Inc.*, 572 U.S. 118 at 140.   There is no allegation, for example, that the alleged direct and indirect references to the NRA on Ackerman McQueen's website or any of the Mercury Group's, Mr. Martin's, and Mr. Greenberg's acts or statements, if any, actually caused any customers to stop purchasing goods or services from the NRA or otherwise withhold trade from the NRA.   Nor has the NRA shown that it "suffered an injury that negatively impacts [it]s ability to compete in the marketplace."  *I Love Omni*, 2017 U.S. Dist. LEXIS 112818, at *16.   The NRA has not alleged, for example, that the defendants did anything to cause any customers to start purchasing good and services from Ackerman McQueen instead of the NRA, which comes as no surprise since the NRA and Ackerman McQueen are not competitors.

20.     Thus, Count One of the NRA's Complaint fails to state a claim because the NRA has failed to show that it has prudential standing to sue under the Lanham Act. Consequently, Count One should be dismissed as it pertains to all defendants.

ii.   *The Complaint fails to identify anything on the website that is false or misleading.*

21.    Furthermore, the Complaint does not identify any *false* designation of origin, *false or misleading* description of fact, or *false or misleading* representation of fact on Ackerman McQueen's website.   Again, the Complaint focuses on direct and indirect references on Ackerman McQueen's website to work that Ackerman McQueen performed for the NRA in the past.   It is undisputed that Ackerman McQueen did, in fact, perform the work at issue.   Thus, there is nothing about the website that is false or misleading.

22.    As examples of false or misleading web content, the NRA cites a portion of the homepage, in which Ackerman McQueen's claims to have worked with a "gun rights organization" and "built media companies on behalf of . . . the Second Amendment to the Constitution."   Complaint at p. 6, ¶20.   Ackerman McQueen did, in fact, work with a gun rights organization, the NRA, and did, in fact, build a media company on behalf of the Second Amendment to the Constitution, including NRA News and NRATV.   For almost four decades, Ackerman McQueen served the NRA expertly, helping the gun rights organization navigate troubled political and societal waters as its principal public relations spokesman and crisis manager.   The NRA itself concedes as much in its Complaint.   *See* Complaint at p. 4, ¶13.   Thus, there is nothing false or misleading about these statements on Ackerman McQueen's website.

23.     Furthermore, contrary to the NRA's allegations, these statements on Ackerman McQueen's homepage do not falsely suggest that the NRA is a current Akerman McQueen client or that the NRA still endorses the NRA's services.  In that regard, it is helpful to consider these two snippets in context.  As the Court can see from the printout of the homepage included in the Appendix, these snippets come from a portion of Ackerman McQueen's homepage in which Ackerman McQueen explains how it has been instrumental in helping companies "own the narrative" over the years.  Appendix at pp. 4-6.  The NRA itself concedes that Ackerman McQueen helped the NRA "own the narrative" by shaping and disseminating public communications on the NRA's behalf for decades.  *See* Complaint at p. 1, ¶1.  Thus, these statements on Ackerman McQueen's homepage are factually accurate statements.

24.     The NRA also cites a timeline of Ackerman McQueen's projects for clients that supposedly appears on webpage entitled "Our Media Evolution," which the NRA notes included a reference to the launch of NRATV in 2016.[3]  There is nothing false or misleading about the timeline either, however.  All of the entries that appear in the timeline are included in the Appendix.  As the Court can see, the timeline highlights various historical projects Ackerman McQueen was involved with from 2000 to 2016.  *See*

---

[3] Contrary to the NRA's assertion on page 2 of Exhibit A to the Complaint, there is not a separate webpage on Ackerman McQueen's website entitled, "Our Media Evolution."  Instead, it is merely a heading within the homepage's story about how Ackerman McQueen has been helping companies "own the narrative" over the years.  *See* Appendix at p. 6, also available at http://www.am.com.

Appendix at pp. 7-25.  In addition to launching NRA News in 2004 and NRATV in 2016 for the NRA, the timeline highlights Ackerman McQueen's role in launching Energy News Live, the world's first real-time energy network, in 2000; large-scale marketing efforts and the development of a media entertainment show for Six Flags in 2001; the world's first online travel channel, OklaTravelNet, for Oklahoma in 2007; media response channels for Remington Arms Company in 2010; campaigns championing Oklahoma's economic benefits in 2011; the Chickasaw Video Network in 2012; and campaigns for WPX Energy in 2014; among others.  *See id*.  Plaintiff itself concedes in its Complaint that Ackerman McQueen managed the operation of NRATV since its inception.  *See* Complaint at p. 4, ¶13.  Thus, there is nothing false or misleading about the inclusion of the launch of NRATV in the timeline of historic projects that appears on Ackerman McQueen's website.

