IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § | |
| *Plaintiff and Counter-Defendant,* | § § | |
| and | § § | |
| WAYNE LAPIERRE, | § § | |
| *Third-Party Defendant,* | § § | |
| v. | § § | Case No. 3:19-cv-02074-G |
| ACKERMAN MCQUEEN, INC., | § § | |
| *Defendant and Counter-Plaintiff,* | § § | |
| and | § § | |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG, | § § § § § | |
| *Defendants.* | § | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION
## TO DISMISS FOR FAILURE TO STATE A CLAIM

Ackerman McQueen, Inc. ("*AMc*"), Mercury Group, Inc. ("*Mercury*"), Henry Martin ("*Martin*"), William Winkler ("*Winkler*"), Melanie Montgomery ("*Montgomery*"), and Jesse Greenberg ("*Greenberg*") (collectively, "*Defendants*"), file this *Brief in Support of Motion to Dismiss for Failure to State A Claim* pursuant to Fed. R. Civ. P. 12(b)(6). *See* Docs. 18, 28.

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES.................................................................................................... iii

INTRODUCTION AND SUMMARY..................................................................................... 1

APPLICABLE LEGAL STANDARDS .................................................................................. 3

ARGUMENT AND AUTHORITIES...................................................................................... 4

      A.     Count One of the Complaint Fails to State a Claim for False Association
Under Section 1125(a) of the Lanham Act. ................................................................ 4

            i.     The NRA lacks standing because it does not allege an injury to its
commercial interests or injury that negatively impacts its ability to
compete in the marketplace.................................................................... 5

            ii.    The NRA fails to identify anything on AMc's website that is false
or misleading. .......................................................................................... 7

            iii.   The NRA fails to allege sufficient facts to support a Lanham Act
claim against Mercury or the Individual Defendants................................ 10

      B.     Count Two Fails to State a Valid Claim for Copyright Infringement. ................... 11

            i.     The NRA fails to allege registration of a copyrightable work.................... 11

            ii.    The NRA's allegations are conclusory. ......................................................... 13

      C.     Count Three Fails to State a Valid Claim for Conversion. ....................................... 14

            i.     The NRA's conversion claim is preempted by the Copyright Act. ........... 14

            ii.    The NRA failed to allege all of the elements of conversion........................ 17

      D.     Counts Four and Six Fail to State a Claim for Fraud and Conspiracy
Against Mercury. ....................................................................................................... 19

      E.     Counts Five and Seven Fail to State a Claim for Breach of Fiduciary Duty. ......... 20

PRAYER....................................................................................................................................... 22

## TABLE OF AUTHORITIES

### CASES

*Ahmed v. Hosting.com*,
    28 F. Supp. 2d 82 (D. Mass. 2014) ............................................................................... 5

*Alcatel USA, Inc. v. DGI Technologies, Inc.*,
    166 F.3d 772 (5th Cir. 1999) ............................................................................... 14, 15

*Arthur W. Tifford, PA v. Tandem Energy Corp.*,
    562 F.3d 699 (5th Cir. 2009) ............................................................................... 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 3, 10, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................... 3, 6, 18

*Bittinger v. Wells Fargo Bank NA*,
    744 F. Supp. 2d 619 (S.D. Tex. 2010) ............................................................................... 19

*Carson v. Dynegy, Inc.*,
    344 F.3d 446 (5th Cir. 2003) ............................................................................... 14

*Compliance Review Servs. v. Davis-Osuawu*,
    No. H-04-3635, 2006 U.S. Dist. LEXIS 58034 (S.D. Tex. Aug. 17, 2006) ........................................ 12

*Daboub v. Gibbons*,
    42 F.3d 285 (5th Cir. 1995) ............................................................................... 15, 16, 17

*Dorsey v. Money Mack Music, Inc.*,
    304 F. Supp. 2d 858 (E.D. La. 2003) ............................................................................... 15

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
    586 U.S. ___, 139 S. Ct. 881, 203 L. Ed. 2d 147 (2019) ............................................................ 11

*GenProbe, Inc. v. Amoco Corp., Inc.*,
    926 F. Supp. 948 (S.D. Cal. 1996) ............................................................................... 10, 13

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
    634 F.3d 787 (5th Cir. 2011) ............................................................................... 4, 5

*I Love Omni, LLC v. Omnitrition Int'l, Inc.*,
    No. 3:16-CV-2410-G, 2017 U.S. Dist. LEXIS 112818 (N.D. Tex. Jul. 20, 2017) ..................... 4, 5, 6

*Iglesia Ni Cristo v. Cayabyab*,
    No. 18-cv-00561-BLF, 2019 U.S. Dist. LEXIS 143966 (N.D. Cal. Aug. 23, 2019) ..................... 12

*Jacked Up, LLC v. Sara Lee Corp.*,
    854 F.3d 797 (5th Cir. 2017) ............................................................................... 20, 21

*Johnson v. Brewer & Pritchard, P.C.,*
    73 S.W.3d 193 (Tex. 2002)................................................................................20

*Johnson v. MBA Consulting Servs.,*
    97 Va. Cir. 176 (Cir. Ct. 2017) ......................................................................14

*Lawyers Title Co. v. J.G. Cooper Dev., Inc.,*
    424 S.W.3d 713 (Tex. App.—Dallas 2014, pet denied)................................18

*Loco Brands, LLC v. Butler Am., LLC,*
    No. 6:18-CV-69-JDK-KNM, 2019 U.S. Dist. LEXIS 90674 (E.D. Tex. Jan. 28, 2019) ....................22

*Lundgren v. AmeriStar Credit Sols., Inc.,*
    40 F. Supp. 3d 543 (W.D. Pa. 2014) ..............................................................5

*Malibu Media, LLC v. Doe,*
    No. 18-CV-10956 (JMF), 2019 U.S. Dist. LEXIS 56578 (S.D.N.Y. Apr. 2, 2019) ...........................12

