# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § | |
| Plaintiff and Counter-Defendant, | § § | |
| and | § § | |
| WAYNE LAPIERRE, | § § | |
| Third-Party Defendant, | § § | |
| v. | § § | Civil Action No. 3:19-cv-02074-G |
| ACKERMAN MCQUEEN, INC., | § § | |
| Defendant and Counter-Plaintiff, | § § | |
| and | § § | |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG, | § § § § § | |
| Defendants. | § § | |

## 28 U.S.C. § 1746 DECLARATION OF WILLIAM WINKLER
## IN SUPPORT OF DJ INVESTMENTS, LLC'S MOTION TO QUASH SUBPOENA

I am over the age of 18 and am competent to testify to the facts in this declaration. I make this declaration based upon personal knowledge and, if sworn as a witness, could and would testify competently to the facts set forth below:

1. I am the manager of DJ Investments, LLC.

2. DJ Investments was formed in 2015 and is projected to be formally dissolved by the end of 2019.

3.      DJ Investments was formed for the purpose of acquiring and managing real estate. The only property DJ Investments ever acquired or managed was a property on Amherst Avenue in Dallas, Texas (the "Amherst Property"). DJ Investments acquired the Amherst Property in 2015 and sold it in 2019. That investment property was not related to WBB Investments, LLC or the NRA.

4.      The only financial transactions of DJ Investments are those related to the purchase, maintenance, and sale of the Amherst Property.

5.      In 2018, the NRA decided to purchase a home for Mr. LaPierre and his wife to alleviate alleged safety concerns. Mr. LaPierre allegedly wanted the NRA's ownership of and his residence in the home to be anonymous. For that reason, the NRA decided to establish WBB Investments.

6.      The NRA owned a 99% interest in WBB Investments and DJ Investments held the remaining 1% interest. The NRA intended to have WBB Investments purchase and hold the real estate and assign management of the real estate to DJ Investments.

7.      In May 2018 the NRA transferred funds to WBB Investments to allow WBB Investments to initiate the real estate transaction. But it became apparent to DJ Investments that Mr. LaPierre was more interested in purchasing a lavish home for himself than he was in maintaining his anonymity, so DJ Investments declined to participate in the transaction.

8.      Within approximately two weeks of receiving the initial transfer of funds from the NRA, WBB Investments returned those funds to the NRA.

9.      The real estate transaction was never consummated, and DJ Investments has had no role in acquiring or managing any property for WBB Investments, the NRA, or Mr. LaPierre.

10. Prior to serving the subpoena on DJ Investments, the NRA removed DJ Investments from WBB Investments, and the NRA now solely controls WBB Investments.

11. None of the claims or defenses asserted in this case are related to the documents requested in the NRA's subpoena.

12. Gathering responsive documents would require DJ Investments to compile all documents related to all financial transactions, the purchase, acquisition, or disposition of any real or personal property or other asset, and all financial statements and tax returns going back to the formation of DJ Investments in 2015 or January 1, 2016, depending on the request. It would further require DJ Investments to search for all documents related to any communications, at any time, between any person employed by or acting on behalf of DJ Investments and any person employed by or acting on behalf of the NRA, even though DJ Investments had no communications with the NRA related to the claims or defenses alleged in this case. It would further require DJ Investments to produce to the NRA documents that are already in the NRA's possession, custody, or control, including any communications with the NRA and documents related to the formation of WBB Investments. It would further require DJ Investments to locate all documents related to meetings and communications related to WBB Investments, including documents protected by the attorney-client privilege. Additionally, it would require DJ Investments to locate and produce documents concerning its corporate structure, bylaws, investors, members, affiliated entities, executives, employees, directors, managers, and agents. None of this information is relevant to the claims or defenses asserted in this case.

13. DJ Investments' sole remaining asset is a cash reserve necessary for winding up the business and filing its 2019 taxes. DJ Investments has done no business since selling the

Amherst Property. Therefore, any expenditure of money or time required to respond to the subpoena would impose an enormous burden on DJ Investments.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on  /2-3-/9   _____
William Winkler