**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| **Plaintiff and Counter-Defendant** | § § | |
| **And** | § § | |
| **WAYNE LAPIERRE,** | § | |
| **Third-Party Defendant,** | § § | |
| | § | **Civil Action No. 3:19-cv-02074-G** |
| **v.** | § § | |
| **ACKERMAN MCQUEEN, INC.,** | § § | |
| **Defendant and Counter-Plaintiff,** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG,** | § § § § § | |
| **Defendants.** | § § | |

**PLAINTIFF NATIONAL RIFLE ASSOCIATION OF AMERICA'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

**BREWER, ATTORNEYS & COUNSELORS**

Michael J. Collins, Esq.
State Bar No. 00785493
mjc@brewerattorneys.com
Jason C. McKenney, Esq.
State Bar No. 24070245
jcm@brewerattorneys.com
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR PLAINTIFF COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ...........................................................................................1

II. APPLICABLE LEGAL STANDARDS.............................................................................1

III. FACTUAL BACKGROUND............................................................................................2

IV. ARGUMENT......................................................................................................................3

    A.    The NRA Has Stated A Claim For False Association Under The Lanham Act.............................................................................................................................3

        1.    The *Lexmark* decision demonstrates that the NRA is not bound to meet the zone-of-interests standard for false-advertising claims, as proposed by Defendants................................................................................4

        2.    The NRA's alleged injuries are subject to the Lanham Act. .......................6

        3.    The FAC sufficiently alleges proximate causation.....................................9

        4.    The NRA more than sufficiently alleges a likelihood of confusion based on Defendants' unlawful conduct. ..................................................11

    B.    The NRA Has Sufficiently Alleged That The Individual Defendants Owe Fiduciary Duties To The NRA...............................................................................13

    C.    The NRA Has Stated Claims For Conversion. .....................................................17

        1.    Virginia law applies to the NRA's conversion claims and the NRA states claims for conversion under Virginia law.........................................17

        2.    The NRA's conversion claims are not preempted by the Copyright Act............................................................................................................19

    D.    The NRA Has Not Engaged In Impermissible Group Pleading. ...........................21

    E.    The NRA Has Valid Copyright And Trademark Infringement Claims.................22

    F.    At A Minimum, The NRA Should Be Granted Leave To Amend. ........................23

V. CONCLUSION..................................................................................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Innov. Prop. Co. v. Dupont Dow Elastomers LLC*,
   361 F. Supp. 2d 958 (D. Minn. 2005) ................................................................12

*ADT LLC v. Vivint, Inc.*,
   Case No. 17-cv-80432-Middlebrooks, 2017 WL 5640725 (S.D. Fla. Aug. 3,
   2017) .......................................................................................................7, 9, 11

*Alarcon v. Velazquez*,
   552 S.W.3d 354 (Tex. App.—Houston 2018) .......................................................18

*Alcatel USA v. DGI Tech., Inc.*,
   166 F.3d 772 (5th Cir. 1999) ......................................................................20, 21

*Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*,
   810 F.3d 335 (5th Cir. 2016) ..........................................................................1

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................1

*Baptist Mem. Hosp. Sys. v. Sampson*,
   969 S.W.2d 945 (Tex. 1998) ...........................................................................14

*Estate of Barré*,
   272 F. Supp. 3d 906 (E.D. La. 2017) ..........................................................11, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................1

*Berry v. Indianapolis Life Ins. Co.*,
   600 F.Supp.2d 805 (N.D. Tex. 2009) .................................................................18

*Burrow v. Arce*,
   997 S.W.2d 229 (Tex. 1999) ...........................................................................14

*Clapper v. Am. Realty Inv., Inc.*,
   Civil Action No. 3:14-CV-2970-D, 2015 WL 3504856 (N.D. Tex. June 3,
   2015) .................................................................................................21, 22

*Congrove v. W. Mesquite Mines, Inc.*,
   Case No. 08-cv-01191, 2009 WL 10671745 (S.D. Cal. May 5, 2009) .....................13

*Credit General Ins. Co. v. Midwest Indem. Corp.*,
   916 F. Supp. 766 (N.D. Ill. 1996) ....................................................................13

*Daboub v. Gibbons*,
　42 F.3d 285 (5th Cir. 1995) ...................................................................20

*Dial One, Inc v. Bellsouth Telecoms, Inc.*,
　401 F.3d 603 (5th Cir. 2005) ...................................................................5

*Dial One of the Mid-South v. BellSouth Telecom., Inc.*,
　269 F.3d 523 (5th Cir. 2001) ...................................................................6

*E.I Du Pont De Nemours And Co. v. Kolon Indus., Inc.*,
　Civil Action No. 3:09cv58, 2011 WL 4625760 (E.D. Va. Oct. 3, 2011) ..........................19, 20

*Elvir v. Trinity Marine Prods.*,
　327 F.R.D. 532 (M.D. La. 2018) ...............................................................24

*Equitable Variable Life Ins. Co. v. Wood*,
　234 Va. 535 (Va. 1987)...........................................................................14

*Facenda v. NFL Films, Inc.*,
　542 F.3d 2007 .......................................................................................11

*Fourth Estate Pub. Benefit v. Wall-Street.com, LLC*,
　586 U.S. __, 139 S. Ct. 881 (2019).............................................................22

*Funk v. Stryker Corp.*,
　631 F.3d 777 (5th Cir. 2011) ...................................................................10

*Hinds v. Orix Capital Markets, L.L.C.*,
　No. Civ. 3:02-CV-0239-P, 2003 WL 21350210 (N.D. Tex. June 10, 2003)..........................23

*I Love Omni, LLC v. Omnitrition Int'l, Inc.*,
　Civil Action No. 3:16-cv-2410-G, 2017 WL 3086035 (N.D. Tex. July 20,
　2017) ...................................................................................................1, 8

*James v. Meow Media, Inc.*,
　300 F.3d 683 (6th Cir. 2002) ...................................................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
　572 U.S. 134 (2014)........................................................................ *passim*

*Lindley v. Puccino's, Inc.*,
　Civil Action No: 19-11414, 2019 WL 4673173 (E.D. La. Sept. 25, 2019)............................10

*Lone Star Steakhouse & Saloon, Inc. v. Alpha, Inc.*,
　43 F.3d 922 (4th Cir. 1995) ...................................................................12

*Marathon Mfg. Co. v. Enterlite Prod. Corp.*,
　767 F.2d 214 (5th Cir. 1985) ...................................................................6

iii

*Mary Kay, Inc. v. Weber*,
    601 F. Supp. 2d 839 (N.D. Tex. 2009) (Fish, J.) ..................................................13

*McCormick v. AT&T Tech.*,
    934 F.2d 531 (4th Cir. 1991) ..............................................................................21

*Merritt, Hawkins & Associates, LLC. v. Caporicci*,
    No. 05-15-00851-CV, 2016 WL 1757251 (Tex. App.—Dallas May 2, 2016)......................18

*Murphy v. Holiday Inns, Inc.*,
    216 Va. 490 (Va. 1975)........................................................................................14

*Palmer v. Board of Educ. Of Community Unit School Dist. 201-U, Will County, Ill.*,
    46 F.3d 682 (7th Cir. 1995) ...............................................................................22

*Peace v. Conway*,
    246 Va. 278 (Va. 1993)........................................................................................14

