IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, §§§§§<br><br>Plaintiff and Counter-Defendant,<br><br>and<br><br>WAYNE LAPIERRE,<br><br>Third-Party Defendant,<br><br>v.<br><br>ACKERMAN MCQUEEN, INC.,<br><br>Defendant and Counter-Plaintiff,<br><br>and<br><br>MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG,<br><br>Defendants. | Civil Action No. 3:19-cv-02074-G |

**DJ INVESTMENTS, LLC'S REPLY IN SUPPORT OF
ITS MOTION TO QUASH SUBPOENA**

I.   **The NRA has not sought to resolve these issues by conference**

In its Response, the NRA says it is willing to confer, but it has made no effort to do so. Prior to filing its Motion to Quash (Doc. 33), DJ Investments sought to resolve these issues by offering an affidavit supporting the non-involvement of DJ Investments in the issues at play in this lawsuit. The offer included an invitation for the NRA to tell DJ Investments what was really at issue so it could also be addressed in the affidavit. But that offer was rejected, necessitating the Motion. Since the filing of the Motion, there has been no communication from the NRA offering

to amend the requests or otherwise try to resolve these issues. Other than its agreement to extend the time to respond to the subpoena, the NRA's attempt to appear accommodating is misleading.

## II. The NRA's subpoena seeks only irrelevant documents

A subpoena cannot be used to "develop new claims or defenses that are not already identified in the pleadings." *MetroPCS v. Thomas*, 327 F.R.D. 600, 609 (N.D. Tex. 2018) (Horan, M.J.) (citing *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017)). Like all discovery, a subpoena must be limited to obtaining discovery that is "relevant to any party's claim or defense." *Id.*

Yet, the NRA claims that its subpoena seeks documents "concerning matters which are ***or may become issues in this litigation***." *See* NRA's Response (Doc. 43) at 3 (emphasis added). The NRA never argues that its document requests pertain to any claim or defense. Instead, the NRA argues that its subpoena seeks documents related to "scandalous and false allegations" made by Ackerman McQueen. *See* NRA's Response (Doc. 43) at 4. As set forth in the Motion to Quash (Doc. 33) and confirmed by the NRA's Response (Doc. 43), the only allegations related to DJ Investments or the NRA's subpoena are found in paragraph 51 of Ackerman McQueen's amended answer (Doc. 31). That paragraph relates entirely to a home purchase contemplated in or about May 2018, a transaction that was never consummated and from which DJ Investments entirely withdrew in May or June 2018. *See* Winkler Declaration (Doc. 33-2) at ¶¶ 4—9.

More importantly, the allegations concerning that home purchase are not pertinent to any claim or defense asserted by any party in this litigation. *See* Motion to Quash (Doc. 33) at 1—4. And the NRA does not argue otherwise. Instead, the NRA argues that it is entitled to subpoena documents from DJ Investments merely because Ackerman McQueen included facts about the contemplated home purchase in its amended answer. *See* NRA's Response (Doc. 43) at 5.

DJ Investments' Reply in Support of Motion to Quash Subpoena 2

According to the NRA, the purpose of its subpoena is to determine "whether Ackerman is telling the truth" about being "asked to facilitate and help structure the financing of a personal home for LaPierre and his wife," that "LaPierre passed over numerous safe housing options in favor of a $6 million mansion with no greater safety benefits," and that "AMc refused to continue participating in the house transaction." *See id.* When, as here, the relevancy of discovery requests is not apparent, "it is the burden of the party seeking discovery to show the relevancy of the discovery request." *See Zamora v. GC Servs., LP*, No. EP-15-cv-00048-DCG, 2017 U.S. Dist. LEXIS 77649, at *3-4 (W.D. Tex. Feb. 17, 2017). The NRA has failed to satisfy this burden.

