IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § | |
| *Plaintiff and Counter-Defendant*, | § § | |
| and | § § | |
| WAYNE LAPIERRE, | § § § | |
| *Third-Party Defendant*, | § § | |
| v. | § § | Case No. 3:19-cv-02074-G |
| ACKERMAN MCQUEEN, INC., | § § § | |
| *Defendant and Counter-Plaintiff*, | § § | |
| and | § § | |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG, | § § § § § § | |
| *Defendants*. | | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendants[1] file this *Reply in Support of Motion to Dismiss for Failure to State a Claim* pursuant to FED. R. CIV. P. 12(b)(6).  *See* Doc. 18.

**A.     The NRA Fails to State a Claim for False Association Under Section 1125(a) of the Lanham Act.**

*First*, although a plaintiff's injury must fall within the zone of interest and be proximately caused by the complained-of conduct, the NRA ignores the fact that the Lanham Act's zone of

---

[1] All defined terms are set forth in Defendants' Brief in Support of Motion to Dismiss for Failure to State a Claim. *See* Doc. 29.

interest is *commercial* injuries. As the NRA notes, *Lexmark* listed the purposes of the Lanham Act relating to false association claims, where each enumerated point specifies that the wrongful conduct occurs *in commerce*.[2] *See* Resp. at 5. The NRA confuses the distinction between false advertising and false association: the former requires both commercial *and* competitive injury, but the latter still requires commercial injury.[3]

*Second*, the NRA does not allege a sufficient injury under the Lanham Act. Contrary to what the NRA suggests, Defendants do dispute the NRA's alleged "reputational harm." *See* Doc. 029 ¶ 15 ("[T]hese allegations are a mere 'formulaic recitation of the elements' that the Supreme Court cautioned against in *Twombly*. … **How have Defendants' actions caused the NRA to suffer reputational harm and the loss of goodwill**? How have the Defendants' actions impacted the NRA's ability to compete in the marketplace? The Complaint simply does not say.") (emphasis added). The Response does not address any of these questions.

Although a court must accept the allegations as true, there must be actual allegations to accept and not mere conclusory recitations of law.[4] As the case the NRA cited makes clear, "the

---

[2] *See Lexmark Int'l, Inc. v. Static Control*, 572 U.S. 118, 122 (2014).
[3] *See e.g., Bacon v. S.W. Airlines Co.* 997 F. Supp. 775, 781 (N.D. Tex. 1998) (ruling commercial injury—but not competitive injury—required for standing under false association prong); *Jack Russell Terrier Network v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005) (Under "the false association prong of § 43 of the Lanham Act," "a plaintiff need only allege commercial injury based upon the deceptive use of a trademark or its functional equivalent to satisfy standing requirements."); *Bretford Mfg. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 580 (7th Cir. 2005) (ruling a "reverse passing off can violate the Lanham Act if a misdescription of goods' origin *causes commercial injury*") (emphasis added); *Havana Club Holding, S.A. v. Galleon, S.A.*, 203 F.3d 116, 134 (2d Cir. 2000) (ruling commercial injury required to bring an action under Lanham Act section 43(a)); *Barrus v. Sylvania*, 55 F.3d 468 (9th Cir. 1995) (same).
[4] *See Williams v. Global Payments Check Servs.*, Civil Action No. 3:10-CV-0698-L, 2011 U.S. Dist. LEXIS 144401, at *9 (N.D. Tex. Dec. 14, 2011) ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."); *U.S. ex rel. Wilkins v. N. Am. Constr. Corp.*, 173 F. Supp. 2d 601, 617 (S.D. Tex. 2001) (citing Fifth Circuit law in ruling, "Although the court must accept as true 'well-pleaded' factual allegations in the complaint, the court need not accept as true 'conclusory' allegations or allegations of inferences that are contradicted by the facts pleaded or set out in the exhibits attached to or incorporated in the pleading."); *ADT LLC v. Vivint, Inc.*, Case No. 17-cv-80432-MIDDLEBROOKS, 2017 U.S. Dist. LEXIS 123516, at *5 (S.D. Fla. Aug. 3, 2017) ("[P[leadings that are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. … Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion of entitlement to relief.").

Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers."[5] In *Schlotzsky's*, the plaintiff alleged—*and demonstrated how*—the wrongful conduct harmed the plaintiff and caused confusion.[6] In contrast, the NRA does no more than make conclusory allegations of harm and injury without alleging how consumers would be confused or how that confusion would impact the NRA. In other words, whether the NRA appears in AMc's portfolio of work is of no consequence to purchasers of NRA goods and services.

*Third*, the NRA fails to allege sufficient causation. Defendants have not conceded that diminution in value of trademarks and brand/goodwill suffices for proximate cause allegations. *See* Doc. 029 ¶ 16 ("There is no allegation, for example, that any direct or indirect references to the NRA on AMc's website … actually <u>caused</u> any customers to stop purchasing goods or services from the NRA or otherwise withhold trade from the NRA. Nor has the NRA alleged that Defendants did anything to <u>cause</u> any customers to start purchasing goods and services from AMc instead of the NRA…."). Instead, Defendants specifically raised issue with the NRA's "formulaic recitation" of the elements. *See* Doc. 029 ¶¶ 15-16. In short, the NRA has failed to allege *how* its trademarks, brand, reputation, and/or goodwill will (or have) dimish(ed) in value because of any act of Defendants. *Compare with* the case the NRA cited, Resp. at 10, *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 964 (2d Cir. 1996), wherein the plaintiff alleged *how* it had lost control over its reputation.

Moreover, the *Sports Authority* court cited to *Hormel Foods Corp. v. Jim Henson Prods.*, 73 F.3d 497, 502 (2d Cir. 1996), which found no confusion because the consumers of the alleged infringing product purchased the product based on familiarity with it and not because of some infringing use of the plaintiff's mark. Similarly, here, the NRA has not alleged that AMc's

---

[5] *See Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distr.*, 520 F.3d 393, 399 (U.S. 2008).
[6] *See id.* at 399-400.

consumers are transacting with AMc because of some alleged infringing use of the NRA's mark. More importantly, the NRA cannot reasonably allege confusion when its own consumers are familiar with these lawsuits wherein the NRA vehemently rejects any endorsement of AMc.[7]

*Finally*, aside from restating the law and its alleged infringed upon material, the NRA does nothing to describe *how* there was anything false, misleading, or confusing about the prior statements on AMc's website (because they are not). Indeed, every statement confirms the undisputed fact that, for decades, AMc helped the NRA—a legacy client—"own the narrative" by shaping and disseminating public communications on the NRA's behalf.

**B.    The NRA Fails to Allege a Formal Fiduciary Duty with the Individual Defendants.**

The NRA concedes that the Individual Defendants did not have an informal fiduciary relationship with the NRA, but claims that the NRA and the Individual Defendants have a formal fiduciary relationship as sub-agents of AMc. This argument fails for numerous reasons.

*First*, the NRA and AMc do not have a principal-agent relationship, and thus, the Individual Defendants cannot be sub-agents. Contrary to the NRA's allegations, neither AMc nor the Individual Defendants have conceded or acknowledged that they are fiduciaries or agents of the NRA. Rather, AMc and the Individual Defendants made clear in their Answer that they were *not* fiduciaries or agents of the NRA. *See* Doc. 031 ¶ 17 ("Defendants specifically dispute and deny the legal conclusion that AMc or any of its employees were agents or fiduciaries of the NRA at any point during the parties' business relationship.").

Moreover, the NRA does not allege sufficient facts in its Complaint to establish a principal-agent relationship with AMc—*i.e.*, that it had the right to control the means and details of AMc's work, including the right to assign tasks and to dictate the means and details of the process by

---

[7] Indeed, not only are NRA members aware of these lawsuits through the media, but the NRA makes them aware through their own website, nralegalfacts.org, where they post and summarize the filings.

which AMc would accomplish the tasks.[8]  Instead, the NRA repeatedly claims in its Complaint that it left responsibilities up to AMc at its discretion, *see, i.e.*, Compl. ¶¶ 20, 23, and that it was the Services Agreement that specified the types of work performed for the NRA, Compl. ¶ 80.

