**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § | |
| | § | |
| | § | |
| **Plaintiff and Counter-Defendant** | § | |
| | § | |
| **and** | § | |
| | § | |
| **WAYNE LAPIERRE,** | § | |
| | § | |
| | § | **Civil Action No. 3:19-cv-02074-G** |
| **Third-Party Defendant,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ACKERMAN MCQUEEN, INC.,** | § | |
| | § | |
| **Defendant and Counter-Plaintiff,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF NATIONAL RIFLE ASSOCIATION OF AMERICA'S BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM DEFENDANTS AND MOTION FOR SANCTIONS**

**BREWER, ATTORNEYS & COUNSELORS**

Michael J. Collins, Esq.  (TX Bar No. 00785493)
mjc@brewerattorneys.com
Jason C. McKenney, Esq. (TX Bar No. 24070245)
jcm@brewerattorneys.com
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone:  (214) 653-4000
Facsimile:  (214) 653-1015

**ATTORNEYS FOR PLAINTIFF COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ...........................................................................1

II. APPLICABLE LEGAL STANDARDS...........................................................1

III. ARGUMENT .................................................................................................2

    A.    The Court Should Order Defendants To Produce Their Documents Now ..............2

    B.    The Court Should Reject Defendants' General Opening Objections, In Particular Their Unsubstantiated Time-Period Limitation ......................................4

    C.    The Requests Seek Documents Relevant To The Claims And Defenses In The Case....................................................................................................8

        1.    The NRATV Requests ................................................................8

        2.    The Fraudulent Billing Requests ............................................13

        3.    The Intellectual Property Requests .......................................15

    D.    The Court Should Award Sanctions For Defendants' Extreme Discovery Malfeasance .........................................................................................17

IV. CONCLUSION.............................................................................................18

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alvarez v. Aldi (Tex.) LLC*,
No. 3:13-cv-4122-L, 2014 WL 3624929 (N.D. Tex. July 22, 2014)..........................................6

*Benevis LLC v. Mauze & Bagby, PLLC*,
5:12-CV-36, 2015 WL 12763537 (S.D. Tex. Dec. 14, 2015)....................................................7

*Briones v. Smith Dairy Queens Ltd.*,
No. V–08–48, 2008 WL 4630485 (S.D. Tex. Oct. 16, 2008)....................................................7

*Browning v. S.W Res. Inst.*,
Civ. No. Sa-05-ca-0245-fb, 2006 WL 8434146 (W.D. Tex. Apr. 26, 2006).........................6, 7

*Crownover v. Crownover*,
2:15-CV-132-AM-CW, 2017 WL 10575859 (W.D. Tex. July 12, 2017) ................................2

*Fed. Trade Commission v. Lukens Steel Co.*,
444 F. Supp. 803 (D.D.C. 1977) .............................................................................................7

*Hickman v. Taylor*,
329 U.S. 495 (1947).............................................................................................................1, 5

*Italian Cowboy Partners v. Prudential Ins.*,
341 S.W.3d 323 (Tex. 2001)...................................................................................................8

*Leamon v. KBR, Inc.*,
Civ. Act. H-10-0253, 2010 WL 11668204 (S.D. Tex. Nov. 9, 2011) ......................................7

*Lee, Inc. v. Flagstaff*,
173 F.R.D. 651 (D. Mass. 1997)....................................................................................3, 9, 11

*Lopez v. Don Herring Ltd.*,
327 F.R.D. 567 (N.D. Tex. 2008) ....................................................................................11, 13

*Madrid v. Wells Fargo Bank, N.A.*,
EP-14-CV-00152-DCG, 2016 WL 10590161 (W.D. Tex. July 27, 2016) ..............................2

*Mancia v. Mayflower Textile Servs. Co.*,
253 F.R.D 354 (D. Md. 2008)..................................................................................................4

*McLeod, Alexander, Power & Apffel, P.C. v. Quarles*,
894 F.2d 1482 (5th Cir. 1990) ....................................................................................1, 4, 5, 8

*Metropolitan Life Ins. Co. v. Dailey*,
    No: 3:12-cv-4174-G-BN, 2014 WL 12585666 (N.D. Tex. May 15, 2014)....................1, 8, 12

*Moore v. Radian Grp., Inc.*,
    2:01-CV-023, 2002 WL 31738795 (E.D. Tex. Feb. 1, 2002)....................................................7

*Old Chief v. United States*,
    519 U.S. 172 (1997).........................................................................................................9

*Schlotzsky's Ltd. v. Sterling Publ'g And Nat'l Distrib. Co., Inc.*,
    520 F.3d 393 (5th Cir. 2008) ......................................................................................16

*Schooler v. Wal-Mart Stores*,
    Civil Action No. 14-2799, 2015 WL 4878434 (E.D. La. Aug. 14, 2015) ..............................13

*Tex. Grain Storage, Inc. v. Monsanto Co.*,
    SA-07-CA-673-OG, 2008 WL 11411844 (W.D. Tex. Apr. 24, 2008)................................6, 7

