# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| **Plaintiff and Counter-Defendant,** | § § | |
| **and** | § § | |
| **WAYNE LAPIERRE,** | § § § | |
| **Third-Party Defendant,** | § § | |
| **v.** | § § | **Civil Action No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** | § § § | |
| **Defendant and Counter-Plaintiff,** | § § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG,** | § § § § § | |
| **Defendants.** | § § | |

To:     All Defendants

C/o:    Jay Madrid, Esq.
        Dorsey & Whitney LLP
        300 Crescent Court, Suite 400
        Dallas, Texas 75201

**PLAINTIFF'S FIRST SET OF**
**REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS**

Plaintiff the National Rifle Association (the "NRA"), by counsel and in accordance with

Rule 34 of the Federal Rule of Civil Procedure, hereby propounds its First Set of Requests for

Production of Documents ("Requests") to Defendants Ackerman McQueen, Inc. ("Ackerman"), Mercury Group, Inc. ("Mercury" and, together with Ackerman, "AMc"), Henry Martin ("Martin"), William Winkler ("Winkler"), Melanie Montgomery ("Montgomery"), and Jesse Greenberg ("Greenberg," together with Martin, Winkler, Montgomery and AMc, the "Defendants").  You are requested to respond to these Requests separately and fully, subject to the Instructions and Definitions set forth herein, and to produce the requested documents to the undersigned counsel for Plaintiff, the NRA, within thirty (30) days after service of these Requests.

## I.

## INSTRUCTIONS AND DEFINITIONS

1.      These Requests are continuing in nature as provided in Federal Rule of Civil Procedure Rule 34, and, therefore, require you to supplement your answers when appropriate or necessary to make them correct and complete.

2.      Your responses to these Requests must include and reflect all information in your possession, or subject to your custody or control, whether directly or indirectly. Information is deemed to be within your possession, custody, or control if:

      a.      it is within your knowledge or possession;

      b.      it is within the knowledge or possession of any other person or entity and you have the right to obtain the information from such person or entity;

      c.      it is contained in a document within your physical control; or

      d.      it is contained in a document within the physical control of any other person or entity, and you:

          i.      own the document in whole or in part;

          ii.      have a right by contract, statute, or otherwise, to use, inspect,

2

examine or copy that document on any terms; or

iii.     have, as a practical matter, been able to use, inspect, examine, or copy that document when you have sought to do so.

3.     Unless otherwise indicated, the use in these Requests of the name of any person,[1] including but not limited to the name of a party, shall specifically include all past and present employees, officers, directors, agents, representatives, general partners, limited partners, and attorneys of the person, party, or business organization.

4.     These Requests seek production of responsive documents in their entirety, without abbreviation, deletion, or redaction.

5.     You are to produce the requested documents as they are kept in the ordinary course of business or you must organize and label them to correspond to the categories in the Requests.

6.     You are to produce the requested documents in the form(s) or format(s) specified in **Appendix A** to these Requests.

7.     In the event you interpose an objection to a Request, you should clearly indicate to which part or portion of the Request the objection is directed and provide all documents responsive to the part(s) or portion(s) of the Request to which objection is not made, as if such part(s) or portion(s) of the Request were propounded separately. You must state specifically the legal and factual basis for the objection, the extent to which you are refusing to comply with the Request, and whether responsive materials are being withheld on the basis of your objection. Any ground not stated in a timely objection is waived unless your failure to object is excused by the Court for good cause shown.

---

[1] *See* definition of "person," *infra* at ¶ 26.

3

8.      In the event that you seek to withhold any document, thing, or information on the basis that it is properly entitled to some privilege or other limitation of discovery, you are requested to supply undersigned counsel for the Plaintiff with a numerical list of the document(s), thing(s) or information for which privilege or limitation of discovery is claimed, indicating:

a.      the name of the custodian of such document, thing or information;

b.      the name of each author, writer, sender, creator or initiator of such document, thing or information;

c.      the name of each recipient, addressee, or party for whom such document, thing or information was intended, if any;

d.      the date of each such document, thing or information, if any, or an estimate thereof and so indicated as an estimate if no date appears on said item;

e.      the general subject matter as described in the document, thing or information; and

f.      the claimed grounds for privilege or limitation of discovery.

9.      Unless otherwise defined, the terms used herein should be read and construed in accordance with the English language, the Federal Rules of Civil Procedure, and the ordinary meanings and definitions attached thereto.

10.     If you believe that the use of any term in any Request is ambiguous or if you do not understand any of these Requests, definitions, or instructions, before asserting an objection related thereto, you should immediately contact the undersigned and seek a clarification.

