**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| *Plaintiff and Counter-Defendant*, | § § | |
| **and** | § § | |
| **WAYNE LAPIERRE,** | § § § | |
| *Third-Party Defendant*, | § § | |
| **v.** | § § | **Case No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** | § § § | |
| *Defendant and Counter-Plaintiff*, | § § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG,** | § § § § § | |
| *Defendants*. | § § | |

**<u>APPENDIX IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PLAINTIFF'S
DOCUMENT PRODUCTION AND MOTION FOR SANCTIONS</u>**

Defendants Ackerman McQueen, Inc. ("*AMc*"), Mercury Group, Inc. ("*Mercury Group*"),
Henry Martin ("*Martin*"), William Winkler ("*Winkler*"), Melanie Montgomery ("*Montgomery*"),
and Jesse Greenberg ("*Greenberg*") (collectively, "*Defendants*") offer the following evidence in
support of their *Motion to Compel Plaintiff's Document Production and Motion for Sanctions*
against Plaintiff:

| EX # | DESCRIPTION | APP RANGE |
|------|-------------|-----------|
| A | Declaration of Brian E. Mason | APP001-APP004 |
| A-1 | Defendant/Counter-Plaintiff Ackerman McQueen, Inc.'s First Requests for Production to Plaintiff/Counter-Defendant. | APP005-APP032 |
| A-2 | Plaintiff/Counter-Defendant's Objections and Responses to Defendant/Counter-Plaintiff Ackerman McQueen, Inc.'s First Requests for Production. | APP033-APP108 |
| A-3 | Excerpts from the deposition of ████████, dated February 4, 2020 (filed under seal). | APP109-APP229 |
| A-4 | Excerpts from the deposition of ██████, dated January 16, 2020 (filed under seal). | APP230-APP328 |
| A-5 | Protective Order entered October 3, 2019 in *NRA v. AMc, et al.*, Superior Court of Virginia, Cause CL19001757 and CL19002067. | APP329-APP347 |
| A-6 | Hearing transcript dated August 28, 2018, *NRA v. AMc, et al.*, Superior Court of Virginia, Cause CL19001757 and CL19002067. | APP348-APP403 |
| A-7 | Excerpts from the deposition of ████████, dated December 18, 2019 (filed under seal). | APP404-APP474 |
| A-8 | Excerpts from the deposition of ████████, dated January 29, 2020 (filed under seal). | APP475-APP570 |
| A-9 | Excerpts from the deposition of ████████, dated January 10, 2020 (filed under seal). | APP571-APP625 |
| A-10 | Decision and Order dated February 24, 2020 in *People of the State of New York, by Letitia James, Attorney General of the State of New York v. Ackerman McQueen and the National Rifle Association*, Index No. 451825-2019. | APP626-APP638 |
| A-11 | FRA privilege log, dated January 10, 2020. | APP639-APP675 |
| A-12 | Excerpts from the deposition of ████████, dated September 24, 2019 (filed under seal). | APP676-APP760 |
| A-13 | Order entered February 21, 2020 in *NRA v. AMc, et al.*, Superior Court of Virginia, Cause CL19001757. | APP761-APP763 |
| A-14 | Defendants' Memorandum of Law in Support of Defendants' Motion to Compel the Production of NRA Documents, filed | APP764-APP782 |

| | January 23, 2020 in *NRA v. AMc, et al.*, Superior Court of Virginia, Cause CL19001757 and CL19002067 (filed under seal). | |
|---|---|---|

Dated: February 26, 2020                    Respectfully submitted,

*/s/ G. Michael Gruber*
**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR DEFENDANTS ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, JESSE GREENBERG, WILLIAM WINKLER, AND MELANIE MONTGOMERY**

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ G. Michael Gruber*
G. Michael Gruber, Esq.

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § | |
| *Plaintiff and Counter-Defendant,* | § § | |
| and | § § | |
| WAYNE LAPIERRE, | § § | |
| *Third-Party Defendant,* | § § § | |
| v. | § § | Case No. 3:19-cv-02074-G |
| ACKERMAN MCQUEEN, INC., | § § | |
| *Defendant and Counter-Plaintiff,* | § § | |
| and | § § § | |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG, | § § § § § | |
| *Defendants.* | § § | |

## DECLARATION OF BRIAN E. MASON

Pursuant to 28 U.S.C. § 1746, I, Brian E. Mason, hereby declare as follows:

1.     My name is Brian E. Mason.  I am over eighteen years of age.  I have never been convicted of a felony or misdemeanor involving moral turpitude.  I am fully competent to make this declaration.  I am a lawyer at Dorsey & Whitney, LLP ("*Dorsey*") and counsel of record for Ackerman McQueen, Inc. ("*AMc*"), Mercury Group, Inc. ("*Mercury*"), Henry Martin ("*Martin*"), William Winkler ("*Winkler*"), Melanie Montgomery ("*Montgomery*"), and Jesse Greenberg ("*Greenberg*") (collectively, "*Defendants*") in the above-captioned matter (the "*Texas Lawsuit*").

I am also admitted pro hac vice representing AMc and Mercury Group in the following lawsuits in Virginia: *National Rifle Association of America v. Ackerman McQueen, Inc., et al.*, Case Nos. CL19002067, CL19001757, and CL19002886, pending before the Circuit Court for the City of Alexandria, Virginia (collectively, the "***Virginia Lawsuits***").   I have personal knowledge of the facts set forth in this declaration and acknowledge them to be true and correct.

2.      Attached hereto as **Exhibit A-1** is a true and correct copy of Defendant/Counter-Plaintiff Ackerman McQueen, Inc.'s First Requests for Production to Plaintiff/Counter-Defendant.

3.      Attached hereto as **Exhibit A-2** is a true and correct copy of Plaintiff/Counter-Defendant's Objections and Responses to Defendant/Counter-Plaintiff Ackerman McQueen, Inc.'s First Requests for Production.

4.      Attached hereto as **Exhibit A-3** is a true and correct copy of excerpts from the deposition of ███████, dated February 4, 2020 (filed under seal).

5.      Attached hereto as **Exhibit A-4** is a true and correct copy of excerpts from the deposition of ███████, dated January 16, 2020 (filed under seal).

6.      Attached hereto as **Exhibit A-5** is a true and correct copy of the Protective Order entered October 3, 2019 in *NRA v. AMc, et al.*, Superior Court of Virginia, Cause CL19001757 and CL19002067.

7.      Attached hereto as **Exhibit A-6** is a true and correct copy of the hearing transcript dated August 28, 2018, *NRA v. AMc, et al.*, Superior Court of Virginia, Cause CL19001757 and CL19002067.

8.      Attached hereto as **Exhibit A-7** is a true and correct copy of excerpts from the deposition of ███████, dated December 18, 2019 (filed under seal).

9.      Attached hereto as **Exhibit A-8** is a true and correct copy of excerpts from the deposition of ▆▆▆▆▆▆▆, dated January 29, 2020 (filed under seal).

10.     Attached hereto as **Exhibit A-9** is a true and correct copy of excerpts from the deposition of ▆▆▆▆▆▆, dated January 10, 2020 (filed under seal).

11.     Attached hereto as **Exhibit A-10** is a true and correct copy of the Decision and Order dated February 24, 2020 in *People of the State of New York, by Letitia James, Attorney General of the State of New York v. Ackerman McQueen and the National Rifle Association,* Index No. 451825-2019.

12.     Attached hereto as **Exhibit A-11** is a true and correct copy of the FRA privilege log, dated January 10, 2020 (filed under seal).

13.     Attached hereto as **Exhibit A-12** is a true and correct copy of excerpts from the deposition of ▆▆▆▆▆▆, dated September 24, 2019 (filed under seal).

14.     Attached hereto as **Exhibit A-13** is a true and correct copy of the Order entered February 21, 2020 in *NRA v. AMc, et al.*, Superior Court of Virginia, Cause CL19001757.

15.     Attached hereto as **Exhibit A-14** is a true and correct copy of the Defendants' Memorandum of Law in Support of Defendants' Motion to Compel the Production of NRA Documents, filed January 23, 2020 in *NRA v. AMc, et al.*, Superior Court of Virginia, Cause CL19001757 and CL19002067 (filed under seal).

I declare under penalty of perjury and in accordance with 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 26th day of February, 2020.

Brian E. Mason

# EXHIBIT A-1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| **Plaintiff and Counter-Defendant,** | § § | |
| **and** | § § | |
| **WAYNE LAPIERRE,** | § § § | |
| **Third-Party Defendant,** | § § | |
| **v.** | § § | **Case No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** | § § § | |
| **Defendant and Counter-Plaintiff,** | § § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG,** | § § § § § | |
| **Defendants.** | § | |

## DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S
## FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT

TO:   Plaintiff/Counter-Defendant National Rifle Association of America, by and through its counsel of record, Michael J. Collins and Jason C. McKenney, BREWER, ATTORNEYS & COUNSELORS, 1717 Main Street, Suite 5900, Dallas, Texas 75201.

Pursuant to Federal Rule of Civil Procedure 34, Defendant/Counter-Plaintiff Ackerman McQueen, Inc. ("***AMc***") hereby serve its First Requests for Production (each a "***Request***" and collectively, the "***Requests***") on Plaintiff/Counter-Defendant the National Rifle Association of America ("***NRA***").

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

**PAGE 1**

**APP005**

# I.   <u>INSTRUCTIONS</u>

1.      You are instructed to produce the documents and items listed in Section III of these Requests, using the definitions listed in Section II of these Requests and the instructions listed in Section I of these Requests.

2.      Your responses to these Requests and the documents requested must be served upon the undersigned counsel within thirty (30) days of service of these Requests to the law office of DORSEY & WHITNEY LLP, 300 Crescent Court, Suite 400, Dallas, Texas 75201 and/or mason.brian@dorsey.com.

3.      In producing Documents, you are to produce all Documents in your possession, custody, or control, regardless of whether such Documents are directly in your possession, custody, or control, or in the possession, custody, or control of your attorneys, agents, representatives, or any other persons acting or purporting to act on your behalf or under your direction or control. These Requests shall be treated as seeking any and all information within your care, custody or control.

4.      Where you are asked to identify or describe a document and the document is in a paper format, state the date of the document, identify any persons that authored the document, identify any recipients of the document, and identify all custodians of any copy of the document.

5.      When you are asked to identify or describe a document and the document is in an electronic or digital format, identify the format of the document, the system or media in which the document is maintained, and identify all personnel with access to that system or media.

6.      If you assert any privilege or protection as trial-preparation material as a ground for failing to produce Documents responsive to any Request, you shall respond to that part of each such Request that, in your view, does not seek allegedly privileged or otherwise protected information or communications. For each Document, or portion thereof, responsive to a Request for which you claim a privilege or other protection, you shall describe the factual basis for such claim in sufficient detail to permit adjudication of the validity of that claim, including without limitation, the following information:

       a.      an identification or description of the Document withheld;

       b.      the name, title and job description of each person who has received or utilized the Document;

       c.      a description of the subject matter of the Document; and

       d.      the nature of the privilege or other protection claimed

7.      If any Document is not or cannot be produced in full, you are to produce the Document to the extent possible, indicating which portion of such Document is not or cannot be produced and the reason.

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**   **PAGE 2**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

**APP006**

8.     These Requests seek the production of electronic or magnetic data.  Information that exists in electronic form is requested in its native or near-native format and should not be converted to imaged formats. Native format requires production in the same format in which the information was customarily created, used, and stored by you. The following are examples of the native or near-native forms in which specific types of electronically-stored information ("*ESI*") should be produced.

| Microsoft Word documents | .doc, .docx |
|---|---|
| Microsoft Excel spreadsheets | .xls, .xlsx |
| Microsoft PowerPoint presentations | .ppt, .pptx |
| Microsoft Access databases | .mdb, .accdb |
| WordPerfect documents | .wpd |
| Adobe Acrobat documents | .pdf |
| Images | .jpg, .jpeg, .png |
| Email | Messages should be produced in a form that readily supports import into standard email client programs, such as those outlined in RFC 5322 (the internet email standard). For Microsoft Exchange or Outlook, that means .pst format. Single message production formats like .msg or .eml may be furnished, if source foldering data is preserved and produced. If your workflow requires that attachments be extracted and produced separately, those attachments should be produced in their native forms with parent/child relationships to the messages and containers preserved and produced in a delimited text file. |
| Databases | Unless the entire contents of a database are responsive, extract responsive content to a fielded and electronically searchable format preserving metadata values, keys and filed relationships. If doing so is not feasible, please identify and supply information concerning the schemae and query language of its export capabilities, so as to facilitate crafting a query to extract and export responsive data |
| Text Messages | Text messages should be produced in native form whether in short message service (SMS) or |

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                                      **PAGE 3**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

APP007

|  | multimedia messaging service (MMS), including but not limited to .bbm, .sms, .mms, .ipa, or .mmssms.db |
|---|---|

Information that does not exist in native electronic formats or which require redaction of privileged content should be produced in searchable .pdf formats or as single page .tiff images with OCR text furnished and logical unitization and family relationships preserved. Production of ESI should be made using a thumb/flash drive or, preferably, an FTP client.

9.      If any requested Documents have been lost, destroyed, or are otherwise no longer in your possession, custody, or control, such Documents or material shall be identified as completely as possible.

10.      The Requests are continuing in nature. If additional information is obtained or becomes available, you have a duty to supplement any response to the Requests as necessary.

## II.      DEFINITIONS

The following terms and definitions shall apply to each Request contained herein:

1.      The use of any term in the Definitions section of these requests should be understood to include any and all variations of that term necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

2.      "**Lawsuit**" is defined as the above-captioned litigation pending in the United States District Court for the Northern District of Texas, Dallas Division, and should be understood to include any and all amended complaint(s) as of the date that such amended complaint is filed with the Court.

3.      "**Complaint**" shall refer to Plaintiffs' First Amended Complaint filed in the Lawsuit on October 25, 2019 (ECF 18), and should be understood to include any and all amended complaint(s) as of the date that such amended complaint is filed with the Court.

4.      "**NRA**" should be understood to refer to Plaintiff/Counter-Defendant the National Rifle Association of America, and includes all agents, officers, directors, partners, associates, members, managers, owners, shareholders, employees, staff members, attorneys, consultants, representatives, subsidiaries thereof (including the NRA Foundation, NRA Civil Rights Defense Fund, the NRA Special Contribution Fund (Whittington Center), and the NRA Freedom Action Foundation), and any others acting on behalf of the NRA or under the NRA's direction and control, whether currently or during the time period specified in the Request, including but not limited to: Wayne LaPierre, William (Bill) Brewer, III, the Brewer Firm (including but not limited to Bill Brewer, Michael Collins, Jason McKenney, and William Brewer, IV), John Frazer, Michael Volkov, Charles (Chuck) Cooper, Wilson (Woody) Phillips, Josh Powell, Carolyn Meadows, Andrew Arulanandam, Michael Blaz, Pete Brownell, Richard Childress, Allan Cors, Charles Cotton, Christopher Cox, Emily Cummings, Caitlin Fiant, Sandy Froman, Todd Grable, Millie Hallow, Marion Hammer, Steve Hart, David Keene, Willis Lee, Oliver North, John Perrin, James

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                                                                 **PAGE 4**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

**APP008**

(Jim) Porter, Kayne Robinson, Tyler Schropp, Craig Spray, Lisa Supernaugh, Rick Tedrick, and Graham Wood.

5.    "**AMc**" should be understood to refer to Ackerman McQueen, Inc., and includes all agents, officers, directors, partners, associates, members, managers, owners, shareholders, employees, staff members, attorneys, consultants, representatives, subsidiaries thereof, and any others acting on behalf of Ackerman McQueen, Inc. or under Ackerman McQueen, Inc.'s direction and control.

6.    "**NRA Foundation**" should be understood to refer to the NRA Foundation, Inc., and includes all agents, officers, directors, partners, associates, members, managers, owners, shareholders, employees, staff members, attorneys, consultants, representatives, subsidiaries thereof, and any others acting on behalf of the NRA Foundation, Inc. or under the NRA Foundation, Inc.'s direction and control.

7.    "**Brewer Firm**" should be understood to refer to Brewer Attorneys & Counselors, and includes all agents, officers, directors, partners, associates, members, managers, owners, shareholders, employees, staff members, attorneys, consultants, representatives, subsidiaries thereof, and any others acting on behalf of the law firm, Brewer, Brewer IV, Collins, McKenney or under the law firm's, Brewer's, Brewer IV's, Collins', or McKenney's direction and control.

8.    "**New York AG**" should be understood to refer to the New York Attorney General, and includes all agents, officers, directors, partners, associates, members, managers, owners, shareholders, employees, staff members, attorneys, consultants, representatives, subsidiaries thereof, and any others acting on behalf of the New York Attorney General or under the New York Attorney General's direction and control.

9.    "**Arulanandam**" should be understood to refer to Andrew Arulanandam and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

10.    "**Blaz**" should be understood to refer to Michael Blaz and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

11.    "**Boren**" should be understood to refer to Dan Boren and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

12.    "**Brewer**" should be understood to refer to William A. Brewer, III and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

13.    "**Brewer IV**" should be understood to refer to William Brewer, IV and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

14.    "**Brownell**" should be understood to refer to Pete Brownell and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

15.    "**Carter**" should be understood to refer to Travis J. Carter and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                                    **PAGE 5**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

APP009

16.     "**Childress**" should be understood to refer to Richard Childress and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

17.     "**Christman**" should be understood to refer to Scott Christman and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

18.     "**Collins**" should be understood to refer to Michael Collins and includes his attorneys, agents, representatives, partners, and any other person acting under his control

19.     "**Cooper**" should be understood to refer to Charles (Chuck) Cooper and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

20.     "**Cors**" should be understood to refer to Allan Cors and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

21.     "**Cotton**" should be understood to refer to Charles Cotton and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

22.     "**Cox**" should be understood to refer to Christopher Cox and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

23.     "**Crew**" should be understood to refer to Kyle Crew and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

24.      "**Cummings**" should be understood to refer to Emily Cummings and includes her attorneys, agents, representatives, partners, and any other person acting under her control.

25.     "**Frazer**" should be understood to refer to John Frazer and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

26.     "**Froman**" should be understood to refer to Sandy Froman and includes her attorneys, agents, representatives, partners, and any other person acting under her control.

27.     "**Grable**" should be understood to refer to Todd Grable and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

28.     "**Hakim**" should be understood to refer to Danny Hakim and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

29.     "**Hallow**" should be understood to refer to Millie Hallow and includes her attorneys, agents, representatives, partners, and any other person acting under her control.

30.     "**Hammer**" should be understood to refer to Marion Hammer and includes her attorneys, agents, representatives, partners, and any other person acting under her control.

31.     "**Hart**" should be understood to refer to Steve Hart and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                    **PAGE 6**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

**APP010**

32.     "**Keene**" should be understood to refer to David Keene and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

33.     "**LaPierre**" should be understood to refer to Third-Party Defendant Wayne LaPierre and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

34.     "**Lee**" should be understood to refer to Willis Lee and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

35.     "**Loesch**" should be understood to refer to Dana Loesch and includes her attorneys, agents, representatives, partners, and any other person acting under her control.

36.     "**McKenney**" should be understood to refer to Jason McKenney and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

37.     "**Meadows**" should be understood to refer to Carolyn Meadows and includes her attorneys, agents, representatives, partners, and any other person acting under her control.

38.     "**North**" should be understood to refer to Oliver North and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

39.     "**Payne**" should be understood to refer to Tamara Payne and includes her attorneys, agents, representatives, partners, and any other person acting under her control.

40.     "**Perrin**" should be understood to refer to John Perrin and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

41.     "**Phillips**" should be understood to refer to Woody Phillips and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

42.     "**Porter**" should be understood to refer to James (Jim) Porter and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

43.     "**Powell**" should be understood to refer to Josh Powell and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

44.     "**D. Robinson**" should be understood to refer to Derek Robinson and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

45.     "**K. Robinson**" should be understood to refer to Kayne Robinson and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

46.     "**Schropp**" should be understood to refer to Tyler Schropp and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

47.     "**Sloan**" should be understood to refer to Gurney Sloan and includes his/her attorneys, agents, representatives, partners, and any other person acting under his control.

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                               **PAGE 7**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

APP011

48.   "**Spray**" should be understood to refer to Craig Spray and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

49.   "**Stinchfield**" should be understood to refer to Grant Stinchfield and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

50.   "**Supernaugh**" should be understood to refer to Lisa Supernaugh and includes her attorneys, agents, representatives, partners, and any other person acting under her control.

51.   "**Stanton**" should be understood to refer to David Stanton and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

52.   "**Tedrick**" should be understood to refer to Rick Tedrick and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

53.   "**Upart**" should be understood to refer to Caitlin Fiant Upart and includes her attorneys, agents, representatives, partners, and any other person acting under her control.

54.   "**Volkov**" should be understood to refer to Michael Volkov and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

55.   "**Wood**" should be understood to refer to Graham Wood and includes his attorneys, agents, representatives, partners, and any other person acting under his control.

56.   "**Forensic Risk Analysis**" should be understood to refer to Forensic Risk Analysis, and includes all agents, officers, directors, partners, associates, members, managers, owners, shareholders, employees, staff members, attorneys, consultants, representatives, subsidiaries thereof, and any others acting on behalf of Forensic Risk Analysis or under Forensic Risk Analysis's direction and control.

57.   "**Services Agreement**" should be understood to refer to the agreement between the NRA and AMc dated April 30, 2017, as amended May 6, 2018.

58.   "**North Contract**" should be understood to refer to the contract between AMc and North.

59.   "**Loesch Contract**" should be understood to refer to the contract between AMc and Loesch.

60.   "**And**" and "**or**" shall each be individually interpreted in every instance as meaning "and/or" and shall not be interpreted disjunctively to exclude any information otherwise within the scope of any specification.

61.   "**Communication**" should be understood to refer to any contact or act by which any information is transmitted or conveyed between two or more persons, and shall include, without limitation, written contact by such means as letters; memoranda; telegrams; telexes; text messages; social media messages, communications, or posts (including but not limited to Facebook, Facebook Messenger, Instagram, Slack, Twitter, Apple messaging, WhatsApp,

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                    **PAGE 8**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

**APP012**

WeChat, and Jabber), e-mails, or any other electronically transmitted messages, by any Document, and any oral contact by such means as face to face meetings or conversations and telephone conversations which are transcribed, notated or in any other manner memorialized in written, typed or recorded form.

62.    "**Concerning**" should be understood to refer to constituting, relating to, referring to, describing, evidencing, showing, demonstrating, analyzing, reflecting, constituting, containing, embodying, setting forth, identifying, stating, dealing with, supporting, contradicting, or is in any manner whatsoever pertinent to that subject.

63.    "**Document**" shall have the broadest meaning possible and should be understood to include any written, printed, typed, and visually, aurally, or electronically reproduced material of any kind, whether or not privileged, including, but not limited to, electronic mail, computer files, source code, backup media, and databases; files and file folders; text messages; social media messages, communications, or posts (including but not limited to Facebook, Facebook Messenger, Instagram, Slack, Twitter, Apple messaging, WhatsApp, WeChat, and Jabber)books and their contents, whether printed or recorded or reproduced by hand or any other mechanical process; and all other tangible manifestations of communications whether or not claimed to be privileged, confidential, or personal; namely, communications, including intra-company communications, correspondence, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations; diaries; forecasts; statistical statements; plans, specifications, data sheets, drawings, graphs, flow charts, prototypes and tangible things, evaluation boards, photographs, films, pictures, and videotapes; minutes or records of meetings, including directors' meetings, minutes or records of conferences; expressions of statements or policy; lists of persons attending meetings or conferences; reports and/or summaries of interviews or investigations; opinions or reports of consultants' patent appraisals; opinions of counsel; agreements; records, reports or summaries of negotiations; brochures, pamphlets, advertisements, circulars, trade letters, packing materials and notices, press releases; litigation files and databases; and any drafts or revisions of any document and any notes or comments appearing on any document, whether preliminary or marginal.  A comment or notation appearing on any document, and not a part of the original document, is considered a separate document within the meaning of the term.  A draft or non-identical copy is a separate document within the meaning of the term.

64.    "**Including**" should be understood to refer to "including but not limited to," and is not restrictive or limiting.

65.    "**Person**" as used herein means all individuals and entities and shall be deemed to include natural persons, firms, partnerships, associations, organizations, joint ventures, corporations, and any other entities.

66.    "**Relate**", "**related to**" "**relating**" or "**relating to**" refers to any act, work, meeting, oral or written communication, or document, referring, directly or indirectly, in any way to the described facts, or evidencing, directly or indirectly, such facts.

67.    The singular form of a word includes the plural form of that word and the plural form of a word includes the singular form.

DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S                                          PAGE 9
FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT

APP013

68.     Unless otherwise indicated, all other terms used herein shall have the same meaning and definition used in Merriam-Webster's online dictionary at www.merriam-webster.com.

69.     Unless other specified in the request, the relevant time period for purposes of production is January 1, 2017 through the present.

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                                                          **PAGE 10**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

**APP014**

## III.    REQUESTS

1.     Produce the documents and communications evidencing and relating to Brewer's knowledge that his father-in-law, Angus McQueen, was suffering from a terminal illness, including, but not limited to, documents and communications demonstrating when Brewer learned of the same.

2.     Produce the documents and communications evidencing and relating to when any executive of the NRA learned that Brewer's father-in-law, Angus McQueen, was suffering from a terminal illness.

3.     Produce the documents and communications relating to Angus McQueen's terminal illness and passing.

4.     Produce a copy of the current version, and any previous drafts of, the engagement letter between the Brewer Firm and the NRA.

5.     Produce the documents and communications relating to the Brewer Firm's billing, including, but not limited to (a) the billing statements or invoices issued by the Brewer Firm to the NRA for all work done on behalf of the NRA from January 1, 2017 through present; (b) the payment of the billing statements or invoices.

6.     Produce the documents and communications received by the NRA relating to the retention and engagement of Brewer and the Brewer Firm by the NRA.

7.     Produce the PowerPoint presentations presented by the Brewer Firm to the NRA, the NRA Board of Directors, and/or North relating to the New York AG, the NRA non-profit status, litigation with Lockton, litigation with AMc or other NRA related vendors, or conflicts.

8.     Produce the PowerPoint presentation presented by Brewer to LaPierre, North, and others regarding conflicts of interest within the NRA as discussed during North's December 18, 2019.

9.     Produce the documents and communications exchanged between (a) the NRA and (b) Brewer or the Brewer Firm from January 1, 2017 to the present.

10.     Produce the documents and communications relating to any conflict or conflict of interest between (a) the NRA and (b) Brewer or the Brewer Firm.

11.     Produce the documents and communications sent to, received from, or otherwise exchanged between (a) Arulanandam and (b) Brewer or the Brewer Firm.

12.     Produce the documents and communications relating to any "vetting" or examination of the Brewer Firm's legal bills or invoices performed by (a) the NRA's Treasurer's office and/or (b) the NRA's General Counsel, ███████████████████████████
███████████████

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                    **PAGE 11**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

**APP015**

13.     Produce a copy of the presentations provided by the Brewer Firm to the NRA's Board of Directors ███████████████████████████████████████████████████.

14.     Produce the documents and communications relating to WBB Investments, LLC.

15.     Produce the NRA's policies and procedures regarding contracts, including, but not limited to, negotiation of contracts, payment pursuant to contracts, who has authority to execute contracts, retention of contract documents, and termination of contracts.

16.     Produce the documents and communications relating to the NRA's requirement that its Board of Directors approve all NRA contracts, expenses, and other expenditures or transactions in excess of $100,000, █████████████████████████████████████████.

17.     Produce the documents and communications relating to all contracts retroactively approved and/or ratified by the NRA Board of Directors that were executed by LaPierre on behalf of the NRA from January 1, 2017 to the present, █████████████████████████████████ ████████████████.

18.     Produce a copy of the September 2018 contract between the NRA and Hammer.

19.     Produce the documents and communications relating to the September 2018 contract between the NRA and Hammer, including, but not limited to, (a) approval and/or ratification of that contract by the NRA's Board of Directors, (b) invoices, and (c) other documents evidencing, describing, and relating to the work Hammer performed, is performing, and/or has promised to perform for the NRA.

20.     Produce LaPierre's personal notes, whether handwritten, typed, voice-recorded, or reduced to any other medium, that concern, refer, or relate to meetings with AMc from January 2016 to the present.

21.     Produce the communications exchanged between (a) the NRA, Brewer, and/or the Brewer Firm and (b) any current or former employee or representative of the American Clean Skies Foundation since January 1, 2019.

22.     Produce the communications between (a) Hakim and (b) the NRA, Brewer, and/or the Brewer Firm from January 1, 2019 to June 25, 2019.

