IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § |
| Plaintiff and Counter-Defendant | § § |
| and | § § |
| WAYNE LAPIERRE, | § § |
| Third-Party Defendant, | § Civil Action No. 3:19-cv-02074-G § § |
| v. | § § |
| ACKERMAN MCQUEEN, INC., | § § |
| Defendant and Counter-Plaintiff, | § § |
| and | § § |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG, | § § § § § |
| Defendants. | § § |

**PLAINTIFF NATIONAL RIFLE ASSOCIATION OF AMERICA'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM <u>DEFENDANTS AND MOTION FOR SANCTIONS</u>**

            **BREWER, ATTORNEYS & COUNSELORS**

            Michael J. Collins, Esq.  (TX Bar No. 00785493)
            mjc@brewerattorneys.com
            Jason C. McKenney, Esq. (TX Bar No. 2407024)
            jcm@brewerattorneys.com
            1717 Main Street, Suite 5900
            Dallas, Texas 75201
            Telephone: (214) 653-4000
            Facsimile: (214) 653-1015

            **ATTORNEYS FOR PLAINTIFF COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................................1

II. ARGUMENT ............................................................................................................................1

        A.      AMc's Arguments That The Requests Are Overbroad and Burdensome Have No Merit ..................................................................................................1

        B.      AMc's Proposed Temporal Scope of Discovery Is Has No Merit..........................4

        C.      AMc's Opposition Only Confirms Why The Motion To Compel Should Be Granted..................................................................................................................5

        D.      The Virginia State Court Has Complicated Use Of A Protective Order ...............10

III. CONCLUSION......................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brady v. Klentzman*,
    515 S.W.3d 878 (Tex. 2017)..................................................................................................8

*Gondola v. USMD PPM, LLC*,
    223 F. Supp. 3d 575 (N.D. Tex. 2016) ...................................................................................3

*Heller v. City of Dallas*,
    303 F.R.D. 466 (N.D. Tex. 2014) ...........................................................................................6

*Hickman v. Taylor*,
    329 U.S. 495. (1947)...............................................................................................................5

*Lee, Inc. v. Flagstaff*,
    173 F.R.D. 651 (D. Mass. 1997).............................................................................................6

*McLeod, Alexander, Power & Apffel, P.C. v. Quarles*,
    894 F.2d 1482 (5th Cir. 1990) ................................................................................................5

*Metro. Life Ins. Co. v. Dailey*,
    No: 3:12-cv-4174-G-BN, 2014 WL 12585666 (N.D. Tex. May 15, 2014).............................5

*Mueller v. Walker*,
    124 F.R.D. 654 (D. Or. 1989).................................................................................................5

*Nexium Skincare v. Olson*,
    No. 3:16-cv-1217-B, 2017 WL 277634 (N.D. Tex. Jan. 20, 2017).........................................3

*Tronfeld v. Nationwide Mut. Ins. Co.*,
    636 S.E.2d 447 (Va. 2006)......................................................................................................8

**Statutes**

Real Estate Settlement Procedures Act.............................................................................................5

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)....................................................................................................................8

Fed. R. Civ. P. 26(g) ........................................................................................................................2

Federal Rule of Evidence 406..........................................................................................................8

I.

**PRELIMINARY STATEMENT**

The central issue presented in the NRA's Motion to Compel ("Motion," or "Mot." ECF Nos. 47-48) is whether AMc has fulfilled its discovery obligations when responding to the NRA's requests for production of documents.[1]  For the reasons explained in this reply and in the NRA's opening brief, the Court should disregard AMc's Opposition ("Br.") and grant the Motion and award sanctions because AMc's opposition does not present any meritorious issues.

II.

**ARGUMENT**

A.  **AMc's Arguments That The Requests Are Overbroad and Burdensome Have No Merit**

AMc rests its overbreadth and burden challenges on the NRA's use of one word and one phrase—"all" and "relating to."[2]  In general, dictionaries define "relate" as "to show or establish logical or causal connection."  Thus, it is reasonable to use "relating to" in a document request, because the phrase provides a "logical or causal" connection to the documents sought.[3]  Notably, AMc used similar verbiage in its discovery requests, embedding "relating to" into the defined term "concerning" in a subpoena[4] and using "relating" and variants *roughly 90 times* out of 177 requests

---

[1] Unless defined herein, the reply brief uses the same defined terms as the Motion.

[2] Br. ¶¶ 21-23.

[3] Merriam-Webster Online Dictionary, last visited on Dec. 15, 2019, available at: https://www.merriam-webster.com/.

[4] *See* Subpoena to Forensic Risk Alliance § II, ¶ 17, attached hereto as Ex. B.

