IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, <br><br>    Plaintiff and Counter-Defendant <br><br> and <br><br> WAYNE LAPIERRE, <br><br>    Third-Party Defendant, <br><br> v. <br><br> ACKERMAN MCQUEEN, INC., <br><br>    Defendant and Counter-Plaintiff, <br><br> and <br><br> MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG, <br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § Civil Action No. 3:19-cv-02074-G |

**PLAINTIFF'S (1) MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER, (2) MOTION FOR ENTRY OF AN ALTERNATIVE PROTECTIVE ORDER FOR THE PARTIES, AND (3) AND REPLY IN SUPPORT OF PLAINTIFF/COUNTER-DEFENDANTS' <u>MOTION TO ENTER PROTECTIVE ORDER FOR NON-PARTIES</u>**

                                                **BREWER, ATTORNEYS & COUNSELORS**

                                                Michael J. Collins, Esq.  (TX Bar No. 00785493)
                                                mjc@brewerattorneys.com
                                                Jason C. McKenney, Esq. (TX Bar No. 24070245)
                                                jcm@brewerattorneys.com
                                                1717 Main Street, Suite 5900
                                                Dallas, Texas 75201
                                                Telephone: (214) 653-4000
                                                Facsimile: (214) 653-1015

                                                **ATTORNEYS FOR PLAINTIFF COUNTER-**

1

              **DEFENDANT NATIONAL RIFLE ASSOCIATION**
              **OF AMERICA AND WAYNE LAPIERRE**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   FACTUAL BACKGROUND ....................................................................................2

III.  ARGUMENTS ...........................................................................................................5

    A.   The Interests Of Justice Require Entry Of The NRA's One-Tier Level of Confidentiality Order So That The NRA's Lead Counsel Can Meaningfully Participate In These Proceedings. ......................................................5

        1.   AMc And the Brewer Firm Are Not Competitors. ......................................6

        2.   Disclosure Of Defendants' "Confidential" Information Will Not Result In Harm To Defendants. ...................................................................7

        3.   The Proposed "Highly Confidential" Designation Severely Prejudices Plaintiffs And Further Delays Discovery. ................................9

    B.   A Protective Order Entered By This Court Does Not Have To Mirror The Virginia Protective Order. ......................................................................................10

    C.   The NRA's Proposed Protective Orders Will Adequately Protect Confidential Information. .......................................................................................11

IV.   CONCLUSION ..........................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*2 Hounds Design, Inc. v. Brezinski*,
   Civil Action No. 13-101, 2013 WL 5938073 (W.D.N.C. Nov. 5, 2013) .................................9

*Anzures v. Prologis Texas I LLC*,
   300 F.R.D. 316 (W.D. Tex. 2012) .................................................................................8, 14

*Caudill Seed and Warehouse Co. Inc. v. Jarrow Formulas, Inc.*,
   No. 3:13–CV–82–H, 2013 WL 3872229 (W.D. Ky. 2013).......................................................11

*Citing Medtronic Sofamor Danek, Inc. v. Michelson*,
   No. 01-2373-GV, 2002 WL 33003691 (W.D. Tenn. Jan. 30, 2002) .........................................8

*Field Turf USA, Inc. v. Sports Const. Group, LLC*,
   No. 1:06 CV 2624, 2007 WL 4412855 (N.D. Ohio 2007) ........................................................11

*Frees, Inc. v. McMillian*,
   No. CIV.A.05 1979, 2007 WL 184889 (W.D. La. Jan. 22, 2007).........................................8, 9

*HSqd, LLC v. Morinville*,
   No. 3:11CV1225 WWE, 2013 WL 1149944 (D. Conn. Mar. 19, 2013)...................................6

*THK America, Inc. v. Nippon Seiko K.K.*,
   No. 90 C 6049, 141 F.R.D. 461 (N.D. Ill. Aug. 20, 1991) .........................................................8

*Util. Sys. Servs., Inc. v. Careguard Warranty Servs., Inc.*,
   No. CV 16-505-SDD-EWD, 2017 WL 3713472 (M.D. La. Aug. 14, 2017)......................7, 8, 9

*United States ex rel. Wright v. AGIP*,
   No. 5:03CV264, 2008 WL 11348371 (E.D. Tex. May 15, 2008) ........................................8, 9

