**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § | |
| | § | |
| | § | |
| **Plaintiff and Counter-Defendant** | § | |
| | § | |
| **and** | § | |
| | § | |
| **WAYNE LAPIERRE,** | § | |
| | § | |
| **Third-Party Defendant,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:19-cv-02074-G** |
| | § | |
| **ACKERMAN MCQUEEN, INC.,** | § | |
| | § | |
| **Defendant and Counter-Plaintiff,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG,** | § | |
| | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF NATIONAL RIFLE ASSOCIATION OF AMERICA'S BRIEF IN**
**OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**
<u>**AND MOTION FOR SANCTIONS**</u>

**BREWER, ATTORNEYS & COUNSELORS**

Michael J. Collins, Esq. (TX Bar No. 00785493)
mjc@brewerattorneys.com
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR PLAINTIFF COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ..................................................................1

II.   PROCEDURAL & FACTUAL BACKGROUND ......................................4

    A.   The NRA Has Already Produced More Than 30,000 Responsive Documents to Defendants. ................................................................4

         1.   Defendants Now Raise Objections to the NRA's Responses That Defendants Did Not Raise During The Parties Conference......................6

         2.   The NRA Has Already Produced, or Agreed to Produce, Responsive Documents to Many of The RFPs now Before the Court. ..........................6

         3.   The NRA Continues to Produce Documents to Defendants......................7

         4.   Defendants Have Yet to Produce A Privilege Log. ....................................7

    B.   Defendants Misrepresent the NRA's Production Efforts and the Positions Expressed by the Parties During Counsel's Conference on February 3, 2020. ....................................................................8

    C.   Defendants Attempt to Revive Arguments That Were Already Rejected By the Virginia Court. ........................................................9

III.  ARGUMENTS AND AUTHORITIES....................................................10

    A.   Defendants' Misstate the Scope of Discovery Available To Defendants, and the Burden to Prevail on Defendants' Motion. .....................................10

    B.   The Claims and Defenses Before This Court Are Limited in Scope....................12

    C.   The Motion Should Be Denied As To Defendants' Sweeping Requests For Privileged, Information. .......................................................14

         1.   Defendants' Requests Target Documents That Are Obviously Privileged. ..............................................................15

         2.   Defendants' Requests Targeting Plaintiff's Legal Bills and Internal Communications Regarding the Content of Those Bills, Seek Privileged Information and In Any Event Are Premature. ......................15

         3.   The Requests Seek Privileged Drafts of Engagement Letters (RFP Nos. 4-6) ..............................................................16

         4.   The Crime-Fraud Exception Does Not Apply Here. ...............................17

    D.   The Motion Should Be Denied As To Defendants' Sweeping Requests For Information That Is Not Relevant To Any Claim or Defense. .............................19

         1.   The Information Targeted By Defendants' Requests for Production and Motion to Compel Responses Has No Bearing on the Parties' Claims or Defenses. ................................................19

         2.   Defendants' Requests Targeting Information About Other Legal Proceedings Should Be Denied Because Defendants Establish No

Nexus to any Dispute Before This Court. (RFP Nos. 6-8, 13, 23, 42-44). ...........................................................................................................20

3.    The NRA Will Produce Not-Privileged Documents About Mr. McQueen's Illness, But Will Not Produce Documents About Alleged Conflicts of Interest (RFPs Nos. 1-3, 10 & 90-91). ....................22

4.    Defendants' Requests Seeking Documents About Supposed Competition Between BAC And Defendants Are Facially Overbroad (RFPs 7, 11, 64-65, and 87-89)................................................24

E.    As The Virginia Court Previously Determined, The NRA Has Not Put At Issue Its Privileged and Opinion Work Product From Forensic Risk Alliance (RFPs 47 & 101). ..........................................................................25

F.    Defendants Lack Standing To Strike The NRA's Objections To Requests Which Are Not The Subject of Defendants' Motion to Compel. .........................27

IV.    CONCLUSION..............................................................................................27

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re BankAmerica Corp. Secs. Litig.*,
   270 F.3d 639 (8th Cir. 2001) ................................................................18

*Bredemus v. Int'l Paper Co.*,
   252 F.R.D. 529 (D. Minn. 2008)........................................................11, 14

*Calvin Klein Trademark Trust v. Wachner*,
   198 F.R.D. 53 (S.D.N.Y. 2000) (Rakoff, J.).............................................24

*Carlson Cos., Inc. v. Sperry & Hutchinson Co.*,
   374 F.Supp. 1080 (D. Minn. 1974)....................................................11, 14

*Century 21, Inc. v. Diamond State Ins. Co.*,
   No. 03 CIV. 5163(GEL), 2006 WL 2355323 (S.D.N.Y. 2006)...............18

*In re Copper Market Antitrust Litig.*,
   200 F.R.D. 213 (S.D.N.Y. 2001) ...........................................................24

*In re CSX Corp.*,
   124 S.W.3d 149 (Tex. 2003)..............................................................13, 20

*CSX Transp., Inc. v. Peirce*,
   No. 5:05CV202, 2012 WL 5354544 (N.D.W. Va. Oct. 29, 2012) .........16

*F.D.I.C. v. U.S. Fire Ins. Co.*,
   50 F.3d 1304 (5th Cir. 1995) ..................................................................22

*Firefighters Retirement Sys. v. Citgo Gr. Ltd.*,
   Civ. Action No. 12-373-SDD-EWD, 2018 WL 305604 (M.D. La. Jan. 5,
   2018) .......................................................................................................16

*In re First Peoples Bank Shareholders Litig.*,
   121 F.R.D. 219 (D.N.J. 1988).................................................................15

*In re Grand Jury Proceedings in Matter of Fine*,
   641 F.2d 199 (5th Cir. 1981) ..................................................................18

*In re Grand Jury Subpoena*,
   419 F.3d 329 (5th Cir. 2005) ..................................................................18

*In re Grand Jury Subpoenas Dated Mar. 24, 2003*,
   265 F. Supp. 2d 321 (S.D.N.Y. 2003)....................................................24

*Herbert v. Lando*,
    441 U.S. 153, 99 S. Ct. 1635, 60 L. Ed. 2d 115 (1979)..........................................................13

*Jones v. Metzger Dairies, Inc.*,
    334 F.2d 919 (5th Cir. 1964), *cert. denied*, 379 U.S. 965, 85 S. Ct. 659, 13 L.
    Ed. 2d 559 (1965) ...............................................................................................................13

*Kellgren v. Petco Animal Supplies, Inc.*,
    No. 13-CV-644 L (KSC), 2016 WL 4097522 (S.D. Cal. July 7, 2016) ................................16

*Kellgren v. Petco Animal Supplies, Inc.*,
    No. 3:13CV644L(KSC), 2017 WL 979045 (S.D. Cal. Mar. 13, 2017)...........................22, 24

*Laser Indus. v. Reliant Techs.*,
    167 F.R.D. 417 (N.D. Cal. 1996)........................................................................................18

*In re Martin Marietta Corp.*,
    856 F.2d 619 (4th Cir. 1988) ..............................................................................................26

*MeadWestvaco Corp. v. Rexam, PLC*,
    No. 1:10CV511 ...................................................................................................................24

*National Rifle Association of America v. Cuomo, et al.*,
    Case No. 1:18-cv-00566-TJM-CF (N.D. NY, May 11, 2018)...............................................20

*Navigant Consulting v. Wilkinson*,
    220 F.R.D. 467 (N.D. Tex. 2004) ........................................................................................26

*Pritcharcl-Keang Nam Corp. v. Jaworski*,
    751 F.2d 277 (8th Cir. 1984) ..............................................................................................18

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
    32 F.3d. 851 (3d Cir. 1994).................................................................................................24

*Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*,
    No. C 06-3219....................................................................................................................16

