## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § <br> § <br> § |
| **Plaintiff and Counter-Defendant** | § <br> § |
| **and** | § <br> § |
| **WAYNE LAPIERRE,** | § <br> § |
| **Third-Party Defendant,** | § **Civil Action No. 3:19-cv-02074-G** <br> § <br> § |
| **v.** | § <br> § |
| **ACKERMAN MCQUEEN, INC.,** | § <br> § |
| **Defendant and Counter-Plaintiff,** | § <br> § |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG,** | § <br> § <br> § <br> § <br> § |
| **Defendants.** | § <br> § |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR ENTRY OF AN ALTERNATIVE PROTECTIVE ORDER FOR THE PARTIES

Ackerman McQueen, Inc. ("**AMc**"), Mercury Group, Inc. ("**Mercury Group**"), Henry Martin ("**Martin**"), William Winkler ("**Winkler**"), Melanie Montgomery ("**Montgomery**"), and Jesse Greenberg ("**Greenberg**") (collectively, "**Defendants**") file this *Response to Plaintiff's Motion for Entry of An Alternative Protective Order for the Parties* (ECF 61) (the "**Response**")[1], and respectfully show as follows:

---

[1] Defendants file this Motion subject to their Motion to Disqualify.  ECF 78.  Defendants do not intend this Motion to serve as a waiver of their rights with respect to that Motion to Disqualify and reserve all rights relating to same.

## I.    SUMMARY OF RESPONSE

The central issue before this Court is whether the NRA's lead counsel, William A. Brewer III ("**Brewer**"), and the public relations ("**PR**") unit at his law firm should be prohibited from accessing, reviewing, and otherwise using information designated as Highly Confidential through a two-tier protective order.  This Court should enter a two-tier protective order identical to the one entered by the Circuit Court of the City of Alexandria, Virginia (the "**Virginia Court**") in October 2019 after two separate hearings where that court determined Brewer and the PR unit at his law firm were direct competitors of AMc.  Plaintiff improperly contends that this Court should enter a one-tier protective order because Brewer and his PR unit are not direct competitors, and that entry of a two-tier protective order would essentially disqualify Brewer.  Plaintiff further contends that this Court should enter two different protective orders: one for the named parties and one for third-party discovery.  Each of Plaintiff's arguments is without merit.

*First*, Brewer and his entire law firm should be disqualified from representing the National Rifle Association of America (the "**NRA**"), Wayne LaPierre, or any other person against any Defendant in these disputes concerning the NRA.  In their Motion to Disqualify (ECF 78), Supporting Brief (ECF 79), and Supporting Appendix (ECF 80, 81) (collectively, the "**Motion to Disqualify**"), Defendants provided substantial evidence demonstrating Brewer's role as principal actor and tortfeasor in the underlying dispute, including his wrongful motives for requesting and using the information to be governed by any protective order.[2]  Defendants incorporate the factual allegations, arguments, and evidence from the Motion to Disqualify as if set forth fully herein.

---

Plaintiff filed a *Motion to Enter Proposed Protective Order for Non-Parties* on February 11, 2020.  ECF 50.  Defendants filed their *Response* on February 20, 2020, attaching thereto a proposed protective order that is nearly identical to the Parties' previously agreed-upon protective order governing the dispute in Virginia.  ECF 53 (citing to Ex. A to ECF 51).  In addition to replying to Defendants' Response, Plaintiff is also urging a new motion for protective order.  Defendants address Plaintiff's arguments in this Response.

[2] *See e.g.*, ECF 81 at Ex. A-3 at 163:1-164:15 [APP 219], at 169:10-170:7 [APP 221], 172:10-19 [APP 221], 172:7-9 [APP 221], 180:22-182:4 [APP 223-224], 199:22-201:22 [APP 228-229], 208:22-209:15 [APP 230-231], 215:9-13

*Second*, Brewer and the PR unit at his law firm are direct competitors of AMc, a finding that has already been made by the Virginia Court in parallel litigation involving the same issues in this case. Plaintiff claims it is "preposterous" that the Brewer Firm competes with AMc, yet that is exactly what the Virginia Court found when it walled off Brewer and his PR unit from access to AMc material designated as "Highly Confidential" after considering evidence and argument in two separate hearings.[3] Indeed, as further described in Defendants' Motion to Disqualify Brewer and the Brewer Firm, subsequent discovery has confirmed that Brewer and the PR unit at his law firm are direct competitors of AMc.[4]

*Third*, **the NRA's counsel proposed a two-tier protective order "that would prohibit the PR unit employees from having access to any of the discovery designated 'highly confidential*,'" *i.e.*, the NRA itself *offered* to restrict the PR unit (which includes Brewer).[5]

*Fourth*, the NRA proposes two separate protective orders, one for the parties and one for third-parties. This unnecessarily complicates the case and the rules governing the parties' (and third-parties') actions.

---

[APP 232], 223:10-224:25 [APP 234], 232:17-233:6 [APP 236-237], 235:3-13 [APP 237], 238:13-240:2 [APP 238]; ECF 81 at Ex. A-2 at 110:10-111:6 [APP 85], 116:18-21 [APP 86], 117:7-118:12 [APP 87], 255:15-256:4 [APP 121], 257:3-12 [APP 122], 304:18-306:12 [APP 133-134], 314:12-315:7 [APP 136], 319:18-320:4 [APP 137], 333:1-17 [APP 141], 341:9-342:1 [APP 143], 343:10-344:8 [APP 143], 395:11-396:15 [APP 156], 407:6-16 [APP 159]; ECF 81 at Ex. A-32 [APP 627]; ECF 81 at Ex. A-34 [APP 685]; ECF 81 at Ex. A-28 at 259:14-262:5 [APP 577-578]; ECF 81 at Ex. A-6 at 182:19-185:21 [APP 304-305]; ECF 81 at Ex. A-63 [APP 1118] (terminating Services Agreement).
[3] ECF 80 at Ex. A-58 at 42:4-19 [APP 970].
[4] *See e.g.*, ECF 80 at Ex. A-8 [APP 362] (Apr. 5, 2018 Email from Travis Carter); ECF 80 at Ex. A-9 [APP 365] (Apr. 13, 2018 Email from Brewer); ECF 80 at Ex. A-10 [APP 368] (Jun. 15, 2018 Email from Powell to Lacey (Duffy) Cremer); ECF 80 at Ex. A-66 [APP 1163] (Brewer recent statements on behalf of the NRA regarding COVID-19 and the NRA's lack of fundraising); ECF 80 at Ex. A-11 [APP 372] (Aug. 6, 2018 Email from Carter to Andrew Arulanandam); *see* ECF 80 at Ex. A-12 [APP 376] (Aug. 17, 2018 Email from Carter to Arulanandam); ECF 81 at Ex. A-13 at 38:4-17 [APP 389], 63:20-65:1 [APP 395-396], 28:1-20 [APP 386], 95:11-96:21 [APP 403], 48:2-50:9 [APP 391-392], 59:23-60:10 [APP 394], 61:7-62:10 [APP 395]; ECF 81 at Ex. A-2 at 284:8-18 [APP 119]; ECF 81 at Ex. A-14 [APP 441] (Servs. Agm't); ECF 81 at Ex. A-6 at 175:11-17 [APP 302]; ECF 81 at Ex. A-62 at 41:16-23 [APP 1044], 43:5-46:10 [APP 1044-1045], 47:20-48:18 [APP 1045], 88:2-89:8 [APP 1055-1056].
[5] *See* ECF 51 ¶ 14 & Ex. B-11 at 18:10-18, 26:5-27:22, 38:4-9, 42:4-12 (emphasis added).

*Finally*, entry of the NRA's one-tiered protective order permitting Brewer and his law firm to review AMc's competitive and Highly Confidential information will eviscerate the Virginia protective order currently in place and provide Brewer and his PR unit unfettered access to AMc's sensitive information.[6]  While this Court may not be bound by an order of the Virginia Court, given that the same parties (with the exception of a few individual parties added to this action), the same claims, the same issues, and the same concerns have been raised in both cases, it is appropriate for this Court to enter the same protective order already in place.

Therefore, Defendants respectfully request that the Court deny the NRA's Motion and enter the protective order enclosed with *Defendants' Response to Plaintiff's Motion to Compel* (and attached herein again as **Exhibit A**) that is virtually identical to the Virginia protective order, which maintains the two-tier confidentiality designations, promotes uniformity and compliance, and protects AMc's competitive information.[7]

---

[6] *See* ECF 51 at Ex. B-21 § 2.5 ("Documents designated 'Highly Confidential' for purposes of the Virginia Action shall be treated as 'Confidential' for purposes of this Action.").

[7] ECF 51 at Exhibit A.  Defendants incorporate the factual allegations and arguments from that Response as if set forth fully herein

## II.   RESPONSE

### A.   AMc's Proposed Protective Order Should Be Entered.

*First*, Plaintiff argues that the two-tier protective order is "unmanageable" but fails to demonstrate how or why Brewer and the PR unit need to access AMc's Highly Confidential information.[8]  To the contrary, in Virginia, the NRA *offered* the two-tier scheme as a manageable solution[9] and now seeks to unwind it, which would undermine the Virginia protective order and render it meaningless.  Indeed, the NRA has been operating for the last seven months (and continues to operate) under the two-tiered protective order in Virginia where the parties have collectively produced tens of thousands of documents.

Further, Brewer's competition with AMc is not a "recent" narrative but has been the subject of disputes since June 2019, precipitating the Virginia Court's ruling in August 2019 to wall-off Brewer and his PR unit from access to AMc's Highly Confidential information.[10]  Moreover, regardless of whether any third party agreed or allegedly (unsupported by any evidence) "advocates" for a single-tier protective order, it is *AMc's* interests that require protection.[11]

*Second*, the narrative of Brewer's competition is not a "contrived" response in support of document stonewalling.  Testimony from the NRA demonstrates that (1) AMc complied with the document requests[12]; (2) the NRA had no issue with what was supplied[13]; (3) *Brewer* wanted

---

[8] *See* ECF 61 at 2.

[9] *See* ECF 51 ¶ 14 & Ex. B-11 at 18:10-18, 26:5-27:22, 38:4-9, 42:4-12.

[10] *See generally* ECF 80 at Ex. A-1 at 3-21 (June 26, 2019 Hr'g Tr.).

[11] *Cf.* ECF 61 at 6.

