## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ACKERMAN MCQUEEN, INC.,** | § | |
| **MERCURY GROUP, INC., HENRY** | § | |
| **MARTIN, WILLIAM WINKLER,** | § | |
| **MELANIE MONTGOMERY, AND JESSE** | § | |
| **GREENBERG,** | § | |
| *Movants*, | § | |
| | § | |
| | § | |
| **v.** | § | **Case No. 20-MC-001-HE** |
| | § | |
| **NATIONAL RIFLE ASSOCIATION OF** | § | |
| **AMERICA and WAYNE LAPIERRE,** | § | |
| *Respondents*. | § | |

## MOTION TO QUASH THIRD PARTY SUBPOENA ON INTEGRIS HEALTH, INC.

Ackerman McQueen, Inc. ("**AMc**"), Mercury Group, Inc., Henry Martin, William Winkler,

Melanie Montgomery, and Jesse Greenberg (collectively, "**Movants**") file this *Motion to Quash*

*Third-Party Subpoena on INTEGRIS Health, Inc.* (the "**Motion**" and "**Integris**"), attached as

**Exhibit 1** hereto, and respectfully show as follows:

### I.   SUMMARY

Movants previously filed a motion to quash the National Rifle Association's

("**Respondent**" or "**NRA**") eight third-party subpoenas (including Integris) on February 7, 2020,

in the present Court as the place where compliance was required.[1]  Movants sought transfer of the

Motion to the Northern District of Texas where the underlying matter is pending.  Respondents

agreed with the transfer.  This Court transferred that motion on February 25, 2020.[2]

Since then, Respondents served an "amended" subpoena on one of the same entities –

Integris -- which still fails to cure the flaws described in the previous motion.  Said amended

---

[1] *Ackerman McQueen, Inc., et al. v. NRA, et al.*, Miscellaneous Case No. MC-20-1-HE (W.D. Okla.); Fᴇᴅ. R. Cɪᴠ. P. 45(d)(3)(A).
[2] *See* ECF 07, *Ackerman McQueen, Inc., et al. v. NRA, et al.*, Miscellaneous Case No. MC-20-1-HE (W.D. Okla.).

subpoena must be quashed for the same reasons previously set forth:  It is overbroad and harassing, and it seeks information wholly irrelevant to the claims and defenses in the lawsuit.  Movants request the present Court to supplement its transfer to the Northern District of Texas by including the present motion to quash, so that all pending discovery disputes may be disposed of collectively and efficiently.

## II.    BACKGROUND

### A.    Overview of Claims

1.    The NRA's current First Amended Complaint asserts causes of action for fraud and breach of contract, which it argues are relevant to the Integris subpoena.[3]

2.    In response, AMc asserted a counterclaim and third-party claims, including libel *per se* (the NRA falsely accuses AMc of extortion) and fraud (relating to NRATV and compensation of talent hired to promote the NRA).[4]

### B.    The Integris Subpoena

3.    The NRA served its amended Integris subpoena on February 20, 2020, requiring a response on March 4, 2020, at 9:00 a.m.  Notably, none of the parties' claims or counterclaims directly reference or relate to Integris.  In fact, the connection between Integris and Respondent's Amended Complaint is feeble at best.  The only possible reference to Integris, or any "Digital Media" services provided to it by AMc, occurs in the fifth unnumbered paragraph of Respondent's Preliminary Statement, in which the NRA makes an inventive but factually unsupported allegation about AMc's business relationships: "*Many of these campaigns* [referring to AMc's other clients besides the NRA], *which cost clients tens of millions of dollars, were shut down because of their*

---

[3] *See* ECF 18, National Rifle Association of America v. Ackerman McQueen, Inc., et al., Case No: 3:19-cv-02074-G (N.D. Tex.) (the "***Dallas Action***").
[4] *Id.* at ECF 31.

*ineffectiveness, costliness, and Defendant's reluctance to provide specific performance data in accordance with its obligations*." *See* Dallas Action, ECF 18 at 4. Presumably, this allegation was made in support of the NRA's claim for fraud in relation to AMc's billing practices and its development and production of the NRA's own "digital media" platform, NRATV.

4.      Having no factual support for this damaging—and very public—allegation, the NRA is intruding upon the business operations of AMc's current and former clients. The NRA seeks information from Integris relating to the AMc's billing practices and provision of digital media services, allegedly limiting responsive documents to 2015. However, even if Integris were to comply with these invasive requests, any resulting document production would not yield relevant documents to support the NRA's allegations.

