IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § | |
| *Plaintiff and Counter-Defendant*, | § § | |
| and | § § | |
| WAYNE LAPIERRE, | § § | |
| *Third-Party Defendant*, | § § § | |
| v. | § § | Case No. 3:19-cv-02074-G |
| ACKERMAN MCQUEEN, INC., | § § § | |
| *Defendant and Counter-Plaintiff*, | § § | |
| and | § § | |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG, | § § § § § | |
| *Defendants*. | | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL PLAINTIFF'S DOCUMENT PRODUCTION AND MOTION FOR SANCTIONS**

Ackerman McQueen, Inc. ("***AMc***"), Mercury Group, Inc., Henry Martin, William Winkler, Melanie Montgomery, and Jesse Greenberg (collectively, "***Defendants***") file this *Reply* (the "***Reply***") *in Support of Motion to Compel Plaintiff's Document Production and Motion for Sanctions* (the "***Motion***") (ECF 54).[1]

---

[1] Defendants file this Reply subject to and without waiver of their pending Motion to Disqualify Plaintiff's Counsel (William A. Brewer III & Brewer Attorneys & Counselors) (the "***Motion to Disqualify***") (ECF 78) and expressly reserve all rights asserted and remedies requested therein.

A.        **Plaintiff Misstates the Legal Standard for Prevailing Under FRCP 37.**

Plaintiff incorrectly relies upon an unpublished, minority ruling by Judge Kaplan (not Judge Fish[2]) as the "standard" for discovery motions in the Northern District. Regardless of which standard this Court applies, Defendants have exceeded any threshold showing of relevance.

### 1. Plaintiff Relies Upon A Minority Position Not Adopted by the Fifth Circuit.

In *Spiegelberg v. Hancock*, Judge Kaplan, Magistrate Judge for the Northern District of Texas, issued an opinion on a motion to compel, asserting that the party resisting discovery <u>did not</u> have to support its objections until the moving party established a "threshold burden" of relevance for the discovery sought.[3] In support of this holding, Judge Kaplan cited only to (1) an opinion he himself authored the prior year, and (2) a non-authoritative case from Illinois. Although Judge Kaplan acknowledged that this ruling was misaligned with prior precedent from the Northern District, such as *Merrill v. Waffle House*[4] and Fifth Circuit precedent,[5] which place the burden on the party <u>resisting</u> the discovery, he nevertheless proceeded to create this split of authority in the Northern District.[6] Since then, although other cases have cited *Spiegelberg* for this burden-shifting proposition, these cases are in the clear minority when compared to *Merrill* and its successors.[7] Importantly, this minority standard has never been embraced by the Fifth

---

[2] *Spiegelberg Mfg v. Hancock*, 3-07-CV-1314-G, 2007 U.S. Dist. 88987 (N.D. Tex. Dec. 3, 2007) (Kaplan, J.). Although Judge Fish was the Senior Judge in the *Spiegelberg* case, Magistrate Judge Kaplan authored the opinion cited by Plaintiff. However, following Judge Kaplan's ruling, the case was immediately referred to mediation and settled without Judge Fish adopting or making any ruling in support of, or in reliance upon, Judge Kaplan's opinion. It is therefore disingenuous for Plaintiff to state that Judge Fish "instructed" this burden-shifting standard or "specifically rejected" the majority standard followed by Fifth Circuit. *See* ECF 70 at 2, 10.
[3] *See id.* at *2-5.
[4] *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005) (Lynn, J.).
[5] *McLeod, Alexander, Powell and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).
[6] *See id.*
[7] Numerous Northern District cases have acknowledged the split of authority but declined to follow *Spiegelberg*. *See, e.g.*, *Samsung Elecs. Am. Inc. v. Chung*, 325 F.R.D. 578, 595 (N.D. Tex. 2017) (Horan, M.J.); *Cub USA Servs., LLC v. Jetta Operating Co.*, No. 3:14-CV-2508-D, 2016 U.S. Dist. LEXIS 1399, *1-3 (N.D. Tex. Jan. 7, 2016) (Fitzwater, J.); *Staton Holdings, Inc. v. Russell Ath., Inc.*, No. 3:09-CV-0419-D, 2010 U.S. Dist. LEXIS 34251, *5-6 (N.D. Tex. Apr. 7, 2010) (Fitzwater, C.J.). *See also, e.g.*, *Gray v. Racetrac Petroleum, Inc.*, 2019 U.S. Dist LEXIS 192599, at *2 (N.D. Tex. Nov. 5, 2019) (Godbey, J); *Kipp v. Laubach*, No. 3:17-CV-67-S, 2019 U.S. Dist. LEXIS 119159, at *1-2 (N.D. Tex. July 17, 2019) (Scholer, J.) (following Fifth Circuit majority precedent established by *McLeod*).

