IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § § § § § § § § § § § § § § § § § § § § § § § | |
| *Plaintiff and Counter-Defendant*, | | |
| and | | |
| WAYNE LAPIERRE, | | |
| *Third-Party Defendant*, | | |
| v. | | Case No. 3:19-cv-02074-G |
| ACKERMAN MCQUEEN, INC., | | |
| *Defendant and Counter-Plaintiff*, | | |
| and | | |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG, | | |
| *Defendants*. | | |

**DEFENDANTS' REPLY IN SUPPORT OF (1) MOTION FOR LEAVE TO TEMPORARILY FILE UNDER SEAL BRIEF IN SUPPORT OF MOTION TO DISQUALIFY; (2) MOTION FOR LEAVE TO PUBLICLY FILE UNREDACTED BRIEF, OR IN THE ALTERNATIVE, REDACTED BRIEF IN SUPPORT OF MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL; AND (3) MOTION FOR LEAVE TO FILE UNDER SEAL CERTAIN EXHIBITS TO THEIR MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

Defendants file this *Reply in Support of Motion for Leave to Temporarily File Under Seal Brief in Support of Motion to Disqualify; Motion for Leave to Publicly File Unredacted Brief, or in the Alternative, Redacted Brief in Support of Motion to Disqualify* (ECF 79); *and Motion for Leave to File Under Seal Certain Exhibits to their Motion to Disqualify Plaintiff's Counsel* (ECF

81) (the "**Reply**" to the "**Motions**").

## SUMMARY

The issue before the Court is whether the brief in support of Defendants' *Brief in Support of their Motion to Disqualify* (the "**Brief**") should be filed unredacted or redacted to shield Plaintiff's alleged confidential information (the "**Disputed Evidence**"). In its Response, Plaintiff repeatedly makes legally and factually unsupportable statements asking the Court to assume that (1) AMc owed a fiduciary relationship to the NRA, (2) the Disputed Evidence is "confidential," and (3) the Services Agreement is imbued with confidentiality properties that transcend *four* lawsuits and apply to almost every piece of evidence unearthed through discovery. At the same time, Plaintiff asks the Court to ignore the Brewer Firm's continued efforts to try this case in the media (which requires waiving confidentiality) and the gross inequity resulting from the NRA's ability to shield any contradictory evidence, or even arguments made in briefs, from public scrutiny through its unilateral confidentiality designations. Stated differently, the Brewer Firm's standard is that any damaging evidence is confidential and to be withheld from the public.

But the Disputed Evidence is not confidential, the Services Agreement does not provide the sweeping protections Plaintiff seeks to impose, there is no fiduciary relationship between the parties, and Plaintiff has waived the right to claim confidentiality. The Court should reject Plaintiff's repeated efforts to litigate this case in the media while impeding Defendants' rights to protect themselves by merely relying on the actual facts and evidence. Defendants should be permitted to file the Brief and the Disputed Evidence in the public record.

### A. The Disputed Evidence Is Not Confidential.

#### 1. Under the Virginia Protective Order or Federal Law

The Protective Order defines confidential information as that which qualifies "for protection under Rule 4.1(c) of the Rules of the Supreme Court of Virginia," which further defines

such protectable information as "trade secret or other confidential research, development, or commercial information."[1]  Federal law applies the same definition: confidential commercial information is that which would give a competitor an economic advantage.[2]  The Disputed Evidence is not trade secret, confidential research, confidential development, or confidential commercial information that would give a competitor any economic advantage.  Indeed, the Disputed Evidence is not confidential at all—merely unfavorable evidence that the NRA and its counsel would prefer to withhold from the public because it contradicts their allegations against Defendants and the false narrative they have been spinning to the public.[3]  As a sampling, the Disputed Evidence includes letters between the parties' counsel *after* the NRA first determined it would sue AMc and letters between counsel *after* the various lawsuits were filed; internal NRA documents only it could leak to the media, which have been summarized and/or quoted in the media; and deposition testimony about the non-privileged facts concerning Plaintiff's false allegations of extortion and Brewer's efforts to force a breach of the Services Agreement.

