IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA,<br><br>    Plaintiff and Counter-Defendant<br><br>and<br><br>WAYNE LAPIERRE,<br><br>    Third-Party Defendant,<br><br>v.<br><br>ACKERMAN MCQUEEN, INC.,<br><br>    Defendant and Counter-Plaintiff,<br><br>and<br><br>MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG,<br><br>    Defendants. | Civil Action No. 3:19-cv-02074-G |

**PLAINTIFF NATIONAL RIFLE ASSOCIATION OF AMERICA'S REPLY IN SUPPORT OF ITS MOTION FOR ENTRY OF AN ALTERNATIVE PROTECTIVE <u>ORDER FOR THE PARTIES</u>**

                                           **BREWER, ATTORNEYS & COUNSELORS**

                                           Michael J. Collins, Esq.  (TX Bar No. 00785493)
                                           mjc@brewerattorneys.com
                                           1717 Main Street, Suite 5900
                                           Dallas, Texas 75201
                                           Telephone: (214) 653-4000
                                           Facsimile: (214) 653-1015

                                           **ATTORNEYS FOR PLAINTIFF AND COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA AND THIRD-PARTY DEFENDANT WAYNE LAPIERRE**

Plaintiff National Rifle Association of America (the "NRA") hereby files this reply to Defendants Ackerman McQueen, Inc., Mercury Group, Inc., Henry Martin, William Winkler, Melanie Montgomery, and Jesse Greenberg's (collectively, "AMc" or "Defendants") Response to Plaintiff's Motion for Entry of An Alternative Protective Order for the Parties (the "Response").

## I.
## PRELIMINARY STATEMENT

On March 4, 2020, the NRA asked this Court to enter a one-tier Protective Order that provides for the designation of information deemed "Confidential."[1] Defendants contend that a "two-tier" Protective Order that sets forth a second designation, "Highly Confidential," is necessary. As drafted, Defendant's two-tier Protective Order prevents disclosure of information and documents to Mr. William Brewer III, and the Public Affairs ("PA") team of Brewer, Attorneys & Counselors (the "Brewer Law Firm"). To prevent further delay, and protect its right to litigate this case with the counsel of its choice – counsel with whom the NRA has worked for more than two years – the NRA requests that this Court enter the one-tier Protective Order proposed by the NRA.

## II.
## FACTUAL CORRECTIONS

Defendants make at least three erroneous statements in their Response.

***First***, Defendants erroneously contend that they have "provided substantial evidence demonstrating Brewer's role as principal actor and tortfeasor in the underlying dispute." Defendants do not and cannot cite to any such "evidence,"[2] in their Response or elsewhere. In lieu of evidence, Defendants' Response offers a lengthy footnote with purported citations to the record.

---

[1] *See* ECF No. 61, Ex. A.
[2] Evidence, Black's Law Dictionary (11th ed. 2019) (evidence is a thing "that tends to prove or disprove the existence of an alleged fact").

Not one of those references offer "evidence" of any tort committed by the Brewer Law Firm.[3] At most, Defendants cite to instances where witnesses disagree with Brewer's legal conclusions, strategy, or billing practices, revealing a vast gulf between Defendants' posture that they have "substantial evidence" that Brewer committed a tort.[4] While the NRA disagrees with Defendants' position regarding the purported "evidence" presented, this Court or a jury are qualified to make evidentiary determinations at the appropriate time.

***Second***, no court has ever "found" that Mr. Brewer, the PA team, the Brewer Law Firm, or any combination thereof, directly or indirectly, compete with Defendants. Nor could any reasonable person come to that conclusion because Defendants' statement[5] is not true. Defendants provide exactly zero (0) citations to the record, or to any decision, slip opinion or hearing transcript in support of its allegations, because no court has ever made such a determination. In addition, and undermining their own allegations, Defendants admit that they performed public relations services for the Brewer Law Firm until just four months ago.[6] Defendants cannot square that fact with its erroneous allegation that the Brewer Law Firm is a competitor: (i) why would the Brewer Law Firm have hired Defendants to provide the Firm with PR services, if the Firm is in fact a PR agency capable of performing the same services that Defendants offer, and (ii) why would

