## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § | |
| | § | |
| | § | |
| **Plaintiff and Counter-Defendant** | § | |
| | § | |
| **and** | § | |
| | § | |
| **WAYNE LAPIERRE,** | § | |
| | § | |
| **Third-Party Defendant,** | § | |
| | § | **Civil Action No. 3:19-cv-02074-G** |
| **v.** | § | |
| | § | |
| **ACKERMAN MCQUEEN, INC.,** | § | |
| | § | |
| **Defendant and Counter-Plaintiff,** | § | |
| | § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL
## <u>(WILLIAM A. BREWER III AND BREWER ATTORNEYS & COUNSELORS)</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

SUMMARY ............................................................................................................................... 1

BACKGROUND FACTS ........................................................................................................... 2

    A.    Brewer's extensive personal and professional history with AMc. ......................... 2

        i.    Brewer's family history with the owners of AMc. ..................................... 2

        ii.    Brewer's competition with AMc. ............................................................... 3

    B.    Brewer's takeover of the NRA. ............................................................................ 4

        i.    Initially hired for a single purpose, Brewer's current scope is unbounded. .................................................................................................. 4

        ii.    NRA President North tries—and fails—to have the NRA investigate Brewer's duties and invoices. ............................................................... 5

        iii.    Brewer retaliates against North and others. .............................................. 7

    C.    Brewer's intentional exploitation of his family connection with the McQueens. ....................................................................................................... 10

        i.    Brewer's attacks escalate after he learns that his father-in-law has cancer. ...................................................................................................... 10

        ii.    Brewer uses family members to communicate with A. McQueen and R. McQueen. ........................................................................................... 14

    D.    Brewer's prior ethical conflicts and court sanctions. ............................................ 15

ARGUMENTS AND AUTHORITIES ...................................................................................... 15

    A.    Standards for disqualification in the Fifth Circuit. .............................................. 15

    B.    Brewer's personal interests violate the conflict-of-interest rules. ......................... 17

    C.    Brewer is violating the Lawyer-Witness Rule. .................................................... 19

        i.    Brewer will provide testimony necessary to both sides' claims. ............... 20

        ii.    Defendants are suffering actual prejudice. ............................................... 21

        iii.    Any burden to the NRA is outweighed by public policy considerations. .......................................................................................... 22

    D.    Brewer is using falsehoods and publicity to sway the proceedings. ...................... 24

    E.    Impropriety occurred, raising public suspicion. .................................................. 25

CONCLUSION .......................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Atasi Corp. v. Seagate Tech.*, 847 F.2d 826 (Fed. Cir. 1988) ........................................................ 22

*Brewer v. Lennox Hearth Prods., LLC*, 546 S.W.3d 866 (Tex. App.—Amarillo 2018, pet. granted) ................................................................................................................... 17

*Camoco, LLC v. Leyva*, 2019 U.S. Dist. LEXIS 200601 (W.D. Tex. Nov. 19, 2019) ................ 23

*Dondi Props. Corp. v. Commerce Sav. & Loan Assoc.*, 121 F.R.D. 284 (N.D. Tex. 1988).. 16, 17, 22, 23

*Estate of Andrews v. U.S.*, 804 F. Supp. 820 (E.D. Va. 1992)............................................. 22, 23

*Hill v. Hunt*, No. 3:07-CV-02020-O, 2008 U.S. Dist. LEXIS 68925 (N.D. Tex. Sep. 4, 2008) . 16, 23, 25

*Honeywell Int'l Inc. v. Philips Lumileds Lighting Co.*, No. 2:07-CV-463-CE, 2009 U.S. Dist. LEXIS 12496 (E.D. Tex. Jan. 6, 2009)....................................................................... 25

*In re Am. Airlines, Inc.*, 972 F.2d 605 (5th Cir. 1992)........................................................ 16, 23

*In re Guidry*, 316 S.W.3d 729 (Tex. App.—Houston [14th Dist.] 2010, no pet.)................. 21, 22

*Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742 (5th Cir. 1980)........................................... 16

*Orchestratehr, Inc. v. Trombetta*, 178 F. Supp. 3d 476 (N.D. Tex. 2016) .................................. 23

*Reliance Capital, Inc. v. G.R. Hmaidan, Inc.*, No. 14-05-00061-CV, 2006 Tex. App. LEXIS 4411 (Tex. App.—Houston [14th Dist.] May 18, 2006, pet. denied)...................................... 20

*Shelton v. Hess*, 599 F. Supp. 905 (S.D. Tex. 1984)...................................................................... 22

*Tierra Tech de Mex., S.A. de C.V. v. Purvis Equip. Corp.*, No. 3:15-CV-4044-G, 2016 U.S. Dist. LEXIS 137893 (N.D. Tex. Oct. 4, 2016)................................................................... 16

*United Pacific Ins. Co. v. Zardenetta*, 661 S.W.2d 244 (Tex. App.—San Antonio 1983, no writ) ............................................................................................................................. 1, 23

**Rules**

L. R. 83.8 ............................................................................................................................. 16

Model R. 1.7 ................................................................................................................... 17, 19

Model R. 3.6 ............................................................................................................................. 24

MODEL R. 3.7 ........................................................................................................................... 19

MODEL R. 4.1 ........................................................................................................................... 25

MODEL R. 4.2 ........................................................................................................................... 23

MODEL R. 4.4 ........................................................................................................................... 23

TEX. R. 1.06 ...................................................................................................................... 17, 19

TEX. R. 1.15 ........................................................................................................................... 19

Tex. R. 3.07 ........................................................................................................................... 24

TEX. R. 3.08 ..................................................................................................................... 19, 22

TEX. R. 4.01 ........................................................................................................................... 25

TEX. R. 4.03 ........................................................................................................................... 25

Ackerman McQueen, Inc. ("*AMc*"), Mercury Group, Inc., Henry Martin, William Winkler, Melanie Montgomery, and Jesse Greenberg (collectively, "*Defendants*"), file this *Brief in Support of Defendants' Motion to Disqualify Plaintiff's Counsel (William A. Brewer III and Brewer Attorneys & Counselors)* (ECF 78).

## SUMMARY

Since his engagement by the National Rifle Association of America ("*NRA*") in March 2018, William A. Brewer III ("*Brewer*") and his law firm, Brewer Attorneys & Counselors (the "*Brewer Firm*"), have skirted the edge of disqualifying conflicts and conduct.  Recently revealed facts and developments have now ripened the issue to the point where disqualification is required.[1]

The Circuit Court of the City of Alexandria, Virginia (the "*Virginia Court*") has already recognized Brewer's professional conflict as a business competitor of AMc.  However, no court has yet addressed the personal conflicts and ethical issues implicated by Brewer's family connection with AMc's owners and his intentional devastation, through vexatious litigation and libel, of his then-dying father-in-law and his company.  As has been the longstanding rule in Texas:

> When the client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility clash, the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount.  The client's recognizably important right to counsel of his choice must yield … to considerations of ethics which run to the very integrity of the judicial process.[2]

Brewer and his firm are violating several Texas Disciplinary Rules of Professional Conduct and Model Rules of Professional Conduct by directly competing with AMc, leaking false and disparaging information about AMc to the press, side-stepping the attorney-client privilege, and

---

[1] Indeed, the Brewer Firm acknowledged that, if AMc "discover[s] facts during the course of discovery" proving an ethical conflict, "it would be appropriate for a motion to disqualify" and the firm "will consider withdrawing."  **Ex. A-1** at 11:9-18 [APP 22] (Jun. 26, 2019 Hr'g Tr.).

[2] *United Pacific Ins. Co. v. Zardenetta*, 661 S.W.2d 244, 248 (Tex. App.—San Antonio 1983, no writ).

communicating with a represented party. Brewer and his firm's actions now require that this Court exercise its authority to disqualify them from representing the NRA and Wayne LaPierre ("**LaPierre**"), and from having any involvement in this case, except as anticipated witnesses.[3]

## BACKGROUND FACTS

**A.    Brewer's extensive personal and professional history with AMc.**

1.      This lawsuit presents scenarios uncommon among traditional arms-length litigants and counsel. *First*, Brewer has a multi-decade, animus-filled family relationship with the owners of AMc. *Second*, his firm is a business competitor of AMc in the public-relations ("**PR**") market. *Third*, Brewer is a tortfeasor engaging in wrongful conduct as a primary actor in the underlying dispute, including spearheading the termination of the Services Agreement between the parties.

### i.    Brewer's family history with the owners of AMc.

2.      Brewer is the son-in-law of the late Angus McQueen ("**A. McQueen**"), long-time patriarch and CEO of AMc, and the brother-in-law of Revan McQueen ("**R. McQueen**"), current CEO of AMc, having married A. McQueen's daughter and R. McQueen's sister, Skye McQueen Brewer.[4] The Brewer Firm was also a client of AMc.[5]

3.      For over 20 years, Brewer has had a strained relationship and resentful, disrespectful attitude toward A. McQueen and other McQueen family members.[6] In fact, his personal history of animosity with the McQueen family, his anti-gun political sentiments, and his

---

[3] Although Brewer has not made a formal appearance, it is undisputed that he is the NRA's lead litigation counsel in this case. *See, i.e.*, ECF 61 at 1 ("The dispute centers on Defendants' efforts to attempt to disqualify indirectly **the NRA's lead litigation counsel, Mr. William Brewer III**…") (emphasis added).
[4] **Ex. B** (R. McQueen Affidavit) ¶ 5 [APP 1171].
[5] **Ex. B** ¶ 8 [APP 1171] (The Brewer Firm was an AMc client as recently as December 2019.).
[6] **Ex. B** ¶¶ 7, 23 [APP 1171, 1175]; *see also* **Ex. A-2** at 188:13-22 [APP 104], 213:8-214:12 [APP 111], 242:11-12 [APP 118], 432:3-18 [APP 165], 434:9-19 [APP 166].

parade of prior ethical violations raised numerous eyebrows among NRA officials.[7] Brewer was often disrespectful to the McQueen family, voicing frequent professional criticisms about AMc, slow-paying for the services his law firm received from AMc, and vocalizing his disdain for AMc's relationship with the NRA due to his own political sentiments against Second Amendment rights.[8] Indeed, Brewer has had 20 years, as a family member and AMc client, gaining key insight into AMc's business strategy and the personal lives of the McQueen family.[9]

### ii. Brewer's competition with AMc.

4.      Unlike typical law firms, the Brewer Firm actively promotes its ability to offer crisis-management and PR services to clients.[10] According to his recent article, Brewer boasts of his ability to try cases in the press ("in the court of public opinion") instead of the courtroom, and advocates that PR services should be performed by law firms instead of companies like AMc.[11]

5.      Brewer positioned his law firm as a direct competitor of AMc, supplanting it shortly after his retention by the NRA, starting by drafting press releases.[12] The Brewer Firm provides services to the NRA that AMc provided exclusively for nearly 40 years, including speech-writing, crisis management, media relations, press releases, website content, and general PR advice.[13]

---

[7] **Ex. B** ¶¶ 7, 23 [APP 1171, 1175]; **Ex. A-3** at 128:15-129:8 [APP 210-211], 141:3-18 [APP 214], 152:9-153:16 [APP 216-217]; **Ex. A-4** [APP 249]; **Ex. A-5** [APP 254-257]; **Ex. A-2** at 188:13-22 [APP 104], 213:8-214:12 [APP 111], 242:11-12 [APP 118], 432:3-18 [APP 165], 434:9-19 [APP 166]; **Ex. A-6** at 374:7-376:18 [APP 352] (███████████████████████); *The NRA | EP1: Let Loose the Dogs of War*, GANGSTER CAPITALISM (Mar. 25, 2020),  https://shows.cadence13.com/podcast/gangster-capitalism/episodes/986fb1de-ce23-4d73-a40e-7903cca52fab ("confounding" that Brewer "instigated a war with [AMc]," considering he is married to Skye McQueen).
[8] **Ex. B** ¶¶ 7, 9 [APP 1171-72].
[9] **Ex. B** ¶ 6 [APP 1171].
[10] https://www.brewerattorneys.com/the-art-of-advocacy (the firm "position[s] [its] clients to prevail both within and outside the courtroom" and "pioneered … an Issues & Crisis Management group"); **Ex. A-7** [APP 357-361].
[11] **Ex. A-7** [APP 357] (excerpts from Brewer, *Advocacy as Art*).
[12] *See* **Appendix A**; **Ex. A-8** [APP 362] (Apr. 5, 2018 Email from Travis Carter); **Ex. A-9** [APP 365-367] (Apr. 13, 2018 Email from Brewer); **Ex. A-10** [APP 368] (Jun. 15, 2018 Email from Powell to Lacey (Duffy) Cremer).
[13] **Ex. B** ¶ 3 [APP 1170] (describing services AMc provided to the NRA); **Ex. A-66** [APP 1163-1167] (Brewer recent statements on behalf of the NRA regarding COVID-19 and the NRA's lack of fundraising) **Ex. A-11** [APP 372-374] (Aug. 6, 2018 Email from Carter to Andrew Arulanandam); *see* **Ex. A-12** [APP 376-378] (Aug. 17, 2018 Email from Carter to Arulanandam); **Ex. A-13** at 28:1-20 [APP 386], 38:4-17 [APP 389], 48:2-50:9 [APP 391-392], 59:23-60:10 [APP 394], 61:7-62:10 [APP 395], 63:20-65:1 [APP 395-396], 95:11-96:21 [APP 403]; **Ex. A-2** at 284:8-18 [APP

## B.   Brewer's takeover of the NRA.

6.     Since being retained by the NRA in 2018, Brewer and his firm appear to have overtaken all legal and PR decisions within the NRA, allowing the firm to extract exorbitant legal fees along the way.[14] ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ [15]

### i.   Initially hired for a single purpose, Brewer's current scope is unbounded.

7.     In March 2018, the NRA retained the Brewer Firm to assist with litigation against Lockton Affinity Series of Lockton Affinity, LLC ("***Lockton***") related to the NRA's failed insurance initiative, Carry Guard, a program that offered insurance for the use of firearms in self-defense.[16] AMc was instructed, and agreed, to participate in the NRA's Brewer-led internal Carry Guard investigation.[17] Despite the initially limited scope of his retention regarding Lockton, Brewer's influence and control over LaPierre quickly spread beyond the Lockton matter as he convinced LaPierre that only he could keep him out of jail as a result of certain abuses of NRA funds.[18] The New York Attorney General was already beginning to investigate the NRA and

---

119]; **Ex. A-14** [APP 441-442] (Servs. Agm't); **Ex. A-6** at 175:11-17 [APP 302] (████████████
█████████); **Ex. A-28** at 321:3-6 [APP 593]; **Ex. A-62** at 41:16-23 [APP 1044], 43:5-46:10 [APP 1044-1045] (█
████), 47:20-48:18 [APP 1045], 88:2-89:8 [APP 1055-1056]; **Appendix A**.
[14] *Id.*; **Ex. A-2** at 255:15-18 [APP 121], 343:10-344:8 [APP 143], 381:18-383:20 [APP 153] (███████████
████████████████████████████████████████); **Ex. A-3** at 169:10-170:7 [APP 221], 172:10-
24 [APP 221]; **Ex. A-15** [APP 452-454]; **Ex. A-16** at 3 [APP 457] (Mar. 31, 2019 Ltr. from North to LaPierre)
(███████████████████████████████); **Ex. A-65** [APP 1130] (NRA Board Meeting Presentation to Public Affairs Committee).
[15] **Ex. A-3** at 215:6-13 [APP 232], 223:10-224:25 [APP 234], 232:17-233:6 [APP 236-237], 238:10-240:2 [APP 238],
235:3-13 [APP 237]; **Ex. A-2** at 257:3-12 [APP 122], 292:4-15 [APP 130], 314:12-315:7 [APP 136].
[16] **Ex. A-2** at 284:1-7 [APP 128], 434:9-19 [APP 166] (███████████████████████████████████);
see ECF 1, *National Rifle Association of America v. Lockton Affinity Series of Lockton Affinity, LLC, et al*, Case No.
1:18-cv-639, in the United States District Court for the Eastern District of Virginia.
[17] **Ex. A-17** [APP 460] (Mar. 28, 2018 Email Frazer to AMc); **Ex. A-18** [APP 461] (Apr. 3, 2018 Email from Brewer).
[18] **Ex. B** ¶ 16 [APP 1173]; **Ex. A-2** at 343:10-344:8 [APP 143].

---

LaPierre.[19]  LaPierre permitted Brewer and his firm to reexamine all of the NRA's vendor relationships, ostensibly to ensure they were in compliance with New York law.[20]  Brewer used this opportunity to begin his attack on AMc and continue to grow his influence within the NRA.[21]

8.  Without consulting the Board of Directors or obtaining approval required by the NRA bylaws, LaPierre authorized Brewer to begin a lawsuit campaign.[22]  Soon, Brewer became chief legal provider, earning fees of roughly $100,000 per day ($1.5 to $3 million per month).[23]  Upon information and belief, the NRA paid the Brewer Firm over $54 million in just two years.

