**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § | |
| | § | |
| | § | |
| **Plaintiff and Counter-Defendant,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **WAYNE LAPIERRE,** | § | |
| | § | |
| **Third-Party Defendant,** | § | |
| | § | |
| **v.** | § | Civil Action No. 3:19-cv-02074-G |
| | § | |
| **ACKERMAN MCQUEEN, INC.,** | § | |
| | § | |
| **Defendant and Counter-Plaintiff,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG,** | § | |
| | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF NATIONAL RIFLE ASSOCIATION OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY THE LAW FIRM DORSEY & WHITNEY LLP AS COUNSEL FOR DEFENDANTS AND FOR OTHER APPROPRIATE SANCTIONS AND RELIEF**

**BREWER, ATTORNEYS & COUNSELORS**

Michael J. Collins, Esq.  (TX Bar No. 00785493)
mjc@brewerattorneys.com
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone:  ( 214) 653-4000
Facsimile:  (214) 653-1015

**ATTORNEYS FOR PLAINTIFF AND COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ........................................................................1

II.    RELEVANT BACKGROUND ........................................................................2

    A.    As A Trusted Agent and Fiduciary, AMc Provided An Array Of Audiovisual Technical Assistance. ...........................................................2

    B.    AMc's Misuse Of The Privileged Presentation. ......................................4

    C.    Dorsey Uses the Privileged Presentation As An Exhibit In A Discovery Dispute. .................................................................................5

    D.    Dorsey Ignored The NRA's Numerous, Reasonable Requests To Return The NRA's Privileged Material And Explain How It Was Obtained......................7

III.   LEGAL STANDARDS ..................................................................................10

IV.   ARGUMENTS AND AUTHORITIES...........................................................11

    A.    The Privileged Presentation Is Subject To The Attorney-Client Privilege............11

    B.    Dorsey Should Be Disqualified As Counsel For Defendants In This Action Because Dorsey Improperly Possesses The NRA's Privileged Documents And Information.............................................................................13

    C.    Dorsey Also Should Be Subject To Monetary And Other Appropriate Sanctions. ...................................................................................22

V.    CONCLUSION AND REQUEST FOR RELIEF.............................................24

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Abbott Laboratories v. Airco, Inc.*,
  1985 WL 3596 (N.D.Ill. November 4, 1985) ........................................................................13

*In re Am. Airlines, Inc.*,
  972 F.2d 605 (5th Cir. 1992) ...............................................................................................10

*In re Beiny*,
  132 A.D. 2d 190 (N.Y. App. Div. 1987) ..............................................................................13

*Centerboard Sec., LLC v. Benefuel, Inc.*,
  Civil Action No. 3:15-cv-2611-G, 2016 WL 3126238 (N.D. Tex. June 3,
  2016) ....................................................................................................................................10

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)................................................................................................................10

*Cnty. of Los Angeles v. Superior Ct.*,
  222 Cal. App. 3d 647, 271 Cal. Rptr. 698 (Ct. App. 1990) ............................................13, 16

*Deepwater Horizon v. BP Exploration & Production (In re Deepwater Horizon)*,
  824 F.3d 571 (5th Cir. 2016) ...............................................................................................21

*Flaska v. Little River Constr. Co.*,
  389 F.2d 885 (5th Cir. 1968) ...............................................................................................21

*Geer v. Gilman Corp.*,
  No. 306 CV 889 JBA, 2007 WL 1423752 (D. Conn. Feb. 12, 2007).....................................13

*Goodyear Tire & Rubber Co. v. Haeger*,
  137 S. Ct. 1178 (2017)..........................................................................................................22

*Gordon v. Enhanced Acquisitions LLC.*,
  No. 14-cv-13839, 2017 WL 2389968 (E.D. Mich. May 11, 2017) .........................................10

*Gripe v. City of Enid, Okla.*,
  312 F.3d 1184 (10th Cir.2002) ..............................................................................................17

*Harleysville Ins. Co. v. Holding Funeral Home, Inc.*,
  Case No. 1:15CV00057, 2017 WL 4368617 (W.D. Va. Oct. 2, 2017) .............................15, 23

*Lelsz v. Kavanagh*,
  137 F.R.D. 646 (N.D. Tex. 1991) ..........................................................................................21

*In re LTV Sec. Litig.*,
  89 F.R.D. 595 (N.D.Tex.1981) ...................................................................................11

*In re Marketing Investors Corp.*,
  80 S.W.3d 44 (Tex. App. – Dallas 1998, orig. proceeding) ....................................17

*In re Meador*,
  968 S.W.2d 346 (Tex. 1998).............................................................................. *passim*

*MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*,
  764 F. Supp. 712 (D. Conn. 1991).....................................................................13, 16

*Raymond v. Spirit AeroSystems Hold., Inc.*,
  Case No. 16-1282-JTM-GEB, 2017 WL 2831485 (D. Kan. June 30, 2017).........23

*Richards v. Jain*,
  168 F. Supp. 2d 1195 (W.D. Wash. 2001).................................................13, 15, 23

*Vaca v. Rio Properties, Inc.*,
  No. 2:08-cv-00940-RLH, 2011 WL 830519 (D. Nev. Mar. 3, 2011).....................10

*Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.*,
  No. 408-CV-684-Y, 2009 WL 464989 (N.D. Tex. Feb. 23, 2009) .........................11

**Statutes**

Cal. Evid. Code § 952 (West 1974) ...................................................................................11

**Other Authorities**

ABA Model Rule 1.4(a)(5) .................................................................................................20

ABA Model Rule 4.1 ..........................................................................................................20

ABA Model Rule 4.4 .....................................................................................................20, 21

Fed. R. Civ. P. 26 ...............................................................................................................15

Tex. Disciplinary R. Prof. Conduct, Preamble No. 11 .................................................21, 22

Tex. Disciplinary R. Prof. Conduct 4.01 ......................................................................11, 20

Tex. Disciplinary R. Prof. Conduct 8.04 ......................................................................11, 20

Tex. R. Evid. 502(b) ...........................................................................................................11

Restatement (3d) of The Law Governing Lawyers § 69 ....................................................11

Jeremy W. Peters & Katie Benner, *Where The N.R.A. Speaks First and loudest*,
   THE NEW YORK TIMES (Feb. 21, 2018) ...................................................................................3

# I.
## PRELIMINARY STATEMENT

Plaintiff National Rifle Association of America (the "NRA") seeks urgent relief to prevent severe prejudice arising from ethical and professional misconduct by Dorsey & Whitney LLP ("Dorsey"), counsel for Defendant AMc[1] in this matter.  At some point yet undisclosed, Dorsey came into possession of a confidential, privileged powerpoint presentation, delivered by the NRA's outside counsel to the NRA Board of Directors in an executive session, which set forth legal advice and litigation strategy on topics AMc is attempting to make relevant to this case. Instead of alerting the NRA that this obviously privileged document was in the possession of AMc, Dorsey secretly retained and used the document in an effort to gain an advantage in this litigation. When Dorsey filed a copy of the document with this Court, the NRA alerted Dorsey to its misuse of privileged material.  At first, Dorsey ignored the NRA's letter—then, it rebuffed the NRA's protests with dismissive, facially false statements about the document's contents. After prolonged letter correspondence debunked Dorsey's falsehoods, Dorsey relented and reportedly destroyed the document.  But, as numerous authorities make clear, Dorsey's late acquiescence to its ethical obligations do not obviate the consequences of its actions.  Based on the facts herein, the only appropriate remedy is disqualification.

