# EXHIBIT 1

## SERVICES AGREEMENT

**THIS AGREEMENT**, made this 30th day of April, 2017, by and between the National Rifle Association of America (hereinafter referred to as "**NRA**"), A New York Not-For-Profit Corporation, located at 11250 Waples Mill Road, Fairfax, Virginia 22030, and Ackerman McQueen, Inc., an Oklahoma corporation, and its wholly owned subsidiary, Mercury Group Inc., an Oklahoma corporation, (hereinafter collectively referred to as "**AMc**"), whose principal office is located in Oklahoma at 1100 The Tower, 1601 N.W. Expressway, Oklahoma City, Oklahoma 73118.

### W I T N E S S E T H :

**WHEREAS**, AMc is in the business of providing comprehensive communications services including public relations, crisis management, strategic marketing, advertising and creative, as well as owned media and internet services, and warrants and represents that it possesses the capability, necessary personnel, political strength, equipment and other related items to perform such services; and,

**WHEREAS**, NRA is a Membership Organization and desires to retain AMc as a nonexclusive source for services described herein for NRA upon the terms and conditions hereinafter set forth.

**NOW, THEREFORE**, in consideration of the mutual promises and covenants set forth herein, the parties hereto agree as follows:

I. **SERVICES**

   A. **Public Relations/Crisis Management /Strategic Marketing Services**

   Services include a combination of generating earned media, responsive public relations, crisis management and strategic thinking to promote a positive image of the NRA as described below:

   - Public relations advice and counsel, including crisis management.

   - Ongoing media relations -- solicitation and placement of features in national, regional and local media; liaison with print and broadcast news media on a daily basis for unsolicited inquiries; ongoing media training for NRA officials; Editorial Board meetings; features for outdoor publications.

   - Specialized public relations writing services (news releases, columns, editorials), and distribution of same as required (e.g. via wire service or individual contact).

   - Research and information retrieval as necessary for NRA issues management at NRA's request and approval.

   - Coordination, scheduling and on-site assistance when necessary for NRA officials' speeches and personal appearances.

1

- Coordination with internal NRA public relations staff in the Executive Office, General Operations and Institute for Legislative Action.

- Development of proactive earned media in national and regional media as it relates to NRA officials' appearances at special events (i.e. National Gun Shows, YHEC, Annual Meetings, etc.).

- Coordination and scheduling appearances for NRA officials and commentators; including on-site assistance (where necessary).

- Develop, produce, and place op-ed pieces for national and regional media coinciding with Special Events and NRA Officials' appearances.

- Advise and counsel with NRA Officials on strategic issues to provoke public debate and frame NRA's point-of-view for the general public.

- Speechwriting services (pivotal speeches for major events are discussed in "Advertising/Creative Services" Section).

- Management of Talent/Spokespersons for NRATV.

- Production and staffing for NRATV.

**B.   Advertising/Creative Services**

The services described below (with the exception of "Media Planning and Placement" which is addressed separately as a subcategory of this Section) will be provided to NRA on a project ("**Job**") basis based on the fair market value of the work as determined by NRA and AMc. When reasonable time is available, cost estimates will be submitted for approval by NRA prior to the initiation of the Job.

- Speechwriting services for NRA dignitaries to be delivered at major events (includes background research, interviews with NRA Officials/Speaker, drafts and rehearsals if appropriate).

- Conceive, copywrite, design and produce local, regional, and national print and broadcast advertising and other appropriate forms of communication to present NRA's message.

- Original photography services and film processing (on location and/or in AMc's photo studio).

- Audio/Visual and Event Management services (i.e. Annual Meetings).

- Video Taping, Editing and Production.

- Music composition and arrangement and audio production.

- Primary Research services (quantitative and qualitative).

C. **Media Planning and Placement Services**

Detail of AMc's compensation for Media Services are provided in the "Compensation" Section. Services rendered for such are:

- With NRA's approval, plan and order by written contract or insertion order the print space, radio and television time, or other media to be used for advertising, always endeavoring to secure the best available rates. AMc shall remain solely liable for payment, to the extent NRA has paid AMc.

- Incorporate the advertising in the required form and forward it to media with proper instructions for fulfillment of the contract or insertion order.

- Diligently check and verify broadcasts, insertions, displays, or other means used to carry the message to ensure proper fulfillment of all media purchases made by AMc on NRA's behalf.

