**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § |
| **Plaintiff and Counter-Defendant,** | § § |
| **and** | § § |
| **WAYNE LAPIERRE,** | § § |
| **Third-Party Defendant,** | § § |
| **v.** | § **Civil Action No. 3:19-cv-02074-G** § |
| **ACKERMAN MCQUEEN, INC.,** | § § |
| **Defendant and Counter-Plaintiff,** | § § |
| **and** | § § |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG,** | § § § § |
| **Defendants.** | § § |

<u>**PLAINTIFF'S OBJECTIONS TO THE DECLARATION OF REVAN MCQUEEN**</u>

Plaintiff National Rifle Association of America ("NRA") submits its objections to the Declaration of Revan McQueen, as follows:

**I.**

<u>**PRELIMINARY STATEMENT**</u>

The NRA objects to most of the paragraphs of the declaration ("McQueen Declaration") of Revan McQueen that defendants ("AMc" or "Defendants") submitted on March 30, 2020, with their motion to disqualify the NRA's counsel in this case. As demonstrated herein, the McQueen

Declaration is objectionable on numerous grounds.  The NRA requests that the Court sustain its objections to the McQueen Declaration.

## II.

## <u>LEGAL STANDARDS</u>

1.      Affidavits and declarations must be made on personal knowledge, must show affirmatively that the affiant or declarant is competent to testify, and must also positively and unqualifiedly represent the facts in the affidavit or declaration as true.[1]

2.      Furthermore, an affidavit or declaration that merely states conclusions rather than facts is insufficient; instead, an affidavit or declaration must contain specific facts admissible in evidence.[2]

3.      Merely reciting that an affidavit or declaration is made on personal knowledge is insufficient.[3]  Instead, the affidavit or declaration must go further and disclose the basis on which the affiant or declaration has personal knowledge of the facts asserted.[4]  To accomplish this, statements made in the affidavit or declaration need factual specificity.[5]

---

[1] *See Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir.1981) ("affidavits must affirmatively show ... that the facts stated in the affidavits are based on the affiants' personal knowledge").

[2] *See Woolverton v. Livingston*, Case No. 2:15-cv-314, 2018 WL 722833 at *1  (N.D. Tex. Feb. 2, 2018) ("Competent evidence may include…sworn affidavits made on personal knowledge that set forth admissible facts (not legal or ultimate conclusions or affidavits made upon "opinion and belief'')).

[3] *See Estate of Benitez v. Sears, Roebuck & Co.*, No. 3:13-CV-0468-D, 2013 WL 4223875 at *3 (N.D. Tex. Aug. 14, 2013) ("Mere assertions that an affiant's testimony is based on personal knowledge are insufficient.").

[4] *Id.* ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter…[a]ffidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge.'') (internal citations omitted).

[5] *See Blakely v. Andrade,* 360 F.Supp.3d 453, 492 (N.D. Tex. 2019) ("Allegations that are merely conclusory, without reference to specific facts, will not suffice.").

III.

## OBJECTIONS TO MCQUEEN DECLARATION

| No. | Defendant's Evidence | Grounds for Objection |
|---|---|---|
| 1 | Declaration of Revan McQueen (ECF No. 80) ¶ 1:<br><br>"My name is Revan McQueen . . . . The facts stated herein are true and correct, and based on my personal knowledge in my capacity as CEO of AMc." | Lack of Personal Knowledge.  The NRA objects to paragraph 1 of the McQueen Declaration because the McQueen Declaration does not demonstrate that Mr. McQueen has personal knowledge for all the statements contained in his declaration. |
| 2 | Declaration of Revan McQueen (ECF No. 80) ¶ 6:<br><br>"The McQueen family is a small and tight-knit family. Brewer has been involved in- and has been permitted intimate personal knowledge- of our family's affairs, both personal and business, for over two decades." | No Supporting Facts.  The NRA objects to paragraph 6 of the McQueen Declaration because the McQueen Declaration does not demonstrate that Mr. McQueen has personal knowledge of all the statements contained in paragraph 6.  Among other things, the McQueen Declaration provides no facts to support the statement that Mr. William A. Brewer "has been permitted intimate personal knowledge – of our family's affairs, both personal and business, for over two decades."<br><br>In fact, the McQueen Declaration provides no factual support for the statement that Mr.  Brewer obtained "intimate personal knowledge" of AMc's business based on his relationship with the McQueen family. |
| 3 | Declaration of Revan McQueen (ECF No. 80) ¶ 8:<br><br>I have personal knowledge that Brewer is the owner of a law firm (the Brewer Firm) with offices in Dallas, Texas and New York, New York.  AMc has performed marketing services for the Brewer Firm and before that the Bickel & Brewer firm.  AMC conducted interviews of many of their attorneys, including Michael | The McQueen Declaration states that "AMc conducted interviews of many of their attorneys, including Michael Collins, counsel for the NRA in this matter."  The NRA objects to this statement to the extent it creates the erroneous impression that Mr. Collins gained knowledge of AMc's business through this interview.  The interview was a number of years ago and consisted of one meeting in connection with services that AMc was providing to Bickel & Brewer, which is now known as Brewer, Attorneys & Counselors. |

