IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA,<br><br>    Plaintiff and Counter-Defendant<br><br>and<br><br>JAMES MCCORMACK,<br><br>    Third-Party Defendant,<br><br>v.<br><br>ACKERMAN MCQUEEN, INC.,<br><br>    Defendant and Counter-Plaintiff,<br><br>MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG,<br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § Civil Action No. 3:19-cv-02074-G |

## DEFENDANTS' OBJECTIONS TO DECLARATION OF JAMES MCCORMACK

Defendants Ackerman McQueen, Inc., Mercury Group, Inc., Henry Martin, William Winkler, Melanie Montgomery, and Jesse Greenberg (collectively, "***Defendants***") submit their objections to the Declaration of James McCormack as follows:

### I.  PRELIMINARY STATEMENT

1.  Defendants object to the declaration of James McCormack ("***McCormack Declaration***") that the NRA ("***Plaintiff***" or "***NRA***") submitted on May 4, 2020, in support of its Motion to Disqualify ("***Motion to Disqualify***") Defendants' Counsel, Dorsey & Whitney, LLP

("*Dorsey*"). As demonstrated herein, the McCormack Declaration is objectionable and inadmissible on numerous grounds. Defendants request that the Court sustain its objections to the McCormack Declaration and exclude his testimony and opinions contained therein in ruling on Plaintiff's Motion to Disqualify.

## II. INTRODUCTION

2. James McCormack ("*McCormack*") is an attorney specializing in the field of legal ethics and legal malpractice who was paid by Plaintiff to give opinions in support of its Motion to Disqualify specifically related to Dorsey's acquisition and use of a PowerPoint presentation ("*Exhibit B-9*")[1] over which Plaintiff claims privilege. However, McCormack's proposed testimony is nothing more than a recitation of the law, the application of selected facts to the law, and legal conclusions derived from those facts. In other words, the McCormack Declaration is not an expert report—it's advocacy, which does not meet the legal standard for expert testimony under Federal law.

## III. FAILURE TO DISCLOSE

3. As a preliminary matter, Defendants object to the Court's consideration of the McCormack Declaration because Plaintiff did not disclose all documents reviewed or relied upon by McCormack in forming his opinions. In paragraph 27 the Declaration, McCormack states that he reviewed a "transcript of the January 5, 2019 board meeting at which the [Exhibit B-9] was given in closed session, and it is clear that only a select few parties were invited to remain in the room for that closed session." Although requested to do so, Plaintiff's counsel refused to disclose this transcript.[2] Yet the opinions provided in the McCormack Declaration rely largely upon the

---

[1] The PowerPoint presentation was originally filed as Exhibit B-9 in support of AMc's Response to the NRA's Motion to Compel. At the request of the NRA, it was later withdrawn.
[2] ECF 128 at Ex. A ¶ 6.

events of January 5, 2019, making this transcript a critical piece of evidence, which should have been disclosed and produced before the filing deadline for this Response to avoid unfairly prejudicing Defendants' ability to respond fully to Plaintiff's Motion.

4.     Rule 26(a)(2)(B)(ii) requires disclosure of the facts or data considered by the expert witness in forming his opinions.  The Northern District has interpreted this as a requirement that all documents relied upon or even considered—even if ultimately NOT relied upon—in formulating an expert's opinion must be cited in the expert's report and produced.  *See Brimer v. Chase Bank, U.S.A., N.A.*, No. 7:10-CV-7-O, 2011 U.S. Dist. LEXIS 163292, at *7 (N.D. Tex. Jan. 13, 2011); *Lofton v. McNeil Consumer & Specialty Pharm.*, No. 3:05-cv-1531, 2008 U.S. Dist. LEXIS 94391, at *10 (N.D. Tex. July 25, 2008).  If a party fails to provide information or identify a witness as required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

5.     Accordingly, because the January 5, 2019, transcript was not produced, Defendants object to the "use" of the McCormack Declaration by the Court or by the Plaintiff in any manner in ruling on Plaintiff's Motion.  Defendants ask the Court to sustain this objection.

