**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § | |
| Plaintiff and Counter-Defendant | § § | |
| and | § § | |
| WAYNE LAPIERRE, | § § | |
| Third-Party Defendant, | § § | Civil Action No. 3:19-cv-02074-G |
| v. | § § | |
| ACKERMAN MCQUEEN, INC., | § § § | |
| Defendant and Counter-Plaintiff, | § § | |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG, | § § § § § | |
| Defendants. | § § | |

<u>**DEFENDANTS' OBJECTIONS TO PLAINTIFF'S WITNESS DECLARATIONS**</u>

Defendants Ackerman McQueen, Inc., Mercury Group, Inc., Henry Martin, William Winkler, Melanie Montgomery, and Jesse Greenberg (collectively, "***Defendants***") submit these objections to the NRA's declarations as follows:

## I.    PRELIMINARY STATEMENT

Defendants object to certain statements within the witness declarations that the NRA ("***Plaintiff***" of "***NRA***") submitted on May 4, 2020, in support of its Response (the "***Response***") to Defendants' Motion to Disqualify NRA's Counsel (the "***Motion to Disqualify***").  As demonstrated

herein, these declarations are objectionable on numerous grounds.  Defendants ask the Court to sustain their objections and disregard the testimony.

## II.   LEGAL STANDARDS

1.      A declaration that is not based on personal knowledge and does not show an affiant as competent to testify is inadmissible.  *See Mason v. AT&T Servs.*, No. 3:18-cv-00322-N (BT), 2019 U.S. Dist. LEXIS 165452, at *12-13 (N.D. Tex. Aug. 27, 2019); *Petro-Hunt, L.L.C. v. Williams-Southern Co.*, L.L.C., No. 3:13-CV-1588-P, 2016 U.S. Dist. LEXIS 186457, at *4 (N.D. Tex. Jan. 6, 2016).

2.      A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter, which factual foundation may be proved from the witness's own testimony.  FED. R. EVID. 602; *cf.* FED. R. CIV. P. 56(c)(4). Lay witness testimony fails the "personal knowledge" inquiry when the testimony contains personal beliefs, conjecture, speculation, abstract legal arguments, factual conclusions, unsubstantiated assertions, or improbable inferences.  *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) (holding that factual conclusions that are not supported by admissible evidence in the form of specific facts are inadmissible).; *United States v. Renda Marine, Inc.*, 667 F.3d 651, 655 (5th Cir. 2012) (disallowing "unsubstantiated assertions, improbable inferences, and unsupported speculation"); *Arrington v. Wal-Mart Stores Tex., LLC*, No. 3:18-CV-1763-N, 2019 U.S. Dist. LEXIS 199176, at *3 (N.D. Tex. Nov. 18, 2019) ("lay witnesses cannot speculate"); *Weems v. Dall. Indep. Sch. Dist.*, 260 F. Supp. 3d 719, 726, 730 (N.D. Tex. 2017) (holding that "conjecture, speculation, and subjective belief" were incompetent evidence).

3.      When a lay witness affidavit is not based entirely upon personal knowledge, the court is directed not to give any weight to those portions of the affidavit that are not based on

personal knowledge.  *See Blanchard & Co. v. Heritage Capital Corp.*, Civil Action No. 3:97-CV-0690-H, 1997 U.S. Dist. LEXIS 19395, at *2-3 (N.D. Tex. Dec. 1, 1997) (citing *Richardson v. Oldham*, 12 F.3d 1373, 1378-79 (5th Cir. 1994)).

4.      As with all testimony, legal conclusions and hearsay are inadmissible.  *See United States v. Keys*, 747 F. App'x 198, 209 (5th Cir. 2018) ("it is well-settled law in this circuit that lay witness opinion amounting to legal conclusions are inadmissible"); FED. R. EVID. 802, 801; *Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).  Moreover, declarations submitted in support of a motion must still meet the minimum standards for relevance under Federal Rule of Evidence 401, and must make a fact of consequence more or less likely. *See, e.g.*, *Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 913 (N.D. Tex. 2000).  A district court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or needlessly presenting cumulative evidence."  *Shoop v. Devon Energy Prod. Co., L.P.*, No. 3:10-cv-00650-P, 2013 U.S. Dist. LEXIS 188345, at *22 (N.D. Tex. Mar. 28, 2013) (quoting FED. R. EVID. 403).

### III.   OBJECTIONS TO DECLARATIONS OF ANDREW ARULANANDAM

5.      Defendants object to certain passages within the April 14, 2020, declaration of Andrew Arulanandam ("***April 14, 2020 Arulanandam Declaration***") and the May 1, 2020, declaration of Andrew Arulanandam ("***May 1, 2020 Arulanandam Declaration***").

6.      As a preliminary matter, Defendants object to the April 14, 2020 Arulanandam Declaration in its entirety because it is not relevant to the subject matter of Defendant's Motion to Disqualify or Plaintiff's Response.  Although it was attached as Exhibit 38 to Plaintiff's Response, Plaintiff did not cite this Exhibit in support of a single proposition within its Response.  Defendants

object to the April 14, 2020 Arulanandam Declaration as irrelevant and ask the Court to sustain their objections and disregard the testimony.

      7.     In addition, Defendants further object to the April 14, 2020 Arulanandam Declaration as set forth below:

| NO. | DEFENDANT'S EVIDENCE | GROUNDS FOR OBJECTION |
|---|---|---|
| 1. | April 14, 2020 Declaration of Andrew Arulanandam (ECF 122) ¶ 5:<br><br>"This argument is disingenuous and without factual basis." | **Factual Conclusion; Subjective Opinion.**<br><br>Defendants object to this passage from paragraph 5 of the April 14, 2020 Arulanandam Declaration because it purports to draw a factual conclusion regarding a contested issue in this matter, specifically, the Brewer Firm's status as a competitor of AMc. Although Arulanandam offers certain facts in support of his conclusion that the Brewer Firm and AMc are not competitors, this assertion represents nothing more than Arulanandam's subjective factual conclusion regarding the weight and significance of the facts he presents.<br><br>Defendants further object to this passage because it represents only Arulanandam's subjective belief that an argument by AMc is "disingenuous" and purports to opine on the subjective state of mind of "AMc's lawyers," which Arulanandam does not have the personal knowledge to attest to. |
| 2. | April 14, 2020 Declaration of Andrew Arulanandam (ECF 122) ¶ 6:<br><br>"Instead, they attached a highly confidential, attorney-client privileged presentation (the 'Privileged Presentation') delivered to a closed executive session of the NRA Board of Directors…" | **Legal Conclusion.**<br><br>Defendants object to this passage from paragraph 5 of the April 14, 2020 Arulanandam Declaration because it renders an improper legal conclusion regarding a contested in this matters, specifically, whether the referenced presentation was "privileged." Defendants object to this conclusion and all references to the "Privileged Presentation" throughout the Declaration. |
| 3. | April 14, 2020 Declaration of Andrew Arulanandam (ECF 122) ¶ 8: | **Legal Conclusion.**<br><br>Defendants object to this passage from paragraph 5 of the April 14, 2020 Arulanandam Declaration |

| | | |
|---|---|---|
| | "AMc was a trusted agent and fiduciary of the NRA for many years…" | because it renders an improper legal conclusion regarding a contested in this matters, specifically, whether AMc was ever a "fiduciary" of the NRA, which AMc disputes. |
| 4. | April 14, 2020 Declaration of Andrew Arulanandam (ECF 122) ¶ 8:<br><br>"In fact, its contract (Services Agreement dated April 2017) explicitly forbade it from copying the NRA's confidential information without the NRA's consent." | **Legal Conclusion.**<br><br>Defendants object to this passage from paragraph 5 of the April 14, 2020 Arulanandam Declaration because it renders an improper legal conclusions and purports to interpret a portion of the Services Agreement to establish, further using that interpretation to evaluate AMc's conduct, both tasks reserved to the Court. |

