**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| *Plaintiff and Counter-Defendant*, | § § | |
| **and** | § § | |
| **WAYNE LAPIERRE,** | § § | |
| *Third-Party Defendant*, | § § | |
| **v.** | § § | **Case No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** | § § | |
| *Defendant and Counter-Plaintiff*, | § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG,** | § § § § | |
| *Defendants*. | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO DECLARATION OF REVAN MCQUEEN

Ackerman McQueen, Inc. ("*AMc*"), Mercury Group, Inc., Henry Martin, William Winkler, Melanie Montgomery, and Jesse Greenberg (collectively, "*Defendants*") file this *Response to Plaintiff's Objections to the Declaration of Revan McQueen* (the "*Response*") (ECF 120). Although Defendants believe the objections should be overruled, Defendants submit explanatory evidence out of an abundance of caution to address the NRA's concerns.

### I.   RESPONSES TO OBJECTIONS TO MCQUEEN DECLARATION

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| 1 | Declaration of Revan McQueen (ECF No. 80) ¶ 1:<br><br>"My name is Revan McQueen . . . . The facts stated herein are true and correct, and based on my personal knowledge in my capacity as CEO of AMc." | <u>Lack of Personal Knowledge.</u> The NRA objects to paragraph 1 of the McQueen Declaration because the McQueen Declaration does not demonstrate that Mr. McQueen has personal knowledge for all the statements contained in his declaration. | The declaration and R. McQueen's responsive declaration describe the personal knowledge for the statements made therein, rendering this objection improper. |
| 2 | Declaration of Revan McQueen (ECF No. 80) ¶ 6:<br><br>"The McQueen family is a small and tight-knit family. Brewer has been involved in- and has been permitted intimate personal knowledge- of our family's affairs, both personal and business, for over two decades." | <u>No Supporting Facts.</u> The NRA objects to paragraph 6 of the McQueen Declaration because the McQueen Declaration does not demonstrate that Mr. McQueen has personal knowledge of all the statements contained in paragraph 6. Among other things, the McQueen Declaration provides no facts to support the statement that Mr. William A. Brewer "has been permitted intimate personal knowledge – of our family's affairs, both personal and business, for over two decades."<br><br>In fact, the McQueen Declaration provides no factual support for the statement that Mr. Brewer obtained "intimate personal knowledge" of AMc's business based on his relationship with the McQueen family. | *See* R. McQueen's responsive declaration ¶ 40-42, 44, further describing his personal knowledge. |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| 4 | Declaration of Revan McQueen (ECF No. 80) ¶ 9:<br><br>"I am also aware of Brewer voicing frequent professional criticisms about AMc's work with the NRA. I don't believe Brewer to be and certainly have not known him to be a supporter of the Second Amendment. Brewer, on more than one occasion, would pass judgment on the billing structure of AMc, saying the company could 'make more money if it billed hourly.'" | 1. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>2. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Lack of Personal Knowledge. The NRA objects to paragraph 9 of the McQueen Declaration because the McQueen Declaration fails to demonstrate that Mr. McQueen has personal knowledge for the statements contained in paragraph 9. In particular, Mr. McQueen fails to provide any information to demonstrate that he has *any* personal knowledge about alleged criticisms Brewer communicated to the NRA about AMc's work, how Mr. McQueen has *any* personal knowledge about Mr. Brewer's positions regarding the Second Amendment, or that Mr. Brewer has commented on AMc's billing structure.<br><br>Inadmissible Hearsay. The NRA objects to paragraph 9 of the McQueen Declaration because it is based on inadmissible hearsay. Mr. McQueen's allegations about Mr. Brewer's alleged statements criticizing AMc or how AMC could make more money if it billed hourly are based on inadmissible | *See* R. McQueen's responsive declaration ¶ 19, further describing his personal knowledge.<br><br>Brewer's statements are not excluded by the rule against hearsay under FED. R. EVID. 803(1) because the statements concern his commentary about an event or condition made while or immediately after he perceived it, and FED. R. EVID. 803(3) because the statements concern his state of mind and emotional condition, regardless of the truth of his statements. |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| | | hearsay because they are based on out-of-court statements of an unidentified person to prove the truth of the matters asserted. | |
| 5 | Declaration of Revan McQueen (ECF No. 80) ¶ 10:<br><br>"I am aware of a rift between Brewer and Tony Makris, the President of the Mercury Group, Inc. Mr. Makris formally resigned Brewer's business because of Brewer's conduct." | 1. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>2. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Lack of Personal Knowledge. The NRA objects to paragraph 10 of McQueen's Declaration because the declaration fails to demonstrate how Mr. McQueen has personal knowledge for the statements contained in paragraph 10. In particular, Mr. McQueen fails to provide any fact to demonstrate how he has personal knowledge (i) of an alleged rift between Brewer and Tony Makris and (ii) how he knows that Mr. Makris allegedly resigned Brewer's business due to Brewer's conduct.<br><br>Inadmissible Hearsay. The NRA also objects to paragraph 10 because the statements Mr. McQueen makes in this paragraph are based on inadmissible hearsay since they are based on out-of-court statements of an unidentified person that are offered for the truth of the matters asserted. | The statements are not excluded by the rule against hearsay under FED. R. EVID. 803(1) because the statements supporting this personal knowledge were made by Tony Makris in describing or explaining an event made while or immediately after he perceived it, and under FED. R. EVID. 803(3) because the statements were made by Tony Makris concerning his state of mind and emotional condition, regardless of the truth of his statements.<br><br>As the CEO of AMc, Revan McQueen is presumed to have personal knowledge of the acts of his corporation. |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| 6 | Declaration of Revan McQueen (ECF No. 80) ¶ 11:<br><br>"I am also aware that Brewer has publicly held forth the theory that law firms are better suited than communication firms like AMc to perform public relations services for their clients, a theory he debated with me and Angus on numerous occasions. I am aware that Brewer has a public relations practice within his law firm in apparent accordance with that philosophy, a fact further confirmed by team members of the Brewer Firm that specialize in public relations." | 1. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br>2. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br><br>Inadmissible Hearsay. The NRA objects to the statements made in paragraph 11 of the McQueen Declaration because they are based on inadmissible hearsay since they are based on out-of-court statements of an unidentified person offered to prove the truth of the matters asserted. Further, the statements concerning any alleged "facts" confirmed by team members of the Brewer Firm are based on inadmissible hearsay since they appear to be based on out-of-court statements of an unidentified person offered to prove the truth of the matters asserted.