IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA,<br><br>    Plaintiff and Counter-Defendant,<br><br>and<br><br>WAYNE LAPIERRE,<br><br>    Third-Party Defendant,<br><br>v.<br><br>ACKERMAN MCQUEEN, INC.,<br><br>    Defendant and Counter-Plaintiff,<br><br>and<br><br>MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG,<br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § §   Civil Action No. 3:19-cv-02074-G |

**PLAINTIFF NATIONAL RIFLE ASSOCIATION'S REPLY IN SUPPORT OF ITS MOTION TO DISQUALIFY THE LAW FIRM DORSEY & WHITNEY LLP AS <u>COUNSEL FOR DEFENDANTS</u>**

                               **BREWER, ATTORNEYS & COUNSELORS**

                               Michael J. Collins, Esq.  (TX Bar No. 00785493)
                               mjc@brewerattorneys.com
                               Alessandra P. Allegretto (TX Bar No. 24109575)
                               apa@brewerattorneys.com
                               1717 Main Street, Suite 5900
                               Dallas, Texas 75201
                               Telephone: (214) 653-4000
                               Facsimile: (214) 653-1015

                               **ATTORNEYS FOR PLAINTIFF COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

Plaintiff National Rifle Association of America (the "NRA") files this reply in support of its motion to disqualify the law firm Dorsey & Whitney LLP ("Dorsey") as counsel for Defendants (collectively, "AMc"), as follows:

**A.    Dorsey Must Be Disqualified.**

In its motion and accompanying papers, the NRA demonstrates that, as a result of blatant violations of ethical and professional duties, Dorsey must be disqualified from representing Defendants in this action.[1] Dorsey unlawfully came into possession of a confidential and privileged powerpoint presentation ("Confidential Exhibit B-9"), presented by the NRA's outside counsel to the NRA Board of Directors in a closed executive session, which set forth legal advice and litigation strategy. Instead of complying with its ethical and professional duties by alerting the NRA that this obviously privileged document was in its possession, Dorsey secretly retained and then used the document in an effort to gain an unfair advantage in this litigation. Dorsey must be held accountable for its actions, and the appropriate remedy is disqualification.

**B.    AMc Misstates The Facts.**

Throughout its response, AMc misrepresents the timeline of events at issue. In addition, AMc attempts to shift blame on to the NRA for AMc's own wrongdoing, by alleging that the NRA was actually at fault for disseminating its privileged material to an employee of AMc. AMc misstates the facts.

**1.    Dorsey Failed To Act Timely**

In support of its response, AMc presents a declaration from Nader Tavangar, an employee of AMc. AMc appears to contend that John Popp provided a copy to Tavangar, but neither AMc

---

[1] *See* ECF 106 and 107, generally. In addition, the NRA adopts all defined terms, as used in ECF 106 and 107, for use in this reply.

1

nor Tavangar explain why Popp gave him a copy,[2] or why Tavangar continued to possess Confidential Exhibit B-9 for over one year following the January 5, 2019 presentation.[3] Indeed, Mr. Tavangar and AMc fail to explain why Mr. Tavangar had a copy of Confidential Exhibit B-9 at all. The point is that Tavangar should not have been in possession of a presentation given in a closed meeting from which AMc was excluded. Worse still, Tavangar states that he provided a copy of Confidential Exhibit B-9 to two other individuals at AMc, who also should not have received the document.[4] AMc simply ignores that this presentation was made in a closed meeting from which all AMc employees were specifically excluded.

