UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | ) | |
| | ) | |
| Plaintiff and Counter-Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WAYNE LAPIERRE, | ) | |
| | ) | |
| Third-Party Defendant, | ) | CIVIL ACTION NO. |
| | ) | |
| VS. | ) | 3:19-CV-2074-G |
| | ) | |
| ACKERMAN MCQUEEN, INC., | ) | |
| | ) | |
| Defendant and Counter-Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MERCURY GROUP, INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendants' motion to dismiss certain of the plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (docket entry 28), and the defendants' brief in support (Defendants' Brief in Support of Motion to Dismiss for Failure to State a Claim ("Motion") (docket entry 29)).  For

the reasons that follow, the defendants' motion is **GRANTED** in part and **DENIED** in part.

## I.   BACKGROUND

### A.   Factual Background

The following factual allegations are drawn from the plaintiff's first amended complaint unless otherwise noted.

The plaintiff the National Rifle Association of America ("NRA") is a not-for-profit corporation organized under the laws of the State of New York with its principal place of business located in Fairfax, Virginia.  Plaintiff's First Amended Complaint (docket entry 18) at 5.  The NRA asserts that it is "the foremost defender of the Second Amendment of the United States Constitution," and that the NRA is a "501(c)(4) tax-exempt organization" that "has approximately five million members, hundreds of thousands of donors, and many millions more who support its legendary advocacy."  *Id.*

There are six named defendants in this case: Ackerman McQueen, Inc. ("AMc"); Mercury Group, Inc. ("Mercury"); Henry Martin ("Martin"); William Winkler ("Winkler"); Melanie Montgomery ("Montgomery"); and Jesse Greenberg ("Greenberg") (collectively, "defendants").  *Id.* at 6-7.  AMc is a corporation organized under the laws of the State of Oklahoma with its principal place of business located in Oklahoma City, Oklahoma.  *Id.* at 6.  The company was

- 2 -

co-founded by Angus McQueen ("Angus"). *Id.* at 33. Angus, who served as CEO of AMc for many years, passed away in 2019 shortly before the commencement of this lawsuit. *See* Brief in Support of Defendants' Motion to Disqualify Plaintiff's Counsel (docket entry 111) at 2, 14. Angus's son Revan McQueen ("Revan") has since assumed the mantle of CEO of AMc. *Id.* at 18.

AMc is an advertising and public relations agency that counted the NRA among its clients for more than thirty years. AMc maintains a principal office in Dallas, Texas, out of which the NRA's account was serviced. Defendants' Amended Answer and Defendant/Counter-Plaintiff Ackerman McQueen, Inc.'s Amended Counterclaim and Third-Party Complaint ("Amended Answer & Counterclaim") (docket entry 31) at 6. The NRA alleges that "Mercury is a wholly-owned subsidiary of [AMc] and specializes in public communications strategy, including on behalf of advocacy groups such as the NRA." Plaintiff's First Amended Complaint at 6. Martin, Winkler, Montgomery, and Greenberg each held during relevant times, or continue to hold, executive positions at AMc. *Id.* at 6-7. The NRA asserts that each of the defendants engaged in wrongful conduct that gave rise to the filing of this lawsuit. *Id.*

The NRA used AMc's services from "at least the 1980s" until 2019. *Id.* at 2, 36. During the course of their business relationship, AMc performed a wide range of services for the NRA, "including public relations and strategic marketing; planning

and placement of media; management of digital media and websites; and the management of NRATV, a digital-media platform frequently perceived by the public as the 'voice' of the NRA." *Id.* at 9. "AMc's work on behalf of the NRA was governed by successive incarnations of a Services Agreement [("the services agreement")] containing detailed specifications for how various types of work performed by [AMc] should be budgeted and billed." *Id.* at 9-10. The NRA and AMc executed the most recent iteration of the services agreement on April 30, 2017 and amended the services agreement on May 6, 2018. *Id.* at 24. The parties terminated the services agreement in May or June of 2019; the NRA asserts that the NRA terminated the agreement by letter dated June 25, 2019, *id.* at 36, and the defendants assert that AMc terminated the agreement "pursuant to the [agreement's] 90-day notice provision on May 29, 2019," Amended Answer & Counterclaim at 121.

