UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


NATIONAL RIFLE ASSOCIATION OF )
AMERICA, )
 )
      Plaintiff and Counter-Defendant, )
 )
and )
 )
WAYNE LAPIERRE, )
 )
      Third-Party Defendant, )      CIVIL ACTION NO.
 )
VS. )      3:19-CV-2074-G
 )
ACKERMAN MCQUEEN, INC., )
 )
      Defendant and Counter-Plaintiff, )
 )
and )
 )
MERCURY GROUP, INC., ET AL., )
 )
      Defendants. )


**MEMORANDUM OPINION AND ORDER**

Before the court is the defendants' motion to disqualify the plaintiff's counsel,

William A. Brewer III ("Brewer") and Brewer, Attorneys & Associates ("BAC")

(docket entry 78), and the Brief in Support of Defendants' Motion to Disqualify

Plaintiff's Counsel ("Motion") (docket entry 111).  For the reasons set forth below,

the motion to disqualify Brewer and BAC is **DENIED**; however, it is **ORDERED**

that Brewer is prohibited from appearing on behalf of the plaintiff at any hearing or trial in this case.

## I. BACKGROUND

On August 30, 2019, the plaintiff the National Rifle Association of North America ("NRA") filed this lawsuit against its former advertising agency Ackerman McQueen, Inc. ("AMc"), Mercury Group, Inc. ("Mercury") (a wholly owned affiliate of AMc), and four individual defendants who served at relevant times as AMc employees (collectively "defendants"), alleging claims of false association under the Lanham Act, copyright infringement, and fraud, among others.[1]  *See* Plaintiff's First Amended Complaint (docket entry 18).  The law firm of Dorsey & Whitney LLP represents all of the defendants in this case, and the NRA is represented by the law firm of Brewer, Attorneys & Counselors ("BAC").

The defendants filed the instant motion to disqualify BAC and Brewer on March 30, 2020 (docket entry 78).  On May 4, 2020, the NRA filed its response to the motion.  Plaintiff the National Rifle Association of America's Memorandum of Law in Opposition to Defendants' Motion to Disqualify Plaintiff's Counsel ("Response") (docket entry 121).  On June 3, 2020, the defendants filed a reply in support of their motion.  Defendants' Reply in Support of Their Motion to

---

[1]    A full recitation of the facts is provided in the court's memorandum opinion and order entered today resolving the defendants' motion to dismiss.

Disqualify ("Reply") (docket entry 140).  The court subsequently granted the NRA leave to file a sur-reply in opposition to the defendants' motion, Electronic Order (docket entry 158); on August 7, 2020, the NRA filed a sur-reply.  Plaintiff National Rifle Associations' Sur-Reply in Opposition to Defendants' Motion to Disqualify Plaintiff's Counsel ("Sur-Reply") (docket entry 160).  The motion is therefore ripe for decision.

The defendants' motion is based on multiple ethical violations that Brewer and his firm, BAC, allegedly have committed.  The following facts are undisputed unless otherwise noted.

Attorney William Brewer ("Brewer"), named-partner of BAC, is married to Skye McQueen Brewer ("Skye").  Motion at 2.  Skye is the sister of Revan McQueen ("Revan") and the daughter of the late Angus McQueen ("Angus").  *Id.*  Angus was the "long-time patriarch and CEO of AMc," and Revan is the current CEO of AMc. *Id.*  The defendants assert that Brewer has a "personal history of animosity" toward the McQueen family, and characterize the relationship between Brewer and various McQueen family members as "strained."  *Id.*

Brewer and BAC were retained as counsel by the NRA in 2018.  Motion at 4. The NRA asserts that Brewer and BAC were initially retained in early 2018 to handle litigation and regulatory matters unrelated to the NRA's relationship with AMc. Response at 3.  One of the matters that BAC handled for the NRA was a lawsuit

- 3 -

against Lockton Affinity LLC.  Motion at 4.  During the course of the Lockton litigation, the NRA instructed AMc to participate in the NRA's investigation of the Carry Guard program, an insurance initiative on which the NRA and Lockton had collaborated.  *Id.*  AMc agreed to participate in the Carry Guard investigation, which the defendants assert was led by Brewer and BAC.  *Id.*  The defendants further allege that Brewer used the opportunity to examine AMc's records to mount an attack on AMc.  *Id.* at 5.

