UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | ) ) ) | |
| Plaintiff and Counter-Defendant, | ) ) | |
| and | ) ) | |
| WAYNE LAPIERRE, | ) ) | |
| Third-Party Defendant, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:19-CV-2074-G |
| ACKERMAN MCQUEEN, INC., | ) ) | |
| Defendant and Counter-Plaintiff, | ) ) | |
| and | ) ) | |
| MERCURY GROUP, INC., ET AL., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion to disqualify the law firm of Dorsey & Whitney LLP ("Dorsey") as counsel for the defendants, filed by the plaintiff the National Rifle Association of America ("NRA") (docket entry 106), and the Plaintiff National Rifle Association of America's Memorandum of Law in Support of Plaintiff's Motion to Disqualify the Law Firm of Dorsey & Whitney LLP as Counsel for Defendants and

for Other Appropriate Sanctions and Relief ("Motion") (docket entry 107). For the reasons set forth herein, the motion is denied.

## I. BACKGROUND

### A. Factual Background

On August 30, 2019, the NRA filed this suit against its former advertising agency Ackerman McQueen, Inc. ("AMc"), Mercury Group, Inc. (a wholly owned affiliate of AMc), and four individual defendants (collectively "defendants"), alleging claims of false association under the Lanham Act, copyright infringement, and fraud, among others.[1]  *See* Plaintiff's First Amended Complaint (docket entry 18). Dorsey represents all of the defendants in this case, and the NRA is represented by the law firm of Brewer, Attorneys & Counselors ("BAC"). The NRA filed the instant motion to disqualify Dorsey on April 16, 2020. *See* Docket Entry 106.

The NRA's motion stems from Dorsey's possession and litigation use of an allegedly privileged and confidential PowerPoint presentation. The following facts are undisputed unless otherwise noted.

On January 4 and 5 of 2019, the NRA held two days of meetings at the Regency Ballroom of the Hyatt Regency Hotel in Tysons Corner, Virginia. Motion at 4, 7 n.25. On January 4, 2019, BAC's managing director of public affairs, Travis

---

[1] A full recitation of the facts is provided in the court's memorandum opinion and order entered today resolving the defendants' motion to dismiss.

- 2 -

Carter ("Carter"), delivered a presentation before the NRA's Public Affairs Committee. *Id.* at 7 n.25. Carter used a PowerPoint during his presentation; the court refers to Carter's January 4, 2019 presentation as "the public affairs presentation" and refers to the PowerPoint used during the public affairs presentation as "the public affairs PowerPoint." *See* Sealed Exhibits in Support of Defendants' Motion to Disqualify Plaintiff's Counsel, Exhibit A-65 ("The Public Affairs PowerPoint") (docket entry 112) at APP. 1130-62.

Present during the January 4, 2019 public affairs presentation were members of the NRA's Public Affairs Committee, as well as various AMc representatives who attended in their capacity as the NRA's "long-time advertising, branding, networks and communications advisor[s]." Appendix in Support of Plaintiff National Rifle Association of America's Memorandum of Law in Support of Plaintiff's and Third-Party Defendant's Motion to Disqualify the Law Firm of Dorsey & Whitney LLP as Counsel for Defendants and for Other Appropriate Sanctions and Relief ("Plaintiff's Appendix") (docket entry 108) at APP. 019.

On January 5, 2019, the day after Carter delivered the public affairs presentation, attorney William Brewer ("Brewer") of BAC delivered a different presentation at the Hyatt Regency Hotel in Tysons Corner, which the court refers to as "the executive briefing." *See* Motion at 4. Like Carter, Brewer used a PowerPoint

during his presentation; the court refers to this PowerPoint as "Exhibit B-9." *See* id.; Docket Entry 109, Exhibit B-9 ("Exhibit B-9").

Present during the January 5, 2019 executive briefing were members of the NRA's outside counsel, NRA board members, Motion at 5, NRA senior staff members, and "a very select number of other invited guests." Plaintiff's Appendix, Exhibit 4 ("Carter Declaration") at APP. 097. No AMc representatives were present during the executive briefing.

The public affairs PowerPoint and Exhibit B-9 are highly similar. Though the former is comprised of 33 slides and the latter is comprised of only 19, the slides contained in Exhibit B-9 are largely duplicative of the slides contained in the public affairs PowerPoint. *Compare* The Public Affairs PowerPoint, *with*, Exhibit B-9. The majority of the language and imagery used in Exhibit B-9 is identical to language and imagery used in the public affairs PowerPoint. Each slide of both PowerPoints also bears the legend "ATTORNEY WORK PRODUCT PRIVILEGED & CONFIDENTIAL." Despite the fact that both PowerPoints bear this legend, the NRA concedes that the January 4, 2019 public affairs presentation is "non-privileged," but contends that Exhibit B-9 is protected by the attorney-client privilege. *See* Motion at 7; *id.* at n.25.

