# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § | |
| *Plaintiff and Counter-Defendant*, | § § | |
| and | § § | |
| WAYNE LAPIERRE, | § § § | |
| *Third-Party Defendant*, | § § | |
| v. | § § | Case No. 3:19-cv-02074-G |
| ACKERMAN MCQUEEN, INC., | § § § | |
| *Defendant and Counter-Plaintiff*, | § § | |
| and | § § | |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG, | § § § § § | |
| *Defendants*. | | |

## JOINT STATUS REPORT
## PURSUANT TO COURT ORDER DATED SEPTEMBER 15, 2020 (ECF No. 168)

## Table of Contents

I.    CASE OVERVIEW ....................................................................................................1

    A.    Statement of the Nature of the Case. ..................................................................1

        1.    The NRA and LaPierre's Statement. ........................................................1

        2.    Defendants' Statement. ............................................................................5

    B.    Challenges to Jurisdiction and Venue. ................................................................8

    C.    Pending Motions. .................................................................................................8

        1.    The NRA's Motion to Compel and for Sanctions (ECF No. 47). ................8

        2.    Defendants' Motion to Compel Plaintiff's Document Production and Motion for Sanctions (ECF No. 54). ....................................................9

        3.    Defendants' Motion to Quash American Clean Skies Foundation Subpoena ..................................................................................................9

        4.    Defendants' Motion to Quash Third Party Subpoenas .............................10

        5.    Defendants' Motion to Quash Amended Integris Subpoena (ECF No. 83). ......................................................................................................10

    D.    Matters Requiring a Conference with the Court. ..............................................10

    E.    Likelihood of Other Parties Being Joined. ........................................................10

    F.    Time Needed for Discovery and Contemplated Discovery. .............................11

    G.    Requested Trial Date, Estimated Length of Trial, and Jury Demand. ..............13

    H.    Consent to Trial Before Magistrate Judge. .......................................................13

    I.    Status and Prospects of Settlement Negotiations. .............................................13

    J.    Form and Timing of Alternative Dispute Resolution. ......................................13

    K.    Other Relevant Matters. ....................................................................................13

Pursuant to the Joint Status Report Order entered by the Honorable A. Joe Fish, dated September 15, 2020 (ECF No. 168), Plaintiff/Counter-Defendant the National Rifle Association of America (the "NRA" or "Plaintiff"), Third-Party Defendant Wayne LaPierre ("LaPierre"), Defendant/Counter-Plaintiff Ackerman McQueen, Inc., and Defendants Mercury Group, Inc., Henry Martin, William Winkler, Melanie Montgomery, and Jesse Greenberg (collectively, "Defendants"), (Plaintiff, LaPierre, and Defendants together, the "Parties"), file the instant Joint Status Report (the "Report").

Counsel for Defendants (Brian E. Mason, Christina M. Carroll, and Kelsey M. Taylor) and counsel for the NRA and LaPierre (Michael J. Collins, Alessandra P. Allegretto, and Claudia V. Colón) conferred for approximately 30 minutes by telephone on September 29, 2020. Counsel for the Parties considered the nature and basis of the positions and statements made herein, and jointly developed this report. The Parties' positions are as follows:

## I.
## CASE OVERVIEW

A.  **Statement Of The Nature Of The Case.**

   1.  **The NRA and LaPierre's Statement.**

In 2019, the NRA filed several lawsuits[1] against Defendants after they intentionally infringed on the NRA's intellectual property rights, stonewalled the NRA's reasonable requests to obtain access to documents relating to billing irregularities, and made fraudulent representations

---

[1] The NRA filed three lawsuits before the Virginia Circuit Court, which have since been consolidated into *National Rifle Association of America v. Ackerman McQueen, Inc., and Mercury Group, Inc.*, Cons. Case Nos. CL19002067; CL19001757; CL19002886 (Va. Cir.), and one before the United States District Court for the Northern District of Texas, *National Rifle Association of America v. Ackerman McQueen, Inc., et al.*, Civ. Case No. 3-19-cv-02074-G (N.D. Tex.). Note that the individual defendants involved in the Texas Action were not named in the Virginia Action.

