**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § | |
| | § | |
| | § | |
| **Plaintiff and** | § | |
| **Counterclaim-Defendant,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **WAYNE LAPIERRE, and** | § | |
| **THE NRA FOUNDATION, INC.,** | § | |
| | § | |
| **Third-Party Defendants,** | § | **Civil Action No. 3:19-cv-02074-G** |
| | § | |
| **v.** | § | |
| | § | |
| **ACKERMAN MCQUEEN, INC.,** | § | |
| | § | |
| **Defendant,** | § | |
| **Counterclaim-Plaintiff, and** | § | |
| **Third-Party Plaintiff,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **MERCURY GROUP, INC., HENRY** | § | |
| **MARTIN, WILLIAM WINKLER,** | § | |
| **MELANIE MONTGOMERY, and JESSE** | § | |
| **GREENBERG,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OF LAW IN SUPPORT OF WAYNE LAPIERRE'S**
**MOTION TO DISMISS SECOND AMENDED THIRD-PARTY COMPLAINT**

**CORRELL LAW GROUP**
P. Kent Correll (NYS Bar No. 1809219)
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: (212) 475-3070

*Attorneys for Third-Party*
*Defendant Wayne LaPierre*

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ...................................................................................1

II. STATEMENT OF RELEVANT FACTS ....................................................................3

III. LEGAL STANDARD ...............................................................................................6

IV. ARGUMENT .............................................................................................................7

     A.    Ackerman Fails to State a Claim for Defamation or Business Disparagement ...........................................................................................7

          1.    Ackerman's Defamation Claim Is Barred by the Texas Defamation Mitigation Act. ....................................................................7

          2.    Ackerman Fails to Allege a False Statement of Fact by LaPierre. ............8

          3.    Ackerman Fails to Adequately Allege Actual Malice. ...........................12

          4.    Pleading Deficiencies Preclude Ackerman's "Business Disparagement" Claim. ..................................................................13

     B.    Ackerman Fails to State a Claim for Tortious Interference ...................13

     C.    Ackerman Fails to State a Claim for Fraud ...........................................15

     D.    Ackerman Fails to State a Claim for Civil Conspiracy............................18

          1.    Ackerman's Conspiracy Theory Is Legally Impossible under the Intra-Corporate Conspiracy Doctrine. ..................................................18

          2.    Ackerman's Conspiracy Theory Fails with the Unraveling of its Underlying Torts. ...........................................................................20

     E.    Counts Two and Three Are Subject to Dismissal Pursuant to the Economic Loss Rule .................................................................................20

     F.    Ackerman's Claims Against LaPierre Are Barred under Fed. R. Civ. P. 14.........22

V. CONCLUSION ...........................................................................................................24

# **TABLE OF AUTHORITIES**

**Cases**                                                                                              **Page(s)**

*AAB Logistics, Inc. v. Forward Air, Inc.,*
    No. 3:15-CV-3840-G, 2016 WL 8672773 (N.D. Tex. Nov. 18, 2016)......................18

*Abacus Fed. Sav. Bank v. Lim,*
    905 N.Y.S.2d 585 (1st Dep't 2010)....……………………………………………...18

*Al Rushaid v. Nat'l Oilwell Varco, Inc.,*
    No. CIV.A. H-11-3390, 2012 WL 1981990 (S.D. Tex. June 1, 2012)…………….…..6

*Allied Co. of Wiregrass, Inc. v. City of Dothan,*
    191 So. 3d 804 (Ala. Civ. App. 2015)....………………………………………15

*Almy v. Grisham,*
    273 Va. 68 (2007)…………………………………………………………………….20

*Arpaio v. Cottle,*
    404 F. Supp. 3d 80 (D.D.C. 2019)…....………………………………………………12

*ASARCO LLC v. Americas Min. Corp.,*
    382 B.R. 49 (S.D. Tex. 2007), on reconsideration in part sub nom.
    *ASARCO LLC v. Americas Mining Corp.,* 396 B.R. 278 (S.D. Tex. 2008)...……………19

*Ashco Int'l Inc. v. Westmore Shopping Ctr. Assocs.,*
    42 Va. Cir. 427, 1997 WL 1070624 (Va. Cir. Ct. June 19, 1997)…………………………14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)……………………………………………………………………7

*Aubrey v. D Mag. Partners, L.P.,*
    No. 3:19-CV-0056-B, 2020 WL 1479024 (N.D. Tex. Mar. 26, 2020)..………………..8

*Baines v. Masiello,*
    288 F.Supp.2d 376 (W.D.N.Y. 2003)...………………………………………………19

*Batton v. Mashburn,*
    107 F. Supp. 3d 1191(W.D. Okla. 2015)...……………………………………………15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)……………………………………………………………………7

*Berman v. Lab'y Corp. of Am.,*
    268 P.3d 68, 2011 OK 106………………………………………………………..9

*Bowman v. State Bank of Keysville*,
    331 S.E.2d 797 (1985)....……………………………………………………………19

*Broich v. Inc. Vill. of Southampton*,
    650 F. Supp.2d 234 (E.D.N.Y. 2009)…………………………………………………19

*Brueggemeyer v. Am. Broadcasting Co.*,
    684 F. Supp. 452 (N.D. Tex. 1988)……………………………………………………..12

*Buschi v. Kirven*,
    775 F.2d 1240 (4th Cir.1985)....……………………………………………………………19

*Callum v. CVS Health Corporation*,
    137 F. Supp. 3d 817 (D.S.C. 2015)……………………………………………………15

*Cambridge Strategies, LLC v. Cook*,
    3:10-CV-2167-L, 2012 WL 176587 (N.D. Tex. Jan. 23, 2012)....……………………22

*Cent. Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*,
    848 S.W.2d 232 (Tex. App. 1992)……………………………………………………15

*CGB Occupational Therapy, Inc. v. RHA Health Services Inc.*,
    357 F.3d 375 (3d Cir. 2004)………………………………………………………...15

*Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*,
    249 Va. 39 (1995)………………………………………………………………18, 20

*Dallas Morning News, Inc. v. Tatum*,
    554 S.W.3d 614 (Tex. 2018)……………………………………………………………8

*Dell'Aquila v. LaPierre*,
    491 F.Supp.3d 320 (M.D. Tenn. 2020)....……………………………………………16

*Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*,
    299 S.W.3d 374 (Tex. App. 2009)……………………………………………………17

*Filak v. George*,
    267 Va. 612, 594 S.E.2d 610 (2004)……………………………………………………20

*Fojtik v. First National Bank of Beeville*,
    752 S.W.2d 669 (Tex.App.-Corpus Christi 1988, writ denied)……………………19

*Four Bros. Boat Works v. Tesoro Petroleum Companies, Inc.*,
    217 S.W.3d 653 (Tex. App. 2006)……………………………………………………20

*Gertz v. Robert Welch*,
    418 U.S. 323 (1974)...………………………………………………………………12

*Glass v. Glass*,
    228 Va. 39 (1984)…………………………………………………………………18, 20

*Haigh v. Matsushita Elec. Corp. of Am.*,
    676 F. Supp. 1332 (E.D. Va. 1987)...……………………………………………………19

*Holloway v. Skinner*,
    898 S.W.2d 793 (Tex. 1995)…………………………………………………………..14

*Hurlbut v. Gulf Atlantic Life Ins. Co.*,
    749 S.W.2d 762, 766–67 (Tex. 1987)……………………………………………………13

*Jackson v. Dole Fresh Fruit Co.*,
    921 F. Supp. 454 (S.D. Tex. 1996)…………………………………………………………15

*Jankovic v. Int'l Crisis Grp.*,
    822 F.3d 576 (D.C. Cir. 2016)……………………………………………………...12

*Jenevein v. Friedman*,
    114 S.W.3d 743 (Tex. App. 2003)...…………………………………………………9

*Jim Walter Homes, Inc. v. Reed*,
    711 S.W.2d 617 (Tex. 1986)…………………………………………………………..21

*John C. Holland Enterprises, Inc. v. J.P. Mascaro & Sons, Inc.*,
    653 F. Supp. 1242 (E.D.Va.1987), *aff'd*, 829 F.2d 1120 (4th Cir. 1987)……………..19

*Johnson v. Phillips*,
    526 S.W.3d 529 (Tex. App. 2017)……………………………………………………10

*Kartiganer Assocs., P.C. v. Town of New Windsor*,
    485 N.Y.S.2d 782 (1985)...…………………………………………………………15

*Kelly v. Diocese of Corpus Christi*,
    832 S.W.2d 88 (Tex. App. 1992), *writ dismissed w.o.j.* (Oct. 14, 1992) ..……………11

*Klein v. Walker*,
    No. 1:14-CV-00509-RC-ZJH, 2016 WL 9242015 (E.D. Tex. June 10, 2016),
    *report and recommendation adopted*, No. 1:14-CV-00509-RC, 2016 WL 3995731
    (E.D. Tex. July 25, 2016)…………………………………………………………8

