## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| *Plaintiff and Counter-Defendant,* | § § § | |
| **v.** | § § | **Case No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** | § § § | |
| *Defendant and Counter-Plaintiff,* | § § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, AND MELANIE MONTGOMERY** | § § § § | |
| *Defendants.* | § | |

### AMc's STATUS REPORT PURSUANT TO COURT ORDER DATED AUGUST 26, 2021 (ECF 337)

Pursuant to the Court's August 26, 2021 Order (ECF No. 337), Defendant/Counter-Plaintiff Ackerman McQueen, Inc. and Defendants Mercury Group, Inc., Henry Martin, William Winkler, and Melanie Montgomery (collectively, "*AMc*") file this *Status Report* (the "*Report*") relating to outstanding discovery matters in this action.

### I.        MATTERS BEFORE THE COURT

#### A.  Explanation for Lack of Compliance with Scheduling Order

To provide background and context for the issues the Court has asked the parties to address, AMc respectfully offers its response to the Court's fourth inquiry first (why the parties are not in compliance with the Court's scheduling order) because the answer to that inquiry permeates and informs the others.  The fact that any discovery remains pending at all is almost exclusively the

result of the NRA's overarching motive to avoid trial in this case at all costs.  This prime directive has led to months of discovery abuses, lack of diligence, dilatory tactics, and gamesmanship.

The NRA cannot take its "case" to trial because it is a sham.  The claims were filed against AMc, along with attacks on over twenty other key NRA officials, expressly to take the focus off the New York Attorney General investigation of the gross malfeasance of Wayne LaPierre.  The NRA chose a lawyer, William A. Brewer III ("**Brewer**"), to create false narratives and file sham claims because, as a vengeful son-in-law and direct competitor for the NRA's public-relations business (which he ended up with), he was more than willing to do so—especially with an unlimited budget and carte-blanche to operate unchecked and unsupervised at any level of NRA corporate governance.  As Steve Hart, the then-general counsel to the NRA Board of Directors (who now regrets having brought Brewer into the NRA) describes, Brewer's lawsuits against AMc is an effort "to settle a family dispute."

### *Delay Tactics*

As AMc has addressed in prior motions,[1] the NRA has engaged in extensive instances of bad-faith delay tactics throughout this overall dispute with AMc, including four separate lawsuits in Virginia and Texas[2] in which all claims against AMc were duplicated,[3] a meritless multi-district litigation action ("**MDL**"),[4] and a bankruptcy filing ("**NRA Bankruptcy**"[5]) that the bankruptcy

---

[1] *See* ECF 228, Opp. to Pl.'s Mot. for Cont., incorporated by reference as if set forth at length herein.

[2] The lawsuit before this Court is hereinafter referenced as the "***Texas Action***."

[3] *National Rifle Association of America v. Ackerman McQueen, Inc., et al.*, Case Nos. CL19002067, CL19001757, and CL19002886, in the Circuit Court for the City of Alexandria, Virginia (collectively, the "***Virginia Action***"), which have now been stayed pending the outcome of the action before this Court.

[4] *In re: National Rifle Association Business Expenditures Litigation*, MDL No. 2979, in the United States Judicial Panel on Multidistrict Litigation, Order Denying Transfer (Feb. 4, 2021) (ECF 45) (holding "we are not persuaded that centralization is necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of this litigation").

[5] *In re National Rifle Association*, No. 21-30085-hdh11 (Jan. 15, 2021).

court found "shocking" and lacking in good faith.[6]  AMc's affirmative discovery efforts were disrupted by the MDL action and stayed altogether for four months during the NRA Bankruptcy. At the same time, the NRA could have continued to prosecute its claims against AMc, which were *not* stayed, but simply chose not to.  These tactics have resulted in the NRA's desired war of attrition, which has cost AMc millions of dollars in defense and bankruptcy fees and which has prejudiced AMc's ability to defend itself when pitted against the NRA's seemingly limitless legal budget.  Simply stated, the NRA can afford, and will benefit from, the delay of this litigation indefinitely—AMc cannot.

### *Failure to Prosecute Claims*

As the Court is aware, the Virginia Action began in April 2019, and the Virginia court expressly allowed discovery from the Virginia Action to be used in the Texas Action.[7] Additionally, the parties have been litigating this matter before this Court for over two years since August 30, 2019.  During that two-year period, the NRA only bothered to take a single deposition in the Texas Action (the deposition of a non-party witness) in November of 2020.[8]  In fact, in the face of a discovery deadline of August 6, 2021, the NRA did not begin any of its remaining depositions until July 29, 2021, *one week* before the deadline.

---

[6] NRA Bankruptcy, Order of Dismissal, (ECF 740) ("[T]he Court finds there is cause to dismiss this bankruptcy case as not having been filed in good faith both because it was filed to gain an unfair litigation advantage and because it was filed to avoid a state regulatory scheme."  "What concerns the Court most though is the surreptitious manner in which Mr. LaPierre obtained and exercised authority to file bankruptcy for the NRA.  Excluding so many people from the process of deciding to file for bankruptcy, including the vast majority of board directors, the chief financial officers, and the general counsel, is nothing less than shocking.").

