IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFFLE ASSOCIATION OF AMERICA, | § § § | |
| *Plaintiff and Counter-Defendant*, | § § § | |
| v. | § § | Case No. 3:19-cv-02074-G |
| ACKERMAN MCQUEEN, INC., | § § § | |
| *Defendant and Counter-Plaintiff*, | § § | |
| and | § § | |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, AND MELANIE MONTGOMERY | § § § § | |
| *Defendants*. | | |

# PLAINTIFF'S STATUS REPORT ON DISCOVERY ISSUES DATED SEPTEMBER 24, 2021

## TABLE OF CONTENTS

I. PREFACE ...................................................................................................................................1

II. DISCOVERY DEVELOPMENTS ...........................................................................................1

    A. Depositions ..........................................................................................................1

        1. Expert Depositions.....................................................................................1

        2. Fact Depositions.........................................................................................2

    B. Production of Documents and Other Things .......................................................2

    C. The NRA's Dashboard and Social Media Login Credentials ...............................2

        1. The Newly Identified "Virtual" Server/Social Media Credentials ..............2

        2. Appointment of a Forensic Neutral and Cost Sharing: The Parties Have Not Agreed on A Neutral ..................................................................3

    D. Subpoenas .............................................................................................................4

        1. NRATV Social Media Platforms ................................................................4

III. THE PRIVILEGE LOGS..........................................................................................................4

        1. AMc's Amended Privilege Log .................................................................4

        2. The NRA's Amended Privilege Log...........................................................5

IV. NRA DASHBOARD: DISCOVERY FROM THIRD PARTIES ............................................5

V. THE FORENSIC RISK ALLIANCE REPORTS .....................................................................6

VI. AMC'S SANCTIONABLE DISCOVERY ABUSES AND UNTIMELY, IMPROPER SURREPLY ..................................................................................................................6

# I.
# PREFACE

In accordance with the order issued by Senior District Judge A. Joe Fish during a Status Conference held on September 16, 2021 (the "Status Conference"), the National Rifle Association of America (the "NRA") submits the this status report which outlines: (i) discovery developments over the past week (*i.e.*, from Saturday, September 18, 2021 to the date of this report); and (ii) discovery scheduled for the upcoming week.

# II.
# DISCOVERY DEVELOPMENTS

### A.   Depositions

There were no depositions taken this week.

### 1.   Expert Depositions

The NRA offered to have expert discovery begin this week with the deposition of Gary Goolsby on September 23, 2021. AMc's counsel were not available. The NRA also offered to make Mr. Goolsby available on September 29, 2021, but AMc counsel were again unavailable. The NRA then agreed by letter dated September 24, 2021, to make Mr. Goolsby available on October 12, 2021 and Brian Buss available on October 14, 2021, two dates which AMc requested.[1] The NRA also agreed to depose AMc's expert, Daniel L. Jackson, on October 19, 2021, a date suggested by AMc. Lastly, the NRA accepted AMc's request to depose its expert, Andrew McClean, on October 21, 2021.[2]

---

[1] *See* letter from Cecelia Fanelli to Brian Mason, dated September 23, 2021, attached as Exhibit A to the Declaration of Cecelia L. Fanelli, dated September 24, 2021 (the "Fanelli Decl.").

[2] *See* letter from Cecelia Fanelli to Brian Mason, dated September 24, 2021, attached as Exhibit B to the Fanelli Decl.

### 2. Fact Depositions

The NRA requested to take the deposition of AMc's records custodian and AMc's 30(b)(6) witness by letter dated September 23, 2021.[3] AMc did not respond. In addition, the deposition of Wilson "Woody" Phillips has been tentatively scheduled for the week of October 18, 2021.[4] The NRA has been in communication with counsel for Mr. Phillips throughout the week, and expects a final date to be confirmed in the coming days.

## B. Production of Documents and Other Things

By letter dated September 12, 2021, counsel for AMc committed to supplementing its document production with raw data sourced from third parties that was used to populate the NRA's dashboard.[5] Hours before tonight's status report deadline, at 4:21pm CT, AMc sent the NRA a production of documents, which the NRA has not yet reviewed.

