# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| *Plaintiff and Counter-Defendant*, | § § | |
| **v.** | § § | **Case No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** | § § | |
| *Defendant and Counter-Plaintiff*, | § § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, AND MELANIE MONTGOMERY** | § § § § | |
| *Defendants.* | § | |

## SUPPLEMENTAL STATUS REPORT ON ACKERMAN MCQUEEN, INC.'S MOTION TO COMPEL FORENSIC RISK ALLIANCE DOCUMENTS

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................2

A.      AMc's Position ...................................................................................................2

B.      The NRA's Position ...........................................................................................5

II.     MATTERS RESOLVED BY AGREEMENT ....................................................5

III.    MATTERS TO BE HEARD AND DETERMINED .........................................5

A.      AMc's Position ...................................................................................................5

B.      The NRA's Position ...........................................................................................5

IV.    BACKGROUND FACTS ....................................................................................6

A.      AMc's Position ...................................................................................................6

B.      The NRA's Position ...........................................................................................8

V.     ARGUMENTS & AUTHORITIES ....................................................................9

A.      AMc's Position ...................................................................................................9

        1.      Legal Standard. ......................................................................................9

        2.      The NRA Waived Privilege as to the Entire FRA Subject Matter. ........9

        3.      The NRA Confirmed Its Sword and Shield Use of the FRA Documents.............11

        4.      The NRA Confirmed the FRA Documents Are Not Privileged. ..........................13

        5.      The NRA's Actions Warrant Additional Depositions. ..........................16

        6.      Sanctions Are Warranted for the NRA and Its Counsel's Years-Long Abuse. ...17

B.      The NRA's Position ..........................................................................................18

VI.    PRAYER FOR RELIEF .....................................................................................19

A.      AMc's Position .................................................................................................19

B.      The NRA's Position .........................................................................................19

# TABLE OF AUTHORITIES

CASES

*Bailey v. State*, 469 S.W.3d 762 (Tex. App.—Houston [1st Dist.] 2015, pet)----------------------10

*Bucklew v. St. Clair*, No. 3:18-CV-2117-N (BH), 2019 U.S. Dist. LEXIS 109580 (N.D. Tex. May 29, 2019) -------------------------------------------------------------------------------17

*Coghlan v. Starkey*, 852 F.2d 806 (5th Cir. 1992)--------------------------------------------------18

*Franklin Ctr. for Gov't & Pub. Integrity v. Univ. of Tex. Sys.*, NO. 03-19-00362-CV, 2020 Tex. App. LEXIS 10123 (Tex. App.—Austin [3d Dist.] Dec. 22, 2020, pet. filed) ----------14, 15, 16

*Grasso v. O'Connor*, 41 Va. Cir. 193 (Va. Cir. 1996)-------------------------------------------11

*Huie v. DeShazo*, 922 S.W.2d 920 (Tex. 1996)----------------------------------------------------13

*In re Itron*, 883 F.3d 553 (5th Cir. 2018) ------------------------------------------------------10

*In re Stone*, 986 F.2d 898 (5th Cir. 1993)-------------------------------------------------------17

*McKinney/Pearl Rest. Partners, L.P. v. Metro Life Ins. Co.*, 322 F.R.D. 235 (N.D. Tex. 2016)-- 9

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990) ------------ 9

*Nalco Co., Inc. v. Baker Hughes, Inc.*, NO. 4:09-CV-1885, 2017 U.S. Dist. LEXIS 111127 (S.D. Tex. July 18, 2017)------------------------------------------------------------------------ 9

*Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467 (N.D. Tex. 2004) -------------------------13

*OrchestrateHR, Inc. v. Trombetta*, 178 F. Supp. 3d 476 (N.D. Tex. 2016)-------------------------18

*Theranos, Inc. v. Fuisz Technologies, Ltd.*, No. C 11-5236 PSG, 2013 U.S. Dist. LEXIS 70564 (N.D. Cal. May 16, 2013) ----------------------------------------------------------------- 9

*Turfgrass Grp., Inc. v. Ne. La. Turf Farms, LLC*, No. CIV.A. 10-1354, U.S. Dist. LEXIS 166570 (W.D. La. Nov. 20, 2013)-----------------------------------------------------------------18

*Vesilind v. Va. State Bd. of Elections*, 91 Va. Cir. 490 (Va. Cir. Ct. 2016) -----------------------9, 10

*Walton v. Mid-Atlantic Spine Specialists, P.C.*, 649 S.E.2d 545 (Va. 2010) -----------------------14

STATUTES

VA. CODE ANN. § 8.01-420.7(a) (2021)-----------------------------------------------------------9, 10

Rules

Fed R. Evid. 502(a)(l) ------------------------------------------------------------------ 9

Fed. R. Civ. P. 37(a)(3)(B)(iv) ------------------------------------------------------ 9

Tex. R. Evid. 503(a)(4) --------------------------------------------------------------- 15

Tex. R. Evid. 503(b) ------------------------------------------------------------------ 13

Tex. R. Evid. 503(b)(1)B) ------------------------------------------------------------ 16

Tex. R. Evid. 511(b)(1) --------------------------------------------------------------- 9

TO THE HONORABLE JUDGE TOLIVER:

Pursuant to the Honorable Magistrate Judge Toliver's Standing Order (ECF 62), dated March 10, 2020 (the "*Standing Order*"), Defendant/Counter-Plaintiff Ackerman McQueen, Inc. ("*AMc*") and the National Rifle Association of America (the "*NRA*") file this *Supplemental Joint Report on Ackerman McQueen, Inc.'s Motion to Compel Forensic Risk Alliance Documents* (the "*Supplemental Report*" to the "*Original Report*" on the "*Motion*").

