## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| *Plaintiff and Counter-Defendant,* | § § | |
| v. | § § | **Case No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** | § § | |
| *Defendant and Counter-Plaintiff,* | § § | |
| and | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, AND MELANIE MONTGOMERY** | § § § § | |
| *Defendants.* | § | |

## ACKERMAN MCQUEEN, INC.'S RESPONSE TO THE NATIONAL RIFLE ASSOCIATION OF AMERICA'S MOTION TO COMPEL CERTAIN DOCUMENTS WITHHELD UNDER DEFICIENT CLAIMS OF PRIVILEGE

## <u>TABLE OF CONTENTS</u>

**Contents**

I.  INTRODUCTION ...................................................................................................1

II.  FACTS ...................................................................................................................2

III.  MATTERS TO BE HEARD AND DETERMINED ................................................6

IV.  ARGUMENTS & AUTHORITIES .........................................................................7

A.  AMc has not waived any privilege protections..........................................7

B.  AMc's Second Amended Privilege Log establishes attorney-client
privilege. ..................................................................................................11

C.  AMc's assertions of work product privilege are proper. .......................13

D.  The NRA suffers no undue hardship and has no substantial need for
AMc's protected work product. ..............................................................15

E.  There is no additional discovery to compel. ..........................................17

V.  PRAYER FOR RELIEF .....................................................................................17

## TABLE OF AUTHORIES

*BCC Merch. Sols., Inc. v. Jet Pay, LLC*, No. 3:12-CV-5185-B-BK, 2015 U.S. Dist. LEXIS 187197 (N.D. Tex. 2015) (J. Toliver) ........................................................................... 1

*Cohen v. City of N.Y.*, 255 F.R.D. 110 (S.D.N.Y. 2008) ............................................................ 13

*Fisher v. Halliburton*, No. H-05-1731, 2009 U.S. Dist. LEXIS 152887 (S.D. Tex. Jun. 9, 2009) ...................................................................................................................................... 13

*Ftc v. Grolier, Inc.*, 462 U.S. 19, 103 S. Ct. 2209 (1983) ......................................................... 13

*Gipson v. Southwestern Bell Tel. Co.*, No. 08-2017, 2009 U.S. Dist. LEXIS 25457 (D. Kan. March 24, 2009) ........................................................................................................................ 7

*Highmark, Inc. v. Allcare Health Mgmt. Sys.*, Civil Action No. 4:03-CV-1384-Y, 2006 U.S. Dist. LEXIS 101687 (N.D. Tex. 2006) ...................................................................................... 13

*In re Int'l Sys. & Controls Corp. Sec. Litig*, 693 F.2d 1235 (5th Cir. 1982) .............................. 16

*Jiae Lee v. Dong Yeoun Lee*, No. CV 19-8814 JAK (PVCx), 2021 U.S. Dist. LEXIS 27060 (C.D. Cal. Jan. 27, 2021) .................................................................................................................. 17

*McCoy v. SC Tiger Manor, LLC*, No. 19-723-JWD-SDJ, 2021 U.S. Dist. LEXIS 68783 (M.D. La. Apr. 8, 2021) ...................................................................................................................... 17

*Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467 (N.D. Tex. 2004) ................................ 13

*New Jersey v. Sprint Corp.*, 258 F.R.D. 421 (D. Kan. 2009) ..................................................... 10

*Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999) .......................................................... 10, 11

*NRA v. Andrew Cuomo, et al.*, Case 18-CV-00566 (N.D.N.Y. 2018) ......................................... 14

*NRA v. Lockton Affinity Series of Lockton Affinity, LLC, et al.*, Case 1L18-ch-00639 (E.D. Va. 2018) ........................................................................................................................................ 14

*Osherow v. Vann (In re Hardwood P-G, Inc.)*, 403 B.R. 445 (Bankr. W.D. Tex. 2009). ........... 16

*People of the State Of New York, by Letitia James, Attorney General of the State of New York v. the National Rifle Association of America, Inc., et al.*, Index No. 451625/2020 (N.Y. Comm. Div. 2020). ............................................................................................................................... 14

*Santander Consumer United States, Inc. v. Maywood Motors, Inc.*, Civil Action No. 3:16-CV-2499-B-BK, 2017 U.S. Dist. LEXIS 223443 (N.D. Tex. 2017) (J. Toliver) ............................. 1

*Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271 (W.D. Pa. 2014) .............................. 13

*Sprint Communs.. Co. L.P. v. Big River Tel. Co., LLC*, No. 08-2046-JWL, 2009 U.S. Dist. LEXIS 78249 (D. Kan. Sep. 2, 2009) ............................................................................ 7, 8, 10

*Stanziale v. Career Path Training Corp. (In re Student Fin. Corp.)*, 2006 U.S. Dist. LEXIS 86603 (E.D. Pa. Nov. 29, 2006) ............................................................................... 13

*Upjohn v. United States*, 449 U.S. 383,101 S. Ct. 677 (1981) ...................................................... 12

TO THE HONORABLE MAGISTRATE JUDGE TOLIVER:

