**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| *Plaintiff and Counter-Defendant,* | § § | |
| **v.** | § § | **Case No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** | § § | |
| *Defendant and Counter-Plaintiff,* | § § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, AND MELANIE MONTGOMERY** | § § § § | |
| *Defendants.* | § | |

<u>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE NATIONAL RIFLE ASSOCIATION OF AMERICA'S MOTION TO COMPEL CERTAIN DOCUMENTS WITHHELD UNDER DEFICIENT CLAIMS OF PRIVILEGE**</u>

Cecelia L. Fanelli
clf@brewerattorneys.com
Sarah B. Rogers
sbr@brewerattorneys.com
Philip J. Furia
pjf@brewerattorneys.com
Alessandra P. Allegretto
apa@brewerattorneys.com
**BREWER ATTORNEYS AND COUNSELORS**
1717 Main Street, Suite 5900
Dallas, Texas 75201

**ATTORNEYS FOR**
**PLAINTIFF/COUNTER-DEFENDANT**
**NATIONAL RIFLE ASSOCIATION**
**OF AMERICA**

# I.

## INTRODUCTION

The NRA asks this Court to order Defendants to produce thousands of documents wrongfully withheld on the basis of a claimed privilege.  This includes unlogged documents responsive to the NRA's document requests, documents identified for the first time on October 22, 2021, and documents that appear on Defendants' privilege log without any indicia of entitlement to privilege protection.

In opposition to the instant motion, Defendants offer **no excuse** for failing to log and identify documents they are withholding created prior to 2018 or after April 10, 2019.  These documents must be disclosed as any privilege which might have existed was waived.  With regard to the documents first logged on October 22, 2021, Defendants offer a contrived narrative which fails to establish this delay as excusable.  Finally, the Second Amended Privilege Log contains scores of documents which, on their face, are not privileged.  These documents must be produced irrespective of this Court's decision as to whether the Defendants have waived privilege.

# II.

## ARGUMENT

### A.    Documents which remain unproduced and unlogged must be produced.

When a party seeks to assert the attorney client privilege, it "bears the burden of demonstrating the applicability of the privilege."[1]   "The privilege must be specifically asserted with respect to particular documents."[2]   "If documents are withheld by a party because they claim they are protected by privilege, the party must produce a privilege log expressly making that claim

---

[1] *Climb Tech, LLC v. Verble*, No. A-05-CA-864 LY, 2008 WL 11334947, at *3 (W.D. Tex. Nov. 12, 2008) (citing *In re E.E.O.C.*, 207 F. App'x 426, 431 (5th Cir. 2006)).
[2] *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982).

and describing the nature of the document in a way that enables others to evaluate the claim of privilege."[3]  "To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege."[4] "Failure to timely assert an objection, even one of privilege, constitutes a waiver of such objection."[5]

In this motion, the NRA points to Defendants' failure to log any documents from prior to 2018 and after April 10, 2019.  Clearly all unlogged responsive documents vintaged prior to 2018 and after April 10, 2019, must be produced because any privilege that might have been asserted was  waived.  Defendants failed to address this argument in their opposition papers.  As such, this Court should grant the NRA's request as unopposed.

Defendants' decision to end its privilege log on April 10, 2019 is particularly egregious in light of the claims made by both the NRA and Defendants in this matter.  In its Second Amended Complaint,[6] the NRA avers, *inter alia*, Defendants' malfeasance "continuing through 2019" and contends Defendants violated its confidentiality obligations under the Services Agreement "throughout 2019 and 2020."[7]  In its Second Amended Counterclaim, Defendants asserted several claims against the NRA which plainly concern events occurring *after* April 10, 2019.  For example, Defendants contend they were defamed by the NRA based on comments made in the news media between *April 25, 2019 and May 2, 2019.*  Defendants claim the NRA breached the Services Agreement by failing to pay invoices it issued *on May 1, 2019.*  Defendants also allege the NRA

---

[3] *Climb Tech, LLC*, 2008 WL 11334947, at *3 (citing Fed. R. Civ. P. 26(b)(5)).
[4] *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 200 (D. Kan. 1996).
[5] *Id.*
[6] AMc's Second Amended Privilege Log, dated October 22, 2021. Furia Decl. Ex. 1. App.001-195
[7] See Pls Second Am. Compl. ECF No. 201-1 at 6.

breached its obligation to pay a termination fee under the Services Agreement, after the agreement was terminated *on May 29, 2019.*[8]

Based on the foregoing, there is no justification for Defendants to end their log on April 10, 2019.  Defendants are undoubtedly withholding responsive documents on the basis of privilege which have not been identified or logged.  At this time, any privilege which might have existed concerning those documents is waived by virtue of undue delay and inexcusable conduct.  This Court should order Defendants to identify and produce all responsive documents in their possession from prior to 2018 and from April 10, 2019 until December 31, 2019.

