IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § § § § § | |
| *Plaintiff and Counter-Defendant*, | | |
| v. | § § | Case No. 3:19-cv-02074-G |
| ACKERMAN MCQUEEN, INC., | § § § | |
| *Defendant and Counter-Plaintiff*, | § § | |
| and | § § | |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY, | § § § § § | |
| *Defendants*. | § | |

**<u>DEFENDANTS' BRIEF IN SUPPORT OF DEFENDANTS' OBJECTIONS TO, AND MOTION TO STRIKE THE NATIONAL RIFLE ASSOCIATION OF AMERICA'S SUMMARY JUDGMENT EVIDENCE</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY ................................................................................. 4

II. BACKGROUND ................................................................................................................ 5

III. ARGUMENT AND AUTHORITIES ............................................................................... 10

   A. The Court Should Strike the NRA's Evidence Pertaining to the February 2019 FRA Audit. ................................................................................................................................. 10

      1. The NRA Should Be Estopped From Using or Relying on the FRA Reports. ............... 10

      2. The Sword and Shield Doctrine Prevents the NRA's Use of the FRA Reports ............. 10

      3. The FRA Reports are Inadmissible Hearsay. .................................................................. 12

   B. The Media Articles are Inadmissible Hearsay. ................................................................. 14

IV. CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Ahern v. Pac. Gulf Marine*, No. 8:06-cv-2068-T-27MSS, 2007 U.S. Dist. LEXIS 115745 (M.D. Fla. Nov. 8, 2007) ................................................................................................................ 10

*Brauninger v. Motes*, 260 F. App'x 634 (5th Cir. 2007) ............................................................. 13

*Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233 (5th Cir. 1988) ............................................... 13

*Citizens State Bank v. Leslie*, No. 6-18-CV-00237-ADA, 2020 U.S. Dist. LEXIS 38863 (W.D. Tex. Mar. 5, 2020) ................................................................................................................. 11

*Echo Acceptance Corp. v. Household Retail Servs.*, 267 F.3d 1068 (10th Cir. 2001) ................. 13

*Jones v. C.R. Bard, Inc.*, No. 3:13-CV-599-K (BF), 2014 U.S. Dist. LEXIS 182765 (N.D. Tex. Sep. 15, 2014) ........................................................................................................................ 13

*Palmer v. Hoffman*, 318 U.S. 109 (1943) .................................................................................... 13

*Studesville v. Buck*, No. 2:13-CV-254-J, 2014 U.S. Dist. LEXIS 192843 (N.D. Tex. Aug. 25, 2014) ...................................................................................................................................... 11

*Us Eeoc v. Nabors Indus.*, No. 5-16-CV-00758-FB-RBF, 2018 U.S. Dist. LEXIS 240599 (W.D. Tex. Aug. 21, 2018) ................................................................................................................ 11

*Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084 (5th Cir. 1979) .............................................. 11

**Rules**

FED. R. CIV. P. 26(b)(3) ................................................................................................................ 13

FED. R. EVID. 801 .......................................................................................................................... 12

FED. R. EVID. 802 .......................................................................................................................... 12

FED. R. EVID. 803 .......................................................................................................................... 12

FED. R. EVID. 804 .......................................................................................................................... 13

TO THE HONORABLE A. JOE FISH:

Defendant/Counter-Plaintiff Ackerman McQueen, Inc. ("*AMc*"), Defendants Mercury Group, Inc. ("*Mercury*"), Henry Martin ("*Martin*"), William Winkler ("*Winkler*"), and Melanie Montgomery ("*Montgomery*") (collectively, "*Defendants*"), file this *Brief in Support of Defendants' Objections to, and Motion to Strike, the National Rifle Association of America's* ("*NRA*") *Summary Judgment Evidence* ("*Motion to Strike*").

