**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § | |
| | § | |
| | § | |
| **Plaintiff and Counter-Defendant** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ACKERMAN MCQUEEN, INC.,** | § | |
| | § | **Civil Action No. 3:19-cv-02074-G** |
| **Defendant and Counter-Plaintiff,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY,** | § | |
| | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFF NATIONAL RIFLE ASSOCIATION OF AMERICA'S**
<u>**RULE 72 OBJECTIONS TO MAGISTRATE'S DISCOVERY ORDER**</u>

**BREWER, ATTORNEYS & COUNSELORS**
Cecelia L. Fanelli
clf@brewerattorneys.com
Sarah B. Rogers
sbr@brewerattorneys.com
Philip J. Furia
pjf@brewerattorneys.com
Alessandra P. Allegretto
apa@brewerattorneys.com
BREWER ATTORNEYS AND COUNSELORS
1717 Main Street, Suite 5900
Dallas, Texas 75201

**ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND .........................................................................................2

III. LEGAL STANDARD ....................................................................................................4

IV. ARGUMENT ................................................................................................................4

    A.    The NRA Objects to the Order Compelling Mr. Brewer's Deposition ..................4

        1.    Judge Toliver erred in disregarding the Shelton factors in her analysis of whether Mr. Brewer should be deposed. ...................................5

        2.    The Order granting the motion to compel lacks an analysis showing that Defendants met their three-part burden to depose Mr. Brewer on each of the multitude of topics that they designate. ...............................8

            a.    Proposed Topic No. 1: Communications with the media. ..............9

            b.    Proposed Topics No. 2: Underlying core facts; the "leak" of the April 25, 2019 letter; the FRA audit; the extortion narrative; the Stinchfield affidavit; the Brewer Firm's representations to NRA members and Board members. ...............10

            c.    Proposed Topic No. 3: North's investigation into Brewer's retention and fees, and allegations of tortious interference. ..........14

            d.    Proposed Topics Nos. 4 and 5: RICO threats and family relationships. ...................................................................................15

        3.    Alternatively, Judge Toliver did not define the scope of the deposition. ....................................................................................................16

    B.    Judge Toliver Erred in Denying the NRA's Request for an Award of Costs and Fees. ...............................................................................................................18

V. CONCLUSION ............................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Advanced Physicians, S.C. v. Connecticut Gen. Life Ins. Co.*,
 431 F. Supp. 3d 857 (N.D. Tex. 2020) ...................................................................4

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*,
 No. CIV.A. 6:07-CV-559, 2009 WL 2174925 (E.D. Tex. July 21, 2009) ...............6

*Huawei Techs. Co. Ltd v. T-Mobile US, Inc.*,
 No. 2:16-CV-00052 JRGRSP, 2017 WL 7052463 (E.D. Tex. Sept. 20, 2017)......11

*McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*,
 No. 3:14-CV-2498-B, 2016 WL 3033544 (N.D. Tex. May 26, 2016) .....................6

*Merrill v. Waffle House, Inc.*,
 227 F.R.D. 475 (N.D. Tex. 2005) ...........................................................................4

*Murphy v. Adelphia Recovery Tr.*,
 No. 3-09-MC-105-B, 2009 WL 4755368 (N.D. Tex. Nov. 3, 2009)................6, 7, 9

*Parker v. Bill Melton Trucking, Inc.*,
 No. 3:15-CV-2528-G, 2017 WL 726909 (N.D. Tex. Feb. 24, 2017) .......................4

*Pierce v. Underwood*,
 487 U.S. 552 (1988)................................................................................................18

*Shelton v. American Motors Corp.*,
 805 F.2d 1323 (8th Cir. 1986) ........................................................... *passim*

**Rules**

Fed. R. Civ. P. 27(a)(5)(B) .............................................................................................2

Fed. R. Civ. P. 37(a)(5)(B) ...........................................................................................18

Fed R. Civ. P. 72(a)...............................................................................................1, 3, 4

Local Civil Rule 72.1 ...................................................................................................1, 3

# I.

# **INTRODUCTION**

Plaintiff the National Rifle Association of America (the "NRA"), pursuant to Fed R. Civ. P. 72(a) and Local Civil Rule 72.1, files these Objections to the Order issued by Magistrate Judge Toliver, dated December 16, 2021 [Doc. No. 430] (the "Order").[1]  The NRA objects to the Order insofar as it granted Defendants' motion to compel the deposition of William A. Brewer, III[2] and appointed Honorable Judge Paul D. Stickney to act as Special Master concerning the deposition. The NRA also objects to Order insofar as the NRA's request for an award of sanctions against the Defendants was denied.

The NRA contends that the Order is contrary to law as Defendants failed to meet their burden to establish that a deposition of opposing counsel is appropriate and warranted in this matter.  It is the NRA's position that Judge Toliver's conclusion that Mr. Brewer's deposition is warranted was an incorrect conclusion of law, because (a) the *Shelton*[3] factors apply here and (b) the application of those factors demonstrate that Defendant failed to carry its burden to demonstrate entitlement to Mr. Brewer's deposition.  On this Objection, this Court should review this error of law *de novo*.  In so doing, Defendants' motion to compel must be denied because they cannot establish that a deposition of Mr. Brewer is warranted. Sustaining the objection will obviate the need for the assistance of Judge Stickney in this matter.  Alternatively, if this Court finds that the deposition of Mr. Brewer should proceed, the NRA respectfully requests that the Court revise the Order to provide guidance regarding the scope of Mr. Brewer's deposition in order to facilitate an

---

[1] A copy of the Order is annexed to the Declaration of Philip J. Furia ("Furia Declaration") as Exhibit A [APP 003-4].  The Order was issued one day after oral argument was held concerning the motion to compel.  A transcript of the Oral Argument, which occurred on December 15, 2021 (the "Transcript"), is annexed to the Furia Declaration as Exhibit B [APP 005-94].

