**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § | |
| | § | |
| | § | |
| *Plaintiff and Counter-Defendant,* | § | |
| | § | |
| | § | |
| **v.** | § | **Case No. 3:19-cv-02074-G** |
| | § | |
| **ACKERMAN MCQUEEN, INC.,** | § | |
| | § | |
| *Defendant and Counter-Plaintiff,* | § | |
| | § | |
| **and** | § | |
| | § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY,** | § | |
| | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO EXCLUDE CERTAIN**
**OPINIONS OF THE NRA'S EXPERT WITNESS, GARY GOOLSBY**

## <u>TABLE OF CONTENTS</u>

**I.  INTRODUCTION AND SUMMARY** ....................................................................1

**II.  FACTUAL BACKGROUND** ..............................................................................2

**III. ARGUMENT AND AUTHORITIES** .................................................................4

A.  Applicable Legal Standards ..............................................................................4

   1. Relevance .......................................................................................................5

   2. Reliability .......................................................................................................5

B.  The Court Should Exclude Goolsby's Proposed Testimony Because It is Based on a Flawed and Unreliable Methodology ....................................................................6

   1. Goolsby's Opinions Are Flawed and Unreliable .............................................6

   2. Goolsby's Damages Opinions Should Be Excluded for Additional Reasons.......................9

C.  Goolsby Should Be Excluded from Opining on Legal Issues and Issues Invading the Province of the Jury ...............................................................................................11

D.  Goolsby Should Be Excluded from Opining on AMc's Honest and Veracity .......................13

**IV. PRAYER** ............................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Apache Corp. v. W&T Offshore*, H-15-0063, 2016 U.S. Dist. LEXIS 203048 (S.D. Tex. 2016)  11

*Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233 (5th Cir. 1988)................................ 10

*Crow v. United Benefit Life Ins. Co.*, No. 3:00-CV-1375-G, 2001 U.S. Dist. LEXIS 2993 (N.D.

    Tex. Mar. 16, 2001) ........................................................................ 13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)...................................... 4, 5

*General Elec. Co. v. Joiner*, 522 U.S. 136 (1997)........................................................... 6

*Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P.*, 683 F.3d 666 (5th Cir. 2012).............. 11

*Implicit Oil & Gas, L.P. v. GoMex Energy Offshore, Ltd.*, 3:10-CV-827-P, 2012 WL 13094057

    (N.D. Tex. Jan. 9, 2012)............................................................................ 11

*Johnson v. Arkema, Inc.*, 685 F.3d 452 (5th Cir. 2012)..................................................... 6

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ..................................................... 5

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269 (5th Cir. 1998) ........................................... 6

*Nunn v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-CV-1486-D, 2010 U.S. Dist. LEXIS 61740

    (N.D. Tex. Jun. 22, 2010) ............................................................................ 5

*Paz v. Brush Eng'red Materials, Inc.*, 555 F.3d 383 (5th Cir. 2009) ............................................ 6

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239 (5th Cir. 2002) .............................................. 5

*Salomon v. Kroenke Sports & Entm't*, No. 3:15-cv-0666-M, 2019 U.S. Dist. LEXIS 233603

    (N.D. Tex. 2019)................................................................................ 11

*Seaman v. Seacor Marine LLC*, 326 F. App'x 721 (5th Cir. 2009)........................................... 5, 6

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546 (5th Cir. 1996).................. 9

*Sowell v. United States*, No. 3:97-CV-1519-G, 1998 U.S. Dist. LEXIS 13049 (N.D. Tex. Aug.

17, 1998) ................................................................................................................ 13

*Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932 (10th Cir. 1994) .................................... 13

*Tingle v. Hebert*, 2018 U.S. Dist. LEXIS 207536 (M.D. La. 2018) ............................................ 13

*United States v. Hill*, 749 F.3d 1250 (10th Cir. 2014) ................................................................ 13

*Watkins v. Telsmith, Inc.*, 121 F.3d 984 (5th Cir. 1997) .............................................................. 4

**RULES**

Fed. R. Civ. P. 26 ................................................................................................................ 9

Fed. R. Evid. 702 ................................................................................................................ 5

TO THE HONORABLE A. JOE FISH:

Defendant/Counter-Plaintiff Ackerman McQueen, Inc. ("**AMc**"), Defendants Mercury Group, Inc. ("**Mercury**"), Henry Martin ("**Martin**"), William Winkler ("**Winkler**"), and Melanie Montgomery ("**Montgomery**") (collectively, "**Defendants**"), file this *Brief in Support of Motion to Strike the National Rifle Association of America's* ("**NRA**") *Retained Expert, Gary Goolsby* (the "**Motion**").

