**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| *Plaintiff and Counter-Defendant,* | § § | |
| **v.** | § § | **Case No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** | § § § | |
| *Defendant and Counter-Plaintiff,* | § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY,** | § § § § | |
| *Defendants.* | § § | |

## DEFENDANTS' BRIEF IN SUPPORT OF DEFENDANTS' OBJECTIONS TO, AND MOTION TO STRIKE THE NATIONAL RIFLE ASSOCIATION OF AMERICA'S OPPOSITION SUMMARY JUDGMENT EVIDENCE

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION AND SUMMARY _____ 5

II.   ARGUMENT AND AUTHORITIES _____ 6

  A.   Summary Judgment Evidence Standard_____ 6

  B.   The NRA's Expert Reports and Opinions Should be Stricken _____ 7

    1.   Jonathan Hochman, Andrew McLean, Gary Goolsby. _____ 8

    2.   Brian Buss. _____ 8

    3.   Mathew Klink, Autumn Krause, and Larry Kanter _____ 10

  C.   Correspondence from the NRA's Counsel Should be Stricken. _____ 11

  D.   The Media Articles Should Be Stricken. _____ 12

  E.   The Court Should Strike Numerous Portions of NRA Declarations._____ 14

    1.   Michael Erstling. _____ 15

    2.   Grant Spofford (Ex. 11). _____ 16

    3.   William McLaughlin (Ex. 20)._____ 17

    4.   Andrew Arulanandam (Ex. 59). _____ 19

    5.   John Frazer (Ex. 52). _____ 20

  F.   The NRA's Opposition Includes Numerous Other Objectionable Exhibits and Citations. 21

III.   CONCLUSION _____ 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bellard v. Gautreaux*, 675 F.3d 454 (5th Cir. 2012)......................................................... 7

*Bunch v. Mollabashy*, No .3:13-cv-1075-G, 2015 U.S. Dist. LEXIS 38717 (N.D. Tex. Mar. 26, 2015)......................................................................................................................... 12

*Calderon v. Bank of Am. N.A.*, 941 F. Supp. 2d 753 (W.D. Tex. 2013)......................... 7

*Corbin v. Sw. Airlines, Inc.*, No. H-17-2813, 2018 U.S. Dist. LEXIS 171672 (S.D. Tex. Oct. 4, 2018) ................................................................................................................. 7

*Cutrera v. Bd. Of Sup. of La. State Univ.*, 429 F.3d 108 (5th Cir. 2005) ..................... 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)........................... 5, 7, 10, 11

*De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. App'x 200 (5th Cir. 2012) ......... 12

*Forsyth v. Barr*, 19 F.3d 1527 (5th Cir. 1994)................................................................. 7

*Galindo v. Precision Am. Corp.*, 754 F.2d 1212 (5th Cir. 1985)................................... 14

*Kie v. Williams*, No. 3:15CV1811, 2015 U.S. Dist. LEXIS 96744 (W.D. La. July 23, 2015) . 6, 11

*King v. Dogan*, 31 F.3d 344 (5th Cir. 1994) ................................................................... 7

*Kumho Tire Co. v. Carmichael*, 526 U.S. 13 (1999) ...................................................... 7

*Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353 (5th Cir. 2017) ................. 7

*Matthews v. Gov't Emps. Ins. Co.*, No. H-08-cv-609, 2010 U.S. Dist. LEXIS 40136 (S.D. Tex. Apr. 23, 2010) ........................................................................................................... 16, 19

*Miller v. Advanced Studies, Inc.*, 635 F. Supp. 1196 (N.D. Ill. 1986)..................... 6, 11

*Nunn v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-CV-1486-D, 2010 U.S. Dist. LEXIS 61740 (N.D. Tex. Jun. 22, 2010)............................................................................................ 7

*Priester v. Long Beach Mortg. Co.*, Civil Action No. 4:16-CV-449, 2018 U.S. Dist. LEXIS 158781 (E.D. Tex. 2018)..................................................................................... 6, 11, 12

*Resolution Tr. Corp. v. Starkey*, 41 F.3d 1018 (5th Cir. 1995)...................................... 7

*Watkins v. Telsmith, Inc.*, 121 F.3d 984 (5th Cir. 1997)........................................... 5, 7

*Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832 (S.D. Tex. 2011) ................... 14

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................ 7

Fed. R. Evid. 602 ............................................................................................................ 7

Fed. R. Evid. 701 ............................................................................................................ 7

Fed. R. Evid. 702 ...................................................................................................... 10, 11

TO THE HONORABLE A. JOE FISH:

Defendant/Counter-Plaintiff Ackerman McQueen, Inc. ("*AMc*"), Defendants Mercury Group, Inc. ("*Mercury*"), Henry Martin ("*Martin*"), William Winkler ("*Winkler*"), and Melanie Montgomery ("*Montgomery*") (collectively, "*Defendants*"), file this *Brief in Support of Defendants' Objections to, and Motion to Strike, the National Rifle Association of America's* ("*NRA*") *Opposition Summary Judgment Evidence* ("*Motion to Strike*").

