**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| *Plaintiff and Counter-Defendant,* | § § § | |
| **v.** | § § | **Case No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** | § § § | |
| *Defendant and Counter-Plaintiff,* | § § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY,** | § § § § § | |
| *Defendants.* | § § | |

**DEFENDANTS' RESPONSE TO RULE 72 OBJECTIONS TO MAGISTRATE'S DISCOVERY ORDER, AND MOTION AND BRIEF TO STRIKE THE NRA'S NEW EVIDENCE**

TO THE HONORABLE A. JOE FISH:

Pursuant to the Court's January 4, 2022 Order (ECF 478), Defendant/Counter-Plaintiff Ackerman McQueen, Inc. ("*AMc*"), Defendants Mercury Group, Inc. ("*Mercury*"), Henry Martin ("*Martin*"), William Winkler ("*Winkler*"), and Melanie Montgomery ("*Montgomery*") (collectively, "*Defendants*"), file this *Response in Opposition to Rule 72 Objections* (the "*Response*"), and *Motion and Brief to Strike the NRA's New Evidence*.[1]

---

[1] Defendants' file this Response to the National Rifle Association of America's ("*NRA*") Objection (ECF 451, 452), and William A. Brewer, III's Joinder in the NRA's Objection (ECF 450).

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    LEGAL STANDARD FOR RULE 72 APPEALS ...........................................2

III.   ARGUMENT AND AUTHORITIES.................................................................3

       A.    The NRA Has Failed to Meet Its Rule 72(a) Burden to Show that
             Magistrate Judge Toliver's Order in Compelling Brewer's Deposition was
             Contrary to Law. ....................................................................................3

             1.    Judge Toliver did not err in "disregarding" the *Shelton* factors. .................4

             2.    Even if *Shelton* applies, Judge Toliver did not abuse her discretion
                   or act contrary to law. ..............................................................9

             3.    Judge Toliver did not act contrary to law in not limiting the scope
                   of the deposition, and such limitations now would be
                   inappropriate. ...............................................................16

       B.    The NRA Failed to Meet its Burden to Show that the Order Improperly
             Appointed Judge Stickney to Act as Special Master. ...........................................20

       C.    The NRA Has Failed to Meet Its Burden to Show that Magistrate Judge
             Toliver's Order Contained any Errors in Denying the NRA's Request for
             Fees. ......................................................................................20

IV.   MOTION TO STRIKE THE NRA'S NEW EVIDENCE .................................................22

       A.    Motion to Strike NRA Evidence.........................................................................22

V.    CONCLUSION.................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Blue v. Hill*, No. 3:10-CV-2269-L, 2014 U.S. Dist. LEXIS 73012 (N.D. Tex. May 29, 2014) ..... 2

*Conkling v. Turner*, 883 F.3d 431 (5th Cir. 1989) ........................................................................ 17

*Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119 (D.N.J. 1998) ................................. 21

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, No. 6:07-CV-559, 2009 U.S. Dist. LEXIS 62464
(E.D. Tex. July 21, 2009) ........................................................................................................... 4

*Freeman v. Cty. of Bexar*, 142 F.3d 848 (5th Cir. 1998) ............................................................ 20

*Hamilton v. First Am. Title Ins. Co.*, No. 3:07-CV-1442-G, 2010 U.S. Dist. LEXIS 2115 (N.D.
Tex. Mar. 8, 2010) ..................................................................................................................... 2

*In re Search of Info.*, 212 F. Supp. 3d 1023 (D. Kan. 2016) ....................................................... 21

*Jefferson-Pilot Life Ins. Co. v. Bellows*, No. 3:02-CV-1992-D, 2003 U.S. Dist. LEXIS 28414
(N.D. Tex. June 24, 2003) ......................................................................................................... 5

*Kitchen v. Dallas County*, 759 F.3d 468 (5th Cir. 2014) ............................................................ 16

*Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 204 (N.D. Tex. 1996) .................................... 2

*Lerma v. Arends*, No. 1-11-cv-00533-LJO-MJS, 2011 U.S. Dist. LEXIS 66379 (E.D. Cal. June
22, 2011) .................................................................................................................................... 3

*McKinney/Pearl Rest. Partners, L.P. v. Metro Life Ins. Co.*, No. 3:14-cv-2498-B, 2016 U.S. Dist.
LEXIS 69009 (N.D. Tex. May 26, 2016) ................................................................................... 4

*Moore v. Ford Motor Co.*, 755 F.3d 802 (5th Cir. 2014) ....................................................... 3, 20

*Murphy v. Adelphia Recovery Tr.*, No. 3:09-MC-105-B, 2009 U.S. Dist. LEXIS 122027 (N.D.
Tex. Nov. 3, 2009) ............................................................................................................ 4, 5, 6, 8

*Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999) ............................................................ 4, 17

*Pierce v. Underwood*, 487 U.S. 552 (1988) ............................................................................... 19

*Price v. United Guar. Residential Ins. Co.*, No. 3:03-CV-2643-G, 2005 U.S. Dist. LEXIS 24762
(N.D. Tex. Feb. 2, 2005) ...................................................................................................... 2, 10

*Rivera v. Hudson Valley Hosp. Grp., Inc.*, No. 17-CV-5636 (KMK), 2019 U.S. Dist. LEXIS
143086 (S.D.N.Y. Aug. 22, 2019) ........................................................................................... 21

*Schmidt v. Navistar, Inc.*, No. 18-321 KG-JFR, 2020 U.S. Dist. LEXIS 116150 (D.N.M. June 30, 2020) ...................................................................................................................................... 21

*Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) ......................................................... 3

*Stanissis v. DynCorp Int'l LLC*, No. 3:14-CV-2736-D, 2015 U.S. Dist. LEXIS 12775 (N.D. Tex. Sept. 23, 2015) ........................................................................................................................... 2, 5

*Winkler v. Sunbelt Rentals, Inc.*, No. 3:12-CV-3789-B, 2014 U.S. Dist. LEXIS 196481 (N.D. Tex. July 10, 2014) ............................................................................................................................ 2

**Rules**

FED. R. CIV. P. 37 .................................................................................................................... 19, 20

FED. R. CIV. P. 72 ...................................................................................................................... 2, 3

## I.    INTRODUCTION

On May 11, 2021, the Honorable Harlin D. Hale issued a 38-page opinion dismissing the NRA's bad-faith bankruptcy filing.  As part of his opinion, Judge Hale explained that if the bad-faith bankruptcy was refiled, "this Court would immediately take up some of its concerns about disclosure, transparency, secrecy, **conflicts of interest of officers and litigation counsel, and the unusual involvement of litigation counsel in the affairs of the NRA** . . . ."[2]  Judge Hale's order underscored what AMc has been stating for years regarding the unusual involvement of William A. Brewer, III ("***Brewer***") in not only the affairs of the NRA (essentially acting as Chief Executive Officer and Board of Directors), but in the affairs of AMc.  On December 15, 2021—during a hearing on numerous discovery matters—the Honorable Renee Toliver granted AMc's Motion to Compel Brewer's deposition, recognizing Brewer's central role to the claims and defenses in this case.[3]