25.     As another example, the NRA cites to a page entitled "Our Team," which has a photo of an Ackerman McQueen photographer on the set of a campaign called "NRA Life of Duty," along with photos of other Ackerman McQueen photographers, illustrators, and directors on the sets of other campaigns for other clients.[4]  *See* Complaint at Exhibit A, p. 3; see also Appendix at p. 26.  The NRA also cites to a "Gallery" page with 15 references to the campaigns for NRA and NRATV among the 45 other projects for

---

[4] For ease of reference, a printout of the entire "Team" page is included in the Appendix at p. 26.  It may be accessed at https://www.am.com/our-team.

other clients referenced in the Gallery of past work.[5]  *See* Complaint at Exhibit A, pp. 3-5; *see also* Appendix at pp. 27-30.  While the NRA claims that the pages are false or misleading, there is no dispute that Ackerman McQueen did, in fact, work on such advertising campaigns for NRA over the years.  The NRA concedes as much in its Complaint.  *See* Complaint at p. 1, ¶¶2, 3; p. 4, ¶13.  Furthermore, the website indicates that the NRA and various other legacy clients are just that – "legacy" clients.  *See* Appendix at pp. 31-33.  Thus, as with the others examples cited to by the NRA, these portions of Ackerman McQueen's website are true and do not give rise to any claim of false association.

26.     In sum, the Complaint fails to state a claim because it does not allege that any of the defendants engaged in *false* association.  Whether the NRA likes it now or not, the NRA and Ackerman McQueen were associated for several decades.  Consequently, Count One should be dismissed as it pertains to all defendants.

**C.     Count Three fails to state a valid claim for conversion.**

27.     Count Three of the NRA's Complaint fails to state a claim for conversion because (i) it does not allege all of the essential elements of conversion against the Mercury Group, Mr. Martin, or Mr. Greenberg, and (ii) it demonstrates that the NRA's claim is preempted by the Copyright Act.

---

[5] For ease of reference, a printout of the entire "Gallery" page is included in the Appendix at pp. 27-30.  It may be accessed at https://www.am.com/gallery.  The Court may hover over various items in the Gallery to see which clients are denoted as "legacy" clients.

### i.      The NRA failed to allege all of the elements of conversion.

28.      Conversion is the wrongful exercise of dominion or control over the property of another in denial of, or inconsistent with, the other's rights in the property. Under Texas law, a plaintiff must prove that (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion or control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; (4) the defendant refused to return the property; and (5) the plaintiff was injured by the conversion. *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009); *Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 718 (Tex. App.—Dallas 2014, pet denied).  Under Virginia law, conversion occurs when (1) plaintiff has a right to immediate possession of property, and (2) defendant wrongfully exercises or assumes authority over the property, depriving plaintiff of possession. *McCormick v. AT&T Technologies*, 934 F.2d 531, 535 (4th Cir. 1991) (applying Virginia law).[6]  Regardless of which state's law applies, the NRA has not stated a valid claim for conversion.

29.      The NRA has not alleged that the Mercury Group, Mr. Martin, or Mr. Greenberg exercised dominion or control over the NRA's property.  Nor has the NRA

---

[6] It is unclear whether Texas or Virginia law will apply to the NRA's claims.  The Complaint alleges that the NRA's principal place of business is in Virginia, but further alleges that a substantial part of the events or omissions giving rise to the NRA's claims occurred in this District.  The NRA's claims fail regardless of which state's law applies.

alleged that it made a demand for the return of any property on the Mercury Group, Mr. Martin, or Mr. Greenberg, or that the Mercury Group, Mr. Martin, or Mr. Greenberg refused.  To the contrary, the Complaint alleges only that the NRA made a demand upon Ackerman McQueen, and that Ackerman McQueen refused.  *See* Complaint at p. 9, ¶39. Likewise, the Complaint alleges that Ackerman McQueen is continuing to exercise control over the NRA's creative works and intellectual property.  *See id*.

30.     Moreover, the Complaint fails to identify any injury the NRA has suffered as a result of any Defendant's alleged acts of conversion.  The Complaint merely states that "Defendants' unauthorized use and publication of the NRA's creative works and intellectual property constitute intentional acts causing substantial interference with the NRA's property rights, to the detriment of the NRA.  This is a mere "formulaic recitation of the elements" of the claim, which is insufficient under *Twombly*.  *See Twombly*, 550 U.S. at 555.  Thus, the NRA has not alleged all of the necessary elements of conversion under Texas or Virginia law.

### *ii.     The NRA's conversion claim is preempted by the Copyright Act.*

31.     Furthermore, the NRA's claim for conversion is preempted by the Copyright Act.  With few exceptions, all state causes of action falling within the scope of the Copyright Act are expressly preempted. *See* 17 U.S.C. § 301 ("[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by this title.").  The Fifth Circuit has interpreted

this statutory language as completely preempting the substantive field. *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012).