*Martin v. Wendy's Int'l, Inc.,*
    183 F. Supp. 3d 925 (N.D. Ill. 2016).............................................................5

*McCormick v. AT&T Technologies,*
    934 F.2d 531 (4th Cir. 1991) .........................................................................18

*Microstrategy, Inc. v. Netsolve, Inc.,*
    368 F. Supp. 2d 533 (E.D. Va. 2005) ............................................................14

*Mullins v. TestAmerica, Inc.,*
    No. 3:02-CV-106-M, 2002 U.S. Dist. LEXIS 4877 (N.D. Tex. 2002) ..........21

*NA Ins. Servs. Holding Corp. v. HILB Grp. of Ind., LLC,*
    No. 4:17-CV-600-ALM-KPJ, 2017 U.S. Dist. LEXIS 186544 (E.D. Tex. Oct. 23, 2017)...............21

*Navigant Consulting, Inc. v. Wilkinson,*
    508 F.3d 277 (5th Cir. 2007)..........................................................................20

*Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & ERISA Litig.),*
    761 F. Supp. 2d 504 (S.D. Tex. 2011) ...........................................................19

*Page v. Microsoft Corp.,*
    No. 4:14-CV-220-O, 2014 U.S. Dist. LEXIS 161627 (N.D. Tex. Nov. 18, 2014) ...........................11

*TheEcheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.,*
    No. 16-cv-8722, 2017 U.S. Dist. LEXIS 93143, at *6 (S.D.N.Y. June 16, 2017) ...........................10

*Thompson v. City of Waco,*
    764 F.3d 500 (5th Cir. 2014)..........................................................................3

*UHS of Del., Inc. v. United Health Servs.,*
    227 F. Supp. 3d 381 (M.D. Pa. 2016) ...........................................................5

*Ultraflo Corp. v. Pelican Tank Parts, Inc.,*
    823 F. Supp. 2d 578 (S.D. Tex. 2011) ...........................................................14

*Xclusive-Lee, Inc. v. Hadid*,
    No. 19-CV-520 (PKC) (CLP), 2019 U.S. Dist. LEXIS 119868 (E.D.N.Y. July 18, 2019)................ 12

**STATUTES**

17 U.S.C. § 103 ..................................................................................................................... 15

15 U.S.C. § 1125 ..................................................................................................................... 4

17 U.S.C. § 102 ..................................................................................................................... 15

17 U.S.C. § 106 ..................................................................................................................... 15

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................................................ 22

**REGULATIONS**

37 C.F.R. §202.1 .................................................................................................................... 12

## INTRODUCTION AND SUMMARY

1.     The NRA has filed suit against (a) AMc, the advertising agency and communications firm that worked with the NRA to shape and disseminate public communication on the NRA's behalf for many years; (b) AMc's wholly-owned subsidiary, Mercury; and (c) four of AMc's employees, Martin, Winkler, Montgomery, and Greenberg (collectively, the "***Individual Defendants***").

2.     The NRA's claims arise out of alleged direct and indirect references to the NRA on AMc's website, which the NRA contends give the false impression that the NRA remains a client of AMc and/or endorses AMc's services.  The NRA further asserts that AMc and its employees provided false information to the NRA regarding its billing practices and NRATV and conspired to damage the NRA and its reputation.

3.     Based on the foregoing, the NRA's First Amended Complaint (the "***Complaint***")[1] asserts causes of action for: (1) false association under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (2) copyright infringement; (3) conversion; (4) fraud; (5) breach of fiduciary duty; (6) conspiracy; (7) breach of the fiduciary duty of loyalty; and (8) breach of contract.  With the exception of the breach of contract claim that the NRA asserts solely against AMc, the NRA alleges that all of the Defendants are liable for all causes of action.

4.     With the exception of the breach of contract claim, the NRA fails to state a claim against all or some of the Defendants.  *First*, the NRA's claim under the Lanham Act fails and

---

[1] The NRA filed its *Original Complaint* on August 30, 2019.  *See* Doc. 1.  Defendants filed a *Motion to Dismiss for Failure to State a Claim* on October 1, 2019.  Doc. 9.  The NRA filed its *First Amended Complaint* on October 25, 2019, Doc. 18, and the Court entered an order setting forth a new briefing schedule on the NRA's First Amended Complaint on November 6, 2019.  Doc. 26.

should be dismissed because it does not allege: (i) a commercial injury; (ii) that Defendants used a false designation of origin, false or misleading description of fact, or false or misleading representation of fact that was likely to cause confusion; or (iii) sufficient facts to support a false association claim against Mercury or the Individual Defendants.

5.      *Second*, the NRA's claim for copyright infringement fails and should be dismissed because (i) the NRA has not alleged the existence of a <u>registered</u> copyrightable work, as required and, (ii) in any event, the Complaint is conclusory with respect to Mercury and the Individual Defendants and does not include sufficient facts to support a copyright infringement claim against these defendants.

6.      *Third*, the NRA's claim for conversion fails and should be dismissed because the Complaint: (i) demonstrates on its face that the Copyright Act preempts the claim; and (ii) does not allege all of the essential elements of conversion against Mercury or the Individual Defendants.

7.      *Fourth*, the NRA's claims for fraud and conspiracy fail and should be dismissed, at least with respect to Mercury, because the NRA does not allege a single fact to support a fraud or conspiracy claim against Mercury.

8.      *Finally*, the NRA's claims for breach of fiduciary duty against the Individual Defendants fail and should be dismissed because the Complaint fails to allege sufficient facts to support the existence of a formal or informal fiduciary relationship between the NRA and the Individual Defendants.