*Powertrain, Inc. v. Joyce MA*,
    Civ. Act. No. 1:11-CV-00105, 2013 WL 12178522 (N.D. Miss. Sept. 24, 2013) ...............................................................................................................24

*Priority Design & Serv., Inc. v. Plaza*,
    SA-19-CV-00058-OLG, 2019 WL 2124677 (W.D. Tex. May 15, 2019) ...............................11

*Priority Intern. Animal Concepts, Inc. v. Bryk*,
    No. 12-C-0150, 2012 WL 6020044 (E.D. Wis. Dec. 3, 2012) ...............................22

*R.R. Mgmt. Co. v. CFS La. Midstream Co.*,
    428 F.3d 214 (5th Cir. 2005) .........................................................................13, 14

*Red River Bancshares, Inc. v. Red River Emps.*,
    Civil Action No. 17-1370, 2019 WL 4727857 (W.D. La. Sept. 26, 2019)......................5, 7, 8

*Reed Migraine Centers of Tex., PLLC v. Chapman*,
    Civil Action No. 3:14-CV-1204-N, 2015 WL 11120872 (N.D. Tex. Sep. 22, 2015) ......................................................................................................21, 22

*Reynolds Cons. Prods., Inc. v. Handi-Foil Corp.*,
    No. 1:13-cv-214, 2014 WL 3615853 (E.D. Va. July 18, 2014)..........................................5, 6

*Saint Paul Surplus Lines Ins. Co. v. Geo Pipe Co.*,
    25 S.W.3d 900 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ...........................14

*In re Saporex*,
    446 B.R. 750 (Bankr. N.D. Tex. 2011)..................................................................18

*Schlotzsky's Ltd. v. Sterling Publ'g And Nat'l Distrib. Co., Inc.*,
  520 F.3d 393 (5th Cir. 2008) .................................................................................7

*Select Creations, Inc. v. Paliafito Am., Inc.*,
  911 F. Supp (E.D. Wis. 1995)..............................................................................15

*Straley v. Fisher*,
  10 S.E.2d 551 (1940) ...........................................................................................20

*Sulak v. Am. Eurocopter Corp.*,
  901 F.Supp.2d 834 (N.D. Tex. 2012) ...................................................................18

*T-Peg, Inc. v. Vt. Timber Works, Inc.*,
  459 F.3d 97 (1st Cir. 2006)...................................................................................21

*In re The Heritage Organization*, *L.L.C.*,
  413 B.R. 438 (Bankr. N.D. Tex. 2009)..................................................................18

*The Sports Authority, Inc. v. Prime Hospitality Corp.*,
  89 F.3d 955 (2d. Cir. 1996)...................................................................................10

*Tobin v. AMR Corp.*,
  637 F.Supp.2d 406 (N.D. Tex. 2009) ...................................................................18

*United States v. Schwab*,
  88 F. Supp. 2d 1275 (D. Wyo. 2000)....................................................................13

*Vulcan Golf LLC v. Google Inc.*,
  552 F. Supp. 2d 752 (N.D. Ill. 2008) ...................................................................12

*Welk Resort Grp. Inc. v. Reed Hein & Assoc., LLC*,
  Case No: 3...............................................................................................5, 7, 21, 22

## Statutes

15 U.S.C.§ 1125(a)(1)(A) ............................................................................3, 4, 11

15 U.S.C. § 1127 ...............................................................................................4, 5, 6

17 U.S.C. § 102 .......................................................................................................23

17 U.S.C. § 504.......................................................................................................20

## Other Authorities

Fed. R. Civ. P. 8(a)(2) ..............................................................................................1

Federal Rules of Civil Procedure Rule 15(a)(2) .....................................................23

Restatement (Second) of Agency § 428 (1958)............................................................................15

Restatement (Third) of Agency § 3.15 (2006).......................................................................15, 17

# I.

## PRELIMINARY STATEMENT

Defendants seek an unwarranted and early exit from this case.  As demonstrated below, Defendants' motion to dismiss should be denied in its entirety because Plaintiff National Rifle Association of America (the "NRA") presents detailed allegations in its first amended complaint ("First Amended Complaint" or "FAC") setting forth all the necessary elements of its claims.  The motion should be denied because it is based on mischaracterizations of the allegations in the NRA's amended complaint and misstatements of the applicable legal principles.

# II.

## APPLICABLE LEGAL STANDARDS

A complaint is sufficient if it sets forth "a short and plain statement . . . showing that the plaintiff is entitled to relief"[1] and contains enough well pleaded allegations to "nudge the claim across the line from conceivable to plausible."[2]  The Court must assume all facts pleaded as "true, viewing them in the light most favorable to the plaintiff.,"[3] and "construe the pleadings in their entirety when assessing their sufficiency."[4]  Based on these established standards, Defendants' motion should be denied.

---

[1] Fed. R. Civ. P. 8(a)(2).

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] *I Love Omni, LLC v. Omnitrition Int'l, Inc.*, Civil Action No. 3:16-cv-2410-G, 2017 WL 3086035, at *1-2 (N.D. Tex. July 20, 2017).

[4] *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 340-41 (5th Cir. 2016).

## III.

## FACTUAL BACKGROUND

The NRA filed its First Amended Complaint on October 25, 2019, against six Defendants: its former public relations firm, Ackerman McQueen, Inc. ("Ackerman"), Ackerman's subsidiary Mercury Group, Inc. ("Mercury," and together with Ackerman, "AMc"), and four high-level AMc executives who actively worked on the NRA account and interacted with the NRA's representatives.[5]  In the FAC, the NRA alleges that Defendants engaged, over multiple years, in a pattern of misrepresenting its billing practices and fraudulently overbilling the NRA through various means in breach of their contractual and fiduciary duties.[6]

Defendants also defrauded the NRA into making continued investments in NRATV by presenting misleading viewership data and analytics to cover up that NRATV was an unmitigated failure.[7]  In addition, Defendants refused to cooperate with the NRA's requests for information, and, with their back against the wall, participated in a failed attempt to extort the NRA and Third-Party Defendant Mr. Wayne LaPierre through AMc's employee (retired) Colonel Oliver North.[8]

On June 25, 2019, the NRA terminated the parties' Services Agreement.[9]  AMc thereby lost its largest client and thus needed to market itself to make up for lost revenues.[10]  To leverage themselves off the strength and recognition of the NRA's name for their own benefit and at the expense of the NRA, Defendants continued to, use, copy, and republish on AMc's website the

---

[5] FAC ¶¶ 3-8 (ECF No. 18).

[6] *Id.* at ¶¶ 18-19, 76-77, 120-136.

[7] *Id.* at ¶¶ 27-37, 44-46.

[8] *Id.* at ¶¶ 38-42, 47-56, 70-74.

[9] *Id.* ¶ 84.

[10] *Id.* ¶ 41.

NRA's trademarks, copyrights, and other intellectual and intangible property.[11] Defendants intended to convey the false impression that the NRA, the leading organization in Second Amendment advocacy in the country, remained a client and endorsed the work AMc provided— in particular NRATV.[12]

The NRA commenced this action to be compensated for its injuries and to enjoin Defendants' wrongful conduct.