Even if the mere mention of these facts in paragraph 51 of the amended answer made them relevant to some party's claim or defense, the NRA's subpoena would still be impermissible because it seeks irrelevant documents far beyond documents "relevant to rebutting Ackerman's claims concerning Ackerman and DJ's participation in the housing transaction" referenced in paragraph 51 of the amended answer. *See* NRA Response (Doc. 43) at 18—23. And even after the filing of this Motion, the NRA made no attempt to limit its document requests to documents relevant to that contemplated transaction. In its response, the NRA does not even attempt to articulate a legitimate argument to establish the relevance of its overly broad document requests.

For instance, it is inconceivable that the NRA's request for "[a]ll documents and records that refer or relate to" any of DJ Investments' "actual or potential purchases, sales, or holdings of real property ***or any other type of property***" going back to DJ Investments' inception (*see* Doc. 33-1 at Request No. 1 (emphasis added)) could be interpreted as seeking only documents relevant to the house purchase contemplated in May 2018. The NRA's requests 8 and 9 similarly seek documents related to all transactions in which DJ Investments "purchased, sold, traded, leased, borrowed, collateralized, gifted, accepted or auctioned ***any property or asset***" (*see* Doc. 33-1 at

Request Nos. 8 & 9 (emphasis added)) although the only transaction that could possibly be considered to be relevant even according to the NRA's theory is a single contemplated - but never consummated - house purchase in May 2018.

The NRA's request for documents regarding DJ Investments' "corporate structure," "Articles of Incorporation and corporate bylaws," and the identity of each investor, member, subsidiary, parent, sibling, affiliated entity, executive, employee, director, manager, or agent - again going back to DJ Investments' inception (*see* Doc 33-1 at Request No. 3) - further demonstrates that the NRA made no attempt to limit its requests to documents related to the single contemplated house purchase the NRA cites as its reason for issuing the subpoena. The same is true for the NRA's request for "[a]ll documents and records that refer or relate to [DJ Investments'] financial condition." *See* Doc. 33-1 at Request No. 10. This document request would require DJ Investments to produce every document related to every transaction, bank statement, financial statement, and tax filing between January 1, 2016 and the present. These requests are entirely unrelated to the house purchase contemplated in May 2018.

The NRA's request for "[a]ll documents and records that refer or relate to communications with or on behalf of the [NRA], or an agent, director, employee, officer, representative of the NRA, or an individual purporting to act on behalf of the NRA" (*see* Doc. 33-1 at Request No. 2) also seeks irrelevant documents. The NRA claims that the documents sought "will allow the NRA to examine the factual basis for Ackerman's claims that it was asked by the NRA to participate in the purchase of the home, that Mr. LaPierre passed over several homes in favor of an opulent mansion . . . , and the veracity of Ackerman's claim that it walked away from the transaction." *See* NRA Response (Doc. 43) at 19. But the NRA made no attempt to limit its request to documents

concerning the contemplated home purchase, and, as discussed above and in the Motion, even those documents are not relevant to any pending claim or defense.

Each of the aforementioned document requests, in addition to seeking irrelevant documents, fails to "describe with reasonable particularity each item or category of items to be inspected" and is therefore improper under the federal rules. *See* Fed. R. Civ. P. 34(b)(1)(A). The only requests that arguably comply with the mandate of Rule 34(b)(1)(A) are those requesting "[a]ll documents and records that refer or relate to the formation, creation, drafting, development, and execution of the Company Agreement of WBB Investments, LLC, dated May 11, 2018," "[a]ll engagement or retention letters with any attorney concerning the formation, creation, drafting, development, and execution of the Company Agreement of WBB Investments, LLC, dated May 11, 2018," "[a]ll documents that refer or relate to any such engagement or retention letter," and "[a]ll documents concerning meetings and communications involving the actual or potential members, managers, or investors with respect to the Company Agreement of WBB Investments, LLC, dated May 11, 2018." *See* Doc. 33-1 at Request Nos. 4-7. But, like each of the other requests, these requests seek irrelevant documents – documents concerning the formation of WBB Investments, LLC, and the Company Agreement or the retention of counsel regarding the formation of WBB Investments, to the extent they exist, are not relevant even to the factual allegations in paragraph 51 of the amended answer.