*Second*, the NRA fails to cite a single case from Texas or Virginia that suggests a sub-agent owes a direct fiduciary duty to the principal, and thus can be personally liable.  The NRA states that "multiple courts in this circuit and elsewhere have recognized that relationships such as these [*i.e.*, sub-agent relationships] create fiduciary relationships."  Resp. at 17, fn. 17.  The two cases the NRA relies upon stand for no such position.  *Arvizu v. Estate of Puckett*, 364 S.W.3d 273 (Tex. 2012) relate to whether a negligent driver was the sub-agent to the owner of the truck, which would allow the plaintiff to hold the owner of the truck (the principal) liable for the sub-agent's (driver) actions.[9]  Nowhere does the *Arvizu* court mention fiduciary duties, much less a suggestion that the driver (sub-agent) owed the plaintiff a fiduciary duty.

Similarly, *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300 (5th Cir. 1991), does not state that a sub-agent owes a direct fiduciary duty to the principal.  In *Moss*, the buyers of a home filed civil rights claims against the broker, its sales agent, and the owner of the home after the broker and agent rejected their offers to buy the home while making racist statements.[10]  Aside from citing the Restatement (Second) of Agency relating to sub-agency, nothing in *Moss* even discussed sub-agency, much less whether a sub-agent owes a direct fiduciary duty to the principal.  Instead, the Fifth Circuit in *Moss* held that the sales agent was both an agent of the owner of the home and the broker, her employee.[11]

---

[8] *See Cardinal Health Sols., Inc. v. Valley Baptist Med. Ctr.*, 643 F. Supp. 2d 883, 888 (S.D. Tex. 2008).
[9] *Id.* at 277.
[10] 933 F.2d at 1303-04.
[11] *Id.* at 1312-13.

*Finally*, the NRA fails to allege sufficient facts against the Individual Defendants to form a formal fiduciary or sub-agency relationship with the NRA. The NRA contends that, based upon the Services Agreement, "AMc was entrusted with sensitive confidential information pertaining to the NRA," Compl. ¶¶ 145, 159, and that "[g]iven their high-ranking positions at AMc and the importance of the NRA as its biggest client, Defendants were aware of the Services Agreement and understood the substance of its provisions and, therefore, served as agents and fiduciaries," Compl. ¶¶ 146, 160. However the NRA fails to allege how the Individual Defendants' knowledge of the NRA as an AMc client or the Services Agreement creates a direct fiduciary relationship between the Individual Defendants and the NRA.

Further, in numerous instances, the NRA cites to the Services Agreement. And in its primary sentence alleging a fiduciary duty arising under the Services Agreement, it quotes language without citing to the contract. The artifice is critical because nowhere in the Services Agreement was AMc "required to demonstrate 'the same high standard of good faith and loyalty' to the NRA as would be 'required ... of an attorney to his client,'" as stated—and indeed, the NRA cannot point to any such requirement. *Cf.* Compl. ¶ 17. Fifth Circuit law absolves a court from accepting as true allegations "that are contradicted by the facts pleaded or set out in the exhibits attached to or incorporated in the pleading."[12] For the foregoing reasons, this Court should dismiss the NRA's breach of fiduciary duty claims.

**C.    The NRA's Conversion of Intangible Property Claim Fails Under Texas Law, Virginia Law, and Federal Preemption Law.**

In its Response, the NRA unsuccessfully contends that its conversion claim is not preempted by the Copyright Act because Virginia law applies, the conversion remedies are different from the copyright infringement remedies, and the two require different evidence.

---

[12] *See Wilkins*, 173 F. Supp. 2d at 617.