**Statutes**

15 U.S.C. § 1125(a)(1)(A) ..............................................................................................1, 15, 16

**Other Authorities**

Fed. R. Civ. P. 34(b)(1)(B)(C) ............................................................................................9, 10, 11

# I.

## PRELIMINARY STATEMENT

Plaintiff National Rifle Association of America (the "NRA" or "Association") brings its Motion to Compel Pursuant to Federal Rule of Civil Procedure 37 in order to remedy the Defendants refusal to participate meaningfully in discovery.  While Defendants have responded in writing to the Requests for Production of Documents to Defendants (the "Requests") served on November 5, 2019, they have yet to produce a single document in this case, as of the date of this filing.  In addition, Defendants have refused to meet and confer about the litany of improper general objections in their written responses, in particular one that would preclude from the temporal scope of discovery two years (2016-2017) during which the NRA contends Defendants started their fraudulent schemes and undertook illegal acts in support thereof or any reasonable period before or after the conclusion of the complete liability period.  Finally, Defendants refuse to produce, in whole or in part, multiple Requests where their objections are conclusory, unfounded, or otherwise deficient.  For all the reasons discussed below, the Court should grant the Motion to Compel in its entirety.

# II.

## APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b) provides a party the right to discovery "regarding any non-privileged matter that is relevant to a party's claim or defense."[1]  "Information within [the] scope of discovery need not be admissible in evident to be discoverable."[2]  In *Hickman v.*

---

[1] *Metropolitan Life Ins. Co. v. Dailey*, No: 3:12-cv-4174-G-BN, 2014 WL 12585666, *1 (N.D. Tex. May 15, 2014)

[2] Fed. R. Civ. P. 26(b)(1)

1

*Taylor*, the United States Supreme Court cemented the tradition that the discovery rules "are to be accorded a broad and liberal treatment."[3]  Rule 34 provides for one method of discovery: the request for production of documents.[4]  As a matter of procedure, "the party resisting discovery must show specifically how each request is not relevant or otherwise objectionable."[5]

### III.

### ARGUMENT

**A.     The Court Should Order Defendants To Produce Their Documents Now**

On October 25, 2019, the NRA filed its First Amended Complaint ("FAC") asserting causes of action under the Lanham Act, common law fraud, and breach of fiduciary duty, among other things, against two corporate entities: its former public relations firm, Ackerman McQueen, Inc. and its subsidiary (together, "AMc") and four senior executives of that firm (collectively, "Defendants").[6]  On November 5, 2019, the NRA propounded the Requests, in which the NRA made clear that "Defendants are requested to respond, separately and fully, and to produce the requested documents to the undersigned counsel . . . within thirty (30) days after service of these Requests."[7]

Defendants responded one month later on December 5, 2019 (the "Responses") and interposed various "objections."[8]  Nonetheless, Defendants clearly agreed to produce documents

---

[3] 329 U.S. 495, 507-08. (1947).

[4] Fed. R. Civ. P. 34.

[5] *Dailey*, 2014 WL 12585666 at *1 (relying on *McLeod, Alexander, Power & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)

[6] *See* ECF No. 18.

[7] *See* Ex. A at 2 (excerpted)

[8] *See* Ex. B.

2

within the scope of the Requests.[9]  However, Defendants did not produce a single document on the December 5 deadline, in violation of the plain language of the Requests, Fed. R. Civ. P. 34(b)(2)(B), and relevant legal authority.[10]  Accordingly, the Court should issue an order compelling production of all the documents Defendants agreed to produce in their written Response to the Requests.

Finally, Defendants suggestion of a forthcoming document production "late" this "week" is of no moment and cannot remedy their initial violation of the discovery rules.  Indeed, Defendants' vague promise of a "rolling production" of documents taking an unspecified time and undertaken at their sole discretion suggests that Defendants' commitment in this case to making prompt productions of responsive, non-privileged documents will be fleeting at best.[11]  For the reasons stated above, the Court should order the production of all documents Defendants agreed to produce in their Responses.  At minimum, the Court should strictly supervise the timing, amount, and pace of Defendants' document production.[12]

---

[9] *See id.* at pp. 22-23 (Responses to Request Nos. 45-46), pp. 28-29 (Responses to Request Nos. 57-59).

[10] Fed. R. Civ. P. 34(b)(2)(B) (requiring that "the production [of documents] must then be completed no later than the time for inspection specified in in the request."); *Crownover v. Crownover*, 2:15-CV-132-AM-CW, 2017 WL 10575859, *1 (W.D. Tex. July 12, 2017) ("Generally, responses and production must be done within 30 days after being served with the request."); *Madrid v. Wells Fargo Bank, N.A.*, EP-14-CV-00152-DCG, 2016 WL 10590161 (W.D. Tex. July 27, 2016) ("If a party fails to respond fully to discovery requests made pursuant to Rule 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel for disclosure and for appropriate sanctions under Rule 37."); Wright & Miller, Fed. Prac. and Proc. § 2213 (advising that "the simplest response is one saying that the discovery sought by the request will be allowed at the time and place and in the manner specified by the request").