11.     For purpose of interpreting or construing the scope of these Requests, the defined terms shall be given their most expansive and inclusive meanings, unless specifically limited by the language of an individual Request.  You should, therefore:

    a.    construe the words "**and**" as well as "**or**" in the disjunctive or conjunctive, as necessary to make the Request more inclusive;

    b.    construe the words "**any**" or "**each**" to include and encompass "**all**;"

    c.    construe the singular form of the word to include the plural and the plural form to include the singular;

    d.    construe the term "**including**" to mean "**including, but not limited to**;" and

    e.    construe a masculine noun or adjective to include the feminine and vice versa.

12.    The term "**2017 Services Agreement**" refers to the agreement between the NRA and Ackerman McQueen, Inc, dated April 30, 2017, as amended May 6, 2018.

13.    The term "**action**" refers to the above-captioned litigation pursuant to which these Requests are served.

14.    The term "**AMc**" refers to Defendant Ackerman, including its subsidiary, Mercury Group, Inc. ("Mercury"), and includes Ackerman and Mercury's officers, directors, employees, principals, contractors, agents, attorneys or other persons acting on their behalf, including all successor or predecessor entities.

15.    The term "**American Heroes**" refers to the NRATV documentary series hosted by Mr. Oliver North ("**North**")

16.    The term "**communication**" refers to any oral or written utterance, notation, statement and electronically stored information of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings between or among two or more persons, and transfer or exchange between two or more persons of any information, whether

through an intermediary or by written, electronic, computer, or oral means, including any written summary of any of the foregoing communications.

17.  The term "**Original Complaint**" refers to the Complaint filed in this action on August 30, 2019.

18.  The term "**Amended Complaint**" refers to the Amended Complaint filed in this action on October 25, 2019.

19.  The term "**document**" means any writing or record of any sort and the term should be construed in its broadest sense to include, but not limited to, all original and non-identical copies, whether by reason of marginalia or other notes or alterations, and all preliminary or subsequent drafts of the following items, whether printed or recorded or reproduced by any other mechanical or electronic process, or written or produced by hand: agreements, communications, correspondence, letters, telegrams, cables, telexes, memoranda, records, books, journals, summaries of records or papers, minutes, calendars, affidavits, recordings (video or audio), electronic mail, text messages, memoranda of telephone calls, conversations, telephone calls, meetings, contracts, notes, marginal comments appearing on or affixed to any document, day timers, date books, messages, letters of credit, invoices, statements of account, financial statements, receipts, promissory notes, security agreements, deeds of trust, instruments purporting to grant or evidencing any security interest or lien, loan agreements, projections, working papers, securities, ledgers, cancelled checks and bank drafts (front and back), check stub receipts, and other data, documents, papers, or writings of whatever description including, but not limited to, any data or information which is electronically recorded or shared, contained in any computer, mobile device, or other information retrievable device or that otherwise can be obtained or translated through detection devices or other means into any reasonably useable or recordable

format, including but not limited to the scope of the definition of "document" provided in the Federal Rules of Civil Procedure.

20. The term "**electronically stored information**" or "**ESI**" refers to any information created, manipulated, communicated, stored, or best utilized in digital form or with computer technology of any type, including any electronically stored data on magnetic or optical storage media (*e.g.*, hard drives or disks, backup tapes, CD-ROMs, DVD-ROMs, JAZ and Zip drives, thumb drives, and floppy disks) as an "active" file or files (*i.e.*, readily readable by one or more computer applications or forensic software); any "deleted" but recoverable electronic files on said media; any electronic file fragments (*i.e.*, files that have been deleted and partially overwritten with new data); and "slack" (*i.e.*, data fragments stored randomly from random access memory on said media during the normal operation of a computer (RAM slacks) or residual data left on said media after new data has overwritten some but not all of previously stored data).

21. The term "**May 2018 Amendment**" refers to the amendment to the 2017 Services Agreement, dated May 6, 2018.

22. "**Media**" means an object or device, real or virtualized, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

23. "**Metadata**" means and refers to information about electronic documents or data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

7

24.    "**Native data format**" means and refers to the format of ESI in which it was originally generated and/or normally kept by the producing party in the usual course of its business and in its regularly conducted activities.

25.    The term "**NRA**" refers to the Plaintiff, the National Rifle Association of America, and includes its officers, directors, employees, principals, attorneys or other persons acting on their behalf, including all successor or predecessor entities.

26.    The term "**person**" refers to all natural persons, groups of natural persons acting in a collegial capacity (*e.g.*, a committee or counsel), corporations, partnerships, associations, trusts, joint ventures, and any other incorporated or unincorporated business, governmental, public, or legal entity, including, when applicable, the person's subsidiaries, controlled persons, controlling persons, shareholders, officers, directors, employees, agents, or other persons acting or purporting to act on its behalf.