23.     Produce the documents submitted to, and communications with, the New York AG concerning (a) your tax exempt status and the New York AG's investigation of same and (b) your response to its subpoena issued to you in December 2019.

24.     Produce the communications between (a) the NRA, Brewer, and/or the Brewer Firm and (b) Payne from January 1, 2019 to the present.

25.     Produce the communications between (a) Grable, D. Robinson, Phillips, and/or Crew, on the one hand (whether jointly or individually), and (b) any other person at the NRA, on the other hand, relating to the meeting with AMc that occurred on October 30, 2018.

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**   **PAGE 12**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

**APP016**

26.     Produce the reports, analyses, notes, and other documents prepared by Grable, D. Robinson, Crew, and Phillips (whether jointly or individually) on or after October 30, 2018, relating to NRATV viewership analytics or otherwise prepared at or as a result of the meeting with AMc that occurred on October 30, 2018.

27.     Produce the documents and communications relating to the NRA's concern that AMc was publicly revealing confidential information ███████████████████████████ █████████████████

28.     Produce the documents and communications relating to the NRA's decision, or decisions made on behalf of the NRA, to publicly reveal information about the Lawsuit, the claims or defenses in the Lawsuit, and/or AMc.

29.     The NRA's corporate entity chart.

30.     The NRA Foundation's entity chart.

31.     Produce the communications between the NRA and Sloan from January 1, 2018 to the present that mention AMc, any employee or representative of AMc, or any project of AMc.

32.     Produce the communications, notes, and other documents prepared by Phillips, Spray, and Powell referring or relating to, or otherwise prepared for, budget meetings with AMc.

33.     Produce the communications, notes, and other documents evidencing the NRA's approval of AMc's annual budget from 2016 to 2019.

34.     Produce the communications, notes, and other documents prepared by Phillips, Grable, and Powell (whether jointly or individually) referring or relating to, or otherwise prepared for, meetings with AMc regarding NRATV analytics.

35.     Produce the minutes from meetings of the NRA Board of Directors from January 2016 to the present, including any notes concerning, referring, or otherwise relating to AMc, North, the North Contract, North's requests for the NRA to audit/review the Brewer Firm's invoices/billing records to the NRA, Loesch, the Loesch Contract, LaPierre, the New York AG's investigation into the NRA, Brewer, and/or the Brewer Firm.

36.     Produce the reports from the NRA Audit Committee from January 1, 2017 to the present, including, but not limited to, the reports regarding AMc, the North Contract, Brewer, the Brewer Firm, North, Loesch, the Loesch Contract, NRA vendors, the New York AG, and/or the NRA's compliance with non-profit laws.

37.     Produce the documents and communications relating to the requirements under New York state law that the NRA Audit Committee must see and/or review the North Contract before it could be finally approved by the NRA.

38.     Produce the documents and communications relating to the idea for, negotiation of, drafting of, and suspension or furlough of the North Contract and the Loesch Contract.

DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S                    PAGE 13
FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT

APP017

39.     Produce the documents and communications relating to North's request that the NRA audit or review the Brewer Firm's bills or invoices.

40.     Produce the documents and communications relating to Cummins' concerns or issues raised to the NRA's Audit Committee about Brewer and/or the Brewer Firm.

41.     Produce the documents and communications between (a) Cotton and (b) Brewer, the Brewer Firm, LaPierre, and/or Powell.

42.     Produce a copy of the fully executed settlement agreement with the NRA that resolved the matter styled *National Rifle Association of America v. Lockton Affinity Series of Lockton Affinity, LLC and Kansas City Series of Lockton Companies, LLC, in the United States District Court for the Eastern District of Virginia*, Civil Action No. 1:18-cv-639-LO/JFA.

43.     Produce the documents evidencing and relating to attorneys' fees and other monies Brewer or the Brewer Firm requested and/or received in relation to the matter styled *National Rifle Association of America v. Lockton Affinity Series of Lockton Affinity, LLC and Kansas City Series of Lockton Companies, LLC, in the United States District Court for the Eastern District of Virginia*, Civil Action No. 1:18-cv-639-LO/JFA.

44.     Produce the contract(s), agreement(s), or other documents evidencing the understanding(s) between (a) Brewer or the Brewer Firm and (b) the NRA, regarding additional claims against the NRA relating to Lockton Affinity Series of Lockton Affinity, LLC and/or Kansas City Series of Lockton Companies, LLC that arose or may arise after the resolution of the matter styled *National Rifle Association of America v. Lockton Affinity Series of Lockton Affinity, LLC and Kansas City Series of Lockton Companies, LLC, in the United States District Court for the Eastern District of Virginia*, Civil Action No. 1:18-cv-639-LO/JFA.

45.     Produce the reports, communications, and other documents created by or exchanged between the NRA and any audit company that reviewed and/or audited (a) AMc's records, (b) the NRA's records pertaining to AMc, and/or (c) any of the NRA's other vendors or contractors, from January 1, 2018 to the present.

46.     Produce the communications between the NRA and third parties (including, but not limited to, the vendor(s), contractor(s), and company(ies) performing the audit(s)), concerning, referring, or relating to any audit the NRA requested for any of its other vendors or contractors from January 1, 2018 to the present.

47.     Produce the documents and communications between the NRA and Forensic Risk Analysis concerning AMc.

48.     Produce the communications between the NRA and Hallow from January 1, 2019 to the present concerning, referring, or relating to AMc, North, and/or the North Contract.

49.     Produce pictures of Hallow holding firearms.

50.     Communications between (a) the NRA and (b) Phillips and Payne (whether jointly or individually) concerning, referring, or relating to AMc.

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                                        **PAGE 14**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

**APP018**

51.     Produce the documents, rules, and/or regulations evidencing or tending to support your requirements, mandates, instructions, directives, or other guidance provided to third parties concerning LaPierre's private travel, transportation safety, and/or security needs ████████████
███████████████████████████████████████████

52.     Produce the documents and communications evidencing and relating to the NRA's payment for LaPierre's private travel, transportation safety, and/or security needs, as referenced in Request No. 51 above.

53.     Produce the documents relating to meetings between LaPierre and the NRA's executive staff, including, but not limited to, Powell, from January 1, 2018 to the present, relating to the Lawsuit, the media, public relations, marketing or branding, AMc, the New York AG's investigation into the NRA, Carter, Brewer, and/or the Brewer Firm.

54.     Produce the documents and communications exchanged between Brewer and Powell, from January 1, 2018 to the present, relating to the Lawsuit, the media, public relations, marketing or branding, AMc, the New York AG's investigation into the NRA, the New York AG, and/or the NRA's tax exempt status.

55.     Produce the documents and communications relating to the NRA's self-correction and New York state law ████████████████ including, but not limited to, documents and communications evidencing and relating to the meetings of the NRA Board of Directors, the invoices that were converted to contracts, the compliance seminar(s), the review of the NRA's business practices.

56.     Produce the documents and communications exchanged with Brewer and the Brewer Firm relating to the NRA's self-correction and New York state law ████████████
███████████████████████████

57.     Produce the document preservation notice ████████████████████████
██████████████████

58.     Produce the documents and communications relating to the alleged statement by Lacey Duffy to The Wall Street Journal concerning LaPierre's niece's child marking the walls at the Four Seasons Hotel in Los Angeles, ██████████████████████████████
█████████

59.     Produce the documents relating to the NRA's $1.8 million rental house in Los Angeles, California.

60.     Produce the documents relating to the NRA's investment in companies or opportunities in the Bahamas.

61.     Produce the documents that reflect your relationship with the NRA Foundation.

62.     Produce the documents relating to the transfer of funds from the NRA to the NRA Foundation from January 1, 2018 to the present.

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                                  **PAGE 15**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

**APP019**

63.     Produce the documents evidencing or relating to the transfer of funds from the NRA Foundation to the NRA from January 1, 2018 to the present.

64.     Produce the documents and communications exchanged between (a) the NRA Foundation and (b) Brewer or the Brewer Firm.

65.     Produce the documents and communications exchanged between the NRA Foundation and Carter.

66.     Produce the documents and communications relating to payments made (a) by the NRA Foundation (b) to Brewer or the Brewer Firm.

67.     Produce the documents and communications relating to any transactions between the NRA and the NRA Foundation, including, but not limited to, the $5 million loan provided by the NRA Foundation to the NRA ██████████████████████████████████████████
████████████

68.     Produce the documents evidencing or relating to Powell's and/or Brewer's efforts, desires, attempts, directives, instructions, or other guidance concerning Hallow's termination.

69.     Produce the documents evidencing or relating to the NRA's complaints about or against Powell, including any settlement agreements relating to same.

70.     Produce the documents and communications relating to the claim by an NRA employee against Powell, including any settlement agreements relating to same, ████████████
████████████████████████████████████████████

71.     Produce the documents and communications relating to Powell's efforts or work with the Department of Financial Services in regard to New York State ████████████████
████████████████████████████████

72.     Produce the documents and communications relating to "all of the compliance issues" Powell is handling or working on with the New York AG ██████████████████████
██████████████████████████

73.     Produce the documents evidencing your current relationship with Powell.

74.     Produce the documents created, relied upon, submitted to third parties, or otherwise relating to any criminal investigation concerning, or conviction of, Powell, Hallow, and/or Phillips.

75.     Produce all legal judgments against Powell.

76.     Produce the documents that reflect your relationship with Stanton.

77.     Produce the communications between LaPierre and Stanton.

78.     Produce the communications between (a) Stanton and (b) Brewer or the Brewer Firm.

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                    **PAGE 16**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

**APP020**

79.      Produce the communications and documents exchanged between (a) LaPierre and (b) Brewer or the Brewer Firm from January 1, 2017 to the present.

80.      Produce Supernaugh's file on LaPierre.

81.      Produce the documents and communications relating to salary increases in 2018 for LaPierre and Hallow.

82.      Produce the personnel files, including the severance agreements, for the individuals terminated and/or ousted from the NRA and its Board of Directors since January 1, 2018, including, but not limited to, Hart, Cox, Childress, Weaver, Cooper, Christman, and Volkov.

83.      Produce the documents and communications evidencing and relating to the termination, ouster, and/or resignation of the following individuals, including, but not limited to, the documents and communications evidencing and relating to the decision for the termination, ouster, and/or resignation: Hart, Cox, Childress, Weaver, Cooper, Christman, and Volkov.

84.      Produce the documents and communications evidencing and relating to any administrative leave for the following individuals: Hart, Cox, Childress, Weaver, Cooper, Christman, and Volkvok.

85.      Produce the documents and communications evidencing and relating to the alleged coup ███████████████████████████████████████, including, but not limited to, the documents and communications provided to, by, or from Boren.

86.      Produce the documents and communications created for, created by, sent to, received from, or otherwise exchanged between the NRA and the media relating to AMc.

87.      Produce the documents and communications created for, created by, sent to, received from, or otherwise exchanged between the NRA and Carter relating to AMc, the media, the NRA, public relations services, marketing services, and/or branding services from January 1, 2017 to the present.

88.      Produce the documents and communications created for, created by, sent to, received from, or otherwise exchanged between (a) Brewer or the Brewer Firm and (b) the media relating to AMc and/or the NRA.

89.      Produce the documents and communications created for, created by, sent to, received from, or otherwise exchanged between the media and Carter relating to AMc and/or the NRA.

90.      Produce the communications between (a) the NRA and (b) Angus McQueen, Revan McQueen, Skye McQueen Brewer, and/or any other member of the McQueen and/or Brewer family/ies relating to Brewer's engagement by the NRA, AMc, or the Lawsuit.

91.      Produce the communications between (a) Angus McQueen, Revan McQueen, Skye McQueen Brewer, and/or any other member of the McQueen and/or Brewer family/ies, on the one hand, and (b) Brewer or the Brewer Firm, on the other hand, relating to AMc and/or the NRA.

DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S                    PAGE 17
FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT

APP021

92.     Produce the documents and communications relating to the whistleblower complaints of AMc's alleged intentional disregard of annual budgets that the NRA's Finance Committee oversaw and approved prior to Brewer's involvement, as referenced in LaPierre's correspondence to North on or around April 1, 2018.

93.     Produce the documents and communications relating to the whistleblower complaints of concerns about "revolving door" hiring among the NRA and AMc, and ongoing ties between the NRA leadership and AMc leadership prior to Brewer's involvement, as referenced in LaPierre's correspondence to North on or around April 1, 2018.

94.     Produce the documents and communications between (a) you and/or LaPierre, on the one hand, and (b) Stinchfield, on the other hand, concerning NRATV, AMc, and/or Angus McQueen, including, but not limited to, contracts for Stinchfield, documents evidencing or reflecting Stinchfield's salary or other compensation, and/or documents evidencing payments made to Stinchfield.

95.     Produce the documents and communications with third parties about Stinchfield, including, but not limited to, his involvement with NRATV, his involvement with AMc, his involvement with Angus McQueen, his contract(s), his salary or other compensation, and/or payments made by you (or any person or entity on your behalf) to Stinchfield.

96.     Produce your internal documents and communications (about Stinchfield, including, but not limited to, his involvement with NRATV, his involvement with AMc, his involvement with Angus McQueen, his contract(s), his salary or other compensation, and/or payments made by you (or any person or entity on your behalf) to Stinchfield.

97.     Produce the documents and communications with The Daily Beast, including but not limited to, Julia Arciga and including, but not limited to, documents relating to Stinchfield.

98.     Produce the documents and communications evidencing or relating to total views, engaged views, and/or completed views for NRATV.

99.     Produce the documents and communications concerning any financial valuations or projections relating to NRATV, including, but not limited to, documents evidencing or relating to costs of NRATV compared to other media services.

100.    Produce the documents and communications relating to the April 8, 2019 email from Arulanandam to AMc regarding NRATV metrics, including, but not limited to, drafts of the content of the email.

101.    Produce the documents and communications relating to Forensic Risk Analysis, including, but not limited to, communications with Susan Dillon or communications or documents referring or related to Susan Dillon.

102.    Produce the documents you reviewed and/or relied upon in responding to AMc's *First Set of Interrogatories*.

**Defendant/Counter-Plaintiff Ackerman McQueen, Inc.'s**      **Page 18**
**First Requests for Production to Plaintiff/Counter-Defendant**

**APP022**

103.     In the first unnumbered paragraph of the Preliminary Statement of your Amended Complaint, you reference "**newly unearthed text messages, emails, and interviews**."  Produce the "text messages" and "emails" concerning, referring, or relating to this allegation and any notes, memoranda, or other documents that were prepared during or as a result of the referenced "interviews."

104.     In the first unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you allege that AMc "**went to outrageous lengths to conceal and sustain its fraud**."  Produce the documents displaying or tending to show the "outrageous lengths" you allege in this paragraph, from whatever time period you intended the allegation to encompass.

105.     In the first unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you allege that AMc deployed "**scorched-earth tactics against anyone who dared scrutinize its conduct**."  Produce the documents displaying or tending to show the "scorched-earth tactics" you allege in this paragraph, from whatever time period you intended the allegation to encompass.

106.     In the first unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you allege that AMc "**tried to oust**" LaPierre from the NRA.  Produce the documents displaying or tending to show the efforts to "oust" LaPierre that you allege in this paragraph, from whatever time period you intended the allegation to encompass.

107.     In the second unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you allege that "**many within the NRA had grown suspicious that its experiment with a branded digital media platform was not working**." Produce the documents internal to the NRA that display or tend to show any such suspicions that you allege in this paragraph, from whatever time period you intended the allegation to encompass.

108.     In the third unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you claim that AMc's representations regarding NRATV were "**intentionally (and wildly) misleading**."  Produce the communications, reports, articles, or any other document in your possession that supports this allegation, from whatever time period you intended the allegation to encompass.

109.     In the fourth unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you claim that you have "**acquired documents and information**" showing that "**AMc fraudulently double billed the NRA**."  Produce the "documents" referenced in your allegation, from whatever time period you intended the allegation to encompass.

110.     In the fourth unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you reference an "**open letter**" and quote language from an alleged "**co-conspirator**." Produce a copy of this letter.

111.     In the fourth unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you allege that "**AMc proceeded to 'leak' the threatened documents**."  Produce the documents you are referencing in this allegation.

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                    **PAGE 19**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

APP023

112.     In the fifth unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you reference "**other failed client representations**," and allege that "**many of these campaigns…were shut down because of their ineffectiveness, costliness, and [AMc's] reluctance to provide specific performance data**."  Produce the documents and  communications that support this allegation.

113.     In Paragraph 19 of your Amended Complaint, you claim that AMc provided "**elaborate assurances**" relating to the accuracy, completeness, and security of various records.  Produce a copy of the documents evidencing or tending to show these "elaborate assurances," from whatever time period you intended the allegation to encompass.

114.     In Paragraphs 25 and 26 of your Amended Complaint, you attribute several direct quotes to Angus McQueen.  Produce the communications, personal notes, memoranda, or any other documents that contain this quoted language or otherwise support the representations alleged in these paragraphs.

115.     In Paragraph 26 of your Amended Complaint, you allege that AMc "**assured the NRA that its substantial investment would '*pay for itself…within three years max*.'**"  Produce the communications, personal notes, memoranda, or any other documents that contain this quoted language or otherwise support the representations alleged in this paragraph, from whatever time period you intended the allegation to encompass.

116.     In Paragraph 27 of your Amended Complaint, you allege that AMc represented that live programming was "**'*the key*' to the success of the platform**."  Produce the communications, personal notes, memoranda, or any other documents that contain this quoted language or otherwise support the representations alleged in this paragraph, from whatever time period you intended the allegation to encompass.

117.     In Paragraph 28 and 29 of your Amended Complaint, you reference thirteen "**closed-door meetings . . . with Mr. LaPierre and sometimes others from the NRA leadership in attendance**."  Produce the documents relating to, and notes (whether personal, collaborative, official, informal, formal, written, or electronic) taken during, these meetings by LaPierre or any other member of "NRA leadership" referenced in this allegation, from whatever time period you intended this allegation to encompass.

118.     In Paragraph 29 of your Amended Complaint, you allege that certain representations made by "Defendant Montgomery and others" are "**now know to be false**."  Produce the communications, reports, articles, or any other documents you rely upon to support this contention.

119.     In Paragraph 30 and throughout your Amended Complaint, you contend that "**unique**" or "**distinct**" viewership was a metric for evaluating NRATV performance that AMc should have provided.  Produce the reports, communications, textbooks, treatises, or other documents you rely upon to support this contention.

120.     With regard to your contentions regarding "**unique**" or "**distinct**" viewership data, referenced in Request No. 119 above, produce the documents evidencing, containing, and relating

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                                                                 **PAGE 20**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

**APP024**

to this type of data, including, but not limited to, the request(s) you made to AMc for information requesting this type of data.

121.    In Paragraph 31 of your Amended Complaint, you reference "**consistent inquiries of NRA leadership**" to AMc relating to NRATV viewership.  To the extent that these "inquiries" comprise documents that were <u>not</u> produced in response to Request No. 120 above, please produce the documents evidencing these "inquiries," from whatever time period <u>you</u> intended the allegation to encompass.

122.    In Paragraph 31 of your Amended Complaint, you reference "**underlying, unvarnished, fulsome metrics**" that AMc "**intentionally withheld from the NRA.**"  Produce the communications, articles, reports, or any other documents you rely upon to support your good-faith contention that there were "underlying, unvarnished, fulsome metrics" that AMc knew about and/or concealed.

123.    Produce the reports, analyses, communications, or any other written or electronic information provide to you by any third-party you hired to perform an independent analysis of NRATV viewership metrics at any time since 2016.

124.    In footnote 14 of Paragraph 37 of your Amended Complaint, you allege that AMc "**hired a plethora of friends, family, and significant others for positions at NRATV for which they lacked the requisite qualifications and experience**."  Produce the communications or other documents that support this contention, from whatever time period <u>you</u> intended the allegation to encompass.

125.    In Paragraph 36 of your Amended Complaint, you allege that AMc provided financial valuations that had "**no basis in reality**."  Produce the reports, analyses, articles, texts, treatises, communications, or any other documents you rely upon to support this contention.

126.    With regard to the above allegation from Paragraph 36 of your Amended Complaint ("**no basis in reality**"), produce the reports, analyses, or communications, whether internally to the NRA or from any third-party engaged for this purpose, reflecting any efforts to arrive at a more "realistic" valuation, including documents revealing what you contend that value should have been and the factual and methodical bases for arriving at any such conclusions.

127.    In Paragraph 39 of your Amended Complaint, you allege that the "**NRA leadership requested greater directional control and coordination over the content of NRATV programming.**"  Produce the written or electronic documents and communications evidencing these requests, from whatever time period <u>you</u> intended the allegation to encompass.

128.    With regard to your requests for "greater directional control and coordination over the content of NRATV programming" in Paragraph 40 of your Amended Complaint, you allege that AMc "**became increasingly secretive, hostile and determined to '*protect*' its '*economics*' with the NRA.**"  Produce the communications, personal notes, memoranda, or any other documents that support this allegation, from whatever time period <u>you</u> intended the allegation to encompass.

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                                   **PAGE 21**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

APP025

129.    In Paragraph 43 of your Amended Complaint, you allege that certain work performed for the American Clean Skies Foundation was an "**unmitigated failure**."  Produce the communications, reports, articles, or any other documents you relied upon in making this allegation.

130.    In Paragraph 46 of your Amended Complaint, you reference a New York Times article by Danny Hakim, which "reportedly reported" on NRATV viewership, to support your contention that AMc "**overstated**" certain representations regarding viewership.  Aside from this news article, produce the other documents you relied upon in making this allegation.

131.    In Paragraph 47 of your Amended Complaint, you claim that you "**updated [NRA] internal policies and controls**" to reflect amendments to New York Not-for-Profit Corporation Law.  Produce the version(s) of any such "internal policies and controls" that preceded the alleged update, and any version(s) that resulted from this updating process.

132.    In Paragraph 47 of your Amended Complaint, you claim that you "**sent letters to more than a hundred vendors—including AMc—that set forth updated invoice-support requirements**."  Produce a copy of each of these letters.

133.    In Paragraph 47 of your Amended Complaint, you claim that the NRA "**undertook to strengthen its procedures for documentation and verification of compliance by vendors with their contracts**."  Excluding the letters you produced in response to Request No. 132 above, produce the internal emails, memoranda, or other written or electronic communications and documents evidencing or tending to show these efforts, from whatever time period <u>you</u> intended this statement to encompass.

134.    In Paragraph 48 of your Amended Complaint, you allege that "**numerous employees came forward with complaints about AMc**."  Produce the internal emails, memoranda, or other written or electronic communications and documents evidencing these "complaints," from whatever time period <u>you</u> intended this allegation to encompass.

135.    In Paragraph 51 of your Amended Complaint, you allege that AMc became "**evasive and even hostile**" in response to requests pursuant to the Records-Examination Clause of the Services Agreement.  Produce the written or electronic communications and documents you received from AMc evidencing or tending to show the evasiveness or hostility you allege, from whatever time period <u>you</u> intended this allegation to encompass.

136.    In Paragraph 57 of your Amended Complaint, you allege that the NRA "**was contacted with increasing frequency by journalists acting on purported 'leaks' relating to matters on which AMc had worked**."  Produce the written or electronic communications and documents from any journalist to the NRA or to the Brewer Firm reflecting these requests, from whatever time period <u>you</u> intended this allegation to encompass.

137.    In Paragraph 63 of your Amended Complaint, you allege that there were six months of "**back-and-forth**" between AMc and the NRA regarding requests for the North Contract. Produce the written or electronic communications and documents evidencing or tending to show this "back-and-forth."

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                                    **PAGE 22**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

APP026

138.     In Paragraph 76 of your Amended Complaint, you allege that: "**Discovery has corroborated one of the NRA's worst fears**" relating to AMc's billing practices.  Produce the documents from this "discovery" effort that you reference in this allegation.

139.     In Paragraph 89 of your Amended Complaint, you state that "**AMc's website falsely proclaims that NRATV is the '*world's most comprehensive video coverage of freedom-related news, events and culture*.**'"   Produce the documents that you rely upon to support this contention, including evidence of <u>other</u> websites offering video coverage of freedom-related news, events, and culture, which you believe to be more comprehensive than NRATV.

140.     Produce the registration documents of any trademark that you claim has been misappropriated by AMc in Count One of your Amended Complaint.

141.     In Paragraph 100 of your Amended Complaint, you claim that Defendants engaged in "**unauthorized and unlicensed words, statements, and/or use of NRA intellectual property**."  Produce the documents that support this claim <u>that were not already attached as an exhibit</u> to your original or amended pleadings in this matter, if any.

142.     Produce the communications received by the NRA since June 25, 2019, evidencing or tending to show the consumer "**confusion**" you allege has occurred in this matter, as referenced in Count One of your Amended Petition.

143.      Produce the media reports, social-media postings, or any other document published or created by anyone (other than you) since June 25, 2019, reflecting or supporting the existence of any consumer confusion you allege in Count One of your Amended Complaint.

144.     Produce the communications, reports, statements, or other documents evidencing or tending to support the "**economic**" or "**financial**" injuries that the NRA has suffered, as referenced in Count One, Paragraphs 99-100 of your Amended Complaint.

145.     Produce the communications, media reports, social-media postings, or any other documents evidencing or tending to support the "**reputational**" injury or "**loss of goodwill**" that the NRA has suffered, as referenced in Count One, Paragraphs 99-100 of your Amended Complaint.

146.     Produce the registration documents of any copyright that you claim has been misappropriated by AMc in Count Two of your Amended Complaint.

147.     For every copyright that you claim has been infringed by AMc in Count Two of your Amended Complaint, produce the documents that reflect or tend to support any economic or financial injury, including lost royalties or loss of market value, suffered by the NRA as a result.

148.     Produce the documents that reflect or tend to support damages you allege in your Amended Complaint.

149.     Produce documents reflecting each specific item of property owned or legally possessed by the NRA which you claim has been converted by AMc in Count Three of your

**Defendant/Counter-Plaintiff Ackerman McQueen, Inc.'s**                                    **Page 23**
**First Requests for Production to Plaintiff/Counter-Defendant**

**APP027**

Amended Complaint, if such documents <u>were not already attached as an exhibit</u> to your original or amended pleadings in this matter.

150.    For every item that you claim was converted by AMc, produce the written or electronic communications and other documents reflecting your demand to AMc that the property be returned, and any response provided by AMc.

151.    In Paragraph 116 of your Amended Complaint, you state that you are seeking as damages the "**total value**" of each item you claim was converted by AMc.  Produce the spreadsheets, statements, reports, or any other documents reflecting your computations, estimates, reports, or any other analysis of the "total value" of each item.

152.    In Paragraph 131 of your Amended Complaint, you state that AMc sent "**sham bills**" to the NRA.  Produce the invoices, financial statements, or other "bills" from AMc that you contend were a "sham," from whatever time period you intended the allegation to encompass.

153.    With regard to Request No. 152 above, produce the communications, reports, spreadsheets, financial statements, or any other documents evidencing or tending to support your allegation that AMc sent "**sham bills**" to the NRA.

154.    In Paragraph 131 of your Amended Complaint, you state that AMc sought reimbursements "**in excess of the actual cost to AMc**" in certain bills sent to the NRA.  Produce the invoices, statements, or other "bills" from AMc that you contend sought these excessive reimbursements, from whatever time period you intended the allegation to encompass.

155.    With regard to Request No. 154 above, produce the communications, reports, spreadsheets, financial statements, or any other documents evidencing or tending to support your allegation that AMc sought reimbursements from the NRA "**in excess of the actual cost to AMc**."

156.    In Paragraph 137 of your Amended Complaint, you attributed two quotes to Defendants ("*a good opportunity to generate revenue*" and "*pay for itself*").  Produce the communications, meeting notes, or other documents that directly or indirectly reflect these alleged quotes (whether separately or together).

157.    In Paragraph 138 of your Amended Complaint, you claim that the NRATV digital platform demonstrated "**dismal**" viewership numbers.  Produce the reports, articles, communications, or other documents that you rely upon to support this allegation.

158.    In Paragraph 148 of your Amended Complaint, you allege that AMc "**billed the NRA for time logged by employees who were supposed to be fully 'dedicated' to the NRA**."  Produce the communications, reports, or other documents that you rely upon to support this allegation.

159.    In Paragraph 148 of your Amended Complaint, you allege that AMc "**often double-billed multiple clients for the same work**."  Produce the communications, reports, or other documents that you rely upon to support this allegation.

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                                    **PAGE 24**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

APP028

160.    In Paragraph 148 of your Amended Complaint, you allege that AMc "**used equipment, billed to the NRA, for other clients' projects**."   Produce the communications, reports, or other documents that you rely upon to support this allegation.