1

for production.[5] AMc's attempt to turn basic English language into a justification to avoid producing responsive documents should not be tolerated.

AMc likewise overstates the significance of the use of the word "all" in the NRA's discovery requests—again a term that AMc liberally uses in its own.[6] The suggestion that by the use of the word "all," the NRA requested or wants each and every document spanning the decades-long relationship between AMc and NRA is ludicrous. To the contrary, the NRA limited the temporal scope of discovery from January 1, 2015, to the present—the same time period used in the Virginia litigation[7] In addition, the very nature of the Requests limits their breadth. The NRA expects AMc to comply with the Federal Rules of Civil Procedure and to conduct a reasonable inquiry for documents responsive to the NRA's requests. *See* Fed. R. Civ. P. 26(g).

AMc next claims they have suffered an even greater burden because they have collected and produced a lot of documents, citing various statistics. However, for the NRA/AMc litigation, the NRA has collected more documents, from more custodians, and from more data sources: over 6.3 million mostly irrelevant documents from 72 potential custodians' emails, file shares, drop boxes, laptops, and personal devices.[8] While the parties' document collection efforts have been significant, that fact alone does not render AMc's burden undue as the collections are reasonable for this complex case, one in which AMc filed multiple counterclaims.[9]

---

[5] *See generally* Defs'/Counter-Plf. Ackerman McQueen, Inc.'s First Req. For Produc. Of Documents To Pls./Counter-Def., attached hereto as Ex. C. Variants included "relate" or "related."

[6] Br. ¶¶ 24-25; *See* Ex. B at pp. 5-6, where every request begins with "all."

[7] Plfs.' Second Set of Req. for Produc. To Defs.' at p. 9 ("**Time Period.** Unless otherwise noted, the relevant time period is January 1, to present.") (emphasis in original) (Ex. D).

[8] *See* McKenney Decl. (Ex. A). The NRA has also produced more documents (29,000) and more pages (roughly 79,000) than AMc, further undermining any claim of undue burden by AMc.

[9] ECF No. 31, Defs.' Am. Answer and Defs.'/Counter-Plfs'. Ackerman McQueen, Inc.'s Am. Countercl. and Third-Party Compl. ¶¶ 119-185.

AMc's reliance on *Nerium* and *Gondola* does not support their burden and overbreadth arguments and, indeed, support the NRA.[10]  In *Nerium*, the court did ***not*** quash a document request on overbreadth grounds.  Instead, the court ***sustained*** a request for "***all*** documents relating to the possibility of selling [the product at issue]" as relevant and proportional to the needs of the case, although narrowed it at the margins.[11]  In *Gondola*, the court sustained objections to one of several "blockbuster" requests of incredible breadth, such as "all documents which evidence, describe, concern, or otherwise relate to the allegations in [the] Complaint."[12]  AMc has no proof of a similar request here and, thus, has failed to discharge its burden to establish its claim of undue burden.

Similarly, AMc mischaracterizes the NRA's discovery requests to create the false impression that **Request No. 46** seeks "40 *plus* year[s] of documents."[13]  AMc neglects to account for the fact that the NRA's time period for discovery spans only January 1, 2015, to the present.[14]  In fact, in that limited time period, No. 46 reasonably seeks documents about the nature of AMc's relationship with third-party firms specializing in viewership analytics and their attendant work product.  The remainder of AMc's complaints are a litany of hypotheticals untethered to the facts and predicted on the mistaken belief that the NRA seeks 40-years of documents.

---

[10] Br. ¶ 19.

[11] *Nexium Skincare v. Olson*, No. 3:16-cv-1217-B, 2017 WL 277634, *5-7 (N.D. Tex. Jan. 20, 2017).

[12] *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 586 (N.D. Tex. 2016). The court also took the unremarkable step of, unlike the situation here, rejecting a request for "all documents not previously produced that support, contradict, or otherwise relate in any way to any of the allegations you have made in this lawsuit." *Id.*  AMc, as before, has no proof of such a requests.

[13] Br. ¶¶ 21-23 (emphasis in original).

[14] Mot. at 4-8 (ECF No. 48) & (ECF No. 48-1 ¶ 28, p.8).

B.       **AMc's Proposed Temporal Scope of Discovery Is Has No Merit.**

AMc's time period objection is disingenuous and should be rejected out of hand. AMc overlooks the fact that the period between January 1, 2015, to the present is the exact temporal scope of discovery from related Virginia litigation.[15] It also ignores the FAC's allegations of fraudulent financial conduct and NRATV fraud that began in at least in 2006 and continued through 2019. For the years AMc wants to suppress discovery (2006-2007), the FAC's well-pled complaint alleges facts that would give rise to liability, including knowing misrepresentations from former AMc CEO Angus McQueen made in 2016, meetings in 2017 where AMc knowingly misled the NRA about its actual viewership, and continuous financial fraud.[16] *AMc addresses none of this*.