**Other Authorities**

Fed. R. Civ. P. 26(c)(3) and (c)(1)...............................................................................................14

Fed. R. Civ. P. 37(a)(5)................................................................................................................14

Fed. R. Civ. P. 26(c)(G)................................................................................................................1

# I.
# **PRELIMINARY STATEMENT**

Plaintiff National Rifle Association of America (the "NRA") hereby responds and objects to Defendants Ackerman McQueen, Inc., Mercury Group, Inc., Henry Martin, William Winkler, Melanie Montgomery, and Jesse Greenberg's (collectively, "AMc" or "Defendants") proposed Protective Order and alternatively seeks the entry of the NRA's Proposed Protective Order. Plaintiff also hereby replies in support of its Motion for Protective Order for Non-Parties.

Plaintiff and Defendants both recognize that conducting discovery in this case will undoubtedly involve the disclosure of documents and information containing "trade secret or other confidential research, development, or commercial information" "requiring" that such information "not be revealed," as permitted by Federal Rule of Civil Procedure 26(c)(G). The parties part ways, however, over the content, form, and number of protective orders, as illustrated by the competing proposals now before the Court.[1]

The dispute centers on Defendants' efforts to attempt to disqualify indirectly the NRA's lead litigation counsel, Mr. William Brewer III, from this case under the false pretense that AMc—the decades-old marketing, advertising, public relations, and digital content creation firm—is somehow in the same market, and even competes with the four (4) person Public Affairs ("PA") team of Brewer Attorneys & Counselors (the "Brewer Firm") and Mr. Brewer himself. The effort by Defendants to bar certain professionals of the Brewer Firm from having access to relevant documents and information is based on the preposterous notion that the firm seeks to compete in the field of advertising and communications with Defendants.

---

[1] *See* Exhibit ("Ex.") A, Plaintiff's Proposed Protective Order for Non-Parties; Ex. B, Plaintiff's Proposed Protective Order For Parties. Defendants' Proposed Protective Order is attached as Exhibit A to Defendants' Response to Plaintiff's Motion to Compel, ECF No. 51.

1

Defendants asks this Court to enter an unmanageable, two-tier protective order that would allow Defendants to designate their documents "Highly Confidential"[2] and thus prohibit Mr. Brewer and the Brewer Law Firm's PA professionals from reviewing those documents, effectively placing improper limitations on Mr. Brewer's ability to participate in this case. Defendants also object to the entry of the NRA's Proposed Non-Party Protective Order on the same basis: that it does not provide for the shielding of purportedly confidential business information from review by the Brewer Firm's PA team. The NRA respectfully submits that this Court should deny Defendants' request to enter their proposed Protective Order, and instead enter the NRA's Proposed Protective Order and Proposed Non-Party Protective Order.

## II.
## FACTUAL BACKGROUND

The principal point of disagreement between the parties as to what Protective Order should be entered in this case is this: Defendants' insistence on shielding documents and information from review by Mr. Brewer and the Brewer Firm's PA team. Defendants erroneously contend that the Brewer PA team "has already poached **substantial portions** of the NRA's PR work from Defendants" or, theoretically, any client of Defendants'.[3] The Brewer Firm's PA team and Defendants do not compete in the same markets.

Notably, Defendants did not begin to promote the narrative that the Brewer Firm's PA team somehow competes with AMc until recently. By way of background, in early 2018, Plaintiffs requested that Defendants provide documents and information relating to their billing practices, documents to which Plaintiffs are entitled pursuant to the then-governing Services Agreement between the parties. Defendants failed to comply with the requests, which left

---

[2] In the Virginia Action, and as discussed below, Defendants abused the "Highly Confidential" designation to the point that approximately half of the documents produced to date are designated as such.

[3] Defendants' Response to Plaintiff's Motion to Compel, ECF no. 51 at p. 2.

2

Plaintiffs with no choice but to seek relief from the courts. Despite the lawsuit filed in Virginia seeking to obtain these documents, Defendants continued to stonewall the NRA. In the face of mounting pressure to comply with their legal and professional obligations, Defendants began to promote this contrived narrative, seeking to deflect from their own abuses. Thus, this all emanates from the AMc's refusal to comply with its legal obligations, and the eventual termination of the AMc's services to the NRA.