*Samsung Elcs. Am. Inc. v. Yang Kun "Michael" Chung*,
    325 F.R.D. 578 (N.D. Tex. 2017) ........................................................................................15

*Spiegelberg Mfg., Inc. v. Hancock*,
    No. 3-07-CV-1314-G, 2007 WL 4258246 (N.D. Tex. Dec. 3, 2007)....................2, 10, 11, 18

*Tax-Right, LLC v. SICPA Product Sec., LLC*,
    No. 3:12CV657, 2013 WL 3791487 (E.D. Va. 2013) .....................................................11, 24

*In re Terrorist Attacks on Sept. 11, 2001*,
    293 F.R.D. 539 (S.D.N.Y. 2013) ......................................................................................8, 24

*United States v. Dyer*,
   722 F.2d 174 (5th Cir. 1983) ...............................................................18

*United States v. White*,
   887 F.2d 267 (D.C. Cir. 1989) ..............................................................18

*Walton v. Mid-Atlantic Spine Specialists*,
   694 S.E. 2d 545 (Va. 2010)...................................................................26

*Zuniga v. TrueAccord*,
   No. 2:18-CV-00683-KG-KRS, 2019 WL 6528759 (D.N.M. Dec. 4, 2019) .........................22

## Other Authorities

8 Fed. Prac. & Proc. Civ. § 2008 (3d ed.)....................................................13

Fed. R. Civ. P. 26(b) .................................................................2, 3, 10, 13

Plaintiff National Rifle Association of America (the "NRA") files this Brief in Opposition to Defendants' Ackerman McQueen, Inc ("Ackerman"), Mercury Group, Inc. ("Mercury"), Henry Martin, William Winkler, Melanie Montgomery, and Jesse Greenberg (together, "Defendants") Motion to Compel Plaintiffs' Document Production and Motion for Sanctions (the "Motion") and Brief in Support Thereof ("Defendants' Brief" or "Defs.' Br."), and states as follows:

## I.

## PRELIMINARY STATEMENT

Defendants request this Court to compel the NRA's responses to requests to which (1) the NRA is not required to respond; (2) the NRA has already responded in its production, to date, of more than 33,000 documents (totaling more than 90,000 pages); or (3) the NRA is diligently preparing to respond.

First the NRA produced more than 33,000 documents responsive to Defendants' Requests for Production. On February 26, 2020, Defendants informed this Court that Plaintiff had produced only 17 documents responsive to Defendants' Requests for Production ("RFPs" or "Requests"). In reality, the NRA had produced approximately 28,000 documents to Defendants, and was in the process of producing additional responsive documents.

Second, the NRA continues to produce responsive documents. Defendants complain that Plaintiff's promise during the parties' conference on February 3, 2020, to produce more documents in the near-term (using the colloquialism, "nearish"), was not satisfactory. But, Plaintiff produced approximately 5,000 documents shortly after the conference.

Third, Defendants, like Plaintiff, have yet to produce any privilege log. Nevertheless, Defendants accuse the NRA of breaching its discovery obligations on account of this supposed "lapse," even though Defendants have not produced a privilege log. The NRA is compiling a

1

privilege log for production to Defendants in the near-term. Plaintiff does not oppose Defendants' suggestion that the Court set a deadline -- *for both parties* -- to produce their privilege logs.

Fourth, Defendants propounded 177 RFPs on the NRA. In their motion, Defendants seek to compel further responses to 51 of them. Initially, Plaintiffs have already agreed to produce, and have produced, documents responsive to numerous Requests that are the subject of Defendants' Motion.[1] Moreover, the vast majority of the 51 RFPs placed at issue in Defendants' Motion were never raised during the parties' conference. Upon consideration of Defendants' arguments, Plaintiff will also now agree to produce documents responsive to certain of Defendants' additional Requests.[2] However, the documents to which Defendants were not entitled in the companion Virginia litigation should not now be made available to Defendants in Texas.[3] Defendants' efforts to resurrect arguments that have already been rejected by Judge Dawkins of the Circuit Court for the City of Alexandria should be denied.

Fifth, as Judge Fish instructed in *Spiegelberg Mfg., Inc. v. Hancock*,[4] Defendants carry the burden to demonstrate that they have a right to Plaintiff's documents; only then is Plaintiff required to argue that those records are not discoverable. Moreover, Defendants are not entitled to all documents about all aspects of Plaintiff's operations – Rule 26(b) of the Federal Rules of Civil

---

[1] Indeed, Plaintiffs have already produced documents responsive to the following Requests for Production, avail. at Dkt. No. 56, Ex. # A-1 (APP05-32) (hereinafter, "RFPs"): 4, 14, 15, 16, 17, 20, 22, 26, 27, 39, 40, 47, 85, 86, 89, 101.

[2] Specifically, Plaintiffs will produce documents responsive to the following RFPs: 27, 28, 16, 17, 48, 31, 54, 27, 88, 89, 85 (Dkt. No. 56, Ex. # A-1 (APP017-019, 021)).

[3] *See, e.g.*, RFPs 47, 101 (Dkt. No. 56, Ex. # A-1 (APP018, 022)) concerning documents related to the *Forensic Risk Alliance* engagement, described infra at Section III.E.

[4] No. 3-07-CV-1314-G, 2007 WL 4258246 (N.D. Tex. Dec. 3, 2007).

Procedure ("Rules") limit Defendants' inquiry to information that is (a) not-privileged, and (b) "relevant to any party's claim or defense . . . ."[5]

The NRA is obviously not required to respond to Defendants' requests targeting: (a) information subject to the work product doctrine or to the attorney-client privilege; (b) privileged communications and opinion work product which defendants Ackerman and Mercury previously attempted, but failed, to secure by filing a similar motion in the parallel proceeding, now-stayed, in Virginia[6]; and (c) information that would not bear on a single claim or defense *actually alleged* by any party in this litigation. Defendants cannot defeat the protections of the attorney-client privilege nor the work product doctrine. Therefore, Requests for Plaintiff's communications with counsel, retention of counsel, and assignments and directives to counsel, should be denied.

In addition, certain of Defendants' Requests target information that is simply not "relevant," and that does not bear on *any* claim or defense pleaded by or against the NRA here. The NRA has alleged intellectual property and property claims, fraud, and breach of duty against all Defendants, and breach of contract against Ackerman. Defendants have asserted defenses to those claims: authorization, fair use, justification, conditions precedent, waiver, mootness, estoppel, and ratification, regarding the NRA's property claims; truth *only* with respect to the NRA's claim for false association under the Lanham Act; and finally, Defendants plead mitigation, unclean hands, no standing, and plaintiff's fault, in defense of all of the NRA's claims. Defendants also counterclaimed against the NRA, pleading libel *per se*, tortious interference with contract;

---

[5] Fed. R. Civ. P. 26(b)(1).

[6] The NRA and defendants Ackerman and Mercury are also engaged in litigation in a consolidated action – now stayed – before the Circuit Court for the City of Alexandria, Virginia.  The matter is captioned *National Rifle Assoc. v. Ackerman McQueen, Inc. et al.*, Consol. No. CL19001757 (filed April 12, 2019).

declaratory judgement; and breach of contract.  Defendants also asserted a cause of action for fraud against a third-party defendant, but not against the NRA.[7]

Defendants fail to identify a single element of any claim or defense on which targeted information would bear. Nor have Defendants demonstrated that the targeted information is, or can be, relevant, including:

    i.    Plaintiff's distinct legal proceedings (in other courts, on other claims, against other defendants);

    ii.   The outcome of other legal proceedings to which no Defendant is a party, and which Plaintiff is contractually-bound to keep confidential; and

    iii.  Knowledge of the health of the former CEO of defendant Ackerman;

    iv.  Deliberations of the Plaintiff's Board and executives, evaluating wholly unrelated (and possibly embarrassing) potential conflicts of interest.