[12] *See* ECF 81 at Ex. A-2 at 353:13-354:1 [APP 146], 354:10-14 [APP 146], 354:22-355:5 [APP 146]; ECF 80 at Ex. A-45 [APP 802] (Aug. 22, 2018 Ltr. to Brewer).  *See also* ECF 81 at Ex. A-2 at 231:13-232:18 [APP 115], 247:11-249:6 [APP 119-120], 255:15-256:4 [APP 121]; ECF 81 at Ex. A-3 at 197:14-202:4 [APP 228-229], 199:22-201:22 [APP 228-229]; ECF 81 at Ex. A-37 at 45:1-5 [APP 707], 45:18-22 [APP 707], 46:11-21 [APP 707], 65:13-66:1 [APP 712], 104:6-11 [APP 721], 105:7-16 [APP 722], 206:11-207:2 [APP 747], 283:4-284:7 [APP 766], 286:9-287:7 [APP 767], 334:18-335:10 [APP 779].

[13] *See e.g.*, ECF 81 at Ex. A-62 at 305:6-21 [APP 1110].

additional documentation, including how AMc billed other clients[14]; and (4) the only person who complained about insufficient documents—the only person with "facts" supporting the alleged breach of contract for failure to provide the requested records—is Brewer.[15]

*Third*, Plaintiff expends much effort attempting to distinguish the structure of the Brewer PR unit from AMc.  What Plaintiff has not done—and cannot do—is refute that Brewer and the PR unit have taken over some of AMc's *exclusive* work for the NRA.[16]  By way of illustration, suppose Steve Jobs has a son-in-law with inside information about Apple technology who unethically and tortiously uses his insider information to compete *only* with the Apple Watch.  That targeted, unlawful competition is no less wrongful simply because the son-in-law is not replacing the entire Apple suite of products with his own.  Plaintiff tries to distinguish the services provided by AMc for Plaintiff under the Services Agreement, but then concedes that the Brewer Firm "*typically* do[es] not offer such services in the marketplace."[17]  This is nothing more than an admission that Brewer and his PR unit have offered such services and, if provided access to AMc's Highly Confidential and competitive information, could use that information to gain a competitive advantage in expanding the Brewer Firm's services in the marketplace.

---

[14] *See e.g.*, ECF 81 at Ex. A-2 at 231:13-232:18 [APP 115], 247:11-249:6 [APP 119-120].

[15] *See* ECF 81 at Ex. A-62 at 305:6-21 [APP 1110]; ECF 81 at Ex. A-37 at 334:18-335:10 [APP 779].

[16] *See e.g.*, ECF 80 at Ex. B ¶ 3 [APP 1170] (describing services AMc provided to the NRA); ECF 80 at Ex. A-66 [APP 1163] (Brewer recent statements on behalf of the NRA regarding COVID-19 and the NRA's lack of fundraising); ECF 80 at Ex. A-11 [APP 372] (Aug. 6, 2018 Email from Carter to Andrew Arulanandam); *see* ECF 80 at Ex. A-12 [APP 376] (Aug. 17, 2018 Email from Carter to Arulanandam); ECF 81 at Ex. A-13 at 28:1-20 [APP 386], 38:4-17 [APP 389], 48:2-50:9 [APP 391-392], 59:23-60:10 [APP 394], 61:7-62:10 [APP 395], 63:20-65:1 [APP 395-396], 95:11-96:21 [APP 403]; ECF 81 at Ex. A-2 at 284:8-18 [APP 119]; ECF 81 at Ex. A-14 [APP 441] (Servs. Agm't); ECF 81 at Ex. A-6 at 175:11-17 [APP 302]; ECF 81 at Ex. A-62 at 41:16-23 [APP 1044], 43:5-46:10 [APP 1044-1045], 47:20-48:18 [APP 1045], 88:2-89:8 [APP 1055-1056].  *Cf.* ECF 61 at 7 ("In fact, they have not submitted any evidence that the Brewer Firm PA team 'has already poached *substantial portions* of the NRA's PR work from Defendants.'").

[17] ECF 61 at 3 ("The Brewer PA team and Mr. Brewer typically do not offer such services in the marketplace.") (emphasis added).

*Fourth*, the type of PR services that Brewer and his firm are providing is not limited to the legal arena or matters of "public concern."[18]  For one thing, Brewer cannot thrust a private issue into the public and then call it or AMc a public concern/figure to argue his PR work is a necessary aspect of this litigation.[19]  For another, Brewer's PR services are for non-legal matters too, *i.e.*, taking over AMc's non-legal PR role.[20]  To illustrate, just last week, Brewer was quoted in an article discussing the NRA's actions to address the effects of COVID-19 by laying-off some of its employees, an issue wholly unrelated to these legal matters but central to the crisis-management and PR work that AMc did for the NRA for nearly 40 years.[21]  Plaintiff's claim that AMc has not done any work the Brewer Firm performs—crisis management for litigation or regulatory issues— is completely false.  As Plaintiff knows, AMc has previously crafted messaging for the NRA relating to litigation and regulatory issues, such as the Supreme Court case *District of Columbia v. Heller*, 554 U.S. 570 (2008), and several regulatory issues with the Bureau of Alcohol, Tobacco, Firearms and Explosives and the Department of Justice.[22]  Further, AMc has been the one responsible for the NRA's media communications and crisis management strategy, tasks the Brewer Firm has now taken over.[23]

---

[18] *See*, *supra*, note 16.

[19] *Neely v. Wilson*, 418 S.W.3d 52, 71 (Tex. 2013) (quoting *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) (A defamation defendant cannot create a defense "by making the claimant a public figure.  In other words, the allegedly defamatory statement cannot be what brought the plaintiff into the public sphere; otherwise, there would be no private figures defamed by media defendants.")).

[20] *See* ECF 80 at Ex. A-8 [APP 362] (Apr. 5, 2018 Email from Travis Carter); ECF 80 at Ex. A-9 [APP 365-367] (Apr. 13, 2018 Email from Brewer); ECF 80 at Ex. A-10 [APP 368] (Jun. 15, 2018 Email from Josh Powell to Lacey (Duffy) Cremer); ECF 80 at Ex. A-11 [APP 372-374] (Aug. 6, 2018 Email from Travis Carter to Andrew Arulanandam); ECF 80 at Ex. A-12 [APP 376-378] (August 17, 2018 Email from Travis Carter to Andrew Arulanandam); ECF 81 at Ex. A-13 at 28:1-20 [APP 386], 38:4-17 [APP 389], 48:2-50:9 [APP 391-392], 59:23-60:10 [APP 394], 61:7-62:10 [APP 395], 63:20-65:1 [APP 395-396], 95:11-96:21 [APP 403]; ECF 81 at Ex. A-2 at 284:8-18 [APP 119]; ECF 81 at Ex. A-6 at 175:11-17 [APP 302]; ECF 81 at Ex. A-62 at 41:16-23 [APP 1044], 43:5-46:10 [APP 1044-1045], 47:20-48:18 [APP 1045], 88:2-89:8 [APP 1055-1056].

[21] *See* ECF 80 at Ex. A-66 [APP 1163] (Brewer recent statements on behalf of the NRA regarding COVID-19 and the NRA's lack of fundraising).

[22] ECF at 80 at Ex. B ¶ 3 [APP 1170].

[23] *Id.*

B.   **Good Cause Exists to Enter Defendants' Proposed Protective Order.**

It is disingenuous for Plaintiff to argue that the information at issue is not Highly Confidential. On the one hand, Plaintiff has already agreed that "Highly Confidential" is defined as:

> Confidential Information [that reflects] **pricing and business strategy documents** concerning a particular product or service, **financial statements** reflecting sales data, **margin data**, **cost and expense data**, human resources or personnel files, and/or profit and loss data, **sales information relating to specific customers** or classes of customers, **non-public research**, provided that the nonpublic information is actually secret because it is neither known to, nor readily ascertainable by, another person or entity that can obtain economic value from the disclosure or use of such information, the Designating Party has taken reasonable measures to maintain the secrecy of that information and the Designating Party derives independent economic value and a competitive advantage from the secrecy of that information, including, as the case may be, containing information where production of the materials on a confidential or non-confidential basis would nonetheless likely cause substantial harm.[24]

The NRA has explicitly requested information within this Highly Confidential definition, including business strategy documents and sales information. For example, the NRA has requested this information from AMc as part of its requests for production.[25] Moreover, in a subpoena to *current client* Oklahoma Gas and Electric Corporation, the NRA requested budgets for services provided"; documents relating to "amount of money spent" for such services; and bills and invoices.[26] In addition to those same documents, the NRA also requested from *current client* Integris Health, Inc. documents relating to financial forecasts and predictions, and documents "concerning" AMc's programming services and viewership analytics, including "*how AMc created or otherwise generated the Viewership Analytics*."[27] If a party's business documents

---

[24] **Ex. B** (Virginia Protective Order) § 2.8 (emphasis added).
[25] ECF 48 at Ex. B.
[26] **Ex. C** (Subpoena to Oklahoma Gas and Electric Corporation)
[27] **Ex. D** (Subpoena to Integris Health, Inc.) (emphasis added).

showing pricing (billing rate calculations and invoices),[28] client lists, and proprietary project management detail are not highly confidential information akin to or within in the realm of trade secrets, then there would be no need to ever distinguish between competitive trade secret information and mere "sensitive" information that should simply be shielded from public disclosure.

This is not the reality, though.  Courts in this circuit have applied a two-tier protective order to keep an attorney from accessing an opposing party's highly confidential, competitive information, including when that attorney has competitive decision-making authority.[29]

Here, Brewer is the ultimate decision-maker regarding the litigation and actions taken by his name-sake law firm.[30]  In the traditional situation, the risk of inadvertent disclosure considers such disclosure from attorney to his client.  That risk would materialize were Brewer allowed

---

[28] For example, the NRA argued in its Motion that it "requested that Defendants provide documents and information relating to their business practices, documents to which Plaintiffs are entitled pursuant to the then-governing Services Agreement."  ECF 61 at 2.  The NRA specifically stated to AMc that it "requires visibility regarding prices charged by Ackerman to perform the same services for non-NRA clients."  ECF 8o at Ex. A-41 at 2 [APP 793].  But the Services Agreement actually only provides inspection of AMc books and records for documentation relating to the NRA projects, not unbounded access to all AMc documents for all clients.  ECF 81 at Ex. A-14 § VIII "Examination of Records."  Not to mention part of the reason AMc is designating such client information "Highly Confidential" is because it does not relate to "the same services" as provided for the NRA, in contradiction to their alleged request.