## III.     ARGUMENTS & AUTHORITIES

5.      To quash a third party subpoena, one must have a "personal right or privilege in the subject matter of the subpoena or a sufficient interest in it."[5] A personal right includes communications between the challenging party and the subpoenaed party, for example, as well as confidential business information.[6]

6.      Under Federal Rule of Civil Procedure 45, a Court must quash or modify a subpoena that subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A)(iv). The Court may also quash or modify a subpoena that requires disclosure of a trade secret or other confidential research, development, or commercial information. FED. R. CIV. P. 45(d)(3)(B).

---

[5] *Bramell v. Aspen Exploration, Inc.*, No. 4:05-CV-384, 2008 U.S. Dist. LEXIS 72674, at *4 (E.D. Tex. Sep. 23, 2008).
[6] *Orchestrate HR, Inc. v. Trombetta*, 2014 U.S. Dist. LEXIS 24995, at *7 (N.D. Tex. Feb. 27, 2014) (finding standing where subpoena sought communications between defendants and subpoenaed parties, and where subpoenas would "require the non-parties to disclose trade secrets and confidential information"). That court also reasoned that disclosure of sensitive business documents "is presumptively more harmful than disclosure to a noncompetitor." *Id.* at *12.

7.     Moreover, subpoenas to a non-party do not grant the requesting party any broader right to information than allowed by the Federal Rules of Civil Procedure for discovery between the parties.  Rather, "considerations of both relevance and proportionality govern the subpoenas." *Ward v. Liberty Ins. Corp.*, No. CIV-15-1390-D, 2018 U.S. Dist. LEXIS 26710, at \*3 (W.D. Okla. Feb. 20, 2018) (quashing the subpoena as unduly burdensome when it required the subpoenaed party to "turn over apparently every document related to its policies and procedures … regardless of the documents' relevance to Plaintiff's claims in this suit").  Accordingly, a subpoena must be relevant to a party's claim or defense and be proportional to the needs of the case.  *See* FED. R. CIV. P. 26(1).  Thus, under Oklahoma federal law, a lawyer has a "duty to take reasonable steps to avoid imposing undue burden or expense upon the party subject to the subpoena." *Huntair, Inc. v. ClimateCraft, Inc.*, 254 F.R.D. 677, 679 (N.D. Okla. 2008).

8.     Rule 45 *requires* the Court to quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.  FED. R. CIV. P. 45(d)(3)(A). The Court may also quash or modify a subpoena that requires disclosure of a trade secret or other confidential research, development, or commercial information.  FED. R. CIV. P. 45(d)(3)(B).

9.     Further, "good faith in issuing a subpoena is not sufficient to avoid sanctions under Rule 45(c)(1) if a party has issued the subpoena in violation of the duty imposed by that rule," *i.e.*, by imposing an undue burden on the third party.  *Huntair*, 254 F.R.D. at 679.

**A.     AMc has standing to quash the Integris subpoena.**

10.     AMc has standing to quash the Integris subpoena because it has a personal right to information requested therein.  The subpoena at issue facially demonstrates that personal right when it requests documents that AMc created—not just about AMc's services to Integris, but how

AMc calculated its fair market value billing and "non-public" information like direct communications between AMc and Integris, for instance. Even the NRA argues that the documents will uncover AMc's alleged knowledge and prior business practices—*i.e.*, information it personally created or possessed (has a personal right in). And because the NRA is requesting documents AMc created or received, "it should not be necessary for Plaintiff to obtain copies of the documents from the non-parties," even if it were entitled to them.[7]

**B.      The subpoena is overbroad and seeks irrelevant, highly confidential information.**

11.     The amended subpoena to Integris should be quashed for numerous independently sufficient reasons.

12.     *First*, although the NRA amended this one subpoena purporting to limit the requests to 2015, that alleged limitation is disingenuous and useless because the requests are still overbroad, they still seek irrelevant information, and they also intrude upon AMc's highly confidential information in circumvention of another court's protective order. To illustrate:

| No. | Substance of Request | Overbreadth |
|---|---|---|
| 1 | Documents and communications that *relate* to the scope of work and/or services provided to You by AMc… | Documents that "relate to" the services AMc provided includes **all** documents that in any way involve, concern, mention, refer, *relate* to the work AMc performed, including all documents from inception to cessation, which is grossly overbroad for any purpose in the litigation. |
| 2 | Documents *concerning* the Digital Media programming and content or platform that AMc provided to You… | Documents "concerning" the programming and content or platform includes **all** documents ever created for the "Digital Media." |
| 3 | Documents *concerning* forecasts, predictions, or estimates… | Documents "concerning" these topics include **all** documents that pre- and post-date such forecasts, predictions, or estimates, including the underlying work upon which those forecasts are based. |
| 4 | Documents *concerning* the actual performance or success of the Digital Media content and platform… | Documents "concerning" the performance of the entire content and platform includes **all** documents underlying the work upon which the performance/success are based. |