Circuit, which continues to place the burden on the resisting party,[8] and as *Merrill* notes, <u>even when relevance is "not readily apparent to the trial court."</u>[9]

### 2. Defendants Meet the Minimal Threshold Showing of Relevance.

Regardless of what standard this Court applies, Defendants clear the bar for any threshold showing of relevance. *First*, other legal proceedings (RFPs 6-8, 13, 23, 42-44) are directly relevant to the parties' breach-of-contract and fraud claims. It is undisputed that Brewer took over the NRA's issues with non-profit status and the NYAG and used this as a basis to audit all of the NRA's vendors, including AMc.[10] He then fabricated a dispute between the NRA and AMc to terminate the Services Agreement and steal AMc's business.[11] Yet instead of disclosing this to AMc, Brewer and the NRA represented that they needed information relating to the Lockton Affinity lawsuit and for compliance with New York law.[12] It is inconceivable for the NRA to claim that documents relating to this critical backstory is irrelevant given that it reveals how the falling out between the NRA and AMc began.

*Second*, documents about conflicts of interests are directly relevant (RFPs 1-3, 10, 90-91). It is undisputed that numerous high-ranking NRA officials knew there was a conflict of interest with the NRA retaining Brewer and his involvement with AMc.[13] It is also undisputed that Brewer created conflicts of interest within the NRA to terminate high-ranking officials who were

---

[8] *See, e.g.*, *O'Bryant v. Walgreen Co.*, 2020 U.S. App. LEXIS 6212, *16 (5th Cir. Feb. 28, 2020) (citing *McLeod* for the proposition that the party resisting discovery bears the initial burden to support objections).
[9] *Merrill*, 227 F.R.D. at 477; *see also Carr v. State Farm Mut. Auto. Ins.*, 312 F.R.D. 459, 464 (N.D. Tex. 2015) (Horan, M.J.) ("the governing case law in this jurisdiction provides that, even if certain discovery requests seek irrelevant information or materials, the party resisting discovery must have a valid objection to each one in order to escape the production requirement") (internal quotation omitted).
[10] ECF 57 at Ex. A-3 at 343:10-344:8 [APP 195]; 187:16-188:12 [APP 156], 236:6-237:14 [APP 168-169], 242:11-22 [APP 170], 255:15-256:4 [APP 173].
[11] ECF 31 at 97-99.
[12] ECF 31 at 99-100.
[13] ECF 57 at Ex. A-3 at 188:13-189:7 [APP156-157], 432:3-434:19 [APP 217-218]; ECF 57 at Ex. A-7 at 128:15-130:7 [APP 436-437], 152:9-153:16 [APP 442-443], ECF 57 at Ex. A-4 at 374:7-375:4 [APP 324].

questioning him.[14]   When asked about these conflicts, Brewer turned it into an alleged conspiracy by AMc to dethrone LaPierre solely to deflect attention from himself, which he further used to cause the termination of the Services Agreement and defamation of AMc.[15]

*Third*, Defendants are entitled to documents relating to the competition between Brewer and AMc (RFPs 7, 11, 64-65, 87-89), which is repeatedly at issue in this case.[16]   It is undisputed that the Brewer Firm has already supplanted AMc as the NRA's vendor for media and public-relations services.  As set out in the Motion, these requests are not only relevant to the timing and scope of services, but will likely reveal other information, such as the Brewer Firm's leaks to the media to try this case "in the court of public opinion" to gain an advantage over AMc.