Tellingly, Plaintiff made *no* attempt whatsoever to address the substance of the issue before the Court by justifying how any of the Disputed Evidence is confidential under any legal, contractual, or court-ordered standard.  Nor did it point to any case law stating that, after being sued by a contracting party, libeled with its contractual relationship tortiously destroyed, a

---

[1] ECF 79 at 4-5; Virginia Rule 4:1(c); ECF 56 at Ex. A-5 at 2 [APP 330].
[2] *See Comcast Cable Communs., LLC v. Bt Ams., Inc.*, No. 3:12-CV-1712-M, 2013 U.S. Dist. LEXIS 194112, at *5 (N.D. Tex. Jul. 26, 2013) (considering "the disclosing party's interest in protecting confidential commercial information *from disclosure to competitors*" (emphasis added)); *Wyndham Vacation Resorts, Inc. v. Faucett (In re Faucett)*, 438 B.R. 564, 569 (Bankr. W.D. Tex. 2010); *In re Meyrowitz*, No. 06-31660-bjh-11, 2006 Bankr. LEXIS 2931, at *7 (Bankr. N.D. Tex. Oct. 26, 2006) (defining commercial information as information giving a competitor unfair advantage through disclosure of commercial operations); *Sokolow v. FDA*, No. 1:97-CV-252, 1998 U.S. Dist. LEXIS 23672, at *9 (E.D. Tex. Feb. 19, 1998) (actual competition and likelihood of competitive harm warrant confidentiality over commercial information); *Apalachicola Riverkeeper v. Taylor Energy Co., L.L.C.*, 309 F.R.D. 381, 388 (E.D. La. 2015) (defining commercial information as that "which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained").
[3] ECF 79 at 5.

defendant has to keep "secrets" as opposed to being able to defend itself in litigation with all relevant facts. Instead, Plaintiff chose to make conclusory and inapplicable procedural arguments.

### 2. Under the Services Agreement[4]

Plaintiff argues that the "plain language" of the Services Agreement "requires AMc to keep confidential" the Disputed Evidence at issue.[5] Reliance on the Services Agreement is nothing more than a red herring to create confidentiality obligations that simply do not exist given that the NRA filed claims alleging a breach of the Services Agreement (including of the confidentiality provision) and the parties' relationship terminated in May 2019. However even if the Services Agreement is relevant, the NRA misreads the contract. The Services Agreement states that:

> AMc shall not disclose, directly or indirectly, to any third party any NRA membership data or mailing lists, any materials or information relating thereto, or any other data, materials or information coming to the knowledge of AMc, supplied to AMc by NRA, or otherwise made known to AMc **as a result of AMc's providing Services** . . . without the prior express written permission of the NRA.[6]

Virtually all of the information currently marked for redaction in the Brief, aside from arising after litigation had begun, had absolutely nothing to do with the parties' legitimate multi-decade business relationship. Instead, the Disputed Evidence concerns this litigation, Brewer's conflict of interests, the phony extortion narrative, the resulting defamation, and the NRA's false pretenses for terminating the Services Agreement tortiously created by Brewer and his firm.

As written, Defendants must have acquired the "Confidential Information" while in the course and scope of providing services to the NRA. The evidence, produced after the NRA sued

---

[4] It is worth noting that Plaintiff designated the Services Agreement as confidential. Plaintiff then proceeded to quote from the Services Agreement in its Response without filing under seal. Yet Plaintiff seeks to restrain Defendants from using in public filings similar "confidential" information to refute Plaintiff's allegations. Such unilaterally self-serving, misrepresentative, and offensive use should not be permitted.
[5] ECF 93 at 5.
[6] ECF 93 at Ex. 1 to Collins' Decl. § IV.A.1 (emphasis added) (the "***Confidentiality Clause***").

AMc in April 2019[7] (in addition to the other documents produced by third parties), is not the kind of information that was ever intended to be kept confidential and was not acquired while providing services to the NRA.  Most of the evidence at issue was obtained, largely as admissions, from key NRA personnel at the highest legal and corporate level, which involves wrongdoing by the NRA, LaPierre, and Brewer and his law firm: illegal actions taken by these individuals and entities as opposed to actions taken by AMc in pursuit of its contractual obligations.  Yet even if the NRA were to argue that litigation depositions (or other evidence) are somehow a "result of" providing services, the Services Agreement goes on to clarify that, "AMc may use such Confidential Information only for the limited purpose of providing its Services to the NRA."[8]  Thus, any information dubbed "confidential" *following* the termination of the Services Agreement could never be used by AMc for the purpose of "providing its Services for the NRA"—there were no services left to provide.  In other words, the only confidential information the Services Agreement covered was information that could have been used in the course of providing services to the NRA.

But here, the Services Agreement was constructively terminated by the NRA in May 2019.[9] The Disputed Evidence at issue in this Motion (largely deposition testimony) was provided and designated as "confidential" after this date.  As a result, Defendants never used the Disputed Evidence "for the limited purpose of providing its Services to the NRA" and did not receive the Disputed Evidence while performing under the Services Agreement.  Clearly then, the "plain language" of the Services Agreement does not require sealing the Disputed Evidence.