---

[3] S*ee* Defs' Resp. n2.
[4] *Id.*
[5] *See* ECF 82 at p. 3.
[6] Defendants reference and incorporate their filings in support of their Motion to Disqualify (ECF 78), Supporting Brief (ECF 79), and Supporting Appendix (ECF 80, 81). *See* ECF 82 at p. 2.
In Defendants' Supporting Appendix (ECF 80 at A-1 at 15:1-5 [APP000026]), Defendants' counsel, Mr. Dickieson, states:
> Mr. Dickieson: Your Honor, my client is reminding me that the Brewer law firm is actual[ly] a client of Ackerman McQueen and has been a long-term client of the [AMc] firm.

Defendants' Chief Executive Officer also states in his declaration to this Court that "[u]ntil as recently as December 2019, AMc maintained the Brewer Firm's website." *See* Defendants' Supporting Appendix (ECF 80 at A-67, Ex. B "Declaration of Revan McQueen," p. 3 [APP001171]).

Defendants ever agree to provide such services to a competitor who offers the exact same services to Defendants' market.

Moreover, to the extent that Ackerman still insists that three professionals at the Brewer Law Firm have replaced Ackerman as a provider of public relations services, the NRA respectfully submits that only two conclusions can be drawn: either Ackerman's contention – that the Brewer Law Firm is its competitor – is completely false, or alternatively, Ackerman grossly inflated the amount it charged to the NRA, if three people working part-time, on the NRA "account," from the Brewer Law Firm are equally capable of providing the services that nearly 100 Ackerman employees previously provided. [7]

***Third***, the NRA has never proposed a two-tier protective order for this litigation. In support of its misleading statement, Defendants cite to their own inaccurate synopsis of a hearing in the Virginia Circuit Court for the City of Alexandria, during which the NRA proposed such a protective order.[8] Defendants neglect to inform this Court that they had improperly delayed production of documents in that parallel proceeding for months, representing that they needed a protective order before they could produce any such documents. The NRA opted to propose a compromise protective order in the interest of having the Court enter an order which would finally force Defendants to produce the improperly withheld materials. The compromise provision provided that Mr. Brewer and members of the PA team were restricted from viewing "highly confidential" information. However, that compromise was contingent: to the extent that Defendants properly employed the "Highly Confidential" designation, the NRA would have (and still has) no issue with the restriction on access to Highly Confidential materials. But to the extent Defendants simply utilized that second tier of protection improperly, the NRA would ask the Court

---

[7] *See* The NRA's Memorandum of Law in Support of its Alternative Protective Order (ECF 61), p 3.
[8] *See* ECF No. 82 at pp. 3.

to revisit the compromise. Defendants consistently abused the two-tier protective order by marking non-confidential documents with the "Highly Confidential" designation, thus requiring the NRA to subject such documents to different review and storage protocols than the rest of Defendants' production.[9] Defendants stamped thousands of documents "Highly Confidential," including plane tickets[10] and news articles.[11] As a result, the compromise failed. However, Defendants successfully moved to stay the Virginia litigation, thus obstructing the NRA from revisiting the protective orders, as the Court invited it to do.

## ARGUMENTS

### A.   The Merits of Disqualification Should Not Be Addressed in This Motion

Similar to Defendants' recent filings, they spend a majority of their Response arguing that Mr. Brewer and BAC should be disqualified from this action. At every juncture, Defendants attempt to litigate the merits of their pending Motion to Disqualify, despite the fact that the NRA has not had a meaningful opportunity to respond to the motion, and the NRA's formal response is not due until April 27, 2020.[12] The cornerstone of Defendants' argument is that they provided "substantial evidence demonstrating Brewer's role as principal actor and tortfeasor in the underlying dispute."[13] In fact, no such "evidence" is set forth anywhere. Argument and innuendo are not "evidence." Moreover, far from "demonstrating" that Brewer is a tortfeasor, Defendants have not asserted a tort claim against the Brewer Law Firm. As a result, any further argument related to disqualification should be made within the purview of the Motion to Disqualify, not here.