### ii. NRA President North tries—and fails—to have the NRA investigate Brewer's duties and invoices.

9.  Shortly after Brewer was retained, at LaPierre's direct urging, longtime NRA board member Lieutenant Colonel Oliver North ("*North*") agreed to become NRA President, foregoing a lucrative and high-profile position at Fox News.[24]  Because the President's position is unpaid, LaPierre arranged for North to host an NRATV program, thereby replacing his former income and benefits as an AMc employee.[25]  The NRA formally approved this arrangement by obtaining disclosure of the contract and audit committee approval.[26]  Brewer and numerous other NRA

---

[19] *EP1*, GANGSTER CAPITALISM; *The NRA | EP2: A Clear Crisis*, GANGSTER CAPITALISM (Mar. 25, 2020), https://shows.cadence13.com/podcast/gangster-capitalism/episodes/21414f17-5229-4b7c-919a-223e25fba333.
[20] **Ex. A-19** [APP 462-476]
[21] **Ex. A-2** 187:16-188:12 [APP 104], 236:6-237:14 [APP 116-117], 242:11-22 [APP 118], 255:15-256:4 [APP 121].
[22] **Ex. A-3** at 150:5-151:6 [APP 216], 153:17-154:14 [APP 217]; **Ex. A-20** [APP 477-478] (Letter challenging whether Brewer was properly retained); **Ex. A-62** at 71:23-72:18 [APP 1051] ("[T]he Board controls everything in the organization), 250:8-10 [APP 1096], 279:15-19 [APP 1103].
[23] **Ex. A-3** at 169:10-170:7 [APP 221], 180:22-182:4 [APP 223-224]; **Exs. A-16** [APP 455-459], **A-21** [APP 479-480] **& A-22** [APP 481-489] (███████████████████████████); *EP2*, GANGSTER CAPITALISM (discussing Ex. A-22).
[24] **Ex. A-3** at 17:17-19 [APP 183], 19:7-20:11 [APP 183], 25:2-27:6 [APP 185], 180:6-14 [APP 223]; **Ex. A-62** at 117:16-118:12 [APP 1063]; **Ex. A-2** at 123:11-124:19 [APP 88], 125:1-11 [APP 89], 129:1-12 [APP 90].
[25] **Ex. A-3** at 36:12-37:17 [APP 187-188], 40:18-42:1 [APP 188-189], 43:25-45:3 [APP 189-190], 46:10-23 [APP 190]; **Ex. A-2** at 139:20-140:22 [APP 92], 144:13-146:1 [APP 93-94], 149:1-150:15 [APP 95], 151:7-153:3 [APP 95-96], 364:15-365:2 [APP 148-149]; **Ex. A-62** at 121:21-123:19 [APP 1064].
[26] **Ex. A-2** at 167:5-17 [APP 99], 171:5-9 [APP 100], 258:17-19 [APP 122].

attorneys were present at this meeting.[27]

10. 

11.     As North began investigating Brewer, more information surfaced that caused North

to believe that Brewer was harming the NRA.  For example, Brewer was impeding the work of

NRA accountants, grossly exaggerating the NRA's financial woes by charging it huge legal fees,

creating duplicative billing, prioritizing payments to his firm over every other NRA vendor by

interfering with accounts payable, monitoring NRA employees' email accounts, and using threats

---

[27] **Ex. A-23** at 1 [APP 490] (Sep. 2018 audit committee notes); **Ex. A-6** at 158:9-165:19 [APP 298-300].

[28] **Ex. A-3** at 91:6-19 [APP 201], 107:12-17 [APP 205], 182:14-183:14 [APP 224], 192:20-193:25 [APP 226-227], 114:22-115:18 [APP 207]; **Ex. A-2** at 123:11-124:19 [APP 88]; *EP2*, GANGSTER CAPITALISM ("There were serious concerns, in part because the NRA was in a cash crunch, about the money that was going out the door to Bill Brewer's law firm.").

[29] **Ex. A-3** at 107:8-110:7 [APP 205-206], 128:20-130:7 [APP 210-211], 135:6-137:14 [APP 212-213], 141:3-18 [APP 214], 152:9-153:16 [APP 216-217], 169:23-170:7 [APP 221], 181:7-183:14 [APP 224], 184:17-186:17 [APP 224-225].

[30] **Ex. A-24** [APP 497-498] (*NRA Scores Minor Victories*) ("The relationship between the firm, the NRA, and Ackerman McQueen is an odd one: Bill Brewer, the head of the law firm, is the brother-in-law of Ackerman McQueen's CEO, Revan McQueen. … **[L]awyers for** both **the NRA** and Ackerman McQueen **said in court that Brewer could be a witness**…") (emphasis added); **Ex. A-25** [APP 499-502]; **Ex. A-26** [APP 503-509]; **Ex. A-27** [APP 510-511]; **Ex. A-56** [APP 911-917]; **Ex. A-57** [APP 918-927]; *see generally* GANGSTER CAPITALISM.

[31] **Ex. A-3** at 107:8-110:7 [APP 205-206], 129:19-130:7 [APP 211], 135:6-137:14 [APP 212-213], 141:3-18 [APP 214], 157:5-12 [APP 218], 169:13-172:9 [APP 221], 184:23-186:17 [APP 224-225], 206:7-207:9 [APP 230].

to intimidate the NRA staff who processed his bills.[32] ████████████████████

████████████████████[33] ████████████████████████

████████████████████████████████████████[34]

12.    North and other NRA officials sent letters to LaPierre and Brewer requesting more information about the scope of his services and asking him to submit engagement letters that were compliant with the NRA bylaws—the *same standards* Brewer was enforcing for all other vendors.[35] These letters also sought copies of Brewer's invoices to better evaluate the details of the work he was performing.[36] Despite repeated requests, however, Brewer and LaPierre told North that Brewer's bills were confidential and instructed North to stand down.[37]

### iii.    **Brewer retaliates against North and others.**

13.    On April 12, 2019, the NRA filed its first lawsuit against AMc in Virginia state court falsely alleging that AMc withheld documents from the NRA, including North's AMc contract.[38] ████████████████████████████

████████████████████████████████[39] This lawsuit was disturbing for numerous reasons, including that the NRA already had North's contract and

---

[32] **Ex. A-67** (Cummins Memo) [APP 1168]; **Ex. A-27** [APP 510-511]; **Ex. A-56** [APP 911-917] (*New Documents Raise Ethical and Billing Concerns about the NRA's Outside Counsel*); **Ex. A-2** at 358:20-359:8 [APP 147].
[33] **Ex. A-3** at 150:5-151:6 [APP 216], 153:17-154:14 [APP 217]; 167:25-169:12 [APP 220-221]; **Ex. A-20** [APP 477]; **Ex. A-28** at 259:14-262:5 [APP 577-578], 320:6-321:6 [APP 592-593].
[34] **Ex. A-2** at 292:4-15 [APP 130]; **Ex. A-3** at 182:5-183:14 [APP 224], 208:22-209:15 [APP 230-231].
[35] **Ex. A-29** [APP 608-609] (Mar. 22, 2019 Ltr. from North to Brewer); **Ex. A-4** [APP 249] (Mar. 31, 2019 Ltr. from North to LaPierre); **Ex. A-5** [APP 254] (Apr. 8, 2019 Ltr. from North to LaPierre); **Ex. A-2** at 292:4-15 [APP 130]; **Ex. A-3** at 172:10-174:10 [APP 221-222], 184:17-186:17 [APP 224-225] ██████████████████

████████████████████████████ 211:1-16 [APP 231]; *EP1*, GANGSTER CAPITALISM (North "gave Brewer a taste of his own medicine.").
[36] *Id.*
[37] **Ex. A-3** at 153:7-16 [APP 217], 169:13-22 [APP 221], 204:20-206:6 [APP 229-230], 245:12-16 [APP 240].
[38] **Ex. A-30** [APP 610-625] (Original Complaint, *NRA v. AMc, et al.*, Circuit Court of Virginia, Cause CL19001757).
[39] **Ex. A-2** at 231:13-232:18 [APP 115].

was well aware of its terms *before* the lawsuit was filed,[40] and that neither North nor the Board had approved or even been informed of the lawsuit.[41]  To address Brewer's hostile takeover of the NRA, North formed an emergency committee for an independent audit of Brewer's invoices.[42]

14. 
[43]  The call had the opposite of North's intended effect.

15.     To deflect attention and further scrutiny of his own invoices, Brewer invented a false narrative about this call, claiming that North contacted Hallow on behalf of AMc to "extort" LaPierre, threatening to release damaging information to the press unless LaPierre immediately resigned.[44]                                                                  [45]

[46]

16.     Nevertheless, Brewer manufactured evidentiary support for his "extortion" narrative.

[40] **Ex. A-6** at 251:10-257:8 [APP 321-323], 260:9-19 [APP 323]; **Ex. A-3** at 36:12-37:17 [APP 187-188], 40:18-42:25 [APP 188-189], 43:25-47:6 [APP 189-190], 102:14-103:19 [APP 204], 197:14-202:4 [APP 228-229].
[41] **Ex. A-3** at 199:22-201:22 [APP 228-229]; **Ex. A-6** at 273:16-274:9 [APP 327]; **Ex. A-62** at 71:23-72:18 [APP 1051], 250:8-10 [APP 1096], 279:15-19 [APP 1103].
[42] **Ex. A-3** at 237:15-239:6 [APP 238], 170:8-172:9 [APP 221]; **Ex. A-2** at 107:10-108:2 [APP 84].
[43] **Ex. A-3** at 227:11-234:21 [APP 235-237]; **Ex. A-2** at 333:1-17 [APP 141].
[44] **Ex. A-3** at 234:7-237:2 [APP 237-238]; **Ex. A-2** at 395:11-396:15 [APP 156]; **Ex. A-31** [APP 626]; **Ex. A-32** [APP 627-629] (Apr. 25, 2019 Ltr. from LaPierre to the Board); **Ex. A-62** at 64:2-12 [APP 1049] (knowledge from Brewer).
[45] **Ex. A-3 at** 234:22-235:1 [APP 237], 235:23-237:2 [APP 237-238].
[46] **Ex. A-33** at 183:1-10 [APP 676], 202:6-9 [APP 681], 207:8-13 [APP 682]; **Ex. A-28** at 182:4-183:1 [APP 558].



18.     Consistent with Brewer's PR-driven litigation style, the very next day, this "confidential" board letter was leaked to the press and cited by the Wall Street Journal.[52]  Brewer was quoted attacking North (the person attempting to have Brewer's bills audited)[53] and then was quoted in a subsequent article defaming AMc (the company Brewer was seeking to destroy):

> It is not surprising that Ackerman now attempts to escape the consequences of its own conduct . . . When confronted with inquiries about its services and billing records, Ackerman not only failed to cooperate—*it sponsored a failed coup attempt to unseat Wayne LaPierre*.[54]

By this point in time, although the NRA and LaPierre jointly bear responsibility, Brewer and his law firm have caused a wholly false lawsuit to be filed and have libeled AMc in furtherance of

---

[47] **Ex. A-33** at 205:19-208:19 [APP 682]; **Ex. A-34** [APP 685] (Apr. 24, 2019 Email from Hallow to North).
[48] **Ex. A-33** at 206:9-208:19 [APP 682].
[49] **Ex. A-32** [APP 627-629]; **Ex. A-33** at 189:2-9 [APP 678].
[50] **Ex. A-28** at 191:22-201:14 [APP 560-563]; **Ex. A-35** [APP 686-690] (draft of Meadows speech).
[51] **Ex. A-28** at 191:22-201:14 [APP 560-563].
[52] **Ex. A-36** [APP 691-694] (*NRA's Wayne LaPierre Says He Is Being Extorted, Pressured to Resign*).
[53] *Id.* ("[M]any of the issues raised by Col. North have been the subject of review and investigation by the NRA since early last year.  In our review, the items involving Mr. LaPierre may reflect a misinformed view of his and the NRA's commitment to good governance.").
[54] *See, e.g.*, **Ex. A-31** [APP 626] (emphasis added).

Brewer's goals to take AMc's business and torment his in-laws.

19.    Unsurprisingly, Brewer's defamatory narrative resulted in North not getting re-nominated as President, despite being one of the most well regarded NRA members, historically receiving more votes than anyone to serve on its board.[55]  But North was not the only one expelled by Brewer.  Numerous fiduciaries, including board members, employees, and counsel such as [56]                                                                   , have been accused of engaging in a conspiracy and have been fired or otherwise forced out of the NRA under pressure.[57]  As NRA Board counsel Hart aptly testified, ███████████████████

███████████████████[58]

## C.    Brewer's intentional exploitation of his family connection with the McQueens.

### i.    Brewer's attacks escalate after he learns that his father-in-law has cancer.

20.    A. McQueen was diagnosed with cancer on June 1, 2018.[59]  Thereafter, Brewer's approach with AMc changed from alleged neutrality to increasing hostility and direct, false accusations of wrongdoing.[60]  Soon after the diagnosis, Brewer demanded copies of documents from AMc, which the NRA had a right to review but not copy; demanded non-contractual *post hoc* justifications for AMc's billing, which had long-since been preapproved by the NRA and LaPierre and audited by the NRA; requested interviews of AMc personnel not authorized by the Services Agreement; and insisted on conducting three separate but repetitive audits in short succession.[61]

---

[55] **Ex. 3** at 25:21-26:5 [APP 185].
[56] ████████████████████████████████████████████████  *See* **Ex. A-2** at 221:9-222:7 [APP 113], 224:6-18 [APP 113].
[57] **Ex. A-2** at 117:7-118:12 [APP 87], 341:9-342:1 [APP 143], 395:11-397:8 [APP 156-157] ; **Ex. A-37** at 240:5-241:1 [APP 755-756]; **Ex. A-6** at 137:22-139:14 [APP 293]; **Ex. A-3** at 215:9-13 [APP 232], 223:10-224:25 [APP 234], 232:17-233:6 [APP 236-237], 238:10-240:2 [APP 238], 172:7-9 [APP 221].
[58] **Ex. A-2** at 395:11-17 [APP 156].
[59] **Ex. B** ¶ 14 [APP 1173].
[60] **Ex. B** ¶¶ 15-17 [APP 1173].
[61] *See* **Ex. A-2** at 304:18-306:12 [APP 133-134]; **Ex. A-18** [APP 461]; **Ex. A-38** [APP 783-784] (Apr. 10, 2018 Email from Brewer to Jay Madrid); **Ex. A-39** [APP 785-790] (May 4, 2018 Ltr. from Brewer to Jay Madrid); **Ex. A-40** [APP

---

21.     These demands and audits were unusual and inconsistent with NRA practices, the Services Agreement, and the nearly 40-year business relationship between the parties.[62]  In fact, some of the requests sought documents that did not exist and ████████████████████ ███████████ or were already in the NRA's possession.[63]  The others sought documents directly hazardous to the NRA's interests and contrary to its overall business strategy.[64]  AMc has since learned that Brewer and LaPierre were preparing litigation against AMc—about noncompliance with audits—*before* the first audit even occurred.[65]   Nevertheless, despite the redundant and/or impossible demands, AMc complied in a complete and timely manner to the best of its ability.[66]

22.     After ramping up his "investigation" efforts, Brewer sent a message through LaPierre threatening to have A. McQueen and R. McQueen indicted by the Department of Justice for unidentified improprieties related to their work for the NRA.[67]  Naturally, this deeply distressed A. McQueen, who had devoted most of his career to serving the NRA.[68]

23.     Given Brewer's escalating hostilities, AMc officials spoke with LaPierre about no longer dealing with Brewer in light of his animosity towards the McQueen family, his actions to take over AMc's business with the NRA, and his letter-writing campaign of repeatedly and falsely accusing AMc of withholding documents.[69]  AMc was prepared to resign the NRA's business

---

791] (Jul. 13, 2018 Ltr. from Jay Madrid to Brewer); **Ex. A-41** [APP 792-793] (Dec. 21, 2018 Ltr. from the Brewer Firm); **Ex. B** ¶¶ 17-21  [APP 1173-74]; **Ex. A-42** [APP 794-795] (Winkler Ltr. to Woody Phillips Sep 4, 2018)████ ████████████████████████████████████████████████████████████████████████████ .

[62] **Ex. A-43** [APP 796-800]; **Ex. A-62** at 305:6-21 [APP 1110]████████████████████████████████████ .
[63] **Ex. A-2** at 230:2-231:3 [APP 115], 231:13-232:18 [APP 115], 304:18-306:12 [APP 133-134]; *EP1*, GANGSTER CAPITALISM.
[64] **Ex. A-2** at 247:11-249:6 [APP 119-120], 255:15-256:4 [APP 121]; *EP1*, GANGSTER CAPITALISM.
[65] **Ex. A-44** [APP 801] (Apr. 22, 2019 Ltr. from LaPierre to Mark Dyscio) ("The NRA and I have a *common legal interests in the litigation against Ackerman McQueen which crystallized before the September [2018] Board meeting* and colored the discussion that day.") (emphasis added).
[66] **Ex. A-2** at 353:13-354:1 [APP 146], 354:10-14 [APP 146], 354:22-355:5 [APP 146]; **Ex. A-45** [APP 802-804].
[67] **Ex. B** ¶ 31 [APP 1177].
[68] **Ex. B** ¶ 23 [APP 1175].
[69] **Ex. B** ¶ 24 [APP 1175].