As the Court knows, attorneys who are exposed to an adversary's privileged information— even unwittingly—should be disqualified if their exposure confers an unfair advantage.  Here, it cannot be disputed that Dorsey read, digested, and used the NRA's privileged PowerPoint presentation (the "Privileged Presentation") to benefit itself and its client—in this case.  The subject matter of the Privileged Presentation overlaps substantially with allegations AMc presents

---

[1] "AMc" shall at all times refer Ackerman McQueen, Inc., together with its subsidiary Mercury Group, Inc and the individual defendants.

in this case; indeed, as of the date of this motion, AMc via Dorsey, has served no fewer than nine document requests targeting topics covered in the Privileged Presentation.  Moreover, Dorsey's exposure to this privileged material was not unwitting or innocent, because Dorsey knew that the document was privileged and improperly retained.  Nonetheless, Dorsey chose to use the document and persisted on that path, even after it was warned by the NRA that it possessed privileged material.  In light of these facts, a client's desire to be represented by counsel of its choice is clearly outweighed by the paramount interest in preserving the public's trust in the integrity of the judicial process, which requires removing an advantage to a litigant's adversary that was unfairly obtained by attorneys who failed to promptly rid themselves of privileged material.  This is especially true where—as here—the litigant is a fiduciary who obtains a privileged document and passes the document to its counsel, in an effort to gain an unfair advantage in court.

Therefore, the NRA respectfully requests that the Court invoke its inherent powers to disqualify Dorsey as counsel for defendants.

## II.
## RELEVANT BACKGROUND

### A.   As A Trusted Agent and Fiduciary, AMc Provided An Array Of Audiovisual Technical Assistance.

AMc worked closely with the NRA for more than 30 years.  Together, the NRA and AMc crafted impactful Second Amendment messaging that featured Charlton Heston ("from my cold, dead hands"), among others.[2]

Over that decades-long relationship, the NRA reposed extensive trust and confidence in AMc to perform a wide range of services, including public relations and strategic marketing; planning and placement of media; management of digital media and websites; provision of

---

[2] ECF No. 18, ¶ 14 (First Am. Compl.).

logistics and technical support for the NRA meeting and events; and the management of NRATV, a digital-media and live broadcasting platform.[3]   By its nature, this work was publicly and politically sensitive, and often required the NRA to entrust AMc with sensitive information to obtain essential input from its public affairs firm, for the purpose of seeking and receiving legal advice.[4]   A fiduciary relationship existed between AMc and the NRA.[5]

As with its other employees and agents, the NRA would sometimes share privileged information with AMc—often when necessary to facilitate an important legal or strategic objective.[6]   To that end, the parties' Services Agreement placed strict limitations on AMc's use of Confidential Information provided by the NRA: AMc could "not make or cause to have made any copies of any NRA Confidential Information without the prior express written authorization of [the] NRA," and could "use such Confidential Information only for the limited purpose of providing its Services."[7]   In addition, the Services Agreement provides that AMc, "shall not disclose, directly or indirectly, to any third party, any . . . data, materials or information . . . known to AMc as a result of" AMc performing their services, "without the prior express written permission of [the] NRA."[8]

At all relevant times, the NRA Board of Directors consisted of 74 to 76 members.   To accommodate full attendance, Board meetings are typically held in sizable venues such as hotel

---

[3] *See, e.g.*, Jeremy W. Peters & Katie Benner, *Where The N.R.A. Speaks First and loudest*, THE NEW YORK TIMES (Feb. 21, 2018), https://www.nytimes.com/2018 /02/21/us/politics/nratv- nra-news-media-operation.html; ECF No. 18 ¶¶ 14-15 (First Am. Compl.), submitted herewith.

[4] ECF No. 18, ¶ 14.

[5] ECF No. 18, ¶ 17.

[6] *See* Declaration of Andrew Arulanandam ("Arulanandam Decl.") ¶ 9, attached as Exhibit 2 to the Declaration of Michael J. Collins (the "Collins Decl."), submitted herewith.

[7] *See* Services Agreement at § IV.A.2-.3, attached as Ex. 1 to Collins Decl.

[8] *Id.* at § IV.A.I. In the Services Agreement, AMc expressly "warrants and agrees to prevent disclosure of Confidential Information by its employees, agents, successors, assigns and subcontractors." *Id.* at § IV.A.3-4.

3

ballrooms. Delivering digital video and PowerPoint presentations at such venues requires on-site technical assistance.  Audiovisual technical assistance was one service provided by AMc to the NRA, and AMc typically sent technical support personnel to NRA Board meetings, and other events, to help ensure that screens and sound systems worked properly.[9]  Although audiovisual technicians were allowed to remain present for many digital presentations, the NRA also convened executive sessions of its Board—often to receive privileged briefings by attorneys—wherein it deliberately instructed AMc technicians and others to leave the room.[10]  If privileged presentation materials were loaded onto AMc-furnished or venue-furnished audiovisual equipment, the NRA and its professionals closely supervised that process to ensure that copies of any media were not made available to third-parties upon conclusion of the presentation.[11]

**B.**     **AMc's Misuse Of The Privileged Presentation.**

One such meeting occurred on January 5, 2019, at the Regency Ballroom of the Hyatt Regency Hotel in Tysons Corner, Virginia.[12]  AMc personnel were present on site at the meeting to coordinate the display of digital media on a large screen.[13]  NRA outside counsel, William A. Brewer III of Brewer, Attorneys & Counselors ("BAC"), was scheduled to deliver a privileged presentation to the Board of Directors during an executive session that day; accordingly, before the executive session began, an employee of outside counsel handed a portable media drive to an audiovisual technican and asked the technician to insert it into the appropriate digital port.[14] Importantly, handing the drive to the technician did not invite the technician to view its contents—

---

[9] *See* Arulanandam Decl. at ¶ 8.

[10] *Id.* at ¶ 7.

[11] *Id* at ¶ 8.

[12] *Id.* at ¶ 6.

[13] *Id.* at ¶¶ 5, 8.

[14] *Id.* at ¶ 8.