- For direct response paid media advertising (i.e. Infomercial), provide ongoing analysis and ROI to determine most effective media markets, dayparts, and stations on a time sensitive basis for redirection or concentration of funds as evaluation indicates.

- Carefully audit invoices and make timely payment to media and suppliers for space and time purchased by AMc on NRA's behalf.

D. **Owned Media Services**

- Full-time online broadcasting services for NRATV.

- Support services for NRATV provided by AMc Interactive include daily creation of graphics, flash animation for daily stories and synchronization to audio/video.

- Ongoing technical support service, unification, and advice for NRAHQ site (e.g. Answer to questions on service provider issues and simple "how-tos"). Application development or re-working requiring complex execution to be estimated on a project basis for NRA approval in advance of work performance.

- Full time marketing services to promote NRATV as well as on-site promotion of NRA programs, activities, and current events.

- Production of America's First Freedom Magazine.

E. **Digital Systems Operations Support**

- Technology consulting including third party solutions, cloud consulting and reviewing IS efforts.

- Reliability engineering and monitoring including performance monitoring, emergency response and overall efficiency.

3

- Resource and capacity planning for large scale hardware and software migration initiatives.

- System and database administration, maintenance, updating, monitoring and troubleshooting.

## II. COMPENSATION

### A. Public Relations/Political Strategy/Strategic Marketing Services

1. During the term of this Agreement, for ongoing Public Relations, Political Strategy and Strategic Marketing, NRA will pay AMc a fee as mutually agreed upon each year.

### B. Advertising/Creative/Media Planning and Placement Services

1. During the term of this Agreement, for ongoing study of NRA's business, including account service, creative development and other support functions in connection with the day-to-day administration and operation of NRA's account, NRA will pay AMc 15% commission of the gross media expenditure, or a 17.65% mark-up of the net media billing, for all media researched, planned, placed and administered by AMc on NRA's behalf.

2. For collateral advertising services and products purchased on NRA's behalf from external suppliers (such as separations, engravings, typography, printing, etc.), by a 15% commission if offered, or a 17.65% mark-up of net billing. Estimates of the cost of external services and products are prepared, when reasonable time is available, for approval in advance and are subject to no more than a +/-10% variance provided AMc is authorized to proceed with production within thirty (30) days of the date the estimate is presented. Client changes in job specifications usually will result in the preparation and submission of a revised estimate; however, NRA agrees to assume financial responsibility for all changes specified by NRA then executed by AMc with NRA's knowledge.

3. For art concepts, design layout, photography and film processing, copywriting, music composition and arrangement, audio and video production, etc., by cost quotations submitted for approval in advance, when reasonable time is available, or at the comprehensive art, storyboard, demo music, etc. stage. These quotations are based on the fair market value of the work as determined by AMc, and take into consideration, among other things, the hourly rates of the personnel assigned to the project and the required to complete the job. Written estimates are subject to no more than a +/- 10% variance provided they are approved by NRA and AMc is expressly authorized to proceed with production within thirty (30) days of the date the estimate is presented. Client changes in job specifications will

4

usually result in a revised estimate; however, NRA agrees to assume financial responsibility for all changes specified by NRA, then executed by AMc with NRA's knowledge.

C. **Owned Media and Internet Services**

During the term of this agreement, AMc will provide owned media and online broadcasting and website management, hosting and creation of NRATV, as well as full time marketing services. NRA will pay AMc a fee as mutually agreed upon each year.

D. **Digital Systems Operations Support**

During the term of this agreement, AMc will provide digital systems operations support. NRA will pay AMc a fee as mutually agreed upon each year.

E. **Other Projects**

If AMc undertakes, at NRA's request, additional or special assignments, not included within the services described in this project, the charges made by AMc will be agreed-upon in advance whenever possible. If no specific agreement was made, AMc will charge NRA a fair market price for the work performed.

III. **BILLING AND PAYMENT**

A. Mailing and express charges, long distance telephone calls, photocopies, deliveries, sales taxes and reasonable out-of-town travel including transportation, meals and lodging, etc. on NRA's express behalf, shall be billed at AMc's cost. All out of town travel expenses shall require prior written approval in accordance with written procedures established by the NRA Executive Vice President or his designee. Payment of travel expenses not approved in advance may result in denial of reimbursement. Expenses not listed above shall be considered to be normal business expenses of AMc and not billable to NRA unless specifically authorized in writing by the NRA Executive Vice president or his designee.