| No. | Defendant's Evidence | Grounds for Objection |
|---|---|---|
| | Collins, counsel for the NRA in this matter.  I know of zero issues with the work we conducted, proof of which was that Brewer hired AMc to brand the new Brewer Firm after Bickel & Brewer ceased to exist.  Until as recently as December 2019, AMc maintained the Brewer Firm's website. | |
| 4 | Declaration of Revan McQueen (ECF No. 80) ¶ 9:<br><br>"I am also aware of Brewer voicing frequent professional criticisms about AMc's work with the NRA.  I don't believe Brewer to be and certainly have not known him to be a supporter of the Second Amendment.  Brewer, on more than one occasion, would pass judgment on the billing structure of AMc, saying the company could 'make more money if it billed hourly.'" | 1. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>2. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Lack of Personal Knowledge.  The NRA objects to paragraph 9 of the McQueen Declaration because the McQueen Declaration fails to demonstrate that Mr. McQueen has personal knowledge for the statements contained in paragraph 9.  In particular, Mr. McQueen fails to provide any information to demonstrate that he has *any* personal knowledge about alleged criticisms Brewer communicated to the NRA about AMc's work, how Mr. McQueen has *any* personal knowledge about Mr. Brewer's positions regarding the Second Amendment, or that Mr. Brewer has commented on AMc's billing structure.<br><br>Inadmissible Hearsay.  The NRA objects to paragraph 9 of the McQueen Declaration because it is based on inadmissible hearsay.  Mr. McQueen's allegations about Mr. Brewer's alleged statements criticizing AMc or how AMC could make more money if it billed hourly are based on inadmissible hearsay because they are based on out-of-court statements of an unidentified person to prove the truth of the matters asserted. |
| 5 | Declaration of Revan McQueen (ECF No. 80) ¶ 10: | 1. **Lack of Personal Knowledge (Fed. R. Evid. 602)** |

| No. | Defendant's Evidence | Grounds for Objection |
|---|---|---|
| | "I am aware of a rift between Brewer and Tony Makris, the President of the Mercury Group, Inc.  Mr. Makris formally resigned Brewer's business because of Brewer's conduct." | **2.  Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Lack of Personal Knowledge.  The NRA objects to paragraph 10 of McQueen's Declaration because the declaration fails to demonstrate how Mr. McQueen has personal knowledge for the statements contained in paragraph 10.  In particular, Mr. McQueen fails to provide any fact to demonstrate how he has personal knowledge (i) of an alleged rift between Brewer and Tony Makris and (ii) how he knows that Mr. Makris allegedly resigned Brewer's business due to Brewer's conduct.<br><br>Inadmissible Hearsay.  The NRA also objects to paragraph 10 because the statements Mr. McQueen makes in this paragraph are based on inadmissible hearsay since they are based on out-of-court statements of an unidentified person that are offered for the truth of the matters asserted. |

| No. | Defendant's Evidence | Grounds for Objection |
|---|---|---|
| 6 | Declaration of Revan McQueen (ECF No. 80) ¶ 11:<br><br>"I am also aware that Brewer has publicly held forth the theory that law firms are better suited than communication firms like AMc to perform public relations services for their clients, a theory he debated with me and Angus on numerous occasions.   I am aware that Brewer has a public relations practice within his law firm in apparent accordance with that philosophy, a fact further confirmed by team members of the Brewer Firm that specialize in public relations." | 1.  **Inadmissible Hearsay (Fed. R. Evid. 802)**<br>2.  **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br><br>Inadmissible Hearsay.  The NRA objects to the statements made in paragraph 11 of the McQueen Declaration because they are based on inadmissible hearsay since they are based on out-of-court statements of an unidentified person offered to prove the truth of the matters asserted.  Further, the statements concerning any alleged "facts" confirmed by team members of the Brewer Firm are based on inadmissible hearsay since they appear to be based on out-of-court statements of an unidentified person offered to prove the truth of the matters asserted.<br><br>Lack of Personal Knowledge.  The NRA objects to paragraph 11 because the McQueen Declaration fails to demonstrate how Mr.  McQueen has personal knowledge "that Brewer has publicly held forth the theory that law firms are better suited than communication firms like AMc to perform public relation services for their client, . . ." The NRA also objects to paragraph 11 because Mr. McQueen fails to provide any evidence to demonstrate that he has personal knowledge Mr. Brewer's public relations practice within his law firm operates in accordance with the aforementioned philosophy. |

| No. | Defendant's Evidence | Grounds for Objection |
|---|---|---|
| | | In addition, the McQueen Declaration does not demonstrate how Mr. McQueen has personal knowledge that Mr. Brewer debated with Angus on numerous occasions about Mr. Brewer's alleged thoughts about law firms about public relations.  The NRA also objects to this statement to the extent it is based on inadmissible hearsay. |
| 7 | Declaration of Revan McQueen (ECF No. 80) ¶ 12:<br><br>The first time I became aware that Brewer had been hired by the NRA was in 2018 when AMc started receiving PR emails from Travis Carter.  John Frazer ("Frazer") also informed AMc via email that Brewer had been retained to represent the NRA in a lawsuit against the Lockton Affinity Series of Lockton Affinity, LLC ("Lockton") related to the NRA's "Carry Guard" initiative and asked AMc to comply with any requests for information related to Carry Guard. Carry Guard was a short-lived program that offered training and insurance for the use of firearms in self-defense. *It is my understanding that the insurance portion, which AMc had no part in structuring from a business standpoint, was ultimately found to be illegal in several states. AMc agreed to participate with Brewer's investigation.* (Objections to portions italicized). | 1. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br>2. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>3. **Lack of Foundation (Fed. R. Evid. 602, 901a)**<br>4. **Speculation (Fed. R. Evid. 602, 701)**<br><br>Inadmissible Hearsay.  The NRA objects to the statements contained in paragraph 12 of the McQueen Declaration because they are based on inadmissible hearsay since they are based on out-of-court statements of an unidentified person offered to prove the truth of the matters asserted.<br><br>Lack of Personal Knowledge.  The NRA also objects to paragraph 12 because Mr. McQueen fails to provide any evidence to demonstrate that he has personal knowledge regarding any matter related to the Lockton lawsuit.<br><br>Lack of Foundation.  The NRA objects to paragraph 12 because Mr. McQueen's conclusory allegations because they do not appear to be based on any personal knowledge or actual evidence.<br><br>Speculation. The NRA objects to paragraph 12 because the McQueen Declaration does not demonstrate that the statements are based on Mr. McQueen's personal knowledge and appear to be nothing more than rank speculation. |