## IV.   ALTERNATIVE REQUEST FOR LEAVE TO SUBMIT COUNTER-DECLARATION

6.     In the event that the Court overrules Defendants objections to the McCormack Declaration, Defendants ask that that Court consider the Counter-Declaration of expert witness, C. Randal "Randy" Johnston, attached as Exhibit F to Defendants' Response, to address the numerous errors of fact and law contained in the McCormack Declaration.

## V. LEGAL STANDARDS

7. The substance of the McCormack Declaration centers on the application of evidentiary privileges, ultimately opining that (1) the Exhibit was indeed privileged, (2) that Dorsey owed (and breached) certain legal duties with regard to the Exhibit, and ultimately (3) that Dorsey should be disqualified. Defendants object to each of these legal conclusions and ask the Court to sustain Defendants' objections and disregard the testimony.

8. Issues of privilege are a mixed question of fact and law, with the judge charged both with finding the facts and applying the law to those facts.[3] Yet even when the judge sits as the fact-finder, the basic framework established by the Federal Rules of Civil Procedure still governs the issue of admissibility of expert testimony.[4]

9. Under Rule 702 an expert witness may provide opinion testimony only if (1) he is qualified, (2) if the testimony is based on sufficient facts or data, (3) if the testimony is the product of reliable principles and methods, (4) the methods have been reliably applied to the facts, and, most importantly, (5) if the expert's knowledge will be helpful to the fact-finder.[5] Rule 702 assigns to the trial judge "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."[6] Opinion testimony that is not grounded in reliable methods is nothing more than "subjective belief or unsupported speculation.[7]

---

[3] *See Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 2020 U.S. App. LEXIS 13230, *7-8 (5th Cir. Tex. April 24, 2020).

[4] *See, e.g.*, *In re Wyly*, 552 B.R. 338, 359 (Bankr. N.D. Tex. 2016) (although the court's gatekeeping role is diminished when sitting as the fact-finder, admissibility of expert testimony is still subject to the constraints of Rule 702 and *Daubert*).

[5] FED. R. CIV. P. 702.

[6] *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999).

[7] *Id.* at 590.

10.     Although experts are not generally prohibited from testifying as to the "ultimate issue" to be decided by the trier of fact,[8] it is well-established in the Fifth Circuit that experts may not offer legal opinions or advise the court on how the law should be interpreted or applied to the facts in a case.[9]  In fact, allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both "invades the court's province and is irrelevant."[10]  Accordingly, legal conclusions are neither helpful nor relevant to the fact-finder and must be disregarded.

11.     Likewise, even when addressing matters of fact, if the expert merely restates facts that any layperson would be able to easily comprehend, it is improper subject matter for expert testimony.[11]  When a fact-finder is capable of assessing an issue, expert testimony on the matter is a "needless presentation" because it would not assist the trier of fact by making any fact more or less likely.[12]

12.     Federal courts have repeatedly recognized the special problems that arise when lawyers purport to testify as "expert" witnesses.  Although lawyers are permitted to present expert testimony in matters of fact,[13] a lawyer's testimony will be excluded when it contains opinions on the meaning of the law or its application to the facts of the case.[14]  Critically, an expert must provide the fact-finder with "something *more* than what lawyers could offer in argument.[15]

---

[8] FED. R. CIV. P. 704(a).
[9] *See Estate of Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999); *Askanase v. Fatjo*, 130 F.3d 657, 672-73 (5th Cir. 1997); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).
[10] *Vanderbilt Mortg. & Fin., Inc. v. Flores*, No. C-09-312, 2010 U.S. Dist. LEXIS 116434, *13 (S.D. Tex. Nov. 1, 2010) (quoting *Owen*, 698 F.2d at 240).
[11] *See Albert Sidney Johnston Chapter v. Nirenberg*, No. SA-17-CV-1072-DAE, 2018 U.S. Dist. LEXIS 179561, at *8-9 (W.D. Tex. Oct. 18, 2018) (quoting Advisory Committee Notes for Rule 702*).*
[12] *Crow v. United Benefit Life Ins. Co.*, No. 3:00-CV-1375-G, 2001 U.S. Dist. LEXIS 2993, *8 (N.D. Tex. Mar. 16, 2001).
[13] *Waco Intern., Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 533 (5th Cir. 2002).
[14] *See, e.g. Estate of Sowell*, 198 F.3d at 171-72; *Askanase*, 130 F.3d at 673; *Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 197-98 (5th Cir. 1996); *Crow*, 2001 U.S. Dist. LEXIS 2993, 2001 WL 285231, *2-3.
[15] *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986) (emphasis added)).