8.      In addition, Defendants make the following objections to the May 1, 2020 Arulanandum Declaration:

| | | |
|---|---|---|
| 1. | May 1, 2020 Declaration of Andrew Arulanandam (ECF 122) ¶ 5:<br><br>"I do not believe BAC has the expertise or staffing to position itself as a 'competitor' to AMc, and it seems disingenuous AMc would promote such a narrative." | **Factual Conclusion; Subjective Belief.**<br><br>Defendants object to this passage of paragraph 5 of the May 1, 2020 Arulanandam Declaration because purports to draw a factual conclusion regarding a contested issue in this matter, specifically, the Brewer Firm's status as a competitor of AMc.  While Arulanandam offers certain facts in support of his conclusion that the Brewer Firm and AMc are not competitors, this assertion represents nothing more than Arulanandam's subjective factual conclusion regarding the weight and significance of the facts he presents.<br><br>Defendants further object to this passage because it represents only Arulanandam's subjective belief that an argument by AMc is "disingenuous" and purports to opine on the subjective state of mind of AMc, which Arulanandam does not have the personal knowledge to attest to. |

## IV.   OBJECTIONS TO DECLARATIONS OF TRAVIS CARTER

9.      Defendants objects to certain passages within of the March, 4, 2020, declaration of Travis Carter ("***March 4, 2020 Carter Declaration***") and the May 4, 2020 declaration of Travis Carter ("***May 4, 2020 Carter Declaration***") that the NRA submitted on May 4, 2020 with the Response to the Motion to Disqualify. To begin with, the March 4, 2020 Carter Declaration is cumulative of the May 4, 2020 Carter Declaration and simply represents a shorter summary of the latter, adding no unique facts.  Defendants object to the March 4, 2020 Carter Declaration as unnecessarily cumulative and ask the Court to sustain its objection to the March 4, 2020 Carter Declaration in its entirety.

10.     Defendants further object to the March 4, 2020 Carter Declaration as follows:

| NO. | DEFENDANT'S EVIDENCE | GROUNDS FOR OBJECTION |
|---|---|---|
| 1. | March 4, 2020 Declaration of Travis Carter (ECF 122) ¶ 7:<br><br>"There is no comparison between the services and activities of the Public Affairs Group of the Brewer Firm and Ackerman." | **Factual Conclusion; Subjective Opinion.**<br><br>Defendants object to this passage of paragraph 7 of the March 4, 2020 Carter Declaration because it purports to draw a factual conclusion regarding a contested issue in this matter.  While Carter offers certain facts in support of this conclusion, the assertion itself nevertheless represents Carter's subjective opinion regarding the weight and significance of the facts he presents. |
| 2. | March 4, 2020 Declaration of Travis Carter (ECF 122) ¶ 7:<br><br>"In fact, several of the NRA's stakeholders have mentioned to me the ridiculousness of such an argument – observing the size of my work group and commenting that Ackerman seldom, if ever, engaged in direct media outreach relating to the NRA's legal concerns." | **Hearsay; Lacks Personal Knowledge.**<br><br>Defendants object to this passage from paragraph 7 of the March 4, 2020 Carter Declaration because it contains out-of-court statements by unidentified NRA "stakeholders," which is being offered for the truth of the matter asserted, specifically, the proposition that the Brewer Firm is not a competitor of AMc. |

| 3. | March 4, 2020 Declaration of Travis Carter (ECF 122) ¶ 12:<br><br>"In my view, there can be no legitimate basis upon which Ackerman can claim that the Brewer firm seeks to "compete" with Ackerman or replace it as the advertising or communications firm of record for the NRA." | **Factual Conclusion; Subjective Opinion.**<br><br>Defendants object to this passage of paragraph 12 of the March 4, 2020 Carter Declaration because it purports to draw a factual conclusion regarding a contested issue in this matter. While Carter offers certain facts in support of this conclusion, the assertion that any claim by AMc is not "legitimate" nevertheless represents Carter's subjective opinion regarding the weight and significance of the facts he presents. |

11.     In addition, Defendants object to the May 4, 2020 Carter Declaration as follows:

| NO. | DEFENDANT'S EVIDENCE | GROUNDS FOR OBJECTION |
|---|---|---|
| 1. | May 4, 2020 Declaration of Travis Carter (ECF 122) ¶ 9:<br><br>"BAC is not a competitor to the agency." | **Factual Conclusion; Subjective Opinion.**<br><br>Defendants object to this passage of paragraph 9 of the May 4, 2020 Carter Declaration because it purports to draw a factual conclusion regarding a contested issue in this matter. While Carter offers certain facts in support of this conclusion, the conclusion itself nevertheless represents Carter's subjective opinion regarding the weight and significance of the facts he presents. |
| 2. | May 4, 2020 Declaration of Travis Carter (ECF 122) ¶ 9:<br><br>"There is no legitimate basis upon which AMc claims that the Brewer firm seeks to 'compete' with AMc or replace it as the advertising or communications firm of record for the NRA." | **Legal Conclusion; Subjective Opinion.**<br><br>Defendants object to this passage of paragraph 9 of the May 4, 2020 Carter Declaration because it purports to draw a factual conclusion regarding a contested issue in this matter. While Carter offers certain facts in support of this conclusion, the conclusion itself nevertheless represents Carter's subjective opinion regarding the weight and significance of the facts he presents. |
| 3. | May 4, 2020 Declaration of Travis Carter (ECF 122) ¶ 18:<br><br>"AMc reported that many of these employees were <u>exclusively</u> dedicated to serving the NRA. That said, I understand | **Hearsay; Lacks Personal Knowledge.**<br><br>Defendants object to the entirety of paragraph 18 of the May 4, 2020 Carter Declaration because it supplies no foundational facts to show Carter's personal knowledge of what AMc "reported" to the NRA at any time regarding its employees. |