<br><br>Lack of Personal Knowledge. The NRA objects to paragraph 11 because the McQueen Declaration fails to demonstrate how Mr. McQueen has personal knowledge "that Brewer has publicly held forth the theory that law firms are better suited than communication firms like AMc to perform public relation services for their client, . . ." The NRA also objects to | The testimony based on Brewer's statements is not excluded by the rule against hearsay under FED. R. EVID. 803(3) because Brewer made the statements concerning his state of mind and emotional condition, regardless of the truth of his statements.<br><br>The testimony based on statements by Brewer Firm employees is similarly not excluded for the same reason. |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| | | paragraph 11 because Mr. McQueen fails to provide any evidence to demonstrate that he has personal knowledge Mr. Brewer's public relations practice within his law firm operates in accordance with the aforementioned philosophy.<br><br>In addition, the McQueen Declaration does not demonstrate how Mr. McQueen has personal knowledge that Mr. Brewer debated with Angus on numerous occasions about Mr. Brewer's alleged thoughts about law firms about public relations. The NRA also objects to this statement to the extent it is based on inadmissible hearsay. | |
| 7 | Declaration of Revan McQueen (ECF No. 80) ¶ 12:<br><br>The first time I became aware that Brewer had been hired by the NRA was in 2018 when AMc started receiving PR emails from Travis Carter. John Frazer ("Frazer") also informed AMc via email that Brewer had been retained to represent the NRA in a lawsuit against the Lockton Affinity Series of Lockton Affinity, LLC ("Lockton") related to the NRA's "Carry Guard" initiative and asked AMc to comply with any requests | 1. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br>2. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>3. **Lack of Foundation (Fed. R. Evid. 602, 901a)**<br>4. **Speculation (Fed. R. Evid. 602, 701)**<br><br>Inadmissible Hearsay. The NRA objects to the statements contained in paragraph 12 of the McQueen Declaration because they are based on inadmissible hearsay since they are based on out-of-court | *See* R. McQueen's responsive declaration ¶ 21, further describing his personal knowledge. Moreover, as the CEO of AMc, Revan McQueen is presumed to have personal knowledge of the acts of his corporation.<br><br>It is unclear what exactly the NRA alleges is hearsay. However, the referenced statements are based on R. McQueen's personal knowledge as CEO of AMc, his personal knowledge of his company's limited involvement with Carry Guard as directed by Josh |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| | for information related to Carry Guard. Carry Guard was a short- lived program that offered training and insurance for the use of firearms in self-defense. *It is my understanding that the insurance portion, which AMc had no part in structuring from a business standpoint, was ultimately found to be illegal in several states. AMc agreed to participate with Brewer's investigation.* (Objections to portions italicized). | statements of an unidentified person offered to prove the truth of the matters asserted. <br><br> Lack of Personal Knowledge. The NRA also objects to paragraph 12 because Mr. McQueen fails to provide any evidence to demonstrate that he has personal knowledge regarding any matter related to the Lockton lawsuit. <br><br> Lack of Foundation. The NRA objects to paragraph 12 because Mr. McQueen's conclusory allegations because they do not appear to be based on any personal knowledge or actual evidence. <br><br> Speculation. The NRA objects to paragraph 12 because the McQueen Declaration does not demonstrate that the statements are based on Mr. McQueen's personal knowledge and appear to be nothing more than rank speculation. | Powell and Wayne LaPierre, and his personal knowledge regarding the agreement with to participate in Brewer's investigation (considering he, as CEO, authorized such participation). The statements are also based on publicly available information, including the public news articles and public court filings describing the illegal nature of the Carry Guard program. <br><br> The other referenced statements are not excluded by the rule against hearsay because they are statements offered against a party opponent. FED. R. EVID. 801(d)(2). |
| 8 | Declaration of Revan McQueen (ECF No. 80) ¶ 13: <br><br> "*Angus always directed everyone to comply with all formal directives from the NRA. Among many examples of* | 1. **Inadmissible Hearsay (Fed. R. Evid. 802)** <br> 2. **Lack of Personal Knowledge (Fed. R. Evid. 602)** <br><br> Inadmissible Hearsay. The NRA objects | *See* R. McQueen's responsive declaration ¶ 22, further describing his personal knowledge. As the CEO of AMc, Revan McQueen is presumed to have personal knowledge of the acts of his corporation. |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
|  | cooperation and assistance, I am aware that Brewer was allowed to interview multiple AMc employees. *During that interview, it is my understanding that he went into a targeted and unrelated (to Carry Guard) line of questioning about Angus specifically.*" (Objections to portions italicized) | to paragraph 13 because the statements contained in this paragraph are based on inadmissible hearsay since they are based on out-of-court statements of an unidentified person offered to prove the truth of the matters asserted.<br><br>Lack of Personal Knowledge. The NRA also objects to this paragraph because Mr. McQueen provides no evidence to support his assertion that he has personal knowledge of what occurred during the interview referenced in paragraph 13. In fact, he does not even specify which interview he is even referring to. | The referenced statements are not excluded by the rule against hearsay because they are statements offered against a party opponent. FED. R. EVID. 801(d)(2). |
| 9 | Declaration of Revan McQueen (ECF No. 80) ¶ 15:<br><br>"From that point on, as the Carry Guard investigation progressed, Brewer began taking actions and exhibiting behavior that appeared to be unrelated to Carry Guard and increasingly aggressive toward AMc. Wayne LaPierre ("LaPierre") informed Angus that Brewer had criticized AMc's speechwriting services with regard to a speech LaPierre directed, as was standard practice, AMc to write for Conservative Political Action | 1. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>2. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Lack of Personal Knowledge. The NRA objects to statements regarding Brewer's alleged aggressive actions and behavior towards AMc because Mr. McQueen fails to demonstrate how he has personal knowledge to support his statements. In addition, Mr. McQueen fails to demonstrate how he learned this information and he does not identify what actions and behavior he is even | *See* R. McQueen's responsive declaration ¶ 23, further describing his personal knowledge. Moreover, as the CEO of AMc, Revan McQueen is presumed to have personal knowledge of the acts of his corporation.<br><br>The statements are not excluded by the rule against hearsay under FED. R. EVID. 801(d)(2) as a statement offered against a party opponent and its agent concerning both the party opponent and agent's state of mind and/or present sense impression, regardless of the truth of the matter asserted. FED. R. EVID. |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| | Conference earlier that year." | referring to.<br><br>Inadmissible Hearsay. The NRA also objects to the second sentence of paragraph 15 because it is based on inadmissible hearsay since the statement "Wayne LaPierre… informed Angus that…" is based on an out-of-court statement allegedly made by Mr. LaPierre to a deceased third-party (Angus McQueen), offered to prove the truth of the matters asserted. In fact, it is based on improper double hearsay. | 803(1), (3). |