Moreover, Dorsey also improperly possessed the privileged document for at least three months, despite repeated requests from the NRA to return it. Dorsey contends that it did not realize it possessed the NRA's privileged material until March 3, 2020, after it already filed the sensitive material with the Court.[5] Instead of immediately returning all copies of the document to the NRA, Dorsey doubled down on its own wrongdoing, and argued that the presentation was not privileged.[6] To make matters worse, Dorsey then waited almost a full month before seeking to withdraw the document. The timeline below illustrates Dorsey's repeated inaction in more detail:

| Date | Event |
| --- | --- |
| January 7, 2020 | Tavangar sends Confidential Exhibit B-9 to Dorsey.[7] |
| February 12, 2020 | Dorsey files Confidential Exhibit B-9 in response to NRA's motion to compel.[8] |
| February 18, 2020 | The NRA demands that Confidential Exhibit B-9 be withdrawn as an exhibit.[9] |

---

[2] *See* ECF 128, APP 026 at ¶ 13.
[3] *See* ECF 127 at p. 8.
[4] *Id.* at ¶ 14.
[5] *See* ECF 52.
[6] *See* ECF 108-8, Letter from Dorsey to BAC, dated March 3, 2020 (filed as part of the Appendix in Support of Plaintiff's National Rifle Association of America's Memorandum of Law in Support of its Motion to Disqualify the Law Firm of Dorsey & Whitney, LLP as Counsel for Defendants and for Other Appropriate Sanctions and Relief).
[7] *See* ECF 127 at p. 36; *see also* ECF 128, APP026 at ¶ 14.
[8] *See* ECF 51.
[9] *See* ECF 108-6, Letter from BAC to Dorsey, dated February 18, 2020.

| February 21, 2020 | Dorsey responds to the NRA's demand, stating they will respond the following week.[10] Dorsey did not respond the following week. |
|---|---|
| February 26, 2020 | The NRA follows up on its request.[11] |
| March 2, 2020 | Dorsey responds and argues that Confidential Exhibit B-9 was not privileged.[12] |
| March 3, 2020 | The NRA sends a letter to Dorsey explaining that Confidential Exhibit B-9 is both confidential and privileged. Dorsey did not reply.[13] |
| March 10-11, 2020 | The Court grants AMc's request to file Confidential Exhibit B-9 under seal;[14] Dorsey again files Confidential Exhibit B-9 under seal.[15] |
| March 30, 2020 | The NRA informs Dorsey that it intends to file a motion to disqualify.[16] |
| March 31, 2020 | Dorsey agrees to recommend to AMc that Confidential Exhibit B-9 be returned.[17] |
| April 1, 2020 | Dorsey agrees to withdraw Confidential Exhibit B-9.[18] |

The promptness with which a party acts when it receives privileged information is an important consideration in evaluating a motion to disqualify.[19] Here, Dorsey disregarded the NRA's repeated requests to return its privileged information, and did not return Confidential Exhibit B-9 until weeks after it first acknowledged that it improperly possessed the document.[20]

---

[10] *See* ECF 108-7, Email from Dorsey to BAC, dated February 21, 2020.
[11] *See* ECF 108-8, Letter from BAC to Dorsey, dated February 26, 2020.
[12] *See* ECF 108-9, Letter from Dorsey to BAC, dated March 2, 2020.
[13] *See* ECF 108-10, Letter from BAC to Dorsey, dated March 3, 2020.
[14] *See* ECF 63.
[15] *See* ECF 64.
[16] *See* ECF-11, Letter from BAC to Dorsey, dated March 30, 2020.
[17] *See* ECF 108-12, Email from Dorsey to BAC, dated March 31, 2020.
[18] *See* ECF 108-15, Letter from Dorsey to BAC, dated April 1, 2020.
[19] *See In re Meador*, 968 S.W.2d 346, 351-352 (Tex. 1998).
[20] *See supra* footnotes 8-16.