The NRA alleges that despite the termination of the services agreement, AMc's website continues to "prominently feature[] unauthorized and unlicensed NRA-owned photos and reference[] . . . the NRA with greater frequency than any other AMc client." Plaintiff's First Amended Complaint at 38. The NRA further alleges that AMc's display of the name NRA and NRA-owned photos has caused a loss of value to the NRA's trademarks and lost royalties from the licensing of said trademarks, and has injured the NRA's reputation, brand, and goodwill. See *id.* at

41-42; Plaintiff National Rifle Association of America's Opposition to Defendants'
Motion to Dismiss Pursuant to Rule 12(b)(6) ("Response") (docket entry 42) at 6,
8-9.

### B.  Procedural Background

The NRA filed its original complaint on August 30, 2019 (docket entry 1).
Then, on October 25, 2019, the NRA filed its first amended complaint, which is the
operative complaint in this case.  *See* Plaintiff's First Amended Complaint.  In its first
amended complaint, the NRA asserts eight claims for relief, the first seven of which
are leveled against all defendants, and the eighth of which is leveled against AMc and
Mercury.  These claims are: (1) false association under the Lanham Act, 15 U.S.C.
§ 1125(a)(1)(A); (2) copyright infringement under 17 U.S.C. § 101 *et seq.*; (3)
conversion; (4) fraud; (5) breach of fiduciary duties; (6) conspiracy to commit fraud
and extortion; (7) breach of the fiduciary duty of loyalty; and (8) breach of contract.
*Id.* at 40-61.

On November 15, 2019, the defendants filed an answer to the plaintiff's first
amended complaint, which the defendants combined with a set of counterclaims
against the NRA and a third-party complaint against the NRA's CEO, Wayne
LaPierre ("LaPierre").  *See* Amended Answer & Counterclaim.  Also on November 15,
2019, the defendants filed the instant Rule 12(b)(6) motion to dismiss various of the
NRA's claims.  *See* Motion.  The defendants' motion to dismiss targets the NRA's

claims for: (1) false association; (2) copyright infringement; (3) conversion; (4) fraud and conspiracy (as those claims pertain to Mercury); and (5) breach of fiduciary duties (as those claims pertain to the individual defendants). *See generally, id.* The defendants have not moved to dismiss the NRA's claim for breach of contract.

On December 23, 2019, the NRA filed a response to the defendants' motion to dismiss. Response. On January 20, 2020, the defendants filed a reply in support of their motion to dismiss. Defendants' Reply in Support of Motion to Dismiss for Failure to State a Claim ("Reply") (docket entry 46). The defendants' motion to dismiss is therefore ripe for determination.

## II. ANALYSIS

### A. Legal Standard for Rule 12(b)(6) Motions to Dismiss

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotations marks, and brackets omitted). "Factual allegations must

be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).  "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6).  See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.*  The plausibility principle does not convert the Rule 8(a)(2) notice pleading standard to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss.  *Id.* at 678.  The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is

- 7 -

entitled to relief.'"  *Id.* at 679 (alteration in original) (quoting FEDERAL RULE OF CIVIL

PROCEDURE 8(a)(2)).  The court, drawing on its judicial experience and common

sense, must undertake the "context-specific task" of determining whether the

plaintiff's allegations "nudge" his claims against the defendant "across the line from

conceivable to plausible."  See *id.* at 679, 683.

### B.  Application

As noted above, the defendants' motion to dismiss targets the NRA's claims

for: (1) false association (count I); (2) copyright infringement (count II); (3)

conversion (count III); (4) fraud and conspiracy (counts IV and VII) (as those claims

pertain to Mercury); and (5) breach of fiduciary duties (counts V and VII) (as those

claims pertain to the individual defendants).  For clarity, the court addresses the

defendants' arguments in the order in which they are raised in the defendants'

motion.

### 1.  *The NRA's Claim for False Association under the Lanham Act*

Count one of the NRA's first amended complaint asserts a claim for false

association under Section 43(a)(1)(A) of the Lanham Act, which is codified at 15

U.S.C. § 1125(a)(1)(A).  For the reasons that follow, the defendants' motion is

denied with respect to the NRA's claim for false association.

The provision of the Lanham Act that sets forth the cause of action for false

association states:

- 8 -

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125.

The crux of the NRA's false association claim is that AMc's continued display of the name NRA and the NRA's "intellectual property on AMc's website provides a strong inference that wrongly suggests to the public—and creates consumer and customer confusion—that the NRA presently endorses the services that AMc provides and that the NRA is currently AMc['s] client."  Plaintiff's First Amended Complaint at 38, 41.