In September 2018 BAC conducted an on-site audit of AMc's records on behalf of the NRA, pursuant to the services agreement between AMc and the NRA. *See* Motion at 12-13; Appendix in Support of Defendants' Motion to Disqualify Plaintiff's Counsel (William A. Brewer, III & The Brewer Firm) ("Appendix to Defendants' Motion Part I") (docket entry 80) at APP. 1174.  The defendants assert that Susan Dillon ("Dillon"), who was then working as a director of consulting at BAC, led the audit team.  Appendix to Defendants' Motion Part I at APP. 1174.

The following month, on October 11, 2018, Angus, Revan, and several other AMc executives met with the NRA's CEO Wayne LaPierre ("LaPierre") and Craig Spray ("Spray") (an NRA executive).  See Reply at 3; Appendix to Defendants' Motion Part I at APP. 1175-76.  The defendants assert that during this meeting, "AMc officials spoke with LaPierre about no longer dealing with Brewer in light of [Brewer's] animosity towards the McQueen family" and "Brewer's escalating

- 4 -

hostilities." Motion at 11-12. In his declaration, Revan McQueen states as follows: "I was prepared to resign the [NRA's] business at that meeting but LaPierre and Craig Spray assured the company that things were changing. LaPierre repeatedly asked us during the meeting to 'stick with him.'" Appendix to Defendants' Motion Part I at APP. 1176. The defendants also cite the declarations of three other AMc executives who were present at the October 11, 2018 meeting. Reply at 3. Each of these declarations state that at the close of the October 11, 2018 meeting, LaPierre "asked each AMc representative whether they would stick with him if [LaPierre] did in fact make sure that Mr. Brewer . . . and [BAC] . . . were no longer involved with AMc." Appendix in Support of Defendants' Reply in Support of Their Motion to Disqualify Plaintiff's Counsel ("Appendix to Defendants' Reply") (docket entry 141) at APP. 008; see also *id.* at APP. 018, 025. Revan's declaration further asserts that following the October 11, 2018 meeting, "LaPierre promised [Revan] via phone that AMc would not have to deal with . . . Brewer or [BAC] anymore, and that any future review of AMc's documents would be conducted by independent parties, not Brewer or [BAC]." Appendix to Defendants' Motion Part I at APP. 1176.

Three weeks after this meeting, on November 1, 2018, Susan Dillon submitted a letter of resignation to BAC after having been employed at BAC for 17 years. Declaration of Susan C. Dillon (docket entry 161-3), ¶¶ 3-4. Two weeks thereafter,

on November 15, 2018, Dillon began working at the auditing firm Forensic Risk Alliance ("FRA"). *Id.*, ¶¶ 4, 6.

Following the October 11, 2018 meeting between the NRA and AMc executives, the NRA continued its attempt to audit AMc's expenses. On December 21, 2018, BAC attorney Sarah B. Rogers ("Rogers") sent a letter to AMc's counsel Jay J. Madrid ("Madrid") in which Rogers requested that AMc consent to further auditing, and advised that "a deeper understanding of [AMc]'s practices and support for [AMc's] invoicing in [various] areas will advance the parties' common legal interests." Appendix to Defendants' Motion Part I at APP. 0792.

On January 4, 2019, Madrid responded to Rogers's December 21, 2018 letter by sending a letter to the NRA Board's general counsel, Steven Hart ("Hart"). In response to the NRA's continuing efforts to audit AMc's expenses, Madrid's letter states: "NRA personnel with the exception of Josh Powell as agreed upon by Wayne LaPierre (but not members of [BAC] or third party vendors hired by [BAC]) are welcome to come to AMc's Oklahoma office and sample any number of expenses." Appendix to the Defendants' Motion Part II (docket entry 112) at APP. 0797.

In January 2019 the NRA hired Dillon's new employer, FRA, to conduct an onsite audit at AMc's Oklahoma City office. Then, in February 2019, FRA conducted nine days of auditing at AMc's Oklahoma City office. *See* Motion at 12. BAC's level of involvement with the FRA audit is unclear. According to FRA director

Michael Trahar, however, the NRA hired FRA based on the NRA's relationship with Dillon.  *See* Appendix in Support of Plaintiff National Rifle Association of America's Brief in Opposition to Defendants' Motion to Compel and Motion for Sanctions (docket entry 71), Exhibit 2, at APP. 0353.[2]   Furthermore, on January 24, 2019, someone at BAC sent an email to FRA with an attached zip file which, according to the NRA's attorney James Hundley, contains "work product communications."  *Id.* at APP. 0334-35.  The NRA maintains that Dillon was not onsite for this audit; however, Dillon played an active role in the AMc audit.  When asked about Dillon's role in FRA's February 2019 audit of AMc, Michael Trahar stated: "So [Dillon] was . . . a client relationship management as much as anything, but she also actively supervised the team remotely."  *See* id. at APP. 0353.