An AMc employee named John Popp ("Popp") was onsite at the Hyatt Regency Hotel in Tysons Corner on January 4 and 5, 2019 to assist the NRA with the NRA's

- 4 -

audio/visual presentations.  *See* Defendants' Response to Plaintiff's Motion to Disqualify the Law Firm Dorsey & Whitney LLP as Counsel for Defendants and for Other Appropriate Sanctions and Relief ("Response") (docket entry 127) at 2-3.  On January 4, 2019, Carter handed Popp a thumb drive containing the public affairs PowerPoint and directed Popp to load the presentation onto AMc's laptop.  "Popp copied the presentation to AMc's laptop to ensure functionality, returned the thumb drive to Carter, sent the presentation to [Popp's] supervisor ([Nader] Tavangar), and deleted the presentation from the laptop after the meeting ended.  Popp followed the same protocol for Exhibit B-9 on January 5, 2019."  Response at 3; *see also* Motion at 4.

On January 7, 2020, more than three months after this lawsuit was filed, Tavangar (an executive vice president at AMc) sent a pdf copy of Exhibit B-9 to Dorsey.  Response at 6.  Tavangar maintains that at the time that he provided Exhibit B-9 to Dorsey, Tavangar mistakenly believed that Exhibit B-9 was the PowerPoint that accompanied the January 4, 2019 public affairs presentation, not the January 5, 2019 executive briefing.  *Id.*  Tavangar expressed this mistaken belief to Dorsey attorneys on January 7 and 8, 2020.  Docket Entry 136, Exhibit D ("Tavangar Declaration") at APP. 028.  Tavangar further asserts that the pdf copy of Exhibit B-9 that Tavangar sent to Dorsey did not contain any presentation notes.  *Id.* at APP. 027.  Tavangar also maintains that he has neither seen nor reviewed any

presentation notes that may be associated with Exhibit B-9.[2]  *Id.*  Additionally, Dorsey attorney Michael Gruber ("Gruber") attests that he has never seen nor reviewed any presentation notes associated with Exhibit B-9, and that to Gruber's knowledge, no one at Dorsey has seen or reviewed such notes.  Docket Entry 136, Exhibit B ("Gruber Declaration") at APP. 018.

On February 12, 2020, Dorsey filed Exhibit B-9 under seal in this case in connection with the defendants' response to the NRA's motion to compel.  *See* Docket Entry 52.  On February 18, 2020, BAC sent a letter to Dorsey in which BAC asserted that Exhibit B-9 is privileged and demanded that Dorsey withdraw Exhibit B-9.  *See* Plaintiff National Rifle Association's Reply in Support of Its Motion to Disqualify the Law Firm Dorsey & Whitney LLP as Counsel for Defendants ("Reply") (docket entry 151) at 2.  On March 2, 2020, Dorsey responded to BAC's letter, asserting (mistakenly) that Exhibit B-9 was the PowerPoint that was presented during the January 4, 2019 public affairs meeting, and was therefore not subject to the attorney-client privilege.  *Id.* at 3; Plaintiff's Appendix at APP. 109.  On March 3, 2020, BAC responded to Dorsey and explained the difference between the public affairs PowerPoint and Exhibit B-9.  Reply at 3; Plaintiff's Appendix at APP. 112.

---

[2]     The NRA maintains that exhibit B-9, as presented during the executive briefing on January 5, 2019, had "detailed Speaker Notes" appended to each slide, Motion at 7;  the court has not reviewed such notes and the version of Exhibit B-9 that is on the docket in this case does not contain any such notes.

Dorsey asserts that BAC's letter of March 3, 2020 provided Dorsey with its first indication that the public affairs PowerPoint and Exhibit B-9 were two different presentations made to two different audiences on two different days.  *See* Response, at 8.

BAC next raised concerns over Exhibit B-9 with Dorsey on March 30, 2020, when BAC sent Dorsey a letter indicating the NRA's intention to file its motion to disqualify Dorsey.  *See* Reply at 3; Plaintiff's Appendix at APP. 114-15.  The following day, March 31, 2020, Dorsey sent BAC a letter proposing various steps to delete and return any copies of Exhibit B-9 that Dorsey and AMc possessed.  *See* Plaintiff's Appendix at APP. 150-51.  Then, on April 1, 2020, Dorsey filed an unopposed motion to withdraw Exhibit B-9 from the docket, Docket Entry 87, which the court granted on April 2, 2020, Docket Entry 88.  Despite Dorsey's voluntary withdrawal of Exhibit B-9 from the docket, the defendants maintain that Exhibit B-9 is not protected by the attorney-client privilege.