regarding NRATV, a digital media platform created by Defendants for the NRA. These suits were filed in the Virginia Circuit Court[2] (collectively, the "Virginia Action"), and the United States District Court for the Northern District of Texas (the "Texas Action").[3] The Virginia Action is currently stayed.[4]

By way of background, during early 2018, a regulatory investigation of a membership program known as Carry Guard, in which Defendants were prominently involved, inspired the NRA to strengthen its oversight of third-party vendors.[5] Professionals in the NRA's accounting and controls functions compared notes, and recommended that several vendors be examined further—first and foremost, Ackerman McQueen, Inc. ("AMc").[6] Around this time, at least one NRA accountant had decided that AMc "deserved to be fired" due to, among other things, "systemic[] obfuscate[ion] and block[ing]" of details underlying opaque, six-figure invoices issued to the NRA.[7] These concerns were presented at a July 2018 meeting of the Audit Committee of the NRA Board of Directors, where multiple employees spoke out against AMc.[8] The NRA-AMc relationship was a valuable and longstanding one,[9] but given the concerns, the Audit Committee Chairman, Charles Cotton, knew that further scrutiny of AMc was appropriate.[10]

In response to the concerns of its employees in the accounting office, the NRA requested access to AMc's business records, which it was contractually entitled to inspect pursuant to the

---

[2] *National Rifle Association of America v. Ackerman McQueen, Inc., and Mercury Group, Inc.*, Cons. Case Nos. CL19002067; CL19001757; CL19002886 (Va. Cir. Ct.).
[3] *National Rifle Association of America v. Ackerman McQueen, Inc., et al.*, Civ. Case No. 3-19-cv-02074-G (N.D. Tex.).
[4] The Virginia Action was stayed on March 11, 2020, pending resolution of the Texas Action.
[5] *See* ECF No. 121, Declaration of Wayne LaPierre at ¶ 8-9 (attached as Ex. 48 to the Collins Decl.).
[6] *See* ECF No. 121, Declaration of Michael Erstling at ¶ 8 (attached as Ex. 41 to the Collins Decl.).
[7] *Id.* at ¶¶ 6, 9.
[8] *Id.* at ¶ 8; *See also* Declaration of Charles Cotton at ¶ 5 (attached as Ex. 42 to the Collins Decl.).
[9] *See* ECF No. 121, Ex. 48 at ¶ 4.
[10] *See* ECF No. 121, Ex. 41 at ¶¶ 5-6.

parties' Services Agreement, dated April 30, 2017 (as amended May 6, 2018, the "Services Agreement").[11] Instead of providing the NRA with access to the records, AMc informed the NRA's Chief Executive Officer, Wayne LaPierre, that he should not want to see these documents, because anything transmitted to the NRA could be subpoenaed by regulators.[12] Alarmed by this response, the NRA pressed on: if AMc had documents likely to trigger a government subpoena, the NRA wanted to know about them.[13] Simultaneously, the NRA's newly hired Chief Financial Officer, Craig Spray, began to examine: (i) viewership metrics for NRATV, the expensive digital-video platform AMc administered; and (ii) the cost-effectiveness of certain items in AMc's $40 million-plus annual budget.[14] Due to the increasing tension, on June 25, 2019, the NRA terminated the parties' Services Agreement.[15]

Thereafter, as a result of AMc and Defendants' refusal to cooperate, and upon uncovering the extent of the fraud, the NRA filed its First Amended Complaint ("FAC") in the Texas Action on October 25, 2019.[16] In the FAC, the NRA alleges that Defendants engaged, over multiple years, in a pattern of misrepresenting its billing practices, and fraudulently overbilled the NRA through various means, in breach of their contractual and fiduciary duties.[17]