*Le Metier Beauty Investment Partners LLC v. Metier Tribeca, LLC*,
    2015 WL 7078641 (S.D.N.Y. Nov. 12, 2015)…………………………………...24

*Lyrick Studios, Inc. v. Warner Elektra Atl. Corp.*,
No. 4:03CV487, 2005 WL 8161039 (E.D. Tex. Sept. 23, 2005)………………………20

*McFarlane v. Sheridan Square Press, Inc.*,
91 F.3d 1501 (D.C. Cir. 1996)………………………………………………………….. 12

*Michel v. NYP Holdings*, Inc.,
816 F.3d 686 (11th Cir. 2016)……………………………………………………...13

*Michelson v. Exxon Research and Engineering Co.*,
808 F.2d 1005 (3d Cir. 1987)...…………………………………………………………14

*Mid-Am. Mortg., Inc. v. United Sec. Fin. Corp.*,
No. 3:18-CV-2806-G, 2019 WL 3068005 (N.D. Tex. July 12, 2019)…………………..22

*Milkovich v. Lorain Journal Co*.,
497 U.S. 1 (1990)………………………………………………………………………..10

*Mirage Ent., Inc. v. FEG Entretenimientos S.A.*,
326 F. Supp.3d 26 (S.D.N.Y. 2018)…………………………………………………… 8

*National Rifle Association of America v. Ackerman McQueen, Inc.*,
2020 WL 5526548 (N.D. Tex. Sept. 14, 2020)…………………………………………17

*New York City Transit Auth. v. Morris J. Eisen, P.C.*,
276 A.D.2d 78, 715 N.Y.S.2d 232 (1st Dep't 2000)……………………………………16

*Newsom v. Brod*,
89 S.W.3d 732 (Tex. App. – Houston [1st Dist.] 2002, no pet.)………………………...13

*Orange Sols. Inc. v. Net Direct Sys. LLC*,
No. 3:10-CV-2054-G, 2011 WL 2489413 (N.D. Tex. June 20, 2011)…………………..20

*Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*,
771 F. Supp. 2d 680 (S.D. Tex. 2011)……………………………………………...22

*Perez v. Lopez*,
948 N.Y.S.2d 312 (2d Dep't 2012)……………………………………………………18

*Ritzmann v. Wkly. World News, Inc.*,
614 F. Supp. 1336 (N.D. Tex. 1985)...…………………………………………………7

*Rodriguez v. Shan Namkeen, Inc.*,
No. 3:15-cv-3370-BK, 2017 WL 76929 (N.D. Tex. Jan. 9, 2017)………………….6

*Sagebrush Sols., LLC v. David-James, LLC*,
    No. 3:14-CV-2701-G, 2015 WL 1011789 (N.D. Tex. Mar. 9, 2015)..........................21

*Schimmel v. McGregor*,
    438 S.W.3d 847 (Tex. App. Houston 1st Dist. 2014)........................................15

*Seale v. Madison Cty.*,
    929 F. Supp. 2d 51 (N.D.N.Y. 2013)...................................................................19

*Seminole Masonry, LLC v. Hodges*,
    2019 WL 687918 (S.D. Fla. 2019)......................................................................15

*Shaw v. Merrick*,
    401 N.Y.S.2d 508 (1st Dep't 1978).................................................................15

*Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co.*,
    803 N.Y.S.2d 512 (2005)....................................................................................20

*Stathos v. Bowden*,
    728 F.2d 15 (1st Cir.1984) ...............................................................................19

*Superior Air Parts, Inc. v. Kubler*,
    No. 3:14-CV-3492-D, 2015 WL 567223 (N.D. Tex. Feb. 11, 2015).......................20

*Teel v. Deloitte & Touche LLP*,
    No. 3:15-CV-2593-G, 2015 WL 9478187 (N.D. Tex. Dec. 29, 2015).....................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..............................................................................................7

*Trotter v. Jack Anderson Enters., Inc.*,
    818 F.2d 431 (5th Cir. 1987).................................................................................12

*Tubbs v. Nicol*,
    675 F. App'x 437 (5th Cir. 2017)...........................................................................8

*Tyson v. Austin Eating Disorders Partners, LLC*,
    No. A-13-CA-180-SS, 2013 WL 3197641 (W.D. Tex. June 21, 2013).....................7

*Vesta Ins. Group, Inc.*,
    192 S.W.3d 759 (Tex. 2006)................................................................................14

*Wainwright v. Tyler*,
    253 So.3d 203, 52,083 (La. App. 2 Cir. 6/27/18)...............................................10

*Watt v. McKelvie*,
219 Va. 645 (1978)……………………………………………………………………9

*Walker Ins. Servs. v. Bottle Rock Power Corp.*,
108 S.W.3d 538, 554 (Tex. App. 2003)………………………………………………14

*Zarzana v. Ashley*,
218 S.W.3d 152 (Tex. App.—Houston [14th Dist.] 2007, pet. struck)…………………20

**Statutes**

Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a) (West)…………………………………………8

Tex. Civ. Prac. & Rem. Code Ann. §§ 73.051–062 (West)………………………………………8

Tex. Civ. Prac. & Rem. Code Ann. § 73.055(c) (West)…………………………………………..8

**Rules**

Fed. R. Civ. P. 9(b)………………………………………………………………………passim

Fed. R. Civ. P. 12(b)(6)……………………………………………………………………passim

Fed. R. Civ. P. 12(c)……………………………………………………………………………1, 6

Fed. R. Civ. P. 14………………………………………………………………………passim

Fed. R. Civ. P. 14(a)(1)………………………………………………………………………..1, 22

Pursuant to Fed. R. Civ. P. 9(b), 12(b)(6), 12(c) and 14(a)(1) Third-Party Defendant Wayne LaPierre ("LaPierre") files this brief in support of his motion to dismiss Ackerman McQueen, Inc.'s Second Amended Third-Party Complaint against Wayne LaPierre & The NRA Foundation, Inc. ("Third-Party Complaint" or "SATPC") as against him for: (1) failure to state the circumstances constituting fraud with particularity; and (2) failure to state a claim on which relief may be granted.

## I.

## **PRELIMINARY STATEMENT**

During the pendency of the NRA's bankruptcy, Defendant Ackerman McQueen, Inc. ("Ackerman")[1] sought to amend its third-party claims in order to plead additional bases for relief from non-debtor persons. The result is the SATPC, which alleges claims against the NRA's 501(c)(3) affiliate—and, for present purposes, claims against LaPierre—that are substantively and procedurally defective. These claims violate state statutes, federal rules, and common-sense doctrines that preclude transmuting contract damages into tort claims, contriving intra-party "bathtub" conspiracies, or accusing a counterparty of tortious interference with its own business arrangements. As set forth below, Counts One through Five of the SATCP fail.

*First*, Ackerman has not complied with the Texas Defamation Mitigation Act (the "DMA")—nor can it—so its defamation claim must be dismissed. Even if the DMA did not apply, Ackerman's failure to identify any misstatement of fact by LaPierre and its failure to plead actual malice are fatal to its claim. The same pleading defects preclude Ackerman's business disparagement claim.

---

[1] Defendant Ackerman and Defendant Mercury Group, Inc. ("Mercury" and together with Ackerman, "AMc") are collectively party to that certain Services Agreement dated April 30, 2017 (as amended, the "Services Agreement"), the contract which underlies this lawsuit. However, Ackerman—as distinguished from Mercury or AMc—is the sole styled plaintiff in the SATPC.

*Second*, Ackerman attempts to sue the NRA's CEO for tortious interference with the NRA's own contracts.  Courts in relevant jurisdictions consistently reject such claims as a matter of law, and this Court should do the same.

*Third*, Ackerman claims that LaPierre defrauded it by offering an assurance in October 2018 that the agency need no longer "deal with" outside counsel whom Ackerman executives personally disliked.  Ackerman claims that it would not have complied with its contractual record-inspection obligations if LaPierre had clarified that the NRA would continue to retain its outside counsel, or had disclosed that one of counsel's former employees had taken a job with the forensic accounting firm conducting the document review. These allegations do not plausibly set forth elements of fraud under even the most basic pleading standard, let alone the heightened standard of Federal Rule of Civil Procedure 9(b).

*Fourth*, Ackerman alleges that LaPierre conspired with other NRA executives, the NRA's outside counsel, and the NRA's forensic accounting firm (and one of its employees) to exercise a lawful contractual record-inspection and, ultimately, limit or cease business arrangements with AMc.  Even if scrutinizing the affairs or cutting the budget of Ackerman constituted the sort of unlawful act by NRA executives that could give rise to an actionable civil conspiracy (it does not), Ackerman's claim would still be barred by the intra-party conspiracy doctrine.

*Fifth*, to the extent that Ackerman's claims are premised on damages consisting of "the loss of the Services Agreement[] [and] the loss of the Third Party NRA Contracts,"[2] such claims are barred by the economic loss rule—which prevents Ackerman from transmuting breach-of-contract claims against its former client into tort claims against the client's CEO.