[7] *See* ECF 280, Ex. B-1 [APP008].

[8] *See* **Ex. 1** (Mason Decl.) at ¶ 3.  For ease of reference, multiple communications between the parties have been consolidated and summarized in the Declaration of Brian E. Mason, along with several examples of correspondence between the parties.  AMc will promptly provide any additional documents and communications the Court wishes to review related to any matter discussed in this Status Report.

---

The NRA's first attempt to schedule depositions, other than the aforementioned third party in November 2020, was on June 4, 2021, *after* the NRA Bankruptcy was dismissed on May 11, 2021.[9]  Thereafter, on July 2, 2021, the NRA announced that it wished to depose seven additional AMc witnesses.[10]  On July 7, 2021, AMc—knowing that the discovery deadline was quickly approaching and attempting to accommodate the NRA's requests in order to complete all discovery prior to the deadline—provided between four and ten available deposition dates for each of the seven witnesses prior to August 6, 2021.[11]  The NRA did not set any depositions for these witnesses until July 13, 2021, nearly two weeks after its initial request and just over three weeks from the discovery deadline.[12]  As set forth below, even after these depositions were scheduled, the NRA then cancelled several AMc depositions with no explanation provided.  Many of these cancelations were one to two days prior to the scheduled depositions, when counsel and the witnesses were preparing for same or had already completed preparation for same.  As stated above, the NRA did not depose any of these AMc witnesses until July 29, 2021.

The NRA has generally engaged in gamesmanship and delay tactics, which not only prevented the parties from completing discovery by the August 6 deadline, but underscores the NRA's general failure to diligently prosecute its claims in this matter.  For example:

- **Deposition of Wayne LaPierre**[13] – Wayne LaPierre is the Executive Vice President of the NRA and has extensive personal knowledge of the entire history of the NRA-AMc business relationship.  AMc first served notice for the deposition of Wayne LaPierre on June 2, 2021, setting the deposition date for June 21, 2021.  Thereafter, counsel for Mr. LaPierre represented that he was not available on June 21 but could be available on July 2.  However, a few days later, Mr. LaPierre's attorney reneged on this representation, claiming that Mr. LaPierre was now not available until the end of July, on July 29, only one week before the discovery deadline.  AMc reluctantly agreed to re-notice Mr. LaPierre's deposition for July 29 to accommodate his schedule.  Then, on July 22, before

---

[9] *See* **Ex. 1** at ¶ 3.
[10] *See id.*
[11] *See* **Ex. 1-F**.
[12] *See* **Ex. 1** at ¶ 3.
[13] *See* **Ex. 1** at 2-3, ¶ 4.

the rescheduled deposition was to take place, AMc received another message from NRA counsel, this time advising that Mr. LaPierre needed a "last-minute" medical procedure that would prevent his July 29 deposition from taking place (along with the July 27 deposition of the NRA's corporate representative, one of which was to be Mr. LaPierre), and pushing the date back even further. AMc responded by asking for dates before the procedure and reiterated the upcoming deadline, but NRA counsel claimed they could not make LaPierre available until <u>August 6</u>—the actual discovery deadline. Once again, on August 5, AMc was informed that LaPierre would not be available for his deposition due to a "worsening medical condition" and would not be made available until August 20, two weeks *after* the discovery deadline.

- **Deposition of Rick Tedrick**[14] – Rick Tedrick is a senior employee in the NRA's accounting department who is a critical fact-witness in this lawsuit due to the important role he played in the AMc/NRA billing relationship. The NRA has made a claim against AMc for $100-150 million due largely in part to its allegations of fraudulent billing.[15] Mr. Tedrick not only has first-hand knowledge of the NRA's billing relationship and invoice-approval process but also participated in prior reviews of AMc's books and records, which were deemed satisfactory by the NRA. On June 10, AMc first served notice of Mr. Tedrick's deposition to take place on July 13. On June 16, AMc attempted to confirm Mr. Tedrick for the July 13 date. The parties conferred via telephone on June 16, during which call NRA counsel advised that Mr. Tedrick was not available on July 13, but promised to provide alternate dates by June 21. Having received no response, on June 22, AMc sent a letter asking NRA counsel to immediately provide these alternate dates for Mr. Tedrick's deposition. On June 25, NRA counsel responded that Mr. Tedrick's health issues had prevented the scheduling of the deposition to date, and they promised to respond shortly on this issue. On July 2, AMc again followed up regarding Mr. Tedrick's status, and again on July 7. On July 15, the NRA finally confirmed that a "remote" deposition for Mr. Tedrick could be held on August 2 (4 days before the discovery deadline). Then, due to scheduling changes for Mr. LaPierre (discussed above), Mr. Tedrick's deposition was further rescheduled for August 3 and confirmed for "remote video deposition." On August 1, the NRA reversed course and announced that Mr. Tedrick's deposition <u>could not</u> move forward on August 3 because he had retained "personal counsel" (but who could not be identified in the email). On August 6, AMc requested additional dates for Mr. Tedrick and for the identity of Mr. Tedrick's counsel. On August 8 (now past the discovery deadline), NRA counsel advised that Mr. Tedrick had <u>not</u> retained personal counsel after all and that he would not allow a videographer to be present at a remote deposition due to his unidentified medical condition. AMc responded that it was not agreeable to a telephone deposition but promised to work on the deposition logistics with Mr. Tedrick to ensure his safety. Having received no further response on dates for Mr. Tedrick, AMc noticed his deposition for August 26. The NRA represented that Mr. Tedrick would not be available on August 26 and agreed to present him for "video deposition" on August 31, confirming the date again in a follow-up email. Then, only four days before the deposition, on August 27, the NRA represented that, due to Mr. Tedrick's "confidential