## C. The NRA's Dashboard and Social Media Login Credentials

The NRA continues to seek data from the dashboard and its social media credentials regarding NRATV.

### 1. The Newly Identified "Virtual" Server/Social Media Credentials

After the NRA raised the issue of the nondisclosure of the NRA dashboard and its data, both in writing and at the Status Conference on September 16, 2021, AMc stated for the first time in a letter to the NRA dated September 21, 2021,[6] that the NRA dashboard data resides on AMc's **virtual** server. In its August 31, 2021 Status Report, AMc stated "AMc was previously unable to locate the server housing this data and believed it to be unrecoverable. However, the server housing

---

[3] *See* letter from Cecelia Fanelli to Brian Mason, dated September 23, 2021, attached as Exhibit A to the Fanelli Decl.

[4] *See* emails from Mordecai Geisler to Mark Werbner and Seth Faber, dated September 23, 2021, attached as Exhibit C to the Fanelli Decl.

[5] *See* letter from Brian Mason to Cecelia Fanelli, dated September 12, 2021, attached as Exhibit D to the Fanelli Decl.

[6] *See* letter from Brian Mason to Cecelia Fanelli, dated September 21, 2021, attached as Exhibit E to the Fanelli Decl.

this data was recently located in an AMc **warehouse** and was "revived".[7] Now, for the first time, AMc raises the alleged complication that the NRA's data on its supposedly "bespoke" dashboard is commingled with the data of other clients. This situation should not be allowed to delay the return of the NRA's data.

In its September 21, 2021 letter, AMc appears to suggest that that it intends to try to retain possession and control of the NRA's dashboard and the NRA's social media accounts. Although AMc gives lip service to the notion of a neutral expert, its position as to the role of a neutral is unclear. The NRA has brought this lack of clarity to the attention of AMc's counsel.[8]

### 2. Appointment of a Forensic Neutral and Cost Sharing: The Parties Have Not Agreed on A Neutral[9]

On September 14, 2021, the NRA sought AMc's agreement to appoint a forensic neutral to image the server upon which AMc is housing the NRA's data, remove NRA data from the server, deliver the data to the NRA, and return the NRA's social media login credentials.[10] This past week, the NRA recommended that Kroll Associates be retained to act as a forensic neutral to complete the imaging and data transfer process.[11] AMc simply ignored the NRA's proposal, and also has failed to make a counterproposal other than suggesting that the NRA provide the names of more consultants. In addition, AMc also suggested that the NRA should absorb the full cost of any neutral, a proposal that the NRA is not agreeable to. In fact, the NRA's position is that AMc,

---

[7] *See* ECF 345 at p. 13.

[8] *See* letter from Cecelia Fanelli to Brian Mason, dated September 24, 2021, attached as Exhibit I to the Fanelli Decl.

[9] *Id.*

[10] *See* ECF 365 at p. 4.

[11] *See* letter from Cecelia Fanelli to Brian Mason, dated September 21, 2021, attached as Exhibit F to the Fanelli Decl.

having seized and retained the NRA's systems and accounts, must pay for the forensic work and analysis.[12]

**D.  Subpoenas**

    **1.  NRATV Social Media Platforms**

The NRA issued subpoenas requesting login credential information and other materials concerning NRATV accounts to Google, LLC (owner of YouTube); Facebook, Inc. (owner of Facebook and Instagram); and Twitter, Inc. Each subpoena was issued on September 24, 2021 and contains a compliance date of October 15, 2021.

# III.
# THE PRIVILEGE LOGS

    **1.  AMc's Amended Privilege Log**

As summarized last week, the NRA previously attempted to brief its concerns about AMc's privilege log in a draft Joint Status Report (as required by Magistrate Judge Toliver's Standing Order);[13] however, AMc refused to provide its half of the Report..[14] Instead, AMc unilaterally declared the NRA's concerns "moot" based on promised, imminent amendments to its privilege log; the amended log was served Tuesday, September 21, 2021.  By letter the following day, the NRA explained that the amended log remained deficient and demanded production of particular categories of documents for which privilege was not adequately asserted.[15] This included documents previously withheld as privileged which AMc removed from its amended log, conceding their nonprivileged status.  AMc promised to produce such documents by tomorrow,

---

[12] *See* letter from Cecelia Fanelli to Brian Mason, dated September 24, 2021, attached as Exhibit I to the Fanelli Decl.
[13] *See* ECF 62.
[14] *See* letter from Sarah Rogers to Brian Mason, dated September 22, 2021, attached as Exhibit G to the Fanelli Decl.
[15] *Id.*

Saturday, September 25, 2021. The NRA awaits responses to its remaining concerns regarding AMc's amended privilege log.