Various iterations of counsel for AMc and counsel for the NRA conferred by several different means since 2019 regarding the NRA's request for the documents relating to the audit by Forensic Risk Alliance, including Brian E. Mason, Christina M. Carroll, and Kelsey M. Taylor for AMc and Cecelia Fanelli, Sarah Rogers, and Alessandra Allegretto for the NRA. Additionally, AMc submitted its original Motion (ECF 54, 55) on February 26, 2020, which it included in the parties' Joint Report (ECF 180) on October 23, 2020, pursuant to the Court's order (ECF 169) dated September 23, 2020. Since then, new information has arisen requiring this Supplemental Report, including recent deposition testimony and the NRA's latest selective production of certain FRA documents. The NRA attempted to reach agreement with AMc to stipulate that its production would not be a subject matter waiver; AMc repeatedly refused. AMc advised the NRA numerous times, including on September 24 and October 8, 2021, that its production would be a subject matter waiver and requested the NRA produce all previously withheld FRA documents, which the NRA refused.

The attorneys considered the nature and basis of their claims and defenses to the arguments made herein and jointly developed this report. The parties' views and requests for relief are as follows:

# I.   <u>INTRODUCTION</u>

## A.   AMc's Position

During a hearing in the Virginia Action [1] on November 13, 2019, NRA counsel [2] represented to that court:

> We're not offering any conclusions or opinions by FRA regarding its – what it believes about how the examination occurred, simply the facts of what happened… There is no audit report. It wasn't an audit. **A report wasn't done**… **So the – there is no assertion of privilege over an audit report**.[3]

Oddly enough, NRA counsel[4] stated before the District Court in this case for the very first time on September 16, 2021 that it would produce the Forensic Risk Alliance ("***FRA***") draft report on the condition there is no subject matter waiver of privilege[5] – *i.e.*, there is a report over which the NRA asserted privilege after all.

When the Virginia court directly asked NRA counsel, "During that deposition [of the FRA's corporate representative, Michael Trahar] and during all of the discovery in this matter, have you ever provided to any defendants or have they ever requested a copy of the report by FRA?" NRA counsel unequivocally stated, "**There is no report**."[6]  Based on NRA counsel's repeated false representations, the Virginia court came to mistakenly believe there was no report.[7]

---

[1] The above-captioned lawsuit is hereinafter referred to as the "***Texas Action***."  The three lawsuits entitled *National Rifle Association of America v. Ackerman McQueen, Inc. and Mercury Group, Inc.* filed in the Circuit Court for the City of Alexandria, Cause Nos. CL19001757, CL19002067, and CL19002886, are hereinafter referred to as the "***Virginia Action***."

[2] NRA counsel at the hearing was James Hundley and Robert Cox (Briglia Hundley, P.C.) and Michael Collins (Brewer Attorneys & Counselors (the "***Brewer Firm***"), former lead counsel of record before he separated from the Brewer Firm).  It is undisputed that Bill Brewer is the NRA's lead litigation counsel despite not making a formal appearance in these lawsuits.  *See, i.e.*, ECF 61 at 1 ("The dispute centers on Defendants' efforts to attempt to disqualify indirectly ***the NRA's lead litigation counsel, Mr. William Brewer III***…") (emphasis added).

[3] **Ex. 1-A**, Virginia Action Hr'g Tr. (Nov. 13, 2019) at 63:2-65:1 (emphasis added).

[4] In this action, the NRA's sole counsel is the Brewer Firm.

[5] *See* **Ex. 1-B**, Texas Action Hr'g Tr. (Sep. 16, 2021) 30:15-31:8.

[6] **Ex. 1-A**, Virginia Action Hr'g Tr. (Nov. 13, 2019) at 70:10-14 (emphasis added), 71:14-72:6.

[7] *Id.* at 72:7-8 ("I keep hearing the word 'report.'  I mean, obviously, there is no report.").

---

After AMc's counsel explained to the court that "[t]here was something that was…shown on the screen to NRA officials but never provided to them in paper," some type of "report that was issued over a computer screen to NRA members and they're trying to bury it,"[8] NRA counsel dug in his heels even deeper.  The Virginia court asked directly, "Was there a report on the computer screen?" to which NRA counsel responded, "No, Your Honor."[9]

The court never saw any of the withheld documents and never made a finding on whether the documents were, in fact, privileged or properly shielded by the work product doctrine.  Instead, the court simply denied the motion to compel and acknowledged on the record that AMc would come back to the court because it has to be able to defend itself: "I think we may ultimately have to kind of deal with this in the sense that they're entitled to defend this case… I'm sure that I will see you again."[10]  The Virginia Action was stayed before AMc had the opportunity to revisit the issue for trial.

Exposing the falsity of NRA counsels' statements in open court, the NRA's General Counsel, John Frazer ("*Frazer*"), testified on August 19, 2021 that (1) the NRA is relying on the FRA's findings in support of multiple claims[11] and (2) FRA presented reports and findings to the NRA on a computer screen by Zoom:

> Q:     And when the FRA audit ended, what actions did FRA take at that point?
>
> A:     They presented some of their findings to us.
>
> **Q:     How did they present their findings to you?**
>
> **A:     On a Zoom call.**  I think it was the first Zoom call I had ever participated in.
>
> Q:     When you say FRA presented findings to us, who is us?