Defendant/Counter-Plaintiff Ackerman McQueen, Inc. and Defendants Mercury Group, Inc., Henry Martin, William Winkler, and Melanie Montgomery (collectively, "**AMc**")[1] file this *Response to the NRA's Motion to Compel Certain Documents Withheld Under Deficient Claims of Privilege* (the "**Motion**").[2]

## I.    INTRODUCTION

On December 9, 2020, AMc and the National Rifle Association of America ("**NRA**") exchanged their privilege log in this case.[3]  One month later on January 15, 2021, the NRA filed for Chapter 11 bankruptcy, which effectively stayed a majority of the above-captioned case.[4]  On May 11, 2021, the bankruptcy court dismissed the NRA's Chapter 11 bad faith bankruptcy filing. On August 17, 2021—more than eight months after AMc served its privilege log and after the August 6, 2021 discovery deadline—the NRA conferred with AMc for the first time regarding its purported concerns with AMc's privilege log.  Notably, the NRA's belated inquiry occurred eleven days after the then-controlling August 6, 2021 discovery deadline had passed.[5]  Under the facts of this case and controlling Fifth Circuit precedent, the NRA's complaints were untimely.[6]

However after the discovery deadline was subsequently extended in this matter, AMc undertook exhaustive efforts to resolve the NRA's purported concerns with AMc's privilege log. Initially, on August 17, 2021, the NRA for the first time alleged deficiencies with AMc's

---

[1] Defendants collectively produced a consolidated privilege log.

[2] The body of the NRA's Motion identifies the Motion as a "Joint Report." ECF No. 397, at 1. It is not.  *See* ECF No. 399, at ¶ 5 (noting that "[t]he parties did not hold a conference concerning this motion prior to the time the motion was filed").

[3] This was pursuant to an agreement between the parties, and occurred shortly after the parties had completed briefing on the NRA's failed motion to consolidate four cases before the Judicial Panel on Multidistrict Litigation.

[4] ECF 200.

[5] *See* ECF No. 236 (granting continuance to extend discovery deadline to August 6, 2021).

[6] *See e.g., Santander Consumer United States, Inc. v. Maywood Motors, Inc.*, Civil Action No. 3:16-CV-2499-B-BK, 2017 U.S. Dist. LEXIS 223443, at *2 (N.D. Tex. 2017) (J. Toliver) (holding that motion to compel filed after discovery deadline was untimely); *BCC Merch. Sols., Inc. v. Jet Pay, LLC*, No. 3:12-CV-5185-B-BK, 2015 U.S. Dist. LEXIS 187197, at *2 (N.D. Tex. 2015) (J. Toliver) (same).

descriptions for documents listed on its original privilege log.  Then, in a letter dated September 22, 2021, the NRA first raised concerns about documents allegedly missing from AMc's privilege log.  When AMc reviewed that concern—in addition to the several others relating to the actual privilege descriptions, which AMc also addressed—AMc learned for the first time that certain documents had indeed been excluded due to an inadvertent coding misapplication during the initial document intake and review process.  Although this issue could have been raised at any time during the nine previous months, the NRA made no explanation for its delay.  Nevertheless, AMc immediately took steps to supplement the privilege log but quickly realized that no amount of effort could resolve the NRA's complaints.  As evidenced by its Motion (including the NRA's failure to comply with this Court's discovery order regarding joint reports), the NRA's grievances are a superficial effort to manufacture strife in pursuit of the unwarranted, wholesale production of AMc's privileged communications and documents.  The NRA's Motion should be denied.

## II.    FACTS

During the fall of 2020, the parties were engaged in, and conferred about, a variety of discovery matters, which included voluminous document productions by both parties, numerous third-party subpoenas issued by the NRA, and the production of both parties' privilege logs.  In early December 2020, the parties agreed to exchange privilege logs on or by December 9, 2020,[7] and thereafter, AMc served its privilege log on that date ("***Original Privilege Log***").[8]  During this same time period, the NRA had filed its motion to consolidate four separate cases in the Northern

---

[7] **Ex. A-1 [APP9]**, Email from K. Taylor to A. Allegretto (Dec. 3, 2020).
[8] **Ex. A-2 [APP10]**, Email from K. Taylor to A. Allegretto (Dec. 9, 2020); **Ex. A-3 [APP11-49]** AMc Privilege Log (Dec. 9, 2020).

District of Texas before the Judicial Panel on Multidistrict Litigation.[9]  AMc filed its opposition to same on November 20, 2020.[10]

One month after AMc served Original Privilege Log, without raising any concerns with AMc about its log in the meantime, the NRA opted to file for bankruptcy in the Northern District of Texas,[11] which ultimately was dismissed because it was filed in bad faith.[12]  That bankruptcy process lasted from January through May 2021 and halted most of the parties' efforts in the above-captioned matter.[13]  Critically, however, the NRA's claims were not stayed,[14] and it could have continued prosecuting its claims against AMc had it so desired, including continuing discovery activities.