**B.  Defendants waived any privilege which may have existed concerning the documents first logged in their Second Amended Privilege Log.**

Defendants' opposition to the instant motion consists of a series of excuses which seek to avoid a finding it has waived privilege protection for the documents which it identified and logged for the first time on October 22, 2021.  A finding of waiver is "appropriate in cases of unjustified delay, inexcusable conduct and bad faith."[9]  In this case, all three factors are present.

**1.  Defendants failed to log most of their "privileged" documents for over a year— delaying disclosure until the brink of the *extended* discovery deadline.**

Defendants admit that the documents logged for the first time on October 22, 2021, were first reviewed by counsel in January 2020, then subject to "second-level review" during summer 2020.[10]  This means that Defendants examined the documents twice and knew they were responsive to the NRA's requests and relevant to the claims and defenses of the parties. Nevertheless, they withheld them from discovery for ***more than a year*** before disclosing their existence to the NRA. This extraordinary delay is facially prejudicial and, standing alone, means

---

[8] See Def.'s Second Am. Countercl., ECF No. 241 at ¶ 200.
[9] *Climb Tech, LLC*, 2008 WL 11334947, at *3
[10] The documents were then purportedly subject to "second-level review" during the summer of 2020.  *See* Declaration of Brian E. Mason, dated November 19, 2021 at ¶ 9. Declaration of Philip Furia  ("Furia Decl.") Ex.2, App. 200.

that Defendants waived any purported privileges associated with those documents.[11]   Although Defendants suggest the blame lies with an unnamed discovery vendor,[12] they provide no details sufficient to corroborate this excuse, let alone dispel a finding of bad faith.[13]   And even assuming *arguendo* that Defendants truly failed to detect this error until October 2021 (which is implausible on its face), they should have explained it to the NRA immediately—not repeatedly deferred the submission of privilege-related disputes to the Court with vague, successive, false assurances that a new log would be available "early next week" which would resolve all concerns.[14]

Finally, the "privileged" documents logged for the first time by Defendants on the precipice of the extended October discovery deadline were not a negligible subset of those withheld.   Rather, *the vast majority of documents withheld by Defendants were never logged* until the third, belated iteration of Defendants' privilege log, served days before the October deadline after repeated requests from the NRA.   In the ten months which transpired between the Defendants' service of their first, massively deficient privilege log and the discovery of the purported error on October 13, 2021, Defendants participated in over 20 depositions, transmitted scores of documents to their expert witnesses, prepared a list of trial exhibits, and prepared a motion for summary judgment.

---

[11] Indeed, courts have found waiver where disclosure of privileged documents was delayed only a few months.  *See e.g. Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (affirming decision where "the district court found a waiver where the log not only was not filed during the Rule 34 time limit, but was filed *five months* later."); *Vilcheck v. NFP Corp.*, No. 6:15-CV-03997-TMC, 2017 WL 11309769, at *3 (D.S.C. Mar. 1, 2017) ("Based on a review of the facts presented and consideration of the associated circumstances, the Court finds that Defendants' greater than seven-month delay in producing the privilege logs is unjustified."); *Imperati v. Semple*, No. 3:18-CV-01847 (RNC), 2020 WL 4013304, at *7 (D. Conn. July 16, 2020) (noting that "the weight of authority in the District of Connecticut regards a five-month delay as supporting a finding of waiver[].").

[12] *See* Ackerman McQueen, Inc's. Resp. to the National Rifle Association of America's Mot. to Compel Doc. Withheld Under Deficient Claims of Privilege ECF No. 408 ("Defendants. Opp.") at 9.