## I.     INTRODUCTION AND SUMMARY

On November 29, 2021, the NRA filed a Motion for Partial Summary Judgment ("*NRA's MSJ*") supported by an Appendix containing over 3,000 pages of documents containing a plethora of categories, two of which are the subject of this Motion.[1]

*First*, Exhibits 28, 69, 70, 71, 72, and 73 are reports created by Forensic Risk Alliance ("*FRA*"). These reports (the "*FRA Reports*"), along with other FRA related documents, have been the subject of motion practice before two different courts since the Fall 2019. For over two years, the NRA has repeatedly claimed privileged over virtually all of documents and testimony relating to FRA's February 2019 audit (the "*February 2019 FRA Audit*"), including the FRA Reports. Then, on the eve of the November 29, 2021 amended discovery deadline, and after Defendants refused to agree that the selective production of the FRA Reports would not result in a subject matter waiver of the privilege, the NRA chose to produce the FRA Reports anyway. In fact, the NRA has now filed the FRA Reports in support of the NRA's MSJ—in the public record—as purported support for their claims and defenses. However, the FRA Reports and other any evidence relating to the FRA audit should be struck. The NRA should be estopped from relying on the FRA Reports or any other evidence relating to the FRA audit because the FRA Reports were never

---

[1] *See* ECF 421, 422.

properly produced, the NRA has engaged in blatant gamesmanship and abuse of the privilege through the offensive use doctrine, and because the FRA reports are inadmissible hearsay.

*Second*, the NRA filed Exhibits 6, 33, 42, 43, 44, 45, 46, 48 and 49—various media articles—in support of the NRA's MSJ (the "***Media Articles***").  Each of the Media Articles should be struck because they plainly violate the rule against hearsay.

## II.   BACKGROUND

This Court is very familiar with FRA and its February 2019 audit of AMc's books and records (the "***February 2019 FRA Audit***").  Indeed, it has been the subject of motion practice for two years, including most recently before Judge Toliver at the December 15, 2021 hearing. Defendants' refer the Court and incorporate by reference their prior factual allegations in support of this Motion, including its November 12, 2021 Supplemental Joint Status Report on its Motion to Compel (ECF 396).[2]

In sum, shortly after the February 2019 FRA Audit, the NRA sued AMc for the first time on April 12, 2019 in Virginia for breach of the books and records examination clause of the parties' Services Agreement.  According to the NRA, when AMc was allegedly not complying with the examination clause, it hired FRA to review AMc's books and records,[3] including issues with "fraudulent billing" and out-of-pocket expenses and back-up documentation for invoices.

Knowing that it had complied with the February 2019 FRA Audit, Defendants sought to compel the production of various documents relating to the FRA Audit and FRA's findings

---

[2] Defendants also refer and incorporate by reference its original motion to compel relating to the FRA Audit.  *See* ECF 180 at 29-43.
[3] *See* ECF 209, NRA 2d Am. Compl. ¶ 68.

regarding same. During a hearing in the Virginia Action[4] on November 13, 2019, NRA counsel[5] represented to that court:

> We're not offering any conclusions or opinions by FRA regarding its – what it believes about how the examination occurred, simply the facts of what happened… There is no audit report. It wasn't an audit. **A report wasn't done**… **So the – there is no assertion of privilege over an audit report**.[6]

When the Virginia court directly asked NRA counsel, "During that deposition [of the FRA's corporate representative, Michael Trahar] and during all of the discovery in this matter, have you ever provided to any defendants or have they ever requested a copy of the report by FRA?" NRA counsel unequivocally stated, "**There is no report**."[7] Based on NRA counsel's repeated false representations, the Virginia court came to mistakenly believe there was no report.[8]

After AMc's counsel explained to the court that "[t]here was something that was…shown on the screen to NRA officials but never provided to them in paper," some type of "report that was issued over a computer screen to NRA members and they're trying to bury it,"[9] NRA counsel dug in his heels even deeper. The Virginia court asked directly, "Was there a report on the computer screen?" to which NRA counsel responded, "No, Your Honor."[10]

The court never saw any of the withheld documents and never made a finding on whether the documents were, in fact, privileged or properly shielded by the work product doctrine. Instead,