[2] Defendants' motion to compel the deposition of William A. Brewer, III was filed as a Joint Status Report [*see* ECF No. 323] (the "Joint Status Report"), pursuant to Judge Toliver's Standing Order [ECF No. 62].

[3] *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986).

orderly examination.

In addition, the NRA objects to the Order to the extent that it denied the NRA's request for an award of attorney's fees against Defendants.  In view of their abject failure to demonstrate entitlement to depose the NRA's counsel, Defendants' motion was not "substantially justified."  As such, Fed. R. Civ. P. 27(a)(5)(B) requires an award of reasonable expenses and attorney's fees in opposing the motion to compel.  In addition, the NRA requests an award of expenses and attorney's fees for those amounts incurred from the date of the Order until the date these Objections are ruled upon by the Court.

As the discussion below establishes, Brewer had nothing to do with the lawsuit, except to represent his client.

## II.

## FACTUAL BACKGROUND

On August 12, 2021, the parties filed a Joint Status Report with Judge Toliver, pursuant to her standing Order, setting forth the parties' respective positions concerning Defendants' request to depose Mr. Brewer.  Four days later, on August 16, 2021, this Court issued an Order granting in part, and denying in part, the NRA's motion to dismiss Defendants' counterclaims.  Specifically, this Court dismissed Defendants' claims for tortious interference and business disparagement.[4]  In addition, the Court determined the following with respect to Defendants' defamation claim based on statements allegedly made by Brewer:

> To the extent that AMc asserts a separate defamation claim based on the allegation that Brewer repeated the contents of the letter to THE WALL STREET JOURNAL, the court concludes that such a claim fails because AMc did not adequately allege "the time, place, content, speaker, and listener of the defamatory matter." *Jackson v. Dallas Independent School District*, 3:98-CV-1079, 1998 WL 386158 at *5(N.D.

---

[4] *See* Decision [ECF. No. 329] pp. 42, 52.

Tex. July 2, 1998) (quotations and citations omitted) (Fitzwater, J.). AMc alleges only that "[u]pon information and belief, Brewer and the Brewer Firm were the ones who provided LaPierre's letter to the media, including the Wall Street Journal."   SAC ¶ 130.   AMc provides no detail whatsoever to support this assertion.[5]

And as to the Defendants' conspiracy claim, the Court held:

> The court will not consider AMc's conspiracy claim insofar as it concerns the NRA's general counsel, Brewer, or BAC.  *See Heffernan v. Hunter*, 189F.3d 405, 413 (3rd Cir. 1999) (barring conspiracy claim between counsel and client so long as challenged conduct occurs within scope of representation).  "[T]he mere fact that attorneys have 'mixed motives,' such as 'enhancing' their reputation by aggressive representation, does not remove their conduct from the scope of the agency."  *Id.*[6]

On December 15, 2021, the parties appeared before Judge Toliver for oral argument concerning several discovery matters, including the Joint Status Report on Defendants' motion to compel.[7]  On December 16, 2021, Judge Toliver issued an electronic Order granting Defendants' motion, and appointing Judge Stickney to serve as special master for the deposition.[8]  The parties conferred with Judge Stickney on December 28, 2021 and set Mr. Brewer's deposition for January 22, 2022.

The NRA now timely files these Objections to the Order, pursuant to Rule 72(a) and Local Civil Rule 72.1.

---

[5] *Id.* p. 30, Fn. 14.

[6] *Id.* p. 54, Fn. 24.

[7] In addition, the Court addressed the NRA's motion to compel the production of documents being withheld by Defendants on inappropriate claims of attorney-client privilege and work-product protection.

[8] The Order also granted the NRA's motion concerning improperly withheld documents, and Ordered Defendants to produce a privilege log for documents being withheld with dates prior to January 1, 2018 and after April 10, 2019.

## III.

## <u>LEGAL STANDARD</u>

Upon a timely objection to a Magistrate's non-dispositive Order, Rule 72 (a) provides that the district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law."[9]  "Courts have interpreted this language to create distinct standards of review for findings of fact and conclusions of law."[10] "The Court reviews the Magistrate Judge's legal conclusions *de novo*, and reviews her factual findings for clear error."[11]

## IV.

## <u>ARGUMENT</u>

### A.      The NRA Objects to the Order Compelling Mr. Brewer's Deposition

The NRA Objects to the Order because Judge Toliver committed an error of law when she granted Defendants' motion to compel the deposition of Mr. Brewer.  "When a party objects to a magistrate judge's ruling on the ground that it is contrary to law, the party must demonstrate that the magistrate judge erred in some respect in [her] legal conclusions."[12]  Judge Toliver erred in that she did not (i) as a threshold matter, recognize the applicability of the *Shelton* factors here; (ii) and, in the alternative, did not properly apply the *Shelton* factors, in determining whether to allow Defendants to depose the NRA's counsel.   In addition, Judge Toliver erred in that she did not define the scope of appropriate questioning at Mr. Brewer's deposition.