## I.     INTRODUCTION AND SUMMARY

In support of its claims against AMc, the NRA retained an army of purported experts to attempt to rewrite the parties' decades long relationship and agreed upon course of dealing, step into the shoes of this Court and offer inadmissible legal conclusions, and tout baseless "expert opinions" of the NRA's purported damages that have no basis in law, fact, or even common sense.

One of these experts is Gary Goolsby ("**Goolsby**")—a forensic and litigation consultant—who was retained by the NRA to provide an assessment of the NRA's allegations that AMc inappropriately billed the NRA millions of dollars from 2015 to 2019 and calculate damages based upon the same.  The NRA served Goolsby's Original Expert Report on or about June 1, 2021 ("**Report**").[1]  His Supplemental Report was served two and one-half months later after the expert disclosure deadline on or about August 16, 2021 ("**Supplemental Report**")[2] containing numerous new opinions not previously disclosed, including newly disclosed opinions on proposed damages that are wholly unreliable.  Defendants seek to strike both of these reports and any and all of the purported expert opinions of Goolsby—including the opinions set forth in his recent

---

[1] The Report is Exhibit 7 to Defendants' Appendix being filed simultaneously with this Motion and Brief.
[2] The Supplemental Report is Exhibit 8 to Defendants' Appendix.  "Supplemental" is a misnomer, however, as the majority of the proposed testimony in the Supplemental Report does not "supplement" any of Goolsby's initial opinions.  Rather, as is discussed below, it broadens the scope of his proposed testimony by including new opinions on new subject matters, including a previously undisclosed category of damages.

depositions[3]—because they do not satisfy the well settled legal standards required for the admissibility of expert testimony in the Fifth Circuit.

## II.    FACTUAL BACKGROUND

The Court is familiar with the facts and history of this litigation.  The above captioned case was filed in August 2019, and the Court's scheduling order has been amended on certain occasions. On March 29, 2021, during the pendency of the NRA's bad faith bankruptcy filing, the Court entered an amended scheduling order requiring the NRA to designate its retained expert witnesses pursuant to Rule 26(a)(2) on or before May 24, 2021.[4]  On May 24, 2021, the parties filed a stipulation with the Court extending the NRA's expert designation deadline to June 1, 2021.[5]

On June 1, 2021, the NRA designated four purported expert witnesses, including Goolsby.[6] As part of its disclosure, the NRA served Defendants with Goolsby's Original Report.  In his Original Report, Goolsby claims he was retained by counsel for the NRA for the following purpose:

I have been retained by Brewer, Attorneys & Counselors ("Counsel") on behalf of Plaintiff to provide an independent assessment of the allegations made by the Plaintiff that AMc inappropriately billed the NRA millions of dollars over the period 2015 to 2019 for which little, if any, supporting documentation was provided, as well as, calculate damages owed by Defendants. If called upon to testify in this action, I intend to provide testimony on these and related matters.[7]

However, Goolsby goes well beyond this assignment, and offers unfounded, unreliable, and improper conclusions that include:

---

[3] *See* Goolsby Depo. Vol. I, Ex. 9 (APP 603-640) and Goolsby Depo. Vol. II, Ex. 10 (APP 641-658).
[4] *See* ECF 217 at 2.
[5] ECF 242.
[6] *See* ECF 253.
[7] Report, Ex. 7 at p. 2 (APP 524).

- AMc failed to full its obligations under the Records Examination Clause of the Services Agreements by refusing to provide critical documents, including support for invoices, budgets, and NRA-dedicated employee information.

- AMc failed to maintain adequate internal controls by not providing invoices to the NRA that contained a sufficient amount of detail or supporting documentation.

- AMc billed the NRA for amounts inconsistent with the Services Agreement, including relating to the production of America Heroes on NRATV.