## I.   <u>INTRODUCTION AND SUMMARY</u>

On December 20, 2021, the NRA filed its Response[1] to *Defendants' Motion for Partial Summary Judgment* (the "*Opposition*" to the "*MSJ*").[2]  Along with its Opposition, the NRA filed its *Appendix in Support of Plaintiff National Rifle Association of America's Response in Opposition to the Motion for Partial Summary Judgment* ("*Appendix*").[3]  The Appendix consists of ninety-eight (98) exhibits—many of which contain additional exhibits within—that the NRA purports to rely upon as evidence in support of its Opposition to the MSJ.[4]  However, much of the purported evidence relied upon by the NRA is inadmissible and should be stricken.

*First*, the NRA's cites and relies upon certain expert reports and testimony that does not satisfy the *Daubert* standards for the admissibility of expert testimony.[5]

*Second*, the NRA relies upon numerous self-serving letters drafted by the NRA's counsel as purported summary judgment evidence.  Numerous courts have held that self-serving letters from the offering parties' lawyers are nothing more than unsworn arguments that "will not suffice"

---

[1] ECF 440.
[2] ECF 416, 418
[3] *See* ECF 439.
[4] *Id*.  The NRA filed numerous exhibits at different times.  The exhibits at issue appear to be located at ECF 442, 443, 448.
[5] *Watkins v. Telsmith, Inc*., 121 F.3d 984, 988-89 (5th Cir. 1997) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589 (1993)).

at the summary judgment stage.[6]  In addition, these letters are inadmissible hearsay not subject to any exception.

*Third*, the NRA attached twenty different media articles in support of its claims to try and establish various evidence to survive summary judgment, including offering the articles to suggest that AMc did not "promote a positive image"[7] for the NRA or "brought the NRA into disrepute,"[8] and thus, breached the Services Agreement (even though it never asserted this claim in any pleading).  These media articles are all inadmissible hearsay not subject to any exception.

*Fourth*, the NRA offers a host of declarations littered with testimony that has no foundation, include hearsay, and is based upon nothing more than conclusory arguments.

*Finally*, the Opposition is littered with exhibits and citations that have absolutely no relevance to the claims and defenses in this case, or do not stand at all for what the NRA contends in its Opposition.  For those few exhibits and citations that are correctly identified, the substance of the testimony and documents is inadmissible.

## II.   ARGUMENT AND AUTHORITIES

### A.  Summary Judgment Evidence Standard

Federal Rule of Civil Procedure 56 allows a party to object to any evidence submitted to oppose a motion for summary judgment that "cannot be presented in a form that would be admissible in evidence."[9]  In the Fifth Circuit, it is well settled that the admissibility of summary

---

[6] *Priester v. Long Beach Mortg. Co.*, Civil Action No. 4:16-CV-449, 2018 U.S. Dist. LEXIS 158781, at *10-11 (E.D. Tex. 2018) ("Allegations made by Plaintiffs' counsel in a letter to Defendants' predecessors are the type of unsworn allegations that are not sufficient to overcome summary judgment."); *Miller v. Advanced Studies, Inc.*, 635 F. Supp. 1196, 1200 (N.D. Ill. 1986) ("Advanced's Exhibit B is a self-serving letter from its attorney, which is not competent evidence for trial or summary judgment."); *Kie v. Williams*, No. 3:15CV1811, 2015 U.S. Dist. LEXIS 96744, at *6-7 (W.D. La. July 23, 2015) ("In this regard, Defendant only presents defense counsel's email to Plaintiffs' counsel and Plaintiffs' counsel's response thereto. This unsworn correspondence, however, does not qualify as summary judgment-type evidence.").
[7] ECF 440, at 15-16.
[8] *Id.* at 16
[9] FED. R. CIV. P. 56(c)(2).

judgment evidence is subject to the same rules of admissibility applicable to a trial.[10]   As such, at

the summary judgment stage, courts may not consider inadmissible evidence such as hearsay,[11]

unauthenticated documents,[12] unsupported speculation,[13] legal conclusions,[14] and statements

made without personal knowledge.[15]   As the Advisory Committee commented regarding Rule

56(c)(2), "[t]he burden is on the proponent to show that the material is admissible as presented or

to explain the admissible form that is anticipated."[16]

## B.  The NRA's Expert Reports and Opinions Should be Stricken

In *Daubert*, "the Supreme Court held that when expert testimony is offered, the trial judge

must perform a screening function to ensure that the expert's opinion is reliable and relevant to the

facts at issue in the case."[17]   "The court may admit proffered expert testimony only if the

proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the

evidence is relevant to the suit, and (3) the evidence is reliable."[18]

The NRA has retained seven different expert witnesses in this case: (1) Andrew McLean

("*McLean*"); (2) Gary Goolsby ("*Goolsby*"); (3) Jonathan Hochman ("*Hochman*"); (4) Brian Buss

("*Buss*"); (5) Larry Kanter ("*Kanter*"); (6) Autumn Krause ("*Krause*"); and (7) Matthew Klink