Now, in a last ditch effort, the NRA and Brewer object to Judge Toliver's order contending that she acted contrary to law by compelling Brewer's deposition, appointing the Honorable Judge Paul D. Stickney as special master, and not granting the NRA's request for attorneys' fees.  However, as set forth below, the NRA and Brewer do not come close to establishing their high burden to prove that Judge Toliver acted contrary to the law.  Instead, the NRA's Objection—similar to its other pleadings in this case—is riddled with conclusory innuendo not supported by the law or the facts.   Simply put, Brewer has and continues to be a critical witness in this case, which Judge Toliver correctly recognized as part of her Order.[4]  The NRA and Brewer have not

---

[2] *See* NRA Bankruptcy, ECF No. 740, Order Granting Motion to Dismiss (May 11, 2021) at 37 (emphasis added).
[3] On December 16, 2021, Judge Toliver entered an electronic order relating to same.  *See* ECF 430.
[4] The Order defined herein includes Judge Toliver's oral order during the December 15, 2021 hearing (Ex. B) and the electronic order entered on December 16, 2021 (Ex. A).

satisfied their burden to prove that Judge Toliver acted contrary to law, and therefore, their Objections should be overruled in their entirety.

## II.      LEGAL STANDARD FOR RULE 72 APPEALS

AMc's Motion to Compel Brewer's deposition is a nondispositive matter, so Rule 72(a) applies.[5] As Courts in the Northern District of Texas have explained, "Rule 72(a)'s framework for review is 'highly deferential.'"[6] Indeed, "when discovery matters are involved . . ., the objecting party's burden is especially 'heavy.'"[7]

Rule 72(a) provides that the district court will "modify or set aside any part of the order that is clearly erroneous or contrary to law."[8] "When a party appeals a magistrate judge's order, "[it] must demonstrate how the order is reversible under the applicable standard of review—*de novo* for error of law, clear error for fact findings, or abuse of discretion for discretionary matters."[9] "The clearly erroneous standard applies to the factual components of the magistrate judge's decision[,]"[10] which may not be overturned "unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed."[11] "The legal conclusions of the magistrate judge are reviewed *de novo*, and the district judge" overturns the magistrate judge's decision only if an error of law has been made.[12]

---

[5] *See Stanissis v. DynCorp Int'l LLC*, No. 3:14-CV-2736-D, 2015 U.S. Dist. LEXIS 127759, at *2 (N.D. Tex. Sept. 23, 2015) ("Because the magistrate judge's order involves a nondispositive matter (a discovery ruling, defendant's objections are governed by [Rule 72(a)] . . . .").

[6] *Winkler v. Sunbelt Rentals, Inc.*, No. 3:12-CV-3789-B, 2014 U.S. Dist. LEXIS 196481, at *6 (N.D. Tex. July 10, 2014) (quoting *Blue v. Hill*, No. 3:10-CV-2269-L, 2014 U.S. Dist. LEXIS 73012, at *10 (N.D. Tex. May 29, 2014)).

[7] *Id.* (quoting *Hamilton v. First Am. Title Ins. Co.*, No. 3:07-CV-1442-G, 2010 U.S. Dist. LEXIS 21157, at *10 (N.D. Tex. Mar. 8, 2010)).

[8] FED. R. CIV. P. 72(a).

[9] *Stanissis*, 2015 U.S. Dist. LEXIS 127759, at *3 (quoting *Jefferson-Pilot Life Ins. Co. v. Bellows*, No. 3:02-CV-1992-D, 2003 U.S. Dist. LEXIS 28414, at *3 (N.D. Tex. June 24, 2003)).

[10] *Id.* at *3 (quoting *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 204, 208 (N.D. Tex. 1996)).

[11] *Id.* (quoting *Lahr*, 164 F.R.D. at 208).

[12] *Id.*

In rendering its decision, this Court has held that the magistrate judge need not "articulate [her] reasoning in deciding the matters before [her]."[13] Indeed, to the extent any such writing is even required, a magistrate judge's oral order on the record satisfies Rule 72(a)'s writing requirement.[14]    Finally, the Fifth Circuit forbids attaching new evidence to Rule 72(a) objections.[15]

## III.    ARGUMENT AND AUTHORITIES

The NRA asserts three objections to the Order: (1) the Order improperly granted AMc's Motion to Compel Brewer's deposition; (2) the Order improperly appointed the Honorable Judge Paul D. Stickney to act as Special Master concerning the deposition; and (3) the Order erred in not granting the NRA's request for costs and fees.[16]  Each of these arguments is legally and factually deficient, and should be summarily dismissed.

### A.    The NRA Has Failed to Meet Its Rule 72(a) Burden to Show that Magistrate Judge Toliver's Order in Compelling Brewer's Deposition was Contrary to Law.

The NRA first contends that Judge Toliver's Order compelling Brewer's deposition was contrary to law.   In support, the NRA contends: (1) Judge Toliver failed to recognize the applicability of the three-factor test in *Shelton v. American Motors Corp*;[17] (2) alternatively, Judge Toliver's Order did not properly analyze the *Shelton* factors; and (3) Judge Toliver's Order failed to define the appropriate scope of questioning.  Each of these arguments lack merit, as explained below.

---

[13] *Price v. United Guar. Residential Ins. Co.*, No. 3:03-CV-2643-G, 2005 U.S. Dist. LEXIS 24762, at * 18, n.2 (N.D. Tex. Feb. 2, 2005) (Fish, J.).
[14] FED. R. CIV. P. 72(a), Notes of Advisory Committee; *see also Lerma v. Arends*, No. 1-11-cv-00533-LJO-MJS, 2011 U.S. Dist. LEXIS 66379,  *10 (E.D. Cal. June 22, 2011).
[15] *See Moore v. Ford Motor Co.*, 755 F.3d 802, 808 n. 15 (5th Cir. 2014).
[16] ECF 452, at 1.
[17] *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986).