32.     The Copyright Act itself provides a two-part test to determine whether a state cause of action falls within its preemptive scope.  First, the work at issue must come within the subject matter of copyright, as defined by 17 U.S.C. §§ 102 and 103.  *See Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 785-86 (5th Cir. 1999).  The subject matter of copyright generally includes original works of authorship fixed in a tangible medium of expression, including literary works, musical works, dramatic works, and pictorial, graphic, and sculptural works, among others, as well as compilations and derivative works.  *See* 17 U.S.C. §§ 102, 103.

33.     Second, the right that the owner seeks to enforce must be equivalent to any of the exclusive rights within the general scope of copyright as specified by 17 U.S.C. § 106.  *See Alcatel USA*, 166 F.3d at 785-86.  Section 106 of the Copyright Act grants copyright owners the exclusive rights to reproduce, distribute, perform and display the copyrighted work.  17 U.S.C. § 106.  If the state law claim is equivalent, meaning its elements are not qualitatively different from a claim under the Copyright Act, the state law claim is preempted by the Copyright Act.  *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003).  For example, if the state law claim merely alleges copying, distribution, or display of copyrighted works, then the claim is preempted.  *See Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995) (holding state law claims regarding defendants' use of copyright materials

were preempted).   On the other hand, if there is an allegation that the defendant physically deprived the plaintiff of his property – rather than merely depriving the plaintiff of an intangible copyright – there will be no finding of equivalency and the state law claim is not preempted.  *Dorsey v. Money Mack Music, Inc.*, 304 F. Supp. 2d 858, 866 (E.D. La. 2003) (citing *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990)).

34.     Here, the subject matter of NRA's claims for conversion and for copyright infringement is the same – the creative works and intellectual property developed by Ackerman McQueen on the NRA's behalf.  *See* Complaint at p. 8, ¶32; p. 9, ¶39.  Assuming without conceding that the creative works and intellectual property fall within the subject matter of copyright, the first prong of the test is satisfied.

35.     The second prong is satisfied because the conversion claim alleged by the NRA does not involve rights qualitatively different from federal copyright law.  The NRA has not alleged that any of the defendants physically withheld any creative works or intellectual property from the NRA.  Rather, the NRA alleges that the defendants are liable for conversion based on their refusal to remove certain creative works and intellectual property from Ackerman McQueen's website.  *See* Complaint at p. 9, ¶¶ 39, 40.  Thus, the conversion claim involves rights of reproduction, distribution, or display – exclusive rights granted by Section 106 of the Copyright Act.

36.     Since both prongs of the test are satisfied, the NRA's conversion claim is preempted by the Copyright Act. *See Daboub*, 42 F.3d at 289 (holding state law claims regarding defendants' use of copyright materials were preempted); *GlobeRanger*, 691 F.3d at 709 (finding preemption because conversion of intangible property provides the same protection as the Copyright Act).

## CONCLUSION AND PRAYER

37.     The NRA's Complaint fails to state a claim against defendants.  The Complaint fails to allege what the Mercury Group, Mr. Martin, and Mr. Greenberg supposedly did or did not do.  It merely alleges that they "directly participated in, or are at least the moving force behind, [Ackerman McQueen's] website . . .," which is a mere "naked assertion" devoid of supporting facts and amounts to impermissible group pleadings.

38.     Furthermore, with respect to the NRA's claim under the Lanham Act, the Complaint fails to tie the Mercury Group, Mr. Martin, or Mr. Greenberg to anything false or misleading on the NRA's website.  Even if the NRA could sufficiently allege a link between these defendants and the content on the website (which it has not), the NRA still has not identified anything false about the website.

39.     Additionally, the NRA has not alleged that it suffered an economic or reputational injury flowing directly from the defendants' conduct.  The Complaint,

therefore, fails to allege facts supporting prudential standing to sue under the Lanham Act.

40.     With respect to the NRA's conversion claim, the Complaint fails to plead the necessary elements of the claim.  Specifically, it fails to allege that the Mercury Group, Mr. Martin, or Mr. Greenberg wrongfully deprived the NRA of any property and refused to return it to the NRA.   Moreover, the Complaint demonstrates that the NRA's conversion claim is preempted by the Copyright Act.

41.     For all these reasons, Defendants respectfully request that Counts One and Three be dismissed for failure to state a claim and that they be granted such other and further relief to which they may be justly entitled.

Dated: October 1, 2019.

Respectfully submitted,

*/s/ Brian Vanderwoude*
Jay J. Madrid, Esq.
Texas Bar No. 12802000
madrid.jay@dorsey.com

Douglas S. Lang, Esq.
Texas Bar No. 11895500
lang.doug@dorsey.com

J. Brian Vanderwoude, Esq.
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com

Christina M. Carroll, Esq.
Texas Bar No. 24092868
carroll.christina@dorsey.com

**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR DEFENDANTS ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, and JESSE GREENBERG**

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2019, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Brian Vanderwoude*
J. Brian Vanderwoude, Esq.