## APPLICABLE LEGAL STANDARDS

9.      To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a plaintiff must allege enough facts to "state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  In ruling on a motion to dismiss, a court must accept all factual allegations in the

complaint as true, but need not accept legal conclusions couched as factual allegations.  *Iqbal*, 556

U.S. at 678.  To overcome a Rule 12(b)(6) motion, a complaint should plead "factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Id*.; *see also Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (same).  A

complaint is not sufficient if it merely contains "a formulaic recitation of the elements," or "naked

assertions" devoid of factual enhancement.  *Iqbal*, 556 U.S. at 678.

10.      Additionally, when the case involves a claim under Section 1125(a) of the Lanham

Act, the plaintiff must allege facts to show that the plaintiff falls within the statutory "zone of

interests" to be protected, as well as proximate cause.  *Lexmark Int'l, Inc. v. Static Control

Components, Inc.*, 572 U.S. 118, 129 (2014).  To do so, the plaintiff must "allege an injury to a

commercial interest in reputation or sales" and "must show economic or reputational injury

flowing directly from the deception wrought by the defendant's advertising; and that occurs

when deception of consumers causes them to withhold trade from the plaintiff."  *Id*. at 131-33.

Accordingly, to maintain a cause of action under Section 1125(a), a plaintiff must plead (and

ultimately prove) an injury to a commercial interest in sales or business reputation proximately

caused by the defendant's misrepresentations.  "Only plaintiffs who have suffered an injury that

negatively impacts their ability to compete in the marketplace have standing to sue" under the

Lanham Act. *I Love Omni, LLC v. Omnitrition Int'l, Inc.*, No. 3:16-CV-2410-G, 2017 U.S. Dist. LEXIS

112818, at *16 (N.D. Tex. Jul. 20, 2017) (Fish, Senior J.) (quoting *Harold H. Huggins Realty, Inc. v.*

*FNC, Inc.*, 634 F.3d 787, 797 (5th Cir. 2011)).

## ARGUMENT AND AUTHORITIES

**A.**     **Count One of the Complaint Fails to State a Claim for False Association Under Section 1125(a) of the Lanham Act.**

11.     The NRA's claim under the Lanham Act fails because the NRA did not allege (i) a

commercial injury; (ii) that the defendants used a false designation of origin, false or misleading

description of fact, or false or misleading representation of fact that was likely to cause confusion;

or (iii) sufficient facts to support a false association claim against Mercury or the Individual

Defendants.

12.     In Count One, the NRA asserts a claim for false association under Section

1125(a)(1)(A) of the Lanham Act, which provides as follows:

> Any person who, on or in connection with any goods or services, or any container
> for goods, uses in commerce any . . . false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which . . . is likely
> to cause confusion, or to cause mistake, or to deceive as to the affiliation,
> connection, or association of such person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services, or commercial activities by
> another person . . . shall be liable in a civil action by any person who believes that
> he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).  To state a claim under this section, a plaintiff must allege (a) that the

defendant used a false designation of origin, false or misleading description of fact, or false or

misleading representation of fact (b) that was likely to cause confusion regarding affiliation,

connection, or association between the plaintiff and the defendant or the origin, sponsorship, or

approval of the defendant's products or services, and (c) that the plaintiff was injured thereby. *Id.*

> i.   *The NRA lacks standing because it does not allege an injury to its commercial interests or injury that negatively impacts its ability to compete in the marketplace.*

13.    The NRA fails to state a claim under the Lanham Act because it does not allege facts showing that the NRA has suffered a commercial injury proximately caused by Defendants' actions.  Again, to establish standing under 15 U.S.C. § 1125(a), a plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's [conduct]; and that occurs when deception of consumers causes them to withhold trade from the plaintiff."  *Lexmark Int'l, Inc.*, 572 U.S. at 133.[2]  "Only plaintiffs who have suffered an injury that negatively impacts their ability to compete in the marketplace have standing to sue" under the Lanham Act.  *I Love Omni*, 2017 U.S. Dist. LEXIS 112818, at *16; *Harold H Huggins Realty*, 634 F.3d at 797.

14.    Here, the Complaint does not allege any commercial injury.  The NRA merely states that AMc's use of the NRA's unlicensed words, statements, and/or intellectual property was done "at the expense of the NRA's lawful right to restrict and to limit the use of its name and related intellectual property rights in a non-misleading manner, thereby diminishing their value and causing financial injury to the NRA, including lost royalties, both presently and in the future."  *See* Compl. ¶ 100.  This might amount to an allegation of an injury, but not a "commercial

---

[2] Although *Lexmark* dealt with a claim for false advertising under section 1125(a)(1)(B), several courts have held that the same analysis applies to claims for false association under section 1125(a)(1)(A).  *See, e.g., UHS of Del., Inc. v. United Health Servs.*, 227 F. Supp. 3d 381, 403 (M.D. Pa. 2016); *Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 932 n.4 (N.D. Ill. 2016); *Lundgren v. AmeriStar Credit Sols., Inc.*, 40 F. Supp. 3d 543, 551 n.4 (W.D. Pa. 2014); *Ahmed v. Hosting.com*, 28 F. Supp. 2d 82, 90-91 (D. Mass. 2014).

injury" as required under the Lanham Act.  It simply does not amount to an allegation that AMc's alleged deception of consumers has caused them to withhold trade from the NRA.

15.     The NRA further generally asserts that these alleged violations "caused and/or will likely cause the NRA to suffer reputational harm and the loss of goodwill" and that "the NRA has suffered injuries that negatively impact its ability to compete in the marketplace." *Id.* Setting aside the fact that the website notes that the NRA is a "legacy" client, not a current client, these allegations are a mere "formulaic recitation of the elements" that the Supreme Court cautioned against in *Twombly*.  *See Twombly*, 550 U.S. at 555.  Indeed, the NRA simply lifts the allegation word for word from this Court's decision in *I Love Omni*, without adding any substantive facts to support the allegation.  *See* 2017 U.S. Dist. LEXIS 112818, at *16 (noting that the plaintiff must show that it "suffered an injury that negatively impacts [it]s ability to compete in the marketplace.").  How have the Defendants' actions caused the NRA to suffer reputational harm and the loss of goodwill?  How have the Defendants' actions impacted the NRA's ability to compete in the marketplace?  The Complaint simply does not say.  These types of bare, formulaic recitations of the elements of the claim are insufficient to plead standing for a Lanham Act claim.