## IV.

## ARGUMENT

### A.    The NRA Has Stated A Claim For False Association Under The Lanham Act.

The NRA asserts claims against Defendants for false association and false endorsement under the Lanham Act based on Defendants' unlicensed and unauthorized "use" of the "word, name, [and/or] symbol"—most notably, the registered United States trademarks "NRA" and "National Rifle Association"—on versions of their website, which likely caused confusion, mistake, and/or deception.[13]   *In Lexmark*, the United States Supreme Court recently held that, in order to determine whether a plaintiff has standing to sue under the Lanham Act (or any other federal statute), courts must apply the "[1] zone-of-interest test and [2] proximate-cause requirement," which the Court made clear mandate courts consider all the individualized facts and circumstances of the particular case.[14]

---

[11] *Id.* at ¶¶ 84-102.  This intellectual property was created, maintained, and in the possession of AMc pursuant to the work for hire provision in the Services Agreement.  *Id.* at ¶¶ 81-82.

[12] *Id.* at ¶¶ 94-101.

[13] 15 U.S.C.§ 1125(a)(1)(A); FAC ¶¶ 84-102.  Attached as Exhibits 1-3 are true and correct copies of the registrations for the relevant trademarks.

[14] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 134, 129-130, n.5 (2014).

In accordance with *Lexmark*, the NRA has alleged multiple injuries that fall the within the zone-of-interests protected by Lanham Act, the second one of which Defendants do not dispute, namely reputational harm.[15]  In connection with their proximate-causation challenge, Defendants also concede that the NRA's first theory of alleged injury—the diminution in the value of the NRA's trademarks and its brand/goodwill, including likely lost profits—satisfies the applicable standard.  Thus, the NRA has standing to sue under the Lanham Act.  Defendant flawed legal theory that the NRA's claim must be based on an injury to a "commercial interest" does not withstand scrutiny.

Defendants also attempt to distort the law governing false association claims.  Pursuant to the plain language of the Lanham Act, the NRA has sufficiently alleged that the unlicensed and infringing use of the NRA's trademarks would likely cause confusion, mistake, or deception concerning whether the NRA remained a client of AMc and whether the NRA endorses Defendants and their business.[16]  As a result, the motion to dismiss the false association claim should be denied in its entirety.

1.      **The *Lexmark* decision demonstrates that the NRA is not bound to meet the zone-of-interests standard for false-advertising claims, as proposed by Defendants**

The Lanham Act "creates two distinct bases of liability: "[1] false association, § 1125(a)(1)(A), or endorsement and [2] false advertising, § 1125(a)(1)(B)."[17]  Under the "zone-of-interest test, the Court must determine whether a plaintiff has "allege[d]" an injury within the class of interests that the Lanham Act protects, and "who Congress authorized to sue under" the

---

[15] *See id.* at 129-130; 15 U.S.C. § 1127.

[16] *See* 15 U.S.C.§ 1125(a)(1)(A); FAC ¶¶ 84-93.

[17] *Lexmark,* 572 U.S. at 122.

4

Lanham Act.[18]  Applying this test to the injuries presented in that case, the *Lexmark* Court held

that the plaintiff had sufficiently pled "an injury to commercial interest in sales or business

reputation proximately caused by" the defendant's false advertising.[19]

In *Lexmark*, the Court was addressing a claim for false advertising and not a claim for false

association.  As to a false association claim, the *Lexmark* Court indicated that "the interests

protected by the Lanham Act" are *broader* than just the "commercial interests" implicated by false

advertising.[20]  The zone-of-interests protected by a false-association claim are much broader than

mere injuries to commercial interests.[21]  Indeed, courts within this Circuit and elsewhere have

recognized that under the logic of the *Lexmark* decision, false association and trademark

infringement claims under the Lanham Act implicate different interests than false-advertising

claims for purposes of the zone-of-interests test.[22]

---

[18] *Id.* at 131-32, 137 (discussing the interests identified for protection under § 1127).

[19] *Id.* at 140.

[20] *Id.* at 131 ("[A] typical false-advertising case will implicate *only* the Act's goal of protecting persons engaged in commerce . . . against unfair competition," an interest that "concerned . . . injuries to business reputation and present and future sales") (emphasis added).  In sharp contrast, in assessing the interests protected overall, the Court noted that "*most of the enumerated purposes [of the statute] are relevant to false association cases.*" *Id.* (emphasis added).

[21] *See e.g.*, *Red River Bancshares, Inc. v. Red River Emps.*, Civil Action No. 17-1370, 2019 WL 4727857, at *5 (W.D. La. Sept. 26, 2019) (false association claims "implicate other Lanham Act interests different from those relevant to false advertising claims such that the manner in which *Lexmark's* analysis applies will differ as well"); *Reynolds Cons. Prods., Inc. v. Handi-Foil Corp.*, No. 1:13-cv-214, 2014 WL 3615853, at *2 (E.D. Va. July 18, 2014) (rejecting "attempt to broaden" the precise *Lexmark* holding, "which applies specifically to standing in false advertising claims[,]" to claim for trade dress infringement); *Welk Resort Grp. Inc. v. Reed Hein & Assoc., LLC*, Case No: 3"17-cv-014999-L-AGS, 2019 WL 1242446, at *16 (S.D. Cal. Mar. 18, 2019) (unlike a false-advertising claim, "[s]tanding for the false association prong of the Lanham Act does not require a showing of competitive injury") (citation omitted).

[22] *See id.*; *Dial One, Inc v. Bellsouth Telecoms, Inc.*, 401 F.3d 603, 609 (5th Cir. 2005) ("The limits to [the district court's authority in awarding damages in a trademark infringement case] are, primarily, two: it may not provide for punitive damages and the award must not be

2.      __The NRA's alleged injuries are subject to the Lanham Act.__

The NRA has stated a claim for false association because the NRA's allegations demonstrate that it has sufficiently alleged injuries subject to the Lanham Act.  Section 1127 manifests the Lanham Act's purpose to "mak[e] actionable the deceptive and misleading use of marks."[23]  The NRA satisfies this standard because the NRA more than sufficiently alleges that Defendants used the NRA's trademarks in a deceptive and misleading manner to create a false association with and false appearance that the NRA was endorsing Defendants.[24]  Another purpose of the Lanham Act is "to prevent fraud and deception . . . by the use of reproductions, copies, . . . or colorable imitations of registered marks."[25]  The NRA's allegations satisfy this standard because the NRA alleges that Defendants infringing and unauthorized reproductions and copying of the "NRA" and "National Rifle Association" trademarks, as well graphics incorporating those marks, amount to false association and endorsement, causing harm to the NRA.[26]  The NRA then alleges that Defendants' violations of the Lanham Act diminished value of the NRA's trademarks and brand/goodwill, including the likelihood of lost royalty opportunities.[27]  Notably, multiple courts

---

inequitable."); *Reynolds*, 2014 WL 3615853, at *2 (rejecting attempt to broaden *Lexmark* to claim for trade dress infringement).

[23] 15 U.S.C. § 1127.

[24] *See* FAC at ¶¶ 85-102; Exhibits A & C thereto at pp. 69-73, 79-80.

[25] 15 U.S.C. § 1127.