Because the subpoena does not seek documents that are relevant to any party's claim or defense, it can only be intended to develop new claims or defenses that are not already identified in the pleadings and is therefore impermissible. Furthermore, because the NRA's stated purpose for serving the subpoena is to uncover documents regarding the veracity of a statement concerning a collateral matter, the subpoena violates the collateral issue rule and should be quashed. *See* Fed.

R. Evid. 608(b); *see also Felix v. Ercole*, No. 09-cv-4003 (ARR), 2010 U.S. Dist. LEXIS 62347, at *22 (E.D.N.Y. June 22, 2010); *Smith v. Pefanis*, No. 1:08-cv-1042-JOF-RGV, 2008 U.S. Dist. LEXIS 126139, at *8.

In addition to seeking irrelevant documents, the subpoena also fails to comply with the proportionality requirement of Rule 26(b)(1) because the discovery is not important in resolving the issues at stake in the action, the burden or expense of producing the requested documents outweighs its likely benefit, and the NRA has access to much of the information sought concerning WBB Investments (of which the NRA was at all times the 99% owner) and communications with the NRA.

### III. The NRA's subpoena imposes an undue burden on a non-party

The subpoena is facially overbroad because it seeks "all documents" concerning DJ Investments' finances, property transactions, and communications with the NRA "regardless of whether those documents relate to [this] action and regardless of date," and because "[t]he requests are not particularized" and many of the requests state no limitation in the time period covered. *See Thomas*, 327 F.R.D at 610 (citing *Am. Fed'n of Musicians of the U.S. & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 45 (N.D. Tex. 2015). This is sufficient to support a finding of undue burden.

Additionally, the following factors are relevant to the consideration of whether the subpoena imposes an undue burden: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Thomas*, 327 F.R.D. at 609 (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)). Where, as here, the documents are requested from a non-party, the Court "may also consider the expense and inconvenience to the non-party." *Id.*

a) <u>The information requested is not relevant</u>

As discussed above, none of the information requested is relevant to any party's claims or defenses alleged in this case.

b) <u>The NRA has no need for the documents requested</u>

Because these documents are irrelevant, the NRA does not need the documents. Additionally, communications with the NRA, documents related to WBB Investments, which was at all times owned almost entirely by the NRA, and documents related to the NRA's contemplated purchase of a home for LaPierre are already in the NRA's possession, custody, or control, and the NRA has no need to request those documents from a non-party.

c) <u>The document requests are overly broad</u>

As discussed above, the NRA's document requests are overly broad because they seek "all documents" related to all "actual or potential purchases, sales, or holdings" of any property, "all documents" related to DJ Investments' finances, documents related to "any property or asset" DJ Investments ever "purchased, sold, traded, leased, borrowed, collateralized, gifted, accepted or auctioned," and "all documents" related to "communications with or on behalf of the NRA," documents concerning DJ Investments' corporate structure, governing documents, and all persons or entities affiliated with it, without any attempt to limit the requests to documents relevant to this action. And even the few requests that are more focused in scope seek documents that are not relevant to this action.

d) <u>The time period covered by the requests is overly broad</u>

Most of the NRA's requests either fail to state any limitation in the time period covered or seek documents created between January 1, 2016, and the present. *See* Doc. 33-1. The NRA argues that its requests seeking documents over a four or five-year period "cannot be unduly burdensome

or unreasonable." *See* NRA Response (Doc. 43) at 10. But the NRA does not dispute that the contemplated home purchase at issue in paragraph 51 of the amended answer was only at issue for a short period in or about May 2018. Thus, the time period covered by the requests is clearly unduly burdensome and unreasonable.

    e)  <u>The NRA failed to describe the requested documents with particularity</u>

As discussed above, the NRA failed to describe with reasonable particularity each item or category of items to be inspected and therefore failed to comply with Rule 34(b)(1)(A).

    f)  <u>The requests impose an undue burden, expense, and inconvenience on a non-party</u>

As discussed above and in the Motion to Quash, the NRA's overly broad document requests seeking voluminous and irrelevant documents would impose an undue burden, expense, and inconvenience on DJ Investments.