*First*, the NRA claims Virginia law should apply to its conversion claims, but fails to conduct any choice of law analysis. In Texas, the law is clear that intangible property, which the NRA concedes is the basis for its conversion claim, cannot be converted.[13]

Attempting to distinguish between Texas and Virginia law, the NRA cites *E.I. du Pont de Nemours & Co. v. Kolon Indus.* for the proposition that Virginia courts may permit conversion claims based upon intangible property if that property can be reduced to a document or another form of personal property.[14] *See* Resp. at 19. However, *E.I.* suggests that there may be instances where intangible property could be converted if it were "merg[ed] with a document evidencing title."[15] The types of intangible property that may be merged into a document evidencing ownership or title include insurance policies, savings bank books, house receipts, promissory notes, stock certificates, bills of exchange, account books, blueprints, and a company's recruitment list.[16] Regardless, even if Virginia law applied, it provides that "a cause of action for conversion does not encompass claims for interference with undocumented intangible property rights."[17]

Moreover, the basis for the NRA's conversion claim is the alleged taking of its "intellectual property." *See* Compl. ¶¶ 112, 113, 115, 116. Indeed, the NRA confirms this in its Response when it states that it "seek[s] to recover for the full value of the NRA's stolen copyrights and associated intellectual property." Resp. at 19. The fact that the NRA can screenshot AMc's website and attach it to the NRA's Complaint does not mean that the alleged copyright can be (or has been) merged into a document evidencing ownership or supporting conversion.

---

[13] *See GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012) ("[T]o the extent [Plaintiff] allege[d] conversion of intangible 'confidential information' and 'certain trade secrets,'" it is preempted under *GlobeRanger I, Alcatel* and several other cases in which this circuit has held conversion of intangible property preempted."); *see also Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003); *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 823 F. Supp. 2d 578, 587-88 (S.D. Tex. 2011).
[14] Civil Action No. 3:09cv58, 2011 U.S. Dist. LEXIS 113702, at *13 (E.D. Va. 2011).
[15] *Id.* at *14.
[16] *Id.* at *12, *14.
[17] *See United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 306, 440 S.E.2d 902, 906 (1994).

*Second*, as both the Fifth and Fourth Circuits hold, the Copyright Act preempts conversion claims.[18] Such preemption is "broad and absolute."[19] With regard to the two-prong preemption test, the NRA first claims that, because its conversion claim is being made in the alternative, it cannot be within the same subject matter of the NRA's copyright infringement claim. Resp. at 20. The NRA does not cite any case law that supports its contention that merely calling something an "alternative" claim removes it from the ambit of federal preemption. In fact, given that the conversion claim is an alternative to copyright infringement, it necessarily has to relate to the same subject matter. A cursory review of the allegations relating to the two claims also makes clear that they are virtually the same.

Moreover, with regard to the second prong, the NRA fails to establish that the rights it is seeking to enforce through its conversion claim are different from its copyright infringement claim (*i.e.*, their elements are *not* qualitatively different). The NRA argues that, because it is seeking different remedies, the claims cannot be equivalent, but, once again, cites no authority. The NRA references *Daboub v. Gibbons* in passing. There, the Fifth Circuit held that the plaintiff's conversion case was preempted by the Copyright Act and that the plaintiff (like the NRA here) was trying to present as many state law claims as possible to try to avoid preemption.[20]

The NRA further posits that the copyright infringement and conversion claims are not equivalent because they will require different evidence, relying on the Fifth Circuit's holding in *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772 (5th Cir. 1999). Resp. at 21. Yet nothing in *Alcatel* suggests that requiring different evidence for both claims supports a finding that they are

---

[18] *See GlobeRanger*, 691 F.3d at 706; *Carson*, 344 F.3d at 456; *OpenRisk, LLC v. MicroStrategy Servs. Corp.*, 876 F.3d 518, 523 (4th Cir. 2017).
[19] *OpenRisk*, 876 F.3d at 523.
[20] *See Daboub v. Gibbons*, 42 F.3d 285, 289, 290 (5th Cir. 1995) ("Nightcaps' argument is like a ventriloquist's attempt to present a copyright action in the voice of state law claims. However, if the language of the act could be so easily circumvented, the preemption provision would be useless, and the policies behind a uniform Copyright statute would be silenced.").