[11] Ex. C at p. 1.

[12] *Cf.* Wright & Miller, Fed. Prac. and Proc. § 2213 ("If a production must be done in stages, the response should state the beginning and end for the staged production.")

3

**B.** **The Court Should Reject Defendants' General Opening Objections, In Particular Their Unsubstantiated Time-Period Limitation**

Defendants start their written responses on the wrong foot with a number of boilerplate and general "Objections Applicable to All Requests."[13]  For instance, in General Objection No. 4 Defendants generally refuse to produce documents if the Request is "vague, ambiguous, overbroad and unduly burdensome, or seeks information neither relevant to the claim or defense of any part nor reasonably calculated to lead to the discovery of admissible evidence," without providing any elaboration in terms of any particular Request or the basis for the objection.[14]  Defendants then purport to "incorporate[ ] by reference into each of the Specific Objections and Responses set forth below."[15]

The Fifth Circuit itself, and numerous other courts, have decried the use of such generalized objections and routinely reject them as non-compliant with the Federal Rules.  As Magistrate Judge Horan explained in *Heller v. City of Dallas*, "the prohibition against general or blanket objections to discovery requests has been long established."[16]  The use of generalized objections is especially pernicious where, as here, "it is impossible to know whether information has been withheld and, if so, why."[17]  This "is particularly true in case like this where," as here again "multiple 'general objections' are incorporated into many of the responses with no attempt to show the application of each objection to the particular request."[18]  Indeed, the Fifth Circuit has condemned such behavior

---

[13] Ex. B at p. 2

[14] *Id.* at p. 2 (General Objection 4); *see also id.* pp. 2-4 (remaining objections).

[15] *Id.* at p. 4 (General Objection 12).

[16] 303 F.R.D. 466, 483 (2014) (relying on various authorities both in-Circuit and out-of-Circuit for this proposition).

[17] *Id.*

[18] *Id.* (citing *Weems v. Hodnett*, No. 10-cv-1452, 2011 WL 3100554, at *1 (W.D. La. July 25, 2011)).

4

as the equivalent of tactics "that have brought disrepute upon attorneys and the legal system."[19] Following Fifth Circuit authority and other like-minded decisions, the court in *Heller* ordered reviewed the relevant discovery responses and ordered that "[c]ounsel should cease and desist from raising these free-standing and purportedly universally applicable 'general objections' in responding to discovery requests."[20]   The same result should apply here with respect to all of Defendants' similarly deficient "Objections Applicable to All Requests."

Of all the general objections, the most odious is General Objection No. 8, in which Defendants, without reason, explanation, or justification, unilaterally elected to produce only "responsive non-privileged [sic] documents from January 1, 2018 to the commencement of this lawsuit."[21]   The lack of substantiation alone compels its rejection of this limitation.[22]

In addition, allowing this unilaterally imposed limitation to stand would dramatically and unreasonably limit the temporal scope of discovery in this case and enable Defendants to withhold documents and evidence from the 2007-2006 time period.   That period is directly relevant to the liability of Defendants, as during that period the FAC alleges Defendants began the fraudulent schemes (e.g., the improper financial statements) and engaged in fraudulent.   Unquestionably, the Federal Rules provide the NRA the right to develop its case through access to Defendants' documents, especially in fraud cases, such as this one, where the evidence of wrongdoing most

---

[19] *McLeod, Alexander, Powel & Apfel v. Quarles*, *894* F.2d 1482, 1484-86 (5th Cir. 1990); *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D 354, 358 (D. Md. 2008) (lamenting that "boilerplate objections . . . persist despite a litany of decisions from courts, including this one, that such objections are improper unless based on based on particularized facts").

[20] *Heller*, 303 F.R.D. at 484.

[21] Ex. B. at p. 3.

[22] *Heller*, 303 F.R.D. at 483; *McLeod*, 894 F.3d at 1484-86.

likely exists in the files of the party opponent.[23]  It is for this reason that the Supreme Court has held that discovery in the federal courts is of a permissive nature and thus intended to capture materials "regarding any nonprivileged mater that is relevant to any party's claim or defense."[24]

Allowing Defendants to suppress documents from 2015 onwards is contrary to these cardinal rules of discovery.  As alleged in the FAC, *in 2016* Defendants induced the NRA into launching a digital platform known as NRATV.[25]  Thereafter, Defendants defrauded the NRA by presenting misleading viewership data and analytics to cover up that NRATV's poor results.[26]  The FAC specifically alleges that deceptive statements concerning purported viewership numbers and analytics, sponsorships, and the ultimate valuation of NRATV were made *in 2017, 2018, and 2019*.[27]

In addition, the FAC alleges that starting *in at least 2016*,[28] Defendants engaged conduct that was intended to misrepresent its financial practices and cover up a series of fraudulent overbilling of the Association through various methods in violation of their contractual and fiduciary duties.[29]  The FAC clearly alleges that Defendants made misrepresentations or mislead

---

[23] Fed. R. Civ. P. 26(b) (allowing discovery into non-privileged matters relevant to the parties' claims and defenses).