27.    The term "**refer(s) or relate(s) to**" means concerning, relating to, reflecting, referring to, having a relationship to, pertaining to, identifying, containing, pertinent to, compromising, setting forth, showing, disclosing, describing, explaining, summarizing, evidencing, or constituting, directly or indirectly, in whole or in part, or to be otherwise factually, legally, or logically connected to the subject matter of the particular request.

28.    **Time Period.**  Unless otherwise noted, the time period covered by these Requests is January 1, 2015, to present.

29.    The term "**You**" and "**Your**" refers to each and every Defendant, including any subsidiary, affiliate, joint venture, or other business arrangement, as well as officers, directors, employees, principals, contractors, agents, attorneys or other persons acting on their behalf, including all successor or predecessor entities.

## II.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents referring or relating to the design and composition of AMc's website (www.am.com), including but not limited to, all documents describing, providing insight to, or otherwise concerning Defendants' actual or contemplated decision to include references to the NRA and/or use the NRA's intellectual property and copyrights on the website (including, but not limited to, the graphics and images depicted in Exhibits A and C of Plaintiff's First Amended Complaint).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:**

All documents referring or relating to the design and composition of AMc's website (www.am.com) that provide information sufficient to identify the individuals involved in the decision-making related to the website's content, design, and composition.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:**

All documents referring or relating to whether Defendants had the NRA's approval, authorization, and/or agreement to use of NRA's name, intellectual property, graphics, and other copyrighted material on the AMc website (www.am.com), including but not limited to, the

9

graphics and images depicted in Exhibits A and C of Plaintiff's First Amended Complaint, since June 25, 2019.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:**

All documents referring or relating to the NRA's intellectual property, graphics, and/or other copyrighted material that belong to the NRA (including, but not limited to, the graphics and images depicted in Exhibits A and C of Plaintiff's First Amended Complaint), either pursuant to the Services Agreement or otherwise, and that is currently in Defendants' possession or has been in Defendants' possession as of June 25, 2019.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:**

All documents referring or relating to any communications between Defendants and any potential client of AMc regarding the NRA, since June 25, 2019.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:**

All documents referring or relating to Defendants' actual or contemplated decision and/or decision-making process concerning adding the word "legacy" to the graphics (including but not limited to, the graphics and images depicted in Exhibits A to Plaintiff's First Amended Complaint) present on AMc's website (www.am.com).

10

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:**

All documents which relate to the date(s) the word "legacy" first appeared in the graphics and images depicted in Exhibit 5 to Defendants' Motion to Dismiss for Failure to State a Claim, *see* ECF No. 11-5, on AMC's website (www.am.com).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8:**

All documents referring or relating to the decision and/or decision-making process concerning leaving the graphics and images depicted in Exhibits A and C to Plaintiff's First Amended Complaint on AMc's website (www.am.com), after June 25, 2019.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:**

All documents referring or relating to the decision and/or decision-making process concerning whether to seek a license from the NRA to use the graphics and images depicted in Exhibits A and C to Plaintiff's First Amended Complaint on AMc's website (www.am.com), after June 25, 2019.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 10:**

All documents referring or relating to the payment of royalties by Defendants to the NRA for its use of the graphics and images depicted in Exhibits A and C to Plaintiff's First Amended Complaint on its website ([www.am.com](www.am.com)), after June 25, 2019.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11:**

All documents which show each employee, officer, representative of Defendants who worked exclusively on the NRA account, at any point in time.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12:**

All documents which reveal the identity of all individuals who worked on the NRA account and any other of Defendants' clients other than the NRA, including but not limited to the following:

> a.  any information relating to the amount of work performed by each individual on behalf of a client other than the NRA, in comparison to work performed on behalf of the NRA;
>
> b.  billing statements to other clients reflecting time spent or work or tasks performed (whether broken down by hours, tasks, or otherwise) applicable to each individual;
>
> c.  any document referring or relating to the allocation of time, tasks, work performed, and/or any other metric across clients for each individual; and

d.  any such individual's timesheets or task lists.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13:**

Documents which show each piece of equipment or each tangible asset purchased by Defendants on behalf of the NRA and thereafter billed to the NRA (either in whole or in part).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14:**

For each piece of equipment or asset relevant to Request No. 13, all documents concerning whether another client of the Defendants was invoiced, billed, or charged for the same piece of equipment or asset (either in whole or in part).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15:**

For each piece of equipment or asset relevant to Request No. 13, all documents concerning the basis (or lack thereof) for invoicing, billing, or charging the other client the requested sum of money.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16:**