161.    Produce the written or electronic requests for information relating to NRATV viewership analytics or performance metrics that you sent to AMc from 2015 through the beginning of this Lawsuit.

162.    With regard to the requests for information referenced in Request No. 161 above, produce the written or electronic communication or other documents you received from AMc in response.

163.    Produce the documents evidencing, reflecting, or relating to your disapproval of NRATV.

164.    Produce the communications and other documents you allegedly sent to AMc concerning the intellectual property allegations contained in your Amended Complaint.

165.    Produce the contracts, communications, or other documents supporting your contention that Defendants AMc, Mercury, Montgomery, Winkler, Martin, and/or Greenberg was/were a fiduciary of the NRA.

166.    With regard to any third-party subpoenas issued by you in any legal action initiated by you against AMc since April 12, 2019, produce a copy of all documents received in response to such subpoena(s).

167.    With regard to the third-party subpoena(s) referenced in Request No. 166 above, produce the communications between the NRA and the subpoena recipient from May 23, 2019 to the present, irrespective of whether any documents were ultimately received from the subpoenaed party.

168.    If you contend that any AMc invoices violate **Section II(A)(1)** of the Services Agreement related to "Public Relations/Political Strategy/Strategic Marketing Services," produce a copy of the invoices that support your contention.

169.    If you contend that any AMc invoices violate **Section II(B)(1)** of the Services Agreement related to "Advertising/Creative/Media Planning and Placement Services," produce a copy of the invoices that support your contention.

170.    If you contend that any AMc invoices violate **Section II(B)(2)** of the Services Agreement related to "Advertising/Creative/Media Planning and Placement Services," produce a copy of the invoices that support your contention.

171.    If you contend that any AMc invoices violate **Section II(B)(3)** of the Services Agreement related to "Advertising/Creative/Media Planning and Placement Services," produce a copy of the invoices that support your contention.

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**                                      **PAGE 25**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

**APP029**

172.    If you contend that any AMc invoices violate **Section II(C)** of the Services Agreement related to "Owned Media and Internet Services," produce a copy of the invoices that support your contention.

173.    If you contend that any AMc invoices violate **Section II(D)** of the Services Agreement related to "Digital Systems Operations Support," produce a copy of the invoices that support your contention.

174.    If you contend that any AMc invoices violate **Section II(E)** of the Services Agreement related to "Other Projects," produce a copy of the invoices that support your contention.

175.    If you contend that any AMc invoices violate **Section III(A)** of the Services Agreement related to reimbursement for expenses, produce a copy of the invoices that support your contention.

176.    If you contend that any AMc invoices violate **Section III(B)** of the Services Agreement related to Section III(D) of the Services Agreement related to billing for special assignments.

177.    Produce your communications with any employee or representative of Associated TV, Grassroots Behavioral Services, McKenna & Associates, LLC, and/or MMP referring or related to concerns or questions about their billing, contract compliance, lack of current contract, compliance with New York not-for-profit law, the audit of their records, or any other matter related to contract, financial, billing, or budgetary compliance from August 1, 2018, to the present.

Dated: December 20, 2019.

Respectfully submitted,

*/s/ Brian E. Mason*

**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com

**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR DEFENDANTS
ACKERMAN MCQUEEN, INC., MERCURY
GROUP, INC., HENRY MARTIN, JESSE
GREENBERG, WILLIAM WINKLER, AND
MELANIE MONTGOMERY**

**DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S**         **PAGE 27**
**FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT**

**APP031**

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2019, I served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Brian E. Mason*
BRIAN E. MASON, ESQ.

DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S                    PAGE 28
FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT

APP032

# EXHIBIT A-2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § |
| **Plaintiff and Counter-Defendant** | § § § |
| and | § § |
| WAYNE LAPIERRE, | § § |
| **Third-Party Defendant,** | § § |
| v. | §   Civil Action No. 3:19-cv-02074-G |
| ACKERMAN MCQUEEN, INC., | § § |
| **Defendant and Counter-Plaintiff,** | § § |
| and | § § |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG, | § § § § § § |
| **Defendants.** | § § |

## PLAINTIFF COUNTER-DEFENDANT'S OBJECTIONS AND RESPONSES TO DEFENDANT COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S FIRST REQUESTS FOR PRODUCTION

Pursuant to Rule 34 of the Federal Rules of Civil Procedures, Plaintiff and Counter-Defendant National Rifle Association of America ("NRA") submits its Objections and Responses to the First Request for Production (the "Requests") of Defendant/Counter-Plaintiff Ackerman McQueen, Inc., ("Ackerman"), as follows:

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 1

APP033

## I.

## GENERAL OBJECTIONS

1.     The NRA's responses to the Requests are not intended to waive, and do not constitute any waiver of, any objections which NRA may have to the admissibility of the information provided.   NRA reserves all objections regarding the relevance, materiality, or admissibility of any such information as evidence in this action or in any related proceeding.

2.     The NRA reserves the right to supplement or amend these objections and responses due to, among other things, discovery of additional facts and materials and other developments or proceedings in this action.  NRA reserves the right to make any use of, or introduce at any hearing and at trial, information and documents otherwise responsive to the Requests that may be discovered subsequent to the date of these initial responses.

3.     The NRA objects to Instruction No. 5 on the basis that the instructions listed are more appropriate for interrogatories, outside the scope of Rule 34 of the Federal Rules of Civil Procedure, and, therefore, are unduly burdensome.

4.     The NRA objects to Instruction No. 6 on the grounds that exceeds the applicable requirements for the creation of a privilege log.  The NRA will follow Rule 26 of the Federal Rules of Civil Procedure for the creation of a privilege log.

5.     The NRA objects to Instruction No. 7 because it assumes that the NRA would be able to "indicat[e] which portion of such Document is not or cannot be produced and the reason and, therefore, objects that it is not proportional to needs of the case, overbroad, and unduly burdensome.

6.     The NRA objects to Instruction No. 8 on the ground that making an all native production of documents is unduly burdensome, presents difficulties searching, organizing and

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS**
**AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF**
**ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**                    **Page 2**

**APP034**

printing such documents, and for these reasons is not proportional to the needs of the case.  Such

productions are not common or appropriate for large commercial litigation like the case at bar.

The NRA recommends that the parties meet and confer to discuss production format issues.  The

NRA will produce documents in the format attached to its First Request of Product of Documents

to Defendants.  The NRA will agree, however, to produce Excel spreadsheets in native format.

7.     The NRA objects to the inclusion of Mr. Brewer, the Brewer Firm, and other

attorneys in the definition of "NRA."  Such inclusion would only cause vagueness, ambiguity, and

confusion, particularly as the definitions section identifies specific Brewer attorneys, including

"Brewer, Brewer IV, Collins, and McKenney".  For these reasons, the NRA will interpret "NRA"

as not including the above individuals and the Brewer Firm and will treat them as separate

identities, consistent with Defendant's own definition section.

8.     The NRA objects to each and every definition, instruction and request for

production to the extent it seeks information protected by the attorney-client privilege, the work-

product doctrine, the common-interest defense doctrine, or any other evidentiary privilege

available under the applicable law. The inadvertent disclosure of any information subject to such

privileges and protections is not intended to relinquish any privilege or protection and shall not be

deemed to be a waiver of any applicable privilege or protection.

9.     The NRA objects to the time period included in the definition section, which is

January 1, 2007.  The NRA has for the most part requested documents from the NRA from January

1, 2015, through the present to encompass the entire period of liability.  Absent agreement by the

parties or order by the Court as to the temporal scope of discovery, the document production

process will inevitably become burdensome, not proportional to the needs of the case, or otherwise

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS**
**AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF**
**<u>ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION</u>**                              **Page 3**

**APP035**

disproportionate and unwieldy.  Until this matter is resolved, the NRA reserves the right to produce documents post-dating Defendants' proposed temporal scope of discovery.

## II.

### SPECIFIC OBJECTIONS AND RESPONSES

**REQUEST FOR PRODUCTION NO. 1:**

Produce the documents and communications evidencing and relating to Brewer's knowledge that his father-in-law, Angus McQueen, was suffering from a terminal illness, including, but not limited to, documents and communications demonstrating when Brewer learned of the same.

**RESPONSE:**

The NRA objects to this request as harassing, because it seeks documents that have nothing to do with the claims and defenses in this case. Brewer's knowledge about his father-in-law's illness has no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 2:**

Produce the documents and communications evidencing and relating to when any executive of the NRA learned that Brewer's father-in-law, Angus McQueen, was suffering from a terminal illness.

**RESPONSE:**

The NRA objects to this request as harassing, because it seeks documents that have nothing to do with the claims and defenses in this case.  Documents concerning the point in time when an NRA executive knew about Mr. McQueen's illness have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA stands on its objections.

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**                    **Page 4**

**APP036**

**REQUEST FOR PRODUCTION NO. 3:**

Produce the documents and communications relating to Angus McQueen's terminal illness and passing.

**RESPONSE:**

The NRA objects to this request as harassing, because it seeks documents that have nothing to do with the claims and defenses in this case.  Documents concerning Mr. McQueen's illness and unfortunate passing have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 4:**

Produce a copy of the current version, and any previous drafts of, the engagement letter between the Brewer Firm and the NRA.

**RESPONSE:**

The NRA objects to this request because it seeks documents that have no connection to the claims and defenses in this case. A "current version" of "the engagement letter" or "any previous drafts" have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA also objects to this request on the basis that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery, particularly with respect to the request for drafts of "the current version."  The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 5:**

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    **Page 5**

APP037

Produce the documents and communications relating to the Brewer Firm's billing, including, but not limited to (a) the billing statements or invoices issued by the Brewer Firm to the NRA for all work done on behalf of the NRA from January 1, 2017 through present; (b) the payment of the billing statements or invoices.

**RESPONSE:**

The NRA objects to this request because billing information of the Brewer Firm and payments made thereto have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA also objects to this request on the basis that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery, as it is common for billing statements to include descriptions of work performed that would reveal protected information. In addition, the request is overbroad and unduly burdensome because it requests all billing information for the multiple matters the Brewer Firm has or is handling for the NRA. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 6:**

Produce the documents and communications received by the NRA relating to the retention and engagement of Brewer and the Brewer Firm by the NRA.

**RESPONSE:**

The NRA objects to this request because it seeks documents concerning "the retention" of Mr. Brewer or of the Brewer Firm that have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery. In addition, the request is overbroad and unduly burdensome because it arguably

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 6

APP038

requests such documents for each and every matter in which Mr. Brewer and the Brewer Firm represented the NRA. The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 7:

Produce the PowerPoint presentations presented by the Brewer Firm to the NRA, the NRA Board of Directors, and/or North relating to the New York AG, the NRA non-profit status, litigation with Lockton, litigation with AMc or other NRA related vendors, or conflicts.

## RESPONSE:

The NRA also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery, as the requested materials directly seek the presentations made by outside counsel for the NRA to the NRA and/or the members of its Board of Directors. In addition, the NRA objects to this request as harassing because it seeks documents concerning the New York AG, the NRA non-profit status, litigation with Lockton, or conflicts that have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 8:

Produce the PowerPoint presentation presented by Brewer to LaPierre, North, and others regarding conflicts of interest within the NRA as discussed during North's December 18, 2019.

## RESPONSE:

The NRA objects to this request because it is unclear what is referenced when Defendant's use the words "North's December 18, 2019." The NRA further objects to this request on the basis that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery, as the requested materials

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS**
**AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF**
**ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**          **Page 7**

**APP039**

directly seek the presentations made by outside counsel for the NRA to the NRA or the members of its Board of Directors.  In addition, the NRA objects to this request because it seeks documents that have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 9:**

Produce the documents and communications exchanged between (a) the NRA and (b) Brewer or the Brewer Firm from January 1, 2017 to the present.

**RESPONSE:**

The NRA objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery, as the request seeks communications directly between the NRA and its outside counsel.  In addition, the NRA objects to this request because communications between the NRA and Mr. Brewer and the Brewer Firm have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.   The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 10:**

Produce the documents and communications relating to any conflict or conflict of interest between (a) the NRA and (b) Brewer or the Brewer Firm.

**RESPONSE:**

The NRA objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery.  In addition, the NRA objects to this request because whether or not there is a conflict

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 8

APP040

of interest between (a) the NRA and (b) Brewer or the Brewer Firm has no bearing on the claims

and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious

interference, and/or breach of contract. The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 11:

Produce the documents and communications sent to, received from, or otherwise exchanged between (a) Arulanandam and (b) Brewer or the Brewer Firm.

## RESPONSE:

The NRA objects to this request to the extent that it seeks documents protected by the

attorney-client privilege, work product doctrine, and any other privilege or exemption for

discovery.  In addition, the NRA objects to this request because it seeks all documents and

communications between an NRA employee and Mr. Brewer and the Brewer law firm, the vast

majority of which will have no bearing on the claims and defenses at issue in this case, including

AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract, and

will impose unnecessary costs and expenses to the NRA.  Accordingly, the request is overbroad

and unduly burdensome.  The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 12:

Produce the documents and communications relating to any "vetting" or examination of the Brewer Firm's legal bills or invoices performed by (a) the NRA's Treasurer's office and/or (b) the NRA's General Counsel, [OMITTED].

## RESPONSE:

The NRA objects to this request because it violates the Protective Order entered into in

the ongoing Virginia actions between the parties by improperly disclosing information deemed

by the NRA as "Confidential" under the Protective Order. The NRA also objects to this request

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                         Page 9

APP041

to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery, because the request on its face asks for the legal analysis and opinion of the NRA General Counsel's office and any other counsel that performed the alleged "vetting."  In addition, the NRA objects to this request because whatever "vetting" occurred has no connection to the claims at issue in this case. The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 13:

Produce a copy of the presentations provided by the Brewer Firm to the NRA's Board of Directors [OMITTED].

## RESPONSE:

The NRA objects to this request because it violates the Protective Order entered into in the ongoing Virginia actions between the parties by improperly disclosing information deemed by the NRA as "Confidential" under the Protective Order. The NRA also objects to this request on the basis that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery, as the request effectively seeks an attorney-client privileged communication between the NRA Board of Directors and Mr. Brewer. In addition, the NRA objects to this request because it is immaterial to AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.  The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 14:

Produce the documents and communications relating to WBB Investments, LLC.

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 10

APP042

**RESPONSE:**

Subject to and without waiving the foregoing objections and its General Objections, the

NRA shall produce non-objectionable, non-privileged responsive documents at a mutually

agreeable time and place.

**REQUEST FOR PRODUCTION NO. 15:**

Produce the NRA's policies and procedures regarding contracts, including, but not limited to, negotiation of contracts, payment pursuant to contracts, who has authority to execute contracts, retention of contract documents, and termination of contracts.

**RESPONSE:**

Subject to and without waiving the foregoing objections and its General Objections, the

NRA shall produce non-objectionable, non-privileged responsive documents at a mutually

agreeable time and place.

**REQUEST FOR PRODUCTION NO. 16:**

Produce the documents and communications relating to the NRA's requirement that its Board of Directors approve all NRA contracts, expenses, and other expenditures or transactions in excess of $100,000 [OMITTED].

**RESPONSE:**

The NRA objects to this request because it violates the Protective Order entered into in the

ongoing Virginia actions between the parties by improperly disclosing information deemed by the

NRA as "Confidential" under the Protective Order. The NRA also objects to this request to the

extent that it seeks documents protected by the attorney-client privilege, work product doctrine,

and any other privilege or exemption for discovery. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 17:**

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 11

APP043

Produce the documents and communications relating to all contracts retroactively approved and/or ratified by the NRA Board of Directors that were executed by LaPierre on behalf of the NRA from January 1, 2017 to the present [OMITTED].

**RESPONSE:**

The NRA objects to this request because it violates the Protective Order entered into in the ongoing Virginia actions between the parties by improperly disclosing information deemed by the NRA as "Confidential" under the Protective Order. The NRA also objects to this request on the basis that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 18:**

Produce a copy of the September 2018 contract between the NRA and Hammer.

**RESPONSE:**

The NRA objects to this request because the "September 2018 contract between the NRA and Hammer" has no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA also objects to this request on the basis that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery.  The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 19:**

Produce the documents and communications relating to the September 2018 contract between the NRA and Hammer, including, but not limited to, (a) approval and/or ratification of that contract by the NRA's Board of Directors, (b) invoices, and (c) other documents evidencing, describing, and relating to the work Hammer performed, is performing, and/or has promised to perform for the NRA.

**RESPONSE:**

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
<u>ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION</u>                                **Page 12**

**APP044**

The NRA objects to this request because the "documents and communications relating to the September 2018 contract between the NRA and Hammer, including, but not limited to, (a) approval and/or ratification of that contract by the NRA's Board of Directors, (b) invoices, and (c) other documents evidencing, describing, and relating to the work Hammer performed, is performing, and/or has promised to perform for the NRA" have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.   The NRA also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery.  The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 20:

Produce LaPierre's personal notes, whether handwritten, typed, voice-recorded, or reduced to any other medium, that concern, refer, or relate to meetings with AMc from January 2016 to the present.

## RESPONSE:

The NRA objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 21:

Produce the communications exchanged between (a) the NRA, Brewer, and/or the Brewer Firm and (b) any current or former employee or representative of the American Clean Skies Foundation since January 1, 2019.

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**                    **Page 13**

**APP045**

**RESPONSE:**

Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 22:**

Produce the communications between (a) Hakim and (b) the NRA, Brewer, and/or the Brewer Firm from January 1, 2019 to June 25, 2019.

**RESPONSIVE:**

The NRA objects to this request because communications between "(a) Hakim and (b) the NRA, Brewer, and/or the Brewer Firm" have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.  The NRA also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery, particularly with respect to communications with the Brewer Firm. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 23:**

Produce the documents submitted to, and communications with, the New York AG concerning (a) your tax-exempt status and the New York AG's investigation of same and (b) your response to its subpoena issued to you in December 2019.

**RESPONSE:**

The NRA objects to this request as harassing. The request for "documents submitted to, and communications with, the New York AG concerning (a) your tax exempt status and the New York AG's investigation of same and (b) your response to its subpoena issued to you in December

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    **Page 14**

**APP046**

2019" is nothing more than an improper fishing expedition and has no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. No reasonable basis exits to suggest that the documents requested would be needed to prove the elements of your claims.  The NRA also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 24:**

Produce the communications between (a) the NRA, Brewer, and/or the Brewer Firm and (b) Payne from January 1, 2019 to the present.

**RESPONSE:**

Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 25:**

Produce the communications between (a) Grable, D. Robinson, Phillips, and/or Crew, on the one hand (whether jointly or individually), and (b) any other person at the NRA, on the other hand, relating to the meeting with AMc that occurred on October 30, 2018.

**RESPONSE:**

The NRA objects to this request as overbroad and unduly burdensome, as it requests all "communications between (a) Grable, D. Robinson, Phillips, and/or Crew, on the one hand (whether jointly or individually), and (b) any other person at the NRA, on the other hand, relating to the meeting with AMc that occurred on October 30, 2018."  The NRA also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS**
**AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF**
**ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**                    **Page 15**

**APP047**

doctrine, and any other privilege or exemption for discovery. Subject to the foregoing objections and the General Objections, the NRA shall produce non-privileged, non-objectionable, responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 26:**

Produce the reports, analyses, notes, and other documents prepared by Grable, D. Robinson, Crew, and Phillips (whether jointly or individually) on or after October 30, 2018, relating to NRATV viewership analytics or otherwise prepared at or as a result of the meeting with AMc that occurred on October 30, 2018.

**RESPONSE:**

Subject to and without waiving the foregoing objections and its General Objections, the

NRA shall produce non-objectionable, non-privileged responsive documents at a mutually

agreeable time and place.

**REQUEST FOR PRODUCTION NO. 27:**

Produce the documents and communications relating to the NRA's concern that AMc was publicly revealing confidential information [OMITTED].

**RESPONSE:**

The NRA objects to this request because it violates the Protective Order entered into in

the ongoing Virginia actions between the parties by improperly disclosing information deemed

by the NRA as "Confidential" under the Protective Order. The NRA also objects to this request

to the extent that it seeks documents protected by the attorney-client privilege, work product

doctrine, and any other privilege or exemption for discovery.  The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 28:**

Produce the documents and communications relating to the NRA's decision, or decisions made on behalf of the NRA, to publicly reveal information about the Lawsuit, the claims or defenses in the Lawsuit, and/or AMc.

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS**
**AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF**
**ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**                    **Page 16**

**APP048**

**RESPONSE:**

The NRA objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery.  In addition, the request seeks information that has no bearing on the elements of your defenses and claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 29:**

The NRA's corporate entity chart.

**RESPONSE:**

The NRA objects to this request because the "NRA's corporate entity chart" has no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.  The NRA also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery.  The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 30:**

The NRA Foundation's entity chart.

**RESPONSE:**

The NRA objects to this request because the "NRA Foundation's entity chart" has no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.  The NRA also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 17

APP049

product doctrine, and any other privilege or exemption for discovery.  The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 31:**

Produce the communications between the NRA and Sloan from January 1, 2018 to the present that mention AMc, any employee or representative of AMc, or any project of AMc.

**RESPONSE:**

The NRA objects to this because the "communications between the NRA and Sloan from January 1, 2018 to the present that mention AMc, any employee or representative of AMc, or any project of AMc" have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.   The NRA also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 32:**

Produce the communications, notes, and other documents prepared by Phillips, Spray, and Powell referring or relating to, or otherwise prepared for, budget meetings with AMc.

**RESPONSE:**

The NRA objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-privileged, non-objectionable responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 33:**

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    **Page 18**

**APP050**

Produce the communications, notes, and other documents evidencing the NRA's approval of AMc's annual budget from 2016 to 2019.

**RESPONSE:**

The NRA objects to this request on the basis that it is overbroad, ambiguous, and unduly burdensome, as it requests all "communications, notes, and other documents evidencing the NRA's approval of AMc's annual budget from 2016 to 2019." The NRA also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-privileged, non-objectionable responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 34:**

Produce the communications, notes, and other documents prepared by Phillips, Grable, and Powell (whether jointly or individually) referring or relating to, or otherwise prepared for, meetings with AMc regarding NRATV analytics.

**RESPONSE:**

The NRA objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-privileged, non-objectionable responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 35:**

Produce the minutes from meetings of the NRA Board of Directors from January 2016 to the present, including any notes concerning, referring, or otherwise relating to AMc, North, the North Contract, North's requests for the NRA to audit/review the Brewer Firm's invoices/billing

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**          **Page 19**

**APP051**

records to the NRA, Loesch, the Loesch Contract, LaPierre, the New York AG's investigation into the NRA, Brewer, and/or the Brewer Firm.

**RESPONSE:**

The NRA objects to this request because "the New York AG's investigation into the NRA, Brewer, and/or the Brewer Firm" has no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery. The NRA further objects on the ground that the request is overbroad and unduly burdensome. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-privileged, non-objectionable documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 36:**

Produce the reports from the NRA Audit Committee from January 1, 2017 to the present, including, but not limited to, the reports regarding AMc, the North Contract, Brewer, the Brewer Firm, North, Loesch, the Loesch Contract, NRA vendors, the New York AG, and/or the NRA's compliance with non-profit laws.

**RESPONSE:**

The NRA objects to this request on the grounds that it is overly broad and unduly burdensome, and as it seeks all "reports from the NRA Audit Committee from January 1, 2017, to the present" on a wide array of subjects. For instance, the request asks for irrelevant documents that are nowhere near proportional to the needs of the case as to the request for reports regarding the "New York AG," which have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference,

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION          Page 20

APP052

and/or breach of contract. The NRA also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, and any other privilege or exemption for discovery, particularly as to any reports prepared for or at the direction of Brewer or the Brewer Firm.  Subject to the foregoing objections and its General Objections, the NRA will produce non-privileged, non-objectionable reports from the NRA Audit Committee from January 1, 2017 to the present concerning AMc, the North Contract, North, Loesch, the Loesch, and NRA vendors.

**REQUEST FOR PRODUCTION NO. 37:**

Produce the documents and communications relating to the requirements under New York state law that the NRA Audit Committee must see and/or review the North Contract before it could be finally approved by the NRA.

**RESPONSE:**

The NRA specifically objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery. The NRA further objects to this request on the grounds that it is overbroad and unduly burdensome to the extent that it purports to require the NRA to gather and produce copies of publicly available documents which are equally accessible to Defendants as to the NRA. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-privileged, non-objectionable responsive documents, at a reasonable time and place.

**REQUEST FOR PRODUCTION NO. 38:**

Produce the documents and communications relating to the idea for, negotiation of, drafting of, and suspension or furlough of the North Contract and the Loesch Contract.

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    **Page 21**

**APP053**

**RESPONSE:**

The NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-privileged, non-objectionable responsive documents, at a reasonable time and place.

**REQUEST FOR PRODUCTION NO. 39:**

Produce the documents and communications relating to North's request that the NRA audit or review the Brewer Firm's bills or invoices.

**RESPONSE:**

The NRA objects to this request because the facts surrounding what the Brewer firm charges the NRA for its legal services have no bearing whatsoever to AMc's claims, including its claims for libel, declaratory relief, tortious interference, and/or breach of contract, and any defenses. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 40:**

Produce the documents and communications relating to Cummins' concerns or issues raised to the NRA's Audit Committee about Brewer and/or the Brewer Firm.

**RESPONSE:**

The NRA objects to this request because Ms. Cummings' alleged concerns about the Brewer Firm have no relevance to the claims and defenses at issue in this litigation, including Defendants' claims for libel, declaratory relief, tortious interference, and/or breach of contract, and the NRA's claims and defenses. The NRA stands on its objections.

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 22

APP054

**REQUEST FOR PRODUCTION NO. 41:**

Produce the documents and communications between (a) Cotton and (b) Brewer, the Brewer Firm, LaPierre, and/or Powell.

**RESPONSE:**

The NRA objects to this request on the grounds that it is vague, overly broad, and unduly burdensome, in that it seeks all "documents and communications between (a) Cotton and (b) Brewer, the Brewer Firm, LaPierre, and/or Powell," no matter what the subject matter. Additionally, the NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery, particularly as to those documents regarding Brewer and the Brewer Firm.  Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-privileged, non-objectionable responsive documents, at a reasonable time and place.

**REQUEST FOR PRODUCTION NO. 42:**

Produce a copy of the fully executed settlement agreement with the NRA that resolved the matter styled *National Rifle Association of America v. Lockton Affinity Series of Lockton Affinity, LLC and Kansas City Series of Lockton Companies, LLC, in the United States District Court for the Eastern District of Virginia,* Civil Action No. 1:18-cv-639-LO/JFA.

**RESPONSE:**

The NRA objects on the grounds that the requested documents have no connection to the subject matter of this litigation and have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. AMc is again off on a fishing expedition.  Furthermore, the executed settlement

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                     Page 23

APP055

agreement referenced in this request is subject to confidentiality requirements. The NRA stands

on its objections.

**REQUEST FOR PRODUCTION NO. 43:**

Produce the documents evidencing and relating to attorneys' fees and other monies Brewer or the Brewer Firm requested and/or received in relation to the matter styled *National Rifle Association of America v. Lockton Affinity Series of Lockton Affinity, LLC and Kansas City Series of Lockton Companies, LLC, in the United States District Court for the Eastern District of Virginia*, Civil Action No. 1:18-cv-639-LO/JFA.

**RESPONSE:**

The NRA objects on the grounds that the requested documents have no bearing on the

claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief,

tortious interference, and/or breach of contract.  The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 44:**

Produce the contract(s), agreement(s), or other documents evidencing the understanding(s) between (a) Brewer or the Brewer Firm and (b) the NRA, regarding additional claims against the NRA relating to Lockton Affinity Series of Lockton Affinity, LLC and/or Kansas City Series of Lockton Companies, LLC that arose or may arise after the resolution of the matter styled *National Rifle Association of America v. Lockton Affinity Series of Lockton Affinity, LLC and Kansas City Series of Lockton Companies, LLC, in the United States District Court for the Eastern District of Virginia*, Civil Action No. 1:18-cv-639-LO/JFA.

**RESPONSE:**

The NRA objects on the grounds that the requested documents have no bearing on the

claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief,

tortious interference, and/or breach of contract. AMc is again off on a fishing expedition.

Furthermore, the executed settlement agreement referenced in this request is subject to

confidentiality requirements. The NRA stands on its objections.

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 24

APP056

**REQUEST FOR PRODUCTION NO. 45:**

Produce the reports, communications, and other documents created by or exchanged between the NRA and any audit company that reviewed and/or audited (a) AMc's records, (b) the NRA's records pertaining to AMc, and/or (c) any of the NRA's other vendors or contractors, from January 1, 2018 to the present.