Regardless, referencing **Request No. 17**, AMc claims undue burden based on producing four years of backup documentation for amounts they fraudulently charged the NRA. In other words, for some reason AMc does *not* want to produce documents integral to their defense. Regardless, AMc's *ignores that the Virginia court recently ordered AMc to provide this very information in an interrogatory response*, which necessitates review of the backup documentation in order to fully respond.[17] These are some of the most relevant documents to the NRA's financial fraud claim, which turns on AMc's failure to keep reasonable backup documentation and to possess substantiation for their invoices, per the parties' contract and statements from AMc

---

[15] *See supra* note 7.

[16] FAC ¶¶ 25-26

[17] Pls.' Memo. of Law in Sup. Of Mot. to Compel Suppl. Interrog. To Defs. and Mot. for Sanctions, dated Jan. 14, 2020, at pp. 8-9. Attached hereto as Ex. F. Transcript of Hearing, dated Feb. 6, 2020 at 104-115 (Ex. G)

4

executives.[18] That AMc has provided some *invoices* is irrelevant to their ultimate refusal to produce the backup *behind all of them*.

Finally, AMc erroneously contends the "only" cases the NRA relied on about the temporal scope of discovery involved those of "employment discrimination and retaliation."[19] The truth is the decisions cited in the Motion cast a wide net, and involve antitrust, employment discrimination, employer retaliation, personal injury, racial discrimination, the Real Estate Settlement Procedures Act, and unlawful termination.[20] Contrary to AMc's suggestion, this plethora of claims most certainly can be proved by "circumstantial evidence" arising over a period "over years."[21]

C.  **AMc's Opposition Only Confirms Why The Motion To Compel Should Be Granted**

AMc misapprehends the law of discovery. The rules governing discovery "are to be accorded a broad and liberal treatment."[22] Consistent with that mandate, in the Fifth Circuit, "the party resisting discovery must show specifically how each request is not relevant or otherwise objectionable," like claims of overbreadth, vagueness, or burden.[23]

**Request Nos. 31:** AMc insists that relevant documents about the creation, development, and launch of NRA present an undue burden. First, AMc makes the unsupported and incorrect claim that NRATV began in 1990. To the contrary, AMc's counterclaim states that "2016"

---

[18] FAC ¶¶ 119-151.

[19] Br. ¶ 27

[20] Mot. at pp. 8-12.

[21] Br. ¶ 27.

[22] *Hickman v. Taylor*, 329 U.S. 495, 507-08. (1947).

[23] *Metro. Life Ins. Co. v. Dailey*, No: 3:12-cv-4174-G-BN, 2014 WL 12585666, *1 (N.D. Tex. May 15, 2014) (relying on *McLeod, Alexander, Power & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990); *accord Mueller v. Walker*, 124 F.R.D. 654, 656 (D. Or. 1989). As the above authorities make clear, AMc must submit proof to support its burden allegations and, thus, paragraphs 32-33 of the Opposition should be disregarded as lacking proof.

5

represented the "NRATV Official Launch," as confirmed by reputable news outlets.[24]  Nor does AMc need to produce documents "back in the 1990s" due to the 2005-present discovery period.

Finally, AMc engages in obfuscation.  At first, AMc *refused* to produce *any* documents.[25] Now they say in an obtuse manner "the only documents within this scope relate to the name and platform change of NRATV."  Documents about AMc's beliefs about NRATV's potential success, how to finance it, and launch planning fall, as do others, clearly are relevant and within the scope. AMc's unconfirmable assurance that all relevant documents "are all captured by other requests discussed herein" is more improper evasion and obscuring of the precise documents they withhold.[26]

**Request No. 32:** AMc plays hide the ball.  As before, they claim, with no proof, that all relevant documents "relate to the name and platform change of NRATV in 2016, which Defendants have agreed to produce."  The Request, however, seeks documents far different than what AMc says it will produce.  Specifically, the Request seeks documents about meetings between Angus McQueen (AMc) and Wayne LaPierre (NRA) about "the creation, development, and launch of NRATV," such as the 2016 discussions described in paragraphs 25-26 of the FAC. AMc fails to discharge their burden of proof for their self-serving claim that "documents relating to representations or knowledge concerning financial viability, financing NRATV, or likelihood

---

[24] AMc Original Ans. And Countercl. And Third-Party Comp, ECF No. 12, ¶ 21 (Ex. I); Yahoo News, "The Precipitous Collapse of NRATV," dated Nov. 15, 2016 (reporting that "NRATV launched in 2016") (Ex. H).