The fact is that the Brewer Firm PA team and Defendants do not directly compete. The storied relationship between Defendants and the NRA, which spanned several decades, had culminated in billings for Defendants that exceeded tens of millions of dollars annually – reportedly involving almost 100 employees spread across four (4) offices in Oklahoma City, Oklahoma; Dallas, Texas; Colorado Springs, Colorado; and Alexandria, Virginia. According to AMc, many of these employees were *exclusively* dedicated to serving the NRA.

On the other hand, the Brewer firm employs four (4) communications professionals and no more than three (3) typically work on any NRA-related matters. ***None*** of these professionals are assigned to exclusively work with or for the NRA as a client.[4]

Before AMc and the NRA terminated their business relationship, AMc provided a broad range of communications and video production services for the NRA.[5] The Services Agreement between the parties outlined the capabilities a large scale advertising firm offers: designing national and regional advertising, photography and other graphics work, media placement and placement services, and full-time online broadcasting services (e.g., NRATV). The Brewer PA team and Mr. Brewer typically do not offer such services in the marketplace. In addition, AMc

---

[4] *See* Declaration ("Decl.") of Travis T. Carter ("Carter Decl."), at ¶ 9, attached hereto as Ex. C.

[5] These services were provided pursuant to the parties' Services Agreement, attached hereto as Ex. D, Services Agreement.

senior executives have indicated that AMc intends to move away from a traditional advertising agency model towards a full-fledged media company. Already, as part of its "brand influence strategy," AMc claims to specialize in the building, management and leveraging of "media properties" for clients.[6] AMc is proudly transitioning the advertising agency and take another step "to become a media company in and of itself." The Brewer Firm is not a media company.[7]

Defendants' statement that "the Brewer firm is a PR firm masquerading as a law firm" is not true.[8] The Brewer Firm employs four (4) professionals in its Dallas office, led by Mr. Travis Carter, all of whom work primarily in the field of legal communications.[9] This small group of professionals provides assistance to the lawyers to provide specialized, high-stakes public relations – primarily helping clients navigate interactions with the national news media and craft their public narrative with respect to legal and regulatory concerns, in connection with in high-profile legal matters.[10] Working with the attorneys, the PA team has performed this function for many clients: working cooperatively with clients' communications professionals, outside PR firms, etc. In the digital age, it is common practice for law firms to assist their clients with legal communications on matters of public concern.

---

[6] *See* Ex. E, Revan McQueen Bio from Ackerman McQueen, Inc.'s former webpage, formerly available at: https://www.am.com/our-team/?id=revan-mcqueen. The screenshot was obtained through an online archive, available at: https://web.archive.org/web/20190421140450/https://www.am.com/our-team/?id=revan-mcqueen (last visited: Mar. 4, 2020).

[7] Indeed, there is absolutely no comparison between the two entities in question: a small group of communications and crisis management experts employed at a commercial litigation firm on the one hand; an advertising behemoth on the other. Defendants seek to frustrate the advocacy of the Brewer Firm and unnecessarily expend the resources of this Court with its contrived narrative: The Brewer Firm is somehow a competitor of a global advertising agency.

[8] ECF No. 51 at ¶ 15.

[9] *See* Ex. C, Carter Decl., at ¶ 8.

[10] *Id*.

In this respect, working with AMc or the Brewer Firm PA group was ***never an either-or proposition for the NRA***.  Defendants have not submitted any evidence that they have done any work in this area at all.  In sharp contrast, the Brewer Firm's PA team primarily performs services in conjunction with the firms' legal services and related crisis management work.

None of the communications professionals employed by the Brewer Firm specialize in advertising, marketing, or digital media, and none hold academic degrees in such fields.[11]  Given the narrow scope of work the Brewer PA team performs, there could never have been a concerted effort to perform the wide-ranging services provided to the NRA by AMc.  For instance, there was no effort on the part of the Brewer firm to become an advertising agency, perform high-end video production, or launch a live TV media "experience" for the NRA's key stakeholders – all cornerstones of the services offered by Defendants.[12]  Thus, the Brewer firm does not seek to "compete" with Defendants or replace it as the advertising firm of record for the NRA. The fact is that the Brewer Firm does not have the professional resources, expertise, or inclination to occupy such space for the NRA or any other person or entity.[13]

### III.
### ARGUMENTS

**A.   The Interests Of Justice Require Entry Of The NRA's One-Tier Level of Confidentiality Order So That The NRA's Lead Counsel Can Meaningfully Participate In These Proceedings.**

Defendants cannot demonstrate the requisite good cause for inclusion of a heightened "Highly Confidential" designation because their alleged injury is entirely speculative in nature at best. Indeed, Defendants present no evidence in support of their contentions that the Brewer Firm PA team is a competitor and that it seeks to "steal" its clients, or any specific facts to show that

---

[11] *See* Ex. C, Carter Decl., at ¶ 11.