The Court should ignore Defendants' distortions of the record, deny their Motion as to the categories of documents the NRA should be required to produce, instruct Defendants to review the production already made in satisfaction of numerous of the requests Defendants set before this Court, and await the NRA's forthcoming rolling productions and privilege log.

## II.
## PROCEDURAL & FACTUAL BACKGROUND

### A.    The NRA Has Already Produced More Than 30,000 Responsive Documents to Defendants.

The NRA filed its Original Complaint on August 30, 2019 and its First Amended Complaint on October 25, 2019.[8] The NRA has produced approximately 33,000 documents

---

[7] Defendants specifically allege that LaPierre made false claims to them regarding "performance analytics, commentators, [and] [t]hird [p]arty NRA [c]ontracts" associated with the now defunct NRATB operation, formerly managed by Ackerman.  *See* Counterclaim and Third Party Complaint, Dkt. No. 31, p. 113, ¶ 136.

[8] Dkt. Nos. 1 & 18.

comprising more than 90,000 pages that are relevant to the claims and defenses in this case and responsive to Defendants' 177 production requests.[9] In fact, the NRA started producing documents on July 5, 2019,[10] which is prior to the date it was obligated to respond to Defendants' discovery requests.

The NRA has produced documents from the files of ***120 NRA custodians and sources.*** These documents were produced to Defendants in connection with the consolidated litigation between the parties in Alexandria, Virginia.[11] On February 21, 2020 Defendants successfully moved to amend the Virginia protective order to allow the parties use of all documents produced in that case in this proceeding.[12] As a result, Defendants have used several NRA-produced documents as evidence to bolster Defendants' opposition to the NRA's pending motion to compel production of documents.[13] Nevertheless, Defendants represented to this Court that the NRA has provided only 17 documents, instead of more than 33,000 documents.[14] The NRA continues its rolling production and plans to make an additional production of approximately 3,000 more documents shortly.[15]

---

[9] *See* NRA Discovery Chart, attached as Ex. A (APP.012-018) to the Declaration of Michael J. Collins, dated March 23, 2020 (APP.005-011) ("Collins Decl.").

[10] Collins Decl. ¶ 9.

[11] *Id.* at ¶ 8. At Defendants' request, the Virginia case was recently stayed pending resolution of this litigation. *See* Mar. 11, 2020 Hr'g Tr. at 44:12-13, granting Defendants' Motion for Stay, attached to Collins Decl. as Ex. B (APP.019-086).

[12] Order dated February 21, 2020 and Feb. 6, 2020 Hr'g Tr. 167:10-19, attached as Exs. C (APP.087-089) and D (APP.090-278) to Collins Decl.

[13] *See* Dkt. Nos. 51-52.

[14] Br. at p. 3 (Dkt. No. 55) ("More egregious is the fact that the NRA has produced a mere 17 documents to date in response to Defendants' requests for production.")

[15] Collins Decl. ¶ 24. Beyond document discovery, Defendants' counsel has transcripts and exhibits from depositions of 12 former and current NRA employees and directors taken in the Virginia case. *Id.* at ¶ 13.

1.    **Defendants Now Raise Objections to the NRA's Responses That Defendants
Did Not Raise During The Parties Conference.**

Defendants fail to inform the Court which of the NRA's responses to Defendants' 177

RFPs they raised with Plaintiff during the parties' conference.[16] Indeed, during the parties'

conference on February 3, 2020, Defendants identified their dissatisfaction with the NRA's

responses to just eight Requests, though Defendants now seek this Court's order to compel the

NRA to produce documents responsive to 51 Requests.[17] Had Defendants adequately noted their

dissatisfaction with the dozens of other responses and objections which are now the subject of their

motion to compel, aspects of this dispute might have been avoided entirely.

2.    **The NRA Has Already Produced, or Agreed to Produce, Responsive
Documents to Many of The RFPs now Before the Court.**

Defendants move to compel production of documents responsive to RFP 86—that is,

communications "exchanged between the NRA and the media relating to Defendants."[18] The NRA

has already agreed to produce responsive, non-privileged documents in its Responses and

Objections. Moreover, the NRA has *already produced* documents responsive to this category of

Requests.[19] Defendants also criticize the NRA for not producing so-called "readily accessible"

documents relating to the First Amended Complaint.[20] But the NRA has already produced

---

[16] Br. at pp. 3-4; Declaration of Jason C. McKenney, dated March 23, 2020, (APP.001-004) ("McKenney Decl.") ¶ 12.

[17] McKenney Decl. ¶¶ 11-12. Defendants specifically identified their dissatisfaction with NRA's responses and objections to RFP Nos. 4, 5, 16, 39, 40, 88, 89, 54 (Dkt. No. 56, Ex. # A-1 (APP015-019, 021).

[18] Dkt. No. 56, Ex. A-1 (APP021).

[19] *See* Collins Decl. ¶ 17, identifying bates numbers of produced documents responsive to RFP 86.

[20] Br. 22-23.

documents responsive to substantially all the Requests identified in part III.E. of Defendants' brief.[21]

### 3.   The NRA Continues to Produce Documents to Defendants.

The NRA continues to make productions responsive to those Requests to which the NRA interposed no objection (RFPs 14, 15, 20, 24, 26, 95, 96). For example, the NRA has produced 298 pages of the notes from Mr. LaPierre and additional productions are forthcoming.[22]

In addition, the NRA has reconsidered its objections based on certain of Defendants' arguments (not articulated during the parties' conference on February 3, 2020) and agrees to produce not-privileged documents responsive to RFP Nos. 16-17, 27, 28, 31, 54, 58 85, 88-89. As described in more detail below, the NRA will also produce *relevant* and not-privileged documents responsive to requests for the NRA's engagement letters with counsel (RFP Nos. 4, 6).

### 4.   Defendants Have Yet to Produce A Privilege Log.

Defendants complain that the NRA has failed to comply with its discovery obligations in part because it has yet to produce a privilege log, even though Defendants themselves have not produced a log.[23] The NRA anticipates producing a privilege log for thousands number of documents within 30 days and to continue to provide logs on a rolling basis. Contrary to Defendants' claims, nothing in the Federal Rules requires documents that are wholly irrelevant to any claim or defense to be placed on a privilege log.[24]

---

[21] Br., pp. 22-23, referencing RFPs 103, 109, 110, 112, 138 (Dkt. No. 56, Ex. # A-1 (APP023-024, 027)); Collins Decl. ¶ 18.

[22] Collins Decl. ¶ 19.

[23] *See* Collins Decl. ¶ 12 (the NRA requested production of a discovery log from Defendants in Plaintiff's first set of requests for production, Request No. 8).

[24] Br. at p.4. Courts have held that including documents in a privilege log is *de facto* evidence of discoverability of documents. See *In re Terrorist Attacks on Sept. 11, 2001*, 293 F.R.D. 539, 546 (S.D.N.Y.

Moreover, the NRA has worked with its consultant, Forensic Risk Alliance ("FRA"), to produce a privilege log (amended and produced on January 30, 2020), to reflect the identity of the documents and the basis for withholding the documents over which the NRA claims privilege,[25] Defendants have yet to identify any privilege or protection over the documents they withhold.

**B.     Defendants Misrepresent the NRA's Production Efforts and the Positions Expressed by the Parties During Counsel's Conference on February 3, 2020.**

Defendants assert that Plaintiff had yet to identify any custodians as of the date of the parties' conference.[26]  That simply is not the case: by the date of the conference, February 3, 2020, the NRA had already identified and searched the files of more than 120 custodians, to produce more than 28,000 documents.[27]  The suggestion that Defendants are the only party engaged in good-faith and serious efforts to accomplish discovery in this matter is untrue and irresponsible, particularly considering that Defendants lag behind the NRA in production of responsive documents,[28] and in production of readable Electronically Stored Information.[29]

Defendants also attempt to portray the NRA's statements about the timing of its next production as amounting to "bad faith."[30] But the NRA said it would produce more documents

---

2013) ("[T]he mere fact that the Plaintiffs have listed the FOIA correspondence on their privilege log suggests that it is responsive to the Defendants' requests and, therefore, at least discovery relevant.").