[29] See e.g., Diamond Consortium, Inc. v. Manookian, No. 4:16-CV-00094, 2017 U.S. Dist. LEXIS 82692, 2017 WL 2364040, at *6-7 (E.D. Tex. May 31, 2017) (finding good cause for two-tier protective order where defendant "had waged a negative advertising campaign" and there was risk defendant would use the confidential information "to defame" plaintiff and to disclose the information to others—even where defendant and plaintiff were not competitors); Round Rock Research, LLC v. Dell Inc., Case No. 4:11-CV-322, 2012 U.S. Dist. LEXIS 72053, 2012 WL 1848672, at *7 (E.D. Tex. Apr. 11, 2012) (discussing balancing test to avoid "unacceptable opportunity for inadvertent disclosure"); St Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC, No. 6:07-CV-346, 2008 U.S. Dist. LEXIS 107096, 2008 WL 5634214 (E.D. Tex. Mar. 14, 2008); Soule v. RSC Equip. Rental, Inc., No.11-2022 SECTION "N" (3), 2012 U.S. Dist. LEXIS 15904, 2012 WL 425166, at *9-10 (applying two-tier protective order).  Compare with cases cited in the Motion, ECF 61 at 8, e.g., Frees, Inc. v. McMillan, No. 05-1979, 2007 U.S. Dist. LEXIS 4343, at *16 (W.D. La. Jan. 22, 2007) (finding no good cause for protective order because the information was so highly technical that the opposing party would need to review it).  Here, the information is not highly technical and outside of the purview of traditional counsel; Brewer can understand the information on his own.  Additionally, in contrast with Anzures v. Prologis Texas I LLC, 300 F.R.D. 316, 317 (W.D. Tex. 2012), where the party seeking a protective order gave mere general and conclusory objections, here Defendants have explained what information is at issue and how its disclosure would harm AMc.

[30] Round Rock, 2012 U.S. Dist. LEXIS 72053, at *7; St Sales, 2008 U.S. Dist. LEXIS 107096, at *9 n.5 ("[I]f counsel is a competitive decisionmaker, most all of the policy concerns underlying the rule allowing courts to deny attorneys' access to confidential information typically are present."); see e.g., ECF 80 at Ex. A-1 at 18:1-4 (June 26, 2019 Hr'g Tr.); ECF 61 at 1 (NRA referring to Brewer as "lead litigation counsel").

access to the Highly Confidential information because, in that traditional scenario, he occupies both the lawyer and client's position.  In essence, Brewer is the one who stands to gain from the disclosure of this highly protected information.[31]

Although Plaintiff argues hardship in being denied the benefit of its chosen counsel, (1) chosen counsel does not include the PR unit, such that walling-off the PR arm presents no harm to Plaintiff; (2) almost all, if not all, of the lawyers in the Brewer Firm are participating in the lawsuit, including accessing, reviewing, and using AMc's Highly Confidential information; and (3) Plaintiff previously had no objection, and in fact agreed, to wall off its PR unit.  There is no harm to Plaintiff from *one* attorney being excluded from that information, particularly when that one attorney allegedly will not be advocating before the Court because of the witness-advocate rule.[32]  And if the Brewer Firm truly has only four people working in its PR unit, then the impact of the two-tiered protective order would only apply to five individuals (the four in the PR unit and Brewer).

To the extent that this Court declines to disqualify Brewer and the Brewer Firm altogether, the remedy via Defendants' proposed protective order will at least offer some minimal protection to AMc *before* the "cat is out of the bag" when such harm cannot be undone.[33]  The remedy is also limited in scope rather than overreaching, say, by barring all Brewer Firm attorneys from the Highly Confidential information.[34]

---

[31] *Round Rock*, 2012 U.S. Dist. LEXIS 72053, at *7 ("Access to discovery can be denied to 'competitive decisionmakers' who may inadvertently use the material for inappropriate purposes.").
[32] *See also* ECF 80 at Ex. A-1 at 20:7-21:16 (June 26, 2019 Hr'g Tr.); ECF 80 at A-58 at 28:16-18, 40:16-20.
[33] *Round Rock*, 2012 U.S. Dist. LEXIS 72053, at *7.
[34] *Id.*

In sum, Brewer's access to this information *is* unacceptable disclosure.[35]  Defendants' proposed order efficiently addresses discovery from parties and non-parties.  But to the extent Plaintiff is concerned about the specific non-party language, such can easily be added to Defendants' proposed order.[36]

## C.       There Is No Delay, but There Is Prejudice to Defendants.

Plaintiff alleges Defendants' Highly Confidential designations have delayed the Virginia Action, which delay Plaintiff wishes to preempt in this case by having a one-tier protective order.  Both the Virginia protective order and Defendants' proposed protective order in this case provide a procedure for challenging designations.[37]  Indeed, Plaintiff *and* Defendants have employed the challenge mechanism under the protective order already.  Using that agreed-upon process, which is common in routine protective orders, is not a basis for claiming undue delay.  Stated differently, if there are concerns by Plaintiff about a Highly Confidential designation, there are numerous procedures and protections in place for the NRA, including the procedures set forth in both protective orders and complying with the Honorable Judge Renee Harris Toliver's Standing Order on All Discovery Matters.[38]  Accordingly, there is no prejudice to Plaintiff.

In contrast, there is significant harm to Defendants if Brewer is allowed access to the Highly Confidential information.  If Brewer receives the information, it will impossible for AMc to retract it or limit its use.  One of the supported allegations in this lawsuit is that *Brewer* himself was leaking NRA information to the media but accusing AMc of such wrongdoing, and then using his own accusations as a basis for the NRA's breach of contract (confidentiality) claim against

---

[35] *Id.*; *St Sales*, 2008 U.S. Dist. LEXIS 107096, at *8 ("Under the relevant analysis, the focus of the inquiry is not the attorney's good faith, but the risk for inadvertent disclosure, and just as inadvertence is no respecter of its victims, neither is it a respecter of the integrity of those who fall prey to it.").

[36] *See* ECF 61 at 12.

[37] **Ex. A**; **Ex. B** (Virginia Protective Order).

[38] ECF 62.

AMc.[39]  It is reasonable to expect that Brewer would leak AMc's information to unknown third parties.  It is also reasonable, as set forth in Defendants' Motion to Disqualify, to expect that Brewer would use AMc's information to further entrench himself with the NRA, as he has already done with his insider information by virtue of being married to a member of the McQueen family.

## III.    PRAYER

WHEREFORE, Defendants respectfully request this Court deny Plaintiff's Motion; enter Defendants' proposed protective order attached as **Exhibit A**; and grant them all other relief, at law or in equity, to which they are justly entitled.

Dated: March 30, 2020                           Respectfully submitted,

                                                */s/ Brian E. Mason*
                                                **G. Michael Gruber, Esq.**
                                                Texas Bar No. 08555400
                                                gruber.mike@dorsey.com
                                                **Jay J. Madrid, Esq.**
                                                Texas Bar No. 12802000
                                                madrid.jay@dorsey.com
                                                **J. Brian Vanderwoude, Esq.**
                                                Texas Bar No. 24047558
                                                vanderwoude.brian@dorsey.com
                                                **Brian E. Mason, Esq.**
                                                Texas Bar No. 24079906
                                                mason.brian@dorsey.com

                                                **DORSEY & WHITNEY LLP**
                                                300 Crescent Court, Suite 400
                                                Dallas, Texas 75201
                                                (214) 981-9900 Phone
                                                (214) 981-9901 Facsimile

                                                **ATTORNEYS FOR DEFENDANTS**

---

[39] *See e.g.*, ECF 81 at Ex. A-49 [APP 809]; ECF 81 at Ex. A-37 at 139:4-11 [APP 730], 148:19-149:2 [APP 732-733], 149:13-22 [APP 733], 243:12-244:9 [APP 756] , 264:16-22 [APP 761], 308:13-18 [APP 772], 309:7-21 [APP 773]; ECF 81 at Ex. A-3 at 170:8-171:2 [APP 221]; ECF 81 at Ex. A-2 at 276:22-278:22 [APP 126-127], 322:19-324:15 [APP 138], 405:4-406:6 [APP 159], 406:16-407:16 [APP 159]; ECF 81 at Ex. A-62 at 239:3-22 [APP 1093], 281:5-282:7 [APP 1104].

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 30th day of March 2020:

*/s/ Brian E. Mason*
Brian E. Mason

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| **Plaintiff and Counter-Defendant** | § § | |
| **and** | § § | |
| **WAYNE LAPIERRE,** | § § | |
| **Third-Party Defendant,** | § § | |
| **v.** | § § | **Civil Action No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** | § § | |
| **Defendant and Counter-Plaintiff,** | § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG,** | § § § § | |
| **Defendants.** | § | |

**[PROPOSED] PROTECTIVE ORDER**

**1.      PURPOSES AND SCOPE**

1.1      Disclosure and discovery activity in this Action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this Action (as defined below) may be warranted. Accordingly, the Parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order (the "***Order***").

1.2     The purpose of this Order is to facilitate the production of discovery material, facilitate the prompt resolution of disputes over confidentiality and privilege, protect material to be kept confidential and/or privileged, and ensure that protection is afforded only to material entitled to such treatment, pursuant to the Court's inherent authority, its authority under the applicable Rules, the judicial opinions interpreting such Rules, and any other applicable law. Except as otherwise stated in this Order, a Party shall produce, in response to a valid discovery request, otherwise discoverable information in its possession, custody or control that is Confidential or Highly Confidential, and such information shall be handled in accordance with the procedures set forth herein.

1.3     This Order and all subsequent Protective Orders shall be binding on all Parties and their counsel in the above-captioned litigation and any other persons or entities who become bound by this Order.

1.4     The Parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.  The Parties further acknowledge, as set forth in Section 12.3 below, that this Order does not entitle them to file confidential information under seal.

## 2.     **DEFINITIONS**

The following definitions apply for purposes of this Order:

2.1     Action:  The lawsuit captioned above *National Rifle Association of America, et al. v. Ackerman McQueen, Inc.*, *et al.*, Civil Action No. 3:19-cv-02074-G (N.D. Tex).

2.2     Challenging Party:  A Party or Non-Party that challenges the designation of information or items under this Order.

2

2.3     <u>Confidential Information</u>:  Discovery Material (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection under the Federal Rules of Civil Procedure and applicable precedent.

2.4     <u>Counsel</u>:  Outside Counsel of Record, In-House Counsel, or counsel retained for the purpose of advising, prosecuting, defending, or attempting to settle this Action.

2.5     <u>Designating Party</u>:  A Party or Non-Party that designates documents, information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "PRIVILEGED" or "HIGHLY CONFIDENTIAL."

2.6     <u>Discovery Material</u>:  All items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, answers to interrogatories, documents, responses to requests for admissions, tangible things, and informal exchanges of information), that are produced or generated in connection with any discovery in this Action, whether formally or informally.

2.7     <u>Expert:</u>  A person retained by a Party or its Counsel to serve as an expert witness or consultant or technical advisor in this Action (as well as his or her employees and support staff).