---

[7] *Id.* at *10-11.

| 6 | Documents that *relate to* the amount of money spent by You on the Digital Media content and platform. | Documents that "relate to" the money spent necessarily includes **all** documents underlying the money spent, *i.e.*, all the documents relating to the services performed—as opposed to documents that reflect the amount of money spent, *i.e.*, invoices already requested in Request No. 7. |
|---|---|---|

13.     Despite having another bite at the apple, the NRA did not limit its requests in any meaningful way.  Requesting "all" documents (regardless of phrasing) from the current date back to 2015 is no better than requesting "all" documents from the current date back to the beginning of AMc's business relationship with Integris.  The fact remains that the requests are facially overbroad, which is unduly burdensome.

14.     ***Second***, as the NRA represented to this Court in response to the previous motion to quash, it requests these documents to demonstrate AMc's alleged fraud relating to NRATV based on other "failed" campaign that were "shut down."[8]  But the NRA never once explains why it needs information from a *current* client.  That Integris has been a client since 2002 means there was no failed campaign and neither the relationship nor such campaign has been shut down.

15.     Moreover, the Integris account concerns the healthcare industry, whereas the NRA account was for the Second Amendment and gun-rights advocates.  The two necessarily involve vastly different audiences, purposes, and messages, such that the campaign styles, viewership metrics, and goals would differ as well.  Plus, the size and scope of the NRA and its platform, NRATV, is so much broader and more complex that any comparison with Integris would not lead to the discovery of any admissible evidence.  The NRA has not demonstrated how Integris information as a current client would translate to the NRA's claims.

16.     ***Third***, the documents requested contain AMc's highly confidential information, including how AMc calculates its fair market value for services to Integris and how it develops

---

[8] *See Ackerman McQueen, Inc., et al. v. NRA, et al.*, Miscellaneous Case No. MC-20-1-HE (W.D. Okla.) ECF 6 at 6-7, 17.

campaigns for Integris.  In the related Virginia cases, the NRA *proposed* a two-tier protective order that included a highly confidential designation for AMc's competitive information.[9]  The Virginia court prohibited the NRA's lead counsel from accessing, reviewing, or using information designated highly confidential.  But in the Dallas Action (underlying this subpoena), the NRA refuses to agree to a similar two-tier order and instead requested any Texas order contain *only* a confidentiality designation.  What is more, the NRA *also* requested that the Texas court *demote* highly confidential information from Virginia to confidential information in Texas—meaning that its lead counsel could circumvent in Texas what the Virginia court put in place.  This subpoena (in addition to the many others) is served for the same end result.

17.     By issuing a subpoena to a third party, the NRA has the opportunity to obtain the very highly confidential information AMc seeks to protect directly from the third party without giving AMc the opportunity to make necessary designations.  AMc's only opportunity to designate would be *after* the NRA already has an opportunity to review and use the information.  Any potential claw-back remedy would require reliance on the NRA and its counsel complying therewith.  But the fact the NRA opposes the two-tier program in Texas and seeks to unwind that same scheme through the Texas protective order shows the risk with such reliance.  That AMc just learned through the NRA's responses to the prior motions to quash that third parties have produced documents proves this risk (and circumvention) to be real and imminent.

## C.     The subpoenas subject the recipients to undue burden.

18.     "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation."  The relevance of a subpoena seeking discovery is measured by the standard

---

[9] *See* Dallas Action ECF 51 at 15.

articulated in Rule 26(b)(1), which limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1*).* The subpoena must, therefore, be limited to documents that are relevant to any party's claim or defense and cannot be used to "develop new claims or defenses." *Kizer v. Starr Indem. & Liab. Co.*, 2019 U.S. Dist. LEXIS 76320, at \*6 (W.D. Okla. May 6, 2019).