B.     **Plaintiff Fails to Properly Urge Objections on Relevance and Scope.**

Plaintiff fails to provide support for and meet its burden to show how the requests "have no possible bearing" on the claims and defenses in this case or are otherwise objectionable.

   1.   **Plaintiff Fails to Show that Defendants' Requests "Have No Possible Bearing."**

Plaintiff argues that numerous discovery requests are irrelevant, but fails to satisfy its burden to show that they "have no possible bearing" on any claim or defense.[17]   Plaintiff's only attempt to meet this burden is through listing the parties' claims and defenses and making conclusory statements of irrelevance.[18]   Plaintiff's attempt to distance itself from LaPierre as merely some unrelated "third party"[19] is artificial and nonsensical because all claims arise out of the same underlying facts and circumstances.   Both the NRA and LaPierre are parties to this

---

[14] ECF 57 at Ex. A-7 at 163:1-164:15 [APP 445]; ECF 57 at Ex. A-3 at 116:18-21 [APP 138], 255:15-256:4 [APP 173], 319:18-320:4 [APP 189], 341:9-342:1 [APP 195], 343:10-344:8 [APP 195], 395:11-396:15 [APP 208].
[15] *See* ECF 57 at Ex. A-3 at 395:11-21 [APP 208].
[16] *See* ECF 31 at 77 (¶ 2), 96-98 (¶¶ 61-69) (repeatedly discussing Brewer and his firm's conflicts, involvement, competition with AMc); ECF 79 § A (1)(ii) at 3; ECF 56 at Ex. A-6 at 42:4-19 [APP 390].
[17] ECF 70 at 19-24.
[18] ECF 70 at 12-13, 19.
[19] ECF 70 at 4, 13-14.

lawsuit, LaPierre runs the NRA, and the Brewer Firm represents them both. The NRA is therefore one of the proper parties from whom to seek discovery related to the fraud of its Executive Vice President, and a request for production (rather than a subpoena) is the proper way to seek documents related to this lawsuit.[20] Furthermore, Defendants' affirmative defense of fraud actually identifies LaPierre in his capacity as Executive Vice President of the NRA.[21] Plaintiff failed to meet its burden, and the Court should overrule Plaintiff's relevance objections.

### 2. Plaintiff Failed to Support its Objections as to Scope and Burden.

In their Motion, Defendants ask the Court to overrule numerous overbreadth and undue burden objections.[22] Plaintiff was required to present evidence of undue burden for each request.[23] Yet Plaintiff failed to present any evidence of burden whatsoever, either in the form of affidavit or argument in its Response. Instead, Plaintiff asserted new objections, never previously asserted, regarding overbreadth and undue burden for entirely different requests for production.[24]

Specifically with regard to Defendants' requests related to the Brewer Firm's attorney fees (RFPs 5, 39, and 43), Plaintiff argues that this information is "premature"[25] and suggests that Defendants should remain completely in the dark as to an entire element of damages until after a liability determination is made at trial. *First*, as discussed in the Motion, this information is directly relevant to one of the critical issues in this litigation: Col. North's questioning of Brewer's fees and engagement that turned into the NRA, LaPierre, and Brewer creating false extortion claims against AMc to deflect attention away from Brewer and LaPierre and that ultimately led to

---

[20] FED. R. CIV. P. 34(a)(1).
[21] ECF 31 ¶ 205.
[22] ECF 54 at 2; ECF 55 § D at 20-21.
[23] *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 242 (N.D. Tex. 2016); *Curtis v. Metro. Life Ins. Co.*, No. 3:15-CV-2328-B, 2016 U.S. Dist. LEXIS 20182, at *2 (N.D. Tex. Feb 19, 2016).
[24] ECF 70 at 15, 24. With regard to these specific requests (RFPs 5, 7, 39, 43, 64-65, 87-89), Plaintiff only ever previously objected on relevance and privilege grounds, but now seeks to make its case for burden in its Response.
[25] Defendants conferred categorically about the requests for which they moved to compel, citing specific examples for each category sought. *See* **Ex. B**; *Cf.* ECF 70 at 23.

the termination of the Services Agreement.[26]