---

[7] The first lawsuit filed by the NRA against AMc was in April 2019 in Virginia state court.  *See* ECF 80 at Ex. A-10 [APP 610-625].
[8] ECF 93 at Ex. 1 to Collins' Decl. § IV.A.3
[9] AMc provided formal notice of termination on May 29, 2019 based on the NRA's prior constructive termination.

B. **The Brewer Firm's Waiver of Confidentiality and Public Policy Require the Filing of an Unredacted Brief.**

As a New York trial court recently acknowledged, and Plaintiff and its counsel are estopped to deny, the NRA should not be allowed to "shield its [wrongful] conduct through use of an NDA,"[10] especially when public policy issues are concerned—like here, with waiver by offensive use. The Fifth Circuit repeatedly emphasizes the strong public policy of public access to court documents:

> Public confidence in our judicial system cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view.[11]

This principle is particularly important in this litigation, where the Brewer Firm is shielding its own illegal acts and takes every opportunity to ensure this case, or at least its false narrative of the case, stays in the "public view."[12] For example, the day after Defendants filed their Motion to Disqualify (with the Brief and half of the Appendix temporarily shielded from the public), the Brewer Firm released a statement, calling it a "last-gasp attempt of this failing and terminated vendor to deflect attention from allegations of significant wrongdoing."[13] The Brewer Firm even had a law professor weigh in as an "expert" on the merits of the Motion, denouncing it as "assumptions and innuendo."[14] The public, including the journalists who report on legal matters,

---

[10] *See* ECF 56 at Ex. A-10 at 12 of 13 [APP 637] (Hon. Melissa A. Crane's Feb. 24, 2020 Order granting the NY AG's petition to compel compliance with its subpoena duces tecum).
[11] *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010); *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008) (alterations omitted).
[12] Even the New York court admonished that "[t]he NRA cannot use its publicist [AMc] as a sword and shield, for public outreach when it feels so inclined, and, in other instances, remain tucked away from public view." *See* ECF 56 at Ex. A-10 at 8 of 13 [APP 633] (Hon. Melissa A. Crane's Feb. 24, 2020 Order granting the NY AG's petition to compel compliance with its subpoena duces tecum).
[13] Morgan Conley, *Atty for NRA Can't Sue Family Biz, Ad Agency Says*, Law360 (Mar. 31, 2020) (https://www.law360.com/articles/1258845/atty-for-nra-can-t-sue-family-biz-ad-agency-says).
[14] *Id.*

cannot possibly gauge the truth of the statements that the Brewer Firm relentlessly feeds to the press without open access to the underlying records and supporting evidence.

In fact, Plaintiff's sword-and-shield application of confidentiality designations (to shield unfavorable evidence) has continued to spawn one-sided media stories and significant reputational harm to Defendants.[15]  Even in its Response, for example, Plaintiff *attached in its public filing* the parties' Services Agreement, which it previously designated confidential to restrain Defendants.[16]  Further, Plaintiff also cited and summarized the contents of the very documents Defendants filed under seal in another motion.  The related testimony Defendants would present refutes Plaintiff's arguments, but Plaintiff seeks to hold Defendants to confidentiality.  To illustrate, Plaintiff argued:

> multiple NRA witnesses testified that an NRA attorney personally knew and proposed retaining Mr. Brewer as the NRA's counsel, and that counsel's bills were scrutinized by Plaintiff's General Counsel, the Chief Financial Officer/Treasurer.[17]

Plaintiff cited to the exhibits for the Meadows and LaPierre depositions (also providing their names) from ECF 57[18]—*i.e.*, Defendants' *Motion for Leave to File under Seal* certain exhibits to their *Motion to Compel*.  But Plaintiff opposes Defendants presenting non-privileged underlying facts to establish that *the same attorney* referenced in the above-quoted argument actually testified that Brewer ousted him and added him to the false narrative of extortion conspiracy against LaPierre *when that attorney questioned Brewer's fees*.[19]  Simply stated, Defendants cannot defend