---

[9] *See* Letter, dated September 16, 2019, from Robert Cox to David Schertler, attached as Ex. 1 to the Declaration of Michael Collins (the "Collins Decl.), submitted herewith; *see also* Letter, dated January 22, 2020, from Robert Cox to David Schertler, attached as Ex. 2 to the Collins Decl.
[10] Defendants' Response to Plaintiff's Motion to Compel, ECF no. 51, at ¶ 15.
[11] *Id.*
[12] *See* ECF Nos. 78, 94, 95.
[13] See ECF No. 82 at p. 2.

1. **Allegations Related To The Brewer Firm's PA Team are Baseless and Unfounded**

Defendants continue to manufacture baseless allegations that the Brewer Firm's four-person PA team is a competitor to Ackerman, in order to justify the inclusion of their desired "Highly Confidential" designation in the Protective Order, and support their claims for disqualification. Once again, Defendants offer no facts in support of their claims, but rather rely on an inapposite hypothetical scenario involving Apple's Steve Jobs and a fictitious son-in-law who attempts to steal Mr. Jobs' Apple Watch concept, in order to illustrate the alleged competition they claim exists. As counsel for Defendants is aware, it is not uncommon for law firms to assist their clients with legal communications on matters of public concern, and attorneys from Dorsey have even done so in the past.[14]

B. **The Decisions of the Virginia Court Are Not Binding in This Case**

As described above, the only reason the NRA agreed to the terms of the Protective Order in Virginia was to facilitate production of documents that Defendants improperly withheld. In that action, the NRA proposed that Mr. Brewer and the PR unit be walled-off, as a good faith gesture, after Defendants refused to participate in discovery. The Virginia Circuit Court itself noted that the entry of a protective order that restricted Mr. Brewer's and the PA team's review of documents was not a final disposition of the matter, but represented an attempt at compromise that was subject to the Court's later review:

> THE COURT: . . . I'm going to grant the
> protective order with regard to Mr. Brewer,
> and if you believe that, at some point, that
> that has an impact on your ability to
> litigate this case, then you can come back to

---

[14] On February 26, 2020, Dorsey and Whitney attorney Steven Wells spoke to the SC Times/USA Today and made a statement on behalf of his client. *See* "Minnesota Supreme Court enters split decision in defamation lawsuit," available at https://www.sctimes.com/story/news/local/2020/02/26/minnesota-supreme-court-enters-split-decision-defamation-lawsuit/3990330002/.

>this Court and ask the Court to reconsider.
>But, at this stage, Mr. Brewer will be walled
>off from any -- any involvement in the case.[15]

For the purposes of the current dispute, it is irrelevant that the "NRA offered to restrict" the PA team and Mr. Brewer from viewing the "Highly Confidential" materials.[16] Furthermore, even with the restricted access, Defendants failed to comply with the Virginia court's order. Defendants cannot now claim that an order of the Virginia Court would be undermined by entry of a one-tier protective order, even though the Virginia Court invited the NRA to revisit the initial two-tier order, and Defendants stayed that litigation before the NRA could do so. Discovery continues to be delayed in this matter, and without a new approach adopted by this Court, Defendants may continue to employ dilatory tactics to prevent the NRA from accessing documents to which they are rightfully entitled.

C.  **AMc Misunderstands The NRA's Alternative Proposed Protective Order**

In their Response, Defendants exhibit a fundamental misunderstanding of the purpose and structure of the NRA's Proposed Protective Order. Defendants incorrectly state that, "the NRA's counsel proposed a two-tier protective order" that would restrict Mr. Brewer and the PA unit from accessing "Highly Confidential" discovery information.[17] Defendants appear to misrepresent a proposal of *approximately nine months ago, in a different matter in a distinct jurisdiction* (the Virginia Circuit Court for the City of Alexandria), as a proposal set forth in the instant litigation. The NRA has proposed no such two-tier protective order to this Court.

---

[15] *See* ECF 81 at A-58 at Tr. Hearing, Aug 28, 2019 at 42: 1-10 [APP000970].
[16] Defendants' Response to Plaintiff's Motion to Compel, ECF no. 51, at ¶ 30.
[17] *See* ECF No. 82 at p. 3.