---

entirely, but LaPierre promised that Brewer and his firm would no longer deal directly with AMc, repeatedly imploring AMc to "stick with him."[70]

24.     Despite these assurances, Brewer continued his personal assault against AMc. During A. McQueen's final radiation and chemotherapy treatment, and just days before what would be his last Christmas with his family, the Brewer Firm sent a letter demanding to examine an even more extensive list of documents that went to the heart of AMc's confidential business and billing practices—information that any competitor of AMc would want to know.[71]

25.     These demands reflected Brewer's agenda, not the NRA's.



26.     In September and November 2018, the NRA conducted two separate audits of AMc with Brewer's oversight.[74]  Because of AMc's concerns about Brewer and his firm's conflicts, LaPierre promised Brewer would not be involved anymore.[75]  Thus, in February 2019, AMc endured a *nine-day* audit by Forensic Risk Alliance (FRA), supposedly "independent"—later proven to be anything but.[76]  After the audit, AMc discovered that FRA employee Susan Dillon had just left the Brewer Firm in November 2018 after 17 years (including as a Director) and had

---

[70] **Ex. B** ¶ 25 [APP 1176].
[71] **Ex. B** ¶ 26 [APP 1176]; **Ex. A-41** [APP 792-793]; **Ex. A-43** [APP 796]; **Ex. A-46** [APP 805-806].
[72] **Ex. A-2** at 231:13-232:18 [APP 115], 247:11-249:6 [APP 119-120].
[73] **Ex. A-2** at 255:15-256:4 [APP 121]; *EP2*, Gangster Capitalism (Hart expressing disbelief about Brewer's lawsuit against AMc: "Brewer just picked a fight with the folks with all the dirt on the expenses for the last 30 years.").
[74] **Ex. B** ¶¶ 21, 25 [APP 1174, 1176].
[75] **Ex. B** ¶¶ 24-25 [APP 1175-76]; **Ex. A-43** at 4 (Jan. 4, 2019 Ltr. to Steve Hart) [APP 796].
[76] **Ex. B** ¶ 29 [APP 1177].

even participated in the Brewer Firm's September 2018 audit.[77]  Then in March 2019, the New

York Times published a "hit piece" (negative article) about AMc and its work for the NRA.[78]  The

journalist confirmed that Brewer had provided the quotes and information for the article.[79]

27.     Although A. McQueen's health had improved in early April 2019, after Brewer

filed the first lawsuit against AMc in mid-April, it precipitously declined.[80]  Yet Brewer continued

shaping the negative public narrative by releasing false and disparaging statements, claiming that

AMc was refusing to comply with audits and turn over requested information.[81]  A. McQueen was

admitted to the hospital in May 2019.[82]  While A. McQueen's family was traveling to visit him,

Brewer filed a *second* Virginia lawsuit against AMc, parroting the "extortion" narrative, and newly

claiming that AMc had leaked the NRA's confidential information to the media.[83]  Brewer knew

both claims to be absolutely false—he was the person who had constructed both narratives and he

leaked the information himself.[84] ██████████████████████████████████████████

██████████████████████████████████████████████ [85]

---

[77] *See* **Ex. A-47** [APP 807] (Dillon's LinkedIn Profile); **Ex. A-48** [APP 808] (Brewer Firm leadership page cache).
[78] *See* **Ex. A-49** [APP 809] (Mar. 11, 2019 Ltr. to John Frazer); **Ex. A-50** [APP 810-814] (*Incendiary N.R.A. Videos*).
[79] *Id.* ("But Mr. Hakim did indicate that he was provided the two adverse statements by Mr. Brewer."); **Ex. A-51** [APP 815-816] (Mar. 11, 2019 Ltr. from LaPierre to the NRA Board); **Ex. A-2** at 276:22-277:22 [APP 126-127]████████████
████████████████████████████████████████████ *cf.* **Ex. A-37** at 139:4-11 [APP 730]
████████████████████.
[80] **Ex. B** ¶ 32 [APP 1178].
[81] **Ex. B** ¶¶ 33-34 [APP 1178]; **Ex. A-31** [APP 626]; **Ex. A-52** [APP 817-818]; **Ex. A-53** [APP 819-837] (Original Complaint, *NRA v. AMc, et al.*, Circuit Court of Virginia, Cause CL19002067).
[82] **Ex. B** ¶ 32 [APP 1178].
[83] **Ex. B** ¶ 33 [APP 1178]; **Ex. A-31** [APP 626]; **Ex. A-52** [APP 817-818] (*NRA to End Advertising Contract, Continue Litigation*).
[84] **Ex. A-49** [APP 809]; **Ex. A-37** at 148:19-149:2 [APP 732-733], 149:13-22 [APP 733], 243:12-244:9 [APP 756]
█████████████████), 264:16-22 [APP 761], 308:13-18 [APP 772], 309:7-21 [APP 773]
███████████████); **Ex. A-3** at 170:8-171:2 [APP 221]; **Ex. A-2** at 322:19-324:15 [APP 138]████
████████████████████), 405:4-406:6 [APP 159] (█████████████████████ 406:16-407:16 [APP 159]; **Ex. A-62**
at 239:3-22 [APP 1093], 281:5-282:7 [APP 1104] (no personal knowledge).
[85] **Ex. A-2** at 407:6-16 [APP 159].

---

28.     As A. McQueen's health continued to decline through June and July 2019, Brewer was unrelenting—he persisted in his accusatory statements about AMc to the media, further suggesting that AMc had been *intentionally* harming the NRA.[86]  The last week of A. McQueen's life, while on hospice, a Bloomberg article quoted Brewer implying his father-in-law and other individuals at AMc were criminals.[87]  A. McQueen was so distraught that he requested that Brewer be excluded from his memorial service.[88]  On July 16, 2019, libeled as a criminal and with two pending lawsuits against his company at the hands of his son-in-law, A. McQueen passed away.[89]

29.     Just 45 days after his father-in-law passed away, Brewer filed this lawsuit (the *third* lawsuit) in Texas, adding new individual AMc defendants and claims, including copyright infringement.[90]  Not satisfied, less than one week later, on September 5, 2019, Brewer filed his *fourth* lawsuit against AMc in Virginia, alleging that AMc failed to return NRA property (while the NRA refused to pay the return *cost* required by the Services Agreement).[91]

ii.     **Brewer uses family members to communicate with A. McQueen and R. McQueen.**

30.     Brewer communicated to A. McQueen and R. McQueen through family members instead of through counsel.  For instance, when Brewer knew AMc was represented by counsel, R. McQueen received messages to "break privilege" and contact Brewer to discuss the case.[92]  Plus, Brewer has repeatedly used fear to incite the McQueen family, including threatening indictment of A. McQueen and R. McQueen and accusing AMc of having leaks in its accounting

---

[86] **Ex. B** ¶ 34 [APP 1178]; **Ex. A-31** [APP 626]; **Ex. A-52** [APP 817-818].
[87] **Ex. B** ¶ 35 [APP 1178]; **Ex. A-54** [APP 838-840] (*Oliver North Claims That the NRA's Leader Defamed Him*).
[88] **Ex. B** ¶ 35 [APP 1178].
[89] **Ex. B** ¶ 35 [APP 1178]; https://www.dignitymemorial.com/obituaries/oklahoma-city-ok/angus-mcqueen-8780340.
[90] *See* ECF 1.
[91] **Ex. A-55** [APP 841-910] (Original Complaint, *NRA v. AMc, et al.*, Circuit Court of Virginia, Cause 19002886).
[92] **Ex. B** ¶ 36 [APP 1178].

department, all intentionally communicated through members of the McQueen family.[93]   Brewer has also oddly offered privileged information about his own litigation strategy on multiple occasions.[94]

**D.     Brewer's prior ethical conflicts and court sanctions.**

31.     As described above, Brewer is a material fact witness.[95]   Even the Virginia Court recognized Brewer and his PR group's conflict of interest from their competition with AMc.[96]   His firm also admitted: "***[Brewer's] not here out of our ethical concern that he might be a witness***."[97]   Thus, the court walled them off from AMc's highly confidential information.[98]

32.     Brewer's ethical lapses are not isolated to this lawsuit.  In fact, his "Rambo justice" tactics, public words, and unethical conduct have earned him numerous court sanctions and disqualifications throughout his career.[99]   A detailed summary of Brewer's prior conflicts, disqualifications, and sanctions is attached as **Appendix B**.[100]

## <u>ARGUMENTS AND AUTHORITIES</u>

**A.     Standards for disqualification in the Fifth Circuit.**

33.     A court must consider a motion to disqualify along with the state and national

---

[93] **Ex. B** ¶¶ 23, 31 [APP 1175, 1177].
[94] **Ex. B** ¶ 36 [APP 1178].
[95] *See also* **Ex. A-56** [APP 911-917] (Brewer "is also deeply involved in internal decision-making."  "Brewer has been a central behind-the-scenes force in the internal struggle that broke out between the NRA's top executive Wayne LaPierre and ousted president Oliver North.  LaPierre has entrusted the future of his organization to Brewer…"); **Ex. A-57** [APP 918-927] ("Brewer counsels LaPierre on some of the group's most important decisions, including legal strategy, management and public relations, said multiple people familiar with his role.  Those who have been pushed out shared a common concern: that Brewer ran up excessive fees and then cemented his role by overstating claims about the organization's legal jeopardy and the potential conflicts of his critics…")
[96] **Ex. A-58** at 42:4-19 [APP 970] (Aug. 28, 2019 Hr'g Tr.).
[97] **Ex. A-58** at 40:11-13 [APP 968] (emphasis added); *see also id.* at 27:20-22 [APP 955] ("This is a situation under Rule 3.7 where, potentially, if he were an advocate in this case, he might be a witness for the NRA."); **Ex. A-1** at 14:3-6 [APP 25] (Brewer Firm admitting conflict exists if testimony is adverse to the NRA).
[98] **Ex. A-58** at 42:4-19 [APP 970].
[99] **Ex. A-57** [APP 918-927]; **Ex. A-59** [APP 984-986] (*The Gunslingers*); **Ex. A-60** [APP 987-1013] (*Rambo Justice*).
[100] The 2012 disqualification involves Brewer hiring the opposing party's former employee as a consultant for inside information, much like Brewer representing Stinchfield as former AMc employee in Stinchfield-AMc litigation (companion lawsuit) while also serving as lead counsel for the NRA in its various lawsuits against AMc.

---

ethical rules adopted by the Fifth Circuit, *i.e.*, the American Bar Association Model Rules of Professional Conduct (the "***Model Rules***") and the Texas Disciplinary Rules of Professional Conduct (the "***Texas Rules***"), as well as the local rules of the district court.[101]

34.     The Fifth Circuit has "elect[ed] to remain sensitive to preventing conflicts of interest," finding courts are "obliged" to discipline unethical conduct.[102]  Accordingly, "a motion to disqualify counsel is the proper method for a party-litigant to bring the issues of conflict of interest or breach of ethical duties to the attention of the court."[103]

35.     In the Northern District of Texas, a judge may discipline a lawyer for "conduct unbecoming a member of the bar" and "unethical behavior," which is "conduct that violates the Texas Disciplinary Rules of Professional Conduct."  L. R. 83.8(b) & (e).  A judge also may take action against practices that increase expense and burden or that cause "annoyance, embarrassment, or oppression, and [may] impose sanctions upon parties or attorneys."[104]  The *Dondi* panel outlined standards of practice for the Northern District of Texas, leaving no doubt that "honesty and fair play" are mandatory, not optional.[105]

36.     Yet evidenced by the revealing title of his law review article ("One Year After *Dondi*: Time to Get Back to Litigating?"), Brewer believes the *Dondi* standards are antithetical to the practice of law and has actively demonstrated his disdain for civility through his behavior in this string of lawsuits against AMc.[106]  In fact, in recently upholding sanctions against Brewer for

---

[101] *In re Am. Airlines, Inc.*, 972 F.2d 605, 609 (5th Cir. 1992); *Tierra Tech de Mex., S.A. de C.V. v. Purvis Equip. Corp.*, No. 3:15-CV-4044-G, 2016 U.S. Dist. LEXIS 137893, at *5 (N.D. Tex. Oct. 4, 2016).

[102] *Id.*; *see also Hill v. Hunt*, No. 3:07-CV-02020-O, 2008 U.S. Dist. LEXIS 68925, at *54 (N.D. Tex. Sep. 4, 2008) (O'Connor, J.) (actual harm not a requirement for disqualification for conflicts of interest and "unethical conduct does not have to threaten to taint proceedings to make disqualification proper.").

[103] *Am. Airlines*, 972 F.2d at 611 (quoting *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980)).

[104] *Dondi Props. Corp. v. Commerce Sav. & Loan Assoc.*, 121 F.R.D. 284, 287 (N.D. Tex. 1988).

[105] *Id.* at 287-88 (lawyers' "unswerving duty" to the public and the justice system to practice "honesty and fair play").

[106] **Ex. A-61** [APP 1014-1032] (The *Dondi* rules "chill effective advocacy" and "should be abolished").

his unique brand of "litigating" in another Texas case, the Seventh Court of Appeals emphasized that Texas courts must passionately protect the right to a jury trial from behavior that thwarts the litigation process.[107]  If Brewer and his firm are not disqualified from this matter, Defendants will unquestionably be denied their constitutional right to a fair jury trial.

**B.      Brewer's personal interests violate the conflict-of-interest rules.**

37.     A lawyer "**shall not**" undertake representation that becomes—or even *appears* to be—adversely limited "by the lawyer or law firm's own interests."[108]  Here, Brewer's numerous personal and professional interests create fundamental and irreconcilable conflicts of interests.

38.     

[109]  That manufacturing makes Brewer a principal actor in the underlying dispute with interests adverse to the NRA and LaPierre.

39.     *Second*, Brewer and his firm are direct business competitors of AMc, a conflict that the Virginia Court acknowledged.[110]  Since early 2018 when AMc was still engaged by the NRA and continuing to this day, Brewer and the Brewer Firm have stepped into the shoes of AMc, in part because of inside knowledge Brewer acquired of how AMc has serviced the NRA for nearly 40 years.  Therefore, AMc must closely scrutinize each and every document request to make sure that competitive and sensitive business information is not turned over to Brewer.

40.     

---

[107] *Brewer v. Lennox Hearth Prods., LLC*, 546 S.W.3d 866, 885 (Tex. App.—Amarillo 2018, pet. granted) ("If the right to a civil jury trial … is going to signify anything at all, it must denote the right to trial by a fair and impartial jury. *Any* conduct that erodes that fundamental core principle erodes public confidence in the entire judicial process.").
[108] TEX. R. 1.06(b) (emphasis added); *see also* MODEL R. 1.7.
[109] **Ex. A-3** at 163:1-164:15 [APP 219]; **Ex. A-2** at 116:18-21 [APP 86], 255:15-256:4 [APP 121], 319:18-320:4 [APP 137] ▮, 341:9-342:1 [APP 143], 343:10-344:8 [APP 143], 395:11-396:15 [APP 156].
[110] **Ex. A-58** at 42:4-19 [APP 970].

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████[111] Are his actions on behalf of the NRA or for his own personal vendetta?

41.     *Fourth*, Brewer's own financial motives are a key issue in this litigation and underlie the facts and circumstances behind North's questioning of Brewer's exorbitant fees, the legality of the Brewer Firm's retention, and the fact that Brewer had every person who questioned him or his fees fired, dismissed, or otherwise removed from the NRA.[112]  Brewer is incentivized to maintain the NRA lawsuits against AMc to generate more revenue. Indeed, Brewer's $50 million (and counting) in fees incurred in less than two years are completely beyond normal and customary attorneys' fees and are evidence that the incentive is working.

42.     *Fifth*, regardless of how he tries to spin it, Brewer is suing his family.  R. McQueen, the current CEO of AMc, must battle *his sister's husband*, which could hamper R. McQueen's ability to zealously advocate for his own company because of his concerns for family.

43.     *Finally*, Brewer is a principal actor and tortfeasor in this litigation.  He was responsible for faking the AMc audits and document demands, creating the fallacy that AMc was leaking information, filing these unauthorized lawsuits when the NRA was seeking to keep the peace with AMc, concocting and carrying out the false and defamatory "extortion" narrative, and for terminating AMc's Services Agreement.[113]

---

[111] **Ex. A-2** at 189:2-7 [APP 105], 432:3-18 [APP 165], 434:9-20 [APP 166].

[112] **Ex. A-3** at 169:10-170:7 [APP 221], 172:7-19 [APP 221], 180:22-182:4 [APP 223-224], 208:22-209:15 [APP 230-231], 215:9-13 [APP 232], 223:10-224:25 [APP 234], 232:17-233:6 [APP 236-237], 238:10-240:2 [APP 238]; **Ex. A-2** at 117:7-118:12 [APP 87], 341:9-342:1 [APP 143], 395:11-397:8 [APP 156-157].