4

rather, this was akin to handing over a sealed envelope of documents and asking that they be couriered to a privileged recipient.  Then, at 10:55 a.m., the NRA Board of Directors entered executive session.  Everyone, apart from Board members and outside counsel—including all audiovisual technicians and, (apart from a short enumerated list) all NRA staff—was directed to leave the room.[15] Only then was the Privileged Presentation displayed to the Board in executive session.

Delivered by outside counsel Mr. Brewer, the Privileged Presentation provided detailed legal advice and strategy regarding pending and anticipated litigation.  Among other things, the presentation discussed settlement negotiations in connection with a pending litgiation matter, regulatory matters, discovery disputes in various litigation, and remedies available under particular statutes.[16] After the presentation ended, BAC immediately retrieved the portable electronic drive containing it.[17]  Apparently, covertly, an audiovisual technician copied and retained the Privilged Presentation.[18]

## C.  Dorsey Uses the Privileged Presentation As An Exhibit In A Discovery Dispute.

Beginning in 2018, the NRA sought documents from AMc pursuant to a contractual record-inspection right, in order to investigate charges made by a number of past and present NRA employees, of among other things, billing irregularities.[19]  Unfortunately, AMc resisted the NRA's attempts to examine "files, books and records."  In April 2019, the NRA sued AMc for specific performance of the record-inspection right. During the same period, the parties' business

---

[15] *Id.* at ¶ 7.

[16] Declaration of Travis Carter ("Carter Decl.") ¶ 7, attached as Ex. 4 to the Collins Decl.

[17] *See* Carter Decl. at ¶ 14; Arulanandam Decl. at ¶ 8.

[18] *See* Arulanandam Decl. at ¶ 8; Carter Decl. ¶¶ 14-15.

[19] *See* ECF No. 18, ¶19, 50-52; *see also* Privilged Presentation, attached as Ex. 20 to Collins Decl., which discusses several confidential and privileged topics.

relationship deteriorated.[20]  Even after the parties' Services Agreement formally terminated, AMc continued to display the NRA's intellectual property on its website, leading the NRA to commence this action on August 30, 2019, under the Copyright Act and the Lanham Act predicated on AMc's improper use of the NRA's trademarks and copyrights.[21]  On  October 1, 2019, AMc answered and filed permissive counterclaims.   On October 25, 2019, the NRA filed its First Amended Complaint, adding a group of senior AMc executives as defendants, and new claims for financial fraud, fraud in connection with NRATV, and breaches of fiduciary duties.[22]

On January 22, 2020, the NRA filed a motion to compel AMc to produce documents.[23]  On February 12, 2020, Dorsey filed a response on behalf of AMc littered with false statements, half-truths, irresponsible hyperbole, and unsubstantiated *ad hominem* attacks.  For example, because BAC employs a small number of public affairs professionals to, among other things, field press inquiries relating to the firm's legal matters, AMc disingenuously insisted that BAC was attempting to compete as an advertising agency—a flimsy pretext that AMc uses to pretend its largest client was "stolen," rather than driven away by AMc's own failures.[24]  As part of its misguided, scorched-earth effort to pick fights with opposing counsel rather than litigate the merits of their claims, AMc, via Dorsey, filed a copy of the Privileged Presentation as part of their

---

[20] *See* Emails from Dan Boren, attached as Exhibit 21to the Collins Decl., and included in Exhibit A to Plaintiff's Responses and Objections to Defendant Ackerman McQueen Inc's First Set of Interrogatories, which were included in Exhibit A to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Compel Production of Documents, filed in the Virginia Lawsuits. In an email from Dan Boren, dated April 15, 2019, Boren states "I bet Ackerman is in trouble on this one. They can't produce the backup to the invocies and were allocating full salary to these employees that may have been working on our accounts." (Ex. 21, p. 46).

[21] *See generally* ECF No. 1 (Pl.'s Original Compl.).

[22] *See generally* ECF No. 18 (First Am. Compl.).

[23] ECF No. 47 (NRA Mot. to Compel).

[24] *See* ECF No. 18, pp. 3-4.

6

opposition to the NRA's motion to compel.[25]  Specifically, the Privileged Presentation was filed under seal by Dorsey on February 12, 2020, and marked as Confidential Exhibit B-9.[26]

Consistent with the context in which it was delivered and the topics it covered, the Privileged Presentation is an overtly privileged document.  Although Dorsey filed only the graphic slides comprising the presentation—omitting the detailed Speaker Notes appended to each slide[27]—the portion of the Privileged Presentation which Dorsey submitted to the Court bears the legend ***ATTORNEY WORK PRODUCT / PRIVILEGED AND CONFIDENTIAL*** on every page. The presentation is titled, "Executive Briefing: Representing the NRA in the Legal, Regulatory, and Public Arena,"[28] and extensively covers ongoing and anticipated legal matters.  Dorsey could not reasonably have glanced at the Privileged Presentation, let alone analyzed and used it as an exhibit in motion practice, without being alerted to its privileged nature.

**D.     Dorsey Ignored The NRA's Numerous, Reasonable Requests To Return The NRA's Privileged Material And Explain How It Was Obtained.**

On February 18, 2020, after the NRA saw its outside counsel's privileged presentation filed as Confidential Exhibit B-9, the NRA wrote to Dorsey to demand that the document be withdrawn as an exhibit and returned.[29] Disturbed that AMc or its counsel had come into possession of such material, the NRA also requested that Dorsey explain how the Privileged Presentation was

---

[25] *See* ECF No. 51 (AMc Res. to Mot. To Compel). Notably, the Privileged Presentation was inaccurately described by AMc in their Response when they stated,  "on January 5, 2019, the PR unit gave a detailed presentation to the NRA's Public Affairs Committee about protecting and advancing the NRA's reputational interests" (page ID 1007). What AMc is in fact describing is a non-privileged presentation made the previous day, on January 4, 2019, by Travis Carter; *see* Carter Decl. at ¶¶ 4-5.

[26] *Id; See also* ECF No. 52.

[27] Dorsey was, in fact, in possession of the highly detailed and clearly privileged Speaker Notes included with each slide, as it returned the Notes to BAC on April 1, 2020, in response to BAC's continued demands that the privileged material be immediately returned. *See* Letter, dated April 1, 2020, from Dorsey to BAC, attached as Ex. 14 to the Collins Decl.

[28] ECF No. 52, Ex. B-9, at p. 1.