B. All sales, use and similar taxes and all import, export and foreign taxes imposed by all applicable governmental authorities shall be billed to NRA at the amount imposed by such governmental authorities. AMc shall not be obligated to contest the applicability of any such taxes to the transactions performed pursuant to this Services Agreement.

C. Fees shall be billed on or before the 5th of each month. This billing shall include costs specified in paragraph III A.

D. Special assignments not included in this Agreement which cannot reasonably be included under the monthly fee must be approved in accordance with written procedures established by the NRA Executive Vice President or his designee, and the charges made by AMc shall be agreed upon in advance, where reasonable,

otherwise such charges shall be not greater than the usual and customary charges for such services or expenses in the industry.

E. All sums payable to AMc under this Services Agreement shall be payable at AMc's corporate headquarters in Oklahoma City, Oklahoma within 30 days of the invoice date. Any amounts not received by AMc within 60 days from the date of the invoice shall bear interest at the rate of 1.0% per month from the date of the invoice until paid. NRA shall notify AMc of any questions concerning any invoices within 10 business days after receipt.

## IV. CONFIDENTIALITY

A. **AMc**

1. AMc shall not disclose, directly or indirectly, to any third party any NRA membership data or mailing lists, any materials or information relating thereto, or any other data, materials or information coming to the knowledge of AMc, supplied to AMc by NRA, or otherwise made known to AMc as a result of AMc's providing Services (hereinafter collectively, referred to as the "**Confidential Information**"), without the prior express written permission of NRA. This Services Agreement shall control AMc's providing fulfillment services to NRA.

2. AMc shall not make or cause to have made any copies of any NRA Confidential Information without the prior express written authorization of NRA.

3. AMc may use such Confidential Information only for the limited purpose of providing its Services to NRA.

4. AMc may disclose such Confidential Information to AMc's employees but only to the extent necessary to provide its Services. AMc warrants and agrees to prevent disclosure of Confidential Information by its employees, agents, successors, assigns and subcontractors.

B. AMc, its employees and agents, shall comply with any and all security arrangements imposed by NRA respecting access to Confidential Information.

C. AMc acknowledges NRA's exclusive right, title and interest in the Confidential Information, and shall not at any time do or cause to be done any act or thing contesting or in any way impairing or tending to impair any part of such right, title or interest.

D. AMc shall cease and desist from any and all use of the Confidential Information, and AMc shall promptly return to NRA, in a manner satisfactory to NRA, any and all Confidential Information, upon the earlier to occur of the following: the completion or termination of the Services Agreement.

## V. INDEMNIFICATION/INSURANCE

### A. AMc

1. AMc agrees to indemnify, defend and hold harmless NRA from and against any loss, liability and expenses including attorney's fees which NRA shall become obligated to pay in respect to: (a) materials prepared by AMc on behalf of NRA which gives rise to any claims pertaining to libel, slander, defamation, infringement of copyright, title or slogan, or privacy or invasion of rights of privacy; or (b) the public relations services and related activities of any person engaged by AMc as a spokesperson in connection with NRA and its purposes, objectives and activities ("**Spokesperson**") pursuant to the direction or supervision of AMc. Insurance coverage for the foregoing indemnification obligations shall be maintained by AMc.

2. NRA agrees to give AMc prompt notice of such claims and to permit AMc, through AMc's insurance carrier and/or counsel of AMc's choice, to control the defense or settlement thereof. However, NRA reserves the right to participate in the defense of any such claim through NRA's own counsel and at NRA's own expense.

3. AMc shall take reasonable precautions to safeguard NRA's property entrusted to AMc's custody or control, but in the absence of negligence on AMc's part or willful disregard of NRA's property rights, AMc shall not be held responsible for any loss, damage, destruction, or unauthorized use by others of any such property.

4. AMc shall not be liable to NRA by reason of default of suppliers of materials and services, owners of media, or other persons not AMc employees or contractors unless supplier(s) is under control of AMc or AMc should have reasonably anticipated default.