| No. | Defendant's Evidence | Grounds for Objection |
|-----|---------------------|----------------------|
| 8 | Declaration of Revan McQueen (ECF No. 80) ¶ 13:<br><br>"*Angus always directed everyone to comply with all formal directives from the NRA.*  Among many examples of cooperation and assistance, I am aware that Brewer was allowed to interview multiple AMc employees.  *During that interview, it is my understanding that he went into a targeted and unrelated (to Carry Guard) line of questioning about Angus specifically.*"  (Objections to portions italicized) | 1. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br>2. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br><br>Inadmissible Hearsay.  The NRA objects to paragraph 13 because the statements contained in this paragraph are based on inadmissible hearsay since they are based on out-of-court statements of an unidentified person offered to prove the truth of the matters asserted.<br><br>Lack of Personal Knowledge.  The NRA also objects to this paragraph because Mr. McQueen provides no evidence to support his assertion that he has personal knowledge of what occurred during the interview referenced in paragraph 13.  In fact, he does not even specify which interview he is even referring to. |
| 9 | Declaration of Revan McQueen (ECF No. 80) ¶ 15:<br><br>"From that point on, as the Carry Guard investigation progressed, Brewer began taking actions and exhibiting behavior that appeared to be unrelated to Carry Guard and increasingly aggressive toward AMc.  Wayne LaPierre ("LaPierre") informed Angus that Brewer had criticized AMc's speechwriting services with regard to a speech LaPierre directed, as was standard practice, AMc to write for Conservative Political Action Conference earlier that year." | 1. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>2. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Lack of Personal Knowledge.  The NRA objects to statements regarding Brewer's alleged aggressive actions and behavior towards AMc because Mr. McQueen fails to demonstrate how he has personal knowledge to support his statements.  In addition, Mr. McQueen fails to demonstrate how he learned this information and he does not identify what actions and behavior he is even referring to.<br><br>Inadmissible Hearsay.  The NRA also objects to the second sentence of paragraph 15 because it is based on inadmissible hearsay since the statement "Wayne LaPierre… informed Angus that…" is based on an out-of-court statement allegedly made by Mr. LaPierre to a deceased third-party (Angus McQueen), offered to prove the truth of the matters asserted.  In fact, it is based on improper double hearsay. |

| No. | Defendant's Evidence | Grounds for Objection |
|-----|---------------------|----------------------|
| 10 | Declaration of Revan McQueen (ECF No. 80) ¶ 16:<br><br>"I was made aware that LaPierre told Angus and others at AMc on more than one occasion during phone calls and in-person discussion throughout the summer of 2018 that "Brewer was going to keep him out of jail."  During conversations between AMc representatives and LaPierre, when AMc expressed concern about Brewer's strange involvement and his increasing antagonism toward AMc, it is my understanding LaPierre stated that he felt like he was "in a box," that Brewer was "crazy," and that LaPierre felt like he was "just a pawn on Brewer's chess board." | 1.  **Inadmissible Hearsay (Fed. R. Evid. 802)**<br>2.  **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br><br><u>Inadmissible Hearsay.</u>  The NRA objects to the entirety of this paragraph because it is based on inadmissible hearsay.  In particular, the statements "I was made aware that LaPierre told Angus and others… that 'Brewer was going to keep him out of jail'" are based on inadmissible hearsay since Mr. McQueen's statements are based on out-of-court statements of another, offered for the truth of the matters asserted.  In fact, the statements are based on double hearsay.<br><br>Further, the statement:  "During conversations between AMc representatives and LaPierre… it is my understanding LaPierre stated that he felt like he was 'in a box,' that Brewer was 'crazy,' and that LaPierre felt like he was just a pawn on Brewer's chess board'" are based on inadmissible hearsay since they are based on out-of-court statements of another offered to prove the truth of the matters asserted.  In fact, Mr. McQueen's statements are based on double hearsay.<br><br><u>Lack of Personal Knowledge.</u>  In addition, the NRA objects to the statements in this paragraph because the McQueen Declaration does not demonstrate that Mr. McQueen has personal knowledge of any facts to support that these statements he refers to were made, as he could not have personal knowledge of a conversation he was not even present for.<br><br>In addition, these statements are inadmissible because the McQueen Declaration does not demonstrate that Mr. McQueen has personal knowledge to support his statements. |
| 11 | Declaration of Revan McQueen (ECF No. 80) ¶ 17: | 1.  **Lack of Personal Knowledge (Fed. R. Evid. 602)** |