13. Courts in the Fifth Circuit have prohibited testimony on a variety of legal conclusions. For example, the testimony of renowned grammarian, Bryan Garner, was excluded because his testimony contained his grammatical opinion regarding the language of a contract.[16] Despite the fact that Mr. Garner is one of the foremost experts on grammar and English usage, because interpretation of a contract is a question of law, the court found that "Mr. Garner's opinion is no more helpful or relevant to the Court than would be any other lawyer's opinion."[17]

14. Similarly, a court excluded a lawyer's opinion testimony opining on the issue of due process.[18] The court found that the lawyer merely presented facts that any layperson could understand, further noting that his opinion "reads more like a section of a summary judgment brief than an expert report and expresses nothing more than his legal opinion."[19]

15. Fifth Circuit courts have consistently prohibited testimony containing legal conclusions regarding (1) the legal standards governing a case,[20] (2) a person's state of mind or reasonableness of conduct,[21] (3) the evaluation of evidence,[22] (4) whether a legal duty was

---

[16] *Diamondback Indus. v. Repeat Precision, LLC*, No. 6:19-CV-00034-ADA, 2019 U.S. Dist. LEXIS 226483, at *9 (W.D. Tex. Aug. 20, 2019).
[17] *Id.*
[18] *See Albert Sidney Johnston Chapter*, 2018 U.S. Dist. LEXIS 179561, at *9 (lawyer as expert witness improperly opined that plaintiff's due process rights were not violated).
[19] *Id.*
[20] *See, e.g.*, *In re Wyly*, 552 B.R. at 359-60 (court excluded testimony of lawyer who was expert in trust and estate tax regarding current and former legal standards reasoning that the court was "capable of determining the law applicable to the [case] on its own); *Vanderbilt*, 2010 U.S. Dist. LEXIS 116434, at *18 (excluding testimony of real estate attorney regarding the legal standard he believed applied to the case).
[21] *See, e.g.*, *Sowell*, 198 F.3d at 171-72 (holding that an expert's legal opinion regarding the reasonableness of a fiduciary's conduct was correctly excluded); *Salas*, 980 F.2d at 305 (holding that expert testimony that party acted with "conscious disregard" or "deliberate indifference" was improper legal opinion); *Green v. CBS Broad., Inc.*, No. 3:98-CV-2740-T, 2000 U.S. Dist. LEXIS 19962, at *12 (N.D. Tex. Dec. 19, 2000) (excluding expert's legal conclusion that party's conduct was "negligent" and "malicious").
[22] *See, e.g.*, *Deaf Interpreter Servs. v. Webbco Enters., L.L.C.*, No. 5:13-867-RCL, 2015 U.S. Dist. LEXIS 181339, *11-12 (W.D. Tex. Feb. 11, 2015) (holding that attorney specializing in intellectual property law was prohibited from offering opinions involving evaluation of the evidence and applying the law to that evidence regarding existence of party's "fair use" defense).

breached.[23] In the present case, the McCormack Declaration provides opinion testimony on all of the above.

16. As set forth in the table below, McCormack's opinions purport to establish the legal standards governing the case and the unreasonableness of Dorsey's conduct by evaluating the evidence himself and opining the breach of a legal duty. Each and every one of these opinions and conclusions invades the province of the Court, sitting both as fact-finder and judge in this matter. Defendants object to the McCormack Declaration and ask the Court to exclude it in its entirety.