| | | |
|---|---|---|
| | that at least one other AMc client believes the agency assigned professionals to its account who were supposed to be dedicated full-time to the NRA." | Furthermore, Carter also lacks personal knowledge regarding his statement regarding what "at least one other AMc client believes" as inadmissible hearsay being offered for the truth of the matter asserted, specifically, that AMc was misallocating its employees time. |
| 4. | May 4, 2020 Declaration of Travis Carter (ECF 122) ¶ 21:<br><br>"For all these reasons, it strains credibility for AMc to argue that the small public affairs team of BAC ever sought to replace the core services provided by the agency to the NRA." | **Subjective Belief; Factual Conclusion.**<br><br>Defendants object to this passage of paragraph 21 of the May 4, 2020 Carter Declaration because it purports to draw a factual conclusion regarding a contested issue in this matter.  While Carter offers certain facts in support of this conclusion, the conclusion itself nevertheless represents Carter's subjective opinion regarding the weight and significance of the facts he presents. |
| 5. | May 4, 2020 Declaration of Travis Carter (ECF 122) ¶ 35:<br><br>"I was told that AMc never presented to the Public Affairs Committee in connection with these types of issues." | **Hearsay; Lacks Personal Knowledge.**<br><br>Defendants object to this passage of paragraph 35 of the May 4, 2020 Carter Declaration because it contains an out-of-court statement by an unidentified person being offered for the truth of the matter asserted, specifically, that "AMc never presented to the Public Affairs Committee" on certain issues. Carter lacks the personal knowledge to make this assertion. |
| 6. | May 4, 2020 Declaration of Travis Carter (ECF 122) ¶ 39:<br><br>"Accordingly, BAC, on occasion, has publicly commented on behalf of its client about these legal proceedings and confronted false claims and allegations made by AMc and its principals." | **Factual Conclusions; Legal Conclusions; Subjective Opinions.**<br><br>Defendants object to this passage of paragraph 39 of the May 4, 2020 Carter Declaration because it contains the factual and legal conclusions regarding contested matters, asserting that AMc's claims were "false." These conclusions represent only Carter's subjective opinions and should be disregarded. |
| 7. | May 4, 2020 Declaration of Travis Carter (ECF 122) ¶ 42:<br><br>"Predictably, AMc's premed-itated attack on an unsuspecting NRA spawned numerous neg-ative articles full of disinfor- | **Subjective Opinion; Lacks Personal Knowledge.**<br><br>Defendants object to this passage of paragraph 42 of the May 4, 2020 Carter Declaration because it contains Carter's subjective opinion regarding the mental state of AMc, specifically, that a media |

| | | |
|---|---|---|
| | mation contained in the media advisory." | advisory was a "premeditated attack," which Carter lacks the personal knowledge to attest to. |
| 8. | May 4, 2020 Declaration of Travis Carter (ECF 122) ¶ 43:<br><br>"…likely to avoid drawing attention to AMc's unprovoked reputational attacks on the NRA." | **Subjective Opinion; Conjecture; Lacks Personal Knowledge.**<br><br>Defendants object to this passage of paragraph 43 of the May 4, 2020 Carter Declaration because it contains Carter's subjective opinion and conjecture regarding the mental state and motivations of AMc, which Carter lacks the personal knowledge to attest to. |
| 9. | May 4, 2020 Declaration of Travis Carter (ECF 122) ¶ 44:<br><br>"AMc has widely distributed a barrage of negative media advisories, blistering quotes, and other communications meant to harm BAC and the NRA." | **Subjective Opinion; Conjecture; Lacks Personal Knowledge; Misstates the Evidence.**<br><br>Defendants object to this passage of paragraph 44 of the May 4, 2020 Carter Declaration because it contains Carter's subjective opinion and conjecture regarding the mental state and motivations of AMc, specifically that AMC "meant to harm" anyone, which Carter lacks the personal knowledge to attest to.<br><br>Defendants further object to Carter's misstatement of the evidence. As shown in Defendants' Motion to Disqualify, Appendix A, the Brewer Firm made multiple negative comments against AMc in the media prior to July 3, 2019, including claims that AMc had failed to comply with record requests, that it had launched "smear campaigns," that it was engaged in conspiracy in a "coup" attempt upon Wayne LaPierre. |
| 10. | May 4, 2020 Declaration of Travis Carter (ECF 122) ¶ 45:<br><br>"I believe AMc's actions and inflammatory campaign messaging have contributed to the intense public scrutiny of the agency." | **Subjective Belief; Factual Conclusion.**<br><br>Defendants object to this passage of paragraph 45 of the May 4, 2020 Carter Declaration because it contains and relies only upon Carter's subjective belief that AMc's actions and messaging were somehow "inflammatory." To the extent that any of this "messaging" was related to NRATV content, Carter does not state facts to support his personal knowledge of AMc's media operations or the extent |

|  |  | of NRA approval of such "messaging" to provide sufficient foundation for this statement.<br><br>Defendants further object that this statement is irrelevant to any of the issues at play in this lawsuit, in Defendants' Motion to Disqualify, or Plaintiff's Response. NRATV messaging, or the response of the media or general public, is not the subject of the claims or defenses of either party and entirely unrelated to the media statements made by the Brewer Firm about the NRA's claims against AMc, which are the subject of this lawsuit.  Defendants object to this statement as irrelevant and an attempt to confuse the issues. |
| 11. | May 4, 2020 Declaration of Travis Carter (ECF 122) ¶ 47:<br><br>"The NYT proactively contacted the NRA and its representatives to advise it was pursuing the investigative article, upon reportedly learning that certain NRA board members, like the general public, were increasingly uncomfortable with the 'site's [NRATV] inflammatory rhetoric, and wehter it has strayed too far from the N.R.A.'s core gun-rights mission….'" | **Hearsay; Lacks Personal Knowledge.**<br><br>Defendants object to this passage of paragraph 47 of the May 4, 2020 Carter Declaration because it purports to attest to communications between the New York Times and "the NRA and its representative" but does not provide facts to support Carter's personal knowledge of this interaction.  If Carter was one of the "representatives" whom the NRA contacted, the Declaration does not make that clear.<br><br>Moreover, the statement contains hearsay (statements from unidentified "NRA board members") within hearsay (statement from the unidentified New York Times representative) which is being offered for the truth of the matter asserted, specifically that NRATV messaging was "inflammatory."<br><br>Defendants further object that this statement is irrelevant to any of the issues at play in this lawsuit, in Defendants' Motion to Disqualify, or Plaintiff's Response. The general media response to NRATV messaging is not the subject of the claims or defenses of either party and entirely unrelated to the media statements made by the Brewer Firm about the NRA's claims against AMc, which are the subject of this lawsuit.  Defendants object to this statement as irrelevant and an attempt to confuse the issues. |

| 12. | May 4, 2020 Declaration of Travis Carter (ECF 122) ¶ 49:<br><br>"I do not believe there is any legitimate argument that BAC sought to 'replace' AMc as the NRA's communications or advertising agency of record." | **Subjective Belief; Factual Conclusions.**<br><br>Defendants object to this passage of paragraph 12 of the March 4, 2020 Carter Declaration because it purports to draw a factual conclusion regarding a contested issue in this matter. While Carter offers certain facts in support of this conclusion, the assertion that any claim by AMc is not "legitimate" nevertheless represents Carter's subjective opinion regarding the weight and significance of the facts he presents. |

## V.   OBJECTIONS TO DECLARATION OF CHARLES COTTON

12.   Defendants object to certain passages within the declaration of Charles Cotton:

| NO. | DEFENDANT'S EVIDENCE | GROUNDS FOR OBJECTION |
|---|---|---|
| 1. | Declaration of Charles Cotton (ECF 122) ¶ 5:<br><br>"The allegation by Ackerman McQueen, Inc. ('AMc') that Brewer or BAC somehow 'manufactured' the disputes between the NRA and AMc is false." | **Factual Conclusion; Subjective Belief.**<br><br>Defendants object to this passage of paragraph 5 of the Cotton Declaration because it purports to draw a factual conclusion regarding a contested issue in this matter, specifically, whether the Brewer Firm manufactured disputes between the NRA and AMc. While Cotton offers certain facts in support of this conclusion, the assertion itself nevertheless represents Cotton's subjective opinion regarding the weight, significance, and interpretation of the facts he presents. |
| 2. | Declaration of Charles Cotton (ECF 122) ¶ 5:<br><br>"Coincidentally, during July 2018, several NRA employees approached the Audit Committee and raised serious concerns about AMc's business and billing practices." | **Hearsay;   Subjective   Opinion;   Lack   of Foundation.**<br><br>Defendants object to this passage of paragraph 5 of the Cotton Declaration because it references out-of-court statements by "NRA employees" which are being offered for the truth of the matter asserted, specifically, that there was cause to be concerned about AMc's billing practices.  Without knowing what these employees actually said, Cotton does not provide sufficient factual foundation for his opinion that such concerns were "serious," as he states. |