| 10 | Declaration of Revan McQueen (ECF No. 80) ¶ 16:<br><br>"I was made aware that LaPierre told Angus and others at AMc on more than one occasion during phone calls and in-person discussion throughout the summer of 2018 that "Brewer was going to keep him out of jail." During conversations between AMc representatives and LaPierre, when AMc expressed concern about Brewer's strange involvement and his increasing antagonism toward AMc, it is my understanding LaPierre stated that he felt like he was "in a box," that Brewer was "crazy," and that LaPierre felt like he was "just a pawn on Brewer's chess | 1. **Inadmissible Hearsay (Fed R. Evid. 802)**<br>2. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br><br>Inadmissible Hearsay. The NRA objects to the entirety of this paragraph because it is based on inadmissible hearsay. In particular, the statements "I was made aware that LaPierre told Angus and others… that 'Brewer was going to keep him out of jail'" are based on inadmissible hearsay since Mr. McQueen's statements are based on out-of-court statements of another, offered for the truth of the matters asserted. In fact, the statements are based on double hearsay. | *See* R. McQueen's responsive declaration ¶ 13, further describing his personal knowledge. Moreover, as the CEO of AMc, Revan McQueen is presumed to have personal knowledge of the acts of his corporation.<br><br>The statements are not excluded by the rule against hearsay under FED. R. EVID. 801(d)(2) because they are offered against a party opponent and concern his present sense impression, state of mind, and emotional condition. FED. R. EVID. 803(1), (3). |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| | board." | Further, the statement: "During conversations between AMc representatives and LaPierre… it is my understanding LaPierre stated that he felt like he was 'in a box,' that Brewer was 'crazy,' and that LaPierre felt like he was just a pawn on Brewer's chess board'" are based on inadmissible hearsay since they are based on out-of-court statements of another offered to prove the truth of the matters asserted. In fact, Mr. McQueen's statements are based on double hearsay.<br><br>Lack of Personal Knowledge. In addition, the NRA objects to the statements in this paragraph because the McQueen Declaration does not demonstrate that Mr. McQueen has personal knowledge of any facts to support that these statements he refers to were made, as he could not have personal knowledge of a conversation he was not even present for.<br><br>In addition, these statements are inadmissible because the McQueen Declaration does not demonstrate that Mr. McQueen has personal knowledge to support his statements. | |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| 11 | Declaration of Revan McQueen (ECF No. 80) ¶ 17:<br><br>"*Brewer's interference with AMc's NRA-related business increased significantly after Angus became ill.* On July 2, 2018, Brewer sent an email on behalf of the NRA to AMc's attorney seeking additional documents and claiming that certain documents had been withheld from previous NRA requests for productions." (Objection to italicized portions). | **1. Lack of Personal Knowledge (Fed. R. Evid. 602)**<br><br>The NRA objects to Mr. McQueen's assertion that Brewer's alleged interference with AMc's NRA-related business increased after Angus became ill because the McQueen Declaration does not demonstrate that Mr. McQueen has personal knowledge to support these statements. | *See* R. McQueen's responsive declaration ¶ 24, further describing his personal knowledge. Moreover, as the CEO of AMc, Revan McQueen is presumed to have personal knowledge of the acts of his corporation. |
| 12 | Declaration of Revan McQueen (ECF No. 80) ¶ 18:<br><br>*In July 2018, Brewer, on behalf of the NRA, filed an Amended Complaint in the lawsuit against Governor Andrew Cuomo and others in the Northern District of New York*: NRA v. Cuomo, et al., Case No: 18-cv-00566, United States District Court for the Northern District of New York. *In the Amended Complaint, false statements were made regarding NRATV and its alleged difficulty in securing media liability coverage.* In response, AMc's counsel wrote a letter to Brewer dated August 7, 2018 outlining the specific false statements made in the Amended | **1. Improper Opinion Testimony (Fed. R. Evid. 701)**<br>**2. Lack of Foundation (Fed. R. Evid. 602, 901a)**<br>**3. Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>**4. Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Improper Opinion Testimony. The NRA objects to Mr. McQueen's blanket assertion that the amended complaint contains false statements regarding NRATV and its difficulty in securing media liability coverage because it is improper opinion testimony. In addition, Mr. McQueen fails to identify the statements that are alleged to be | *See* R. McQueen's responsive declaration ¶ 25, further describing his personal knowledge. Moreover, as the CEO of AMc, Revan McQueen is presumed to have personal knowledge of the acts of his corporation.<br><br>It is unclear what exactly the NRA contends is hearsay. The statements referenced were made in public documents (court filings) or letters to or from the NRA/the Brewer Firm. Any statements made by the NRA and/or the Brewer Firm are not excluded under the rule against hearsay pursuant to FED. R. EVID. 801(d)(2) as statements offered against a party opponent. |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| | Complaint and requesting that Brewer and the NRA take the appropriate steps to correct the misstatements." | false.<br><br>Inadmissible Hearsay. The NRA objects to paragraph 18 because Mr. McQueen's knowledge of the Cuomo lawsuit appears to be based on inadmissible hearsay.<br><br>Lack of Personal Knowledge. The NRA objects to this paragraph because the McQueen Declaration does not demonstrate that Mr. McQueen has personal knowledge of any of the statements made, as he had no personal involvement in the lawsuit. The McQueen Declaration fails to demonstrate how Mr. McQueen has personal knowledge to support these statements, or how he has personal knowledge of the lawsuit against Governor Andrew Cuomo | The statements are proper opinion testimony under FED. R. EVID. 701 as rationally based on R. McQueen's perception, helpful to clearly understand his testimony or to determine a fact in issue, and not based on specialized knowledge within the scope of expert opinion testimony under FED. R. EVID. 702. |
| 13 | Declaration of Revan McQueen (ECF No. 80) ¶ 19:<br><br>"Then, on August 8, 2018, AMc received a letter from NRA Treasurer Woody Phillips ("Phillips") demanding unrestricted access to all of AMc's books and records—*which appeared to be far beyond the scope of the Carry Guard investigation. An AMc* | 1. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br>2. **Improper Opinion Testimony (Fed. R. Evid. 701)**<br>3. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br><br>Inadmissible Hearsay. The NRA objects to the second and third sentences of this paragraph because they are based on | *See* R. McQueen's responsive declaration ¶ 26, further describing his personal knowledge. Moreover, as the CEO of AMc, Revan McQueen is presumed to have personal knowledge of the acts of his corporation.<br><br>The statements are not excluded by the rule against hearsay under FED. R. EVID. 801(d)(2) because they are offered |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|-----|----------------------|----------------------|----------------------|