3

2. **The Facts Demonstrate That The NRA's Filing Of Its Own Motion To Disqualify Was Not A "Litigation Tactic" In Response To AMc's Motion To Disqualify The NRA's Counsel**

AMc erroneously contends that, "The NRA's request for disqualification of Dorsey is nothing more than an impermissible litigation tactic that appears to be in direct retaliation for Defendants' well-supported motion to disqualify."[21] Dorsey misrepresents the facts because, not only did counsel for the NRA, Michael Collins, inform Dorsey of the NRA's intention to move for disqualification by telephone on March 30, 2020, Mr. Collins also then sent Dorsey a letter on March 30, 2020, at 1:18pm (6 hours before Dorsey filed its own Motion to Disqualify), stating "we intend to file a motion to disqualify your firm as counsel for defendants in this case."[22] Notably, both Mr. Collins' telephone call and his letter were made *before* Dorsey filed its own motion to disqualify later the same day, making it impossible that the NRA filed its motion as a "litigation tactic," or in "direct retaliation" for Dorsey's own filing.[23] Of course, the NRA had been working on its motion long before it was actually filed, and AMc's argument to the contrary reflects a callous disregard for the facts.

This is just part of Dorsey's strategy to "throw everything at the wall, and see what sticks," even where Dorsey's arguments have no conceivable basis in law or fact. As an example, Dorsey and AMc argue that, "by the spring of 2019, it became apparent that Brewer and his firm were unfairly competing with AMc and taking over its nearly-40-year relationship with the NRA."[24] In support of this untrue and irresponsible argument, AMc provides a single citation to a wholly unrelated magazine article authored by Brewer, presumably to argue that because Brewer

---

[21] *See* ECF 127 at p. 7.
[22] *See* ECF 108-11, Letter from BAC to Dorsey, dated March 30, 2020. Further, Dorsey filed its own Motion to Disqualify at 7:25pm (Central Time) on March 30, 2020.
[23] *See* ECF 127 at p. 7.
[24] *See* ECF 127 at p. 10.

4

discussed public relations in the article, he must be in competition with AMc.[25] Once again, AMc and Dorsey mischaracterize Brewer's words and actions to fit their false narrative.

### 3. AMc Attempts to Shift Blame On To The NRA For Its Own Wrongdoing

AMc contends that the NRA waived privilege when it failed to retrieve Confidential Exhibit B-9 in 2019, following the deposition of John Popp, during which the presentation was discussed.[26] This argument is flawed for several reasons, including that it presumes the NRA was aware that AMc continued to possess Confidential Exhibit B-9. While AMc was not in the room during the closed executive session on January 5, 2019,[27] an audio-visual technician with AMc was provided with a copy of the presentation on a thumb drive, to do nothing more than load the presentation on to a laptop.[28] AMc was not authorized to keep a copy of the presentation, and the NRA had no reason to know that AMc in fact retained copies.[29]

Of note, AMc's counsel in the Virginia state court cases immediately recognized its ethical responsibilities when it received a different privileged and confidential document from AMc, following an NRA Board of Directors meeting held on April 29, 2019.[30] In the Virginia litigation, AMc's counsel, Schertler & Onorato, LLP ("Schertler"), learned that an AMc employee had acquired a powerpoint presentation that might contain the NRA's privileged material.[31] In response, Schertler immediately advised AMc not to view the presentation, and promptly alerted the NRA's Virginia counsel of its receipt of the materials.[32]

---

[25] *Id.* at footnote 25.
[26] *See* ECF 127 at p. 10.
[27] *See* ECF 108-5 at ¶ 13.
[28] *Id.* at ¶ 14.
[29] *Id.*
[30] *See* ECF 107, pp.18-19.
[31] *Id.*
[32] *Id.* at pp. 4-5.

The contrast could hardly be sharper between how AMc's counsel (not any of the Dorsey attorneys) in the Virginia state court case handled its receipt of confidential and privileged information, and how the Dorsey attorneys in this case mishandled a similarly marked "Privileged and Confidential" document.

C.  **The NRA Did Not Provide Privileged Information To AMc In Its Capacity As An Adversary.**

On January 5, 2019, when the NRA's privileged material was presented by Brewer in a closed executive session, AMc was not adverse to the NRA. Quite the opposite. On that date, AMc was an agent of the NRA, acting under the terms and scope of the parties' Agreement, which specifically required AMc to protect the confidentiality of all NRA information.[33] The NRA and AMc were not equals in a business partnership. AMc was an agent that worked for the NRA.[34] As such, AMc owed fiduciary duties to its principal, the NRA—and not vice-versa. The fact that the NRA came to have doubts about the fidelity of its agent, and eventually become adverse to AMc at some later point, is irrelevant to the fiduciary duties that AMc owed to the NRA. The NRA did not file its first lawsuit against AMc until April 12, 2019,[35] and it was not until June 25, 2019, that the NRA terminated the Agreement.[36] Therefore, any argument that the NRA provided privileged information to its "adversary" is meritless.