The defendants argue that the NRA's false association claim should be dismissed in its entirety on prudential standing grounds pursuant to the Supreme Court's decision in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), and because the NRA has failed to identify any false or misleading

content on AMc's website.  Motion at 5, 7.  Additionally, the defendants argue that the NRA fails to allege sufficient facts to sustain a false association claim against Mercury and the individual defendants.  *Id.* at 10.  The court addresses these three arguments in turn.

a. *The defendants' argument concerning* Lexmark *is unavailing*

As the Supreme Court recently affirmed in *Lexmark*, "a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'"  *Lexmark*, 572 U.S. at 129 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  The defendants, relying on *Lexmark*'s discussion of the "zone of interests" test, argue that the NRA's false association claim is subject to dismissal because "the NRA lacks prudential standing to bring suit under the Lanham Act."  Motion at 7.  Before addressing the merits of the defendants' argument concerning the zone of interests test, a brief clarification is in order.

Contrary to the defendants' argument, under *Lexmark*, the zone of interests test has nothing to do with prudential standing.  Although some Supreme Court cases prior to *Lexmark* referred to the zone of interests test in trademark cases as a matter of prudential standing, *Lexmark* specifically disavowed these cases.  The question that the Court considered in *Lexmark* was this: "whether [the plaintiff] falls within the class of plaintiffs whom Congress has authorized to sue under § 1125(a).  In other words, we ask whether [the plaintiff] has a cause of action under the statute."

- 10 -

*Lexmark*, 572 U.S. at 128.  The Court went on to endorse and apply a "zone of interests" test to determine whether the plaintiff had a cause of action under the Lanham Act, but in doing so declared that the zone of interests test does not belong under the "rubric" of prudential standing.  *Id.* at 127 (abrogating *Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 12 (2004)).

The upshot of the *Lexmark* Court's decision to divorce the zone of interests test from the doctrine of prudential standing is that a plaintiff who fails to establish that a particular claim falls within the zone of interests created by a given statute will face dismissal of that claim due to the plaintiff's failure to state a claim upon which relief can be granted, not due to any concerns of prudential standing.[1]

The court now addresses the defendants' argument that the NRA fails to satisfy the zone of interests and proximate cause standards laid out in *Lexmark*.

In *Lexmark* the Court articulated two elements that a plaintiff must establish to prevail on a claim under 15 U.S.C. § 1125.  First, the plaintiff must establish an

---

[1]       The distinction between dismissal for failure to state a claim and dismissal for failure to satisfy the dictates of the prudential standing doctrine is an important one.  As the Court noted in *Lexmark*, the very notion that a federal court can dismiss a plaintiff's claim on standing grounds that are "prudential" rather than "constitutional" "is in some tension with [the Court's] recent reaffirmation of the principle that 'a federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging.'"  *Lexmark*, 572 U.S. at 126 (quoting *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (some quotations omitted)).  Thus, consistent with the Court's decision in *Lexmark*, this court will consider the zone of interests test to determine whether the plaintiff has stated a claim upon which relief can be granted, and not in the context of a prudential standing analysis.

injury to an interest that falls within the "zone of interests" that the Lanham Act is designed to protect; second, the plaintiff must establish that this injury was proximately caused by the defendant's violation of 15 U.S.C. § 1125. *See id.* at 129-33 (establishing a zone of interest and proximate cause test and applying the test to a claim of false advertising); *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 711 (4th Cir. 2016) (applying the zone of interests and proximate cause analysis to a claim of false association), *cert. denied*, __U.S.__, 137 S.Ct. 1202 (2017).  The defendants argue that the NRA fails to satisfy both of these elements at the pleading stage.  The court disagrees, and for the reasons that follow, concludes that the NRA has carried its burden at the pleading stage.

i. *The Lanham Act's Zone of Interests*

As a general rule, a plaintiff may only prevail on a statutorily created cause of action if the plaintiff's "interests 'fall within the zone of interests protected by the law invoked.'"  See *Lexmark*, 572 U.S. at 129. "[T]he breadth of the zone of interests [of a given statute] varies according to the provisions of law at issue[.]"  *Id.* at 130 (quoting *Bennett v. Spear*, 520 U.S. 154, 163 (1997)).  Although discerning the interests protected by a given statute will sometimes require judicial inquiry, see, e.g., *Bennett*, 520 U.S. at 165-66 (discerning the zone of interests protected by Endangered Species Act based on statutory language and subject of the Act), "[i]dentifying the interests protected by the Lanham Act . . . requires no guesswork,"

*Lexmark*, 572 U.S. at 131.  Section 45 of the Lanham Act, codified at 15 U.S.C.