The defendants did not learn of Dillon's involvement in the February 2019 FRA audit until sometime after the audit occurred.  Motion at 12.  The defendants assert that "[h]ad AMc known of Dillon's connection to Brewer, [AMc] never would have consented to FRA as the auditor."  Reply at 3.

---

[2]        In response to the inquiry "Who was" "the person who had the relationship with the NRA that brought them in as a client?", Trahar answered: "That was Susan Dillon."  Appendix in Support of Plaintiff National Rifle Association of America's brief in Opposition to Defendants' Motion to Compel and Motion for Sanctions (docket entry 71), Exhibit 2, at APP. 0353

## II. ANALYSIS

### A. Disqualification Legal Standard

Disqualification cases are guided by state and national ethical standards adopted by the Fifth Circuit. *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992), *cert. denied*, 507 U.S. 912 (1993). In the Fifth Circuit, one of the sources for the standards of the profession is the canon of ethics developed by the American Bar Association ("the Model Rules"). *In re Dresser Industries, Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). Additionally, district courts in Texas are to consider the Texas Disciplinary Rules of Professional Conduct ("the Texas Rules") because they govern attorneys practicing in Texas generally. See *Federal Deposit Insurance Corporation v. United States Fire Insurance Company*, 50 F.3d 1304, 1312 (5th Cir. 1995). Lastly, the court also considers, when applicable, local rules promulgated by the court itself ("the Local Rules"). *Id.* Because motions to disqualify are substantive motions which affect the rights of the parties, a party cannot be deprived of its choice of counsel on the basis of local rules alone. *In re Dresser Industries, Inc.*, 972 F.2d at 543.

The court must give careful consideration to motions to disqualify because of the potential for abuse. *Galderma Laboratories, L.P. v. Actavis Mid Atlantic LLC*, 927 F. Supp. 2d 390, 394-95 (N.D. Tex. 2013) (Kinkeade, J.). Parties may use disqualification motions as "procedural weapons" to advance purely tactical purposes. *In re American Airlines, Inc.*, 972 F.2d at 611. "A disqualification inquiry, particularly

when instigated by an opponent, presents a palpable risk of unfairly denying a party

the counsel of [its] choosing." *United States Fire Insurance Company*, 50 F.3d at 1316.

B. Application

The defendants assert that Brewer and BAC have violated numerous Model

Rules and the Texas Rules.  The court addresses each in turn.

1. *Brewer and BAC's alleged violation of Model Rule 4.1 and Texas Rule 4.01*

The defendants' reply and the NRA's sur-reply focus most heavily on the

defendants' assertion that Brewer and BAC have violated Model Rule 4.1 and Texas

Rule 4.01.  The court concludes that the defendants' have failed to establish that

Brewer and BAC violated either of these ethical rules.

Model Rule 4.1 provides:

> In the course of representing a client a lawyer shall not
> knowingly:
> (a) make a false statement of material fact or law to a third
> person; or
> (b) fail to disclose a material fact when disclosure is necessary
> to avoid assisting a criminal or fraudulent act by a client,
> unless disclosure is prohibited by Rule 1.6.

Model Rule 4.1.  Texas Rule 4.01 is substantially similar to Model Rule 4.1.

Here, the defendants assert that Brewer and BAC violated these rules by failing

to disclose BAC's involvement in the FRA audit that occurred in February 2019.

Reply at 10.  Specifically, the defendants assert that LaPierre and the NRA

committed a fraudulent act by promising AMc that Brewer and BAC would not be

involved in any future review of AMc's documents, and then hiring FRA and Dillon, the former longtime BAC employee, to conduct the February 2019 audit.  See *id.* Finally, the defendants assert that Brewer and BAC's failure to disclose the fact that Dillon was involved in the FRA audit amounts to a "fail[ure] to disclose a material fact [to a third person] when disclosure is necessary to avoid assisting a . . . fraudulent act by a client," in violation of Model Rule 4.1(b).  *See* Reply at 10.