### B.  Procedural Background

The NRA filed the instant motion to disqualify Dorsey on April 16, 2020.  Docket Entry 106.  On May 21, 2020, the defendants filed their response in opposition to the motion.  Response.  On June 25, 2020, the NRA filed a reply.  Reply.  The motion is therefore ripe for decision.

## II.  ANALYSIS

### A.  Disqualification Legal Standard

Disqualification cases are guided by state and national ethical standards adopted by the Fifth Circuit.  *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).  In the Fifth Circuit, one of the sources for the standards of the profession is the canon of ethics developed by the American Bar Association ("the Model Rules").  *In re Dresser Industries, Inc.*, 972 F.2d 540, 543 (5th Cir. 1992).  Additionally, district courts in Texas are to consider the Texas Disciplinary Rules of Professional Conduct ("the Texas Rules") because they govern attorneys practicing in Texas generally.  See *Federal Deposit Insurance Corporation v. United States Fire Insurance Company*, 50 F.3d 1304, 1312 (5th Cir. 1995).  Lastly, the court also considers, when applicable, local rules promulgated by the court itself ("the Local Rules").  *Id.*  Because motions to disqualify are substantive motions which affect the rights of the parties, a party cannot be deprived of its choice of counsel on the basis of local rules alone.  *In re Dresser Industries, Inc.*, 972 F.2d at 543.

The court must give careful consideration to motions to disqualify because of the potential for abuse.  *Galderma Laboratories, L.P. v. Actavis Mid Atlantic LLC*, 927 F. Supp. 2d 390, 394-95 (N.D. Tex. 2013) (Kinkeade, J.).  Parties may use disqualification motions as "procedural weapons" to advance purely tactical purposes.  *In re American Airlines, Inc.*, 972 F.2d at 611.  "A disqualification inquiry, particularly

- 8 -

when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of [its] choosing." *United States Fire Insurance Company*, 50 F.3d at 1316.

Although the NRA asserts that Dorsey violated several rules of professional ethics, the NRA relies primarily on the six-factor test for disqualification set forth in *In re Meador*, 968 S.W.2d 346 (Tex. 1998). Courts sometimes apply the *Meador* test in cases where the moving party establishes that opposing counsel obtained an opponent's privileged materials outside the normal course of discovery. *See id.* at 351-52; see also *Bell v. Raytheon Co.*, No. 3:08-CV-0702-G (BF), 2009 WL 10704498, at *2 (N.D. Tex. Apr. 21, 2009) (Stickney, M.J.) (applying the *Meador* test after determining that the movant's opponent had obtained privileged materials). The *Meador* factors are: "1) whether the attorney knew or should have known that the material was privileged; 2) the promptness with which the attorney notifies the opposing side that he or she has received its privileged information; 3) the extent to which the attorney reviews and digests the privileged information; 4) the significance of the privileged information; *i.e.*, the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice; 5) the extent to which movant may be at fault for the unauthorized disclosure; 6) the extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney." *Meador*, 968 S.W.2d at 351-52.

Before considering the six-factor *Meador* test, the court must first determine whether the NRA has established that Exhibit B-9 is protected by the attorney-client privilege. For a communication to be protected under the attorney-client privilege, the proponent must prove: (1) the occurrence of a confidential communication; (2) between the proponent and a lawyer or lawyer's subordinate; "(3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." See *Equal Employment Opportunity Commission v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (citations omitted). "Determining the applicability of the privilege is a 'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof." *Id.* (citation omitted).

### B. Application

#### 1. *The NRA's Argument Under* Meador

The NRA primary argument in support of disqualification is that, due to Dorsey's possession and use of Exhibit B-9, Dorsey should be disqualified from representing the defendants in this case pursuant to the disqualification test set forth *Meador*. Motion at 14. The defendants rejoin that Exhibit B-9 is not protected by the attorney-client privilege because the contents of Exhibit B-9 are almost identical

to those of the non-privileged public affairs PowerPoint and therefore are not confidential.[3]  Response at 13.

The court has conducted a side-by-side comparison of the two PowerPoints to determine which portions of Exhibit B-9 are not contained in the admittedly non-privileged public affairs PowerPoint.  Based on this review, the court concludes that slides number 1-3, 7-15, and 17-19 of Exhibit B-9 are identical to or largely duplicative of slides in the non-privileged public affairs PowerPoint and therefore do not constitute confidential communications.

On the other hand, slides 4, 5, 6, and 16 of Exhibit B-9 contain information that is not included in the public affairs presentation.  For purposes of this order only, the court finds that the NRA has sufficiently established that slides 4, 5, 6, and 16 constitute attorney-client communications made for the primary purpose of providing assistance in some legal proceeding.  Nonetheless, the court concludes that the NRA has failed to establish that these four slides, or any portions of Exhibit B-9, constitute confidential communications.