Defendants also defrauded the NRA into making continued investments in NRATV, by presenting misleading viewership data and analytics to cover up the fact that NRATV was an

---

[11] *See* ECF No. 121, Declaration of John Frazer at ¶ 9 (attached as Ex. 45 to the Collins Decl.).
[12] *See* ECF No. 121, Ex. 56 at ¶ 10. By letter from its counsel, AMc, issued a hedged version of the same warning, stating that "excessive contractual documentation transmitted to the NRA" would "not serve the NRA's management needs," because "third Parties will be all too happy to have access to such detailed billing information." *See* Letter from Stephen Ryan to William A. Brewer III, dated August 22, 2018, attached as Ex. 6 to the Collins Decl.
[13] *See* ECF No. 121, Ex. 56 at ¶ 10.
[14] *See* ECF No. 121, Declaration of Craig Spray at ¶ 5 (attached as Exhibit 52 to the Collins Decl.).
[15] *Id.* ¶ 84.
[16] *See* ECF No. 18 ("FAC") at ¶¶ 3-8.
[17] *Id.* at ¶¶ 18-19, 76-77, 120-136.

unmitigated failure.[18] In addition, Defendants refused to cooperate with the NRA's requests for information, and, with their back against the wall, participated in a failed attempt to extort the NRA and LaPierre, through AMc's employee and the former president of the NRA, (retired) Colonel Oliver North.[19]

Moreover, upon the termination of the Services Agreement, AMc lost its largest client and thus needed to market itself to make up for lost revenues.[20] To leverage the strength and recognition of the NRA's name for their own benefit and at the expense of the NRA, Defendants continued to use, copy, and republish on AMc's website the NRA's intellectual property- without the NRA's authorization.[21] By doing so, Defendants intended to convey the false impression that the NRA, the leading non-profit organization in Second Amendment advocacy in the country, remained a client and endorsed the work AMc provided—in particular, the failed NRATV venture. Therefore, the NRA commenced this action to be compensated for its extensive injuries and to enjoin Defendants' wrongful conduct.[22]

---

[18] *Id.* at ¶¶ 27-37, 44-46.
[19] *Id.* at ¶¶ 38-42, 47-56, 70-74.
[20] *Id.* ¶ 41.
[21] *Id.* at ¶¶ 84-102. This intellectual property was created, maintained, and in the possession of AMc pursuant to the work for hire provision in the Services Agreement. *Id.* at ¶¶ 81-82.
[22] *Id.* at ¶¶ 94-101.

## 2. Defendants' Statement.

This dispute arises out of a series of lawsuits the NRA filed against its longtime public-relations firm, AMc, based in large part of the parties' contract (the "***Services Agreement***").  In addition to this action, the NRA has brought three separate lawsuits in Virginia, which have now been consolidated into a single action (the "***Virginia Action***").[23]  The NRA brought the instant action against AMc in Texas (the "***Texas Action***"), replicating the same claims from the Virginia Action and including additional causes of action for conversion, fraud, breach-of-fiduciary-duty, and conspiracy,[24] along with claims for copyright and trademark infringement.  AMc filed a counterclaim for libel, tortious interference, fraud, and breach-of-contract.[25]  Both parties are seeking damages in excess of $50 million.

For thirty-eight years, AMc was the NRA's trusted provider of marketing, advertising, media, public-relations, and crisis-management services.  This relationship was governed by successive versions of the Services Agreement.[26]  One of AMc's flagship services was the NRA's owned media network, NRATV, a digital platform devoted to second-amendment messaging that additionally enabled the NRA to respond to national news and crises in real time when needed.[27]  In addition to the actual website itself, NRATV programming and content was broadcast across

---

[23] *National Rifle Association of America v. Ackerman McQueen, Inc., et al.*, Civil Case No. CL19001757, pending in the Circuit Court for the City of Alexandria, Virginia (filed on April 12, 2019); *National Rifle Association of America v. Ackerman McQueen, Inc., et al.*, Civil Case No. CL19002067, pending in the Circuit Court for the City of Alexandria, Virginia (filed on May 22, 2019); *National Rifle Association of America v. Ackerman McQueen, Inc., et al.*, Civil Case No. CL19002886, pending in the Circuit Court for the City of Alexandria, Virginia (filed on September 5, 2019).