---

[2] *See, e.g.*, SATPC ¶¶  159, 161-165, 170.

*Sixth*, even if Ackerman's claims against LaPierre were substantively sufficient, they would be procedurally barred by Fed. R. Civ. P. 14, which does not countenance third-party claims by a defendant in this situation.

These pleading deficiencies cut to the core of the SATPC.  No amendment can salvage Ackerman's claims.  The Court should dismiss Counts One, Two, Three, Four and Five of the SATPC with prejudice.

## II.

## STATEMENT OF RELEVANT FACTS

Ackerman was the NRA's largest vendor, providing a suite of services which included managing certain digital assets, speechwriting, logistics support for events, event planning, public relations support, advertising and provision of an NRA branded "TV" platform owned and managed by Ackerman.[3] According to the SATPC, Ackerman was paid by the NRA for its work pursuant to budgets which were agreed upon annually and prospective project-based budgets.[4] Ackerman contends that NRA Executive Vice President LaPierre and former NRA CFO Wilson "Woody" Phillips controlled this process.[5]

The business arrangement between Ackerman and the NRA was governed by iterations of a "Services Agreement", the most recent of which was executed in 2017 and amended in 2018.[6]  Ackerman contends that, as part of its work for the NRA in connection with the digital broadcast network NRATV, the 2018 Amendment to the Services Agreement "obligated the

---

[3] SATPC ¶¶ 13-19.

[4] SATPC ¶ 17.

[5] SATPC ¶ 17.

[6] SATPC ¶ 19.  Although Ackerman refers to the Services Agreement in the SATPC, it did not attach a copy of the agreement to its pleading.  For convenience of reference, LaPierre submits a true and correct copy of the Services Agreement (and Amendment) herewith.  *See* Appendix (Declaration of P. Kent Correll, Esq. dated May 24, 2021 (hereinafter cited as "Correll Decl.")), Ex. 1 (Services Agreement and Amendment).

NRA to pay [(i.e., backstop)] the 'compensation payable'" under "Third-Party Contracts" Ackerman executed with personalities who appeared on the NRATV platform.[7]

According to Ackerman, the NRA hired Brewer, Attorneys and Counselors ("BAC") as a result of legal issues the NRA was encountering with an insurance program known as "Carry Guard" and which involved Lockton Affinity, LLC.[8]  Ackerman alleges that at some point after June 1, 2018, in conjunction with the Lockton and Carry Guard legal matters, BAC requested information and documentation from Ackerman and requested to interview Ackerman personnel.[9]  Though Ackerman characterizes these demands as "non-contractual" and "impossible," Ackerman also claims that it "responded in a complete and timely manner."[10]

Ackerman alleges that, on October 11, 2018, in response to the inquiries being made by BAC, it held a meeting with LaPierre and other NRA officials in Dallas, Texas.[11]  Ackerman claims that, prior to the meeting, it decided that it "would resign the NRA's business entirely."[12] Ackerman further claims that, at the October 11, 2018 meeting, LaPierre repeatedly requested that Ackerman "stick with him" and represented that Ackerman would not be required to "deal with" BAC.[13] This was allegedly reiterated by LaPierre to Ackerman representatives on October 12, 2018, and in December 2018.[14]

Ackerman further alleges that, in reliance upon these representations from LaPierre, Ackerman refrained from terminating the Services Agreement.[15]  However, according to Ackerman, on December 21, 2018, it received a letter from BAC, requesting to examine "an

---

[7] SATPC ¶ 21.
[8] SATPC ¶ 56.
[9] SATPC ¶ 71.
[10] SATPC ¶¶ 71, 73.
[11] SATPC ¶ 76.
[12] SATPC ¶ 76.
[13] SATPC ¶ 79.
[14] SATPC ¶¶ 79, 81.
[15] SATPC ¶ 80.

even more extensive list of documents that somehow went to the heart of [Ackerman's] confidential business and billing practices[].["][16] Ackerman contends that it was thereafter advised by an unspecified representative of the NRA that it had retained a company called Forensic Risk Alliance ("FRA") to conduct this audit of Ackerman documents and information, which ultimately occurred in February 2019.[17] Ackerman alleges that it fully complied with the request for documents and complains that it was unaware that a senior director employed by FRA at the time of the February 2019 audit had previously been employed by BAC.[18] Ackerman alleges— without any factual basis—that LaPierre had an obligation to disclose this information,[19] and that if it had known this fact, it would not have cooperated with the FRA audit and, presumably, would have resigned from the NRA account in February rather than waiting until May, 2019.[20] Based on this premise, Ackerman illogically blames LaPierre for the loss of the Services Agreement—from which it resigned—and claims that the loss of the contract caused it substantial damages, loss of revenue and reputational harm.[21]

In addition, Ackerman alleges that, in March 2019, Lt. Col. Oliver North, an Ackerman employee, who was also, at the time, President of the NRA, wrote to BAC, asking for information concerning BAC's work and billing for the NRA.[22] After LaPierre directed North to stop interfering with the legal work being performed by BAC, given his conflicts as an employee

---

[16] SATPC ¶ 84.  Although Ackerman refers to the letter in the SATPC, it did not attach a copy of the letter to its pleading.  For convenience of reference, LaPierre submits a true and correct copy of the letter herewith.  *See* Correll Decl., Ex. 2 (Letter from S. Rogers, Esq. to J. Madrid, Esq. dated December 21, 2018).

[17] SATPC ¶¶ 88, 90.

[18] SATPC ¶ 88.

[19] SATPC ¶ 177.

[20] SATPC ¶ 177; *see also* Defendants' Amended Answer and Defendant/Counter-Plaintiff Ackerman McQueen's Amended Counterclaim and Third-Party Complaint (ECF No. 31), ¶ 176 (wherein Ackerman contends that it "terminated the Services Agreement pursuant to the 90-day notice provision on May 29, 2019").  Although Ackerman refers to the termination letter in the SATPC, Ackerman did not attach a copy of the letter to its pleading.  For convenience of reference, LaPierre submits a true and correct copy of the letter herewith.  *See* Correll Decl. Ex. 4 (Letter from R. McQueen to A. Arulanandam dated May 29, 2019).

[21] SATPC ¶¶ 172-177.

[22] SATPC ¶ 111.

of Ackerman, on April 24, 2019, North called LaPierre's Executive Assistant, purportedly to "notify LaPierre" about damaging information concerning LaPierre which North had in his possession.[23] According to Ackerman, on April 25, 2019, LaPierre sent a letter to the NRA Board, which characterized North's communication as an "extortion attempt."[24] Ackerman further alleges that, the following day, the Wall Street Journal published an article wherein, according to Ackerman, the publication acknowledged that it had reviewed a copy of LaPierre's letter to the NRA Board.[25] Finally, Ackerman alleges that in June 2019, the NRA ceased reimbursing Ackerman for the compensation it was to pay to the NRATV personalities.[26]

The instant litigation was commenced by the NRA on August 30, 2019, with the filing of its Complaint.  Ackerman initially impleaded LaPierre as a Third-Party Defendant on November 15, 2019.  It filed its Second Amended Third-Party Complaint against LaPierre on March 12, 2021.  In the SATPC, Ackerman asserts claims against LaPierre for (1) defamation; (2) tortious interference; (3) business disparagement; (4) fraud; and (5) civil conspiracy.[27]  LaPierre now moves to dismiss Ackerman's SATPC, for the reasons detailed herein.

## III.

## LEGAL STANDARD

A complaint is subject to dismissal when it fails to state a claim upon which relief can be granted.[28]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[23] SATPC ¶ 124.

[24] SATPC ¶¶ 132, 133.  Not surprisingly, in its SATPC, Ackerman chose to characterize the letter, but did not attach a copy.  So the Court may see the letter with its own eyes, LaPierre respectfully submits a copy of the letter.  *See* Correll Decl.,  Ex. 3 (Letter from LaPierre to NRA Board of Directors dated April 25, 2019).

[25] SATPC ¶ 133.

[26] SATPC ¶ 147.

[27] SATPC ¶¶ 155-186.

[28] *See* Fed. R. Civ. P. 12(b)(6) and 12(c); *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, No. CIV.A. H-11-3390, 2012 WL 1981990, at *3 (S.D. Tex. June 1, 2012) (motion under Rule 12(c) is subject to same standard as motion under Rule 12(b)(6)); *Rodriguez v. Shan Namkeen, Inc.*, No. 3:15-cv-3370-BK, 2017 WL 76929, at *1 (N.D. Tex. Jan. 9, 2017) (granting motion to dismiss first amended complaint after defendants answered original complaint).