---

[14] *See* **Ex. 1** at 3-5, ¶ 4.
[15] *See* ECF 209 at 75.

health concerns," he would not sit for a video deposition and that the only option was an unaccompanied telephone deposition outside the presence of any court reporter, videographer, or officer of the court.  Following court intervention by Judge Toliver, Mr. Tedrick's deposition finally went forward with the order that Mr. Tedrick would at least be required to turn on his video briefly to verify his identity.  Mr. Tedrick testified that he had never considered retaining his own counsel, had never told anyone he was retaining his own counsel, and had never even contacted any separate lawyer concerning his deposition.

- **Deposition of John Frazer**[16] – Mr. Frazer is the General Counsel and Secretary of the NRA.  Like Mr. LaPierre, Mr. Frazer's deposition was first noticed on June 2 to occur on June 25.  In a conference on June 4, NRA counsel advised that Mr. Frazer was not available on June 25 but promised to provide additional dates.  On June 10, AMc followed up requesting alternate dates for Mr. Frazer.  Receiving no response, AMc requested dates again on June 16.  On June 21, NRA counsel responded that Mr. Frazer (similarly to Mr. LaPierre) was not available until the end of July (July 27-30).  When pressed whether these dates were literally Mr. Frazer's only availability, the NRA responded with even later dates of August 2-4 (within days of the discovery deadline).  Ultimately, Mr. Frazer's deposition was noticed for August 4, but had to be rescheduled due to a medical emergency by AMc counsel.[17]  After further negotiating dates, Mr. Frazer's deposition was ultimately taken on August 19.  During the deposition, however, NRA counsel indicated that she needed two additional hours for the direct examination of Mr. Frazer, which necessitated a continuation of the deposition to allow sufficient time for AMc re-cross.  The continued deposition concluded on August 30.

- **Deposition of Melanie Montgomery**[18] – Melanie Montgomery is an AMc executive and an individual defendant in this matter.  Since litigation began in this Court on August 30, 2019 (and even before that, in Virginia in April 2019), the NRA never once sought to depose Ms. Montgomery.  After receiving initial notice from the NRA for a few select witnesses, on June 22, AMc asked NRA counsel to advise of additional AMc witnesses they wished to depose in order to verify schedules.  For the first time, on July 2, 2021, the NRA announced its intention to depose Ms. Montgomery.  On July 7, AMc provided 10 dates for Ms. Montgomery's deposition before the discovery deadline.  The NRA noticed Ms. Montgomery's deposition for July 22, for which AMc counsel prepared with the witness.  The NRA then emailed AMc counsel two days before the deposition, unilaterally canceling it without any explanation whatsoever.[19]  Thereafter, the NRA re-noticed Ms. Montgomery's deposition for August 6, the final day of the discovery period.

---

[16] *See* **Ex. 1** at 5-6, ¶ 4.
[17] *See* **Ex. 1** at 5, ¶ 4.
[18] *See* **Ex. 1** at 6, ¶ 4.
[19] *See* **Ex. 1-K** (Email from P. Furia dated Jul. 20, 2021) ("we are not going to proceed with an individual deposition of Ms. Montgomery at this time").

- **Deposition of William Winkler**[20] – Mr. Winkler is the CFO of AMc. Similarly to the deposition of Ms. Montgomery, on July 2, the NRA asked for Mr. Winkler's deposition for the first time since litigation began. Again, AMc provided 10 dates within the discovery window for Mr. Winkler's deposition. Although the parties agreed that the deposition would occur on July 20, on July 17, the NRA cancelled the deposition stating only that it was "not able to proceed" but providing no other explanation.[21]

- **Deposition of Revan McQueen**[22] – As with Ms. Montgomery and Mr. Winkler, the NRA did not request the deposition of Mr. McQueen at any time until July 2, 2021. On July 7, AMc provided several dates of availability for Mr. McQueen to be deposed. The NRA served notice for the deposition of Mr. McQueen to occur on July 23. Two days before the scheduled deposition, the NRA again cancelled this deposition without explanation, stating only that it was "unable to proceed," and requested that Mr. McQueen be made available on August 9 or August 10—now essentially ignoring the discovery deadline altogether.[23] Nevertheless, to avoid the eventual argument that the NRA was somehow prevented from putting on its case, AMc agreed to make Mr. McQueen available after the discovery deadline, and the deposition finally occurred on August 23.