### 2. The NRA's Amended Privilege Log

For the first time following the parties' status conference last week, AMc sent a letter to the NRA alleging deficiencies in the NRA's privilege log. The NRA has indicated that it will amend its log, if needed, by Thursday, September 30, 2021.[16]

## IV.
## NRA DASHBOARD: DISCOVERY FROM THIRD PARTIES

The NRA attempted to contact the architect of the NRA's dashboard, Performance Improvement Partners ("PIP"), but has been unable to reach them. Specifically, the NRA contacted counsel for PIP to inquire about any documents it may have retained related to work performed on the NRATV dashboard.[17] Counsel for PIP did not respond. PIP had previously taken the position that it had to coordinate with AMc because of "confidentiality" concerns.

Notably, when describing the content of the dashboard at the hearing on September 16, 2021, counsel for AMc represented that, "[t]his is not NASA secrets that we're talking about here. I think that the suggestion that this is -- this is top secret is…not accurate."[18] Accordingly, AMc should produce any withheld documents involving PIP's work and instruct PIP to release any documents withheld because of "confidentiality" concerns since AMc now claims that nothing in the dashboard is "secret."

---

[16] *Id.*

[17] *See* ECF No. 365 at Ex. B.

[18] *See* ECF No. 368 at p. 49.

## V.
## THE FORENSIC RISK ALLIANCE REPORTS

As explained at last week's hearing and detailed in follow-up correspondence,[19] the NRA is prepared to produce to Defendants the draft report issued by Forensic Risk Alliance ("FRA") setting forth the outcome of its February 2019 review of AMc's records—subject to a stipulation that production does not constitute a subject-matter waiver. Defendants have not yet accepted the NRA's offer, but have demanded production of additional FRA-related emails. The NRA hopes that this matter will be resolved shortly.

## VI.
## AMC'S SANCTIONABLE DISCOVERY ABUSES AND UNTIMELY, IMPROPER SURREPLY

On August 12, 2021, AMc submitted, over the NRA's objection, a joint status report on its purported "emergency" motion (filed nine days after the discovery deadline) to compel the deposition of the NRA's lead litigation counsel on multiple matters, William A. Brewer III.[20] AMc filed its "emergency" motion immediately after concluding a deposition of counsel's wife, Skye Brewer, whose attorneys offered her after Ackerman misleadingly suggested that there would be no deposition of her husband.[21] AMc's alleged need to depose Mr. Brewer stemmed in part from conversations with, or message transmitted "through," Mrs. Brewer.[22] Arguing that the transcript of Mrs. Brewer's deposition should inform the Court's resolution of AMc's motion, the NRA

---

[19] *See* letter from Sarah Rogers to Brian Mason, dated September 23, 2021, attached as Exhibit H to the Fanelli Decl.

[20] *See* ECF No. 323-1.  Defendants acknowledged at the parties' recent status conference that Mr. Brewer is deeply involved in trial preparation and the NRA's overall litigation strategy—which is the reason Ackerman improperly seeks to depose him. *See* Sep. 16, 2021, Hearing Tr. At 43:19-21 (Acknowledging testimony by the NRA's General Counsel that Brewer's involvement is crucial to the NRA's trial preparation, and arguing that Mr. Brewer  "[is] the man directing all things NRA litigation[.]").

[21] *See* Declaration of Stephen P. Younger, ECF No. 325, Ex. N.