---

[8] *Id.* at 72:9-17.
[9] *Id.* at 72:18-20.
[10] *Id.* at 81:1-8.
[11] *See* **Ex. 1-C**, J. Frazer Dep. (Aug. 19, 2021) at 69:14-15, 70:1, 70:18-19, 70:21, 71:1-2, 71:7-12

> A:  I participated in it **and Sarah Rogers from the Brewer Firm participated**…[12]

When AMc's counsel attempted to discover whether FRA provided a report, Frazer quibbled with the terminology "report," and, more egregiously, counsel instructed him not to answer the question seeking underlying facts, "Did FRA present any documents on the Zoom meeting at the end of the FRA audit?"[13]

On September 16, 2021, however, and with no prior notice or discussion with AMc, NRA counsel represented to the District Court that "FRA generated a report with its findings" and that the NRA would produce the report upon a stipulation that such production is not a subject matter waiver.[14]  AMc repeatedly advised the NRA that it would not agree to selective production and that any selective production would amount to subject matter waiver.[15]  Disregarding that stance and choosing to waive its purported privileged, the NRA instructed FRA to produce the documents anyway – and not just one report, but *six*.[16]  Those reports clearly include findings or conclusions, termed "Observations," about the audit and the documents provided.[17]  Not only is it disingenuous of NRA counsel here to suggest the Virginia court made any finding as to privilege, it is grossly misleading to continually refer to that ruling that was based on counsel's patent falsehoods.

AMc pursues this Supplemental Report to present to the Court the NRA's blatant and tactical inconsistencies and to request relief from the Court, specifically (1) to compel the NRA to produce all previously withheld FRA-related documents[18] and present its witnesses to testify on the FRA topics they were previously instructed not to answer, and to provide the parties additional

---

[12] *See id.* at 63:16-17, 63:21-22, 64:2-11.
[13] *See id.* at 67:12-13, 67:16-19, 67:22-68:3, 68:5-69:1.
[14] *See* **Ex. 1-B**, Texas Action Hr'g Tr. (Sep. 16, 2021) 30:15-31:8.
[15] *See* **Ex. 1-E**, Letter to S. Rogers (Oct. 8, 2021) at 2; **Ex. 1-F**, Letter to S. Rogers (Sep. 24, 2021) at 1-2.
[16] *See e.g.*, **Ex. 1-G** (NRA_AM_FRA_0013873).
[17] *See e.g., id.* at sheet entitled "Observations."
[18] For the avoidance of doubt, this includes all documents withheld on the FRA Privilege Log, *see* ECF 56 at Ex. A-11 [APP639-APP675], and the NRA's most recent Second Amended Privilege Log, attached hereto as **Ex. 1-H**.

time to conduct a deposition of an FRA representative, or alternatively, to exclude any reference (argument, document, testimony) regarding FRA and the FRA / 2019 audit at the time of trial; and (2) to impose sanctions upon the NRA and its counsel for this prolonged discovery abuse.

**B.     The NRA's Position**

[The NRA has not responded.]

## II.     MATTERS RESOLVED BY AGREEMENT

None.   The Parties were unable to reach agreement regarding the NRA's waiver of privilege relating to the FRA documents or its production of all FRA-related documents previously withheld for the last two years.

## III.     MATTERS TO BE HEARD AND DETERMINED

**A.     AMc's Position**

Despite conferences with the NRA's counsel over the last two years about the FRA documents, including AMc's stance on the NRA's subject matter waiver and including recent conferences and letters exchanged between counsel in September and October 2021, AMc has been unable to reach an agreement.   AMc moves the Court (1) to compel the production of all FRA-related documents withheld on the basis of privilege, to compel the continued depositions of deponents previously instructed not to answer questions relating to the FRA audit, and to permit the parties additional time to continue the deposition of an FRA representative, or alternatively, to exclude any reference (argument, document, testimony) regarding FRA and the FRA / 2019 audit at the time of trial; and (2) to impose sanctions upon the NRA and its counsel for its continuous discovery abuse.

**B.     The NRA's Position**

[The NRA has not responded.]

## IV.   BACKGROUND FACTS

A.   **AMc's Position**

### 1.   NRA Audits of AMc's Books and Records and Fraudulent Promise to AMc

Detailed in AMc's Second Amended Counterclaim,[19] beginning in September 2018, the NRA requested to audit AMc's books and records outside of the NRA's customary annual process. The Brewer Firm managed the first audit, including Susan Dillon, the Brewer Firm's Director of Consulting who had worked at the Brewer Firm for *seventeen years*.[20]

Prior to that time, Brewer had fallen into a steady pattern of harassment and threats with respect to AMc, including threats to indict AMc executives and to have the FBI raid AMc offices.[21] That issue of harassment and threats was one of the main topics of discussion during an October 11, 2018 meeting between AMc and NRA executives, including Wayne LaPierre ("*LaPierre*"), where LaPierre promised that Brewer and his firm would no longer be involved with AMc.[22]  Thus, when LaPierre said the NRA needed another audit as part of its litigation concerning the failed Carry Guard program, AMc welcomed an independent auditor or law firm to its office.[23]  Indeed, the Cooper Kirk firm handled the second audit in November 2018 without complaint.[24]

The NRA then insisted on a *third* audit in early 2019 to be conducted by "independent" third-party accounting firm, Forensic Risk Alliance.[25]  AMc learned well after the nine-day audit concluded that the Brewer Firm's Susan Dillon "just so happened" to work at FRA during the audit *and participated in the AMc audit the entire time*.[26]  It is the NRA's fraudulent promise of no