Beginning in May 2020, the NRA resumed action in this case but with obvious disregard for the approaching discovery deadline of August 6, 2021.  By way of illustration, when AMc provided the NRA with dozens of dates for depositions of the seven witnesses the NRA had requested,[15] the NRA did not actually schedule *any* deposition until July 30, 2021[16]—exactly one week before the discovery deadline.  Further, the NRA did not present *any* dates for four of its six experts' depositions until after the deadline.[17]

In keeping with those delays, the NRA raised concerns with AMc's Original Privilege Log—for the first time—by letter dated August 17, 2021.[18]  In that letter, the NRA set forth two

---

[9] Mot. to Transfer (Doc. 1), *In re: National Rifle Association Business Expenditures Litigation*, MDL No. 2979, United States Judicial Panel on Multidistrict Litigation (Oct. 20, 2020) ("**MDL Action**").

[10] AMc Am. Opposition to NRA Mot. to Transfer (Doc. 33), MDL Action (Nov. 20, 2020).

[11] Voluntary Pet. for Bankruptcy (Doc. 1), *In re: National Rifle Association of America and Sea Girt LLC*, No. 21-30085-hdh, United States Bankruptcy Court, Northern District of Texas (Jan. 15, 2021) ("**NRA Bankruptcy**").

[12] Order Granting Motions to Dismiss (Doc. 740), NRA Bankruptcy (May 11, 2021) ("For the reasons stated herein, the Court finds there is cause to dismiss this bankruptcy case as not having been filed in good faith both because it was filed to gain an unfair litigation advantage and because it was filed to avoid a state regulatory scheme.")

[13] *See* ECF 200.

[14] *See id.*

[15] **Ex. A-4 [APP50-52]**, Letter from B. Mason to NRA Counsel (Jul. 7, 2021)

[16] *See* ECF 345 at 1-5 (outlining NRA's repeated failure to prosecute its claims or take depositions timely).

[17] **Ex. A-5 [APP53-57]**, Email from S. Rogers to B. Mason (Jul. 19, 2021).

[18] ECF 398 at Ex. B Letter from J. Clouser to B. Mason (Aug. 17, 2021).

issues: that documents described as work product or as forwarding attorney-client communications did not appear to include attorney-client privileged information.[19]  Considering the NRA served the letter eleven days after the discovery deadline and given the extraordinary amount of other discovery efforts the parties were engaged in at the time, there was no obligation or ability for AMc to amend its Original Privilege Log at that time.

On September 7, 2021, the District Court extended the discovery deadline from August 6, 2021 to October 29, 2021.[20]  After the discovery deadline was extended, AMc conferred with the NRA regarding its August 17, 2021 letter.[21]  At all times, AMc has maintained that its Original Privilege Log provided sufficient information to substantiate its assertions of privilege. Nevertheless, AMc undertook to amend its log in an effort to meet the NRA's allegations and to mitigate baseless disputes brought to the Court.  Despite AMc's disagreement as to the merits of the NRA's complaints, it produced an amended privilege log on September 21, 2021 fully addressing the two above-referenced complaints ("*First Amended Privilege Log*"),[22] and produced certain documents that, upon review, AMc agreed to remove from its Original Privilege Log.[23]  In serving its amended log and de-designated documents, AMc believed that it had fully addressed the NRA's concerns—especially because the format of AMc's privilege descriptions now mirrored the exact format of the NRA's privilege descriptions, which the NRA contended were sufficient.[24]

In response, the NRA sent additional correspondence *the very next day* on September 22, 2021, ignoring AMc's revised entries, expanding the scope of its complaints, and now contesting

---

[19] *Id.*
[20] ECF 358.
[21] **Ex. A ¶ 6 [APP3]**.
[22] ECF 398 at Ex. F, AMc's First Am. Privilege Log.
[23] **Ex. A ¶ 6 [APP3]**.
[24] *Id.*

the validity of every single entry on the First Amended Privilege Log.[25]  In this letter, the NRA newly expressed concerns that certain communications might be missing from AMc's Original Privilege Log—concerns that had never previously been raised at any time.  Despite the NRA "shifting the goal posts" of its privilege log complaints, AMc nevertheless continued to seek an expedient resolution.  Immediately thereafter, beginning on October 13, 2021, AMc undertook an investigation of the NRA's concerns and discovered for the first time that previously withheld communications might in fact have been omitted from AMc's Original Privilege Log.[26]  More specifically, AMc's counsel came to learn that, during the process of compiling its first privilege log in December 2020, AMc inadvertently generated a log that excluded a certain volume of communications directly to or from AMc's attorneys due to a coding misapplication following the initial ingestion and large-scale review of AMc's documents within the e-discovery platform and a miscommunication between AMc's counsel and the vendor regarding the treatment of the segregated documents.[27]  As this Court is aware, the NRA filed three lawsuits in Virginia state court alleging a variety of claims, followed by the instant litigation in Texas alleging overlapping claims as well as new claims.  In order to expedite the review, this category of privileged communications was segregated at the outset of litigation as part of the initial review.[28]  Although these documents were reviewed and slated for privilege, the coding applied to these documents was not properly applied to AMc's second-level review of the documents relevant to the above captioned case, which review it undertook in the summer of 2018.[29]  This exclusion was accidental and not the result of conscious indifference,[30] and no attorney for AMc had knowledge of this