[13] For example, Defendants do not identify the vendor, submit a corroborating declaration from the vendor, or even explain the error that the vendor made.  Moreover, Defendants' other explanations are vague and inconsistent—for example, the Opposition memorandum alternately cites "a coding misapplication" and "a miscommunication between Defendants' counsel and the vendor regarding the treatment of the segregated documents." Defendants' Opp. at 5.

[14] *See* The National Rifle Association Of America's Mot. To Compel Certain Docs. Withheld Under Deficient Claims Of Privilege ECF No. 397 at 18.

Any of these activities put Defendants on notice that 1,620 highly relevant documents were missing from both their document production and their privilege log.

2.     **Defendants attempt to blame the NRA for its failure to log relevant documents, known only to Defendants, is unavailing.**

After concealing responsive documents for over a year, Defendants absurdly blame the NRA for its own "delay" in discovering their failure to log over 1,600 relevant documents.[15]  In truth, the September letter meet/confer letter which Defendants claim sparked their discovery of the omitted documents[16] was only the latest in an extended series of communications from the NRA raising issues with Defendants' privilege log. The NRA also raised red flags in previous letters that directly implicated the 1,620 documents concealed by Defendants. For example, the NRA complained in early June 2021, that documents for key custodians seemed absent,[17] a problem that Defendants purported to address in a subsequent production later that month.[18] The NRA raised other issues with Defendants' privilege log in August,[19] which Defendants admit that they rejected.[20]

Further, at the September 16, 2021 status hearing before the Court, counsel for the NRA noted that Defendants' counsel submitted a Declaration dated July 6, 2021 in support of their motion for summary judgment, in which he detailed that Defendants collected 2.5 million documents, but only produced 40,000.[21] NRA's counsel noted that in view of these statistics,

---

[15] Opp. at 2 ("[T]he NRA made no explanation for its delay.").

[16] *See* Opp. at 2.

[17] For example, in a letter sent June 6, 2021, the NRA pointed out that a puzzlingly "small number of documents [were produced] from [key custodians] Melanie Montgomery, Revan McQueen, and Angus McQueen." Furia Decl. Ex. 3. App. at 206.

[18] Letter from Brian Mason to Philip Furia, dated June 16, 2021. Furia Decl. Ex. 4.App.208-11

[19] Letter from Jason F. Clouser to Brian Mason, dated August 17, 2021, Furia Decl. Ex.5. App. at 213-214.

[20] *See* The National Rifle Association Of America's Motion To Compel Certain Documents Withheld Under Deficient Claims Of Privilege ECF No. 397 at 4 ("At all times, Defendants have maintained that its Original Privilege Log provided sufficient information to substantiate its assertions of privilege.").  Of course, Defendants' Original Privilege Log omitted the vast majority of documents that Defendants purport to withhold.

[21] Status Conf. Tr. 18:1-5, Sept. 16, 2021. Furia Decl. Ex. 6. App. at 233; *See also* Declaration of Brian E. Mason, dated July 6, 2021, ECF No. 280-1 at p2, ¶3 (App 0003). Furia Decl. Ex. 7. App. at 277

Defendants' privilege log (consisting then of only approximately 400 entries) "is quite small" and that there appeared to exist a "pattern of non-disclosure."[22] In response, Defendants' lead counsel at the hearing, Brian E. Mason, did not dispute the substance of the NRA's counsel's statements. Instead, he stated that "*we're going back and looking at those issues*[…]"[23]. Despite this express representation to the Court, it was not until a month later that Defendant supposedly discovered the vendor issue, on October 13, 2021, demonstrating the unacceptable delays that the NRA has confronted throughout discovery. Moreover, Defendants' counsel never advised the NRA's counsel or the Court of the alleged "vendor issue," which was perfunctorily and belatedly revealed only in response to this motion, and then without elaboration or evidentiary support. Instead, Defendant stalled the production of the Second Amended Log until October 22, 2021 in a transparent effort to delay.

In view of the foregoing, Defendants' reliance on a factually inapposite decade-old Kansas case fails.[24]  The *Sprint* court noted Sprint's "immediate[]," same-day response to its adversary's privilege-log concerns as a factor disfavoring waiver,[25] and also mentioned the adversary's "delay in inquiring about the documents missing from the log."[26] But in *Sprint*, the adversary waited ten months to raise any privilege-log deficiencies, then filed a motion the very next day after deficiencies were acknowledged—rebuffing the offer of a supplemental log.[27]   The NRA, by contrast, raised deficiencies in June (promptly after the bankruptcy stay lifted) and forestalled motion practice **not once, but twice** in response to representations from AMc that it would amend

---

[22] *See also*, at 18:23-25; 19:1-4. Furia Decl. Ex.6. App. at 234.