---

[4] The above-captioned lawsuit is hereinafter referred to as the "**Texas Action**." The three lawsuits entitled *National Rifle Association of America v. Ackerman McQueen, Inc. and Mercury Group, Inc.* filed in the Circuit Court for the City of Alexandria, Cause Nos. CL19001757, CL19002067, and CL19002886, are hereinafter referred to as the "**Virginia Action.**"
[5] NRA counsel at the hearing was James Hundley and Robert Cox (Briglia Hundley, P.C.) and Michael Collins (Brewer Attorneys & Counselors (the "**Brewer Firm**"), former lead counsel of record before he separated from the Brewer Firm). It is undisputed that Bill Brewer is the NRA's lead litigation counsel despite not making a formal appearance in these lawsuits. *See, i.e.*, ECF 61 at 1 ("The dispute centers on Defendants' efforts to attempt to disqualify indirectly **the NRA's lead litigation counsel, Mr. William Brewer III**…") (emphasis added).
[6] ECF 396 at Ex. 1-A, Virginia Action Hr'g Tr. (Nov. 13, 2019) at 63:2-65:1 (emphasis added).
[7] ECF 396 Ex. 1-A, Virginia Action Hr'g Tr. (Nov. 13, 2019) at 70:10-14 (emphasis added), 71:14-72:6.
[8] *Id.* at 72:7-8 ("I keep hearing the word 'report.' I mean, obviously, there is no report.").
[9] *Id.* at 72:9-17.
[10] *Id.* at 72:18-20.

the court simply denied the motion to compel and acknowledged on the record that AMc would come back to the court because it has to be able to defend itself: "I think we may ultimately have to kind of deal with this in the sense that they're entitled to defend this case… I'm sure that I will see you again."[11]  The Virginia Action was stayed before AMc had the opportunity to revisit the issue for trial.

Exposing the falsity of NRA counsels' statements in Virginia, the NRA's General Counsel, John Frazer ("*Frazer*"), testified two years later on August 19, 2021 that: (1) the NRA is relying on the FRA's findings in support of multiple claims[12] and (2) FRA presented reports and findings to the NRA on a computer screen by Zoom (*i.e.*, the FRA Reports):

> Q: And when the FRA audit ended, what actions did FRA take at that point?
>
> A: They presented some of their findings to us.
>
> **Q: How did they present their findings to you?**
>
> **A: On a Zoom call.**  I think it was the first Zoom call I had ever participated in.
>
> Q: When you say FRA presented findings to us, who is us?
>
> A: I participated in it **and Sarah Rogers from the Brewer Firm participated**…[13]

When AMc's counsel attempted to discover whether FRA provided a report, Frazer quibbled with the terminology "report," and, more egregiously, counsel instructed him not to answer the question seeking underlying facts, "Did FRA present any documents on the Zoom meeting at the end of the FRA audit?"[14]

---

[11] *Id.* at 81:1-8.
[12] *See* ECF 396 at Ex. 1-C, J. Frazer Dep. (Aug. 19, 2021) at 69:14-15, 70:1, 70:18-19, 70:21, 71:1-2, 71:7-12.
[13] *See id.* at 63:16-17, 63:21-22, 64:2-11.
[14] *See id.* at 67:12-13, 67:16-19, 67:22-68:3, 68:5-69:1.

On September 16, 2021, however, and with no prior notice or discussion with AMc, NRA counsel represented to this Court at the status conference that "*FRA generated a report* with its findings" and that the NRA would produce the report upon a stipulation that such production is not a subject matter waiver:

```
1    "Here's what -- Here's what Defendant showed us.  Here's what we
2    think of the documents in our view as forensic accountants."
3           That document we think is privileged, but if there's a
4    stipulation that it's not a subject matter waiver, we'll give
5    that to them.  That's -- That's the information they want.
6    That's what the forensic accountants thought of what they were
7    shown.  So that is -- that is my summary of that half of the
8    October dispute, and that is our offer to resolve it.
```
15