---

[9] Fed. R. Civ. P. 72(a).
[10] *Parker v. Bill Melton Trucking, Inc.*, No. 3:15-CV-2528-G, 2017 WL 726909, at *1 (N.D. Tex. Feb. 24, 2017).
[11] *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 476 (N.D. Tex. 2005).
[12] *Advanced Physicians, S.C. v. Connecticut Gen. Life Ins. Co.*, 431 F. Supp. 3d 857, 861 (N.D. Tex. 2020) (quoting *Smith v. Smith*, 154 F.R.D. 661, 665 (N.D. Tex. 1994)).

1.    **Judge Toliver erred in disregarding the Shelton factors in her analysis of whether Mr. Brewer should be deposed.**

In the Joint Status Report on Defendants' motion to compel, Defendants identified the following topics about which they seek to depose Mr. Brewer:[13]

1.  Communications with media, facts about documents provided to the media, and discussions with the Brewer Firm PR department or employees concerning those communications and documents;

2.  Non-privileged underlying facts at the core of the case, including who wrote the April 25, 2019 LaPierre letter to the Board, who provided the letter to the media, who advised Brewer that AMc was leaking confidential information to any third party and what evidence he has (in direct reference to previous depositions where NRA executives testified the only information they have about AMc "leaking" is from Brewer), what issues arose from the FRA audit (including what documents AMc did not provide or how AMc did not comply with the audit), Brewer's role in the extortion narrative (who, what, when, where), the Stinchfield affidavit, the Brewer Firm's non-privileged representations to NRA members and Board members;

3.  Col. North's investigation into Brewer's retention and his fees;

4.  Matters for which any privilege has been waived, including threats of criminal indictment and other communicated messages passed to AMc through Skye Brewer or other family members; and

5.  His prior relationship with AMc and the McQueen family, including his knowledge regarding his father-in-law's cancer.

An additional version of these topics appears at page 28 of the Joint Status Report, which provides as follows:[14]

1.  Defamation per se and per quod, as well as business disparagement, relating to the extortion narrative (which Brewer initially drafted and parroted to the media), withholding documents in breach of the Services Agreement (even though no NRA executive is aware of what documents were withheld and many of them point to Brewer as the source of their "knowledge"), and leaking confidential information to the media (despite actual evidence that Brewer and his firm leak documents to the media);

---

[13] *See* Joint Status Report, pg. 25.

[14] *See* Joint Status Report, pg. 28 where Defendants provide additional detail as to how their proposed topics relate to the causes of action active in the matter at the time.

2. Tortious interference, which, in part, turns upon the extortion narrative and accusations against Col. North and AMc—which was all a ruse to avoid Brewer answering about his engagement and fees;

3. Fraud, including the "fake audits" whereby Brewer sent his surrogate (employee Susan Dillon) to work at Forensic Risk Alliance to conduct the promised "independent" audit of AMc's confidential documents, all the while corresponding with Dillon every day about the audit;

4. Civil conspiracy for defamation, fraud, and tortious interference; and

5. AMc's defenses to the NRA's claims, including but not limited to the NRA's knowledge of the North Contract on which it bases its fraud claim (including that Brewer was in the room when the contract was approved), unclean hands (relating to the above torts), and fraud (as noted above).

Courts in this Circuit "have applied the three-prong test established by the Eighth Circuit in *Shelton* to determine circumstances when in-house counsel or other opposing counsel should be subject to being deposed[]."[15] Under *Shelton*, a party is permitted to take the deposition of opposing counsel only if ***all of the following criteria are satisfied***: "(1) there are no other means to obtain the information sought; (2) the information is relevant and not privileged; and (3) the information is crucial to the preparation of the case."[16] This is a burden "***that the party seeking the deposition must meet***."[17]

During the December 15, 2021 hearing on Defendants' motion to compel, Judge Toliver noted that *Shelton* was inapplicable to the facts at hand. She posed the following question to the parties' counsel: "why should *Shelton* -- you know, the *Shelton* inquiry, the factors under *Shelton* even apply as to Mr. Brewer if there is the potential of him being a witness, which Judge Fish has

---

[15] *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-CV-2498-B, 2016 WL 3033544, at *5 (N.D. Tex. May 26, 2016).

[16] *Murphy v. Adelphia Recovery Tr.*, No. 3-09-MC-105-B, 2009 WL 4755368, at *2 (N.D. Tex. Nov. 3, 2009) (citing *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986)).