- In support of certain special projects, AMc failed to provide the required scope documents, budgets, and approvals in advance of the work

- AMc produced time records insufficient to validate that the projects and personnel costs were correctly allocated and billed to the NRA.[8]

With respect to each of these, Goolsby seeks to apply his experience with internal controls to suggest that AMc's failure to produce certain documentation or failure to produce certain documentation that could be specifically linked to certain invoices and budgets was a failure to maintain internal controls and thus a breach of the Services Agreement.[9]   In forming these opinions, Goolsby refused to consider, among numerous other things, the internal controls at the NRA (or lack thereof), whether AMc actually did the work for the NRA, whether the NRA paid for the work that was performed for AMc, and whether the NRA had any concerns with the work or billing practices the parties had implemented *for decades*.

Goolsby states in his original report that he did not provide a damages calculation at the time.[10]   However, on August 16, 2021, well after the original discovery deadline of August 6,

---

[8] Report, Ex. 7 at p. 6 (APP 528).
[9] Report, Ex. 7 at pp. 26, 34 (APP 548, 556)
[10] Report, Ex. 7 at p. 7 (APP 529).

2021, the NRA served Goolsby's Supplemental Report where he contends he has received more support for his original opinions, but that he has now calculated two separate damage ranges:

> Given the allocations to budgeted categories, which is not an acknowledgement of the existence of supporting documentation, and based on the calculations discussed above, the ranges of damages, disgorgement or forfeiture, in my opinion, would be between $33,719,128 and $97,039,076 for payments and between $36,232,021 and $101,792,806 for amounts invoiced.[11]

Setting aside the untimeliness of these proposed opinions, Goolsby arrives at these damage numbers based upon a chart prepared by an unknown individual at the NRA in anticipation of litigation.  Similar to his original opinions, the foundation of Goolsby's opinions is a lack of documentation that he has been provided.  Goolsby did not analyze each invoice to determine what information was provided with the invoice, he did not attempt to determine whether the work was actually performed, he ignored the fact that the work was paid for, and he ignored the parties' own practices and customs.

## III.    ARGUMENT AND AUTHORITIES

### A.  Applicable Legal Standards.

In *Daubert*, "the Supreme Court held that when expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case."[12]  "The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable."[13]

---

[11] Supplemental Report, Ex. 8 at p. 9 (APP 591).
[12] *Watkins v. Telsmith, Inc*., 121 F.3d 984, 988-89 (5th Cir. 1997) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589 (1993)).
[13] *Nunn v. State Farm Mut. Auto. Ins. Co*., No. 3:08-CV-1486-D, 2010 U.S. Dist. LEXIS 61740, at *2 (N.D. Tex. Jun.

## 1. Relevance.

Regarding relevance, Federal Rule of Evidence 702 provides the standard:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.[14]

Thus, when faced with a proffer of expert testimony, a trial judge must first determine whether the expert is proposing to testify to (1) scientific, technical, or specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.[15]

## 2. Reliability.

Regarding reliability, courts must conduct a preliminary assessment of whether the reasoning or methodology underlying the testimony is "scientifically valid" and whether that reasoning or methodology properly can be applied to the facts in issue.[16]  This gate-keeping obligation applies to all types of expert testimony.[17]

In making a reliability determination, courts scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been "properly applied" to the facts of the case.[18] "The reliability analysis applies to all aspects of an expert's testimony:  the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia."[19]  Expert testimony must be supported by "more than subjective belief or

---

22, 2010) (Fitzwater, C.J.) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

[14] FED. R. EVID. 702.
[15] *See Daubert*, 509 U.S. at 590-92.
[16] *Id.* at 592-93.
[17] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho*, 526 U.S. at 147).
[18] *See* FED. R. EVID. 702 Advisory Committee's Note (2000 amendment).
[19] *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 725 (5th Cir. 2009).

unsupported speculation,"[20] and "must be reliable at each and every step or it is inadmissible."[21] Experts can build up to conclusions through basic scientific premises, but "the extrapolation or leap . . . must be reasonable and scientifically valid."[22] "[C]ourts are free to reject a theory based on extrapolation when 'there is simply too great an analytical gap between the data and the opinion proffered.'"[23] The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence.[24]

## B. The Court Should Exclude Goolsby's Proposed Testimony Because It is Based on a Flawed and Unreliable Methodology.

### 1. Goolsby's Opinions Are Flawed and Unreliable.

Each of Goolsby's proposed opinions in this case suffer from the same fatal flaws— Goolsby's had a flawed methodology (or no methodology at all) rendering his proposed opinions unreliable.