("*Klink*").   As part of its Appendix and Opposition, the NRA purports to offer expert reports,

---

[10] FED. R. CIV. P. 56(c)(4); *Resolution Tr. Corp. v. Starkey*, 41 F.3d 1018, 1024 (5th Cir. 1995); *Calderon v. Bank of Am. N.A.*, 941 F. Supp. 2d 753, 758 (W.D. Tex. 2013).
[11] *Bellard v. Gautreaux*, 675 F.3d 454, 460-61 (5th Cir. 2012).
[12] *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).
[13] *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).
[14] *Corbin v. Sw. Airlines, Inc.*, No. H-17-2813, 2018 U.S. Dist. LEXIS 171672 (S.D. Tex. Oct. 4, 2018) (citing FED. R. EVID. 602, 701, 701).
[15] FED. R. CIV. P. 56(e)(1).
[16] *See also Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017).
[17] *Watkins v. Telsmith, Inc*., 121 F.3d 984, 988-89 (5th Cir. 1997) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589 (1993)).
[18] *Nunn v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-CV-1486-D, 2010 U.S. Dist. LEXIS 61740, at *5 (N.D. Tex. Jun. 22, 2010) (Fitzwater, C.J.) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

deposition testimony, and declarations from these purported experts, but as set forth below, the Court should strike any and all references to this purported evidence.

**1. Jonathan Hochman, Andrew McLean, Gary Goolsby.**

The NRA repeatedly relies and cites to the purported opinions of McLean,[19] Hochman,[20] and Goolsby[21] throughout its Opposition. Simultaneously with the filing of this Motion, Defendants have filed Motion and Supporting Briefs to Exclude the Testimony and Opinions of Hochman (ECF 457, 458), McLean (ECF 460, 461), and Goolsby (ECF 462, 463), all of which are incorporated herein by reference.

**2. Brian Buss.**

Buss is a litigation consultant that provides intellectual property valuation, analysis, and expert witness services.[22]  Buss was retained by the NRA's counsel "to review documents and statements regarding the valuation and performance of the online video channel website www.nratv.com ("*NRATV*")."[23]  Buss originally submitted an expert report on June 1, 2021 (the original deadline), and then submitted an "Amended and Updated Expert Report" (the "*Amended Buss Report*") well after the expert designation deadline on October 21, 2021.  The Amended Buss Report states that the "analysis and opinions in this Report are intended to update, replace, and supplement the analysis and opinions presented in my Expert Report dated June 1, 2021."[24]  During his deposition, Buss confirmed that the Amended Buss Report is the only report he is relying on.[25]

---

[19] *See* ECF 440 at FN 82-84, 96.
[20] *See* ECF 440 at FN 40, 41-45, 58, 59, 63, 72, 75, 81, 193, 197-198, 257, 266-67.
[21] *See* ECF 440 at FN 40, 41-45, 58, 59, 63, 72, 75, 81, 193, 197-198, 257, 266-67.
[22] ECF 448-3 at Ex. 35, ¶ 1 (APP 1240).
[23] *Id.*
[24] ECF 448-3 at Ex. 35, Ex. A at 1 (APP 1245).
[25]  *See* ECF 448-3, at Ex. 34 Buss Depo., dated Oct. 29, 2021, at 12:3-9 (APP 1219).

In its Appendix, the NRA attached the deposition of Buss (Ex. 34); Buss' December 20, 2021 declaration (attaching the Amended Buss Report) (Ex. 35); and the Amended Buss Report (Ex. 98). In its Opposition, the NRA cites to Buss' purported opinions in Footnotes 85, 139, and 193. However, all of these cites and evidence should be stricken.

*First*, the Court should strike all of the Buss references in footnote 85 which includes a discussion about Buss' opinions regarding the valuation of NRATV and then various random citations to the entirety of his declaration and deposition testimony. The NRA offers this evidence as part of its Section II(C) describing "The NRA's Damages."[26] However, during his deposition, Buss testified that he is not offering any opinions regarding the NRA's alleged damages.[27]

*Second*, the Court should strike all references to Buss in Footnote 139 which cites to page 1 of the Amended Buss Report to support the NRA's statement that "And AMc's marque product, NRATV, turned out to be a sham: promises that the platform would monetize itself were empty, and the viewership metrics touted by AMc were misleading or meaningless."[28] However, page 1 of the Amended Buss Report is nothing more than background of Buss' qualifications and a summary of his observations and opinions, none of which have anything to do with promises about NRATV monetizing itself or viewership.[29] Buss was retained to perform a purported valuation analysis regarding NRATV, and he testified during his deposition that what was said or discussed regarding the expectations of NRATV had nothing to do with his valuation analysis.[30]

*Finally*, the Court should strike the NRA's evidence in footnote 193. The NRA cites to page 13 of the Amended Buss Report to support its statement that "The NRA agreed to launch

---

[26] ECF 440 at 10.
[27] ECF 448-3, at Ex. 34, Buss Depo., dated Oct. 29, 2021, at 11:6-11 (APP 1219).
[28] ECF 440 at 19, n. 139.
[29] ECF 448 at Ex. 98 at 1 (APP 04977).
[30] ECF 448-8, at Ex. 98 at 2 (APP 4798); ECF 448-3 at Ex. 34, Buss Depo., dated Oct. 29, 2021, at 46:17-48:14 (APP 1228).