1. **Judge Toliver did not err in "disregarding" the *Shelton* factors.**

At the hearing on the Motion to Compel, Judge Toliver held that she did not believe the *Shelton* factors were applicable to Brewer. The NRA contends that Judge Toliver acted contrary to law because she disregarded the *Shelton* factors.

   a. *The NRA wrongly assumes Shelton is mandatory, applicable law.*

First, the NRA assumes, without much discussion, that *Shelton* applies. The NRA cites two Northern District cases addressing motions to quash/protective orders [18] that have applied *Shelton*, yet—conveniently—it omits these cases' discussions of whether the Fifth Circuit recognizes *Shelton*. In *Murphy*, Judge Kaplan wrote, "[w]hile the Fifth Circuit has not explicitly adopted *Shelton*, it has indicated that the same three factors inform a district court's discretion in determining whether to authorize the deposition of opposing counsel."[19] And, in *McKinney/Pearl*, Judge Horan, citing *Murphy*, stated that "the Fifth Circuit in *Nguyen* [*v. Excel Corp.*[20]] held only that, in that case, the district court 'did not abuse its discretion authorizing the depositions of defense counsel, even assuming the applicability of the *Shelton* inquiry.'"[21]

Thus, the Fifth Circuit and Northern District courts have found *Shelton* instructive, but have not held that it is binding on Fifth Circuit courts. As a result, it is legally impossible for Judge Toliver to have acted contrary to law given that *Shelton* has not been accepted as the standard in

---

[18] *See* ECF 452, at 6 (citing *McKinney/Pearl Rest. Partners, L.P. v. Metro Life Ins. Co.*, No. 3:14-cv-2498-B, 2016 U.S. Dist. LEXIS 69009, at *1, 17, 19-20 (N.D. Tex. May 26, 2016) and *Murphy v. Adelphia Recovery Tr.*, No. 3:09-MC-105-B, 2009 U.S. Dist. LEXIS 122027, at *1, 14 (N.D. Tex. Nov. 3, 2009)). The NRA also cites to *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, No. 6:07-CV-559, 2009 U.S. Dist. LEXIS 62464 (E.D. Tex. July 21, 2009), an Eastern District case, which, like the NRA, assumes the *Shelton* factors apply. *Id.* at *7 ("In order to determine when it is proper to allow opposing counsel to be deposed, the Fifth Circuit applies a three factor test that the party seeking the deposition must meet."). Nevertheless, the NRA only cites to *Davis-Lynch, Inc.* for the contention that the burden rests with the party seeking to depose opposing counsel. ECF 452, at 6.

[19] *Murphy*, 2009 U.S. Dist. LEXIS 122027, at *5.

[20] *Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999).

[21] *McKinney/Pearl Rest. Partners, L.P.*, 2016 U.S. Dist. LEXIS 69009, at *13.

---

the Fifth Circuit.   Indeed, though disfavored,[22] a court's decision to permit a deposition of opposing counsel is a matter of discretion for the court.[23]

Moreover, the NRA's assumption that a judge is mandated to consult the *Shelton* factors before permitting a deposition of counsel seems nothing more than an attempt to invoke Rule 72(a)'s "contrary to law" *de novo* standard of review rather than the abuse of discretion standard of review. Thus, since the force of *Shelton* in the Fifth Circuit seems only to imbue district court's with the discretion to consult *Shelton* when deciding whether to quash a subpoena or issue a protective order, the NRA cannot claim Judge Toliver's discretionary decision to "disregard" *Shelton*—which she did not do—amounts to a legal conclusion that is "contrary to law" under Rule 72(a). To the extent Judge Toliver's discretion is reviewable, the appropriate standard is abuse of discretion.[24]

> b.   *Even if Shelton is mandatory, applicable law, Judge Toliver's failure to find that it applies to Brewer's deposition is not "contrary to law."*

Even if *Shelton* is recognized in the Fifth Circuit, Judge Toliver's conclusion that it does not apply with respect to Brewer's deposition is still not "contrary to law." The NRA contends that Judge Toliver "disregarded" *Shelton* by erroneously suggesting its non-applicability due to the likelihood that Brewer will be a fact witness in this case.[25]   The NRA's argument regarding the applicability of *Shelton* hinges on its contention that Brewer is involved in trial preparation in this case. Indeed, at the Motion Hearing, the NRA insisted that *Shelton* applies where the attorney is "involved in trial preparation"[26]—thus acknowledging it does not apply outside this situation.

---

[22] *Nyugen*, 197 F.3d at 209.
[23] *McKinney/Pearl Rest. Partners, L.P.*, 2016 U.S. Dist. LEXIS 69009, at *19-20 (noting that the Court exercised its discretion in deciding whether to quash a party's subpoena seeking to depose opposing counsel).
[24] *Stanissis*, 2015 U.S. Dist. LEXIS 127759, at *3 (quoting *Jefferson-Pilot Life Ins. Co. v. Bellows*, No. 3:02-CV-1992-D, 2003 U.S. Dist. LEXIS 28414, at *3 (N.D. Tex. June 24, 2003)).
[25] ECF 452, at 7.
[26] ECF 453, at Ex. B, Motion Hr'g Tr. dated Dec. 15, 2021, at 4:24-5:1 (App. 9-10).

Further, in its Rule 72 Objections, the NRA cites *Murphy* and reiterates this point, namely that "the critical factor" in determining *Shelton*'s applicability is whether the "lawyer is actively involved in trial preparation."[27] Yet, *Murphy*—unlike the NRA—explains that the reason why focusing on the lawyer's involvement "in trial preparation" is the "critical factor" is because the lawyer's "deposition could ***potentially lead to the disclosure of trial strategy and other attorney work product***."[28] Indeed, for this reason, Judge Kaplan determined that *Shelton* applied in *Murphy*.[29]

Here, however, Judge Toliver's focus on Brewer's status as a fact witness prompted the question as to whether *Shelton* applied since Brewer's fact testimony would not threaten "disclosure of trial strategy and other attorney work product." In fact, Judge Toliver made exactly this point at the Motion Hearing:

> "Well, let me just tell you what it says in *Shelton*. You know, that the point of the deposition supposedly was to simply depose opposing counsel ***in an attempt to identify information that opposing counsel has decided is relevant and important to his own legal theories and strategy***. So that's not the situation. That's not saying that counsel was a fact witness."[30]

Thus, Judge Toliver's rejection of the NRA's position focused precisely on the "critical factor" of *Shelton* as explained in *Murphy*: whether deposing Brewer risked disclosing the NRA's trial strategy or other attorney work product.[31] Notably, the NRA's decision to surreptitiously emphasize only the "actively involved in trial preparation" language without acknowledging the

---

[27] ECF 452, at 7 (citing *Murphy*, 2009 U.S. Dist. LEXIS 122027, at *7).

[28] *Murphy*, 2009 U.S. Dist. LEXIS 122027, at *8 (emphasis added).

[29] *Id.*

[30] ECF 453, at Ex. B., Motion Hr'g Tr. dated Dec. 15, 2021, at 8:17-23 (App. 13) (emphasis added).