16.     The NRA's Complaint is insufficient to state a claim because it contains no allegation of any "injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentation." *Lexmark Int'l, Inc.*, 572 U.S. 118 at 140.  There is no allegation, for example, that any alleged direct and indirect references to the NRA on AMc's website, or any of Mercury's or the Individual Defendants' acts or statements, if any, actually caused any customers to stop purchasing goods or services from the NRA or otherwise withhold trade from the NRA.  Nor has the NRA alleged that Defendants did anything to cause any

customers to start purchasing good and services from AMc instead of the NRA, which comes as no surprise because the NRA and AMc are not competitors.

17.     The NRA simply has not alleged economic or reputational injury flowing directly from the deception wrought by the Defendant's alleged conduct because the NRA has not alleged deception of consumers that has caused them to withhold trade from the NRA.  *Id.* at 133.  Thus, Count One of the NRA's Complaint fails to state a claim, as the NRA lacks prudential standing to bring suit under the Lanham Act.  Consequently, this Court should dismiss Count One as to all Defendants.

   ii.     *The NRA fails to identify anything on AMc's website that is false or misleading.*

18.     Furthermore, the claim also fails because the NRA does not identify any *false designation of origin, false or misleading* description of fact, or *false or misleading* representation of fact on AMc's website.  Again, the NRA focuses on direct and indirect references on AMc's website to work that AMc performed for the NRA in the past.  It is undisputed that AMc did, in fact, perform the work at issue.  Thus, nothing about the website is false or misleading.

19.     As examples of false or misleading web content, the NRA cites a portion of the homepage, in which AMc's claims to have worked with a "gun rights organization" and "built media companies on behalf of . . . the Second Amendment to the Constitution."  Compl. ¶ 86.  AMc did, in fact, work with a gun rights organization (the NRA) and did, in fact, build a media company on behalf of the Second Amendment to the Constitution (including NRA News and NRATV).  For almost four decades, AMc served the NRA expertly, helping the gun rights organization navigate troubled political and societal waters as its principal public relations

spokesman and crisis manager.  The NRA itself concedes as much.  *See* Compl. ¶ 80.  Therefore, these statements on AMc's websites are neither false nor misleading.

20.    Furthermore, contrary to the NRA's allegations, the statements on AMc's homepage do not falsely suggest that the NRA is a current AMc client or that the NRA still endorses AMc's services.  In that regard, it is helpful to consider these two excerpts in context. As the Court can see from the printout of the homepage included in the Appendix, AMc explains how it has been instrumental in helping companies "own the narrative" over the years.  Appx. at 4-6.  The NRA itself concedes that AMc helped the NRA "own the narrative" by shaping and disseminating public communications on the NRA's behalf for decades.  *See* Compl. ¶20.  Thus, the statements on AMc's homepage are factually accurate.

21.    The NRA also cites a timeline of AMc's projects for clients that supposedly appears on the webpage entitled "Our Media Evolution," which the NRA notes included a reference to the launch of NRATV in 2016.[3]  However, there is nothing false or misleading about the timeline either.  All of the entries that appear in the timeline (included in the Appendix), which highlights various historical projects with which AMc was involved from 2000 to 2016.  *See* Appx. at 7-25. In addition to launching NRA News in 2004 and NRATV in 2016 for the NRA, the timeline highlights AMc's role in launching Energy News Live, the world's first real-time energy network, in 2000; large-scale marketing efforts and the development of a media entertainment show for Six Flags in 2001; the world's first online travel channel, OklaTravelNet, for Oklahoma in 2007; media

---

[3] Contrary to the NRA's assertion on page 2 of Exhibit A to the Complaint, AMc's website does not contain a separate webpage entitled "Our Media Evolution."  Instead, it is merely a heading within the homepage's story about how AMc has been helping companies "own the narrative" over the years.  *See* Appx. at 6, also available at http://www.am.com.

response channels for Remington Arms Company in 2010; campaigns championing Oklahoma's economic benefits in 2011; the Chickasaw Video Network in 2012; and campaigns for WPX Energy in 2014; among others.  *See id*.  Plaintiff concedes that AMc managed the operation of NRATV since its inception.  *See* Compl. ¶ 27.  Including on AMc's website the launch of NRATV in the timeline of historic projects is neither false nor misleading.

22.     As another example, the NRA cites to a page entitled "Our Team," which has an image of an AMc photographer on the set of a campaign called "NRA Life of Duty," along with images of other AMc photographers, illustrators, and directors on the sets of other campaigns for other clients.[4]  *See* Compl., Ex. A at 3; *see also* Appx. at 26.  The NRA also cites to a "Gallery" page with 15 references to the campaigns for NRA and NRATV among the 45 other projects for other clients referenced in the Gallery of past work.[5]  *See* Compl., Ex. A at 3-5; *see also* Appx. at 27-30.  While the NRA claims that the pages are false or misleading, there is no dispute that AMc did, in fact, work on such advertising campaigns for NRA over the years.  The NRA concedes as much.  *See* Compl. at 2, ¶¶ 23, 80.  Furthermore, the website indicates that the NRA and various other legacy clients are just that – "legacy" clients.  *See* Appx. at 31-33.  Thus, as with the others examples cited by the NRA, these portions of AMc's website are true and do not give rise to any claim of false association.

---

[4] For ease of reference, a printout of the entire "Team" page is included in the Appendix at p. 26.  It may be accessed at https://www.am.com/our-team.