[26] FAC ¶¶ 100-101.  In addition, Exhibits 1-3 contain copies of the registrations for the two relevant marks at issue; the corresponding replications of the trademarks contained in graphics on AMc's defunct website are contained in FAC Exhibits A, C at pp. 69-73, 79-80; FAC at ¶¶ 85-102

[27] FAC ¶¶ 100-101. *See Marathon Mfg. Co. v. Enterlite Prod. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985); *Dial One of the Mid-South v. BellSouth Telecom., Inc.*, 269 F.3d 523 (5th Cir. 2001) (sustaining damages award in connection with trademark claim as damages were "premised on a calculation of lost profits," "reasoning that the Lanham Act gives the district courts gives the district court broad discretion over the amount of damages").

in false-association cases have held that these types of injuries are recoverable in connection with false-association claims under the Lanham Act.[28]

Defendants erroneously contend that in pleading a false-association claim, the plaintiff must allege an injury to a "commercial interest in lost sales or" reputation to satisfy the zone-of-interests requirement.[29]   Defendants misinterpret *Lexmark*.   As the *Lexmark* Court made clear, each claim brought under the Lanham Act should be subjected to an individualized zone-of-interests analysis focusing on the type of claim, the injuries alleged, and their degree of relatedness to the interests protected by the Lanham Act.[30]   There is no categorical rule that in each and every case a plaintiff asserting a false-association claim *must* allege "a commercial injury" to have standing under the Lanham Act.[31]

---

[28] *See, e.g.*, *Schlotzsky's Ltd. v. Sterling Publ'g And Nat'l Distrib. Co., Inc.*, 520 F.3d 393, 399-401 (5th Cir. 2008) (holding that a distributor's false association with a supplier can result in the supplier recovering for injuries to its "goodwill" and "brand," plus the distributor's ill-gotten profits"); *ADT LLC v. Vivint, Inc.*, Case No. 17-cv-80432-Middlebrooks, 2017 WL 5640725, at *4 (S.D. Fla. Aug. 3, 2017) (allowing false-association claim alleging injuries of "lost customer accounts, lost royalties, loss of control over [the plaintiff's] brand, and damage to [the plaintiff's] good will and reputation"); *Welk Resort*, 2019 WL 1242446 at *16 (stating that, unlike a false-advertising claim that requires a showing of "discernibly competitive injury," a false-association claim merely "requires [an] allegation of commercial injury based upon the deceptive use of a trademark or its equivalent"); *Red River*, 2019 WL 4727857, at *5 (a false association claim "implicates other interests such as preventing consumer confusion regarding marks").

[29] *See* Motion ¶ 16.

[30] *See Lexmark*, 572 U.S. at 129-132 (analyzing the purposes of the Act, concluding that "a typical false advertising case will implicate only the Act's goal of protecting unfair competition," and reasoning that "[a]lthough unfair competition was a plastic concept at common law, it was understood to be concerned with injuries to business reputation") (internal citations and quotations omitted); *see also id.* at 130 (noting that for some claims "a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that" there is no standing).

[31] *Cf. Red River*, 2019 WL 4727857, at *5 (false association case where alleged injury was not to a "commercial interest," but rather an injury to the interest in "preventing consumer confusion," analogizing to the injuries protected by trademarks).

In *Lexmark*, the Supreme Court recognized that false-association claims maybe broader, than false-advertising claims.[32]   For example, the *Lexmark* Court stated that "***most of the enumerated purposes [of the statute] are relevant to false association cases***," and in the very next sentence contrasts that breadth of purpose against "a typical false-advertising case [that] will ***implicate only the Act's goal of protecting persons engaged in commerce . . . against unfair competition***."[33]

Defendants attempt to create the erroneous impression that *Lexmark* stands for the proposition that a "commercial interest" arises only when a direct competitor attempts to steal another direct competitor's customers through false advertising.[34]  This argument must be rejected because the *Lexmark* Court stated that, "although diversion of sales to a direct competitor may be the paradigmatic injury from false advertising, it is not the only cognizable injury."[35]  Defendants cite no authority that a plaintiff asserting a claim for false association lacks standing absent a false advertising dispute.  For similar reasons, *I Love Omni, LLC v. Omnitrition Int'l* has no bearing on this case because the claim at issue there was one for false advertising, not false association.[36]  The same is true for *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, another false-advertising case.[37]

Even if this Court were to conclude that the NRA must allege a commercial injury of the kind suggested by Defendants, the NRA has alleged such an injury because the NRA contends that the injury and loss of value to its trademarks, brand, and goodwill—not to mention lost royalties,

---

[32] *Lexmark*, 572 U.S. at 131.

[33] *Id.* (emphasis added).  *See Red River*, 2019 WL 4727857, at *5 (stating that *Lexmark* distinguished the two causes of action in terms of interests protected).

[34] *See* Motion ¶¶ 16, 17.

[35] *Lexmark,* 572 U.S at 137.

[36] 2017 WL 3086035 (N.D. Tex. July 20, 2017).

[37] 634 F.3d 787 (5th Cir. 2011).

which in economic substance equates to "lost sales" of an intellectual property right—qualify as protectable commercial injuries.[38]  Notably, the court in *ADT* relied on *Lexmark* and determined hesitation that the plaintiff had "pled an injury to a commercial interest in sales and business reputation" based on allegations of "lost customer accounts, lost royalties, loss of control over its brand, and damage to [the plaintiff's] good will and reputation."[39]

Defendants do not challenge the NRA's allegation of reputational injury, the second type of injury to commercial interests that qualifies under *Lexmark*.[40]  Even though the NRA had no obligation to meet the commercial interest standard, the above allegations of injury to sales/lost royalties and to reputation are more than sufficient to do so.[41]

In sum, the NRA has alleged cognizable injuries related to multiple interests protected under the Lanham Act and therefore has satisfied the first standing requirement to assert its false association and endorsement claims under that statute.

### 3. The FAC sufficiently alleges proximate causation.

The NRA has satisfied the proximate-causation requirement that the "harm alleged has a sufficiently close connection to the conduct the [Lanham Act] prohibits."[42]  Defendants concede that the NRA has adequately alleged proximate causation based on its allegations of injury to the NRA's trademarks, brand, and goodwill, including lost royalties and equitable disgorgement of

---

[38] *See* FAC ¶ 100 (alleging that the challenged conduct caused the NRA "to suffer reputational harm and the loss of goodwill").

[39] *ADT,* 2017 WL 5640725, at *4.

[40] FAC ¶ 100; *Lexmark*, 572 U.S. at 137 ("Static Control's alleged injuries—lost sales and damage to its business reputation—are injuries to precisely the sorts of commercial interests the Act protects.").

[41] *See supra* § IV.A.1.-2.

[42] *Lexmark*, 572 U.S. at 133.

the Defendants' ill-gotten gains.[43]  Because these alleged injuries satisfy the zone-of-interests and proximate-causation requirements, the NRA has standing to assert claims for false association and endorsement. [44]

Defendants challenge the NRA's allegations of reputational injury as "conclusory,"[45] by ignoring a fundamental rule of pleading: the Court "must consider the complaint in its entirety."[46] Based on the applicable legal principles, the NRA has more than sufficiently alleged harm to its reputation.   In particular, the NRA alleges that AMc's public false association with and its publication of a false endorsement by the NRA, in particular of NRATV, has damaged its reputation through being unfairly associated with Defendants.[47]  These allegations are more than sufficient to state a claim, especially since proximate causation is typically considered a fact issue not suited for resolution on the pleadings.[48]

The NRA has alleged reputational harm that falls within the zone-of-interests protected by the Lanham Act and more than sufficiently alleged that such harm was proximately caused by Defendants' wrongful conduct.[49]  Accordingly, the NRA has standing to assert its false-association claim for reputations injury under the Lanham Act.

---

[43] FAC ¶¶ 86-93, 95, 100-101.

[44] *See supra* § IV.A.1-2.