The NRA specifically alleges that producing documents regarding DJ Investments' corporate structure, governing documents, and the identity of each of its investors, members, subsidiary, parent, sibling, affiliated entity, executive, employee, director, manager or agent "imposes no undue burden" because such documents are routinely "filed at the incorporation of an entity." *See* NRA's Response (Doc. 43) at 19. While some of the responsive documents are publicly filed, those filings would not identify each of the persons covered by the request. Additionally, the NRA can readily access the public filings – and has done so, as evidenced by its own Exhibit D (*see* Doc. 43-4) – and has no need to request those documents from a non-party.

Similarly, the NRA has possession, custody, or control of its own communications with DJ Investments, documents regarding its contemplated home purchase for LaPierre, and documents concerning the formation of WBB Investments. Requesting such documents from a non-party is unnecessarily cumulative and imposes an undue burden on DJ Investments. Furthermore, the

NRA's stated objective is to determine "whether Ackerman is telling the truth" about being "asked to facilitate and help structure the financing of a personal home for LaPierre and his wife," that "LaPierre passed over numerous safe housing options in favor of a $6 million mansion with no greater safety benefits," and that "AMc refused to continue participating in the house transaction." *See* NRA's Response (Doc. 43) at 5. To the extent any of those matters are relevant, the NRA can obtain responsive documents directly from Ackerman McQueen and avoid burdening a non-party with unreasonable subpoenas.

### IV.  The NRA's subpoena requires disclosure of privileged or other protected matters

To the extent the NRA seeks communications between WBB Investments and its attorneys, those are already in the NRA's possession, custody, or control because WBB Investments is wholly owned and controlled by the NRA. The NRA, thus, has no legitimate need to subpoena those documents from DJ Investments.

To the extent the NRA seeks communications between DJ Investments and its attorneys, those are protected by the attorney-client privilege. The NRA offers no support for its argument that the NRA and DJ Investments were "joint clients with respect to all communications with counsel related to the WBB-DJ house transactions." *See* NRA Response (Doc. 43) at 17.

All of the other document requests in the NRA's subpoena would require DJ Investments to produce confidential commercial information, including all financial and asset transactions, financial statements, financial planning, tax returns, and documents identifying all investors, members, affiliated entities, executives, employees, directors, managers, or agents. This is the type of information that should be considered "confidential commercial information," which a private company "would typically keep secret" and the disclosure of which can be harmful to business interests. *See, e.g., Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*, No. 3-11-MC-036-L-BD, 2011

U.S. Dist. LEXIS 38442, at *5-7 (N.D. Tex. Apr. 8, 2011). The Court should, accordingly, "balance[ ] the need for the confidential information against the potential for injury resulting from disclosure." *Id.* at *6. As discussed above, the NRA has no legitimate need for this information. And, even if the requested documents were relevant, the NRA's failure to articulate its need for this information is sufficient to allow the Court to quash the subpoena. *Id.*

V.   CONCLUSION

For the foregoing reasons, and as set forth in its Motion to Quash, DJ Investments requests that this Court grant its motion to quash the non-party subpoena and award DJ Investments its fees and costs.

Respectfully submitted,

By: */s/ Randy Johnston*
Randy Johnston
State Bar No. 10834400
randy@jtlaw.com
Johnston Tobey Baruch, PC
12377 Merit Drive, Suite 880
Dallas, Texas 75251
Telephone: (214) 741-6260
Facsimile: (214) 741-6248

Attorneys for DJ Investments LLC

**Certificate of Service**

I certify that on January 7, 2020, I electronically submitted the foregoing document with the Clerk of Court for the U. S. District Court, Northern District of Texas, using the electronic case file system of the court. The electronic case file system sent a "Notice of Electronic Filing" to all individuals who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Randy Johnston