not equivalent. Indeed, *Alcatel* confirms that the appropriate question is to compare the "nature of the rights" protected by the federal copyright law with the "nature of the rights" to the state law claim and determine whether they are "equivalent."[21] Here, the nature of the rights with both the copyright infringement and conversion claims are "equivalent" given the allegation that Defendants are liable for their refusal to remove certain creative works and intellectual property from AMc's website. *See* Compl. ¶¶ 114, 118. Thus, the conversion claim involves rights of reproduction, distribution, or display – exclusive rights granted by Section 106 of the Copyright Act – and must be dismissed based upon preemption.

**D.    The NRA Confirms its Copyright Infringement Claim Fails Because the NRA Does Not Own any Copyrights.**

In its Response, the NRA confirms the alleged copyrights at issue were not registered at the time the NRA filed its Original Complaint or First Amended Complaint. Resp. at p. 22. The NRA further acknowledged the well-settled law that prohibits a claimant from filing a copyright infringement lawsuit without a registered copyright.[22] The NRA made the decision to file this lawsuit and assert a copyright infringement claim without owning any valid copyright registrations for the allegedly-infringed works. As such, and consistent with numerous opinions, the NRA should not be permitted to later obtain registration (to the extent it even can) or be permitted leave to amend.[23] Furthermore, at no point has the NRA alleged trademark infringement, as falsely represented in its Response. *See* Resp. at 22-23.

---

[21] 166 F.3d at 787.
[22] *See Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 888 (2019) ("registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights").
[23] *See Mai Larsen Designs v. Want2Scrap, LLC*, Civil No. SA-17-CV-1084-ESC, 2019 U.S. Dist. LEXIS 92215, at *3 (W.D. Tex. Jun. 3, 2019) ("embracing the argument [that post-registration amendment can cure defect in properly pleading copyright infringement] would make a meaningless formality out of *Fourth Estate's* requirement that an application be approved prior to filing suit"); *Xclusive-Lee, Inc. v. Hadid*, No. 19-CV-520 (PKC) (CLP), 2019 U.S. Dist. LEXIS 119868, at *8 (E.D.N.Y. 2019) (granting defendant's motion to dismiss plaintiff's copyright infringement claim based on plaintiff's failure to meet the statutory registration pre-filing condition, and denying plaintiff's request

E.   **The NRA's Failure to Address Certain Arguments in the Motion Requires Dismissal.**

In the Motion, the Individual Defendants moved to dismiss the NRA's Lanham Act, copyright infringement, and conversion claims. *See* Docs. 28, 29. Mercury also moved to dismiss the NRA's Lanham Act, copyright infringement, conversion, fraud, and conspiracy claims. *Id.* In its Response, the NRA failed to address any of these arguments. The NRA's failure to respond to these issues operates as a waiver, mandating dismissal of these particular claims.[24]

F.   **The NRA Should Not Be Permitted Leave to Amend.**

The NRA has already amended its Complaint in response to Defendants' Motion to Dismiss the NRA's Original Complaint. *See* Docs. 09, 10, 18. More than one amendment is allowed *only* by leave of court.[25] In determining whether to grant leave to amend, a court may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment."[26] In *Wimm*, the Fifth Circuit affirmed the district court's denial of the motion for leave to amend "because it found the motion was filed in bad faith and with dilatory motive" where the plaintiffs only filed "in an attempt to avoid summary judgment."[27] The court further found that "[t]he plaintiffs knew of the facts underlying their … claim before this action commenced."[28] Stated another way:

> [A party's] awareness of facts and failure to include them in the complaint might give rise to the inference that the [party] was engaging in tactical maneuvers to

---

for leave to amend once the registration has been approved); *see also Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 U.S. Dist. LEXIS 56578, at *7-8 (S.D.N.Y. 2019).