[24] *Id.*; *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947).

[25] ECF No. 18 (FAC) at ¶¶ 16-17, 21-26, 43.

[26] *Id.* at ¶¶ 27-37, 44-46.

[27] *Id.* at ¶¶ 28-29 & accompanying chart (showing one meeting on Oct. 24, 2017 and one meeting on Nov. 28, 2017 at which Defendants made misleading statements to the NRA about the performance of NRATV).

[28] *Id.* at ¶¶ 121, 130.

[29] *Id.* at ¶¶ 18-19, 76-77, 120-136.

the NRA about its record-keeping practices and in connection with their billing statements and invoices *throughout at least 2016 and 2017*.[30]

Unsurprisingly, multiple courts, recognize that the "temporal scope of discovery," should encompasses "the liability period" in which plaintiff alleges that the wrong act occurred.[31]   Indeed, because "discovery of information both before and after" that period can be relevant, "courts commonly extend the scope of relevant discovery to a reasonable number of years both prior to and following such period."[32]   In light of the facts alleged in the FAC and the wide-spread judicial recognition that the temporal scope of discovery should span the liability period, the Court should reject Defendants' unduly short discovery period spanning from January 2018 to August 2019 (just 20 months).[33]   The Court should allow the temporal scope of discovery to encompass the entire

---

[30] *Id.* at ¶¶ 121-131, 134-136.

[31] *Browning v. S.W Res. Inst.*, Civ. No. Sa-05-ca-0245-fb, 2006 WL 8434146, at *2 (W.D. Tex. Apr. 26, 2006);   *Tex. Grain Storage, Inc. v. Monsanto Co.*, SA-07-CA-673-OG, 2008 WL 11411844, at *7-8 (W.D. Tex. Apr. 24, 2008) (holding in an antitrust case that plaintiff was entitled to discovery spanning the entire liability and "damages" period, plus "for a reasonable period of time antedating the earliest possible date of actionable wrong" and finding a look-back window of two years appropriate); *Alvarez v. Aldi (Tex.) LLC*, No. 3:13-cv-4122-L, 2014 WL 3624929, at *4 (N.D. Tex. July 22, 2014) ("Discovery is to be limited to the *relevant time period*.  But information for years prior or subsequent to the specific period covered may still be relevant to a Plaintiff's claims") (emphasis); *Briones v. Smith Dairy Queens Ltd.*, No. V–08–48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008) (allowing plaintiff's discovery of the defendant's financial information to 2007 and 2008 where an alleged discriminatory act took place in 2007 and the discovery was requested in 2008).

[32] *Browning*, 2006 WL 8434146, at *2.  *See also Moore v. Radian Grp., Inc.*, 2:01-CV-023 (TJW), 2002 WL 31738795, *4 (E.D. Tex. Feb. 1, 2002) (allowing discovery going back two years prior to the statute of limitations); *Tex. Grain Storage*, 2008 WL 11411844, at *7-8 (W.D. Tex. Apr. 24, 2008) (holding in an antitrust case that plaintiff was entitled to discovery "for a reasonable period of time antedating the earliest possible date of actionable wrong" and finding a look-back window of two years appropriate); *accord Fed. Trade Commission v. Lukens Steel Co.*, 444 F. Supp. 803, 805-06 (D.D.C. 1977).

[33] *Compare with Leamon v. KBR, Inc*., Civ. Act.  H-10-0253, 2010 WL 11668204, at *2 (S.D. Tex. Nov. 9, 2011) ("While there is no hard and fast rule, a 5-year discovery period is ordinarily sufficient.") (citing *Paananen v. Cellco P'ship*, No. C08-1042RSM, 2009 WL 3327227 (W.D. Wash. Oct. 8, 2009).

liability period (2016-2019) and also add on a reasonable one-year period that would place the beginning of the discovery period in this case at January 1, 2015, as stated in the Requests,[34] and allow for discovery post-dating the filing of the complaint.[35]  Defendants generalized objections, including the time period objection, should all be rejected.

## C.    The Requests Seek Documents Relevant To The Claims And Defenses In The Case.

Defendants interpose various objections that would unreasonably frustrate the NRA's right to obtain relevant, non-privileged, and otherwise discoverable information concerning the claims and defenses at issue in the case.  For the reasons outlined below, none of the objections pass muster under the discovery rules and should be rejected.  And although the NRA has no burden to do so, for the Court's convenience it explains the relevance of its Requests.[36]  Accordingly, the Court should order Defendants to make a complete production of the non-privileged documents responsive to the disputed Requests discussed below.

### 1.    The NRATV Requests

As explained above and in the FAC, the NRA contends that Defendants mislead the Association into allowing Defendants to develop, launch, and purchase with NRA funds NRATV from 2016 through 2019 they in fact knew it was not financially viable.[37]  Consistent with this allegation, in Request No. 31, the NRA requests "documents referring or relating to the creation,

---

[34] Ex. A at p. 8 ("Unless otherwise noted, the time period covered by these Requests is January 1, 2015 to the present.").