For each piece of equipment or asset relevant to Request No. 13, all documents concerning whether such equipment was used in connection for work on behalf of other AMc clients.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:**

All documents referring or relating to backup documentation, substantiation, justification, or materials of any kind maintained by Defendants' in support of their billing statements or requests for payment made to the NRA.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:**

All documents referring or relating to the maintenance or retention of the materials referenced in Request No. 13.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:**

All documents referring or relating to Defendants' record-keeping practices relating to the materials referenced in Request No. 13.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:**

All documents referring or relating to any corporate policy, practice, and/or procedure (whether formal or otherwise) concerning the information used to generate, create, and/or develop billing statements to clients and/or the NRA.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 21:**

All documents supporting, undermining, or otherwise concerning Defendants' records which support their billing statements.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 22:**

All documents supporting AMc's statement, identified in Paragraph 78 of the First Amended Complaint, that AMc "retains records of all the work to prove it."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 23:**

All documents supporting AMc's public statement, identified in Paragraph 78 of the First Amended Complaint, that "[e]very expense incurred on behalf of the [NRA] was directed by the NRA at the highest level, always with personal knowledge and approval of Wayne LaPierre."

**RESPONSE:**

15

**REQUEST FOR PRODUCTION NO. 24:**

All documents referring or relating to AMc employee's budgetary compliance, invoicing, and payments responsibilities regarding work performed on behalf of the NRA, including but not limited to:

      a.  documents providing information to identify the individuals who were responsible for these duties; and,

      b.  documents sufficient to show the scope of the duties involved in their positions as to budgetary compliance, invoicing, and payments to the NRA.

      **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 25:**

All billing statements, invoices, or other requests for payment made by any Defendant to the NRA and any accompanying documents.

      **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 26:**

All documents referring or relating to the "annual budgeting process" described in Paragraph 11 of Your Counterclaims and Third-Party Complaint, including but not limited to, all communications between any Defendant and the NRA concerning the "annual budgeting process."

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 27:**

All documents referring or relating to Defendants' actual or contemplated decision to fire, let go, lay off, or otherwise cease employment at AMc any employee, officer, representative, consultant, or any other individual between August and December of 2018, including, but not limited to, documents concerning actual or potential factors in the decision-making process and the basis for any such decision(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 28:**

All documents concerning Defendants' actual or contemplated decision to fire, let go, lay off, or otherwise cease employment at AMc any employee, officer, representative, consultant, or any other individual between August and December of 2018, including, but not limited to, any related severance documents and termination notices.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 29:**

All documents concerning whether to change or not to change the amounts billed or invoiced to the NRA as a result of the decision to terminate, fire, or otherwise no longer employ individuals who worked in some capacity at AMc, including but not limited to, documents concerning the basis for the decision to change or not to change the amounts billed or invoiced to the NRA.

**RESPONSE:**

17

**REQUEST FOR PRODUCTION NO. 30:**

All documents that support, undermine, or otherwise concern Your assertion in Paragraph 2 of Your Original Answer, that AMc "denies" that the parties' relationship "rose to the level of fiduciaries."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 31:**

All documents referring or relating to the creation, development, and launch of NRATV.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 32:**

All documents concerning any meeting(s) between Angus McQueen or Defendants and Wayne LaPierre or other representatives from the NRA, regarding the creation, development, and launch of NRATV, such as the meeting in 2016 discussed in Paragraphs 25 and 26 of the First Amended Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 33:**

All documents referring or relating to financial projections, estimates, forecasts, and/or predictions concerning NRATV.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 34:**

All documents concerning statements made to the NRA in reliance or based on the documents and materials referenced in Request No. 33.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 35:**

All documents referring or relating to the financial performance of NRATV.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 36:**

All documents concerning the financial value of NRATV.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 37:**

All documents referring or relating to any commercial sponsorships of NRATV.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 38:**

All documents referring or relating to the substance of AMc's statement, made on or about October 28, 2019, that "Ackerman McQueen routinely offered and toward the end of the relationship demanded that an outside firm audit NRATV performance but LaPierre refused."