**RESPONSE:**

The NRA objects to this request on the grounds that it is overly broad and unduly

burdensome, and fails to describe with reasonable particularity the documents requested because

it seeks *all* "reports, communications, and other documents created by or exchanged between the

NRA and any audit company that reviewed and/or audited (a) AMc's records, (b) the NRA's

records pertaining to AMc, and/or (c) any of the NRA's other vendors or contractors, from

January 1, 2018 to the present." The NRA also objects to this request to the extent it seeks

documents protected from disclosure by the attorney-client privilege, the work product doctrine,

or any other applicable exemption, immunity, or privilege from discovery, particularly with

regards to any information provided at the request or direction of counsel.  Subject to and

without waiving the foregoing objections and its General Objections, the NRA shall produce

non-privileged, non-objectionable responsive documents, at a reasonable time and place.

**REQUEST FOR PRODUCTION NO. 46:**

Produce the communications between the NRA and third parties (including, but not limited to, the vendor(s), contractor(s), and company(ies) performing the audit(s)), concerning, referring, or relating to any audit the NRA requested for any of its other vendors or contractors from January 1, 2018 to the present.

**RESPONSE:**

The NRA objects to this request on the grounds that it is overly broad and unduly

burdensome, and fails to describe with reasonable particularity the documents requested because

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**                                        **Page 25**

**APP057**

it seeks *all* "communications between the NRA and third parties (including, but not limited to, the vendor(s), contractor(s), and company(ies) performing the audit(s)), concerning, referring, or relating to any audit the NRA requested for any of its other vendors or contractors from January 1, 2018 to the present." Additionally, the NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery.  Subject to and without waiving the foregoing objections and its General Objections, and following a reasonable search, the NRA shall produce non-objectionable, non-privileged responsive documents, at a reasonable time and place.

## REQUEST FOR PRODUCTION NO. 47:

Produce the documents and communications between the NRA and Forensic Risk Analysis concerning AMc.

## RESPONSE:

The NRA objects to this request on the grounds that it is overly broad, unduly burdensome, and fails to describe with reasonable particularity the documents requested because it seeks *all* "documents and communications between the NRA and Forensic Risk Analysis concerning AMc." Additionally, the NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery. Furthermore, the documents requested were addressed by the Virginia Circuit court in the separate action between the NRA and AMc, wherein the court held that all opinion work product and attorney-client communications were to be protected from disclosure. In addition, you already have received this information yourself via a subpoena to FRA.  The NRA stands on its objections.

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS**
**AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF**
**ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**                    **Page 26**

**APP058**

**REQUEST FOR PRODUCTION NO. 48:**

Produce the communications between the NRA and Hallow from January 1, 2019, to the present concerning, referring, or relating to AMc, North, and/or the North Contract.

**RESPONSE:**

The NRA objects to this request on the grounds that it is overly broad and unduly burdensome and fails to describe with reasonable particularity the documents requested because it seeks *all* "communications between the NRA and Hallow from January 1, 2019 to the present concerning, referring, or relating to AMc, North and/or the North Contract." The NRA also objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-objectionable, responsive documents, at a reasonable time and place.

**REQUEST FOR PRODUCTION NO. 49:**

Produce pictures of Hallow holding firearms.

**RESPONSE:**

The NRA objects to this request it seeks documents that have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 50:**

Communications between (a) the NRA and (b) Phillips and Payne (whether jointly or individually) concerning, referring, or relating to AMc.

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 27

APP059

**RESPONSE:**

The NRA objects to this request as intentionally overbroad and unduly burdensome, as it seeks *all* communications between the NRA and Phillips and Payne, without any limitation as to time or subject other than concerning AMc.  Subject to and without waiving the foregoing objections and its General Objections, and following a reasonable search, the NRA shall produce non-privileged, non-objectionable, responsive documents, at a reasonable time and place.

**REQUEST FOR PRODUCTION NO. 51:**

Produce the documents, rules, and/or regulations evidencing or tending to support your requirements, mandates, instructions, directives, or other guidance provided to third parties concerning LaPierre's private travel, transportation safety, and/or security needs [OMITTED].

**RESPONSE:**

The NRA objects to this request because this request violates the Protective Order entered into in the ongoing Virginia actions between the parties by improperly disclosing information deemed by the NRA as "Confidential" under the Protective Order. The NRA also objects to this request on the grounds that it is overly broad and unduly burdensome, and fails to describe with reasonable particularity the documents requested because it seeks *all* "the documents, rules, and/or regulations evidencing or tending to support your requirements, mandates, instructions, directives, or other guidance provided to third parties concerning LaPierre's private travel, transportation safety, and/or security needs," without any time limitation. The NRA also objects to this request because it seeks documents and information that have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.  Subject to and without waiving the foregoing objections and the General Objections, and following a reasonable search,

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 28

APP060

the NRA shall produce non-privileged, non-objectionable, responsive documents, at a reasonable

time and place.

## REQUEST FOR PRODUCTION NO. 52:

Produce the documents and communications evidencing and relating to the NRA's payment for LaPierre's private travel, transportation safety, and/or security needs, as referenced in Request No. 51 above.

## RESPONSE:

The NRA objects to this request as it seeks documents and information that have no

bearing whatsoever on the claims and defenses at issue in this case, including AMc's claims for

libel, declaratory relief, tortious interference, and/or breach of contract. Subject to and without

waiving the foregoing objections and its General Objections, the NRA shall produce non-

privileged, non-objectionable, responsive documents, at a reasonable time and place.

## REQUEST FOR PRODUCTION NO. 53:

Produce the documents relating to meetings between LaPierre and the NRA's executive staff, including, but not limited to, Powell, from January 1, 2018 to the present, relating to the Lawsuit, the media, public relations, marketing or branding, AMc, the New York AG's investigation into the NRA, Carter, Brewer, and/or the Brewer Firm.

## RESPONSE:

The NRA objects to this request on the grounds that it is overly broad and unduly

burdensome, and fails to describe with reasonable particularity the documents requested because

it seeks *all* "documents relating to meetings between LaPierre and the NRA's executive staff,

including, but not limited to, Powell, from January 1, 2018, to the present, relating to the

Lawsuit, the media, public relations, marketing or branding, AMc, the New York AG's

investigation into the NRA, Carter, Brewer, and/or the Brewer Firm." Furthermore, the NRA

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    **Page 29**

**APP061**

objects to this request because the documents requested have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. Additionally, the NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents, at a reasonable time and place.

## REQUEST FOR PRODUCTION NO. 54:

Produce the documents and communications exchanged between Brewer and Powell, from January 1, 2018 to the present, relating to the Lawsuit, the media, public relations, marketing or branding, AMc, the New York AG's investigation into the NRA, the New York AG, and/or the NRA's tax-exempt status.

## RESPONSE:

The NRA objects to this request on the grounds that it is overly broad and unduly burdensome, and fails to describe with reasonable particularity the documents requested because it seeks *all* documents and communications "exchanged between Brewer and Powell, from January 1, 2018 to the present, relating to the Lawsuit, the media, public relations, marketing or branding, AMc, the New York AG's investigation into the NRA, the New York AG, and/or the NRA's tax exempt status." Furthermore, the NRA objects to this request because the documents requested have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract, particularly with respect to the request for documents regarding the New York AG investigation, the New York AG, and the NRA's tax exempt status. Additionally, the NRA objects to this request to the

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS**
**AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF**
**ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**                    **Page 30**

**APP062**

extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery, especially with regards to communications between Brewer and Powell. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 55:**

Produce the documents and communications relating to the NRA's self-correction and New York state law [OMITTED], including, but not limited to, documents and communications evidencing and relating to the meetings of the NRA Board of Directors, the invoices that were converted to contracts, the compliance seminar(s), the review of the NRA's business practices.

**RESPONSE:**

The NRA objects to this request because it violates the Protective Order entered into in the ongoing Virginia actions between the parties by improperly disclosing information deemed by the NRA as "Confidential" under the Protective Order. The NRA specifically objects to this request to the extent it seeks communications to or from the NRA Board of Directors and Wayne LaPierre issued by or at the direction of counsel or communications that reflect counsel's legal advice or a request for counsel's legal advice and are therefore protected by the attorney-client privilege or work product doctrine. The NRA further objects to this request because it seeks all "documents and communications relating to the NRA's self-correction and New York state law." The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 56:**

Produce the documents and communications exchanged with Brewer and the Brewer Firm relating to the NRA's self-correction and New York state law [OMITTED].

**RESPONSE:**

The NRA objects to this request because it violates the Protective Order entered into in

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    **Page 31**

**APP063**

the ongoing Virginia actions between the parties by improperly disclosing information deemed by the NRA as "Confidential" under the Protective Order. The NRA further objects to this request as it seeks communications to or from NRA employees and officers issued by or at the direction of counsel or communications that reflect counsel's legal advice or a request for counsel's legal advice, particularly with respect to the Request for communications exchanged with Brewer and the Brewer Firm, which documents are protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery.  The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 57:**

Produce the document preservation notice [OMITTED].

**RESPONSE:**

The NRA objects to this request because it violates the Protective Order entered into in the ongoing Virginia actions between the parties by improperly disclosing information deemed by the NRA as "Confidential" under the Protective Order. The NRA objects to this request on the basis that it seeks attorney-client privileged documents protected from discovery by the work product doctrine or other applicable privilege. Furthermore, the NRA objects to this request because the requested documents have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 58:**

Produce the documents and communications relating to the alleged statement by Lacey Duffy to The Wall Street Journal concerning LaPierre's niece's child marking the walls at the Four Seasons Hotel in Los Angeles, [OMITTED].

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**          **Page 32**

**APP064**

**RESPONSE:**

The NRA objects to this request because it violates the Protective Order entered into in the ongoing Virginia actions between the parties by improperly disclosing information deemed by the NRA as "Confidential" under the Protective Order. The NRA also objects to this request because documents relating to an "alleged statement by Lacey Duffy to The Wall Street Journal concerning LaPierre's niece's child marking the walls at the Four Seasons Hotel in Los Angeles" have absolutely no bearing on the claims and defenses at issue in this case, including Defendant's claims for libel, declaratory relief, tortious interference, and/or breach of contract, and its defenses. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 59:**

Produce the documents relating to the NRA's $1.8 million rental house in Los Angeles, California.

**RESPONSE:**

The NRA objects to this request as documents relating to an alleged rental of a house in Los Angeles, California have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.   The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 60:**

Produce the documents relating to the NRA's investment in companies or opportunities in the Bahamas.

**RESPONSE:**

The NRA objects to this request as it seeks documents relating to the alleged "investment in companies or opportunities in the Bahamas" which have no bearing on the claims and

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 33

APP065

defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.   The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 61:**

Produce the documents that reflect your relationship with the NRA Foundation.

**RESPONSE:**

The NRA objects to this request on the basis that it is overly broad and unduly burdensome, vague and ambiguous as it seeks all "documents that reflect your relationship with the NRA Foundation," without particularity.  The NRA further objects to this request as it seeks documents regarding the NRA's relationship with the NRA Foundation, which has absolutely no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.   Subject to the foregoing objections and its General Objections, the NRA will produce non-privileged, non-objectionable responsive documents at a reasonable time and place.

**REQUEST FOR PRODUCTION NO. 62:**

Produce the documents relating to the transfer of funds from the NRA to the NRA Foundation from January 1, 2018 to the present.

**RESPONSE:**

The NRA objects to this request on the basis that it is overly broad and unduly burdensome, vague and ambiguous as it seeks all "relating to the transfer of funds from the NRA to the NRA Foundation from January 1, 2018 to the present" without particularity.  The NRA further objects to this request as documents relating to a purported "transfer of funds from the NRA to the NRA Foundation" have no bearing on the claims and defenses at issue in this case,

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 34

APP066

including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of

contract.   Subject to the foregoing objections and its General Objections, the NRA will produce

non-privileged, non-objectionable responsive documents at a reasonable time and place.

## REQUEST FOR PRODUCTION NO. 63:

Produce the documents evidencing or relating to the transfer of funds from the NRA
Foundation to the NRA from January 1, 2018 to the present.

## RESPONSE:

The NRA objects to this request on the basis that it is overly broad and unduly

burdensome, vague and ambiguous as it seeks all "evidencing or relating to the transfer of funds

from the NRA Foundation to the NRA from January 1, 2018 to the present" without

particularity.  The NRA further objects to this request as documents regarding purported

"transfer of funds from the NRA Foundation to the NRA from January 1, 2018 to the present"

have no bearing on the claims and defenses at issue in this case, including AMc's claims for

libel, declaratory relief, tortious interference, and/or breach of contract.   Subject to the foregoing

objections and its General Objections, the NRA will produce non-privileged, non-objectionable

responsive documents at a reasonable time and place.

## REQUEST FOR PRODUCTION NO. 64:

Produce the documents and communications exchanged between (a) the NRA Foundation
and (b) Brewer or the Brewer Firm.

## RESPONSE:

The NRA objects to this request because it seeks "documents and communications

exchanged between (a) the NRA Foundation and (b) Brewer or the Brewer Firm" which have no

bearing on the claims and defenses at issue in this case, including AMc's claims for libel,

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS**
**AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF**
**ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**                    **Page 35**

**APP067**

declaratory relief, tortious interference, and/or breach of contract.   In addition, the NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 65:**

Produce the documents and communications exchanged between the NRA Foundation and Carter.

**RESPONSE:**

The NRA objects to this request as any documents regarding the "NRA Foundation and Carter" would have absolutely no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.   In addition, the NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 66:**

Produce the documents and communications relating to payments made (a) by the NRA Foundation (b) to Brewer or the Brewer Firm.

**RESPONSE:**

The NRA objects to this request as it seeks "documents and communications relating to payments made (a) by the NRA Foundation and (b) Brewer or the Brewer Firm" which would have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.   In addition, the NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    **Page 36**

**APP068**

client privilege, the work product doctrine, or any other applicable exemption, immunity, or

privilege from discovery, particularly regarding requested communications with counsel, Brewer

and the Brewer Firm. The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 67:

Produce the documents and communications relating to any transactions between the NRA and the NRA Foundation, including, but not limited to, the $5 million loan provided by the NRA Foundation to the NRA [OMITTED].

## RESPONSE:

The NRA objects to this request because it violates the Protective Order entered into in

the ongoing Virginia actions between the parties by improperly disclosing information deemed

by the NRA as "Confidential" under the Protective Order. The NRA further objects to this

request as any purported documents and communications "relating to any transactions between

the NRA and the NRA Foundation, including, but not limited to, the $5 million loan provided by

the NRA Foundation to the NRA" would have no bearing on the claims and defenses at issue in

this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach

of contract.   The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 68:

Produce the documents evidencing or relating to Powell's and/or Brewer's efforts, desires, attempts, directives, instructions, or other guidance concerning Hallow's termination.

## RESPONSE:

The NRA objects to this request because it seeks documents and communications

regarding "Powell's and/or Brewer's efforts, desires, attempts, directives, instructions, or other

guidance concerning Hallow's termination" which would have no bearing on the claims and

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS**
**AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF**
**ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**                    **Page 37**

**APP069**

defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.   Additionally, the NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery, particularly regarding any communications with counsel, Brewer.  The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 69:

Produce the documents evidencing or relating to the NRA's complaints about or against Powell, including any settlement agreements relating to same.

## RESPONSE:

The NRA objects to this request as it seeks documents and communications "relating to the NRA's complaints about or against Powell, including any settlement agreements relating to same" which have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.   Additionally, the NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery, particularly regarding any communications with counsel. The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 70:

Produce the documents and communications relating to the claim by an NRA employee against Powell, including any settlement agreements relating to same [OMITTED].

## RESPONSE:

The NRA objects to this request because it violates the Protective Order entered into in

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 38

APP070

the ongoing Virginia actions between the parties by improperly disclosing information deemed by the NRA as "Confidential" under the Protective Order. The NRA further objects to this request as it seeks documents and communications "relating to the claim by an NRA employee against Powell, and any settlement agreements relating to same" which have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.  Additionally, the NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery.  The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 71:

Produce the documents and communications relating to Powell's efforts or work with the Department of Financial Services in regard to New York State [OMITTED].

## RESPONSE:

The NRA objects to this request because it violates the Protective Order entered into in the ongoing Virginia actions between the parties by improperly disclosing information deemed by the NRA as "Confidential" under the Protective Order. The NRA further objects to this request as it seeks documents and communications "relating to Powell's efforts to work with the Department of Financial Services in regard to New York State" have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 72:

Produce the documents and communications relating to "all of the compliance issues" Powell is handling or working on with the New York AG [OMITTED].

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**          **Page 39**

**APP071**

**RESPONSE:**

The NRA objects to this request because it violates the Protective Order entered into in the ongoing Virginia actions between the parties by improperly disclosing information deemed by the NRA as "Confidential" under the Protective Order. The NRA also objects to this request as it seeks documents and communications regarding "'all of the compliance issues' Powell is handling or working on with the New York AG" have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The New York AG matter is completely unrelated to the issues in this case.   The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 73:**

Produce the documents evidencing your current relationship with Powell.

**RESPONSE:**

The NRA objects to this request because documents "evidencing" the NRA's "current relationship with Powell" would have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.   Furthermore, the Request is vague in that it does not describe with reasonable particularity what is meant by "relationship." The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 74:**

Produce the documents created, relied upon, submitted to third parties, or otherwise relating to any criminal investigation concerning, or conviction of, Powell, Hallow, and/or Phillips.

**RESPONSE:**

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 40

APP072

The NRA incorporates its General Objections. The NRA further objects to this request because it is harassing and is nothing more than an improper fishing expedition. In addition, any purported documents and communications relating to any alleged "criminal investigation" or "conviction" of "Powell, Hallow, and/or Phillips" have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 75:**

Produce all legal judgments against Powell.

**RESPONSE:**

The NRA objects to this request because any "legal judgments against Powell" would have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.  Additionally, the NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 76:**

Produce the documents that reflect your relationship with Stanton.

**RESPONSE:**

The NRA objects to this request as it seeks documents and communications "that reflect your relationship with Stanton" which would have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    **Page 41**

**APP073**

breach of contract. Furthermore, the Request is vague in that it does not describe with reasonable particularity what is meant by "relationship." The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 77:

Produce the communications between LaPierre and Stanton.

## RESPONSE:

The NRA objects to this request as it seeks communications "between LaPierre and Stanton" which would have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA further objects to this request as overly broad and unduly burdensome, as it requests communications "between LaPierre and Stanton" with no particularity. The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 78:

Produce the communications between (a) Stanton and (b) Brewer or the Brewer Firm.

## RESPONSE:

The NRA objects to this request as it seeks communications between Stanton and Brewer or the Brewer Firm which would have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA further objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery. The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 79:

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                 Page 42

APP074

Produce the communications and documents exchanged between (a) LaPierre and (b) Brewer or the Brewer Firm from January 1, 2017 to the present.

**RESPONSE:**

The NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery, particularly as it requests communications with counsel, Brewer or the Brewer Firm. The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 80:**

Produce Supernaugh's file on LaPierre.

**RESPONSE:**

The NRA objects to this request as vague, as it does not describe with reasonable particularity what is meant by a purported Supernaugh "file" on LaPierre.  Subject to and without waiving the foregoing objections and General Objections, the NRA shall produce non-privileged, non-objectionable, responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 81:**

Produce the documents and communications relating to salary increases in 2018 for LaPierre and Hallow.

**RESPONSE:**

The NRA objects to this request because it seeks documents and communications "relating to salary increases in 2018 for LaPierre and Hallow" which have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract.   The NRA stands on its objections.

**REQUEST FOR PRODUCTION NO. 82:**

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                      **Page 43**

**APP075**

Produce the personnel files, including the severance agreements, for the individuals terminated and/or ousted from the NRA and its Board of Directors since January 1, 2018, including, but not limited to, Hart, Cox, Childress, Weaver, Cooper, Christman, and Volkov.

**RESPONSE:**

The NRA objects to this request to the extent that it seeks attorney-client privileged communications and/or documents protected from discovery from the work product doctrine or other applicable privileges. The NRA also objects to this request as it is overly broad and unduly burdensome, as it requests generally personnel files, which would have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. Subject to and without waiving the foregoing objections and General Objections, the NRA shall produce non-objectionable, non-privileged, responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 83:**

Produce the documents and communications evidencing and relating to the termination, ouster, and/or resignation of the following individuals, including, but not limited to, the documents and communications evidencing and relating to the decision for the termination, ouster, and/or resignation: Hart, Cox, Childress, Weaver, Cooper, Christman, and Volkov.

**RESPONSE:**

The NRA objects to this request as it seeks "documents and communications evidencing and relating to the termination" of the above-listed individuals, which would have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA further objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery, especially with regards to documents from Hart, Cooper and Volkov.  Subject to and without

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS**
**AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF**
**ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**                    **Page 44**

**APP076**

waiving the foregoing objections and General Objections, the NRA shall produce non-privileged,

non-objectionable, responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 84:**

Produce the documents and communications evidencing and relating to any administrative leave for the following individuals:  Hart, Cox, Childress, Weaver, Cooper, Christman, and Volkvok.

**RESPONSE:**

The NRA objects to this request as it seeks documents and communications "evidencing

and relating to any administrative leave" for the above-listed individuals, which would have no

bearing on the claims and defenses at issue in this case, including AMc's claims for libel,

declaratory relief, tortious interference, and/or breach of contract.  The NRA further objects to

this request to the extent it seeks documents protected from disclosure by the attorney-client

privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege

from discovery.  Subject to and without waiving the foregoing objections and General

Objections, the NRA shall produce non-objectionable, responsive documents at a mutually

agreeable time and place.

**REQUEST FOR PRODUCTION NO. 85:**

Produce the documents and communications evidencing and relating to the alleged coup [OMITTED] including, but not limited to, the documents and communications provided to, by, or from Boren.

**RESPONSE:**

The NRA objects to this request because it violates the Protective Order entered into in the

ongoing Virginia actions between the parties by improperly disclosing information deemed by the

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 45

APP077

NRA as "Confidential" under the Protective Order. The NRA stands on its objections. responsive

documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 86:

Produce the documents and communications created for, created by, sent to, received from, or otherwise exchanged between the NRA and the media relating to AMc.

## RESPONSE:

The NRA objects to this request as it is ambiguous, overly broad and unduly burdensome,

as it seeks "documents and communications created for, created by, sent to, received from, or

otherwise exchanged between the NRA and the media relating to AMc," which would have no

bearing on the claims and defenses at issue in this case, including AMc's claims for libel,

declaratory relief, tortious interference, and/or breach of contract. Subject to and without waiving

the General Objections, the NRA shall produce non-objectionable, non-privileged responsive

documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 87:

Produce the documents and communications created for, created by, sent to, received from, or otherwise exchanged between the NRA and Carter relating to AMc, the media, the NRA, public relations services, marketing services, and/or branding services from January 1, 2017 to the present.

## RESPONSE:

The NRA objects to this request to the extent it seeks documents protected from disclosure

by the attorney-client privilege, the work product doctrine, or any other applicable exemption,

immunity, or privilege from discovery. The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 88:

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 46

APP078

Produce the documents and communications created for, created by, sent to, received from, or otherwise exchanged between (a) Brewer or the Brewer Firm and (b) the media relating to AMc and/or the NRA.

**RESPONSE:**

The NRA objects to this request because any "communications created for, created by, sent to, received from, or otherwise exchanged between (a) Brewer or the Brewer Firm and (b) the media relating to AMc and/or the NRA" would have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. NRA also objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 89:**

Produce the documents and communications created for, created by, sent to, received from, or otherwise exchanged between the media and Carter relating to AMc and/or the NRA.

**RESPONSE:**

The NRA objects to this request because any "documents and communications created for, created by, sent to, received from, or otherwise exchanged between the media and Carter relating to AMc and/or the NRA" would have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. NRA also objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery. Subject to and without waiving the foregoing

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 47

APP079

objections and its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 90:

Produce the communications between (a) the NRA and (b) Angus McQueen, Revan McQueen, Skye McQueen Brewer, and/or any other member of the McQueen and/or Brewer family/ies relating to Brewer's engagement by the NRA, AMc, or the Lawsuit.

## RESPONSE:

The NRA objects to this request because the requested communications between the McQueen family and the Brewer family have absolutely no bearing on the issues and claims in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 91:

Produce the communications between (a) Angus McQueen, Revan McQueen, Skye McQueen Brewer, and/or any other member of the McQueen and/or Brewer family/ies, on the one hand, and (b) Brewer or the Brewer Firm, on the other hand, relating to AMc and/or the NRA.

## RESPONSE:

The NRA objects to this request because it requests communications between the McQueen family and the Brewer family regarding AMc and the NRA which have absolutely no bearing on the issues and claims in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. The NRA stands on its objections.

## REQUEST FOR PRODUCTION NO. 92:

Produce the documents and communications relating to the whistleblower complaints of AMc's alleged intentional disregard of annual budgets that the NRA's Finance Committee oversaw and approved prior to Brewer's involvement, as referenced in LaPierre's correspondence to North on or around April 1, 2018.

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS**
**AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF**
**ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**                                  **Page 48**

**APP080**

**RESPONSE:**

The NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 93:**

Produce the documents and communications relating to the whistleblower complaints of concerns about "revolving door" hiring among the NRA and AMc, and ongoing ties between the NRA leadership and AMc leadership prior to Brewer's involvement, as referenced in LaPierre's correspondence to North on or around April 1, 2018.

**RESPONSE:**

The NRA objects to this request to the extent that it seeks attorney-client privileged communications and/or documents protected from discovery from the work product doctrine or other applicable privileges. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 94:**

Produce the documents and communications between (a) you and/or LaPierre, on the one hand, and (b) Stinchfield, on the other hand, concerning NRATV, AMc, and/or Angus McQueen, including, but not limited to, contracts for Stinchfield, documents evidencing or reflecting Stinchfield's salary or other compensation, and/or documents evidencing payments made to Stinchfield.

**RESPONSE:**

The NRA objects to this request because any "documents and communications between (a) you and/or LaPierre, on the one hand, and (b) Stinchfield, on the other hand, concerning

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION     Page 49

APP081

NRATV, AMc, and/or Angus McQueen" would have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 95:

Produce the documents and communications with third parties about Stinchfield, including, but not limited to, his involvement with NRATV, his involvement with AMc, his involvement with Angus McQueen, his contract(s), his salary or other compensation, and/or payments made by you (or any person or entity on your behalf) to Stinchfield.

## RESPONSE:

Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 96:

Produce your internal documents and communications (about Stinchfield, including, but not limited to, his involvement with NRATV, his involvement with AMc, his involvement with Angus McQueen, his contract(s), his salary or other compensation, and/or payments made by you (or any person or entity on your behalf) to Stinchfield.

## RESPONSE:

Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 97:

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 50

APP082

Produce the documents and communications with The Daily Beast, including but not limited to, Julia Arciga and including, but not limited to, documents relating to Stinchfield.

**RESPONSE:**

The NRA objects to this request because any "documents and communications with The Daily Beast, including but not limited to, Julia Arciga and including, but not limited to, documents relating to Stinchfield" would have no bearing on the claims and defenses at issue in this case, including AMc's claims for libel, declaratory relief, tortious interference, and/or breach of contract. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 98:**

Produce the documents and communications evidencing or relating to total views, engaged views, and/or completed views for NRATV.

**RESPONSE:**

The NRA notes that it has requested these precise documents from AMc, as documents responsive to this request are readily available to AMc. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 99:**

Produce the documents and communications concerning any financial valuations or projections relating to NRATV, including, but not limited to, documents evidencing or relating to costs of NRATV compared to other media services.

**RESPONSE:**

The NRA notes that it has requested these precise documents from AMc, as documents responsive to this request are readily available to AMc. Subject to and without waiving the

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 51

APP083

foregoing objections and its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 100:

Produce the documents and communications relating to the April 8, 2019 email from Arulanandam to AMc regarding NRATV metrics, including, but not limited to, drafts of the content of the email.

## RESPONSE:

NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery, particularly with regards to any purported "drafts" of the requested email. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 101:

Produce the documents and communications relating to Forensic Risk Analysis, including, but not limited to, communications with Susan Dillon or communications or documents referring or related to Susan Dillon.

## RESPONSE:

The NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery. Furthermore, the documents requested were addressed in part by the Virginia Circuit court in the separate action between the NRA and AMc, wherein the court held that all opinion work product was to be protected from disclosure. Also, these documents are in AMc's possession as a result of its subpoena to FRA. Subject to and

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS**
**AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF**
**ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**                    **Page 52**

**APP084**

without waiving the foregoing objections and its General Objections, the NRA shall produce

non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 102:

Produce the documents you reviewed and/or relied upon in responding to AMc's *First Set of Interrogatories*.