[25] ECF No. 48-2 at pp. 18-19.

[26] Br. ¶ 34. *Lee, Inc. v. Flagstaff,* 173 F.R.D. 651, 656 (D. Mass. 1997) (the responding party must make statements that are "definite in scope, time, place or manner" if they elect to respond in part); *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) (statements that make "it impossible to know whether information has been withheld and, if so, why" are improper because they obscure the conduct of the responding party and cause plaintiffs to expend valuable resources to truly understand them).

of success are all captured by other requests discussed herein" and would be "produced."[27]  This gamesmanship frustrates the NRA's search for relevant documents and obscures what AMc has withheld from a very relevant request.  This Request embodies AMc's discovery abuses and the need for the Court to grant to Motion and award sanctions to deter further misconduct.

**Request No. 34:**  Once again, AMc opts for more evasion.  In its initial response, AMc referred back to its response to Request No. 33.  But No. 33 concerns "financial projections, estimates, forecasts, and/or predictions concerning NRATV," while No. 34 seeks production of the ***communications based*** on the information from No. 33.[28]  Therefore, AMc cannot simply refer back response to No. 33, as the two requests seek different types of documents.  Here too, the Motion should be granted and sanctions imposed.

**Request Nos. 35-36, 51:**  AMc's claim that the phrases "financial valuation," "financial value," and "financial performance" are so vague to justify failing to comply that it lays bare their improper obfuscation and utter disregard for discovery process.  Simply put, AMc cannot escape its discovery obligations with feeble vagueness objections or hypothetical definitions of "value," as here.[29]  A reasonable lawyer understands these terms, and if AMc was truly as befuddled as it claims to have been they should not have tried so hard to avoid a conference.[30]  As to No. 51, a "financial valuation" is *not* the same as one of the types of forward-looking documents requested in No. 33.  The Court should grant the Motion on all three Requests and award sanctions.

**Request No. 37:**  AMc twists a Request for documents on "commercial sponsorships" into one for "sponsorships" from "a mainstream network" like "NBC."  The most reasonable

---

[27] Br. ¶ 34.

[28] ECF No. 48-2 at pp. 19-20

[29] Br. ¶ 36

[30] Mot. at p. 19; 48-3—48-5

7

interpretation of "commercial sponsorships" are sponsorships from donors engaged in commerce. This is what the NRA intended when it used the phrase. The Court should grant the Motion.

**Requests Nos. 41-43:** The NRA contends that many of the prior digital media campaigns that AMc used to induce the NRA into investing in NRATV were abject failures. Just like NRATV, those campaigns were shut down due to general ineffectiveness, high costs, and AMc's reluctance for transparency and providing meaningful performance/viewership data. As alleged in the FAC, ACSF/Clean Skies was a former AMc client that had similar experiences to NRATV.[31] The Requests are reasonably calculated to understand how the ACSF/Clean Skies digital media project transpired and then failed, and, therefore, would tend to show that AMc ***knowingly*** made false statements about NRATV discussed in the FAC. Second, the Request would illuminate whether AMc made similar mistakes with ACSF/Clean Skies as with the NRA. ***Corroborative*** proof of a pattern of malfeasance could admissible under Federal Rule of Evidence 406.[32]

Finally, the Requests are relevant to AMc's counterclaim—in particular their request for damages based on reputational harm.[33] If the documents provided a digital media failure and tends to support its NRATV fraud claim, then such evidence would be relevant to AMc's ability to recover damages.[34] Simply put, by seeking reputational damages, AMc opened the door to reputational discovery. The Requests are reasonably calculated to seek documents that will allow the NRA to defend itself and for an evaluation of AMc's *reputation* with their former clients.[35]

---

[31] FAC ¶ 43.

[32] Fed. R. Civ. P. 26(b)(1) (to be discoverable, information "need not be admissible").

[33] Am. Answer and Def./Counter-Plf. Ackerman McQueen, Inc.'s Am. Countercl. and Third-Party Compl., ECF No. 31 ¶¶ 7-8, 118-124. (Ex. I).

[34] *See Brady v. Klentzman*, 515 S.W.3d 878, 886 (Tex. 2017); *Tronfeld v. Nationwide Mut. Ins. Co.,* 636 S.E.2d 447, 450 (Va. 2006).

[35] The discovery period for ACSF may need adjustment to the time of the AMc relationship.