[12] *See* Ex. C, Carter Decl., at ¶ 12.

[13] *See* Ex. C, Carter Decl., at ¶ 13.

5

disclosure beyond counsel will work a clearly defined and "very serious injury" to Defendants, especially in light of the terms in the NRA's Proposed Protective Orders, which provide sufficient protection for sensitive information.[14]

### 1. AMc And The Brewer Firm Are Not Competitors.

The Brewer Firm's PA team is not a competitor with AMc, and therefore, there is no reason to include Defendants' proposed "Highly Confidential" designation in the Protective Order. Again, AMc's contention is based on a ***wholly fabricated scenario***. Defendants contend that the Brewer Firm's four (4) person PA team will somehow find a way to compete with a full-service advertising agency, for the express purpose of harassing Defendants and stealing Defendants' PR business.[15] Defendants offer ***no facts*** in support of their contention but insist – without support – that its confidential information, even if it has nothing to do with "stealing" clients, must be protected from disclosure to these persons, because counsel for Plaintiff may later use the information obtained to benefit an imaginary full-service public relations business at Defendants' expense. Of course, the argument lacks any merit.

Defendants' claim that Mr. Brewer "wants to destroy AMc as a competitor while having the added benefit of financially ruining his in-laws" is ridiculous, and Defendants provides no evidence to support its frivolous claim.[16] The Court should reject the "Highly Confidential" designation in AMc's Proposed Order and instead adopt the more reasonable singular level of confidentiality advocated by the NRA and other non-parties.

---

[14] *HSqd, LLC v. Morinville*, No. 3:11CV1225 WWE, 2013 WL 1149944, at *2 (D. Conn. Mar. 19, 2013).

[15] Defendants' Response to Plaintiff's Motion to Compel, ECF no. 51, at p. 2.

[16] *See id.*, at ¶ 52.

### 2. Disclosure Of Defendants' "Confidential" Information Will Not Result In Harm To Defendants.

Defendants contend that their purportedly confidential competitive information can include "customer and financial information," like "competitive business documents showing how AMc sets budgets, project management detail, client lists, and how AMc develops and bills for special projects, amongst other information."[17] Defendants provide no further explanation of the types of documents they seek to protect through the "Highly Confidential" designation, or how disclosure would cause harm. It is thus unclear what type of discovery materials Defendants contend could divulge highly sensitive information that would allow the Brewer Firm's PA team to gain the competitive advantage Defendants believe it is seeking (which it is ***not***).

Moreover, Defendants offer ***no proof*** in support of their contention that such discovery materials would contain confidential information, disclosure of which would cause an "identifiable, significant harm" to its financial and competitive position.[18] In fact, they have not submitted any evidence that the Brewer Firm PA team "has already poached *substantial portions* of the NRA's PR work" from Defendants.[19] As the United States District Court for the Middle District of Louisiana stated, the showing of harm "requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm."[20] Defendants did not provide ***any support whatsoever***.

Courts in this Circuit have declined to enter protective orders with similar two-tier confidentiality mechanisms where the party seeking protection fails to establish good cause. *See*

---

[17] Defendants' Response to Plaintiff's Motion to Compel, ECF no. 51, at ¶ 15.

[18] *Util. Sys. Servs., Inc. v. Careguard Warranty Servs., Inc.*, No. CV 16-505-SDD-EWD, 2017 WL 3713472, at *5 (M.D. La. Aug. 14, 2017).

[19] ECF No. 51, at p. 2.