[25] Defendants acknowledge as much on page 17 of their Brief, in which Defendants complain of the documents which have been properly withheld on the basis of attorney-client privilege or under the work-product doctrine for expressions of opinion.

[26] *Id.* at p. 4.

[27] Collins Decl. ¶ 15; NRA Discovery Chart, Ex. A to the Collins Decl.; McKenney Decl. ¶ 8.

[28] Collins Decl. ¶ 12.  Defendants have produced fewer than 22,000 documents. *Id*.

[29] Collins Decl. ¶ 12.  Ackerman and Mercury's initial production volumes were not in a readable electronic format, and despite months of requests seeking a replacement for those volumes, no such readable replacement volumes have issued. *Id*.

[30] Br. at p. 3.

shortly, and promptly produced 4,200 responsive documents and 12,800 pages from more than 100 custodians, during the course of February and March 2020.[31]

## C.   Defendants Attempt to Revive Arguments That Were Already Rejected By the Virginia Court.

Notably, to bolster the insinuation that Plaintiff's counsel, Brewer Attorneys & Counselors ("BAC") harbored ill motives, and to strengthen their tenuous relevance hypothesis, Defendants paint the false impression that BAC effectively "went rogue" when it filed a lawsuit on behalf of its client against two of the instant defendants for breach of contract.[32] Despite the suit's authorization by an executive officer empowered to make such decisions under Plaintiff's bylaws, defendants Ackerman and Mercury raised this very argument in their bid to dismiss the parallel, but now-stayed, Virginia lawsuit. The Court in Virginia rejected Ackerman and Mercury's averment[33] because the defendants failed to identify any applicable law (or bylaw) to support their novel theory.

Defendants also seek to revive another failed argument that defendant Ackerman previewed in the Virginia litigation. In the now-stayed Virginia case, Defendants challenged the NRA's assertion that documents generated by Forensic Risk Alliance ("FRA") – a forensic accounting firm retained by counsel to assess Ackerman's compliance with the parties' Services Agreement – are protected from disclosure by the attorney client privilege and the work product doctrine. The Court largely rejected Ackerman's argument for the reasons described in more detail below. This Court should similarly reject both of Defendants' failed arguments.

---

[31] Collins Decl. ¶¶ 16; NRA Discovery Chart, Ex. A to the Collins Decl.; McKenney Decl. ¶ 10.

[32] Br. at p. 8.

[33] *See* Order, Oct. 8, 2019, in the Virginia Case, Ex. E to Collins Decl. (APP.279-281).

## III.
## ARGUMENTS AND AUTHORITIES

**A.    Defendants' Misstate the Scope of Discovery Available To Defendants, and the Burden to Prevail on Defendants' Motion.**

Of course, the "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." pursuant to Federal Rule of Civil Procedure 26(b).[34] But Defendants may not ignore the stated limits to its right to obtain discovery: Defendants may only obtain discovery of information that is (1) "nonprivileged," and (2) "relevant to any party's claim or defense." [35]

*Threshold Showing.* Defendants misinform the Court of the standard they must satisfy to prevail on their motion to compel. The Honorable J. Fish has specifically rejected Defendants' theory that Plaintiff carries the initial burden to demonstrate that Defendants' requests are impermissible. In particular, Judge Fish held in *Spiegelberg Mfg., Inc. v. Hancock*, that a movant must first "establish[] that its interrogatories and document requests are within the scope of permissible discovery." Only then will "the burden shift[] to [Plaintiff] to show why discovery should not be permitted."[36]

---

[34] Fed. R. Civ. P. 26(b)(1):

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering [among other things] . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

[35] *Id.*

[36] *Spiegelberg Mfg., Inc. v. Hancock*, No. 3-07-CV-1314-G, 2007 WL 4258246, at *1 (N.D. Tex. Dec. 3, 2007) (citing *Corrigan v. Methodist Hospital*, 158 F.R.D. 54, 56 (E.D. Pa.1994); *Amcast Industrial Corp. v. Detrex Corp.*, 138 F.R.D. 115, 118 (N.D. Ind. 1991); *but see Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005) (Lynn, J.), *quoting McLeod, Alexander, Powel and Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir. 1990)).

"***Nonprivileged.***" It is incumbent on Defendants to limit their requests to information that is "nonprivileged," per Rule 26. A motion to compel production responsive to a discovery request which seeks "clearly privileged" information exceeds the "bounds of fair discovery," and must be denied.[37] In *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, the United States District Court for the Southern District of Texas (Houston) denied a plaintiff's motion to compel a defendant's response to a request for "[a]ll documents concerning this litigation or concerning any [d]efendant's defense of the same."[38] The Court held that the requests "cast 'a wide net that is guaranteed to snare privileged material,'" and therefore excused defendant's failure to timely respond to the request and denied the motion with respect to that request.[39]

Sweeping requests for privileged information – for example, Defendants' First RFP No. 9, seeking *all communications between the Plaintiff and Plaintiff's lead counsel* – fall far outside the "bounds of fair discovery," and seek to shift Defendants' burden to request non-privileged information onto Plaintiff, by requiring a response which catalogs, for Defendants' convenience, all of Plaintiff's clearly privileged communications with its counsel.

"***Relevant to any party's claims or defenses***." While discovery is liberally permitted, "relevancy under Rule 26 is not without bounds."[40] The Courts are rightfully reluctant to "allow any party to 'roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'"[41]

---

[37] *In RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, No. CIV.A. H-07-2426, 2008 WL 2036816, at *7 (S.D. Tex. May 9, 2008).

[38] *Id.*

[39] *Id.* (quoting *Kolenc v. Bellizzi*, No. 95 CIV.4494 (LMM KNF), 1999 WL 92604, *3 (S.D.N.Y. Feb. 22, 1999)).

[40] *See Bredemus v. Int'l Paper Co.*, 252 F.R.D. 529, 533 (D. Minn. 2008) (citing *Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota*, 187 F.R.D. 578, 589 (D. Minn. 1999)).

[41] *See id.*; *Carlson Cos., Inc. v. Sperry & Hutchinson Co.*, 374 F.Supp. 1080, 1080 (D. Minn. 1974).

Information is only discoverable if it "appear[s] germane."[42] That standard requires Defendants to prove that the information they seek "show[s] a reasonable expectation of obtaining information that will aid the dispute's resolution."[43]  Defendants insist that the animating principle behind the NRA's lawsuit is a vicious inter-familial power struggle. This is not true. However, even if it were remotely true, and even if evidence existed in the NRA's files that could prove that theory correct, the information would nevertheless remain outside of the scope of discovery because its presentation could not aid the Court in resolving any dispute which is *actually* before this Court.

Defendants aside, "no one would suggest that discovery should be allowed of information that has no conceivable bearing on the case."[44]  "[T]he requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery. . . . [and] judges should not hesitate to exercise appropriate control over the discovery process."[45]

## B.   The Claims and Defenses Before This Court Are Limited in Scope.

Defendants' dramatic spin on this family story does not render "relevant" the immaterial information targeted by Defendants' sweeping demands for extraneous information.  The targeted information may be relevant to components of Defendants' story, but none of it has any bearing on the claims or defenses that are *actually* pled in this litigation.

---

[42] *Id.*

[43] *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (emphasis added) ("Although the scope of discovery is broad, requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution.").