2.8     <u>Highly Confidential Information</u>:  Discovery Material that meets the definition of "Confidential Information" and which the Designating Party reasonably believes to be information reflecting non-public technical research, pricing and business strategy documents concerning a particular product or service, financial statements reflecting sales data, margin data, cost and expense data, human resources or personnel files, and/or profit and loss data, sales information relating to specific customers or classes of customers, non-public research, provided that the nonpublic information is actually secret because it is neither known to, nor readily ascertainable by, another person or entity that can obtain economic value from the disclosure or use of such

3

information, the Designating Party has taken reasonable measures to maintain the secrecy of that information and the Designating Party derives independent economic value and a competitive advantage from the secrecy of that information, including, as the case may be, containing information where production of the materials on a confidential or non-confidential basis would nonetheless likely cause substantial harm.  Nothing herein precludes any Party from seeking additional protections not currently contemplated by this Order to be applied to any particular document or category of documents, including Highly Confidential Information.

2.9     <u>In-House Counsel</u>:  Attorneys who are employees of a Party to this Action.  In House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10    <u>Non-Party</u>:  Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action, and their counsel.

2.11    <u>Outside Counsel of Record</u>:  Attorneys who are not employees of a Party to this Action but have been retained to represent or advise a Party to this Action and have appeared in this Action on behalf of that Party or are affiliated with a law firm which has appeared on behalf of that Party.

2.12    <u>Party</u>:  Any party to this Action.

2.13    <u>Privileged Material</u>:  Discovery Material protected from disclosure under the attorney-client privilege, work product doctrine, or any other privilege, immunity or protection afforded or recognized by the Rules, including any such privilege or protection under applicable U.S. or foreign law, regulation or statute.

2.14    <u>Producing Party</u>:  A Party or Non-Party that produces Discovery Material in this Action.

4

2.15 <u>Professional Vendors</u>:  Persons or entities that provide litigation support services (*e.g.*, photocopying, videotaping, graphic support services, coding, translating, preparing exhibits or demonstrations, document review, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16 <u>Protected Material</u>:   Any Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

2.17 <u>Receiving Party</u>:  A Party that receives Discovery Material from a Producing Party.

2.18 <u>Virginia Action</u>: The consolidated lawsuits captioned *National Rifle Association of America v. Ackerman McQueen, Inc., et al.*, Case Nos. CL19002067, CL19001757, and CL19002886, pending before the Circuit Court for the City of Alexandria, Virginia.

3.  **SCOPE**

3.1     The protections conferred by this Order apply to Protected Material (as defined above) and also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, translations, or compilations of Protected Material; and (3) any oral, written, or electronic communications, testimony or presentations, including for purposes of settlement, by Parties or their Counsel that might reveal Protected Material.  However, the protections conferred by this Order do not cover information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order.

3.2     This Order and its protections apply for pre-trial purposes only.  The Parties will meet and confer at the appropriate time regarding any use of Protected Material at trial, which use shall be governed by a separate agreement or order.

4. **DURATION**

4.1     Even after final disposition of this Action, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.  Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; or (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5. **DESIGNATING PROTECTED MATERIAL**

5.1     <u>Manner and Timing of Designations</u>.  Except as otherwise provided in this Order (see, *e.g*., Section 5.2.4 below), or as otherwise stipulated or ordered, Discovery Material that qualifies for protection under this Order must be clearly so designated at the time the material is disclosed or produced.  The Parties shall make Confidential and Highly Confidential designations in good faith to ensure that only those documents or testimony that merit Confidential or Highly Confidential treatment are so designated.  Either designation may be withdrawn by the Designating Party.  If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, the Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2 <u>Designation in conformity with this Order requires the following</u>:

5.2.1 *Marking*.  All or any part of a document, discovery response, or pleading disclosed, produced, or filed by a Producing Party may be designated Confidential or Highly Confidential by marking the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL") on the face of the document and each page so designated.  With respect to tangible items, the appropriate legend shall be marked on the face of the tangible item, if practicable, or by written notice to the Receiving Party at the time of disclosure, production, or filing that such tangible item is Confidential or Highly Confidential or contains such information. With respect to documents produced in native format, the Electronically Stored Information Protocol, or ESI Protocol, to be entered in this Action shall govern the form and method for marking such documents as Confidential or Highly Confidential.

5.2.2 A Receiving Party shall exercise good faith efforts to ensure that any copies, print-outs of natively produced documents or data, excerpts, summaries, or compilations include a confidentiality legend that matches the confidentiality designation the Designating Party applied to the document, discovery response, transcript, or pleading.

5.2.3 *Timing*.  Except as otherwise provided herein, documents and other objects must be designated before disclosure or production.  In the event that a Producing Party designates some or all of a witness's deposition or other pre-trial testimony (or related exhibits) Confidential or Highly Confidential, such  designation may be made on the record of the deposition or hearing or within thirty (30) calendar days after receipt of the final transcript of such deposition or hearing.  The specific page and line designations over which confidentiality is claimed must be provided to counsel for the Parties within thirty (30) calendar days of receipt of the transcript in final form from the court reporter except counsel may agree to extend such period.  Deposition or

7

pre-trial testimony shall be treated as Highly Confidential pending the deadline or, if applicable, extended deadline for designation.  After the expiration of that period, the transcript shall be treated only as actually designated.

      5.2.4    For information produced in some form other than documentary and for any other tangible items, the Producing Party shall affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."  If the Protected Material is produced in an electronic form with a load file, the Designating Party shall note that there is Protected Material in the load file.  If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

      5.2.5    *Inadvertent Failures to Designate*.  Accidental or inadvertent disclosure of Protected Material—including Protected Material inadvertently disclosed by failure to redact as set forth in Section 11—does not waive the confidential status of such information or any privilege or other protection attached thereto.  In the event that Protected Material is inadvertently disclosed without appropriate designations, any Party or Non-Party may thereafter reasonably assert a claim or designation of confidentiality, and the Producing Party shall promptly provide replacement media.  Thereafter, the Receiving Party must promptly return the original information and all copies of the same to the Producing Party, or destroy the original information and all copies, and make no use of such information.  In the event that Protected Material is inadvertently disclosed to any person and such disclosure is not permitted by the terms of this Order, the Party making the inadvertent disclosure shall promptly notify the Producing Party of such inadvertent disclosure within ten (10) calendar days of learning of it and will make all reasonable efforts to ensure the

original and all copies of inadvertently disclosed information are not used and are promptly returned or destroyed.

6.    **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1    <u>Timing of Challenges</u>.  A challenge to a designation of confidentiality may be made at any time.  Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount it a challenge promptly after the confidentiality designation is made.

6.2    <u>Form of Challenge</u>.  The Challenging Party shall object to the propriety of the designation of specific material as Confidential or Highly Confidential by providing written notice to the Designating Party of each designation it is challenging and describing the basis for each challenge.  To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific Section of this Order.  The Designating Party or its counsel shall thereafter, within fourteen (14) calendar days, respond to such challenge in writing by either: (i) agreeing to remove the designation; or (ii) stating the reasons for such designation.  Counsel may agree to reasonable extensions.

6.3    <u>Meet and Confer</u>.  If the Challenging Party continues to dispute the designation(s) at issue, it shall notify the Designating Party in writing within seven (7) calendar days thereafter. Counsel may agree to reasonable extensions.  The Parties shall attempt to resolve each challenge in good faith by conferring directly (in voice-to-voice dialogue; other forms of communication are not sufficient).  A Challenging Party may proceed to the next stage of the challenge process only

if it has engaged in this meet-and-confer process first or establishes that the Designating Party is unwilling to participate in the meet-and-confer process in a timely manner.

6.4     Judicial Intervention.   If the Parties cannot resolve a challenge without court intervention, the Challenging Party may move the Court for an order withdrawing the designation as to the specific designations on which the Challenging Party and the Designating.  Party could not agree, within fourteen (14) calendar days of the Parties agreeing that the meet-and-confer process will not resolve their dispute.  Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet-and-confer requirements imposed in the preceding Section.

6.5     The burden of persuasion in any such challenge proceeding shall be on the Designating Party.  While a challenge is pending, all Parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation until the Court orders otherwise.

6.6     If a Designating Party or the Court identifies or determines that material that had been designated as Protected Material should no longer be so designated, that material will no longer be subject to the restrictions designated herein for the treatment of Protected.

## 7.     ACCESS TO AND USE OF PROTECTED MATERIAL

7.1     Basic Principles.   A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in this Action only for prosecuting, defending, or attempting to settle this Action, including any appeal(s), so long as such use is permitted herein. In addition, the parties may use in the Virginia Action any Protected Material that is disclosed or produced in this Action, which shall receive the same protections as set forth in this Order absent a court order otherwise. Subject to the foregoing, Protected Material may be disclosed only to the

10

categories of persons and under the conditions described in this Order.  After the final disposition of the Action, a Receiving Party must comply with the provisions of Section 13 below (FINAL DISPOSITION).  Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.1.1    Except as otherwise provided in this Order, Counsel in this Action and any of their agents shall be prohibited from sharing with anybody any Protected Material, or any information derived from or based on any Protected Material, in connection with any investigation, proceeding, or contemplated proceeding.

7.2    <u>Restrictions on Use of Confidential Information</u>.  Unless otherwise ordered by the Court, permitted in writing by the Designating Party, or used in the Virginia Action, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

7.2.1    the Receiving Party's Counsel (including their employees and support staff);

7.2.2    the officers, directors, and employees of the Receiving Party to whom disclosure is reasonably necessary for this Action;

7.2.3    experts retained by the Receiving Party or the Receiving Party's Counsel to whom disclosure is reasonably necessary for this Action;

7.2.4    the Court and its personnel, and any appellate court or other court (and their personnel) before which the Parties appear in this Action;

7.2.5    special masters or discovery referees appointed by the Court;

7.2.6    mediators and their staff;

11

7.2.7     court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action;

7.2.8     potential or actual witnesses in the Action to whom disclosure is reasonably necessary, unless otherwise agreed by the Designating Party or ordered by the Court;

7.2.9     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

7.2.10    any other person to whom the Designating Party, in writing, authorizes disclosure.

7.2.11    Any person or entity who receives information designated CONFIDENTIAL pursuant to this Protective Order shall (1) agree to be bound by the terms of this Protective Order and (2) execute the document attached hereto as Exhibit "l."

7.3 Restrictions on Use of Highly Confidential Information.

Unless otherwise provided for herein, information designated Highly Confidential by either party shall not be disclosed.  However, notwithstanding the above, information designated in good faith as "HIGHLY CONFIDENTIAL" may be disclosed to counsel for the NRA, AMc, Mercury Group, Henry Martin, William Winkler, Melanie Montgomery, and/or Jesse Greenberg and each of their respective employees or representatives who (1) agree to be bound by the terms of this Protective Order and (2) execute the document attached hereto as Exhibit "1"; provided, however, that such any representative shall not discuss, disclose, summarize, describe, characterize, or otherwise communicate or make available such information to any person or entity prohibited by this Protective Order from accessing HIGHLY CONFIDENTIAL information and/or documents.  Similarly, information designated HIGHLY CONFIDENTIAL may be shared with experts and Court personnel, provided that the disclosing party obtains written assurance that

12

such experts will protect the confidentiality of the information and that the Court personnel will keep such information under seal.