19.     In addition to limiting discovery to relevant information, Rule 26 specifies that the discovery must be proportional to the needs of the case. FED. R. CIV. P. 26(b)(1). As set forth above, the documents requested in this subpoena have no relevance to the NRA's claims for fraud. Further, seeking "all" information—whether by express request or in real effect—from Integris is simply not proportional to the needs of the case and will impose unnecessary and unfair financial burdens upon it. That same burden will be cast upon AMc in its attempt to scramble to review, designate, and claw-back highly confidential documents, including the inevitable discovery fight to ensue. This subpoena is, therefore, impermissible and necessarily unduly burdensome.

20.     Additionally, the NRA's lead lawyer is not simply a disinterested advocate for the NRA in this matter. He is the son-in-law of the late Angus McQueen, AMc's former owner and CEO, and the brother-in-law of AMc's current CEO, Revan McQueen. His animus-infused history with the McQueen family is well-known and itself insinuates his true reason for representing the NRA against his own family. Through the issuance of the subpoena, the NRA seeks unrestricted access to decades of information about AMc's confidential business practices, including budgets, billing information, staffing, operations, and client communications, which would circumvent a

protective order walling-off that lead lawyer from AMc's highly confidential information in the Virginia cases.  The dubious motives behind this overbroad subpoena create the very undue burden the law prohibits.

### D.    Exceptional circumstances warrant supplementing the transfer of this matter to the Northern District of Texas with the present Motion to Quash.

21.    According to Federal Rule of Civil Procedure 45(f), the compliance court can transfer the Motion to the issuing court based on exceptional circumstances.  And in the present case, the compliance court has done exactly that by recently transferring Movants' original motion to quash to the Northern District of Texas.  But, in the interim, an "amended" subpoena duces tecum was issued to one of the same original subpoena recipients, necessitating the present Motion to Quash.  Movants submit that it would be a waste of resources, not to mention redundant, for Movants to originate yet another "miscellaneous" action in order to facilitate a motion to quash when the offending subpoena is not directed toward a new party, but rather is directed toward one of the recipients identified in Movants' original Motion to Quash.  Movants submit that the most expeditious procedure to address the concerns set forth in the present motion is to simply supplement the order of transfer to the Northern District of Texas to include the present motion to quash.

## IV.    CONCLUSION

For the foregoing reasons, Movants respectfully request this Court grant their Motion, quash the Integris subpoena, or at the very least supplement its transfer order to the Northern District of Texas to include the present Motion to Quash, along with any other relief to which Movants are entitled.

Dated: March 3, 2020.

Respectfully submitted,

*/s/ R. Thompson Cooper*
**R. Thompson Cooper**
OBA No. 15746
ROBERSON, KOLKER, COOPER & GOERES, P.C.
16408 Muirfield Place
Edmond, OK  73013
405.606.3333 voice
405.606.3334 fax
tom@rkcglaw.com

**ATTORNEYS FOR MOVANTS ACKERMAN
MCQUEEN, INC., MERCURY GROUP, INC.,
HENRY MARTIN, JESSE GREENBERG,
WILLIAM WINKLER, AND MELANIE
MONTGOMERY**

### CERTIFICATE OF CONFERENCE

On February 7, 2019, counsel for AMc conferred with counsel for the NRA regarding the Motion.  Counsel for the NRA was opposed to the relief sought and was not willing to withdraw the subpoenas.

*/s/ R. Thompson Cooper*
**R. Thompson Cooper**

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2020, the foregoing document was filed with the clerk of court for the U.S. District Court, Western District of Oklahoma, and that notice should therefore be automatically generated to all counsel of record herein.

*/s/ R. Thompson Cooper*
**R. Thompson Cooper**

**Exhibit 1**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** §<br>§<br>§ | |
| **Plaintiff and Counter-Defendant,** § | |
| **and** § | |
| **WAYNE LAPIERRE,** § | |
| **Third-Party Defendant,** § | |
| **v.** § | **Civil Action No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** § | |
| **Defendant and Counter-Plaintiff,** § | |
| **and** § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG,** § | |
| **Defendants.** § | |

**AMENDED NOTICE OF SUBPOENA FOR PRODUCTION OF DOCUMENTS TO
<u>INTEGRIS HEALTH</u>**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure, Rule 45(A)(4),

Plaintiff, the National Rifle Association of America, by and through its counsel of record, hereby

gives notice of an Amended Subpoena to Integris Health Inc., by service to its registered corporate

agent Christopher M. Hammes, 3366 NW Expressway, Suite 800, Oklahoma City, OK 73112, to

produce any and all responsive documents or tangible things as requested therein. Pursuant to Fed.