*Second*, not only is this argument unsupported by the case Plaintiff cites,[27] it leads to absurd conclusions, such as the halting of a two-phase trial to conduct another round of discovery, meanwhile leaving Defendants ignorant of their total amount of exposure. More importantly, in this district, Defendants are entitled to discovery of Plaintiff's fees to determine their own risk of liability.[28] Because Plaintiff failed to produce any evidence of undue burden for its objections, both old and new, its objections should be overruled.[29]

**C.    The NRA Exaggerates the Scope of Prior Production and Communications.**

Plaintiff mischaracterizes the communications that occurred during the parties' conference on February 3, 2020. Not only did AMc address many more individual requests and categories of documents sought than Plaintiff represents in its Response,[30] but the conference was deliberately truncated by Plaintiff's counsel who declined to review AMc's requests one-by-one, which AMc's counsel was prepared to do.[31]

Plaintiff also takes extensive liberties with its representations regarding the scope and responsiveness of its prior document production—boldly claiming that it has already produced "approximately 33,000 documents comprising more than 90,000 pages," which it represents are

---

[26] ECF 57 at Ex. A-3 at 395:11-21 [APP 208]; ECF 31 at 77-79; ECF 79 at Ex. A § B at 4-10.
[27] Plaintiff cites Virginia case, *CSX Transp., Inc. v. Peirce*, No. 5:05CV202, 2012 WL 5354544, at *2 (N.D. W. Va. Oct. 29, 2012), where the plaintiff was not required to prove up its attorney fees at trial due to the statutory scheme on which the lawsuit was based. Here, both parties will be required to properly prove up their claims for attorney fees at trial. *See Universal MRI & Diagnostics, Inc. v. Med. Lien Mgmt. Inc.*, 497 S.W.3d 653, 663 (Tex. App.—Houston [14th Dist.] 2016, no pet.), making Plaintiff's attorney fees both relevant and discoverable.
[28] *M3Girl Designs, LLC v. Blue Brownies, LLC*, No. 3:09-cv-2390-F, 2011 U.S. Dist. LEXIS 159909, at *16 (N.D. Tex. Aug. 31, 2011) ("Defendants have an interest in knowing the scope of Plaintiff's demands for attorneys' fees so they can evaluate their potential liability in this case." Accordingly, "billing statements that attorneys submit to client are equally discoverable.")
[29] Plaintiff alleges in Section E of its Response that Defendants first had to move to compel production before challenging its objections. *See* ECF 70 at 27. Plaintiff cites no law in support and Defendants have found none.
[30] ECF 70 at 1, 2, 17, 20, 22, 23.
[31] *See* **Ex. B**.

responsive to all of Defendants' 177 document requests.[32] Yet this is a gross overstatement for two reasons. *First*, Plaintiff admits to withholding whole categories of information on the basis of privilege, relevance, and overbreadth.[33] *Second*, most of the documents in this broad assertion were produced in the Virginia Action with fewer causes of action (at the time) and parties prior to the NRA filing this suit in Texas.[34] The prior production relates to a narrow subset of claims in *this* action and thus, for numerous categories of documents, the NRA has produced nothing.

Moreover, Plaintiff states that it has already produced responsive documents to several requests, but provides insufficient support for this assertion.[35] Further, the supporting declarations themselves give inconsistent accounts of the number of documents collected and custodians searched.[36] Although the NRA boasts about the quantity of documents produced, without more clarity in the NRA's responses, this is akin to throwing more hay in a stack and saying, "Trust us, the needles are in there somewhere."