---

[15] *See, e.g.*, ECF 79 n.7 (citing to news article and podcast summarizing/quoting from LaPierre's allegedly "confidential" letter to the NRA Board) *compared with* ECF 81 at Ex. A-33; *see also* ECF 55 at 6-7, 15-17.  *See, e.g.*, ECF 18 at 23-27 ¶¶ 47-58 (Plaintiff alleging failure to comply with FRA audit) & ECF 80 at Exs. A-25 at 1 [APP 499], A-26 at 2 [APP 504], A-31 [APP 626], A-36 at 2 [APP 692], A-52 at 1 [APP 817], A-57 at 4 [APP 921] (news articles concerning Plaintiff's allegations that Defendants withheld information) *compared with* ECF 55 at 16-17 (Defendants arguing need for case-dispositive, non-privileged underlying facts and documents Plaintiff continues to withhold); *see also* ECF 90 at 9-11.
[16] *Compare with* ECF 81 at Ex. A-14 where Defendants filed the Services Agreement under seal in good faith.
[17] ECF 70 at 16.
[18] ECF 70 at 16 n.61.  Later in that same Response, Plaintiff argued that "the deposition transcripts submitted by Defendants *support* the claim th[at] Mr. North attempted to extort the NRA and Mr. LaPierre using information obtained from Defendants," citing expressly to Millie Hallow's deposition, but still boldly maintaining that Defendants are precluded from similarly publicly presenting controverting evidence to defend themselves.  *See id.* at 18 n.69.
[19] *See* ECF 90 at 8 n.41.

themselves against the Brewer Firm's PR machine without permitting them to file the unredacted Brief and unsealed exhibits.

### C. There Is No Fiduciary Relationship Between the NRA and AMc.

As though the matter were already decided, Plaintiff declares that "AMc is a fiduciary that has a duty to keep the NRA's information confidential"[20]—thus asking the Court to prematurely proceed under a legal framework that is still highly contested in this lawsuit.  Contrary to Plaintiff's assertion that Defendants have "*never once disputed*"[21] the existence of a fiduciary relationship, Defendants have indeed repeatedly disputed the issue in their Answer,[22] Motion to Dismiss,[23] and the parallel Virginia litigation, and are actively conducting discovery on the matter.

Yet this argument is both specious and irrelevant.  No fiduciary duty can exist when one person (Brewer through the NRA/LaPierre) is attempting to set-up another party (AMc) for litigation,[24] is competing directly against it, and is trying to destroy that party for its own benefit.

Plaintiff cites to only two clauses under the Services Agreement relating to public-relations services and media placements, which supposedly create a fiduciary relationship.[25]  Yet Plaintiff has never claimed that AMc breached either of these provisions.  Rather, the NRA broadly argues that these two contractual provisions somehow impute an infinite and endless restriction upon AMc from disclosing the "NRA's information"[26] in any public forum.  This position is entirely inconsistent with Texas agency law, which determines the scope of an agent's duty within the context of the parties' written contract and the nature and purpose of the relationship.[27]  The scope

---

[20] ECF 93 at 3.
[21] ECF 93 at 4 (emphasis in original).
[22] ECF 31 at ¶ 17 ("Defendants specifically deny dispute and deny the legal conclusion that AMc or any of its employees were agents or fiduciaries of the NRA at any point during the parties' business relationship.").
[23] ECF 29 at 20-22 (¶¶ 47-52); ECF 46 at 4.
[24] *See e.g.*, ECF 79 ¶ 21.
[25] ECF 93 at 3.
[26] ECF 93 at 3-4.
[27] *See Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 701-02 (Tex. 2007).

of confidentiality that the NRA demands far exceeds the Services Agreement.

Moreover, it is impossible to see any claim of a true agency relationship when everything had to be approved directly by LaPierre or his designated subordinates.[28] Additionally, Plaintiff was actively planning for litigation against AMc by September 2018,[29] and did sue AMc by April 2019, over a month before the NRA constructively terminated the Services Agreement.[30]

Even pretending a fiduciary relationship previously existed, the Disputed Evidence would not fall within the scope of any confidentiality requirements.  Plaintiff itself acknowledges that, for this fiduciary duty of confidentiality to exist, the confidential information must be "provided by the principal, or otherwise acquired during the course of the agency relationship."[31]

Here, even a cursory reading of the Disputed Evidence shows that most of the exhibits and deposition testimony was created and designated as "confidential" *after* the parties' relationship had been terminated, especially documents produced by third parties.  Plaintiff's contention that it may retroactively deem any information as "confidential" is nonsensical and would place Defendants in the impossible position of perpetual servitude.  This is analogous to legal malpractice actions where the client attempts to prevent the attorney from using (here, allegedly) confidential information to defend the lawsuit—this type of offensive use is prohibited irrespective of the defendant's previous fiduciary status.[32]

Plaintiff's fiduciary argument has also been rejected by the New York trial court in connection with an investigation by the New York Attorney General ("***NY AG***") into Plaintiff.  In an attempt to prevent AMc from disclosing to the NY AG information related to Plaintiff, it