7

1. **A One-Tier Protective Order Is Necessary to Protect the NRA's Interests**

To date, Defendants still offer no proof in support of their contention that a "Highly Confidential" designation is required to protect against disclosure of information which would cause harm to their financial and competitive position.[18] The United States District Court for the Middle District of Louisiana stated that, the showing of harm "requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm."[19] Defendants have yet to provide any support that any harm occurred in prior filings, and also fail to do so in their Response. Further, Defendants have failed to show that good cause exists to enter a two-tier protective order, as is routinely required by courts in this Circuit.[20] As such, the NRA should not be required to impose greater protections that the law requires, and their "Confidential" designation and one-tier Protective Order should be adopted by this Court.

2. **A One-Tier Protective Order is Necessary to Adequately Address the Complexity of the Claims at Issue**

Entry of a one-tier protective order will ensure that the NRA is not prejudiced in its ability to adequately litigate the claims at issue. The events that transpired in the Virginia action have shown that Defendants have no intention of permitting the NRA to access the documents that they are entitled to under the Services Agreement, rather if a two-tier protective order is entered,

---

[18] *Id.* at pp. 6.
[19] *Util. Sys. Servs., Inc. v. Careguard Warranty Servs., Inc.*, No. CV 16-505-SDD-EWD, 2017 WL 3713472, at *5 (M.D. La. Aug. 14, 2017).
[20] *Frees, Inc. v. McMillian*, No. CIV.A.05 1979, 2007 WL 184889, at *4 (W.D. La. Jan. 22, 2007), aff'd, No. CIV.A. 05-1979, 2007 WL 1308388 (W.D. La. May 1, 2007) (denying inclusion of "attorneys-eyes-only" protection in proposed protective order because the defendant failed to show good cause for the protective order containing the two-tiered scheme); *Anzures v. Prologis Texas I LLC*, 300 F.R.D. 316, 317 (W.D. Tex. 2012) (denying entry of protective order where party set forth only general and conclusory objections and stereotyped statements, holding that such fails to establish that good cause and specific need for protection exists); *United States ex Rel. Wright v. AGIP*, No. 5:03CV264, WL 11348371 *3 (E.D. Tex. 2008) (denying entry of protective order with two-tiered confidentiality mechanism, holding that plaintiff failed to demonstrate any significant harm that would flow from its disclosure of information).

Defendants may continue to abuse the "Highly Confidential" designation, as they have done in the past. Defendants began producing documents with improper "Highly Confidential" designations in September 2019. It was not until February 21, 2020, after months of objecting to Defendants' "Highly Confidential" designations, that Defendants finally agreed to reassess their designations, and provided a list of 530 documents they demoted from "Highly Confidential" to "Confidential."[21] There remain more than 9,000 documents that are still designated "Highly Confidential," the majority of which do not reveal any sensitive information, and are being wrongfully withheld from the NRA. In order to adequately investigate the complex claims at issue, the NRA must be able to review the full universe of information available to it, not information hand-picked by Defendants. Therefore, a one-tier Protective Order is required, as it will ensure the NRA can finally move forward with properly conducting discovery.

## II.
## CONCLUSION

For all the reasons stated above, the NRA respectfully requests the Court grant the NRA's Motion for Entry of An Alternative Protective Order in its entirety, and grant the NRA all other appropriate relief.

---

[21] *See* Letter, dated February 21, 2020, from David Dickieson to Robert Cox, attached as Ex. 3 to the Collins Decl.

Dated:  April 15, 2020          Respectfully submitted,

**BREWER, ATTORNEYS & COUNSELORS**

By:    */s/ Michael J. Collins*
Michael J. Collins, Esq.
State Bar No. 00785493
mjc@brewerattorneys.com
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR THE PLAINTIFF AND COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA AND THIRD-PARTY DEFENDANT WAYNE LAPIERRE**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 15th day of April 2020.

*/s/ Michael J. Collins*
Michael J. Collins

4847-9902-8666.9
2277-08