[113] *Id. See also* **Ex. A-49** [APP 809]; **Ex. A-3** at 234:7-237:2 [APP 237-238]; **Ex. A-2** at 322:19-324:15 [APP 138] ██████████████████), 405:4-406:6 [APP 159] (████████████████████████████████████████████████████████████████ , 406:16-407:16 [APP 159]; **Ex. A-37** at 56:9-17 [APP 709], 73:5-74:14 [APP 714], 106:2-109:3 [APP 722-723], 115:22-116:8 [APP 724], 117:22-119:10 [APP 725], 121:19-122:22 [APP 726], 127:21-128:22 [APP 727], 131:2-132:13 [APP 728] &

44.     Each conflict independently warrants disqualification; together, they mandate it. Because Brewer can no longer represent the NRA, neither can his firm.[114]  Any notion that Brewer could be walled off from the NRA litigation is nonsensical given his leadership of *his* firm, his demonstrated willingness to engage in improper conduct, and his involvement and knowledge.[115]

## C.     Brewer is violating the Lawyer-Witness Rule.

45.     A lawyer "**shall not**" accept or continue representation "**if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client**."[116]   Additionally, a lawyer "**shall**" decline or withdraw from representation if it would "result in violation of Rule 3.08, other applicable rules of professional conduct or other law . . . ."[117]

46.     Brewer must be disqualified because his witness testimony is necessary for AMc's claims and for the NRA's claims, because no exception applies, and because his testimony is adverse as he shifts blame to, and distances himself from, the NRA and LaPierre.[118]

> The practice of attorneys furnishing from their own lips and on their own oaths the controlling testimony of their client is one not to be condoned by judicial silence. [N]othing short of actual corruption can more surely discredit the profession.[119]

---

268:1-5 [APP 762], 151:4-8 [APP 733], 171:11-15 [APP 738], 210:1-14 [APP 748], 216:9-217:5 [APP 749-750], 257:7-258:8 [APP 760] (                                                   ).

[114] *See* Tex. R. 1.06(f) (lawyer disqualification imputed to firm); *see also* Tex. R. 1.06(b)(2) & Model R. 1.7(a)(2).

[115] ECF 61 at 1 (Brewer, "lead litigation counsel"); **Ex. A-1** at 18:1-4 [APP 29] (Brewer, NRA client contact); **Ex. A-64** at 8 [APP 1126] (NRA Opp. to Defs.' Mot. for Protective Order) (Brewer "participates in meetings and telephone calls with client representatives and with other [Brewer Firm] attorneys and employees working on the case.").

[116] Tex. R. 3.08(a)-(c) (emphasis added).  Model Rule 3.7 is substantially similar to Texas Rule 3.08.

[117] Tex. R. 1.15(a)(1) (emphasis added).

[118] The Brewer Firm admitted Brewer may be a witness.  **Ex. A-58** at 27:20-28:5 [APP 955-956], 40:11-13 [APP 968]. The Brewer Firm admitted a conflict exists if Brewer's testimony is adverse to the NRA.  **Ex. A-1** at 14:3-6 [APP 25].

[119] *Reliance Capital, Inc. v. G.R. Hmaidan, Inc.*, No. 14-05-00061-CV, 2006 Tex. App. LEXIS 4411, at *10-11 (Tex. App.—Houston [14th Dist.] May 18, 2006, pet. denied) ("The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount."  "[C]ourts should not allow attorneys to sign on as counsel, prepare the entire case for trial, and then present the case through their own testimony….")

**i.    Brewer will provide testimony necessary to both sides' claims.**

47.    *First*, the Dallas and Virginia Actions are based in part on the NRA's allegation that AMc did not comply with document demands and audits (which Brewer required and controlled), including providing the North Contract.[120]

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████[121] █████████████████████████████████

███████████████████████████████████[122]

48.    *Second*, Brewer's testimony is necessary to establish facts relating to the NRA's allegations of AMc leaking information.[123] ██████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████[124]  Brewer is the sole individual with knowledge of his reasoning for scapegoating AMc. These facts are necessary to defend against the NRA's claims, to develop AMc's libel claim, and to establish the NRA's waiver of confidentiality under the declaratory judgment action.

49.    *Third*, Brewer's testimony is necessary on his conflict of interest with AMc and how it impacted the NRA's decision making.

---

[120] *See* ECF 1 ¶¶ 149, 152-164.
[121] **Ex. A-2** at 231:13-232:18 [APP 115], 247:11-249:6 [APP 119-120], 255:15-256:4 [APP 121]; **Ex. A-3** at 197:10-202:4 [APP 228-229]; **Ex. A-37** at 45:1-5 [APP 707], 45:18-22 [APP 707], 46:11-21 [APP 707], 65:13-66:1 [APP 712], 104:6-11 [APP 721], 105:7-16 [APP 722], 206:11-207:2 [APP 747], 283:4-284:7 [APP 766], 286:9-287:7 [APP 767], 334:18-335:10 [APP 779] ██████████████████████████████████████████████
[122] **Ex. A-2** at 181:16-20 [APP 103], 247:11-249:6 [APP 119-120], 255:15-256:4 [APP 121]; **Ex. A-37** as in fn. 113.
[123] *See* ECF 1 ¶ 161.
[124] **Ex. A-2** at 276:22-277:22 [APP 126-127], 322:19-324:15 [APP 138] ████████████████
████████████), 405:4-406:6 [APP 159] (████████████████████, 406:16-407:16 [APP 159]; **Ex. A-37** at 148:19-149:2 [APP 732-733], 149:13-22 [APP 733], 243:12-244:9 [APP 756] ██████████████
█████), 264:16-22 [APP 761], 308:13-18 [APP 772], 309:7-21 [APP 773]; **Ex. A-3** at 170:8-171:2 [APP 221].

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY**                    **PAGE 20**

50.     *Fourth*, Brewer's testimony is necessary to determine facts about the alleged extortion and AMc's defamation claims.  Brewer diverted attention away from himself (individuals within the NRA who were questioning his fees) to AMc by drafting false statements for LaPierre, ███████████████████ regarding AMc's alleged extortion coup, including making defamatory statements in the media.[125] ████████████████████████████████████████

████████████████████████████████████████████

█[126] ███████████████████████████████████████

█████████████████████████████████[127]  In short, Brewer lodged criminal allegations against his in-laws and specifically a decedent (A. McQueen) with no ability to defend himself, which only Brewer can explain.  AMc is entitled to present the communications as evidence and "call the author as a witness to furnish testimony concerning the substance of the [communications] and his thought processes in preparing [them] and in filing suit."[128]

51.     *Finally*, Brewer's testimony is necessary regarding the termination of the Services Agreement[129] and the PR and crisis-management work his firm now handles for the NRA.

**ii.     Defendants are suffering actual prejudice.**

52.     A witness-advocate on controversial or contested matters can "unfairly prejudice the opposing party."[130]  Because a witness testifies on personal knowledge, while a lawyer "is expected to explain and comment on evidence given by others," a lawyer-witness' statement could

---

[125] **Ex. A-32** [APP 627-629]; **Ex. A-34** [APP 685]; **Ex. A-33** at 206:9-208:19 [APP 682]; **Ex. A-28** at 191:22-201:14 [APP 560-563]; **Ex. A-35** [APP 686-690].
[126] **Ex. A-3** at 234:22-235:1 [APP 237], 235:23-237:2 [APP 237-238]; **Ex. A-33** at 183:1-10 [APP 676], 202:6-9 [APP 681], 207:8-13 [APP 682]; **Ex. A-28** at 182:4-183:1 [APP 558].
[127] *See e.g.*, **Ex. A-13** at 162:3-163:22 [APP 420]; **Ex. A-62** at 64:2-12 [APP 1049] (███████████████).
[128] *See In re Guidry*, 316 S.W.3d 729, 740 (Tex. App.—Houston [14th Dist.] 2010, no pet.).
[129] **Ex. A-63** [APP 1118].
[130] TEX. R. 3.08, cmt. 4.

"be taken as proof *or* as an analysis of proof."[131]   A jury could give more credibility to such statement because of his role as counsel,[132] or where the lawyer is suing his very own family.

53.     Here, the underlying issues are fiercely contested and involve a high degree of controversy.  Defendants will suffer actual prejudice defending against Brewer's tactics as lawyer *and* a witness.  But his absence alone does not cure the prejudice; he will continue to run the case from the behind the scenes, as he is doing now.[133]  Thus, his firm must be disqualified as well.[134]

### iii.     <u>Any burden to the NRA is outweighed by public policy considerations.</u>

54.     Public policy concerns outweigh any burden to the NRA.[135]  Even if hardship were a relevant inquiry, "that alone is insufficient to prevent the disqualification."[136]  Although finding new counsel may delay this case, public policy outweighs that burden.  The integrity of the judicial system and public confidence in the legal profession are prioritized over choice of counsel.[137]

55.     Brewer should have avoided the appearance of—rather than blatantly engage in—impropriety.  ███████████████████████████████████████████████████████████
███████████████████████████████████████████████[138]  He then boldly filed *four* lawsuits against AMc, only after learning of his father-in-law's condition and unlikely survival.  Brewer uses family secrets in suing a relative, and he is a fact witness based on his own

---

[131] *Id.* (emphasis added); *see Guidry*, 316 S.W.3d at 738 (Also, "(1) a testifying lawyer may be a less effective witness because he is more easily impeachable for interest; (2) a lawyer-witness may have to argue his own credibility ….").
[132] *See Guidry*, 316 S.W.3d at 740-41; *Estate of Andrews v. U.S.*, 804 F. Supp. 820, 823 (E.D. Va. 1992).
[133] **Ex. B** ¶ 39 [APP 1180]; ECF 61 at 1 (the NRA referring to Brewer as "lead litigation counsel").
[134] *See e.g., Andrews*, 804 F. Supp. at 829-30 (disqualifying the firm because of the lawyer-witness violation and no "distinctive value" that would make substitution of counsel prejudicial); *Dondi*, 121 F.R.D. at 290 (Courts have a "duty and responsibility to disqualify counsel for unethical conduct prejudicial to his adversaries.").
[135] *Shelton v. Hess*, 599 F. Supp. 905, 910, 911 (S.D. Tex. 1984) ("little choice but to conclude" unfair prejudice).
[136] *Atasi Corp. v. Seagate Tech.*, 847 F.2d 826, 832-33 (Fed. Cir. 1988); *Andrews*, 804 F. Supp. at 829 ("The 'substantial hardship' exception to the witness-advocate rule is construed narrowly.").
[137] *See, e.g., United Pacific Ins. Co. v. Zardenetta*, 661 S.W.2d 244, 248 (Tex. App.—San Antonio 1983, no writ) ("The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount. … The client's recognizably important right to counsel of his choice must yield, however, to considerations of ethics which run to the very integrity of the judicial process."); *Andrews*, 804 F. Supp. at 823.
[138] *See e.g.*, **Ex. A-2** at 117:7-118:12 [APP 87], 341:9-342:1 [APP 143], 395:11-397:8 [APP 156-157].

actions in the underlying dispute.   And by using family members to communicate with R. McQueen about this very lawsuit,[139] Brewer is violating the ethical rule against communicating with represented parties.[140]

56.     This Dallas Action was filed on August 30, 2019 and is in the early discovery phase. No depositions have occurred other than one cross-noticed in the Virginia Action in December 2019.  There is also no scheduling order or trial setting.  Any delay will not meaningfully prejudice the NRA where its counsel has not been prosecuting this case for even one year yet.

57.     Conversely, allowing Brewer and his firm to continue as counsel would injure the integrity of the judicial system.[141]  The public was already suspicious about Brewer because of his unconscionable legal fees and his familial ties to the NRA through AMc.[142]  Those suspicions are heightened now that Brewer has taken over the NRA's PR function from AMc.[143]  Brewer fueled his takeover of AMc's business by using litigation as a tactic to learn AMc's proprietary information under the guise of discovery.  Because this is a high-profile case, as in *Hill* (N.D. Tex.),[144] taking appropriate action against Brewer is even more critical to protect this Court and the system's integrity, the public's faith in the legal profession, and the sacred right of an untainted jury process.

---

[139] *See* **Ex. B** ¶¶ 36-38 [APP 1178-79].
[140] Texas Rule 4.02 prohibits a lawyer from communicating (or causing or encouraging another person to communicate) with a represented party about *any* legal matter for which he is represented.  *See also* MODEL R. 4.2; *Orchestratehr, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 487-88 (N.D. Tex. 2016) (communicating with represented party was "abuse [of] the judicial process and the standards expected of attorneys" in *Dondi*, 121 F.R.D. at 288); *Camoco, LLC v. Leyva*, 2019 U.S. Dist. LEXIS 200601, at *12-13 (W.D. Tex. Nov. 19, 2019) ("Rule 4.02 covers communications between a lawyer and a represented person about subjects that may touch on *any legal matter* for which the latter is represented."); TEX. R. 4.04(b) ("A lawyer shall not present, participate in presenting, or threaten to present: (1) criminal or disciplinary charges solely to gain an advantage in a civil matter."); MODEL R. 4.4(a).
[141] *See Am. Airlines*, 972 F.2d at 609.  *See also Hill*, 2008 U.S. Dist. LEXIS 68925, at *54.
[142] **Ex. A-3** at 128:15-129:2 [APP 210-211], 129:19-130:7 [APP 211], 153:17-154:14 [APP 217], 184:23-185:7 [APP 224-225]; **Ex. A-2** at 341:9-342:1 [APP 143]; **Ex. A-15** [APP 452-454].; *see generally* GANGSTER CAPITALISM.
[143] *See generally* GANGSTER CAPITALISM.
[144] 2008 U.S. Dist. LEXIS 68925, at *54.

**D.      Brewer is using falsehoods and publicity to sway the proceedings.**

58.      Brewer and his law firm are violating yet another rule by using PR tactics to beat their opposition into submission.[145]  In addition to leaking confidential information and defaming AMc, Brewer has engaged in his same media litigation strategy, including leaking court filings before opposing counsel is even aware of them.[146]  Considering Brewer's takeover of the NRA's PR efforts, a majority (if not all) of the NRA's statements are made by him or his direction.[147]  For example, it is undisputed that Brewer leaked comments about AMc from NRA Board members to the New York Times for the March 11, 2019 article.[148] ███████████████████████████

████████████████████████████████████████████████████████████[149]

59.      Brewer was not responding to negative publicity—he *created* it, knowing it would materially prejudice this case.[150]  This dispute was not even in the public sphere until he put it there.  Brewer himself admits that he uses trial publicity to "create[] a climate that produce[s] a favorable outcome" for the NRA "[w]ithout setting foot in a courtroom, without presenting a shred of testimony."[151]  His sole purpose is to "try the case right where [he] want[s] it: in the court of public opinion."[152]

---

[145] *See* MODEL R. 3.6(a) (no "extrajudicial statement" via public communication that "will have a substantial likelihood of materially prejudicing" a lawsuit).  Texas Rule 3.07 further prohibits a lawyer from counseling or assisting another person in making such a statement.  *See also* Tex. R. 3.07(b) ("[T]he likelihood of a violation increases" if litigation is ongoing and "the statement refers to: (1) the character, credibility, reputation or criminal record of a party … or the expected testimony of a party or witness … (5) information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudicing an impartial trial.").
[146] *See* **Ex. A-60** [APP 987-1013] (*Rambo Justice*).
[147] **Ex. A-66** [APP 1163] (Brewer statement to media about NRA and COVID-19, *i.e.*, non-legal); **Appendix A**.
[148] *See* **Ex. A-49** [APP 809].
[149] *See e.g.*, **Ex. A-3** at 170:19-24 [APP 221] █████████████████████████████████████████████████
████████████████████████████████████████████████████████ **Ex. A-2** at 276:22-278:22 [APP 126-127], 322:19-
324:15 [APP 138], 405:4-406:6 [APP 159], 406:16-407:16 [APP 159] ██████████████████████████████.
[150] Model Rule 4.1(a): "a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person…" *See also* TEX. R. 4.01(a) (same).  Model Rule 4.4(a): "a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person…" *See also* TEX. R. 4.03(a).
[151] *See* **Ex. A-60** [APP 987] (*Rambo Justice*).
[152] *Id.*

---

E.     **Impropriety occurred, raising public suspicion.**

60.     A court must weigh "the likelihood of public suspicion against a party's right to counsel of choice"[153] and consider:

> whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interest which will be served by the lawyer's continued participation in the case.[154]

61.     This brief describes the improprieties that have already occurred. Allowing Brewer to continue as counsel would cause the public to question the loyalty a lawyer owes to a client and would "invite skepticism of the justice system" without anyone to deter his gross conflicts and vexatious behavior. Allowing his firm to continue would signal to the public that the protection of one's rights extends only to the lawyer himself, but not to the abusive litigation tactics and conflicts of interests that pervade the law firm. If a court ignores the reality that a lawyer, like Brewer, who for decades has engaged in such unethical behavior as to warrant repeated disqualification, will still be engaged in the lawsuit behind-the-scenes (as he already is) through his firm, the public will be skeptical of the efficacy of any discipline against such lawyers.

## <u>CONCLUSION</u>

WHEREFORE, Defendants respectfully request the Court grant their Motion and the relief requested therein, and any other relief, at law or in equity, to which they may justly be entitled.