[29] *See* Letter, dated Feb. 18, 2020, from BAC to Dorsey, attached as Ex. 5 to the Collins Decl.

obtained, and take steps to ensure no other privileged documents were improperly possessed by Doresey or AMc.[30]

At first, the NRA received no reply except a cursory email, sent the evening of Friday, February 21, 2020, which provided that Dorsey would respond substantively to the NRA's letter the following week.[31]  After Dorsey ignored its own deadline, NRA counsel followed up by letter dated February 26, 2020, emphasizing the seriousness of the issue.[32]   Dorsey finally responded on March 2, 2020, by gainsaying any claim of privilege and asserting, disingenuously that the Privileged Presentation—which consists of detailed legal advice—was "anything but the rendition of legal advice."[33]  Dorsey mischaracterized the presentation as an entirely different one, delivered by a nonlawyer, Travis Carter, to a different audience, on a different date (Travis Carter's presentation on Friday, January 4, 2019)—assertions belied by even a superficial glance at the document Dorsey had already filed with this Court.[34]  Although Dorsey indicated it would instruct its client to sequester and stop "disemminat[ing]" the document, it refused to explain how the document was obtained, take any steps to investigate whether other privileged documents were obtained, or forbear from continuing to use the document in motion practice.[35]

Generously granting Dorsey the benefit of the doubt, NRA counsel responded the following day with a letter dispelling any potential misunderstanding about the nature of the presentation, by whom it was delivered, the date it was delivered, and the audience to whom it was

---

[30] *See* Letter, dated March 30, 2020, from BAC to Dorsey, attached as Ex. 10 to the Collins Decl.

[31] *See* Email, dated Friday, Feb. 21, 2020, from Dorsey to BAC, attached as Ex. 6 to the Collins Decl.

[32] *See* Letter, dated Feb. 26, 2020, from BAC to Dorsey, attached as Ex. 7 to the Collins Decl.

[33] *See* Letter, dated Mar. 2, 2020, from Dorsey to BAC, attached as Ex. 8 to the Collins Decl.

[34] *Id.*; *infra* fn. 25.

[35] *Id.*

delivered.[36] The NRA also reiterated its request that Dorsey explain how it came into possession of the Privileged Presentation, and whether it was in possession of any other privileged NRA documents.[37]  Dorsey did not reply.

On March 10, 2020, the Court granted AMc's motion for leave to file various documents, including Confidential Exhibit B-9, under seal.[38]  Ignoring the NRA's request that Dorsey remove its privileged document from the record, Dorsey intentionally filed the Privileged Presentation with the Court for a second time, on March 11, 2020.[39]

On Monday, March 30, 2020, the NRA sent a letter to Dorsey informing Dorsey that it would file a motion to disqualify.[40]  By email dated Tuesday, March 31, 2020, Dorsey wrote that although AMc disagreed with the NRA's position, Dorsey would "recommend[] to our clients that the material in question (Exhibit B-9) be returned to the NRA and destroyed, and that any existing versions be permanently destroyed."[41]  And yet again, Dorsey promised that the NRA would soon receive a more thorough, formal response to its concerns under separate cover.[42]  Because the NRA wished to analyze the metadata of the document to determine how it might have been obtained, and who possessed or transmitted it, the NRA requested that Dorsey return, rather than destroy, all copies of the presentation possessed by it or its client.[43]

---

[36] *See* Letter, dated Mar. 3, 2020, from BAC to Dorsey, attached as Ex. 9 to the Collins Decl.

[37] *Id.*

[38] *See* ECF No. 63.

[39] *See* ECF No. 64.

[40] *See* Letter dated March 30, 2020, from BAC to Dorsey, attached as Ex. 10 to the Collins Decl.

[41] *See* Email dated Tuesday, March 31, 2020, from Dorsey to BAC, attached as Ex. 11 to the Collins Decl.

[42] *See Id.*

[43] *See* Email, dated March 31, 2020, from BAC to Dorsey, attached as Ex. 13 to the Collins Decl.

By letter dated April 1, 2020, Dorsey finally agreed to withdraw Confidential Exhibit B-9.[44]  However, Dorsey asserted that any privilege which applied to the Privileged Presentaiton had been "waived" when a BAC employee handed the portable electronic drive containing the presentation to an AMc employee, and asked him to insert it into the appropriate device.  This action effected a waiver, Dorsey postulated, because "there is no attorney-client relationship between the [NRA] and [AMc]."[45]  Dorsey knew, or should have known, that its excuses are without merit.

### III.
### LEGAL STANDARDS

"Disqualification cases are guided by state and national ethical standards adopted by the Fifth Circuit."[46]  The Court should consider the ethical standards developed by national organizations like the American Bar Association (ABA), as well as the Texas Disciplinary Rules of Professional Conduct.[47]

In addition, federal courts have inherent powers to protect the integrity of the judicial process, including the power to award an array of sanctions, including disqualification of counsel upon a finding of bad faith.[48]

---

[44] *See* Letter, dated April 1, 2020, from Dorsey to BAC, attached as Ex. 14 to the Collins Decl.

[45] *Id.*

[46] *Centerboard Sec., LLC v. Benefuel, Inc.*, Civil Action No. 3:15-cv-2611-G, 2016 WL 3126238, at *1 (N.D. Tex. June 3, 2016).  See *also In re Am. Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992).

[47] *Centerboard*, 2016 WL 3126238, at *1.

[48] *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (finding that "the inherent power extends to a full range of litigation abuses"); *Gordon v. Enhanced Acquisitions LLC.*, No. 14-cv-13839, 2017 WL 2389968, at *2 (E.D. Mich. May 11, 2017), *report and recommendation adopted*, 2017 WL 2377501 (E.D. Mich. June 1, 2017) (noting that courts have "broad inherent authority to protect the integrity of the judicial process and guard against abuses"); *Vaca v. Rio Properties, Inc.*, No. 2:08-cv-00940-RLH, 2011 WL 830519, at *3 (D. Nev. Mar. 3, 2011) ("The court also has the inherent power to police litigant misconduct and impose sanctions on those who abuse the judicial process.  These inherent powers exist in addition to the formal rules and legislative dictates designed to assist courts in their truth-seeking process.  Additionally, the court has the inherent authority to impose an appropriate sanction in order to protect the integrity of the judicial process.") (citations omitted).

Dorsey has violated multiple rules of the Texas Disciplinary Rules of Professional Conduct, including Rule 4.01(b) and Rule 8.04.[49]

## IV.
## ARGUMENTS AND AUTHORITIES

### A.    The Privileged Presentation Is Subject To The Attorney-Client Privilege.

The elements of the attorney-client privilege are: "(1) a confidential communication; (2) between a lawyer or his subordinate and a client; (3) for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding."[50]  Additionally, documents and tangible things that are prepared in anticipation of litigation, or for trial by or for an attorney, are protected by the work product doctrine.

The Privileged Presentation is unambiguously protected by both attorney-client privilege and the work product doctrine.  Every slide bears the letterhead of the NRA's outside law firm and the legend "ATTORNEY WORK PRODUCT / PRIVILEGED & CONFIDETIAL."  Moreover, both the on-screen slides and accompanying Speaker Notes unmistakably pertain to pending and anticipated lawsuits (at one point using the phrase "anticipated lawsuit").[51]  The presentation

---

[49] Tex. Disciplinary R. Prof. Conduct, Rules 4.01(b), 8.04.