### B. NRA

1. NRA agrees to indemnify, defend and hold harmless AMc, and its directors, officers, employees, agents, contractors and representatives (collectively, the "**AMc Indemnified Parties**," such directors, officers, employees, agents, contractors and representatives being hereby deemed third party beneficiaries of this indemnity provision), from and against any and all claims, demands, causes of action, suits, liabilities, losses, damages settlements, judgments, and expenses (including attorney's fees), arising from (1) any data, materials, or service performance claims furnished to any AMc Indemnified Party by NRA, or approved by NRA, from which a AMc Indemnified Party prepared any publicity materials or public relations materials, or which were used by a AMc Indemnified Party in the production of advertising which was approved by NRA; (2) any claim, action or proceeding by any person(s), entity(ies), the United States of

America, any state(s), county(ies), or municipality(ies), or any department, agency, board, bureau, commission, attorney general, or other instrumentality(ies) or political subdivision(s) of any of the foregoing, seeking (a) damages (whether actual, exemplary, or both), reimbursement or other compensation for any alleged injury(ies), death(s), or private or public losses, damages or costs related to one or more incidents of violence committed with firearms, or (b) an injunction or other equitable relief with respect to the activities of a AMc Indemnified Party performed on behalf of NRA pursuant to this Agreement or otherwise requested or approved by NRA; or (3) the public relations services and related activities of any Spokesperson pursuant to the direction or supervision of NRA. Insurance coverage for the foregoing indemnification obligations shall be maintained by NRA.

2. AMc agrees to give NRA prompt notice of any matter covered by NRA's indemnity set forth above and to permit NRA, through NRA's insurance carrier and/or counsel of NRA's choice, to control the defense or settlement thereof. However, AMc and the other AMc Indemnified Parties reserve the right to participate in the defense of any such claim through the AMc Indemnified Parties' own counsel and at the AMc Indemnified Parties' own expense.

C. NRA shall reserve the right, in NRA's best interest, to modify, reject, cancel, or stop any and all plans, schedule, and work in progress. In such event AMc shall immediately take proper and responsible action to carry out such instruction; NRA, however, agrees to assume AMc's liability for agreed upon commitments and to reimburse AMc for losses AMc may derive therefrom, and to pay AMc for all internal and external expenses incurred on NRA's behalf with NRA's authorization and to pay AMc charges relating thereto in accordance with the provisions of this Services Agreement.

## VI.   OWNERSHIP OF PRODUCTS

All creative works developed by AMc in fulfilling its obligations under this Services Agreement shall constitute works made for hire, and shall be the property of NRA. In the event that such works should not be "works made for hire," as such works are defined at 17 U.S.C. § 101, then AMc transfers and assigns to NRA the ownership of all copyright in such works. In the event that AMc should employ a subcontractor, AMc shall arrange for the transfer of such intellectual property to NRA. All other, and further, intellectual property and mailing lists, under any definition, whether common law or statutory, created or developed by AMc in fulfilling its obligations under this Services Agreement, are NRA's sole and exclusive property, and AMc does hereby assign all right, title and interest in same to NRA to the extent that AMc has such rights to assign and transfer. In no event shall AMc be deemed to be assigning or transferring greater rights than it has acquired from any supplier or contractor from who it may have acquired certain elements of the material prepared for NRA.

## VII. NO COMPETITION

For the duration of this Service Agreement, AMc shall not represent any other entity in public relations services directly competitive with NRA without NRA's prior written approval.

## VIII. EXAMINATION OF RECORDS

During the term of this Services Agreement, AMc authorizes NRA, upon reasonable notice, to examine AMc and Mercury's files, books, and records, with respect to matters covered under this Services Agreement.

## IX. AUTHORIZED CONTACTS

AMc is authorized to act upon written communications received from the NRA Executive Vice President or his designee. He or his designee are the only persons within NRA who have the actual authority to issue such communications.

## X. MISCELLANEOUS

A. Severability. If any provision of this Services Agreement shall be held to be void or unenforceable for any reason, the remaining terms and provisions hereof shall not be affected thereby.

B. Binding Effect; Agents. The provisions of this Services Agreement shall inure to the benefit of and bind the heirs, legal representatives, successors and assigns of the parties hereto. In performing the Services described above and in taking any action necessarily incident thereto, AMc may utilize the services of AMc's employees and/or such agents or independent contractors approved by NRA as AMc deems appropriate.

C. Section Headings. Section headings contained in this Services Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation thereof.

D. Integrated Agreement. This Services Agreement, together with any Exhibits hereto, constitute the entire agreement between NRA and AMc relating to the matters covered by this Services Agreement at the time of its signing. This Services Agreement supersedes all prior agreements, including letter agreements and memoranda of understanding.

E. Survival. The terms, covenants, and conditions of Section IV and Section V shall survive the termination or expiration of this Services Agreement.