| No. | Defendant's Evidence | Grounds for Objection |
|---|---|---|
| | "*Brewer's interference with AMc's NRA-related business increased significantly after Angus became ill.* On July 2, 2018, Brewer sent an email on behalf of the NRA to AMc's attorney seeking additional documents and claiming that certain documents had been withheld from previous NRA requests for productions." (Objection to italicized portions). | The NRA objects to Mr. McQueen's assertion that Brewer's alleged interference with AMc's NRA-related business increased after Angus became ill because the McQueen Declaration does not demonstrate that Mr. McQueen has personal knowledge to support these statements. |
| 12 | Declaration of Revan McQueen (ECF No. 80) ¶ 18:<br><br>*In July 2018, Brewer, on behalf of the NRA, filed an Amended Complaint in the lawsuit against Governor Andrew Cuomo and others in the Northern District of New York*:  NRA v. Cuomo, et al., Case No: 18-cv-00566, United States District Court for the Northern District of New York. *In the Amended Complaint, false statements were made regarding NRATV and its alleged difficulty in securing media liability coverage.* In response, AMc's counsel wrote a letter to Brewer dated August 7, 2018 outlining the specific false statements made in the Amended Complaint and requesting that Brewer and the NRA take the appropriate steps to correct the misstatements." | 1. **Improper Opinion Testimony (Fed. R. Evid. 701)**<br>2. **Lack of Foundation (Fed. R. Evid. 602, 901a)**<br>3. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>4. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Improper Opinion Testimony. The NRA objects to Mr. McQueen's blanket assertion that the amended complaint contains false statements regarding NRATV and its difficulty in securing media liability coverage because it is improper opinion testimony.  In addition, Mr. McQueen fails to identify the statements that are alleged to be false.<br><br>Inadmissible Hearsay. The NRA objects to paragraph 18 because Mr. McQueen's knowledge of the Cuomo lawsuit appears to be based on inadmissible hearsay.<br><br>Lack of Personal Knowledge.  The NRA objects to this paragraph because the McQueen Declaration does not demonstrate that Mr. McQueen has personal knowledge of any of the statements made, as he had no personal involvement in the lawsuit.  The McQueen Declaration fails to demonstrate how Mr. McQueen has personal knowledge to support |

| No. | Defendant's Evidence | Grounds for Objection |
|---|---|---|
| | | these statements, or how he has personal knowledge of the lawsuit against Governor Andrew Cuomo |
| 13 | Declaration of Revan McQueen (ECF No. 80) ¶ 19:<br><br>"Then, on August 8, 2018, AMc received a letter from NRA Treasurer Woody Phillips ("Phillips") demanding unrestricted access to all of AMc's books and records—*which appeared to be far beyond the scope of the Carry Guard investigation.  An AMc representative then contacted Phillips to ask about the letter.  During the telephone call, Phillips confirmed that Brewer drafted the letter and that it was put in front of him to execute*. (Objections to italicized portions). | 1. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br>2. **Improper Opinion Testimony (Fed. R. Evid. 701)**<br>3. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br><br>Inadmissible Hearsay.  The NRA objects to the second and third sentences of this paragraph because they are based on inadmissible hearsay since they are based on out-of-court statements of another presented to prove the truth of the matters asserted.<br><br>Lack of Personal Knowledge.  The McQueen Declaration does not establish that Mr. McQueen has any personal knowledge of this alleged phone call (he instead states that "An AMc representative… contacted Phillips).<br><br>The NRA also objects because the McQueen Declaration fails to demonstrate how he has personal knowledge that the letter dated August 8, 2018 "appeared to be far beyond the scope of the Carry Guard investigation."<br><br>Improper Opinion Testimony.  The NRA objects because the statement that the letter dated August 8, 2018, "appeared to be far beyond the scope of the Carry Guard investigation" is improper opinion testimony. |
| 14 | Declaration of Revan McQueen (ECF No. 80) ¶ 20:<br><br>"Throughout the rest of August 2018, Brewer continued to insist AMc was withholding information and refusing to provide copies of documents, *which AMc was not* | 1. **Improper Opinion Testimony (Fed. R. Evid. 701)**<br>2. **Parol Evidence Rule**<br>3. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Improper Opinion Testimony.  The NRA objects to Mr. McQueen's statements about |

| No. | Defendant's Evidence | Grounds for Objection |
|-----|----------------------|-----------------------|
| | *required to do under the Services Agreement with the NRA. His letters and communications to AMc's attorneys became increasingly inaccurate, adversarial and incorrectly claimed that AMc was actively breaching its obligations under the Services Agreement. Angus and I both found this distressing because we knew that AMc had fully complied with every request in good faith.* (Objections to italicized portions). | AMc was not required to do because under the Services Agreement with the NRA they constitute improper opinion testimony.<br><br>The NRA also objects to Mr. McQueen's statement "[Brewer's] letters and communications… incorrectly claimed that AMc was actively breaching its obligations under the Services Agreement… [and] Angus and I both found this distressing because we knew that AMc had fully complied with every request in good faith" constitute improper opinion testimony.  Further, Mr. McQueen's assertion that Mr. Brewer's letters to "AMc's attorneys became increasingly inaccurate, adversarial." is also improper opinion testimony offered with no evidentiary support.<br><br><u>Parol Evidence Rule</u>.  In addition, Mr. McQueen's statements about the terms of the Services Agreement violate the parol evidence rule.<br><br><u>Inadmissible Hearsay</u>.  The statement that "Angus . . . found this distressing" is based on inadmissible hearsay. |
| 15 | Declaration of Revan McQueen (ECF No. 80) ¶ 22:<br><br>"It is my understanding that LaPierre, who was AMc's only designee at this time pursuant to the Services Agreement, directed AMc executives not to let Brewer have copies of anything because he feared the information would be leaked to hurt him. At this point, upon information and belief, based on our employees' interactions with Josh Powell ("Powell") (LaPierre's Chief of Staff), Brewer was working directly for Powell. This | 1. **Improper Opinion Testimony (Fed. R. Evid. 701)**<br>2. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br>3. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br><br><u>Improper Opinion.</u>  Mr. McQueen's statement that "LaPierre… was AMc's only designee at this time pursuant to the Services Agreement…" constitutes improper opinion testimony.<br><br><u>Lack of Personal Knowledge.</u>  The NRA objects to this paragraph because the McQueen Declaration does not demonstrate that Mr. McQueen has personal knowledge for the |