## VI.   OBJECTIONS TO DECLARATION

17. For the Court's convenience, the following table outlines Defendants' primary objections to the McCormack Declaration. Each objection is defined as follows:

> **Factual Recitation**: The McCormack Declaration does not set out any facts different than those set out, or which could have been set out, by Plaintiff. Defendants object to McCormack's recitation of facts which have already been briefed by Plaintiff's counsel, and which are understandable to any layperson, thus not requiring specialized knowledge or explanation of an expert.[24]

> **Legal Conclusion**: The McCormack Declaration contains numerous legal opinions, including but not limited to the applicable law, the existence of privilege, Dorsey's breach of legal and ethical duties, and his ultimate conclusion that Dorsey should be disqualified. Defendants object to testimony containing legal opinions which purport to announce, recite, interpret, or draw conclusions from the law, which invades the province of the judge.[25]

> **Evaluation of Evidence**: The McCormack Declaration includes McCormack's subjective evaluation of the evidence in a manner that does not make any fact of consequence more or less likely. Rather McCormack makes numerous conclusory statements about the content or importance of certain facts and Dorsey's subjective

---

[23] *See, e.g.*, *Askanase*, 130 F.3d at 672-73 (excluding expert's determination that plaintiff's due process rights were not violated); *Owen*, 698 F.2d at 240 (excluding testimony on ultimate issue of whether plaintiff was contributorily negligent), *Albert Sidney Johnston Chapter*, 2018 U.S. Dist. LEXIS 179561, at *9, *Crow*, 2001 U.S. Dist. LEXIS 2993, *2-3 (excluded legal conclusion that insurance company had breached duty of good faith and fair dealing); *Babin v. Plaquemines Parish*, 421 F. Supp. 3d 391, 397 (E.D. La. October 25, 2019) (excluding attorney opinion letters providing opinion's on defendant's compliance with Fair Labor Standards Act).
[24] *See Albert Sidney Johnston Chapter v. Nirenberg*, No. SA-17-CV-1072-DAE, 2018 U.S. Dist. LEXIS 179561, at *8-9 (W.D. Tex. Oct. 18, 2018) (quoting Advisory Committee Notes for Rule 702*).*
[25] *See Estate of Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999); *Askanase v. Fatjo*, 130 F.3d 657, 672-73 (5th Cir. 1997); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

intent or mindset, largely operating under the assumption that the Brewer Firm (the party who paid him) is telling the truth and acted reasonably, while Dorsey (who did not pay him) is lying and acted unreasonably. Defendants object to McCormack's analysis regarding weight or credibility of evidence, which invades the province of the judge sitting as fact-finder.[26]

**Advocacy**: Defendants object to McCormack's application of the law to the facts in a manner that is most advantageous to Plaintiff by highlighting only the facts and law deemed most relevant by McCormack—reading more like a summary-judgment brief written by a zealous advocate rather than an impartial expert. McCormack does not bring anything more to Plaintiff's Motion to Disqualify than what lawyers could offer in argument.[27]

**Speculation**: Defendants object to McCormack's gratuitous opinions and commentary that are not derived from any reliable method but represent only a subjective belief or unsupported speculation.[28]

| NO. | DEFENDANT'S EVIDENCE | GROUNDS FOR OBJECTION |
|---|---|---|
| 1. | Declaration of James McCormack (ECF 122) ¶¶ 10 - 24:<br><br>Summary of Relevant Facts | **Factual Recitation; Advocacy** |
| 2. | Declaration of James McCormack (ECF 122) ¶ 25:<br><br>Exhibit B-9 is an attorney-client privileged communication among the NRA and its counsel, the Brewer Firm. | **Legal Conclusion** |
| | Not only is Exhibit B-9 plainly marked on each of its pages as confidential attorney work product and privileged—the substance of the presentation clearly discusses, among other matters, litigation strategy and options. | **Factual Recitation; Evaluation of Evidence** |
| | The document contains legal advice and opinions by the NRA's counsel. | **Factual Recitation; Evaluation of Evidence** |
| | It also includes discussion of a confidential litigation settlement. | **Factual Recitation** |
| | The "Speaker Notes" that accompany the slides are even more detailed and discuss other, still-ongoing settlement negotiations. | **Factual Recitation; Advocacy** |