| 3. | Declaration of Charles Cotton (ECF 122) ¶ 6:<br><br>"Since that time, facts have surfaced over the ensuing year which made clear that the NRA was correct to investigate this concern expressed by NRA employees in 2018." | **Hearsay; Subjective Opinion; Factual Conclusion; Not Best Evidence.**<br><br>Defendants object to this passage of paragraph 6 of the Cotton Declaration because it also contains hearsay. Cotton offers the same out-of-court statements from the same "concerned" employees, which is being offered for the truth of the matter asserted.<br><br>Cotton also references certain "facts," for which he does not demonstrate any personal knowledge, that supposedly "made clear" the NRA's course of action to investigate AMc. The only "fact" Cotton relies upon as an example (stated in line 5 below) is inadmissible, both because it is contains hearsay and because, even within the hearsay, it merely shows the hearsay speaker was only speculating, not stating facts.<br><br>If such facts actually existed, they would have been better evidence than Carter's unsupported factual conclusions. |
| 4. | Declaration of Charles Cotton (ECF 122) ¶ 6:<br><br>"Based on documents and events about which I was later made aware, it appears that AMC likely took advantage of the trust placed in them by the NRA." | **Hearsay; Conjecture; Subjective Opinion; Lack of Foundation; Not Best Evidence.**<br><br>Defendants object to this passage of paragraph 6 of the Cotton Declaration because it refers only to "documents and evidence" without providing sufficient factual foundation to demonstrate Cotton's personal knowledge of such information and simply purports to provide a factual conclusion regarding what such "documents and evidence" may contain. Cotton's account of these "documents and evidence" is nothing more than inadmissible hearsay because it is being offered for the truth of the matter asserted, specifically, his conjecture that AMc "took advantage" of the NRA's trust.<br><br>The only fact Cotton relies upon to support this proposition example (stated in line 5 below) is inadmissible, both because it is contains hearsay and because, even within the hearsay, it merely shows the hearsay speaker was only speculating, not stating facts. |

| | | |
|---|---|---|
| | | If such "documents and evidence" do exist, they would have been better evidence of this proposition than Cotton's conclusory statement. |
| 5. | Declaration of Charles Cotton (ECF 122) ¶ 6:<br><br>"As only one example, I became aware of an email dated April 15, 2019, authored by an executive of another AMc client and former Congressman, Dan Boren, which predicted that AMc "can't produce the backup to the invoices" it submitted to the NRA because AMc has likely been billing the NRA for personnel assigned to other clients – to wit, his employer. In sum, Mr. Boren stated: "Ackerman is in trouble on this one." | **Hearsay; Misstates the Evidence; Speculation**.<br><br>Defendants object to this passage of paragraph 6 of the Cotton Declaration because it is inadmissible hearsay, an out-of-court statement by Dan Boren, being offered for the truth of the matter asserted.<br><br>However, even within this hearsay, the Boren's language shows that he was merely speculating as to AMc's inability to produce supporting documents or assignment of its personnel. Plus, Cotton misstates the evidence, in which Boren states: "*I bet* Ackerman is in trouble on this one,"[1] which further shows the speculative nature of Boren's statement. |
| 6. | Declaration of Charles Cotton (ECF 122) ¶ 7:<br><br>"I later became aware that a contract between AMc and Lt. Col. Oliver North ('North') – a related party transaction which required Audit Committee approval because North was a member of the NRA Board – contained material provision far different from those originally disclosed to the Audit Committee when our committee approval was sought in September 2018. | **Factual Conclusion; Lack of Foundation.**<br><br>Defendants object to paragraph 7 of the Cotton Declaration because it fails to provide a factual foundation for Cotton's subjective factual conclusion that certain provisions of the Oliver North's contract were "material," and does not provide sufficient information to determine what was originally presented to the Audit Committee in September 2018 or what provisions were supposedly discovered later in order to gauge whether the terms were "materially different" as Cotton states. |
| 7. | Declaration of Charles Cotton (ECF 122) ¶ 8: | **Subjective Opinion; Lack of Foundation.** |

---

[1] *See* Plaintiff's use of the full quote in its Amended Complaint, ECF 18 at ¶ 76.

| | |
|---|---|
| "The Audit Committee gave careful consideration to the criticisms of BAC's engagement advanced by North and determined that the controls and processes already in place for review of legal invoices were adequate." | Defendants object to this passage of paragraph 8 of the Cotton Declaration because it represents only Cotton's subjective opinion that the Audit Committee gave "careful consideration" to the Brewer Firm's engagement and that his invoices were "adequate." This statement does not identify what procedures were undergone to make this determination or what factors were addressed in determining the adequacy Cotton announces. |

## VI.   OBJECTIONS TO DECLARATION OF MICHAEL ERSTLING

13.     Defendants object to certain passages within the declaration of Michael Erstling:

| NO. | DEFENDANT'S EVIDENCE | GROUNDS FOR OBJECTION |
|---|---|---|
| 1. | Declaration of Michael Erstling (ECF 122) ¶ 5:<br><br>"In addition, preparing the annual budget was made difficult because Ackerman regularly deviated from the budget parameters set by the NRA.  I was provided no insight into the basis for its budgets or whether it would adhere to them." | **Lack of Personal Knowledge; Conclusory Statement.**<br><br>AMc objects to the factual conclusions contained within paragraph 5 of the Erstling Declaration as lacking foundation.  Erstling does not describe where his entitlement to "insight into the basis" of AMc's budgets might have come from or who was supposed to—yet failed to—provide him with this "insight."<br><br>Erstling does not state that he attended any of the annual budget meetings <u>with AMc</u>, or that he was otherwise privy to any of the particular details of the party's multi-decade relationship, such that would support his conclusion that AMc somehow "deviated" from certain "budget parameters," which Erstling fails to define whatsoever. |
| 2. | Declaration of Michael Erstling (ECF 122) ¶ 6:<br><br>"…I developed serious concerns about Ackerman's budgeting and billing pratices and the trust the NRA had placed in the agency." | **Lack of Personal Knowledge; Subjective Belief.**<br><br>AMc objects to this passage of paragraph 6 of the Erstling Declaration because Erstling, as an employee of the accounting department, does not state grounds for his personal knowledge as to the level of institutional "trust" the NRA placed in AMc.  This statement represents only Erstling's unsupported and subjective "concerns" that such "trust" was somehow misplaced. |