|  | *representative then contacted Phillips to ask about the letter. During the telephone call, Phillips confirmed that Brewer drafted the letter and that it was put in front of him to execute.* (Objections to italicized portions). | inadmissible hearsay since they are based on out-of-court statements of another presented to prove the truth of the matters asserted.<br><br>Lack of Personal Knowledge. The McQueen Declaration does not establish that Mr. McQueen has any personal knowledge of this alleged phone call (he instead states that "An AMc representative… contacted Phillips).<br><br>The NRA also objects because the McQueen Declaration fails to demonstrate how he has personal knowledge that the letter dated August 8, 2018 "appeared to be far beyond the scope of the Carry Guard investigation."<br><br>Improper Opinion Testimony. The NRA objects because the statement that the letter dated August 8, 2018, "appeared to be far beyond the scope of the Carry Guard investigation" is improper opinion testimony. | against a party opponent and concern his present sense impression, state of mind, and emotional condition. FED. R. EVID. 803(1), (3).<br><br>The statements are proper opinion testimony under FED. R. EVID. 701 as rationally based on R. McQueen's perception, helpful to clearly understand his testimony or to determine a fact in issue, and not based on specialized knowledge within the scope of expert opinion testimony under FED. R. EVID. 702. |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| 14 | Declaration of Revan McQueen (ECF No. 80) ¶ 20:<br><br>"Throughout the rest of August 2018, Brewer continued to insist AMc was withholding information and refusing to provide copies of documents, *which AMc was not required to do under the Services Agreement with the NRA. His letters and communications to AMc's attorneys became increasingly inaccurate, adversarial and incorrectly claimed that AMc was actively breaching its obligations under the Services Agreement. Angus and I both found this distressing because we knew that AMc had fully complied with every request in good faith.*" (Objections to italicized portions). | **1. Improper Opinion Testimony (Fed. R. Evid. 701)**<br>**2. Parol Evidence Rule**<br>**3. Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Improper Opinion Testimony. The NRA objects to Mr. McQueen's statements about AMc was not required to do because under the Services Agreement with the NRA they constitute improper opinion testimony.<br><br>The NRA also objects to Mr. McQueen's statement "[Brewer's] letters and communications… incorrectly claimed that AMc was actively breaching its obligations under the Services Agreement… [and] Angus and I both found this distressing because we knew that AMc had fully complied with every request in good faith" constitute improper opinion testimony. Further, Mr. McQueen's assertion that Mr. Brewer's letters to "AMc's attorneys became increasingly inaccurate, adversarial." is also improper opinion testimony offered with no evidentiary support.<br><br>Parol Evidence Rule. In addition, Mr. | *See* R. McQueen's responsive declaration ¶¶ 28-30, 36, further describing his personal knowledge. Moreover, as the CEO of AMc, Revan McQueen is presumed to have personal knowledge of the acts of his corporation.<br><br>Reference to Brewer's statements is not excluded by the rule against hearsay under Fed. R. Evid. 801(d)(2) because they are offered against a party opponent.<br><br>The statement concerning Angus' distress is not based on any statement excluded by the rule against hearsay because, even if the reference relied upon A. McQueen's own statement as opposed to R. McQueen's own observations, such would be permissible under Fed. R. Evid. 801(1), (3) as present sense impression and describing A. McQueen's state of mind and emotional condition.<br><br>The statements are proper opinion testimony under Fed. R. Evid. 701 as rationally based on R. McQueen's perception, helpful to clearly understand his testimony or to determine a fact in |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|-----|---------------------|----------------------|---------------------|
| | | McQueen's statements about the terms of the Services Agreement violate the parol evidence rule.<br><br>Inadmissible Hearsay. The statement that "Angus . . . found this distressing" is based on inadmissible hearsay. | issue, and not based on specialized knowledge within the scope of expert opinion testimony under FED. R. EVID. 702.<br><br>The statement does not violate the parol evidence rule because it does not introduce evidence of prior or contemporaneous negotiations and agreements that contradict, modify, or vary the contractual terms of a written contract. |
| 15 | Declaration of Revan McQueen (ECF No. 80) ¶ 22:<br><br>"It is my understanding that LaPierre, who was AMc's only designee at this time pursuant to the Services Agreement, directed AMc executives not to let Brewer have copies of anything because he feared the information would be leaked to hurt him. At this point, upon information and belief, based on our employees' interactions with Josh Powell ("Powell") (LaPierre's Chief of Staff), Brewer was working directly for Powell. This seemed to fit the narrative that LaPierre was "in a box." On more than one occasion, Powell told multiple people at AMc that he wished he could | 1. **Improper Opinion Testimony (Fed. R. Evid. 701)**<br>2. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br>3. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br><br>Improper Opinion. Mr. McQueen's statement that "LaPierre… was AMc's only designee at this time pursuant to the Services Agreement…" constitutes improper opinion testimony.<br><br>Lack of Personal Knowledge. The NRA objects to this paragraph because the McQueen Declaration does not demonstrate that Mr. McQueen has personal knowledge for the statement "based on our employees' interactions | *See* R. McQueen's responsive declaration ¶ 38, further describing his personal knowledge. Moreover, as the CEO of AMc, Revan McQueen is presumed to have personal knowledge of the acts of his corporation.<br><br>The statements are not excluded by the rule against hearsay under FED. R. EVID. 801(d)(2) because they are offered against a party opponent and because the statements concern the declarant's present sense impression, state of mind, and emotional condition. FED. R. EVID. 803(1), (3).