Further, as part of its duties as an agent, AMc was not permitted to improperly handle or misuse the NRA's confidential information.[37] Therefore, regardless of whether the NRA was adverse to AMc, the parties' Agreement made clear that the NRA never intended for AMc to retain

---

[33] *See* ECF 108-2, the Services Agreement (the "Agreement"), attached as Exhibit 1 to the Declaration of Michael Collins, at § IV.A.2-.3.
[34] *See* ECF 108-2, generally.
[35] *See* ECF 12 at p. 12, footnote .
[36] *See* ECF 1 at ¶ 15.
[37] *See supra* footnote 30.

a copy of Confidential Exhibit B-9.[38] Indeed, the NRA never authorized AMc to surreptitiously keep its confidential information, including information presented by counsel at a closed executive session.[39]

### 1. The NRA Did Not Waive Privilege During The Presentation On January 5, 2019

AMc erroneously contends that the presence of a select group of "invited guests" at the presentation on January 5, 2019 waived privilege. The NRA established that all individuals present were representatives of the NRA.[40] AMc representatives were not in the room during the closed executive session.[41] Here, all individuals who attended the presentation on January 5, 2019, were working to hone the NRA's legal strategy, and privilege was not waived.[42]

### 2. The NRA Did Not Waive Privilege By Filing Confidential Exhibit B-9 Under Seal

AMc also argues that the NRA waived privilege when it filed Confidential Exhibit B-9 under seal.[43] As Confidential Exhibit B-9 forms the basis of the NRA's disqualification challenge against Dorsey, there is no question that the Court must review a copy of the presentation to rule on the pending motion. AMc asserts that the NRA should have filed the presentation *in camera* if it was concerned about privilege. However, such a filing is completely unnecessary, as several attorneys at Dorsey already improperly possessed and digested the information in question, and at least three AMc employees were provided with copies, without the NRA's knowledge or

---

[38] *Id.* The NRA was not aware that Confidential Exhibit B-9 was in AMc's possession, until AMc filed it with the Court.
[39] *See* ECF 108-3 at ¶¶ 7-10.
[40] *See* ECF 108-5 at ¶ 13.
[41] *Id.*
[42] *See* ECF 108-5 at ¶ 7.
[43] *See* ECF 127 at p. 18.

consent.[44] In addition, Dorsey went as far as filing Confidential Exhibit B-9 with the Court twice *before* the NRA ever filed its motion to disqualify.

### D. Confidential Exhibit B-9 Is Undoubtedly Privileged.

Confidential Exhibit B-9 plainly qualifies as a privileged document, and is protected by both the attorney-client and work product privileges. As detailed in the NRA's motion to disqualify, each slide included in the privileged presentations contains an "ATTORNEY WORK PRODUCT / PRIVILEGED AND CONFIDENTIAL" label.[45] Further, the presentation is titled, "Executive Briefing: Representing the NRA in the Legal, Regulatory, and Public Arena,"[46] and extensively covers ongoing and anticipated legal matters. In the seminal case of *United States v. Davis*, the Fifth Circuit explained, "(l)itigation need not be imminent ... as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation"[47] for the work product privilege to apply.

Here, the only purpose behind the presentation was to inform and prepare the NRA's leadership for anticipated litigation, which is exactly why this presentation was reserved for NRA officers and directors, and a highly select group of NRA employees in closed executive session. There is certainly legal strategy discussed in Confidential Exhibit B-9, as it examines individual cases, as well as the broader legal and regulatory environment in which the NRA operates. Any argument that the presentation is not privileged ignores the fact that it was for the NRA—and not AMc— to decide whether the NRA wanted broader strategic advice from BAC, in addition to AMc's services.