§ 1127 provides a "detailed statement of the statute's purposes."  *Id.*  Most of the

purposes enumerated in § 1127 "are relevant to false-association cases."  *Id.*

Here, the NRA asserts injuries to interests within the zone of two of the

Lanham Act's enumerated purposes: the purpose to "mak[e] actionable the deceptive

and misleading use of marks in" commerce within the control of Congress, and the

purpose "to prevent fraud and deception . . . by the use of reproductions . . . or

colorable imitations of registered marks."  Response at 6 (quoting 15 U.S.C. § 1127).

These injuries are: (1) loss of value to the NRA's trademarks and lost royalties from

the licensing of said trademarks, and (2) injury to the NRA's reputation, brand, and

goodwill.  *Id.* at 7-8; Plaintiff's First Amended Complaint at 41.

Specifically, the NRA alleges that despite the NRA and AMc's termination of

the services agreement in May or June of 2019, AMc "continue[s] to make

unauthorized and unlicensed references, directly and indirectly, to the NRA and

NRATV on [AMc's] website."  Plaintiff's First Amended Complaint at 36.  The NRA

provides a laundry list of instances in which AMc's website references or lists the

marks NRA and NRATV,[2] including a total of fifteen references to the NRA and

---

[2]      The court notes that, unlike Section 1114 of the Lanham Act, which
allows a plaintiff to enforce rights in a federally registered trademark, Section
1125(a)(1)(A) does not require that the plaintiff in a false association case own a
registered trademark.  See *B & B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S.
138, 145 (2015).  It is undisputed that the NRA is the owner of the federally

NRATV under headings entitled "Gallery" and "Clients." *Id.* at 37.  The NRA argues that such references are misleading, deceptive, and "foster consumer and customer confusion insofar as they falsely suggest to the public that the NRA remains an AMc client and endorses the services provided by AMc." *Id.* at 38.

Accordingly, the court concludes that, with respect to the zone of interests prong, the NRA has adequately pleaded a claim of false association.  The NRA's allegations reflect that, at the very least, the NRA's false association claim furthers the Lanham Act's purpose of preventing "the deceptive and misleading use of marks" in commerce.

ii. *Proximate causation*

Turning to *Lexmark*'s second prong, the court concludes that the NRA has sufficiently pleaded that the NRA's alleged injuries were proximately caused by the defendants' alleged violation of Section 1125(a)(1)(A).  The NRA alleges that AMc's continued and pervasive display of the NRA's marks on AMc's website is likely to confuse consumers into believing that the NRA endorses and approves of AMc's work.  This perceived association between the NRA and AMc, the NRA argues, is harmful to the NRA's reputation, diminishes the value of the NRA's trademarks, and causes the NRA to lose out on royalties.  While the NRA may ultimately be unable

---

registered marks "NRA" and "National Rifle Association."  NRATV, however, does not appear to be a federally registered mark.

to prove that the defendants' conduct caused the NRA to suffer these alleged injuries, the NRA has satisfied its burden at the pleading stage with respect to proximate causation.  See *ADT LLC v. Vivint, Inc.*, No. 17-CV-80432, 2017 WL 5640725, at *4 (S.D. Fla. Aug. 3, 2017) (denying the defendant's motion to dismiss a false association claim where the plaintiff alleged a likelihood of injury based on "lost royalties, loss of control over its brand, and damage to its good will and reputation.").

      b.  *The NRA has sufficiently pleaded that Amc's website is misleading*

Next, the defendants argue that the NRA's claim for false association must fail because none of the statements or images on AMc's website that pertain to the NRA are false or misleading.  As noted above, one of the Lanham Act's stated purposes is to "mak[e] actionable the deceptive and misleading use of marks in" commerce within the control of Congress.  15 U.S.C. § 1127.  The defendants argue that every statement relating to the NRA on AMc's website is "factually accurate," and that none of the website's references to the NRA are misleading.

In response, the NRA argues that AMc continues to depict numerous photographs on AMc's website that contain the words "National Rifle Association" written across the bottom.  Plaintiff's First Amended Complaint at 38-39.  The NRA attaches an exhibit to its amended complaint that depicts various photographs from AMc's website, many of which bear the legend "National Rifle Association."  *Id.*, Exhibit A at 3-6.  These images were allegedly gathered from AMc's website on

- 15 -

August 29, 2019, the day before the NRA filed this lawsuit.  *Id.* at 3 n.3-4.  The NRA concedes that AMc has since altered the legends on these photographs such that they now read "National Rifle Association (Legacy)."  Plaintiff's First Amended Complaint at 38-39.  AMc allegedly altered the legends to include the word "Legacy" on or about October 1, 2019.  *Id.*