The court concludes that, even if all of the defendants' factual allegations are taken as true, the defendants have failed to establish that Brewer and BAC's conduct in relation to the FRA audit amounts to a violation of Model Rule 4.1 and Texas Rule 4.01.[3]

2.  *Brewer's alleged violation of Model Rule 3.7 and Texas Rule 3.08*

The defendants insist that Brewer will be a necessary witness at trial in this case, and consequently, that Brewer may not continue to represent the NRA in this matter under Model Rule 3.7 and Texas Rule 3.08.  Motion at 19.  The defendants

---

[3]       The defendants make much of the fact that more than a year after conducting the FRA audit, Dillon returned to work at BAC in April, 2020.  *See* Reply at 3 ("Even worse, AMc learned on April 22, 2020 (after filing this Motion) that Dillon is *back at the Brewer Firm*, further evidencing the conflict between Brewer's fraud and LaPierre's promises to Amc.") (emphasis in original).  The court finds this fact innocuous.  Not only did Dillon stay with FRA for more than a year after the February, 2019 audit occurred, Dillon also attests in her declaration that the reason she left FRA in March, 2020 was that she lost her position at FRA due to COVID-19. Declaration of Susan C. Dillon (docket entry 161-3), ¶¶ 3-4.  Accordingly, the court sees nothing sinister in Dillon's decision to return to BAC in April, 2020.

further assert that Brewer's status as a necessary witness requires that not only Brewer, but that BAC also be disqualified.  *Id.* at 22.  The court disagrees.

Texas Rule 3.08 provides, in pertinent part, that "[a] lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless" one of several exceptions apply.  Texas Rule 3.08(a).  Comment 8 to the rule clarifies that Texas Rule 3.08(a) "does not prohibit the lawyer who may or will be a witness from participating in the preparation of a matter for presentation to a tribunal," and that "another lawyer in the testifying lawyer's firm may act as an advocate, provided the client's informed consent is obtained."  *Id.*, cmt. 8.  Model Rule 3.7 is substantially similar to Texas Rule 3.08, but only prohibits a lawyer-witness from engaging in advocacy at a trial.  *See* Model Rule 3.7(a).

Here, the parties dispute whether Brewer "is a or may be a witness necessary to establish an essential fact on behalf of the lawyer's client."  The court need not resolve that dispute, however, because the NRA has agreed that Brewer will not appear at any trial related to this case.  Sur-Reply at 8.  Given the NRA's lack of opposition to the defendants' attempt to prevent Brewer from appearing on behalf of the NRA at trial in this case, the court concludes that Brewer should be prohibited

from appearing on behalf of the NRA at any hearing or trial in this case.  Brewer is not otherwise prohibited, however, from representing the NRA in this matter.

Nor is BAC's representation of the NRA otherwise restricted by Brewer's status as a potential witness at trial.  Comment 8 to Texas Rule 3.08 specifically allows "another lawyer in the testifying lawyer's firm [to] act as an advocate, provided the client's informed consent is obtained."[4]  As discussed in greater detail below, the NRA's General Counsel John Frazer ("Frazer") has reviewed the defendants' motion and nonetheless wholeheartedly consents to BAC's continued representation of the NRA in this matter.  *See* Appendix to the NRA's Response at APP. 280-83.

Accordingly, the court concludes that the defendants have failed to establish that Model Rule 3.7 or Texas Rule 3.08 require Brewer or BAC's disqualification in this case.

3. *Brewer's alleged violation of Model Rule 1.7(a)(2) and Texas Rule 1.06(b)(2)*

The defendants also allege that Brewer has several personal interests that put him in violation of Model Rule 1.7(a)(2) and Texas Rule 1.06(b)(2), and thus,

---

[4]     Similarly, Model Rule 3.7(b) provides that "[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so" by exceptions not applicable here.  *See* Model Rule 3.7.

require Brewer's disqualification.  The court concludes that the defendants have

failed to establish that Brewer has violated either of these ethical rules.

Model Rule 1.7(a)(2) provides, in pertinent part:

> (a). . . [A] lawyer shall not represent a client if the
> representation involves a concurrent conflict of interest.  A
> concurrent conflict of interest exists if . . . (2) there is a
> significant risk that the representation of one or more clients
> will be materially limited . . . by a personal interest of the
> lawyer.