The defendants argue, persuasively, that Exhibit B-9 is not privileged because third parties were present during the executive briefing at which Brewer presented Exhibit B-9.  Response at 12.  "A communication made in the presence of a

---

[3]   The NRA concedes that the public affairs presentation given on January 4, 2019 was "non-privileged."  *See* Motion at 7 n.25.

third-party lacks reasonable confidentiality and the [attorney-client] privilege does not protect it." *United States v. Quinn*, No. 3:09-CR-00141-P, 2013 WL 12233928, at *2 (N.D. Tex. Aug. 30, 2013) (Solis, J.) (citing *Hodges, Grant & Kauffman v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)). In support of their argument, the defendants cite the declaration of BAC's managing director of public affairs, Travis Carter. There, Carter states as follows: "It is my understanding that only NRA board members and senior staff members (and a very *select number of other invited guests*) were invited to attend the Executive Session portion of the January 5, 2019, meeting." Carter Declaration, ¶13 (italics added). The defendants assert that the "very select number of other invited guests" that Carter references were third-parties, and that the "guests'" presence at the executive briefing destroys any confidentiality that may have otherwise attached to Exhibit B-9.

In its reply brief, the NRA does not dispute that there were "other invited guests" present at the January 5, 2019 executive briefing, nor does the NRA submit further evidence regarding the identity of these guests. Rather, the NRA cites paragraph 13 of Carter's declaration in support of the proposition that "[t]he NRA established that all individuals present [at the January 5, 2019 executive briefing] were representatives of the NRA." Reply at 7. Carter's declaration does not support the NRA's assertion. Paragraph 13 of Carter's declaration suggests that, unlike the NRA board members and NRA senior staff members present at the January 5, 2019

executive briefing, the other invited quests were third-parties; not NRA representatives. Accordingly, the court concludes that the NRA has failed to establish that Exhibit B-9 constitutes a confidential communication. See *Quinn*, 2013 WL 12233928, at *2 n.2 (analyzing the presence of a third-party during an attorney-client communication "as a matter of confidentiality" rather than an "issue of waiver").

Because the NRA has failed to establish that Exhibit B-9 is protected by the attorney-client privilege, the court need not apply the six-factor *Meador* test. Even if it be assumed *arguendo*, however, that certain of the slides in Exhibit B-9 are protected by the attorney-client privilege, the court concludes that Dorsey's conduct does not justify disqualification. To this end, the court finds the fourth *Meador* factor instructive. Under the fourth factor, courts consider "[t]he significance of the privileged information; *i.e.*, the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice[.]" *Meador*, 968 S.W. 2d. at 352.

Here, the NRA asserts that Dorsey used "Exhibit B-9 in a manner adverse to the interests of the NRA in [the defendants'] legal filings." Motion at 16. In support of this assertion, the NRA only cites paragraph five of the defendants' response to the NRA's motion to compel, a paragraph in which the defendants mistakenly refer to Exhibit B-9 as the presentation that was given to the NRA's public affairs committee.

*See* Docket Entry 51, ¶ 5. The court finds, however, that the contents of Exhibit B-9 are largely unrelated to the NRA's claims and defenses in this lawsuit, and that the defendants' passing and erroneous reference to Exhibit B-9 does not work any great prejudice on the NRA. Furthermore, within a month of learning that Exhibit B-9 was the PowerPoint delivered at the January 5, 2019 executive briefing, Dorsey returned all copies of Exhibit B-9 in their possession to the NRA, and voluntarily withdrew Exhibit B-9 from the docket. *See* Plaintiff's Appendix at APP. 156. Accordingly, even if the NRA were to establish that Exhibit B-9 is protected by the attorney-client privilege, Dorsey's conduct with respect to Exhibit B-9 does not justify disqualification or sanctions against Dorsey.

2. *Other Alleged Ethical Violations*

The NRA also asserts in cursory fashion that the defendants violated Rules 1.4(a)(5), 4.1, and 4.4(b) of the ABA Model Rules of Professional Conduct, as well as Rules 4.01(b) and 8.04 of the Texas Disciplinary Rules of Professional Conduct. Motion at 20-21. After considering the NRA's arguments, the court concludes that the NRA has failed to establish that Dorsey violated any of these ethical rules.

3. *The NRA's Motion for Sanctions*

Finally, the NRA requests that the court exercise its inherent authority to impose various sanctions on Dorsey. Motion at 22-23. Because the court concludes that the NRA has failed to establish that Dorsey committed any ethical violation or

act that would otherwise disqualify Dorsey, the court concludes that sanctions are not warranted.

## III.  CONCLUSION

In accordance with the foregoing, the NRA's motion to disqualify the law firm of Dorsey & Whitney and for sanctions is **DENIED**.

**SO ORDERED**.

September 14, 2020.

_____
A. JOE FISH
Senior United States District Judge