[24] These claims are now part of the Virginia Action since the NRA's filing of its amended complaint on February 6, 2020.  In fact, in the NRA's *Motion for Leave to File a Consolidated and Amended Complaint*, it represented to the Virginia court that "these new allegations are already contained in the Texas action."

[25] *See* ECF 31 at pp. 77-122.

[26] *See* ECF No. 31, Ex. A.

[27] *See* ECF No. 31 at 87-89 ¶¶ 33-41.

many other traditional and social media platforms and engaged tens of millions of viewers annually.[28] In order to accurately assess the engagement across all of these platforms, AMc hired a third-party contractor to create a custom dashboard to aggregate the viewership data from each one.[29] The NRA's claims that NRATV was somehow a "failure" are not only untrue, but reflect a fundamental misunderstanding of the proper method for calculating viewership analytics for content broadcast across many different platforms.

Since the very beginning of the business relationship, AMc has operated under a "fair market value" billing model, as opposed to an hourly billing model sometimes used by other companies.[30] For annual services, AMc and the NRA developed a budget, which was paid over the course of the year.[31]

The billing method for AMc's services remained the same for decades, and the NRA conducted an annual audit of AMc's records, which were always satisfactory.[32] Then in 2018, as political pressure from federal regulators and the New York Attorney General began mounting against the NRA, LaPierre, the Brewer Firm, and others conspired to make AMc its "fall guy." Seeking to deflect from the mounting evidence of self-dealing and fiscal mismanagement by LaPierre and others in NRA leadership, the NRA invented multiple narratives placing the blame for its financial woes on AMc. The NRA conducted multiple unconventional "audits" in a span of six months, which even some in NRA leadership believed were not in the NRA's best interest. Despite the fact that AMc participated fully with every request for information, the NRA began

---

[28] *See id.* at 102-03 ¶¶ 87-88.

[29] *See id.*

[30] *See id.* at 82 ¶ 19.

[31] *See id.*; *see also* ECF No. 141, Ex. A, Declaration of William Winkler.

[32] *See id.* at 101 ¶ 79.

accusing AMc of withholding documents and made false public statements to the news media about how AMc was "refusing to cooperate" with the NRA's audits.[33]

Several executives and board members of the NRA, such as former NRA President, Lt. Col. Oliver North, had also begun questioning LaPierre's decision-making with regard to spending, especially regarding its legal fees to the Brewer Firm, whose litigation-as-PR strategy was costing the NRA millions of dollars per month.[34] However, the NRA quickly silenced these dissenting voices by publicly branding them as extortionists collectively with AMc in an imagined "coup" narrative and ousting them from the organization.[35] The NRA, at LaPierre and Brewer's direction, used this extortion narrative as an excuse not to pay for (and to effectively terminate) the third party contracts AMc entered into at the NRA's request, including the contract with Col. North, which forms the basis of AMc's claim for tortious interference.

Deflecting bad press and avoiding regulatory scrutiny weren't the only motivators for making a scapegoat of AMc. The NRA was also experiencing financial difficulty and looking to cut costs. In October 2018, LaPierre met with AMc executives about reducing budgeted expenses for 2018 and 2019. In the process, LaPierre made a number of representations to AMc calculated to induce AMc to commit to providing services to the NRA for the entirety of 2019.[36] In reliance upon these representations, AMc invested in contracts, leases, employees, and other assets to

---

[33] *See* Mark Maremont, *NRA Files Suit Against Ad Agency in Rift with Key Partner*, WALL STREET JOURNAL (Apr. 15, 2019) [https://www.wsj.com/articles/nra-files-suit-against-ad-agency-in-rift-with-key-partner-11555320601]; Danny Hakim, *N.R.A. Sues Contractor Behind NRATV*, THE NEW YORK TIMES (Apr. 15, 2019) [https://www.nralegalfacts.org/ackerman-news-reports] (hyperlinked to https://www.nytimes.com/2019/04/15/business/nra-nratv-lawsuit.html).