6

accepted as true, to 'state a claim to relief that is plausible on its face.'"[29]  A complaint satisfies

this pleading standard when its factual allegations "raise a right to relief above the speculative

level."[30]  In determining whether a complaint states a plausible claim for relief, the reviewing

court may draw on its judicial experience and common sense.[31] For the purposes of the motion to

dismiss, legal conclusions and conclusory allegations merely reciting the elements of a claim are

not entitled to the presumption of truth.[32]  Rule 9(b) sets forth a heightened pleading which

applies to "all averments of fraud or mistake;" and requires that "the circumstances constituting

fraud … be stated with particularity."[33]

## IV.

## ARGUMENT

### A.    Ackerman Fails to State a Claim for Defamation or Business Disparagement

#### 1.    Ackerman's Defamation Claim Is Barred by the Texas Defamation Mitigation Act.

The SATPC alleges that "the basis of [Ackerman]'s claims and damages" lies in Texas;

pursuant to the most-significant-relationship test set forth in the Restatement (Second) of

Conflicts, Texas courts routinely apply Texas law to multistate defamation claims, like this one,

that involve injuries in Texas.[34]  Pursuant to the Texas Defamation Mitigation Act (the

---

[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[30] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

[31] *Id*. at 556.

[32] *Iqbal*, 556 U.S. at 677-79.

[33] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).

[34] *See, e.g.*, *Ritzmann v. Wkly. World News, Inc*., 614 F. Supp. 1336, 1338 (N.D. Tex. 1985) (applying Texas law because although the injurious conduct occurred in Florida, "principal injuries, if any, occurred in Texas" where the plaintiff was domiciled); *Tyson v. Austin Eating Disorders Partners, LLC*, No. A-13-CA-180-SS, 2013 WL 3197641, at *6 (W.D. Tex. June 21, 2013) (allegedly-defamatory email was sent from Missouri, but the parties' business "relationship . . . was focused on Texas" and plaintiff's reputation was damaged in Texas).

"DMA"),[35] a person "may maintain an action for defamation **only if**" multiple preconditions are satisfied, including the issuance of a "timely and sufficient request for correction, clarification, or retraction" within one year of the first date on which the defamatory statement is published.[36] Furthermore, if a plaintiff seeks exemplary damages for defamation (as Ackerman attempts here),[37] the DMA imposes an even-stricter deadline: the request for correction, clarification, or retraction must be made "not later than the 90th day after receiving knowledge of the publication."[38] Ackerman does not and cannot allege any effort to comply with the DMA, nor may it do so now—the limitation period for its defamation claim has expired.[39]

2.   **Ackerman Fails to Allege a False Statement of Fact by LaPierre.**

"[T]he threshold requirement" for defamation is "the publication of a false statement of fact to a third party [which is] . . . defamatory concerning the plaintiff."[40] The plaintiff must "specifically allege which 'published statement[s]' [the defendant] himself made that constitute defamation;"[41] allegations that rest on statements made by agents or associates of the defendant, not specifically imputable to the defendant, are inadequate.[42]

---

[35] Tex. Civ. Prac. & Rem. Code Ann. §§ 73.051–062.  The Fifth Circuit has held that claims which fail to comply with the DMA "fail[] as a matter of law."  *Tubbs v. Nicol*, 675 F. App'x 437, 439 (5th Cir. 2017).

[36] *See id.* (emphasis added). In particular, the request for clarification or retraction must occur "during the period of limitation" for defamation claims, which is one year commencing as of the first date the defamatory statement is published.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a) (setting forth one-year limitations period); *Aubrey v. D Mag. Partners, L.P.*, No. 3:19-CV-0056-B, 2020 WL 1479024, at *4 (N.D. Tex. Mar. 26, 2020) (limitation period begins to run on the first date of publication).

[37] *See* SATPC ¶ 160.

[38] *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.055(c) (West).

[39] Ackerman explicitly premises its defamation claim on purported "extortion" accusations first allegedly made in April 2019.  *See* SATPC ¶ 132.

[40] *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018).

[41] *See, e.g.*, *Klein v. Walker*, No. 1:14-CV-00509-RC-ZJH, 2016 WL 9242015, at *5 (E.D. Tex. June 10, 2016), *report and recommendation adopted*, No. 1:14-CV-00509-RC, 2016 WL 3995731 (E.D. Tex. July 25, 2016).

[42] *See, e.g.*, *Mirage Ent., Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 36 (S.D.N.Y. 2018) ("Counterclaimants fail to plead that Carey posted the Tweet within the scope of her authority as an officer of Mirage. . . . This pleading deficiency precludes holding Mirage liable for the Tweet. Accordingly, Mirage is dismissed from the defamation counterclaim.").

Count One of the SATPC purports to allege "defamation and defamation *per se*" on the ground that LaPierre "accuse[d] [Ackerman] of the criminal act of extortion."[43]  The SATPC identifies only one relevant "publication" plausibly attributable to LaPierre: a letter circulated privately to the NRA Board of Directors on April 25, 2019 (the "Board Letter"), which contains no allegation of any crime.[44]  The Board Letter recounts a telephone call from an Ackerman employee, Lt. Col. Oliver North ("North"), to an employee of the NRA, during which North warned that an "allegedly damaging letter" would be sent by Ackerman to the Board unless LaPierre resigned.[45] The Board Letter states that during the telephone call and thereafter, "others" informed LaPierre that, in addition to resigning, he would need to withdraw the NRA's then-pending lawsuit against Ackerman, or be smeared.[46]  The SATPC does not dispute that North placed the call,[47] nor does the SATPC dispute that LaPierre was pressured to resign and withdraw the NRA's lawsuit against Ackerman in the wake of the call.  Instead, the SATPC: (i) characterizes the call as an attempt by North to "notify LaPierre about potentially damaging but true information" which was "coming down the pike," rather than threaten to release such information;[48] (ii) asserts that North was not asking LaPierre to resign;[49] and (iii) insists that

---

[43] SATPC ¶ 156.

[44] *See* SATPC *¶* 132; and Correll Decl., Ex. 3. Although the SATPC identifies other public-facing communications concerning Ackerman's perpetration of "extortion" or a "coup," it does not allege, and Ackerman cannot allege, that LaPierre authored, signed, or otherwise "published" such communications.  Nor does Ackerman put forth any other theory under which these communications are imputable to LaPierre.  *See* SATPC *¶* 133 (accusing the NRA's outside counsel, not LaPierre, of providing LaPierre's letter to the *Wall Street Journal* and issuing accompanying commentary); ¶ 136 (accusing a nonparty Board member, Marion Hammer, of "parroting" defamatory statements).  The SATPC alleges that a separate lawsuit in Virginia contains a "false" extortion narrative (it does not), but allegations in the Virginia lawsuit are privileged and non-actionable as defamation.  *See, e.g.*, *Jenevein v. Friedman*, 114 S.W.3d 743, 746 (Tex. App. 2003); *Watt v. McKelvie*, 219 Va. 645, 650 (1978); *Berman v. Lab'y Corp. of Am.*, 268 P.3d 68, 2011 OK 106, ¶ 5.

[45] *See* Correll Decl., Ex. 3. (Board Letter) at 1.

[46] *Id.* at 2.

[47] Indeed, the SATPC concedes that the call occurred, but presents a different interpretation of it—insisting that North wished to "notify LaPierre about potentially damaging but true information" that was "coming down the pike," but was not issuing a threat.

[48] *See* SATPC ¶¶ 124-125.

[49] *See* SATPC ¶ 130.

irrespective of what he said or did, North was not acting on behalf of his employer, Ackerman.[50] All of these factual premises are disputed in this litigation—but even assuming for this motion that all of them resolved in Ackerman's favor, the defamation claim still fails.  This is because Ackerman's central allegation that the Board Letter "falsely accused . . . Ackerman of engaging in an extortion attempt" facially contradicts the contents of the letter.[51]

The SATPC alleges that the Board Letter sets forth a false "accusation of commission of a criminal act,"[52] but does not cite or quote the document—because it contains no mention of any crime.  The Board Letter does contain a single usage of a single variant of the term "extortion," but that usage is subjective, impressionistic, and plainly non-actionable:  "Yesterday evening, I was forced to confront one of those defining choices—styled, *in the parlance of extortionists*, as an offer I couldn't refuse. I refused it."[53]  LaPierre's assessment of the "style" and "parlance" of North's telephone call does not constitute an assertion of fact, much less an accusation of a crime.[54]

Although the Board Letter also states that, according to the NRA employee who received the call from North, he claimed to be calling "on behalf of his employer,"[55] it attributes no discrete admission to Ackerman in this regard. Instead, the Board Letter explains the basis for LaPierre's conclusion that North was acting on Ackerman's behalf:

---

[50] *Id.*

[51] *See* Correll Decl., Ex. 3.

[52] SATPC ¶ 157.

[53] *See* Correll Decl., Ex. 3. (Board Letter) at 1 (emphasis added).  The Board Letter separately uses the term "exhortation," which denotes no crime.