- **Deposition of Henry Martin**[24] – The NRA first announced its intention to depose Defendant Henry Martin on July 17, 2021. Mr. Martin's deposition was noticed for August 6 (the discovery deadline). The night before the deposition, on August 5—after Mr. Martin had traveled to Dallas and prepared with AMc counsel—the NRA once again cancelled this deposition with no explanation.[25]

- **Deposition of Oliver North** – Oliver North was previously deposed by AMc in December 2019. Although NRA counsel was present at Col. North's deposition, the NRA elected to continue the deposition without conducting any cross-examination. Not once thereafter did the NRA attempt to resume Col. North's deposition until it finally issued a subpoena on August 3, 2021 (three days before the discovery deadline), commanding Col. North to appear for a deposition on August 11, 2021 (five days <u>after</u> the discovery deadline).[26] Due to Col. North's time constraints, AMc has agreed to accommodate the NRA's request to avoid any argument that it was somehow prevented from obtaining this evidence. The deposition is now scheduled to occur on September 15.

- **Deposition Subpoena of Bill Brewer**[27] – As this Court is aware, it is AMc's position that the NRA's lead counsel, William A. (Bill) Brewer III, is a fact witness with personal

---

[20] *See* **Ex. 1** at 6-7, ¶ 4.

[21] *See* **Ex. 1-L** (Email from S. Rogers dated Jul. 17, 2021) ("We are not able to proceed with Bill Winkler this Tuesday.").

[22] *See* **Ex. 1** at 7, ¶ 4.

[23] See **E. 1-M** (Email from P. Furia dated Jul. 21, 2021); *see also* **Ex. 1-N** (Email response from B. Mason dated Jul. 22, 2021).

[24] *See* **Ex. 1** at 7-8, ¶ 4

[25] *See* **Ex. 1-O** (Email from P. Furia dated Aug. 5, 2021).

[26] *See* **Ex. 1-P** (Email from P. Furia dated Aug. 9. 2021).

[27] *See* **Ex. 1** at 8, ¶ 4.

knowledge of, and personal involvement in, most, if not all, claims and defenses in this case. In fact, it is AMc's position that the NRA's claims were manufactured by Mr. Brewer largely out of thin air. Mr. Brewer's co-counsel even admitted that he was a likely fact witness in a hearing in the Virginia court.[28] AMc sought to confer with the NRA on multiple occasions, asking whether the Brewer Firm would accept service of Mr. Brewer's subpoena. Having received no meaningful response from the Brewer Firm, AMc issued deposition subpoenas to be served at multiple locations where Mr. Brewer might be found. Notably, Mr. Brewer managed to avoid service—even providing the process servers with conflicting information. For instance, in Mr. Brewer's Texas office, the process server was told that Mr. Brewer works in the New York office. The New York process server was told that Mr. Brewer works in his Texas office.[29] Mr. Brewer's deposition is now the subject of a pending Motion to Compel before this Court.[30] With even a modicum of cooperation by the Brewer Firm, this deposition could occur quickly and easily without the need for court intervention.

- **Deposition of Susan Dillon**[31] – Ms. Dillon is an employee of the Brewer Firm who, similarly to Mr. Brewer, is a fact witness in this matter. As a CPA and Director of Consulting for the Brewer Firm, Ms. Dillon participated in an examination of AMc records in September 2018. Thereafter she left the Brewer Firm and joined an accounting firm called Forensic Risk Alliance (FRA), another company whom the NRA hired to conduct an allegedly independent examination of AMc's records. Ms. Dillon participated in, and possibly coordinated and ran, the FRA audit, but this fact was not disclosed to AMc, nor were the results of the FRA audit—despite the NRA relying upon the results of that audit as the basis of, and support for, its various claims asserted in this Texas Action. After conferring with the NRA, counsel agreed to present Ms. Dillon for deposition on July 28. Two days before Ms. Dillon's deposition, on July 26, NRA counsel informed AMc for the first time that Ms. Dillon would be unable to testify regarding the FRA audit due to a nondisclosure agreement to which Ms. Dillon was supposedly bound.[32] The NRA did not appear to have taken any meaningful steps to obtain consent for Ms. Dillon to testify and, as a result, the NRA asserted this privilege over a large portion of Ms. Dillon's testimony, rendering her testimony useless.

- **Expert Depositions**[33] – On July 19, 2021 (only three weeks from the discovery deadline), once the NRA provided dates of availability for its six expert witnesses, dates within the remaining discovery period were only provided for <u>two</u> of those witnesses. AMc noticed these experts according to the dates provided. However, three expert depositions remain due to the NRA's own conduct. For example, the NRA served a supplemental expert report of Gary Goolsby on the night before his deposition. As a result, AMc was forced to truncate and continue the originally noticed deposition to reserve time for additional

---

[28] *See* ECF 80, Ex. A-58 at 40:11-13 [APP 968], 27:20-22 [APP 955] ("*[Brewer's] not here out of our ethical concern that he might be a witness.*")
[29] See ECF 324, Ex. A-13.
[30] See ECF 323.
[31] *See* **Ex. 1** at 9, ¶ 4.
[32] *See* **Ex. 1-R** (Email from S. Rogers dated Jul. 26, 2021).
[33] *See* **Ex. 1** at 9-10, ¶ 4.

questions on the supplemental report. AMc has requested, but is still waiting for, dates of availability for Mr. Goolsby. In addition, the NRA unilaterally cancelled the deposition of its expert, Brian Buss, less than a week before the deposition saying only that it "must be moved," and promising to provide dates for the week of August 9. To date, AMc is still waiting on available dates for Mr. Buss. Similarly, the NRA cancelled the deposition of AMc's expert witness, Daniel Jackson, the morning of the deposition. With regard to the deposition of NRA expert Andrew McLean, AMc had to request dates for Mr. McLean multiple times, and then once the deposition was finally noticed for August 30, Mr. McLean had to cancel due to a personal family issue. That deposition has been rescheduled for September 8.