[22] *See, e.g.*, ECF No. 323-1 at 25 (seeking to depose Mr. Brewer regarding "threats of criminal indictment and other communicated messages passed to AMc through Skye Brewer or other family members [who are not outside counsel and could easily be interviewed or deposed by AMc]" and regarding Mr. Brewer's "prior relationship with" his wife's family).

explicitly reserved the right to supplement the record when the transcript became available.[23] The NRA did so on August 24, 2021.[24]

The NRA's supplemental submission highlighted Mrs. Brewer's testimony that Mr. Brewer never asked her to pass "messages" to Defendants (including, as AMc outrageously and baselessly accuses, messages urging Defendants to "break privilege").[25] Nor did Mrs. Brewer hear anything from her husband regarding "RICO violations," although she admitted after prolonged questioning that she herself "might have said that falls under the RICO statute because that is something people know."[26] Mrs. Brewer testified that she tried to arrange a conversation between her brother, father, and husband on a single occasion, on her own initiative, because she hoped to make peace within her family.[27] The NRA's supplemental submission also recounted AMc's unfounded, bad faith insinuation during the deposition that Mr. Brewer physically abused Mrs. Brewer.[28]

Without making any comparable reservation of rights to supplement the record, nor seeking leave,[29] AMc filed a surreply in further support of its motion to depose Mr. Brewer on September 17, 2021 (ECF No. 363) (the "AMc Surreply"). The AMc Surreply seeks yet another bite at a rotten apple, insisting that Mr. Brewer might have made "threats," regarding RICO or otherwise,

---

[23] *See* ECF No. 323-1 at 19 ("Moreover, although AMc insisted on submitting this matter to the Court before the transcript of its deposition of Skye McQueen Brewer became available for the Court's review, the NRA anticipates that her deposition will discredit AMc's hearsay-based allegations as factually false and its deposition tactics as abusive. The NRA intends to supplement the record accordingly.").

[24] *See* ECF No. 331.

[25] *See* ECF No. 331 at 2-3.

[26] *See* ECF No. 363 Ex. 1-A (Skye McQueen Brewer Dep.) at 228:23-230:3.

[27] *Id.* at 165:17-21.

[28] *See* ECF No. 331 at 6-7.

[29] Notably, Ackerman could have sought guidance from the Court on whether, or to what extent, it should be permitted to submit additional briefing when the parties convened for a status conference on September 16, 2021—one day before the surreply submission filed September 17, 2021, which the NRA now addresses.

to unspecified persons other than Skye Brewer,[30] and that Defendants must depose Mr. Brewer regarding a hypothetical settlement discussion that never took place.[31] For the reasons set forth by the NRA in the parties' joint status report on this issue, such arguments fail. In the Fifth Circuit, testimony from a lawyer involved in trial preparation must not only be relevant and nonprivileged, but also "crucial," and unavailable from any other source.[32] AMc's continued insistence that Mr. Brewer might have made "threats" to unspecified family members or AMc executives (any of whom could be freely deposed) does not meet this standard.

Moreover, the AMc Surreply improperly attempts to relitigate, in the context of a discovery dispute, key aspects of this Court's ruling on a recent dispositive motion: the NRA's Motion to Dismiss Second Amended Counterclaims (ECF No. 260) (the "NRA MTD Counterclaims"), which was granted in part and denied in part on August 16, 2021 (ECF No. 329) (the "MTD Order"). In connection with the NRA MTD Counterclaims, the parties briefed in detail the issue of whether AMc adequately alleged that Mr. Brewer acted outside the scope of his retention as the NRA's outside counsel, making him a cognizable conspirator for purposes of a conspiracy counterclaim.[33] The Court held as a matter of law that AMc's allegations did not suffice; thus, the

---

[30] *See* ECF No. 363 at 3.

[31] *Id.* at 14 ("Mrs. Brewer testified that she indeed asked her brother (Revan McQueen) and father (Angus McQueen) to meet with her husband (Bill Brewer) . . . . The NRA wants to refuse AMc the opportunity to ask Bill Brewer about this meeting."). This is a bizarre argument: Mrs. Brewer herself testified that her effort to arrange a conversation between her husband and her family, which she conceived on her own initiative, failed. *See* ECF No. 363 Ex. 1-A (Skye McQueen Brewer Dep.) at 164:11-18 (concluding, "obviously that wasn't possible"). Moreover, even if the phantom settlement meeting about which Ackerman purportedly seeks to depose Mr. Brewer had occurred, NRA counsel's testimony about settlement negotiations would hardly be "crucial" to Ackerman's case as the Fifth Circuit requires—because Ackerman's own executives would have been present at the meeting and could testify about its content.