---

[19] *See* ECF 241, AMc's 2d Am. Countercl. ¶¶ 67-90.
[20] For additional allegations of Susan Dillon's involvement, *see* ECF 241, AMc's 2d Am. Countercl. ¶¶ 84-87.
[21] *See e.g.*, *id.* at ¶¶ 69, 72-74.
[22] *See e.g.*, *id.* at ¶¶ 71, 76-78.
[23] *See e.g.*, *id.* at ¶ 78.
[24] *See e.g.*, *id.* at ¶ 80.
[25] *See e.g.*, *id.* at ¶ 84.
[26] *See e.g.*, *id.* at ¶¶ 85-87; ns. []-[], *infra*.

involvement by Brewer or his firm, which the NRA violated by having Susan Dillon facilitate the FRA audit, that is the basis of some of AMc's claims.[27]

### 2. NRA Reliance on FRA for Lawsuits against AMc

Mere weeks after the FRA audit in 2019, the NRA sued AMc for the first time on April 12, 2019 in Virginia for breach of the books and records examination clause of the parties' Services Agreement. According to the NRA, when AMc was allegedly not complying with the examination clause, it hired FRA to review AMc's books and records,[28] including issues with "fraudulent billing" and out-of-pocket expenses and back-up documentation for invoices. More pointedly, the NRA's General Counsel, John Frazer, testified unequivocally on August 19, 2021 that the NRA is relying on findings by FRA in support of several claims, including for the "fraudulent billing" and documentation issues.[29] Stated differently, it is undisputed that the NRA initiated litigation against AMc in April 2019 based in part on the results of the FRA audit.[30]

### 3. NRA False Representations to the Courts

NRA counsel stated several times in open court in the Virginia Action, including in response to direct questions from the judge, that no FRA report existed, no FRA report was shown to the NRA via remote means, no privilege was being asserted over an FRA report, FRA did not issue findings or conclusions, and the NRA was not relying on any FRA report in support its claims.[31] Counsel made those repeated representations despite the fact that the Brewer Firm participated in the very Zoom meeting(s) where the FRA reports were shown,[32] which reports

---

[27] *See e.g.*, *id.* at ¶¶ 208-13 (Count Two – Defamation), ¶¶ 224-31 (Count Five – Fraud), ¶¶ 232-39 (Count Six – Conspiracy).
[28] *See* ECF 209, NRA 2d Am. Compl. ¶ 68.
[29] **Ex. 1-C**, J. Frazer Dep. (Aug. 19, 2021) at 69:14-15, 70:1, 70:18-19, 70:21, 71:1-2, 71:7-12.
[30] *See generally*, Orig. Compl. in the Virginia Action (Apr. 12, 2019).
[31] *See* Supp. Report § I (A) Introduction, AMc's Position, quoting and citing **Ex. 1-A**, Virginia Action Hr'g Tr. (Nov. 13, 2019) at 63:2-65:1, 70:10-14, 71:14-72:6, 72:18-20.
[32] *See* **Ex. 1-C**, J. Frazer Dep. (Aug. 19, 2021) at 63:16-17, 63:21-22, 64:2-11.

included FRA findings and conclusions ("Observations"),[33] and which reports are being used to support the NRA's claims, as confirmed by the NRA's own General Counsel.[34]

AMc also previously clarified to the District Court another misleading representation by NRA counsel concerning FRA: the NRA made representations to the District Court that Susan Dillon was not involved with the FRA review of AMc documents, which misrepresentations the NRA filed under seal even though the particular statements contain no confidential information. For example, FRA Director, Michael Trahar, suggested in his sealed affidavit that Susan Dillon did not work on the AMc matter,[35] which is patently false.  In her own sealed affidavit, Dillon misleadingly distinguishes *where* she worked on the AMc matter at FRA, not *whether* she worked on the AMc matter.[36]  But the evidence unequivocally shows Dillon (a) coordinated the FRA-AMc review while she worked at FRA,[37] shortly after leaving the Brewer Firm, (b) where she also participated in the prior September 2018 NRA-AMc audit conducted by the Brewer Firm,[38] and (c) she even repeatedly interfaced directly with the Brewer Firm and the NRA concerning the FRA-AMc audit.[39]  The successive, misleading representations to multiple courts is concerning, in the least, and warrants swift action to avoid any further prejudice to AMc.

**B.      The NRA's Position**

[The NRA has not responded.]

---

[33] *See e.g.*, **Ex. 1-G**, sheet entitled "Observations" (NRA_AM_FRA_0013873).
[34] *See* **Ex. 1-C**, J. Frazer Dep. (Aug. 19, 2021) at 69:14-15, 70:1, 70:18-19, 70:21, 71:1-2, 71:7-12.
[35] *See* ECF 161, Appendix in Support of NRA's Surreply to AMc's Motion to Disqualify, at Ex. 1 ¶ 6.
[36] *See id.* at Ex. 2 ¶ 9.
[37] Discovery has unearthed emails to this effect.  For reference to AMc's allegations on this issue, *see* ECF 241, AMc's 2d Am. Countercl. ¶ 87.
[38] *Id.* at ¶ 84.
[39] *Id.* at ¶ 85.