---

[25] ECF 398 at Ex. G, Letter from S. Rogers to B. Mason (Sep. 22, 2021).
[26] **Ex. A ¶ 8 [APP3-APP4].**
[27] **Ex. A ¶ 9 [APP4].**
[28] *Id*. at **¶¶ 8-9 [APP3-APP4].**
[29] *Id*. at **¶ 9 [APP3].**
[30] *Id*.

omission until October 2021.[31]   As soon as the omission was discovered by AMc's counsel, it promptly completed a review of the documents to reaffirm the privilege protection of each document and to properly identify the documents on its privilege log before the close of discovery on October 29, 2021.[32]

In addition to addressing the NRA's complaints about "documents withheld but not logged," AMc also sought to resolve the NRA's purported issues of deficient attorney-client and work product descriptions[33] by providing greater detail for the basis of each privilege in its Second Amended Privilege Log, which it served on October 22, 2021.[34]   At this same time, AMc was reviewing and producing additional documents that the NRA also requested late in the discovery process—despite having a year to raise the issue—and was working with an outside vendor to resolve yet another NRA dispute involving NRA social media accounts.   In short, AMc was working on all fronts to fully satisfy the NRA's numerous eleventh-hour discovery demands. However, for an entire week after AMc served its final Second Amended Privilege Log, AMc received not one indication of any further complaint by the NRA and believed the matter to be resolved.   AMc was surprised to see the NRA file a purported "joint" report on the privilege log issue at, literally, the very last minute of the discovery deadline.   Although the Motion was not properly submitted according to this Court's Order (ECF 62), AMc provides this Response in an abundance of caution to present a complete recitation of the facts and its arguments in return.

### III.   MATTERS TO BE HEARD AND DETERMINED

---

[31] **Ex. A ¶¶ 8, 11 [APP3-APP5]**.
[32] *Id*. at ¶ 11 [APP4-APP5].
[33] ECF 398 at Ex. G.
[34] *See* ECF 398 at Ex. A, AMc's Second Am. Privilege Log.

The NRA moves the Court "to compel production of the documents improperly logged by the Defendants on their Second Amended Privilege Log."[35]  Notably, the NRA has declined to identify a single privilege log entry it contends was "improperly logged."

## IV.    ARGUMENTS & AUTHORITIES

The NRA's Motion is a shotgun effort to throw numerous unsupported legal arguments and baseless speculation against AMc and its counsel in the hopes that any one argument may result in the drastic, unprecedented production of the entirety of AMc's withheld privileged documents.  Each of the NRA's arguments is misguided, and the NRA's Motion should be denied in its entirety.

### A.    AMc has not waived any privilege protections.

The NRA's Motion first argues that AMc has waived all privilege protection for the 1,620 documents[36] added to the Second Amended Privilege Log on October 22, 2021.  When applying controlling legal authority to the facts of this case—an exercise the NRA declined to undertake— there is no basis in law or fact for the Court to hold that AMc has waived any privilege protection.

Privilege waiver "is a harsh sanction," so "courts often reserve such a penalty for those cases where the offending party unjustifiably delayed in responding to the discovery requests or acted in bad faith."[37]  When evaluating whether documents on a privilege log were properly and timely identified, courts find that factors such as a party's good faith attempts at compliance and a movant's substantial delay in inquiring about withheld documents are mitigating circumstances that weigh against finding waiver.[38]

---

[35] Mot. at 4.
[36] AMc has not counted the document entries but, without waiving any rights, knows of no reason to dispute the number offered by the NRA.
[37] *Sprint Communs.. Co. L.P. v. Big River Tel. Co., LLC*, No. 08-2046-JWL, 2009 U.S. Dist. LEXIS 78249, at *3 (D. Kan. Sep. 2, 2009) (quoting *Gipson v. Southwestern Bell Tel. Co.*, No. 08-2017, 2009 U.S. Dist. LEXIS 25457, at *11 (D. Kan. March 24, 2009)).
[38] *Id*.

In *Sprint Communs.*, the court analyzed facts analogous to this case and held that a blanket waiver of the privileges asserted was not warranted.[39]  There, the court found (a) "no indication that Sprint acted in bad faith in failing to produce a complete privilege log," (b) that "[t]en months passed without Big River raising any concerns about the sufficiency of the privilege log," and (c) that "Sprint immediately sought to address Big River's concerns about deficiencies in Sprint's privilege log."[40]

In the present case, AMc did not act in bad faith and the NRA has presented no evidence to the contrary.  AMc and its counsel did not intentionally withhold any documents from the privilege log, and no attorney for AMc had actual knowledge of missing documents until October 13, 2021.[41]  Nevertheless, the NRA asserts that the Second Amended Privilege Log demonstrates "that the Dorsey firm deliberately sought to obscure the true extent of their involvement" in the FRA audit.[42]  To support this assertion, the NRA attempts to correlate two distinct, unrelated documents in a display of baseless speculation.  Specifically, the NRA suggests that AMc only disclosed 291 new entries[43] after the NRA's expert produced a supplemental report that accused AMc's attorneys of obstructing the FRA audit.[44]  This claim is patently false.