[23] *Id*. at 41:16-19 (emphasis added). Furia Decl. Ex. 6. App. at 256

[24] *See Sprint Commc'ns Co. L.P. v. Big River Tel. Co., LLC*, No. 08-2046-JWL, 2009 WL 2878446 (D. Kan. Sept. 2, 2009).

[25] *Id*. at *1.

[26] *Id*.

[27] *Id*.

and fix its log.[28] Indeed, it now appears that AMc exploited the NRA's good faith in order to "run out the clock" on the extended discovery timeframe, hoping to foist thousands of new privilege-log entries on the NRA days before the discovery cutoff and prevent the NRA from challenging them.[29]  This is exactly the type of gamesmanship disfavored by *Sprint*, and other federal decisions.[30]

### 3. Defendants' actions after October 13, 2021 demonstrate inexcusable neglect and bad faith.

When the Honorable Judge Fish extended the discovery deadline to October 29, 2021, he required the parties to each submit weekly reports concerning the status of discovery.  After discovering the unlogged documents on October 13, 2021, Defendants submitted three status reports to the Court and never once disclosed the fact it had failed to timely produce or log 1,620

---

[28] *See* The National Rifle Association Of America's Mot. To Compel Certain Docs. Withheld Under Deficient Claims Of Privilege ECF No. 397 at 3.

[29] There can be no more compelling case for the necessity of a complete, accurate privilege log than here. For example, at the September 16, 2021 hearing, the NRA's counsel noted the absence of "core books and records" for the "very crucial" years 2015, 2016, and 2017, including with regard to NRATV, the internet TV platform in which the NRA invested approximately $45,000,000 in reliance upon AMc's representations. Status Conf. Tr. 19:5-21, Sept. 16, 2021 Furia Decl. Ex. 6. App. at 256. Notably, two weeks after the conference, on October 1, 2021, AMc produced 200,000 files of indeterminant size which AMc indicates is data from a Dashboard allegedly used to track the performance of NRATV. *See, e.g.* Pl.'s Status Report on Discovery Issues, dated October 29, 2021, ECF No. 394 at p.2-3; § A.2. Furia Decl. Ex.8. App. at 283-284.  Moreover, on October 22, 2021, when AMc produced the Second Amended Privilege Log, it also made two document productions of 4,716 and 413 each. *See, e.g. Id.* These massive productions confirmed the NRA's informed suspicion that AMc had engaged in extensive document withholding, the abusiveness of which was compounded by AMc's failure to log. Documents continued to be produced, even as late as the night of October 29, 2021, the discovery deadline. *See,* Def.'s Status Report on Discovery Issues, dated October 29, 2021, ECF No. 393 at p.5; § D. Furia Decl. Ex.9 App. at 379.

[30] *See, e.g.*, *Williams v. Taser Int'l, Inc.*, 274 F.R.D. 694, 698 (N.D. Ga. 2008)(imposing wholesale waiver as to logged documents, as a sanction for litigants' two-year delay in providing a meaningful privilege log). At the September 16, 2021 hearing, the NRA's counsel also raised concerns about the number of documents logged on AMc's original privilege log upon the apparent assertion of an advice of counsel defense. Tr. 18:19-25; 19:1-4. Without explanation, advice of counsel language is missing from descriptions in the Second Amended Privilege Log, dated October 22, 2021.

supposedly privileged documents.  The information provided by Defendants to the Court was deliberately misleading and designed to deceive both the Court and the NRA.

On October 15, 2021 – two days after allegedly learning that it had failed to log 1,620 documents – Defendants submitted a status report to the Court which advised only that "AMc intends to produce this final amended privilege log early next week ***and hopes that it will resolve the concerns the NRA has raised without court intervention***."[31]  The following week, on the same night Defendants produced its Second Amended Privilege Log with 1,620 new entries, it advised the Court in a status report that "AMc produced its final amended privilege log on October 22, 2021 ***and anticipates that it will resolve the concerns the NRA has raised without the need for court intervention***."[32]  Thus, Defendants' self-serving report expressed an increased degree of certainty that its new privilege log – which contained 1,620 new entries – would "resolve the concerns of the NRA" and avoid court intervention.  Their final report to the Court, on October 29, 2021, did not mention the privilege log at all, as they were apparently content that they had erected a façade of compliance that covered up its failure to log withheld documents that coincidently relate to key matters at issue here.