At that time, AMc's counsel made clear that this was something it has pursuing for years, and that it would have to analyze the NRA's eleventh hour "offer" to produce the FRA Reports. Over the course of the next few weeks, AMc repeatedly advised the NRA that it would not agree to selective production and that any selective production would amount to subject matter waiver.[16] Disregarding that stance and choosing to waive its purported privileged, the NRA instructed FRA to produce the FRA Reports anyway – and not just one report, but *six*.[17] Those reports clearly include findings or conclusions, termed "Observations," about the audit and the documents provided.[18] Further, on the top of every page of the FRA Reports, it stated "DRAFT Privileged and Confidential, Prepared at the Request of Counsel."[19] Notably, this was also after Defendants

---

[15] *See* ECF 396 at Ex. 1-B, Texas Action Hr'g Tr. (Sep. 16, 2021) 30:15-31:8.
[16] *See* ECF 396 at Ex. 1-E, Letter to S. Rogers (Oct. 8, 2021) at 2; ECF 396 at Ex. 1-F, Letter to S. Rogers (Sep. 24, 2021) at 1-2.
[17] *See e.g.*, ECF 396 at Ex. 1-G (NRA_AM_FRA_0013873).
[18] *See e.g.*, *id.* at sheet entitled "Observations."
[19] *See* ECF 421, Ex. 28, [APP 559].

had conducted numerous depositions seeking testimony relating to the February 2019 FRA Audit, only to be stonewalled at every turn because of the NRA's prior positions regarding privilege.[20]

After learning of the NRA's continued gamesmanship regarding the FRA Audit and selective waiver of the privilege, AMc filed a Supplement with the Honorable Magistrate Toliver advising her of these developments and further seeking to compel the production of any and all documents relating to the FRA Audit, or in the alternative, an order precluding the NRA from using or relying on anything from the FRA Audit.[21]

In its November 12, 2021 response, the NRA proclaimed that a subject matter waiver was not appropriate because the "NRA had made no use of the FRA spreadsheets [FRA Reports] other than providing them to its testifying experts," that "none of the NRA's pleadings quote, cite, or mention documents logged as privileged by the FRA," and that the "NRA does not rely on FRA's opinions or work product to any facts regarding its claims or defenses."[22]

Seventeen days later, the NRA filed each of the FRA Reports in the public record as support for both its claims and defenses in this case.[23] Indeed, the NRA specifically references the FRA Reports throughout their Brief in support of the NRA's MSJ to support their false claims that AMc failed to comply with the February 2019 FRA Audit and its defense that this was a material breach of the Services Agreement relieving it of its contractual obligations to pay AMc the millions of dollars in damages it has incurred as result of the NRA's breaches of the Services Agreement.[24]

---

[20] See ECF 392 at 4-5, 16-17.
[21] ECF 392 at 4-5.
[22] ECF 403 at 9.
[23] ECF 421 at Ex. 28, 69-73.
[24] *See* ECF 420 at FNs 96-99, 101-02, 108, 134.

## III. ARGUMENT AND AUTHORITIES

### A. The Court Should Strike the NRA's Evidence Pertaining to the February 2019 FRA Audit.

#### 1. The NRA Should Be Estopped From Using or Relying on the FRA Reports.

As detailed above, the NRA has engaged in a multi-year crusade to preclude AMc from obtaining relevant and non-privileged information relating to the February 2019 FRA Audit. This has included motion practice in Virginia and Texas relating to FRA documents, and the obstruction of answering questions throughout numerous depositions under the guise that information related to the February 2019 FRA Audit was privileged. Now, as the parties finally inch closer to the trial of this case, but after years of discovery had already taken place, the NRA made a calculated and strategic decision to only produce the FRA Reports, and then attempts to rely upon them in support of the NRA's MSJ. Indeed, a review of the NRA's Brief in support of the NRA's MSJ makes clear that the sole evidence cited and relied upon for its claim that AMc did not comply with the Services Agreement relating to the February 2019 FRA Audit are the FRA Reports themselves.[25]

Given the egregiousness of the NRA's actions with respect to the FRA Reports, they should be struck and the NRA should not be permitted to rely upon them in support of the NRA's MSJ.