[17] *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, No. CIV.A. 6:07-CV-559, 2009 WL 2174925, at *2 (E.D. Tex. July 21, 2009) (emphasis added).

found?"[18]  In response, Defendants' counsel Mr. Gruber advised the court that he "think[s] Judge Fish has also determined that he'll probably be a fact witness."[19]  Judge Toliver's inquiry and Mr. Gruber's response demonstrate a misunderstanding of both the facts and applicable law.   Your Honor has never found that Mr. Brewer is a "potential witness" or a "fact witness."   To the contrary, in the decision on Defendants' Motion to Disqualify Mr. Brewer and the Brewer firm, Your Honor noted that "the parties dispute whether Brewer 'is a or may be a witness necessary to establish an essential fact on behalf of the lawyer's client'" and advised that the "*court need not resolve that dispute[].*"[20]

However, even if this Court had determined that Mr. Brewer is a potential fact witness (which it did not), this determination would not render *Shelton* inapplicable.  In this District, "the critical factor in determining whether the *Shelton* test applies is . . . the extent of the lawyer's involvement in the pending litigation."[21]  "If the lawyer has knowledge of relevant facts related to the subject matter of the litigation, and is merely advising the client with respect to the lawsuit, *Shelton* does not apply," but "**if the lawyer is actively involved in trial preparation, she cannot be deposed unless the *Shelton* criteria are met**."[22]

In the Joint Status Report, the NRA demonstrated that Mr. Brewer is actively involved in trial preparation.   The Joint Appendix submitted with the Joint Status Report includes a Declaration from NRA General Counsel John Frazer where he confirms that "the NRA relies heavily upon Mr. Brewer for litigation-strategy advice in this matter and intends and expects, that he remain actively engaged in trial preparation."[23]  Mr. Frazer also declared that "a review of

---

[18] Transcript at pg. 4:12-15. [APP 009].
[19] Transcript at pg. 4:20-22. [APP 009].
[20] Memorandum Opinion and Order dated September 14, 2020 [ECF. No. 166], pg. 11 (emphasis added).
[21] *Murphy*, 2009 WL 4755368, at *3.
[22] *Id.*
[23] Declaration of J. Frazer dated August 3, 2021 [ECF No. 325], page 193, ¶ 3.

billing records indicate that nearly one-third of hours billed by Mr. Brewer individually over the course of May and June 2021 related to trial preparation in the Ackerman Litigation."[24]  Based on the foregoing, the *Shelton* factors plainly apply to the question of whether Defendants can depose Mr. Brewer, and the Order otherwise is in error.

> 2.    **The Order granting the motion to compel lacks an analysis showing that Defendants met their three-part burden to depose Mr. Brewer on each of the multitude of topics that they designate.**

The Order granting Defendants' motion to compel Mr. Brewer's deposition contains no analysis of whether Defendants made an adequate showing concerning the *Shelton* factors, but refers to the "reasons stated on the record during the hearing held on December 15, 2021."  During the hearing, Judge Toliver addressed the application of the *Shelton* factors only summarily, and held as follows:

> I know you-all know those are the factors, but just going through and looking at the different topics or potential topics, I can see that Mr. Brewer, even if the Court applies the *Shelton* factors, would have to -- would have to sit and be deposed ***for some of those at least***.[25]

Judge Toliver's reasoning for reaching this conclusion is not set forth in the Order or the hearing Transcript.  The NRA contends that the decision to compel Mr. Brewer's deposition was contrary to law because Defendants have failed to demonstrate their entitlement to depose Mr. Brewer as to the topics described in the Joint Status Report.  Specifically, Defendants have failed to establish that any of their five proposed topics involve information which can be obtained only from Mr. Brewer.  They rely exclusively on the unsupported statements of their trial counsel, who also was its counsel concerning the underlying events which preceded the litigation.  For example, Defendants contend that "the NRA's own witnesses testify that their knowledge only comes from

---

[24] *Id*. at ¶ 4.
[25] Transcript, pg. 10:2-6. [APP 015] (emphasis added).

Brewer."[26] Yet, they do not cite to a single instance where this occurred.  Defendants also claim that the NRA "base[s] its allegations upon communications with Brewer,"[27] but they do not cite to any deposition, pleading or other evidence for substantiation.  Later, after listing the five topics Defendants seek to explore at Mr. Brewer's deposition, Defendants summarily state that they "cannot obtain specific information about the above matters from any source besides Brewer." Again, no evidence, citation or explanation is provided to support their contention.  AMc likewise fails to satisfy the other two Shelton criteria as described more fully below.

### a.     <u>Proposed Topic No. 1: Communications with the media.</u>

Though it is Defendants' burden to establish that no other means exists to obtain the information, in the Joint Status Report, the NRA affirmatively demonstrated that alternative sources of information do, in fact, exist.  "The availability of corporate representatives with knowledge of relevant facts is a viable alternative to the deposition of counsel."[28]  With regard to the topic of "communications with the media," (Topic No. 1) Defendants could obtain the information they seek from Mr. Brewer from (a) Travis Carter, the Managing Director of Public Affairs at the Brewer Firm; and/or (b) Andrew Arulanandam, the NRA's Managing Director of Public Affairs. AMc could have sought to take the deposition of members of the media with whom Brewer supposedly communicated.

In any event, after the submission of the Joint Status Report, this Court ruled that for any claim based upon the allegation that "Brewer repeated the contents of the [April 25, 2019] letter to THE WALL STREET JOURNAL, the court concludes that such a claim fails because AMc did

---

[26] Joint Status Report at pg. 24.
[27] Joint Status Report at pg. 25.  This inane comment amounts to nothing more than a description of an attorney-client communication, the likes of which occur routinely in the legal profession and are not *per se* nefarious as AMc insinuates.
[28] *Murphy*, 2009 WL 4755368, at *4.

not adequately allege 'the time, place, content, speaker, and listener of the defamatory matter.'"[29]
Thus, the deposition of Brewer is neither relevant or crucial to AMc's preparation of its case. Based
upon the above, the NRA submits that its counsel should not be deposed.