*First*, Goolsby's opinions are wholly unreliable because he fails to consider fundamental and undisputed facts relating to the parties' nearly 40-year relationship. For example, Goolsby wants to opine that AMc should have to pay back tens of millions of dollars in work performed for the NRA from 2015 – 2019 because *he* didn't review what *he* believed to be sufficient documentation, but he did not even consider whether the work was actually performed by AMc.[25] Goolsby also didn't even take into account the fact that the NRA had actually paid AMc's invoices

---

[20] *Paz v. Brush Eng'red Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

[21] *Seaman*, 326 F. App'x at 725 (5th Cir. 2009).

[22] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 279 (5th Cir. 1998).

[23] *Johnson v. Arkema, Inc.*, 685 F.3d 452, 460-61 (5th Cir. 2012) (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

[24] *Moore,* 151 F.3d at 276.

[25] Goolsby Depo. Vol. I, Ex. 9 at 64:23—65:7 (APP 618-619) ("I don't know what work was done.  I did not go through a process of validating, verifying all of the work and procedures down over the 2015, 2019 period.") (emphasis added); 71:3-25 (APP 620).

during this four-year time period.[26]  Goolsby also ignores the fact that Woody Phillips—the NRA's former long-time CFO and Treasurer who was intimately involved with the AMc relationship, including approving AMc's invoices—made clear that the NRA never had any concerns about the level or detail or back up documentation provided by AMc with its invoices for years, and that if it did, it would not have paid the invoice.[27]   The report does not take into account Phillips' testimony that there was an agreement with Wayne LaPierre on keeping AMc's intentionally vague, an agreement and instructions that numerous AMc representatives have testified to and which Goolsby did not even consider.[28]

More importantly, Goolsby purports to be an expert on internal controls, and the foundation of each of his opinions is that AMc's failure to produce sufficient documentation reveals a lack of internal controls that is a breach of the Services Agreement.[29]   When repeatedly questioned about the NRA's internal controls relating to the parties' relationship, Goolsby made clear that he was not retained or examining the NRA's internal controls.[30]   Yet, if Goolsby's opinions regarding

---

[26] Goolsby Depo. Vol. II, Ex. 10 at 215:2-9 (APP 656) ("That's a whole separate engagement a whole separate assessment.  We're talking about support for invoices that have been submitted to a company, not whether they were paid or not paid.  All of these invoices were paid.  That's not the issue.  The issue – it's not the issue of how they paid, when they paid, or why they paid."); 182:9—183:1 (APP 648).

[27] Phillips Depo., Ex. 11 at 135:21—137:22 (APP 692-693)
[28] Phillips Depo., Ex. 11 at 139:18—140:19 (APP 693) ("Q. When you said you know that we were in a – in an agreement on that, what do you mean?  A. An agreement that the bills should not be too detailed.  A. And you've referring to an agreement – or discussion between yourself and Mr. LaPierre?  A. Yes."); ECF 141 at Ex. B, , ¶ 3 (App. 12) ("For at least the last fifteen years, Mr. LaPierre and Mr. Phillips instructed me and other AMc representatives to provide vague and innocuous invoices to the NRA.  I was told by Mr. LaPierre that the reason for this was because he had concerns with confidentiality, and specifically concerns about leaks within the NRA's accounting department."); Ex. A, ¶ 3 (App. 2) (Winkler testifying about "personal knowledge that Mr. LaPierre and Mr. Phillips instructed numerous representatives of AMc to intentionally provide vague invoices with brief descriptions to the NRA because of Mr. LaPierre's confidentiality concerns.")..
[29] Report, Ex. 7 at p. 6 (APP 528).
[30] Goolsby Depo. Vol. II, Ex. 10 at 178:11-23 (APP 647) ("I was not charged with reviewing the process of invoice

AMc's lack of internal controls were true (they are not), then the NRA's internal controls would also have to be lacking given that it paid AMc's invoices for decades, audited AMc's books and records time and time again, and never raised any issues until the Fall 2018 when the New York Attorney General was investigating the NRA and its executives, including LaPierre.   Goolsby's failure to even consider the NRA's internal controls, or lack therefore, should disqualify him from testifying in this case because it confirms that he is not the "independent" voice that he purports to be.