NRATV in reliance on Ackerman's representations, and was damages as a result: investing $45 million since its inception in late 2016."[31]  Again, the NRA attempts to rely on the Amended Buss Report to support its purported damages, but Buss himself admitted that he is not opining on damages.[32]  Moreover, page 13 of the Amended Buss Report once again has nothing to do with what the NRA attempts to cite to for.[33]

The evidence and citations relied upon by the NRA with respect to Buss in their Opposition have no relevance to the trier of fact, and thus, should be stricken.[34]

### 3.  Mathew Klink, Autumn Krause, and Larry Kanter

Klink was retained by the NRA's counsel "to examine various aspects of American's public relations and communications involvement with the Counter-Defendants, particularly public statements of Ackerman, management of confidential information, and overall interactions with the news media."[35]  Krause and Kanter were retained as rebuttal expert witnesses to one of Defendants' expert witnesses, Dan Jackson.[36]  As part of its Appendix, the NRA attached various declarations from each expert, including their expert reports.[37]  However, in its Opposition, the NRA cites to these experts in a single footnote (Footnote 40) on page 5 of its Opposition.[38]  Footnote 40 supports the NRA's statement, "Jonathan E. Hochman, ("Hochman"), a computer scientist with experience in internet marketing, opined."[39]  The NRA then proceeds to cite to a

---

[31] ECF 440 at 27, n. 193.

[32] ECF 448-3, at Ex. 34, Buss Depo., dated Oct. 29, 2021, at 11:6-11 (APP 1219).

[33] Instead, page 13 involved Buss' opinions relating to "Use of Inconsistent Time Periods between Valuation Indications."  *See* ECF 448 at Ex. 98 at 13 (APP 4989).  To the extent the NRA attempted to cite to the Original Buss Report dated June 1, 2021, it was not submitted by the NRA as part of the summary judgment record, and more importantly, Buss made clear during his deposition and in the declaration the NRA submitted that the Amended Buss Report contains all of his opinions in this case.  *See* ECF 440 at Ex. 34 at 20:10-14 (APP 1221); Ex. 35, ¶ 4 (APP 1241).

[34] FED. R. EVID. 702; *see Daubert*, 509 U.S. at 590-92.

[35] ECF 448 at Ex. 88 (App. 4237).

[36] *See* 448 at Ex. 87 (App. 4203, 4208-09), Ex. 92 (App. 4590).

[37] See ECF 448 at Ex. 87, 88, 92.

[38] ECF 440 at 5, n. 40.

[39] *Id.*

variety of Hochman's opinions and then randomly cites to the declarations of Kanter, Krause, and Kanter with no explanation or pin cite.[40]  Each of these citations should be stricken because they provide no evidentiary support and have no relevance.[41]

## C.  Correspondence from the NRA's Counsel Should be Stricken.

In support of its Opposition, the NRA relies upon numerous self-serving letters drafted by the NRA's counsel as purported summary judgment evidence (the "***Letters***").[42]  The NRA attempts to rely on these Letters relating to their claims regarding the NRA's various audits, the PIP Dashboard, the login information for various social media accounts.   However, none of this is competent and admissible summary judgment evidence.

*First*, numerous courts have held that self-serving letters from the offering parties' lawyers are nothing more than unsworn arguments that "will not suffice" at the summary judgment stage.[43]  Here, the NRA ***heavily*** relies upon these Letters to attempt to bring forth competent summary judgment evidence.[44]  In addition to the fact that the NRA is attempting to use these letters related to the Dashboard and social media accounts to establish new claims and theories of liability that

---

[40] *Id.*

[41] FED. R. EVID. 702; *see Daubert*, 509 U.S. at 590-92.

[42] *See* ECF 448 at Ex. 12, 19, 22, 32, 73, 80, 82, 83.

[43] *Priester*, 2018 U.S. Dist. LEXIS 158781, at *10-11 ("Allegations made by Plaintiffs' counsel in a letter to Defendants' predecessors are the type of unsworn allegations that are not sufficient to overcome summary judgment."); *Miller*, 635 F. Supp. at 1200 ("Advanced's Exhibit B is a self-serving letter from its attorney, which is not competent evidence for trial or summary judgment."); *Kie*, 2015 U.S. Dist. LEXIS 96744 at *6-7 ("In this regard, Defendant only presents defense counsel's email to Plaintiffs' counsel and Plaintiffs' counsel's response thereto. This unsworn correspondence, however, does not qualify as summary judgment-type evidence.").