[31] *See Murphy*, 2009 U.S. Dist. LEXIS 122027, at *8 ("Because of the extent of Murphy's involvement in the New York Litigation, ***her deposition could potentially lead to the disclosure of trial strategy and other attorney work product***. Indeed, one of the topics identified in the Rule 45 subpoena--the presence or absence of a common interest privilege among the bank defendants in the New York Litigation--***directly relates to trial strategy***. In view of these facts, the court determines that ART cannot depose Murphy without satisfying the *Shelton* test.") (emphasis added).

reasons underlying this "critical factor" manifestly does not render Judge Toliver's holding "contrary to law." Furthermore, the NRA also seems to suggest that this Court did not explicitly find that Brewer will be a fact witness.[32] Indeed, this Court did not reach this issue precisely because the NRA agreed Brewer would not appear as an advocate at trial, while Brewer's co-counsel represented to the Court in the Virginia Action that Brewer might be a fact witness.[33] However, this Court made clear that Brewer is not permitted to attend any hearing or trial in this case[34] and the Brewer Firm has sworn that Brewer "will not appear as an advocate at the jury trial of this matter."[35]

Nevertheless, the NRA contends that even if Brewer *is* a potential fact witness, *Shelton* would still apply because the NRA has "demonstrated that Mr. Brewer is actively involved in trial preparation."[36] The NRA's sole evidence is a conclusory declaration signed by the NRA's General Counsel, John Frazer ("***Frazer***"), in response to AMc's Motion to Compel (the "***Frazer Declaration***").[37] In the Frazer Declaration, Frazer generally and conclusively contends that "the NRA relies heavily upon Mr. Brewer for litigation-strategy advice in this matter and intends, and expects, that he remain actively engaged in trial preparation,"[38] and that or around August 3, 2021 (the time when Frazer executed his declaration), he reviewed some of the Brewer Firm's billing records which "indicate that nearly one-third of hours billed by Mr. Brewer individually over the

---

[32] ECF 452, at 7.

[33] ECF 323, at 7, n. 15 (citing ECF 56, at Ex. A-6, Virginia Hr'g Tr. at 27:20-22 [APP 375], 40:11-13 [APP 388] (explaining Brewer was not present or seeking pro hac vice admission "*out of [their] ethical concerns that [Brewer] might be a witness*") (emphasis in original)).

[34] ECF 166, at 20 ("In accordance with the foregoing, the defendants' motion to disqualify William A. Brewer III and BAC is **DENIED**; however, it is **ORDERED** that Brewer shall not appear on behalf of the NRA at any hearing or trial in this case.") (emphasis in original).

[35] ECF 122, Ex. 1, Collins Decl. dated May 4, 2020, at ¶ 4.

[36] ECF 452, at 7. The NRA asserts that Judge Toliver "committed an error of law" in granting AMc's motion to compel. Yet, to the extent the NRA's arguments drift into quibbling with Judge Toliver's assessment of facts, then the clear error standard, rather than the *de novo* standard, of Rule 72(a) applies.

[37] *Id.* (citing ECF 325, Ex. L, Frazer Decl., dated Aug. 3, 2021, at ¶ 3 (APP 285-86)).

[38] *Id.* (citing ECF 325, Ex. L, Frazer Decl., dated Aug. 3, 2021, at ¶ 3 (APP 285-86)).

course of May and June 2021 related to trial preparation in the Ackerman Litigation."[39]  The Frazer Declaration is grossly insufficient for several reasons.

*First*, Frazer's *intent* and *expectation* that Brewer remain "actively involved" is not the same thing as Brewer actually being "actively involved."

*Second*, the Frazer Declaration provides no underlying factual details to substantiate Brewer's involvement. For example, the Frazer Declaration does not mention in any way *how* Brewer is purportedly involved in the trial preparation or include any of the invoices he claims to review.  This is quite distinct from *Murphy*, where Judge Kaplan noted the subpoenaed lawyer had "participated in strategy discussions, assisted in drafting pleadings, met with witnesses, and helped collect and review documents."[40]

 *Third*, Frazer's statement that one-third of Brewer's billed time for May and June 2021 related to this case means very little without providing Brewer's total hours for this period, *i.e.* if he only billed 9 hours, then 3 hours billed to this case could hardly be "active involvement." Furthermore, questions exist as to the veracity of Frazer's statement. By June 2021, the trial setting in this case was already continued to October 4, 2021—still several months away.[41]  Brewer "actively preparing for trial" this far in advance highly suspect—particularly when (i) he had not appeared in any depositions or hearings nor (ii) filed any of the pleadings and (iii) when the NRA represented he would not be participating as an advocate. And, even if Frazer had not seen legal invoices showing what fraction of time Brewer devoted to "actively preparing" for trial as of July 2021, surely Frazer would have personal knowledge of communications with Brewer throughout July 2021. Yet, Frazer, the NRA's General Counsel and the person who most easily could obtain

---

[39] *Id.* (citing ECF 325, Ex. L, Frazer Decl., dated Aug. 3, 2021, at ¶ 4 (APP 286)).
[40] *Murphy*, 2009 U.S. Dist. LEXIS 122027, at *2-3.
[41] *See* ECF 236.

this information, provides no details as to Brewer's July 2021 involvement.  Moreover, the fact that Brewer was purportedly "actively preparing for an October 2021 trial" in May 2021 (right after the NRA's bad-faith bankruptcy was dismissed) and June 2021 seems implausible given that the parties did not first exchange expert disclosures and reports until June 1, 2021,[42] and between July 27, 2021 and October 29, 2021, the parties took at least 29 depositions in this case.

*Finally*, if a party could merely rely on a conclusory declaration that is a rote recitation of the *Shelton* factors, like the Frazer Declaration, then there would never be a situation where an attorney's deposition is taken, as lawyers would simply draft these self-serving declarations with no detail to successfully avoid being deposed despite having knowledge of critical non-privileged facts relating to the claims and defenses in a case.  That is not the standard in the Firth Circuit, and Judge Toliver's finding that *Shelton* did not apply based on the Frazer Declaration is not and cannot be contrary to the law.

### 2.   Even if *Shelton* applies, Judge Toliver did not abuse her discretion or act contrary to law.

The NRA first suggests that because Judge Toliver did not pursue an exhaustive on-the-record analysis of the *Shelton* factors, her conclusion to compel Brewer's deposition is deficient. As a threshold matter, Judge Toliver *did* in fact address the *Shelton* factors:

> I -- you know, I think even applying the *Shelton* factors there are a number of things that -- you know, I believe Mr. Brewer even under Shelton could -- you know, would be required to testify about, you know. ***There's no other means to obtain the information, that the information is relevant and nonprivileged, and that the information is crucial to the presentation of the case***, you know. I know you-all know those are the factors, but just going through and looking at the different topics or potential topics, I can see that Mr. Brewer, even if the Court applies the *Shelton* factors, would have to -- would have to sit and be deposed for some of those at least.[43]

---

[42] *See e.g.*, ECF 253 (filed June 1, 2021).
[43] ECF 453, at Ex. B., Motion Hr'g Tr. dated Dec. 15, 2021, at 9:21-10:6 (App. 14-15) (emphasis added).

Thus, notwithstanding the discretionary precedent of the *Shelton* factors, Judge Toliver nonetheless observed the factors and determined that even if they were to apply, Brewer would be required to sit for a deposition.

The NRA's argument that this inquiry is insufficient and subject to review and reversal under Rule 72(a) is unavailing. In response to an identical argument that a magistrate judge's order should be overturned for failing to properly state the reasons on the record for the order, this Court rejected the same type of arguments now made by the NRA:

> Throughout his brief, Price suggests that Judge Stickney's orders should not stand because Judge Stickney did not articulate his reasoning in deciding the matters before him . . . . Price fails, however, to provide the court with any authority to support this argument. Nor does Price carry his burden under [Rule 72(a)] of showing that Judge Stickney's order was clearly erroneous or contrary to law.[44]

Likewise, the NRA provides no legal authority for the proposition that Judge Toliver's putative lack of analysis in the order establishes some defect "contrary to law" under Rule 72(a).[45] Thus, such contention is meritless.