[5] For ease of reference, a printout of the entire "Gallery" page is included in the Appendix at pp. 27-30.  It may be accessed at https://www.am.com/gallery.  The Court may hover over various items in the Gallery to see which clients are denoted as "legacy" clients.

23.     In sum, the NRA fails to state a claim because it does not allege that any of Defendant engaged in *false* association.  This is yet another reason why this Court should dismiss Count One as to all Defendants.

     *iii.     The NRA fails to allege sufficient facts to support a Lanham Act claim against Mercury or the Individual Defendants.*

24.     Additionally or alternatively, the Court should dismiss Count One as to Mercury and the Individual Defendant because the Complaint is conclusory and lacks sufficient facts to support a Lanham Act claim against Mercury and the Individual Defendants.  The NRA states that Count One is against "all defendants" and then repeatedly makes conclusory allegations of "defendants'" wrongdoing.  Compl. ¶¶ 94-102.  Such a "naked assertion" devoid of factual enhancement is insufficient to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.  It amounts to an impermissible group pleading that fails to give each of these Defendants fair notice of the claims against them.  *See TheEcheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.*, No. 16-cv-8722, 2017 U.S. Dist. LEXIS 93143, at *6 (S.D.N.Y. June 16, 2017) (dismissing Lanham Act claims against individual defendants based on impermissible group pleading); *GenProbe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 960-62 (S.D. Cal. 1996) (finding group pleading impermissible where each count of the complaint contained multiple causes of actions against multiple defendants and did not explain whether defendants were liable for direct trademark infringement, contributory infringement, or inducement of infringement).

25.     The only allegations against Mercury relate to the NRA's breach of contract claim. Compl. ¶¶ 169, 170, 178.  Moreover, none of the allegations against Winkler and Montgomery mention anything relating to the NRA's Lanham Act claim, let alone the required elements that

they used a false designation of origin, false or misleading description of fact, or false or misleading representation of fact that was likely to cause confusion regarding affiliation, connection, or association between them and the NRA or the origin, sponsorship, or approval of the NRA's products or services. Compl. ¶¶ 29, 35-37, 44, 53, 71-72, 121, 123, 128, 135, 137, 149. Similarly, none of the NRA's allegations against Winkler or Montgomery suggests that the NRA was injured by any such unpleaded false designation of origin, false or misleading description of fact, or false or misleading representation of fact. *Id*. Although the NRA attempts to allege that Martin and Greenberg were somehow involved with the NRA's intellectual property, it does not allege that they had any responsibility for posting (or removing) the alleged misleading content on AMc's website. Compl. ¶ 93. Because the NRA has failed to allege sufficient facts to supports its Lanham Act claim against Mercury and the Individual Defendants, the Court should dismiss Count One as to those Defendants.

**B.      Count Two Fails to State a Valid Claim for Copyright Infringement.**

26.      Count Two should be dismissed because it fails to state a valid claim for copyright infringement. First, the Complaint fails to allege existence of a registered copyright. Second, the Complaint is conclusory with respect to the manner in Defendants infringed any such materials.

*i.      The NRA fails to allege registration of a copyrightable work.*

27.      To make a prima facie case of copyright infringement, "a plaintiff must establish ownership of copyright material and establish that the defendant copied that material." *Page v. Microsoft Corp.*, No. 4:14-CV-220-O, 2014 U.S. Dist. LEXIS 161627, at *11-12 (N.D. Tex. Nov. 18, 2014). Furthermore, the Supreme Court recently confirmed in *Fourth Estate* that a copyright owner may not file an infringement suit until the Register of Copyrights has acted on the owner's

application to register the copyright in the work. *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. ___, 139 S. Ct. 881, 892, 203 L. Ed. 2d 147 (2019). Following *Fourth Estate*, courts have held that a plaintiff must allege that registration or preregistration has been made prior to the filing of an action for infringement in order to state a valid claim. *See, e.g., Iglesia Ni Cristo v. Cayabyab*, No. 18-cv-00561-BLF, 2019 U.S. Dist. LEXIS 143966, at *38 (N.D. Cal. Aug. 23, 2019); *Xclusive-Lee, Inc. v. Hadid*, No. 19-CV-520 (PKC) (CLP), 2019 U.S. Dist. LEXIS 119868, at *5 (E.D.N.Y. July 18, 2019); *Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 U.S. Dist. LEXIS 56578, at *2 (S.D.N.Y. Apr. 2, 2019).

28.     Here, the NRA merely alleges that it "separately <u>owns</u> numerous copyrights, including for 'NRA' and 'National Rifle Association'"[6] and "<u>owns</u> or is the assignee of the copyright to all creative works developed for the NRA by AMc . . . ." Compl. ¶¶ 82, 104 (emphasis added). Ownership is irrelevant; a plaintiff must allege registration of a copyrightable work prior to filing suit for infringement, which the NRA failed to do. *See Fourth Estate*, 139 S. Ct. at 887 (noting that "although an owner's rights exist apart from registration . . . registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights."). Indeed, the word "register" appears nowhere in the Complaint, and the NRA did not attach any certificates of registration as exhibits. This alone is fatal to the NRA's claim under the Copyright Act.

---

[6] Contrary to the NRA's allegations, "[w]ords and short phrases such as names" are expressly <u>not</u> subject to copyright registration. 37 C.F.R. §202.1; *Compliance Review Servs. v. Davis-Osuawu*, No. H-04-3635, 2006 U.S. Dist. LEXIS 58034, at *11-12 (S.D. Tex. Aug. 17, 2006) ("A name, however, is not a work of authorship subject to copyright protection within the meaning of 17 U.S.C. § 102, nor does it constitute a compilation or derivative work also afforded copyright protection."). Thus, the only two items specifically identified in the Amended Complaint are not even copyrightable.

ii.    *The NRA's allegations are conclusory.*

29.    Furthermore, the NRA's claim for copyright infringement, at least with respect to Mercury and the Individual Defendants, is doomed because the NRA's allegations against these defendants are too conclusory.  As with Count One (Lanham Act), the NRA alleges that Count Two is against "all defendants" and then repeatedly makes conclusory allegations of "defendants'" wrongdoing.  Compl. ¶¶ 103-109.  But, as before, this "naked assertion" is devoid of factual enhancement and is insufficient to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.  Furthermore, it amounts to an impermissible group pleading that fails to give each of these defendants fair notice of the claims against them.  *See GenProbe, Inc.*, 926 F. Supp. at 960-62 (group pleading impermissible).