[45] Motion ¶ 15.

[46] *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

[47] *See* FAC ¶¶ 21-46, 47-55, 65-79, 84-90, 95, 100-101, 121-136.

[48] *See, e.g.*, *James v. Meow Media, Inc.*, 300 F.3d 683, 691-92, n.1 (6th Cir. 2002) ("Proximate cause . . . is a question of fact for the jury.").

[49] *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 964 (2d. Cir. 1996) (overruling summary judgment decision because alleged infringement could result in confusion, "with a resulting loss of control by [plaintiff] over how the public perceives [plaintiff's] stores and the services they provide. Such a claim is cognizable under the Lanham Act.") (citing 15 U.S.C. § 1125(a)(1)(A)); *See Lindley v. Puccino's, Inc.*, Civil Action No:  19-11414, 2019 WL 4673173, at

4.      **The NRA more than sufficiently alleges a likelihood of confusion based on Defendants' unlawful conduct.**

Without any supporting authorities, Defendants contend that a plaintiff alleging a false-association claim must plead and prove a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact," but that is not the law.[50] Defendants' arguments rests upon a manufactured legal standard that ignores the language of 15 U.S.C. § 1125(a)(1)(A).  Contrary to Defendants, Section 1125(a)(1)(A) provides that the "use" of "any word, term, name, symbol, or device, or any combination thereof" can give rise to a false association claim involving confusion, mistake, or deception, in accordance with the case law.[51] Application of the correct legal standard to the allegations requires denial of Defendants' motion.

Indeed, the statute's plain language imposes liability on "[a]ny person who, on or in connection with any goods or services, . . . uses in commerce *any word, term, name, symbol, or device, or any combination thereof* . . . which is likely [1] to cause *confusion*, [2] or to cause *mistake*, or [3] to *deceive* as to the [A] affiliation, connection, or association of such person with another person, or [B] as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities."[52]  In addition, the issue whether AMc's false association and endorsement

---

*2 (E.D. La. Sept. 25, 2019) (denying motion to dismiss because plaintiff had plausibly alleged the challenged conduct "injured [her] commercial and reputational value").

[50] Motion ¶¶ 18-23.

[51] 15 U.S.C. § 1125(a)(1)(A); *ADT LLC*, 2017 WL 5640725, at *4 (use of trademark actionable under false-association claim); *Estate of Barré*, 272 F. Supp. 3d 906, 942-43 (E.D. La. 2017) (denying motion to dismiss claim where predicate conduct was Beyoncé Knowles voice); *Facenda v. NFL Films, Inc.*, 542 F.3d 2007 (recognizing that Lanham Act false-association claim can be asserted for misappropriation of a plaintiff's distinctive words and voice).

[52] *Id.*  (emphasis added); *see also Priority Design & Serv., Inc. v. Plaza*, SA-19-CV-00058-OLG, 2019 WL 2124677, at *2 (W.D. Tex. May 15, 2019) (noting false-association claims adopt the lower standard of whether "the conduct of the defendant is likely to cause confusion" compared to proving literal falsity, as required in connection with false-advertising claims) (citation omitted);

11

are likely to cause confusion, mistake, or deceit "is an inherently factual issue that depends on the fact and circumstances" of each case.[53]

The "NRA" and "National Rifle Association" are unquestionably strong and widely known trademarks as a result of the NRA's public and prominent role in Second Amendment advocacy.[54] Defendants used these precise marks throughout AMc's website, as shown in Exhibit A to the FAC.[55]  In the "Client" and "Gallery" sections and, there were fifteen graphics bearing the NRA's trademarks, a greater number of references than any other AMc client.[56]  Moreover, "AMc's website falsely proclaims that NRATV is the "world's most comprehensive video coverage of freedom-related news, events, and culture" when in reality NRATV "was a failed endeavor under any appropriate performance measure."[57]  In addition, Defendants were deliberately piggybacking on the NRA mark and name to try to recruit new clients.[58]  Evaluated in its entirety, Defendants' conduct raises issues of confusion.[59]  Thus, the NRA has sufficiently alleged that the likelihood of confusion exists.

---

*Estate of Barré* 272 F. Supp. 3d at 942-43 (discussing elements of claim when the false association claim is based on trademark misuse).

[53] *Lone Star Steakhouse & Saloon, Inc. v. Alpha, Inc.*, 43 F.3d 922, 933 (4th Cir. 1995); *3M Innov. Prop. Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958, 970 (D. Minn. 2005) (denying summary judgment in Lanham Act case, noting the even higher standard for "[l]iteral falsity is often a fact question reserved for the jury"); *Vulcan Golf LLC v. Google Inc.*, 552 F. Supp. 2d 752, 769 (N.D. Ill. 2008) ("[T]he court declines to make such a determination as a matter of law given that the 'likelihood of confusion' is a fact-specific inquiry best left for decision after discovery.").

[54] FAC ¶ 1; Exhibits A, C.

[55] FAC Exhibit A at pp. 69-74.

[56] *Id.* at ¶ 86, 90-91.

[57] *Id.* at ¶ 89.

[58] *Id.* at ¶¶ 100-101.

[59] *Estate of Barré*, 272 F. Supp. 3d at 944 (denying motion to dismiss Lanham Act false-association claim on multiple grounds, including the existence of a plausible basis for confusion);

## B.   The NRA Has Sufficiently Alleged That The Individual Defendants Owe Fiduciary Duties To The NRA.

Defendants erroneously contend that the NRA fails to allege that the Individual Defendants owe fiduciary duties to the NRA.  Defendants are simply ignoring the detailed allegations of the First Amended Complaint and the applicable legal principles.  The NRA sufficiently alleges that the Individual Defendants have a ***formal fiduciary relationship*** with the NRA.[60]

In particular, the NRA alleges that the Services Agreement between the parties contains language making AMc an agent and fiduciary of the NRA, and also that the NRA and AMc have been parties to a decades-long relationship of trust and confidence that likewise created a fiduciary relationship.[61]  Defendants do not dispute that AMc is a fiduciary of the NRA and is subject to the law of agency.  Against this backdrop, the FAC sufficiently alleges that the Individual Defendants were formal "subagents" of AMc and, therefore, owed fiduciary duties to the NRA.[62]

A federal court sitting in diversity or supplemental jurisdiction "must apply the choice of law rules of the forum state, in this case Texas."[63]  However, no choice-of-

---

*Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 857–58 (N.D. Tex. 2009) (Fish, J.) (denying motion for summary judgment on issue of likelihood of confusion).

[60] *United States v. Schwab*, 88 F. Supp. 2d 1275, 1286 (D. Wyo. 2000) (order denying motion to dismiss for absence of fiduciary relationship, because "defendants all stand in a fiduciary relationship to the insurance company for which they were agents (or sub-agent)"); *Credit General Ins. Co. v. Midwest Indem. Corp.*, 916 F. Supp. 766, 776 (N.D. Ill. 1996) (rejecting motions to dismiss and summary judgment: "The Court finds that, Credit General has sufficiently alleged facts" to establish fiduciary duties via subagency).

[61] FAC ¶¶ 17, 14-18, 144-145.

[62] *Schwab*, 88 F. Supp. at 128; *Congrove v. W. Mesquite Mines, Inc.*, Case No. 08-cv-01191, 2009 WL 10671745 at *3 (S.D. Cal. May 5, 2009) (denying motion to dismiss in part on the ground that the plaintiff sufficiently alleged a subagency relationship).