[24] *See Jaso v. Coca Cola Co.*, 435 Fed. Appx. 346, 358 n.12 (5th Cir. 2011) (finding waiver of argument for failure to raise it in response to motion to dismiss); *Charboneau v. Box*, 2017 U.S. Dist. LEXIS 46273, at *47 (E.D. Tex. Mar. 29, 2017) (finding waiver of argument for failure to address it in response); *Mayo v. Halliburton Co.*, Civ. Action No. H-10-1951, 2010 U.S. Dist. LEXIS 113816, at *18 (S.D. Tex. Oct. 26, 2010) (ruling that failure to respond to motion to dismiss on breach of contract claim amounted to waiver and required dismissal).

[25] *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

[26] *Id.*

[27] *Id.*

[28] *Id.* at 140.

force the court to consider various theories seriatim.  In such a case, where the movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate.[29]

The NRA chose to file this lawsuit in August 2019 and then amend its Complaint in October 2019.  It had full knowledge at the time it filed its Original *and* Amended Complaint that it had not met (or even tried to meet) the required statutory conditions before bringing certain intellectual property claims—*i.e.*, that it (the country's renowned and foremost gun-rights advocate with five million members, *see* Compl. ¶ 1) even owned registrations for the copyrights at issue.  For the same reason, it also had knowledge of any alleged facts to support a trademark infringement claim (which Defendants vehemently refute).  This Court should not reward the NRA for its intentional and strategic missteps by permitting it to file yet a third complaint.

Moreover, this is the fourth lawsuit the NRA filed against AMc in a matter of six months (the other three are pending in the Superior Court in Virginia).  *See* Doc. 31 at p. 77-78.  Since the initiation of its litigation against AMc in April 2019, the NRA has repeatedly engaged in vexatious conduct against Defendants.  The filing of this lawsuit is based on the NRA's bad faith and dilatory motive to bury Defendants with expensive and frivolous litigation, and any amendment would be solely to avoid dismissal rather than in good faith to preserve proper claims.[30]

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request and pray that the Court grant them the following relief:

    a.    dismiss Count One (Lanham Act) and Count Three (conversion) in their entirety against all Defendants;

---

[29] *Id.* at 141 (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 559 (5th Cir. 1981)).
[30] *See Wimm*, 3 F.3d at 139.

    b.       dismiss Count Two (copyright infringement), Count Five (breach of fiduciary duty), and Count Seven (breach of fiduciary duty of loyalty) in their entirety against Mercury and the Individual Defendants;

    c.       dismiss Count Four (fraud) and Count Six (conspiracy) against Mercury; and

    d.       grant Defendants any and all such other and further relief at law or in equity to which the Court finds them justly entitled.

Dated: January 20, 2020.

                                            Respectfully submitted,

                                            */s/ Brian E. Mason*
                                            **Jay J. Madrid, Esq.**
                                            Texas Bar No. 12802000
                                            madrid.jay@dorsey.com
                                            **G. Michael Gruber, Esq.**
                                              Texas Bar No. 08555400
                                            gruber.mike@dorsey.com
                                            **J. Brian Vanderwoude, Esq.**
                                            Texas Bar No. 24047558
                                            vanderwoude.brian@dorsey.com
                                            **Brian E. Mason, Esq.**
                                            Texas Bar No. 24079906
                                            mason.brian@dorsey.com
                                            **DORSEY & WHITNEY LLP**
                                            300 Crescent Court, Suite 400
                                            Dallas, Texas 75201
                                            (214) 981-9900 Phone
                                            (214) 981-9901 Facsimile

                                            **ATTORNEYS FOR DEFENDANTS ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, JESSE GREENBERG, WILLIAM WINKLER, AND MELANIE MONTGOMERY**

## CERTIFICATE OF SERVICE

      I hereby certify that on January 20, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

                                         */s/ Brian E. Mason*
                                         Brian E. Mason, Esq.