[35] *Benevis LLC v. Mauze & Bagby, PLLC*, 5:12-CV-36, 2015 WL 12763537, *5, *7 (S.D. Tex. Dec. 14, 2015) (setting a "one-year pre-advertising [discovery] cut-off date" in False Claims Act case).  *See also supra* notes 31-32 and related text.

[36] *Dailey*, 2014 WL 12585666, at *1 ("the party resisting discovery must show specifically how each request is not relevant or otherwise objectionable") (relying on *McLeod, Alexander, Power & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)

[37] FAC ¶¶ 24-27.

8

development, and launch of NRATV," thereby seeking documents relevant to the elements of its

fraud claim.  In particular, among other things, the Request includes documents concerning the

internal knowledge of Defendants concerning the likelihood of success of NRATV, strategies to

persuade the NRA to continue financing its development, the precise representations that were

made and the truth or falsity of those statements, as well as documents concerning internal attitudes

and perspectives on the platform relating to its likelihood of success.[38]

In response, Defendants interpose a litany of conclusory objections, which should be

rejected for all the same reasons as before.[39]  Defendants pretend that NRATV existed in the 1990s

and state they believe "it is not readily apparent what types of information would be responsive to

this Request.  Defendants are unable to respond further to this Request until they have met and

conferred with Plaintiff."[40]

However, no reasonable doubt exists concerning the plain and meaning of the Requests.

Plaintiffs' and non-response should not be countenanced by this Court and, indeed, should be a

refusal to respond under Federal Rule of Civil Procedure 34(b)(2) and result in forfeiture of all

objections.[41]  <u>Request No. 31</u> seeks undeniably relevant, non-privileged *documents about the*

---

[38] *Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 327 (Tex. 2001) (plaintiff
must establish representation was false); *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194,
217 (Tex. 2011) (to prove an action for common law fraud, the plaintiff must establish the
defendant either made the representation knowing it was false or made the representation
recklessly); *cf. Old Chief v. United States*, 519 U.S. 172 (1997) (noting the "standard rule that the
prosecution is entitled to prove its case by evidence of its own choice").

[39] *Compare* Ex. B. at pp. 17-18 *with Heller*, 303 F.R.D. at 483 (holding that "so-called
boiler-plate or unsupported objections—even when asserted in response to a specific discovery
request . . .—are likewise improper and ineffective"); Fed. R. Civ. P. 34(b)(1)(B) (stating that
objection must be made "with specificity"); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 583 (N.D.
Tex. 2008) ("General, boilerplate, and unsupported objections preserve nothing").

[40] Ex. B at pp. 17-18.

[41] *See also Lee, Inc. v. Flagstaff*, 173 F.R.D. 651, 656 (D. Mass. 1997) ("In short, there are
only three appropriate responses to a request for production of documents: (1) an objection to the

*creation, development, and launch of NRATV.* The Court should order Defendants to produce all documents requested by <u>Request No. 31</u> forthwith.

For similar reasons the Court should also compel production of all documents sought by <u>Request No. 32</u>, which strikes at the heart of the allegations in the FAC.[42] Defendants' conclusory objections fail on their face and their attempt to re-write the Request should fare no better. Contrary to the discovery rules, the re-write fosters only confusion about the scope of what Defendants will produce[43] and fails to identify with precision the particular materials being withheld, in violation of Fed. R. Civ. P. 34(b)(1)(C).[44]

Additionally, for the same reasons as above, the Court should order production of additional and manifestly relevant NRATV-related requests, including <u>Request No. 34</u> (seeking documents concerning "statements made to the NRA in reliance or based on" Defendants own internal forecasting);[45] <u>Request No. 35</u> (documents concerning the actual "financial performance" of NRATV, as opposed to forecasted or predicted performance);[46] <u>Request No. 36</u> (requesting

---

scope, time, method and manner of the requested production; (2) an answer agreeing to the requested scope, time, place and manner of the production; or (3) or a response offering a good faith, reasonable alternative production, which is ***definite in scope, time, place or manner.***") (emphasis added); *Schooler v. Wal-Mart Stores*, Civil Action No. 14-2799, 2015 WL 4878434, at *1 (E.D. La. Aug. 14, 2015) (rejecting objections where, as here, they are subject to unfounded or waived objections that obfuscate and confuse both plaintiff and the court).

[42] *Compare* Ex. B. at p. 18 *with* FAC ¶¶ 25-26.

[43] *Flagstaff*, 173 F.R.D. at 656 (the responding party must make statements that are "definite in scope, time, place or manner" if they elect to respond in part); *Heller*, 303 F.R.D. at 483 (holding that objections and response that make "it impossible to know whether information has been withheld and, if so, why" are improper because they obscure the conduct of the responding party and cause plaintiffs to expend valuable resources to truly understand them).