**RESPONSE:**

19

**REQUEST FOR PRODUCTION NO. 39:**

All documents referring or relating to Cambridge Analytica and any actual or potential services related to NRATV.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 40:**

All documents referring or relating to Performance Improvement Partners and any actual or potential services related to NRATV.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 41:**

All documents referring or relating to The American Clean Skies' "Clean Skies TV" project, produced or otherwise managed by Defendants.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 42:**

All documents referring or relating to information on viewership or viewership analytics for The American Clean Skies' "Clean Skies TV" project.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 43:**

All documents referring or relating to the actual or contemplated basis for the ultimate cancellation of the The American Clean Skies' "Clean Skies TV" project.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 44:**

All documents referring or relating to NRATV viewership, including but not limited to, documents concerning viewership numbers, analytics, or data claiming to represent, correspond, or otherwise relate to "unique," "genuine, "complete," "incomplete," and "incidental," "engaged," or "total" views.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 45:**

All documents referring or relating to the actual or contemplated measurement of unique viewers of NRATV.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 46:**

All documents referring or relating to efforts to procure, secure, contract with, or to use a third-party vendor (e.g., Google Analytics) that would facilitate, assist in, or otherwise perform work related to the development, generation, creation, provision, and/or presentation of viewership numbers, metrics, or analytics related to NRATV.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 47:**

All documents referring or relating to the provision or presentation of NRATV viewership numbers, data, metrics, and/or analytics to the NRA, including but not limited to:

a.  the presentations and materials provided at the thirteen meetings that occurred on or about the dates identified in Paragraph 28 of the First Amended Complaint;

b.  all drafts of those or any other viewership presentations and accompanying materials; and,

c.  all communications related to any such meeting and/or any other provision or presentation of NRATV viewership data, metrics, and/or analytics to the NRA,

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 48:**

All documents referring or relating to any request by the NRA for unique viewership data for NRATV.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 49:**

All documents concerning Defendants' actual or contemplated response to any request by the NRA for unique viewership data for NRATV, as well as documents concerning factors that were part of Defendants' decision-making process or the basis for its decision as to how to respond.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 50:**

All documents referring or relating to Defendants' practice of treating the presentations made at the thirteen meetings that occurred on or about the dates identified in Paragraph 28 of the First Amended Complaint as confidential, including but not limited to, documents and information concerning Defendants' decision-making process and any actual or potential factors considered in that process.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 51:**

Documents referring or relating to financial valuations of NRATV.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 52:**

Documents referring or relating to the letter, dated May 13, 2019, referenced in Paragraph 44 of the First Amended Complaint, including but not limited to, documents concerning the purpose of and the basis for the statement by Defendant Montgomery that "live

23

production is in place for several reasons, not one of which was to accumulate massive live viewership numbers."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 53:**

Documents and information sufficient to identify the individuals involved in the creation, development, and transmission of the letter and statement identified in Request No. 53.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 54:**

Documents referring or relating to Defendants' statement referenced in Paragraph 44 of the First Amended Complaint that one "could conceivably stop the live stream component of NRATV without significantly affecting the network's viewership performance," including but not limited to, documents concerning the purpose and the basis for that statement, as well as information sufficient to identify the individuals involved in the creation, development, and transmission of that letter and statement.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 55:**

All documents referring or relating to any actual or contemplated actions, conduct, behavior, or statements made or undertaken by Defendants for the purpose and/or effect of slowing down, stopping, impeding, obstructing, delaying, or otherwise avoiding the investigation

by the NRA launched pursuant to the Records-Examination Clause in the Services Agreement referenced in Paragraph 50 of the First Amended Complaint

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 56:**

All documents referring to, describing, or otherwise referring to North as an "insurance" or an "insurance contract," and concerning the NRA.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 57:**

All documents referring or relating to contract negotiations with North, including but not limited to, documents concerning the actual or potential impact of the negotiations (including but not limited to draft term sheets or contracts) and ultimate contact on North's relationship with the NRA.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 58:**

All documents referring or relating to the impact (financial or otherwise) of North joining NRATV.

**RESPONSE:**

25

**REQUEST FOR PRODUCTION NO. 59:**

All documents concerning any concerns, complaints, or inquiries related to the pace of filming episodes for American Heroes.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 60:**

All documents concerning the consequences of not filming American Heroes episodes in a timely manner or in a manner arguably inconsistent with the language of the May 2018 Amendment and/or North's contract with AMc

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 61:**

All documents referring or relating to the letter sent by Defendant Winkler on August 27, 2018, as referenced in Paragraph 53 of the First Amended Complaint, including but not limited to:

    a.  documents concerning the actual or contemplated purpose and/or effect of sending the letter;

    b.  documents concerning the processes of selecting and identifying the materials referenced in or attached to the letter; and,

    c.  documents and information sufficient to identify the individuals involved in the creation, development, and transmission of that letter.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 62:**

All documents referring or relating to the letters sent by Defendant Winkler on April 22, 2019, as referenced in Paragraph 71 of the First Amended Complaint, including but not limited to:

     a.   documents concerning the actual or contemplated purpose and/or effect of sending the letters;

     b.   documents concerning the processes of selecting and identifying the materials referenced in or attached to the letters; and,

     c.   information sufficient to identify the individuals involved in the creation, development, and transmission of the letters

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 63:**

All documents referring or relating to leaks to the media and others of documents and information the NRA contends is confidential.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 64:**

Documents referring or relating to the reaction of Defendants upon learning that the NRA sued AMc in Virginia State court on April 12, 2019 and/or any actual or contemplated response by Defendants for the filing of the lawsuit.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 65:**

All documents referring or relating to the April 2019 Board of Directors meeting for the NRA and/or the preparations for that meeting.