## RESPONSE:

The NRA objects to this request as AMc has not served requests for interrogatories on the

NRA in this litigation. It is unclear to the NRA what Defendants are referring to.

## REQUEST FOR PRODUCTION NO. 103:

In the first unnumbered paragraph of the Preliminary Statement of your Amended Complaint, you reference **"newly unearthed text messages, emails, and interviews."** Produce the "text messages" and "emails" concerning, referring, or relating to this allegation and any notes, memoranda, or other documents that were prepared during or as a result of the referenced "interviews."

## RESPONSE:

The NRA objects to this request to the extent it seeks documents protected from disclosure

by the attorney-client privilege, the work product doctrine, or any other applicable exemption,

immunity, or privilege from discovery, particularly with regard to the request for any "notes,

memoranda, or other documents" that were prepared as a result of the interviews. Subject to and

without waiving the foregoing objections and its General Objections, the NRA shall produce non-

objectionable, non-privileged responsive documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 104:

In the first unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you allege that AMc **"went to outrageous lengths to conceal and sustain its fraud."** Produce the documents displaying or tending to show the "outrageous lengths" you allege in this paragraph, from whatever time period you intended the allegation to encompass.

## RESPONSE:

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                          Page 53

APP085

Subject to and without waiving the foregoing objections and its General Objections, the

NRA shall produce non-objectionable, non-privileged responsive documents at a mutually

agreeable time and place.

## REQUEST FOR PRODUCTION NO. 105:

In the first unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you allege that AMc deployed "**scorched-earth tactics against anyone who dared scrutinize its conduct.**"  Produce the documents displaying or tending to show the "scorched-earth tactics" you allege in this paragraph, from whatever time period you intended the allegation to encompass.

## RESPONSE:

Subject to and without waiving its General Objections, the NRA shall produce non-

objectionable, non-privileged responsive documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 106:

In the first unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you allege that AMc **"tried to oust"** LaPierre from the NRA.  Produce the documents displaying or tending to show the efforts to "oust" LaPierre that you allege in this paragraph, from whatever time period you intended the allegation to encompass.

## RESPONSE:

Subject to and without waiving its General Objections, the NRA shall produce non-

objectionable, non-privileged responsive documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 107:

In the second unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you allege that **"many within the NRA had grown suspicious that its experiment with a branded digital media platform was not working."**  Produce the documents internal to the NRA that display or tend to show any such suspicions that you allege in this paragraph, from whatever time period you intended the allegation to encompass.

## RESPONSE:

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 54

APP086

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 108:**

In the third unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you claim that AMc's representations regarding NRATV were "**intentionally (and wildly) misleading**." Produce the communications, reports, articles, or any other document in your possession that supports this allegation, from whatever time period you intended the allegation to encompass.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 109:**

In the fourth unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you claim that you have "**acquired documents and information**" showing that "**AMc fraudulently double billed the NRA**." Produce the "documents" referenced in your allegation, from whatever time period you intended the allegation to encompass.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 110:**

In the fourth unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you reference an "**open letter**" and quote language from an alleged "**co-conspirator**." Produce a copy of this letter.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 111:**

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION          Page 55

APP087

In the fourth unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you allege that "**AMc proceeded to 'leak' the threatened documents**." Produce the documents you are referencing in this allegation.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-

objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 112:**

In the fifth unnumbered paragraph of the Preliminary Statement to your Amended Complaint, you reference "**other failed client representations**," and allege that "**many of these campaigns…were shut down because of their ineffectiveness, costliness, and [AMc's] reluctance to provide specific performance data.**" Produce the documents and communications that support this allegation.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-

objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 113:**

In Paragraph 19 of your Amended Complaint, you claim that AMc provided "**elaborate assurances**" relating to the accuracy, completeness, and security of various records. Produce a copy of the documents evidencing or tending to show these "elaborate assurances," from whatever time period you intended the allegation to encompass.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-

objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 114:**

In Paragraphs 25 and 26 of your Amended Complaint, you attribute several direct quotes to Angus McQueen. Produce the communications, personal notes, memoranda, or any other documents that contain this quoted language or otherwise support the representations alleged in these paragraphs.

**RESPONSE:**

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 56

APP088

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 115:

In Paragraph 26 of your Amended Complaint, you allege that AMc "**assured the NRA that its substantial investment would '*pay for itself. . . within three years max*.'**"  Produce the communications, personal notes, memoranda, or any other documents that contain this quoted language or otherwise support the representations alleged in this paragraph, from whatever time period you intended the allegation to encompass.

## RESPONSE:

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 116:

In Paragraph 27 of your Amended Complaint, you allege that AMc represented that live programming was "'***the key*' to the success of the platform**." Produce the communications, personal notes, memoranda, or any other documents that contain this quoted language or otherwise support the representations alleged in this paragraph, from whatever time period you intended the allegation to encompass.

## RESPONSE:

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 117:

In Paragraph 28 and 29 of your Amended Complaint, you reference thirteen "**closed-door meetings . . . with Mr. LaPierre and sometimes others from the NRA leadership in attendance**." Produce the documents relating to, and notes (whether personal, collaborative, official, informal, formal, written, or electronic) taken during, these meetings by LaPierre or any other member of "NRA leadership" referenced in this allegation, from whatever time period you intended this allegation to encompass.

## RESPONSE:

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS**
**AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF**
**ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**                    **Page 57**

**APP089**

**REQUEST FOR PRODUCTION NO. 118:**

In Paragraph 29 of your Amended Complaint, you allege that certain representations made by "Defendant Montgomery and others" are "**now know to be false**." Produce the communications, reports, articles, or any other documents you rely upon to support this contention.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 119:**

In Paragraph 30 and throughout your Amended Complaint, you contend that "**unique**" or "**distinct**" viewership was a metric for evaluating NRATV performance that AMc should have provided. Produce the reports, communications, textbooks, treatises, or other documents you rely upon to support this contention.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 120:**

With regard to your contentions regarding "**unique**" or "**distinct**" viewership data, referenced in Request No. 119 above, produce the documents evidencing, containing, and relating to this type of data, including, but not limited to, the request(s) you made to AMc for information requesting this type of data.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 121:**

In Paragraph 31 of your Amended Complaint, you reference "**consistent inquiries of NRA leadership**" to AMc relating to NRATV viewership. To the extent that these "inquiries" comprise documents that were <u>not</u> produced in response to Request No. 120 above, please produce the documents evidencing these "inquiries," from whatever time period <u>you</u> intended the allegation to encompass.

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    **Page 58**

**APP090**

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-

objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 122:**

In Paragraph 31 of your Amended Complaint, you reference **"underlying, unvarnished, fulsome metrics" that AMc "intentionally withheld from the NRA."** Produce the communications, articles, reports, or any other documents you rely upon to support your good-faith contention that there were "underlying, unvarnished, fulsome metrics" that AMc knew about and/or concealed.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-

objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 123:**

Produce the reports, analyses, communications, or any other written or electronic information provided to you by any third-party you hired to perform an independent analysis of NRATV viewership metrics at any time since 2016.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-

objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 124:**

In footnote 14 of Paragraph 37 of your Amended Complaint, you allege that AMc **"hired a plethora of friends, family, and significant others for positions at NRATV for which they lacked the requisite qualifications and experience."** Produce the communications or other documents that support this contention, from whatever time period <u>you</u> intended the allegation to encompass.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-

objectionable, non-privileged responsive documents at a mutually agreeable time and place.

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
<u>ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION</u>                    **Page 59**

**APP091**

**REQUEST FOR PRODUCTION NO. 125:**

In Paragraph 36 of your Amended Complaint, you allege that AMc provided financial valuations that had "**no basis in reality**." Produce the reports, analyses, articles, texts, treatises, communications, or any other documents you rely upon to support this contention.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 126:**

With regard to the above allegation from Paragraph 36 of your Amended Complaint ("**no basis in reality**"), produce the reports, analyses, or communications, whether internally to the NRA or from any third-party engaged for this purpose, reflecting any efforts to arrive at a more "realistic" valuation, including documents revealing what you contend that value should have been and the factual and methodical bases for arriving at any such conclusions.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 127:**

In Paragraph 39 of your Amended Complaint, you allege that the "**NRA leadership requested greater directional control and coordination over the content of NRATV programming**." Produce the written or electronic documents and communications evidencing these requests, from whatever time period <u>you</u> intended the allegation to encompass.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 128:**

With regard to your requests for "greater directional control and coordination over the content of NRATV programming" in Paragraph 40 of your Amended Complaint, you allege that AMc "**became increasingly secretive, hostile and determined to '*protect*' its '*economics*' with the NRA.**" Produce the communications, personal notes, memoranda, or any other documents that support this allegation, from whatever time period <u>you</u> intended the allegation to encompass.

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
<u>ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION</u>                    **Page 60**

**APP092**

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 129:**

In Paragraph 43 of your Amended Complaint, you allege that certain work performed for the American Clean Skies Foundation was an "**unmitigated failure**." Produce the communications, reports, articles, or any other documents you relied upon in making this allegation.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 130:**

In Paragraph 46 of your Amended Complaint, you reference a New York Times article by Danny Hakim, which "reportedly reported" on NRATV viewership, to support your contention that AMc "**overstated**" certain representations regarding viewership. Aside from this news article, produce the other documents you relied upon in making this allegation.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 131:**

In Paragraph 47 of your Amended Complaint, you claim that you "**updated [NRA] internal policies and controls**" to reflect amendments to New York Not-for-Profit Corporation Law. Produce the version(s) of any such "internal policies and controls" that preceded the alleged update, and any version(s) that resulted from this updating process.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 132:**

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 61

APP093

In Paragraph 47 of your Amended Complaint, you claim that you **"sent letters to more than a hundred vendors—including AMc—that set forth updated invoice-support requirements."** Produce a copy of each of these letters.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-

objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 133:**

In Paragraph 47 of your Amended Complaint, you claim that the NRA "**undertook to strengthen its procedures for documentation and verification of compliance by vendors with their contracts**." Excluding the letters you produced in response to Request No. 132 above, produce the internal emails, memoranda, or other written or electronic communications and documents evidencing or tending to show these efforts, from whatever time period you intended this statement to encompass.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-

objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 134:**

In Paragraph 48 of your Amended Complaint, you allege that "**numerous employees came forward with complaints about AMc**." Produce the internal emails, memoranda, or other written or electronic communications and documents evidencing these "complaints," from whatever time period you intended this allegation to encompass.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-

objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 135:**

In Paragraph 51 of your Amended Complaint, you allege that AMc became "**evasive and even hostile**" in response to requests pursuant to the Records-Examination Clause of the Services Agreement. Produce the written or electronic communications and documents you received from AMc evidencing or tending to show the evasiveness or hostility you allege, from whatever time period you intended this allegation to encompass.

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**   Page 62

APP094

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 136:**

In Paragraph 57 of your Amended Complaint, you allege that the NRA "**was contacted with increasing frequency by journalists acting on purported 'leaks' relating to matters on which AMc had worked**." Produce the written or electronic communications and documents from any journalist to the NRA or to the Brewer Firm reflecting these requests, from whatever time period you intended this allegation to encompass.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 137:**

In Paragraph 63 of your Amended Complaint, you allege that there were six months of "**back-and-forth**" between AMc and the NRA regarding requests for the North Contract. Produce the written or electronic communications and documents evidencing or tending to show this "back-and-forth."

**RESPONSE:**

The NRA incorporates its General Objections. Subject to and without waiving its General Objections, the NRA shall produce non-privileged, non-objectionable, responsive documents to Defendants, at a reasonable time and place.

**REQUEST FOR PRODUCTION NO. 138:**

In Paragraph 76 of your Amended Complaint, you allege that: "**Discovery has corroborated one of the NRA's worst fears**" relating to AMc's billing practices. Produce the documents from this "discovery" effort that you reference in this allegation.

**RESPONSE:**

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 63

APP095

The NRA incorporates its General Objections. Subject to and without waiving its General Objections, the NRA shall produce non-privileged, non-objectionable, responsive documents to Defendants, at a reasonable time and place.

**REQUEST FOR PRODUCTION NO. 139:**

In Paragraph 89 of your Amended Complaint, you state that **"AMc's website falsely proclaims that NRATV is the '*world's most comprehensive video coverage of freedom- related news, events and culture*.'"** Produce the documents that you rely upon to support this contention, including evidence of <u>other</u> websites offering video coverage of freedom-related news, events, and culture, which you believe to be more comprehensive than NRATV.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 140:**

Produce the registration documents of any trademark that you claim has been misappropriated by AMc in Count One of your Amended Complaint.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 141:**

In Paragraph 100 of your Amended Complaint, you claim that Defendants engaged in "**unauthorized and unlicensed words, statements, and/or use of NRA intellectual property**." Produce the documents that support this claim <u>that were not already attached as an exhibit</u> to your original or amended pleadings in this matter, if any.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 142:**

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
<u>ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION</u>                    Page 64

APP096

Produce the communications received by the NRA since June 25, 2019, evidencing or tending to show the consumer "**confusion**" you allege has occurred in this matter, as referenced in Count One of your Amended Petition.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 143:**

Produce the media reports, social-media postings, or any other document published or created by anyone (other than you) since June 25, 2019, reflecting or supporting the existence of any consumer confusion you allege in Count One of your Amended Complaint.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 144:**

Produce the communications, reports, statements, or other documents evidencing or tending to support the "**economic**" or "**financial**" injuries that the NRA has suffered, as referenced in Count One, Paragraphs 99-100 of your Amended Complaint.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 145:**

Produce the communications, media reports, social-media postings, or any other documents evidencing or tending to support the "**reputational**" injury or "**loss of goodwill**" that the NRA has suffered, as referenced in Count One, Paragraphs 99-100 of your Amended Complaint.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS**
**AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF**
**ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**                    **Page 65**

**APP097**

**REQUEST FOR PRODUCTION NO. 146:**

Produce the registration documents of any copyright that you claim has been misappropriated by AMc in Count Two of your Amended Complaint.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 147:**

For every copyright that you claim has been infringed by AMc in Count Two of your Amended Complaint, produce the documents that reflect or tend to support any economic or financial injury, including lost royalties or loss of market value, suffered by the NRA as a result.

**RESPONSE:**

The NRA objects to this request on the grounds that it is overbroad and unduly burdensome to the extent that it purports to require the NRA to gather and produce limitless "documents" which indirectly or incidentally refer or relate to "any" economic of financial injury, which is a topic reserved for expert discovery.  Additionally, the NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 148:**

Produce the documents that reflect or tend to support damages you allege in your Amended Complaint.

**RESPONSE:**

The NRA incorporates its General Objections. The NRA objects to this request on the grounds that it is vague,  overbroad, and unduly burdensome to the extent that it purports to require

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                Page 66

APP098

the NRA to gather and produce limitless "documents" which indirectly or incidentally refer or relate to "damages" alleged in the NRA's amended complaint, as documents concerning damages may not be apparent on their fact and the subject matter is reserved for expert discovery.  In addition, the NRA objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable exemption, immunity, or privilege from discovery. Subject to and without waiving the foregoing objections and its General Objections, the NRA shall produce non-privileged, non-objectionable responsive documents to Defendants, at a reasonable time and place.

## REQUEST FOR PRODUCTION NO. 149:

Produce documents reflecting each specific item of property owned or legally possessed by the NRA which you claim has been converted by AMc in Count Three of your Amended Complaint, if such documents were not already attached as an exhibit to your original or amended pleadings in this matter.

## RESPONSE:

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 150:

For every item that you claim was converted by AMc, produce the written or electronic communications and other documents reflecting your demand to AMc that the property be returned, and any response provided by AMc.

## RESPONSE:

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

## REQUEST FOR PRODUCTION NO. 151:

In Paragraph 116 of your Amended Complaint, you state that you are seeking as damages the "**total value**" of each item you claim was converted by AMc. Produce the spreadsheets,

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 67

APP099

statements, reports, or any other documents reflecting your computations, estimates, reports, or any other analysis of the "total value" of each item.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 152:**

In Paragraph 131 of your Amended Complaint, you state that AMc sent "**sham bills**" to the NRA. Produce the invoices, financial statements, or other "bills" from AMc that you contend were a "sham," from whatever time period you intended the allegation to encompass.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 153:**

With regard to Request No. 152 above, produce the communications, reports, spreadsheets, financial statements, or any other documents evidencing or tending to support your allegation that AMc sent "**sham bills**" to the NRA.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 154:**

In Paragraph 131 of your Amended Complaint, you state that AMc sought reimbursements "**in excess of the actual cost to AMc**" in certain bills sent to the NRA. Produce the invoices, statements, or other "bills" from AMc that you contend sought these excessive reimbursements, from whatever time period you intended the allegation to encompass.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    **Page 68**

**APP100**

**REQUEST FOR PRODUCTION NO. 155:**

With regard to Request No. 154 above, produce the communications, reports, spreadsheets, financial statements, or any other documents evidencing or tending to support your allegation that AMc sought reimbursements from the NRA "**in excess of the actual cost to AMc**."

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 156:**

In Paragraph 137 of your Amended Complaint, you attributed two quotes to Defendants ("***a good opportunity to generate revenue***" and "***pay for itself***").  Produce the communications, meeting notes, or other documents that directly or indirectly reflect these alleged quotes (whether separately or together).

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 157:**

In Paragraph 138 of your Amended Complaint, you claim that the NRATV digital platform demonstrated "**dismal**" viewership numbers. Produce the reports, articles, communications, or other documents that you rely upon to support this allegation.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 158:**

In Paragraph 148 of your Amended Complaint, you allege that AMc "**billed the NRA for time logged by employees who were supposed to be fully 'dedicated' to the NRA**." Produce the communications, reports, or other documents that you rely upon to support this allegation.

**RESPONSE:**

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                Page 69

APP101

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 159:**

In Paragraph 148 of your Amended Complaint, you allege that AMc "**often double-billed multiple clients for the same work**."  Produce the communications, reports, or other documents that you rely upon to support this allegation.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 160:**

In Paragraph 148 of your Amended Complaint, you allege that AMc "**used equipment, billed to the NRA, for other clients' projects**." Produce the communications, reports, or other documents that you rely upon to support this allegation.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 161:**

Produce the written or electronic requests for information relating to NRATV viewership analytics or performance metrics that you sent to AMc from 2015 through the beginning of this Lawsuit.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 162:**

With regard to the requests for information referenced in Request No. 161 above, produce the written or electronic communication or other documents you received from AMc in response.

**RESPONSE:**

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 70

APP102

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 163:**

Produce the documents evidencing, reflecting, or relating to your disapproval of NRATV.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 164:**

Produce the communications and other documents you allegedly sent to AMc concerning the intellectual property allegations contained in your Amended Complaint.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 165:**

Produce the contracts, communications, or other documents supporting your contention that Defendants AMc, Mercury, Montgomery, Winkler, Martin, and/or Greenberg was/were a fiduciary of the NRA.

**RESPONSE:**

The Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 166:**

With regard to any third-party subpoenas issued by you in any legal action initiated by you against AMc since April 12, 2019, produce a copy of all documents received in response to such subpoena(s).

**RESPONSE:**

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
**ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**                    **Page 71**

**APP103**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 167:**

With regard to the third-party subpoena(s) referenced in Request No. 166 above, produce the communications between the NRA and the subpoena recipient from May 23, 2019 to the present, irrespective of whether any documents were ultimately received from the subpoenaed party.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 168:**

If you contend that any AMc invoices violate **Section II(A)(1)** of the Services Agreement related to "Public Relations/Political Strategy/Strategic Marketing Services," produce a copy of the invoices that support your contention.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 169:**

If you contend that any AMc invoices violate **Section II(B)(1)** of the Services Agreement related to "Advertising/Creative/Media Planning and Placement Services," produce a copy of the invoices that support your contention.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 170:**

If you contend that any AMc invoices violate **Section II(B)(2)** of the Services Agreement related to "Advertising/Creative/Media Planning and Placement Services," produce a copy of the invoices that support your contention.

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    **Page 72**

**APP104**

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 171:**

If you contend that any AMc invoices violate **Section II(B)(3)** of the Services Agreement related to "Advertising/Creative/Media Planning and Placement Services," produce a copy of the invoices that support your contention.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 172:**

If you contend that any AMc invoices violate **Section II(C)** of the Services Agreement related to "Owned Media and Internet Services," produce a copy of the invoices that support your contention.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 173:**

If you contend that any AMc invoices violate **Section II(D)** of the Services Agreement related to "Digital Systems Operations Support," produce a copy of the invoices that support your contention.

**RESPONSE:**

The Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 174:**

If you contend that any AMc invoices violate **Section II(E)** of the Services Agreement related to "Other Projects," produce a copy of the invoices that support your contention.

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 73

APP105

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 175:**

If you contend that any AMc invoices violate **Section III(A)** of the Services Agreement related to reimbursement for expenses, produce a copy of the invoices that support your contention.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 176:**

If you contend that any AMc invoices violate **Section III(B)** of the Services Agreement related to Section III(D) of the Services Agreement related to billing for special assignments.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

**REQUEST FOR PRODUCTION NO. 177:**

Produce your communications with any employee or representative of Associated TV, Grassroots Behavioral Services, McKenna & Associates, LLC, and/or MMP referring or related to concerns or questions about their billing, contract compliance, lack of current contract, compliance with New York not-for-profit law, the audit of their records, or any other matter related to contract, financial, billing, or budgetary compliance from August 1, 2018, to the present.

**RESPONSE:**

Subject to and without waiving its General Objections, the NRA shall produce non-objectionable, non-privileged responsive documents at a mutually agreeable time and place.

PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION                    Page 74

APP106

Dated:  January 21, 2020     Respectfully submitted,

            **BREWER, ATTORNEYS & COUNSELORS**


       By:  */s/ Michael J. Collins*
          Michael J. Collins
          State Bar No. 00785493
          mjc@brewerattorneys.com
          Jason C. McKenney
          State Bar No. 24070245
          jcm@brewerattorneys.com

          1717 Main Street, Suite 5900
          Dallas, Texas 75201
          Telephone: (214) 653-4000
          Facsimile: (214) 653-1015

          **ATTORNEYS FOR**
          **PLAINTIFF/COUNTER DEFENDANT**
          **NATIONAL RIFLE ASSOCIATION OF**
          **AMERICA**

**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**    **Page 75**

**APP107**

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above was served on all counsel of record in

accordance with the Texas Rules of Civil Procedure on the 21st day of January 2020.


  */s/ Michael J. Collins*
Michael J. Collins


**Jay J. Madrid, Esq.**
madrid.jay@dorsey.com
**G. Michael Gruber, Esq.**
gruber.michael@dorsey.com
**J. Brian Vanderwoude, Esq.**
vanderwoude.brian@dorsey.com
**Brian E. Mason, Esq.**
mason.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
Telephone: (214) 981-9900
Facsimiles: (214) 981-9901

**ATTORNEYS FOR DEFENDANTS
ACKERMAN MCQUEEN, INC.,
MERCURY GROUP, INC., HENRY MARTIN,
JESSE GREENBERG, WILLIAM WINKLER,
AND MELANIE MONTGOMERY**


4838-5122-8593.4
2277-09


**PLAINTIFF/COUNTER-DEFENDANT'S OBJECTIONS
AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF**
<u>**ACKERMAN MCQUEEN, INC.'S FIRST REQUEST FOR PRODUCTION**</u>                   **Page 76**

# EXHIBIT A-3

## *FILED UNDER SEAL*

# EXHIBIT A-4

## *FILED UNDER SEAL*

# EXHIBIT A-5

VIRGINIA:

## IN THE CIRCUIT COURT FOR THE CITY OF ALEXANDRIA

NATIONAL RIFLE ASSOCIATION OF AMERICA, )
                                                )
                 **Plaintiff,**          )
                                                )
    v.                             )     **Case Nos. CL19001757;**
                                                  )           **CL19002067**
ACKERMAN MCQUEEN, INC.,           )
                                                )
    **and**                                 )
                                                )
MERCURY GROUP, INC.,              )
                                                )
             **Defendants.**      )

## PROTECTIVE ORDER

1.     **PURPOSES AND SCOPE**

    1.1    Disclosure and discovery activity in this Action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this Action may be warranted. Accordingly, the Parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order (the "Order").

    1.2    The purpose of this Order is to facilitate the production of discovery material, facilitate the prompt resolution of disputes over confidentiality and privilege, protect material to be kept confidential and/or privileged, and ensure that protection is afforded only to material entitled to such treatment, pursuant to the Court's inherent authority, its authority under the applicable Rules, the judicial opinions interpreting such Rules, and any other applicable law. Except as otherwise stated in this Order, a Party shall produce, in response

APP329

to a valid discovery request, otherwise discoverable information in its possession, custody or control that is Confidential or Highly Confidential, and such information shall be handled in accordance with the procedures set forth herein.

1.3    This Order and all subsequent Protective Orders shall be binding on all Parties and their counsel in lawsuits entitled *NRA v. AMc, et al.* filed in the Circuit Court for the City of Alexandria with case Nos. CL19001757 and CL19002067 and any other persons or entities who become bound by this Order.

1.4    The Parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The Parties further acknowledge, as set forth in Section 12.3 below, that this Order does not entitle them to file confidential information under seal.

2.    **DEFINITIONS**

The following definitions apply for purposes of this Order:

2.1    Action: The lawsuits entitled *NRA v. AMc, et al.* filed in the Circuit Court for the City of Alexandria with case Nos. CL19001757 and CL19002067.

2.2    Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

2.3    Confidential Information: Discovery Material (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection under Rule 4.1(c) of the Rules of the Supreme Court of Virginia.

2

**APP330**

2.4     Counsel: Outside Counsel of Record, In-House Counsel, or counsel retained for the purpose of advising, prosecuting, defending, or attempting to settle this Action.

2.5     Designating Party: a Party or Non-Party that designates documents, information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

2.6     Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, answers to interrogatories, documents, responses to requests for admissions, tangible things, and informal exchanges of information), that are produced or generated in connection with any discovery in this Action, whether formally or informally.

2.7     Expert: a person retained by a Party or its Counsel to serve as an expert witness or consultant or technical advisor in this Action (as well as his or her employees and support staff).

2.8     Highly Confidential Information: Discovery Material that meets the definition of "Confidential Information" and which the Designating Party reasonably believes to be information reflecting non-public technical research, pricing and business strategy documents concerning a particular product or service, financial statements reflecting sales data, margin data, cost and expense data, human resources or personnel files, and/or profit and loss data, sales information relating to specific customers or classes of customers, non-public research, provided that the nonpublic information is actually secret because it is neither known to, nor readily ascertainable by, another person or entity that can obtain economic value from the disclosure or use of such information, the Designating Party has taken reasonable measures to maintain the secrecy of that information and the Designating

3

APP331

Party derives independent economic value and a competitive advantage from the secrecy of that information, including, as the case may be, containing information where production of the materials on a confidential or non-confidential basis would nonetheless likely cause substantial harm.. Nothing herein precludes any Party from seeking additional protections not currently contemplated by this Order to be applied to any particular document or category of documents, including Highly Confidential Information.

2.9 In-House Counsel: attorneys who are employees of a Party to this Action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10 Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action, and their counsel.

2.11 Outside Counsel of Record: attorneys who are not employees of a Party to this Action but have been retained to represent or advise a Party to this Action and have appeared in this Action on behalf of that Party or are affiliated with a law firm which has appeared on behalf of that Party.

2.12 Party: any party to this Action.

2.13 Privileged Material: Discovery Material protected from disclosure under the attorney-client privilege, work product doctrine, or any other privilege or protection afforded or recognized by the Rules, including any such privilege or protection under applicable U.S. or foreign law, regulation or statute.

2.14 Producing Party: a Party or Non-Party that produces Discovery Material in this Action.

2.15 Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, graphic support services, coding, translating, preparing

4

exhibits or demonstrations, document review, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16 Protected Material: any Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

2.17 Receiving Party: a Party that receives Discovery Material from a Producing Party.

3. **SCOPE**

3.1    The protections conferred by this Order apply to Protected Material (as defined above) and also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, translations, or compilations of Protected Material; and (3) any oral, written, or electronic communications, testimony or presentations, including for purposes of settlement, by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Order do not cover information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order.

3.2    This Order and its protections apply for pre-trial purposes only. The Parties will meet and confer at the appropriate time regarding any use of Protected Material at trial, which use shall be governed by a separate agreement or order.