**Request No. 46:**  Briefly, the Request is relevant because work with or from potential third-party vendors about NRATV could reasonably involve topics like viewership or financial projections, which AMc concedes are relevant.  The Court should compel a complete response.

**Request No. 47:** This Request seeks documents about representations made by AMc to the NRA regarding NRATV viewership and AMc's internal work behind or in support of those representations.  It is hard to envision a more relevant topic than the alleged misrepresentations to the NRA.[36]  At first, AMc's refused to respond fully and included s stock commitment to produce documents "relating to viewership analytics of NRATV."[37]  This is a quintessential discovery obstruction: the NRA does not know if AMc is withholding documents and is left to unfair guesswork, a problem particularly acute due to AMc's refusal to meet-and-confer.[38]

**Request Nos. 48-49:**  Pursuant to these Requests, the NRA sought documents about "unique" viewership metrics for NRATV, meaning data estimating the *distinct* number of individuals who watched NRATV.  AMc made an incomplete response and instead offered to only "engaged" viewer data.  Unlike distinct or unique views that represents an opaque combination of less-valuable "total" (or non-disaggregated views), plus less-valuable short-term views.[39]

In truth, no doubt exists that AMc knows what "unique" views means.  It is defined over multiple paragraphs in the FAC[40] and is an industry standard metric that one can easily research on Google.[41]  AMc's "I don't know what it is" objection is belied by the fact they have indicated

---

[36] FAC ¶¶ 26-36, 137-142

[37] ECF No. 48-2 at p. 24.

[38] ECF Nos. 48-3—ECF 48-5; ECF No. 48 at p. 19.  *See also* Ex. E.

[39] FAC ¶¶ 34

[40] FAC ¶¶ 30, 33.

[41] Sue Smith, "Google Analytics: Page View Vs. Unique Views," azcentral.com ("[U]nique page views are among the most valuable analytics information types to understand if you want to

one defense in this case will be that estimating "unique" viewer numbers for NRATV was impossible due to the format of platform.[42] The Court should grant the Motion and sanction AMc.

**The Remaining Requests:**  The NRA stands on the arguments made in its opening brief with respect to Requests No. 1, 2, 4, 5, and 64.[43]

**D.**     **The Virginia State Court Has Complicated Use Of A Protective Order**

Two significant procedural issues are ripening for judicial resolution.  First, at AMc's request and over the NRA's objection, the presiding judge in Virginia amended that case's protective order to authorize all documents for use here.  In doing so, the court inadvertently issued an ultra vires order that likely suffers from a jurisdictional defect—for example, a document designated confidential in Virginia will arguably lose that character in federal court in Texas.[44]

Second, AMc submitted as Exhibit A to its Opposition a proposed comprehensive protective order for *which they did not file a motion or brief with this Court and thus violated the Local Rules*.[45]  The NRA also remains concerned about AMc's continued insistence that counsel William Brewer III not have access to materials designated "highly confidential" by AMc in Virginia on the pretext that Mr. Brewer and the small public relations team at his firm "competes" with AMc.  Accordingly, the NRA intends to file, in accordance with the Local Rules, a brief opposing the AMc protective order, submit an alternative, and address the merits of the issues.

---

gain a clear picture of how your site is performing. . . . With unique page views, you eliminate the factor of multiple views of the same page in the same session.").

[42] Reply In Support of Mot. To Quash Third Party Subp., ECF No. 5 at p. 4 (arguing that "measurement" of "unique" viewership was impossible due to the structure of NRATV) (Ex. J).

[43] Mot. at 15-17.

[44] Unsigned but Granted Order, dated Feb. __, 2020; Ex. G at pp. 150-172.

[45] *Id.  See* ECF No. 51 at 31 (Exhibit A, Disputed Proposed Protective Order).

III.

CONCLUSION

For all the reasons stated above and in the opening brief, the NRA respectfully requests the Court grant the relief requested in the Motion to Compel in its entirety and grant the NRA all appropriate relief.

Dated:  February 26, 2020                              Respectfully submitted,

                                      **BREWER, ATTORNEYS & COUNSELORS**

By:     */s/ Jason C. McKenney*
        Michael J. Collins, Esq.
        State Bar No. 00785493
        mjc@brewerattorneys.com
        Jason C. McKenney, Esq.
        State Bar No. 24070245
        jcm@brewerattorneys.com
        1717 Main Street, Suite 5900
        Dallas, Texas 75201
        Telephone: (214) 653-4000
        Facsimile: (214) 653-1015

        **ATTORNEYS FOR THE PLAINTIFF COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 26th day of February 2020

*/s/ Jason C. McKenney*
Jason C. McKenney

4839-7982-6102, v. 3