[20] *Id.*

*Frees, Inc. v. McMillian*, No. CIV.A.05 1979, 2007 WL 184889, at *4 (W.D. La. Jan. 22, 2007), *aff'd,* No. CIV.A. 05-1979, 2007 WL 1308388 (W.D. La. May 1, 2007) (denying inclusion of "attorneys-eyes-only" protection in proposed protective order because the defendant failed to show good cause for the protective order containing the two-tiered scheme); *Anzures v. Prologis Texas I LLC*, 300 F.R.D. 316, 317 (W.D. Tex. 2012) (denying entry of protective order where party set forth only general and conclusory objections and stereotyped statements, holding that such fails to establish that good cause and specific need for protection exists); *United States ex Rel. Wright v AGIP, No. 5:03CV264*, WL 11348371 *3 (E.D. Tex. 2008) (denying entry of protective order with two-tiered confidentiality mechanism, holding that plaintiff failed to demonstrate any significant harm that would flow from its disclosure of information); *Util. Sys. Servs., Inc. v. Careguard Warranty Servs., Inc.*, No. CV 16-505-SDD-EWD, 2017 WL 3713472, at *8 (M.D. La. Aug. 14, 2017) (denying to enter a protective order with an attorneys'-eyes only provision where the party seeking the protection did not provide any information in support of its contention that the other party would misappropriate trade secrets).[21]

---

[21] *Citing Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373-GV, 2002 WL 33003691, at *3 (W.D. Tenn. Jan. 30, 2002) (holding that a two-tier protective order allowing information to be designated for "attorneys' eyes only" was inappropriate in lawsuit seeking declaratory judgment affirming plaintiff's ownership rights in patents, devices, and methods in the field of spinal implant technology where "technology at issue was created by [defendant]" such that defendant was " 'uniquely qualified' to determine what devices and methods are covered by the license and purchase agreements in dispute" and where the parties were not direct competitors.); *THK America, Inc. v. Nippon Seiko K.K.*, No. 90 C 6049, 141 F.R.D. 461, 462 (N.D. Ill. Aug. 20, 1991) (denying request to preclude disclosure of confidential materials to present and past employees of plaintiff's parent company and explaining that "[p]laintiff correctly reasons that, as the chief executive officer of THK and the inventor of the patented products at issue, Mr. Termachi is the most knowledgeable person about the issues in this case. Clearly, he should be able to assist in the evaluation and prosecution of his company's suit on his patented inventions."). *See also, Frees, Inc. v. McMillian*, Civil Action No. 05-1979, 2007 WL 184889, at * 5 (W.D. La. Jan 22, 2007) (denying defendant's motion for "two-tiered protection scheme" in which confidential or especially sensitive information would be produced for attorney's eyes only where plaintiff alleged unauthorized copying by a direct competitor of "unique and not easily comprehended" technology such that plaintiff's counsel likely lacked the expertise to recognize particular instances of copying and "if [plaintiff's] personnel were not allowed to review the discovered information, [plaintiff] would be forced to hire an outside consultant which. would not only be very expensive, but also very difficult because ... no experts

Therefore, because Defendants have not specifically explained what information, other than the client information, budgets, and billing papers would be subject to the proposed additional level of restriction,[22] and how, if disclosed, it would materially harm Defendants' business, Defendants have not established good cause for entry of the two-tiered protective order.

Accordingly, the Court should decline to enter Defendants' Proposed Protective Order.

### 3. The Proposed "Highly Confidential" Designation Severely Prejudices Plaintiffs And Further Delays Discovery.

Not only is Defendants' proposal to include a "Highly Confidential" designation in the protective order unnecessary and unsupported, but it is also severely prejudicial to the NRA's ability to litigate its case. In effect, such a designation deprives Plaintiff of its choice of counsel, as members of its retained firm would be unable to review relevant information produced in discovery. Simply put, Defendants have not shown any burden that would outweigh the benefit to Plaintiff of having access to the information.[23]

Additionally, this Court should not enter AMc's Proposed Protective Order because Defendants have abused the "Highly Confidential" designation in the Virginia Action, and nothing would indicate that Defendants would behave otherwise here. Given the abuse, Plaintiffs were forced expend time and money to press Defendants to reassess their designations. In the Virginia Action, Defendants began producing documents with improper "Highly Confidential"

---

currently have the particularized knowledge of [plaintiff's] technology necessary to properly evaluate the Southeast documents."); *2 Hounds Design, Inc. v. Brezinski*, Civil Action No. 13-101, 2013 WL 5938073, at * 3-4 (W.D.N.C. Nov. 5, 2013) ("Defendants persuasively argue that an attorneys' eyes only provision is inappropriate because Brezinski is in the best position to review Plaintiff's discovery responses.").