[44] 8 Fed. Prac. & Proc. Civ. § 2008 (3d ed.). *See also Jones v. Metzger Dairies, Inc.*, 334 F.2d 919, 925 (5th Cir. 1964) (In permitting "full and complete discovery," it is necessary that the "process must be kept within workable bounds on proper and logical basis for determination of relevancy of that which is sought to be discovered.), *cert. denied*, 379 U.S. 965, 85 S. Ct. 659, 13 L. Ed. 2d 559 (1965).

[45] *Herbert v. Lando*, 441 U.S. 153, 177, 99 S. Ct. 1635, 1649, 60 L. Ed. 2d 115 (1979).

The NRA's claims are limited to (i) violation of various property rights (Lanham Act -15 U.S.C. § 1125(a)(1)(A) false association; Copyright Act - 17 U.S.C. § 101, *et seq* infringement; conversion), (ii) breaches of contract and fiduciary duties, and (iii) claims of fraudulent reporting of material data.[46] Defendants' counterclaim against the NRA allege (i) breach of the NRA's contract with Ackerman, (ii) libel and (iii) tortious interference with other of Ackerman's contracts (although Defendants fail to allege any actual tort against the NRA).[47]   Defendants also assert a claim for fraud against third-party defendant, Wayne LaPierre, specifically alleging that Mr. LaPierre made false claims to them regarding "performance analytics, commentators, [and] [t]hird [p]arty NRA [c]ontracts" associated with the now defunct NRATV operation, formerly managed by Ackerman.  No claim for fraud is alleged against the NRA.

Defendants have asserted defenses to the NRA's claims: authorization, fair use, justification, conditions precedent, waiver, mootness, estoppel, and ratification, regarding the NRA's property claims; truth *only* with respect to the NRA's claim for false association under the Lanham Act; and finally, Defendants plead mitigation, unclean hands, no standing, and plaintiff's fault, in defense of all claims.

The resolution of these claims or defenses cannot possibly be aided[48] by, for example*,* communications among Plaintiff's counsel's family members regarding the declining health of counsel's father in law (RFPs 1-3); a picture of an NRA executive holding a firearm (RFP 49); nor

---

[46] Plaintiff's First Amended Complaint, Dkt. No.18, at ¶¶ 94-187.

[47] Defendants' Amended Answer and Defendant/Counter-Plaintiff Ackerman McQueen Amended Counterclaim and Third-Party Complaint, Dkt. No. 31, at ¶¶ 119-184.

[48] *In re CSX Corp.*, 124 S.W.3d at 152 ("Although the scope of discovery is broad, requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution.").

security measures undertaken to safeguard the life of Plaintiff's chief executive and those of his family members (RFP 52).

**C.      The Motion Should Be Denied As To Defendants' Sweeping Requests For Privileged, Information.**

Defendants' Motion seeks to compel production of *all* documents responsive to Request Nos. 4, 6-9, 12-13, 16-17, 23, 41, 44 and 79.[49] The NRA's objections should be sustained because, among other things, these requests seek privileged information, including:

- all documents and communications exchanged between Plaintiff and its lead counsel in the instant litigation (RFP No. 9, 41, 79).

- NRA's legal expenses (RFP No. 4-8);

- the NRA's *other* legal proceedings, including the disposition of a confidential legal settlement to which no Defendant is a party (RFP Nos. 6-8, 23, 42-44);

With respect to Defendants' requests for privileged information, Defendants purport to assert the crime-fraud exception, but fail to plead any evidence of fraud by the NRA. In fact, Defendants only allege fraud against third party defendant Mr. LaPierre,[50] and only assert fraud as an affirmative defense with respect to Mr. LaPierre's direct communications with Ackerman.[51] Having failed to even allege fraud against the NRA, Defendants are not permitted to reluctant to "roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so."[52]

---

[49] Dkt. No. 56, Ex. A-2 at pp. 5-12, 24, 42-43 (APP037-044, 056, 074-075).

[50] *See* Dkt. No. 31 at p. 113, ¶¶ 135-137.

[51] *See* Dkt. No. 31 at p. 76, ¶ 205.

[52] *Bredemus v. Int'l Paper Co.*, 252 F.R.D. 529, 533 (D. Minn. 2008) (citing *Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota*, 187 F.R.D. 578, 589 (D. Minn. 1999)); *Carlson Cos., Inc. v. Sperry & Hutchinson Co.*, 374 F.Supp. 1080, 1080 (D. Minn. 1974).

1.      **Defendants' Requests Target Documents That Are Obviously Privileged.**

Defendants target communications exchanged between Plaintiff (or its CEO or Vice President) and Plaintiff's lead counsel in this matter (RFP Nos. 9, 41, 79). "Documents and communications exchanged between (a) the NRA and (b) [William] Brewer or the Brewer [Law] Firm, from January 1, 2017 to the present,"[53] are "clearly privileged." Similarly, documents concerning the legal tasks for which Plaintiff has been billed, are "clearly privileged." (RFP No. 5, 12, 17 and 79).

2.      **Defendants' Requests Targeting Plaintiff's Legal Bills and Internal Communications Regarding the Content of Those Bills, Seek Privileged Information and In Any Event Are Premature.**

Defendants' RFP 5, 39 and RFP 43 are facially overbroad and create an undue burden warranting denial of the Motion.[54] These Requests ***broadly seek all documents and communications relating to amounts earned by BAC for services performed on behalf of the NRA***, as well as ***all*** "billing statements or invoices" and documents reflecting "payment" for ***over a three year period*** and ***all*** NRA/BAC legal engagements.[55] Such information is widely deemed irrelevant for purposes of pre-trial discovery.[56] Conceding as much, Defendants limit their argument to a request for the amounts earned for *this lawsuit*, on the basis that this information is discoverable because the NRA will seek reasonable attorneys' fees should it prevail.[57] However,

---

[53] *See* RFP No. 9 (Dkt. No. 56, Ex. # A-1 (APP015)).

[54] *See, generally*, *Samsung Elcs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 594-95 (N.D. Tex. 2017) (the Court determines that requests are facially overbroad and seek a scope of documents and information that is not proportional to the needs of the case).

[55] RFP No. 5 (Dkt. No. 56, Ex. # A-1 (APP015)).

[56] "The billing rates to clients in other types of matters are not sufficiently germane to require the broad-based discovery of other unrelated filed which is sought in this request." *In re First Peoples Bank Shareholders Litig.*, 121 F.R.D. 219, 227 (D.N.J. 1988).

[57] Br.r at 11.

discovery relating to statutory attorney's fees is a matter for discovery *after* liability is adjudicated.[58] Accordingly, discovery of non-privileged information responsive to requests for such information should be deferred.

Defendants seek documents and communications concerning the vetting of BAC legal bills by the NRA's General Counsel and others (RFP No. 12).[59] Such documents have no connection to Defendants claims or defenses.[60] That conclusion especially holds true for BAC bills and their vetting by the NRA for the NRA's *other,* unrelated, legal matters.

Defendants' brief neglects to mention that Defendants already possess responsive information concerning the vetting of Plaintiff's legal fees. Contrary to Defendants' assertion, multiple NRA witnesses testified that an NRA attorney personally knew and proposed retaining Mr. Brewer as the NRA's counsel, and that counsel's bills were scrutinized by Plaintiff's General Counsel, the Chief Financial Officer/Treasurer.[61] Further discovery into these matters should be denied unless Defendants establish a cognizable basis for prolonging their fishing expedition.