HIGHLY CONFIDENTIAL information may not be disclosed or disseminated to William A. Brewer, III or to personnel within Brewer, Attorneys and Counselors who are members of the Public Relations Unit of the firm, including Travis Carter, Andrea Burnett, Katherine Unmuth, Holly Heidemanns, and Lea Gamino-Blum, unless and until relief is obtained from the Court.

## 8. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

8.1 If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any Protected Material, that Party must:

8.1.1 promptly notify in writing the Designating Party unless prohibited by law from doing so. Such notification shall include a copy of the subpoena or court order;

8.1.2 promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order. Such notification shall include a copy of this Order; and

8.1.3 cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

8.2 If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any Protected Material before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9.      **A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS ACTION**

9.1     The terms of this Order are applicable to Protected Material produced by a Non-Party in this Action.  Such information produced by Non-Parties in connection with this Action is protected by the remedies and relief provided by this Order.  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

10.     **UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

10.1    If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures; (b) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and (c) make all reasonable efforts to retrieve all unauthorized copies of the Protected Material.

11.     **REDACTIONS ALLOWED**

11.1    Any Producing Party may redact from Discovery Material matter that the Producing Party claims is Privileged Material.  The Producing Party shall ensure that the redaction is obvious to the Receiving Party and specify the basis for the redaction as appropriate.  Where a document consists of more than one page, at least each page on which information has been redacted shall be so marked.  If counsel for the Producing Party agrees or if the Court orders that Discovery Material initially redacted shall not be subject to redaction or shall receive alternative treatment, and the Discovery Material is subsequently produced in unredacted form, then that unredacted Discovery Material shall continue to receive the protections and treatment afforded to documents bearing the confidentiality designation assigned to it by the Producing Party.

14

11.2    The right to challenge and process for challenging the designation of redactions shall be the same as the right to challenge and process for challenging the designation of Confidential Information and Highly Confidential Information as set forth in Section 6.

11.3    Nothing herein precludes any Party from seeking the other Parties' consent or an order allowing the Party to redact nonresponsive matter from otherwise responsive documents on a case-by-case basis.

## 12.    MISCELLANEOUS

12.1    Right to Further Relief.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.  Any Party, entity, or person covered by this Order may at any time apply to the Court for relief from any provision of this Order.  Subject to the agreement of the Parties or an order of the Court, other entities or persons may be included in this Order by acceding to its provisions in a writing served upon counsel for the Parties, with such writings to be filed with the Court if so directed.

12.2    Right to Assert Other Objections.  By stipulating to the entry of this Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order.  Similarly, no Party waives any right to object on any ground to use as evidence any of the material covered by this Order.

12.3    Filing Protected Material.  Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action any Protected Material.  A Party that seeks to file under seal any Protected Material must do so pursuant to the local rules.

12.4    <u>Hearings and Appeals</u>

12.4.1.    In the event that a Receiving Party intends to utilize Protected Material during a pre-trial hearing, such Receiving Party shall provide written notice no less than three (3) calendar days prior to the hearing, to the Producing Party and/or the Designating Party, except that shorter notice may be provided if the Receiving Party could not reasonably anticipate the need to use the document at the hearing three (3) calendar days in advance, in which event notice shall be given immediately upon identification of that need.  The use of such Protected Material during the pre-trial hearing shall be determined by agreement of the relevant Parties or by Order of the Court.

12.4.2.    In the event that any Protected Material is used in any court proceeding in this Action or any appeal in connection with this Action, except for the use of Protected Material during trial, the manner of which shall be determined pursuant to Section 3.2, such Protected Material shall not lose its protected status through such use.  Counsel shall comply with all applicable local rules and shall confer on such procedures that are necessary to protect the confidentiality of any documents, information, and transcripts used in the course of any court proceedings, including petitioning the Court to close the courtroom.

12.5    <u>Reservations</u>. Entering into, agreeing to or complying with the provisions of this Order shall not:  (1) operate as admission that any particular material contains Protected Material; or (2) prejudice any right to seek a determination by the Court (a) whether particular material should be produced, or (b) if produced, whether such material should be subject to the provisions of this Order.

13. **<u>FINAL DISPOSITION</u>**

13.1     Within ninety (90) calendar days after the final disposition of this Action, as defined in Section 4, each Receiving Party, including its employees, attorneys, consultants, and experts, must use commercially reasonable efforts to destroy or return to the Producing Party all Protected Material, exception (1) backup tapes or other disaster recovery systems that are routinely deleted or written over in accordance with an established routine system maintenance practice, or (2) documents that must be preserved as federal records or in compliance with other statutory, regulatory or legal authorities.  As used in this Section, "all Protected Material" includes all originals, copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material.  Whether the Protected Material is returned or destroyed, upon request of the Producing Party, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 90-day deadline that (1) states that commercially reasonable efforts have been made to assure that all Protected Material has been returned or destroyed, and (2) affirms that the Receiving Party has not retained any originals, copies, abstracts, compilations, summaries, or any other format reproducing or capturing any of the Protected Material.  Notwithstanding this provisions, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product (including all emails attaching or referring to Protected Materials), and consultant and expert work product, even if such materials contain Protected Material.  Any such archival copies that contain or constituted Protected Material remain subject to this Order as set forth in Section 4 (DURATION).

IT SO ORDERED.

DATED: _____          _____

                                                                        The Honorable Joe Fish

## EXHIBIT 1 TO PROTECTIVE ORDER

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| **Plaintiff and Counter-Defendant** | § § | |
| **and** | § § | |
| **WAYNE LAPIERRE,** | § § | |
| **Third-Party Defendant,** | § § | |
| **v.** | § § | **Civil Action No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** | § § | |
| **Defendant and Counter-Plaintiff,** | § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG,** | § § § § | |
| **Defendants.** | § | |

## ACKNOWLEDGEMENT OF AND
## AGREEMENT TO BE BOUND BY PROTECTIVE ORDER

I, understand, state that:

I have reviewed the Protective Order in this matter.

19

I hereby agree to be bound by and comply with the terms of the Protective Order.


DATED this _____ date of, _____, _____


_____
(Typed or Printed Name)


_____
(Signature)

# EXHIBIT B

VIRGINIA:

## IN THE CIRCUIT COURT FOR THE CITY OF ALEXANDRIA

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case Nos. CL19001757; |
| ) | CL19002067 |
| ACKERMAN MCQUEEN, INC., ) | |
| ) | |
| **and** ) | |
| ) | |
| MERCURY GROUP, INC., ) | |
| ) | |
| **Defendants.** ) | |

### PROTECTIVE ORDER

1.    **PURPOSES AND SCOPE**

1.1    Disclosure and discovery activity in this Action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this Action may be warranted. Accordingly, the Parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order (the "Order").

1.2    The purpose of this Order is to facilitate the production of discovery material, facilitate the prompt resolution of disputes over confidentiality and privilege, protect material to be kept confidential and/or privileged, and ensure that protection is afforded only to material entitled to such treatment, pursuant to the Court's inherent authority, its authority under the applicable Rules, the judicial opinions interpreting such Rules, and any other applicable law. Except as otherwise stated in this Order, a Party shall produce, in response

1

to a valid discovery request, otherwise discoverable information in its possession, custody or control that is Confidential or Highly Confidential, and such information shall be handled in accordance with the procedures set forth herein.

1.3     This Order and all subsequent Protective Orders shall be binding on all Parties and their counsel in lawsuits entitled *NRA v. AMc, et al.* filed in the Circuit Court for the City of Alexandria with case Nos. CL19001757 and CL19002067 and any other persons or entities who become bound by this Order.

1.4     The Parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The Parties further acknowledge, as set forth in Section 12.3 below, that this Order does not entitle them to file confidential information under seal.

## 2.     **DEFINITIONS**

The following definitions apply for purposes of this Order:

2.1     Action: The lawsuits entitled *NRA v. AMc, et al.* filed in the Circuit Court for the City of Alexandria with case Nos. CL19001757 and CL19002067.

2.2     Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

2.3     Confidential Information: Discovery Material (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection under Rule 4.1(c) of the Rules of the Supreme Court of Virginia.

2

2.4     Counsel: Outside Counsel of Record, In-House Counsel, or counsel retained for the purpose of advising, prosecuting, defending, or attempting to settle this Action.

2.5     Designating Party: a Party or Non-Party that designates documents, information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

2.6     Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, answers to interrogatories, documents, responses to requests for admissions, tangible things, and informal exchanges of information), that are produced or generated in connection with any discovery in this Action, whether formally or informally.

2.7     Expert: a person retained by a Party or its Counsel to serve as an expert witness or consultant or technical advisor in this Action (as well as his or her employees and support staff).

2.8     Highly Confidential Information: Discovery Material that meets the definition of "Confidential Information" and which the Designating Party reasonably believes to be information reflecting non-public technical research, pricing and business strategy documents concerning a particular product or service, financial statements reflecting sales data, margin data, cost and expense data, human resources or personnel files, and/or profit and loss data, sales information relating to specific customers or classes of customers, non-public research, provided that the nonpublic information is actually secret because it is neither known to, nor readily ascertainable by, another person or entity that can obtain economic value from the disclosure or use of such information, the Designating Party has taken reasonable measures to maintain the secrecy of that information and the Designating

3

Party derives independent economic value and a competitive advantage from the secrecy of that information, including, as the case may be, containing information where production of the materials on a confidential or non-confidential basis would nonetheless likely cause substantial harm.. Nothing herein precludes any Party from seeking additional protections not currently contemplated by this Order to be applied to any particular document or category of documents, including Highly Confidential Information.

2.9 <u>In-House Counsel</u>: attorneys who are employees of a Party to this Action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10 <u>Non-Party</u>: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action, and their counsel.

2.11 <u>Outside Counsel of Record</u>: attorneys who are not employees of a Party to this Action but have been retained to represent or advise a Party to this Action and have appeared in this Action on behalf of that Party or are affiliated with a law firm which has appeared on behalf of that Party.

2.12 <u>Party</u>: any party to this Action.

2.13 <u>Privileged Material</u>: Discovery Material protected from disclosure under the attorney-client privilege, work product doctrine, or any other privilege or protection afforded or recognized by the Rules, including any such privilege or protection under applicable U.S. or foreign law, regulation or statute.

2.14 <u>Producing Party</u>: a Party or Non-Party that produces Discovery Material in this Action.