R. Civ. P. 34(b)(1)(C), documents shall be produced to Plaintiff in Tagged Image File Format

("TIFF") with (a) an extracted text file containing searchable text for each electronic document, (b)

1

an Optical Character Recognition text file for each imaged paper document, (c) Metadata Data

load file (DAT) and (d) Image load files (OPT).  Non-convertible files shall be produced in native

format. A true and correct copy of the Subpoena is attached hereto

Dated:  February 19, 2020                            Respectfully submitted,

                                                     **BREWER, ATTORNEYS &**
                                                     **COUNSELORS**

                                           By: */s/ Jason C. McKenney*
                                                Jason C. McKenney
                                                State Bar No. 24070245
                                                jcm@brewerattorneys.com
                                                Michael J. Collins
                                                State Bar No. 00785493
                                                mjc@brewerattorneys.com
                                                1717 Main Street, Suite 5900
                                                Dallas, Texas 75201
                                                Telephone: (214) 653-4000
                                                Facsimile: (214) 653-1015

                                                **ATTORNEYS FOR PLAINTIFF THE**
                                                **NATIONAL RIFLE ASSOCIATION OF**
                                                **AMERICA**

                          <u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that a true and correct copy of the foregoing document was served upon

counsel of record in the above cause via electronic and first-class mail in accordance with the

Federal Rules of Civil Procedure and the Local Rules on February 19, 2020.

                                           */s/ Jason C. McKenney*
                                           Jason C. McKenney (State Bar No. 24070245)

4846-4139-3332.1
2277-09                            2

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   3:19-cv-02074-G |
| ACKERMAN MCQUEEN, ET. AL. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:         Integris Health Inc., by service to its registered corporate agent
            Christopher M. Hammes at 3366 NW Expressway, Suite 800, Oklahoma City, OK 73112

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

          See Attachment A.

| Place: Renaissance Waterford Hotel,<br>6300 Waterford Boulevard,<br>Oklahoma City, OK 73118 | Date and Time:<br><br>03/04/2020 9:00 am |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

          The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:         02/19/2020

|  CLERK OF COURT | OR | |
|---|---|---|
| _____ | | /s/ Jason C. McKenney |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
The National Rifle Association of America _____ , who issues or requests this subpoena, are:

 Jason C. McKenney 1717 Main Street, Suite 5900, Dallas, TX 75201; JCM@BrewerAttorneys.com; (214) 653-4837

## Notice to the person who issues or requests this subpoena

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   3:19-cv-02074-G

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| Plaintiff and Counter-Defendant, | § § | |
| **and** | § | |
| **WAYNE LAPIERRE,** | § § § | |
| Third-Party Defendant, | § § § | |
| **v.** | § | Civil Action No. 3:19-cv-02074-G |
| **ACKERMAN MCQUEEN, INC.,** | § § § | |
| Defendant and Counter-Plaintiff, | § § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG,** | § § § § § § | |
| Defendants. | § § | |

**ATTACHMENT A**
**TO AMENDED SUBPOENA FOR PRODUCTION OF DOCUMENTS**
**TO INTEGRIS HEALTH, INC.**

**I.**
**DEFINITIONS**

1.      The term "**AMc**" shall mean Ackerman McQueen, Inc. and its subsidiary Mercury Group, Inc., or any other subsidiary, and all present and former agents, employees, representatives, advisors, officers, attorneys, consultants, investigators, individuals, and entities acting on behalf of, or pursuant to the direction of, Ackerman McQueen, Inc or Mercury Group, Inc.

2.      The terms "**communication**," "**communicate**," and "**communicated**" shall mean any oral, written, or recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, e-mails, text messages, conversations, facsimiles, letters, telegrams, cables, telexes, dialogues, discussions, negotiations, interviews, consultations, telephone calls, agreements, and other understandings, among two or more

persons. The term "**communication**" includes written summaries of any of the foregoing communications.

3.      The terms "**document**" and "**record**" shall mean all writings of any sort and each term should be construed in its broadest sense to include, but not be limited to, all original and non-identical copies, whether by reason of marginalia or other notes or alterations, and all preliminary or subsequent drafts of the following items, whether printed or recorded or reproduced by any other mechanical or electronic process, or written or produced by hand: agreements, communications, correspondence, letters, telegrams, cables, telexes, memoranda, records, books, journals, summaries of records or papers, minutes, calendars, affidavits, recordings (video or audio), electronic mail, text messages, memoranda of telephone calls, conversations, telephone calls, meetings, contracts, notes, marginal comments appearing on or affixed to any document, day timers, date books, messages, letters of credit, invoices, statements of account, financial statements, receipts, promissory notes, security agreements, deeds of trust, instruments purporting to grant or evidencing any security interest or lien, loan agreements, projections,  working papers, securities, ledgers, cancelled checks and bank drafts (front and back), check stub receipts, and other data, documents, papers, or writings of whatever description including, but not limited to, any data or information which is electronically recorded or shared, contained in any computer, mobile device, or other information retrievable device or that otherwise can be obtained or translated through detection devices or other means into any reasonably useable or recordable format.