### D.  The Crime-Fraud Exception Overcomes Plaintiff's Privilege Assertions.

When a lawyer supplies false information in perpetration of a fraud, that conduct is outside of his professional duties as a lawyer and no privilege will attach.[37] The crime-fraud exception

---

[32] ECF 70 at 5.
[33] ECF 70 at 10-25.
[34] Plaintiff amended its complaint in the Virginia Action on February 21, 2020 to mirror this case, but then the Virginia case was stayed on March 18, 2020 before any additional substantive discovery took place.
[35] ECF 70 at 2, n.1. Plaintiff's Appendix only identifies responsive documents for one single request (RFP 86).
[36] On February 26, 2020, counsel for the NRA (Mr. McKenney) submitted a declaration in support of the NRA's Motion to Compel stating that the NRA had collected approximately 6.4 million documents from 72 potential document custodians. *See* ECF 59 at Ex. A ¶ 4 ("In connection with the NRA/AMc litigations, the NRA has collected approximately 6.4 million documents, the vast majority being irrelevant. These documents came from 72 potential document custodians."). Now, on March 23, 2020, counsel for the NRA (Mr. Collins) submitted a declaration in support of the NRA's Response claiming that *by February 3, 2020*, the NRA produced more than 28,000 pages from the files of approximately 120 custodians. *See* ECF 71 ¶ 15 [APP 009] ("By February 3, 2020, the NRA had produced more than 79,000 pages and more than 28,000 documents that are relevant and responsive to Defendants' discovery requests, the files of approximately 120 custodians.").
[37] *See In re Grand Jury Subpoena*, 419 F.3d 329 (5th Cir. 2005); *Freeman v. Bianchi*, 820 S.W.3d 853, 861 (Tex. App.—Houston [1st Dist.] 1991, writ denied); *Sevachko v. Commonwealth*, 35 Va. App. 346, 355 (Va. App. 2001); *Peterson v. Fairfax Hosp. Sys.*, 32 Va. Cir. 294, 296-97 (1993). "[T]he suggestion of a crime having been committed was an attempt to deflect attention away from the possibility of" wrongdoing by the party asserting privilege. *Peterson*, 32 Va. Cir. at 296. It was further evident when the lawyers acted "contrariwise" to the criminal conduct

applies to both Plaintiff and LaPierre who acted in concert with their lawyer, Brewer.[38] Evidence of Brewer's principal role and direction in that crime and fraud is ample in the record, including Defendants' Motion to Disqualify, which they incorporate by reference. Additionally, where Brewer and his firm are serving in a PR capacity rather than as lawyer, no privilege applies.[39]

The fraud, in part, is the extortion narrative Brewer created, including false representations of fact that North, AMc, and all the other ousted NRA officials attempted a "coup" against LaPierre.[40] As with the *Peterson* case, Brewer makes (and directs others to make) these statements to deflect attention from increasing questions about the scope of his engagement, his $100,000 per day fees,[41] and his ethical conflicts.[42]

Overwhelming evidence is already before the Court regarding Brewer's effort to fabricate evidence in furtherance of this extortion narrative.[43] Yet, NRA testimony unequivocally establishes no extortion by North or AMc.[44] Whenever questioned about the underlying facts or the source of facts concerning the extortion narrative, the Brewer Firm asserts privilege, covering

---

they alleged when they withheld information and retained files rather than assisting others in an investigation. *Id.* at 297. The court found the evidence sufficient to support the plaintiffs' argument that counsel asserting privilege did so "to minimize, by whatever means possible, its exposure to damages in the event of a lawsuit." *Id.*

[38] Plaintiff cited to *In re Grand Jury Subpoenas* to argue the request for the privileged communications is overbroad. *See* ECF 70 at 17 & n.66. But that court ruled that the exception excludes from privilege all communications made in furtherance of a crime or fraud. *See In re Grand Jury Subpoenas*, 419 F.3d at 347. Plaintiff may complain that Defendants' request seeks *too many* privileged documents (*e.g.*, 100 vs. 10), but if all 100 communications were in furtherance of the crime or fraud, then all 100 are excluded from privilege.

[39] *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 475 (N.D. Tex. 2004) ("Where an attorney is functioning in some other capacity … there is no privilege.").

[40] ECF 31 at 77-79; ECF 79 at Ex. A at 4-10, 21; ECF 81 at A-2 at 395:11-17 [APP 156].