---

[28] ECF 93 at Ex. 1 to Collins' Decl. § IX.
[29] ECF 81 at Ex. A-44 [APP 801].
[30] AMc provided formal notice of termination on May 29, 2019 based on the NRA's prior constructive termination.
[31] ECF 93 at 4.
[32] *See United States v. Ballard*, 779 F.2d 287, 292 (5th Cir. 1986); *Laughner v. United States*, 373 F.2d 326, 327 (5th Cir. 1967); *cf. Hume v. Stephens*, 2014 U.S. Dist. LEXIS 33545, *33 (N.D. Tex. Mar 13, 2014) (Averitte, M.J.) ("petitioner may not silence the only other source of evidence to rebut his claim").

claimed that AMc's "fiduciary role," along with the contractual confidentiality clause,[33] prohibited AMc from disclosing any information without Plaintiff's consent. The New York court rejected this argument and ordered immediate production of Plaintiff's information.[34] In sum, Plaintiff has no legal or factual support for its argument that a purported prior fiduciary relationship between the parties now mandates redaction of the Disputed Evidence.

### D. There Is No Reason to Wait on a Protective Order.

The Virginia Protective Order's challenge procedure is not the only mechanism for addressing confidentiality matters.[35] Yet Plaintiff has a clear interest in punting this issue to a future date and forcing Defendants to jump through many more procedural hoops to maximize its unfettered access to the press. It is neither premature nor improper for the Court to decide this Motion at this time.

In fact, on February 21, 2020, the Virginia court issued an order amending the prior Virginia Protective Order, affirmatively allowing for the use of designated confidential materials from the Virginia litigation in the Texas action and providing that the confidential status of the materials could be modified by the Northern District of Texas going forward.[36] This is critical because, while still binding in the Virginia litigation, the Virginia Protective Order no longer provides a workable procedure for challenging designations because that litigation has been stayed pending the outcome of this litigation—especially in light of Plaintiff's flagrant abuse of the designations process, calculated to bury gross misconduct. The Virginia Protective Order provides guidance, but not necessarily an exclusive, framework for resolving this issue.

---

[33] The same confidentiality provision Plaintiff relies upon in its Response. *See* ECF 93 at 5.
[34] ECF 56 at Ex. A-10 at 12-13 of 13 [APP 637-638] (Hon. Melissa A. Crane's Feb. 24, 2020 Order granting the NY AG's petition to compel compliance with its subpoena duces tecum).
[35] *Cf.* ECF 93 at 6-7.
[36] ECF 56 at Ex. A-13. Plaintiff dismisses this amended order as "irrelevant." ECF 93 at 6 n.24.

Defendants do not seek to strike Plaintiff's confidentiality designations wholesale at this time, nor do they seek to violate the standing Virginia Protective Order in any manner.[37] The issue before this Court is the Disputed Evidence cited and relied upon by Defendants in the Brief. And, as Plaintiff noted, Defendants are in favor of the entry in this case of a protective order substantially similar to the Virginia Protective Order[38] (pending the outcome of Defendants' Motion to Disqualify[39]). Defendants are merely asking the Court to exercise its inherent supervisory authority over its own records[40] in making a decision that is consistent with the Virginia Protective Order and that acknowledges Defendants' right to present their arguments and defend themselves in this litigation.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request and pray that the Court permit Defendants to publicly file the unredacted Brief.

Plaintiff has requested that the Motion for Leave to File Exhibits Under Seal be denied in its entirety.[41] Defendants have no objection to that denial. But if the Court denies the motion for leave to file exhibits under seal, they respectfully request the Court enter an order affirmatively permitting Defendants to publicly file the exhibits in support of their Motion to Disqualify. Alternatively, Defendants request that the Court grant their Motion for Leave and permit them to file under seal the exhibits in ECF 81. Defendants further request that the Court grant any further relief, at law or in equity, to which they may be justly entitled.

---

[37] Defendants reserve their rights to challenge Plaintiff's blanket confidential designations in the future, and will in fact be moving to do that, in whole or in part, in the future.
[38] ECF 51 at Ex. A.
[39] ECF 82 at 1 n.1.
[40] *See United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 689 (5th Cir. 2010).
[41] ECF 93 at 7.

Dated: April 13, 2020.

        Respectfully submitted,

        */s/ Brian E. Mason*
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR DEFENDANTS ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, JESSE GREENBERG, WILLIAM WINKLER, AND MELANIE MONTGOMERY**

## CERTIFICATE OF SERVICE

    I hereby certify that on April 13, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

        */s/ Brian E. Mason*
        Brian E. Mason