---

[153] *Honeywell Int'l Inc. v. Philips Lumileds Lighting Co.*, No. 2:07-CV-463-CE, 2009 U.S. Dist. LEXIS 12496, at *10 (E.D. Tex. Jan. 6, 2009).
[154] *Id.* at *10-11. *See also Hill*, 2008 U.S. Dist. LEXIS 68925, at *44-45, 47, 52 (Brewer's representation "would severely undermine the public confidence in lawyers and the justice system," causing the public to question a lawyer's duty of loyalty to clients and to be skeptical of the justice system).

Dated: March 30, 2020                                Respectfully submitted,

                                                     */s/ G. Michael Gruber*
                                                     **G. Michael Gruber, Esq.**
                                                     Texas Bar No. 08555400
                                                     gruber.mike@dorsey.com
                                                     **Jay J. Madrid, Esq.**
                                                     Texas Bar No. 12802000
                                                     madrid.jay@dorsey.com
                                                     **J. Brian Vanderwoude, Esq.**
                                                     Texas Bar No. 24047558
                                                     vanderwoude.brian@dorsey.com
                                                     **Brian E. Mason, Esq.**
                                                     Texas Bar No. 24079906
                                                     mason.brian@dorsey.com

                                                     **DORSEY & WHITNEY LLP**
                                                     300 Crescent Court, Suite 400
                                                     Dallas, Texas 75201
                                                     (214) 981-9900 Phone
                                                     (214) 981-9901 Facsimile

                                                     **ATTORNEYS FOR DEFENDANTS**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 30th day of March 2020:

                                                     */s/ G. Michael Gruber*
                                                     **G. Michael Gruber, Esq.**

# APPENDIX A

| | | BREWER MEDIA QUOTES | | | |
|---|---|---|---|---|---|
| **Outlet** | **Date** | **Title** | **Author** | **Quoting** | **Quote** |
| Dow Jones | 5/2/2018 | New York Bans NRA Insurance Program and Fines Broker | Leslie Scism | Brewer | William A. Brewer III, partner at Brewer, Attorneys & Counselors and counsel for the NRA, said "the NRA acted appropriately at all times." He added that "the NRA relied upon Lockton and its assurances that the program complied with all applicable state regulations." |
| Insurance Journal - Wells Media | 5/3/2018 | New York Fines Lockton Over NRA Insurance; Continues Probe of Other Players | Andrew Simpson | Brewer | "The NRA acted appropriately at all times," said William A. Brewer III, partner at Brewer, Attorneys & Counselors and counsel for the NRA, in a prepared statement. "The NRA relied upon Lockton and its assurances that the program complied with all applicable state regulations. Lockton, as the subject matter expert, was obligated to oversee the administration, marketing and promotion of this insurance program." |
| Insurance Journal - Wells Media | 5/7/2018 | Chubb Subsidiary Fined $1.3M for Underwriting NRA-Branded Insurance | Elizabeth Blosfield | Brewer | Brewer added that the NRA "will continue to work cooperatively with the DFS in connection with its inquiry and to promote the interests of NRA members and law-abiding gun owners who participated in this program."

"As the NRA has previously stated, it acted appropriately at all times," said William A. Brewer III, partner at Brewer, Attorneys & Counselors and counsel for the NRA, in a statement regarding the consent order. "The NRA relied upon Lockton and its assurances that the Carry Guard program complied with all applicable state regulations."

Brewer continued, "We are disappointed, but unfortunately not surprised, to see that today's consent order prevents Chubb from entering into any affinity-type insurance programs with the NRA. We believe such limitations are unjustified - explained one as being part of the Department of Financial Services' politically-motivated attack on the NRA and its law-abiding members." |
| Kansas City Star | 5/7/2018 | Months after getting out of the NRA insurance business, headaches pile up for Lockton | Steve Vockrodt | Brewer | "The NRA believes that Lockton violated its fiduciary obligations - to the detriment of the organization, insurance program it was entrusted to run, and the policyholders who obtained protections by those insurance products," said William Brewer III, a partner at Brewer, Attorneys & Counselors who is representing NRA in its litigation against Lockton. "For almost 20 years, the NRA relied on Lockton as the subject-matter expert with respect to various insurance products that were offered to NRA members and other law-abiding gun owners."

"Speaking more broadly, Lockton's sudden U-turn and the short-term issues it creates regarding the availability of insurance interferes with rights guaranteed by the Second Amendment," Brewer said. "Such actions unduly burden the free market system and impact law-abiding members of the NRA. The resolve of the NRA will only grow stronger in the face of these developments." |
| CNN | 5/12/2018 | NRA sues New York Gov. Andrew Cuomo, accusing state of 'blacklisting' it | Jason Hanna and Laura Ly | Brewer | "Political differences aside, our client believes the tactics employed by these public officials (in New York) are aimed to deprive the NRA of its First Amendment right to speak freely about gun-related issues and in defense of the Second Amendment," William A. Brewer III, a lawyer for the NRA, said in a statement. |
| States News Service | 5/12/2018 | The NRA Sues New York Governor Andrew Cuomo, New York State Department of Financial Services over Alleged Attack on First Amendment Rights | | Brewer | "Political differences aside, our client believes the tactics employed by these public officials are aimed to deprive the NRA of its First Amendment right to speak freely about gun-related issues and in defense of the Second Amendment," says William A. Brewer III, partner at Brewer, Attorneys and Counselors and counsel to the NRA. "We believe these actions are outside the authority of DFS and fail to honor the principles which require public officials to protect the constitutional rights of all citizens." |
| The New American | 6/18/2018 | Gun Owners Stand Up to Anti-gun Banks | | Brewer | The NRA is also getting in on the fight and has begun running ads online that are critical of Citigroup and Bank of America. "The NRA will continue to promote awareness of those companies who seek to infringe upon the Second Amendment rights of American citizens," William Brewer, an NRA attorney, wrote in a publicly released statement. |
| NYT | 8/4/2018 | N.R.A. Suit Claims Cuomo s  Blacklisting  Has Cost It Millions of Dollars | Jacey Fortin | Brewer | William Brewer, a partner at Brewer, Attorneys & Counselors who is lead counsel in the organization s lawsuit against the New York officials, said on Saturday that the N.R.A. is growing and "in good financial standing."
"However, the conduct of defendants, from the home state of the N.R.A., now threaten the financial growth and overall trajectory of the organization," he said. |
| New York Post | 8/4/2018 | NRA effectively issues going-concern warning, blaming N.Y. Gov. Cuomo for its financial woes; Pro-gun group funneled $21 million to 2016 Trump campaign | Bob Fredericks | Brewer | Dallas-based William Brewer III, lead lawyer for the NRA, told the Journal that the group was "suffering setbacks" because of the state's actions.

"The amended complaint raises concerns about the material impacts to the NRA as a result of the actions of Governor Cuomo and DFS," Brewer said in a statement about the new filing.

"Our client is suffering setbacks with respect to the availability of insurance and banking services - as a result of a political and discriminatory campaign meant to coerce financial institutions to refrain from doing business with the NRA. The actions of defendants are a blatant attack on the First Amendment rights of our organization," he continued. |

| | | | | |
|---|---|---|---|---|
| CNN | 8/5/2018 | NRA lawsuit says it's in financial trouble because of actions by New York regulators | Steve Almasy, Jason Hanna and Laura Ly | Brewer | "We believe the filing is a misguided attempt to deflect from the fact that defendants overstepped their legal and regulatory authority -- to the detriment of the Constitution and New York insurance consumers," William A. Brewer III said. |
| WSJ | 8/6/2018 | Battle Between Cuomo, NRA Heats Up | Corinne Ramey | Brewer | A lawyer representing the NRA said Sunday that the group was "suffering setbacks" in regards to the availability of insurance and banking services. "The actions of defendants, if left unchecked, will further harm the NRA, chill the commercial activities of institutions regulated by [the Department of Financial Services] and penalize law-abiding New York insurance consumers," the lawyer, William A. Brewer III, said in a statement. |
| Washington Times | 8/7/2018 | Andrew Cuomo puts pressure on NRA's gun-liability insurance program | David Sherfinski | Brewer | "The governor's current campaign against the NRA extends far beyond Carry Guard," said William A. Brewer III, lead counsel for the NRA in the case. "His scorched earth tactics are designed to prohibit the NRA from having access to insurance and banking services simply because he disagrees with the political viewpoint of this law-abiding organization." |
| NYT | 8/9/2018 | The N.R.A. Has Declared War on Andrew Cuomo. He Couldn t Be Happier | Vivian Wang | Brewer | William Brewer III, a lawyer for the N.R.A., said that Mr. Cuomo s campaign has cost the N.R.A. tens of millions of dollars and infringed upon its First Amendment rights to political speech.<br><br>"It s not just what the governor did 20 years ago when he was at Housing and Urban Development," Mr. Brewer said. "He continues to harbor great animus toward the N.R.A.<br><br>"For him to pretend that this is not politically motivated by his anti-N.R.A. agita," Mr. Brewer said, "we just don t believe it." Mr. Brewer conceded that the N.R.A. was "large and successful" and in no immediate danger of dissolution. But he said that could change if Mr. Cuomo were left unchecked.<br><br>"The N.R.A. is not running for office any place. The N.R.A. has no political motivation," he said. (The N.R.A. spent more than $203 million on political activities between 1998 and 2017, according to PolitiFact.)<br><br>"If this campaign that has been orchestrated by Governor Cuomo and his colleagues was mounted against any other civil rights organization," Mr. Brewer continued, "you d like to hope that everyone would get the point." |
| NYT | 8/10/2018 | Another Battle With N.R.A.? Cuomo Exults | Vivian Wang | Brewer | William Brewer III, a lawyer for the N.R.A., said that Mr. Cuomo's campaign has cost the N.R.A. tens of millions of dollars and infringed upon its First Amendment rights to political speech.<br><br>"It's not just what the governor did 20 years ago when he was at Housing and Urban Development,'' Mr. Brewer said. "He continues to harbor great animus toward the N.R.A.<br><br>"For him to pretend that this is not politically motivated by his anti-N.R.A. agita,'' Mr. Brewer said, "we just don't believe it.''<br><br>Mr. Brewer conceded that the N.R.A. was "large and successful'' and in no immediate danger of dissolution. But he said that could change if Mr. Cuomo were left unchecked.<br><br>"The N.R.A. is not running for office any place. The N.R.A. has no political motivation,'' he said. (The N.R.A. spent more than $203 million on political activities between 1998 and 2017, according to PolitiFact.)<br><br>"If this campaign that has been orchestrated by Governor Cuomo and his colleagues was mounted against any other civil rights organization,'' Mr. Brewer continued, "you'd like to hope that everyone would get the point.'' |
| Bestwire | 8/13/2018 | Washington State Regulators Mull Further Action against NRA Insurance Program | Frank Klimko | Brewer | NRA officials could not be reached for comment. NRA attorney William Brewer has made a formal request for a rehearing on the order.<br><br>"As the NRA has previously stated, it acted appropriately at all times," said Brewer. "The NRA has, since 2000, relied upon Lockton and its assurances that the insurance programs in question complied with all applicable state regulations."<br><br>"After corresponding with Commissioner Kreidler's office last year, the NRA made certain changes regarding the Carry Guard insurance program," Brewer said. "We were subsequently assured by the commissioner's staff that the program complies fully with the laws and regulations of the state of Washington - where Carry Guard insurance continues to be sold."<br><br>"Against that backdrop, the recent announcement comes as a total surprise. Nonetheless, the NRA will continue to cooperate with all lawful inquiries," Brewer said in a statement. |
| Insurance Journal - Wells Media | 8/22/2018 | New Jersey Investigating NRA-Sponsored Carry Guard Insurance | Elizabeth Blosfield | Brewer | "As the NRA has previously stated, it acted appropriately at all times," said William A. Brewer III, partner at Brewer, Attorneys & Counselors and counsel for the NRA, in a previously emailed statement regarding the Chubb consent order. "The NRA relied upon Lockton and its assurances that the Carry Guard program complied with all applicable state regulations." |

| Source | Date | Title | Author | Firm | Content |
|---|---|---|---|---|---|
| South Jersey Times | 8/25/2018 | State probes NRA-branded gun insurance, officials say | Susan K. Livio | Brewer | William A. Brewer III, counsel for the NRA, said the association "acted appropriately at all times." |
| | | | | | "Since 2000, the NRA relied upon Lockton and its assurances that the insurance programs in question complied with all applicable state regulations. To the extent there are questions about Carry Guard being sold as a lawful self-defense insurance program, the NRA relied upon Lockton to administer the program and oversee its availability to New Jersey consumers," Brewer told NJ Advance Media. |
| Washington Times | 8/28/2018 | ACLU defends NRA -- yes, you read that right | Cheryl Chumley | Brewer | The NRA, through its attorney, William Brewer III, at Brewer, Attorneys & Counselors, said this: "The ACLU's amicus brief is testament to what we have contended all along Governor Cuomo and the [Department of Financial Services] violated the First Amendment rights of the NRA. The ACLU is a leading voice on legal and constitutional issues, and we welcome their advocacy in this important case." |
| Washington Post | 9/13/2018 | Lawyer representing NRA is kicked out of Virginia federal case | Rachel Weiner | Brewer | "Obviously I'm disappointed," Brewer said after the court hearing. "No court has denied me admission, in 37 years." He said that he is exploring an appeal of the judge's decision but that in the meantime, his partners will handle the NRA lawsuit. |
| Washington Post | 9/13/2018 | Lawyer representing NRA is kicked out of Virginia federal case | Rachel Weiner | Brewer | The NRA said in a statement: "The NRA fully supports Brewer Attorneys and Counselors. Today's decision has no bearing on our relationship with Mr. Brewer and his firm - or the advocacy being undertaken to protect the legal and regulatory interests of our organization. This decision also has no bearing on the NRA's claims against Lockton or our ongoing efforts to hold the company responsible for its alleged breach of fiduciary duty." |
| San Francisco Chronicle | 10/18/2018 | S.F. asks judge to dismiss NRA lawsuit over terrorist label; SF asks judge to toss NRA lawsuit over terrorist designation | Dominic Fracassa | Brewer | "The NRA will pursue this case until the City of San Francisco officially withdraws its unconstitutional threat and makes amends for the harm suffered by the NRA, its members, and its supporters," NRA attorney William Brewer, said in an email. "The memo previously issued by the mayor underscores the merit of the NRA's claims - but does not adequately address the negative impacts of the city's unconstitutional resolution." |
| Northern Wyoming Daily News | 11/8/2018 | Andrew Cuomo s unconstitutional assault on the NRA | Jacob Sullum | Brewer | NRA critics who are inclined to share in that delight should consider the principle at stake here. "If the script was flipped," noted NRA lawyer William Brewer in an interview with Fox News, "and a conservative governor of Kansas was very pro-life, his administration could target Planned Parenthood s financial activity." Or insert the name of your favorite advocacy group. |
| WSJ | 11/30/2018 | NRA Awarded Contracts to Firms With Ties to Top Officials; The payments total millions of dollars over several years, some of which the gun-rights group revealed in recent filings | Mark Maremont | Brewer | William A. Brewer III, an outside lawyer for the NRA, said the group "strives to comply with all applicable regulations" and has "appropriate processes and safeguards in place" to manage potential conflicts of interest. |
| The Spokesman | 1/16/2019 | State shutting down NRA's 'murder insurance' policies 'Carry Guard' designed for self-defense; 811 sold in Washington, with no claims | Kip Hill | Brewer | "As today's announcement acknowledges, changes were made to the NRA's website last year to address concerns raised by the commissioner's office," William A. Brewer III, partner at Brewer, Attorneys & Counselors and counsel to the NRA, said in response to an inquiry made of the nonprofit Tuesday. "The NRA has acted appropriately at all times, and will continue to advocate for the legal right - and practical ability - of Americans to defend themselves." |
| NYT | 1/28/2019 | N.R.A. Seeks Distance From Russia as Investigations Heat Up | Danny Hakim | Brewer | The N.R.A. s chief executive, Wayne LaPierre, forbade staff members to join the delegation that went to Russia, according to the organization s outside counsel, William A. Brewer III — "Wayne was opposed to the trip," he said. The N.R.A. s president at the time, Allan Cors, abandoned a plan to join the delegation, and the group refused to pay all of the related travel expenses, though it did cover some of them. |
| | | | | | The N.R.A. s outside counsel, Mr. Brewer, said that after an internal review, the group "believes that no foreign money made its way into the organization for use in the 2016 presidential election." Any suggestion that the group took in Russian money, he said, "fails to appreciate the steps the N.R.A. takes to guard against such an unwanted event." |
| CNN | 2/18/2019 | Democratic lawmakers ask NRA for answers over 2015 Moscow trip and alleged Russian ties | Clare Foran, Sara Murray and Jessica Schneider | Brewer | In response to a request for comment on the letter from Lieu and Rice, William A. Brewer III, who serves as counsel to the NRA, told CNN that the organization "has not yet received the letter," but intends to "respond to all appropriate information requests." |
| | | | | | "Although the NRA has not yet received the letter, the Association, naturally, will respond to all appropriate information requests," said Brewer, partner at Brewer, Attorneys & Counselors and counsel to the NRA, in a statement. "The NRA is working diligently to supply information in response to several requests for information, and will continue to do so." |
| | | | | | The NRA has attempted to distance itself from the trip. In a statement to CNN earlier this month, Brewer said that LaPierre was "personally opposed" to the trip when he found out about the details of the visit. |
| | | | | | "When he became aware of the details of the trip, Wayne was personally opposed to it," Brewer told CNN, adding, "In order that the group was not viewed as representing the NRA, Wayne spoke with several people about the excursion. As a result, Mr. Cors agreed not to make the trip. In addition, NRA staff members who were in Israel (for a trip that preceded the visit to Russia) returned home." Cors was NRA president at the time the trip took place. |