[50] *See In re LTV Sec. Litig.,* 89 F.R.D. 595, 602-03 (N.D.Tex.1981); *see also* 1 Restatement (Third), The Law Governing Lawyers § 69, comment (i) "(privilege applies to "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between [the client] or his representative and his lawyer or his lawyer's representative") Unif. R. Evid. 502(b). *See also,* e.g., Cal. Evid. Code § 952 (West 1974) ("As used in this article, 'confidential communication between lawyer and client' … includes a legal opinion formed and the advice given by the lawyer."). The extension of the privilege to lawyer communications to a client has been rarely litigated and seems to have been assumed rather than definitively established in decisions. *See,* e.g., P. Rice, Attorney-Client Privilege in the United States § 5.4 et seq. (1993); 8 J. Wigmore, Evidence § 2320 (J. McNaughton rev.1961) ("That the attorney's communications to the client are also within the privilege was always assumed in the earlier cases and has seldom been brought into question…."). The privilege can be waived by the voluntary, affirmative act of the client who holds it—here, the NRA. *See, e.g., Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.,* No. 408-CV-684-Y, 2009 WL 464989, at *4 (N.D. Tex. Feb. 23, 2009) (emphasizing that waiver occurs if the client "*voluntarily* discloses or *consents* to disclosure" of a privileged communication) (emphasis in original).

[51] *See* Privileged Presentation, Slide 12 (Slide and Speaker Notes), attached as Ex. 20 to the Collins Decl.

11

discusses recent[52] and ongoing[53] settlement talks, analyzes applicable statutes,[54] and details discovery strategy.[55]  It also discusses the NRA's claims, defenses, and approaches in connection with confidential regulatory inquiries.[56] AMc's frivolous pretext for introducing the document into the record—that it reflected an attempt by the NRA's outside counsel to steal AMc's public relations business—does not withstand even a cursory review of the Privileged Presentation. Although the presentation references media coverage of the NRA, all of the coverage pertained specifically to the legal matters being handled by BAC.

The NRA took more-than-reasonable precautions to preserve the confidentiality of the Privileged Presentation.  Indeed, even though AMc was a fiduciary subject to strong contractual and common-law nondisclosure obligations, AMc's representatives—and the NRA's own employees—were instructed to leave the room before the Privileged Presentation began.[57] Although an employee of the NRA's outside law firm, BAC, briefly entrusted a portable drive containing the Privileged Presentation to an audio visual technician, for the purpose of loading the presentation on to a laptop computer, he did so with the specific assurance (reflected in AMc's contract) that AMc would not copy, retain, or use the confidential material contained on the drive in any manner to which the NRA did not explicitly consent.[58]   Moreover, allowing an AMc

---

[52] *See* Ex. 20 at  Slide 5 (Slide and Speaker Notes).

[53] *See* Ex. 20 at Slide 6 (Speaker Notes).

[54] *See* Ex. 20 at Slide 16 (Slide and Speaker Notes).

[55] *See* Ex. 20 at Slide 7 (Speaker Notes).

[56] *See* Ex. 20 at Slide 6 (Slide and Speaker Notes).

[57] *See* Arulanandam Decl. at ¶ 7.

[58] *See* Ex. 1 to the Collins Decl.

employee to have brief, incidental contact with the portable drive for the ministerial purpose of configuring audiovisual equipment could not have waived the NRA's privilege.[59]

Similarly, handing the portable drive to an AMc technician for audiovisual configuration would not have put the NRA on notice that a litigation adversary (at the time, AMc was not an adversary) would likely copy and view the documents contained on the drive. Therefore, the work product doctrine still protects the Privileged Presentation.

## B.   Dorsey Should Be Disqualified As Counsel For Defendants In This Action Because Dorsey Improperly Possesses The NRA's Privileged Documents And Information.

Dorsey's conduct can aptly be described as grossly unethical, and clearly warrants disqualification based on settled authority.[60]  Dorsey took possession of an obviously privileged presentation from its client outside the ordinary course of discovery.  In violation of its ethical and professional duties, Dorsey did not inform the NRA that it possessed the Privileged Presentation. Only when Dorsey included the Privileged Presentation in connection with a document filed in this litigation was its possession revealed. It also appears that Dorsey used the presentation's

---

[59] *See Abbott Laboratories v. Airco, Inc.*, 1985 WL 3596, at *4 (N.D.Ill. November 4, 1985) ("A recognized exception to the rule that the communication must be directly between the client and attorney is for ministerial agents of the attorney (such as clerks, secretaries and stenographers) or of the client who facilitate transmission of the communication."); *Geer v. Gilman Corp.*, No. 306 CV 889 JBA, 2007 WL 1423752, at *4 (D. Conn. Feb. 12, 2007) (notwithstanding the absence of marital or other privilege between a litigant and her fiancé, the litigant did not waive attorney-client privilege when, for convenience and subject to a reasonable expectation of confidentiality, she borrowed her fiance's computer and email address to communicate with her lawyer).

[60] *See Richards v. Jain*, 168 F. Supp. 2d 1195, 1209 (W.D. Wash. 2001) (disqualifying law firm under analogous circumstances); *Maldonado*, 225 F.R.D. at 138 (holding retention and use of opponent's privileged document justified disqualification); *Cnty. of Los Angeles v. Superior Ct.*, 222 Cal. App. 3d 647, 657-58, 271 Cal. Rptr. 698, 705 (Ct. App. 1990) ("If [a consulting] expert continues his or her relationship with the party . . . , the opposing party is barred from communicating with the expert and from retaining him or her as the opposing party's expert"; "When an attorney violates this rule, he or she must be recused.  Having become privy to an opposing attorney's work product, there is no way the offending attorney could separate that knowledge from his or her preparation of the case."); *MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*, 764 F. Supp. 712, 726-27 (D. Conn. 1991) (granting disqualification in part because attorney presumably obtained confidential information from the moving party's former employee); *In re Beiny*, 132 A.D. 2d 190, 195-96 (N.Y. App. Div. 1987) (affirming disqualification where, as here, the firm's receipt, review, and use of privileged information involved "intentional misconduct" and otherwise warranted by "the resulting prejudice to the [party] against whom the improperly obtained materials were used.").