## XI. TERMINATION

A. This Services Agreement shall become effective upon the execution hereof.

B.  This Services Agreement shall continue in full force and effect for an initial period of eight (8) months ending 12-31-2017. After the initial period of eight (8) months, NRA or AMc may at their sole and exclusive discretion, terminate this Services Agreement, without any cause whatsoever, upon ninety (90) days written notice. Without such written notice, it is the intention of the parties that the Services Agreement will automatically renew. Any written notice to cancel this Contract shall be effective ninety (90) days from the date the Party giving notice to cancel tenders such written notice to the other Party. In the event of said termination, all further obligations of each party to perform shall cease, except as otherwise specifically provided in this Services Agreement. In said case NRA shall, pursuant to Section III, reimburse AMc for expenses incurred on NRA's behalf up to the date of termination.

C.  This Services Agreement may be terminated by NRA immediately upon written notice if: (1) AMc fails to diligently and in good faith perform any of its obligations contemplated hereunder; (2) AMc breaches any term, promise or covenant hereunder; (3) AMc files for bankruptcy; (4) there occurs any assignment for the benefit of creditors or the placement of any of AMc's assets in the hands of a trustee or receiver; (5) AMc becomes insolvent or bankrupt; (6) AMc is dissolved. If NRA so terminates this Services Agreement, NRA shall have no obligation to make payments except that NRA shall, pursuant to Section III, reimburse AMc for expenses incurred up to the date of said notice of termination.

D.  This Services Agreement may be terminated by AMc immediately upon written notice if (1) NRA fails to diligently and in good faith perform any of its obligations contemplated hereunder; (2) NRA breaches any term, promise or covenant hereunder; (3) NRA files for bankruptcy; (4) there occurs any assignment for the benefit of creditors or the placement of any of NRA's assets in the hands of a trustee or receiver; (5) NRA becomes insolvent or bankrupt; or, (6) NRA is dissolved.

E.  Upon the expiration or termination of this Services Agreement, AMc shall immediately return to NRA, to such place and in such manner as NRA may specify, any and all of NRA's property, materials, documents, Confidential Information, etc., that may be in AMc's possession. All charges for accumulating said materials shall be approved and paid in advance of receipt by the NRA. For all non-cancellable contracts entered into between AMc and third parties for the benefit of the NRA (herein "**AMc-Third Party NRA Contracts**"), the NRA agrees to pay AMc upon such expiration or termination the balance of the compensation payable under such AMc-Third Party NRA Contracts as of the date of expiration or termination so that AMc can fulfill its obligations under said Contracts after expiration or termination. If any AMc-Third Party NRA Contract(s) are cancelable upon payment of a fee and the NRA requests that such Contract(s) be cancelled, the NRA agrees to pay AMc the cancellation fees payable under such Contracts as a condition of AMc cancelling such Contract(s).

F.  In consideration of the dedication of a substantial number of personnel and resources to provide the services under this Agreement (and the necessity to

maintain such staffing levels and resource allocations to enable AMc to continue to provide such services upon any renewals hereof), the NRA agrees to pay AMc a fair and equitable termination fee to compensate it for the inevitable severances and other reasonable costs incurred in conjunction with such expiration or termination. Such termination fees shall be negotiated in good faith by the parties and paid to AMc no later than the last day of this Agreement.

G. The terms, covenants, and conditions of Section IV and Section V shall survive the termination or expiration of this Services Agreement.

XII. **GOVERNING LAW AND CONSENT TO JURISDICTION, VENUE, AND SERVICE**

A. This Services Agreement and any disputes arising thereunder shall be governed by and construed solely under the laws of the Commonwealth of Virginia, or, if applicable by federal law.

B. AMc consents and agrees that all legal proceedings relating to the subject matter of this Services Agreement shall be maintained exclusively in courts sitting within the City of Alexandria or the County or Fairfax, Commonwealth of Virginia, and AMc hereby consents and agrees that jurisdiction and venue for such proceedings shall lie exclusively with such courts. AMc furthermore consents to the exercise of personal jurisdiction by said courts over AMc.

IN WITNESS WHEREOF, and intending to be legally bound hereby, and further intending to bind their employees, agents, successors and assigns, the parties have executed this Services Agreement the day and date above written.

**National Rifle Association (NRA)**

_[signature]_
Allan D. Cors, President
Print Name/Title

**Ackerman McQueen, Inc.**

_[signature]_
Melanie Montgomery
Print Name/Title
EVP

11

Appx016