| No. | Defendant's Evidence | Grounds for Objection |
|---|---|---|
| | seemed to fit the narrative that LaPierre was "in a box." On more than one occasion, Powell told multiple people at AMc that he wished he could take control of the organization. One specific comment Powell made to multiple AMc employees was that he wished he could "put Wayne into a coma." It is my understanding that Brewer and Powell were very close, based in part on Powell talking to AMc representatives about how his relationship with Brewer extended past professional to personal interactions. Powell would often brag to people about his knowledge of the law that Brewer taught him. On one occasion, it is my understanding, that Powell told an AMc executive that Brewer was threatening to "have people at AMc indicted" by the Federal Bureau of Investigation under RICO (Racketeer Influenced and Corrupt Organizations Act.)" | statement "based on our employees' interactions with Josh Powell... Brewer was working directly for Powell."<br><br>Inadmissible Hearsay.  The NRA objects to the statements above about "employees' interactions with Josh Powell" because they are based on inadmissible hearsay.  The NRA objects to the alleged statements that "On more than one occasion, Powell told multiple people at AMc that he wished he could take control of the organization. One specific comment Powell made to multiple AMc employees was that he wished he could 'put Wayne into a coma'" because they are based on inadmissible hearsay since they appear to be based on out-of-court statements of another offered to prove the truth of the matters asserted.  In fact, Mr. McQueen's statements appear to be based on double hearsay.<br><br>The NRA objects to the statements about directives from Mr. LaPierre because they are based on inadmissible hearsay since they are based on an out-of-court statements of others (which Mr. McQueen does not even contend he heard), offered to prove the truth of the matters asserted. |
| 16 | Declaration of Revan McQueen (ECF No. 80) ¶ 23:<br>"Furthering Brewer's increased threatening behavior and validating Powell's<br>independent account, shortly after the initial Brewer Firm review, *Angus learned from LaPierre that Brewer was threatening to have Angus indicted for unidentified misdeeds associated with AMc's work for the NRA. This deeply upset Angus who had loved and served the NRA for most* | 1.  **Inadmissible Hearsay (Fed. R. Evid. 802)**<br>2.  **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br><br>Lack of Personal Knowledge.  The NRA objects to Mr. McQueen fails to present any admissible evidence to demonstrate how he has personal knowledge regarding how *Angus McQueen* learned of Mr. Brewer's alleged threats, making this inadmissible for lack of personal knowledge.  Similarly, the NRA objects to the statement about Angus McQueen "deeply upset" by threats of indictment, because the McQueen Declaration fails to |

| No. | Defendant's Evidence | Grounds for Objection |
|---|---|---|
| | *of his career.*" (Objections to italicized portion) | demonstrate how Revan McQueen could have personal knowledge of these alleged facts.<br><br>Inadmissible Hearsay.  The NRA objects to the statements regarding alleged threats of indictment Mr. McQueen allegedly heard from Angus McQueen, who allegedly heard from LaPierre, who allegedly heard from Mr. Brewer, because they are based on inadmissible hearsay since they are out-of-court statements of another offered to prove the truth of the matters asserted.  In fact, they are based on at least improper double hearsay. |
| 17 | Declaration of Revan McQueen (ECF No. 80) ¶ 24:<br><br>Disgusted by Brewer's and Powell's threatening behavior, Angus and I, along with a handful of other AMc executives (three of whom became named parties in the Texas litigation and one who is in separate litigation with the NRA), met with LaPierre and Craig Spray on October 11, 2018 in Dallas, Texas to discuss Brewer and Powell as well as other matters of business. This meeting was part of a larger conference to discuss whether AMc would continue to provide any services at all for the NRA the following year. *We extensively discussed Brewer's connection to the McQueen family, how inappropriate and aggressive Brewer's conduct had become, and that we felt it was inappropriate for him to continue to represent the NRA in any manner related to AMc. We also discussed Powell's threatening behavior toward AMc as well as his alleged sexual* | **1.  Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Inadmissible Hearsay.  The NRA objects to this paragraph because the alleged discussion between Mr. McQueen, Angus, and "a handful of other AMc executives" regarding Mr. Brewer's alleged connection to the McQueen family, Mr. Brewer's conduct, and his continued representation of the NRA are based inadmissible hearsay since all these statements are based on out-of-court statements of others offered to prove the truth of the matters asserted.<br><br>In addition, the NRA objects to statements regarding the alleged discussion regarding Powell's behavior and harassment because they are based on inadmissible hearsay since they are based on out-of-court statements of another offered to prove the truth of the matters asserted. |