---

[26] *See Vanderbilt*, 2010 U.S. Dist. LEXIS 116434, *13 (quoting *Owen*, 698 F.2d at 240).
[27] *See Salas*, 980 F.2d at 305; *Crow*, 2001 U.S. Dist. LEXIS 2993, *2-3.
[28] *See Daubert*, 509 U.S. at 590.

| | | |
|---|---|---|
| | It is difficult to imagine how able counsel could believe or assert, in good faith, that Exhibit B-9 does not satisfy the prima facie elements of attorney-client privilege or the work product doctrine. | **Evaluation of Evidence; Advocacy; Speculation** |
| | It is a communication by outside counsel to the client, marked "*Attorney Work Product [,] Privileged and Con/idential* (sic)" which provides legal advice regarding pending and anticipated litigation. | **Factual Recitation** |
| 3. | Declaration of James McCormack (ECF 122) ¶: 26 | |
| | There are *some* similarities between Exhibit B-9 (the privileged Presentation to the NRA Board in executive session) and the January 4, 2019, Public Affairs Committee presentation that the Dorsey Firm purported to confuse with the one in Exhibit B-9, because both refer to media coverage of NRA-related litigation. | **Factual Recitation; Evaluation of Evidence** |
| | However, there are also notable differences, which are difficult to overlook in any assessment of attorney-client privilege. | **Factual Recitation; Evaluation of Evidence; Advocacy; Speculation** |
| | Even a quick glance at the very first slide in each presentation (*i.e.*, the title screen) reveals that one of them is entitled "*Public Affairs Committee: Protecting and Advancing the NRA's Reputational Interests*," while the other is an "*Executive Briefing*" encompassing "*Legal*" and "*Regulatory*" issues. | **Factual Recitation; Evaluation of Evidence** |
| | The two presentations accurately bear <u>different</u> dates. | **Factual Recitation** |
| | The Public Affairs presentation contains sparse "Speaker Notes" dealing with the public affairs issues, while the PowerPoint attached as Exhibit B-9 contains extensive "Speaker Notes" including, "*This entire executive session is <u>privileged</u> and <u>confidential</u>, but the terms of [redacted] are especially so*," as well as legal advice regarding discovery prefaced by the comment, "*For the nonlawyers in the room…*". | **Factual Recitation** |
| | The Public Affairs Presentation concerns itself with "PR Advocacy," while Exhibit B-9 very obviously contains litigation strategy. | **Factual Recitation; Evaluation of Evidence; Advocacy; Speculation** |
| 4. | Declaration of James McCormack (ECF 122) ¶ 27: | |

| | | |
|---|---|---|
| | Under the circumstances apparent here, the Dorsey Firm cannot justify its conduct on the ground that the Presentation was purportedly disclosed. | **Legal Conclusion; Evaluation of Evidence; Advocacy** |
| | I have reviewed a court reporter's transcript of the January 5, 2019 board meeting at which the Presentation was given in closed session, and it is clear that only a select few parties were invited to remain in the room for that closed session. AMc was not among them. | **Factual Recitation; Evaluation of Evidence; Advocacy** |
| | If an AMc technician was briefly entrusted with a portable digital drive for purposes of performing technical "setup," this would not have waived privilege, especially because the NRA's contract with AMc-which forbade AMc from using or copying the NRA's confidential information without the NRA's consent-gave the NRA a more- than-reasonable expectation of that AMc would not view, copy, or retain the PowerPoint file unless so-instructed. | **Legal Conclusion; Evaluation of Evidence; Advocacy** |
| | Waiver would also require a finding that the Presentation was disclosed voluntarily to a third party and not just inadvertently disclosed by an employee of the NRA's outside law firm to another agent (AMc) of the same client. | **Legal Conclusion; Advocacy** |
| | The May 2019 and April 2020 Declarations of Travis Carter and Andrew Arulanandam referenced above are factually consistent with no voluntary waiver of privilege having occurred. | **Legal Conclusion; Evaluation of Evidence; Advocacy** |
| | In light of these facts and circumstances, it is ethically indefensible for counsel to presume waiver cavalierly and treat a facially privileged document as nonprivileged based on that presumption. | **Legal Conclusion; Evaluation of Evidence; Advocacy; Speculation** |
| 5. | Declaration of James McCormack (ECF 122) ¶ 28: | |
| | Separate and apart from the common-law fiduciary and contractual duties owedby AMc to the NRA, the Dorsey Firm had an ethical duty to act appropriately when it encountered a document likely to be privileged. | **Legal Conclusion** |
| | In Texas, an attorney's obligations upon encountering an adversary's potentially privileged information depend upon whether the information surfaces within, or outside, the ordinary course of discovery. | **Legal Conclusion** |