| 3. | Declaration of Michael Erstling (ECF 122) ¶ 6:<br><br>"Ackerman . . . systemically obfuscated and blocked the NRA's efforts to understand what services were covered by any particular invoice." | **Lack of Personal Knowledge; Conclusory Statement.**<br><br>AMc objects to this passage of paragraph 6 of the Erstling Declaration because it is a factual conclusion.  Erstling fails to describe the type of information that he felt was lacking, his efforts to communicate with AMc to obtain any missing information, or the responsive conduct by AMc that would indicate such "obfuscate[ion]" or "block[ing.]"<br><br>Indeed, this conclusory allegation merely echoes the same opaque allegation that the NRA has been leveling since the beginning of this lawsuit, with the same scarcity of supporting facts. |
| :-- | :-- | :-- |
| 4. | Declaration of Michael Erstling (ECF 122) ¶ 6:<br>"When staffing projects, Ackerman regularly employed, without written approvals, expensive outside contractors for functions, that in my opinion could have been adequately served by NRA staff." | **Lack of Personal Knowledge; Conclusory Statements, Subjective Beliefs & Opinions.**<br><br>AMc objects to this passage of paragraph 6 of the Erstling Declaration because it fails to describe the factual basis for Erstling's understanding of the "written approval" process required for AMc, the standards for that process, the way in which AMc supposedly fell below such standards, or the reason an employee of the accounting department would have been involved in this approval process that was contractually reserved solely to Wayne LaPierre or his designee.[2]<br><br>Moreover, Erstling, as a member of the accounting department, does not state any facts that would support his knowledge regarding price or necessity of contractors or services provided by a public-relations and marketing agency, such that he could properly opine that such contractors were "expensive" or "could have been adequately served by NRA staff." The Erstling Declaration contains no basis for such opinions, which merely represent Erstling's subjective beliefs. |
| 5. | Declaration of Michael Erstling (ECF 122) ¶ 6: | **Lack of Personal Knowledge; Subjective Belief.**<br><br>AMc objects to this passage of paragraph 6 of the Erstling Declaration because, as he himself states, it |

---

[2] ECF 81 at Ex. A-14, Services Agreement, dated April 30, 2017, at § IX.

| | | |
|---|---|---|
| | "It was my suspicion that Ackerman did this because it could collect a markup from the NRA on contractors it hired." | is nothing but a "suspicion." Erstling does not state any facts that would support this subjective belief. |
| 6. | Declaration of Michael Erstling (ECF 122) ¶ 7:<br><br>"I also noted that Ackerman's bills regularly violated contract stipulations." | **Legal Conclusion.**<br><br>AMc objects to this passage of paragraph 7 of the Erstling Declaration because it purports to interpret the contract between the NRA and AMc and offer a legal conclusion that AMc violated certain provisions. This is improper lay witness testimony. AMc objects to this legal conclusion and all factual conclusions Erstling subsequently draws from it. |
| 7. | Declaration of Michael Erstling (ECF 122) ¶ 7:<br><br>"For example, I became concerned that Ackerman was billing the NRA for work, such as future issues of Carry Guard magazine, that had not been undertaken; indeed, in May 2018 the NRA was billed $296,000 for an issue of Carry Guard magazine that was not slated to be released until later that summer. In August 2018 NRA received another invoice for a fifth issue even though the Association was already in possession of a backlog of issues of the Carry Guard magazine that had yet to be released to the public." | **Lack of Personal Knowledge; Factual Conclusion.**<br><br>As an example in support of his improper lay-witness legal conclusion, Erstling cites AMc's periodic invoices for Carry Guard magazine. Having already admitted that he had "no insight" into AMc's budget (¶5), Erstling purports to conclude that such invoices nevertheless constituted a contractual violation. Erstling also fails to state any facts to support how, as only a member of the accounting department, Erstling would have personal knowledge of any "backlog" of Carry Guard Magazine. AMc objects to this passage of paragraph 7 of the Erstling Declaration. |
| 8. | Declaration of Michael Erstling (ECF 122) ¶ 8:<br><br>"During early 2018, I began to compare notes with other NRA accounting staff, and it became clear that several of us shared the same or similar concerns." | **Hearsay.**<br><br>AMc objects to this passage of paragraph 8 of the Erstling Declaration because he purports to speak for other individuals in the NRA accounting, using their out-of-court statements in support of the matter asserted, namely, his "concerns" about AMc. |

| 9. | Declaration of Michael Erstling (ECF 122) ¶ 8:<br><br>"Although there were other vendors (and transactions) we also believed should be examined, Ackerman was clearly the most significant offender in light of the amount of NRA funds it received and the degree of autonomy it enjoyed." | **Lack of Personal Knowledge; Factual Conclusion.**<br><br>AMc objects to this passage of paragraph 8 of the Erstling Declaration because it is an unsupported factual conclusion, announcing only that AMc was "the most significant offender," which is still an extension of Erstling's improper legal conclusion that some contract violation (*i.e.*, an "offense") had occurred. Stripped of Erstling's improper legal conclusion, this assertion bases AMc's "offender" status on nothing more than "the amount of NRA funds it received" and its "degree of autonomy," whatever that means. Erstling fails to provide sufficient facts to demonstrate wrongdoing from either AMc's receipt of funds or its "autonomy." |
|---|---|---|
| 10. | Declaration of Michael Erstling (ECF 122) ¶ 8:<br><br>"My colleagues and I raised our concerns with the Audit Committee of the NRA Board of Directors in July 2018." | **Hearsay.**<br><br>AMc objects to this passage of paragraph 8 of the Erstling Declaration as hearsay because it is an out-of-court statement from Erstling (and his colleagues) offered for the truth of the matter asserted. |
| 11. | Declaration of Michael Erstling (ECF 122) ¶ 9:<br><br>"In my view, these allegations are ridiculous and offensive—they imply that if Brewer had not come along, the NRA's accountants would not have acted to cause the NRA to investigate Ackerman's billing practices." | **Subjective Belief.**<br><br>AMc objects to this passage of paragraph 9 of the Erstling Declaration because it is nothing but Erstling's subjective belief regarding what he, and others in the NRA accounting department, would have done under a different set of circumstances. |
| 12. | Declaration of Michael Erstling (ECF 122) ¶ 9:<br><br>"Although it is difficult to speculate about counterfactuals, I would hope that even if the NRA had never retained the Brewer Firm, it would nonetheless have fired | **Speculation; Factual Conclusion; Legal Conclusion; Subjective Opinion/Belief.**<br><br>AMc objections to this passage of paragraph 9 of the Erstling declaration. As a preliminary matter, Erstling begins the phrase by admitting that he is speculating. He then concludes factually that AMc refused to cooperate with requests for files, books, and records, even though he provides no details |

| | | |
|---|---|---|
| | Ackerman by 2019 for its refusal to cooperate with requests for files, books, and other records pursuant to the Services Agreement." | anywhere in the Declaration about where he learned such information—*i.e.,* whether he *himself* requested information and was refused, or whether he just heard about these allegations of non-cooperation from others in the NRA (which would result in hearsay). This factual conclusion is summed up with another legal conclusion, purporting to deem AMc's nonspecific "refusal to cooperate" as a breach of the Services Agreement.<br><br>Finally, as parroted throughout the NRA's Response to Defendants' Motion to Disqualify, Erstling's opinion that AMc should be "fired" is objectionable as lacking any factual support whatsoever.  In his description of his position with the NRA, Erstling does not state that he was familiar with the standards for "firing" vendors, nor does he state that he had ever been involved with "firing" a vendor.  His statement that AMc should be "fired" is simply his subjective opinion. |
| 13. | Declaration of Michael Erstling (ECF 122) ¶ 9:<br><br>"Over my entire career as a Certified Public Accountant, I cannot recall interacting with any other vendor that afforded its client so little transparency or treated client staff with so much contempt." | **Factual Conclusion; Lacks Supporting Facts.**<br><br>AMc objects to this passage from paragraph 9 of the Erstling Declaration as lacking in factual foundation. Again, nowhere in Erstling's declaration does he cite a single instance of the type of "contempt" he alleges or one single "interact[ion]" he personally experienced with AMc.  AMc objects to this factual conclusion regarding the subjective mindset of anyone at AMc, of which he has no personal knowledge. |