<br><br>The statements are proper opinion testimony under FED. R. EVID. 701 as rationally based on R. McQueen's |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| | take control of the organization. One specific comment Powell made to multiple AMc employees was that he wished he could "put Wayne into a coma." It is my understanding that Brewer and Powell were very close, based in part on Powell talking to AMc representatives about how his relationship with Brewer extended past professional to personal interactions. Powell would often brag to people about his knowledge of the law that Brewer taught him. On one occasion, it is my understanding, that Powell told an AMc executive that Brewer was threatening to "have people at AMc indicted" by the Federal Bureau of Investigation under RICO (Racketeer Influenced and Corrupt Organizations Act.)" | with Josh Powell… Brewer was working directly for Powell." <br><br> Inadmissible Hearsay. The NRA objects to the statements above about "employees' interactions with Josh Powell" because they are based on inadmissible hearsay. The NRA objects to the alleged statements that "On more than one occasion, Powell told multiple people at AMc that he wished he could take control of the organization. One specific comment Powell made to multiple AMc employees was that he wished he could 'put Wayne into a coma'" because they are based on inadmissible hearsay since they appear to be based on out-of-court statements of another offered to prove the truth of the matters asserted. In fact, Mr. McQueen's statements appear to be based on double hearsay. <br><br> The NRA objects to the statements about directives from Mr. LaPierre because they are based on inadmissible hearsay since they are based on an out-of-court statements of others (which Mr. McQueen does not even contend he heard), offered to prove the truth of the matters asserted. | perception, helpful to clearly understand his testimony or to determine a fact in issue, and not based on specialized knowledge within the scope of expert opinion testimony under FED. R. EVID. 702. |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| 16 | Declaration of Revan McQueen (ECF No. 80) ¶ 23:<br><br>"Furthering Brewer's increased threatening behavior and validating Powell's independent account, shortly after the initial Brewer Firm review, *Angus learned from LaPierre that Brewer was threatening to have Angus indicted for unidentified misdeeds associated with AMc's work for the NRA. This deeply upset Angus who had loved and served the NRA for most of his career.*" (Objections to italicized portion) | 1. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br>2. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br><br>Lack of Personal Knowledge. The NRA objects to Mr. McQueen fails to present any admissible evidence to demonstrate how he has personal knowledge regarding how *Angus McQueen* learned of Mr. Brewer's alleged threats, making this inadmissible for lack of personal knowledge. Similarly, the NRA objects to the statement about Angus McQueen "deeply upset" by threats of indictment, because the McQueen Declaration fails to demonstrate how Revan McQueen could have personal knowledge of these alleged facts.<br><br>Inadmissible Hearsay. The NRA objects to the statements regarding alleged threats of indictment Mr. McQueen allegedly heard from Angus McQueen, who allegedly heard from LaPierre, who allegedly heard from Mr. Brewer, because they are based on inadmissible hearsay since they are out-of- court statements of another offered to prove the truth of the matters asserted. In fact, they are based on at least improper | *See* R. McQueen's responsive declaration ¶ 23, further describing his personal knowledge. Moreover, as the CEO of AMc, Revan McQueen is presumed to have personal knowledge of the acts of his corporation.<br><br>The statements are not excluded by the rule against hearsay because, under FED. R. EVID. 801(d)(2), LaPierre's statement is offered against a party opponent, and A. McQueen's statement concerns his present sense impression, state of mind, and emotional condition. FED. R. EVID. 803(1), (3).<br><br>The statements are proper opinion testimony under FED. R. EVID. 701 as rationally based on R. McQueen's perception, helpful to clearly understand his testimony or to determine a fact in issue, and not based on specialized knowledge within the scope of expert opinion testimony under FED. R. EVID. 702. |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| | | double hearsay. | |
| 17 | Declaration of Revan McQueen (ECF No. 80) ¶ 24:<br><br>Disgusted by Brewer's and Powell's threatening behavior, Angus and I, along with a handful of other AMc executives (three of whom became named parties in the Texas litigation and one who is in separate litigation with the NRA), met with LaPierre and Craig Spray on October 11, 2018 in Dallas, Texas to discuss Brewer and Powell as well as other matters of business. This meeting was part of a larger conference to discuss whether AMc would continue to provide any services at all for the NRA the following year. *We extensively discussed Brewer's connection to the McQueen family, how inappropriate and aggressive Brewer's conduct had become, and that we felt it was inappropriate for him to continue to represent the NRA in any manner related to AMc. We also discussed Powell's threatening behavior toward AMc as well as his alleged sexual harassment of one of our employees.* (Objection to italicized portions). | **1. Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Inadmissible Hearsay. The NRA objects to this paragraph because the alleged discussion between Mr. McQueen, Angus, and "a handful of other AMc executives" regarding Mr. Brewer's alleged connection to the McQueen family, Mr. Brewer's conduct, and his continued representation of the NRA are based inadmissible hearsay since all these statements are based on out-of-court statements of others offered to prove the truth of the matters asserted.<br><br>In addition, the NRA objects to statements regarding the alleged discussion regarding Powell's behavior and harassment because they are based on inadmissible hearsay since they are based on out-of-court statements of another offered to prove the truth of the matters asserted. | The statements are not excluded by the rule against hearsay because they are statements offered against a party opponent under FED. R. EVID. 801(d)(2) and statements concerning present sense impression, state of mind, and emotional condition.    FED. R. EVID. 803(1), (3). |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| 18 | Declaration of Revan McQueen (ECF No. 80) ¶ 25:<br>"*I was prepared to resign the business at that meeting but LaPierre and Craig Spray assured the company that things were changing. LaPierre repeatedly asked us during the meeting to "stick with him." After this meeting, LaPierre promised to me via phone that AMc would not have to deal with Powell, Brewer or his firm anymore, and that any future review of AMc's documents would be conducted by independent parties, not Brewer or his law firm.* And in accordance with LaPierre's promise to keep Brewer away from AMc, in November 2018, an independent on site audit of AMc was conducted by NRA counsel Cooper & Kirk without issue." (Objection to italicized portion). | **1. Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br><u>Inadmissible Hearsay.</u> The NRA objects to this paragraph because (1) the statements regarding LaPierre and Craig Spray's assurances, and (2) LaPierre's alleged statements to Mr. McQueen are based on inadmissible hearsay since they are based on out-of-court statements offered to prove the truth of the matters asserted. | The statements are not excluded by the rule against hearsay because they are statements offered against a party opponent under FED. R. EVID. 801(d)(2) and statements concerning present sense impression, state of mind, and emotional condition.   FED. R. EVID. 803(1), (3). |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| **19** | Declaration of Revan McQueen (ECF No. 80) ¶ 26:<br><br>"Despite this brief respite from Brewer's harassment, Brewer resurfaced a few weeks later in December 2018. *Brewer knew Angus was in the process of undergoing painful radiation and chemotherapy treatment after surgery had been ruled out as an option to treat his cancer.* Angus was home for what would likely be—and was in fact—his final Christmas with his family. *On December 21, 2018, the Brewer Firm sent another letter requesting more confidential information about AMc's business, such as information about other clients, which is proprietary to AMc and not authorized in the Services Agreement.