---

[44] *See* ECF 128, Ex. B (Declaration of Michael Gruber) at ¶¶ 4-5; (explaining that several Dorsey attorneys had access to Confidential Exhibit B-9); *see also* ECF 128, Ex. D (Declaration of Nader Tavangar) at ¶ 14.
[45] *See* ECF No. 52, Ex. B-9.
[46] *Id.* at p. 1.
[47] *See United States v. Davis*, 636 F.2d 1028, 140 (5th Cir. 1981).

1. **The Lockton Information Is Privileged**

AMc claims that the only portion of Confidential Exhibit B-9 that is "potentially privileged" is a slide related to the Lockton lawsuit.[48] However, this inaccurate claim presumes that because Lockton-related information was previously included in discovery, it cannot also be privileged. The communications concerning Confidential Exhibit B-9 were privileged when they occurred. These communications retained their privileged character notwithstanding some later alleged disclosure in this litigation. What AMc overlooks is that Confidential Exhibit B-9 was part of a privileged discussion between the NRA and its counsel, about a variety of litigation and other legal topics affecting the NRA. As part of that broader privileged discussion, Confidential Exhibit B-9 is simply a part of those privileged communications. In addition, there were privileged presentation notes by counsel embedded in the Confidential Exhibit B-9 presentation—which Dorsey claims that it has not reviewed.

2. **The Crime-Fraud Exception To The Attorney-Client Privilege Has No Application Here**

AMc once again presents the inflammatory and unsupported accusation that the NRA's position regarding Confidential Exhibit B-9 is an example of when the "crime-fraud" exception to the attorney-client privilege should be used.[49] As this Court is aware, the crime-fraud exception applies only where "communication or work product is intended to further continuing or future criminal or fraudulent activity."[50] AMc and Dorsey do not even try to satisfy the strict requirements of the exception. Instead, AMc makes the unsupported and irresponsible accusation that Brewer

---

[48] *See* ECF 127 at p. 26.
[49] *See* ECF 127 at p. 15.
[50] *See United States v. Edwards*, 303 F.3d 606, 618 (5th Cir.2002); *see also In re Grand Jury Subpoena*, 419 F.3d 329, 336 (5th Cir. 2005).

9

and the NRA carried out criminal activity, which is not only completely inaccurate, but blatantly false and misguided.

### E.  Any Prejudice To AMc Was Its Own Fault.

AMc contends that Dorsey should not be disqualified because it will suffer prejudice. The issue is not whether AMc will suffer prejudice, but rather whether it will suffer unfair prejudice. Any prejudice to AMc will not be unfair prejudice. Based on Dorsey and AMc's intentional and material misconduct, Dorsey must be disqualified. Additionally, AMc could proceed with Virginia counsel, who are already up to speed. Virginia counsel has taken and defended depositions, and took the lead in hearings in the Virginia actions. Although the Virginia actions are stayed, they were stayed at AMc's requests. Thus, AMc will not suffer any unfair prejudice.

## CONCLUSION

For all the reasons stated above, the NRA respectfully requests the Court grant Plaintiff's motion to disqualify Dorsey from representing Defendants, enter all appropriate monetary and non-monetary sanctions against Dorsey, and grant the NRA all other appropriate relief.

Dated:  June 25, 2020

Respectfully submitted,

**BREWER, ATTORNEYS & COUNSELORS**

By: */s/ Michael J. Collins*
Michael J. Collins, Esq.
State Bar No. 00785493
mjc@brewerattorneys.com
Alessandra P. Allegretto
State Bar No. 24109575
apa@brewerattorneys.com
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone:  (214) 653-4000
Facsimile:  (214) 653-1015

**ATTORNEYS FOR PLAINTIFF AND COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 25th day of June 2020.

*/s/ Michael J. Collins*
Michael J. Collins