The defendants argue that inclusion of the word "Legacy" in the legends of these photos renders it clear that the NRA is a former client of AMc, not a current client.  Motion at 9.  The defendants may ultimately prevail on that argument; however, at the pleading stage, the court concludes that the NRA has sufficiently pleaded that AMc's references to the NRA are misleading.  After all, whether a statement is misleading, and would thus likely cause confusion among consumers, "is a fact-specific inquiry best left for decision after discovery."  *Vulcan Golf, LLC v. Google, Inc.*, 552 F. Supp. 2d 752, 769 (N.D. Ill. 2008).

c. *The NRA has stated a claim for false association against*
*Mercury and the individual defendants*

The defendants' final argument regarding the NRA's false association claim is that the NRA's claim against Mercury and the individual defendants should be dismissed due to the NRA's impermissible use of "group pleading."  Motion at 10-11.  The defendants assert that the NRA's general assertions of wrongdoing by all defendants are conclusory and insufficient to survive a motion to dismiss.  While the NRA's allegations concerning Mercury's and the individual defendants' specific

violations of the Lanham Act are thin, "plaintiffs are permitted under federal procedure to allege that more than one defendant (*i.e.*, a group of named defendants) committed the same alleged act." *Clapper v. American Realty Investors, Inc.*, 3:14-CV-2970-D, 2015 WL 3504856, at *4 (N.D. Tex. June 3, 2015) (Fitzwater, J.). The NRA has alleged that all "[d]efendants directly participated in, or are at least the moving force behind," the conduct giving rise to the NRA's false association claim. Plaintiff's First Amended Complaint at 40-41. The court therefore concludes that the NRA's amended complaint "contains enough detail to enable [Mercury] and [the individual defendants] to prepare a response," and that "[t]he parties may clarify any remaining ambiguities during discovery." See *Reed Migraine Centers of Texas, PLLC v. Chapman*, No. 3:14-CV-1204-N, 2015 WL 11120872, at *4 (N.D. Tex. Sept. 22, 2015) (denying in part defendants' motion to dismiss for use of group pleading).

In summary, for the foregoing reasons, the court denies the defendants' motion to dismiss the NRA's claim for false association.

### 2. *The NRA's Claim for Copyright Infringement*

Count two of the NRA's first amended complaint asserts a claim for copyright infringement. The court concludes that the NRA's copyright claim must be dismissed due to the NRA's failure to obtain registration of its copyrights prior to filing suit. "Before pursuing [a copyright] infringement claim in court, . . . a copyright claimant generally must comply with [17 U.S.C.] § 411(a)'s requirement

that 'registration of the copyright claim has been made.'" *Fourth Estate Public Benefit Corporation v. Wall-Street.com, LLC*, __U.S.__, 139 S.Ct. 881, 887 (2019) (quoting 17 U.S.C. § 411(a)).  The NRA concedes that it had not registered copyrights in any of the copyrightable material relevant to this lawsuit prior to filing suit.  Response at 22-23.  Accordingly, the NRA's claim for copyright infringement is dismissed without leave to amend.  See *Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 WL 1454317, at *2 (S.D.N.Y. Apr. 2, 2019) (holding that to allow plaintiff leave to replead a copyright infringement claim to cure the plaintiff's failure to comply with 17 U.S.C. § 411(a) "would make a meaningless formality out of *Fourth Estate*'s requirement that an application be approved prior to filing suit."); accord *Mai Larsen Designs v. Want2Scrap, LLC*, No. SA-17-CV-1084-ESC, 2019 WL 2343019, at *6 (W.D. Tex. June 3, 2019).

### 3.  *The NRA's Claim for Conversion*

Count three of the NRA's first amended complaint asserts a claim for conversion based on the defendants' continued use of and failure to remove various "creative works and intellectual property" from AMc's website.  Plaintiff's First Amended Complaint at 43-44.  Though not abundantly clear from the complaint, the NRA's reference to "creative works and intellectual property" appears to pertain to the same photographs that form the basis of the NRA's Lanham Act claim.  The NRA asserts that its conversion claim is governed by Virginia law.  Response at 17-18.  The

defendants fault the NRA for failing to justify this assertion, but argue that under both Virginia and Texas law, the NRA's conversion claim is subject to dismissal. Reply at 6-7.  The court agrees with the defendants.