Model Rule 1.7(a)(2).  Model Rule 1.7(b) provides:

> (b) Notwithstanding the existence of a concurrent conflict of
> interest under paragraph (a), a lawyer may represent a client
> if:
>
> (1) the lawyer reasonably believes that the lawyer will be able
> to provide competent and diligent representation to each
> affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a
> claim by one client against another client represented by the
> lawyer in the same litigation or other proceeding before a
> tribunal; and
>
> (4) each affected client gives informed consent, confirmed in
> writing.

Model Rule 1.7(b).

Similarly, Texas Rule 1.06(b) provides, in pertinent part, that: "(b) . . . a

lawyer shall not represent a person if the representation of that person: . . . (2)

reasonably appears to be or become adversely limited by the lawyer's or law firm's . . .

own interests." Texas Rule 1.06(b)(2).  Under Texas Rule 1.06(c), however,

> (c) [a] lawyer may represent a client in the circumstances described in (b) if:
>
> (1) the lawyer reasonably believes the representation of each client will not be materially affected; and
>
> (2) each affected or potentially affected client consents to such representation after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any.

Texas Rule 1.06(c).

Here, the defendants assert that Brewer has a half dozen personal interests that materially and adversely limit Brewer and BAC's representation of the NRA. These are: (1) that Brewer manufactured conflicts and tension between the NRA and AMc in a manner contrary to the NRA's goals, making Brewer "a principal actor in the underlying dispute with interests adverse to the NRA and LaPierre;" (2) that "Brewer and his firm are direct business competitors of AMc" in the marketing and public relations arena; (3) that Brewer's familial relation and animosity toward the McQueens influences Brewer's actions on behalf of the NRA; (4) that Brewer has an interest in maintaining the NRA's lawsuits against AMc so that Brewer can continue to earn legal fees from the NRA; (5) that, because Brewer and Revan are brothers-in-law, Revan "must battle his sister's husband, which could hamper

- 14 -

[Revan]'s ability to zealously advocate for [AMc] because of [Revan's] concerns for family;" and (6) that "Brewer is a principal actor and tortfeasor in this litigation." Motion at 17-18.

With respect to the second, third, and fifth of the personal interests alleged by the defendants, the court concludes that these interests do not appear to materially or adversely limit Brewer's representation of the NRA.  It is undisputed that BAC conducts some of the public relations work that AMc was previously tasked with conducting on the NRA's behalf.  However, although this fact and the fact that Brewer is married to the sister of AMc's CEO are unfavorable to the defendants, such facts appear either neutral or beneficial to the NRA's interests in this litigation.

With respect to the fourth alleged personal interest, Brewer's interest in maintaining this litigation so that BAC may continue to earn legal fees, this interest is insufficient to raise a conflict that warrants disqualification.  In every attorney-client relationship in which fees change hands, the attorney will have a financial interest in the representation.  AMc asserts that this case is unique because Brewer and his firm have been paid an allegedly exorbitant amount of fees by the NRA: "$50 million (and counting) . . . in less than two years."  Motion at 18.  Even if it be assumed that the NRA in fact pays BAC as much as the defendants allege, the defendants have failed to establish that BAC's acceptance of such fees constitutes a violation of any rule of attorney ethics.

Finally, with respect to the first and sixth alleged personal interests, that Brewer is a tortfeasor and "principal actor in the underlying dispute with interests adverse to the NRA and LaPierre[,]" the court concludes the defendants have failed to establish that Brewer's interests diverge from those of the NRA. To the extent that Brewer's interests are adverse to those of the NRA, however, the court concludes that the NRA has properly consented to any such conflict.

As noted above, Model Rule 1.7(b) and Texas Rule 1.06(c) allow an attorney, with a client's consent, to continue to represent a client despite a concurrent conflict. Here, notwithstanding the possibility that Brewer's interests with respect to this lawsuit may diverge from those of the NRA as the case progresses, the NRA's General Counsel John Frazer has consented to BAC's continued representation of the NRA. In his declaration, Frazer addresses the alleged conflicts asserted in the defendants' motion, denies that such conflicts exist, and explicitly consents (on behalf of the NRA) to BAC's continued representation. *See* Appendix to the NRA's Response at APP. 280-83. Given Frazer's consent, which was informed by the thorough arguments raised in the defendants' motion, the court concludes that the NRA has satisfied Model Rule 1.7(b) and Texas Rule 1.06(c). Furthermore, to the extent that BAC's representation of the NRA is or may become adversely impacted by Brewer's personal interests, that harm is suffered not by the defendants but "by the [NRA] who may terminate [Brewer] at any time." *See* RESTATEMENT (THIRD) OF THE LAW

GOVERNING LAWYERS § 125, cmt. a (2000) (noting that "[d]isqualification is ordinarily not a relevant remedy" when an attorney and a current client have a conflict of interest "because the harm is suffered by the lawyer's client who may terminate the lawyer at any time.").