[34] *See* ECF No. 31 at 96 ¶ 63; ECF No. 79 at ¶¶ 9-12.

[35] *See* ECF No. 31 at 106 ¶ 100-01; ECF 18 at ¶¶ 70-74; ECF No. 79 at ¶¶ 13-19.

[36] *See* ECF No. 141, Ex. B ¶¶ 12-16.

continue to serve the NRA.[37] AMc has since discovered, however, that those representations were false, and at the time they were made, the NRA and LaPierre already intended to sever the NRA's relationship with AMc.[38] But to avoid triggering the termination provisions of the Services Agreement and paying the costly termination fees, including the multi-million-dollar contracts with NRATV talent that AMc had entered into at LaPierre's request, the NRA needed reasons to terminate the contract "for cause."[39] The NRA's claims of fraud, breach of fiduciary duty, and conspiracy were designed for this purpose. In turn, the NRA and LaPierre's conduct is the basis of AMc's fraud claim. Adding insult to injury, the NRA additionally refused to pay invoices for services already rendered, which undergirds AMc's claims for breach-of-contract.

In summary, AMc brings affirmative claims for libel and tortious interference against the NRA and LaPierre, a claim for fraud against LaPierre, and a claim for breach of contract against the NRA.

**B.    Challenges To Jurisdiction And Venue.**

The Parties do not intend to present any challenges to jurisdiction or venue.

**C.    Pending Motions.**

**1.    The NRA's Motion to Compel and for Sanctions (ECF No. 47).**

The NRA filed a Motion to Compel and for Sanctions against Defendants on January 22, 2020.[40] By Court Order dated September 23, 2020 (ECF No. 169), the Parties were instructed to submit a Joint Status Report to the Court outlining the status of all discovery disputes by October

---

[37] *See* ECF No. 31 at 96-98 ¶¶ 64-67.

[38] *See id.*

[39] *See id.* at 98-99 ¶¶ 70-73.

[40] *Id.* at p. 17.

9, 2020.[41] The Parties have asked for a short extension of this deadline until October 23, 2020.[42] This Motion will therefore be resolved by Magistrate Judge Toliver following submission of the Parties' report.

### 2. Defendants' Motion to Compel Plaintiff's Document Production and Motion for Sanctions (ECF No. 54).

Defendants filed their Motion to Compel Plaintiff's Document Production and Motion for Sanctions on February 26, 2020.[43] By Order dated September 23, 2020 (ECF No. 169), the Parties were instructed to submit a Joint Status Report to the Court outlining the status of all discovery disputes by October 9, 2020.[44] The Parties have asked for a short extension of this deadline until October 23, 2020.[45] Therefore, this motion will be resolved by Magistrate Judge Toliver following submission of the Parties' report.

### 3. Defendants' Motion to Quash American Clean Skies Foundation Subpoena

Defendants filed a motion to quash the NRA's Third-Party Subpoena on American Clean Skies Foundation in the United States District Court for the Eastern District of Virginia.[46] By Order dated March 6, 2020, the motion was transferred to the Northern District of Texas.[47] By Order dated March 9 2020, it was further referred to Magistrate Judge Toliver for determination.[48] The Parties are currently awaiting a final ruling.

---

[41] *See* ECF No. 169.
[42] ECF No. 170.
[43] *See* ECF No. 54.
[44] *See* ECF No. 169.
[45] ECF No. 170.
[46] ECF No. 1, *Ackerman McQueen, Inc. v. NRA*, No. 1:20-mc-00006 (E.D. Va. Feb. 7, 2020).
[47] ECF No. 13, *Ackerman McQueen, Inc. v. NRA*, No. 3:20-mc-00024-G-BK (N.D. Tex. Mar. 6, 2020).
[48] ECF No. 15.