[54] Under the First Amendment, a "subjective assertion" cannot give rise to a defamation claim.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21–22 (1990).  Whether a statement qualifies as a protected subjective assertion or an actionable averment of fact "is a question of law to be decided by the court."  *Johnson v. Phillips*, 526 S.W.3d 529, 535 (Tex. App. 2017).  In connection with hostile negotiations and other facts resembling those here, courts have repeatedly held as a matter of law that terms such as "blackmail," "extortion," and "shakedown" constitute expressions of opinion which are similar to "rhetorical hyperbole," and not actionable as defamation. *Wainwright v. Tyler*, 253 So.3d 203, 221, 52,083 (La. App. 2 Cir. 6/27/18) (collecting cases).

[55] *See* Correll Decl., Ex. 3. (Board Letter) at 1.

10

Col. North stated that the purpose of the call was to relay the contents of a letter drafted by [Ackerman]. According to Col. North, he had been advised by Dan Boren—a member of our Board and an employee of [Ackerman's] client—that unless I resigned as the Executive Vice President of the Association, Ackerman would transmit this allegedly damaging letter to the entire NRA Board. According to Col. North, the letter was "bad" for me, two other members of my executive team, and the Association.[56]

Importantly, *the SATPC does not allege that any of the foregoing statements contained in the Board Letter are false*. The SATPC denies that North was acting "on [Ackerman]'s behalf,"[57] but not that North "stated that the purpose of the call was to relay the contents of a letter drafted by [Ackerman]." The SATPC insists that North "was not asking LaPierre to resign," but does not deny that North said he had been "advised by Dan Boren" that Ackerman would transmit a damaging letter if LaPierre failed to resign.  Thus, the recipients of the Board Letter were provided with the same information that underlay LaPierre's information that North was acting on behalf of his employer.

Furthermore, even if the Court were to determine that LaPierre's characterization of North as acting on "behalf" of Ackerman constituted an actionable averment of fact, it would not constitute an accusation of a crime or otherwise rise to the level of defamation *per se*.  Instead, a statement that North placed the call on "behalf" of Ackerman would give rise to a defamation claim only if Ackerman could plead "special damages"[58] as a result—*e.g.*, that other clients severed their relationships upon learning that North allegedly acted on Ackerman's "behalf" when he telephoned the NRA employee.  The SATPC does not, and cannot, meet this standard.

---

[56] *See* Correll Decl., Ex. 3.

[57] *See* SATPC ¶ 125.

[58] *See, e.g., Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 91 (Tex. App. 1992), *writ dismissed w.o.j.* (Oct. 14, 1992).

3.      **Ackerman Fails to Adequately Allege Actual Malice.**

Ackerman alleges that the NRA, one of the most famous advocacy and activism organizations in American life, "completely outsource[d] its public relations work" to Ackerman.[59] The SATPC boasts that Ackerman "crafted the NRA message and burnished its image as the most visible and powerful Second Amendment advocacy group in the United States."[60] Ackerman also admits that its work for the NRA involved numerous forms of media outreach and involvement, including media planning and placement and the operation of NRATV.[61] It alleges that it orchestrated NRA commentary concerning the Sandy Hook shooting and developed the NRA's "Stand and Fight" messaging.[62]

Against this backdrop, Ackerman is at minimum a limited-purpose public figure.[63] Ackerman, therefore, must plead particularized facts[64] plausibly establishing that LaPierre acted with "actual malice," meaning actual subjective knowledge that each allegedly defamatory statement was false or made with reckless disregard of its falsity.[65]  This is a "daunting" standard, which is rarely met[66]—and is certainly not met here.  Ackerman fails to allege any facts

---

[59] SATPC ¶ 13.

[60] *Id.*

[61] ECF No. 327 at ¶ 19.

[62] SATPC ¶¶ 14-15.

[63] In the Fifth Circuit, a plaintiff who alleges defamation relating to its own nontrivial participation in a public controversy is a limited-purpose public figure and must plead actual malice.  *See Trotter v. Jack Anderson Enters., Inc*., 818 F.2d 431, 433-34 (5th Cir. 1987) (citing *Tavoulareas v. Piro,* 817 F.2d 762, 772 (D.C. Cir. 1987)); *see also  Brueggemeyer v. Am. Broadcasting Co*., 684 F. Supp. 452, 458 (N.D. Tex. 1988) (businessman was limited-purpose public figure because he "voluntarily engaged in a course of conduct that was bound to invite attention and comment'" (quoting *Rosanova v. Playboy Ents., Inc*., 580 F.2d 859, 861 (5th Cir. 1978)).

[64] Discrete facts are required, and mere recitations of "labels or conclusions" are insufficient.  *See, e.g.*, *Arpaio v. Cottle*, 404 F. Supp. 3d 80, 84 (D.D.C. 2019) (allegations that an article's "factual assertions [were] carefully and maliciously calculated to damage and injure Plaintiff Arpaio both in the law enforcement community ... as well as with Republican establishment and donors," that "Defendants acted with actual malice insofar as they knew that the statements made against Plaintiff Arpaio were false and/or recklessly disregarded their falsity," that defendants' statements were "made with malice, place Plaintiff in a false light that would be offensive to a reasonable person" were formulaic recitations inadequate to sustain a defamation claim).

[65] *See Gertz v. Robert Welch*, 418 U.S. 323, 351 (1974).

[66] *Jankovic v. Int'l Crisis Grp*., 822 F.3d 576, 590 (D.C. Cir. 2016); *McFarlane v. Sheridan Square Press, Inc*., 91 F.3d 1501, 1515 (D.C. Cir. 1996) ("Few public figures have been able clearly and convincingly to prove

giving rise to a plausible inference that the Board Letter, or any other communication imputable to LaPierre, contains representations of fact which LaPierre knew or recklessly suspected were false.  Indeed, while leveling vague accusations that the Board Letter contains lies, the SATPC intentionally elides and avoids the specific contents of the letter because the statements therein are true.  Count One of the SATPC should be dismissed with prejudice. [67]

4.   **Pleading Deficiencies Preclude Ackerman's "Business Disparagement" Claim.**

Ackerman similarly purports to state a claim for "business disparagement," which is barred by Texas's one-year statute of limitations.[68]  Even if the claim were timely, it would require the same core elements absent from the defamation claim, including a false statement by LaPierre and special damages.[69]  Moreover, as discussed *infra* in Section IV, E, damages consisting of "the loss of the Services Agreement [and] the loss of the Third Party NRA Contracts"[70] are barred by the economic loss rule.

B.   **Ackerman Fails to State a Claim for Tortious Interference**

Count Two of the SATPC, which alleges tortious interference with a contract, fails as a matter of law because LaPierre, the NRA's Executive Vice President, cannot tortiously interfere with contracts to which the NRA is a party.  It is axiomatic that a party cannot tortiously interfere with its own contract, because the tort of "tortious interference" requires an interfering third

---

that the scurrilous things said about them were published by someone with 'serious doubts as to the truth of his publication.'" (*quoting St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).

    [67] Failure to plead actual malice mandates dismissal with prejudice. *See, e.g., Michel v. NYP Holdings*, Inc., 816 F.3d 686, 691 (11th Cir. 2016).

    [68] *See Hurlbut v. Gulf Atlantic Life Ins. Co*., 749 S.W.2d 762, 766–67 (Tex. 1987); *Newsom v. Brod*, 89 S.W.3d 732, 735 (Tex. App. – Houston [1st Dist.] 2002, no pet.).

    [69] *Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593-G, 2015 WL 9478187, at *3 (N.D. Tex. Dec. 29, 2015) (granting motion to dismiss claim for business disparagement for failure to state a claim).

    [70] *See* SATPC ¶ 170.

party.[71]  Thus, this prohibition also applied to contracts entered on the NRA's behalf, such as

Ackerman's Third Party Contracts.[72]  LaPierre was, unquestionably, an agent of the NRA at all

relevant times – Ackerman does not dispute this fact – and, because he was a senior executive

officer of the NRA, the scope of that authority was broad indeed.  It is black letter law that an

agent, when acting within the scope of his authority, is actually acting on behalf of his principal,

and cannot be held liable for interfering with a contract or relationship between the principal and

a third party.[73]

Texas courts have repeatedly recognized the problematic nature of attempting to hold an

agent *individually* responsible in tort for the principal's conduct in breaching a contract.  As

pointed out by the U.S. District Court for the Southern District of Texas:

> The rule that a party cannot tortiously interfere with his own contract is of
> particular importance when the contracting party is a corporation and the third
> party accused of interfering with the contract is an agent of the corporation. **A
> corporation can act only through its agents, and acts of the agent are
> generally deemed to be acts of the corporation. To hold a corporate agent
> liable every time he recommends or implements a breach of contract by his**

---

[71] *Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 761 (Tex. 2006) (quoting *Morgan Stanley & Co., Inc. v. Tex. Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997) ("'a [defendant] must be a stranger to a contract to tortiously interfere with it.'") *see also Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995) (holding that a party cannot tortiously interfere with its own contract, and further observing: "[h]ere, the act of [tortious] interference was allegedly committed by an individual who was also the lawful representative of the contracting party. Such a case tests the limits of the general rule barring tortious interference claims when the inducing and the breaching party are one and the same").