- **Other Deposition Issues**[34] **–** After attempts to schedule his deposition extending back to July, AMc first noticed Woody Phillips' deposition on August 6, 2021, based on Mr. Phillips' availability. AMc was required to serve an amended deposition notice for August 30, 2021 due to changes in Mr. Phillips' schedule. Woody Phillips is the NRA's former CFO and Treasurer with responsibility over, and familiarity with, the AMc relationship, including invoicing and budgeting. At the *end* of Mr. Phillips' deposition, NRA counsel stated that he had "upwards" of 4-5 hours' worth of questioning for Mr. Phillips. Mr. Phillips' attorney asked why NRA counsel did not cross-notice the deposition, to which NRA counsel provided no response. Mr. Phillips and his counsel were willing to provide NRA counsel additional time that day, but NRA counsel opted not to take advantage of the additional time provided because he could not get the full 4-5 (or more) hours.

  Concerning the deposition of the NRA Corporate Representative, after the many scheduling changes noted above, AMc noticed the deposition for August 2, 2021. The NRA designated four individuals to cover the topics in AMc's notice—John Frazer, Andrew Arulanandam, Mike Erstling, and Wayne LaPierre. Near the end of AMc's examination of John Frazer on the topics for which he was designated, AMc counsel informed NRA counsel that she intended to depose Mike Erstling next, with no objection from NRA counsel. Upon completion of John Frazer's portion of the deposition, AMc counsel called Mike Erstling to be deposed. *At that time*, NRA counsel first informed AMc that NRA counsel had sent Mike Erstling home because he was on vacation and it was "rude" to ask him to wait all day to be deposed—even though at least one of their four designated witnesses would be waiting at some point and even though AMc counsel deposed Mr. Frazer on as many of his topics as possible as a courtesy to avoid flipping between witnesses and to avoid witnesses needing to wait around for longer than necessary. NRA counsel then informed AMc counsel that Wayne LaPierre and Andrew Arulanandam were available for their portions of the deposition. AMc proceeded to depose Andrew Arulanandam. Upon completion of Mr. Arulanandam's portion, AMc counsel requested Mr. LaPierre for his portion of the deposition. *At that time*, NRA counsel first informed AMc that they had sent Mr. LaPierre home because of his alleged medical situation. At no point during the day did NRA counsel advise AMc that any NRA Corporate Representative would be unavailable at any point before the conclusion of the

---

[34] *See* **Ex. 1** at 10-11.

deposition so that AMc could properly arrange its questioning or strategy. Conversely, AMc presented all of its Corporate Representatives on one day (August 4, 2021), the last of whom *started* her deposition segment at 6 p.m. and did not finish testifying until nearly 8:00 p.m.

The NRA would not present Carolyn Meadows for a deposition in the NRA Bankruptcy, claiming she could not attend because of a family member's health issue. NRA counsel noticed Ms. Meadows' deposition for August 4, 2021 based upon the representation that she likely would be unavailable for trial, which deposition notice NRA counsel then unilaterally withdrew with no explanation. Upon AMc's various requests of whether the NRA's withdrawal indicated Ms. Meadows *would* be available for trial, the NRA has provided no response.

The deposition changes with Mr. LaPierre are a repeated tactic. As another example, in the NRA Bankruptcy, NRA counsel rescheduled, on a last-minute basis, Wayne LaPierre's deposition and rearranged the timing of his hearing testimony because of an alleged emergency eye procedure. As further described above, NRA counsel provided the same reason for rescheduling Mr. LaPierre's deposition *twice* in this Texas Action as well—both instances shortly before the scheduled depositions were to occur.

AMc's flexibility in allowing depositions and making additional document productions in response to the NRA's various demands after the discovery deadline represents an extraordinary effort by AMc to *maintain* the current trial setting. Stated differently, AMc has worked diligently to depose NRA representatives, their experts, and third parties prior to the August 6 discovery deadline, but has been repeatedly told by the NRA and its counsel that they cannot proceed.[35] Moreover, AMc made each of its representatives available for deposition prior to the discovery deadline.

---

[35] The NRA's counsel, Brewer Attorneys & Counselors ("**Brewer Firm**") has also experienced excessive turnover among its attorneys and staff since the beginning of this lawsuit. To date, AMc counsel is interacting with its seventh iteration of the Brewer Firm litigation team, which has experienced complete turnover multiple times since the inception of this lawsuit.[35] Although it is perhaps understandable that, as a practical matter, new attorneys would need time to get up to speed on this case, the Brewer Firm's inability to retain its employees or utilize sufficient internal redundancies to avoid knowledge loss during transitions is no excuse for its failure to timely prosecute this case, conduct discovery, or prepare for depositions. Even so, AMc has nevertheless permitted additional flexibility regarding discovery and depositions to accommodate the NRA's scheduling requests and changes to deadlines in the spirit of cooperation and good faith. Although the NRA has already agreed that it will not use the prior withdrawal of counsel to directly attempt to delay this trial, any delay of trial would indirectly achieve the same result and reward the NRA's lack of preparation and diligence in a manner prejudicial to AMc.