[32] *See, e.g.*, *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999).

[33] *See, e.g.*, ECF No. 276 (AMc Response to NRA Mot. Dismiss Second Amd. Counterclaims) at 20 (arguing that that Mr. Brewer's "document demands for his own personal motives," "defamation of AMc," alleged involvement in drafting extortion accusations, and "us[e] [of] confidential information he obtained as a family member" constituted acts "outside the scope of his employment as lawyer for the NRA"); ECF No. 287 (NRA Reply Supp. MTD Counterclaims) at 6-7 (addressing the same issue and citing and quoting *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999)).

Court "will not consider AMc's conspiracy claim insofar as it concerns the NRA's general counsel, Brewer, or BAC,"[34] because even alleged "mixed motives" by an attorney "do[] not remove [his] conduct from the scope of the agency."[35] The AMc Surreply seeks to end-run this ruling, urging Magistrate Judge Toliver to entertain its conspiracy allegations concerning Mr. Brewer as a basis for his deposition because the MTD Order failed to reflect "actual evidence" that Mr. Brewer acted outside the scope of his representation of the NRA.[36] Such tactics are improper and waste judicial resources.

Regrettably, the AMc Surreply is vexatious and wasteful in another respect, too: it revisits and multiples AMc's efforts to salt the public record in this case with groundless accusations that opposing counsel abuses his wife. Mrs. Brewer, who was outraged by these accusations, unequivocally denied them.[37] The NRA noted this sanctionable line of questioning in its supplemental submission and emphasized defense counsel's insinuations of domestic violence were not, in fact, based on any conversation with Mrs. Brewer's father or brother (as counsel's phrasing implied).[38] The AMc Surreply resurrects this issue *yet again*—suggesting that even though neither Revan McQueen nor Angus McQueen told Dorsey & Whitney that Mr. Brewer abused Mrs. Brewer, it is possible that "another source" made the same accusation.[39] Enough is enough. The NRA wishes to swiftly complete discovery without further motion practice arising

---

[34] ECF No. 329 at 54.

[35] *Id.*, *citing and quoting Heffernan*, 189 F.3d at 413.

[36] ECF No. 363 at 6 ("In fact, the Court (Judge Fish) did not have at its disposal the *actual evidence* [that] . . . . conduct AMc raises before this Court is *beyond the scope* of Bill Brewer's representation as counsel to the NRA"). Of course, the Court need not review "actual evidence" on a motion to dismiss: it assesses pleadings as a matter of law. *See* Fed. R. Civ. P. 12(b)(6). To the extent that Ackerman seeks to amend and revive its now-dismissed conspiracy allegations concerning the NRA's lawyers, the NRA opposes any such amendment as untimely and prejudicial.

[37] *See* ECF No. 363 Ex. 1-A (Skye McQueen Brewer Dep.) at 49:22-50:5.

[38] *See* ECF No. 331 at 6-7.

[39] *See* ECF No. 363 at 7.

from AMc's animus concerning counsel's marriage, and would welcome the Court's guidance and assistance to this end.

Dated: September 24, 2021

Respectfully submitted,

/s/ Cecelia L. Fanelli
Cecelia L. Fanelli
*Pro Hac Vice*
clf@brewerattorneys.com
Sarah B. Rogers
New York Bar No. 4755252
sbr@brewerattorneys.com
Philip J. Furia
*Pro Hac Vice*
pjf@brewerattorneys.com
Alessandra P. Allegretto
Texas Bar No. 24109575
apa@brewerattorneys.com
**BREWER ATTORNEYS AND COUNSELORS**
1717 Main Street, Suite 5900
Dallas, Texas 75201

**ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 24th day of September 2021.

/s/ Cecelia L. Fanelli