## V.   ARGUMENTS & AUTHORITIES

### A.   AMc's Position

In sum, the NRA has waived privileged by intentionally disclosing documents on a selective and tactical basis and has otherwise failed to establish privilege—and acted contrariwise—by breaking the required confidentiality of the document or communication and by failing to communicate for legal advice.

#### 1.   Legal Standard.

As described in AMc's original Motion, a party requesting production of documents may compel production when the responding party refuses to produce.[40]  The party resisting discovery must show specifically how each discovery request is not relevant or is otherwise objectionable.[41]

#### 2.   The NRA Waived Privilege as to the Entire FRA Subject Matter.

Selective waiver for a tactical advantage against an adversary results in subject matter waiver for *all* privileged communications within the category at issue.[42]  As stated clearly by the Fifth Circuit:

> By definition, the attorney-client privilege protects only confidential communications.  By disclosing such communications to third parties – such as by revealing them in open court – the client waives the privilege.  And to prevent

---

[40] *See* ECF 55, Mot. at 5 (citing FED. R. CIV. P. 37(a)(3)(B)(iv)).

[41] *Id.* (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990); *McKinney/Pearl Rest. Partners, L.P. v. Metro Life Ins. Co.*, 322 F.R.D. 235, 242 (N.D. Tex. 2016)).

[42] *See* FED R. EVID. 502(a)(l); TEX. R. EVID. 511(b)(1); VA. CODE ANN. § 8.01-420.7(a) (2021); *Vesilind v. Va. State Bd. of Elections*, 91 Va. Cir. 490, 495–96 (Va. Cir. Ct. 2016).  *See also Nalco Co., Inc. v. Baker Hughes, Inc.*, NO. 4:09-CV-1885, 2017 U.S. Dist. LEXIS 111127, at *12–13 (S.D. Tex. July 18, 2017) (finding that a subject matter waiver of privileged material would be found after party claiming privilege produced a privileged email redacting some sentences but leaving other unredacted because the party claiming privilege "should not be allowed to pick and choose which privileged communications to disclose to obtain a tactical advantage"); *Theranos, Inc. v. Fuisz Technologies, Ltd.*, No. C 11-5236 PSG, 2013 U.S. Dist. LEXIS 70564, at *15-16 (N.D. Cal. May 16, 2013) ("Absent an opportunity to review other documents on the same subject matter to ascertain the context of the disclosed communications, Theranos cannot rebut the inferences Fuisz Technologies may draw from the contents of the emails it has disclosed.  This type of imbalance is the kind of prejudice against which Rule 502(a), and the waiver doctrine generally, protects.  Theranos thus is entitled to disclosure of other emails and communications on those subjects, up to an including all of the communications… **[Fuisz] cannot rely on the waiver as a means to shield other relevant communications** from the same subject matter that Fuisz willfully disclosed.  Fuisz may have chosen a representative sample of communications **or he may have cherry-picked selective communications that are favorable to him. The court cannot tell which was Fuisz's motivation, and that is why disclosure is necessary.**" (emphases added)).

---

selective or misleading disclosures, fairness dictates that the waiver extend to related subject matter.  Hence the animating maxim that the privilege cannot 'be used as both sword and shield.'[43]

Under Texas law, "a privilege may not be waived selectively to disclose only such evidence as may be beneficial to the party holding the privilege,"[44]  Further, "consent to disclosure of 'any significant part' of a privileged matter may constitute waiver of the whole."[45]  According to Virginia law, a full subject matter waiver of material claimed to be privileged is warranted when there has been a significant disclosure of that material to a third party.[46]

When the NRA randomly offered during the hearing before the District Court, and for the following weeks thereafter, to produce to AMc certain FRA reports that AMc had been seeking for more than two years, AMc advised the NRA that its selective production would result in subject matter waiver.[47]  NRA counsel repeatedly attempted to reach agreement with AMc that production would not be waiver, which AMc steadfastly refused.  NRA counsel provided no reason for why the NRA decided to produce the documents all of a sudden after two years of wasted time and money.  Despite AMc's refusal to stipulate as to no waiver, the NRA then went to FRA and instructed them to produce the documents anyway, which amounts to waiver of its own alleged privilege.[48]

It is evident that the NRA has relied, and intends to continue relying, upon the FRA draft reports to support its claims in a pure tactical maneuver.  On the one hand, the NRA's General Counsel Frazer admitted as much.  On the other hand, by instructing FRA to produce the reports to AMc, a third party, the NRA waived any privilege it may have had over the FRA documents.

---

[43] *In re Itron*, 883 F.3d 553, 556 (5th Cir. 2018).
[44] *Bailey v. State*, 469 S.W.3d 762, 774-75, n. 14 (Tex. App.—Houston [1st Dist.] 2015, pet).
[45] *Id.* at 774.
[46] *See Vesilind*, 91 Va. Cir. at 496; *see also* VA. CODE ANN. § 8.01-420.7(a).
[47] *See e.g.*, **Ex. 1-E**, Letter to S. Rogers (Oct. 8, 2021) at 2; **Ex. 1-F**, Letter to S. Rogers (Sep. 24, 2021) at 1-2.
[48] *See* **Ex. 1-I**, FRA's Responses and Objections to Third Party Subpoena served by AMc (Dec. 17, 2019) (including objections on the basis of privilege).

The NRA also decided to provide the reports to at least one of its experts, who amended his report based on the FRA documents, which demonstrates the strategic advantage the NRA sought from its selective production.