***First***, the "opinions" in the NRA's expert's supplemental report had absolutely nothing to do with the supplementation of AMc's privilege log.[45]  ***Second***, the NRA fails to meet its burden in showing bad faith.  An accusation of timing that is "rather curious" is hardly sufficient to upend a party's rights to privileged attorney-client communications.  AMc or its counsel did intentionally

---

[39] *Id.*
[40] *Id.* at *4-5.
[41] **Ex. A ¶¶ 8, 11 [APP3-APP5]**.
[42] Mot. at 6.
[43] AMc has not counted the document entries but presently knows of no reason to dispute the number offered by the NRA.
[44] Mot. at 6.
[45] **Ex. A ¶ 12 [APP5]**.

or knowingly fail to log certain documents, and once it learned that certain documents were inadvertently not included, it worked diligently to cure the issue.[46]  *Third*, AMc's original privilege log—produced in December 2020—already included numerous entries referring to the audit and the NRA's document requests for same.[47]  It is untenable to now suggest that AMc "sought to obscure" events already identified in the original privilege log.[48]  *Fourth*, the NRA's speculation that AMc's unintentional omission of 291 documents regarding the FRA audit evinces an effort to shield same is belied by the fact that there were also more than 1,300 other documents inadvertently omitted.  If AMc sought to intentionally hide the communications related to the FRA audit, it would not also withhold 1,300 other communications ostensibly not related to the FRA audit.  The NRA's accusation is a fantasy.[49]  *Finally*, the NRA's suggestion that AMc or Dorsey & Whitney LLP ("*Dorsey*") were attempting to shield from the Court its role with respect to the FRA audit is nonsensical.  The NRA and its counsel have known about Dorsey's representation of AMc (in this action, the Virginia Action,[50] and the NRA's numerous records examinations) since at least April 2018,[51] and were directly communicating with Dorsey at all times thereafter, including about the FRA audit.[52]  Moreover, the original log AMc produced in December 2020

---

[46] **Ex. A ¶ 11 [APP4-APP5]**.

[47] Ex. A-3 at 27-34 **[APP37-APP44]**.

[48] *See* Mot. at 6.

[49] *See* **Ex. A ¶ 12 [APP5]**.

[50] *NRA v. AMc*, No. CL19001757, In the Circuit Court for the City of Alexandria (Cir. Ct. Va. Apr. 12, 2019); *NRA v. AMc*, No. CL19002067, In the Circuit Court for the City of Alexandria (Cir. Ct. Va. May 22, 2019*); NRA v. AMc*, No. CL 19002886, In the Circuit Court for the City of Alexandria (Cir. Ct. Va. Sep. 5, 2019).

[51] *See* **Ex. A-6 [APP58]**, AMcTX-00065477 (Email from Brewer to J. Madrid dated Apr. 20, 2018) (reflecting initial document requests to AMc beginning in April 2018); *see also* (1) Emails reflecting Dorsey involvement in NRA document requests throughout the summer of 2018 (**Ex. A-7 [APP59]** AMcTX-00065542, **Ex. A-8 [APP61]** AMcTX-00065544, **Ex. A-9 [APP64]** AMcTX-00065615, **Ex. A-10 [APP68]** AMcTX-00065639); (2) Emails reflecting Dorsey involvement in NRA document review of AMc records in September 2018 (**Ex. A-11 [APP71]** NRA-AMc_00057268, **Ex. A-12 [APP73]** NRA-AMc_00057270, **Ex. A-13 [APP75]** NRA-AMc_00057274, **Ex. A-14 [APP77]** NRA-AMc_00057276, **Ex. A-15 [APP79]** NRA-AMc_00057281).

[52] *See, e.g.*, **Ex. A-16 [APP83]** AMcTX-00000395, **Ex. A-17 [APP88]** AMcTX-00000400 (emails from G. Betts to J. Frazer dated Jan. 31, 2019), **Ex. A-18 [APP93]** AMc-057923 (email from W. Winkler to J. Bradley with FRA, copying G. Betts, dated Feb. 8, 2019).

shows Dorsey's continued involvement representing AMc from March 29, 2018 through the time the NRA filed its first lawsuit against AMc.[53]

Like the complaining party in *Big River*, the NRA has offered no explanation for its "delay in inquiring about potentially missing documents and suggesting that there were deficiencies in [AMc's] log."[54]  This factor counting against waiver bears even more weight because the NRA not only waited more than eight months before raising any concerns with AMc, but also failed to even raise its concerns until *after* the then-controlling August 6, 2021 discovery deadline had expired.[55]

To support its argument that AMc has waived all privilege protection for the 1,620 documents added to the Second Amended Privilege Log, the NRA relies solely on an out-of-context quote from the inapposite case of *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999).  In *Nguyen*, the court concluded that a party waived the attorney-client privilege for failing to timely object to its disclosure.[56]  But *Nguyen* has absolutely nothing to do with privilege logs or even the production of documents withheld on the basis of privilege.  There, a party's employees were deposed regarding the good faith basis for certain employee compensation policies.[57]  During the deposition, opposing attorneys elicited testimony regarding the substance of communications with attorneys to which the opposing attorney objected to some, but not all, of the questions on the basis of privilege. [58]   The court held that an inquiry into the substance of privileged communications requires an assertion of privilege to preserve same, and that the party's failure to

---

[53] **Ex. A-3 [APP11]**.
[54] *Sprint Communs.*, 2009 U.S. Dist. LEXIS 78249, at *6.
[55] *See also New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 452 (D. Kan. 2009) ("the court finds the lead plaintiff's unjustified delay in even inquiring about the documents is a mitigating factor against finding a privilege waiver due to delay").
[56] 197 F.3d at 208.
[57] *Id.* at 203.
[58] *Id.* at 204.

object and assert privilege in each instance waived the privileged protection.[59]  Clearly, *Nguyen*'s sole focus was on the waiver of privilege during the context of a deposition and is inapplicable in the context of privilege logs or the inadvertent failure to identify privileged communications. *Nguyen* bears no weight—legally or factually—on this case.