Defendants' allegation that they "anticipate[d]" that its Second Amended Privilege Log would resolve the NRA's concerns was a ruse, designed to lull the Court and the NRA into a false sense of complacency on the issue.  On this record, a finding of inexcusable conduct on the part

---

[31] AMc's October 15, 2021 Status Report Pursuant To Court Order Of September 16, 2021. Furia Decl. Ex.10. App. at 388. (emphasis added)
[32] AMc's October 22, 2021 Status Report Pursuant To Court Order Of September 16, 2021. Furia Decl. Ex. 11. App. at 399. (emphasis added)

of Defendants' counsel, as well as a determination that privilege has been waived concerning all 1,620 documents added to Defendants' Second Amended Privilege Log is appropriate.

## C.   Many documents on Defendants' Second Amended Privilege Log do not qualify for privilege protection.

In addition to the issues concerning Defendants' delay in asserting the attorney-client privilege, many of the documents on Defendants' Second Amended Privilege Log are, facially, not eligible for privilege protection.   Defendants' log includes documents depicting communications which do not involve an attorney.  For example, entry 084 on its Second Amended Privilege Log is an email dated April 27, 2018 which is described as "Confidential communication between Defendants employee and counsel at Dorsey & Whitney for purposes of obtaining legal advice regarding contract negotiations with Oliver North."  Yet, this email was sent by Defendants employee Melanie Montgomery to Defendants employee Bill Winkler.   This issue appears throughout the Second Amended Privilege Log.[33]

In other instances, Defendants assert privilege over communications which were copied to third-party whose inclusion amounts to a "third-party waiver."[34]   For example, entry 668 is an email dated September 4, 2018 sent by Bill Winkler to a number of individuals, including Defendants counsel at the Dorsey firm.  The email is described as ""Confidential communication between Defendants employee and counsel at Dorsey & Whitney and McDermott Will & Emery for purposes of obtaining legal advice regarding audit procedures and NRA request for documents, and work product created in anticipation of litigation."  However, it was also blind copied to

---

[33] Attached is a chart detailing entries in Defendants Second Amended Privilege consisting of communications solely among Ackermann representatives, served on October 22, 2021 Furia Decl. Ex.12. App. 404-411.
[34] *See Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993) ("Patently, a voluntary disclosure of information which is inconsistent with the confidential nature of the attorney client relationship waives the privilege."); *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 317 (N.D. Tex. 2009) ("Generally, a party waives the attorney-client privilege when it voluntarily discloses the privileged communication to a third party.").

9

Lonnie Heim at Defendants' accounting firm HBC.  The inclusion of Mr. Heim on this email destroys any privilege that might have once existed.

This Court should Order Defendants to produce all documents which were included in its Second Amended Privilege Log which were either (a) sent by, among and between only Ackerman representatives; and/or (b) were sent or copied to third parties other than Defendants' counsel.

## III.

## PRAYER FOR RELIEF

For all the reasons stated above, the Court should grant the NRA's Motion to Compel in its entirety and should further find that privilege is waived with respect to any additional documents responsive to the NRA's discovery requests which Defendants have withheld, but not logged.

Dated:  December 3, 2021                    Respectfully submitted,

*/s/Philip J. Furia*

Cecelia L. Fanelli
*Pro Hac Vice*
clf@brewerattorneys.com
Sarah B. Rogers
New York Bar No. 4755252
sbr@brewerattorneys.com
Philip J. Furia
*Pro Hac Vice*
pjf@brewerattorneys.com
Alessandra P. Allegretto
Texas Bar No. 24109575
apa@brewerattorneys.com
**BREWER ATTORNEYS AND COUNSELORS**
1717 Main Street, Suite 5900
Dallas, Texas 75201

**ATTORNEYS FOR
PLAINTIFF/COUNTER-DEFENDANT
NATIONAL RIFLE ASSOCIATION OF
AMERICA**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 3rd day of December 2021.

*/s/ Philip J. Furia*
Philip J. Furia

4890-8657-4596.6