#### 2. The Sword and Shield Doctrine Prevents the NRA's Use of the FRA Reports.

This court should also strike the FRA Reports because, after years of claiming that it was privileged and withholding it, the NRA now cites to it as a primary basis of its affirmative claims.[26]

The sword and shield doctrine applies to "prohibit[] a party from partially disclosing and affirmatively relying upon aspects of privileged documents to support their claim and then

---

[25] *See* ECF 420 at FNs 96-99, 101-02, 108, 134.
[26] ECF 420 at 13, 14.

shielding the underlying information from scrutiny by the opposing party."[27] In other words, the doctrine prevents a party from using information as the basis of a claim, while simultaneously shielding parts of it from scrutiny under a claim of privilege. Courts frequently apply the sword and shield doctrine to remedy the problem by ruling that the party running afoul of the rule has waived any claim of privilege.[28] However, in other cases courts have ruled that a party simply cannot bring a cause of action when the party runs afoul of the rule by basing the cause of action on facts that it has only partially disclosed based on a claim of privilege, for example by striking related evidence from the record.[29]

Here, the NRA relies on the FRA Reports to support its cause of action for breach of contract,[30] while only recently producing the parts of the report it wishes to rely on, and continuing to argue that other information and communications related to the report are privileged. Given the late stage of this litigation, even if the court now finds that the NRA has waived its claim of privilege, the damage has been done. The NRA's experts and witnesses have been deposed without the use of the FRA Reports, the parties have filed their dispositive motions, and AMc would not have a fair opportunity to defend against the NRA's FRA related claims if they were allowed to continue. Therefore, waiver is not sufficient. This Court should apply the sword and shield doctrine and strike any evidence pertaining to the February 2019 FRA Audit.

---

[27] *Ahern v. Pac. Gulf Marine*, No. 8:06-cv-2068-T-27MSS, 2007 U.S. Dist. LEXIS 115745, at *9 (M.D. Fla. Nov. 8, 2007).
[28] *See, e.g., Us Eeoc v. Nabors Indus.*, No. 5-16-CV-00758-FB-RBF, 2018 U.S. Dist. LEXIS 240599, at *7 (W.D. Tex. Aug. 21, 2018).
[29] *See Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1087 (5th Cir. 1979); *Citizens State Bank v. Leslie*, No. 6-18-CV-00237-ADA, 2020 U.S. Dist. LEXIS 38863, at *4 (W.D. Tex. Mar. 5, 2020); *Studesville v. Buck*, No. 2:13-CV-254-J, 2014 U.S. Dist. LEXIS 192843, at *5 (N.D. Tex. Aug. 25, 2014).
[30] ECF 420 at Ex. 27, 28, 69, 70, 71, 72, and 73.

### 3. The FRA Reports are Inadmissible Hearsay.

The NRA has cited the FRA Reports' statement that "FRA was told that the negotiation process to determine pricing was proprietary and FRA could not have access to this information" as the *only* support for the allegation in its Motion for Summary Judgment that "media-buy information, which was an explicit, agreed upon focus of the record examination, was withheld from FRA because—according to AMc—the information 'was proprietary and FRA could not have access to this information.'"[31] This is a classic example of "a statement that… a party offers in evidence to prove the truth of a matter asserted in the statement" and it must therefore be excluded.[32] The NRA's other citations to the FRA Reports are similar statements offered to prove the truth of the matter asserted.[33]

Neither do the FRA Reports qualify for the hearsay exception for "[r]ecords of a regularly conducted activity."[34] That exception to the rule against hearsay requires that:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; **and**
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.[35]

---

[31] ECF 420 at 13.
[32] *See* FED. R. EVID. 801, 802.
[33] *See, e.g.* ECF 420 at 13 ("FRA also received no documentation regarding the assessment of the selection of media outlets, the dates of airing and/or the price being charged…."), supported by the FRA Report's Statement that "FRA did not receive any documentation regarding the assessment of the selection of media outlets, dates of airing and/or the price being charged.") [APP 561].
[34] *See* FED. R. EVID. 803.
[35] *See id*. (emphasis added).