<div align="center">

**b.**      <u>**Proposed Topics No. 2: Underlying core facts; the "leak" of the April
25, 2019 letter; the FRA audit; the extortion narrative; the Stinchfield
affidavit; the Brewer Firm's representations to NRA members and
Board members.**</u>

</div>

**(i) The April 25, 2019 Letter**

With respect to the April 25, 2019 letter, Defendants could have obtained, and in some
instances *did obtain*, deposition testimony from the other individuals involved.  For example, on
the issue of "who wrote the April 25, 2019 LaPierre letter to the Board," Defendants asked Mr.
LaPierre this very question during his August 20, 2021 deposition.[30]   In response, he testified as
follows: "I worked on it.  It had input from, I think, a couple of our board members that I think --
and a couple of other people -- our PR people.  I think a few attorneys looked at it."[31]  Mr. Brewer
was not identified as one of the attorneys, and even if he were, that would not mandate his
deposition.  Defendants' attempt to transform one commonplace rendering of legal services into a
nefarious plot that allows them to conduct the most intrusive discovery imaginable long after the
discovery deadline has passed, is nothing more than a litigation tactic to gain an unfair advantage.

Moreover, although Defendants say they wish to depose Mr. Brewer concerning "who
provided the [April 25, 2019] letter to the media," as detailed above, this Court has already ruled
on the issue and determined that it does not form the basis of an actionable claim.[32]

---

[29] *See* Decision [ECF No. 329] pg. 30, Fn. 14.
[30] *See* Excerpt from the Transcript of the Deposition of Wayne Lapierre, dated August 20, 2021, annexed to
the Furia Declaration as Exhibit C, at pg 212:3-7. [APP 097].
[31] *Id*.
[32] *See* Decision [ECF No. 329] pg. 30, Fn. 14.

<div align="center">10</div>

### (ii) The FRA Books and Records Examination

With regard to the question of "what issues arose from the FRA audit," Defendants have already conducted the deposition of FRA Director Michael Trahar.[33]  Defendants fail to explain how or why additional information from the NRA's counsel individually on this issue is needed. Indeed, Defendants' inclusion of the FRA audit as a topic for Mr. Brewer's deposition is particularly specious because it was Defendants' lawyers at the Dorsey firm who were  intimately involved in the FRA audit and assisted Defendants in orchestrating it based upon the revelations in a belatedly produced Second Amended Privilege Log that was served on the NRA on October 22, 2021, one week prior to the close of discovery.[34]   In fact, Defendants' Second Amended Privilege Log demonstrates the extent of the involvement of the Dorsey firm.   For example, privilege log entry numbers 1593, 1596, 1597, 1598, 1599, 1600, 1601, 1612, 1613, 1614, 1616, 1618, and 1622 between Defendants and counsel, dated January 16, 2019 through January 22, 2019, describe "…legal advice regarding audit timing and procedure," in the period leading up to the FRA review.[35] Further, log entry numbers 1662 and 1673 dated January 30, 2019 through February 4, 2019 describe "…legal advice regarding audit scope and procedure." [36] In view of the foregoing, the notion that Defendants need to depose the NRA's counsel in order to learn about "what issues arose from the FRA audit" is an implausible falsehood. Defendants already know what "issues arose" from the FRA review because they orchestrated it as to "timing", "scope" and "procedure", not even allowing copies of NRA documentation to be made[37].

---

[33] *See* ECF No. 244, at Ex. 29.

[34] Privilege-log entries constitute, and may be admitted as, admissions of a party opponent. See, e.g., *Huawei Techs. Co. Ltd v. T-Mobile US, Inc*., No. 216CV00052JRGRSP, 2017 WL 7052463, at *1 (E.D. Tex. Sept. 20, 2017).

[35] *See* ECF No. 398, at Ex. A, Defendants' Second Amended Privilege Log.

[36] *See Id.*

[37] ECF No. 404, Appendix in Opp. to AMc's Motion to Compel FRA Documents, Ex. 4 at p. 136:20-137:5.

### (iii) Extortion narrative

Defendants' only cause of action implicated by the so-called "extortion narrative" is its claim for Defamation based upon the publication of the April 24, 2019 letter.  Defendants request to depose Mr. Brewer on this topic fails for the same reasons identified in subsection (i), *above*. To the extent Defendants contend the extortion narrative is relevant to their conspiracy claim, that will not justify a deposition of Mr. Brewer since this Court has already determined that "it will not consider AMc's conspiracy claim insofar as it concerns the NRA's general counsel, Brewer, or BAC." [38]

### (iv)  The Stinchfield Affidavit and Declaration

Defendants also states that they plan to depose Mr. Brewer about the "Stinchfield Affidavit."  It focuses on the fact that Stinchfield, a former NRATV Talent, allegedly "worked directly" with Brewer in drafting an affidavit concerning NRATV.[39]  Defendants then ambitiously claim that the affidavit contained "numerous falsehoods, including fraud concerning overbilling and NRATV analytics."[40]  As insinuated proof of this, Defendants reference another affidavit executed on April 23, 2021 by Stinchfield, in which they claim that Stinchfield states he had no evidence of "wrongdoing" by Defendants.[41]