*Second*, Goolsby contends that the industry standards for AMc's internal controls should be governed by the Committee of Sponsoring Organizations of the Treadway Commission ("**COSO**").[31]   In short, Goolsby seeks to impose on this Court an improper legal standard that has no applicability to this case.   Goolsby admits in his deposition that the parties are free to contract and conduct business to any standard they deem appropriate, including by deviating from COSO,[32] but he then ignores the fact that this is exactly what happened here.   The Services Agreement, which the Court can interpret for itself, dictates the parties' contractual obligations, and the undisputed evidence establishes that the parties had certain standards and customs that they agreed upon and did business based upon for years.   Yet, Goolsby ignores all of this and says that AMc's standards were not up to the COSO standard while again completely ignoring the NRA's internal

---

approval, internal controls or anything of that manner of NRA.  That was outside the scope of what I was looking at."); 180:1-16 (APP 647) ("As I testified, my work was not to evaluate the internal control processes that was used by the NRA to receive, assess, process and pay invoices from Ackerman McQueen."); 199:7-9 (APP 652) ("I was not evaluating the internal controls of NRA as to whether an invoice should or shouldn't be paid."); Goolsby Depo. Vol. I, Ex. 9 at 142:6-25 (APP 638).

[31] Report, Ex. 7 at p. 12-14 (APP 534-536).
[32] Goolsby Depo. Vol. II, Ex. 10 at 211:19—212:10 (APP 655) ("Parties can do, you know, as they deem appropriate, pursuant to whatever arrangement."); 175:19—176:22 (APP 646); 213:15—214:22 (APP 656).

standards despite the fact that he admitted the NRA would have been subject to those same standards.[33]

## 2. Goolsby's Damages Opinions Should Be Excluded for Additional Reasons.

In his Supplemental Report, Goolsby seeks to offer testimony regarding a "range of damages" that AMc should repay to the NRA based upon insufficient documentation.[34]  Goolsby's proposed opinion regarding damages is untimely, not relevant, and unreliable.  As a result, it should be stricken for the following additional reasons.

*First*, the damages opinions in his Supplemental Report are untimely.  There is nothing "supplemental" about them.  Supplemental "disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information."[35]  Initial expert disclosures must be "full and complete."[36]  Thus, this new damage model should be excluded as untimely.

*Second*, Goolsby's damages opinions are unreliable because he simply rubber-stamped a number chart prepared by an unidentified party at the NRA that was prepared in anticipation of litigation against AMc and provided to him by the NRA's counsel.[37]  Goolsby testified that he arrived at his damages range by adopting the "chart" prepared by unidentified NRA employees which very simply adds up all the invoices issued by AMc to NRA.[38] While any reliance on a party's summary materials is itself suspect in expert testimony, the chart relied upon does not even

---

[33] Goolsby Depo. Vol. II, Ex. 10 at 218:10-15 (APP 657).
[34] Supplemental Report, Ex. 8 at p. 9 (APP 591) (emphasis added).
[35] *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996).
[36] FED. R. CIV. P. 26.
[37] Goolsby Depo. Vol. II, Ex. 10 at 207:17—208:5 (APP 654) ("Q. What was [sic] chart prepared at your request.  A. No. This was prepared by the NRA's analysis of what they were trying to put together as part of this litigation, is my understanding.").
[38] Less some damages numbers covered by other NRA experts. Goolsby Depo. at 201:9-15 (APP 653).

attempt to distinguish between proper and allegedly improper invoices.  The chart was not prepared at his direction, but was instead prepared "as a part of this litigation," which numerous courts have ruled makes it untrustworthy and inadmissible.[39] The chart presents no other analysis.[40]

Without even explaining what he has done, Goolsby transfers the numbers from that NRA prepared chart into his damages assessment speculating that "all" invoices are unsupported by "documentation" he claims would be required by the Services Agreement. Yet, Goolsby does not even know who prepared the chart[41] (or their expertise), or how different invoices were allocated to categories within the chart.[42] Indeed, despite basing one limit of his damage calculations on one of those categories, Goolsby could not even begin to replicate the chart by placing an invoice into one of the categories in the chart.[43]

*Third*, Goolsby arrives at this "damages range" by engaging in some initial document review of billings sent by AMc to NRA, determining, in his view, the invoices and supporting documentation he looked at do not conform to the requirements of the Services Agreement.[44]  On that limited basis, Goolsby concludes what he found in the review of some documents "calls into question" the amounts paid by the NRA and whether the NRA should have paid.[45]  Then, he concludes, without having reviewed the other "thousands" of invoices and supporting documentation, that all charges and billings by AMc to NRA lacked proper documentation.