[44] By way of example, the NRA cites to the Letters in at least the following footnotes: FNs 57, 60, 62-63, 78, 89, 164, 222, 271, and 273.  *See* ECF 440, at 7-8, 10, 12, 23, 31, 38.

were never properly pleaded,[45] each of these exhibits is inadmissible because they are unsworn arguments, which are not competent summary judgment evidence.[46]

*Second*, the Letters are inadmissible hearsay not subject to any exception.  There is no doubt that the NRA purports to offer each of the Letters for the truth of the matter asserted.  For example, Exhibit 12 (letter from NRA counsel, dated October 28, 2021) and Exhibit 19 (letter from NRA counsel, dated September 17, 2021), accuse AMc of having the password to certain social media accounts and refusing to turn over the credentials, which are being cited for the same propositions.  Similarly, Exhibits 22, 32, 80, 82, and 83 (letters from NRA counsel in September and October 2021) are each letters accusing AMc of being uncooperative in the production of the Dashboard and expressing concerns about security, which are cited for the same propositions.[47]  Likewise, Exhibit 73 (letter from NRA counsel, dated December 21, 2018) is an inquiry related to AMc's billing and requesting information about fair market value, which is being cited in support of that very proposition.[48]  In sum, the Letters should be stricken because they would not be admissible at trial and are therefore not competent summary judgment evidence.

## D.  The Media Articles Should Be Stricken.

As part of its Appendix and Opposition, the NRA purports to offer over twenty different media articles in support of its claims: Ex. 40-45, 56, 57, 59-D, 59-E, 59-F, 59-G, 59-H, 59-H, 59-

---

[45] *Cutrera v. Bd. Of Sup. of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not properly raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.") (internal quotations omitted)); *cf. Bunch v. Mollabashy*, No .3:13-cv-1075-G, 2015 U.S. Dist. LEXIS 38717, at *26 & n.9 (N.D. Tex. Mar. 26, 2015) (Fish, J.) (citing *Cutrera* to bar consideration of new allegations not previously raised in plaintiff's pleadings but raised for the first time in response to motion to dismiss); *see also De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. App'x 200, 203-04 (5th Cir. 2012) ("district courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment").

[46] *See, e.g.*, *Priester*, 2018 U.S. Dist. LEXIS 158781, at *10-11.

[47] ECF 440, at 38 n. 273 (citing ECF 448-3, at Ex. 22 (APP 964-65)); ECF 440, at 10, n. 78 (citing ECF 448-3, at Ex. 32 (APP 1118-19)); ECF 440, at 38 n. 271 (citing ECF 448-7, at Ex. 80 [APP 4113]); ECF 440, at 8 n. 62-63 (citing ECF 448-7, at Ex. 82 (APP 4179-80)); ECF 440, at 8, n. 62-63 (citing ECF 448-7, at Ex. 83 (APP 4182)).

[48] ECF 440, at 23, n. 164 (citing ECF 448-5, at Ex. 73 (APP 2711-12)); ECF 440, at 31, n.222 (citing ECF 448-5, at Ex. 73 (APP 2711-12)).

I, 59-J, 59-K, 59-L, 59-M, 59-N, 59-O, 59-P, 59-Q, 65 (the "***Media Articles***").[49]   Throughout its

Opposition, it also attempts to heavily rely on these Media Articles to try and establish various

evidence to survive summary judgment, including offering the Media Articles to suggest that AMc

did not "promote a positive image"[50] for the NRA or "brought the NRA into disrepute,"[51] and thus,

breached the Services Agreement (even though they never asserted this claim in any pleading) and

sustained "significant reputational damage."[52]

     As a preliminary matter, the NRA does not specifically cite or reference the majority of the

Media Articles.[53]   Regardless, each of the Media Articles should be stricken as inadmissible

hearsay because they are being offered for their truth.  For example, the NRA cites to Exhibit 65

(New York Times article, dated June 25, 2019) for the proposition that NRATV had "deficient

performance," which is referenced in Exhibit 65 and is hearsay-within-hearsay as the New York

Times to reference a report supposedly completed by a third party.[54]  Similarly, the Media Articles

relating to the supposed "coup" attempt,[55] are at least in part being offered for the proposition that

the "coup" actually occurred in the first place, which is also hearsay.

     The Media Articles addressing the *Thomas the Tank Engine* cartoon[56] are similarly hearsay

because they are being offered for the truth of the assertion that the cartoon failed to promote a

positive image for the NRA. Moreover, these articles are similarly conclusory with respect to the

NRA's allegation that this single cartoon brought the NRA into "disrepute."  The NRA is political

---

[49] *See* ECF 440 and ECF 448.
[50] ECF 440, at 15-16.
[51] *Id.* at 16
[52] *Id.* at 18.
[53] The Response does not include references to Exs. 59-D, 59-E, 59-F, 59-G, 59-H, 59-H, 59-I, 59-J, 59-K, 59-L, 59-M, 59-N, 59-O, 59-P, 59-Q.
[54] ECF 448-4, Ex. 65 at 2 [APP 1968] ("The site's web traffic was miniscule, with 49,000 unique visitors in January, according to a report provided by Comscore.")
[55] ECF 448, Exs. 43-45, 56, 57.
[56] ECF 440, at Ex. 40-42, 59-D-N.

organization with admittedly controversial positions on civil rights issues upon which reasonable minds can differ greatly.  In fact, the NRA cites various social media posts accompanying the declaration of William McLaughlin (Exhibit 20), which reflect a wide variety of critical statements about the NRA and its leadership, some criticizing the NRA for events that occurred decades earlier.[57]  Notably, not one of those comments pertains to the *Thomas the Tank Engine* cartoon, underscoring the fact that this unfortunate parody was not some singular event that brought the NRA into "disrepute" or caused "significant reputational harm," which are unjustified and unsupported conclusions.