The NRA next embarks on an arduous expedition through each of AMc's proposed deposition topics, ultimately concluding that AMc failed to establish the *Shelton* factors and that such failure renders Judge Toliver's order "contrary to law." The NRA's second bite at the apple should nonetheless fail.

Notably in this effort, however, the NRA goes to great lengths to distort the exemplar deposition topics identified by AMc, highlighting the Brewer Firm's deftness in misrepresentation

---

[44] *Price v. United Guar. Residential Ins. Co.*, No. 3:03-CV-2643-G, 2005 U.S. Dist. LEXIS 24762, at * 18, n.2 (N.D. Tex. Feb. 2, 2005) (Fish, J.).
[45] ECF 452, at 8.

and misdirection, and also improperly attempting to severely limit to the scope of Brewer's questioning during the deposition. A few of the most egregious examples are addressed below.

a.    *The February 2019 FRA Audit.*

The NRA attempts to argue that the February 2019 FRA Audit is an improper inquiry because (a) AMc has previously deposed an FRA employee and (b) AMc's attorneys at Dorsey & Whitney LLP ("***Dorsey***") were involved in the FRA audit.[46] This argument is intentionally misrepresentative.

While AMc has long-sought discovery into the February 2019 FRA Audit,[47] this is but a fraction of the relevant information sought relating to the audit. More specifically, AMc's claims include allegations of fraud relating to the NRA's assurances that this audit would be conducted by an independent third-party.[48] To prepare its case, AMc requires information about who at the NRA decided to audit AMc among its many vendors, a peculiar decision considering the NRA's subsequent admission that it did not believe AMc had done anything wrong.[49] Moreover, AMc is entitled to an inquiry as to how, when, and why the NRA and/or the Brewer Firm selected FRA to complete this audit, including an inquiry as to whether those decision makers had knowledge that Susan Dillon was employed by FRA.

AMc's deposition of FRA Director Michael Trahar about the substance and procedure of the February 2019 FRA audit could not elicit this information. Trahar has no personal knowledge of why audits were needed, how AMc was chosen as a vendor to be audited, what knowledge the NRA or Brewer Firm had regarding Dillon's employment, what efforts were taken to include or

---

[46] *Id.* at 11.
[47] The NRA initially refused to produce FRA documents, arguing that the documents were privileged and that the NRA would not rely on the factual substance of same. The NRA then produced limited FRA documents for the first time as evidence in support of its Motion for Partial Summary Judgment. *See* ECF 420, Ex. 69-73. Incredibly, these documents were also filed in the public record—underscoring the wanting basis for privilege.
[48] ECF 238-1, AMc's Second Amended Complaint, at ¶¶ 73-88, 224-231.
[49] ECF 419-1, Ex. 33, LaPierre Depo., dated Aug. 20, 2021, at 169:2-19 (App. 2231).

exclude Dillon from the audit, and other similar topics. The NRA's arguments as to the involvement of Dorsey are equally illogical. While counsel at Dorsey were involved in arranging the logistics of the audit, AMc and its attorneys (a) did not vet and select FRA to complete the audit, (b) did not participate in the audit, (c) did not have knowledge of Dillon's involvement and, most notably, (d) were not given access to any reports or conclusions from the audit until produced piecemeal nearly three years later to support the NRA's Motion for Partial Summary Judgment.[50]

Importantly, AMc has attempted to elicit this testimony from individuals that may have personal knowledge, but has been unsuccessful because witnesses either have no personal knowledge beyond what Brewer told them or Brewer Firm instructs the witness not to answer. For example, Hart was asked who made the decision on which vendors to audit and was instructed not to answer the question.[51] Hart was asked who suggested FRA as an accounting firm to conduct the February 2019 audit and he was again instructed to not answer by the Brewer Firm.[52] Dillon was asked (a) why she left the Brewer Firm for FRA and (b) why she left FRA to return to the Brewer Firm, but she was instructed not to answer unless she could do so without revealing attorney-client privilege.[53] Despite this implicit acknowledgement by NRA counsel that Dillon's employment changes were related to client representation, AMc was foreclosed from discovering these material underlying facts about the fraudulent intent behind the NRA's sham audits of AMc.

The NRA's attempts to reframe the scope of the relevant inquiry as to the February 2019 FRA audit are unavailing. This information is critical to AMc's case, is not privileged, and AMc

---

[50] ECF 420, Ex. 69-73 (APP. 1941-2147).
[51] ECF 325, Ex. B, Hart Depo., dated Jul. 26, 2021, at 76:24-77:12 (APP. 146-47).
[52] ECF 325, Ex. B, Hart Depo., dated Jul. 26, 2021, at 218:2-18 (APP. 150).
[53] ECF 308, Ex. 406, Dillon Depo., at 17:22-18:11 (p. 112-13); 20:7-15 (p. 115).

has been unable to elicit responsive testimony from any other source on this topic, among many others.[54]

      b.   *Stinchfield Affidavit and Declaration.*

The NRA's misdirection efforts continue with regard to the Stinchfield declaration. The NRA tries to assert that no inquiry about the Stinchfield declaration is appropriate because AMc has access to NRATV data.[55] How one assuages the other is a mystery. It is critical to AMc's case that it develop evidence showing that allegations regarding NRATV metrics are unfounded—including the allegations contained in Stinchfield's December 10, 2019 declaration.[56] As the NRA correctly points out, Stinchfield subsequently recanted certain elements of his declaration in an affidavit executed on April 23, 2021, wherein Stinchfield admits that his prior representations were based only on materials selected and presented to Stinchfield by Brewer.[57]

The crux of Stinchfield's original declaration was not that NRATV metrics existed, but that AMC allegedly curated vanity metrics to intentionally misrepresent the performance of NRATV to the NRA.[58] The NRA's present focus on the existence of a "digital dashboard," the parties' status reports, social media accounts, and AMc privilege logs are a brazen smokescreen.

---

[54] AMc's inability to conduct the most basic discovery from NRA witnesses is not isolated to Hart and Dillon, and is not isolated to the February 2019 FRA Audit. *See e.g.,* ECF 112, Ex. A-37, Cotton Depo., at 117:22-118:22 (Cotton could not answer basic questions about his knowledge of the NYAG's investigation, telling AMc "you'd have to ask Bill [Brewer]" and "I know what Bill [Brewer] told me.") (App. 725); at 151:4-8 (asked about *his personal knowledge* of NRA payments for a trip to Moscow, Cotton answered, "Any information I may or may not have on that issue would have come from the discussions with Bill Brewer.") (App. 733); at 226:14-227:6 (Cotton would not even answer questions about Josh Powell's termination from the NRA, stating only that, "I can't tell you that, because I got that information from Bill [Brewer].") (App. 752); at 257:7-20 (Asked about his *personal opinions* on the "Winkler letters" so aggrieved by the NRA, Cotton again refused to answer, saying "I can't talk about what I determined from that because it all came through Bill. Bill Brewer. I'm sorry.") (App. 760); at 127:18-129:1 (Cotton did not even know what documents the NRA alleges AMc did not produce, saying that he only knows generally that the NRA hadn't received some documents based on discussions with Brewer) (App. 727-28). Brewer is the maker and keeper of all facts and AMc's efforts to learn these facts is routinely obstructed.