30.    As stated earlier, the only allegations against Mercury relate to the NRA's breach of contract claim.  Compl. ¶¶ 169, 170, 178.  Moreover, none of the allegations against Winkler and Montgomery mentions anything relating to the NRA's copyright infringement claim, including that they copied any of the NRA's alleged copyrighted material.  Compl. ¶¶ 29, 35-37, 44, 53, 71-72, 121, 123, 128, 135, 137, 149.  Although the NRA attempts to allege that Martin and Greenberg were somehow involved with the NRA's intellectual property by virtue of their alleged involvement with the *NRATV website and digital platform*, the NRA wholly fails to allege that they had any responsibility for posting (or removing) the alleged copyrighted material *on AMc's website*.  Compl. ¶¶ 7, 8, 84-93.  At most, the NRA simply lumps Mercury and the Individual Defendants together as part of the "moving force" behind AMc's website, without even alleging that any of them are responsible for any specific content on the website.  Compl. At ¶¶ 97, 105.  Because the NRA does not allege sufficient facts to supports its copyright

infringement claim against Mercury and the Individual Defendants, the Court should dismiss Count Two as it pertains to these defendants.

**C.  Count Three Fails to State a Valid Claim for Conversion.**

31.     Count Three fails to state a claim for relief because the Complaint (i) demonstrates that the Copyright Act preempts the conversion claim; and (ii) does not allege all of the essential elements of conversion against Mercury or the Individual Defendants.

*i.      The NRA's conversion claim is preempted by the Copyright Act.*

32.     The Complaint fails to state a claim for conversion because it shows on its face that the Copyright Act completely preempts the NRA's claim.  With few exceptions, all state causes of action falling within the scope of the Copyright Act are expressly preempted.  *See* 17 U.S.C. § 301 ("[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by this title.").  The Fifth Circuit has interpreted this statutory language as preempting the substantive field, including claims for conversion.  *See GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012) ("'to the extent [Plaintiff] allege[d] conversion of intangible 'confidential information' and 'certain trade secrets,'" it is preempted under *GlobeRanger I, Alcatel* and several other cases in which this circuit has held conversion of intangible property preempted."); *see also Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003); *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 823 F. Supp. 2d 578, 587-88 (S.D. Tex. 2011).[7]

---

[7] It is unclear whether Texas or Virginia law will apply to the NRA's claims.  The NRA alleges that its principal place of business is in Virginia, but further alleges that the events or omissions giving rise to its claims occurred in this District.  Regardless, Virginia courts have also held that intangible property cannot form the basis of a conversion claim, and any such claim is preempted by the Copyright Act.  *See, e.g., Johnson v. MBA Consulting Servs.*, 97 Va. Cir. 176, 179 (Cir. Ct. 2017); *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 537 (E.D. Va. 2005) ("Since Plaintiff alleges only the retention of intangible property, that is, software, the conversion claim is preempted by the Copyright Act.").

33.     The Copyright Act itself provides a two-part test to determine whether a state cause of action falls within its preemptive scope.  *First*, the work at issue must come within the subject matter of copyright, as defined by 17 U.S.C. §§ 102 and 103.  *See Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 785-86 (5th Cir. 1999).  The subject matter of copyright generally includes original works of authorship fixed in a tangible medium of expression, including literary works, musical works, dramatic works, and pictorial, graphic, and sculptural works, among others, as well as compilations and derivative works.  *See* 17 U.S.C. §§ 102, 103.

34.     *Second*, the right that the owner seeks to enforce must be equivalent to any of the exclusive rights within the general scope of copyright as specified by 17 U.S.C. § 106.  *See Alcatel USA*, 166 F.3d at 785-86.  Section 106 of the Copyright Act grants copyright owners the exclusive rights to reproduce, distribute, perform, and display the copyrighted work.  17 U.S.C. § 106.  If the state law claim is equivalent, meaning its elements are not qualitatively different from a claim under the Copyright Act, then the Copyright Act preempts the state law claim.  *Carson*, 344 F.3d at 456.  For example, if the state law claim merely alleges copying, distribution, or display of copyrighted works, then the claim is preempted.  *See Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995) (holding state law claims regarding defendants' use of copyright materials were preempted).  On the other hand, if the plaintiff alleges that the defendant physically deprived the plaintiff of his property – rather than merely depriving the plaintiff of an intangible copyright – there is no equivalency and the state law claim is not preempted.  *Dorsey v. Money Mack Music, Inc.*, 304 F. Supp. 2d 858, 866 (E.D. La. 2003) (citing *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990)).

35.     Here, the Court should dismiss the NRA's claim for conversion for two independently sufficient reasons.  *First*, the NRA repeatedly alleges that Defendants have converted its "creative works and intellectual property" and that it "seeks the ***total value of the intellectual property*** 'converted', property that will never return."  *See* Compl. ¶¶ 112, 113, 115, 116 (emphasis added).  This statement alone confirms that the NRA's conversion claim relates solely to intangible intellectual property.  In Exhibit B, the demand letter upon which the NRA seeks to rely as its demand for the return of the allegedly converted property, the NRA repeatedly refers to the use of the NRA's intellectual property.  *See* Compl., Ex. B.  Nowhere in the Complaint does the NRA allege, or even reference, the conversion of any tangible property. Thus, the NRA's conversion claim is predicated solely on intangible property, which means it is preempted "under *GlobeRanger I, Alcatel* and several other cases in which this circuit has held conversion of intangible property preempted."  *GlobeRanger*, 691 F.3d at 706.