[63] *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) (citation omitted).

law analysis is necessary if "a true conflict of law" does not exist.[64]   Here, no conflict exists between the laws of Texas and Virginia as to the law of subagency because both jurisdictions follow the Restatements of Agency which recognize the doctrine.

The Supreme Court of Texas has consistently followed the Restatements of Agency when confronting agency issues.[65]   In fact, in *Arvizu v. Estate of Puckett*, the Texas Supreme Court held that where an individual was the employee of an agent of the defendant-principal, a relationship of subagency existed such that the defendant-principal was vicariously liable for the subagents conduct.[66]   That decision reflected a straightforward application of Restatement principles of subagency.

Similarly, for at least forty-five years, the Supreme Court of Virginia has continuously relied on the Restatements of Agency to resolve principal-agent disputes and to establish the general principals of agency law.[67]   Based on this long history, the conclusion is inescapable that the Virginia Supreme Court would continue to follow the Restatement.   Accordingly, there is no apparent conflict of law, and the Court's analysis should be guided by the decisions of the courts of both states.

---

[64] *Saint Paul Surplus Lines Ins. Co. v. Geo Pipe Co.*, 25 S.W.3d 900, 904 n.2 (Tex. App.— Houston [1st Dist.] 2000, no pet.); *accord R.R. Mgmt. Co.*, 428 F.3d at 222.

[65] *See, e.g.*, *Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999) (applying the Restatement (Second) of Agency to determine whether a faithless agent is entitled to compensation); *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998) (applying the Restatement (Second) of Agency's articulation of respondent superior).

[66] 364 S.W.3d 273, 277 (Tex. 2012) (applying the Restatement (Third) of Agency).

[67] *See, e.g.*, *Murphy v. Holiday Inns, Inc*., 216 Va. 490, 492 (Va. 1975) (applying the Restatement (Second) of Agency to define an actual agency); *Equitable Variable Life Ins. Co. v. Wood*, 234 Va. 535, 539 (Va. 1987) (applying the Restatement (Second) of Agency's rules concerning apparent authority of an agent); *Peace v. Conway*, 246 Va. 278, 281 (Va. 1993) (applying the Restatement (Second) of Agency's approach to the termination of an agency).

According to the Restatement, "A person appointed by an agent to act on behalf of the agent's principal is a subagent if the appointing agent has agreed with the principal that the appointing agent shall be responsible to the principal for the agent's conduct. Such agreement may be express or implied."[68] Importantly, "[w]hen an agent is itself a corporation . . . , its officers, employees, partners, or members who are designated to work on the principal's account are subagents."[69] In addition, "a subagent who knows of the existence of the ultimate principal owes him the duties owed by an agent to a principle."[70] Based on these established principles, where one agent appoints another to work on behalf of the ultimate principal, the appointed subagent owes fiduciary duties to the principal.[71]

Defendants' motion must be denied because the NRA has more than sufficiently alleged that AMc was an agent of the NRA and directed the Individual Defendants to discharge AMc's duties to the NRA.[72] The Individual Defendants were senior executives of AMc assigned to the NRA account.[73] Indeed, "[g]iven their high-ranking positions at AMc and the importance of the NRA as its biggest client, [the Individual] Defendants were aware of the Services Agreement and understood the substance of its provisions."[74] These allegations are more than sufficient to allege

---

[68] Restatement (Third) of Agency § 3.15 (2006).

[69] *Id.* (explaining that the relationship "between the subagent and the appointing agent's principal" is a "relationship[] of agency" that necessarily implies fiduciary duties between subagent and the ultimate principal).

[70] Restatement (Second) of Agency § 428 (1958).

[71] Restatement (Third) of Agency § 3.15 (2006).

[72] *Select Creations, Inc. v. Paliafito Am., Inc*., 911 F. Supp, 1130, 1150-51 (E.D. Wis. 1995) (holding that plaintiff, defendant's agent, employed a marketing and sales firm to work on defendant's behalf and that the marketing firm and its CEO were a subagent of defendant) (citing the Restatement (Second) of Agency).

[73] FAC ¶¶ 3-8, 28-29, 35, 44, 121-129, 137.

[74] *Id.* at ¶¶ 146, 160.

15

that each of the Individual Defendants owe fiduciary duties to the NRA as subagents.  In particular,

the NRA alleges that:

1.  Defendant Martin "served as the Chief Creative Officer" for the NRA account and was "involved with the NRATV website and digital platform," including participating in significant meetings with the NRA concerning the valuation and viewership of NRATV and was responsible for NRA's intellectual property held by AMc.[75]

2.  Defendant Winkler had extensive and high-level participation in AMc's work for the NRA.  As the Chief Financial Officer, he was part of a small team of AMc senior executives who negotiated directly with the NRA during the "annual budgeting process" and was "specifically responsible for budgetary compliance, invoicing, and payments" on the NRA account, as well as holding in-person meetings with the NRA on sensitive topics like AMc's billing practices.[76]

3.  As Executive Vice President, Defendant Montgomery had substantial involvement in important aspects of the AMc-NRA relationship, including being "specifically responsible for budgetary compliance, invoicing, and payments" and participating in negotiations over "the annual budgeting process." Montgomery also served as AMc's point person with the NRA with respect to NRATV and was deeply involved, leading numerous in-person meetings and having the responsibility for fielding phone calls, emails, and letters from the NRA.[77]

4.  Defendant Greenberg served as AMc's "Chief Strategy Officer," including "participation and work in connection with the NRATV website and digital platform."  In particular, Greenberg was involved in the preparations of misleading presentations touting the success of NRATV and communicated directly with NRA representatives in related meeting.  Further, Greenberg was involved in NRA's intellectual property held by AMc such that he "was the moving force behind" AMc's website, which had a heavy focus on the NRA.[78]

---

[75] *Id.* at ¶¶ 7, 36, 93, 97, 137.

[76] *Id.* at ¶¶ 5, 121, 123, 128, 135.

[77] *Id.* at ¶¶ 6, 28-29, 35-37, 44, 121, 123, 128, 135, 137.

[78] *Id.* at ¶¶ 8, 36, 93, 97, 137, 139.

Multiple courts in this circuit and elsewhere have recognized that relationships such as these create fiduciary relationships.[79]   Accordingly, the NRA has sufficiently alleged that the Individual Defendants were subagents and, thus, fiduciaries of the NRA.

Defendants' principal authority does not support their position.  Defendants correctly cite *Johnson v. Brewer & Pritchard, P.C.* for the proposition that Texas law recognizes the existence of a formal fiduciary relationship between specific classes of individuals.[80]   Yet in the very next sentence *Johnson* makes clear that "agency is also a special relationship that gives rise to fiduciary duties."[81]   And the Third Restatement of Agency makes the same point, explaining that where a corporate agent appoints its own employees as subagents of the ultimate principal, the relationship "between the subagent and the appointing agent's principal" equals a "relationship[] of *agency*."[82] For all these reasons, the Defendants' motion to dismiss the NRA's claims for breach of fiduciary duties against the Individual Defendants should be denied.

## C.   The NRA Has Stated Claims For Conversion.

### 1.   Virginia law applies to the NRA's conversion claims and the NRA states claims for conversion under Virginia law.