[44] Fed. R. Civ. P. 34(b)(1)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection.").

[45] Ex. B. at p. 19.

[46] *Id*. at p. 19.

documents about internal evaluations of the "financial value of NRATV")[47]; Request No. 37 (seeking documents about "commercial sponsorships"); [48] Request No. 51 (similar to No. 36).[49]

The Requests also seek viewership numbers and analytics maintained, developed, or presented by Defendants, which directly concern alleged misstatements made by Defendants and the Defendants' intent.[50] Here, too, the NRA has been frustrated by Defendants discovery abuses and lack of transparency. For instance, rather than respond directly to Request No. 46, which requested the substance of the relationships between Defendants and "third-party vendors" pertaining to viewership analytics, Defendants promise to produce *only* "documents relating to the referenced third-party vendors and NRATV."[51] The Court should not allow Defendants' obfuscation that block the NRA from understanding what they have agreed to produce,[52] and, therefore, should order Defendants to make a complete production to Request No. 46. For similar reasons, the Court should reject Defendants' objections made to Request No. 47 (requesting

---

[47] *Id.* at pp. 19-20.

[48] *Id.* at 20. The Court should reject Defendants absurd contention that they have no documents concerning corporate or other commercially related sponsorships because NRATV did not run "commercials." *Id.* at 20. This absurd word game cannot stand. According to Miriam-Webster Dictionary Online, when used as an adjective, as in Request No. 37, none of the listed definitions relation to the running of paid commercials. *See* https://www.merriam-webster.com/dictionary/commercial.

[49] Ex. B at pp. 25-26.

[50] FAC ¶¶ 28-37.

[51] Ex. B at pp. 23-24. Defendants conclusory objections should be rejected here for all the reasons as before. *Heller*, 303 F.R.D. at 483; *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 583 (N.D. Tex. 2008) ("General, boilerplate, and unsupported objections preserve nothing").

[52] Fed. R. Civ. P. 34(b)(1)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection."); *Flagstaff*, 173 F.R.D. at 656 (the responding party must make statements that are "definite in scope, time, place or manner" if they elect to respond in part); *Heller*, 303 F.R.D. at 483 (holding that objections and response that make "it impossible to know whether information has been withheld and, if so, why" are improper because they obscure the conduct of the responding party and cause plaintiffs to expend valuable resources to truly understand them).

different types of and various aspects related to "viewership data," which Defendants ambiguously reduce in word game to "relating to viewership analytics of NRATV");[53] and Request No. 48 (seeking documents concerning "request[s] by the NRA for unique viewership data [from Defendants]," which Defendants self-servingly re-write to mean "documents relating to the engaged viewership of NRATV," a response that is completely different than what the Request seeks and happens to violate Federal Rule of Civil Procedure 34(b)(1)(C);[54] Request No. 49 (similar to previous).[55]

Defendants also refuse to produce documents in response to three narrow Requests concerning "Clean Skies TV."[56]  As an initial matter, Defendants conclusory assertion of lack of relevancy is bereft of an explanation and, therefore, along with the other conclusory objections, should be rejected.[57]  In any event, the relevancy of Clear Skies TV is clear in the FAC. The FAC alleges that prior to launching NRATV, Defendants had developed and launched a similar platform known as Clear Skies TV with another client and, just like NRATV, the digital media platform

---

[53] *Compare* Ex. B. at 24 *with* Fed. R. Civ. P. 34(b)(1)(C) (requiring that a responding party who objects to all or part of a request must specify whether any responsive materials are actually being withheld on the basis of the objection).  Defendants complaint that the Request is "without limitation to time or scope" and could sweep back to the 1990s is belied by the fact that the NRA is only requesting responsive documents from January 1, 2015 to the present.

[54] Ex. B. at p. 24.  For the same reasons as above, Defendants word games do not suffice to withstand a Motion to Compel, and this blatant non-response in particular warrants a finding that the Defendants have waived all objections and must make a complete production.  *See Lopez* 327 F.R.D. at 583 ("Neither is it appropriate to serve objections that . . . have no factual basis for at the time of service but that the party or attorney is seeking to preserve for any response but objectionable materials or information that may later be found.").

[55] Ex. B at p. 25.

[56] *Id.* at pp. 21-22.

[57] *Dailey*, 2014 WL 12585666, at *1 ("the party resisting discovery must show specifically how each request is not relevant or otherwise objectionable").

"was an unmitigated failure."[58]  In light of Defendants' experience and knowledge of Clear Skies TV, the FAC alleges that Defendants "had reason to know that even its most conservative projections for NRATV were fanciful"[59] in light of the Clear Skies TV experience.  In other words, Requests Nos. 41-43 are directed towards establishing that Defendants acted with the requisite knowledge when they represented that NRATV would likely become self-sustainable and later that it was valued at particular amounts.  Accordingly, the Court should set aside Defendants unsubstantiated objects, as before, and compel production.