 **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 66:**

All documents and communications referring or relating to North from April 1, 2019 to May 31, 2019.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 67:**

All documents referring or relating to North's conduct and statements on April 24, 2019 concerning the NRA, including but not limited, to all drafts and final versions of the letter referenced in Paragraph 72 of the First Amended Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 68:**

All documents referring or relating to the existence of any agreement, understanding, combination, or collaboration between and among the Defendants, on one hand, and persons not employed by or affiliated with AMc (e.g., Dan Boren), on the other, concerning efforts:

  a. to de-rail, stop, impede, obstruct, not cooperate, or otherwise delay the NRA's investigation and/or,

  b. to remove Mr. LaPierre or other senior NRA leadership from their positions at the NRA.

  **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 69:**

All documents referring or relating to, and including, communications between and among Defendants and Dan Boren regarding the NRA, after March 1, 2019.

  **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 70:**

All documents referring or relating to, and including, communications between and among Defendants and David Lehman regarding the NRA, after March 1, 2019.

  **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 71:**

All documents referring or relating to, and including, communications between and among Defendants and Steven Hart regarding the NRA, after March 1, 2019.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 72:**

All documents supporting, undermining, or otherwise concerning the statement in Paragraph 10 of Your Counterclaims and Third-Party Complaint that the program "Life of Duty" was a "money-making, profitable program."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 73:**

All documents supporting, undermining, or otherwise concerning the assertion in Paragraph 24 of Your Counterclaims and Third-Party Complaint where you state that "NRATV […] became the medium through which [the NRA's] most robust fundraising took place."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 74:**

All documents supporting, undermining, or otherwise concerning the contention in Paragraph 43 of Your Counterclaims and Third-Party Complaint that "[c]entral to NRATV operations were its analytics, (essentially, viewership numbers)."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 75:**

All documents supporting, undermining, or otherwise concerning the assertions in Paragraph 44 of Your Counterclaims and Third-Party Complaint that briefings on NRATV viewership analytics were held on "October 24, 2017; November 28, 2017; January 3, 2018; February 1 and 19, 2018; April 11, 2018; September 4, 2018; October 11 and 23, 2018; November 28, 2018; December 5, 2018; and, January 18, 2019."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 76:**

All documents supporting, undermining, or otherwise concerning the assertions in Paragraph 44 of Your Counterclaims and Third-Party Complaint that the information shared in the meetings referenced in Request No. 84 above involved "in-depth analyses of viewship (sic) analytics that were three levels deep."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 77:**

All drafts of the Company Agreement for WBB Investments, LLC and all documents and communications related thereto.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 78:**

All documents concerning the actual or contemplated creation, formation, negotiation, and/or terms of the Company Agreement of WBB Investments, LLC, including but not limited

to, documents concerning any actual or contemplated decision to form or create that entity or a similar entity or the actual or contemplated factors related to the creation or formation thereto.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 79:**

All insurance contracts and other agreements or arrangements for financial coverage applicable or relevant to this lawsuit (i.e., the claims alleged in the First Amended Complaint).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 80:**

All documents referenced, relied on, or otherwise mentioned in any expert report or expert analysis by any expert witness AMc intends to have testify at deposition or trial in this case, including all documents reviewed and/or relied upon by the expert in preparing any expert reports or preparing for testifying at trial or in a deposition.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 81:**

All documents You intend to rely on at trial.

**RESPONSE:**

Dated:  November 5, 2019

Respectfully submitted,

**BREWER, ATTORNEYS & COUNSELORS**

By: */s/ Jason C. McKenney*

    Michael J. Collins, Esq.
    State Bar No. 00785493
    mjc@brewerattorneys.com
    Jason C. McKenney, Esq.
    State Bar No. 24070245
    jcm@brewerattorneys.com
    1717 Main Street, Suite 5900
    Dallas, Texas 75201
    Telephone: (214) 653-4000
    Facsimile: (214) 653-1015