4. **DURATION**

4.1    Even after final disposition of this Action, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later

5

APP333

of (1) dismissal of all claims and defenses in this action, with or without prejudice; or (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.   **DESIGNATING PROTECTED MATERIAL**

5.1    Manner and Timing of Designations. Except as otherwise provided in this Order (*see, e.g.*, Section 5.2.4 below), or as otherwise stipulated or ordered, Discovery Material that qualifies for protection under this Order must be clearly so designated at the time the material is disclosed or produced. The Parties shall make Confidential and Highly Confidential designations in good faith to ensure that only those documents or testimony that merit Confidential or Highly Confidential treatments are so designated. Either designation may be withdrawn by the Designating Party. If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, the Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2    Designation in conformity with this Order requires the following:

5.2.1 *Marking*. All or any part of a document, discovery response, or pleading disclosed, produced, or filed by a Producing Party may be designated Confidential or Highly Confidential by marking the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL") on the face of the document and each page so designated. With respect to tangible items, the appropriate legend shall be marked on the face of the tangible item, if practicable, or by written notice to the Receiving Party at the time of disclosure, production or filing that such tangible item is Confidential or Highly Confidential or contains such

6

information. With respect to documents produced in native format, the Electronically Stored Information Protocol, or ESI Protocol, to be entered in this Action shall govern the form and method for marking such documents as Confidential or Highly Confidential.

5.2.2 A Receiving Party shall exercise good faith efforts to ensure that any copies, print-outs of natively produced documents or data, excerpts, summaries, or compilations include a confidentiality legend that matches the confidentiality designation the Designating Party applied to the document, discovery response, transcript, or pleading.

5.2.3 *Timing.* Except as otherwise provided herein and documents that have already been produced, documents and other objects must be designated before disclosure or production. In the event that a Producing Party designates some or all of a witness's deposition or other pre-trial testimony (or related exhibits) Confidential or Highly Confidential, such designation may be made on the record of the deposition or hearing or within thirty (30) calendar days after receipt of the final transcript of such deposition or hearing. The specific page and line designations over which confidentiality is claimed must be provided to counsel for the Parties within thirty (30) calendar days of receipt of the transcript in final form from the court reporter except counsel may agree to extend such period. Deposition or pre-trial testimony shall be treated as Highly Confidential pending the deadline or, if applicable, extended deadline for designation. After the expiration of that period, the transcript shall be treated only as actually designated.

5.2.4 For information produced in some form other than documentary and for any other tangible items, the Producing Party shall affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." If the Protected Material is

7

**APP335**

produced in an electronic form with a load file, the Designating Party shall note that there is Protected Material in the load file. If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.3    Inadvertent Failures to Designate. Accidental or inadvertent disclosure of Protected Material—including Protected Material inadvertently disclosed by failure to redact as set forth in Section 11—does not waive the confidential status of such information or any privilege or other protection attached thereto. In the event that Protected Material is inadvertently disclosed without appropriate designations, any Party or Non-Party may thereafter reasonably assert a claim or designation of confidentiality, and the Producing Party shall promptly provide replacement media. Thereafter, the Receiving Party must promptly return the original information and all copies of the same to the Producing Party, or destroy the original information and all copies, and make no use of such information. In the event that Protected Material is inadvertently disclosed to any person and such disclosure is not permitted by the terms of this Order, the Party making the inadvertent disclosure shall promptly notify the Producing Party of such inadvertent disclosure within 10 calendar days of learning of it and will make all reasonable efforts to ensure the original and all copies of inadvertently disclosed information are not used and are promptly returned or destroyed.

6.    **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1    Timing of Challenges. A challenge to a designation of confidentiality may be made at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right

8

**APP336**

to challenge a confidentiality designation by electing not to mount a challenge promptly after the confidentiality designation is made.

6.2    Form of Challenges. The Challenging Party shall object to the propriety of the designation of specific material as Confidential or Highly Confidential by providing written notice to the Designating Party of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific Section of this Order. The Designating Party or its counsel shall thereafter, within fourteen (14) calendar days, respond to such challenge in writing by either: (i) agreeing to remove the designation; or (ii) stating the reasons for such designation. Counsel may agree to reasonable extensions.

6.3    Meet and Confer. If the Challenging Party continues to dispute the designation(s) at issue, it shall notify the Designating Party in writing within seven (7) calendar days thereafter. Counsel may agree to reasonable extensions. The Parties shall attempt to resolve each challenge in good faith by conferring directly (in voice-to-voice dialogue; other forms of communication are not sufficient). A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet-and-confer process first or establishes that the Designating Party is unwilling to participate in the meet-and-confer process in a timely manner.

6.4    Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Challenging Party may move the Court for an order withdrawing the designation as to the specific designations on which the Challenging Party and the Designating Party could not agree, within fourteen (14) calendar days of the Parties agreeing

9

that the meet-and-confer process will not resolve their dispute. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet-and-confer requirements imposed in the preceding Section.

6.5     The burden of persuasion in any such challenge proceeding shall be on the Designating Party. While a challenge is pending, all Parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation until the Court orders otherwise.

6.6     If a Designating Party or the Court identifies or determines that material that had been designated as Protected Material should no longer be so designated, that material will no longer be subject to the restrictions designated herein for the treatment of Protected Material.

7.     **ACCESS TO AND USE OF PROTECTED MATERIAL**

7.1     Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in this Action only for prosecuting, defending, or attempting to settle this Action, including any appeal(s), so long as such use is permitted herein. Any Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. After the final disposition of the Action, a Receiving Party must comply with the provisions of Section 13 below (FINAL DISPOSITION). Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.1.1 Except as otherwise provided in this Order, Counsel in this Action and any of their agents shall be prohibited from sharing with anybody any Protected Material, or

10

**APP338**

any information derived from or based on any Protected Material, in connection with any investigation, proceeding, or contemplated proceeding.

    7.2    Restrictions on Use of Confidential Information. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

    7.2.1 the Receiving Party's Counsel (including their employees and support staff);

    7.2.2 the officers, directors, and employees of the Receiving Party to whom disclosure is reasonably necessary for this Action;

    7.2.3 Experts retained by the Receiving Party or the Receiving Party's Counsel to whom disclosure is reasonably necessary for this Action;

    7.2.4 the Court and its personnel, and any appellate court or other court (and their personnel) before which the Parties appear in this Action;

    7.2.5 special masters or discovery referees appointed by the Court;

    7.2.6 mediators and their staff;

    7.2.7 court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action;

    7.2.8 potential or actual witnesses in the Action to whom disclosure is reasonably necessary, unless otherwise agreed by the Designating Party or ordered by the Court;

    7.2.9 the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

11

7.2.10 any other person to whom the Designating Party, in writing, authorizes disclosure.

7.2.11 any person or entity who receives information designated CONFIDENTIAL pursuant to this Protective Order shall (1) agree to be bound by the terms of this Protective Order and (2) execute the document attached hereto as Exhibit "1."

7.3     Restrictions on Use of Highly Confidential Information.

Unless otherwise provided for herein, information designated Highly Confidential by either party shall not be disclosed. However, notwithstanding the above, information designated in good faith as "HIGHLY CONFFIDENTIAL" may be disclosed to counsel for the NRA, AMc, and/or Mercury Group and each of their respective employees or representatives who (1) agree to be bound by the terms of this Protective Order and (2) execute the document attached hereto as Exhibit "1"; provided, however, that such any representative shall not discuss, disclose, summarize, describe, characterize, or otherwise communicate or make available such information to any person or entity prohibited by this Protective Order from accessing HIGHLY CONFIDENTIAL information and/or documents. Similarly, information designated HIGHLY CONFIDENTIAL may be shared with experts and Court personnel, provided that the disclosing party obtains written assurance that such experts will protect the confidentiality of the information and that the Court personnel will keep such information under seal.

HIGHLY CONFIDENTIAL information may not be disclosed or disseminated to William A. Brewer or to personnel within Brewer, Attorneys and Counselors who are members of the Public Relations Unit of the firm, including Travis Carter, Andrea Burnett,

12

Katherine Unmuth, Holly Heidemanns, and Lea Gamino-Blum, unless and until relief is obtained from the Court.

## 8. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

8.1   If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any Protected Material, that Party must:

8.1.1 promptly notify in writing the Designating Party unless prohibited by law from doing so. Such notification shall include a copy of the subpoena or court order;

8.1.2 promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order. Such notification shall include a copy of this Order; and

8.1.3 cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

8.2   If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any Protected Material before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

## 9. A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS ACTION

9.1   The terms of this Order are applicable to Protected Material produced by a Non-Party in this Action. Such information produced by Non-Parties in connection with

13

APP341

this Action is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

10. **UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

10.1 If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures; (b) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and (c) make all reasonable efforts to retrieve all unauthorized copies of the Protected Material.

11. **REDACTIONS ALLOWED**

11.1 Any Producing Party may redact from Discovery Material matter that the Producing Party claims is Privileged Material. The Producing Party shall ensure that the redaction is obvious to the Receiving Party and specify the basis for the redaction as appropriate. Where a document consists of more than one page, at least each page on which information has been redacted shall be so marked. If counsel for the Producing Party agrees or if the Court orders that Discovery Material initially redacted shall not be subject to redaction or shall receive alternative treatment, and the Discovery Material is subsequently produced in unredacted form, then that unredacted Discovery Material shall continue to receive the protections and treatment afforded to documents bearing the confidentiality designation assigned to it by the Producing Party.

14

11.2 The right to challenge and process for challenging the designation of redactions shall be the same as the right to challenge and process for challenging the designation of Confidential Information and Highly Confidential Information as set forth in Section 6.

11.3 Nothing herein precludes any Party from seeking the other Parties' consent or an order allowing the Party to redact nonresponsive matter from otherwise responsive documents on a case-by-case basis.

## 12. **MISCELLANEOUS**

12.1 Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future. Any Party, entity or person covered by this Order may at any time apply to the Court for relief from any provision of this Order. Subject to the agreement of the Parties or an order of the Court, other entities or persons may be included in this Order by acceding to its provisions in a writing served upon counsel for the Parties, with such writings to be filed with the Court if so directed.

12.2 Right to Assert Other Objections. By stipulating to the entry of this Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order. Similarly, no Party waives any right to object on any ground to use as evidence any of the material covered by this Order.

12.3 Filing Protected Material. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action any Protected Material. A Party that seeks to file under seal any Protected Material must do so pursuant to the local rules.

12.4 Hearings and Appeals

15

**APP343**

12.4.1 In the event that a Receiving Party intends to utilize Protected Material during a pre-trial hearing, such Receiving Party shall provide written notice no less than three (3) calendar days prior to the hearing, to the Producing Party and/or the Designating Party, except that shorter notice may be provided if the Receiving Party could not reasonably anticipate the need to use the document at the hearing three (3) calendar days in advance, in which event notice shall be given immediately upon identification of that need. The use of such Protected Material during the pre-trial hearing shall be determined by agreement of the relevant Parties or by Order of the Court.

12.4.2 In the event that any Protected Material is used in any court proceeding in this Action or any appeal in connection with this Action, except for the use of Protected Material during trial, the manner of which shall be determined pursuant to Section 3.2, such Protected Material shall not lose its protected status through such use. Counsel shall comply with all applicable local rules and shall confer on such procedures that are necessary to protect the confidentiality of any documents, information, and transcripts used in the course of any court proceedings, including petitioning the Court to close the courtroom.

12.5 Reservations. Entering into, agreeing to or complying with the provisions of this Order shall not: (1) operate as admission that any particular material contains Protected Material; or (2) prejudice any right to seek a determination by the Court (a) whether particular material should be produced, or (b) if produced, whether such material should be subject to the provisions of this Order.

13.  **FINAL DISPOSITION**

13.1 Within ninety (90) calendar days after the final disposition of this Action, as defined in Section 4, each Receiving Party, including its employees, attorneys, consultants

16

and experts, must use commercially reasonable efforts to destroy or return to the Producing Party all Protected Material, except (1) backup tapes or other disaster recovery systems that are routinely deleted or written over in accordance with an established routine system maintenance practice, or (2) documents that must be preserved as federal records or in compliance with other statutory, regulatory or legal authorities. As used in this Section, "all Protected Material" includes all originals, copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, upon request of the Producing Party, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 90-day deadline that (1) states that commercially reasonable efforts have been made to assure that all Protected Material has been returned or destroyed, and (2) affirms that the Receiving Party has not retained any originals, copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits. expert reports, attorney work product (including all emails attaching or referring to Protected Materials), and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Order as set forth in Section 4 (DURATION).

**IT IS SO ORDERED.**

DATED: October 8, 2019

Nolan B. Dawkins

**Alexandria Circuit Court Judge**

17

SEEN *AND AGREED*

DATED: _September 23, 2019_ _____

Attorney for Plaintiff
Robert H. Cox
VA Bar 33118

DATED: _____ _____

Attorney for Defendant
DAVID H. DICKIESON
VA BAR 31268

4820-5217-3221.1

18

## EXHIBIT 1 TO PROTECTIVE ORDER

**VIRGINIA:**

## IN THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA

**NATIONAL RIFLE ASSOCIATION OF AMERICA,**

     **Plaintiff,**

v.

**ACKERMAN MCQUEEN, INC.**

     **And**

**MERCURY GROUP, INC.**

     **Defendants.**

**Case Nos. CL19001757, CL19002067**

## ACKNOWLEDGEMENT OF AND AGREEMENT TO BE BOUND BY PROTECTIVE ORDER

I, the undersigned, state that:

I have reviewed the Protective Order in this matter.

I hereby agree to be bound by and comply with the terms of the Protective Order.

DATED this _____ day of , _____, _____

_____
(Typed or Printed Name)

_____
(Signature)

**APP347**

4836-0458-9479.2

# EXHIBIT A-6

# In the Matter of:

## NRA
## v.
## Akerman McQueen

# Hearing

August 28, 2019



Phone: 703-837-0076
Fax: 703-837-8118
Toll Free: 877-837-0077

1010 Cameron Street
Alexandria, VA 22310
transcript@casamo.com

```
 1   COMMONWEALTH OF VIRGINIA

 2   IN THE ALEXANDRIA CIRCUIT COURT

 3   ------------------------------------

 4   NATIONAL RIFLE ASSOCIATION OF AMERICA,

 5                        Plaintiff,

 6            -vs-              Case Nos. CL 19001757
                                              and
 7                                    CL 19002067

 8   ACKERMAN MCQUEEN, INC.

 9   and

10   MERCURY GROUP, INC.

11                        Defendants.

12   ------------------------------------

13              HEARING in the above-entitled matter,

14           held in Alexandria Circuit Court in

15           Alexandria, Virginia, on August 28, 2019,

16           before the HON. NOLAN DAWKINS, Presiding

17           Circuit Court Judge.

18

19

20

21   Reported by:

22   Jacqueline N. Hagen
```

```
 1                   A P P E A R A N C E S

 2

 3   ON BEHALF OF PLAINTIFF:

 4          BRIGLIA HUNDLEY, P.C.
                1921 Gallows Road
 5              Suite 750
                Tysons Corner, Virginia 22182
 6          BY:  JAMES W. HUNDLEY, Esq.
                jhundley@brigliahundley.com
 7              (703) 883-0204
            AND: ROBERT H. COX, Esq.
 8              rcox@brigliahundley.com
                (703) 883-0880
 9
            BREWER ATTORNEYS & COUNSELORS
10              1717 Main Street
                Suite 5900
11              Dallas, Texas 75201
            BY:   MICHAEL J. COLLINS, Esq.
12              mjc@brewerattorneys.com
                (214) 653-4875
13
     ON BEHALF OF DEFENDANT:
14
            SCHERTLER & ONORATO, LLP
15              901 New York Avenue, N.W.
                Suite 500
16              Washington, DC 20001
            BY:  DAVID DICKIESON, Esq.
17              ddickieson@schertlerlaw.com
            AND: JOSEPH A. GONZÁLEZ, Esq.
18

19

20

21

22
```

1              P R O C E E D I N G S

2              (Whereupon the proceedings commenced at

3         11:20 a.m.)

4              MR. HUNDLEY:  Good morning, your Honor.

5              THE COURT:  Good morning.

6              MR. HUNDLEY:  Jim Hundley on behalf of

7         the National Rifle Association of America.

8         This is Michael Collins.

9              MR. DICKIESON:  Good morning, your

10        Honor.  David Dickieson and Jose Gonzalez on

11        behalf of Ackerman McQueen and the Mercury

12        Group.

13             THE COURT:  All right.  Let's see.

14             MR. HUNDLEY:  Your Honor, there's --

15        there's one that there's an Agreed Order,

16        motion to amend our answers.  I just hand up

17        the Agreed Order to resolve that matter.

18             THE COURT:  All right.

19             MR. HUNDLEY:  Your Honor, I call -- your

20        law clerk had suggested that the Court might

21        find useful a transcript from the earlier pro

22        hac vice motion that's cited in the

 1            pleadings.  The Court had -- so I'm happy to

 2            hand that up to the law clerk so the Court

 3            can refer to that, if you desire.

 4                 THE COURT:  Yes, sir.

 5                 MR. DICKIESON:  Good morning, your

 6            Honor.  I think it might be useful for me to

 7            provide an update from the last time we were

 8            here back in June.  As you will recall that

 9            we asked for a preliminary injunction based

10            on the fact that the NRA had not posted a $3

11            million letter of credit to allow us to --

12            allow Ackerman McQueen to continue doing

13            work, and we asked for a preliminary

14            injunction to force that so that people

15            wouldn't have to be laid off and terminated

16            because of this contract.  The Court heard

17            arguments but said it didn't have sufficient

18            time to go through all of the evidence, and

19            we set it for a special, full-day hearing,

20            the quickest date possible.  And what

21            happened was that in that intervening time,

22            the NRA stopped paying invoices and

```
 1          terminated a contract in an immediate

 2          fashion, and that forced 50 people to be

 3          furloughed and laid off and terminated.  The

 4          Alexandria office is being closed, and the --

 5          the whole point for the preliminary

 6          injunction hearing was no longer relevant

 7          because you could not preserve the status quo

 8          at that point.  And so we canceled the

 9          hearing on the preliminary injunction, and

10          we've been moving forward with discovery in

11          the case ever since then.

12              The NRA has taken three depositions in

13          three different states.  But now, one of the

14          things they're seeking to do is block

15          Ackerman McQueen from taking any depositions

16          of NRA members.  So there are two remaining

17          matters, apart from the consent motion:

18          AMC's motion for protective order seeking to

19          protect information from being disclosed to a

20          competitor that resides within the firm of --

21          of Brewer that Mr. Collins is -- is a partner

22          at.  And then there's NRA's motion for
```

 1            protective order and to quash the -- the --

 2            the depositions that are being asked for by

 3            AMC.

 4                 Now, let me suggest the following

 5            organization for moving forward with what is

 6            going to be a 25-minute hearing.  First, we

 7            -- I think we should deal with the NRA's

 8            motion that involves a simple interpretation

 9            of Rule 4.1(c) and Rule 4.1(d), and -- and

10            the application of those two subsections of

11            Rule 4.1.  I think that's a fairly

12            straightforward issue, and we can deal with

13            that fairly quickly.  Then -- then we can

14            deal with AMC's motion that involves a unique

15            and novel issue that's not covered by any

16            rule:  Whether or not a law firm that has a

17            public relations unit that is in direct

18            competition with my client should have access

19            to the confidential data that's been turned

20            over in discovery.

21                 We think there's no rule that covers

22            that because most law firms don't do a public

```
 1            relations work and don't compete against the

 2            firms that they're suing.  So we think that's

 3            going to take some -- a little more time, and

 4            we would ask that the Court follow that

 5            organization.

 6                 So I'll turn it over to Mr. Hundley on

 7            the -- his motion for protective order on the

 8            depositions.

 9                 THE COURT:  Yes, sir.

10                 MR. HUNDLEY:  That's fine, your Honor.

11            I think the two motions, really, are just

12            sort of intertwined, and -- and at the heart

13            of both motions is our dispute over what an

14            appropriate protective order should look like

15            in this case.  We filed the motion to quash

16            or stay the depositions that they noticed of

17            the NRA party -- party witnesses because we

18            were unable to reach an agreement with them

19            about the protective order and the production

20            of discovery that would -- that we've already

21            asked for.

22                 So their objection to our motion to --
```

```
 1            what we're really asking the Court to do is

 2            simply order the discovery in a way that's

 3            fair and equitable.  This isn't a situation

 4            which, you know -- 4.1(d)(1) is what they

 5            cite.  The purpose of that rule is to prevent

 6            the parties from simply refusing to produce

 7            discovery, and that freezes the litigation,

 8            and that's not what's happening here at all,

 9            your Honor.

10                The discovery is ongoing in this case.

11            The NRA has produced voluminous discovery and

12            is continuing to produce discovery.  We've

13            taken three depositions already.  We've got

14            other non-party depositions that are -- that

15            -- working with the witnesses to schedule,

16            and those can go forward.

17                And -- and this is the crucial point

18            that they sort of ignore in their objection

19            to our motion -- we have propounded discovery

20            to them, two separate rounds of it, which

21            they've not complied with.  One of them is

22            past due.  The first one is past due.  The
```

1          second round, we discussed with them an

2          extension and agreed to an extension.  They

3          refuse to produce any documents, highly

4          classified or otherwise, until this

5          protective order is resolved.  And we've had

6          negotiations with them, and we've suggested,

7          "Well, why can't you just produce the

8          non-highly classified documents?"  And

9          they've declined to enter into those types of

10         accommodations.

11              So we would submit to the Court -- what

12         we're asking the Court to do -- and we think

13         it's fair.  It's reasonable.  It's equitable

14         -- regarding these depositions is to first

15         require AMC to comply with the discovery that

16         we propounded.  This isn't a situation where

17         we're saying, "We don't want to take any

18         depositions until we finish our written

19         discovery and get it to you."  That's not

20         what happened.  It's -- it's out there, and

21         it's due.

22              And so we simply are asking the Court to

```
 1              say, "You produce your discovery," and then

 2              -- and they've indicated they can do that

 3              quickly.  Once there's a protective order in

 4              place, they can do that quickly, within, I

 5              think, a week is what Mr. Dickieson

 6              indicated.  And within a week after that,

 7              we're perfectly willing to let these

 8              depositions go forward.  But we submit we're

 9              entitled to this discovery that we've asked

10              for, and is due to be produced, before these

11              depositions go forward.  We're not -- we

12              don't think that request to the Court

13              violates the rule that they cited, 4.1(d)(1).

14                   THE COURT:  It sounds like we don't have

15              a problem; is that correct?  We don't have a

16              problem; is that correct?

17                   MR. HUNDLEY:  Well, the problem is we --

18                   THE COURT:  The problem is they haven't

19              complied with the discovery.  That's - that's

20              what I heard.

21                   MR. HUNDLEY:  And the reason they're not

22              complying with discovery is because there's
```

1          not a protective order in place, and they're

2          refusing to do it until there is a protective

3          order in place.  So we're here today, and we

4          said, "Okay, let's get the protective order

5          issue resolved."  So we're here today to do

6          that.

7               THE COURT:  Why don't we pass the

8          protective order?  Let's move on.

9               MR. HUNDLEY:  All right.

10               THE COURT:  Let's pass the protective

11          order.  What do you want?

12               MR. HUNDLEY:  For the protective order?

13               THE COURT:  Yes.

14               MR. HUNDLEY:  We certainly have no

15          objection to a general protective order that

16          protects highly confidential information in

17          litigation.  We're -- all the parties are

18          very familiar with those.  They're asking for

19          -- it's paragraph 7.3 of the proposed

20          protective order they're submitted to us.

21          They're asking for a protective order that

22          does something very unique and onerous.

```
 1              They're asking that the NRA's co-counsel, Mr.

 2              Collins, as well as all of the legal

 3              professionals that work at the Brewer Law

 4              Firm, be excluded from looking at that

 5              discovery.  And they based that argument

 6              simply on bald, unsupported statements that

 7              can't be supported, that the Brewer Law Firm

 8              is a competitor of AMC.

 9                  The Brewer Law Firm is not a competitor

10              of AMC, and they don't present any evidence

11              to show that it is.  They -- they cite to

12              their own arguments in the motion, the pro

13              hac vice motion previously that the Court

14              overruled.  Their objection's been granted.

15              That's not evidence that -- that the Brewer

16              Law Firm is a competitor.  They cite to

17              quotes by William Brewer, the -- the attorney

18              -- one of the attorneys in the Brewer Law

19              Firm, that he made to the media on behalf of

20              the NRA, but they don't say what those are.

21              In any event, they're hearsay.  That's not

22              evidence.
```

```
 1              For a protective order of this level of

 2         restriction -- and it's really just a

 3         back-door disqualification of the Brewer Law

 4         Firm, that the Court's already refused to

 5         grant -- they granted the pro hac vice

 6         motion.  The Court's granted the pro hac vice

 7         motion.  They bear the heavy burden of

 8         showing good cause, and they simply -- they

 9         haven't done it because they can't do it.

10         The evidence, quite frankly, would be that --

11         the evidence quite frankly is that while the

12         Brewer Law Firm has a public relations unit

13         that employs four people, those four people

14         provide public relations services for clients

15         who are involved in litigation that the

16         Brewer Law Firm is handling.

17              The Brewer Law Firm is a boutique

18         litigation firm that handles high-profile

19         cases where the media is often involved, and

20         so they do have a public relations unit that

21         deals solely with litigation matters.

22         They're a law firm.  AMC is not a law firm.
```

1       AMC does not do litigation work.  AMC is a

2       marketing firm.  The Brewer Law Firm does not

3       engage in any of the type of work that the --

4       that a marketing and advertising firm like

5       AMC engages in.  It's apples to oranges.

6           The -- AMC, on behalf of the NRA, was

7       running NRA TV.  They were representing

8       employees of the NRA, such as Oliver North,

9       in their media capacity, helping them to get

10      on TV to arrange -- to arrange those types of

11      engagements for them.  The Brewer Law Firm

12      doesn't do any of that.  They're not equipped

13      to do any of that.  I mean, the fact that

14      AMC, as a result of the termination of their

15      relationship with the NRA, had to hire 50

16      employees proves that the Brewer Law Firm is

17      not a competitor for this business.  There's

18      no way that the four people in the public

19      relations firm of the Brewer Law Firm, the

20      public relations unit of the Brewer Law Firm,

21      could do the work of 50 people who are

22      working exclusively for the NRA.  And they

```
 1              haven't presented any evidence to show that

 2              they're doing any of that work.  They're not.

 3              They're not a competitor.

 4                   Your Honor, even if they were arguably a

 5              competitor, which they're not, it's, in fact

 6              -- it wasn't the NRA that terminated the

 7              contract.  It was AMC that terminated the

 8              contract with the NRA.  And so once they did

 9              that, they lost any standing to complain

10              about anybody being a competitor for the

11              NRA's business because they've turned it

12              down.  They're turned it away.  They've

13              terminated the relationship.  So they really

14              don't have any standing to make that

15              argument, to begin with.

16                   THE COURT:  Tell me what is -- what is

17              Mr. Collins' relationship with the public

18              relations portion of the -- of the -- of the

19              -- the Brewer law -- the Brewer Firm?

20                   MR. HUNDLEY:  Mr. Collins is here to

21              answer that question, but I think it's fair

22              to say he has --he doesn't work with the
```

```
1              public relations.

2                   MR. COLLINS:  Right.  The public

3              relations is part -- is not a separate

4              entity.

5                   THE COURT:  It is not?

6                   MR. COLLINS:  No.  We are a general

7              partnership.  I am one of two equity

8              partners.  Then we have four people, you

9              know, public relations, crisis management,

10             for the legal matters we're handling on

11             behalf of clients.  They assist us with --

12             there needs to be a press release that we

13             need to send out about what happened in court

14             yesterday related to litigation, not anything

15             to do with a new product for a client,

16             anything about the scope of what AMC was

17             doing.

18                  It's all in connection with litigation

19             that our clients are involved in, and we're

20             representing them in the that, and I say,

21             generally, we are just a litigation firm.  We

22             don't have a real estate department,
```

```
1            corporate department, tax department.  We are

2            a litigation firm.  And part of litigation is

3            dealing with statements made out in the world

4            about that litigation that have to be made at

5            some time in response, a lot of times, to

6            what was said by the other side.

7                 THE COURT:  Okay.  In your role as the

8            litigation portion of the firm, would you be

9            -- would you have access to proprietary

10           information that relates to -- or

11           confidential information that relates to the

12           other party in this case?

13                MR. COLLINS:  I would have it in my role

14           as an attorney, yes.

15                THE COURT:  Attorney, yes.  That's

16           right.

17                MR. COLLINS:  Yes, absolutely I would

18           have access to it, just like they would have

19           of our clients.  So yes, I certainly would,

20           and that's where our point is:  The attorney

21           who's been admitted to practice on behalf of

22           his client is entitled to access to
```

```
 1            everything.

 2                  THE COURT:  And would that information

 3            be shared with the public relations portion

 4            of that -- of the Brewer Firm?

 5                  MR. COLLINS:  In connection with the

 6            litigation itself, I don't think so, your

 7            Honor.  No.  Now, if they --

 8                  MR. HUNDLEY:  Your Honor -- I'm sorry.

 9                  MR. COLLINS:  No, please.

10                  MR. HUNDLEY:  I just want to -- we've

11            proposed a protective order that would

12            prohibit the public relations unit employees

13            from having access to any of the discovery

14            designated "highly confidential."  We don't

15            object to that.

16                  THE COURT:  What's the problem with

17            that?

18                  MR. HUNDLEY:  They won't accept it.

19                  MR. DICKIESON:  Your -- your Honor, the

20            person who is most involved in public

21            relations, the person who is most dealing

22            with the press, is William Brewer.  William
```

1        Brewer is an attorney.  He's not one of the

2        four people in the unit.  The unit reports to

3        him.  He is the one who is the leading face.