[22] *Util. Sys. Servs., Inc. v. Careguard Warranty Servs., Inc.*, No. CV 16-505-SDD-EWD, 2017 WL 3713472, at *9 (M.D. La. Aug. 14, 2017).

[23] *United States ex rel. Wright v. AGIP*, No. 5:03CV264, 2008 WL 11348371, at *1 (E.D. Tex. May 15, 2008), *on reconsideration in part sub nom. United States ex rel. Wright v. AGIP Petroleum Co.*, No. 5:03-CV-264 (DF), 2008 WL 11348434 (E.D. Tex. June 20, 2008).

9

designations in September 2019. It was not until February 21, 2020, after months of objecting to Defendants' "Highly Confidential" designations, that Defendants finally agreed to reassess their designations, and provided a list of 530 documents they demoted from "Highly Confidential" to "Confidential." However, Defendants readily abuse the use of the "Highly Confidential" designation. Indeed, there remain more than 9,000 documents that are still designated "Highly Confidential," the majority of which do not reveal any sensitive information. Defendants provide no support for its contention that such information would allow the Brewer Firm to "steal" its clients.

Despite public proclamations that AMc "will never fear the truth," the agency and its principals continue to strenuously object to the review and production of documents that may provide evidence of the agency's unlawful and tortious conduct against the NRA.[24] Given the consequences of the "Highly Confidential" designations, even if applied on a *bona fide* basis, the unfair prejudice to the NRA outweighs the harm posed by having members of the Brewer Firm view the few documents that could reveal confidential business information.

B.   **A Protective Order Entered By This Court Does Not Have To Mirror The Virginia Protective Order.**

The only reason the NRA agreed to the terms of the Protective Order in Virginia was to facilitate production of documents that Defendants were improperly withholding. It is irrelevant that the "NRA offered to restrict" the PA team and Mr. Brewer from viewing the "Highly Confidential" materials in the Virginia Action.[25] Plaintiff did so because Defendants refused to turn over *any* documents in response to Plaintiff's requests for discovery unless and until the NRA agreed to sign on to Defendants' proposed protective order.

---

[24] *See* Ackerman McQueen seeks to end NRA contract" by Lackmeyer, Steve (*Oklahoman*, May 30, 2019), attached hereto as Ex. F.

[25] Defendants' Response to Plaintiff's Motion to Compel, ECF no. 51, at ¶ 30.

And the NRA is not "tying Defendants' hands" by objecting to the inclusion of the "Highly Confidential" designation in this matter.[26] Just because the NRA agreed to the terms in Virginia Action, that does not mean that the NRA is somehow bound to it in this separate, federal matter. In fact, generally, protective orders entered in state court are unenforceable in federal court. *See, generally, Field Turf USA, Inc. v. Sports Const. Group, LLC,* No. 1:06 CV 2624, 2007 WL 4412855, *4 n. 7 (N.D. Ohio 2007) (holding that the district court had no authority to enforce a protective order entered in state court); *Caudill Seed and Warehouse Co. Inc. v. Jarrow Formulas, Inc.*, No. 3:13–CV–82–H, 2013 WL 3872229 *2 (W.D. Ky. 2013) (holding that the district court was not bound to follow a protective order entered in state court).

### C. The NRA's Proposed Protective Orders Will Adequately Protect Confidential Information.

The NRA provided a draft Proposed Protective Order to Defendants on or around February 3, 2020. The NRA also drafted the Proposed Protective Order for Non-Parties with input and agreement from Performance Improvement Partners ("PIP"), one of the subpoena recipients. Other subpoena recipients have also agreed to the terms of the proposed Protective Order and are prepared to produce documents once the Protective Order is entered. These third parties have no interest in the petty dispute raised by Defendants, and the Non-Party and NRA proposed protective orders should be entered together.

Both proposed Protective Orders provide more than sufficient protection for any confidential information that may be produced in response to these third-party subpoenas. Indeed, in terms of protections for information deemed "Confidential," the proposed Protective Orders largely track both the language in Defendants' Proposed Protective Order and the

---

[26] Defendants' Response to Plaintiff's Motion to Compel, ECF no. 51, at ¶ 30.

Protective Order entered in the Virginia Action. For information deemed "Confidential," the NRA's Proposed Protective Order provides that:

> A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in this Action only for prosecuting, defending, or attempting to settle this Action and the related Virginia Action … Any Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.