### 3.      The Requests Seek Privileged Drafts of Engagement Letters (RFP Nos. 4-6)

Draft engagement letters are widely recognized as privileged and/or work product.[62] No reasonable basis exists to hoist upon the NRA the undue burden of searching for presumptively

---

[58] *CSX Transp., Inc. v. Peirce*, No. 5:05CV202, 2012 WL 5354544, at *2 (N.D.W. Va. Oct. 29, 2012) ("The amount of attorneys' fees, then, is not a 'fact of consequence' in the determination of the initial judgment, but rather it is a fact that this Court will only take into account if it makes an award of attorneys' fees in a separate judgment.").

[59] Br. at p. 9-12.

[60] Br. at p. 8.

[61] *Compare* Br. at p. 9 & n. 14 *with* Dkt No. 57, Ex. A-8 at 109:20-110:3, 130:10-131:4, 262:6-14 (APP503) (Meadows Dep.); Ex. A-12 at 155:22-157:7, 159:3-6, 164:25-165:12, 168:5-25, 190:12-191:23 (APP715-718, 724) (LaPierre Dep.).

[62] *See, e.g.*, *Firefighters Retirement Sys. v. Citgo Gr. Ltd.*, Civ. Action No. 12-373-SDD-EWD, 2018 WL 305604, at *6 (M.D. La. Jan. 5, 2018) (holding that "draft UBS engagement" letter was privileged).

privileged and irrelevant documents and placing them on a privilege log.[63] The NRA's objections
to Request Nos. 4 and 6, as they relate to production of engagement letters for other matters, should
stand. As described in more detail below, relevant (non-draft) engagement letters will be produced.

### 4.   The Crime-Fraud Exception Does Not Apply Here.

Defendants invoke the crime fraud exception but fail to meet the heavy burden to show
that privileged communications were "in furtherance of the contemplated or ongoing criminal
activity."[64] Tellingly, Defendants did not mention the possibility that they intended to raise the
crime-fraud exception during the February conference.[65] Moreover, it is inconceivable that *all*
privileged communications between the NRA and BAC between after January 1, 2017, as sought
in the overbroad Requests, should be included in such a narrow – and extraordinarily burdensome
– exception.[66] Indeed, Defendants level the serious charge that it is the victim of some crime or
fraud, yet provides only a paucity of details concerning the particulars of the offense, when or how

---

[63] *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, No. C 06-3219 JWRS, 2009 WL 5114077, at
*3 (N.D. Cal. Dec. 18, 2009) ("Counsel's communications with the client and work product developed once
the litigation commences are presumptively privileged and need not be included on any privilege log.");
*See also Kellgren v. Petco Animal Supplies, Inc.*, No. 13-CV-644 L (KSC), 2016 WL 4097522, at *6 (S.D.
Cal. July 7, 2016) ("The date litigation commences does not set the outer boundary for production of
responsive non-privileged documents.").

[64] *In re Grand Jury Subpoena,* 419 F.3d 329, 343 (5th Cir. 2005); *United States v. Dyer*, 722 F.2d
174, 178 (5th Cir. 1983) ("We hold that only when the Government can by competent evidence establish a
prima facie case that an attorney was being used in the commission of a crime is there no privilege.").

[65] McKenney Decl. ¶ 13; *Cf. Laser Indus. v. Reliant Techs.*, 167 F.R.D. 417, 428 (N.D. Cal. 1996)
("We therefore must agree with petitioners' contention that where a fact finder undertakes to weigh
evidence in a proceeding seeking an exception to the privilege, the party invoking the privilege has the
absolute right to be heard by testimony and argument.").

[66] *See In re Grand Jury Subpoena*, 419 F.3d at 343 ("We conclude that the proper reach of the
crime-fraud exception when applicable does not extend to all communications made in the course of the
attorney-client relationship, but rather is limited to those communications and documents in furtherance of
the contemplated or ongoing criminal or fraudulent conduct.").

many times it occurred, and competent evidence connecting the attorney to its commission.[67] Consistent with other courts in this circuit and elsewhere, Defendants' overbroad and imprecise challenge dooms the privilege challenge at the outset.[68] Indeed, the brief's three lines and one-sided citations to two deposition transcripts—the sum total of Defendants' crime-fraud challenge—falls well short of piercing the privilege.[69]

Defendants must demonstrate that they are entitled to the information sought through admissible evidence *before* Plaintiffs are required to effectively catalog all of its correspondence with its lead counsel in this litigation, for Defendants' convenience. [70] Defendants have made no such showing because Defendants argument that the privileged documents are discoverable under the "crime-fraud" exception, must fail.

---

[67] *See Pritcharcl-Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 281 (8th Cir. 1984) ("Timing is critical, for the prima facie showing requires that the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme.").

[68] *In re BankAmerica Corp. Secs. Litig.*, 270 F.3d 639, 642 (8th Cir. 2001) ("A moving party does not satisfy this threshold burden merely by alleging that a fraud occurred and asserting that disclosure of any privileged communications may help prove the fraud. There must be a specific showing that a particular document or communication was made in furtherance of the client's alleged crime or fraud."); *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989) ("The crime-fraud exception has a precise focus").

[69] Br. at 8-9, n. 20. In any event, the deposition transcripts submitted by Defendants *support* the claim the Mr. North attempted to extort the NRA and Mr. LaPierre using information obtained from Defendants. *See Dkt. No. 57, Ex. A-9,* M. Hallow Dep. Tr. at 180:9 – 188:2 (APP616-618); *Id.* Ex. A-8, C. Meadows Dep. Tr. at 161:4 – 184:22 (APP516-521). *Cf. In re Grand Jury Proceedings in Matter of Fine*, 641 F.2d 199, 204 (5th Cir. 1981) ("These [circumstantial] facts may support a strong suspicion, which is often enough for police and prosecutors, but it is not enough for courts."); *Century 21, Inc. v. Diamond State Ins. Co.*, No. 03 CIV. 5163(GEL), 2006 WL 2355323, at *3 (S.D.N.Y. 2006) (stating that exceptions to the privilege are narrowly construed).

[70] *See Spiegelberg Mfg., Inc. v. Hancock*, No. 3-07-CV-1314-G, 2007 WL 4258246, at *1 (N.D. Tex. Dec. 3, 2007).

**D.** **The Motion Should Be Denied As To Defendants' Sweeping Requests For Information That Is Not Relevant To Any Claim or Defense.**

**1.** **The Information Targeted By Defendants' Requests for Production and Motion to Compel Responses Has No Bearing on the Parties' Claims or Defenses.**

Defendants point to no element of any claim or defense pled in this case to which the following targeted information is relevant:

- Plaintiff's knowledge of the terminal illness and decline of defendant Ackerman's former Chief Executive Officer (RFP Nos. 1-3);

- NRA's retention of counsel and its legal expenses (RFP No. 4-6);

- the NRA's *other* legal proceedings, including the disposition of a confidential legal settlement to which no Defendant is a party (RFP Nos. 6-8, 42-44);

- a contract and communications between the NRA and a lobbyist (RFP Nos. 18-19);

- internal controls and management matters, including whistleblower complaints, salaries of

- pictures of an NRA employee holding a firearm (RFP No. 49);

- security analyses for the safe transport of Plaintiff's Chief Executive (RFP No. 52);

- the NRA's decisions regarding funding, investments and stewardship of its funds (RFP Nos. 62-64, 66, 67); or

- personal communications among the family of Plaintiff's counsel (RFP Nos. 90-91).[71]

Defendants claim that certain Requests regarding Plaintiff's counsel are relevant because this and the different, but related, Virginia case were "developed by a resentful son-in-law and business competitor acting in that capacity."[72] Indeed, no property, contract or tort claim *actually* pled by any party can be illuminated by discovery of, for example: all drafts of Plaintiff's

---

[71] Dkt. No. 56, Ex. # A-1 (APP015-021).