2.15 <u>Professional Vendors</u>: persons or entities that provide litigation support services (e.g., photocopying, videotaping, graphic support services, coding, translating, preparing

4

exhibits or demonstrations, document review, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16 <u>Protected Material</u>: any Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

2.17 <u>Receiving Party</u>: a Party that receives Discovery Material from a Producing Party.

3.   **SCOPE**

3.1     The protections conferred by this Order apply to Protected Material (as defined above) and also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, translations, or compilations of Protected Material; and (3) any oral, written, or electronic communications, testimony or presentations, including for purposes of settlement, by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Order do not cover information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order.

3.2     This Order and its protections apply for pre-trial purposes only. The Parties will meet and confer at the appropriate time regarding any use of Protected Material at trial, which use shall be governed by a separate agreement or order.

4.   **DURATION**

4.1     Even after final disposition of this Action, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later

of (1) dismissal of all claims and defenses in this action, with or without prejudice; or (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.   **DESIGNATING PROTECTED MATERIAL**

5.1   Manner and Timing of Designations. Except as otherwise provided in this Order (*see, e.g.*, Section 5.2.4 below), or as otherwise stipulated or ordered, Discovery Material that qualifies for protection under this Order must be clearly so designated at the time the material is disclosed or produced. The Parties shall make Confidential and Highly Confidential designations in good faith to ensure that only those documents or testimony that merit Confidential or Highly Confidential treatments are so designated. Either designation may be withdrawn by the Designating Party. If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, the Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2   Designation in conformity with this Order requires the following:

5.2.1 *Marking*. All or any part of a document, discovery response, or pleading disclosed, produced, or filed by a Producing Party may be designated Confidential or Highly Confidential by marking the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL") on the face of the document and each page so designated. With respect to tangible items, the appropriate legend shall be marked on the face of the tangible item, if practicable, or by written notice to the Receiving Party at the time of disclosure, production or filing that such tangible item is Confidential or Highly Confidential or contains such

6

information. With respect to documents produced in native format, the Electronically Stored Information Protocol, or ESI Protocol, to be entered in this Action shall govern the form and method for marking such documents as Confidential or Highly Confidential.

5.2.2 A Receiving Party shall exercise good faith efforts to ensure that any copies, print-outs of natively produced documents or data, excerpts, summaries, or compilations include a confidentiality legend that matches the confidentiality designation the Designating Party applied to the document, discovery response, transcript, or pleading.

5.2.3 *Timing.* Except as otherwise provided herein and documents that have already been produced, documents and other objects must be designated before disclosure or production. In the event that a Producing Party designates some or all of a witness's deposition or other pre-trial testimony (or related exhibits) Confidential or Highly Confidential, such designation may be made on the record of the deposition or hearing or within thirty (30) calendar days after receipt of the final transcript of such deposition or hearing. The specific page and line designations over which confidentiality is claimed must be provided to counsel for the Parties within thirty (30) calendar days of receipt of the transcript in final form from the court reporter except counsel may agree to extend such period. Deposition or pre-trial testimony shall be treated as Highly Confidential pending the deadline or, if applicable, extended deadline for designation. After the expiration of that period, the transcript shall be treated only as actually designated.

5.2.4 For information produced in some form other than documentary and for any other tangible items, the Producing Party shall affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." If the Protected Material is

7

produced in an electronic form with a load file, the Designating Party shall note that there is Protected Material in the load file. If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.3    Inadvertent Failures to Designate. Accidental or inadvertent disclosure of Protected Material—including Protected Material inadvertently disclosed by failure to redact as set forth in Section 11—does not waive the confidential status of such information or any privilege or other protection attached thereto. In the event that Protected Material is inadvertently disclosed without appropriate designations, any Party or Non-Party may thereafter reasonably assert a claim or designation of confidentiality, and the Producing Party shall promptly provide replacement media. Thereafter, the Receiving Party must promptly return the original information and all copies of the same to the Producing Party, or destroy the original information and all copies, and make no use of such information. In the event that Protected Material is inadvertently disclosed to any person and such disclosure is not permitted by the terms of this Order, the Party making the inadvertent disclosure shall promptly notify the Producing Party of such inadvertent disclosure within 10 calendar days of learning of it and will make all reasonable efforts to ensure the original and all copies of inadvertently disclosed information are not used and are promptly returned or destroyed.

## 6.    **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1    Timing of Challenges. A challenge to a designation of confidentiality may be made at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right

8

to challenge a confidentiality designation by electing not to mount a challenge promptly after the confidentiality designation is made.

6.2    Form of Challenges. The Challenging Party shall object to the propriety of the designation of specific material as Confidential or Highly Confidential by providing written notice to the Designating Party of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific Section of this Order. The Designating Party or its counsel shall thereafter, within fourteen (14) calendar days, respond to such challenge in writing by either: (i) agreeing to remove the designation; or (ii) stating the reasons for such designation. Counsel may agree to reasonable extensions.

6.3    Meet and Confer. If the Challenging Party continues to dispute the designation(s) at issue, it shall notify the Designating Party in writing within seven (7) calendar days thereafter. Counsel may agree to reasonable extensions. The Parties shall attempt to resolve each challenge in good faith by conferring directly (in voice-to-voice dialogue; other forms of communication are not sufficient). A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet-and-confer process first or establishes that the Designating Party is unwilling to participate in the meet-and-confer process in a timely manner.

6.4    Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Challenging Party may move the Court for an order withdrawing the designation as to the specific designations on which the Challenging Party and the Designating Party could not agree, within fourteen (14) calendar days of the Parties agreeing

9

that the meet-and-confer process will not resolve their dispute. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet-and-confer requirements imposed in the preceding Section.

6.5     The burden of persuasion in any such challenge proceeding shall be on the Designating Party. While a challenge is pending, all Parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation until the Court orders otherwise.

6.6     If a Designating Party or the Court identifies or determines that material that had been designated as Protected Material should no longer be so designated, that material will no longer be subject to the restrictions designated herein for the treatment of Protected Material.

7.     **ACCESS TO AND USE OF PROTECTED MATERIAL**

7.1     Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in this Action only for prosecuting, defending, or attempting to settle this Action, including any appeal(s), so long as such use is permitted herein. Any Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. After the final disposition of the Action, a Receiving Party must comply with the provisions of Section 13 below (FINAL DISPOSITION). Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.1.1 Except as otherwise provided in this Order, Counsel in this Action and any of their agents shall be prohibited from sharing with anybody any Protected Material, or

10

any information derived from or based on any Protected Material, in connection with any investigation, proceeding, or contemplated proceeding.

      7.2     Restrictions on Use of Confidential Information. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

      7.2.1 the Receiving Party's Counsel (including their employees and support staff);

      7.2.2 the officers, directors, and employees of the Receiving Party to whom disclosure is reasonably necessary for this Action;

      7.2.3 Experts retained by the Receiving Party or the Receiving Party's Counsel to whom disclosure is reasonably necessary for this Action;

      7.2.4 the Court and its personnel, and any appellate court or other court (and their personnel) before which the Parties appear in this Action;

      7.2.5 special masters or discovery referees appointed by the Court;

      7.2.6 mediators and their staff;

      7.2.7 court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action;

      7.2.8 potential or actual witnesses in the Action to whom disclosure is reasonably necessary, unless otherwise agreed by the Designating Party or ordered by the Court;

      7.2.9 the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

11

7.2.10 any other person to whom the Designating Party, in writing, authorizes disclosure.

7.2.11 any person or entity who receives information designated CONFIDENTIAL pursuant to this Protective Order shall (1) agree to be bound by the terms of this Protective Order and (2) execute the document attached hereto as Exhibit "1."

7.3     Restrictions on Use of Highly Confidential Information.

Unless otherwise provided for herein, information designated Highly Confidential by either party shall not be disclosed. However, notwithstanding the above, information designated in good faith as "HIGHLY CONFFIDENTIAL" may be disclosed to counsel for the NRA, AMc, and/or Mercury Group and each of their respective employees or representatives who (1) agree to be bound by the terms of this Protective Order and (2) execute the document attached hereto as Exhibit "1"; provided, however, that such any representative shall not discuss, disclose, summarize, describe, characterize, or otherwise communicate or make available such information to any person or entity prohibited by this Protective Order from accessing HIGHLY CONFIDENTIAL information and/or documents. Similarly, information designated HIGHLY CONFIDENTIAL may be shared with experts and Court personnel, provided that the disclosing party obtains written assurance that such experts will protect the confidentiality of the information and that the Court personnel will keep such information under seal.

HIGHLY CONFIDENTIAL information may not be disclosed or disseminated to William A. Brewer or to personnel within Brewer, Attorneys and Counselors who are members of the Public Relations Unit of the firm, including Travis Carter, Andrea Burnett,

12

Katherine Unmuth, Holly Heidemanns, and Lea Gamino-Blum, unless and until relief is obtained from the Court.

## 8. **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

8.1     If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any Protected Material, that Party must:

8.1.1 promptly notify in writing the Designating Party unless prohibited by law from doing so. Such notification shall include a copy of the subpoena or court order;

8.1.2 promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order. Such notification shall include a copy of this Order; and

8.1.3 cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

8.2     If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any Protected Material before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

## 9. **A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS ACTION**

9.1     The terms of this Order are applicable to Protected Material produced by a Non-Party in this Action. Such information produced by Non-Parties in connection with

13

this Action is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

10.  **UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

10.1 If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures; (b) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and (c) make all reasonable efforts to retrieve all unauthorized copies of the Protected Material.

11.  **REDACTIONS ALLOWED**

11.1 Any Producing Party may redact from Discovery Material matter that the Producing Party claims is Privileged Material. The Producing Party shall ensure that the redaction is obvious to the Receiving Party and specify the basis for the redaction as appropriate. Where a document consists of more than one page, at least each page on which information has been redacted shall be so marked. If counsel for the Producing Party agrees or if the Court orders that Discovery Material initially redacted shall not be subject to redaction or shall receive alternative treatment, and the Discovery Material is subsequently produced in unredacted form, then that unredacted Discovery Material shall continue to receive the protections and treatment afforded to documents bearing the confidentiality designation assigned to it by the Producing Party.

14

11.2 The right to challenge and process for challenging the designation of redactions shall be the same as the right to challenge and process for challenging the designation of Confidential Information and Highly Confidential Information as set forth in Section 6.

11.3 Nothing herein precludes any Party from seeking the other Parties' consent or an order allowing the Party to redact nonresponsive matter from otherwise responsive documents on a case-by-case basis.

## 12. **MISCELLANEOUS**

12.1 Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future. Any Party, entity or person covered by this Order may at any time apply to the Court for relief from any provision of this Order. Subject to the agreement of the Parties or an order of the Court, other entities or persons may be included in this Order by acceding to its provisions in a writing served upon counsel for the Parties, with such writings to be filed with the Court if so directed.