4.      The term "**related to**" shall mean concerning, relating to, reflecting, referring to, having a relationship to, pertaining to, identifying, containing, pertinent to, setting forth, showing, disclosing, describing, explaining, summarizing, evidencing, or constituting, directly or indirectly, in whole or in part, or to be otherwise factually, legally or logically connected to the subject matter of the particular Request.

5.      The term "**Person**" shall mean refer to either an individual or an entity.

6.      The term "**You**," or "**Your**," shall mean the person or entity summoned in the attached subpoena, including all present and former agents, employees, representatives, advisors, officers, attorneys, consultants, investigators, individuals, subsidiaries, parent-entities, and entities acting on behalf of, or pursuant to, the direction of such person or entity.

7.      The term "**information**" or "**data**" shall mean all records or writings of any sort and shall be construed in its broadest sense to include, but not be limited to, all original and non-identical copies, whether by reason of marginalia or other notes or alterations, and all preliminary or subsequent drafts of the following items, whether printed or recorded or reproduced by any other mechanical or electronic process, or written or produced by hand: agreements, communications, correspondence, letters, telegrams, cables, telexes, memoranda, records, books, journals, summaries of records or papers, minutes, calendars, affidavits, recordings (video or audio), electronic mail, text messages, memoranda of telephone calls, conversations, telephone calls, meetings, contracts, notes, marginal comments appearing on or affixed to any document, day timers, date books, messages, letters of credit, invoices, statements of account, financial statements, receipts, promissory notes, security agreements, deeds of trust, instruments purporting to grant or evidencing any security interest or lien, loan agreements, projections, working papers, securities, ledgers, cancelled checks and bank drafts (front and back), check stub receipts, and other data, documents, papers, or writings of whatever description including, but not limited to, any code, data or information which is

electronically recorded or shared, contained in any computer, mobile device, or other information retrievable device or that otherwise can be obtained or translated through detection devices or other means into any reasonably useable or recordable format.

8.     The term "**Digital Media**" shall mean all digitized content including but not limited to digital images, software, digital video, web pages, social media, digital audio, news articles, blog articles, RSS feeds, video content, and any other types of digital content, produced by individuals or an organization, where a certain brand, products, or services are shown.

9.     "**Viewership Analytics**" shall mean any analysis, summary, or presentation of audience membership or viewership, including but not limited to, statistics, demographics, or any other type of data related to the audience and viewership of specific TV content, digital content, or any other type of media programming.

10.     All Requests seek documents dated January 1, 2015 and later, unless otherwise indicated in a particular Request.

11.     To the extent that you harbor concerns about any of the requests propounded herein, you are directed to contact counsel for Plaintiff, the National Rifle Association of America, as soon as practicable to enable Plaintiff to timely resolve or otherwise address such concerns.

## II.
## REQUESTS FOR PRODUCTION

1.     Documents and communications that relate to the scope of work and/or services provided to You by AMc, including, but not limited to, identifying all AMc employees, officers, directors, or agents providing such services.

2.     Documents and communications concerning the Digital Media programming, content, and/or platform that AMc provided to You, including but not limited to, any Viewership Analytics provided by AMc and documents and communications concerning how AMc created or otherwise generated the Viewership Analytics.

3.     Documents and communications concerning forecasts, predictions, or estimates provided to You by AMc concerning the Digital Media content or platform.

4.     Documents and communications concerning the actual performance or success of the Digital Media content or platform.

5.     Budgets for services provided or to be provided by AMc to You concerning the Digital Media content or platform.

6.     Documents and communications that relate to the amount of money spent by You on any Digital Media content or platform developed and managed by AMc.

7.     Bills, invoices, and other requests for payment You received from AMc concerning Digital Media content or platform.

8.     Documents and communications reflecting any concerns about or requests to AMc for information on Your Digital Media content or platform, including but not limited to, documents concerning AMc's response.

3

4852-2813-7140.2
-