[41] Plaintiff represented to this Court that Defendants already have the information they need based on its assertion that "multiple NRA witnesses testified that an NRA attorney personally knew and proposed retaining Mr. Brewer as the NRA's counsel, and that counsel's bills were scrutinized by Plaintiff's General Counsel." ECF 70 at 16. Plaintiff then cites documents that Defendants filed under seal based upon Plaintiff's designations of confidentiality, which Plaintiff has now waived. What Plaintiff failed to disclose is *that same attorney* said Brewer exceeded the original scope of his representation, which became a conflict of interest once he represented Plaintiff in these lawsuits against AMc because of his familial ties and animus against AMc's Angus McQueen. *That same attorney* also testified that Brewer ousted him and added him to the false narrative of some conspiracy against LaPierre *when that attorney questioned Brewer's fees*.

[42] *See* ECF 79 at Ex. A at 5-10, 21.

[43] *See* ECF 79 at Ex. A at 4-10, 21.

[44] ECF 79 at Ex. A at 21, n.126.

---

up that Brewer is the source.[45] By *creating* facts, and being the only individual with "knowledge" of non-existent facts, Brewer knew the representations were false when he made them and directed others to make the same.

Brewer was able to turn the NRA against North (and AMc) to unseat North as President, dilute North's influence, deflect attention from himself and LaPierre, and terminate the Services Agreement—all to avoid any investigation into his fees and ethical conflicts. Ultimately, the NRA, the media, and the public all relied upon the narrative by (a) ousting North, (b) terminating the Services Agreement, and (c) publishing defamatory statements about AMc, including to the media. AMc suffered harm as a result. For the foregoing reasons, the crime-fraud exception precludes application of the attorney-client privilege, which extends to the entire related subject matter, such as RFPs 4, 6-9, 12-13, 16-17, 23, 41, 44, 79 (related to Brewer's retention); RFPs 5, 39, 40, 42, 43 (related to Brewer's billing); RFPs 47, 101 (related to documents from Forensic Risk Alliance, discussed below); and RFP 54 (related to Josh Powell).[46]

**E.   Defendants Are Entitled to Forensic Risk Alliance and Public Relations Documents.**

Defendants moved to compel Plaintiff to produce documents in response to RFP 47 and 101 related to audit documents with its auditing firm, Forensic Risk Alliance ("**FRA**"), and documents relating to PR communications.[47] The PR documents are not privileged *at all* (not merely excepted from privilege) because they were not communications made for rendering legal

---

[45] ECF 79 at Ex. A at 21, n.127.
[46] *See SEC v. Microtune, Inc.*, 258 F.R.D. 310, 317 (N.D. Tex. 2009); *In re Itron, Inc.*, 883 F.3d 553, 558 (5th Cir. 2018) ("And to prevent selective or misleading disclosures, fairness dictates that the waiver extend to related subject matter."); *SEC v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2006); *In re Fisher & Paykel Appliances, Inc.*, 420 S.W.3d 842, 851 (Tex. App.—Dallas 2014, pet. denied) (refusing to recognize the "selective waiver" doctrine); TEX. R. EVID. 511(b)(1); *Commonwealth v. Edwards*, 235 Va. 499, 510 (Va. 1988).
[47] *See* ECF 55 § C (1)(d) at 13-15.

advice.[48] As for the FRA documents, Plaintiff makes vague and conclusory misstatements about the scope and terms of the Virginia court's ruling on FRA.[49]

### 1. Plaintiff's Communications with FRA Are Excepted from Privilege.

As briefed in the Motion, Plaintiff made "offensive use" of the FRA documents by relying on the audits to make damning statements about AMc in its pleadings and the media and then withholding these documents from production.[50] Stated differently, the basis for one of Plaintiff's fundamental causes of action against Defendants relates to the very information they are claiming is privileged.[51] Moreover, this information is likely case dispositive, conclusively proving that AMc complied with the audit, which is information that AMc cannot obtain from any other source. Without access to the FRA documents, AMc cannot fully or fairly defend itself.