| Publication | Date | Title | Author | Attorney | Content |
|---|---|---|---|---|---|
| The Guardian | 3/1/2019 | NRA in crisis: how the gun group became ensnared in the Russia inquiry; The Russia ties of NRA bigwigs are political and legal headaches that won't go away | Peter Stone | Brewer | NRA outside counsel William Brewer III said the NRA hasn't found any evidence that Russian funds were spent improperly in the elections.<br><br>"The NRA believes that no foreign money made its way into the organization for use in the 2016 presidential election," Brewer said in a statement. The NRA "has controls in place to vet contributions to the organization." |
| NYT | 3/11/2019 | Incendiary N.R.A. Videos Find New Critics: N.R.A. Leaders | Danny Hakim | Brewer | William A. Brewer III, the N.R.A.'s outside counsel, said Ms. James had given no indication when she was a candidate that "the N.R.A. had done anything improper," adding that she had instead promised "a taxpayer-funded fishing expedition."<br>A number of transactions could draw scrutiny. Since 2010, the N.R.A. has paid $18 million to a company that produces "Under Wild Skies," a hunting show on NRATV. Tyler Schropp, the N.R.A.'s advancement director, came to the organization in 2010 from Ackerman, and had a stake in the production company until at least 2017, but "no longer holds any interest," Mr. Brewer said.<br>Mr. Brewer described Mr. Schropp's stake as "a minuscule interest" that the N.R.A. found not to be objectionable. Payments related to "Under Wild Skies" emerged only recently in N.R.A. tax filings.<br>"The N.R.A. strives to comply with all applicable regulations," Mr. Brewer said, adding that the organization has a "conflict-of interest-policy" and that "vendor agreements are reviewed and approved" by the board's audit committee when appropriate. |
| Politico | 3/20/2019 | GOP: Few targets met House deadline on Trump corruption probe docs | Kyle Cheney | Brewer | William A. Brewer III, counsel to the NRA, said the gun-rights organization is "responding to the committee's information request in a cooperative manner." Brewer declined to comment on the contents of the documents it provided to the committee. The panel had asked for documents related to the organization's contacts with Russians and with Trump campaign officials. |
| Daily Beast | 3/28/2019 | NRA Fundraising Letter: We Could Shutter Very Soon | Betsy Swan | Brewer | "The attack on the NRA is unprecedented," he said. "This call to action is real. If left unchecked, the actions of Gov. Cuomo would damage the NRA's ability to access certain financial and insurance services—hurting its financial position and impacting its ability to advocate for members. The NRA is a vibrant organization that is growing and in sound financial condition—but it must be positioned to defend itself, like any advocacy group facing an attack on its constitutional freedoms." |
| WSJ | 4/15/2019 | NRA Files Suit Against Ad Agency in Rift with Key Partner | Mark Maremont | Brewer | "It's stunning that a trusted partner for all these years is just refusing to cooperate," said William A. Brewer III, an outside NRA lawyer. He said Ackerman McQueen is the only vendor resisting the NRA's push for such records.<br><br>Mr. Brewer defended his fees in an interview, saying "we're a premium law firm, we make no bones about that." He also said his firm is doing work for the NRA well beyond the New York litigation. Among its tasks, he said, is helping the NRA respond to numerous congressional demands for records related to its dealings with Russia.<br><br>As for Mr. Brewer's family relationships, his law firm in a statement said that has "no bearing whatsoever on the NRA's litigation strategy," calling that argument a red herring. |
| NYT | 4/15/2019 | N.R.A. Sues Contractor Behind NRATV | Danny Hakim | Carter, Travis | Travis Carter, a spokesman for Mr. Brewer's law firm, said "the familial relationship" had "no bearing whatsoever on the N.R.A.'s litigation strategy." He added, "Any suggestion to the contrary is contrived and a red herring." |
| NYT | 4/16/2019 | N.R.A. Sues Operator of 'Voice of the N.R.A.' | Danny Hakim | Carter, Travis | Travis Carter, a spokesman for Mr. Brewer's law firm, said "the familial relationship" had "no bearing whatsoever on the N.R.A.'s litigation strategy.'' He added, "Any suggestion to the contrary is contrived and a red herring." |
| NewYorker | 4/17/2019 | Secrecy, Self-Dealing, and Greed at the N.R.A. | Mike Spies | Brewer | In response to a description of my reporting, Bill Brewer, a lawyer who represents the N.R.A., said that the organization "has serious concerns about the accuracy of this reporting and The New Yorker's sources. Of course, we cannot comment on privileged communications or personnel matters." |
| NYT | 4/26/2019 | Insurgents Seek to Oust Wayne LaPierre in N.R.A. Power Struggle | Danny Hakim | Brewer | In a statement, a lawyer for the N.R.A., William A. Brewer III, said the organization had been reviewing many of the issues raised by Mr. North since last year.<br>"In our view," Mr. Brewer said, "the items involving Mr. LaPierre may reflect a misinformed view of his and the N.R.A.'s commitment to good governance." |
| NYT | 4/27/2019 | N.R.A. President to Step Down as New York Attorney General Investigates | Danny Hakim | Brewer | "The N.R.A. will fully cooperate with any inquiry into its finances," William A. Brewer III, the N.R.A.'s outside counsel, said in a statement on Saturday. "The N.R.A. is prepared for this, and has full confidence in its accounting practices and commitment to good governance."<br>Mr. Brewer has assailed Ms. James in the past for threatening to investigate the N.R.A. before she was elected, saying she was embarking on "a taxpayer-funded fishing expedition." |
| WSJ | 4/27/2019 | Extortion Allegation Riles Top NRA Ranks | Mark Maremont | Brewer | William A. Brewer III, an outside attorney for the NRA, said, "many of the issues raised by Col. North have been the subject of review and investigation by the NRA since early last year. In our view, the items involving Mr. LaPierre may reflect a misinformed view of his and the NRA's commitment to good governance." |
| NYT | 4/27/2019 | N.R.A. Rebels Move to Topple Longtime Chief | Danny Hakim | Brewer | In a statement, a lawyer for the N.R.A., William A. Brewer III, said the organization had been reviewing many of the issues raised by Mr. North since last year.<br><br>"In our view,'' Mr. Brewer said, "the items involving Mr. LaPierre may reflect a misinformed view of his and the N.R.A.'s commitment to good governance." |

| | | | | | |
|---|---|---|---|---|---|
| WSJ | 4/29/2019 | U.S. News: New York Opens Probe Into NRA | Mark Maremont | Brewer | The NRA's top outside attorney, William A. Brewer III, told board members in January that he expected Attorney General Letitia James, a Democrat, to "pursue a dissolution action against the NRA," according to a person familiar with his presentation. Mr. Brewer, in the presentation, cited Ms. James' comments during last year's election that the NRA was a "criminal enterprise." |
| | | | | | Mr. Brewer also told the board that a separate high-profile lawsuit that the NRA launched last year against New York Gov. Andrew Cuomo and other officials could help it "gain leverage" against the expected dissolution action by Ms. James, according to this person. |
| | | | | | Mr. Brewer in an interview earlier this month said the disclosure of his board presentation to a Journal reporter left him "breathless" because they were "privileged meetings." He also said the New York lawsuit "is one of the most important pieces of constitutional advocacy in this country" and to suggest it is a bargaining tool is "not only inappropriate, it disparages an important case." |
| | | | | | In a statement over the weekend, Mr. Brewer also said "the NRA will fully cooperate with any inquiry into its finances. The NRA is prepared for this, and has full confidence in its accounting practices and commitment to good governance." |
| WSJ | 4/29/2019 | New York Opens Probe Into NRA -- WSJ | Mark Maremont | Brewer | Mr. Brewer in an interview earlier this month said the disclosure of his board presentation to a Journal reporter left him "breathless" because they were "privileged meetings." He also said the New York lawsuit "is one of the most important pieces of constitutional advocacy in this country" and to suggest it is a bargaining tool is "not only inappropriate, it disparages an important case." |
| | | | | | In a statement over the weekend, Mr. Brewer also said "the NRA will fully cooperate with any inquiry into its finances. The NRA is prepared for this, and has full confidence in its accounting practices and commitment to good governance." |
| CNN | 4/30/2019 | The NRA and the battle against itself | Fredreka Schouten | Brewer | In a statement over the weekend, the NRA's outside attorney William Brewer III said the group would "fully cooperate" with the New York inquiry into its finances. He said the NRA "has full confidence into its accounting practices and commitment to good governance." |
| WSJ | 5/2/2019 | NRA Chief Wayne LaPierre Questioned on Travel Expenses; Lawyer for the gun-rights organization says vast majority of the money was spent on donor outreach, fundraising and other business | Mark Maremont | Brewer | An outside attorney for the NRA, William A. Brewer III, said the "vast majority of travel involved donor outreach, fundraising and stakeholder engagement. The board is aware of the allegations and has taken them under review." |
| | | | | | Mr. Brewer said certain fundraising and travel expenses were routed through Ackerman McQueen for "confidentiality and security purposes," but the practice has since been modified. Mr. LaPierre didn't return messages left at the NRA. |
| Mail Online | 5/3/2019 | NRA CEO Wayne LaPierre charged $240,000 in travel expenses to an ad agency as gun lobby's president is 'pushed out' for threatening to reveal 'financial improprieties' | Leah Mcdonald For Dailymail.comAssociated Press | Brewer | An outside attorney for the NRA, William A. Brewer III, told Fox News that the 'vast majority of travel involved donor outreach, fundraising and stakeholder engagement. |
| | | | | | 'The board is aware of the allegations and has taken them under review.' |
| | | | | | Brewer said certain fundraising and travel expenses were submitted through Ackerman McQueen for 'confidentiality and security purposes,' but the practice has since been changed. |
| Washington Post | 5/3/2019 | Senate Democrats ask NRA execs, PR firm for documents related to alleged self-dealing; Members of the Senate Finance Committee are asking Wayne LaPierre, Oliver North and Ackerman McQueen to turn over documents. | Katie Zezima | Brewer | William A. Brewer III, the NRA's outside counsel, said the organization will "cooperate with all appropriate information requests." |
| | | | | | Brewer said the NRA has confidence in its accounting practices and a "commitment to good governance." He said the organization's finances are audited, its tax filings are verified by an unnamed reputable firm and it "strives to comply with all applicable regulations." |
| | | | | | He said the NRA board did "did not form a so-called Crisis Management Committee" because such matters were under the purview of existing committees. |
| | | | | | "The issues raised by Col. North were, for the most part, vetted and approved after review and investigation by the NRA last year," Brewer said. |

| | | | | | |
|---|---|---|---|---|---|
| Rolling Stone | 5/13/2019 | Federal Judge Rejects NRA's Discrimination Claims in 'Murder Insurance' Case | | Brewer | The judge's dismissal of the NRA's claim was not "with prejudice," which means the NRA can continue its efforts to prove the claim of discrimination. "The NRA will amend and re-plead this claim, as the court explicitly allows," NRA outside counsel William A. Brewer III, said in a statement provided to Rolling Stone. "Our client is confident that discovery will confirm that Defendants knew exactly what they were doing: ignoring similar or identical conduct across the insurance marketplace, while singling out the NRA for political reasons." |
| | | | | | Brewer - whose firm has been criticized by NRA board members for draining the groups' finances with this expensive litigation - touted a long road ahead: "This decision has no bearing on the NRA's First Amendment claims," he said. "We will continue with our aggressive pursuit of the facts on behalf of all NRA members - and in the interest of protecting free speech for advocacy groups across the nation." |
| WSJ | 5/13/2019 | U.S. News: NRA Spending Letters Leak --- Documents reveal details of billing by gun-rights group's chief executive | Mark Maremont | Brewer | An NRA lawyer, William A. Brewer III, previously had said the vast majority of Mr LaPierre's travel expenses charged to the ad firm were for "donor outreach, fundraising and stakeholder engagee-nt" and were being reviewed by the board. |
| NYT | 5/14/2019 | At the N.R.A., a Cash Machine Sputtering | Danny Hakim | Brewer | Regarding Mr. LaPierre s spending, William A. Brewer III, a lawyer for the N.R.A., said in a statement that "there is no suggestion that any of Mr. LaPierre s expenses were improper in any way." As to why travel and wardrobe expenses were billed through a contractor, and not directly through the N.R.A. — an arrangement that may also interest investigators — Mr. Brewer said it was a practice "abandoned some time ago" that had been done "for confidentiality and security purposes." |
| AdWeek | 5/24/2019 | Read Ackerman McQueen s $100 Million Countersuit Against the NRA | Patrick Coffee | Brewer | "The lawsuit is without merit—a misguided attempt to deflect attention from Ackerman McQueen s numerous failures to comply with its obligations," said the NRA s legal counsel William A. Brewer III, partner at Brewer, Attorneys & Counselors, in a statement to AgencySpy. "Ackerman s claims against the NRA emerged after, and only after, the NRA sought to compel the agency to provide documents and billing records relating to its services." He added, "The NRA makes no apologies for holding Ackerman McQueen and all its vendors to a high standard—in the interest of its mission and the members it serves. The NRA remains undeterred in its efforts to follow best practices and hold vendors accountable: no exceptions." |
| Rolling Stone | 5/24/2019 | National Rifle Association Hit with $100 Million Counter-Suit | | Brewer | Brewer, whom the new lawsuit describes as LaPierre's "chosen attorney," did not respond directly to questions about whether his law firm is attempting to take over the NRA's lucrative PR portfolio. In a statement provided to Rolling Stone, Brewer described the litigation as "without merit" and as "a misguided attempt to deflect attention from Ackerman McQueen's numerous failures to comply with its obligations." |
| | | | | | Brewer added, speaking for the gun group: "The NRA makes no apologies for holding Ackerman McQueen and all its vendors to a high standard - in the interest of its mission and the members it serves. The NRA remains undeterred in its efforts to follow best practices and hold vendors accountable: no exceptions." |
| NYT | 5/24/2019 | Ad Firm Sues In Response To Lawsuit From N.R.A. | Danny Hakim and Zach Montague | Brewer | Mr. Brewer called the legal filing "a misguided attempt to deflect attention from Ackerman McQueen's numerous failures to comply with its obligations,'' adding that its claims emerged only after the N.R.A. ''sought to compel the agency to provide documents and billing records.'' |
| Daily Beast | 5/29/2019 | The Future of NRATV Is in Doubt After Ad Agency Severs Ties to Gun Group | Betsy Woodruff | Brewer | In a statement provided to The Daily Beast, Bill Brewer of Brewer Attorneys & Counselors, who represents the NRA, said it was "not surprising that Ackerman now attempts to escape the consequences of its own conduct." |
| | | | | | "Although today s announcement by Ackerman is welcome news, it does not resolve the NRA s legal actions against Ackerman," he added. "The Association will pursue its legal rights and hold Ackerman accountable for any damage it caused the Association. The agency was a longstanding vendor of the NRA. But like any other vendor, it will be held accountable – in the best interest of all NRA members." |
| AdAge | 5/29/2019 | The NRA s ad agency just ended its 38-year relationship with the gun group | | Brewer | "It is not surprising that Ackerman now attempts to escape the consequences of its own conduct," William A. Brewer III, a lawyer for the NRA, said in a statement. "When confronted with inquiries about its services and billing records, Ackerman not only failed to cooperate—it sponsored a failed coup attempt to unseat Wayne LaPierre. The NRA alleges that Ackerman not only attempted to derail an investigation into its conduct, but unleashed a smear campaign against any who dared to hold the agency accountable." |
| AdWeek | 5/29/2019 | Ackerman McQueen Moves to Terminate 38-Year Contract With the NRA | Patrick Coffee | Brewer | "Given the scrutiny it is facing in multiple lawsuits, it is not surprising that Ackerman now attempts to escape the consequences of its own conduct," read a quote from partner and counsel William A. Brewer III. "The NRA believes that when confronted with inquiries about its services and billing records, Ackerman not only failed to cooperate—it sponsored a failed coup attempt to unseat Wayne Lapierre. The NRA alleges that Ackerman not only attempted to derail an investigation into its conduct, but unleashed a smear campaign against any who dared to hold the agency accountable." |
| | | | | | Brewer went on to call Ackerman McQueen s announcement "welcome news" but said it "does not resolve the NRA s legal actions" against that organization. "The agency was a longstanding vendor of the NRA. But like any other vendor, it will be held accountable—in the best interest of all NRA members." |