13

privileged substance to gain insight into multiple, highly sensitive NRA legal matters having nothing to do with this lawsuit—as it now contends that those matters are discoverable is actively pursuing those subjects in AMc's tainted motion to compel.[61]

Under these facts, the principles set forth in the Texas Supreme Court's decision in *In re Meador* compel the conclusion that Dorsey should be disqualified.  In *Meador*, the Texas Supreme Court enumerated six factors to consider when resolving motions to disqualify counsel in these situations.  Those factors are:

1) Whether the attorney knew or should have known that the material was privileged;

2) The promptness with which the attorney notifies the opposing side that he or she has received its privileged information;

3) The extent to which the attorney reviews and considers the privileged information;

4) The significance of the privileged information; *i.e.*, the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice;

5) The extent to which movant may be at fault for the unauthorized disclosure; and

6) The extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney.[62]

All these factors weigh heavily in favor of disqualifying Dorsey.

<u>First</u>, there is no doubt that Dorsey knew that Confidential Exhibit B-9 was a privileged document.  On every page, the presentation is labeled "Confidential & Privileged" and "Attorney

---

[61] *See* Ex. 17 to the Collins Decl., Defendant Counter-Plaintiff Ackerman McQueen, Inc.'s First Request for Production of  Documents to Plaintiff-Counter Defendant NRA, dated December 20, 2019, which reflect the subject matter of the privileged legal matters discussed in Confidential Exhibit B-9, ECF No. 52.

[62] *In re Meador*, 968 S.W.2d 346, 351-352 (Tex. 1998).

14

Work Product." The content makes clear that the presentation was prepared by counsel at BAC to provide to members of the NRA Board of Directors legal opinions and advice regarding highly sensitive pending and anticipated litigation.[63] Accordingly, this factor weighs heavily in favor of disqualification.[64]

Second, Dorsey *never* notified the NRA that it was in possession of Confidential Exhibit B-9.[65] Highlighting its lack of good faith, Dorsey ignored counsel's reasonable requests to return the presentation, explain how it obtained the presentation, and take steps to remove the presentation from the Court's docket.[66] Indicative of Dorsey's breaches of its ethical and professional duties, on notice of the NRA's privilege claim and clawback request, Dorsey *again* filed the privileged presentation with the Court for a second time.[67] Dorsey's failure to promptly disclose its possession of Confidential Exhibit B-9 justifies disqualification.[68]

Third, there is no doubt that Dorsey closely reviewed the Privileged Presentation. At a minimum, it was analyzed at least twice before being submitted to the Court. Clearly, Dorsey obtained an unfair advantage from its scrutiny of the NRA's legal strategies—and now attempts to amplify that advantage by seeking to place those legal strategies at issue in this case. Tellingly,

---

[63] ECF No. 52, Ex. B-9, pp. 1-19.

[64] *See Richards*, 168 F. Supp. 2d at 1203-1204 (disqualifying law firm under *Meador* in part because the firm "knew or should have known that these materials were privileged," yet "selected relevant [versions] for review by the attorneys") (internal citations omitted). *See also* Declaration of James M. McCormack ("McCormack Decl.") at ¶ 30, attached as Ex. 18 to the Collins Decl.

[65] *Maldonado*, 225 F.R.D. at 138. *Cf.* Fed. R. Civ. P. 26(b)(5)(B) ("If information produced in discovery is subject to a claim of privilege or protection of trial-preparation material, the party may notify" the receiving party of the claim. "After being notified, a party must promptly return, sequester, or destroy the specific information and any copies it has [, and] must not use or disclose the information until the claim is resolved."); McCormack Decl. ¶ 31.

[66] *See* Exs. 6-10 to the Collins Decl.; McCormack Decl. ¶¶ 16-18.

[67] ECF Nos. 52, 57. By failing to advise the Court of the dispute, Dorsey deprived the NRA of the opportunity to object to misuse of the document.

[68] *Harleysville Ins. Co. v. Holding Funeral Home, Inc.*, Case No. 1:15CV00057, 2017 WL 4368617, at *13-14 (W.D. Va. Oct. 2, 2017) (second factor counsels in favor of disqualification where, as here, counsel refused to return documents because they claimed the privilege was waived, "attempte[d] to conceal their possession," and "usurp[ed] the role of the court by making a unilateral determination of waiver"). *See also* McCormack Decl. ¶ 31.

at least nine of AMc's document requests served on December 20, 2019, directly target issues discussed in the Privileged Presentation. They are Requests numbers 7, 13, 35, 42, 43, 44, 53, 54, and 71.[69] The relationship between AMc's pending document requests and Confidential Exhibit B-9 is too close to allow Dorsey to continue to flout its professional ethics and prejudice the NRA. Accordingly, this factor weighs heavily in favor of disqualifying Dorsey.

Fourth, the privileged information is significant because it reflects counsel's candid legal advice about pending or anticipated litigation and regulatory matters which was provided to the NRA Board of Directors in an executive session. In this respect, the presentation contains some of the NRA's most sensitive privileged communications. And, as discussed above, it appears that Dorsey incorporated the privileged content into its defensive strategy.[70] Indeed, Dorsey has used Confidential Exhibit B-9 in a manner adverse to the interests of the NRA in legal filings.[71] Such prejudice is irreparable, and tips the scales heavily towards disqualification.[72]

Fifth, Dorsey had Confidential Exhibit B-9 in its possession through no fault of the NRA. Dorsey mistakenly represents that a copy of Confidential Exhibit B-9 was disclosed "to at least one [AMc] employee who was requested to attend and participate" in a Board of Directors meeting on January 4, 2019.[73] As already established, that statement is false. Not only was AMc not

---

[69] ECF No. 56, Ex. A-1 at pp. 11, 13-16.

[70] *Id.*

[71] *See* ECF No. 51 ¶ 5 (discussing Confidential Exhibit B-9).

[72] *Cnty. of Los Angeles v. The Super. Ct. of Los Angeles*, 222 Cal. App. 3d at 658 ("Having become privy to an opposing party's work product, there is no way the offending attorney could separate that knowledge from his or her preparation of the case" and demands "recus[al]"); *MMR/Wallace Power & Indus.*, 764 F. Supp. at 727 (holding that misappropriated privileged information "taint[ed]" the judicial process and necessitated disqualification because such bad faith conduct "creates at least the appearance that defendant has obtained an unfair advantage at trial").

[73] *See* Letter, dated Mar. 2, 2020, from Dorsey to BAC, attached as Ex. 8 to the Collins Decl.

invited to participate in the discussion featuring the Privileged Presentation—it was expressly instructed to leave the room.[74]

Sixth, AMc will not suffer unfair prejudice from disqualifying Dorsey because AMc retained separate and highly skilled attorneys to handle the related Virginia case, participating as lead counsel since that case's inception.[75]   Illustrating the absence of prejudice, at AMc's request, the Virginia litigation was recently stayed on the basis that the two cases substantially overlap on the merits.[76]   The existence of AMc's Virginia counsel, who is familiar with the facts and legal issues in this case, and Dorsey's repeated bad faith demonstrate that Dorsey should be disqualified as counsel for defendants in this action.