| No. | Defendant's Evidence | Grounds for Objection |
|-----|---------------------|----------------------|
| | *harassment of one of our employees.* (Objection to italicized portions). | |
| 18 | Declaration of Revan McQueen (ECF No. 80) ¶ 25: "*I was prepared to resign the business at that meeting but LaPierre and Craig Spray assured the company that things were changing. LaPierre repeatedly asked us during the meeting to "stick with him." After this meeting, LaPierre promised to me via phone that AMc would not have to deal with Powell, Brewer or his firm anymore, and that any future review of AMc's documents would be conducted by independent parties, not Brewer or his law firm.* And in accordance with LaPierre's promise to keep Brewer away from AMc, in November 2018, an independent on site audit of AMc was conducted by NRA counsel Cooper & Kirk without issue." (Objection to italicized portion). | 1. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Inadmissible Hearsay.  The NRA objects to this paragraph because (1) the statements regarding LaPierre and Craig Spray's assurances, and (2) LaPierre's alleged statements to Mr. McQueen are based on inadmissible hearsay since they are based on out-of-court statements offered to prove the truth of the matters asserted. |
| 19 | Declaration of Revan McQueen (ECF No. 80) ¶ 26:<br><br>"Despite this brief respite from Brewer's harassment, Brewer resurfaced a few weeks later in December 2018. *Brewer knew Angus was in the process of undergoing painful radiation and chemotherapy treatment after surgery had been ruled out as an option to treat his cancer.* Angus was home for what would likely be—and was in fact—his final Christmas with his family. *On* | 1. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>2. **Improper Opinion Testimony (Fed. R. Evid. 701)**<br>3. **Parol Evidence Rule.**<br><br>Lack of Personal Knowledge.  The NRA objects to this paragraph because Mr. McQueen fails to demonstrate how he has *personal knowledge* as to what Mr. Brewer knew or did not know about Angus McQueen's medical situation.<br><br>Improper Opinion Testimony.  In addition, the NRA objects to this paragraph because |

| No. | Defendant's Evidence | Grounds for Objection |
|---|---|---|
| | *December 21, 2018, the Brewer Firm sent another letter requesting more confidential information about AMc's business, such as information about other clients, which is proprietary to AMc and not authorized in the Services Agreement.* Prior to this time, the NRA had never requested any information about AMc's other clients, including how AMc negotiated agreements." (Objections to italicized portions). | Mr. McQueen's assertion that the request on December 21, 2018, was not authorized in the Services Agreement is improper opinion testimony.<br><br>Parol Evidence Rule.  In addition, Mr. McQueen's assertions about the Services Agreement violates the parol evidence rule. |
| 20 | Declaration of Revan McQueen (ECF No. 80) ¶ 27:<br><br>"In January 2019, in a meeting with AMc, LaPierre defended Brewer and told AMc that Brewer would be writing the upcoming Conservative Political Action Conference speech. LaPierre also said that he was sending Brewer to The New York Times to threaten to sue them for a story they were writing about Russia issues, of which AMc had no knowledge and LaPierre told AMc that we "don't know what we don't know."" | 1. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Inadmissible Hearsay.  The NRA objects to the alleged statements concerning what transpired at the meeting in January 2019 because they are based on inadmissible hearsay since they are based on out-of-court statements of another offered to prove the truth of the matters asserted.<br><br>The NRA also objects to the statement that "LaPierre also said that he was sending Brewer to The New York Times to threaten to sue them for a story they were writing about Russia issues…" because it is based on inadmissible hearsay since it is based on an out-of-court statement of another offered to prove the truth of the matters asserted.<br><br>The statement "…LaPierre told AMc that we 'don't know what we don't know'" is based on inadmissible hearsay since it is based on out-of-court statements offered of another to prove the truth of the matters asserted. |
| 21 | Declaration of Revan McQueen (ECF No. 80) ¶ 31: | 1. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br>2. **Lack of Personal Knowledge (Fed. R. Evid. 602)** |

| No. | Defendant's Evidence | Grounds for Objection |
|---|---|---|
|  | During that time, April 2019, *Brewer threatened to have me and Angus indicted by the Department of Justice, which was communicated to me through a member of our family.* Brewer was also quoted in numerous media articles attacking AMc for its alleged failure to comply with the NRA's record requests. (Objections to italicized portions). | <u>Inadmissible Hearsay.</u>  The NRA objects to this paragraph because Brewer's alleged threat against Mr. McQueen and Angus, "communicated… through a member of [their] family" because it is based on inadmissible hearsay since it is based on  out-of-court statements of another offered to prove the truth of the matters asserted. <br><br> <u>Lack of Personal Knowledge.</u>  The NRA also objects to this paragraph because Mr. McQueen concedes that he has no personal knowledge that this statement was made, as it was allegedly communicated to him through a family member. In addition, he does not state who made these statements, when they were made, what in particular was said, and how he learned of them. |
| 22 | Declaration of Revan McQueen (ECF No. 80) ¶ 32: <br><br> "By early May 2019, Angus was severely ill, starting to cough up blood and show signs that the cancer was progressing. *It is my understanding that Brewer was well aware of all of this.* In mid-May 2019, Angus was hospitalized." (Objection to italicized portions) | 1.  **Lack of Personal Knowledge (Fed. R. Evid. 602)** <br><br> <u>Lack of Personal Knowledge.</u>  The NRA objects to this paragraph because Mr. McQueen's declaration fails to demonstrate how he has personal knowledge regarding what Brewer knew, if anything, regarding Angus's medical condition. |
| 23 | Declaration of Revan McQueen (ECF No. 80) ¶ 35: <br><br> "On July 11, 2019, as Angus was in hospice care and his family was traveling to see him, he read Brewer's quote in a Bloomberg article, accusing AMc of committing crimes against the NRA. *Distraught from reading the words of his son-in-law libeling* | 1.  **Relevance (Fed. R. Evid. 401, 402)** <br> 2.  **Unduly Prejudicial (Fed. R. Evid. 403)** <br> 3.  **Improper Opinion Testimony (Fed. R. Evid. 701)** <br> 4.  **Inadmissible Hearsay (Fed. R. Evid. 802)** <br> 5.  **Lack of Personal Knowledge (Fed. R. Evid. 602)** <br><br> <u>Lack of Relevancy And Unduly Prejudicial.</u> *First,* the initial portion of Mr. McQueen's |