|   | | |
|---|---|---|
|   | If the Presentation had been inadvertently disclosed within the ordinary course of discovery-*i.e.*, if the NRA had erroneously included it in a document production to AMc-Dorsey's conduct would be governed by other authority. | **Legal Conclusion** |
|   | But here, Dorsey did **not** receive this presentation through discovery. | **Factual Recitation** |
|   | Therefore, Dorsey's obligations are governed by *In re Meador*, 968 S.W.2d 346 (Tex. 1998) | **Legal Conclusion** |
| 6. | Declaration of James McCormack (ECF 122) ¶ 29: | |
|   | In *Meador*, the Texas Supreme Court concluded that a lawyer who receives an opposing party's privileged materials outside the course of discovery is obligated to alert the opposing party of this receipt and return those privileged materials to that party. | **Legal Conclusion** |
|   | The Court considered whether a lawyer receiving an opponent's privileged materials outside of discovery must be disqualified. | **Legal Conclusion** |
|   | The Court concluded that a lawyer could be disqualified upon consideration of several relevant factors. Those factors are [listed] | **Legal Conclusion** |
| 7. | Declaration of James McCormack (ECF 122) ¶ 30: | |
|   | Exhibit B-9 was plainly marked as privileged, confidential, and work product on each of its 19 pages. | **Evaluation of Evidence; Advocacy** |
|   | Neither AMc nor its counsel could have missed those obvious legends throughout the document. | **Evaluation of Evidence; Advocacy; Speculation** |
|   | Further, if the accuracy of these legends was doubtful, even a cursory review of the first few pages of the PowerPoint presentation would have revealed its clearly privileged nature; however, a document plainly marked as this one should have been entitled to careful handling from the outset, including not reviewing the contents and promptly notifying the NRA's counsel that a document purporting to be privileged was in AMc's possession. | **Evaluation of Evidence; Advocacy; Legal Conclusion** |
| 8. | Declaration of James McCormack (ECF 122) ¶ 31: | |

|  | | |
|---|---|---|
|  | The Dorsey Firm never notified the NRA or its counsel that it possessed a clearly labeled privileged communication. | **Factual Recitation; Advocacy** |
|  | Instead, the Dorsey Firm only acknowledged its possession of this particular document belatedly-after six weeks of inquiries by the NRA's counsel-and only after initially asserting-incorrectly--that Exhibit B-9 was a public presentation given the day before. | **Factual Recitation; Advocacy** |
| 9. | Declaration of James McCormack (ECF 122) ¶ 32: Although the full extent of the Dorsey Firm's review and use of Exhibit B-9 is unknown (the Dorsey Firm did not disclose that pertinent information in its brief reply correspondence), *someone* at the Dorsey Firm reviewed and digested this document in order to attach it to AMc's Response to the NRA Motion to Compel-or else, no one at the Dorsey Firm was in charge of AMc's Response and Exhibit B-9 was randomly selected for inclusion in its submission to the Court (which would be a peculiar admission for the Dorsey Firm to make). | **Factual Recitation; Advocacy** |
| 10. | Declaration of James McCormack (ECF 122) ¶ 33: The NRA has denied AMc's repeated allegations that the Brewer Firm attempted to "steal" AMc's public relations business, or that those allegations are relevant to this suit; nonetheless, it is clear that AMc and its counsel, the Dorsey Firm, continue to press those arguments in this case-including in its recent motion to disqualify the Brewer Firm. | **Factual Recitation; Evaluation of Evidence; Advocacy** |
|  | So, while the NRA may dispute the relevance of Exhibit B-9 to this lawsuit, that dispute does not change the fact that Exhibit B-9 is plainly privileged and confidential-and that AMc is defending itself, in part, on a "*Brewer Firm is stealing our public relations business*" defensive theory. | **Factual Recitation; Legal Conclusion; Advocacy** |
|  | In addition, the privileged information contained in Exhibit B-9 discussing the strengths and weaknesses of the NRA's *other* legal matters could (and apparently has already) provided AMc with a roadmap for seeking documents concerning non-AMc legal disputes in the hope of obtaining | **Factual Recitation; Advocacy; Speculation** |