## VII.   OBJECTIONS TO DECLARATION OF JOHN FRAZER

14.    Defendants object to certain passages of the declaration of John Frazer:

| NO. | DEFENDANT'S EVIDENCE | GROUNDS FOR OBJECTION |
|---|---|---|
| 1. | Declaration of John Frazer (ECF 122) ¶ 3:<br><br>"I have reviewed the allegations contained in the Disqualification Motion and believe them to be totally without merit." | **Factual Conclusion; Subjective Belief.**<br><br>Defendants object to paragraph 3 of the Frazer Declaration because it states only Frazer's subjective belief and factual conclusion that Defendants' Motion to Disqualify is "without merit."  Although Frazer offers certain facts in support of this conclusion, this assertion represents nothing more |

| | | than Frazer's subjective opinion regarding the weight and significance of the facts he presents. |
|---|---|---|
| 2. | Declaration of John Frazer (ECF 122) ¶ 4:<br><br>"…I was fully aware, and understood that other members of the NRA leadership were fully aware, of Brewer's relationship by marriage to the McQueen family. | **Hearsay; Lack of Personal Knowledge.**<br><br>Defendants object to this passage of paragraph 4 of the Frazer Declaration because it references out-of-court statements made by members of "NRA leadership" offered in support of the truth of the matter asserted, specifically, that numerous people among NRA leadership were aware of the McQueen-Brewer family relationship. |
| 3. | Declaration of John Frazer (ECF 122) ¶ 4:<br><br>"I am also aware of the animus which AMc alleges has characterized that relationship over the past two years." | **Lacks Personal Knowledge.**<br><br>Defendants object to this passage of paragraph 4 of the Frazer Declaration because it fails to establish the necessary foundation to support Frazer's personal knowledge of this animus rather than animus he simply heard about through others. |
| 4. | Declaration of John Frazer (ECF 122) ¶ 6:<br><br>"In my view, these allegations are false and meritless." | **Factual Conclusion; Subjective Belief.**<br><br>Defendants object to paragraph 6 of the Frazer Declaration because it states only Frazer's subjective belief and factual conclusion that Defendants' allegation is "without merit." Although Frazer offers certain facts in support of this conclusion, this assertion represents nothing more than Frazer's subjective opinion regarding the weight and significance of the facts he presents. |

## VIII.  OBJECTIONS TO DECLARATION OF WAYNE LAPIERRE

15.    Defendants object to certain passages within the declaration of Wayne LaPierre:

| NO. | DEFENDANT'S EVIDENCE | GROUNDS FOR OBJECTION |
|---|---|---|
| 1. | Declaration of Wayne LaPierre (ECF 122) ¶ 7:<br><br>"…I became concerned and received numerous complaints that the public messaging AMc | **Hearsay.**<br><br>Defendants object to this passage of ¶ 7 of the LaPierre Declaration because it contains out-of-court statements by unknown individuals which are being offered for the truth of the matter asserted. |

| | | |
|---|---|---|
| | was crafting for the Association often struck the wrong tone." | |
| 2. | Declaration of Wayne LaPierre (ECF 122) ¶ 9:<br><br>"Moreover, several NRA employees voiced pointed concerns that AMc was abusing the NRA's trust." | **Hearsay.**<br><br>Defendants object to this passage of ¶ 9 of the LaPierre Declaration because it contains out-of-court statements by unknown individuals which are being offered for the truth of the matter asserted. |
| 3. | Declaration of Wayne LaPierre (ECF 122) ¶ 15:<br><br>"At times, AMc went through the motions of complying with some of our requests, but our most important requests were ignored or rebuffed. By early April 2019, it was clear to me the agency would not comply with the most important of the Association's information requests." | **Lack of Personal Knowledge; Conclusory Statement; Subjective Opinion.**<br><br>Defendants objet to this passage of paragraph 15 of the LaPierre Declaration because it is a factual conclusion that fails to specify any facts to support the type of information that was requested or that would support LaPierre's subjective opinion that such information was the "most important." LaPierre does not describe his efforts to communicate with AMc or obtain any missing information or any conduct on the part of AMc that would support the bare allegation that such requests were "ignored or rebuffed." |
| 4. | Declaration of Wayne LaPierre (ECF 122) ¶ 16:<br><br>"The decision to sue one of our longtime vendors was a difficult but necessary one. Of course, I did not imagine AMc would retaliate in the outrageous fashion that followed." | **Subjective Opinion.**<br><br>Defendants object to paragraph 16 of the LaPierre Declaration because it represents only LaPierre's subjective opinions regarding (1) the "necessary" nature of the suit against Defendants, and (2) his belief that AMc "retaliated" in an "outrageous" manner.<br><br>The only facts LaPierre relies upon to support this contention are set out in paragraph 19 of the Declaration, which are not based on personal knowledge but only upon hearsay and conjecture. |
| 5. | Declaration of Wayne LaPierre (ECF 122) ¶ 17:<br><br>"…North was hired by AMc as a full-time employee and turned out to be more loyal to AMc than | **Subjective Belief; Conjecture; Lack of Factual Foundation.**<br><br>Defendants object to this passage of paragraph 17 of the LaPierre Declaration because it represents only LaPierre's subjective belief that North was "more |

| | | |
|---|---|---|
| | the NRA. Although he appeared to support the NRA's engagement of BAC, North later aligned himself with the agency as his business relationship with the agency was scrutinized." | loyal to AMc than to the NRA" or that he "aligned" himself with AMc at some point. The Declaration states no facts to support the scrutiny LaPierre claims North was supposedly facing that would lead to such "alignment" or "loyalty." |
| | | The only facts LaPierre relies upon to support this contention are set out in paragraph 19 of the Declaration, which are not based on personal knowledge but only upon hearsay and conjecture. |
| 6. | Declaration of Wayne LaPierre (ECF 122) ¶ 17:<br><br>"…I regarded North as having a conflict of interest as he attempted to interfere with the Association's efforts to gain access to AMc's files, books and records. In fact, in early 2019…I regarded North as having a conflict of interest. I repeatedly informed him of this conflict multiple times and that he should cease and trying to derail BAC's compliance work and its efforts to scrutinize AMc's books and records." | **Subjective Belief; Lack of Factual Foundation.**<br><br>Defendants object to this passage of paragraph 17 of the LaPierre Declaration because it represents only LaPierre's subjective belief that North had a "conflict of interest" and provides no foundational facts to support or describe what actions North took to "interfere" with the "Association's efforts to gain access to AMc's files, books, and records."<br><br>These concepts related to North's interference and the NRA's attempt to "scrutinize" AMc's records are repeated twice here but still provide no detail regarding the NRA's requests for these books and records or the manner in which North was interfering with such requests. |
| 7. | Declaration of Wayne LaPierre (ECF 122) ¶ 18:<br><br>"Millie recounted the conversation she just had with North. In sum, North wanted to convey a message from Angus McQueen and AMc: unless I dropped the lawsuit against AMc and immediately resigned, AMc would circulate allegedly damaging information about me, members of my leadership team, and the NRA. On the other hand, if I agreed to their demands and supported North for another term as NRA President, North stated | **Hearsay; Lack of Foundation; Lack of Personal Knowledge; Conjecture; Misstates the Evidence.**<br><br>Defendants object to this passage of paragraph 17 of the LaPierre Declaration because it represents only LaPierre's subjective interpretation regarding Millie Hallow's out-of-court statements, offered for the truth of the matter asserted therein. Not having been on the call, LaPierre has no personal knowledge of the conversation.<br><br>Furthermore, he has subjectively contorted this hearsay, not only to conform to his preferred conclusion, but in a manner that is inconsistent with the sworn testimony of both Carolyn Meadows and Millie Hallow, both of whom testified that North did not seem to be communicating any message on behalf |