* Prior to this time, the NRA had never requested any information about AMc's other clients, including how AMc negotiated agreements." (Objections to italicized portions). | **1. Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>**2. Improper Opinion Testimony (Fed. R. Evid. 701)**<br>**3. Parol Evidence Rule.**<br><br>Lack of Personal Knowledge. The NRA objects to this paragraph because Mr. McQueen fails to demonstrate how he has *personal knowledge* as to what Mr. Brewer knew or did not know about Angus McQueen's medical situation.<br><br>Improper Opinion Testimony. In addition, the NRA objects to this paragraph because Mr. McQueen's assertion that the request on December 21, 2018, was not authorized in the Services Agreement is improper opinion testimony.<br><br>Parol Evidence Rule. In addition, Mr. McQueen's assertions about the Services Agreement violates the parol evidence rule. | *See* R. McQueen's responsive declaration ¶ 26, further describing his personal knowledge. Moreover, as the CEO of AMc, Revan McQueen is presumed to have personal knowledge of the acts of his corporation.<br><br>The statements are proper opinion testimony under FED. R. EVID. 701 as rationally based on R. McQueen's perception, helpful to clearly understand his testimony or to determine a fact in issue, and not based on specialized knowledge within the scope of expert opinion testimony under FED. R. EVID. 702.<br><br>The statement does not violate the parol evidence rule because it does not introduce evidence of prior or contemporaneous negotiations and agreements that contradict, modify, or vary the contractual terms of a written contract. |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| 20 | Declaration of Revan McQueen (ECF No. 80) ¶ 27:<br><br>"In January 2019, in a meeting with AMc, LaPierre defended Brewer and told AMc that Brewer would be writing the upcoming Conservative Political Action Conference speech. LaPierre also said that he was sending Brewer to The New York Times to threaten to sue them for a story they were writing about Russia issues, of which AMc had no knowledge and LaPierre told AMc that we "don't know what we don't know."" | **1. Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Inadmissible Hearsay. The NRA objects to the alleged statements concerning what transpired at the meeting in January 2019 because they are based on inadmissible hearsay since they are based on out-of-court statements of another offered to prove the truth of the matters asserted.<br><br>The NRA also objects to the statement that "LaPierre also said that he was sending Brewer to The New York Times to threaten to sue them for a story they were writing about Russia issues…" because it is based on inadmissible hearsay since it is based on an out-of-court statement of another offered to prove the truth of the matters asserted.<br><br>The statement "…LaPierre told AMc that we 'don't know what we don't know'" is based on inadmissible hearsay since it is based on out-of-court statements offered of another to prove the truth of the matters asserted. | LaPierre's statements are not excluded by the rule against hearsay under FED. R. EVID. 801(d)(2) because they are offered against a party opponent and because they describe his then-existing state of mind (intent or plan) under FED. R. EVID. 801(3). |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| **21** | Declaration of Revan McQueen (ECF No. 80) ¶ 31:<br><br>During that time, April 2019, *Brewer threatened to have me and Angus indicted by the Department of Justice, which was communicated to me through a member of our family*. Brewer was also quoted in numerous media articles attacking AMc for its alleged failure to comply with the NRA's record requests. (Objections to italicized portions). | **1. Inadmissible Hearsay (Fed. R. Evid. 802)**<br>**2. Lack of Personal Knowledge (Fed. R. Evid. 602)**<br><br>Inadmissible Hearsay.    The NRA objects to this paragraph because Brewer's alleged threat against Mr. McQueen and Angus, "communicated… through a member of [their] family" because it is based on inadmissible hearsay since it is based on out-of-court statements of another offered to prove the truth of the matters asserted.<br><br>Lack of Personal Knowledge. The NRA also objects to this paragraph because Mr. McQueen concedes that he has no personal knowledge that this statement was made, as it was allegedly communicated to him through a family member. In addition, he does not state who made these statements, when they were made, what in particular was said, and how he learned of them. | *See* R. McQueen's responsive declaration ¶ 41, further describing his personal knowledge.<br><br>Reference to Brewer's statements is not excluded by the rule against hearsay under FED. R. EVID. 801(d)(2) because they are offered against a party opponent and because they describe his then-existing state of mind under FED. R. EVID. 801(3). |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| 22 | Declaration of Revan McQueen (ECF No. 80) ¶ 32:<br><br>"By early May 2019, Angus was severely ill, starting to cough up blood and show signs that the cancer was progressing. *It is my understanding that Brewer was well aware of all of this.* In mid- May 2019, Angus was hospitalized." (Objection to italicized portions) | **1. Lack of Personal Knowledge (Fed. R. Evid. 602)**<br><br>Lack of Personal Knowledge. The NRA objects to this paragraph because Mr. McQueen's declaration fails to demonstrate how he has personal knowledge regarding what Brewer knew, if anything, regarding Angus's medical condition. | *See* R. McQueen's responsive declaration ¶ 42, further describing his personal knowledge. |
| 23 | Declaration of Revan McQueen (ECF No. 80) ¶ 35:<br><br>"On July 11, 2019, as Angus was in hospice care and his family was traveling to see him, he read Brewer's quote in a Bloomberg article, accusing AMc of committing crimes against the NRA. *Distraught from reading the words of his son-in-law libeling him as a criminal, Angus looked at me and told me to protect our family from Brewer who he believed would stop at nothing to attempt to destroy his family.* Less than one week later, on July 16, 2019, Angus passed away." (Objections to italicized portions). | 1. **Relevance (Fed. R. Evid. 401, 402)**<br>2. **Unduly Prejudicial (Fed. R. Evid. 403)**<br>3. **Improper Opinion Testimony (Fed. R. Evid. 701)**<br>4. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br>5. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br><br>Lack of Relevancy And Unduly Prejudicial.<br>*First,* the initial portion of Mr. McQueen's statement "…as Angus was in hospice care and his family was traveling to see him…" is inadmissible as it fails to meet the test for relevance. In addition, this statement is | *See* R. McQueen's responsive declaration ¶ 35, further describing his personal knowledge.<br><br>The statement concerning A. McQueen's distress is not based on any statement excluded by the rule against hearsay because they describe his present-sense impression and his then-existing state of mind and emotional condition under FED. R. EVID. 801(1), (3).<br><br>The statements are proper opinion testimony under FED. R. EVID. 701 as rationally based on R. McQueen's perception, helpful to clearly understand his testimony or to determine a fact in |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| | | inadmissible because any probative value of this statement is substantially outweighed by the danger of unfair prejudice (i.e. by inducing purely emotional support for Defendants by introducing Angus McQueen's medical condition and the impact this had on their family), and confuses the issues (i.e. Angus McQueen's medical condition has no connection to this case).