First, the defendants argue that the NRA's conversion claim fails under Texas law because the allegedly converted property in this case is intangible, intellectual property.  Motion at 14-15.  Allegations of conversion that involve "only intellectual property rights" are "outside the scope of Texas conversion law, which concerns only physical property."  See *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (citing *Waisath v. Lack's Stores*, 474 S.W.2d 444, 447 (Tex.1971)).  The NRA does not dispute this point.  Accordingly, the NRA has failed to state a claim for conversion under Texas law.

Second, the defendants argue that the NRA's conversion claim fails under Virginia law for the same reason that the claim fails under Texas law: the NRA alleges conversion of only intangible, intellectual property.  The defendants also argue that the NRA's Virginia conversion claim is preempted by the Copyright Act.  Motion at 16-17.  The court need not address whether Virginia conversion law allows a plaintiff to sue for the violation of a right in intangible property, however, because the court concludes that NRA's conversion claim is preempted by the Copyright Act.

With few exceptions, all state causes of action falling within the scope of the Copyright Act are expressly preempted.  *See* 17 U.S.C. § 301 ("[A]ll legal or equitable

rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by this title.").  The Fifth Circuit has interpreted this statutory language as completely preempting the substantive field. *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012).

Here, the court finds persuasive the opinion of the Fourth Circuit in *OpenRisk, LLC, v. Microstrategy Services Corp.*, 876 F.3d 518 (4th Cir. 2017), *cert. denied*, __U.S.__, 138 S.Ct. 1575 (2018).  In *OpenRisk*, the Fourth Circuit affirmed the district court's grant of summary judgment in favor of the defendant on the plaintiff's Virginia conversion claim, finding that the claim was preempted by the Copyright Act.  *Id.* at 524.  The plaintiff's conversion claim in *OpenRisk* was premised on the defendant's alleged copying and deletion of the plaintiff's data.  *Id.* at 521.  In affirming the district court's grant of summary judgment in favor of the defendant on preemption grounds, the Fourth Circuit held as follows:

> Under Virginia law, "[c]onversion is the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights," *Maine v. Adams*, 277 Va. 230, 672 S.E.2d 862, 869 (2009) (internal quotation marks omitted)— essentially, converting another's property to one's own use. And it is clear that when a conversion claim—like OpenRisk's—rests on an allegation of wrongful copying and distribution of intellectual property, it is "equivalent" to a copyright infringement claim and thus preempted under the Copyright Act.  "[W]here the core of the state law theory of recovery, as in conversion, goes to wrongful copying . . . it is preempted."  [*United States ex rel. Berge v. Board of Trustees*, 104 F.3d 1453, 1464 (4th Cir. 1997).]

- 20 -

*Id.* at 524.

Here, the NRA's conversion claim is premised on the assertion that the defendants "have refused to remove from [AMc's] website and return all . . . creative works and intellectual property" "developed and used by AMc in fulfilling its obligations to the NRA under the Services Agreement."  Plaintiff's First Amended Complaint at 43-44.  In other words, the NRA's claim is that AMc displays digital copies of the NRA's photographs on AMc's website in violation of the NRA's property rights.  The NRA's conversion claim therefore "rests on an allegation of wrongful copying" of the NRA's intellectual property (*i.e.*, digital photos) and reproduction of those photos on AMc's website.  Such claims are preempted by the Copyright Act.  *OpenRisk*, 876 F.3d at 524.  Accordingly, the NRA's conversion claim is dismissed.

### 4.  *The NRA's Claims for Fraud and Conspiracy*

Count four of the NRA's first amended complaint asserts a claim of fraud against all defendants and count six asserts a claim of conspiracy against all defendants.  Plaintiff's First Amended Complaint at 45, 55.  The defendants move to dismiss these two claims as to Mercury.  Motion at 19.  The basis of the NRA's fraud claim is that AMc executives—including Angus McQueen, Winkler, and Montgomery—falsely represented to the NRA that AMc retained documents "for purposes of justifying and substantiating [AMc's] billing statements and that such

documentation could be audited at the NRA's request."  Plaintiff's First Amended

Complaint at 45-46.  And the NRA's conspiracy claim is premised on the allegation

that all defendants were involved in a conspiracy to commit fraudulent behavior,

de-rail the resulting NRA investigation, and attempt "to extort Mr. LaPierre and the

NRA."  *Id.* at 55-56.  For the reasons that follow, the court dismisses the NRA's fraud

claim and conspiracy claim (insofar as that claim is premised on fraudulent conduct)

against Mercury.

Under Federal Rule of Civil Procedure 9(b), a plaintiff must state with

particularity the circumstances establishing a claim of fraud.[3]  FED. R. CIV. P. 9(b).