Accordingly, the court concludes that the defendants have failed to establish that Brewer violated Model Rule 1.7 and Texas Rule 1.06.

4. *Brewer's and BAC's alleged violations of Model Rule 3.6 and Texas Rule 3.07*

The defendants next assert that Brewer and BAC have violated Model Rule 3.6 and Texas Rule 3.07 by 'using falsehoods and publicity to sway the proceedings." Motion at 24.  The court concludes that the defendants have failed to establish a violation of these rules.

Model Rule 3.6(a) provides:

> A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

Model Rule 3.6(a).  Texas Rule 3.07 further prohibits a lawyer from counseling or assisting another person from making such a comment.  Texas Rule 3.07(a).

Here, the defendants assert that Brewer and BAC have leaked confidential information to the media, defamed AMc, and leaked court filings to the press before

- 17 -

defense counsel is made aware of such filings.  Motion at 24.  Brewer and members of his firm indisputably talk to the media quite frequently.  In support of their argument, the defendants attach an exhibit to their motion which lists approximately 97 instances in which Brewer or another BAC attorney made a statement to the press between May, 2018, and March, 2020.  Motion, Appendix A.  Of the numerous media quotes listed in Appendix A, however, the defendants cite only one example in which Brewer made a comment that allegedly prejudiced this lawsuit.  Motion at 24 ("For example, it is undisputed that Brewer leaked comments about AMc from NRA Board members to the New York Times for the March 11, 2019 article.").  Upon review of Brewer's comments that are quoted in the March 11, 2019 New York Times article in question, the court concludes that such comments do not "have a substantial likelihood of materially prejudicing" this litigation.

Accordingly, the court concludes that the defendants have failed to establish that Brewer and BAC have violated Model Rule 3.6 or Texas Rule 3.07.

5. *Brewer's alleged violation of Model Rule 4.2 and Texas Rule 4.02*

Finally, the defendants assert that "Brewer is violating the ethical rule against communicating with represented parties" codified in Model Rule 4.2 and Texas Rule 4.02 "by using family members to communicate with [Revan] McQueen about this very lawsuit."  Motion at 23.

In support of this assertion, the defendants cite the declaration of Revan McQueen, in which Revan states:

> Since the date the NRA's first lawsuit was filed against AMc on April 12, 2019, I have personal knowledge that Brewer, using family members as channels, has attempted to communicate with me to influence AMc's litigation positions and strategy.  For example, when Brewer knew that AMc was represented by counsel, he tried to direct me to "break privilege" with my own attorneys so he could tell me "how to get out of this."

Appendix to Defendant's Motion Part I (docket entry 80) at APP. 1178.

The NRA objects to this statement from Revan's declaration and argues that the statement contains inadmissible hearsay, Response at 25, which the defendants do not dispute, *see* Reply at 10.  Though neither party asserts a cogent argument as to whether Revan's declaration contains inadmissible hearsay, it appears that the statements by Revan's family members regarding Brewer's conduct to which Revan alludes are in fact offered to prove the truth of the matter asserted therein; that Brewer told said family members that Brewer wanted to communicate with Revan about this litigation.  *See* Fed. R. Evid. 801(c).  Accordingly, given the paucity of the defendants' evidence, the court concludes that the defendants have failed to establish that Brewer has violated Model Rule 4.2 and Texas Rule 4.02.

- 19 -

III.  CONCLUSION

In accordance with the foregoing, the defendants' motion to disqualify William

A. Brewer III and BAC is **DENIED**; however, it is **ORDERED** that Brewer shall not

appear on behalf of the NRA at any hearing or trial in this case.

**SO ORDERED**.

September 14, 2020.

_____

A. JOE FISH
Senior United States District Judge

- 20 -