### 4. Defendants' Motion to Quash Third Party Subpoenas

Defendants filed a motion to quash in the United States District Court for the Western District of Oklahoma related to eight (8) third-party subpoenas issued by the NRA, including Chickasaw Nation, Integris Health, Inc., Greater Oklahoma City Chamber of Commerce, Oklahoma Department of Tourism and Recreation, Oklahoma State University Foundation, Senior Star, Williams Energy Resources, LLC, and WPX Energy, Inc.[49] By Order dated February 25, 2020, this motion was transferred to the Northern District of Texas.[50] By Order dated February 27 2020, it was further referred to Magistrate Judge Toliver for determination.[51] The Parties are currently awaiting a final ruling.

### 5. Defendants' Motion to Quash Amended Integris Subpoena (ECF No. 83).

Defendants' filed a motion to quash the NRA's Amended Third-Party Subpoena on Integris Health, Inc. dated April 1, 2020, which arose after the NRA issued an amended subpoena to Integris Health, Inc.[52] The Parties are currently awaiting a final ruling.

### D. Matters Requiring A Conference With The Court.

The Parties agree that there are currently no matters that require a conference with the Court. However, the Parties reserve their right to request a conference with the Court in the future.

### E. Likelihood Of Other Parties Being Joined.

#### 1. The NRA's Position.

The NRA does not plan to join any additional parties as of the date of this report. However, the NRA intends to file a Motion for Leave to amend its Complaint to add further factual

---

[49] ECF No. 1, *Ackerman McQueen, Inc. v. NRA*, No. MC-20-1-HE (W.D. Ok. Feb. 7, 2020).

[50] ECF No. 7, *Ackerman McQueen, Inc. v. NRA*, No. 5:20-mc-00001-HE (N.D. Tex. Feb. 25, 2020).

[51] ECF No. 10.

[52] *See* ECF 83.

allegations developed during discovery, and may add additional parties at the time its Second Amended Complaint is filed.

### 2. Defendants' Position.

Defendants intend to file a Motion for Leave to Amend their Counterclaims and Third-Party Complaint to add further claims and factual allegations developed during discovery, and to add the NRA Foundation as an additional Third-Party Defendant.

### F. Time Needed For Discovery And Contemplated Discovery.

The Parties jointly request at least six (6) months from the entry of a scheduling order to complete discovery in this case, given the large volume of discovery requests already exchanged, and the fact that depositions in this matter have yet to commence.

### 1. The NRA's Pending and Contemplated Discovery.

The NRA served on Defendants' six (6) sets of Requests for Production (totaling 214 individual requests), and four (4) sets of Request for Admissions (totaling 299 individual requests), that target specific subsets of information related to the NRA's claims and defenses in this litigation. A summary of the timing and responses to the NRA's Requests is included below:

#### a. Requests for Production

| No. | NRA Service Date | AMc Response Date | Comments |
|---|---|---|---|
| 1st set | November 5, 2019 | December 5, 2019 | Objections and responses received |
| 2nd set | February 3, 2020 | March 26, 2020 | Objections and responses received |
| 3rd set | May 5, 2020 | June 5, 2020 | Objections and responses received |
| 4th set | May 18, 2020 | June 18, 2020 | Objections and responses received |
| 5th set | August 28, 2020 | September 28, 2020 | Objections and responses received |
| 6th set | September 11, 2020 | October 11, 2020 | Awaiting response |

b.  **Requests for Admissions**

| No. | NRA Service Date | AMc Response Date | Comments |
|---|---|---|---|
| 1st set | November 20, 2019 | December 20, 2019 | Objections and responses received |
| 2nd set | December 12, 2019 | January 12, 2020 | Objections and responses received |
| 3rd set | August 28, 2020 | September 28, 2020 | Objections and responses received |
| 4th set | September 12, 2020 | October 12, 2020 | Awaiting response |

In addition, the Parties have not yet conducted any of the ten (10) depositions permitted by Federal Rule of Civil Procedure 30. While the first deposition in this case is scheduled for October 15, 2020, the NRA anticipates that it will take several months to complete all necessary depositions prior to trial.