[72] The NRA cannot interfere with a contract entered by Ackerman, on its behalf, since " [a]n agent is not a party to, nor individually liable on, a contract he enters into on behalf of his principal—**it is the principal who enters into the contract**." *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 554 (Tex. App. 2003) (emphasis added); *see also Ashco Int'l Inc. v. Westmore Shopping Ctr. Assocs.*, 42 Va. Cir. 427, 1997 WL 1070624, *5 (Va. Cir. Ct. June 19, 1997) ("A single entity, accordingly, cannot conspire with itself or intentionally interfere with its own contract. . . . A principal and an agent are not separate persons for purposes of a conspiracy or tortious interference action and, likewise, cannot conspire with each other or interfere with their own contractual relationship.").

[73] *See, e.g., Michelson v. Exxon Research and Engineering Co.*, 808 F.2d 1005, 1007–08, (3d Cir. 1987) (if the employee of the corporation is authorized by the corporation to interfere with the contract between the plaintiff and the corporation, then there can be no tort liability for the employee individually, because the employee's acts are those of the corporation).

**corporate employer would effectively hold the corporation liable for interfering with its own contract.**[74]

This rule has been firmly established for decades not only under the Texas law, but also across the country.[75]

In order to avoid dismissal for failure to state a claim, Ackerman had to allege *plausibly* that LaPierre acted outside the scope of his broad agency authority,[76] and also that he actively acted *against* the interests of the NRA – and not just slightly so, but in a fashion "so contrary to the corporation's best interests that his actions could *only* have been motivated by personal interests."[77] Ackerman's pleadings fall far short of demonstrating to this Court that such a standard can plausibly be met here.

## C.    Ackerman Fails to State a Claim for Fraud

In order to satisfy Rule 9(b), a party claiming fraud must:  (1) specify the statements that the claimant contends were fraudulent; (2) identify the speaker; (3) state where and when the

---

[74] *Jackson v. Dole Fresh Fruit Co.*, 921 F. Supp. 454, 458 (S.D. Tex. 1996)(emphasis added).  *See also, e.g., Cent. Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*, 848 S.W.2d 232, 241–42 (Tex. App. 1992) ("Where a financial interest privilege or principal agent relationship exists, there can be no tortious interference with a contract as a matter of law."); *Schimmel v. McGregor*, 438 S.W.3d 847 (Tex. App. Houston 1st Dist. 2014) (the agent did not act in a fashion "so contrary to the corporation's best interests" that his actions could only have been motivated by personal interests).

[75] *See Kartiganer Assocs., P.C. v. Town of New Windsor*, 485 N.Y.S.2d 782, 783–84 (1985) ("Liability may not be imposed upon Crotty or Duggan & Crotty insofar as the record reveals that they were acting at all relevant times as Town Attorney, and thus, as an agent of the town. An agent cannot be held liable for inducing his principal to breach a contract with a third person, at least where he is acting on behalf of his principal and within the scope of his authority.") (citing *Murtha v. Yonkers Child Care Assn.*, 45 N.Y.2d 913, 915 (1978); *Shaw v. Merrick*, 401 N.Y.S.2d 508, 509 (1st Dep't 1978); *Seminole Masonry, LLC v. Hodges*, 2019 WL 687918 (S.D. Fla. 2019) (dismissing a tortious interference claim against the CEO of the party to the relevant contract, and further noting that allegations that the CEO acted only in his own interests and actively against his employer's interests were "implausible"); *Batton v. Mashburn*, 107 F. Supp. 3d 1191, (W.D. Okla. 2015) (Because Defendant was a party, in his representative capacity, to the business relationship between Plaintiff and the Office of the District Attorney, as a matter of law, he could not be liable for wrongfully interfering with that relationship); *See Callum v. CVS Health Corporation*, 137 F. Supp. 3d 817 (D.S.C. 2015) (store employees were not liable for interfering with relationship between store and plaintiff); *Allied Co. of Wiregrass, Inc. v. City of Dothan*, 191 So. 3d 804 (Ala. Civ. App. 2015) (city employees could not interfere with the city's contract).

[76] *See, e.g., CGB Occupational Therapy, Inc. v. RHA Health Services Inc.*, 357 F.3d 375 (3d Cir. 2004) (the simple fact that an agent exceeded his authority does not make him liable, provided he still acted in the principal's interests).

[77] *Schimmel*, 438 S.W.3d at 861 (quoting *Holloway*, 898 S.W.2d at 796) (emphasis added).

statements were made; and (4) explain why the statements were fraudulent.[78] "[A] cause of action for fraud cannot accrue until every element of the claim, including injury, can truthfully be alleged."[79]

Count Four of the SATPC asserts a claim of fraud against LaPierre.[80] The basis of the claim is that LaPierre falsely represented to Ackerman executives that Ackerman would no longer have to deal with BAC, and that, in reliance on that representation, Ackerman did not then terminate its business relationship with the NRA. Ackerman claims that the NRA continued to use BAC for legal work and public relations work and a BAC attorney later wrote a letter to an Ackerman attorney requesting documents.[81] Ackerman also complains that it was unaware that a senior director employed by the NRA's audit firm (FRA) at the time of an audit in February 2019 had previously been employed by BAC.[82]

Ackerman's vague and conclusory allegations do not set forth the "who, what, when, where, and how" of the alleged fraud. For example, Ackerman alleges:

> Statements of fact made to [Ackerman] personnel by LaPierre on the dates specified hereinabove *and* those *made repeatedly throughout the duration of the parties' relationship, but particularly during the four (4) years leading up to the filing of this lawsuit*, concerning NRATV's performance analytics, commentators, and the Third Party NRA Contracts, were false, were known by LaPierre to be false, were made with intent to deceive [Ackerman] and to lure it into exposing itself to financial obligations, were relied upon by [Ackerman] to its detriment, and, as a result, [Ackerman] has suffered damages in excess of $40 million for which it now sues.[83]

Ackerman fails to satisfy Rule 9(b)'s heightened pleading standard. Ackerman does not specifically allege any fraudulent statements by LaPierre or that LaPierre was responsible for any

---

[78] *See Dell'Aquila v. LaPierre*, 491 F.Supp.3d 320 (M.D. Tenn. 2020) (applying Tennessee law).
[79] *See New York City Transit Auth. v. Morris J. Eisen, P.C.*, 276 A.D.2d 78, 85, 715 N.Y.S.2d 232, 237 (1st Dep't 2000).
[80] *See* SATPC at pages 61-63, ¶¶ 171-178.
[81] *See* SATPC ¶¶ 79, 80, 83, 84, 86, 87, 88, 173-178.
[82] SATPC ¶ 88.
[83] *See* SATPC ¶ 172. *See also* SATPC ¶¶ 173-178.

allegedly fraudulent statements made by the NRA or any other NRA executives.  Ackerman's allegation that it was told it would not have to "deal" with BAC going forward does not contain the requisite allegations of a present intentional deception, particularly given the fact that Ackerman could easily have checked the public record at any time to see whether BAC was still counsel of record in the Carry Guard litigation—the litigation that allegedly created the friction between Ackerman and BAC.  Ackerman, thus, could have declined to continue the relationship and ceased providing services to the NRA as it claims it did in May 2019, only seven months after the October 11, 2018 meeting.

Further, the allegation that LaPierre failed to inform Ackerman of the fact that a former BAC employee worked for FRA does not state a claim for fraud by omission.  "A failure to disclose does not constitute fraud unless there is a duty to disclose the information."[84]  Ackerman fails to plausibly allege that LaPierre was under any obligation to inform Ackerman that FRA employed a former BAC employee.

Accordingly, with respect to its fraud allegations against LaPierre, Ackerman has failed to satisfy Rule 9(b)'s heightened pleading standard. Therefore, Ackerman's fraud claim must be dismissed.[85]

---

[84] *Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*, 299 S.W.3d 374, 391 (Tex. App. 2009).

[85] *See National Rifle Association of America v. Ackerman McQueen, Inc.*, 2020 WL 5526548 (N.D. Tex., Sept. 14, 2020) (memorandum opinion) (granting in part and denying in part defendants' motion to dismiss certain NRA claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, including its fraud claim against defendant Mercury, stating:  "The court concludes that, as to Mercury, the NRA has failed to satisfy Rule 9(b)'s heightened pleading standard. "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." The NRA does not specifically allege that Mercury was responsible for any allegedly fraudulent statements made by Angus McQueen, Winkler, Montgomery, or any other AMc executives. The closest the NRA comes to alleging that Mercury engaged in fraud or conspiracy to commit fraud is the NRA's general allegation that "Mercury engaged in all the wrongful conduct detailed in this amended complaint." Accordingly, with respect to its allegations against Mercury, the NRA has failed to satisfy Rule 9(b)'s heightened pleading standard. Therefore, the NRA's claim for fraud and claim for conspiracy (insofar as that claim is premised on fraudulent conduct) against Mercury is dismissed.").