AMc's primary concern has been that the NRA would use outstanding discovery matters as a basis for delaying trial or clogging the remaining pre-trial period with meritless discovery motions—even though its own conduct was the basis of the delay.  That concern proved true when the NRA requested this Court delay its ruling on AMc's pending Motion for Summary Judgment. Moreover, in recognition of the Court's concern for ensuring a full, fair, and complete resolution of this matter, AMc has permitted additional discovery and accommodated the NRA's ceaseless demands to avoid any argument by the NRA that it was somehow prevented from obtaining necessary evidence to present its case.

**B.  What Discovery Remains to Be Conducted**

The following depositions remain in this matter, all of which have been delayed by factors beyond AMc's control, largely including the NRA's own conduct:

- Dan Jackson (AMc Expert) – Mr. Jackson is AMc's expert on its affirmative breach-of-contract claims and rebuttal expert to a number of NRA's experts.

- Andrew McLean (NRA Expert) – Mr. McLean is the NRA's expert witness on media invoices.

- Goolsby (NRA Expert) (continuation) – Mr. Goolsby is the NRA's expert witness on billing and internal controls.  As stated above, Mr. Goolsby's supplemental expert report was served on AMc the night before Mr. Goolsby's scheduled deposition, which necessitated a continuation of the deposition so that he may be examined on the supplemental report.

- Brian Buss (NRA Expert) – Mr. Buss is the NRA's expert witness on intellectual property valuation.

- Oliver North – Col. North is a fact witness in this case who was previously deposed in December 2019.  As stated above, although allegations relating to Col. North feature prominently in the NRA's pleadings, the NRA made no effort to continue his deposition *for over 18 months* until August 3—three days before the discovery deadline—when it served a subpoena on Col. North, which did not even summon him to testify until *after* the discovery deadline.[36]

- Bill Brewer – pending determination of AMc's Motion to Compel, Mr. Brewer may provide testimony regarding the factual allegations supporting the claims and defenses in this matter, including his personal involvement in the underlying dispute.

Document production is substantially complete for both parties.  The following categories of documents are outstanding, neither of which should affect the trial setting or summary judgment.

- ***NRA Document Demands*** – The NRA has continued to raise various issues and to demand documents, which AMc is working to accommodate (notwithstanding its prior objections as to relevance and harassment), in order to avoid time-consuming discovery disputes and court intervention.  Counsel has conferred numerous times over the last several weeks regarding a variety of document demands, and AMc has provided multiple small supplemental productions as a result.  For instance, in response to the NRA's demands to obtain pre-2018 documents from the period surrounding the NRATV launch, AMc produced 2,700 documents from that time period on July 2, 2021, notwithstanding its objections and pending motion to compel on the subject.[37]   AMc also produced 1,500

---

[36] *See* **Ex. 1-P**.
[37] ECF 180.

documents related to NRATV analytics on June 21, 2021.[38]  The NRA also demanded additional backup for certain AMc invoices, including those related to Tony Makris's expenses, which AMc produced on June 15 and August 20, 2021.[39]  In response to NRA demands for additional financial records of AMc, which AMc has always maintained are not relevant, for the sake of avoiding disputes, AMc made two separate productions of AMc financial records and tax returns on July 1 and August 25, 2021.[40]  Again, the NRA could have chosen to raise many of these issues over a year ago, but simply opted not to. Instead, the NRA has seemed more concerned about raising discovery issues over the last 2-3 weeks—after the discovery deadline—than trying to prepare this case for trial.  AMc is attempting to work through of each of these issues with the NRA in a good-faith attempt to finalize any outstanding discovery issues but has been mired in the numerous depositions that the parties have been forced to conduct during that time due to the NRA's actions.  Nevertheless, AMc has made the strategic decision to participate with these additional discovery efforts in good faith so as to *proceed* toward trial, not delay it.

- ***PIP Dashboard*** – One category of documents that has been discussed in recent depositions is the raw archived files for the customized dashboard created to analyze NRATV viewership metrics by a third-party contractor called Performance Improvement Partners ("***PIP***").  After the NRA ordered AMc to cease all work on NRATV in June 2019, the PIP dashboard was disabled.  AMc was previously unable to locate the server housing this data and believed it to be unrecoverable.  However, the server housing this data was recently located in an AMc warehouse and was "revived" and converted to a producible format.

---

[38] *See* **Ex. 1** at ¶ 6.
[39] *See id.*
[40] *See id.*

As the NRA is aware, the data from the PIP dashboard is simply the underlying data displayed in the NRATV analytics presentations, which the NRA has had for many months.  The NRA never requested this data, and NRA expert Jonathan Hochman has already reviewed underlying data reports from the PIP dashboard and testified that he viewed the dashboard itself as inconsequential.  Moreover, much of the data was pulled from other sources, such as Google Analytics, which the NRA has had in its possession for years.  For these reasons and the reasons explained below, the production itself is neither material to the determination of the motion for summary judgment, nor should it cause any delay.