The NRA's conduct surrounding its selective production of the FRA reports also raises the specter that the NRA's limited disclosure is tailored to mislead AMc.  The NRA represented in the Virginia Action two years ago that no such FRA report existed.  Now however, the NRA has admitted such a report exists – six of them – and wants to produce them only if doing so does not lead to a subject matter waiver to impact its other strategically withheld documents.  Given NRA's evasiveness on this issue for the past two years, which has resulted in AMc incurring further litigation costs, AMc cannot help but view the NRA's meticulous attempts to hide these documents as a calculated maneuver to prevent AMc from mounting a complete defense against the NRA's claims.  In fairness to AMc, including so that it can fully prepare its defense to the NRA's fundamental claims and purported expert opinions that rely upon the FRA audit, the waiver must extend to the entire subject matter.

### 3.  The NRA Confirmed Its Sword and Shield Use of the FRA Documents.

As outlined in the Original Report, offensive use (also known as the sword-and-shield doctrine) of the attorney-client privilege or work product doctrine will result in waiver. [49] Additionally, when a party "put[s] in issue the very subject matter of the communications [that party] is trying to protect, she has impliedly waived the privilege." [50]  AMc previously briefed how the NRA violated the offensive use doctrine.  However, new information surfaced since the time of the Original Report, requiring this Supplement, namely the confirmation from the NRA's

---

[49] *See* ECF 55, Mot. at 6-7; ECF 180, Orig. Report at 38.
[50] *Grasso v. O'Connor*, 41 Va. Cir. 193, 193 (Va. Cir. 1996).

General Counsel, John Frazer, that the NRA is still engaging in offensive use. For example, in the August 19, 2021 deposition of John Frazer, the following exchange occurred:

> Q:     Is the NRA relying on the FRA audit in support of its claims in this lawsuit?
>
> A:     Yes.
>
> Q:     Mr. Frazer, are you aware of what claims the NRA is using the FRA audit to support?
>
> A:     Yes.
>
> Q:     What claims is the NRA using the FRA audit to support?
>
> A:     The – I think that the – I think that we're relying on findings from FRA with respect to a couple of things in particular, for example, the out-of-pocket expenses that were sometimes vague, didn't include any detail as to the business purpose that was served or why the NRA should reimburse them.[51]

AMc's counsel asked a follow-up question to Frazer's testimony – *i.e.*, what other claims the NRA is using the FRA audit to support – but NRA counsel repeatedly objected on the basis of privilege, instructing Frazer not to answer.[52] Nevertheless, what AMc's counsel gleaned was sufficient to prove, from the NRA itself, that it is engaging in sword and shield use of the FRA documents by relying upon them in support of its claims while refusing to produce those documents so that AMc can mount its defense. In the NRA's Second Amended Complaint, it describes throughout its pleading AMc's alleged malfeasance relating to the "out-of-pocket" expenses[53] and lacking detail[54] that Frazer referenced. This is the quintessential scenario of offensive use under black letter Fifth Circuit law and should not be permitted. In addition to the other reasons described herein, AMc moves the Court to grant its requested relief.

---

[51] **Ex. 1-C**, J. Frazer Dep. (Aug. 19, 2021) at 69:14-15, 70:1, 70:18-19, 70:21, 71:1-2, 71:7-12.

[52] *Id.* at 71:18-76:8.

[53] *See e.g.*, ECF 209, NRA 2d Am. Compl. ¶¶ 59, 93, 94.

[54] *See e.g.*, *id.* at ¶¶ 148-54 (Count Four: Fraud relating to "fraudulent billing"), ¶ 167 (Count Five: Breaches of Fiduciary Duty relating to alleged fraudulent billing and lacking detail).

### 4.   **The NRA Confirmed the FRA Documents Are Not Privileged.**

Aside from the above-described waivers, Frazer's deposition also confirmed that, as a threshold matter, no privilege applies to the FRA documents anyway.

***Texas.***   For the state law claims other than breach of contract, such as the NRA's claims for fraud and breach of fiduciary duty, "state law governs privilege."[55]   Under Texas law, the elements for attorney-client privilege are:

(1)    a confidential communication;

(2)    made for the purpose of facilitating the rendition of professional legal services;

(3)    between or amongst the client, lawyer, and their representatives; and

(4)    the privilege has not been waived.[56]

The party asserting the privilege bears the burden of demonstrating "how each document or communications satisfies these elements."[57]   Generally alleging privilege is insufficient.[58]   It protects "only confidential communications made for the purpose of facilitating the rendition of professional legal services to the client."[59]   Documents are not privileged "merely because they were prepared by or sent to an attorney."[60]   And the fact that a party was contemplating litigation does not establish that communications were made for the purpose of rendering legal advice.[61]   The attorney-client privilege in Texas also includes "between the client's lawyer and the lawyer's representative," which is "(A) one employed by the lawyer to assist in the rendition of professional

---

[55] FED. R. EVID. 501.
[56] *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004) (citing *Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996) and TEX. R. EVID. 503(b)).
[57] *Id.*
[58] *Id.*
[59] *Id.* at 474.
[60] *Id.*
[61] *Id.* at 476.

legal services; or (B) an accountant who is reasonably necessary for the lawyer's rendition of professional legal services."[62]

**Virginia.**[63]   Similarly in Virginia, the attorney-client privilege is "an exception to the general duty to disclose" and "an obstacle to investigation of the truth," such that it "should be strictly construed."[64]   The party asserting the privilege bears the burden of establishing "that the attorney-client relationship existed, that the communication under consideration is privileged, and that the privilege was not waived."[65]