Finally, waiver of privilege is unjustified because AMc has acted swiftly to resolve the NRA's purported concerns.  After the NRA's first complaint on August 17, 2021, AMc amended its privilege log to provide more information (despite confirming that AMc's original privilege log was compliant with its obligations).[60]  When the NRA subsequently ignored AMc's revisions and sent additional correspondence complaining of the revised entries—and *every other entry*—on AMc's First Amended Privilege Log,[61] AMc attempted to resolve this dispute.  It was during this process that AMc first discovered certain documents were inadvertently excluded from the privilege log.[62]  Again, AMc worked promptly to reaffirm the privilege protection of each document and to properly identify the documents on its privilege log before the discovery deadline passed—and with enough time for the NRA to confer about any additional concerns, which the NRA failed to do.[63]  There is simply no legal or factual basis to find a blanket waiver of privilege.

### B.   AMc's Second Amended Privilege Log establishes attorney-client privilege.

The NRA next complains generally that AMc has failed to establish attorney-client privilege for "many" of its logged documents.[64]  As a threshold matter, AMc does not know for which documents the NRA claims a privilege is not adequately identified.  Indeed, the NRA did not cite to a single example in its Motion.  Regardless, AMc's privilege log entries are proper.

---

[59] *Id.* at 206-07.  The court also noted that the party's efforts to selectively disclose portions of the confidential communications waived the privilege protection for all such confidential communications.
[60] ECF 398 at Ex. F, AMc First Am. Privilege Log.
[61] ECF 398 at Ex. G, Letter from S. Rogers to B. Mason (Sep. 22, 2021).
[62] **Ex. A ¶ 8 [APP3]**.
[63] **Ex. A ¶11 [APP4-APP5]**.
[64] Mot. at 8.

The NRA's Motion argues that "AMc's log must allege facts indicating: (1) a confidential communication; (2) made to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding; and/or (4) a communication from the lawyer to the client that would reveal the same."[65]  AMc's privilege descriptions include this exact information.  For example, document No. 1 on AMc's Second Amended Privilege log is to an attorney and the privilege description is as follows:

> Confidential communication between AMc employee and counsel at Sheppard Mullin for purposes of obtaining legal advice regarding contract negotiations with NRA commentator Dan Bongino.[66]

It is unclear to AMc how it could have been more explicit and direct about the factual allegations supporting its assertion of privilege.

The only category of documents the NRA identified as allegedly lacking sufficient detail are entries involving communications between non-lawyers at AMc.[67]  But these entries also include specific factual allegations to support AMc's assertion of privilege.   For example, document No. 3 is an email among AMc employees and the privilege description is as follows:

> AMc employee internally forwarding confidential communication between AMc employee and counsel at Sheppard Mullin for purposes of obtaining legal advice regarding contract negotiations with NRA commentator Dan Bongino.[68]

AMc's privilege log entries plainly identify that one AMc employee forwarded a privileged communication to other AMc employees, and each entry includes factual allegations establishing that the underlying communication is itself privileged.  An employee forwarding a confidential communication to another employee does not waive a privilege.[69]  "[P]rivileged communications

---

[65] Mot. at 9.
[66] ECF 398 at Ex. A at 1.
[67] Mot. at 9.
[68] ECF 398 at Ex. A at 1.
[69] *See Upjohn v. United States*, 449 U.S. 383, 394-95, 101 S. Ct. 677 (1981).

may be shared by non-attorney employees in order to relay information requested by attorneys."[70]

For each of its entries, AMc has provided ample information to articulate the basis for privilege.

### C.     AMc's assertions of work product privilege are proper.

Where appropriate, AMc's Second Amended Privilege Log identifies all instances in which

documents are withheld as work product created in anticipation of litigation.  The NRA makes the

cursory argument that all documents AMc logged on the basis of work-product prior to 2019 must

be produced because AMc has shown in this lawsuit that *the NRA* fraudulently concealed its intent

to file claims against AMc, which intent it formed before September 2018.[71]  The NRA's position

ignores applicable law and the parties' dealings in this case.