To begin with, the Declaration of NRA counsel Sarah Rodgers makes no attempt to meet the requirements of the exception.[36] Neither can the FRA Reports be produced in admissible form at trial, because they were not records kept in the course of a regularly conducted activity of the NRA, and the circumstances of its preparation indicate a lack of trustworthiness given the facts and circumstances detailed above. Indeed, Defendants have never been provided an opportunity to conduct any discovery into the FRA Reports, including but not limited to determining who was involved in the preparation of them, when were they prepared, and how they were prepared. Further, each of the FRA Reports suggest that they are a "DRAFT" reports, further calling into question their trustworthiness.

The classic indication of a lack of trustworthiness is that the "record was prepared in anticipation of litigation."[37] In the present case, the FRA Reports were prepared in anticipation of litigation as indicated by the circumstances surrounding its creation and the NRA's stated position that "FRA Was Retained by the NRA's General Counsel to Facilitate Legal Advice in Anticipation of Litigation."[38] Even the agreement between the NRA and FRA for the preparation of the FRA Report states that "[t]he materials produced pursuant to this Agreement are so produced in anticipation of litigation…."[39]

Indeed, by arguing for so long that the FRA Reports were privileged, the NRA relied on its position that the FRA Reports were prepared in anticipation of litigation, because the primary focus of work product doctrine analysis is to determine whether the document is prepared in

---

[36] *See* ECF 421 at 1, failing to aver that the record was made at or near the time by—or from information transmitted by—someone with knowledge, etc.
[37] *See* FED. R. EVID. 804, Notes of Advisory Committee on 2014 amendments. [Subdivision (6)]; *see, e.g., Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 238 (5th Cir. 1988); *Brauninger v. Motes*, 260 F. App'x 634, 637 (5th Cir. 2007); *Echo Acceptance Corp. v. Household Retail Servs.*, 267 F.3d 1068, 1090 (10th Cir. 2001); *Palmer v. Hoffman*, 318 U.S. 109, 111-14 (1943).
[38] *See* ECF 403 at 15, section heading.
[39] ECF 422, Ex. 27 at 4 [APP 544].

anticipation of litigation, and indeed documents prepared in the regular course of business are not entitled to work product protection.[40]

Therefore, as the FRA Reports and related documents are inadmissible hearsay and the circumstances of their preparation indicate a lack of trustworthiness, they are not covered by the business records exception or any other exception, these defects cannot be cured prior to or at trial, and they must be struck.

**B.  The Media Articles are Inadmissible Hearsay.**

In support of the NRA's MSJ, it includes the nine Media Articles.  These Media Articles includes various news articles and a blog post from the ACLU titled "New York State Can't Be Allowed to Stifle the NRA's Political Speech", which argues that the NRA was subject to politicized scrutiny from the government of New York.[41] The NRA uses that blog post to support the statement that "the NRA confronted politicized scrutiny from New York's insurance regulator."[42]  Each of the Media Articles are black letter hearsay and should be struck as such.

## IV.    CONCLUSION

The evidence supporting the NRA's Motion for Partial Summary Judgment fails to meet the law's standards for admissibility.  This Court should strike the evidence referenced in this Motion to Strike and consider the NRA's Partial Motion for Summary Judgment in its absence.

---

[40] Fed. R. Civ. P. 26(b)(3); *Jones v. C.R. Bard, Inc.*, No. 3:13-CV-599-K (BF), 2014 U.S. Dist. LEXIS 182765, at *10-12 (N.D. Tex. Sep. 15, 2014).
[41] ECF 420 at Ex. 6.
[42] ECF 420 at 7.

Respectfully submitted,

*/s/ Brian E. Mason*
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com
**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR DEFENDANTS/
COUNTER-PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2021, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Brian E. Mason*
BRIAN E. MASON