Stinchfield testifies that he "did not review any of the PowerPoint presentations, digital dashboards, and other metrics in detail, only glimpsing at what I was provided by Brewer instead."[42]

Conveniently, at the time that Defendants submitted the motion to compel Mr. Brewer's

---

[38] *See* Decision [ECF. No. 329] p. 54, Fn. 24.
[39] ECF No. 323-1, p.12; No. 122, Ex. 44, Declaration of Grant Stinchfield (April 30, 2020).
[40] *Id.*
[41] *Id.* at Fn 48. Notably AMc had sued Stinchfield; *See also* 323-2, Fn. 52, Ex. C, Declaration of Grant Stinchfield (Apr. 23, 2021); See also ECF 316-5, Ex. B, Affidavit of Grant Stinchfield (December 10, 2019).
[42] Declaration of Grant Stinchfield, p. 2, ¶ 5.

deposition on August 12, 2021, it had the luxury of making baseless contentions about any challenge to the performance of NRATV's viewership analytics, because Defendants had successfully withheld relevant computer systems, accounts and data up to that point.[43]  Eight days after the filing of the motion, at the August 20, 2021 deposition of Defendants' so-called expert on the NRA "digital dashboard" and analytics, Defendants' false narrative about the benefits and "value" of NRATV began to unravel as questioning focused on AMC's use of admittedly non-standard "proxy" metrics regarding NRATV performance, and the fact that its own expert testified he was denied access to the NRA "digital dashboard," despite his request.[44]  Subsequent to the motion to compel Brewer's deposition, the parties have filed a combined sixteen status reports dealing with, among other items, NRATV digital dashboards, metrics, and valuation and the NRATV social media accounts.  On September 1, 2021, Defendants released a password to the NRA Dashboard, providing limited access to the NRA and began a belated production of hundreds of thousands of documents, starting on October 1, 2021, twenty-eight days before the end of the discovery period.[45]

Defendants have made no showing that Mr. Brewer's alleged role with respect to the Stinchfield Affidavit involved anything to do with this lawsuit except his effort to represent his client.  Moreover, Defendants certainly have other means to obtain information about NRATV, the digital dashboard, analytics and valuation.  Indeed, they still possesses the NRA Dashboard, retaining administrative rights.[46]  They refuse to turn over the NRATV social media accounts,

---

[43] The circumstances of this withholding, and continued withholding, are discussed in a series of Status Reports ordered by the Court from the period of August 31, 2021 through October 29, 2021.  ECF Nos. 342, 365, 377, 380, 385, 388, 390, and 394.

[44] ECF No. 448, Ex. 7, Deposition Transcript of Richard Bergin, dated August 20, 2021, at pp. 58:21-59:25.

[45] The NRA's experts, having finally accessed the NRA Dashboard, have calculated tens of millions of dollars in damages sustained by the NRA.  *See* ECF 448, Ex 36, at Ex. B, Supplemental Expert Report of Andrew McLean, dated October 18, 2021; *Id.* at Ex. 91, Ex. B, First Supplemental Report of Johnathan E. Hochman, dated October 22, 2021.

[46] AMc's October 29, 2021 Status Report [ECF No. 393] pp. 2-4.

which they do not own, depriving the NRA of its ability to control the content of those accounts. As a result, to the NRA's grave prejudice, Defendants still retain a major strategic advantage, which they seek to deploy against the NRA by invading the attorney-client privilege and conducting harassing discovery shortly before trial.

Further, Defendants failed to carry their *Shelton* burden to show that they need "crucial information" from Mr. Brewer about the subject matter of the Stinchfield Affidavits. Indeed, based upon statements at the December 28, 2021 conference before Judge Stickney, Mr. Gruber will take Mr. Brewer's deposition, and Mr. Mason will be present as well. Both Mr. Gruber and Mr. Mason have unrestricted access to the NRA Dashboard, the server and the social media credentials, unlike Mr. Brewer. Moreover, as Mr. Mason acknowledged at the December 15, 2021 hearing in response to Magistrate Toliver's astute questions concerning the NRA's motion related to Defendants' privilege assertions, Defendants have documents that are not produced for various relevant time periods and not logged as privileged.[47] To the extent that the unproduced, unlogged documents relate to the substance of Mr. Stinchfield's affidavits, crucial information resides with Defendants and Dorsey, not counsel for the NRA.

### (v) Representations to NRA members and Board members

Suffice it to say that Defendants' undefined, expansive and unexplained request for examination about every contact that the NRA's counsel had with every NRA member and Board member is nothing more than a tactic to burden the NRA and prejudice its preparation of this case.

c.   **Proposed Topic No. 3: North's investigation into Brewer's retention and fees, and allegations of tortious interference.**

For Defendants' Topic No. 3, "Col. North's investigation into Brewer's retention and his

---

[47] Transcript, pp. 53-66. [APP 058-71].

fees" Defendants counsel participated in the deposition of Col. North on September 15, 2021[48],

and could have asked him any and all questions they had on this issue at that time.