---

[39] Goolsby Depo. Vol II, Ex. 10 at 207:17-21 (APP 654); *see, e.g.*, *Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 238 (5th Cir. 1988) (Document created for litigation unreliable and not admissible over hearsay objection); FED. R. E. 804, Notes of Advisory Committee on 2014 amendments. [Subdivision (6)].

[40] Supplemental Report, Ex. 8 at p. 8, ¶20, (APP 590) ("The NRA, for budgeting purposes and in an effort to understand AMc's invoicing, prepared an analysis that groups the AMc invoices billed to the NRA during the Relevant Period into categories.[] All of the categories but one relate to services that are recognized by the NRA as those that would have been included in the budgeting process, while the remaining category referenced as "undefined" or "other" relates to services that are determined by the NRA to not have been included in such budgeting process.").

[41] Goolsby Depo. Vol. II, Ex. 10 at 202:24-203:4 (APP 653).

[42] Goolsby Depo. Vol. II, Ex. 10 at 204:19-205:25 (APP 653-654).

[43] Goolsby Depo. Vol. II, Ex. 10 at 206:13-22 (APP 654); 204:15-205:11 (APP 653-654).

[44] Supplemental Report, Ex. 8 at p. 7, ¶ 19 (APP 589).

[45] *Id.* (APP 589); Goolsby Depo. Vol. II, Ex. 10 at 182:25-183:1 (APP 648).

Indeed, Goolsby does even know what percentage of invoices produced in this case he has even reviewed (so as to prove up his sampling method),[46] and also admitted that he didn't take into account whether AMc asserted valid objections to the document requests made by the NRA as part of this litigation.[47]

In sum, the proposed opinions Goolsby seeks to offer were not timely disclosed and are based on nothing more than supposition unlike a reliable methodology as required by the Fifth Circuit.

## C. Goolsby Should Be Excluded from Opining on Legal Issues and Issues Invading the Province of the Jury.

It is well settled law that "expert testimony on issues of contractual interpretation is inappropriate and that such issues are reserved for the judge and jury."[48]   However, when the meaning of a contract depends on a "trade practice," expert testimony may be admissible "only if the contract language is ambiguous or involves a specialized term of art, science or trade."[49] Moreover, "[h]ow various provisions are interpreted in light of other provisions to give meaning to the whole is contract interpretation and invades the province of the Court."[50]

Here, Goolsby seeks to interpret the Services Agreement for the trier of fact and then opine as to its legal significance.   For example, Goolsby attempts to interpret certain provisions of the Services Agreement in light of other provisions to provide meaning to the Services Agreement as a whole.[51]   When pressed during his deposition to identify the specific requirements in the billing

---

[46] Goolsby Depo. Vol. I, Ex. 9 at 46:1-7 (APP 614).
[47] Goolsby Depo. Vol. I, Ex. 9 at 134:23—135:11 (APP 636).
[48] *Salomon v. Kroenke Sports & Entm't*, No. 3:15-cv-0666-M, 2019 U.S. Dist. LEXIS 233603, at *18 (N.D. Tex. 2019) (quoting *Implicit Oil & Gas, L.P. v. GoMex Energy Offshore, Ltd.*, 3:10-CV-827-P, 2012 WL 13094057, at *3 (N.D. Tex. Jan. 9, 2012).
[49] *Salomon*, No. 3:15-cv-0666-M, 2019 U.S. Dist. LEXIS 233603 at *17.
[50] *Apache Corp. v. W&T Offshore*, H-15-0063, 2016 U.S. Dist. LEXIS 203048, at *6 (S.D. Tex. 2016) (citing *Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P.*, 683 F.3d 666, 669 (5th Cir. 2012).
[51] Goolsby Depo. Vol. I, Ex. 9 at 62:18—63:25 (APP 618) (admitting he is interpreting the Services Agreement

and invoicing section of the Services Agreement requiring certain detail or back up, he referred to the Records-Examination Clause and stated that when these provisions are read as a whole, along with considering his industry customers, there is an implicit requirement.[52]  This is precisely the kind of contract interpretation left to the Court and jury.  Finally, there is no provision in the Services Agreement that depends on a specialized term of arm, science, or trade.