Similarly, Exhibits 56, and 57 (two Wall Street Journal articles from May 2019), are also improperly conclusory because they fail support the proposition that AMc "leaked" information to the press.  While these articles show that information was perhaps "leaked" by *someone*, there is no connection with AMc whatsoever.  The NRA is asking the Court to make improper conclusions and assumptions.

AMc asks the Court to strike all Media Articles from the NRA's Response because they are inadmissible and incompetent summary judgment evidence.

### E.  The Court Should Strike Numerous Portions of NRA Declarations.

Rule 56 declarations must be based on personal knowledge, meaning that the substance of the affidavit must actually show that the affiant has personal knowledge of the facts being alleged.[58]  Similarly, affidavits setting forth conclusory facts or law are insufficient to defeat summary judgment.[59]  AMc asks the Court to strike portions of declarations submitted by the NRA

---

[57] ECF 448-2, Ex. 20.
[58] *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832, 846 (S.D. Tex. 2011).
[59] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 2738 (1983)).

that contain improper lay opinions, hearsay, lack foundation, or would be otherwise inadmissible at trial.

### 1.  Michael Erstling.

As part of its Appendix, the NRA attaches the April 2020 declaration of Michael Erstling ("***Erstling***") (Ex. 1)[60] and his April 2020 testimony at the NRA's bad-faith bankruptcy hearing (Ex. 72),[61] each in support of the proposition that AMc invoiced the NRA for work that was "never performed."[62]  As a preliminary matter, the referenced testimony from the hearing transcript (Ex. 72) fails to support this proposition because it makes no reference, directly or indirectly, to any work that was never performed.[63]  With regard to Erstling's declaration (Ex. 1 at ¶ 7), the declaration fails to establish Erstling's personal knowledge for the facts and opinions he provides. Erstling's declaration contains improper statements such as:

- "…preparing the annual budget was made difficult because Ackerman regularly deviated from the budget parameters set by the NRA." (¶ 5)

-  "…Ackerman regularly employed, without written approvals, expensive outside contractors for functions, that in my opinion could have been adequately staffed by NRA staff." (¶ 6)

- "It was my suspicion that Ackerman did this because it could collect a markup from the NRA on contractors it hired." (¶ 6)

- "I also noted that Ackerman's bills regularly violated contract stipulations."   (¶ 7)

- "…I became concerned that Ackerman was billing the NRA for work, such as future issues of Carry Guard magazine, that had not been undertaken…" (¶ 7)

- "…I cannot recall interacting with any other vendor that afforded its client so little transparency or treated client staff with so much contempt." (¶ 9)

- "The agency deserved to be fired." (¶ 9)

---

[60] ECF 448-1, at Ex. 1, Erstling Decl. (APP 10-12).
[61] ECF 448-5, at Ex. 72, Erstling Hr'g Trans. (APP 2359-2709).
[62] ECF 440 at 19 & n.138, 30 & n.218.
[63] ECF 440-5, at Ex. 72, Erstling Hr'g Trans., 2725:12-2726:13, Apr. 21, 2021 (App. 02625-26).

However, nowhere in Erstling's declaration does he establish proper foundation for these statements and lay opinions, including:

(1) personal knowledge of Ackerman's budgeting or billing process (and in fact admits that he was "provided no insight into the basis for [AMc] budgets") (¶ 5);

(2) any direct knowledge of the Services Agreement or whether he had ever actually reviewed it (¶ 7);

(3) any personal interactions with AMc executives or employees (and AMc executives have stated that they _did not_ interact with Erstling for budgeting or billing purposes[64]) (¶¶ 6, 9);

(4) any special knowledge of the appropriate rates for outside vendors assisting with AMc projects, which is not readily apparent from his employment in the NRA accounting department (¶ 7);

(5) any special knowledge of NRA staffing or why this "staff" could have adequately performed tasks done by AMc's vendors, which is not readily apparent from his employment in the NRA accounting department (¶ 7); or

(6) any special knowledge of the production schedule for Carry Guard Magazine, which is not readily apparent from his employment in the NRA accounting department (¶ 7).

Accordingly, these statements and opinions are improper because the declaration does not establish Erstling's own perception or personal knowledge for them.[65]  The Erstling declaration should be struck for all propositions relied upon in the NRA's Opposition, and the Court should decline to consider the declaration for any other purpose.