[55] ECF 452, at 13.

[56] *See* ECF 307, Ex. 51, Stinchfield Decl., dated Dec. 10, 2019 (App. 83-85).

[57] ECF 325, Ex. C, Stinchfield Decl. dated Apr. 23, 2021 (App. 155-57).

[58] *See supra,* n. 53.

The issue is not who has what metrics, it is about the underlying facts of Stinchfield's original declaration, the materials curated to contrive his representations, the intent of those brokering the false narrative, and other related topics. Brewer was the broker of these actions and has actual knowledge of same. Indeed, Brewer not only contributed quotes to the media after the Brewer Firm leaked the declaration to news outlets, but Brewer himself directly communicated with Stinchfield about the affidavit, including exchanging text messages in which the two express excitement and levity at the publication of false allegations against AMc.[59]

     c.    *North's investigation into Brewer's fees.*

The NRA next contends that AMc has had its opportunity to ask Lt. Col. North about North's own investigation, again deflecting the issue. While North did testify that the Brewer Firm's fees to the NRA were staggering[60] and there is no dispute that North sought to investigate the propriety of this expense to the NRA,[61] the relevant inquiry for AMc's purposes is not the basis or veracity of North's concerns. The factual inquiry is about what actions the NRA and/or the Brewer Firm took in response to North's investigation, including the decisions to start sham audits of AMc, orchestrate a false tale about a coup attempt, the NRA discharging other outside counsel, and other actions, and to what extent those actions were taken by NRA Board members, NRA employees, or outside counsel. AMc attempted to ask these questions to Hart and he was instructed not to answer.[62] Similarly, AMc attempted to ask LaPierre about his personal knowledge of the sham audits and he admitted that he had no personal knowledge outside what was provided by

---

[59] ECF 325, Ex. A-6 (App. 25-38).
[60] ECF 81, Ex. A-3, North Depo., at 183:5-14 (App. 224).
[61] *See e.g.*, ECF 81-1, Ex. A-4 (App. 249-53), A-5 (App. 254-57), A-16 (App. 455-59), A-20 (App. 477-78), A-21 (App. 479-80), A-22 (App. 481-89).
[62] ECF 325, Ex. B, Hart Depo., dated Jul. 26, 2021, at 176:22-177:12 (App. 148-49).

counsel.[63] Again, Brewer is the maker and keeper of all facts and he is now the only person that can answer these factual questions.

        d.    *RICO threats and family relationships.*

A final egregious example of the NRA's attempts to mischaracterize and deflect is its arguments regarding the improper threats made by Brewer to AMc and the nature of Brewer and the McQueens' familial relationship. AMc is entitled to elicit discovery about the false allegations and threats made by Brewer to AMc regarding criminal investigations against AMc. Specifically, on numerous occasions Brewer channeled threats to AMc that Brewer would "bring Angus and Revan [McQueen] up on RICO charges and have the FBI raid [AMc's] offices during the time that Angus McQueen was dealing with cancer"[64] and that he would "have [Revan] and Angus indicted by the Department of Justice."[65] AMc is entitled to depose Brewer on these allegations and on his relationship with the McQueens because Brewer made these threats himself.[66] It cannot be said that Brewer was acting on behalf of the NRA in making these threats either because an attorney may not "threaten to present … criminal or disciplinary charges solely to gain an advantage in a civil matter."[67] Indeed, Hart believed the dispute was actually between the Brewer Firm and AMc[68] and he testified that he believed Brewer was using the NRA's lawsuit to settle a personal family dispute with the McQueens.[69] Contrary to advocating *for* the NRA, Hart believed that

---

[63] ECF 419-1, Ex. 33, LaPierre Depo., dated Aug. 20, 2021 at 186:18-187:14 (testifying that the bulk of LaPierre's knowledge about AMc's compliance with document examinations comes from NRA lawyers and the Brewer Firm) (App. 2235); 187:16-19 (no knowledge of documents reviewed by Brewer Firm in September 2018 Brewer Audit) (App. 2235); 188:3-10 (no knowledge of documents reviewed by Cooper & Kirk in November 2018 CK Audit) (App. 2235); 188:12-17 (admitting that all knowledge relating to September 2018 Brewer Audit is based solely on attorney/client communications) (App. 2235); 189:10-190:5 (acknowledging that personal knowledge regarding AMc's compliance with February 2019 FRA Audit is based solely information provided by counsel) (App. 2236).
[64] ECF 325, Ex. F, AMc Corp. Rep. Depo. dated Mar. 26, 2021, at 18:24-20:5 (App. 183).
[65] ECF 141, Ex. I, R. McQueen Decl. at ¶ 41 (App. 97).
[66] ECF 325, Ex. E, NRA Bankruptcy Hr'g Tr., dated Apr. 16, 2021, at 113:24-118:12 (App. 173-78).
[67] Rule 4.04, Texas Disciplinary Rules of Professional Conduct.
[68] ECF 112, Ex. A-2, Hart Depo., dated Feb. 4, 2020, at 181:16-21 (App. 103).
[69] ECF 325, Ex. B, Hart Depo., dated Jul. 26, 2021, at 312:14-17 (App. 151).

Brewer's actions would "***destroy the NRA***."[70] Critically, this inquiry is only available with Brewer, as he—not his wife—is the only person with personal knowledge of the basis, intent, substance, and transmission of these threats.

The NRA further suggests that the familial animosity between Brewer and the McQueen family is a red herring because the McQueens are not the majority owners of AMc.[71] This argument is nonsensical. The assertion that there can be no personal vendetta by Brewer because the subjects of his ire are not the majority owners of the company is laughably incoherent. The NRA's argument is even further suspect because the document relied upon identifies ownership interests as of December 31, 2020[72]—a time period completely irrelevant to the threats and allegations made by Brewer in 2018.  Nonetheless, it is yet another bad faith attempt to distract from the relevant inquiry.

Thus, while it would be improper at this point to limit the topics of Brewer's deposition, discussed below, it is instructive to see the considerable lengths taken by the NRA to mischaracterize and deflect the relevant issues.

### 3. Judge Toliver did not act contrary to law in not limiting the scope of the deposition, and such limitations now would be inappropriate.

Finally, the NRA contends that Judge Toliver acted contrary to law when she failed to limit the scope of the deposition in her Order.[73]  The NRA then contends this Court should specifically identify and narrow the topics upon which Brewer will be testifying.  The NRA and Brewer's intent is clear—get the narrowest order possible to limit to scope of the deposition, and then object and refuse to answer any questions that they feel like are not in any way related to those topics.