36.     *Second*, in addition, the NRA's allegations show that the claim is preempted under the Copyright Act's preemption test.  The first prong is satisfied because the subject matter of NRA's claims for conversion and for copyright infringement is the same – the creative works and intellectual property developed by AMc on the NRA's behalf.  *See* Compl. ¶¶ 112, 113, 115. Assuming without conceding that the creative works and intellectual property fall within the subject matter of copyright, the NRA's claims satisfy the first prong of the preemption test.

37.     The second prong is satisfied because the conversion claim does not involve rights qualitatively different from federal copyright law.  The NRA has not alleged that any Defendants physically withheld any creative works or intellectual property from the NRA.  Rather, it alleges that Defendants are liable for conversion based on their refusal to remove certain creative works

and intellectual property from AMc's website.  *See* Compl. ¶¶ 114, 118.  Thus, the conversion

claim involves rights of reproduction, distribution, or display – exclusive rights granted by

Section 106 of the Copyright Act.  Therefore, the NRA's Complaint demonstrates on its face that

the Copyright Act preempts its conversion claim.  *See Daboub*, 42 F.3d at 289 (holding state law

claims regarding defendants' use of copyright materials were preempted); *GlobeRanger*, 691 F.3d

at 709 (finding preemption because conversion of intangible property provides the same

protection as the Copyright Act).

38.     In an attempt avoid preemption, the NRA attempts to draw a distinction between

the relief sought in connection with its copyright infringement and conversion claims.  Compl. at

¶¶ 116-118.  But this type of attempt to split hairs has already been deemed insufficient by the

Fifth Circuit:

> Nightcaps' argument is like a ventriloquist's attempt to present a copyright action
> in the voice of state law claims.  However, if the language of the act could be so
> easily circumvented, the preemption provision would be useless, and the policies
> behind a uniform Copyright statute would be silenced.

*Daboub*, 42 F.3d at 290 (5th Cir. 1995) (state law claims including conversion, misappropriation,

plagiarism, violation of the Texas Free Enterprise and Antitrust Act of 1983, disparagement, and

defamation were all preempted because they all involved the alleged wrongful copying,

distribution, and performance or a copyrighted work).  Thus, this Court should dismiss the

NRA's conversion claim (Count Three) in its entirety based on federal preemption.

> ***ii.*** ***The NRA failed to allege all of the elements of conversion.***

39.     Furthermore, even if the claim is not preempted, it should still be dismissed

because the NRA has not alleged the essential elements of conversion as to these four defendants.

Conversion is the wrongful exercise of dominion or control over the property of another in denial

of, or inconsistent with, the other's rights in the property.  Under Texas law, a plaintiff must prove

that (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the

defendant unlawfully and without authorization assumed and exercised dominion or control

over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3)

the plaintiff demanded return of the property; (4) the defendant refused to return the property;

and (5) the plaintiff was injured by the conversion.  *Arthur W. Tifford, PA v. Tandem Energy Corp.*,

562 F.3d 699, 705 (5th Cir. 2009); *Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 718 (Tex.

App.—Dallas 2014, pet denied).  Under Virginia law, conversion occurs when (1) plaintiff has a

right to immediate possession of property and (2) defendant wrongfully exercises or assumes

authority over the property, depriving plaintiff of possession.  *McCormick v. AT&T Technologies*,

934 F.2d 531, 535 (4th Cir. 1991) (applying Virginia law).[8]  Regardless of which state's law applies,

the NRA has not stated a valid claim for conversion.

40.     First, the NRA does not allege that it made a demand for the return of any property

on Martin, Greenberg, Winkler, or Montgomery.   To the contrary, the NRA refers to its

"demands" and then cites to Exhibit B, which is a demand made upon AMc and Mercury, not

Martin, Greenberg, Winkler, or Montgomery.  *See* Compl. ¶ 113.

41.     Second, the NRA does not identify any injury it has suffered as a result of any

Defendants' alleged acts of conversion. The NRA merely states that "Defendants' unauthorized

use and publication of the NRA's creative works and intellectual property constitute intentional

acts causing substantial interference, if not outright destruction, of the NRA's valuable property

---

[8] Again, it is unclear whether Texas or Virginia law will apply to the NRA's claims since the NRA alleges that its principal place of business is in Virginia, but further alleges that a substantial part of the events or omissions giving rise to the NRA's claims occurred in this District.

rights, to the detriment and harm of the NRA."  Compl. ¶ 114.  This mere "formulaic recitation

of the elements" of the claim is insufficient under *Twombly*.  *See Twombly*, 550 U.S. at 555.  Thus,

the NRA has not alleged all of the necessary elements of conversion under Texas or Virginia law.

**D.  Counts Four and Six Fail to State a Claim for Fraud and Conspiracy Against Mercury.**

42.  The Court should dismiss Counts Four and Six against Mercury because the NRA

fails to allege sufficient facts to support a fraud or conspiracy claim against Mercury.

43.  To support a claim for fraud, the NRA must allege: (1) a material

misrepresentation was made; (2) the representation was false; (3) when the representation was

made, the speaker knew it was false or made it recklessly without any knowledge of the truth

and as a positive assertion; (4) the speaker made the representation with the intent that the other

party should act upon it; (5) the party acted in reliance on the representation; and (6) the party

thereby suffered injury.  *Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619, 629 (S.D. Tex. 2010).

Fraud claims are subject to heightened pleading requirements, which require the plaintiff to plead

with particularity by identifying the speaker, stating when and where the statements were made,

and explaining why they were fraudulent.  *Id.*; *see* Fed. R. Civ. P. 9(b).