Virginia law should be applied to the NRA's conversion claims because it has the most significant relationship to those claims.  The alleged conversion that injured the NRA was felt by the NRA at its principal place of business located in Fairfax, Virginia, demonstrating a strong

---

[79] *See, e.g.*, *Arvizu*, 364 S.W.3d at 273 (holding where, as here, defendant was plaintiff's agent and the defendant's employee assisted defendant in discharge of its duties to plaintiff, the employee was plaintiff's agent as well); *Moss v. ole South Real Estate, Inc.*, 933 F.2d 1300, 1312 (5th Cir. 1991) (holding that it is "black letter law as exemplified in the Restatement (Second) of Agency" that "anyone employed by [an agent] in the ordinary course of performing its duties to [the principal] is also an agent of [the principal]") (internal punctuation omitted).

[80] 73 S.W.3d 193, 199 (Tex. 2002).

[81] *Id.* at 200.

[82] Restatement (Third) of Agency § 3.15 (2006) (emphasis added).

connection to that jurisdiction.  Multiple courts in Texas have determined that the state with the most significant interest in connection with the tort claim was the state where the injury occurred— here, Virginia.[83]  Thus, the law of Virginia applies to the conversion claims. [84]

Defendants contend that the NRA fails to state a conversion claim against the Individual Defendants because although the NRA made a demand on Ackerman and Mercury to return its property, it did not make a demand on the Individual Defendants.  This argument must be rejected because Defendants have provided no authority that such a demand is necessary under Virginia law and the authority they cite cuts against their position.[85]  In addition, given their high-level positions with AMc, a demand on Ackerman and Mercury is a demand on the Individual Defendants.

Defendants then contend that the "NRA does not identify any injury it has suffered as a result of any defendants' alleged acts of conversion."[86]  Notably, on the same page in which Defendants make this argument, Defendants purport to recite the elements of a claim for

---

[83] *See Merritt, Hawkins & Associates, LLC. v. Caporicci*, No. 05-15-00851-CV, 2016 WL 1757251, at *5 (Tex. App.—Dallas May 2, 2016) (applying same test to conversion claim and finding California law applied because injury and conduct occurred there); *Alarcon v. Velazquez*, 552 S.W.3d 354, 362 (Tex. App.—Houston 2018) (holding "[a]ny injury . . . suffered as a result of [the] alleged conversion . . . would have been suffered in Mexico," Mexico's law governed the elements of the tort).

[84] *See Sulak v. Am. Eurocopter Corp.*, 901 F.Supp.2d 834, 843-44 (N.D. Tex. 2012); *Berry v. Indianapolis Life Ins. Co.*, 600 F.Supp.2d 805, 812-14 (N.D. Tex. 2009) ("In tort cases, the applicable law will usually be the local law where the injury occurred."); *Tobin v. AMR Corp.*, 637 F.Supp.2d 406, 412 (N.D. Tex. 2009) (same); *In re Saporex*, 446 B.R. 750, 762-64 (Bankr. N.D. Tex. 2011); *In re The Heritage Organization*, *L.L.C.*, 413 B.R. 438, 462 (Bankr. N.D. Tex. 2009).

[85] Motion ¶ 39 (citing *McCormick v. AT&T Tech.*, 934 F.2d 531, 535 (4th Cir. 1991) (applying Virginia law), without reference for a need of a demand).

[86] *Id.* at ¶ 41.

conversion under Virginia law and do not include this as an element.[87]  In any event, Defendants' argument is based on their failure to consider the First Amended Complaint as a whole, in particular the pleading of the conversion claims as an alternative to the copyright claims.  That is, the NRA's conversion claims seek to recover for the full value of the NRA's stolen copyrights and associated intellectual property in the unlikely event that the jury considers and rejects the preceding copyright infringement claims.[88]

Under Virginia law, claims for conversion may be based on intangible property when reduced to a document or another form of personal property, and in some cases allowing for recovery intellectual and intangible property alone absent other conditions.[89]  The NRA's intellectual property, including copyrightable materials, are the proper subjects of a conversion claim because they can be reduced in tangible form such as photographs or graphics  In any event, the NRA's intellectual property are the proper subjects of a conversion claim even in intangible form under Virginia law.

2.     **The NRA's conversion claims are not preempted by the Copyright Act.**

Contrary to the Defendants' arguments, the NRA's conversion claims do not meet both standards required for preemption under the Copyright Act.[90]  First, the subject matter of the non-copyright claim must come within the scope of copyright.  The second, "more complex" prong "require[es] a comparison of the nature of the right under federal copyright law with the state

---

[87] *Id.* at ¶¶ 39, 41.

[88] FAC at ¶ 111 ("In the alternative to its claims for . . . infringement under the Copyright Act, the NRA asserts the cause of action of conversion."); *see also id.* at ¶¶ 113, 115.

[89] *E.I Du Pont De Nemours And Co. v. Kolon Indus., Inc.*, Civil Action No. 3:09cv58, 2011 WL 4625760, at *3-*7, nn. 5, 7 (E.D. Va. Oct. 3, 2011) (collecting authorities from Virginia and elsewhere showing trend in favor of expanding the flexible tort of conversion).

[90] Motion ¶¶ 32-38.

rights" at issue, including an inquiry into whether the same evidence would prove both claims and, therefore, be equivalent.[91]

First, as an alternative claim to the copyright infringement claim, the subject matter of the NRA's conversion claims cannot be within the scope of the copyright.[92]  The conversion claims have nothing to do with, for example, the right of reproduction, distribution, or display because those copyright issues will be resolved in connection with the copyright infringement claim and, therefore, the alternative conversion claims could seek no more than the forced sale of the property in question for its total value.[93]

In addition, the conversion claims here are not the "equivalent" of the alternative copyright claim for at least two reasons.  First, unlike the remedies afforded by the Copyright Act, the NRA's conversion claims do not seek an injunction prohibiting infringing use or an award of lost royalties for a limited period of time.[94]  Rather, the law of conversion in Virginia allows the NRA to seek recovery of the entire value of the intangible rights that AMc has wrongfully controlled.[95]  This fact alone strongly cuts in favor of a finding of no preemption.[96]  In addition, the conversion claims

---

[91] *Alcatel USA v. DGI Tech., Inc.*, 166 F.3d 772, 787 (5th Cir. 1999).

[92] FAC at ¶ 111 ("In the alternative to its claims for . . . infringement under the Copyright Act, the NRA asserts the cause of action of conversion."); *see also id.* at ¶¶ 113, 115

[93] *E.I Du Pont*, 2011 WL 4625760, at *7 (stating that under Virginia law "the correct measure of damages is the value of the property anyway") (relying on *Straley v. Fisher*, 10 S.E.2d 551, 553-55 (1940), which allows a conversion plaintiff to recover the full value of the wrongfully held property, even if defendant keeps the property).

[94] *Compare* 17 U.S.C. § 504 *with* FAC ¶¶ 110-118

[95] *Cf. Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995) (Copyright Act claim held preempted but only because plaintiff wanted money, unlike here, for ongoing, unauthorized use). Indeed, it is the copyright infringement claim that seeks to recover damages for wrongful use, not the conversion claim.

[96] *Alcatel USA*, 166 F.3d at 787 ("requiring a comparison of the nature of the rights protected under federal copyright law with the nature of the state rights" at issue).

here and the copyright infringement claims are not "equivalent" because they will require different evidence.[97]  The facts needed to prove the elements of the conversion claims at issue would necessitate establishing plaintiff's right to property that has been wrongfully taken by the defendant.[98]  In contrast, in a traditional copyright claim, the proof speaks to whether the defendant copied the copyrighted materials."[99]  None of these facts would be relevant to proving a conversion claim.  Therefore, the NRA's conversion claim is not preempted.