### 2.    **The Fraudulent Billing Requests**

As alleged in the FAC, one of the alleged methods through which the NRA was defraud by Defendants was through the submission of invoices and bills that lacked any factual foundation.[60] In addition, the FAC alleges that one among the false representations made to the NRA was that Defendants maintained adequate backup and substantiation for its invoices.[61]  The NRA, in Request No. 17, logically sought documents concerning "backup documentation, substantiation, justification, or materials of any kind maintained by Defendants in support of their billing statements or requests for payment made to the NRA."[62]

Notwithstanding the above, Defendants refuse to produce these materials.  Aside from largely unsubstantiated, conclusory objections, which must be disregarded,[63] Defendants' decision not to produce these documents rests on the phrase "material of any kind" when used in

---

[58] FAC ¶ 43.

[59] *Id.*

[60] FAC ¶ 131.

[61] *Id.* at ¶ 121.

[62] Ex. B at p. 11.

[63] *Heller*, 303 F.R.D. at 483; *Lopez* 327 F.R.D. at 583.

combination with the word "support."[64]   The linguistic gymnastics aside, the Request seeks relevant information and the objections should be rejected out of hand.[65]   Indeed, the fact that the NRA was entitled to the very information sought in Request No. 17 pursuant to the Books-and-Records Clause in the Services Agreement only underscores the lack of merit in Defendants' objections.[66]

In addition, the NRA contends that, as part of Defendants plan to thwart the Association's investigation of their fraudulent practices, Defendants considered Oliver North as "an insurance contract" against the NRA.[67]   This is because AMc facilitated giving North a lucrative agreement to film feature documentaries for NRATV that AMc enabled him *not* to perform, in effect giving him large sums of money for nothing.[68]   This "insurance contract" was effectively triggered when, with their backs against the wall, Defendants used North in connection with a (failed) coup of the NRA.[69]   Accordingly, the NRA propounded Request No. 56 seeking documents "describing or otherwise referring to North "as an 'insurance' or an 'insurance contract,' and concerning the NRA."[70]   Defendants object wholesale to producing such documents and their principal objection

---

[64] Ex. B at p. 11.  Suffice it to say, this interpretation of the Request is strained at best and ameliorated by the fact that the NRA only seeks documents from January 1, 2015 to the present.

[65] *See Schooler v. Wal-Mart Stores*, Civil Action No. 14-2799, 2015 WL 4878434, at *1 (E.D. La. Aug. 14, 2015) (rejecting objections where, as here, they are subject to unfounded or waived objections that obfuscate and confuse both plaintiff and the court); *Lopez* 327 F.R.D. at 583 ("Neither is it appropriate to serve objections that . . . have no factual basis for at the time of service but that the party or attorney is seeking to preserve for any response but objectionable materials or information that may later be found.").

[66] FAC ¶ 50.

[67] *Id.* at ¶¶ 47-57, 59-68.

[68] *Id.* at ¶¶ 67-68.

[69] *Id.* at ¶¶ 70-74.

[70] Ex. B at pp. 28-29.

appears to vagueness.[71]  However, given the above discussion there is nothing ambiguous about what the NRA seeks.

Finally, <u>Request No. 64</u> seeks *non-privileged* documents of Defendants concerning their internal "reaction" and "actual and contemplated response" to the NRA initiating the Books-and-Records lawsuit in April 2019.[72]   The request is relevant because, as alleged in the FAC, the lawsuit emboldened Defendants, at least in part, to attempt the removal of the NRA leadership later that month.[73]  Defendants conclusory assertion of harassment and lack of relevance do not withstand any scrutiny,[74] and the Court should grant the Motion to Compel in part as to Request No. 64.

### 3.   <u>The Intellectual Property Requests</u>

In addition to the above, the FAC alleges that Defendants misused the NRA's name and intellectual property to create a false impression on their website that (1) the NRA remained affiliated with AMc as a client and (2) the NRA endorsed AMc's services, specifically with respect to NRATV, amounting to false association and false endorsement in violation of  the 15 U.S.C. § 1125(a)(1)(A) of the Lanham Act.[75]

To better understand the composition and history of AMc's website, the NRA served a number of Requests directed to documents concerning the substance of the website, the related

---

[71] *Id.* at pp. 28-29.

[72] Ex. B at 31.

[73] FAC ¶¶ 70-74

[74] *See supra* note 17 and related text.

[75] In addition, as explained in the NRA's recent Opposition to the Defendants' Motion to Dismiss, Defendants likewise engaged in trademark and copyright infringement ECF No. 43 at 22-23

decision-making process, and the NRA's intellectual property, including the graphics and photographs depicted in Exhibits A and C to the FAC.[76]

Defendants interpose extraneous objections to these Requests, but for the most part agree to produce responsive, non-privileged documents.  However, the parties part ways over the time period applicable to certain Requests, in particular <u>Request Nos. 1-2 and 4</u>.  In their Responses to these Request, Defendants commit to producing documents between only June 25, 2019, the date the parties terminated the Services Agreement, and November 18, 2019, a date interposed for reasons unknown.[77]  For purposes of these Requests, the Court should apply the one-year doctrine discussed in detail above with respect to the temporal scope of discovery related to the intellectual property claims.[78]  Accordingly, the Court should grant the motion in part and compel Defendants to produce non-privileged documents responsive to <u>Requests Nos. 1-2 and 4</u> from June 25, 2018 and continuing to at least the present.