**ATTORNEYS FOR PLAINTIFF NATIONAL RIFLE ASSOCIATION OF AMERICA**

## APPENDIX A TO PLAINTIFF'S REQUESTS FOR PRODUCTION

FORMAT OF PRODUCTION

1.       *Document Image Format*.  Documents and ESI are to be produced in Tagged Image File Format ("TIFF"), subject to Instructions and Definitions paragraphs 54 and 55 infra.  If a document does not contain redactions, you are directed to produce an extracted text (.TXT) file containing searchable text for each electronic document and an Optical Character Recognition ("OCR") text file for each imaged paper document along with image load files.  For documents that contain redactions, you are directed to provide an OCR text file for the unredacted portions of such documents.  Every TIFF file in each production must be referenced in the production's corresponding load file.  The total number of TIFF files referenced in a production's load file should match the number of TIFF files in the production. Load files of the static images should be created and produced together with their associated static images to facilitate the use of the produced images by a document management or litigation support database system.  Metadata load files should contain, if available, the non-privileged metadata in the following table.  You are not obligated to populate manually the fields in the table that cannot be extracted from a document, with the exception of the custodian.

| Field Name | Field Description | Document Type |
|---|---|---|
| BEGPRODBATE | Beginning Production Number | ALL |
| ENDPRODBATE | Ending Production Number | ALL |
| PROD_VOLUME | Production Volume (ex. MOF-PD001) | ALL |
| BEGPRODATT | Beginning Production Family Number | ALL |
| ENDPRODATT | Ending Production Family Number | ALL |
| CUSTODIAN | Custodian of records name. I.E.  Doe, John. | ALL |
| CUST_APPEND | Names of custodians with duplicate emails/and or native files (eDocs) | ALL |
| CONFIDENTIALITY | Confidentiality designations | ALL |

1

| PARENTID | BeginBates number for the parent email of a family (will not be populated for documents that are not part of a family) | ALL |
|---|---|---|
| PAGES | Total page count per document | ALL |
| FILENAME | Document File Type | EDOCS |
| FILEEXT | File extension of original document | EDOCS |
| LOCATION | Original file path for electronic documents or folder path from mailbox for email | ALL |
| SENT_DATE | Email Sent Date (MM/DD/YYYY) | EMAILS |
| SENT_TIME | Email Sent Time (HH:MM:SS) GMT | EMAILS |
| SORT_DATE | Carries email sent date for email + attachments and last modified date for loose eDocs (MM/DD/YYYY) | ALL |
| SORT_TIME | Carries email sent time for email + attachments and last modified time for loose eDocs (HH:MM:SS) GMT | ALL |
| LASTMODDATE | Document Last Modified Date (MM/DD/YYYY) | EDOCS |
| CREATION_Date | Email: (Empty) Native: Date the document was created. | EDOCS |
| DATERCVD | Email: Date the email was received. Native: (Empty) | EMAILS |
| FILESIZE | Document file size in bytes | EDOCS |
| AUTHOR | Creator of document | EDOCS |
| SUBJECT | Email Subject | EMAILS |
| FROM | Author of Email | EMAILS |
| RECIPIENT | Recipient of Document | EMAILS |
| CC | Copies on Communications | EMAILS |
| BCC | BCC | EMAILS |
| NATIVELINK | Location of native file in volume if provided | EDOCS |
| MD5HASH | MD5HASH of Electronic Loose File or Attachments | EDOCS |
| MESSAGEID | Internet message identifier | EMAILS |
| TEXTPATH | Location of OCR Text File in volume. | ALL |

2.      *Production of Native Files*.  Unless such materials contain privileged or redacted information, Microsoft Excel, Microsoft Project, Microsoft Access, other spreadsheets, and database files should be produced in native format.  If these files, however, contain privileged or redacted information, they need not be produced in native format but shall be produced with the

extracted text and metadata fields set forth in these instructions and definitions if possible, except to the extent the extracted text or metadata fields are themselves redacted.  Excel files that contain privileged information should be produced as an Excel file in a manner that does not prevent Excel functions from performing, but with privileged information redacted.  Each native file produced should be accompanied with its metadata as outlined in the table in numbered Paragraph III-1 above, and an image placeholder designating the document was produced in native format.  The native file should be produced in a folder labeled with the Bates number of the native file document in the following format:

    a.       Single file per document.

    b.       Filenames should be of the form:

        i.       <Bates num><designation>.<ext>

        ii.       Where <Bates num> is the BATES number of the document, <designation> any designation applicable to the document, and <ext> the appropriate extension for the document (.ppt, .xls, etc.).

3.       *Document Unitization and Load Files*.  For files not produced in their native format, each page of a document shall be electronically saved as an image file.  If a document consists of more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image files.  The producing party shall produce a unitization file ("load file") for all produced documents in accordance with the following formatting:

    a.       Document Unitization Load File.  Document productions should include Concordance document load files containing the metadata listed in the table included in numbered paragraph 19 above.

b.      OCR and Extracted Text Files (.TXT Files).  There should be a single text file per document containing all the document's pages.  Pages must be separated by form feed character (decimal 12, hex 0xC).  Filenames should be of the following form:

i.      <Bates num>.txt

ii.      Where <Bates num> is the BATES number of the first page in the document.

iii.      Text must be encoded in ASCII, except where documents contain characters requiring UTF-8 in order to be read. Such documents shall be produced in UTF-8 format.