4            We -- the last time we were here, the

5        Court spoke about creating a wall, and -- and

6        the wall -- walling off Mr. Collins from the

7        other members of his firm, particularly Mr.

8        Brewer, is something that we could -- we

9        could live with.  That's something that they

10       would not accept.  Even though Mr. Brewer is

11       not admitted pro hac vice in this case, and

12       even though Mr. Brewer cannot be admitted pro

13       hac vice in this case based on sanctions he

14       received in the Eastern District of Virginia,

15       that we are not -- we are not ready to share

16       information with Mr. Brewer that he can then

17       exploit.

18           And for a little background, your Honor,

19       Mr. Brewer is the brother-in-law of the CEO

20       of Ackerman McQueen and the son-in-law of the

21       recently deceased -- and this is another

22       development since the last hearing.  Angus

1           McQueen died in the last month, and he was

2           one of the -- he was the co-CEO of the

3           business.  He is the father-in-law of Mr.

4           Brewer.  So there's a Shakespearean tragedy

5           that's taking place here of a family dispute,

6           and the Ackerman McQueen people do not want

7           to share their -- their confidential,

8           proprietary information with the

9           brother-in-law who was building up a public

10          relations business.  He's written an article

11          that we submitted to the Court in a prior

12          pleading about how you use public relations

13          in litigation, and he is, as -- as Mr.

14          Collins admitted in his statement just a

15          second ago, they do crisis management.

16              That's exactly what Ackerman McQueen

17          does.  In the wake of -- of a mass shooting,

18          it's Mr. Brewer out front doing crisis

19          management for NRA, and he's billing them

20          what Ackerman McQueen used to bill for crisis

21          management in the wake of a mass shooting.

22          And so to say that they don't compete or that

```
 1            because they're too small they can't compete,

 2            they can still chew away at pieces, and

 3            they're trying to hire people to take on new

 4            roles, and the NRA is trying to hire away

 5            Ackerman McQueen people to do the work that

 6            Ackerman McQueen used to do under contract.

 7                 So there is active competition between

 8            these parties.  There's crisis management

 9            that overlaps between the parties, and we

10            think it's vital that this Court recognize

11            that Mr. Brewer is the head of the public

12            relations unit.  He's not just an attorney.

13            And then they've got these four people that

14            do something entirely different.  So that's

15            why we wouldn't agree to just walling off the

16            four people in the public relations unit.

17                 MR. COLLINS:  When I used the words

18            "crisis management," it's not general crisis

19            management.  We don't represent any third

20            party, any client, unrelated to the specific

21            litigation we're working on with them, and

22            all it is is -- for example, your Honor, if a
```

1              decision comes out -- I think there's press

2              here today in this courtroom.  No problem

3              with that; it's an open courtroom.  But

4              they're only dealing with those type of

5              issues in connection with the litigation and

6              just limited to issues arising directly in

7              the litigation:  "What happened here today?

8              A reporter called and has a question.  What

9              happened today?"  So something like attorneys

10             would answer themselves.

11                  MR. DICKIESON:  If I could respond, your

12             Honor.  We've asked in our discovery requests

13             for information about what Brewer Law Firm is

14             doing for the NRA, and they've refused to

15             answer those questions.  And so how can we

16             present evidence of what they're doing when

17             they refuse to give us that information?

18                  So one of the things that -- that we are

19             trying to do is we are trying to take

20             discovery.  They've taken their three

21             depositions, three different states.  We

22             haven't been able to take any depositions.

1              There was supposed to be a deposition

2              yesterday that, because of this motions

3              hearing, we were not allowed to take.  So we

4              are being blocked from discovery.

5                   Rule 4.1(d) makes it very clear that

6              they cannot dictate the order that we take

7              discovery, and so we are trying to move

8              forward, take the discovery that we're

9              entitled to take, and they can't say -- well

10             first of all, I want the Court to recognize

11             we are not late on any discovery.  We have

12             complied timely with all the discovery

13             requests, and we have answered the request to

14             produce documents.  We've answered the

15             interrogatories, and we -- in our request to

16             produce document responses, we have said

17             objections, and then we will produce

18             documents, notwithstanding such objections,

19             as soon as the protective order is entered.

20                  We're not late on any of that, and we

21             filed a motion for protective order, and --

22             and that's -- as soon as that's decided, we

1            are ready to start rolling out documents by

2            this Friday, and -- and that's something that

3            I think is ignored when they say that we are

4            somehow deficient in our discovery responses.

5                But because we have the right to ask NRA

6            employees what's in their mind, not "What did

7            you learn when you looked at AMC's

8            documents?" -- that's not what we're going to

9            ask them in -- in discovery depositions.

10           We're going to say, "What did you know?  And

11           when did you know it?  And why did you take

12           the action you took?"  Not, "What did you

13           learn from looking at the documents we

14           produced last week?"

15               So they can't dictate what we're going

16           to do in the order of our discovery, and

17           that's what Rule 4.1(d)(1) states.  It's very

18           clear.  Rule 4.1(c) is also clear, and it

19           says they can get their protective order only

20           if they show oppression and -- and things

21           that they don't show when they say, "We can't

22           prepare our NRA employees for their

1           depositions."  That's not oppression.  That's

2           not undue expense that 4.1(c) is involving.

3                So, therefore, we think that we're

4           entitled to move forward with our depositions

5           without regard to their not having received

6           documents they're going to receive anyway.

7           But they're trying to dictate how we go about

8           our discovery, and they can't do that.

9                THE COURT:  Yes, sir.

10               MR. HUNDLEY:  I guess just to -- that,

11          again, I mean, if there's a violation of

12          4.1(d), it's being caused by AMC.  Even Mr.

13          Dickieson just admitted their response was,

14          "We're not going to respond -- we're not

15          going to produce until we have the protective

16          order."  We're entitled to our discovery.

17          We're just asking the Court to -- to -- to

18          allow us to get the discovery we've asked for

19          before committing these depositions to go

20          forward.  I mean, Mr. Dickieson says, "We

21          don't want to ask them any questions."  We

22          don't know that.  We don't know what -- we

```
 1          have no idea what highly confidential

 2          discovery is that -- that they're seeking

 3          this protection order for.  They haven't

 4          given us any hint as to what it might be.

 5              So we're just simply asking the Court to

 6          equitably order the discovery in this case in

 7          a way that isn't going to affect the trial

 8          schedule, isn't going to do anything.  It's

 9          not going to slow it down.  So, again, I

10          think that request is very reasonable.

11              As -- as far as the protective order

12          that they're proposing, your Honor, they're

13          not -- they're seeking to -- the motion seeks

14          to exclude Mr. Collins, who's been admitted

15          as pro hac vice in this case.  He's an

16          officer of the Court, therefore, and a

17          licensed member of the Texas Bar and the New

18          York Bar in good standing.  And they're

19          seeking to exclude all of the legal

20          professionals at the Brewer Law Firm who can

21          be -- who will be working on this case.  The

22          NRA is entitled to have the full services of
```

1            that law firm.  That's their counsel.

2            They're entitled to that.  There's nothing

3            before the Court, other than their sort of

4            unfounded suspicions, that these lawyers and

5            these legal professionals will not abide by

6            the protective order of this Court.

7                They will be bound by it.  They will not

8            be able to use any highly confidential

9            discovery in any manner that does not comport

10           lawfully with the Court's order.  If they do,

11           this Court will know what to do about it.

12           But there's no evidence before the Court that

13           they won't do that, and that includes Mr.

14           Brewer.  There is not an ethical requirement

15           that he be walled off.  This is not -- this

16           is not a Rule 1.10 professional conduct

17           violation where he's got a conflict because

18           he's previously represented AMC and now

19           they're adverse.  It's not that situation.

20               This is a situation under Rule 3.7

21           where, potentially, if he were an advocate in

22           this case, he might be a witness for the NRA.

```
 1              There's actually no conflict because the

 2              conflict under Rule 3.7 only arises when the

 3              testimony of the lawyer would be adverse to

 4              his client, and it won't -- it wouldn't be,

 5              and it will not be in this case.

 6                   Nevertheless, out of an abundance of

 7              caution, we have not sought Mr. Brewer's pro

 8              hac vice admission in this case, and so we

 9              fully, above and beyond the requirements of

10              -- of the law, actually dealt with the

11              ethical concerns that he potentially being a

12              witness have raised.  Even if there were a

13              conflict, even if his testimony was

14              potentially adverse to the NRA, which it's

15              not, but even if it were, the ethical

16              considerations are still clear.  He can

17              participate in preparing the case.  He simply

18              can't be an advocate at trial.  And we've

19              cited US v. Perry, as well as other cases,

20              which -- which make that distinction.

21                   This is not the case where he has --

22              where he's got a clear conflict under
```

1          Rule 1.10, where, first, it'd have to be the

2          consent of all parties that he -- that --

3          that the law firm remain in the case, and

4          then the attorney with the conflict has to be

5          walled off.  This is a different situation

6          and the ethical concerns are different, and

7          we've properly addressed them.  So there's no

8          reason why he can't help prepare the case

9          under the constraints --

10              THE COURT:  Even -- even if he's privy

11         to certain proprietary information that he

12         gained as a result of his prior

13         representation, can he -- can he -- can he

14         participate in preparing the case and use

15         information that he gained as his role

16         representing the NRA or anyone else?

17              MR. HUNDLEY:  He's never represented

18         AMC.  So he doesn't have any of their

19         proprietary information I -- to the best of

20         my knowledge --

21              THE COURT:  Is that correct?  All right.

22         Okay.

 1             MR. HUNDLEY:  So the question is --

 2             THE COURT:  But he is --

 3             MR. HUNDLEY:  -- if they produce it, can

 4        he be trusted to only use it in accordance

 5        with this Court's protective order?

 6             THE COURT:  That's correct.

 7             MR. HUNDLEY:  And that -- there's

 8        absolutely no evidence before the Court that

 9        he can't be.

10             THE COURT:  All right.

11             MR. HUNDLEY:  There's not.

12             THE COURT:  All right.  So now, as I

13        understand it, we have competing protective

14        orders; is that correct?  Or we only have one

15        which has a clause in it that walls off the

16        Brewer Firm?

17             MR. HUNDLEY:  We're simply -- yeah,

18        we're asking the Court today to craft

19        paragraph 7.3, yeah.  I think at this point,

20        there's one other issue.  They've asked that

21        the NRA -- that -- that we designate, on

22        behalf of the NRA, one corporate

1              representative who would be allowed to look

2              at the highly confidential information.  What

3              we would ask the Court to do is, one, allow

4              the NRA's general counsel, John Frazier,

5              who's here today, to look at the highly

6              confidential information as well as one

7              designated corporate representative.  And I

8              don't believe they object to that.

9                  THE COURT:  Any objection to that?

10                 MR. DICKIESON:  No, your Honor.  The

11             only -- the only request we would have is

12             that any discovery designated by the NRA as

13             highly confidential be treated in the same

14             manner by the AMC -- by AMC, that they only

15             -- that they designate one person on their

16             side to look at it.  So we're just asking for

17             an equitable order that applies equally to

18             both people.

19                 THE COURT:  Any objection to that?

20                 MR. DICKIESON:  Yes, your Honor, because

21             it's not a parallel situation.  We're -- our

22             concern is not -- is not the lawyer as

```
 1          witness provision that -- that Mr. Hundley is

 2          talking about.  Our objection is that this is

 3          -- Mr. Brewer's law firm is a direct

 4          competitor with AMC.  There's no one at AMC

 5          who is a direct competitor with anyone at the

 6          NRA.  So there's no reason to limit AMC's

 7          staff, who has been working with the NRA for

 8          decades, from looking at documents that are

 9          turned over in discovery that aid us in the

10          preparation of our case.

11               So there's -- there's no competitive

12          advantage that -- that AMC gets by looking at

13          those documents.  While, on the other hand,

14          there is a competitive advantage that the

15          Brewer Law Firm gets if -- if they happen to

16          -- to get that information and our -- our

17          intent in limiting it to one or two designees

18          of the -- of the NRA is because Mr. Brewer is

19          so involved with the NRA's representation

20          that he is going to have discussions with all

21          these people at the NRA.  There's been press

22          reports about how Mr. Brewer is actually
```

1          dictating to the accounting staff about how

2          to -- how to take actions and who's going to

3          be paid first and who's going to be paid

4          second.

5               So we're very concerned about multiple

6          people at the NRA and their communications

7          with the Brewer Law Firm where they have no

8          concerns about the AMC that has been doing

9          NRA business for decades and knows a lot of

10         the confidential information there to begin

11         with.

12              THE COURT:  So what you're suggesting is

13         limited number of representatives from NRA

14         but unlimited with regard to Ackerman

15         McQueen?

16              MR. DICKIESON:  Well, not necessarily

17         unlimited, but everybody who's going to be

18         looking at it is going to be -- have to be

19         advised to be aware of -- and they can even

20         send a form that they have to sign saying

21         that "We're being allowed to look at these

22         documents and we don't -- we won't disclose

```
1              to anyone outside of the -- the privilege of

2              this protective order," if they want to do it

3              that way --

4                  THE COURT:  Any objection to that?

5                  MR. DICKIESON:  -- but --

6                  MR. HUNDLEY:  I'm not -- I'm not sure I

7              fully grasp what he's -- what he's

8              suggesting.  I'm sorry, your Honor.  I just

9              think the -- I think whatever order we craft

10             should be equitable --

11                 THE COURT:  It sounds like -- it sounds

12             like what you're suggesting is a separate

13             document every time someone looks at a

14             document from the opposing counsel or the

15             other party; is that correct?

16                 MR. DICKIESON:  Right.  There's a

17             standard practice in cases with a lot of

18             confidential information where you've got

19             different people reviewing it that these

20             people have to sign something saying that

21             they won't disclose it, or they're -- they'll

22             abide by the terms of the protective order.
```

     1              MR. HUNDLEY:  Yes, they have to.  Anyone

     2         who looks at highly confidential discovery in

     3         this case has to be bound by the protective

     4         order, and they can sign an affirmation that

     5         they've reviewed it and --

     6              THE COURT:  What's your objection?

     7              MR. HUNDLEY:  To that?  None.

     8              THE COURT:  None.  No objection.

     9              MR. HUNDLEY:  But it goes both ways.  I

    10         mean, anyone at Ackerman McQueen who -- who

    11         looks at highly confidential information

    12         that's designated by the NRA would have to do

    13         the same.  They're objecting to that.  I

    14         don't quite understand their argument.

    15         They're saying that we're not -- the NRA and

    16         AMC don't compete with each other.  So I

    17         don't understand why the competition between

    18         the parties is an issue.

    19              We just want the -- the whole purpose of

    20         limiting the access to the highly

    21         confidential information is you're balancing

    22         the need to protect that information versus

```
 1            the need to prepare your case.  And so if

 2            we're going to limit our ability to prepare

 3            the case in order to protect their

 4            confidential information, they should do the

 5            same, and that's all we're saying.

 6                 THE COURT:  Why shouldn't you do the

 7            same?  And I think, from what I understand

 8            he's saying, is that you don't think you have

 9            to because you already have that information

10            based on your prior -- your prior

11            relationship with the NRA.  Is that what

12            you're saying?

13                 MR. DICKIESON:  Yes, and the fact that

14            they're --

15                 THE COURT:  So why is there a problem?

16                 MR. DICKIESON:  There's no competitive

17            advantage that we get by looking at it

18            whereas if -- if -- we've already seen that

19            the Brewer Law Firm and the NRA have used

20            another client, another major client of

21            Ackerman McQueen, the Chickasaw Nation, and

22            used a document by one of the directors of
```

1           the Chickasaw Nation in the case, and we --

2           we're afraid that they will go and they'll

3           get into our documents, and they'll look more

4           -- for more information about the Chickasaw

5           Nation and start to take competitive --

6           anti-competitive action to take that client

7           away from us.  We're very concerned about

8           that.  We're not trying to take clients away

9           from the NRA.  There's -- there's nothing

10          we're trying to do there.  So it's not a

11          parallel situation.

12               THE COURT:  Let's -- let's cut to the

13          point that what's -- what will apply with

14          regard to confidential information with

15          regard to NRA and Ackerman McQueen will be --

16          so whatever that he -- whatever your -- your

17          client or representatives from Ackerman

18          McQueen view as confidential, they'll have --

19          they will have to sign a document protecting

20          confidentiality, as well as the NRA.  So

21          both.

22               MR. DICKIESON:  That's fine, your Honor.

```
 1              THE COURT:  All right.

 2              MR. DICKIESON:  And what about the

 3         limitations on the Brewer Law Firm?

 4              MR. HUNDLEY:  That's -- that's the real

 5         issue, I think, as to who at the Brewer Law

 6         Firm should be allowed to view the highly --

 7         the highly confidential discovery.  Our

 8         position is we'll wall off from the public

 9         relations unit.  We don't object to that, but

10         any lawyer or legal professional at the

11         Brewer Law Firm -- there's no evidence that

12         those professionals will not abide by this

13         Court's order.  There's no evidence of that,

14         and so they should be allowed to look at it

15         and be bound by it and be required to follow

16         it, and that's -- that's our position.

17              We should -- it shouldn't just be -- I

18         mean, not only should it be Mr. Collins,

19         who's been admitted in this case, but his

20         associate, his legal assistant.  We don't

21         know what the discovery is going to look

22         like.  It could be tremendously voluminous.
```

```
 1              It may require a lot of people to organize it

 2              and review it.  They'll all be bound by that

 3              order.

 4                   MR. DICKIESON:  Your Honor, we don't

 5              have any problem with a wall between Mr.

 6              Bennett and the rest of the firm, and in that

 7              time, Mr. Bennett's side of the wall, his

 8              associate, and his legal assistant.  What

 9              we're concerned about is the public relations

10              unit that is run by Mr. Brewer, and that --

11              that's in a different office.  That's in New

12              York, and Mr. Brewer is in New York.  I don't

13              know where all the public relations people

14              are.

15                   THE COURT:  Does Mr. Brewer practice

16              law?

17                   MR. HUNDLEY:  He does.

18                   THE COURT:  And will Mr. Brewer have any

19              involvement with this case?

20                   MR. HUNDLEY:  He does.

21                   MR. DICKIESON:  And they -- they admit

22              that in their -- their response, that he is
```

1        actually involved in the strategy

2        discussions.  He's the main driving force in

3        this case, your Honor, but he's not pro hac

4        vice because he's got problems with other

5        courts where he has been sanctioned by a

6        court in Texas, and he was denied pro hac

7        vice status by the Eastern District of

8        Virginia.  So that's why he's not here in

9        this case now.

10               MR. HUNDLEY:  That's actually not why

11       he's not here, your Honor.  He's not here out

12       of our ethical concern that he might be a

13       witness, and so rather than move him pro hac

14       vice and -- and deal with that, we took the

15       prudent course of not admitting him pro hac

16       vice, but he still is ethically allowed to

17       participate in the preparation of this case.

18       He's not a member of the trial team.  So his

19       involvement is less, but he's allowed to

20       participate.

21               THE COURT:  But why?  Tell me why?  Why?

22       Why should he?

```
 1            MR. HUNDLEY:  Because he's been working

 2       with the NRA for 30 years, I think.  I'm

 3       sorry, but -- but he has -- he's intimately

 4       familiar with the NRA and the workings -- in

 5       their dealing with Ackerman McQueen.

 6            MR. DICKIESON:  He's been working with

 7       them for about a year and a half, is my

 8       understanding, and he knows the -- Ackerman

 9       McQueen because, as I say, he's the

10       brother-in-law of the CEO and the son-in-law

11       of the former co-CEO of Ackerman McQueen, and

12       his -- his wife -- well, his wife is the

13       daughter and sister of them.  So he is in a

14       family dispute trying to take over the

15       Ackerman McQueen PR business, and he's right

16       in the thick of things.  He's had all of

17       sorts of problems with the -- the Eastern

18       District of Virginia, which they have not

19       denied, in sanction and that was up held in

20       Texas for $173,000 for unethical behavior

21       there.

22            THE COURT:  We will agree that Mr.
```

```
 1              Collins is a very competent attorney in this

 2              matter.  Would you not?

 3                   MR. COLLINS:  I hope so.

 4                   THE COURT:  I hope so.  I hope so, and

 5              I'm going to -- I'm going to grant the

 6              protective order with regard to Mr. Brewer,

 7              and if you believe that, at some point, that

 8              that has an impact on your ability to

 9              litigate this case, then you can come back to

10              this Court and ask the Court to reconsider.

11              But, at this stage, Mr. Brewer will be walled

12              off from any -- any involvement in the case.

13                   MR. DICKIESON:  And the PR unit, as

14              well, your Honor?

15                   THE COURT:  And the PR unit.  That's

16              correct.

17                   MR. HUNDLEY:  And well, just so we're

18              clear, he'll be walled off from the highly

19              confidential --

20                   THE COURT:  That's correct, highly

21              confidential.  That's right.  Absolutely,

22              absolutely.
```

```
 1              MR. HUNDLEY:  Discovery, that's

 2         designated by --

 3              THE COURT:  That's right.  Which then

 4         leads us to -- the next issue is -- with

 5         regard to the ongoing discovery, we have

 6         depositions that have -- have to be held; is

 7         that correct?

 8              MR. DICKIESON:  Yes, your Honor.

 9              THE COURT:  And with regard to this

10         protective order, that revolves that issue.

11         Does it not?

12              MR. DICKIESON:  We were supposed to have

13         a deposition tomorrow.

14              THE COURT:  Yeah.

15              MR. DICKIESON:  I don't think that

16         anyone is going to be ready for that because

17         we had to wait for the results of today, but

18         we -- we don't want any restriction with them

19         dictating when we can take a deposition of

20         whom, and that's what Rule 1 -- 4.1(d)

21         says --

22              THE COURT:  Let's -- let's make that
```

```
 1              clear.  There won't be any restrictions.

 2              You're going to follow the rules, and I don't

 3              think that you're going to have any

 4              discretion in terms of what you would -- the

 5              rules say what they say.

 6                   MR. DICKIESON:  Thank you, your Honor.

 7                   THE COURT:  All right.  Yes, sir?

 8                   MR. HUNDLEY:  Well, again, your Honor, I

 9              mean, we're asking the Court to enter an

10              order requiring them to -- now that they've

11              got their protective order --

12                   THE COURT:  They have to -- well, no

13              question.  You've got to -- you've got to

14              provide your discovery.  From what I

15              understand, you've not provided anything yet;

16              is that correct?

17                   MR. DICKIESON:  No, your Honor.  We --

18              we've fully responded to interrogatories.  We

19              -- we've responded to the document request,

20              but we said we're not turning things over

21              that are confidential until the protective

22              order is in place.
```

```
 1              THE COURT:  Well, that's been resolved.

 2              MR. HUNDLEY:  Right.

 3              MR. DICKIESON:  And so we've already --

 4         my understanding is as of Friday, we're going

 5         to start the rolling process of turning

 6         things over, and we'll have a lot of

 7         documents for them to look at.

 8              THE COURT:  They will comply.  Do you

 9         want a deadline, Counsel?

10              MR. DICKIESON:  Your Honor, I --

11              MR. HUNDLEY:  If they can comply within

12         one week, we can begin scheduling the

13         depositions they're seeking the week after

14         that.

15              MR. DICKIESON:  Your Honor, I would -- I

16         would object.  That's a -- that's a subject

17         for motion to compel, to put a deadline on

18         us.  I think we're acting in good faith.

19         We've not been late with anything, and -- and

20         I think we're going to continue to be acting

21         in accordance with the rules, but I don't

22         think we should be -- have a motion to compel
```

1          decided on the basis of no briefs and -- and

2          nothing -- nothing for us to argue on.

3                    THE COURT:  Yes, sir.

4                    MR. HUNDLEY:  Well, your Honor, we

5          didn't file -- we didn't with file a motion

6          to compel because, one, I know the Court

7          greatly disfavors those.  And the issue

8          holding up the discovery, as I understood

9          it --

10                    THE COURT:  Is the protective order.

11                    MR. HUNDLEY:  -- was the protective

12          order.

13                    THE COURT:  And that --

14                    MR. HUNDLEY:  So with that -- so we were

15          simply waiting for that to be resolved.  My

16          understanding was they could then produce the

17          discovery very quickly.  We're simply asking

18          for the Court to give us a chance to see that

19          discovery before these party depositions take

20          place so that we're properly prepared, and I

21          think we're entitled to ask the Court too.

22          It's equitable.  We've propounded the

1          discovery, and -- and we've litigated the

2          issues, and so we should have that benefit

3          before these witnesses take place.  We're not

4          violating Rule 4.1(d) by doing that, by

5          making that request to this Court.

6              THE COURT:  So when do you think you

7          would be prepared to provide the discovery?

8              MR. DICKIESON:  They've asked for a

9          massive amount of documents.  We're going to

10         start rolling production of it.  My

11         understanding is this Friday, there's going

12         to be, you know, in excess of 1,500

13         documents, 1,500 documents provided, and --

14         and there's going to be discovery all the way

15         in the next few months.  The trial is not

16         until April.  Documents are going to be

17         discovered and found, and it's a process.  I

18         don't want to have an order compelling us to

19         do anything when there's been no motion to

20         compel, and there's no reason for a motion to

21         compel because we're not late.

22             THE COURT:  But you have an ongoing

```
 1          obligation to provide discovery.  So once you

 2          get started, then anything else that comes up

 3          than you simply need to provide the

 4          discovery.  That's -- that's pretty simple.

 5          Is it not?

 6              MR. DICKIESON:  Yes, it is, but this is

 7          -- this is a huge business, and they've got

 8          to look at every cranny.  They're finding

 9          documents.  They're turning it over as they

10          find them, but there's a lot of documents

11          they've requested.  And so to put a timeline

12          that we have to have all of our documents

13          within a week, I don't think that's going to

14          be workable.

15              THE COURT:  I think that's unfair to say

16          "all of the documents."  I'm not going to

17          have all the documents.  The discovery will

18          begin within 30 days, and it will be an

19          ongoing obligation to continue discovery as

20          deemed appropriate.

21              MR. DICKIESON:  Discovery has already

22          begun.  We don't need a 30-day window.
```

```
 1              THE COURT:  Okay.  Well, that's --

 2         that's -- 10 days.

 3              MR. DICKIESON:  We're turning over

 4         documents as they are available.  We have to

 5         have them marked as confidential and things

 6         like that.  That's the process that's between

 7         now and Friday, but we will -- we just -- our

 8         point is that this is not a motion to compel.

 9         They can't compel us to produce things on

10         this -- on this hearing.

11              THE COURT:  You're correct.

12              MR. DICKIESON:  And so I don't want an

13         order saying we -- we got to do something as

14         a result of this hearing.

15              MR. HUNDLEY:  Your Honor, the issue is,

16         I mean, we're asking the Court to tell -- to

17         -- to -- well, what we're really asking the

18         Court to do is to set the deposition schedule

19         for the four witnesses that they've noticed

20         at this point.  One was -- one was noticed

21         for yesterday.  One was noticed for tomorrow.

22         Mr. Dickieson agrees that's just not doable,
```

```
 1              but there are two for next week, Wayne --

 2              Wayne LaPierre and one other individual whose

 3              name escapes me at the moment.  They're not

 4              available next week, right?  They're going to

 5              be in Alaska for the International Rifle

 6              Association.  They'll be preparing -- they

 7              have a -- they'll be preparing for the

 8              National Rifle Association conference, which

 9              is the following week in Alaska.

10                   THE COURT:  So when will they be

11              available?

12                   MR. COLLINS:  Your Honor, we can give

13              them dates.

14                   THE COURT:  Say again?

15                   MR. COLLINS:  We can get them dates

16              probably a couple of weeks right after that,

17              and we'll -- we will check and we'll get back

18              to them.

19                   THE COURT:  Okay.  Is that agreeable?

20                   MR. DICKIESON:  One caveat, your Honor,

21              and that is that we know that the -- with

22              respect to Wayne LaPierre's deposition,
```

 1            they're going to try their best to postpone

 2            and postpone and postpone him.  This Notice

 3            of Deposition has been out there for three

 4            weeks, and we haven't heard anything that's

 5            he's not available.  This is the first we've

 6            heard that, and -- and so I think that what's

 7            going to happen is that there's going to be a

 8            number of reasons -- and they haven't -- they

 9            haven't mentioned that they haven't turned

10            over the documents.  They were talking about

11            rolling production into January of next year

12            for their document production.