*See* NRA's Proposed Protective Order, p. 10, ¶ 7.1. AMc's Proposed Protective Order, provides the same "Basic Principles".[27] The Proposed Protective Order for Non-Parties further provides that Producing Parties may in good faith designate as "Confidential" the following types of information, including but not limited to:

> 5.3.1 Information that has not been made public and that the Producing Party would not generally make public in the ordinary course of its activities;
> 5.3.2 Information that constitutes a trade secret or other non-public proprietary, financial, competitive, or commercially sensitive information;
> 5.3.3 Information that relates to confidential business strategy, pricing, operations, contracts, or relationships of the Producing or Designating party and/or its clients or agents; and
> 5.3.4 Information that the Producing or Designating party is under a preexisting obligation to a non-party to treat as confidential under: (i) an adopted rule of professional conduct; (ii) an agreement with a third-party regarding confidentiality; (iii) a court or administrative order or agreement settling litigation; and/or (iv) an applicable federal or state law.

*See* Proposed Protective Order, p. 8. While Defendants did not include this particular language in their Proposed Protective Order, this language is meant to provide guidance to third-parties not involved in this matter as to what the protections would encompass.

As discussed above, Defendants' issue with the proposed Protective Orders is mainly that they do not provide for the designation of Discovery Materials as "Highly Confidential," which would forbid disclosure of such documents to "William A. Brewer or … members of the Public

---

[27] *See* Exhibit A to Defendants' Response to Plaintiff's Motion to Compel, ECF No. 51. Of note, the Protective Order entered in the Virginia Action, attached hereto as Ex. G, also provides the same "Basic Principles."

Relations Unit of the firm."[28] But, as discussed above, the fact that the parties agreed to the "Highly Confidential" protections in the Virginia Action does not result in the NRA's consent for such use in this matter. The NRA's consent to the Protective Order in the Virginia Action was based on a mistaken belief that Defendants would act in good faith. Here, the NRA's position is that Defendants' purported need for these "Highly Confidential" protections is based on a false premise that the Brewer Firm competes with AMc, and therefore unnecessary.

Furthermore, Defendants complain that having two separate protective orders, one for the parties and one for third parties "unnecessarily complicates the case and the rules governing the parties' (and third-parties') actions.[29] This objection, like the others discussed above, are groundless and continue to unnecessarily delay discovery in this matter.

## IV.
## CONCLUSION

For all the reasons stated above and in the opening Motion to Enter Proposed Protective Order for Non-Parties, the NRA respectfully requests the Court strike Defendants' Proposed Protective Order and enter the NRA's Proposed Protective Order, attached hereto as Ex. B. Plaintiffs further request that this Court also grant Plaintiff's Motion to Enter Proposed Protective Order for Non-Parties in its entirety, which is attached hereto as Ex. A. Finally, Plaintiffs also seek an award of attorney's fees and other expenses related to this Motion pursuant to Fed. R. Civ. P. 26(c)(3) and 37(a)(5).

Dated:  March 4, 2020                               Respectfully submitted,

                                                         **BREWER, ATTORNEYS & COUNSELORS**

---

[28] Ex. G, Virginia Protective Order, at ¶ 7.3.

[29] Defendants' Response to Plaintiff's Motion to Enter Proposed Protective Order for Non-Parties, ECF No. 53, at p. 2.

By:   */s/ Michael J. Collins*
Michael J. Collins, Esq.
State Bar No. 00785493
mjc@brewerattorneys.com
Jason C. McKenney, Esq.
State Bar No. 24070245
jcm@brewerattorneys.com
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR THE PLAINTIFF COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA AND WAYNE LAPIERRE**

## CERTIFICATE OF CONFERENCE

I hereby certify that I, Michael J. Collins, counsel for Plaintiffs/Counter-Defendants, in good faith conferred or attempted to confer with counsel for the Defendants in an effort to resolve the subject of the Motion to Enter Proposed Protective Order for Non-Parties. Plaintiffs were unable to obtain consent for the entry of the Proposed Protective Orders.

*/s/ Michael J. Collins*
Michael J. Collins

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 4th day of March 2020.

*/s/ Michael J. Collins*
Michael J. Collins

4845-1067-3078.7
2277-08