[72] *Br.* at p. 8.

engagement letter(s) with Plaintiff's counsel,[73] which extends to contracts for representation in confidential and entirely unrelated matters. Notably, during the parties' conference on February 3, 2020, Defendants failed to inform the NRA of their theory that certain requests are relevant because retention of BAC as counsel for the NRA in this case *per se* tainted this litigation and rendered it a "meritless lawsuit."[74]

### 2. Defendants' Requests Targeting Information About Other Legal Proceedings Should Be Denied Because Defendants Establish No Nexus to any Dispute Before This Court. (RFP Nos. 6-8, 13, 23, 42-44).

Requests for documents in connection with other legal proceedings – against other parties, in which Defendants claim no interest, regarding claims that are not presented here – do not "show a reasonable expectation of obtaining information that will aid *th[is]* dispute's resolution."[75] Simply put, no legitimate grounds for a credible argument of relevance for these other, non-Ackerman matters exists. The Court should reject RFP 7 and RFP 13, as they seek presentations and other documents concerning legal matters where Defendants are not a party or a subject, such as documents about an NYAG investigation, the NRA's "non-profit status," and litigation with "other . . . vendors."[76] Similarly, RFP 44 seeks documents relating to the lawsuit and settlement between Lockton Affinity and the NRA. Those legal proceedings involved an insurance broker

---

[73] RFP No. 4 (Dkt. No. 56, Ex. # A-1 (APP015)).

[74] Br. at pp. 2, 8.

[75] *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (emphasis added) ("Although the scope of discovery is broad, requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution.") (citing *American Optical*, 988 S.W.2d 711, 713 (Tex.1998)). Since Defendants' requests can be tailored more narrowly to avoid "including tenuous information," such as information concerning legal proceedings of no relevance here, the requests are overbroad. *Id.*

[76] Dkt. No. 56, Ex. A-1 at pp. 7, 10, 23 (APP039, 042, 046).

and Defendants were not parties, nor do they have any bearing on the claims and defenses at issue in *this* case.[77] Defendants offer nothing to the contrary.

The NRA will produce to Defendants the original engagement letter with BAC that applies to this litigation, in Response to RFP No. 4.[78] However, Defendants want more: NRA/BAC engagement letters for matters where Defendants are *not* adverse parties, including matters like the NRA's successful civil rights suit against the City of San Francisco and its pending lawsuit against the New York Department of Financial Services for violations of the First Amendment.[79] Engagement letters for these legal matters have no plausible connection to Defendants 'theory that Mr. Brewer's supposed animus towards Mr. McQueen resulted in a cavalcade of "meritless lawsuits" as cover for the BAC law firm to compete to obtain the NRA's business from Defendants. Accordingly, Defendants' engagement letter requests falter even on their own, at best, marginal theory of relevance.

To extent the NRA received any non-privileged documents or communications relating to the retention of BAC in connection with litigations where Defendants are adverse parties, such materials will be produced, subject to a reasonable search and completion of a privilege log.

Defendants' efforts to sweep other sensitive legal proceedings into the discovery pool hinge on the same tenuous theory that all of the NRA's litigation is material to the instant lawsuit

---

[77] Dkt. No. 56, Ex. A-1at p. 24 (APP056).

[78] Collins Decl. ¶ 21.

[79] *See* National Rifle Association of America's Original Complaint and Jury Demand, ECF No. 1, *National Rifle Association of America v. Cuomo, et al.*, Case No. 1:18-cv-00566-TJM-CF (N.D. NY, May 11, 2018); Shepherd, Kate, *San Francisco branded the NRA a terrorist organization. The gun lobby is suing.*, THE WASHINGTON POST, (Sept. 10, 2019), available at: https://www.washingtonpost.com/nation/2019/09/10/san-francisco-nra-domestic-terrorist-organization-lawsuit/ (last visited: Mar. 19, 2020).

to the extent that the NRA utilizes counsel despised by Defendants: BAC.  The NRA will not produce documents relating to the retention of counsel in connection with litigation to which Defendants are not parties and in which they have no interest.

Not one of these distinct legal matters, nor any of the NRA's actions to protect itself from conflicts of interest, were "developed by a resentful son-and-law and business competitor acting in that capacity," one of Defendants' principal relevance theories.[80]  Again, the NRA's counsel is not a party to this litigation, and Defendants have made no claim and alleged no defense, the resolution of which can be aided by evidence tending to show that the NRA's legal counsel poses a competitive threat to Ackerman's business.

### 3.    The NRA Will Produce Not-Privileged Documents About Mr. McQueen's Illness, But Will Not Produce Documents About Alleged Conflicts of Interest (RFPs Nos. 1-3, 10 & 90-91).

Defendants failed to raise these inappropriate Requests during the conference of counsel (and thereby waived their right to do so in their Motion);[81] nonetheless, the NRA has reconsidered its position and agrees to conduct a reasonable search for, and produce, non-privileged documents responsive to RFPs 1-3 and RFPs 90-91.  The NRA, however, objects to RFP 10, which improperly seeks documents regarding supposed conflicts of interest between the NRA and BAC that have no bearing on this case and that Defendants have no standing to raise.[82]

In addition, RFP 7 seeks BAC presentations concerning alleged conflicts of interests. But discovery into conflicts potentially applicable to opposing counsel, which Defendants seek here,

---

[80] Br. at p. 8.

[81] *See Kellgren v. Petco Animal Supplies, Inc.*, No. 3:13CV644L(KSC), 2017 WL 979045, at *4 (S.D. Cal. Mar. 13, 2017) (Where the court found that the "Motion to Compel … is premature. As of the date the instant Motion was filed, the parties had not meaningfully met and conferred as to all of the disputed discovery requests on a request-by-request basis.").

[82] *See infra* note 82 and related text.

is not the appropriate procedure to raise a concern regarding conflicts of counsel.[83]  In any event, Defendants have not identified or explained how a true conflict of interest could apply here. Defendants should not be allowed to circumvent the traditional pathways for resolving alleged conflicts (*e.g.,* a motion to disqualify) and transform vague and speculative attacks on BAC into a pretext for obtaining privileged documents.[84]

For each of these RFPs, the NRA will log responsive, privileged presentations from BAC concerning the litigation between the NRA and Defendants.[85] Otherwise, the NRA's objections should be sustained.

Defendants did not identify RFPs 30-40 concerning audit committee documents as worthy of discussion during the perfunctory February 2020 meet-and-confer.[86] For this reason alone, the Motion should be denied as premature. [87] Indeed, the NRA has already produced, or Defendants have possession through its subpoena of its own employee, Col. North, documents responsive to

---

[83] *F.D.I.C. v. U.S. Fire Ins. Co.,* 50 F.3d 1304, 1314–15 (5th Cir. 1995) (quoting Model Rule 1.7 cmt. (1992) "Ideally, conflict of interest problems should be settled between the attorney and his client. Where an attorney's testimony may prejudice only his own client, the opposing party should have no say in whether or not the attorney participates in the litigation as both advocate and witness.").

[84] *Id. See* RFP No. 8 (re Unidentified North Presentation) (Dkt. No. 56, Ex. # A-1 (APP015)): The NRA's objection that the Request is "unclear" is well taken. Read literally, the Request makes no sense and fails to identify the sought-after document with reasonable particularity, and Defendants' brief makes no specific proffer of relevance. *Zuniga v. TrueAccord*, No. 2:18-CV-00683-KG-KRS, 2019 WL 6528759, at *2 (D.N.M. Dec. 4, 2019), citing *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649–50 (10th Cir. 2008), citing Wright & Miller, 8A *Federal Practice and Procedure* § 2211, at 415 ("[A] discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and to enable the court … to ascertain whether the requested documents have been produced.").

[85] Collins Decl. ¶ 23.

[86] *See* Dkt. No. 56, Ex. # A-1 (APP017-18).