12.2 Right to Assert Other Objections. By stipulating to the entry of this Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order. Similarly, no Party waives any right to object on any ground to use as evidence any of the material covered by this Order.

12.3 Filing Protected Material. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action any Protected Material. A Party that seeks to file under seal any Protected Material must do so pursuant to the local rules.

12.4 Hearings and Appeals

15

12.4.1 In the event that a Receiving Party intends to utilize Protected Material during a pre-trial hearing, such Receiving Party shall provide written notice no less than three (3) calendar days prior to the hearing, to the Producing Party and/or the Designating Party, except that shorter notice may be provided if the Receiving Party could not reasonably anticipate the need to use the document at the hearing three (3) calendar days in advance, in which event notice shall be given immediately upon identification of that need. The use of such Protected Material during the pre-trial hearing shall be determined by agreement of the relevant Parties or by Order of the Court.

12.4.2 In the event that any Protected Material is used in any court proceeding in this Action or any appeal in connection with this Action, except for the use of Protected Material during trial, the manner of which shall be determined pursuant to Section 3.2, such Protected Material shall not lose its protected status through such use. Counsel shall comply with all applicable local rules and shall confer on such procedures that are necessary to protect the confidentiality of any documents, information, and transcripts used in the course of any court proceedings, including petitioning the Court to close the courtroom.

12.5 Reservations. Entering into, agreeing to or complying with the provisions of this Order shall not: (1) operate as admission that any particular material contains Protected Material; or (2) prejudice any right to seek a determination by the Court (a) whether particular material should be produced, or (b) if produced, whether such material should be subject to the provisions of this Order.

13. **FINAL DISPOSITION**

13.1 Within ninety (90) calendar days after the final disposition of this Action, as defined in Section 4, each Receiving Party, including its employees, attorneys, consultants

16

and experts, must use commercially reasonable efforts to destroy or return to the Producing Party all Protected Material, except (1) backup tapes or other disaster recovery systems that are routinely deleted or written over in accordance with an established routine system maintenance practice, or (2) documents that must be preserved as federal records or in compliance with other statutory, regulatory or legal authorities. As used in this Section, "all Protected Material" includes all originals, copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, upon request of the Producing Party, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 90-day deadline that (1) states that commercially reasonable efforts have been made to assure that all Protected Material has been returned or destroyed, and (2) affirms that the Receiving Party has not retained any originals, copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits. expert reports, attorney work product (including all emails attaching or referring to Protected Materials), and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Order as set forth in Section 4 (DURATION).

**IT IS SO ORDERED.**

DATED: October 8, 2019

Nolan B. Dawkins

**Alexandria Circuit Court Judge**

17

SEEN *AND AGREED*

DATED: _September 23, 2019_

Attorney for Plaintiff
Robert H. Cox
VA Bar 33118

DATED: _____

Attorney for Defendant
DAVID H. DICKIESON
VA BAR 31268

4820-5217-3221.1

18

## EXHIBIT 1 TO PROTECTIVE ORDER

**VIRGINIA:**

## IN THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA

**NATIONAL RIFLE ASSOCIATION OF AMERICA,**

      **Plaintiff,**

**v.**

**ACKERMAN MCQUEEN, INC.**

    **And**

**MERCURY GROUP, INC.**

      **Defendants.**

**Case Nos. CL19001757, CL19002067**

## ACKNOWLEDGEMENT OF AND AGREEMENT TO BE BOUND BY PROTECTIVE ORDER

I, the undersigned, state that:

I have reviewed the Protective Order in this matter.

I hereby agree to be bound by and comply with the terms of the Protective Order.


DATED this _____ day of , _____, _____


_____
(Typed or Printed Name)


_____
(Signature)

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| **Plaintiff and Counter-Defendant,** | § § | |
| **and** | § § | |
| **WAYNE LAPIERRE,** | § § § | |
| **Third-Party Defendant,** | § § | |
| **v.** | § § | **Civil Action No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** | § § § | |
| **Defendant and Counter-Plaintiff,** | § § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG,** | § § § § § | |
| **Defendants.** | § § § | |

**NOTICE OF SUBPOENA**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure, Rule 45(A)(4),

Plaintiff, the National Rifle Association of America, by and through its counsel of record, hereby

gives notice of a Subpoena to Oklahoma Gas and Electric Corporation, by service to its registered

corporate agent Patricia Horn at 321 North Harvey Ave. Oklahoma City, OK 73102, to produce

any and all responsive documents or tangible things as requested therein. Pursuant to Fed. R. Civ.

P. 34(b)(1)(C), documents shall be produced to Plaintiff in Tagged Image File Format ("TIFF")

with (a) an extracted text file containing searchable text for each electronic document, (b) an

Optical Character Recognition text file for each imaged paper document, (c) Metadata Data load

1

file (DAT) and (d) Image load files (OPT).  Non-convertible files shall be produced in native format. A true and correct copy of the Subpoena is attached hereto

Dated:  February 24, 2020                    Respectfully submitted,

                                        **BREWER, ATTORNEYS & COUNSELORS**

                         By: */s/ Jason C. McKenney*
                                 Jason C. McKenney
                                 State Bar No. 24070245
                                 jcm@brewerattorneys.com
                                 Michael J. Collins
                                 State Bar No. 00785493
                                 mjc@brewerattorneys.com
                                 1717 Main Street, Suite 5900
                                 Dallas, Texas 75201
                                 Telephone: (214) 653-4000
                                 Facsimile: (214) 653-1015

                                 **ATTORNEYS FOR PLAINTIFF THE NATIONAL RIFLE ASSOCIATION OF AMERICA**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served upon counsel of record in the above cause via electronic and first-class mail in accordance with the Federal Rules of Civil Procedure and the Local Rules on February 24, 2020.

                                 */s/ Jason C. McKenney*
                                 Jason C. McKenney (State Bar No. 24070245)

4822-2888-2356.1
2277-09

2

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   3:19-cv-02074-G |
| ACKERMAN MCQUEEN, ET. AL. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Oklahoma Gas and Electric Corporation, by service to its registered corporate agent
Patricia Horn, at 321 North Harvey Avenue, Oklahoma City, OK 73102

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Attachment A.

| Place: Renaissance Waterford Hotel, | Date and Time: |
|---|---|
| 6300 Waterford Boulevard, Oklahoma City, OK 73118 | 03/16/2020 9:00 am |

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     02/24/2020

|  | |
|---|---|
| *CLERK OF COURT* | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | /s/ Jason C. McKenney |
| | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

The National Rifle Association of America _____ , who issues or requests this subpoena, are:

Jason C. McKenney 1717 Main Street, Suite 5900, Dallas, TX 75201; JCM@BrewerAttorneys.com; (214) 653-4837

**Notice to the person who issues or requests this subpoena**

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  3:19-cv-02074-G

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $       0.00       .

I declare under penalty of perjury that this information is true.

Date: _____            _____
                                               *Server's signature*

                                               _____
                                               *Printed name and title*

                                               _____
                                               *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § |
| | § |
| | § |
| **Plaintiff and Counter-Defendant,** | § |
| | § |
| **and** | § |
| | § |
| **WAYNE LAPIERRE,** | § |
| | § |
| **Third-Party Defendant,** | § |
| | § |
| | § |
| **v.** | § |
| | § |
| **ACKERMAN MCQUEEN, INC.,** | § |
| | § |
| **Defendant and Counter-Plaintiff,** | § |
| | § |
| **and** | § |
| | § |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG,** | § |
| | § |
| | § |
| **Defendants.** | § |
| | § |

**Civil Action No. 3:19-cv-02074-G**

**ATTACHMENT A**
**TO SUBPOENA FOR PRODUCTION OF DOCUMENTS**

**I.**
**DEFINITIONS**

1.      The term "**AMc**" shall mean Ackerman McQueen, Inc. and its subsidiary Mercury Group, Inc., and all present and former agents, employees, representatives, advisors, officers, attorneys, consultants, investigators, individuals, and entities acting on behalf of, or pursuant to the direction of, Ackerman McQueen, Inc or Mercury Group, Inc.

2.      The term "**document**" shall mean all records or writings of any sort and each term shall be construed in its broadest sense to include, but not be limited to, all original and non-identical copies, whether by reason of marginalia or other notes or alterations, and all preliminary or subsequent drafts of the following items, whether printed or recorded or reproduced by any other mechanical or electronic process, or written or produced by hand: agreements, communications, correspondence, letters, telegrams, cables, telexes, memoranda, records, books, journals, summaries of records or papers, minutes, calendars, affidavits, recordings (video or audio),

electronic mail, text messages, memoranda of telephone calls, conversations, telephone calls, meetings, contracts, notes, marginal comments appearing on or affixed to any document, day timers, date books, messages, letters of credit, invoices, statements of account, financial statements, receipts, promissory notes, security agreements, deeds of trust, instruments purporting to grant or evidencing any security interest or lien, loan agreements, projections,  working papers, securities, ledgers, cancelled checks and bank drafts (front and back), check stub receipts, and other data, documents, papers, or writings of whatever description including, but not limited to, any code data or information which is electronically recorded or shared, contained in any computer, mobile device, or other information retrievable device or that otherwise can be obtained or translated through detection devices or other means into any reasonably useable or recordable format.

3.      The term "**related to**" or "**relate to**" shall mean concerning, relating to, reflecting, referring to, having a relationship to, pertaining to, identifying, containing, pertinent to, setting forth, showing, disclosing, describing, explaining, summarizing, evidencing, or constituting, directly or indirectly, in whole or in part, or to be otherwise factually, legally or logically connected to the subject matter of the particular Request.

4.      The term "**You**," or "**Your**," shall mean the person or entity summoned in the attached subpoena, including all present and former agents, employees, representatives, advisors, officers, attorneys, consultants, investigators, individuals, subsidiaries, parent-entities, and entities acting on behalf of, or pursuant to, the direction of such person or entity.

5.      To the extent that you harbor concerns about any of the requests propounded herein, you are directed to contact counsel for Plaintiff, the National Rifle Association of America, as soon as practicable to enable Plaintiff to timely resolve or otherwise address such concerns.

## II.
## REQUESTS FOR PRODUCTION

1.      Documents about the scope of work and/or services provided to You by AMc, including, but not limited to, identifying all AMc employees, officers, directors, or agents providing such services.

2.      Documents about the services provided to You by AMc, including specifically services relating to the development of a proposed coal plant to be built at Red Rock, Oklahoma, on or about the years 2006 to 2007.