If, as Plaintiff says, it "did not offer or rely on, and did not intend to offer or rely in the future on, any of the privileged or work-product protected opinions and conclusions generated by FRA," then communications with FRA are not *necessary* for giving legal advice.[52] Plaintiff then contends it will rely only on the facts of the FRA audit, but it blocks discovery into those facts.[53]

### 2. Plaintiff Misrepresents the Virginia Court's Holding.

Plaintiff claims the Virginia court "rejected" Defendants' arguments related to the production of the FRA documents, which is inaccurate for two reasons. *First*, the Virginia court

---

[48] *See* ECF 80 at Ex. A-66; ECF 55 at 15 (discussing *Harding v. Cty. of Dall.*, Civ. Action No. 3:15-CV-0131-D, 2016 U.S. Dist. LEXIS 177937 (N.D. Tex. Dec. 23, 2016) and Fed. R. Civ. P. 26(b)(2)(A)).  Plaintiff failed to address the case law, statute, and arguments regarding lack of privilege and offensive use concerning the PR documents.  Plaintiff waived any arguments or objections to same.
[49] ECF 70 at 25-26.
[50] ECF 55 at 6-7, 15-17.
[51] ECF 18 ¶¶ 56, 168-173.
[52] ECF 70 at 25; *Navigant*, 220 F.R.D.at 473 (N.D. Tex. 2004) (The attorney-client privilege protects "only those disclosures **_necessary_** to obtain information legal advice.") (emphasis added); *see also* ECF 55 at 6, 15.
[53] ECF 70 at 26.  In the very deposition of the FRA representative, the Brewer Firm objected on privilege to questions about those underlying facts, including, for instance, whether FRA received all the documents it requested from AMc and whether AMc cooperated.  Both are case-dispositive facts relating to Plaintiff's breach of contract claim alleging AMc refused to cooperate with audits/reviews and to AMc's defamation claim based partly upon that allegation.

did not rule on the "offensive use" doctrine or classification of the FRA documents as either attorney-client communications or opinion work product, so the issue was not "fully briefed"[54] (or briefed *at all*) in any sense.  In fact, when Defendants later filed a motion challenging those privileges, the Virginia court never reached the arguments before it stayed the case.[55]  *Second*, although the court allowed Plaintiff to withhold documents it self-classified as privileged, the court expressly acknowledged the possibility that Defendants would eventually need access to the documents to present their defense and left open the option to request an *in camera* review.[56] Plaintiff's assertion that these issues were "fully briefed" or "rejected" are simply not true.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request and pray that the Court grant the Motion and the relief requested therein.

---

[54] ECF 70 at 26.
[55] **Ex. B-1** at 65:20-69:7, 148:9-21 (Feb. 6, 2020 Hr'g Tr.) ("So I will withhold any ruling on the issue with regard to the in-camera review of the [FRA] documents since I suspect ultimately the trial judge is going to have to do that once you—this matter is ultimately decided when it's going to be heard.").  Although a Reply is typically not the place for new evidence, Plaintiff's misrepresentation to this Court about the status of the Virginia arguments and ruling concerning FRA documents requires this addition.
[56] ECF 71 at Ex. G at 80:22-81:8 [APP 479-480] ("I think we get right back to doing what's fair.  I think we may ultimately have to kind of deal with this in the sense that [AMc is] entitled to defend this case, and I don't know if we can just kind of keep all the necessary material away from them that may be a part of any defense that they may have.  Right now, I'll leave my ruling as it stands, and I'm sure that I will see you again.").

Dated: April 6, 2020.

        Respectfully submitted,

        */s/ Brian E. Mason*
        **G. Michael Gruber, Esq.**
        Texas Bar No. 08555400
        gruber.mike@dorsey.com
        **Jay J. Madrid, Esq.**
        Texas Bar No. 12802000
        madrid.jay@dorsey.com
        **J. Brian Vanderwoude, Esq.**
        Texas Bar No. 24047558
        vanderwoude.brian@dorsey.com
        **Brian E. Mason, Esq.**
        Texas Bar No. 24079906
        mason.brian@dorsey.com
        **DORSEY & WHITNEY LLP**
        300 Crescent Court, Suite 400
        Dallas, Texas 75201
        (214) 981-9900 Phone
        (214) 981-9901 Facsimile

        **ATTORNEYS FOR DEFENDANTS ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, JESSE GREENBERG, WILLIAM WINKLER, AND MELANIE MONTGOMERY**

## CERTIFICATE OF SERVICE

    I hereby certify that on April 6, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

        */s/ Brian E. Mason*
        Brian E. Mason