| | | | | | |
|---|---|---|---|---|---|
| Conservative Daily News | 5/30/2019 | Ackerman McQueen Severs Ties To NRA After Bitter Feud | Whitney Tipton | Brewer | Given the scrutiny it is facing in multiple lawsuits, it is not surprising that Ackerman now attempts to escape the consequences of its own conduct,' William A. Brewer III, counsel to the NRA, told The DCNF. |
| | | | | | The NRA believes that when confronted with inquiries about its services and billing records, Ackerman not only failed to cooperate - it sponsored a failed coup attempt to unseat Wayne Lapierre,' Brewer continued. 'The NRA alleges that Ackerman not only attempted to derail an investigation into its conduct, but unleashed a smear campaign against any who dared to hold the agency accountable. |
| The Daily Oklahoman | 6/3/2019 | NRA to end advertising contract, continue litigation | Steve Lackmeyer | Brewer | William Brewer III, attorney for the NRA and also brother-in-law of Revan McQueen, said litigation will continue."Given the scrutiny it is facing in multiple lawsuits, it is not surprising that Ackerman now attempts to escape the consequences of its own conduct," said Brewer, partner at Dallas-based Brewer, Attorneys & Counselors. "The NRA believes that when confronted with inquiries about its services and billing records, Ackerman not only failed to cooperate - it sponsored a failed coup attempt to unseat Wayne LaPierre." |
| | | | | | Brewer said the NRA alleges Ackerman not only attempted to derail an investigation into its conduct, but unleashed a smear campaign against any who dared to hold the agency accountable."Although today's announcement by Ackerman is welcome news, it does not resolve the NRA's legal actions against Ackerman," Brewer said. "The association will pursue its legal rights and hold |
| The Daily Oklahoman | 6/3/2019 | NRATV future in doubt with collapse of Ackerman McQueen relationship with NRA | Steve Lackmeyer | Brewer | Ackerman accountable for any damage it caused the association. The agency was a longstanding vendor of the NRA. But like any other vendor, it will be held accountable - in the best interest of all NRA members." |
| | | | | | "Lt. Col. North and Ackerman McQueen assured the NRA that Lt. Col. North's profile and brand would be actively leveraged to elicit sponsorships for the North documentary series," NRA attorneys wrote in their court case against the ad agency. "This was of vital interest because during recent years, the NRA had spent substantial sums on NRATV based on Ackerman McQueen's advice and representations regarding achievable benefits of an owned-media platform." |
| | | | | | "In addition," the NRA attorneys wrote, "certain NRA stakeholders were also concerned that NRATV's messaging - on topics far afield of the Second Amendment - deviated from the NRA's core mission and values." |
| | | | | | The live programming portion of NRATV will continue for the immediate time being, but the concept remains under review as we determine whether it provides value to the NRA and its membership," the NRA said in a statement released by Brewer's firm. "Our aim is to focus the NRA's messaging on our core mission of defending the Second Amendment and America's constitutional freedoms." |
| Washington Post | 6/10/2019 | NRA money flowed to board members amid allegedly lavish spending by officials, vendors | Beth Reinhard, Katie Zezima, Tom Hamburger, and Carol D. Leonig | Brewer | William Brewer, an outside attorney for the NRA, said business arrangements with directors are approved "where appropriate" by the board's audit committee. "Naturally, there are occasions where the NRA engages vendors who have a connection to NRA executives, employees or board members - but only when such an association works in the best interest of the organization and its members," he said. |
| | | | | | The NRA provided The Post with a copy of its conflict-of-interest policy, which states that approval by the audit committee is not required for minor transactions, reimbursement of expenses or "transactions and activities undertaken in the ordinary course of business by NRA staff." |
| | | | | | Brewer, the NRA's outside attorney, said the group complies with all regulations and is cooperating with the inquiry. "The NRA is prepared for this, and has full confidence in its accounting practices and commitment to good governance," he said. |
| | | | | | The organization has not hired an outside firm to conduct an investigation into the allegations of misspending, a measure that legal experts note is often taken by nonprofit boards in such situations. Brewer said NRA practices are already under "constant review" by top officials and the board. |
| Daily Beast | 6/11/2019 | Ad Agency Fires Back at NRA with $50 Million Counterclaim; The Firm Blames the NRA for a Coup Against Oliver North | Betsy Woodruff | Brewer | "Ackerman s claims against the NRA emerged after, and only after, the NRA sought to compel the agency to provide documents and billing records relating to its services," the attorney, William A. Brewer III, said. He added, "The NRA makes no apologies for holding Ackerman McQueen and all its vendors to a high standard—in the interest of the NRA and the members it serves. The NRA remains undeterred in its efforts to follow best practices and hold vendors accountable: no exceptions." |
| NYT | 6/20/2019 | N.R.A. Suspends Second-in-Command, Implicating Him in Coup Attempt | Danny Hakim | Brewer | "The N.R.A. believes that Col. North seeks payments from the Association to which he is not entitled," the N.R.A. s outside counsel, William A. Brewer III, said in a statement. (Mr. North is a retired Marine lieutenant colonel who first came to prominence during the Iran-Contra hearings.) "The N.R.A. alleges that Col. North breached his fiduciary obligations — in a coordinated attack against the N.R.A. and Wayne LaPierre that involved others motivated by their own economic self-interest," Mr. Brewer added. |

| | | | | |
|---|---|---|---|---|
| NYT | 6/21/2019 | N.R.A., Citing Attempt To Oust Chief, Suspends Its 2nd-Highest Official | Danny Hakim | Brewer | 'The N.R.A. believes that Col. North seeks payments from the Association to which he is not entitled,'' the N.R.A.'s outside counsel, William A. Brewer III, said in a statement. (Mr. North is a retired Marine lieutenant colonel who first came to prominence during the Iran-Contra hearings.) ''The N.R.A. alleges that Col. North breached his fiduciary obligations -- in a coordinated attack against the N.R.A. and Wayne LaPierre that involved others motivated by their own economic self-interest,'' Mr. Brewer added. |
| NYT | 7/12/2019 | District of Columbia Opens New Investigative Front Into N.R.A. | Danny Hakim | Brewer | The N.R.A. s outside counsel, William A. Brewer III, said in a statement that the group would "cooperate with any appropriate inquiry into its finances," adding that its "financials are audited and its tax filings are verified by one of the most reputable firms in the world."

Mr. Brewer, in his statement, said that "the association has an appropriate conflict-of-interest policy, which provides that all potential conflicts are reviewed and scrutinized by the Audit Committee. The N.R.A. is committed to utilizing best practices in the areas of accounting and governance." |
| AP | 7/12/2019 | Oliver North says NRA is smearing him to avoid scrutiny | Lisa Marie Pane | Brewer | "The NRA views this as a misguided attempt to deflect from reality; Col. North played a central role in an extortion scheme that caused the issues for which he now seeks indemnification," Brewer said in a statement. "The NRA will not look the other way when it appears that crimes against the (NRA) have been committed by people motivated by their own self-interests." |
| Washington Examiner | 7/12/2019 | DC attorney general subpoenas NRA as part of investigation | Ellie Bufkin | Brewer | William A. Brewer III, an attorney for the NRA, said in a statement to the Washington Examiner, "The NRA will cooperate with any appropriate inquiry into its finances. The NRA has full confidence in its accounting practices and commitment to good governance. The Association s financials are audited and its tax filings are verified by one of the most reputable firms in the world. Internally, the Association has an appropriate conflict of interest policy, which provides that all potential conflicts are reviewed and scrutinized by the Audit Committee. The NRA is committed to utilizing best practices in the areas of accounting and governance." |
| NYT | 7/13/2019 | N.R.A. Faces New Scrutiny Over Actions Of Its Charity | Danny Hakim | Brewer | The N.R.A.'s outside counsel, William A. Brewer III, said in a statement that the group would ''cooperate with any appropriate inquiry into its finances,'' adding that its ''financials are audited and its tax filings are verified by one of the most reputable firms in the world.''

Mr. Brewer, in his statement, said that ''the association has an appropriate conflict-of-interest policy, which provides that all potential conflicts are reviewed and scrutinized by the Audit Committee. The N.R.A. is committed to utilizing best practices in the areas of accounting and governance.'' |
| Washington Post | 7/14/2019 | D.C. attorney general issues subpoenas to NRA | Katie Zezima;Carol D. Leonnig;Keith L. Alexander | Brewer | William A. Brewer III, the NRA's outside counsel, said in a statement that the organization will cooperate with "any appropriate inquiry" into its finances.

"The NRA has full confidence in its accounting practices and commitment to good governance," Brewer said, noting the organization's financial statements are audited and that it is "committed to utilizing best practices" in accounting and governance. |
| NYT | 8/6/2019 | New York Expands N.R.A. Inquiry to Group s Board Members | Danny Hakim | Brewer | William A. Brewer III, the N.R.A. s outside counsel, said in a statement: "As we understand it, counsel to the N.R.A. board accepted service of a subpoena to the board that relates to the production of documents and information."

He added: "Such a request was expected and, as we have said many times, the N.R.A. will cooperate with any reasonable, good faith request for information given the organization s commitment to good governance." |
| Washington Times | 8/8/2019 | NRA chief wanted group to buy him Tex. Mansion | Carol D. Leonnig;Beth Reinhard | Brewer | In a statement Tuesday night, William A. Brewer III, an attorney for the NRA, said the real estate purchase was pushed by Ackerman McQueen.

"The deal was vetoed by the NRA after its full terms - including Ackerman's intent to spend NRA money - became known to Wayne LaPierre," he said. |
| Washington Times | 8/8/2019 | NRA donor files class-action lawsuit against gun-rights group | David Sherfinski | Brewer | William A. Brewer III told The Washington Times the lawsuit is "totally without merit."

"There was no legitimate 'investigation' by Lt. Col. North and the so-called 'crisis management committee' never existed we believe it was part of a contrived narrative to advance the interests of Lt. Col. North, his employer (Ackerman McQueen), and to deflect attention from their conduct," Mr. Brewer said in a statement to The Times. Ackerman McQueen is the ad agency the NRA parted ways with. |
| Daily Beast | 8/9/2019 | Trump to NRA Bigwigs: Get Better Lawyers; This spring, the president told the gun group s top lobbyist and exec their legal team was "lousy." Now the NRA is in an unusually weak position—and trying to keep Trump in line. | Betsy Woodruff | Brewer | "We re proud of our advocacy on behalf of the NRA," said William A. Brewer III, who heads the firm, when reached for comment on this story. "We stand shoulder-to-shoulder with the NRA leadership team and the senior members of the board. Of course, we care little about the opinions of those adversaries who seek to undermine the Association." |

| Source | Date | Title | Author | Firm | Quote |
|---|---|---|---|---|---|
| NYT | 9/9/2019 | N.R.A. Files Suit Against San Francisco | Danny Hakim | Brewer | The suit alleges that the city is violating the N.R.A. s First Amendment speech rights and has effectively moved to "blacklist anyone linked to the N.R.A." In a statement, the N.R.A. s outside counsel, William A. Brewer III, called the city s action "an assault on all advocacy organizations across the country." The lawsuit was filed in United States District Court in San Francisco. |
| WSJ | 9/11/2019 | Under Wild Skies Sues National Rifle Association; Lawsuit alleges vendor treated NRA CEO Wayne LaPierre to free hunting safaris | Mark Maremont | Brewer | As for allegations that NRA representatives participated in free hunting safaris, Mr. Brewer said: "These were trips to extol the benefits of hunting and promote the brand of the NRA with one of its core audience groups. The NRA's past support of this show was public and widely known." |
| WSJ | 9/23/2019 | NRA Board Retroactively Approved Numerous Transactions Benefiting Insiders | Mark Maremont | Brewer | "Naturally, there are occasions where the NRA engages vendors who have a connection to NRA executives, employees or board members -- but are approved only when such an association works in the best interests of the organization and its members," an NRA attorney, William A. Brewer III, said in a statement. |
| NYT | 9/26/2019 | Who Paid for the N.R.A. s  Special Projects  Trip to Russia? | Danny Hakim | Brewer | "Wayne was opposed to the trip," the gun group s outside counsel, William A. Brewer III, said, referring to Wayne LaPierre, the N.R.A. s chief executive. To bolster its argument, the N.R.A. pointed out that it was repaid last year for expenses associated with the trip.

Asked this week about the 2016 payments, Mr. Brewer, the outside counsel, said, "Wayne had no awareness of the transactions in question," adding that "it is a matter of public record that he opposed the trip." He declined to discuss the legal advice he had provided. |
| NYT | 9/27/2019 | Clashing Senate Reports and New Questions on the N.R.A. | Danny Hakim | Brewer | William A. Brewer III, an outside counsel for the N.R.A., said the Democrats  report "promotes a politically motivated and contrived narrative," adding that "an avalanche of proof confirms that the N.R.A., as an organization, was never involved in the activities about which the Democrats write." |
| The Hill | 9/27/2019 | Senate Democrats say top NRA officials knew about Kremlin ties | Rachel Frazin | Brewer | William A. Brewer, an attorney representing the NRA, similarly decried the report as politically motivated in a statement.

"An avalanche of proof confirms that the NRA, as an organization, was never involved in the activities about which the Democrats write," Brewer said. "This report goes to great lengths to try to involve the NRA in activities of private individuals and create the false impression that the NRA did not act appropriately. Nothing could be further from the truth." |
| AmmoLand | 9/30/2019 | NRA Statement on Politically Motivated Senate Finance Report | | Brewer | The National Rifle Association released the following statements on Friday regarding the politically motivated report issued by Democrats in the Senate Finance Committee:William A. Brewer III, counsel to the NRA: 'This report promotes a politically motivated and contrived narrative. An avalanche of proof confirms that the NRA, as an organization, was never involved in the activities about which the Democrats write.This report goes to great lengths to try to involve the NRA in activities of private individuals and create the false impression that the NRA did not act appropriately. Nothing could befurther from the truth. As noted by the committee Republicans in their rebuttal, this report is a transparent effort to justify yet another 'fishing expedition' into the NRA.' |
| NYT | 10/1/2019 | In a Face-Off With the N.R.A., San Francisco Blinks | Danny Hakim | Brewer | William A. Brewer III, a lawyer for the N.R.A., said that city officials "wisely have attempted to pull back from what we alleged, the association alleged, was a clear violation of the association s First Amendment rights." But the group is not ready to drop its litigation. "What we hope is that the Board of Supervisors will further mitigate the damage they ve done," he said, adding that the organization would like to see the board rescind or repeal the resolution, "or walk away from it in some binding way." |
| NRA-ILA | 10/1/2019 | San Francisco Backs Down: Facing a Lawsuit by the NRA, Mayor Breed Declares – We Won t Blacklist NRA Contractors | | Brewer | "The memo serves as a clear concession and a well-deserved win for the First and Second Amendments of the United States Constitution," says William A. Brewer III, partner at Brewer, Attorneys & Counselors and counsel for the NRA. "It is unfortunate that in today s polarized times, some elected officials would rather silence opposing arguments than engage in good-faith debate. The NRA - America s oldest civil rights organization – won t stand for that." |
| Politico | 10/2/2019 | Schumer, Wyden request IRS audit of the NRA's tax exemption | Aaron Lorenzo | Brewer | An attorney for the NRA said today that the report "is being used to justify yet another politically motivated investigation into the NRA."