The court in *In re Marketing Investors Corp.*,[77] cited to the Texas Supreme Court's *Meador* opinion and disqualified counsel for a former employee of a company because the employee took privileged documents from his former employer.   The employee's counsel did not alert the former employer of their possession of those privileged documents.   Instead, the employee's counsel used those documents in court filings and intended to continue to use them in the future.

Similarly here, when Dorsey finally responded to the NRA's inquiries, on April 1, 2020, its explanation was incoherent and inconsistent with the facts and its ethical and professional duties (and its client's contractual and common law obligations to the NRA).   Dorsey's conduct, including its continued failure to alert the NRA to its possession of the PowerPoint presentation and its refusal to take responsibility underscore not only that Dorsey likely used the confidences

---

[74] *See* Arulanandam Decl. at ¶ 7.

[75] *Gripe v. City of Enid, Okla.*, 312 F.3d 1184, 1189 (10th Cir.2002) ("Plaintiff argues against the harshness of penalizing him for his attorney's conduct. But there is nothing novel here. Those who act through agents are customarily bound by their agents' mistakes. It is no different when the agent is an attorney.").

[76] 3/11/20 Hr'g Tr. at p. 48, attached as Ex. 19 to the Collins Decl.

[77] 80 S.W.3d 44, 51 (Tex. App. – Dallas 1998, orig. proceeding).

17

gained by access to this privileged document, but also the likelihood that it will continue to use the NRA's privileged materials improperly.

The NRA has retained James M. McCormack, a well-known expert in legal ethics, the rules of professional responsibility, and disqualification issues.[78]  Having reviewed the material facts and legal filings, and based on his substantial expertise, Mr. McCormack has submitted a declaration in which he opines that Dorsey had an ethical obligation to immediately return Confidential Exhibit B-9 to the NRA. Mr. McCormack also opines that, evaluated in their entirety, the *Meador* factors all weigh towards disqualification.[79]  In particular, Mr. McCormack placed significant weight on the first two *Meador* factors, namely Dorsey's retention for potentially over a year and ultimate adversarial use of an obviously privileged NRA document, despite the NRA's repeated objections and requests to return all privileged documents.[80]  In his expert opinion, such conduct evidences a likelihood that Dorsey will continue to use NRA privileged material in an unauthorized manner, and that disqualification is the least severe remedy to stop such intentional bad faith and unethical conduct, and to remove the taint Dorsey's conduct has placed on the judicial process.[81]

As Mr. McCormack notes, a similar controversy concerning a different powerpoint presentation (BAC presented to the NRA Board in April 2019) arose in connection with litigation pending in Virginia state court between the NRA and AMc.[82]  In that litigation, AMc was

---

[78] *See generally* McCormack Decl.

[79] *Id.* at ¶ 38.

[80] *Id.* at ¶¶ 28-31.

[81] *See* McCormack Decl. at ¶ 36.

[82] *See* McCormack Decl. at ¶ 24.

represented by Dorsey and by Schertler & Onorato, LLP law firm ("S&O Firm").[83]  Apparently in late April-early May 2019, S&O learned that an employee of AMc had acquired a powerpoint presentation that might contain privileged legal advice that BAC provided to the NRA.[84]  The S&O Firm asserted that when it received the document it became concerned that the powerpoint might be privileged, and, therefore, it immediately advised its client (AMc) not to view the presentation or reveal any information about it to any attorneys representing AMc.[85]  Further, the S&O Firm claimed that it took possession of the presentation which it found to exist on two portable USB drives in different formats, examined only the copies of the presentation's cover page, which was marked "confidential and privileged," and did not examine or review the remainder of the powerpoint.[86]  At that point, the S&O Firm says that it secured the two portable USB drives and placed them in a locked safe.[87]  The S&O Firm then sent the two USB drives to counsel for NRA.[88]  Thus, despite knowing what to do based on that incident, Dorsey instead chose to ignore its ethical and professional obligations. Dorsey's bad faith could not be any clearer.

      As the evidence demonstrates, the attorneys from Dorsey have violated multiple ethical rules.  The conduct of the Dorsey attorneys who manage this case can only be described as unethical, and warrants disqualification.  The firm's attorney's took possession of an obviously

---

[83] *Id.*; *see also* Plaintiff's Emergency Motion to Conduct Limited Discovery into Defendants' Theft of Plaintiff's Property, filed in *NRA v. AMc*, Circuit Court of Virginia for the City of Alexandria, Cause CL19001757, attached as Ex. 22 to the Collins Decl.; Memorandum of Law in Support of Plaintiff's Emergency Motion to Conduct Limited Discovery into Defendants' Theft of Plaintiff's Property, filed in *NRA v. AMc*, Circuit Court of Virginia for the City of Alexandria, Cause CL 19001757, attached as Ex. 23 to the Collins Decl.; Defendant's Opposition to Plaintiff's Emergency Motion to Conduct Limited Discovery into Defendant's Theft of Plaintiff's Property, filed in *NRA v. AMc*, Circuit Court of Virginia for the City of Alexandria, Cause CL 19001757, attached as Ex. 24 to the Collins Decl.

[84] *See* Ex. 24 at p. 2.

[85] *Id.*

[86] *Id.* at pp. 2-3.

[87] *Id.* at p. 3.

[88] *Id.* at pp. 3-4.

privileged document belonging to the NRA—and rather than notify the NRA, they reviewed the document and attempted to use it against the NRA in court.  When NRA counsel protested and warned Dorsey that it was engaging in misconduct, Dorsey ignored that warning for more than a week, and apparently continued to review and use the document.

Several prohibitions found in the Texas Disciplinary Rules for Professional Conduct and the American Bar Association Model Rules of Professional Conduct apply to this misconduct.

***Texas Disciplinary Rule 8.04.***  This rule states that "a lawyer shall not . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."[89] Dorsey made countless statements to the NRA and this Court without providing notice or disclosing that they were in possession of a privileged presentation, materials they knew or should have known came from AMc.

***Texas Disciplinary Rule 4.01(b).***  Rule 4.01(b) provides that: "In the course of representing a client a lawyer shall not knowing . . . fail to disclose a material fact to a third person when disclosure is necessary to avoid making the lawyer a party to a criminal act or knowingly assisting a fraudulent act committed by the client."   Here, Dorsey had possession of protected documents they knew or should have known were stolen property of the NRA upon termination of the Services Agreement.  This misconduct would also run afoul of ***ABA Model Rule 4.1*** (Truthfulness in Statements to Others).

***ABA Model Rule 4.4(b).*** This rule mandates that "[a] lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently

---

[89] The ABA Rules similarly provide that "[a] lawyer shall . . . consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law."  ABA Model Rule 1.4(a)(5).

sent shall promptly notify the sender."  The commentary states this provision has application to attorney-client privileged documents and ***"unwanted intrusions into privileged relationships, such as the client-lawyer relationship."***[90]  Dorsey received the presentation from its clients (the Defendants), and has used it in this case.  And given the documents highly confidential and privileged content, Dorsey must have known (or should have known) that Dorsey and its client should not posess that document.