| No. | Defendant's Evidence | Grounds for Objection |
|---|---|---|
| | *him as a criminal, Angus looked at me and told me to protect our family from Brewer who he believed would stop at nothing to attempt to destroy his family.* Less than one week later, on July 16, 2019, Angus passed away." (Objections to italicized portions). | statement "…as Angus was in hospice care and his family was traveling to see him…" is inadmissible as it fails to meet the test for relevance.  In addition, this statement is inadmissible because any probative value of this statement is substantially outweighed by the danger of unfair prejudice (i.e. by inducing purely emotional support for Defendants by introducing Angus McQueen's medical condition and the impact this had on their family), and confuses the issues (i.e. Angus McQueen's medical condition has no connection to this case).<br><br>Inadmissible Opinion Testimony.  The NRA also objects to this paragraph because Mr. McQueen's statements "Distraught from reading the words off his son-in-law libeling him as a criminal…" is improper opinion testimony.<br><br>Inadmissible Hearsay. The NRA also objects to Mr. McQueen's statement that "Angus looked at me and told me to protect our family from Mr. Brewer…"  because it is based on inadmissible hearsay since it is based on out-of-court statements of another offered to prove the truth of the matter asserted. |
| 24 | Declaration of Revan McQueen (ECF No. 80) ¶ 36:<br><br>Since the date the NRA's first lawsuit was filed against AMc on April 12, 2019, *I have personal knowledge that Brewer, using family members as channels, has attempted to communicate with me to influence AMc's litigation positions and strategy. For example, when Brewer knew that AMc was represented by counsel, he tried to direct me to "break privilege" with my own attorneys* | 1. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>2. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Lack of Personal Knowledge.  The NRA objects to this paragraph because Mr. McQueen fails to provide any evidence to demonstrate that he has personal knowledge that Mr. Brewer used family members as channels to backdoor communicate with Mr. McQueen in anyway.  In addition, he does not demonstrate who received requests from Mr. Brewer, when those requests were made, and what were the substance of the requests. |

| No. | Defendant's Evidence | Grounds for Objection |
|---|---|---|
| | *so he could tell me "how to get out of this." In addition to his threat of indictment in April 2019, through these channels, I have learned that, despite the fact that Brewer and his PR unit have supposedly been limited to certain information in the Virginia lawsuits against AMc, Brewer is still managing and overseeing "every aspect" of those cases. Based on this knowledge, I have no reason to believe any of the highly confidential information AMc has produced in the Virginia lawsuits to the NRA has actually been withheld from Brewer as ordered."* (Objections to italicized portions). | Mr. McQueen's assertion, that "Based on this knowledge…" he does not believe the Virginia information has been withheld from Brewer – is inadmissible because Mr. McQueen fails to provide any admissible evidence to establish he has personal knowledge of this statement.<br><br>Inadmissible Hearsay.  The NRA also objects to this paragraph because the assertion that Brewer allegedly tried to direct Mr. McQueen to break privilege so Brewer could tell him how he could get out of this is based on inadmissible hearsay since it is based on out-of-court statements of another offered to prove the truth of the matters asserted.  In addition, these statements are inadmissible because Mr. McQueen fails to provide any support as to how he has personal knowledge of such a statements ever being made.<br><br>In addition, the NRA objects to this paragraph because the alleged April 2019 threat of indictment [from Brewer] is based on inadmissible hearsay since it is based on out-of-court statements of another and are offered to prove the truth of the matters asserted. |
| 25 | Declaration of Revan McQueen (ECF No. 80) ¶ 37:<br><br>"Oddly, Brewer has now undertaken the representation of Grant Stinchfield ("Stinchfield")—a former AMc employee and NRATV program host who filed an affidavit on behalf of the NRA. *Not only did Stinchfield's affidavit contain false statements regarding AMc, but it was promptly leaked to the media.* AMc responded with a suit against Stinchfield for libel, | 1. **Improper Opinion Testimony (Fed. R. Evid. 701)**<br>2. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>3. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Improper Opinion Testimony.  The NRA objects to this paragraph because Mr. McQueen's assertion that "…Stinchfield's affidavit contain[ed] false statements regarding AMc…" is inadmissible since it is improper opinion testimony.<br><br>The NRA also objects to this paragraph because Mr. McQueen's statements that |