| | | |
|---|---|---|
| | documents unfavorable to the NRA and/or to develop AMc's defensive claims substantively in this litigation. | |
| 11. | Declaration of James McCormack (ECF 122) ¶ 34:<br><br>The Declarations of Travis Carter and Andrew Arulanandam do **not** support a finding that the NRA or its counsel is at fault for any unauthorized release of the Privileged Presentation—nor does the Dorsey version of the facts—contained in its letters referenced above support a voluntary waiver of privilege. | **Evaluation of Evidence; Advocacy** |
| | Under either version of the facts, a representative of the NRA's counsel provided a copy of the privileged presentation to AMc's tech person for the limited purpose of putting that PowerPoint on a computer in preparation for the Brewer Firm to make its privileged presentation to its client. | **Factual Recitation; Evaluation of Evidence; Advocacy** |
| | Since AMc was also an agent with an obligation to keep information owned by the NRA confidential at the time, this is certainly not waiver of any privileges. | **Legal Conclusion; Evaluation of Evidence** |
| | It is surprising that the Dorsey Firm would claim otherwise. | **Advocacy** |
| 12. | Declaration of James McCormack (ECF 122) ¶ 35:<br><br>Finally, the NRA is prejudiced by its opposing party's unauthorized possession and repeated filing, through the Dorsey Firm, of this privileged document. | **Legal Conclusion; Advocacy** |
| | At a minimum, the use of this document in a Court filing had the potential to unfairly compromise the NRA's legal strategies in other cases. | **Legal Conclusion; Evaluation of Evidence** |
| | It is inexplicable how the Dorsey Firm would not have immediately recognized the privileged nature of this document and acted to promptly alert the NRA's counsel to this fact in 2019 or whenever it first reviewed the material. | **Advocacy; Speculation; Evaluation of Evidence** |
| | Then, to compound its failure to comply with its obligations, the Dorsey Firm spent six weeks during February to April 2020, being largely non- responsive to the NRA's reasonable requests for an explanation. | **Advocacy; Evaluation of Evidence; Factual Recitation** |
| | Only at that end of that six-week period did the Dorsey Firm finally roll-out an implausible claim of "waiver" to justify its | **Factual Recitation; Evaluation of Evidence;** |