| | | |
|---|---|---|
| | he would speak to Angus McQueen in order to negotiate an 'excellent retirement' for me." | of AMc.[3]  Moreover, neither the testimony, nor the notes taken by either woman, say anything about LaPierre "support[ing] North for another term as NRA President."[4]  LaPierre is literally making this up—there is no foundation for this statement whatsoever aside from his subjective interpretation and beliefs about this situation. |
| 8. | Declaration of Wayne LaPierre (ECF 122) ¶ 19:<br><br>"Sandy Froman and Scott Bach, both of whom are attorneys and were present when Millie and Carolyn relayed the contents of the call, remarked that this sounded like extortion." | **Hearsay; Legal Conclusion; Factual Conclusion Lacking Foundation.**<br><br>Defendants object to this passage of paragraph 19 of the LaPierre declaration because the determination that "extortion" occurred is an out-of-court statement by Sandy Froman and Scott Bach offered for the truth of the matter asserted.  Furthermore, because neither Mr. Froman nor Mr. Bach were present on Millie Hallow's call with North, any legal or factual conclusion they might have drawn in this situation would similarly lack sufficient factual foundation to reach this conclusion and relies solely upon their subjective interpretation of the event. |
| 9. | Declaration of Wayne LaPierre (ECF 122) ¶ 19:<br><br>"Earlier that day, Millie had reported receiving a less-detailed version of the same corrupt proposal from former NRA Board member (and senior executive of an AMc client) Dan Boren, likewise relayed on behalf of AMc." | **Hearsay.**<br><br>Defendants object to this passage of paragraph 19 of the LaPierre Declaration because it represents only LaPierre's subjective interpretation regarding Millie Hallow's out-of-court statement regarding her call with Dan Boren, which is being offered for the truth of the matter asserted therein.  Not having been on the call, LaPierre has no personal knowledge of the conversation nor that any "proposal" was being transmitted "on behalf of AMc." |
| 10. | Declaration of Wayne LaPierre (ECF 122) ¶ 22:<br><br>"Since then, significant documents and other information have come to my attention that confirm my grim intuition that day: the demand by AMc that I | **Lack of Foundation; Subjective Belief; Violation of Best Evidence Rule.**<br><br>Defendants objection to this passage of paragraph 22 of the LaPierre Declaration because it does not state with any particularity what "documents and other information" he has discovered, or what facts about these documents and information would make them |

---

[3] *See* ECF 79 at Ex. A-33 at 183:1-10 [APP 676], 202:6-9 [APP 681], 207:8-13 [APP 682]; Ex. A-28 at 182:4-183:1 [APP 558].

[4] *See* ECF 123 at Ex. 31, 34.

| | | |
|---|---|---|
| | resign on April 24, 2019, was a premeditated, corrupt scheme by AMc and others to take control of the NRA in order to derail inquiries into their own conduct." | "significant" or indicative of any "corrupt scheme" by AMc or anyone else.<br><br>This passage is nothing more than an argumentative restatement of Plaintiff's pleadings,[5] similarly lacking in detail, intended to allude to some trove of damning evidence.<br><br>If such clear evidence existed to confirm these "grim" suspicions, then it should have been attached to this Declaration or produced as an exhibit to Plaintiff's Response pursuant to Federal Rule of Evidence 1002 as the best evidence in support of this claim. |

## IX.   OBJECTIONS TO DECLARATION OF CRAIG SPRAY

16.   Defendants object to certain passages within the declaration of Craig Spray:

| NO. | DEFENDANT'S EVIDENCE | GROUNDS FOR OBJECTION |
|---|---|---|
| 1. | Declaration of Craig Spray (ECF 122) ¶ 5:<br><br>"I apparently touched a raw nerve in Revan McQueen." | **Subjective Belief; Conjecture.**<br><br>Defendants object to this passage of paragraph 5 of the Spray Declaration because it represents only Spray's subjective belief and conjecture regarding the mindset of Revan McQueen. |
| 2. | Declaration of Craig Spray (ECF 122) ¶ 9:<br><br>"AMc's short-sighted and entitled position that the NRA's need to make budget cuts was tantamount to "taking" money from them rang hollow in my ears." | **Subjective Belief; Conjecture.**<br><br>Defendants object to this passage of paragraph 9 of the Spray Declaration because it represents only Spray's subjective belief and conjecture regarding the mindset of certain AMc executives as being "entitled" or "short-sighted." |
| 3. | Declaration of Craig Spray (ECF 122) ¶ 10: | **Subjective Belief; Conjecture.**<br><br>Defendants object to this passage of paragraph 10 of the Spray Declaration because it represents only |

---

[5] *See, e.g.*, ECF 18 (Plaintiff's Amended Complaint) at 2, alluding to "newly unearthed text messages, emails, and interviews" which supposedly reveal all manner of misdeeds.  Defendants have specifically requested these items in written discovery, but they have not been produced.

| | | |
|---|---|---|
| | "AMc seemed to believe that any fees paid to other vendors were an unwise expenditure if AMc received less than $40 million per year." | Spray's subjective belief and conjecture regarding the mindset of certain AMc executives and what they "seemed to believe." |
| 4. | Declaration of Craig Spray (ECF 122) ¶ 11:<br><br>"Never in my entire career as a finance executive have I dealt with business partners that acted in such an unprofessional manner." | **Subjective Belief; Lacks Factual Foundation.**<br><br>Defendants object to this passage of paragraph 11 of the Spray Declaration because it represents only Spray's subjective opinion that certain conduct was "unprofessional," which further lacks sufficient factual foundation regarding Spray's experience with previous "business partners" to provide support for this opinion. |

## X.   OBJECTIONS TO DECLARATION OF GRANT STINCHFIELD

17.     Defendants object to most of the paragraphs of the declaration of Grant Stinchfield. As an initial matter, the Stinchfield Declaration is defective as a legal declaration. Specifically, the Stinchfield Declaration fails to establish Mr. Stinchfield's competence to testify on the matters stated therein and fails to state that it is made on Mr. Stinchfield's personal knowledge. *See Mason*, 2019 U.S. Dist. LEXIS 165452, at *12-13.

18.     As a secondary matter, the Stinchfield Declaration does not appear to be relevant to any proposition within Plaintiff's Response. The Declaration, specifically paragraph 3 of Declaration, is referenced only one single time in the entire Response at footnote 73, cited for the proposition: "*One whistleblower testified that AMc "deserved to be fired," which he believes would have occurred with or without Brewer.*" *See* ECF 122 n.73. Paragraph 3 of the Stinchfield Declaration does not support this proposition, which relates entirely to the declaration of Erstling. But even if this single paragraph was somehow relevant to supporting this unrelated proposition, the other fifteen paragraphs are not cited for any proposition in Plaintiff's Response whatsoever. Rather, the Stinchfield Declaration appears to be a vehicle for Stinchfield to air certain grievances

against AMc and Revan McQueen, but it offers nothing substantial in support of the arguments contained within Plaintiff's Response. Defendants object to the court's consideration of paragraphs 1-2, and 4-16 for purposes of this Motion.