Inadmissible Opinion Testimony. The NRA also objects to this paragraph because Mr. McQueen's statements "Distraught from reading the words off his son-in-law libeling him as a criminal…" is improper opinion testimony.

Inadmissible Hearsay. The NRA also objects to Mr. McQueen's statement that "Angus looked at me and told me to protect our family from Mr. Brewer…" because it is based on inadmissible hearsay since it is based on out- of-court statements of another offered to prove the truth of the matter asserted. | issue, and not based on specialized knowledge within the scope of expert opinion testimony under FED. R. EVID. 702. |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|-----|----------------------|----------------------|----------------------|
| 24 | Declaration of Revan McQueen (ECF No. 80) ¶ 36:<br><br>Since the date the NRA's first lawsuit was filed against AMc on April 12, 2019, *I have personal knowledge that Brewer, using family members as channels, has attempted to communicate with me to influence AMc's litigation positions and strategy. For example, when Brewer knew that AMc was represented by counsel, he tried to direct me to "break privilege" with my own attorneys so he could tell me "how to get out of this." In addition to his threat of indictment in April 2019, through these channels, I have learned that, despite the fact that Brewer and his PR unit have supposedly been limited to certain information in the Virginia lawsuits against AMc, Brewer is still managing and overseeing "every aspect" of those cases. Based on this knowledge, I have no reason to believe any of the highly confidential information AMc has produced in the Virginia lawsuits to the NRA has actually been withheld from Brewer as ordered.*" (Objections to italicized portions). | 1. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>2. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br><u>Lack of Personal Knowledge.</u> The NRA objects to this paragraph because Mr. McQueen fails to provide any evidence to demonstrate that he has personal knowledge that Mr. Brewer used family members as channels to backdoor communicate with Mr. McQueen in anyway. In addition, he does not demonstrate who received requests from Mr. Brewer, when those requests were made, and what were the substance of the requests.<br><br>Mr. McQueen's assertion, that "Based on this knowledge…" he does not believe the Virginia information has been withheld from Brewer – is inadmissible because Mr. McQueen fails to provide any admissible evidence to establish he has personal knowledge of this statement.<br><br><u>Inadmissible Hearsay.</u> The NRA also objects to this paragraph because the assertion that Brewer allegedly tried to direct Mr. McQueen to break privilege | *See* R. McQueen's responsive declaration ¶ 44, further describing his personal knowledge.<br><br>Reference to Brewer's statements is not excluded by the rule against hearsay under FED. R. EVID. 801(d)(2) because they are offered against a party opponent and because they describe then-existing state of mind (motive, intent, or plan).<br><br>The statement from the family member regarding Brewer's statement is not excluded by the rule against hearsay because it describes an event made while or immediately after perceiving it and is a statement of then-existing mental and emotional condition under FED. R. EVID. 801(1), (3). |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| | | so Brewer could tell him how he could get out of this is based on inadmissible hearsay since it is based on out- of-court statements of another offered to prove the truth of the matters asserted. In addition, these statements are inadmissible because Mr. McQueen fails to provide any support as to how he has personal knowledge of such a statements ever being made.<br><br>In addition, the NRA objects to this paragraph because the alleged April 2019 threat of indictment [from Brewer] is based on inadmissible hearsay since it is based on out- of-court statements of another and are offered to prove the truth of the matters asserted. | |
| 25 | Declaration of Revan McQueen (ECF No. 80) ¶ 37:<br><br>"Oddly, Brewer has now undertaken the representation of Grant Stinchfield ("Stinchfield")—a former AMc employee and NRATV program host who filed an affidavit on behalf of the NRA. *Not only did Stinchfield's affidavit contain false statements regarding AMc, but it was promptly leaked to the media.* AMc responded with a suit against Stinchfield for libel, | 1. **Improper Opinion Testimony (Fed. R. Evid. 701)**<br>2. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>3. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br><br>Improper Opinion Testimony. The NRA objects to this paragraph because Mr. McQueen's assertion that "...Stinchfield's affidavit contain[ed] false statements regarding AMc..." is inadmissible since it is improper | *See* R. McQueen's responsive declaration ¶ 37, further describing his personal knowledge. Moreover, as the CEO of AMc, Revan McQueen is presumed to have personal knowledge of the acts of his corporation.<br><br>Reference to Stinchfield's statements is not excluded by the rule against hearsay under FED. R. EVID. 801(d)(2) because they are offered against a party opponent. |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| | which is a companion case to this cause of action. *It is my understanding that Stinchfield agreed to sit down with our attorneys to discuss editing his affidavit for accuracy.* He abruptly canceled that meeting and Brewer filed his answer." | opinion testimony.<br><br>The NRA also objects to this paragraph because Mr. McQueen's statements that "Either out of ignorance-or because he hopes the court won't actually research his citations- Brewer cites several articles… that are actually favorable to AMc. and "Brewer Blatantly misrepresents… AMc's past client relationships, about which he had knowledge…" are inadmissible because these statements constitute *improper opinion testimony.*<br><br><u>Lack of Personal Knowledge.</u> The NRA also objects to the paragraph because Mr. McQueen's assertion that "…it was promptly leaked to the media" is inadmissible since he fails to provide any evidence to support how he may have personal knowledge for his statements.<br><br>In addition, the NRA objects to this paragraph because Mr. McQueen's assertion that Mr. Stinchfield agreed to meet to discuss editing his affidavit for accuracy is inadmissible since he fails to provide any evidence to support how he has personal knowledge of Mr. | The statements are proper opinion testimony under FED. R. EVID. 701 as rationally based on R. McQueen's perception, helpful to clearly understand his testimony or to determine a fact in issue, and not based on specialized knowledge within the scope of expert opinion testimony under FED. R. EVID. 702. |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|-----|---------------------|----------------------|---------------------|