Claims for conspiracy to commit fraud are subject to the same standard.  *In re Enron

Corp. Securities, Derivative & ERISA Litigation*, 761 F. Supp. 2d 504, 518 (S.D. Tex.

2011); *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009) (quoting

*FC Investment Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008)

("a plaintiff alleging a conspiracy to commit fraud must 'plead with particularity the

conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy'").

What constitutes particularity will "necessarily differ with the facts of each

case."  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992).  At a minimum,

---

[3]      Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

courts require the plaintiff to specifically state the time, place, and contents of the

alleged false representation, as well as the identity of the person making the alleged

misrepresentation and what that person obtained thereby.  See *Williams v. WMX*

*Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir.) (citing *Tuchman v. DSC Communications*

*Corporation*, 14 F.3d 1061, 1068 (5th Cir. 1994)), *cert. denied*, 522 U.S. 966 (1997);

*United States ex rel. Doe v. Dow Chemical Company*, 343 F.3d 325, 328 (5th Cir. 2003)

("At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when,

where, and how' of the alleged fraud.") (citation omitted).  "Anything less fails to

provide defendants with adequate notice of the nature and grounds of the claim."

*Hart v. Bayer Corporation*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citing *Tuchman*, 14

F.3d at 1067).  Dismissal of a fraud claim for failure to plead the claim with

particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under

Rule 12(b)(6).  See *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.

1996).

The court concludes that, as to Mercury, the NRA has failed to satisfy Rule

9(b)'s heightened pleading standard.  "At a minimum, Rule 9(b) requires that a

plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud."  *Dow*

*Chemical*, 343 F.3d at 328 (citation omitted).  The NRA does not specifically allege

that Mercury was responsible for any allegedly fraudulent statements made by Angus

McQueen, Winkler, Montgomery, or any other AMc executives.  The closest the

NRA comes to alleging that Mercury engaged in fraud or conspiracy to commit fraud is the NRA's general allegation that "Mercury engaged in all the wrongful conduct detailed in this amended complaint." Plaintiff's First Amended Complaint at 6. Accordingly, with respect to its allegations against Mercury, the NRA has failed to satisfy Rule 9(b)'s heightened pleading standard. Therefore, the NRA's claim for fraud and claim for conspiracy (insofar as that claim is premised on fraudulent conduct) against Mercury is dismissed.

### 5.   *The NRA's Claims for Breach of Fiduciary Duty*

Count five of the NRA's first amended complaint asserts a claim for "breach of fiduciary duties" against all defendants and count seven asserts a claim for breach of the fiduciary duty of loyalty against all defendants. Plaintiff's First Amended Complaint at 52-55, 56-58. The defendants move to dismiss these claims against the individual defendants. Motion at 21. For the reasons that follow, the court concludes that the NRA has failed to state a claim for breach of fiduciary duty against the individual defendants.

Underlying the NRA's breach of fiduciary duty claims, as they pertain to the individual defendants, is the NRA's assertion that the individual defendants were subagents of the NRA, and thus, owed the NRA the same fiduciary duties that an agent owes a principal. *See* Response at 13. The NRA avers that the longstanding services agreement between the NRA and AMc, by its terms, established a

- 24 -

principal-agent relationship between the NRA and AMc.[4]  *Id.*  The NRA further asserts that, given their executive positions at AMc, the individual defendants were subagents of the NRA.  See *id.*

The defendants' motion and reply cite Texas authorities regarding the law of agency, and the NRA maintains that no conflict exists between Texas law and Virginia law with respect to the law of agency.  *See* Response at 13-14.  Accordingly, the court will apply Texas's law of agency in evaluating whether the individual defendants may have been subagents of the NRA.

The NRA does not cite any case in which a court held that a subagent owes a principal fiduciary duties under Texas law.  Instead, the NRA relies primarily on the second and third Restatements of Agency, which Texas courts sometimes follow.  See, e.g., *Arvizu v. Estate of Puckett*, 364 S.W.3d 273, 277 (Tex. 2012) (following the Third Restatement and affirming that a principal may be held vicariously liable for the tortious acts of a subagent).  According to the Third Restatement of Agency, "[a] person appointed by an agent to act on behalf of the agent's principal is a subagent if the appointing agent has agreed with the principal that the appointing agent shall be

---

[4]     The NRA also asserts that, in addition to the fiduciary duties owed by an agent to a principal, AMc owed the NRA fiduciary duties based on the "decades-long relationship of trust and confidence that likewise created a fiduciary relationship."  Response at 13.  Because the defendants have not moved to dismiss the breach of fiduciary duty claims against AMc, the court need not address the question of whether AMc owed the NRA fiduciary duties based on the longstanding relationship between the parties.

responsible to the principal for the agent's conduct." RESTATEMENT (THIRD) OF

AGENCY § 3.15, cmt. d (2006).  And according to the Second Restatement of Agency,

"a subagent who knows of the existence of the ultimate principal owes [the ultimate

principal] the duties owed by an agent to a principal, except the duties dependent on

the existence of a contract." RESTATEMENT (SECOND) OF AGENCY § 428(1) (1958).