Further, the NRA anticipates that more than ten (10) depositions may be needed as there are far more than ten (10) key parties who possess information that is critical to the NRA's claims and defenses. Defendants agree that the claims at issue in this case may merit more than ten (10) depositions, and the Parties will file a motion requesting additional depositions to the extent that the Parties cannot stipulate to additional parties to be deposed.  Therefore, the NRA respectfully requests that this Court permit discovery to continue until at least April 2021.

2.  **Defendants' Pending and Contemplated Discovery.**

Defendants served Requests for Production on the NRA on December 20, 2019.  The NRA asserted various objections to these requests, which are the subject of AMc's prior Motion to Compel (ECF No. 54) and Judge Toliver's recent Order (ECF No. 169).

Defendants anticipate serving additional written discovery, including requests for production, interrogatories, and requests for admission on the NRA and the third-party defendants.

Defendants currently believe that more than a total of ten (10) depositions may be necessary and appropriate in this case given the number of claims and defenses, and the parties involved.  However, Defendants reserve their rights to challenge any deposition or the number of depositions in the future.

G.      **Requested Trial Date, Estimated Length Of Trial, And Jury Demand.**

The Parties request that a trial of this matter commence in June 2021.  The Parties anticipate that approximately two to three weeks will be needed to conduct a full trial, and both Parties have demanded a jury trial.

H.      **Consent To Trial Before Magistrate Judge.**

The Parties do not consent to a trial before a United States Magistrate Judge pursuant to 28 U.S.C.A. § 636(c), and request that a trial be conducted before a United States District Judge.

I.      **Status And Prospects Of Settlement Negotiations.**

The Parties have not engaged in any settlement discussions or negotiations and agree that there is little prospect of settlement at this time.

J.      **Form And Timing Of Alternative Dispute Resolution.**

Should the Court order the Parties to engage in alternative dispute resolution, the Parties request that a mediation be conducted at the close of discovery.

K.      **Other Relevant Matters.**

The Parties do not wish to raise any additional matters with the Court at this time, but reserve the right to do so in the future.

Dated: October 5, 2020            Respectfully submitted,

                                               **BREWER, ATTORNEYS & COUNSELORS**

                                       By: */s/ Michael J. Collins*
                                               Michael J. Collins
                                               State Bar No. 00785493
                                               mjc@brewerattorneys.com
                                               Alessandra P. Allegretto
                                               State Bar No. 24109575
                                               apa@brewerattorneys.com
                                               1717 Main Street, Suite 5900
                                               Dallas, Texas 75201
                                               Telephone: (214) 653-4000
                                               Facsimile: (214) 653-1015

                                               **ATTORNEYS FOR PLAINTIFF THE NATIONAL RIFLE ASSOCIATION OF AMERICA, AND THIRD-PARTY DEFENDANT WAYNE LAPIERRE**

*/s/ Brian E. Mason*
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR DEFENDANTS ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, JESSE GREENBERG, WILLIAM WINKLER, AND MELANIE MONTGOMERY**

## CERTIFICATE OF CONFERENCE

I hereby certify that on September 29, 2020, counsel for Plaintiffs conferred with counsel for Defendants via telephone concerning the merits of this Joint Status Report.

s/ <i>Michael J. Collins</i><br>
Michael J. Collins

## CERTIFICATE OF SERVICE

I hereby certify that on Monday, October 5, 2020, a true and correct copy of the foregoing document was served upon counsel of record in accordance with the Federal Rules of Civil Procedure.

/s/ *Michael J. Collins*
Michael J. Collins