### D.      Ackerman Fails to State a Claim for Civil Conspiracy

Under Texas law, civil conspiracy requires: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.[86] Count Five of the SATPC fails as a matter of law, for two reasons:  first, Ackerman's lawsuit against LaPierre individually is barred by the Intra-Corporate Conspiracy Doctrine; and second, to the extent Ackerman's conspiracy theory is tied to the required underlying torts (specifically, tortious interference and fraud, as alleged in paragraphs 182 and 183 of the SATPC respectively), the conspiracy theory fails if the underlying torts that allegedly serve as its foundation are dismissed.

### 1.      Ackerman's Conspiracy Theory Is Legally Impossible under the Intra-Corporate Conspiracy Doctrine.

Under the laws of Virginia, New York, and Texas alike, it is legally impossible for an agent to "conspire" with its principal.  This axiom directly invalidates Ackerman's allegation of a conspiracy between "[t]he NRA … Powell, Brewer, the Brewer Firm, FRA, and Susan Dillon," Agents cannot conspire with their principals, because an act by an agent on the principal's behalf, legally, is an act of the principal.[87] As cleanly pointed out by the Virginia Supreme Court, "there must be two persons to comprise a conspiracy, and a corporation, like an individual,

---

[86] See AAB Logistics, Inc. v. Forward Air, Inc., No. 3:15-CV-3840-G, 2016 WL 8672773, at *7 (N.D. Tex. Nov. 18, 2016) (granted motion to dismiss for civil conspiracy claim for failure to allege meeting of the minds to jointly engage in wrongful conduct). Likewise, under VA law, the elements of a civil conspiracy are (1) A combination of two or more persons; (2) To accomplish, by some concerted action; (3) Some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means; and (4) Resultant damage caused by the defendant's acts committed in the furtherance of a plan or purpose of the conspiracy. *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.,* 249 Va. 39, 48 (1995); *Glass v. Glass*, 228 Va. 39, 47 (1984). Additionally, under NY law, the following elements are required: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; (4) resulting damage or injury. *See Abacus Fed. Sav. Bank v. Lim*, 905 N.Y.S.2d 585 (1st Dep't 2010); *Perez v. Lopez*, 948 N.Y.S.2d 312 (2d Dep't 2012).  An underlying tort is required in all three states.

[87] See discussion supra section 2 of the Argument.

cannot conspire with itself."[88] Because agents and principals constitute the same entity for conspiracy purposes, a conspiracy between an agent and its own principal is generally a legal impossibility.[89] This is an established general rule of civil conspiracy law and is known as the "intra-corporate conspiracy doctrine."[90] This doctrine is followed not only in Virginia, but also in New York, Texas, and across the country. For example, under New York law, it is well established that "officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other."[91] Texas courts have recognized the intra-corporate conspiracy doctrine as "black letter law."[92] As one court pointed out: "The intracorporate conspiracy doctrine states that a corporation cannot conspire with its own employees, directors, or agents. The rationale of this rule is that acts of the corporation's agents are deemed to be acts of the corporation itself."[93]

Thus, as a threshold issue, to state an actionable claim for conspiracy against LaPierre individually, Ackerman must *plausibly* be able to show that LaPierre acted wholly outside the

---

[88] *Bowman v. State Bank of Keysville,* 331 S.E.2d 797, 801 (1985) (citations omitted).

[89] *See John C. Holland Enterprises, Inc. v. J.P. Mascaro & Sons, Inc.*, 653 F. Supp. 1242, 1247 (E.D. Va.), aff'd, 829 F.2d 1120 (4th Cir. 1987).

[90] *See Haigh v. Matsushita Elec. Corp. of Am.*, 676 F. Supp. 1332, 1341 (E.D. Va. 1987); *John C. Holland Enterprises, Inc.,* 653 F.Supp. at 1248 ("Accordingly, the Court finds that Counts II, IV and VII of the complaint, which allege a conspiracy between the officers and directors of J.P. Mascaro & Sons, Inc., and the corporation itself, fail to state a cause of action under Virginia law, and are therefore DISMISSED"); *see also Stathos v. Bowden,* 728 F.2d 15, 20 (1st Cir.1984); *Buschi v. Kirven,* 775 F.2d 1240, 1251–53 (4th Cir.1985) (referencing the same legal principles).

[91] *Seale v. Madison Cty.*, 929 F. Supp. 2d 51, 72 (N.D.N.Y. 2013) (citing *Fitzgerald v. City of Troy, N.Y.*, No. 10–CV–451, 2012 WL 5986547, at *23 (N.D.N.Y. Nov. 28, 2012) (quoting *Jefferson v. Rose,* 869 F. Supp.2d 312, 317–18 (E.D.N.Y. 2012) (citations omitted)); *see also Baines v. Masiello,* 288 F. Supp.2d 376, 394–95 (W.D.N.Y. 2003) (holding that a conspiracy claim brought against "the Common Council, the Mayor, and the City Clerk" was barred by the intra-corporate conspiracy doctrine); *Broich v. Inc. Vill. of Southampton,* 650 F. Supp.2d 234, 247 (E.D.N.Y.2009) (holding that conspiracy claims against the Village Board trustees, mayor, and former and current chief of police are barred by the intra-corporate conspiracy doctrine).

[92] *ASARCO LLC v. Americas Min. Corp.,* 382 B.R. 49, 80–81 (S.D. Tex. 2007), *on reconsideration in part sub nom. ASARCO LLC v. Americas Mining Corp.,* 396 B.R. 278 (S.D. Tex. 2008) (citing Robin Miller, Annotation, *Construction and Application of "Intracorporate Conspiracy Doctrine" as Applied to Corporation and its Employees—State Cases,* 2 A.L.R. 6th 387 (2005)); *Fojtik v. First National Bank of Beeville*, 752 S.W.2d 669, 673 (Tex.App.-Corpus Christi 1988, writ denied).

[93] *See id.*

scope of his agency relationship and against the NRA's interests. The SATPC falls far short of this, instead alleging that LaPierre – as a duly authorized corporate officer of the NRA – joined a legally impossible conspiracy with the NRA and the NRA's own lawyer. The Ackerman conspiracy theory simply fails state a plausible claim and must therefore be dismissed.

2. **Ackerman's Conspiracy Theory Fails with the Unraveling of its Underlying Torts.**

It is axiomatic that a civil conspiracy "is not an independent cause of action but requires an underlying tort."[94] As discussed above, the underlying torts for Ackerman's conspiracy theory, tortious interference and fraud, must be dismissed for failure to state a claim. Accordingly, without an underlying tort to support it, Ackerman's conspiracy theory must also fail.[95]

E. **Counts Two and Three Are Subject to Dismissal Pursuant to the Economic Loss Rule**

"Under Texas law, tort claims are not cognizable when the injury suffered by the plaintiff is the 'economic loss' resulting from a breach of contract."[96]  "This is generally known as the economic loss rule."[97]  In order to determine whether the economic loss rule applies, "courts

---

[94] *Zarzana v. Ashley*, 218 S.W.3d 152, 159 (Tex. App.—Houston [14th Dist.] 2007, pet. struck); *see also Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co.,* 803 N.Y.S.2d 512, 513 (2005) (holding that "civil conspiracy is not recognized as an independent tort in [New York]"); *Almy v. Grisham*, 273 Va. 68, 81, (2007); *Commercial Bus. Sys., Inc.,* 249 Va. at 48 (stating that "[t]he foundation of a civil action of conspiracy [in Virginia] is the damage caused by the acts in furtherance of the conspiracy"); *Glass*, 228 Va. at 47.

[95] *See, e.g., Lyrick Studios, Inc. v. Warner Elektra Atl. Corp.,* No. 4:03CV487, 2005 WL 8161039, at *2 (E.D. Tex. Sept. 23, 2005) ("Under Texas law, Big Idea cannot tortiously interfere with its own contract or business relations . . .[i]t follows that a civil conspiracy between Defendants and Big Idea to tortiously interfere with a contract to which Big Idea was a party is not actionable."); *Four Bros. Boat Works v. Tesoro Petroleum Companies, Inc.,* 217 S.W.3d 653, 668 (Tex. App. 2006) ("Because [Defendant] cannot be liable for tortiously interfering with its [own] subleases … it cannot be liable for conspiracy to tortiously interfere with the subleases.").

[96] *Orange Sols. Inc. v. Net Direct Sys. LLC*, No. 3:10-CV-2054-G, 2011 WL 2489413, at *4 (N.D. Tex. June 20, 2011) (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).