## C.  Significance of Outstanding Discovery

AMc has conceded to participating in additional discovery matters, including depositions and supplemental document production extending beyond the August 6 discovery deadline in large part to avoid the discovery disputes that the NRA would inevitably bring before the Court in these final weeks before trial, which would not only waste the time and resources of both the Court and AMc, but detract from other key pre-trial matters, including resolution of Defendants' Motion for Partial Summary Judgment ("*Defendants' MSJ*"). [41]   More importantly, however, there is nothing within these depositions or any outstanding documents that will materially affect trial or the Court's adjudication of Defendants' MSJ.

Critically, the NRA took no steps to preserve its objections to any purported lack of discovery in connection with Defendants' MSJ.  Specifically, in the NRA's *Motion to Extend Dispositive Motion Deadline*, the NRA's sole argument was that the dispositive motion deadline was <u>before</u> the discovery deadline (which it had always been from the initial scheduling order)—

---

[41] ECF 278.

not based on any concrete need to actually conduct additional discovery. In other words, the NRA made no effort to describe how any outstanding documents or depositions yet to be taken would materially impact any party's summary-judgment briefing.[42] Then, in responding to Defendants' MSJ, the NRA made no showing of how any recently conducted discovery, or any outstanding documents or testimony, would pertain to, or materially impact, the arguments raised therein.[43] In sum, the NRA has not raised any issues with the Court suggesting that additional discovery is necessary for the Court to make a determination on Defendants' MSJ and has therefore failed to properly preserve any such arguments—likely due to the fact that the real issue is not about lack of evidence in support of its claims, but the total lack of their claims' validity.

As stated in Defendants' Brief in Support of Motion for Partial Summary Judgment ("***Defendants' Brief***"),[44] the Court will be able to determine a majority of the NRA's affirmative claims exclusively as a matter of law, including:

1. **<u>Lanham Act Claims for False Association and Trademark Infringement</u>** – The Court will be able to determine these claims as a matter of law based on AMc's fair use defense or, alternatively, will find that the NRA has no evidence of critical elements of these claims.[45] Importantly, none of the outstanding discovery noted above is reasonably calculated to include any additional information about the NRA's Lanham Act claims. In fact, as stated previously, the NRA unilaterally cancelled the deposition

---

[42] *See* ECF 277.
[43] *See* ECF 314.
[44] ECF 279.
[45] *Id.* at 17-22.

of AMc's Creative Director, Henry Martin[46]—the one witness the NRA specifically identified as perhaps being involved with the facts made the basis of these claims.[47]

2. **<u>Conversion</u>** – As set forth in Defendants' Brief, there is no recognized cause of action for conversion of intangible property in Texas, and the economic loss doctrine will serve to bar the claim in any event.[48]  As a result, no amount of additional discovery will assist the Court with this determination.

3. **<u>Breach of Fiduciary Duty & Fraud</u>** – Similarly, the NRA's claims for breach of fiduciary duty and fraud may be properly determined as a matter of law without the assistance of any additional evidence.  Despite the NRA's artful pleadings, the factual basis of each of these claims still falls within a category covered by the Services Agreement that either was—or should have been—brought as a breach of contact claim.[49]  As an additional indicator, the measure of damages is exactly the same—the monies paid by the NRA under the Services Agreement pursuant to invoices issued by the NRA.  Accordingly, the Court will be able to dispose of these claims solely on the basis of the economic loss doctrine.  Moreover, with respect to the NRA's breach-of-fiduciary-duty claim, the Court may properly determine that no fiduciary duty exists as a matter of law.[50]

4. **<u>Breach of Contract</u>** – The NRA has brought only two claims for breach of contract under (1) the Record Inspection Clause and (2) the Confidentiality Clause.[51]  As stated

---

[46] *See* **Ex. 1** at 8, ¶ 4, **Ex. 1-O** (Email from P. Furia dated Aug. 5, 2021).
[47] *See* ECF 314 at 24 ("in the case of Defendant Martin, his direct oversight of creative work, including the work featured on AMc's website . . . raises triable issues of Lanham Act liability").
[48] *See* ECF 279 at 23-28.
[49] *See id.* at 32-34, 45-47.
[50] *See id.* at 29-31.
[51] *See id.* at 36-44.

in Defendants' Brief, there is no evidence regarding the elements of breach or damages as to either of these claims. Moreover, there are no remaining witnesses who could possibly testify competently as to the element of "breach" (which is a legal conclusion) or damages with respect to either of these clauses. Thus, the Court will be able to make this determination as a matter of law irrespective of any additional testimony or documents.