To illustrate, the University of Texas ("**UT**") hired Kroll Associates ("**Kroll**") to "act as the independent firm to review [UT's] admissions process" following public allegations of improprieties in the school's admissions procedures.[66]   The agreement between UT and Kroll "required Kroll to submit a final report to UT's General Counsel that describes the investigation methods employed and reports the investigator's factual findings."[67]   Following its investigation, Kroll produced a "101-page report detail[ing] Kroll's findings, provid[ing] its recommendations, and suggest[ing] best practices."[68]   After the report's publication, Franklin Center made a request under the Texas Public Information Act to obtain "all emails, interview transcripts and other documents provided to or obtained by Kroll investigators as part of their audit of admissions."[69]   The parties thus fought over whether these documents were privileged, and the

---

[62] TEX. R. EVID. 503(a)(4) & (b)(1)B).
[63] The parties have not briefed whether Virginia law applies to any claims in the lawsuit.  AMc includes Virginia law here in an abundance of caution relating to the breach of contract claim.
[64] *Walton v. Mid-Atlantic Spine Specialists, P.C.*, 649 S.E.2d 545, 549 (Va. 2010).
[65] *Id.* at 122-23.
[66] *Franklin Ctr. for Gov't & Pub. Integrity v. Univ. of Tex. Sys.*, NO. 03-19-00362-CV, 2020 Tex. App. LEXIS 10123, at *1, *5 (Tex. App.—Austin [3d Dist.] Dec. 22, 2020, pet. filed).
[67] *Id.* at *7.
[68] *Id.* at *8.
[69] *Id.*

dispositive issue, according to the court, was whether Kroll acted as a "'lawyer representative—i.e., one 'employed by the lawyer to assist in the rendition of professional legal services.'"[70]

The court held that Kroll was not a "lawyer representative," resulting in a waiver of privilege as to the documents that UT provided to Kroll and finding no privilege covered the "interview questions and notes Kroll created when conducting its investigations."[71]  The court reasoned that "Kroll was hired to conduct an independent investigation and provide recommendations for policy and procedural changes" to UT's admissions procedure.[72]  Moreover, the court noted that Kroll's "Final Report includes no legal advice" and that it was "undisputed that the Kroll investigation was undertaken to determine <u>facts, practices, and policies</u> relating to admissions . . . The fact that [UT's general counsel] reviewed the Final Report to make separate decisions about whether to take disciplinary action against any officers or employees does not convert Kroll's investigation into one done for the purpose of facilitating the rendition of legal services."[73]

Here, FRA was not retained by the Brewer Firm to render legal advice, meaning it was not a legal representative entitled to any privilege protections.[74]  Instead, the NRA hired FRA, and understandably so: had the Brewer Firm retained FRA, the fraud would be even more evident, considering the NRA promised AMc that the Brewer Firm would not be involved.

As in *Franklin Center*, where a fact investigator's report and related materials, including notes, were not privileged because the investigator was not a legal representative, even though the general counsel may have used the investigator's documents to pursue legal action later, so too

---

[70] *Id.* at *17.
[71] *Id.* at *25.
[72] *Id.* at *20.
[73] *Id.* at *22-23 (emphasis added).
[74] *See* TEX. R. EVID. 503(a)(4) & (b)(1)B).

here are FRA's materials not privileged because it served only as a fact investigator.  Tellingly, as Frazer testified on January 16, 2020,[75] and confirmed on August 19, 2021,[76] the NRA retained FRA "to conduct a factual examination and, you know, report the facts."[77]  In other words, FRA did not provide any specialized knowledge that the Brewer Firm required in rendering legal advice to the NRA.  To the contrary, FRA's work was no more than reviewing documents and transcribing its findings,[78] which the NRA has said for years it was not relying on anyway.  Because FRA was not necessary in giving the NRA legal advice (and thus was not a legal representative under the second prong of Texas Rule of Evidence 503),[79] in addition to the waiver described above, the NRA cannot demonstrate any privilege applies.  Just because a lawyer decided to use the FRA reports as a basis for the NRA's lawsuits against AMc does not render *any* FRA document privileged.[80]  In fact, the only way for the NRA to prove the FRA documents were created to render legal advice is by admitting the NRA was contemplating litigation against AMc and used the FRA audit as a litigation fact-finding exercise, contrary to what it had represented to AMc at the time.

### 5. The NRA's Actions Warrant Additional Depositions.

Evident in the deposition excerpts provided herein and prevalent throughout a number of others, the NRA's counsel has obstructed AMc's discovery of facts relating to the NRA's claims in order to prepare its own defense.  Not only has the NRA withheld more than 1,600 relevant documents as part of the FRA privilege log, it also refused to respond to questions on the topic.  Considering the FRA documents are relevant, including because the NRA is affirmatively relying

---

[75] *See* **Ex. 1-D**, J. Frazer Dep. (Jan. 16, 2020) at 365:20-21, 366:1-5.
[76] *See* **Ex. 1-C**, J. Frazer Dep. (Aug. 19, 2021) at 85:14-16, 85:20.
[77] *See Franklin Ctr.*, 2020 Tex. App. LEXIS 10123, at *7 (describing how Kroll was hired to review facts – UT's admissions process – and report its findings).
[78] *See id.* at *8 (describing the Kroll report that detailed its findings, recommendations, and best practices).
[79] *See* TEX. R. EVID. 503(a)(4) & (b)(1)B).
[80] *Id.* at *22-23.

upon them in support of its various claims, there is no question that AMc must have the opportunity to question witnesses about FRA *without obstruction*. AMc already questioned John Frazer (NRA General Counsel), Susan Dillon (former Brewer Firm employee who audited AMc in September 2018[81] and then joined FRA to audit AMc in February 2019 and then ultimately rejoined the Brewer Firm), and Michael Trahar (FRA representative), but all three depositions were continually interrupted by improper privilege assertions or otherwise long, narrative objections that were disruptive to the process, violated Federal Rule of Civil Procedure 30(c)(2), and amounted to coaching the witness. The NRA's repeated abuses and its most recent production of FRA documents (including its subject matter waiver) warrants additional time with these witnesses specifically on the FRA topic.