To qualify for work product protection, documents do not need to be generated in the

course of an ongoing lawsuit, but "must have been prepared because of the prospect of impending

litigation and not for some other purpose."[72]  Critically, the material does not have to be prepared

in anticipation of the instant litigation.  "[T]he literal language of the Rule [26] protects materials

prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent

litigation."[73]  In other words, "the fact that the material was prepared in anticipation of different

litigation [does] not remove it from the scope of doctrine because such material 'will still be

protected as work product if the anticipated litigation was related to the proceedings in which the

material is to be produced.'"[74]

---

[70] *Fisher v. Halliburton*, No. H-05-1731, 2009 U.S. Dist. LEXIS 152887, at *33 (S.D. Tex. Jun. 9, 2009).
[71] Mot. at 9-10.
[72] *Highmark, Inc. v. Allcare Health Mgmt. Sys.*, Civil Action No. 4:03-CV-1384-Y, 2006 U.S. Dist. LEXIS 101687, at *16 (N.D. Tex. 2006) (quoting *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 476-77 (N.D. Tex. 2004)).
[73] *Ftc v. Grolier, Inc.*, 462 U.S. 19, 25, 103 S. Ct. 2209, 2213 (1983) (emphasis in original).
[74] *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 279 (W.D. Pa. 2014) (citing *Stanziale v. Career Path Training Corp. (In re Student Fin. Corp.)*, 2006 U.S. Dist. LEXIS 86603 (E.D. Pa. Nov. 29, 2006)); *see also Cohen v. City of N.Y.*, 255 F.R.D. 110, 124 (S.D.N.Y. 2008) ("Consistent with *Grolier*, the weight of authority now clearly favors protecting work product that was generated as part of an earlier litigation at least where, as here, that litigation is related to the current suit.").

Long before the instant litigation, the NRA was already embroiled in other lawsuits and government investigations.  Indeed, the NRA itself has withheld from this lawsuit documents relating to pending or anticipated litigation in at least nine other matters.[75]  AMc previously affirmed to the NRA that it withheld work product regarding some of the same matters identified by the NRA,[76] but the NRA summarily ignored this confirmation and seeks to nonetheless compel the production of all withheld documents.

As AMc already explained to the NRA, it withheld work product created in anticipation of litigation relating to the NRA's lawsuit against Lockton,[77] the NRA's lawsuit against New York Governor Andrew Cuomo,[78] and state investigations by the New York Attorney General, Letitia James.[79]  For each of these matters, AMc produced its own records as requested by the NRA and other officials.  Owing to the nature of these matters and AMc's actual involvement in same, AMc reasonably believed that it may become a party to these matters or that subsequent investigations may be directed at AMc.  Documents created because of the prospect of impending litigation are therefore protected work product.

Moreover, while AMc maintains that the NRA's true intentions against AMc were fraudulently concealed until early 2019, AMc nevertheless reasonably anticipated litigation as a result of threats made by the NRA's counsel, Bill Brewer, to AMc.  Specifically, beginning in at least April 2018, the NRA's outside counsel—Bill Brewer and his firm, Brewer Attorneys & Counselors (the "**Brewer Firm**")—pursued a campaign requesting documents and information

---

[75] **Ex. A-19 [APP96]**, Letter from S. Rogers to B. Mason (Oct. 15, 2021) at 3-4.
[76] **Ex. A-20 [APP100]**, Letter from B. Mason to S. Rogers and C. Fanelli (Oct. 22, 2021) at 1-2.
[77] *NRA v. Lockton Affinity Series of Lockton Affinity, LLC, et al.*, Case 1L18-ch-00639 (E.D. Va. 2018).
[78] *NRA v. Andrew Cuomo, et al.*, Case 18-CV-00566 (N.D.N.Y. 2018).
[79] *People of the State Of New York, by Letitia James, Attorney General of the State of New York v. the National Rifle Association of America, Inc., et al.*, Index No. 451625/2020 (N.Y. Comm. Div. 2020).

from AMc, purportedly for litigation between the NRA and one of its affinity partners.[80]  After the letters became increasingly aggressive, requesting documents outside the scope of that litigation, AMc became wary of the NRA—or more specifically, Bill Brewer's—intent.  Once Mr. Brewer repeatedly threatened AMc and its executives with FBI raids and alleged RICO indictments,[81] AMc came to believe the NRA might pursue litigation against AMc as one possible avenue for avoiding its own liability.  In fact, AMc would have resigned the NRA account altogether in October 2018, and was preparing to do so, but for LaPierre's representations that Brewer's threats and AMc's involvement with the Brewer Firm would stop.[82]  That reasonable anticipation of litigation, buttressed by the NRA and its counsel's adversarial conduct, supports AMc's work product assertions, which AMc's Second Amended Privilege Log clearly articulate.  For the foregoing reasons, the NRA's request to compel the production of all AMc's protected work product should be denied.

    **D.**    **The NRA suffers no undue hardship and has no substantial need for AMc's protected work product.**

The NRA essentially argues that, because AMc witnesses are adverse, or "hostile," that the NRA is somehow entitled to AMc's work product.  If that were the case, AMc would be reciprocally entitled to the NRA's work product and privileged communications underlying, for example, the NRA's fraud relating to the FRA audit[83] or the NRA's fraud relating to its intent to

---

[80] *See, e.g.*, **Ex. A-6 [APP58]**, AMcTX-00065477, Email from Brewer to J. Madrid (Apr. 20, 2018) (reflecting initial document requests to AMc beginning in April 2018).