Also, as this Court correctly observed when Defendants previously raised the "fee"

argument, "in every attorney-client relationship in which fees charge hands, the attorney will have

a financial interest in the representation."[49] AMc has failed to carry its *Shelton* burden to show

how whatever North thought about the NRA's counsel's legal fees has any relevance to this case

or Defendants' preparation for it.  In any event, North was obviously biased, as an employee of

Defendants with a multimillion dollar a year salary, assistant, and generous benefits.[50] His inherent

conflict of interest renders any opinion of his unworthy of serious consideration as a subject of

examination of the NRA's counsel.[51]

With respect to the issue of tortious interference, the Court has already dismissed that

claim, and Mr. Brewer should not be questioned with respect to any matters related to that claim.

### d.  Proposed Topics Nos. 4 and 5: RICO threats and family relationships.

Similarly, Defendants' Topic Nos. 4 and 5 concern is "communicated messages passed to

AMc through Skye Brewer or other family members" and "his prior relationship with AMc and

---

[48] *See* Furia Declaration at ¶ 3.

[49] ECF No. 166, p. 15.

[50] See Furia Declaration at Ex. D, AMcTX-00065376-AMcTX-00065391 [APP 099-114]; *id.* at Ex. E, AMc-056595-056604 [APP 116-25]; *id.* at Ex. F AMc-036766-036775 [APP 127-36].

[51] Defendants' belated Second Amended Privilege Log revealed for the first time the existence of 241 previously undisclosed communications and attachments between Defendants and Dorsey concerning Mr. North.  The contention that Defendants require the deposition of the NRA's counsel on matters concerning North is meritless.  *See* the following entries on Defendants' Second Amended Privilege Log [ECF No. 398, at Ex. A]: 31, 32, 33, 34, 35, 36, 37, 39, 40, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 84, 85, 86, 87, 94, 95, 96, 97, 98, 99, 100, 101, 102, 104, 106, 108, 109, 110, 111, 159, 162, 163, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 575, 578, 581, 582, 583, 584, 585, 586, 587, 590, 591, 592, 594, 596, 597, 598, 599, 656, 657, 658, 695, 696, 697, 698, 699, 700, 701, 702, 706, 707, 716, 722, 726, 727, 728, 729, 730, 731, 732, 733, 734, 735, 736, 737, 738, 739, 740, 743, 744, 745, 746, 757, 758, 761, 763, 764, 767, 769, 770, 774, 775, 777, 778, 779, 780, 781, 783, 784, 786, 788, 789, 790, 791, 806, 808, 815, 1114, 1115, 1237, 1238, 1239, 1240, 1241, 1242, 1243, 1244, 1245, 1246, 1247, 1248, 1263, 1265, 1266, 1267, 1268, 1270, 1271, 1272, 1273, 1274, 1375, 1387, 1388, 1392, 1395, 1397, 1410, 1411, 1412, 1413, 1414, 1415, 1418, 1436, 1438, 1443, 1643, 1764, 1789, 1790, 1800, 1801, 1809, 1817, 1818, 1819, 1820, 1821, 1822, 1824, 1825, 1826, 1827,1829, 1830, 1831, 1832, 1835, 1836, 1837, 1838, 1840, 1846, 1849, 1850, 1852, 1853, 1854, 1855, 1856, 1858, 1859, 1860, 1986, 1988, 1990, 1991, 1992, 1993, 2000, 2001, 2002 and 2003.

the McQueen family, including his knowledge regarding his father-in-law's cancer." Defendants conducted the intrusive deposition of Skye Brewer on August 11, 2021[52] and fail to explain why they were unable to obtain the information they need from that examination. These topics were part of Defendants' conspiracy allegations, which failed as to Mr. Brewer and cannot form the basis for his deposition.

In any event, Defendants have pursued the "family relationship" narrative well past the reality of actual facts. The largest owners of AMc are William and Brandon Winkler, and not the McQueen family.[53]

In sum, none of the topics identified by Defendants warrant a deposition of the NRA's counsel. Defendants failed to meet their burden. The NRA has shown that the information the Defendants seek from Mr. Brewer could have been, and in many instances was, obtained from other less intrusive sources. On this basis, alone, Defendants' motion should have been denied. At this time, it remains possible that the deposition of Mr. Brewer will proceed prior to the time this Court renders a ruling on these Objections. If that occurs, and these Objections are sustained, this Court should rule that the transcript from the deposition of Mr. Brewer is inadmissible and cannot be used in any way during the trial of this action.

### 3. Alternatively, Judge Toliver did not define the scope of the deposition.

In the event this Court determines that Judge Toliver's Order compelling the deposition of

---

[52] *See* Furia Declaration at ¶ 4.

[53] Winkler's abundant testimony and presence anywhere and everywhere throughout this dispute is understandable when it is considered that he is not simply the CFO of AMc. Rather, he and his son, Brandon Winkler, are the largest owners of AMc, not the McQueen family. This information was not discovered by the NRA until October 18, 2021, when the Bank of America responded to an NRA subpoena, and the NRA received information concerning AMc's ownership structure. *See* Ackerman McQueen, Inc., Stockholder Listing, dated February 24, 2021 (BANA AMI000292), attached as Exhibit G to the Furia Decl. [APP 138]. Obviously, the alleged "family feud" narrative with which AMc has littered the record concerning the McQueen family and the NRA's counsel failed to apprise the Court of who the largest owners of AMc actually were. They were individuals with no family relationship to Brewer.