Moreover, Goolsby repeatedly seeks to offer opinions that invade the province of the jury. For example, in his Original Report, Goolsby seeks to offer expert testimony that *AMc failed to fulfill its obligations* under the Records Examination Clause of the Services Agreements by *refusing to provide critical documents*, including support for invoices, budget planning materials, and NRA-dedicated employee information."[53]  In support of this opinion, Goolsby spends over ten pages in his report reciting back and forth correspondence between the NRA (or its counsel) and AMc from August 2018 through early 2019[54] before concluding that "AMc failed to adhere to the Services Agreement."[55]  Throughout both of his reports and again during his deposition, he repeatedly attempts to delineate specific instances where AMc purportedly breached the Services Agreement.[56]

Setting aside the fact that Goolsby's opinions lack any kind of reliable foundation or methodology, his proposed testimony delineating particular breaches of AMc's duties to the NRA

---

because "I can give my view as an expert on dealing with it, interpreting, and reading"); 56:7—57:16 (APP 616-617) (describing how to read provisions in the Services Agreement together, including their "inherent" and "intuitive" nature); 58:20—59:13 (APP 617) ("I think that's in the contract. I think that's intuitively here and stated by the description of the words that's reflected.").

[52] *Id.*

[53] Report, Ex. 7 at p. 6 (APP 528) (emphasis added).

[54] Report, Ex. 7 at p. 15-25 (APP 537-547).

[55] Report, Ex. 7 at p. 26, ¶ 67 (APP 548).

[56] Report, Ex. 7 at p. 6 (APP 528); Supplemental Report, Ex. 8 at p. 3 (APP 585); Goolsby Depo. Vol. I, Ex. 9 at 48:19-24 (APP 614).

impermissibly invades the province of the jury.[57]   Whether AMc engaged in conduct constituting a breach of its duties to the NRA "is an issue for the trier of fact to decide."[58]   "It is not for [Goolsby] to tell the trier of fact what to decide."[59]   "Where as here expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally 'assist the trier of fact,' while it must be viewed as a 'needless presentation' (Fed. R. Evid. 403)…." [60]

## D.  Goolsby Should Be Excluded from Opining on AMc's Honest and Veracity.

In light of the invective laden manner in which Goolsby characterizes AMc's business conduct, his proposed testimony amounts to an attack on AMc's honesty and veracity.  "Such testimony:  (1) 'usurps a critical function of the jury'; (2) 'is not helpful to the jury, which can make its own determination of credibility'; and (3) when provided by 'impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury.'"[61]

## IV.    PRAYER

For these reasons, Defendants respectfully request the Court to grant their Motion to Strike the NRA's Retained Expert, Gary Goolsby, and grant all such other relief, at law or in equity, to which they may be justly entitled.

---

[57] *Crow v. United Benefit Life Ins. Co*., No. 3:00-CV-1375-G, 2001 U.S. Dist. LEXIS 2993, at *8 (N.D. Tex. Mar. 16, 2001).
[58] *Id*.
[59] *Id*.; *see also Sowell v. United States*, No. 3:97-CV-1519-G, 1998 U.S. Dist. LEXIS 13049 (N.D. Tex. Aug. 17, 1998) (an expert's legal opinion regarding the ultimate issue of reasonableness of a fiduciary's conduct was correctly excluded and did not present grounds for granting a new trial), *aff'd*, 198 F.3d 169 (5th Cir. 1999).
[60] *Crow,* 2001 U.S. Dist. LEXIS 2993, at *8 (quoting *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) (excluding testimony from an expert in bad faith denial and investigation of insurance claims which compared to the industry standard and the laws of Oklahoma State Farm's actions in denying a claim.)).
[61] *Tingle v. Hebert*, 2018 U.S. Dist. LEXIS 207536, at *13-14 (M.D. La. 2018); *see also United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014).

January 3, 2022.

Respectfully submitted,

*/s/ Brian E. Mason*

**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR DEFENDANTS/
COUNTER-PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Brian E. Mason*
BRIAN E. MASON