### 2.   Grant Spofford (Ex. 11).

The NRA also attaches the December 2021 declaration of Grant Spofford ("**_Spofford_**") (Ex. 11) in support of the proposition that monetization was a "key goal" of the NRA.[66]  This

---

[64]  ECF 141, at Ex. B, Montgomery Decl., dated June 3, 2020, at ¶ 2 (APP 11-12); ECF 141, at Ex. C, Makris Decl, dated June 3, 2020, at ¶16 (APP 29-30); ECF 141, at Ex. D, Tavangar Decl, dated June 3, 2020, at ¶ 14 (APP 36-37).
[65]  _See Matthews v. Gov't Emps. Ins. Co._, No. H-08-cv-609, 2010 U.S. Dist. LEXIS 40136, at *13 (S.D. Tex. Apr. 23, 2010) ("In this regard, an affidavit or declaration submitted for summary judgment purposes must be based on the affiant and/or declarant's personal knowledge and unsubstantiated assertions or statements containing hearsay are to be disregarded as incompetent summary judgment evidence.").
[66]  ECF 440 at 11 & n.88; ECF 448-2, Ex. 11.

conclusion lacks foundation.  The declaration fails to establish how Spofford became aware of this "key goal" of the NRA through any direct means or communications and does not indicate that Spofford ever met with any representative of the NRA for the purpose of discussing the NRA's "goals" for NRATV.  The only thing that the Spofford Declaration establishes is that "monetization" activities began in 2018,[67] but does not support the NRA's larger narrative—*i.e.*, that "monetization" was promised or "touted" prior to the development of the platform.

### 3. William McLaughlin (Ex. 20).

The NRA further attaches the December 2021 declaration of William McLaughlin ("***McLaughlin***") to support its assertions that (1) AMc has "taken and retained control of the NRA's" NRATV social media accounts,[68] and that (2) commenters on these social media pages have confused the NRA with NRATV and post disparaging comments.[69]  McLaughlin's testimony regarding these subjects ought to be excluded.

Preliminarily, McLaughlin identifies himself as a "Digital Director" at the NRA.[70]  However, no information is given as to his job responsibilities or duties.[71]  Similarly, no information is given as to his familiarity with NRATV social media accounts or familiarity with social media generally.[72]  Specifically, McLaughlin states that he is "aware that AMc remains in control of NRATV social media accounts and retains their credentials"[73] and that these are with Instagram, YouTube, Twitter, and Facebook.[74]  No basis is given for McLaughlin's awareness of this allegation that AMc remains in control of NRATV social media accounts nor that these

---

[67] ECF 448-4, Ex. 11, at ¶¶ 17-26.
[68] ECF 440, at 45.
[69] *Id.* at 46, 48.
[70] ECF 448-2, Ex. 20, at ¶ 1.
[71] *See id.* at Ex. 20, at ¶¶ 1-9.
[72] *Id.*
[73] *Id.* at Ex. 20, at ¶ 3.
[74] *Id.* at Ex. 20, at ¶ 4.

specific accounts are with Instagram, YouTube, Twitter, or Facebook. These are pure unsubstantiated statements, which are improper summary judgment evidence.

McLaughlin relies upon three Exhibits—A, B, and C—which all purport to be screenshots of NRATV posts on Instagram, YouTube, and Facebook, which bear "inflammatory" comments the NRA claims it wants to eliminate.[75] Yet, the NRA has not properly authenticated these comments, as they do not bear comment-specific posting dates. McLaughlin implies, misleadingly, that these inflammatory posts are ongoing, yet "a review of these social media posts clearly" does **_not_** show the dates they were posted nor that they are continuing.[76] While the underlying NRATV posts do show posting dates—some of which pre-date the termination of the Services Agreement[77]—these comments have no discernible posting date, and the NRA's reliance on them is misleading.

McLaughlin's statements in paragraph 8 are also speculative and misleading. McLaughlin asserts individual posters are confused by the NRATV accounts and believe them related to the NRA.[78] This statement is pure speculation, as McLaughlin cannot have—and does not claim to have any—personal knowledge of the mental state of these posters.[79] Additionally, paragraph 8 is misleading inasmuch as it implies the NRATV social media accounts are not related to the NRA. This is utter nonsense given McLaughlin claims AMc has not turned over to NRA the login credentials for these accounts.[80]

---

[75] _Id._ at Ex. 20, at Exs. A-C (APP 942-59); _id._ at Ex. 20, at ¶ 6.
[76] _Id._ at Ex. 20, at Exs. A-C (APP 942-59); _id._ at Ex. 20, at ¶ 8.
[77] _Id._ at Ex. 20, at Ex. A (APP 943) (showing posting date of January 23, 2019); _Id._ at Ex. 20, at Ex.
[78] _Id._ at Ex. 20, at ¶ 8.
[79] _See id._
[80] _Id._ at Ex. 20, at ¶ 7.

### 4.  Andrew Arulanandam (Ex. 59).

The NRA also attaches the December 2021 declaration of Andrew Arulanandam ("***Arulanandam***") (Ex. 59) in support of the proposition that AMc "leaked" NRA Confidential Information to journalists and that a single parody cartoon "brought the NRA into disrepute."[81]  In addition to the fact that all the media articles attached to the declaration should be excluded as hearsay, however, the Arulanandam Declaration provides absolutely no foundation for either leaks or reputational damage and is nothing but conclusions, speculation, and additional NRA narrative.