---

[70] ECF 325, Ex. A-1, Email between S. Hart and T. Makris, dated Feb. 22, 2019 (App. 5-6) (emphasis added).
[71] ECF 452, at 16, n. 53. (citing Ex. G).
[72] ECF 484, Ex. G (App. 138).
[73] ECF 452, at 4.

As a preliminary matter, trial judges have "broad discretion to tailor discovery and permit or limit depositions as [they] choose[]."[74] Therefore, unsurprisingly, the NRA provides no legal authority to substantiate its demand for a pre-determined, arbitrarily limited scope[75]—relief it never requested in the underlying briefing on the Motion to Compel.[76]

> a.    *The NRA's arguments are unavailing.*

Looking for any foothold, the NRA points to one of Judge Toliver's statements in the Motion Hearing purportedly suggesting a more limited scope to Brewer's deposition.[77] However, the NRA misunderstands Judge Toliver's statement. She did not suggest a ceiling or cap on Brewer's testimony; rather, she stated that at least some of the deposition topics constituted a floor representing the minimum topics on which Brewer would need to testify.[78]

The NRA provides no support or argument for its assertion that AMc should be barred from exploring topics also covered in the Skye Brewer, Oliver North, or Wayne LaPierre depositions. AMc opposes this assertion.

Further, Brewer is the central character to all of the NRA's allegations and the nexus of all AMc's claims, as the primary actor relevant to those claims. As Judge Hale pointed out after months of dealing with the "shocking" Brewer-driven bad-faith NRA Bankruptcy filing, Brewer's role at the NRA was so unusual as to potentially require the appointment of a trustee in the event of future bankruptcy proceedings. Indeed, if the NRA had properly designated a corporate representative it would have been Brewer, as he ran the NRA and LaPierre, based on LaPierre's

---

[74] *Kitchen v. Dallas County*, 759 F.3d 468, 478 (5th Cir. 2014).
[75] ECF 452, at 16-18.
[76] *See* ECF 323-1, at § VI.B.
[77] ECF 453, at Ex. 2, at 10:2-6 ("I know you-all know those are the factors, but just going through and looking at the different topics or potential topics, I can see that Mr. Brewer, even if the Court applies the *Shelton* factors, would have to—would have to sit and be deposed for ***some of those at least***.") (emphasis added). The phrasing "at least" connotes the "smallest in size or degree" or "at the minimum."
[78] *See id.*; *see also* *Least*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/least (last visited on January 6, 2022).

deep-seated fear that only Brewer could keep him out of jail.[79]  Therefore, Brewer is subject to deposition on any matter of relevant fact, and any testimony that is relevant to this proceeding and not directly privileged, or subject to a privilege exception.

The NRA's request to also limit the scope of the deposition based on this Court's purported findings as to AMc's conspiracy and defamation claims misrepresents the Orders and blurs important distinctions. This Court determined in its Order on the NRA's Rule 12(b)(6) Motion to Dismiss that AMc failed to state a claim to the extent it asserted a "separate defamation claim" based on Brewer's repetition of the NRA's defamatory April 25th Letter to the Wall Street Journal.[80] The failure of this potential "separate defamation claim" does not protect Brewer from testifying as a fact witness to the live defamation claim. Similarly, even if the Court did "not consider AMC's conspiracy claim insofar as it concerns . . . Brewer, or BAC,"[81] this would not translate to protecting Brewer from testifying as to his personal knowledge of these facts.

   b.     *There is no need to preemptively limit the scope of the deposition.*

When depositions of attorneys are permitted, the Fifth Circuit has determined their scope may include inquiries "into objective facts."[82] The scope is limited, however, only where it appears questions would invade some privilege.[83]

Here, there is no need to preemptively limit the scope of Brewer's deposition. First, the list of exemplar topics upon which AMc seeks to depose Brewer concern his personal knowledge of

---

[79] ECF 419-1 Ex. 20, NRA Bankruptcy Hr'g Tr. (Apr. 16, 2021 AM, Anthony Markis) 124:9-23 ("[LaPierre] said Bill Brewer's the only one that can keep me out of jail" and "[LaPierre] said [Brewer] was the only one standing between [LaPierre] and the guys with handcuffs or [LaPierre] and an orange jumpsuit.") (App. 1738); 125:9-17 ("I had heard the same threat repeated by Steve Hart, that Bill Brewer has convinced [LaPierre] that he's going to go to jail if he doesn't have Brewer representing him.") (App. 1739).
[80] ECF 329, at 30, n. 14.
[81] *Id.* at 54, n. 24.
[82] *Nguyen v. Excel Corp.*, 197 F.3d 200, 210 (5th Cir. 1999) ("The first sentence of the magistrate judge's order deals with inquiry into objective facts: what the client said, what counsel said, and when they said it. We have previously permitted such inquiry.") (citing *Conkling v. Turner*, 883 F.3d 431, 435 (5th Cir. 1989)).
[83] *Id.* at 210 (holding that a deposition inquiring into an attorney's legal "perceptions and opinions" is not appropriate).

facts related to this case and non-privileged matters.[84]  Indeed, AMc counsel confirmed as much during the hearing when counsel requested, proactively and in good faith, a level of oversight on Brewer's deposition because "what's going to be asked is really important" but that AMc does not seek to invade privilege or "get into anything that we shouldn't get into."[85]

Moreover, Special Master Stickney will preside over the deposition and can immediately halt any questioning that drifts too close to privileged materials. Indeed, the NRA at the Motion Hearing welcomed the appointment of Judge Stickney as Special Master to preside over the deposition.[86]  Further, when the parties met to confer with Judge Stickney, he made clear that he had already prepared thoroughly, understands the issues in this case, and would be welcome additional materials to review and another conference with the parties further prior to the deposition. Thus, he will be adequately prepared to enforce the bounds of any questioning seeking a privileged response.

Finally, insofar as any of Brewer's deposition testimony will ultimately be irrelevant for trial, this Court can address relevance issues before trial. Indeed, the NRA acknowledges this remedy by including in its motion a preemptive request to "rule that the transcript from the deposition of Mr. Brewer is inadmissible and cannot be used in any way during the trial of this action."[87]  This future, potential remedy should not be a reason to handcuff AMc prior to the deposition itself, especially given the likelihood that Brewer and his counsel are going to try to assert privilege and scope objections to most, if not all, of the questions propounded by AMc's counsel.

---

[84] ECF 323, at 25.
[85] ECF 453, at Ex. 2, at 8:24-9:16 (App. 13-14).
[86] ECF 453, at Ex. B, at 11:9-10 ("[O]bviously, you know, it would be agreeable to us—we'd rather have a master there overseeing things than not . . . .") (App. 16).
[87] ECF 452, at 16.