44.  Claims of conspiracy to commit fraud are also subject to the heightened Rule 9(b)

pleading requirements.  *Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & ERISA Litig.)*,

761 F. Supp. 2d 504, 518 (S.D. Tex. 2011).  If a plaintiff fails to state a claim for fraud underlying

its conspiracy claim, then the conspiracy claim must also be dismissed.  *Id.*

45.  The NRA states that its fraud cause of action is against all Defendants, but not a

single allegation in the Complaint against Mercury relates to any of the requisite fraud elements,

much less satisfies the heightened federal pleading requirements.  Compl. ¶¶ 119-142.  The closest

the NRA gets is alleging that "Mercury engaged in all the wrongful conduct detailed in this amended complaint." Compl. ¶4.

46.     Given the conclusory and almost nonexistent allegations of fraud with regard to Mercury, the NRA's fraud cause of action should be dismissed as it relates to Mercury.  And, because the NRA fails to allege sufficient facts to support a fraud claim against Mercury, its conspiracy claim against Mercury, which is predicated on fraud, crumbles like a house of cards. Consequently, Counts Four and Six should be dismissed as they pertain to Mercury.

**E.      Counts Five and Seven Fail to State a Claim for Breach of Fiduciary Duty.**

47.     In Counts Five and Seven, the NRA asserts a breach of fiduciary duty claim against all Defendants.  To establish a claim for breach of fiduciary duty, the plaintiff must show: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant breached his fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant.  *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (citing *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)).

48.     Fiduciary relationships may arise in formal or informal relationships.  *Jacked Up, LLC v. Sara Lee Corp.*, 854 F.3d 797, 808 (5th Cir. 2017).  Formal fiduciary relationships creating fiduciary duties include the duty owed by an attorney to its client, the duty owed by a trustee to the beneficiaries of a trust, or the duties owed by an executor to the beneficiaries of an estate. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002).  Informal relationships "may arise where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one." *Jacked Up,* 854 F.3d at 808 (citing *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, no pet.)).

49.     Texas law does not recognize informal fiduciary relationships lightly.  *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005).  In fact, to establish an informal fiduciary relationship in a business transaction, the plaintiff must show that a "special relationship of trust and confidence existed prior to, and apart from, the agreement made the basis of the suit."  *Jacked Up*, 854 F.3d at 809 (citing *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998)).

50.     Here, the NRA fails to allege facts against the Individual Defendants to form a formal or informal fiduciary relationship.  The NRA claims that it "reposed extensive trust and confidence in, and relief upon, *AMc*," and that, as a result, "*Defendants*, therefore, owed fiduciary duties to put the NRA's interests first when rendering services to the NRA."  Compl. ¶¶ 144, 158 (emphasis added).  It further contends that, based upon the Services Agreement, "*AMc* was entrusted with sensitive confidential information pertaining to the NRA," Compl. ¶¶ 145, 159, and that "[g]iven their high-ranking positions at AMc and the importance of the NRA as its biggest client, Defendants were aware of the Services Agreement and understood the substance of its provisions and, therefore, served as agents and fiduciaries," Compl. ¶¶ 146, 160.

51.     The alleged fiduciary relationship that the NRA is attempting to create relates to a business transaction surrounding the Services Agreement.  Therefore, the NRA must demonstrate that it had a special relationship of trust and confidence with the Individual Defendants that existed prior to, and apart from, the Services Agreement.  *See Jacked Up*, 854 F.3d at 809. There is no such allegation anywhere in the Complaint.  Instead, the NRA alleges the opposite—that the basis for the Individual Defendants' fiduciary relationship with the NRA is solely a direct result of, and relates to, the Services Agreement between AMc and the NRA.  *See* Compl. ¶¶ 146, 160.

52.     This requires dismissal of the NRA's breach of fiduciary claims.  *See Mullins v. TestAmerica, Inc.*, No. 3:02-CV-106-M, 2002 U.S. Dist. LEXIS 4877, at *9 (N.D. Tex. Mar. 25, 2002) (granting defendant's motion to dismiss after plaintiff failed to allege defendant stood in a relationship of confidence to plaintiff prior to the execution of the contracts); *see also NA Ins. Servs. Holding Corp. v. HILB Grp. of Ind., LLC*, No. 4:17-CV-600-ALM-KPJ, 2017 U.S. Dist. LEXIS 186544, at *3 (E.D. Tex. Oct. 23, 2017) (dismissing a claim for breach of fiduciary duty where the plaintiff failed to allege facts that "indicate[d] that a prior fiduciary relationship had previously arisen between" the parties).  The allegation that the Individual Defendants may have known about the Services Agreement and/or been provided the NRA's confidential information fares no better. *See Loco Brands, LLC v. Butler Am., LLC*, No. 6:18-CV-69-JDK-KNM, 2019 U.S. Dist. LEXIS 90674, at *36-37 (E.D. Tex. Jan. 28, 2019) (dismissing plaintiff's breach of fiduciary claim after plaintiff contended that it had an informal fiduciary relationship with the defendant because it was provided plaintiff's confidential information and knew it was not to be shared).  Accordingly, the Court should dismiss Counts Five and Seven against the Individual Defendants.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request and pray that the Court grant them the following relief:

a.      dismiss Count One (Lanham Act) and Count Three (conversion) in their entirety against all Defendants;

b.      dismiss Count Two (copyright infringement), Count Five (breach of fiduciary duty), and Count Seven (breach of fiduciary duty of loyalty) in their entirety against Mercury and the Individual Defendants;

c.      dismiss Count Four (fraud) and Count Six (conspiracy) against Mercury; and

d.      grant Defendants any and all such other and further relief at law or in equity to which the Court finds them justly entitled.

Dated: November 15, 2019.

Respectfully submitted,

/s/ Brian Vanderwoude

**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR DEFENDANTS ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, JESSE GREENBERG, WILLIAM WINKLER, AND MELANIE MONTGOMERY**

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2019, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Brian Vanderwoude*
J. Brian Vanderwoude, Esq.