D.     **The NRA Has Not Engaged In Impermissible Group Pleading.**

At multiple points in their Motion, Defendants erroneously contend that the NRA has engaged in impermissible "group pleading."[100]  Defendants' argument relies solely upon cases decided outside of the Fifth Circuit.  That is no accident, for at least two cases decided within the Northern District of Texas establish without doubt that the FAC passes muster.[101]  In *Reed Migraine Centers*, Judge Godbey confronted a dispute involving multiple claims under the Lanham Act, common law false advertising, tortious interference, civil conspiracy, and other misdeeds.[102]  There, as here, the defendants moved to dismiss arguing improper group pleading.  In rejecting that argument, Judge Godbey held that "unless a statute requires otherwise," a plaintiff may allege that "[d]efendants, collectively, engaged in several, specific unlawful behaviors,"

---

[97] *Alcatel USA*, 166 F.3d at 787.

[98] *McCormick v. AT&T Tech.*, 934 F.2d 531, 535 (4th Cir. 1991) (Virginia law defines conversion as any wrongful exercise or assumption of authority, personally or by procurement, over another's" property).

[99] *T-Peg, Inc. v. Vt. Timber Works, Inc.*, 459 F.3d 97, 108 (1st Cir. 2006) (discussing elements and proof of copyright infringement)

[100] *See* Motion ¶¶ 24-25, 39-40, 42-46.

[101] *Reed Migraine Centers of Tex., PLLC v. Chapman*, Civil Action No. 3:14-CV-1204-N, 2015 WL 11120872, at *4 (N.D. Tex. Sep. 22, 2015); *Clapper v. Am. Realty Inv., Inc.*, Civil Action No. 3:14-CV-2970-D, 2015 WL 3504856 (N.D. Tex. June 3, 2015).

[102] *Reed*, at *1.

reasoning that Rule 8 "does not require [a plaintiff], without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific defendant."[103] So long as the complaint "contains enough detail to enable [defendants] to prepare a response," the "parties may clarify any remaining ambiguities during discovery."[104] Judge Fitzwater reached a similar conclusion in another case and explained that, when a plaintiff plausibly alleges that "a group of named defendants" engaged in the misconduct at issue, motions to dismiss on that basis should be denied.[105]  The Court should reach the same conclusion here.

## E.      The NRA Has Valid Copyright And Trademark Infringement Claims.

The NRA acknowledges that to file a claim for copyright infringement a plaintiff must have previously registered the copyrighted material with the Copyright Office.[106]  During its prefiling due diligence, counsel for the NRA made the mistake that the registration documents for the NRA owned marks "NRA" and "National Rifle Association" that were reviewed as part of the pre-suit investigation were copyright registrations and not trademark registrations.  Counsel for the NRA, however, was correct in suspecting that AMc was engaging in copyright infringement on its website.  A cursory review of Exhibits A and C of AMc's website show public reproductions and copies of graphics and photographs of original works of art owned by the NRA through the

---

[103] *Id.* (citation omitted).

[104] *Id.* at *4.

[105] *Clapper* at *4; *see also Palmer v. Board of Educ. Of Community Unit School Dist. 201-U, Will County, Ill.*, 46 F.3d 682, 688 (7th Cir. 1995) (reversing trial court's dismissal on the pleadings, explaining that where "a collective body . . . takes a complex series of actions over a span of years, it may be difficult to pin down individual responsibility without discovery" and that Rule 8 posed no barrier to alleging the term defendants generally in such circumstances and that Rule 12(b)(6) similarly does not require that a case proceed "until each person's role is known"); *Priority Intern. Animal Concepts, Inc. v. Bryk*, No. 12-C-0150, 2012 WL 6020044, at *5-6 (E.D. Wis. Dec. 3, 2012).

[106] *Fourth Estate Pub. Benefit v. Wall-Street.com, LLC,* 586 U.S. __, 139 S. Ct. 881, 892 (2019).

work-for-hire clause of the Services Agreement, and such works are copyrights that arise as a matter of law.[107]   For these reasons, the NRA has diligently moved sought to obtain two new federal copyright registrations as of this filing, has sought copyright registration for at least one of the graphics/photographs set forth in Exhibit A to the FAC, and anticipates seeking copyright registrations for more of the applicable graphics and photographs shown in Exhibit A in the near future.[108]

Now that the NRA possesses valid registered copyrights, the NRA intends to move with haste to seek leave to amend its complaint to add new copyright infringement claims.  In addition, the NRA anticipates adding a trademark infringement claim based on the registered trademarks "NRA" and "National Rifle Association" due to their unlicensed use.[109]

**F.**     **At A Minimum, The NRA Should Be Granted Leave To Amend.**

As demonstrated above, Defendants' motion should be denied in its entirety.  If the Court disagrees, however, the NRA respectfully submits that it should be granted leave to amend.  Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires."[110]   Courts have recognized that "[u]nless there exists a substantial reason for denying leave to amend, the district court should permit the filing of the proposed amendment."[111]   The NRA has amended its complaint only once based on its absolute

---

[107] FAC ¶¶ 81-82; Exhibit A, C, pp. 69-73, 79-80; *see also* 17 U.S.C. § 102.

[108] Copies of the copyright registration documents are attached hereto as Exhibits 4 and 5.

[109] Copies of the trademark registration documents are attached hereto as Exhibits 1 and 2.

[110] Fed. R. Civ. P. 15(a)(2).

[111] *Hinds v. Orix Capital Markets, L.L.C.*, No. Civ. 3:02-CV-0239-P, 2003 WL 21350210, at *3 (N.D. Tex. June 10, 2003).

right to amend.  Discovery has just commenced in this case and there is no scheduling order, much less a trial date.  Accordingly, leave to amend would be appropriate, if needed.[112]

## V.

## CONCLUSION

For all the reasons stated above, the Court should deny the motion to dismiss in its entirety and grant the NRA all appropriate relief.


Dated:  December 23, 2019                    Respectfully submitted,


                                   **BREWER, ATTORNEYS & COUNSELORS**


                          By:   */s/ Michael J. Collins*
                                Michael J. Collins, Esq.
                                State Bar No. 00785493
                                mjc@brewerattorneys.com
                                Jason C. McKenney, Esq.
                                State Bar No. 24070245
                                jcm@brewerattorneys.com
                                1717 Main Street, Suite 5900
                                Dallas, Texas 75201
                                Telephone:  (214) 653-4000
                                Facsimile:  (214) 653-1015

                                **ATTORNEYS FOR THE PLAINTIFF
                                COUNTER-DEFENDANT NATIONAL RIFLE
                                ASSOCIATION OF AMERICA**

---

[112]  *Powertrain, Inc. v. Joyce MA*, Civ. Act. No. 1:11-CV-00105, 2013 WL 12178522, at *1 (N.D. Miss. Sept. 24, 2013) (granting motion to leave to file a third amended complaint); *Elvir v. Trinity Marine Prods.*, 327 F.R.D. 532, 535-36 (granting motion for leave to file "Third Amended and Supplemental Complaint") (M.D. La. 2018).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 23rd day of December 2019.

*/s/ Michael J. Collins*
Michael J. Collins