Finally, Defendants have not agree to produce any documents with respect to <u>Request No. 5</u>, which seeks communications between Defendants and potential clients that directly concern the NRA after the date June 25, 2019.[79]  The Request is relevant and proportional because the requested universe of documents will shine light into whether discussions concerning the degree to which the improper use of the NRA's trademarks and other intellectual property on AMc's website occurred and, if so, whether they did or did not result in generating new business for

---

[76] Ex. B. at pp. 4-10; FAC ¶¶ 80-102

[77] *Id.* at pp. 4-6

[78] *See supra* notes 31-32 and related text.

[79] Ex. B. at p. 6.

16

Defendants, which is relevant to damages under the Lanham Act.[80]  Defendants refusal to produce a shred of paper in response appears mainly grounded on a faulty and generalized objection that is predicated on the false premise.  Contrary to Defendants' insistence throughout their Responses, the Requests do not seek literally "all documents" from Defendants.[81]   To the contrary, as a matter of law, Defendants have no greater burden than to conduct a reasonable search for each particular Request and to produce all responsive, non-privileged documents therefrom. Setting aside the Defendants' remaining conclusory objections,[82] the Court should also grant the Motion to Compel as to <u>Request No. 5</u>.

**D.**     **The Court Should Award Sanctions For Defendants' Extreme Discovery Malfeasance**

Given the level of obstruction committed by Defendants over multiple their Responses; their frivolous dispute over the temporal scope of discovery, their continuous refusal to produce documents, and their constant refusal to meet-and-confer with Defendants,[83] the NRA respectfully requests that the Court sanction Defendants and award the NRA attorney's fees and cost in connection with this motion.[84]

---

[80] *See, e.g.*, *Schlotzsky's Ltd. v. Sterling Publ'g And Nat'l Distrib. Co., Inc.*, 520 F.3d 393, 400 (5th Cir. 2008) ("The Lanham Act's remedial provision is broad. A plaintiff is entitled, under the 'principles of equity,' *to recover the profits a defendant gained from its violation* of the Act.")

[81] Ex. B at p.6.

[82] *See supra* note 17 and related text.

[83] *See* certificate of conference and new email of January 10, 2020 declining to produce any documents in the near term.

[84] Fed. R. Civ. P. 37(d).

## IV.

## <u>CONCLUSION</u>

For all the reasons stated above, the Court should grant the NRA's Motion to Compel in its entirety, order production of the Requests identified herein within 45 days, and award the NRA reasonable attorney's fees and expenses for bringing its Motion.

Dated:  January 22, 2020                         Respectfully submitted,

**BREWER, ATTORNEYS & COUNSELORS**

By:      */s/ Jason C. McKenney*
        Michael J. Collins, Esq.
        State Bar No. 00785493
        mjc@brewerattorneys.com
        Jason C. McKenney, Esq.
        State Bar No. 24070245
        jcm@brewerattorneys.com
        1717 Main Street, Suite 5900
        Dallas, Texas 75201
        Telephone: (214) 653-4000
        Facsimile: (214) 653-1015

**ATTORNEYS FOR THE PLAINTIFF
COUNTER-DEFENDANT NATIONAL RIFLE
ASSOCIATION OF AMERICA**

## CERTIFICATE OF CONFERENCE

I hereby certify that the NRA has met its obligation to attempt to confer with counsel regarding the substance of the Motion to Compel.  On December 9, 2019, counsel for the NRA emailed counsel for Defendants and offered to meet and confer over Defendants' objections to the NRA's Requests for Production of Documents on Tuesday, Wednesday or Thursday of that week.[85]  On January 2, 2020, counsel for the NRA again emailed counsel for Defendants, noting their failure to respond to the December 9 email and inquiring if they were available the following day to discuss Defendants' objections.[86]  On the following day, counsel for Defendants responded and indicated that it was "premature at this point" for a conference.[87]  On the same date, in response counsel for the NRA indicated it wished to confer on Monday, January 6.[88]  Counsel for Defendants did not respond to that correspondence.  In response, counsel for the NRA indicated it wished to confer on Monday, January 6.[89]  Counsel for Defendants did not respond to that correspondence until January 10, in which it retracted its offer to produce documents in the near term.[90]


*/s/ Jason C. McKenney*
Jason C. McKenney

---

[85] Ex. D. at 1.

[86] Ex. C at 3.

[87] Ex. C at 1-2.

[88] Ex. C at 1-2.

[89] Ex. E. at 2-3

[90] Ex. E at. 1.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically

served via the Court's electronic case filing system upon all counsel of record on this 22nd day of

January 2020

*/s/ Jason C. McKenney*
Jason C. McKenney