4.      *Image Files*.  Image files should be single page per image and single image per file. TIFF is the default format unless the following formats are agreed to: jpeg, jpeg2000, gif, png, single image tiff, and bmp.  Filenames should be of the following form:

a.      <Bates num>.<ext>

b.      Where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif, .png, etc.).

5.      *Metadata Load Files*.  Filenames should be of the following form:

a.      Comma Separated Value (.CSV) files (commonly .DAT files).

b.      The first line must contain the column/field names.

c.      Every row must have the same number of columns/fields (empty values are acceptable).

d.      Text must be encoded in ASCII.

e.      Values must be enclosed by ASCII character 254.

4

        f.      Multiple entries in a field must be separated by ASCII character 174.

        g.      New line value in data must be indicated by ASCII character 059.

        h.      Values must be separated by ASCII character 020.

6.     *Duplicates*.  If you have more than one identical copy of an electronic document (i.e., the documents are exact duplicates as that term is used in the electronic discovery field), only produce a single copy of that document (as long as all family relationships are maintained).  You may de-duplicate ESI across each party's custodians or sources.  De-duplication will be based on MD5 hash values.

7.     *Encryption*.  Make reasonable efforts to ensure that all encrypted or password-protected documents are successfully processed for review and production, and if produced in native form, that the decrypted document is produced.  To the extent encrypted or password-protected documents are successfully processed according to the requirements set forth herein, you have no duty to identify the prior encrypted status of such documents.  To the extent such documents are not successfully processed despite use of reasonable efforts, including reasonable efforts to obtain passwords, produce an inventory of such files that are determined to have a reasonable likelihood of containing relevant information as is apparent without decryption such as attachments to responsive files, or metadata suggestive of responsiveness, such as relevant file names, and in any case shall include any containers files such as PST or ZIP files.  The inventory shall contain any required metadata and document identifying information, including family relationships, to the extent that such information can be extracted using reasonable efforts during document processing.  The inventory shall be produced in accordance with the Load File specifications as outlined in the table in numbered paragraph 19 above.

8.      *Email Thread Analysis*.  Email thread analysis may be used to reduce the volume of emails reviewed and produced, provided that the parties disclose such use prior to or at the time of production.  The produced emails must include all the responsive information from a thread, including attachments.

9.      *System and Program Files*.  System and program files, defined as the NIST, need not be processed, reviewed or produced.  Additional files may be excluded by mutual agreement of the parties.

10.     *Color*.  For files not produced in their native format, if an original document contains color, you may produce black and white image(s).  At the NRA's request, the parties shall meet and confer regarding production of color image(s) for specific documents.

11.     *Bates Numbering - Document Images*.  Each page of a produced document shall have a unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably conceal or interfere with any information from the source document.  Any confidentiality legend shall be "burned" onto each document's image at a location that does not unreasonably obscure any information from the source document.

12.     *Bates Numbering - Native Format Documents*.  Documents produced in Native Format will be produced with a placeholder TIFF image.  Each TIFF placeholder will contain the Bates Number and confidentiality designation, if any.

13.     *Production Media*.  Documents shall be produced by FTP site or on CD-ROM, DVD, external hard drive (with standard PC compatible interface), or other readily accessible computer or electronic media (the "Production Media").  Each item of Production Media shall be produced in a Bates labeled folder corresponding to the Bates label on the image placeholder.  Each

native file produced will be accompanied with its metadata as outlined in the table in numbered paragraph 19 above.

14.     *Attachments*.  Email attachments and embedded files or links must be mapped to their parent by the document or production number.  If attachments and embedded files are combined with their parent documents, then "BeginAttach" and "EndAttach" fields listing the unique beginning and ending number for each attachment or embedded document must be included.

15.     *Compressed Files*.  Compression file types (e.g., .CAB, .GZ, .TAR, .Z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

16.     *Embedded*.  If a document has information from another file embedded in it (e.g., a Word document containing an embedded spreadsheet), produce the document with all embedded information, and the NRA may request that the embedded file be produced as a standalone file.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon

counsel of record in the above cause via email in accordance with the Federal Rules of Civil

Procedure and the Local Rules on this 5th day of November 2019.


*/s/ Jason C. McKenney*
Jason C. McKenney (State Bar No. 24070245)


4838-8680-1323.11