13                 And -- and so we're in the same

14            situation.  These are issues outside of the

15            motions of -- we just want -- we just want to

16            make sure they're not dictating to us when we

17            schedule our depositions.  And I appreciate

18            your Honor's help trying to get a schedule in

19            a couple of weeks, but I don't know if that's

20            going to happen, but we want to move forward

21            with the September 5th date for Mr.

22            LaPierre's deposition.

 1              THE COURT:  And he's unavailable because

 2         he's at a conference; is that correct?

 3              MR. COLLINS:  It's the Board of

 4         Directors meeting the following week.  So he

 5         spends the week beforehand getting ready for

 6         it to -- I guess if we got some documents on

 7         Friday, we're not going to get others.  So we

 8         still couldn't properly prepare, but we'll

 9         have them out there in a couple of weeks, and

10         what we'll agree to, your Honor --

11              THE COURT:  So tell me when he will be

12         available for a deposition?

13              MR. COLLINS:  I can check, your Honor,

14         right afterwards, but, let's say, certainly

15         in the next -- end of September, early

16         October.

17              THE COURT:  No.  Let's -- let's do --

18         he's got a Board meeting on the 5th?  Did you

19         say the 5th of September?

20              MR. COLLINS:  No.

21              MR. HUNDLEY:  At the Court's indulgence.

22              (Whereupon the parties spoke briefly

```
 1                among themselves.)

 2                     MR. HUNDLEY:  Your Honor, it's the --

 3                the conference will be, I believe, the 11th

 4                to the 14th of September.  My understanding

 5                is that he could be available the week of the

 6                23rd.

 7                     THE COURT:  Any objection to the 23rd?

 8                     MR. DICKIESON:  It sounds like he's

 9                available on the 5th, your Honor.  The whole

10                notion he's got to go to Alaska to prepare

11                for a conference for a week before doesn't

12                sound -- and they haven't given us notice of

13                that in the prior three weeks.

14                     MR. HUNDLEY:  I mean, we don't have Mr.

15                LaPierre here to confirm with him his

16                availability, either.  So he -- but --

17                     MR. DICKIESON:  My -- my colleague says

18                we'll -- we'll accept the week of the 23rd.

19                     THE COURT:  Week of the 23rd.  Done.

20                Yes, sir.  What's next?

21                     MR. DICKIESON:  I think that's it, your

22                Honor.
```

 1              MR. HUNDLEY:  Well, there are three

 2         other individuals that you noticed.  I mean,

 3         can we just work -- negotiate with -- amongst

 4         ourselves to confer and pick dates for them?

 5              THE COURT:  I think you all can solve

 6         that.

 7              MR. DICKIESON:  Yes.

 8              THE COURT:  You can -- and we have the

 9         order?  Or have you prepared the order?  Or

10         are we --

11              MR. DICKIESON:  We'll have -- we'll have

12         to go back to the office and prepare it to

13         resubmit it, your Honor.

14              THE COURT:  Thank you.  Thank you.

15              MR. HUNDLEY:  Thank you, your Honor.

16

17              (Whereupon the proceedings concluded at

18         12:03 p.m.)

19

20

21

22

```
 1

 2                      REPORTER CERTIFICATE

 3

 4        I, JACQUELINE N. HAGEN, Court Reporter and Notary

 5   Public, certify that the foregoing is a true and correct

 6   transcript of my shorthand notes so taken;

 7        I further certify that I am not a relative or

 8   employee of any attorney or of any of the parties not

 9   financially interested in this action.

10

11                    _____

12                    Jacqueline N. Hagen

13

14   Dated:  September 4, 2019

15

16

17

18

19

20

21

22
```

# EXHIBIT A-7

## *FILED UNDER SEAL*

# EXHIBIT A-8

# *FILED UNDER SEAL*

# EXHIBIT A-9

## *FILED UNDER SEAL*

# EXHIBIT A-10

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: **HON. MELISSA A. CRANE**
J.S.C.

_Justice_

People of the State of NY

-v-

Ackerman McQueen

PART 15

INDEX NO. 451825-19

MOTION DATE _____

MOTION SEQ. NO. 1

| The following papers, numbered 1 to _____ , were read on this motion to/for | |
|---|---|
| Notice of Motion/Order to Show Cause — Affidavits — Exhibits | No(s). _____ |
| Answering Affidavits — Exhibits | No(s). _____ |
| Replying Affidavits | No(s). _____ |

Upon the foregoing papers, it is ordered that this motion is

The Motion is Decided in Accordance with the Accompanying Decision and Order

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: 2-21-2020

_____, J.S.C.
**HON. MELISSA CRANE**

1. CHECK ONE: .................................................... ☑ CASE DISPOSED ☐ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: .........................MOTION IS: ☐ GRANTED ☐ DENIED ☐ GRANTED IN PART ☐ OTHER
3. CHECK IF APPROPRIATE: ............................................... ☐ SETTLE ORDER ☐ SUBMIT ORDER
☐ DO NOT POST ☐ FIDUCIARY APPOINTMENT ☐ REFERENCE

**APP626**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 15
------------------------------------------------------------------------x
PEOPLE OF THE STATE OF NEW YORK,
by LETITIA JAMES, Attorney General of the
State of New York,

                    Petitioner,                  Index No.: 451825/2019

      -against-                       Mot. Seq. No. 001

ACKERMAN McQUEEN and the NATIONAL RIFLE
ASSOCIATION OF AMERICA, INC,
                        Respondents.
------------------------------------------------------------------------x
**MELISSA A. CRANE, J.S.C.:**

       Ackerman McQueen ("AMQ") has provided public-affairs advice and services to the

National Rifle Association of America, Inc (the "NRA") for over thirty years. The two entities

fostered a deep, decades-long collaboration. AMQ entered into third-party contracts and

purchased goods and services on the NRA's behalf. It also deployed the NRA's intellectual

property across media platforms, liaised closely with NRA members and donors, and operated

the NRA's websites that required disclosure of personal information of NRA supporters. AMQ

handled the NRA's public relations strategy, managed branding, and administered the NRA's

digital assets, including NRATV. AMQ often communicated with the public as the face of the

NRA. In these ways, the NRA says AMQ acted as its agent.

       In 2017 alone, the NRA paid AMQ nearly $40 million pursuant to a "Services

Agreement" contract. The Service Agreement contained a confidentiality provision (the

"NDA"). The NDA provision states:

> AMC shall not disclose, directly or indirectly, to any…data, materials
> or information…made known to AMC as a result of AMC's providing
> [contracted-for services] without the prior express written permission
> of the NRA
> (Petition ¶ 22, exh 5).

1

**APP627**

The provision prohibits AMQ's unauthorized disclosure of nonpublic information that the NRA entrusted to AMQ in the course of doing business. Apparently, the Service Agreement's "subpoena response protocol" requires, that, when AMQ receives a subpoena involving NRA-related documents, it will inform the NRA. The NRA can then object, move to quash the subpoena, or review outgoing documents for potential privilege. The Services Agreement also included a Records-Examination Clause that requires AMQ to open its files for the NRA's inspection upon reasonable notice during the contract's term. The Property-Return Clause in the Services Agreement requires AMQ to return the NRA's confidential documents upon the termination of the Agreement.

In 2019, the NRA's relationship with AMQ began to deteriorate. There are now four ongoing litigations between the NRA and AMQ. On April 12, 2019, the NRA filed a lawsuit against AMQ, alleging that AMQ breached the April 30, 2017 Services Agreement. The NRA sued AMQ for specific performance of the Records-Examination Clause. AMQ subsequently threatened a coordinated media "leak" of employee-expense information. In response, on May 22, 2019, the NRA filed its second lawsuit, alleging that the AMQ breached the NDA. Soon after, on June 25, 2019, the NRA terminated the Services Agreement with AMQ.

Petitioner, the Office of the Attorney General of the State of New York (hereinafter, "OAG"), commenced an investigation into the NRA's operation as a not-for-profit entity. New York affords OAG broad discretion to oversee and investigate not-for-profit entities, like the NRA, that solicit donations from the public. OAG started an investigation after a review of the NRA's public reports like IRS Form 990 and CHAR500 official filings, as well as audited financials, unearthed inaccuracies. OAG is concerned about allegations of financial

INDEX NO. 451825/2019

NYSCEF DOC. NO. 45                                                      RECEIVED NYSCEF: 02/24/2020
Case 3:19-cv-02074-G-BK   Document 56   Filed 02/26/20   Page 201 of 217   PageID 1817

improprieties, improper related party transactions between the NRA and its officers and board members, and false or misleading disclosures in its regulatory filings.

On May 3, 2019, OAG issued a document preservation notice to AMQ. On May 16, 2019, AMQ indicated it would cooperate with OAG's investigation and agreed to meet the following week, on May 22, 2019. However, on May 20, 2019, AMQ cancelled the scheduled meeting, explaining that the NRA viewed the meeting as a breach of the NDA. On June 6, 2019, OAG and the NRA discussed the NDA in its Services Agreement. On June 26, 2019, the NRA asserted that it would continue to insist that third-party vendors, like AMQ, notify the NRA in advance so it can review potential disclosures to OAG.

On July 8, 2019, OAG served a subpoena *duces tecum* on AMQ, seeking documents related to the NRA's potential misconduct. On July 12, 2019, OAG and AMQ had another meet and confer to discuss whether AMQ would comply with the subpoena. AMQ, again, indicated that it would comply with the subpoena, but that it had to disclose first to the NRA pursuant to the NDA. On July 31, 2019, OAG received AMQ's initial production in response to its subpoena. Following that, OAG instructed AMQ to withhold future productions if AMQ insisted on disclosing first to the NRA. OAG did not receive any further production. OAG determined that the NRA's involvement in AMQ's subpoena compliance, that the NRA pre-screen all document productions, impeded the investigation. A pre-screen would undermine OAG's ability to protect its investigative sources, and to maintain its confidentiality of investigative theories and progress.

On September 26, 2019, OAG and AMQ met. AMQ reiterated that it would comply with the subpoena, but only after it first presented the documents to the NRA. OAG and the NRA then spoke, on September 27, 2019. The NRA stated that the NDA requires AMQ to obtain the

**APP629**

NRA's written consent before producing documents. The NRA also stated that the documents were protected under attorney-client, attorney work product, common interest, and First Amendment privileges. Subsequently, OAG commenced this special proceeding to compel AMQ to comply with OAG's July 8, 2019 subpoena without the NRA's required preview of responsive documents.

## *Discussion*

The NRA relies on four grounds to argue that it can monitor or preview AMQ's outgoing document production: (1) that the NDA creates a contractual obligation that requires AMQ to seek NRA's consent before disclosing information; (2) attorney-client privilege; (3) work-product privilege; and (4) a First Amendment privilege.[1] The NRA bears the burden to prove the basis for the privilege claims and work-product protection through affidavits or a privilege log. In this case, the NRA has provided both items (see Frazer Aff dated October 23, 2019, nyscef doc no 26, and ex E to Frazer Aff, nyscef doc no 31).

## *Attorney-Client Privilege*

Communications made between counsel and its client in the presence of a third party are not privileged (*People v Harris,* 57 NY2 368, 743 [1982]). However, a public relations firm's involvement does not automatically vitiate the attorney-client privilege (*Pecile v Titan Capital Group, LLC*, 119 AD3d 446, 446-67 [1st Dept 2014]). The attorney-client privilege may apply to communications between an attorney and a public relations firm if the communications are otherwise privileged (*id.*). A party who invokes the attorney-client privilege must show (1) a communication occurred between counsel and client; (2) intended as confidential; and (3) made

---

[1] This court notes that the NRA, in its opposition brief, does not cite to any case-law that would warrant attorney-client privilege or work-product privilege.

**APP630**

for the purpose of providing or obtaining legal advice. The predominant purpose of the communication must involve legal advice (*Gottwald v Sebert,* 58 Misc3d 625, 626-627 [NY County, Sup Ct 2017] *citing to In re Chevron Corp,* 749 FSupp2d 141, 164-65 [United States Dist Ct SDNY 2010]; *Rossi v Blue Cross & Blue Shield of Greater New York,* 73 NY2d 588, 593 [1989]).

For AMQ's communications with the NRA to warrant protection from disclosure as attorney-client privileged information, the NRA must demonstrate either (i) a waiver exception for communications between an attorney and the agent or employee of her or his corporate client; or (ii) a waiver exception for communications between an organization's lawyers and a third party who acts as the "functional equivalent" of the organization's employee (*Safeco Ins. Co. of America v M.E.S., Inc,* 289 FRD 41, 46 [US Dist Ct, EDNY 2011]). For the functional equivalent exception to apply, the third-party must assume the functions and duties of a full-time employee. For an agency exception to apply, the party claiming privilege must demonstrate that it: (1) had a reasonable expectation of confidentiality; and (2) that disclosure to the third party was necessary for the purpose of facilitating legal services to the client (*Gottwald v Sebert,* 58 Misc3d at 632; *Fine v ESPN, Inc.,* 2015 WL 3447690 [US Dist Ct, ND NY 2015]). Courts may make an exception when the third party is an agent of the attorney or client, because, generally, those situations involve an expectation of confidentiality (*People v Osario,* 75 NY2d 80, 84 [1989]). "Necessity" requires that the third-party is integral to serve a specialized purpose in facilitating attorney-client communications. Where a third party's presence is merely useful or convenient, but not "nearly indispensable," the privilege is lost (*Deutsche Bank AG v Sebastian Holdings, Inc.,* 2019 WL 132534 [NY County Sup Ct, 2019]). Courts look at whether a public

5

**APP631**

INDEX NO. 451825/2019

NYSCEF DOC. NO. 45    Case 3:19-cv-02074-G-BK   Document 56   Filed 02/26/20   Page 204 of 217   PageID 1820   RECEIVED NYSCEF: 02/24/2020

relations professional facilitated legal counsel and aided in legal strategy, or if they merely provided public relations advice.

The NRA first argues that it had a special relationship with AMQ that exceeded standard public relations work, and therefore, its communications with AMQ are privileged. The NRA emphasizes its deep, decades-long collaboration with AMQ. AMQ did perform many services for the NRA, including managing media platforms, like the NRA's website, administered NRA TV, handled branding and strategy, and entered into contracts on behalf of the NRA. However, the NRA's continuous and long-lasting relationship with AMQ does not alter what kind of services AMQ provided – specifically, public relations services as a third-party. Never did AMQ assume the functions and duties of an NRA employee. Rather, AMQ acted in its capacity as a public relations firm. Trust and confidence are important aspects to any business relationship. However, AMQ had clients aside from the NRA. AMQ also has its own employees and legal counsel. That AMQ developed and administered the NRA's website and NRATV, does not render AMQ a "translator" essential for the NRA to understand its lawyer's advice about the Second Amendment. AMQ does not speak a "foreign language," like accountants, so it does not perform translator functions. Rather, AMQ simply acted as a public relations firm when it appeared on TV on behalf of the NRA, and operated the NRA's website. Therefore, the functional equivalent exception does not apply to AMQ's communications with the NRA.

The NRA points to former NRA spokesperson, Dana Loesch ("Loesch"), as an example of how AMQ, it claims, serves as a necessary conduit to facilitate legal strategy under the agency exception (Tr. dated October 31, 2019, p. 14, lines 17-21). AMQ negotiated Loesch's contract. Loesch was an AMQ employee until recently, before AMQ and the NRA parted ways. Loesch appeared on television to iterate the NRA's position on Second Amendment legal issues. That

**APP632**

Loesch repeated the NRA's legal stance on the Second Amendment does not mean she played a

necessary role in conveying legal strategy from the NRA's lawyers. Although Loesch's presence

on television proved useful to relay opinions on legal issues, it certainly was not necessary. The

NRA, or one of its employees, could tell Loesch what to say without ever providing legal advice

to AMQ. Further, Loesch, as a spokesperson, operated in the public sphere, and therefore, it

would be unreasonable to expect confidentiality under the circumstances. The NRA cannot use

its publicist as a sword and a shield, for public outreach when it feels so inclined, and, in other

instances, remain tucked away from public view.

Next, the NRA argues that the legal advice that John Frazer ("Frazer"), the Secretary and

General Counsel of the NRA, provided via email to AMQ employees, are privileged (Frazer Aff,

attached to Memo of Law in Opp, ¶ 5).

a. On February 7, 2018, I provided legal advice by email to Nadar Tavanger, an
   Ackerman employee, regarding accounting for charitable expenditures
   relating to NRATV.
b. On February 7, 2018, I provided legal advice by email to multiple recipients,
   including NRA employees and Ackerman employees, regarding messaging
   and disclaimers pertaining to a Carry Guard informercial and promotional
   emails.
c. On July 12 and 13, 2017, I provided legal advice by email to multiple
   recipients, including NRA employees and Ackerman employees, regarding
   specific provisions of contracts with NRA firearms instructors for a program
   jointly developed by Ackerman and NRA staff on behalf of the NRA.
d. On December 5, 2016, I provided legal advice via email addressed jointly to
   Clay Turner, an Ackerman employee, and Laurie Luebbert, an NRA employee
   regarding donor privacy issues pertaining to an upcoming article in a
   magazine jointly produced by Ackerman and NRA staff on behalf of the
   NRA.
e. On October 28, 2016, I provided legal advice by email to multiple recipients,
   including NRA employees and Ackerman employees, regarding copyright
   issues pertaining to the potential use of archival NRA film footage that could
   be made available to Ackerman for NRA projects;
f. On September 25, 2015, as part of an email chain involving Mr. Tavanger,
   NRA assistant general counsel Skipp Galythly, and the NRA's managing
   director of Public Affairs, Andrew Arulanandam, I provided legal advice
   regarding a proposed email communication to NRA supporters.

APP633

(Frazer Aff, attached to Memo of Law in Opp, ¶ 6 [a] − [f]).

In examples [b]-[f], Frazer gave advice to NRA employees in the presence of AMQ employees. All of the examples concern AMQ's public representation of the NRA, that, ultimately, reflect the NRA's legal stance on intellectual property and copyright issues, Second Amendment matters, and donor privacy issues. Yet, merely because AMQ conveyed the NRA's position on legal issues does not necessitate that the NRA provide AMQ employees with legal advice in the presence of NRA employees. Frazer could have advised NRA employees, who then could have directed AMQ how to present these issues to the public.

Frazer does not specifically identify any legal advice in [a]-[f] that required the AMQ's direct assistance (*see, e.g.*, *In re Grand Jury Subpoenas Dated Mar. 24, 2003,* 265 FSupp2d 321, 323 [SDNY 2003] [public relations advice not privileged where it did not assist directly with a lawyer's public advocacy on behalf of a client]; *see also, Calvin Klein Trademark Trust v Wachner,* 198 FRD 53, 54-55 [US Dist Ct SDNY 2000] [counsel's disclosure to hired public relations firm waived any privilege for communications made for the purpose of seeking legal advice because the firm provided ordinary public relations advice]). *Gama Aviation v Sandton Capital Partners* is inapposite to this case, because Frazer did not provide legal advice in the context of trial preparation [99 AD3d 423, 343 [2012] [plaintiff did not waive attorney client privilege when it copied documents to its agent during trial preparation]). Nor is this case akin to *Bew Parking Corp v Apthorp Associates, LLC,* where privilege extended to a management company that acted as an agent for defendant parking garage, but who had no employees of its own and, instead, relied on agents it hired via contracts, 2015 WL 1306994 [NY County, Sup Ct 2015]).

**APP634**

In addition, Frazer never states why he would expect communications that he had with NRA and AMQ emails to remain confidential. Accordingly, this court finds that communications [b]-[f] in Frazer's affidavit are not privileged. However, the court orders an *in-camera* review of communication [a] to determine whether it was necessary for Frazer to email Nadar Tavanger, an AMQ employee, in order to facilitate legal services to the NRA.

## Work Product Privilege and Common Interest Privilege

The work product doctrine protects materials that counsel prepared in anticipation or litigation or for trial. The privilege seeks to preserve a zone of privacy for a lawyer to prepare and develop legal theories and strategies "with an eye toward litigation" (*In re Chevron Corp,* 749 FSupp2d 141, 165 [United States Dist Ct SDNY 2010]). The privilege does not protect efforts that include lobbying, media and public relations, and fundraising in a litigation context (*id.* at 143). The common interest privilege applies to communications between counsel and parties as to legal advice in reasonably anticipated litigation where the joint parties have a common interest (*Gipe v Monaco Reps, LLC,* 2013 WL 3389345 [NY County, Sup Ct 2013]). It does not protect business or personal communications (*id.*).

Frazer's affidavit states that the NRA and AMQ shared common legal interests in connection with multiple lawsuits, including (i) a lawsuit that Anish Kapoor, a sculptor, filed in 2018 as to the depiction of one of Mr. Kapoor's works in an NRA video, that AMQ produced; (ii) a New York Department of Financial Services ("DFS") investigation, related to Carry Guard; and (iii) a lawsuit that the NRA commenced against affinity-insurance broker, Lockton Affinity, LLC, where AMQ received a third-party subpoena (Frazer Aff, attached to Memo of Law in Opp, ¶ 8). AMQ's responsive documents are protected work-product only to the extent those documents revealed the NRA's legal strategy about conduct of the three litigations mentioned.

9

**APP635**

Accordingly, the court orders an *in-camera* review of any documents that NRA's legal counsel

prepared in anticipation for litigation in those three lawsuits, or in anticipation of litigation, to the

extent that they are relevant to OAG's investigation. That includes any meeting notes from

NRA's counsel or from AMQ's counsel with regard to Carry Guard, or that involve either the

NRA or AMQ providing or requesting legal advice.

<em>First Amendment</em>

The NRA further asserts that AMQ's documents fall under the First Amendment

privilege. OAG does not seek bulk information of donor names and information in its

investigation. Rather, OAG wants information on party-related transactions. The NRA does not

allege the specific ways that, should OAG receive donor information, those donors would face

physical threats or great financial harm. Rather than provide concrete examples of the

harassment and retaliation the donors' might face should the NRA reveal their identities, the

NRA speculates that there are many people in states like New York "who bear animosity toward

the NRA and its political speech" (Shropp Aff, attached to Memo of Law in Opp, ¶ 3).

*NAACP v State of Ala ex rel. Patterson,* that the NRA cites to, is inapposite (337 US 449

[1958]). In *NAACP*, the Supreme Court found that the state mandated public identification of all

rank-and-file members of a group had no legitimate government purpose, and that member

disclosure could cause economic reprisal and public hostility. On the other hand, in this case,

petitioner's need for AMQ's responsive documents, without the NRA first screening those

documents, is compelling. Public policy encourages law enforcement to investigate facts fully

and fairly. The NRA's preview of these documents might compromise the integrity of the

investigation and weed out documents that AMQ would otherwise produce. The NRA's

concerns, that AMQ might inadvertently disclose donors' names, does not override OAG's

10

**APP636**

authority to conduct a confidential law enforcement investigation without interference or monitoring.

*Non-Disclosure Agreement*

Similarly, to allow not-for-profit entities, like the NRA, to shield its conduct through use of an NDA would frustrate OAG's regulatory and law enforcement duties, and its oversight of charities (*S.E.C. v Jerry T. O'Brien, Inc.,* 267 US 735, 743 [1984] [SEC not required to provide notice to a "target" of an investigation of issuance of subpoenas to third parties because the a notice requirement would impede SEC investigations, potentially discourage compliance of subpoena recipients, and lead to document destruction or alternation]). The NRA, through its use of a private contract, cannot demand to preview responsive documents related to a law enforcement investigation. Agreements against public policy are illegal, void, and unenforceable (*see, Crosby v Am Media, Inc.,* 197 FSupp3d 735, 742 [E.D. Pa. 2016] [settlement agreement provision preventing signatories from disclosing information about crimes to law enforcement unenforceable and against public policy]; *c.f. S.E.C. v Jerry T. O'Brien, Inc.,* 467 US 735, 743 [1984]). Accordingly, the NRA cannot use the NDA from its Services Agreement as a shield to prevent AMQ from answering OAG's subpoena in full.


Accordingly, it is

**ORDERED** that the court grants OAG's petition, as set forth in this decision; and it is further

**ORDERED** that the court orders an *in camera* review of communication [a] from the Frazer affidavit, in addition to any documents that NRA's legal counsel prepared in anticipation of litigation to the extent they are relevant to OAG's investigation, and otherwise compels AMQ

11

**APP637**

to comply with OAG's July 8, 2019 subpoena without allowing the NRA to preview and approve any information released in compliance with the subpoena, and without delaying or altering any aspect of that compliance to conform to any purported obligations under the NDA within the NRA Services Agreement.

Dated:     2-21-2020

ENTER:

_____
HON. MELISSA A. CRANE, J.S.C.

**HON. MELISSA A. CRANE**
.J.S.C

12

**APP638**

# EXHIBIT A-11

# *FILED UNDER SEAL*

# EXHIBIT A-12

# *FILED UNDER SEAL*

# EXHIBIT A-13

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR THE CITY OF ALEXANDRIA

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | **Case No. CL19001757** |
| ) | |
| ACKERMAN MCQUEEN, INC. ) | |
| ) | |
| **and** ) | |
| ) | |
| MERCURY GROUP, INC. ) | |
| ) | |
| **Defendants.** ) | |

### ORDER

UPON CONSIDERATION of Defendants' Motion to Modify the Protective Order filed in this matter, any opposition by Plaintiff, and a finding of good cause to support it, IT IS HEREBY ORDERED that the Protective Order is modified by amending the definition of "Action" in Section 2.1 as follows:

> Action: The lawsuits entitled *NRA v. AMc, et al.* filed in the Circuit Court for the City of Alexandria with case Nos. CL19001757 and CL19002067, and the lawsuit entitled *NRA v. AMc, et al.* filed in the Northern District of Texas, Dallas Division, with case No. 3:19-cv-02074-G.

The Court FURTHER ORDERS that any materials from the Virginia actions used in the Texas matter shall receive the same protections as set forth in this Court's Protective Order, absent an order from this Court or from the Northern District of Texas.

So Ordered this ʒı day of February, 2020.

_____
The Hon. Nolan B. Dawkins
Alexandria Circuit Court

A Copy Teste:

J. Greg Parks, Clerk

By _____, Deputy Clerk

Certified this 25 day of Feb. 2020

**APP761**

APP762

SEEN AND AGREED:

David H. Dickieson (VA Bar #31768)
SCHERTLER & ONORATO, LLP
901 New York Avenue, NW, Suite 500
Washington, DC 20001
Telephone: 202-628-4199
Facsimile: 202-628-4177
ddickieson@schertlerlaw.com

*Counsel for Defendants*

SEEN AND OBJECTED TO FOR THE REASONS STATED AT THE FEBRUARY 6, 2020
HEARING AND ON THE BASIS THAT THIS COURT HAS NO JURISDICTION OVER
THE USE OF MATERIALS PRODUCED IN THE VIRGINIA ACTION IN THE TEXAS
ACTION. THE COURT SHOULD DELAY ANY ACTION ON AMENDING THE
PROTECTIVE ORDER IN THIS CASE UNTIL A PROTECTIVE ORDER IS ENTERED BY
THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS. PLAINTIFF
FURTHER OBJECTS TO THE APPLICATION OF THE "HIGHLY CONFIDENTIAL"
DESIGNATION IN THE TEXAS ACTION. ANY MATERIALS MARKED "HIGHLY
CONFIDENTIAL" IN THE VIRGINIA ACTION SHOULD BE DESIGNATED ONLY AS
"CONFIDENTIAL"FOR PURPOSES OF THE TEXAS ACTION

James W. Hundley (VA Bar No. 30723)
Robert H. Cox (VA Bar No. 33118)
BRIGLIA HUNDLEY, PC
1921 Gallows Road, Suite 750
Tysons Corner, VA 22182
jhundley@brigliahundley.com
rcox@brigliahundley.com

*Counsel for Plaintiff*

APP763

# EXHIBIT A-14

## *FILED UNDER SEAL*