[87] *See Kellgren v. Petco Animal Supplies, Inc.*, No. 13-CV-644 L (KSC), 2017 WL 979045 at *4 (S.D. Cal. Mar. 13, 2017).

many of these Requests.[88]  To the extent other responsive non-privileged documents exist, the NRA will produce them subject to a reasonable search.

    **4.**     **Defendants' Requests Seeking Documents About Supposed Competition Between BAC And Defendants Are Facially Overbroad (RFPs 7, 11, 64-65, and 87-89).**

Defendants offer a new relevancy theory for Request No. 7, but in doing so illustrates the overbreadth of that Request and how it encompasses privileged or irrelevant requests. Indeed, information provided by, and communications involving, a public relations firm for the purpose of assisting in the rendering or receipt of legal advice or litigation strategy is protected from discovery.[89] For similar reasons, Requests Nos. 11, 64-65 attempt to obtain *all* communications between the NRA's internal PR staff and BAC is facially improper and would sweep in documents unrelated to public affairs work.

Requests Nos. 87-88 are more narrowly tailored to the issues in this case, the NRA will produce responsive documents, unless they are privileged communications incorporating public relations information for purpose of providing or receiving legal advice and overbroad requests for NRA/BAC communications about "the media" no matter what the subject.[90]

---

[88] McKenney Decl. ¶ 14.

[89] *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (public relations advice obtained by law firm in connection with litigation was protected work product to extent it revealed strategy about the conduct of the litigation) (Rakoff, J.); *accord In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 219-221 (S.D.N.Y. 2001) (sustaining privilege claim because PR firm was the "functional equivalent" of an in-house division of the client-company); *In re Grand Jury Subpoenas Dated Mar. 24, 2003*, 265 F. Supp. 2d 321, 324-325 (S.D.N.Y. 2003).

[90] RFP No. 87 (Dkt. No. 56, Ex. # A-1 (APP021)).

**E.      As The Virginia Court Previously Determined, The NRA Has Not Put At Issue Its Privileged and Opinion Work Product From Forensic Risk Alliance (RFPs 47 & 101).**

Defendants seek to revive another failed argument that defendant Ackerman previewed in the Virginia litigation. In the now-stayed Virginia case, defendants Ackerman and Mercury challenged the NRA's assertion that documents generated by Forensic Risk Alliance ("FRA") – a forensic accounting firm retained by counsel to assess Ackerman's compliance with the parties' Services Agreement – are protected from disclosure by attorney client privilege and the work product doctrine. There, as here, Ackerman argued that the NRA had placed FRA's privileged communications and related work product "at issue" in the case. The Court rejected Ackerman's argument, because no "at issue" waiver can occur unless "the advice of counsel is [only] placed in issue." The advice is not placed at issue unless Plaintiff attempts to prove it's "claim or defense by disclosing or describing an attorney client communication."[91]

The Court found no "at issue" waiver. The NRA established before the Court in Virginia that (1) it did not offer or rely on, and did not intend to offer or rely in the future on, any of the privileged or work-product protected opinions and conclusions generated by FRA, in order to prove the NRA's causes of action. Defendants' reliance on *Navigant Consulting v. Wilkinson* does not alter the analysis: the NRA likewise has not and will not place "at issue" any protected in order to secure "affirmative relief."[92]  Moreover, factual assertions regarding (1) which documents

___

[91] *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d. 851, 863 (3d Cir. 1994) (holding that "[a]dvice is not in issue merely because it is relevant" to the claims and defenses in the litigation); *Tax-Right, LLC v. SICPA Product Sec., LLC*, No. 3:12CV657, 2013 WL 3791487 at *4 (E.D. Va. 2013) (applying *Rhone-Poulenc* to find no "at issue" waiver); *MeadWestvaco Corp. v. Rexam, PLC*, No. 1:10CV511 GBL/TRJ, 2011 WL 2938456 at *4-6 (E.D. Va. July 18, 2011) (reaching same result as -*Poulenc* and *Tax-Right* in the context of the work-product doctrine).

[92] *Navigant Consulting v. Wilkinson*, 220 F.R.D. 467, 478 (N.D. Tex. 2004) (denying motion to pierce privilege). As the Supreme Court of Virginia has recognized, "[w]aiver of the attorney-client privilege should not be found in every instance in which upholding the protections of confidentiality or privilege may unfairly become an obstacle to the truth, because such an expansive view of waiver would

Ackerman showed to FRA, and (2) the extent of Ackerman's cooperation with FRA, could not effect a waiver, because only disclosure of *protected* information can work a waiver; facts, as a rule, are not protected."[93]

In addition, the NRA argued that it possessed the absolute right to protect opinion work product from discovery, even if a waiver had occurred.[94] Following oral argument, the Court agreed with the NRA and found no "at issue" or affirmative waiver, and sustained the NRA's claim privilege assertion with respect to privileged communications and opinion work product. The Court ordered the NRA to produce *fact* work product only.[95] Defendants should not be permitted a "second run" at arguments that were fully briefed, and rejected, in Virginia.

As a result of the Virginia Court's rulings, both FRA and the NRA reviewed the documents listed on the FRA-related privilege log and produced *fact* work product documents and other non-privileged FRA-related documents. These were produced to Defendants in this litigation on January 30, 2020, along with an updated privileged log.[96] In light of the NRA and FRA's production and the limitations on the FRA-related documents withheld (and the identification of all such withheld documents on a privilege log), pursuant to the Virginia Court's Order, the NRA submits that it has satisfied its discovery obligations as to these Requests.

---

defeat the salutary purpose of the attorney-client privilege." *Walton v. Mid-Atlantic Spine Specialists*, 694 S.E.2d 545, 554 (Va. 2010).

[93] *See* Plf.'s Memo. of Law in Opp. to Def.'s Mot. to Compel Production of Documents From FRA, dated Nov. 8, 2019, Virginia Case, attached to Collins Decl. as Ex. F (APP.282-397) at pp. 3-13, incorporating legal authorities, arguments, and evidence here by reference.

[94] *Id.* at pp. 18-19. *See In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988) ("We think that when there is subject matter waiver, it should not extend to opinion work product.").

[95] *See* Nov. 13, 2019 Hr'g Tr. at 78:16-21, Virginia Case, attached to Collins Decl. as Ex. G (APP.398-483).

[96] Collins Decl. ¶ 22.

**F.      Defendants Lack Standing To Strike The NRA's Objections To Requests Which Are Not The Subject of Defendants' Motion to Compel.**

Defendants cite no authority supporting the proposition that they have standing to strike an opponent's particularized objections, when those objections are made in response to requests for production where the movant has not raised or sought an order to compel.

Defendants purport to challenge the so-called "boilerplate objections and privileges" interposed by the NRA.[97] However, the objections they identify, including those based on burden, relevance, overbreadth, and privilege are not "boilerplate." The NRA's objections are tethered to specific Requests for Production and are not prophylactic objections asserted across all requests. Accordingly, these objections are not "boilerplate."

**IV.**
**CONCLUSION**

For all the above reasons, Defendants' Motion to Compel Plaintiff's Document Production and Motion for Sanctions should be denied in its entirety and NRA should be granted all appropriate relief.

---

[97] Br. at pp. 20-21.

27

Dated: March 23, 2020

Respectfully submitted,

**BREWER, ATTORNEYS & COUNSELORS**

By:    */s/ Michael J. Collins*
        Michael J. Collins, Esq.
        State Bar No. 00785493
        mjc@brewerattorneys.com
        1717 Main Street, Suite 5900
        Dallas, Texas 75201
        Telephone: (214) 653-4000
        Facsimile: (214) 653-1015

        **ATTORNEYS FOR THE PLAINTIFF**
        **COUNTER-DEFENDANT NATIONAL RIFLE**
        **ASSOCIATION OF AMERICA**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 23rd day of March 2020.

        */s/ Michael J. Collins*
        Michael J. Collins