3.      Any contracts or agreements between You and AMc regarding the project identified in Request No. 2 above.

4.      Budgets for services provided by AMc to You, that were prepared by You or AMc concerning the project identified in Request No. 2 above.

5.      Documents that relate to the amount of money spent by You on AMc's services provided to You concerning the project identified in Request No. 2 above.

6.      Bills, invoices, and other requests for payment You received from AMc concerning the project identified in Request No. 2 above.

7.      Documents reflecting any concerns about or requests to AMc for information on the project identified in Request No. 2 above, including but not limited to, documents concerning AMc's response.

4820-2788-3444.2
2277-09

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § | |
| | § | |
| | § | |
| **Plaintiff and Counter-Defendant,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **WAYNE LAPIERRE,** | § | |
| | § | |
| **Third-Party Defendant,** | § | |
| | § | **Civil Action No. 3:19-cv-02074-G** |
| **v.** | § | |
| | § | |
| **ACKERMAN MCQUEEN, INC.,** | § | |
| | § | |
| **Defendant and Counter-Plaintiff,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG,** | § | |
| | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**AMENDED NOTICE OF SUBPOENA FOR PRODUCTION OF DOCUMENTS TO**
**INTEGRIS HEALTH**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure, Rule 45(A)(4),

Plaintiff, the National Rifle Association of America, by and through its counsel of record, hereby

gives notice of an Amended Subpoena to Integris Health Inc., by service to its registered corporate

agent Christopher M. Hammes, 3366 NW Expressway, Suite 800, Oklahoma City, OK 73112, to

produce any and all responsive documents or tangible things as requested therein. Pursuant to Fed.

R. Civ. P. 34(b)(1)(C), documents shall be produced to Plaintiff in Tagged Image File Format

("TIFF") with (a) an extracted text file containing searchable text for each electronic document, (b)

an Optical Character Recognition text file for each imaged paper document, (c) Metadata Data

load file (DAT) and (d) Image load files (OPT).  Non-convertible files shall be produced in native

format. A true and correct copy of the Subpoena is attached hereto

Dated:  February 19, 2020                      Respectfully submitted,

                                               **BREWER, ATTORNEYS &
                                               COUNSELORS**

                                               By: */s/ Jason C. McKenney*  
                                                    Jason C. McKenney
                                                    State Bar No. 24070245
                                                    jcm@brewerattorneys.com
                                                    Michael J. Collins
                                                    State Bar No. 00785493
                                                    mjc@brewerattorneys.com
                                                    1717 Main Street, Suite 5900
                                                    Dallas, Texas 75201
                                                    Telephone: (214) 653-4000
                                                    Facsimile: (214) 653-1015

                                               **ATTORNEYS FOR PLAINTIFF THE
                                               NATIONAL RIFLE ASSOCIATION OF
                                               AMERICA**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document was served upon

counsel of record in the above cause via electronic and first-class mail in accordance with the

Federal Rules of Civil Procedure and the Local Rules on February 19, 2020.

                                               */s/ Jason C. McKenney*  
                                               Jason C. McKenney (State Bar No. 24070245)

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No. 3:19-cv-02074-G |
| ACKERMAN MCQUEEN, ET. AL. | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:           Integris Health Inc., by service to its registered corporate agent
                Christopher M. Hammes at 3366 NW Expressway, Suite 800, Oklahoma City, OK 73112

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Attachment A.

| Place: Renaissance Waterford Hotel, 6300 Waterford Boulevard, Oklahoma City, OK 73118 | Date and Time: 03/04/2020 9:00 am |
|---|---|

❏ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      02/19/2020

CLERK OF COURT

OR

_____                    /s/ Jason C. McKenney
_Signature of Clerk or Deputy Clerk_                        _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
The National Rifle Association of America _____ , who issues or requests this subpoena, are:

Jason C. McKenney 1717 Main Street, Suite 5900, Dallas, TX 75201; JCM@BrewerAttorneys.com; (214) 653-4837

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   3:19-cv-02074-G

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .


I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                   *Server's signature*

                                          _____
                                                   *Printed name and title*


                                          _____
                                                   *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2) *Command to Produce Materials or Permit Inspection.***
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3) *Quashing or Modifying a Subpoena.***
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2) *Claiming Privilege or Protection.***
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | §<br>§<br>§ |
|       **Plaintiff and Counter-Defendant,** | §<br>§ |
| **and** | §<br>§ |
|       **WAYNE LAPIERRE,** | §<br>§<br>§ |
|       **Third-Party Defendant,** | §<br>§ |
| **v.** | §  **Civil Action No. 3:19-cv-02074-G**<br>§ |
| **ACKERMAN MCQUEEN, INC.,** | §<br>§<br>§ |
|       **Defendant and Counter-Plaintiff,** | §<br>§ |
| **and** | §<br>§ |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG,** | §<br>§<br>§<br>§<br>§<br>§ |
|       **Defendants.** | §<br>§ |

**ATTACHMENT A**
**TO AMENDED SUBPOENA FOR PRODUCTION OF DOCUMENTS**
**TO INTEGRIS HEALTH, INC.**

**I.**
**DEFINITIONS**

    1.    The term "**AMc**" shall mean Ackerman McQueen, Inc. and its subsidiary Mercury Group, Inc., or any other subsidiary, and all present and former agents, employees, representatives, advisors, officers, attorneys, consultants, investigators, individuals, and entities acting on behalf of, or pursuant to the direction of, Ackerman McQueen, Inc or Mercury Group, Inc.

    2.    The terms "**communication**," "**communicate**," and "**communicated**" shall mean any oral, written, or recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, e-mails, text messages, conversations, facsimiles, letters, telegrams, cables, telexes, dialogues, discussions, negotiations, interviews, consultations, telephone calls, agreements, and other understandings, among two or more

persons. The term "**communication**" includes written summaries of any of the foregoing communications.

3.      The terms "**document**" and "**record**" shall mean all writings of any sort and each term should be construed in its broadest sense to include, but not be limited to, all original and non-identical copies, whether by reason of marginalia or other notes or alterations, and all preliminary or subsequent drafts of the following items, whether printed or recorded or reproduced by any other mechanical or electronic process, or written or produced by hand: agreements, communications, correspondence, letters, telegrams, cables, telexes, memoranda, records, books, journals, summaries of records or papers, minutes, calendars, affidavits, recordings (video or audio), electronic mail, text messages, memoranda of telephone calls, conversations, telephone calls, meetings, contracts, notes, marginal comments appearing on or affixed to any document, day timers, date books, messages, letters of credit, invoices, statements of account, financial statements, receipts, promissory notes, security agreements, deeds of trust, instruments purporting to grant or evidencing any security interest or lien, loan agreements, projections,  working papers, securities, ledgers, cancelled checks and bank drafts (front and back), check stub receipts, and other data, documents, papers, or writings of whatever description including, but not limited to, any data or information which is electronically recorded or shared, contained in any computer, mobile device, or other information retrievable device or that otherwise can be obtained or translated through detection devices or other means into any reasonably useable or recordable format.

4.      The term "**related to**" shall mean concerning, relating to, reflecting, referring to, having a relationship to, pertaining to, identifying, containing, pertinent to, setting forth, showing, disclosing, describing, explaining, summarizing, evidencing, or constituting, directly or indirectly, in whole or in part, or to be otherwise factually, legally or logically connected to the subject matter of the particular Request.

5.      The term "**Person**" shall mean refer to either an individual or an entity.

6.      The term "**You**," or "**Your**," shall mean the person or entity summoned in the attached subpoena, including all present and former agents, employees, representatives, advisors, officers, attorneys, consultants, investigators, individuals, subsidiaries, parent-entities, and entities acting on behalf of, or pursuant to, the direction of such person or entity.

7.      The term "**information**" or "**data**" shall mean all records or writings of any sort and shall be construed in its broadest sense to include, but not be limited to, all original and non-identical copies, whether by reason of marginalia or other notes or alterations, and all preliminary or subsequent drafts of the following items, whether printed or recorded or reproduced by any other mechanical or electronic process, or written or produced by hand: agreements, communications, correspondence, letters, telegrams, cables, telexes, memoranda, records, books, journals, summaries of records or papers, minutes, calendars, affidavits, recordings (video or audio), electronic mail, text messages, memoranda of telephone calls, conversations, telephone calls, meetings, contracts, notes, marginal comments appearing on or affixed to any document, day timers, date books, messages, letters of credit, invoices, statements of account, financial statements, receipts, promissory notes, security agreements, deeds of trust, instruments purporting to grant or evidencing any security interest or lien, loan agreements, projections, working papers, securities, ledgers, cancelled checks and bank drafts (front and back), check stub receipts, and other data, documents, papers, or writings of whatever description including, but not limited to, any code, data or information which is

electronically recorded or shared, contained in any computer, mobile device, or other information retrievable device or that otherwise can be obtained or translated through detection devices or other means into any reasonably useable or recordable format.

8.     The term "**Digital Media**" shall mean all digitized content including but not limited to digital images, software, digital video, web pages, social media, digital audio, news articles, blog articles, RSS feeds, video content, and any other types of digital content, produced by individuals or an organization, where a certain brand, products, or services are shown.

9.     "**Viewership Analytics**" shall mean any analysis, summary, or presentation of audience membership or viewership, including but not limited to, statistics, demographics, or any other type of data related to the audience and viewership of specific TV content, digital content, or any other type of media programming.

10.     All Requests seek documents dated January 1, 2015 and later, unless otherwise indicated in a particular Request.

11.     To the extent that you harbor concerns about any of the requests propounded herein, you are directed to contact counsel for Plaintiff, the National Rifle Association of America, as soon as practicable to enable Plaintiff to timely resolve or otherwise address such concerns.

## II.
## REQUESTS FOR PRODUCTION

1.     Documents and communications that relate to the scope of work and/or services provided to You by AMc, including, but not limited to, identifying all AMc employees, officers, directors, or agents providing such services.

2.     Documents and communications concerning the Digital Media programming, content, and/or platform that AMc provided to You, including but not limited to, any Viewership Analytics provided by AMc and documents and communications concerning how AMc created or otherwise generated the Viewership Analytics.

3.     Documents and communications concerning forecasts, predictions, or estimates provided to You by AMc concerning the Digital Media content or platform.

4.     Documents and communications concerning the actual performance or success of the Digital Media content or platform.

5.     Budgets for services provided or to be provided by AMc to You concerning the Digital Media content or platform.

6.     Documents and communications that relate to the amount of money spent by You on any Digital Media content or platform developed and managed by AMc.

7.     Bills, invoices, and other requests for payment You received from AMc concerning Digital Media content or platform.

8.     Documents and communications reflecting any concerns about or requests to AMc for information on Your Digital Media content or platform, including but not limited to, documents concerning AMc's response.

3

4852-2813-7140.2
-