"The exercise should raise concerns about an abuse of government power and waste of taxpayer funds," said William A. Brewer III, in a statement. "Fortunately, for the NRA and all advocacy groups, political speech is protected by the First Amendment of our Constitution." |

| | | | | | |
|---|---|---|---|---|---|
| Washington Post | 10/2/2019 | NRA chief 'bristled' at the group's early endorsement of Trump in 2016, the gun lobby's former ad firm claims; Ackerman McQueen said in a new court filing that NRA chief Wayne LaPierre referred to the presidency as the "Trump slump." An attorney for the NRA said the filing has "false and misleading information." | Beth Reinhard | Brewer | In a statement, William Brewer III, an outside attorney for the NRA, said Ackerman McQueen's court filing was "fraught with false and misleading information."<br><br>"In the ultimate act of desperation, Ackerman attempts to discredit Mr. LaPierre's support of President Trump," Brewer said. "Mr. LaPierre's support of the president is well-known - as an advocate, fundraiser and partner in the fight to protect our constitutional freedoms."<br><br>In his statement Wednesday, Brewer said that Ackerman "refuses to account for the claims and allegations against the agency - and instead opts to smear the NRA and its most senior officials."<br><br>"The agency clings to a desperate strategy, doubling down on its reputational attack against the senior leaders of its former client who determined to hold the agency accountable for its intentional wrongdoing," he added. "The NRA is eager to bring all the facts to light." |
| NYT | 10/2/2019 | City Softens In Dispute, But N.R.A. Stands Firm | Danny Hakim | Brewer | William A. Brewer III, a lawyer for the N.R.A., said that city officials "wisely have attempted to pull back from what we alleged, the association alleged, was a clear violation of the association's First Amendment rights."<br><br>But the group is not ready to drop its litigation.<br><br>''What we hope is that the Board of Supervisors will further mitigate the damage they've done,'' he said, adding that the organization would like to see the board rescind or repeal the resolution, ''or walk away from it in some binding way.'' |
| Washington Times | 10/17/2019 | NRA criminal investigation sought by House Democrats | Ryan Lovelace | Brewer | William A. Brewer, counsel to the NRA, said in a statement responding to the Democrats' letters that the NRA "strives to comply with all applicable regulations."<br><br>"The Association's financials are audited and its tax filings are verified by one of the most reputable firms in the world," Mr. Brewer said. "Internally, the Association has a robust conflict of interest policy and, where appropriate, related-party transactions are reviewed and approved by the Audit Committee. Naturally, there are occasions where the NRA engages vendors who have a connection to NRA executives, employees or board members but only when an engagement works in the best interest of the organization and its members." |
| NewsWeek | 10/29/2019 | National Rifle Association and Former PR Firm Have Tumultuous Weekend as Financial Scandal Widens | Asher Stockler | Brewer; Michael Collins | "The NRA believes Ackerman McQueen breached its fiduciary duties, engaged in fraudulent billing, and failed to maintain adequate books and records—all in an effort to enrich itself at the expense of the NRA and its members," Michael J. Collins, partner at the Brewer firm, said in a statement. "The allegations reveal a pattern of corruption that included NRATV, a failed media enterprise the agency proposed, managed and sustained through misleading accounts of viewership and promised commercial viability." |
| San Francisco Chronicle | 11/8/2019 | NRA drops suit vs. S.F.; verbal parting shots fly; NRA drops lawsuit against San Francisco, which labeled it a terrorist organization | Bob Egelko | Brewer | The organization "celebrates the important victory it obtained on behalf of its members," said attorney William Brewer III. "After the association challenged the unconstitutional resolution, the city beat a hasty retreat and backed down from its wildly illegal blacklisting scheme," said William Brewer III, a lawyer for the NRA. |
| WSJ | 11/12/2019 | Celebrity Board Members Engaged in Big-Ticket Transactions With NRA | Mark Maremont | Brewer | "The NRA is committed to good governance," said William A. Brewer III, an NRA outside attorney, who said the organization follows its conflict-of-interest policy when it comes to transactions with directors. Any such arrangements, he said, "are meant to maximize the effective use of association resources and to further the organization s mission." |
| NewsWeek | 12/18/2019 | NRATV Creator Threatens 'Legal Action' Against Former Host Over 'Fabrications' | Asher Stockler | Brewer | "Mr. Stinchfield is a former Ackerman McQueen employee and was one of the most recognized personalities of NRATV," William A. Brewer III, the NRA's outside counsel, said in a written statement to Newsweek. "His affidavit is troubling for Ackerman, as it validates many of the NRA's claims and allegations against the agency. The NRA believes this filing underscores what, in the end, was driving Ackerman's management of NRATV – its own financial self-interest and desire to build a live TV platform on the backs of NRA members." |
| Dallas Morning News | 12/24/2019 | NRA TV Ad agency sues over remarks | Robert Wilonsky | Brewer | But in a statement provided to The Dallas Morning News on Monday, William Brewer III, namesake at Brewer, Attorneys & Counselors, said Stinchfield s affidavit "validates many of the NRA s claims and allegations against the agency. The NRA believes this filing underscores what, in the end, was driving Ackerman s management of NRA TV — its own financial self-interest and desire to build a live TV platform on the backs of NRA members." |
| Washington Times | 1/6/2020 | National Rifle Association, Wayne LaPierre at crossroads for 2020 election | David Sherfinski | Brewer | William A. Brewer III, an attorney for the NRA, said the group will supply the necessary information and that the financial records of the group and its affiliates have already been audited and reported in tax filings.<br><br>"It is easy to understand why the NRA believes that the NYAG's zeal with respect to this inquiry reflects the investigation's partisan purpose not an actual concern that the NRA is not effectively using its assets to pursue its members' interests," Mr. Brewer said. "Regrettably, the NYAG seems to credit hollow rants by a handful of actors who are no longer associated with the NRA." |

| Source | Date | Title | Author | | Quote |
|---|---|---|---|---|---|
| Bestwire | 2/5/2020 | New York DFS Files Charges Against NRA, Seeks Monetary Penalties | Timothy Darragh | Brewer | "The NRA acted appropriately at all times", Brewer said. "The NRA did not underwrite, sell, or administer any insurance programs, period. Instead, like countless other affinity groups, the NRA relied on insurance-industry experts to oversee and market products tailored for its members. The New York Bar Association and Habitat for Humanity have similar programs. None of those other groups have been targeted by DFS '" because today's announcement is about politics, not protecting consumers. |
| Law 360 | 2/5/2020 | NY Regulator Accuses NRA Of Profiting From Illegal Insurance | Jeff Sistrunk | Brewer | "Undeterred, the NRA will fight for its mission and millions of loyal members," he said<br>An attorney for the NRA, William A. Brewer III, told Law360 in an emailed statement that the organization "acted appropriately at all times."<br><br>"The NRA did not underwrite, sell or administer any insurance programs, period," Brewer said. "Instead, like countless other affinity groups, the NRA relied on insurance-industry experts to oversee and market products tailored for its members. The New York Bar Association and Habitat for Humanity have similar programs. None of those other groups have been targeted by DFS — because today's announcement is about politics, not protecting consumers."<br><br>Brewer added that the NRA "believes it has been singled out to weaken gun-rights advocacy in New York. Undeterred, the NRA will fight for its mission and millions of loyal members." |
| The Hill | 2/6/2020 | New York charges NRA with offering insurance without license, deceiving members | Zack Budryk | Brewer | William A. Brewer, an attorney for the NRA, said the group has not sold, administered or underwritten insurance, but rather, that it, "like countless other affinity groups ... relied on insurance-industry experts to oversee and market products tailored for its members." |
| The Epoch Times | 2/7/2020 | New York Charges NRA With Violating State Insurance Laws | Janita Kan | Brewer | "Today s announcement is about politics, not protecting consumers," Brewer said in a statement, according to the news service. "The NRA acted appropriately at all times."<br>"The NRA did not underwrite, sell, or administer any insurance programs, period. Instead, like countless other affinity groups, the NRA relied on insuranceindustry experts to oversee and market products tailored for its members," William A. Brewer III, counsel to the NRA, told The Epoch Times in an emailed statement.<br><br>"The New York Bar Association and Habitat for Humanity have similar programs. None of those other groups have been targeted by DFS-because today's announcement is about politics, not protecting consumers.<br><br>"The NRA believes it has been singled out to weaken gun-rights advocacy in New York. Undeterred, the NRA will fight for its mission and millions of loyal members." |
| Law 360 | 2/24/2020 | NRA Can't Preview Ad Agency's Response To NY Subpoena | Mike LaSusa | Brewer | William A. Brewer III of Brewer Attorneys & Counselors, who represents the NRA, told Law360 on Monday that the group was "pleased to see the court agree with the NRA on a critical issue: there should be protection via in camera review of certain privileged materials."<br><br>"That said, we believe the procedural protections afforded to the NRA should go further — and we are exploring our options in response to a perplexing opinion," Brewer said. |
| Bloomberg | 2/28/2020 | NRA Wants  Murder Insurance  Fight With New York in Open | Erik Larson | Brewer | "The NRA has been treated more harshly and differently by DFS than other regulated entities -- singled out to weaken gun-rights advocacy in New York," William A. Brewer, the NRA s lawyer, said in a statement. "The NRA plans to defend itself and expose the motives of those involved in the attacks against the Association and its members." |
| Bestwire | 3/2/2020 | NRA Seeks to Stop New York From Insurance Enforcement Action | Timothy Darragh | Brewer | "The actions of DFS come in the face of the NRA pursuing an amended lawsuit in federal court to lay bare the details of a chief allegation: The NRA has been treated more harshly and differently by DFS than other regulated entities "" singled out to weaken gun-rights advocacy in New York," William A. Brewer III, counsel to the NRA, said in a statement. "The NRA plans to defend itself and expose the motives of those involved in the attacks against the association and its members." |
| Insurance Journal - Wells Media | 3/2/2020 | NRA Seeks to Block New York s  Political Enforcement Over Liability Insurance Programs | Elizabeth Blosfield | Brewer | "The evidence supports the NRA s belief that this is part of a coordinated effort in opposition to the NRA s political point of view," William A. Brewer III, outside counsel to the NRA, said in an emailed statement to Insurance Journal.<br><br>"The NRA acted appropriately at all times," Brewer said. "The NRA did not underwrite, sell, or administer any insurance programs, period. Instead, like countless other affinity groups, the NRA relied on insurance-industry experts to oversee and market products tailored for its members."<br><br>Brewer said he believes the NRA has been treated more harshly by DFS than other regulated entities in an effort to weaken gun-rights advocacy in New York.<br><br>"DFS  actions are about politics, not protecting consumers," he said. |

| PBS | 3/25/2020 | With NRA Under Investigation, Former Fundraiser Says Gun Group is Republican "Through and Through" | Karen Pinchin | Brewer | In response, NRA lawyer William A. Brewer III said the group would fully cooperate with any inquiry into its finances. "The NRA is prepared for this, and has full confidence in its accounting practices and commitment to good governance," he said in a statement. |

# APPENDIX B

| YEAR | CASE | RULING | DESCRIPTION |
|------|------|--------|-------------|
| 2008 | *Hill v. Hunt*, No. 3:07-CV-02020-O, 2008 U.S. Dist. LEXIS 68925 (N.D. Tex. Sep. 4, 2008) (O'Connor, J.). | The Court disqualified Brewer and ordered the plaintiff to retain new counsel within 45 days of the order.[1] | In a matter in this District and Division in 2008, defendant Tom Hunt moved to disqualify Brewer's prior law firm for its representation of the plaintiff, Albert G. Hill, III, while concurrently representing the defendant in other matters.[2] The Court found that Brewer was in violation of Model Rule 1.7 by representing the plaintiff who was suing Brewer's other client, the defendant.[3] The Court also found that Hunt likely shared information with Brewer in other matters that would be used against Hunt in *Hill*.[4]<br><br>Most importantly, the Court ruled that the public would be suspicious of the integrity of the judicial system if Brewer were allowed to continue his representation, especially considering the case was high-profile and the public was aware of the disqualification issue (as opposed to a disqualification concern of which the public may never be aware).[5] |
| 2012 | *RSR Corp. v. Siegmund*, No. 08-13797, 2012 Tex. Dist. LEXIS 7, at *1-8 (44th Judicial District, Dallas Nov. 28, 2012). | The trial court disqualified Brewer's firm from representing the plaintiff in the case.[6] | In a state court lawsuit in Dallas, Brewer hired an opposing party's (Inppamet) former finance manager as a consultant to aid his client (RSR) in litigation.[7] The consultant gave Brewer "substantial information" about his former employer, including documents he took after he left the company on a pen drive.[8] When Inppamet discovered the covert consultancy, it moved for the return of the information its |

---

[1] *Hill v. Hunt*, No. 3:07-CV-02020-O, 2008 U.S. Dist. LEXIS 68925, at *56 (N.D. Tex. Sep. 4, 2008) (O'Connor, J.).

[2] *Id.* at *44.

[3] *Id.* at *51.

[4] *Id.* at *47-50.

[5] *Id.* at *52.

[6] *RSR Corp. v. Siegmund*, No. 08-13797, 2012 Tex. Dist. LEXIS 7, at *42 (44th Judicial District, Dallas Nov. 28, 2012). Brewer appealed the order, arguing that a different ("*Meador*") test applied because the consultant was a fact witness as opposed to a paralegal ("*American Hone Products*" test). *In re RSR Corp.*, 475 S.W.3d 775, 778 (Tex. 2015). Inppamet had abandoned its arguments under the *Meador* test before the trial ruled on the disqualification and before appeal. *See In re RSR Corp.*, 568 S.W.3d 663, 667 (Tex. 2019). The Texas Supreme Court ruled that the trial court did not clearly abuse its discretion in finding that Inppamet's motion for reconsideration of its disqualification motion under the *Meador* factors was untimely. *Id.* In short, Brewer narrowly escaped an affirmed disqualification simply because Inppamet made a strategic miscalculation. But the fact remains that the Dallas trial court disqualified Brewer.

[7] *Id.* at *1-8.

[8] *Id.* at *10-11.

| 2016 | *Brewer v. Lennox Hearth Prods., LLC*, 546 S.W.3d 866, 871 (Tex. App.—Amarillo 2018, pet. granted). | The Lubbock court disqualified Brewer and his firm.[13] The Court also imposed sanctions <u>solely</u> against Brewer: more than $176,000 and ten hours of continuing legal education on ethics.[14] The Seventh District Court of Appeals in Amarillo affirmed the | former employee provided to Brewer.[9]  But Brewer and the other actors "vehemently denied that they had any Inppamet privileged documents in their possession, including specifically on the pen drive."[10] The trial court found that RSR and its attorneys (*i.e.*, Brewer) *did* have the pen drive and that the pen drive *did* contain "scores of Inppamet privileged communications, including communications with its litigation counsel in this case."[11]  Brewer's firm even admitted that the consultant disclosed documents the Special Master ultimately held to be privileged.[12] |
|---|---|---|---|
|  |  |  | In Lubbock, Texas, Brewer represented the primary defendant in a products liability and wrongful death lawsuit.[16]  As part of his routine litigation strategy, Brewer hired a public relations firm to run a survey of a sampling of Lubbock residents concerning the dangers of the product at issue in the lawsuit.[17]  Brewer revised and approved the survey questions.[18]  The survey ran just six weeks before trial, and required 20,000 residents be called to reach the requested number of 300 actual participants.[19] In support of its order, the trial court noted that "Mr. Brewer testified he is the person who manages, directs and oversees all Bickel & Brewer operations including but not limited to all lawyers, non-lawyer employees and consultants."  It found that: |

---

[9] *Id.* at *19.

[10] *Id.* at *20.

[11] *Id.*

[12] *Id.* at *39.

[13] *Brewer v. Lennox Hearth Prods., LLC*, 546 S.W.3d 866, 872 (Tex. App.—Amarillo 2018, pet. granted).

[14] *Id.* at 873.

[16] *Id.* at 871.

[17] *Id.*

[18] *Id.*

[19] *Id.* at 872.

| | | disqualification and sanctions. [15]   Brewer has appealed the sanctions order to the Texas Supreme Court. | • Brewer's conduct was "an abusive litigation practice that harms the integrity of the justice system and the jury trial process."<br><br>• "The conduct of Mr. Brewer includes the actions of those under his authority, direction as well as those acting as his agents."<br><br>• Brewer's conduct "was grossly negligent and his attempt to avoid responsibility by deferring such responsibility to a third party vendor hired by his firm is conduct unbecoming an officer of the court."<br><br>• Brewer's conduct "was intentional and in bad faith and abusive of the legal system and the judicial process specifically."<br><br>The trial court also found that Brewer's conduct "was not merely incidental or negligent"; that "his contention that he bore clean hands … was insulting to the court"; and that Brewer's conduct was "abusive," "highly prejudicial," and "done without regard to its truthfulness or accuracy," "committed in bad faith and with the intent to obtain an unfair advantage."[20] |
| 2018 | *National Rifle Association of America v. Lockton Affinity Series of Lockton Affinity, LLC, et al,* Case No. 1:18-cv-639, in the United States District Court for the | Even though the Court acknowledged that "the NRA will be inconvenienced and, if necessary, there might have to be some adjustment to the discovery process | One of the many lawsuits Brewer has initiated for the NRA since his first involvement in 2018 is the Lockton Lawsuit in the Eastern District of Virginia.  He was granted admission *pro hac vice* after representing to the Court that he had not been reprimanded in any court and that there had not been any action in any court pertaining to his conduct or fitness as a member of the bar. |

---

[15] *Id.* at 886.

[20] *Brewer*, 546 S.W.3d at 883; **Ex. C** (Sanctions Opinion Letter issued January 22, 2016 by Judge Ruben G. Reyes).

| | | |
|---|---|---|
| | Eastern District of Virginia. | ongoing," other interests outweighed that inconvenience and supported the court's ruling that "Mr. Brewer's *pro hac vice* admission should be revoked and that he should not be admitted to proceed further in this case."[21] | Once the court learned of the Lubbock sanctions mentioned above, it held a hearing, explaining:<br><br>[it] ordered this hearing in response to information received about Mr. Brewer's findings in Texas against him, a finding by a trial judge and then a Court of Appeals that he had acted unethically and in bad faith in a prior litigation.<br><br>And as we all know, the *pro hac vice* statement requires an applicant to state that 'I have not been reprimanded in any court, nor has there been any action in any court pertaining to my conduct or fitness as a member of the Bar.'[22]<br><br>Brewer claimed that he thought the language "have not been reprimanded in any court" did not include the Lubbock sanctions and disqualification because he had appealed the order.[23]  The court did not rejected Brewer's argument, however, and instead stated:<br><br>Had I known about these opinions [of the Lubbock court and the Amarillo appellate court], notwithstanding that there is further appeals ongoing, I wouldn't have signed the pro hac vice form and would not have admitted Mr. Brewer to the Eastern District of Virginia. ***They are very serious allegations. They are findings of bad faith that go to the core of a fair and impartial rendering of a jury verdict****.[24]* |

---

[21] **Ex. D** (Sep. 17, 2018 Hr'g Tr. at 17:15-20).
[22] *Id.* at 2:21-3:6.
[23] *Id.* at 4:17-25.
[24] *Id.* at 17:8-14 (emphasis added).