<u>Finally</u>, Dorsey did not "promptly notify" the NRA and, therefore, ran afoul of this part of the rule.

These multiple violations of the ethical rules greatly support, along with all the other relevant evidence, the conclusion that Dorsey should be disqualified.  Notably, as the preamble to the Texas Disciplinary Rules notes "[t]he rules and Comments do not, however, exhaust the moral and ethical considerations that should guide a lawyer, for no worthwhile human activity can be completely defined by legal rules."[91]

The Court has the inherent power to sanction counsel and counsel's clients by disqualifying counsel.[92]  For all the reasons set forth herein, the Court should exercise its inherent powers to disqualify Dorsey as counsel for defendants.  Dorsey and defendants have acted in the utmost bad faith.  Defendants also have materially beached their contracts with the NRA, including the Services Agreement.  In addition, defendants have breached their fiduciary duties by taking possession of the NRA privileged documents, failing to disclose to the NRA that they were in possession of the NRA's privileged documents, and then sharing at least one privileged  document

---

[90] ABA Model Rule 4.4 (Respect for Rights of Third Parties).

[91] Tex. Disciplinary R. Prof. Conduct, Preamble No. 11.

[92] *See Deepwater Horizon v. BP Exploration & Production (In re Deepwater Horizon*), 824 F.3d 571, 578 (5th Cir. 2016); *Flaska v. Little River Constr. Co.*, 389 F.2d 885, 887 (5th Cir. 1968); *Lelsz v. Kavanagh*, 137 F.R.D. 646, 656 (N.D. Tex. 1991).  *See also Kleiner v. First Nat. Bank of* Atlanta, 751 F.2d 1193, 1209-10 (11th Cir. 1985).

with their counsel and using that document against the NRA in this litigation.  Defendants' flagrant breaches of their fiduciary duties, along with Dorsey's intentional breaches of their ethical and professional duties, and obligations to the Court, clearly warrant the remedy/sanction of disqualification.

C.    **Dorsey Also Should Be Subject To Monetary And Other Appropriate Sanctions.**

Federal courts have the inherent power to sanction attorneys and their clients for bad faith conduct in connection with litigation.[93]  There is no doubt that Dorsey's untoward and prejudicial conduct is worthy of monetary and other sanctions, in addition to disqualification.  As the Texas Disciplinary Rules note, "[t]he rules and Comments do not, however, exhaust the moral and ethical considerations that should guide a lawyer, for no worthwhile human activity can be completely defined by legal rules."[94]  The NRA respectfully submits that the Court should exercise its inherent powers, and sanction Dorsey for its wrongful conduct in addition to disqualification.

In addition to disqualification, the Court should give serious consideration to issuing an order to show cause why Dorsey should not be sanctioned and, as part of those proceedings, direct Dorsey and AMc:  (1) to provide the Court and the NRA with a full and complete accounting of all material facts regarding how they came into possession of Confidential Exhibit B-9; (2) to return the privileged presentation, with the document struck from the judicial record; (3) to disclose the identity of other arguably privileged documents in their possession obtained outside the ordinary discovery and how they came to possess of those materials; and (4) to provide testimony

---

[93] *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017).

[94] Tex. Disciplinary R. Prof. Conduct, Preamble No. 11.

under oath about their acquisition, review, and analysis of the presentation and other documents at issue.[95]

Dorsey's refusal to meaningfully respond to the NRA's reasonable requests for return of Confidential Exhibit B-9, or provide an explanation of how it obtained the documents demonstrates its contempt for the fair administration of justice.[96]  Therefore, the Court should use its inherent powers *to prohibit* AMc and Dorsey from using privileged information they digested over the course of their wrongful possession of the presentation, including the information they learned or derived from it. At a  minimum, the Court should also *prohibit*  discovery into the privileged matters discussed therein in this proceeding, or any other.[97]   As shown above, Confidential Exhibit B-9 discusses non-AMc legal proceedings that AMc presently seeks discovery into as part of its recent motion to compel.[98]  To remediate this inherent unfair prejudice to the NRA, the Court should *deny the tainted portions of Dorsey's motion to compel* and *order Dorsey to halt all discovery efforts into all matters not related to the claims and defense in this actions.*

Finally, the Court should exercise its inherent powers to require Dorsey to reimburse the NRA for reasonable attorneys' fees, expenses, and costs it incurred in attempting to cajole Dorsey into complying with its professional duties. If one thing is clear, Dorsey left the NRA no choice

---

[95] *Raymond*, 2017 WL 2831485, at *19 (imposing analogous evidentiary sanctions for bad faith use of privileged documents, among other things).

[96] *Richards*, 168 F. Supp. 2d at 1201-02 ("An attorney who receives privileged documents has an ethical duty upon notice of the privileged nature of the document to cease review of the documents, notify the privilege holder, and return the documents."); *In re Meador*, 968 S.W.2d at 350.

[97] *Raymond v. Spirit AeroSystems Hold., Inc.*, Case No. 16-1282-JTM-GEB, 2017 WL 2831485, at *19 (D. Kan. June 30, 2017) (prohibiting party from pursuing discovery into the matters learned from while in possession of the unauthorized privileged documents); *Harleysville Ins.*, 2017 WL 4368617 at *16 (awarding evidentiary sanctions where counsel "directly benefited from review of the privileged materials" that it would not have otherwise obtained through discovery)

[98] *See supra* note 25 and related text.

but to file its motion.  Fairness dictates that Dorsey shoulder all expenses attributable to the motion it brought upon itself.

**V.**
**<u>CONCLUSION AND REQUEST FOR RELIEF</u>**

For all the reasons stated above, the NRA respectfully requests the Court grant the Motion, disqualify Dorsey from representing AMc in this action, enter all other appropriate monetary and non-monetary sanctions against Dorsey, and grant Plaintiff NRA all other appropriate relief.

24

Dated:  April 16, 2020                    Respectfully submitted,

                                      **BREWER, ATTORNEYS & COUNSELORS**

By:    */s/ Michael J. Collins*
             Michael J. Collins, Esq.
             State Bar No. 00785493
             mjc@brewerattorneys.com
             1717 Main Street, Suite 5900
             Dallas, Texas 75201
             Telephone:  (214) 653-4000
             Facsimile:  (214) 653-1015

             **ATTORNEYS FOR PLAINTIFF AND
             COUNTER-DEFENDANT NATIONAL RIFLE
             ASSOCIATION OF AMERICA**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 16th day of April 2020.

             */s/ Michael J. Collins*
             Michael J. Collins

4819-0189-9193.35
-