| No. | Defendant's Evidence | Grounds for Objection |
|---|---|---|
| | which is a companion case to this cause of action. *It is my understanding that Stinchfield agreed to sit down with our attorneys to discuss editing his affidavit for accuracy.* He abruptly canceled that meeting and Brewer filed his answer." | "Either out of ignorance-or because he hopes the court won't actually research his citations-Brewer cites several articles… that are actually favorable to AMc. and "Brewer Blatantly misrepresents… AMc's past client relationships, about which he had knowledge…" are inadmissible because these statements constitute *improper opinion testimony*.<br><br>Lack of Personal Knowledge.  The NRA also objects to the paragraph because Mr. McQueen's assertion that "…it was promptly leaked to the media" is inadmissible since he fails to provide any evidence to support how he may have personal knowledge for his statements.<br><br>In addition, the NRA objects to this paragraph because Mr. McQueen's assertion that Mr. Stinchfield agreed to meet to discuss editing his affidavit for accuracy is inadmissible since he fails to provide any evidence to support how he has personal knowledge of Mr. Stinchfield's alleged agreement and Mr. Stinchfield's alleged cancellation of a meeting.<br><br>Inadmissible Hearsay.  In addition, this statement is inadmissible hearsay because it is based on out-of-court statements of another offered to prove the truth of the matters asserted. |
| 26 | Declaration of Revan McQueen (ECF No. 80) ¶ 38:<br><br>"The Answer that Brewer filed, along with Ian Shaw who is a young man that I remember sharing dinner with our family and surely benefitted from hearing business that was discussed, on behalf of Stinchfield demonstrates Brewer's animus toward AMc. Either out of ignorance—or because he hopes | 1. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br>2. **Improper Opinion Testimony (Fed. R. Evid. 701)**<br><br>The NRA objects to the statements concerning the purported dinner discussion relating to the business of Mr. Stinchfield because it is based on inadmissible hearsay since it is based on out-of-court statements of another offered to prove the truth of the matters asserted. |

| No. | Defendant's Evidence | Grounds for Objection |
|-----|---------------------|----------------------|
|  | the court won't actually research his citations—Brewer cites several articles to support the Stinchfield Answer that are actually favorable to AMc. Brewer blatantly misrepresents the circumstances of some of AMc's past client relationships, about which he had knowledge as they happened because of his family connection. Further, one of the claims made in the Answer does not apply to AMc at all, which, in my opinion, clearly shows that Brewer was willing to hurt AMc's business and Angus's legacy with anything he could invent. This is also evident, in my opinion, by how quickly Brewer filed the amended response that oddly deleted a libelous quote, falsely attributed to Angus, included in the first filing. This filing appears to be a manipulation of Stinchfield and it is clear that Brewer simply used it as a way to continue his personal attack on Angus. It is my belief that Brewer is only representing Stinchfield pro bono to seize the opportunity to destroy Angus's honor and legacy as well as his business competitor, AMc, with a twisted revisionist history and the false attribution of quotes to a man who can no longer speak for himself." |  |
| 27 | Declaration of Revan McQueen (ECF No. 80) ¶ 39:<br><br>"As the brother-in-law of Brewer, I believe that it is profoundly unfair | 1. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>2. **Lack of Relevance (Fed. R. Evid. 401, 402)** |

| No. | Defendant's Evidence | Grounds for Objection |
|-----|---------------------|----------------------|
| | and highly prejudicial for AMc to have to litigate this matter against Brewer and his firm. *His intimate knowledge of our family allows the Brewer Firm to engage in sending messages to me using family members instead of communicating through my attorneys. Brewer had detailed knowledge of Angus's cancer treatment and used that information to time his litigation and media attacks. He denied our family uninterrupted time with our father during his final year of life and damaged some of the last moments between Angus and his family.* As the CEO of AMc, who is the party in this litigation and directs litigation strategy, I am often forced to consider the implications of AMc's actions which may impact my sister and her children, whom I care about deeply." (Objections to italicized portions). | <u>Lack of Personal Knowledge.</u> The NRA objects to this paragraph because Mr. McQueen's assertion that Brewer's intimate knowledge of his family allows the Brewer Firm to engage in sending messages directly to him through family members instead of through his attorneys merely speculates to the possibility that this may occur. The McQueen Declaration fails to demonstrate how Mr. McQueen has personal knowledge to support these statements.<br><br>The NRA also objects to this paragraph because Mr. McQueen's assertion that "Brewer had detailed knowledge of Angus's cancer treatment and used that information to time his litigation and media attacks" is also inadmissible because the McQueen Declaration does not demonstrate how Mr. McQueen has personal knowledge to come to this conclusion.<br><br><u>Lack of Relevance.</u> In addition, Mr. McQueen's assertion that "[Brewer] denied our family uninterrupted time with our father during his final year of life and damaged some of the last moments between Angus and his family" is inadmissible because it has no relevance to this matter. |

Dated:  May 4, 2020

Respectfully submitted,

**BREWER, ATTORNEYS & COUNSELORS**

By:     */s/ Michael J. Collins*
Michael J. Collins, Esq.
State Bar No. 00785493
mjc@brewerattorneys.com
Alessandra P. Allegretto
Bar No. 24109575
apa@brewerattorneys.com
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone:  (214) 653-4000
Facsimile:  (214) 653-1015

**ATTORNEYS FOR THE PLAINTIFF AND
COUNTER-DEFENDANT  NATIONAL RIFLE
ASSOCIATION OF AMERICA AND WAYNE
LAPIERRE**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing document was electronically

served via the Court's electronic case filing system upon all counsel of record on this 4th day of

May 2020.

*/s/ Michael J. Collins*
Michael J. Collins