| | | |
|---|---|---|
| | silence over the entire period of its possession (however long that might be) and its ultimate use of Exhibit B-9 in two filings with this Court. | **Advocacy; Speculation** |
| 13. | Declaration of James McCormack (ECF 122) ¶ 36:<br><br>Although disqualification is a severe remedy, the Dorsey Firm's refusal to respond to the repeated-and justified-NRA requests for the withdrawal of Exhibit B-9, its failure to respond to inquiries regarding whether it (or AMc) possesses other privileged materials, its indefensible explanation of how the Firm acquired this privileged document, and the obvious prejudice to the NRA by having its confidences with its attorneys compromised all argue in favor of disqualification. | **Legal Conclusion; Evaluation of Evidence; Advocacy** |
| | Disqualification is, in itself, remedial, rather than punitive. | **Legal Conclusion** |
| | The purpose of disqualification is either to prevent or correct an ethical conflict of interest or to remedy an ethical breach by opposing counsel that cannot be effectively remediated in any less severe way. | **Legal Conclusion** |
| | Here, the Dorsey Firm unreasonably failed to comply with its obligations and then unreasonably delayed what should have been a simple explanation--until the NRA raised the prospect of disqualification, after six weeks of waiting for an adequate response. See *In re Marketing Investors Corp.*, 80 S.W.3d 44, 51 (Tex. App. - Dallas 1998, orig. proceeding) in which the Court of Appeals, citing the Texas Supreme Court's *Meador* opinion, disqualified counsel for a former employee of a company after that employee took privileged documents from his former employer, upon the employee's termination. | **Evaluation of Evidence; Legal Conclusion; Advocacy; Speculation** |
| | Similar to the Dorsey Firm's actions here, the employee's counsel did not alert the former employer of its possession of those clearly-marked privileged documents, but, instead, used or referenced those documents in filings, and maintained an untenable right to continue to use those documents in the future. | **Legal Conclusion; Evaluation of Evidence; Advocacy** |
| | Here, when the Dorsey Firm finally responded to the NRA's counsel, on April 1, 2020, its explanation was incoherent | **Factual Recitation; Advocacy;** |

|   |   |   |
|---|---|---|
|   | and inconsistent with its ethical duties (and its client's contractual and common law obligations to the NRA). | **Legal Conclusion; Evaluation of Evidence** |
|   | In fact, the behavior of the Dorsey firm and its lack of responsiveness and deflection of responsibility underscore not only that the Dorsey Firm likely used the confidences gained by access to this confidential and privileged information but the likelihood that it will continue to use the NRA's privileged materials improperly and/or use the information that it gleaned from Exhibit B-9 in furtherance of AMc' claims in this case. | **Speculation; Advocacy; Evaluation of Evidence** |
| 14. | Declaration of James McCormack (ECF 122) ¶ 37:  It is noteworthy that the Dorsey Firm handled this situation in sharp contrast to how the S&O Firm representing AMc in the Virginia state court case handled a similar situation in 2019, regarding AMc's possession of a different Brewer Firm presentation to the NRA Board in April 2019. | **Evaluation of Evidence; Advocacy** |
|   | In the prior instance, discussed in Paragraph 24 above, the S&O Firm *immediately* identified the Brewer Firm presentation as potentially privileged, secured all copies of it, and instructed its clients not to reveal or discuss its contents. | **Factual Recitation; Evaluation of Evidence** |
|   | After conducting an investigation of the circumstances surrounding the acquisition of the presentation by AMc, the S&O Firm *promptly* notified the NRA's counsel of its possession, and, upon the NRA's request, *returned* it to that counsel. | **Factual Recitation; Evaluation of Evidence** |
|   | There is no apparent reason why the Dorsey Firm did not proceed in the same prompt and ethically required manner. | **Evaluation of Evidence; Legal Conclusion Advocacy** |
| 15. | Declaration of James McCormack (ECF 122) ¶ 38:  In sum, application of the six factors set out in the *Meador* opinion of the Supreme Court of Texas weigh heavily in favor of disqualification. | **Legal Conclusion** |

Dated: May 21, 2020                                    Respectfully submitted,

                                                       */s/ G. Michael Gruber*
                                                       **G. Michael Gruber, Esq.**
                                                       Texas Bar No. 08555400
                                                       gruber.mike@dorsey.com
                                                       **Jay J. Madrid, Esq.**
                                                       Texas Bar No. 12802000
                                                       madrid.jay@dorsey.com
                                                       **J. Brian Vanderwoude, Esq.**
                                                       Texas Bar No. 24047558
                                                       vanderwoude.brian@dorsey.com
                                                       **Brian E. Mason, Esq.**
                                                       Texas Bar No. 24079906
                                                       mason.brian@dorsey.com

                                                       **DORSEY & WHITNEY LLP**
                                                       300 Crescent Court, Suite 400
                                                       Dallas, Texas 75201
                                                       (214) 981-9900 Phone
                                                       (214) 981-9901 Facsimile

                                                       **ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 21st day of May 2020:

                                                       */s/ G. Michael Gruber*
                                                       G. Michael Gruber