19.    In addition, Defendants object as follows:

| NO. | DEFENDANT'S EVIDENCE | GROUNDS FOR OBJECTION |
|---|---|---|
| 1. | Declaration of Grant Stinchfield (ECF 122) ¶ 2:<br><br>"However, while I was employed there, I become [sic] concerned that the leadership at AMc may not be reporting to the NRA "live" real time views of my show." | **Lack of Facts Supporting Personal Knowledge; Subjective Belief.**<br><br>Defendants object to this passage from paragraph 2 of the Stinchfield Declaration because it fails to establish the factual foundation for Stinchfield's knowledge of AMc's reports to the NRA or any particular access to, or particular understanding of, viewership metrics that would give rise to his subjective belief that there was cause for him to become "concerned" in the manner he describes. |
| 2. | Declaration of Grant Stinchfield (ECF 122) ¶ 2:<br><br>"It appeared to me AMc only focused on social media views in its reports to the NRA." | **Lack of Facts Supporting Personal Knowledge.**<br><br>Defendants object to this passage from paragraph 2 of the Stinchfield Declaration because it fails to establish the factual foundation for Stinchfield's knowledge of AMc's reports to the NRA, such as his personal attendance at any such meetings where these reports were presented, that would establish the personal knowledge necessary to support this factual conclusion. |
| 3. | Declaration of Grant Stinchfield (ECF 122) ¶ 2:<br><br>"By leaving these "live" numbers out of reports to the NRA, a reasonable person would likely construe the reports as misleading." | **Lack of Facts Supporting Personal Knowledge; Subjective Opinion; Factual Conclusion.**<br><br>Defendants object to this passage from paragraph 2 of the Stinchfield Declaration because it fails to establish any factual foundation that would support Stinchfield's personal knowledge of what AMc's "reports" to NRA did include or should have included, or any particular knowledge base regarding AMc viewership metrics, or viewership metrics generally, to support his opinion testimony that "a reasonable person would likely construe the reports as misleading."    This statement represents only Stinchfield's subjective belief and conjecture |

| | | |
|---|---|---|
| | | regarding the "reasonable person" standard he announces. |
| 4. | Declaration of Grant Stinchfield (ECF 122) ¶ 3:<br><br>"…claims which seemed intended to damage the NRA's mission from both a financial perspective and from a public relations perspective." | **Conjecture; Subjective Belief; Lack of Personal Knowledge.**<br><br>Defendants object to this passage from paragraph 3 of the Stinchfield Declaration because it represents only Stinchfield's subjective beliefs and conjecture about what AMc "intended." Stinchfield was the host of an NRATV program. He was not an executive of AMc, nor does he state facts to support his personal knowledge of facts supporting this subjective opinion. |
| 5. | Declaration of Grant Stinchfield (ECF 122) ¶ 5:<br><br>"I predicted they would sue me for what I was going to say."<br><br>"I predicted they would, because that is how they act against anyone who dares to defy them. | **Conjecture; Factual Conclusion; Lack of Facts Establishing Personal Knowledge.**<br><br>Defendants object to the passage from paragraph 5 of the Stinchfield Declaration because it represents only Stinchfield's subjective beliefs and melodramatic conjecture, which are not supported by facts alleged anywhere else within the Declaration. |
| 6. | Declaration of Grant Stinchfield (ECF 122) ¶ 6:<br><br>"I am offended that Revan would accuse me of being coerced when he knows that I have never been coerced into anything in my adult life." | **Subjective Belief; Conjecture; Lack of Facts Establishing Personal Knowledge.**<br><br>Defendants object to this passage from paragraph 6 of the Stinchfield Declaration because it merely announces Stinchfield's subjective belief and conjecture regarding what Revan McQueen "knows" about Stinchfield's ability to be coerced, which evidences Stinchfield's lack of personal knowledge to make this statement. No factual foundation is provided anywhere within the Declaration that would support this assertion. |
| 7. | Declaration of Grant Stinchfield (ECF 122) ¶ 6:<br><br>"Coercion is not something I am susceptible to." | **Lack of Facts Establishing Personal Knowledge; Subjective Belief; Unsupported Assertion.**<br><br>Defendants object to this passage from paragraph 6 of the Stichfield Declaration because it represents only Stichfield's subjective belief that his is not susceptible to being coerced. The facts stated in support of this subjective belief (that he has run a |

|   | | |
|---|---|---|
| | | multi-million dollar business, run for Congress, and received four Emmy Awards), while impressive, do not provide the factual foundation for his opinion that he is impervious to coercion. |
| 8. | Declaration of Grant Stinchfield (ECF 122) ¶ 8: <br><br> "The suit is shameful, and it appears AMc is using that same tactic against Brewer." | **Subjective Belief.** <br><br> Defendants object to this passage from paragraph 8 of the Stinchfield Declaration because it represents nothing but Stinchfield's subjective opinions that the defamation lawsuit against him is "shameful" and his conjecture about AMc's legal tactics. |
| 9. | Declaration of Grant Stinchfield (ECF 122) ¶ 12: <br><br> "I will not allow foes of the NRA, like AMc, to silence me just because they do not like what I have to say." | **Unsupported Assertion.** <br><br> Defendants object to this passage from paragraph 12 of the Stinchfield Declaration because it contains only bravado, which is an unsupported assertion regarding Stinchfield's general attitude toward this litigation. |
| 10. | Declaration of Grant Stinchfield (ECF 122) ¶ 13: <br><br> "To be clear, I am not a disgruntled employee, and I was proud of the work I did at NRATV. I was always grateful for the opportunity to be a voice for NRA members.   That responsibility to the NRA members – for the awesome responsibility of speaking for them – is why I came forward. 'Disgruntled' is certainly not a term I would use to describe my emotions.  'Sad' is a much better description." | **Unsupported Assertion; Subjective Beliefs.** <br><br> Defendants object to paragraph 13 of the Stinchfield Declaration because it contains only unsupported assertions and Stinchfield's subjective beliefs. The declaration does not contain any facts to support his opinion that he was not a "disgruntled" employee or that he was "proud," "grateful," or "sad" as stated. |
| 11. | Declaration of Grant Stinchfield (ECF 122) ¶ 14: <br><br> "My goal has always been to protect the NRA from any actions that could be harmful to membership and the NRA's | **Unsupported Assertion.** <br><br> Defendants object to paragraph 14 of the Stinchfield Declaration because it merely represents Stinchfield's subjective assertion regarding his professional and personal "goals," which is unsupported by the facts set forth in the Declaration. |

| | | |
|---|---|---|
| | ultimate goal of protecting the Second Amendment." | |
| 12. | Declaration of Grant Stinchfield (ECF 122) ¶ 15:<br><br>"I never had a sense that AMc – under Revan's leadership – wanted to work with the NRA or even cooperate with them on important issues like budgeting or messaging." | **Lack of Facts Supporting Personal Knowledge; Factual Conclusion; Subjective Belief.**<br><br>Defendants object to the passage from paragraph 15 of the Stinchfield Declaration because it merely represents Stinchfield's subjective beliefs regarding AMc and Revan McQueen's professional intentions with regard to the NRA. Stinchfield, as an NRATV host, does not provide facts which would support any particular understanding of "budgeting issues" or "messaging" with regard to the NRA or provide any explanation about how he would have gained this type of knowledge regarding AMc's institutional intent. |

Dated: June 3, 2020

Respectfully submitted,

*/s/ G. Michael Gruber*
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com

**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 3rd day of June 2020:

*G. Michael Gruber*
G. Michael Gruber