|  |  | Stinchfield's alleged agreement and Mr. Stinchfield's alleged cancellation of a meeting.<br><br>Inadmissible Hearsay. In addition, this statement is inadmissible hearsay because it is based on out-of-court statements of another offered to prove the truth of the matters asserted. |  |
| 26 | Declaration of Revan McQueen (ECF No. 80) ¶ 38:<br><br>"The Answer that Brewer filed, along with Ian Shaw who is a young man that I remember sharing dinner with our family and surely benefitted from hearing business that was discussed, on behalf of Stinchfield demonstrates Brewer's animus toward AMc. Either out of ignorance—or because he hopes the court won't actually research his citations—Brewer cites several articles to support the Stinchfield Answer that are actually favorable to AMc. Brewer blatantly misrepresents the circumstances of some of AMc's past client relationships, about which he had knowledge as they happened because of his family connection. Further, one of the claims made in the Answer does not apply to AMc at all, which, in my | 1. **Inadmissible Hearsay (Fed. R. Evid. 802)**<br>2. **Improper Opinion Testimony (Fed. R. Evid. 701)**<br><br>The NRA objects to the statements concerning the purported dinner discussion relating to the business of Mr. Stinchfield because it is based on inadmissible hearsay since it is based on out-of-court statements of another offered to prove the truth of the matters asserted. | It is unclear what exactly the NRA objects to as hearsay. Regardless, Brewer, Stinchfield, and other Brewer Firm attorneys' statements are admissible because they are offered against a party opponent. FED. R. EVID. 801(d)(2).<br><br>The statements are proper opinion testimony under FED. R. EVID. 701 as rationally based on R. McQueen's perception, helpful to clearly understand his testimony or to determine a fact in issue, and not based on specialized knowledge within the scope of expert opinion testimony under FED. R. EVID. 702. |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| | opinion, clearly shows that Brewer was willing to hurt AMc's business and Angus's legacy with anything he could invent. This is also evident, in my opinion, by how quickly Brewer filed the amended response that oddly deleted a libelous quote, falsely attributed to Angus, included in the first filing. This filing appears to be a manipulation of Stinchfield and it is clear that Brewer simply used it as a way to continue his personal attack on Angus. It is my belief that Brewer is only representing Stinchfield pro bono to seize the opportunity to destroy Angus's honor and legacy as well as his business competitor, AMc, with a twisted revisionist history and the false attribution of quotes to a man who can no longer speak for himself." | | |
| 27 | Declaration of Revan McQueen (ECF No. 80) ¶ 39:<br><br>"As the brother-in-law of Brewer, I believe that it is profoundly unfair and highly prejudicial for AMc to have to litigate this matter against Brewer and his firm. *His intimate knowledge of our family allows the Brewer Firm to engage in sending messages to me using family members instead of* | 1. **Lack of Personal Knowledge (Fed. R. Evid. 602)**<br>2. **Lack of Relevance (Fed. R. Evid. 401, 402)**<br><br>Lack of Personal Knowledge. The NRA objects to this paragraph because Mr. McQueen's assertion that Brewer's intimate knowledge of his family allows the Brewer Firm to engage in sending messages directly to him through family | *See* R. McQueen's responsive declaration ¶ 46, further describing his personal knowledge.<br><br>The statements here and through R. McQueen's declaration are relevant to understand in context the impetus for Brewer's conduct rather than isolating his conduct to just this lawsuit, which would unfairly prejudice Defendants by disregarding the "totality of the |

| No. | Defendant's Evidence | Plaintiff's Objection | Defendants' Response |
|---|---|---|---|
| | *communicating through my attorneys. Brewer had detailed knowledge of Angus's cancer treatment and used that information to time his litigation and media attacks. He denied our family uninterrupted time with our father during his final year of life and damaged some of the last moments between Angus and his family.* As the CEO of AMc, who is the party in this litigation and directs litigation strategy, I am often forced to consider the implications of AMc's actions which may impact my sister and her children, whom I care about deeply." (Objections to italicized portions). | members instead of through his attorneys merely speculates to the possibility that this may occur. The McQueen Declaration fails to demonstrate how Mr. McQueen has personal knowledge to support these statements.<br><br>The NRA also objects to this paragraph because Mr. McQueen's assertion that "Brewer had detailed knowledge of Angus's cancer treatment and used that information to time his litigation and media attacks" is also inadmissible because the McQueen Declaration does not demonstrate how Mr. McQueen has personal knowledge to come to this conclusion.<br><br>Lack of Relevance. In addition, Mr. McQueen's assertion that "[Brewer] denied our family uninterrupted time with our father during his final year of life and damaged some of the last moments between Angus and his family" is inadmissible because it has no relevance to this matter. | circumstances," as under Fifth Circuit precedent. |

## II.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants ask the Court to overrule Plaintiff's Objections to the Declaration of Revan McQueen.

Dated: June 3, 2020.

Respectfully submitted,

*/s/ G. Michael Gruber*
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR DEFENDANTS
ACKERMAN MCQUEEN, INC., MERCURY
GROUP, INC., HENRY MARTIN, JESSE
GREENBERG, WILLIAM WINKLER, AND
MELANIE MONTGOMERY**

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ G. Michael Gruber*
G. Michael Gruber