Accordingly, on the assumption that Texas law tracks the Second and Third

Restatement in this context, the NRA would first need to establish that AMc was an

agent of the NRA to establish that the individual defendants were subagents of the

NRA.

 "'Under Texas law, [a]gency is the consensual relationship between two parties

when one, the agent, acts on behalf of the other, the principal, and is subject to the

principal's control.'" *Akerblom v. Ezra Holdings Ltd.*, 848 F. Supp. 2d 673, 690 (S.D.

Tex. 2012) (citations omitted), *aff'd*, 509 Fed. Appx. 340 (5th Cir. 2013).  "The most

common language used to flesh out the right of control . . . typically references the

principal's power to determine the 'means and details' of the agent's work.  Thus, the

right of control 'includes not only the right to assign tasks, but also the right to

dictate the means and details of the process by which an agent will accomplish the

task.'" *Cardinal Health Solutions, Inc. v. Valley Baptist Medical Center*, 643 F. Supp. 2d

883, 888 (S.D. Tex. 2008) (quoting *Walker Insurance Services v. Bottle Rock Power Corp.*,

108 S.W.3d 538, 549 (Tex. App.--Houston [14th Dist.] 2003, no pet.)) (and

gathering sources).  As a general proposition, Texas law does not presume agency, and, when claiming agency, the alleging party has the burden of proving its existence. *Buchoz v. Klein*, 184 S.W.2d 271, 286 (Tex. 1944).

Here, the court concludes that the NRA has failed to sufficiently allege a principal-agent relationship between the NRA and AMc.  In its response, the NRA simply states: "the NRA alleges that the Services Agreement between the parties contains language making AMc an agent and fiduciary of the NRA."  Response at 13. The allegations of a formal principal-agent relationship in the NRA's amended complaint are similarly sparse.  Quoting the parties' services agreement, the NRA alleges that "AMc served as the NRA's agent for several purposes pursuant to the Services Agreement . . . .  For example, the Services Agreement provided for AMc to act 'on [the] NRA's behalf,' and subject to the NRA's control, with respect to purchasing, planning, and placement of media."  Plaintiff's First Amended Complaint at 10-11 (quoting the Services Agreement between the parties, which appears on the docket as Docket Entry 61-4 ("Services Agreement"), at §§ I.C, II.B. I.).  Although the provisions of the Services Agreement cited by the NRA establish that AMc was to act on the NRA's behalf with respect to various tasks set forth in the agreement, these provisions do not establish that the NRA had "the right to dictate the means and details of the process by which [AMc]" was to accomplish those tasks.

Accordingly, the court concludes that the NRA's first amended complaint fails to establish that the services agreement gave rise to a formal principal-agent relationship between the NRA and AMc.  Consequently, the court need not address whether the individual defendants were subagents of the NRA; absent a showing of a principal-agent relationship between the NRA and AMc, the NRA cannot establish a principal-subagent relationship between the NRA and the individual defendants.  The NRA's claims for breach of fiduciary duty against the individual defendants are therefore dismissed for failure to state a claim.[5]

### III.  CONCLUSION

In accordance with the foregoing, the defendants' motion to dismiss (docket entry 28) is **GRANTED** in part and **DENIED** in part.  Specifically, the NRA's claims for copyright infringement (count 2), conversion (count 3), fraud and conspiracy (insofar as that claim is premised on fraudulent conduct) against Mercury (counts 4 and 6), and breach of fiduciary duty against the individual defendants (counts 5 and 7) are **DISMISSED**.  The defendants' motion is **DENIED** with respect to the NRA's claim for false association (count 1).

---

[5]     Although the court concludes that the NRA has failed to sufficiently plead the existence of a formal principal-agent relationship arising from the Services Agreement between the NRA and AMc, the court makes no ruling as to whether the NRA has stated a claim for breach of fiduciary duties against AMc.

**SO ORDERED**.

September 14, 2020.

A. JOE FISH
Senior United States District Judge