[97] *Superior Air Parts, Inc. v. Kubler*, No. 3:14-CV-3492-D, 2015 WL 567223, at *8 (N.D. Tex. Feb. 11, 2015).  LaPierre notes that Ackerman's pleading does not specify which state law applies to its common law claims. For the avoidance of doubt, Counts Two and Three are subject to dismissal pursuant to the economic loss rule even if Texas law is not deemed applicable to these claims as LaPierre's state of residence (Virginia) recognize and apply the economic loss rule as well.  *See Filak v. George,* 267 Va. 612, 618, 594 S.E.2d 610, 613 (2004) (noting that

analyze the conduct at issue and the nature of the injury."[98]   "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone."[99]

In the SATPC, Ackerman attempts to set forth claims against LaPierre for (a) tortious interference with contract (Count Two);[100] and (b) business disparagement (Count Three).[101] Both of these causes of action are subject to dismissal under the economic loss rule, as they seek damages attributable to the NRA's alleged breach of the Services Agreement.

In Count Two, Ackerman alleges that LaPierre "tortiously interfered with Ackerman's employment agreements with NRATV talents[]."[102] This allegation implies that LaPierre interfered with a contract existing between Ackerman and "NRATV talents."  Yet, upon further examination of Ackerman's allegations, its tortious interference claim is actually based on the assertion that LaPierre "caused the NRA to refuse its contractual commitment to reimburse Ackerman for the costs associated with the Third Party NRA Contracts."[103] As Ackerman admits in its pleading, the NRA's alleged "responsibility for compensating those personalities" emanates from the "2018 Amendment to the Services Agreement."[104]  Thus, through its tortious interference claim, Ackerman is plainly suing LaPierre to recover damages it claims to have incurred as a result of the NRA's alleged breach of the Services Agreement.   Because the only

---

"losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts").

[98] *Sagebrush Sols., LLC v. David-James, LLC*, No. 3:14-CV-2701-G, 2015 WL 1011789, at *2 (N.D. Tex. Mar. 9, 2015).

[99] *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).

[100] SATPC ¶¶ 161-165.

[101] SATPC ¶¶ 166-170.

[102] SATPC ¶ 162.

[103] SATPC ¶ 162.

[104] SATPC ¶ 144.

injury alleged in Count Two stems from the alleged breach of the Services Agreement, Ackerman's claim "sounds in contract alone."[105]

The same is true of Ackerman's business disparagement claim. Ackerman alleges, in purely conclusory fashion, that LaPierre and his supposed "co-conspirators" published disparaging words about it.[106] Yet the only resulting damage identified by Ackerman with any remote degree of specificity is the alleged "loss of the Services Agreement" and the "loss of the Third Party NRA Contracts."[107] These damages unequivocally flow directly from Ackerman's breach of contract claim against the NRA. Thus, the business disparagement claim is barred by the economic loss rule.

In sum, Ackerman's attempt to transmogrify its questionable breach of contract claim against the NRA into viable tort causes of action against LaPierre is wholly unavailing. The economic loss rule exists precisely to prevent litigants from doing what Ackerman attempts here and, as a result, Counts Two and Three must be dismissed, with prejudice.

## F.   **Ackerman's Claims Against LaPierre Are Barred under Fed. R. Civ. P. 14**

Ackerman's claims must also be dismissed as they have been asserted in contravention to Rule 14. In particular, "Rule 14(a) permits a defending party to sue as a third party plaintiff 'a nonparty who is or may be liable to it for all or part of the claim against [the defending party].'"[108] However, impleader "is only appropriate in cases where the third party's liability is derivative or dependent on the outcome of the main claim" because "the third party must

---

[105] *See Mid-Am. Mortg., Inc. v. United Sec. Fin. Corp.*, No. 3:18-CV-2806-G, 2019 WL 3068005, at *5 (N.D. Tex. July 12, 2019) (quoting *Jim Walter Homes, Inc*., 711 S.W.2d at 618).

[106] SATPC ¶ 167.

[107] Ackerman's additional measure of damages – a "loss of business" – is so lacking in detail that it fails even a liberal notice- pleading standard. "A court should not accept 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements,' which 'do not permit the court to infer more than the mere possibility of misconduct.'" *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 700 (S.D. Tex. 2011) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009)).

[108] *Cambridge Strategies, LLC v. Cook*, 3:10-CV-2167-L, 2012 WL 176587, at *6 (N.D. Tex. Jan. 23, 2012) (citing Rule 14(a)).

necessarily be liable over to the defendant for all or part of the plaintiff's recovery."[109]  "Rule 14 cannot be used as 'a vehicle for the trying together of separate and distinct causes of action, or for the introduction, into the main action, of several parallel, but independent, actions, or separate and independent claims.'"[110]  Moreover, "[t]he mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough" to implead a third party as "[t]he crucial characteristic of a Rule 14 claim is that [the] defendant is attempting to transfer to the third-party defendant the liability asserted against [defendant] by the original plaintiff."[111]

Ackerman's claims squarely contradict Rule 14 requirements because Ackerman does not seek to have LaPierre relieve them of their liability to the NRA – plaintiff in this action.  Rather, Ackerman posits entirely separate and distinct claims against LaPierre.  The fact that the NRA's claims against Ackerman, and Ackerman's claims against LaPierre relate to the termination of the Services Agreement does not bring Ackerman's claims into compliance with Rule 14.[112]

In sum, the NRA's claims against Ackerman include:  claims for false association under the Lanham Act (Count 1), trademark infringement (Count 2), conversion (Count 3), fraud (Count 4), breaches of fiduciary duty (Count 5), conspiracy (Count 6), breach of fiduciary duty of loyalty (Count 7), and breach of contract (Count 8).  Ackerman has not averred, and cannot plausibly aver, that LaPierre may be liable to it for some or all of its liability to the NRA.

---

[109] *Id.* (internal citations and quotations omitted).

[110] *Id.* (citing *Majors v. American Nat'l Bank of Huntsville*, 426 F.2d 566, 568 (5th Cir.1970) (per curiam)).

[111] *Id.* (citing *Wells Fargo Bank, N.A. v. Pettus*, 3:11-CV-0095-D, 2011 WL 3586405, at *2 (N.D. Tex. Aug. 16, 2011)).

[112] *Id.*

Consequently, all of Ackerman's claims against LaPierre must be rejected and dismissed under Rule 14 of the Federal Rules of Civil Procedure.[113]

## V.

## CONCLUSION

For the reasons stated above, Wayne LaPierre respectfully requests and prays that the Court dismiss the Second Amended Third-Party Complaint as against him in its entirety, with prejudice, and grant him any and all such other or further relief at law or in equity to which he may be justly entitled.

Dated:  May 24, 2021                                                Respectfully submitted,

                                                                              **CORRELL LAW GROUP**

                                                         By:            */s/ P. Kent Correll*

                                                                    P. Kent Correll
                                                                    NY State Bar No. 1809219
                                                                    250 Park Avenue, 7th Floor
                                                                    New York, New York 10177
                                                                    Tel: (212) 475-3070
                                                                    Fax: (212) 409-8515
                                                                    E-mail:  kent@correllawgroup.com

                                                                    ***Attorneys for Third-Party***
                                                                    ***Defendant Wayne LaPierre***

---

[113] *See Le Metier Beauty Investment Partners LLC v. Metier Tribeca, LLC*, 2015 WL 7078641, at *3 (S.D.N.Y. Nov. 12, 2015) ("Unlike the complaint at issue in Horsehead Corp., which sought a declaratory judgment on an insurer's liability for the very claims at issue in the original complaint, the TPC [i.e., third-party complaint] seeks to hold Banks and Caruso liable based on allegations that are unrelated to the claims asserted against Blanch and Metier in the Original Complaint. Blanch's opposition memorandum concedes as much. (ECF No. 54, Blanch Opp. at 9 ("[T]he TPC does not allege that [Banks and Caruso] are liable to Blanch for the Plaintiff's claim against Blanch.").) Specifically, the Original Complaint asserts claims for violations of federal securities laws and breach of contract based on allegations that Metier and Blanch fraudulently induced UB and LMBIP to invest $4 million dollars in Metier. (ECF No. 1, Compl. ¶¶ 19–20, 23–26). By comparison, the core allegations underlying the claims in the TPC-that Banks and Caruso disrupted Metier's ability to conduct business, interfered with Metier's relationship with retailers, and attempted to usurp the sale of Metier's assets to LBP-all relate to Banks and Caruso's actions after the UB and LMBIP investments had been made and they had become members of Metier's board of directors. (ECF No. 34, TPC ¶¶ 7–8, 66–84.) Thus, because Banks and Caruso's liability under the TPC is based on separate and distinct claims from those asserted in the Original Complaint, the TPC fails to meet the requirements for impleader under Rule 14(a). *The motion to dismiss the TPC in its entirety is therefore granted*.") (italics added).

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's electronic notification system in accordance with the Federal Rules of Civil Procedure on this 24th day of May 2021.

*/s/ P. Kent Correll*
P. Kent Correll