5. **Conspiracy** – The Court will likely be able to rule on the NRA's conspiracy claim without any additional testimony or documents from the remaining discovery because the underlying claims for fraud and breach of fiduciary duty must be dismissed as a matter of law.[52]

6. **AMc's Breach of Contract Claims** – The only remaining witness who could conceivably impact any kind of determination on AMc's affirmative breach-of-contract claim is AMc's expert witness, Daniel Jackson. However, similarly to AMc's remaining depositions of NRA experts, the primary purpose of the expert depositions is to understand what the experts' trial testimony will be, and to understand the foundation of their opinions. Thus, although Mr. Jackson's testimony might be relevant to a *Daubert* motion by the NRA, the substance of Mr. Jackson's testimony is already contained within his expert report and, in any event, only addresses damages—not the element of breach. For purposes of summary judgment, as AMc has stated in its briefing, the Court may properly make a determination as to the element of breach, even if its damages must later be proven at trial.[53] In any event, neither the remaining

---

[52] *See id.* at 48-49.
[53] *See* ECF 335 at 2.

testimony from Mr. Jackson regarding damages, nor any other document requests propounded by the NRA, will be necessary for the Court's determination of summary judgment on this issue.

## D. Pending Discovery Motions/Issues

Currently, only two discovery matters are pending before Judge Toliver. First, an October 23, 2020 Joint Status Report on the parties' respective motions to compel.[54] In the motions to compel, AMc seeks (1) documents and communications produced during the FRA audit, which have been withheld under a claim of privilege but are simultaneously being used to support the NRA's claims, as even the NRA's General Counsel recently testified; (2) similar documents from the Brewer Firm, which have been withheld on the basis of privilege; and (3) copies of litigation hold letters sent to NRA employees. The NRA is seeking documents responsive to discovery requests related to the NRA's Lanham Act claims and certain documents dated prior to 2018.

Second, the parties recently filed another Joint Status Report on AMc's *Motion to Compel the Deposition of William A. Brewer III* based on his status as a witness to, and participant in, the facts and circumstances underlying the parties' claims and defenses.[55]

In addition, although not yet before the Court, AMc is presently contemplating the filing of *Daubert* motions with respect to the NRA's expert witnesses, but will propose an expedited briefing schedule if such motions are filed.

Even after the discovery period. Counsel for the NRA has continued to bombard Defendants with requests for additional documents and supplements based on various alleged deficiencies in Defendants' document production and privilege log, which could have been raised

---

[54] ECF 180.
[55] ECF 323.

long ago but simply were not. As stated above, the outstanding discovery has little (if anything) to do with whether any of the claims in this matter may be disposed of via summary judgment. At this point the NRA's obvious goal is three-fold: (1) to deflect attention from the pending summary judgment motion; (2) to create costly busywork for AMc; and (3) to delay or avoid the upcoming trial setting.

<u>**Conclusion**</u>

A number of the NRA's actions throughout this case demonstrate that it never intended to try the case, but only hoped to win a war of attrition, running AMc out of money. It is hard to find any other explanation for why AMc took twelve depositions, excluding numerous additional depositions in the NRA Bankruptcy, in the first two years of the case and the NRA took almost none. The NRA attempted to prosecute this case in two separate jurisdictions, and only the action of the Virginia judge kept the same identical lawsuit from being further prosecuted in two places at the same time. The NRA caused significant delays by invoking the MDL process, and then took four months out of the pretrial schedule with a bankruptcy filing that was "shocking" and not in good faith, and did not even prosecute its case during the pendency of the NRA Bankruptcy despite being allowed to do so. The actions of the NRA in the several months since the bankruptcy ended, as far as prosecuting its case (and hindering AMc from prosecuting its case) are inexplicable unless the motive of avoiding trial is considered. It also appears that the NRA is attempting to gain, by petulance, the full continuance that the court properly denied it in its motion filed immediately after the NRA Bankruptcy ended.

Despite the delays, AMc continues to prepare for trial while accommodating the remaining depositions and discovery demands that the NRA continues to raise. Defendants ask the Court to permit the parties the latitude to clean up these remaining discovery issues, which should not affect

any party's ability to prepare for trial, nor should it affect the Court's ability to rule on Defendants'

MSJ, which should greatly limit the issues that need to be tried.

Dated:  August 31, 2021                                  Respectfully submitted,

                                                         */s/ G. Michael Gruber*
                                                         **G. Michael Gruber, Esq.**
                                                         Texas Bar No. 08555400
                                                         gruber.mike@dorsey.com
                                                         **Jay J. Madrid, Esq.**
                                                         Texas Bar No. 12802000
                                                         madrid.jay@dorsey.com
                                                         **J. Brian Vanderwoude, Esq.**
                                                         Texas Bar No. 24047558
                                                         vanderwoude.brian@dorsey.com
                                                         **Brian E. Mason, Esq.**
                                                         Texas Bar No. 24079906
                                                         mason.brian@dorsey.com
                                                         **DORSEY & WHITNEY LLP**
                                                         300 Crescent Court, Suite 400
                                                         Dallas, Texas 75201
                                                         (214) 981-9900 Phone
                                                         (214) 981-9901 Facsimile

                                                         **ATTORNEYS FOR DEFENDANTS/
                                                         COUNTER-PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on Tuesday, August 31, 2021, a true and correct copy of the foregoing

document was served upon counsel of record in accordance with the Federal Rules of Civil

Procedure.

                                                         */s/ G. Michael Gruber*
                                                         G. Michael Gruber