To that end, AMc respectfully requests the Court (a) provide AMc additional time to continue these three depositions and (b) compel the NRA to present John Frazer and Susan Dillon within 14 days of the entry of the Court's order. Additionally, AMc requests the Court order that none of these witnesses can refuse to answer, and neither can the NRA's counsel instruct the witnesses not to answer, on the basis of privilege.

### 6.   Sanctions Are Warranted for the NRA and Its Counsel's Years-Long Abuse.

A court may levy sanctions against a lawyer for deplorable conduct under the court's inherent authority.[82] The court must find the lawyer acted in bad faith,[83] which "'is not simply bad judgment or negligence, but rather implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . .it contemplates a state of mind affirmatively operating

---

[81] *See* ECF 325, Exhibits to Joint Report on AMc's Motion to Compel Deposition of William A. Brewer III, at Ex. A-2, Email from J. Frazer to S. Rogers (Sep. 14, 2018) [APP007-APP009]
[82] *Bucklew v. St. Clair*, No. 3:18-CV-2117-N (BH), 2019 U.S. Dist. LEXIS 109580, at *9 (N.D. Tex. May 29, 2019) (quoting *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993)).
[83] *Id.*

with furtive design or ill will.'"[84]  Bad faith also includes conduct "motivated by improper purposes such as harassment or delay."[85]

As set forth herein, the NRA and its counsel engaged in patent bad faith conduct for the last two years by making false representations to AMc and to two courts.[86]  Beginning in the Virginia Action, the NRA stated no reports exists, no reports were shown to the NRA, and the NRA was not relying upon any findings, conclusions, or opinions from FRA.  The NRA has maintained that stance for the last two years, including in this case.  The NRA also represented to the District Court that the Virginia court "found" the FRA documents to be privileged, which is also false.  Instead, recent discovery in the Texas Action revealed there were *six* reports, certain reports were shown to the NRA via Zoom, and the NRA is relying upon FRA's findings, conclusions, and opinions expressed in its reports in the "Observations" tabs.  The NRA has taken it a step further and now provided the reports to its experts, at least one of whom supplemented his report to recite from and rely upon the FRA reports – a clear tactical litigation strategy.  The NRA's counsel cannot provide any plausible defense or explanation for misleading two courts and opposing counsel, or for its about-face after its lie was exposed.  Accordingly, AMc requests an order imposing sanctions against the NRA, including, but not limited to, requiring the NRA to pay for any costs and expenses associated with the subsequent depositions of John Frazer, Susan Dillon, and the FRA representative.

## B.    The NRA's Position

[The NRA has not responded.]

---

[84] *Id.* at *10 (quoting *Turfgrass Grp., Inc. v. Ne. La. Turf Farms, LLC*, No. CIV.A. 10-1354, U.S. Dist. LEXIS 166570, at *3 (W.D. La. Nov. 20, 2013)).

[85] *Id.* (citing *Coghlan v. Starkey*, 852 F.2d 806, 814 (5th Cir. 1992)).

[86] *See OrchestrateHR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 487 (N.D. Tex. 2016) (finding that sanctions were warranted where defense counsel made representations to plaintiff's counsel that proved to be false).

# VI.    PRAYER FOR RELIEF

## A.    AMc's Position

AMc respectfully requests this Court grant its motion; compel the NRA to produce all previously withheld FRA-related documents within three (3) days of the entry of the Court's order compel the NRA to present its witnesses to testify on the FRA topics they were previously instructed not to answer within fourteen (14) days of the entry of the Court's order, specifically John Frazer and Susan Dillon; provide the parties additional time to conduct a deposition of an FRA representative; or alternatively, to exclude any reference (argument, document, testimony) regarding FRA and the FRA / 2019 audit at the time of trial.  AMc also requests this Court impose sanctions upon the NRA and its counsel for their two-year long abusive discovery tactics that resulted in hours of wasted effort and attorneys' fees spanning two different jurisdictions and two different law firms representing AMc, including, but not limited to, requiring the NRA to pay for any costs and expenses associated with the subsequent depositions of John Frazer, Susan Dillon, and the FRA representative.  AMc requests any further relief, at law or in equity, to which it may be justly entitled.

## B.    The NRA's Position

[The NRA has not responded.]

Dated: October 29, 2021

Respectfully submitted,

*/s/ Brian E. Mason*
**Brian E. Mason**
Texas Bar No. 24079906
mason.brian@dorsey.com
**G. Michael Gruber**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**Jay J. Madrid**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**J. Brian Vanderwoude**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2021, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Brian E. Mason*
BRIAN E. MASON

## CERTIFICATE OF CONFERENCE

Counsel for AMc and for the NRA conferred as described on page 1 above.  Counsel for the NRA opposes the relief sought herein.

/s/ Brian E. Mason

BRIAN E. MASON