[81] *See* ECF 141 at Ex. I (Revan McQueen Declaration) ¶ 41 [APP 097-098]; ECF 324 at 14 & Ex. D, Testimony of A. Makris, NRA Bankruptcy Hr'g Tr. (Apr. 16, 2021 PM) 102:8-103:17 [APP164-APP165], Ex. E, Testimony of A. Makris, NRA Bankruptcy Hr'g Tr. (Apr. 16, 2021 AM) 113:24-118:12 [APP173-APP178], Ex. F, Deposition of AMc Corporate Representative (Mar. 26, 2021) 18:24-20:5 [APP183], 96:5-21 [APP184], 100:4-101:9 [APP185-APP186].

[82] *See* **Ex. A-21 [APP102-110]** (draft of letter from A. McQueen to W. LaPierre prepared on or about Sep. 24, 2018).

[83] *See, e.g.*, ECF 276 at 14.

sue AMc in September 2018 before it made various false promises to induce AMc to maintain the business relationship.[84]

In even more conclusory fashion, the NRA argues that unnamed AMc witnesses were unable to testify about what documents were selected for examination *and why*.  The NRA cites no evidence in support.[85]  Nevertheless, the "why" plainly goes to the heart of attorney-client privileged communications and anticipated litigation strategy.   In fact, a case the NRA cited in its Motion explains settled black letter law of the impropriety of the NRA seeking to discover the "why": opinion work product, which maintains nearly "absolute protection" from discovery and includes "documents, such as business records, that were specifically selected and compiled by a party or its representative in preparation for litigation . . . because the mere acknowledgement of their selection would reveal mental impressions concerning the potential litigation."[86]  Yet the NRA, unabashedly, represents to this Court that it seeks that very information,[87] which renders the NRA's work-product argument improper on its face.

The NRA never raised a concern with AMc, and thus never conferred, about needing this work product information because of "hostility."   Its "broad unsubstantiated assertions" of unnamed witnesses' inability to testify or remember undescribed information will not suffice under the law.[88]  Indeed, the NRA, in its ever-opportunistic pursuits, is using its improperly filed Motion as a ruse to overreach, alleging that its request is somehow tethered to the privilege log dispute when it is not.  In short, the NRA could have made this argument at any point in this litigation,

---

[84] *See id.* at 13.
[85] In its Motion, the NRA cites *In re Int'l Sys. & Controls Corp. Sec. Litig*, 693 F.2d 1235, 1240 (5th Cir. 1982), which explains that "discovery of work product will be denied if a party can obtain the information he seeks by deposition." The court further explained that "broad unsubstantiated assertions of unavailability or faulty memory are not sufficient" to demonstrate "undue hardship" required to intrude upon the work product assertion.  *Id.*
[86] *Osherow v. Vann (In re Hardwood P-G, Inc.)*, 403 B.R. 445, 463 (Bankr. W.D. Tex. 2009).
[87] Mot. at 10-11.
[88] *See Int'l Sys.*, 693 F.2d at 1240.

including at any time during the last year after the privilege log was served, or even at any time during the deposition phase of this case primarily in August 2021.  It has failed to show why it should be entitled to such obtrusive discovery, especially now.

E.      There is no additional discovery to compel.

With the final arrow in its quill, the NRA argues that AMc has previously withheld documents on "a number of spurious bases" and that such conduct "raises a legitimate suspicion that they may be withholding additional documents on one or more legally untenable bases."[89] With this speculation, the NRA seeks an order compelling the production of unidentified and/or non-existent documents.  Noticeably absent from the NRA's Motion is *any* factual support for its generalized accusations.  The NRA has not identified any document claimed to be improperly withheld, and it has not identified a single basis under which documents have been allegedly withheld and for which the NRA now seeks the Court's intervention.  The NRA's Motion should be denied.[90]

V.      PRAYER FOR RELIEF

AMc respectfully requests this Court deny the Motion and grant AMc any further relief, at law or in equity, to which it may be justly entitled.  Alternatively, should the Court determine further inquiry is required to test the privileges asserted (which as set forth above should not be required), AMc respectfully requests the Court first conduct an *in camera* review of any documents at issue.

---

[89] Mot. at 11-12.

[90] *See e.g.*, *Jiae Lee v. Dong Yeoun Lee*, No. CV 19-8814 JAK (PVCx), 2021 U.S. Dist. LEXIS 27060, at *16-17 (C.D. Cal. Jan. 27, 2021) ("Plaintiff's beliefs about documents that Damon Lee and CGI 'must have,' or what the absence of documentary evidence to support Defendants' contentions may mean, are simply not a sufficient basis for this Court to order production of documents that Defendants contend do not exist or have already been produced"); *see also McCoy v. SC Tiger Manor, LLC*, No. 19-723-JWD-SDJ, 2021 U.S. Dist. LEXIS 68783, at *12 (M.D. La. Apr. 8, 2021) (declining motions to compel production where plaintiff "failed to set forth the document or documents being sought with 'reasonable particularity.'").

Dated: November 19, 2021.

Respectfully submitted,

_/s/ Brian E. Mason_

**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com
**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR DEFENDANTS/
COUNTER-PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2021, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

_/s/ Brian E. Mason_
BRIAN E. MASON