Mr. Brewer was appropriate, the NRA requests that the Court revise the Order to provide direction as to the appropriate scope of Mr. Brewer's examination.  During the hearing on the Joint Status Report, Judge Toliver indicated that the examination was to proceed on some but not all topics. She stated as follows: "I can see that Mr. Brewer, even if the Court applies the Shelton factors, would have to -- would have to sit and be deposed for *some* of those at least." [54]  If NRA's counsel is only required to be deposed about *some* of the topics identified by Defendants' then this Court should identify the appropriate topics for the examination and make clear to Defendants' counsel those topics which are not to be subject to inquiry.

It is the NRA's position that Defendants should not be permitted to explore subject matters which they could have explored fully at the depositions which took place contemporaneously with or after the filing of the Joint Status Report, including the depositions of Skye Brewer, Oliver North or Wayne LaPierre.  In addition, Defendants should be foreclosed from conducting an examination concerning their now dismissed claims for tortious interference and business disparagement.[55]  In addition, any order defining the scope of the examination should limit examination concerning Defendants' defamation and conspiracy claims because Your Honor has specifically determined that any claim based upon the allegation that "Brewer repeated the contents of the [April 25, 2019] letter to THE WALL STREET JOURNAL . . .fails"[56] and that the "Court will not consider AMc's conspiracy claim insofar as it concerns the NRA's general counsel, Brewer, or BAC."[57]

If the deposition of Mr. Brewer occurs prior to this Court's ruling on these Objections, and the Objections are sustained in whole or in part, this Court should rule that portions of the transcript

---

[54] Transcript, pg. 10:2-6. [APP 015] (emphasis added).
[55] *See* Decision [ECF No. 329] pp. 42, 52.
[56] *See* Decision [ECF No. 329] pg. 30, Fn. 14.
[57] *See* Decision [ECF No. 329] pg. 54, Fn. 24.

from the deposition of Mr. Brewer which exceed the appropriate scope of examination are inadmissible and cannot be used in any way during the trial of this action.

**B.      Judge Toliver Erred in Denying the NRA's Request for an Award of Costs and Fees.**

In determining Defendants' motion to compel, Judge Toliver denied the NRA's request for an award of reasonable expenses and attorney's fees.  That decision was erroneous in light of the unsubstantiated positions taken by Defendants, and the grave prejudice inflicted on the NRA and the use of the ploy of deposing the NRA's counsel in order to deflect attention from AMc's malfeasance, including dumping hundreds of thousands of documents onto the NRA's counsel during October, 2021; waiting until October 22, 2021 to produce a new privilege log with over 1,600 new entries; continuing to withhold the NRA''s computer systems, accounts and data; and then announcing on December 15, 2021 before Judge Toliver that there are more unproduced and unlogged document still at issue more than sixty (60) days after the close of discovery.

Fed. R. Civ. Proc. 37(a)(5)(B) requires that upon denying a motion to compel, the court "***must***, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," unless the motion was substantially justified. The Supreme Court has held that a court should only find discovery conduct substantially justified where there is a "genuine dispute" or "reasonable people could differ as to the appropriateness of the contested action."[58]

In this case, there is no genuine dispute as to whether Mr. Brewer's deposition is warranted, according to the *Shelton* factors.  Defendants made no real attempt to demonstrate that the information they seek from Mr. Brewer was unavailable through other means.  Most troubling of all is their continued insistence that they need to depose Mr. Brewer concerning the FRA audit when their current counsel - the Dorsey firm - was intimately involved in the process.

---

[58] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Defendants conduct throughout the discovery process has been frivolous and harassing.  They have already deposed the Brewer firm's Senior Director of Consulting Susan Dillon and Mr. Brewer's wife, Skye Brewer.  Seeking the deposition of the NRA's counsel during the crucial months leading up to trial is an abuse of the discovery process, and warrants the imposition of an award of expenses and fees against Defendants at this time.

In the event the Deposition of Mr. Brewer occurs prior to the time this Court rules on these Objections, and the Objections are sustained in whole or in part, this Court should award the NRA and Mr. Brewer reasonable expenses and fees for preparing for and appearing at the deposition. In addition, Defendants should be ordered to pay all costs associated with the retention of Judge Stickney to oversee the deposition.

**V.**

**<u>CONCLUSION</u>**

For all the reasons stated above, the NRA respectfully requests that this Court sustain its Objections, overrule the portions of Order challenged by the NRA, grant the NRA an award of reasonable expenses and attorney's fees, and grant the NRA all other and further relief to which it may be justly entitled.

Dated: December 30, 2021                              Respectfully submitted,

<div style="margin-left: 40%;">

By:    */s/Philip J. Furia*_____
Cecelia L. Fanelli
*Pro Hac Vice*
clf@brewerattorneys.com
Sarah B. Rogers
New York Bar No. 4755252
sbr@brewerattorneys.com
Philip J. Furia
*Pro Hac Vice*
pjf@brewerattorneys.com
Alessandra P. Allegretto
Texas Bar No. 24109575
apa@brewerattorneys.com

</div>

19

**BREWER ATTORNEYS AND COUNSELORS**
1717 Main Street, Suite 5900
Dallas, Texas 75201

**ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 30th day of December 2021.

*/s/ Philip J. Furia*
Philip J. Furia