 For instance, paragraph 4 of the Arulanandam Declaration states, "…it is now clear that before its contract was terminated on May 29, 2019, AMc…*orchestrated negative stories* about the NRA – all of which caused the NRA *reputational harm*."[82]  The declaration cites nothing to support Arulanandam's personal knowledge for the claim that AMc "orchestrated negative stories" or any support for the claimed "reputational harm."  These are simply Arulanandam's speculations and conclusions, which are not proper summary judgment evidence.[83]

In the next paragraph, paragraph 5, Arulanandam again discusses the NRA's "significant reputational harm," with no foundation whatsoever.[84]  The only reference is to a single, unauthenticated September 2018 email from Oliver North (who has been vilified by the NRA for every other purpose).[85]  As an initial matter, the email (Ex. 59-C) should be excluded as hearsay because it is being offered for the truth of the matter asserted.  Again however, there is no foundation for Arulanandam's claims of "significant reputational harm" or that the NRA was "materially damaged" by any action of AMc.

---

[81] ECF 440 at 18 & n.133, 19 & n.135; ECF 448-4, Ex. 59.
[82] ECF 448-4, Ex. 59, at ¶ 4.
[83] *See Matthews*, 2010 U.S. Dist. LEXIS 40136, at *13.
[84] ECF 448-4, at Ex. 59, at ¶ 5 (APP 1667).
[85] *Id.* at ¶ 5, n.3. (APP 1667).

The only references that appear to be based in Arulanandam's personal knowledge are in paragraphs 7 and 9, in which Arulanandam mentions "burdens" his office personally experienced in dealing with negative press and inquiries from board members.[86]  Here, too, these claims are strictly conclusions, and Arulanandam provides no details to describe, quantify, or otherwise substantiate these so-called burdens.

In paragraphs 10 and 12, Arulanandam again discusses the supposed "leaks" to the media.[87]  However, Arulanandam simply says that certain expense details "were leaked on the Internet."[88]  Although Arulanandam makes the assumption ("*I believe*") that these documents "were leaked"[89] by AMc, this is nothing but unsupported speculation, and the declaration shows no foundation for aside from this "belief."  Moreover, each of the referenced articles that supposedly form the basis for this "belief" are not only hearsay, but similarly speculative and conclusory.

The Court should strike all references to Exhibit 59 in the NRA's Opposition to AMc's MSJ.

### 5.  John Frazer (Ex. 52).

The NRA also attaches the December 2021 declaration of John Frazer ("*Frazer*") (Ex. 52) in support of the proposition that AMc failed to comply with the Forensic Risk Alliance ("*FRA*") audit conducted in February 2019.[90]  As a preliminary matter, paragraph 7 does not discuss the FRA audit.  However, the discussion regarding the FRA audit in paragraph 8 cannot support the proposition that AMc failed to provide requested documents because Frazer lacks foundation for that conclusion.  Specifically, in paragraph 8, Frazer admits that his knowledge

---

[86] *Id.* at ¶¶ 6-9 (APP 1669-70).
[87] *Id.* at ¶¶ 10, 12 (APP 1670-71).
[88] *Id.* at ¶ 10 (APP 1670).
[89] *See id.* at ¶ 12 (APP 1671)
[90] ECF 440, at 18 & n. 130; ECF 448-4, at ¶ 7.

about AMc's compliance with the FRA audit came from "briefings" he received from FRA during "conference calls and/or Zoom sessions."[91]   Frazer does not appear to have attended the FRA audit personally and therefore lacks personal knowledge regarding these conclusions.   The Frazer Declaration should be struck as evidence for this proposition.

**F.  The NRA's Opposition Includes Numerous Other Objectionable Exhibits and Citations.**

Throughout its Opposition, the NRA makes very bold statements attempting to survive summary judgment.  Yet, much of the NRA's argument is not supported by any evidence at all, or the evidence cited has absolutely no relevance to the claims and defenses in this case.   Other documents and testimony is wholly inadmissible, as it is based upon hearsay and statements that lack any foundation.   As set forth in **Appendix 1**,[92] which is incorporated herein by reference, much of the documents and testimony is inadmissible and should be struck.

### III.   <u>CONCLUSION</u>

The evidence supporting the NRA's Opposition to Defendants' Motion for Partial Summary Judgment fails to meet the law's standards for admissibility.  This Court should strike the evidence referenced in this Motion to Strike and consider the NRA's Opposition to Defendants' Motion for Summary Judgment in its absence.

---

[91] ECF 448-4, at ¶ 8.
[92] Appendix 1 is attached to Defendants' *Motion for Leave to File to file Under Seal Appendix to Reply in Support of their Motion for Partial Summary Judgment, and Objections to, and Motion to Strike, the NRA's Opposition Summary Judgment Evidence*, that is being filed simultaneously with this Motion to Strike and supporting Brief.

Respectfully submitted,

*/s/ Brian E. Mason*

**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR DEFENDANTS/
COUNTER-PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Brian E. Mason*

BRIAN E. MASON