**B.    The NRA Failed to Meet its Burden to Show that the Order Improperly Appointed Judge Stickney to Act as Special Master.**

At the outset of its Objection, the NRA states that it is objecting to the appointment of Judge Stickney acting as Special Master over the deposition.[88]  Yet, throughout the remainder of its Objection, the NRA fails to articulate any basis or reasoning for why this appointment was clearly erroneous or contrary to law.  Indeed, the NRA's only objection is that Judge Stickney should not have been appointed because Judge Toliver should never have granted to the Motion to Compel.  As a result, the NRA has failed to satisfy its burden that the Order appointing Judge Stickney as special master was clearly erroneous or contrary to law.  Finally, during the hearing on the Motion to Compel, counsel for the NRA acknowledged that the NRA was not opposed to the appointment of a special master if a deposition was indeed going forward.[89]  Thus, to the extent the NRA has asserted any objection on this basis, it has been waived.

**C.    The NRA Has Failed to Meet Its Burden to Show that Magistrate Judge Toliver's Order Contained any Errors in Denying the NRA's Request for Fees.**

The NRA's continued insistence on recovering fees for a motion on which AMc prevailed is baffling.[90]  First and foremost, sanctions against AMc are most immediately unjustified because *AMc's motion was not denied*.  Moreover, as acknowledged by the NRA, sanctions under Rule 37(a)(5)(B) are not permitted "if the motion was substantially justified."[91]  The Supreme Court has held that meeting the "substantially justified" standard in this context requires there be a "genuine dispute" or "if reasonable people could differ as to the appropriateness of the contested action."[92]  That this standard is met as to AMc's motion could not be more plainly evident.

---

[88] ECF 452, at 1.
[89] ECF 453, at Ex. B, at 11:9-10 ("[O]bviously, you know, it would be agreeable to us—we'd rather have a master there overseeing things than not . . . .") (App. 16).
[90] *See* ECF 452, at 18-19.
[91] FED. R. CIV. P. 37(a)(5)(B).
[92] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Although the NRA disagrees with Judge Toliver's holding, she nonetheless granted the motion. For the purposes of the NRA's Rule 72 objection, the holding establishes that there is at least a genuine dispute before the Court. This alone satisfies the "substantially justified" standard. Furthermore, it would seem that the NRA must concede that the "substantially justified" standard has been met. Surely the NRA would agree that Judge Toliver is a reasonable person so, despite the NRA's continued opposition to the holding, it would follow that, at a minimum, "reasonable people . . . differ as to the appropriateness" of AMc's motion. The NRA's motion should be denied.

In truth, the instant circumstances would more appropriately result in the NRA and/or Brewer Firm being sanctioned to pay AMc's reasonable expenses and attorneys' fees.[93] Under Rule 37(a)(5)(A), having granted AMc's motion in its entirety, the court must require the NRA, the Brewer Firm, or both to pay AMc's "reasonable expenses incurred in making the motion, including attorneys' fees."[94] The court was presented with AMc's Motion to Compel only after the Brewer Firm repeatedly avoided service of AMc's subpoena and AMc was forced to seek court intervention.[95] As a result, AMc has been forced to incur the time and expense to (a) draft and file its Motion to Compel, (b) draft and file the reply in support of same, (c) prepare for and attend a hearing on same, and (d) file the instant Response to NRA's Rule 72 objections. This considerable expense is all the more egregious in the case where (a) Brewer's actions so plainly and repeatedly implicate his status as a fact witness, (b) the bankruptcy court has already noted "the unusual

---

[93] FED. R. CIV. P. 37(a)(5)(A).
[94] *Id.*
[95] *See* ECF 352, Mason Decl. dated Aug. 11, 2021 (APP. 2-4).

involvement of litigation counsel in the affairs of the NRA,"[96] and (c) Brewer's co-counsel admitted long ago that Brewer may be a fact witness.[97]

## IV.   MOTION TO STRIKE THE NRA'S NEW EVIDENCE

### A.   Motion to Strike NRA Evidence.

When a magistrate judge's order on a non-dispositive matter is objected to under Rule 72(a), there is no basis to consider new evidence.[98] This standard is distinguishable from a *de novo* review under Rule 72(b).[99] "Because the district court's review of the magistrate judge's factual findings [is] limited to clear error review, there appears to be no basis for the district court to have received additional evidence."[100]

In support of its Rule 72 Objections, the NRA attaches and relies upon new evidence, including for the first time an "Ackerman Stockholder Listing, dated February 24, 2021."[101] Despite the dubious nature of the evidentiary support purportedly offered by these documents,[102] their submission is improper. AMc requests that the new evidence attached by the NRA be stricken.

---

[96] NRA Bankruptcy, ECF No. 740, Order Granting Motion to Dismiss (May 11, 2021) at 37.
[97] ECF 323, at 7, n. 15 (citing ECF 56, at Ex. A-6, Virginia Hr'g Tr. at 27:20-22 [APP 375], 40:11-13 [APP 388] (explaining Brewer was not present or seeking pro hac vice admission "*out of [their] ethical concerns that [Brewer] might be a witness*") (emphasis in original)).
[98] *See Moore v. Ford Motor Co.*, 755 F.3d 802, 808 (5th Cir. 2014).
[99] *Id.* (citing *Freeman v. Cty. of Bexar*, 142 F.3d 848, 850-53 (5th Cir. 1998)). "Plaintiffs' reliance on *Freeman* is misplaced. At issue there was a report and recommendation, subject to de novo review under Fed.R.Civ.P. 72(b). At issue here is a non-dispositive order subject to Rule 72(a) clear error review."
[100] *Moore*, 755 F.3d at 808; *see also Schmidt v. Navistar, Inc.*, No. 18-321 KG-JFR, 2020 U.S. Dist. LEXIS 116150, at *4-5 (D.N.M. June 30, 2020) ("The Court observes that Rule 72(a) 'does not authorize a district court to consider new evidence when reviewing a magistrate's decision on a pretrial non-dispositive order.'"); *Rivera v. Hudson Valley Hosp. Grp., Inc.*, No. 17-CV-5636 (KMK), 2019 U.S. Dist. LEXIS 143086, at *26 (S.D.N.Y. Aug. 22, 2019) ("In light of the overwhelming caselaw in the Second Circuit indicating that courts may not consider evidence not presented to the magistrate judge in connection with non-dispositive motion, the Court declines to consider the new evidence . . . ."); *In re Search of Info.*, 212 F. Supp. 3d 1023, 1038 (D. Kan. 2016) ("[Rule 72(a)] does not authorize a district court to consider new evidence when reviewing a magistrate's decision on a pretrial non-dispositive order."); *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998) ("In reviewing a magistrate judge's factual determinations, a district court may not consider any evidence which was not presented to the magistrate judge.").
[101] ECF 484, Ex. G (App. 138).
[102] *See supra*, § III.A.2.d.

## V.      CONCLUSION

For these reasons, Defendants respectfully request the Court overrule the NRA's Rule 72

Objections in their entirety, strike the new evidence attached by the NRA in support of its

Objections, and grant all such other relief, at law or in equity, to which they may be justly entitled.


January 10, 2022.

Respectfully submitted,

*/s/ Brian E. Mason*
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com
**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR
DEFENDANTS/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 10, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Brian E. Mason* _____

BRIAN E. MASON