IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § | |
| Plaintiff and Counter-Defendant | § § § | |
| v. | § § | |
| ACKERMAN MCQUEEN, INC., | § § | Civil Action No. 3:19-cv-02074-G |
| Defendant and Counter-Plaintiff, | § § § | |
| and | § § | |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY, | § § § § § | |
| Defendants. | § § | |

**PLAINTIFF NATIONAL RIFLE ASSOCIATION OF AMERICA'S
REPLY IN SUPPORT OF
<u>RULE 72 OBJECTIONS TO MAGISTRATE'S DISCOVERY ORDER</u>**

**BREWER, ATTORNEYS & COUNSELORS**
Cecelia L. Fanelli
clf@brewerattorneys.com
Sarah B. Rogers
sbr@brewerattorneys.com
Philip J. Furia
pjf@brewerattorneys.com
**BREWER ATTORNEYS AND COUNSELORS**
1717 Main Street, Suite 5900
Dallas, Texas 75201

**ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

# **TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT .................................................................................................................1

    A. Defendants Mischaracterize the Law Applicable to the NRA's Objections............1

    B. The Shelton Factors Mandate that Brewer Should not be Deposed ........................2

        1. The February 2019 Forensic Risk Alliance ("FRA") Audit ........................2

        2. Stinchfield's Affidavit and Declarations .....................................................5

        3. North's "Investigation" as to Brewer's Fees ...............................................8

        4. RICO Threats and Family Relationships .....................................................9

    C. Judge Toliver did not Rule that the Brewer Deposition had an Unlimited Scope..................................................................................................................10

    D. AMc's Motion to Strike is Without Merit .............................................................10

III. CONCLUSION.............................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*,
   No. CIV.A. 6:07-CV-559, 2009 WL 2174925 (E.D. Tex. July 21, 2009) ................................1

*Freeman v. County of Bexar*,
   142 F.3d 848 (5th Cir. 1998) ................................................................................................10

*In re Matter of Subpoenas Served on Collins*,
   No. A-14-CV-934 LY, 2014 WL 12586370 (W.D. Tex. Nov. 7, 2014) ...................................1

*McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*,
   No. 3:14-CV-2498-B, 2016 WL 2609994 (N.D. Tex. May 6, 2016) ........................................1

*Merrill v. Waffle House, Inc.*,
   227 F.R.D. 475 (N.D. Tex. 2005) ..........................................................................................10

*Murphy v. Adelphia Recovery Trust*,
   No. 3-09-MC-105-B, 2009 WL 4755368 (N.D. Tex. Nov. 3, 2009) .........................................1

*Nguyen v. Excel Corp.*,
   197 F.3d 200 (5th Cir. 1999) ...................................................................................................1

*Richards v. Lufkin Indus., LLC*,
   No. 9:14-CV-136, 2017 WL 11471788 (E.D. Tex. Jan. 23, 2017) ...........................................1

## I.   INTRODUCTION

Defendants have failed to carry their heavy burden to depose the NRA's counsel, William A. Brewer, III ("Brewer"). On each issue about which they seek to depose counsel, he has acted solely as a lawyer – he is not a fact witness. AMc's suggestions otherwise are contradicted by the record as described below.

## II.   ARGUMENT

### A.   Defendants Mischaracterize the Law Applicable to the NRA's Objections

The NRA contends that Judge Toliver acted contrary to law when she failed to apply the *Shelton* factors in her analysis. Defendants argue "it is legally impossible for Judge Toliver to have acted contrary to law given that *Shelton* has not been accepted as the standard in the Fifth Circuit."[1]  This statement is wrong. Although "the Fifth Circuit has not explicitly adopted *Shelton*,"[2] after the Fifth Circuit's decision in *Nguyen*[3] "[d]istrict courts in the Fifth Circuit . . . have applied the three-prong test […] in *Shelton* to determine circumstances when […] opposing counsel should be deposed."[4] Courts in this Circuit routinely discuss the *Shelton* factors as though they are fully binding.[5]

Defendants also incorrectly claim that *Shelton* is inapplicable due to Brewer's purported status as a "fact witness."  However, Defendants' argument ignores settled law. In this District, "the critical factor in determining whether the *Shelton* test applies is . . . the extent of the lawyer's involvement in the pending litigation."[6]  It has been determined that "if the lawyer is actively

---

[1] ECF 488. pp. 3-4.
[2] *Murphy v. Adelphia Recovery Trust*, No. 3-09-MC-105-B, 2009 WL 4755368, at *2 (N.D. Tex. Nov. 3, 2009).
[3] *Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999).
[4] *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-CV-2498-B, 2016 WL 2609994, at *10 (N.D. Tex. May 6, 2016).
[5] *See e.g., Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, No. CIV.A. 6:07-CV-559, 2009 WL 2174925, at *2 (E.D. Tex. July 21, 2009) ("In order to determine when it is proper to allow opposing counsel to be deposed, the Fifth Circuit applies a three factor test that the party seeking the deposition must meet."); *In re Matter of Subpoenas Served on Collins*, No. A-14-CV-934 LY, 2014 WL 12586370, at *3 (W.D. Tex. Nov. 7, 2014) ("In reviewing the propriety of deposing defense counsel the Fifth Circuit has applied a three part test."); *Richards v. Lufkin Indus., LLC*, No. 9:14-CV-136, 2017 WL 11471788, at *2 (E.D. Tex. Jan. 23, 2017) ("In order to determine when it is proper to allow opposing counsel to be deposed, the Fifth Circuit applies a three factor test that the party seeking the deposition must meet.").
[6] *Murphy*, 2009 WL 4755368, at *3.

involved in trial preparation, she cannot be deposed unless the *Shelton* criteria are met."[7] As such, the question of whether or not Brewer is a "fact witness" does not resolve the inquiry. Judge Toliver should have considered the degree to which Brewer is involved in trial preparation. There is no indication in the Transcript that she did so. In view of the foregoing, Judge Toliver's failure to rely upon the *Shelton* factors in determining whether to allow Defendants to depose Brewer was contrary to law.

**B.     The Shelton Factors Mandate that Brewer Should not be Deposed**

AMc accuses the NRA of going to "great lengths to distort the exemplar deposition topics,"[8] when in fact the NRA recites them verbatim.[9] Now, months after discovery has closed, AMc contends that the ten topic descriptions (with sub-topics) are merely an "exemplar." AMc discloses what its true intent is, namely, to conduct a deposition "on any matter of relevant fact, and any testimony that is relevant to this proceeding and not directly privileged, or subject to a privilege exception."[10] In other words, AMc intends to harass Brewer on whatever it wishes in order to attempt to obtain sound bites to remedy its defective claims and defenses. The deposition of NRA's counsel in significant pending litigation is not only unwarranted, but is particularly so in this case given the disclosures regarding AMc's long-standing and continued concealment and retention of the NRA's data, documents, and the retention of control of the NRA's computer applications, and accounts.[11] None of the four "examples" that the Response addresses demonstrate that Brewer is a fact witness or show Brewer doing anything other than acting as a lawyer, as demonstrated by the discussion below.

    **1.     The February 2019 Forensic Risk Alliance ("FRA") Audit**

---

[7] *Id*.
[8] ECF 488, p. 10.
[9] ECF 452, pp. 5-6.
[10] ECF 488, p. 18.
[11] *See, e.g.*, Discovery Status Reports and Accompanying Exhibits, ECFs 342, 365, 377, 380, 385, 390, 394, 400.

AMc's contrived excuse for requiring Brewer's deposition is the contention that "to prepare its case, [it] requires" information as to (1) who at the NRA decided to audit AMc; and (2) how, when, and why FRA was selected.[12] This excuse is a transparent attempt to invade attorney-client communications and violate the work product doctrine in connection with the type of work that lawyers perform routinely when representing clients in books and records examinations. AMc's bogus allegation that Brewer is the "nexus," "central character," and "primary actor" in creating "fake audits" remains unsupported—and indeed, is contradicted—by the actual record that emerges from discovery. Whistleblowers within the NRA accounting department have testified that they had concerns about AMc before Brewer was ever retained,[13] and would have pressed for scrutiny of AMc even if Brewer had not been retained.[14] The evidence shows that the NRA's Audit Committee, not the NRA's counsel, initiated and mandated increased transparency from vendors—all vendors—beginning in the summer of 2018.[15] The Brewer firm ("BAC") was among several counsel enlisted by the NRA in this effort such as Morgan Lewis[16] and Steve Hart.[17] Hart *made clear to AMc in October 2018,* when AMc first attempted to obstruct the NRA's examinations by complaining about Brewer, that the Audit Committee and not outside counsel originated the requests. In fact, from at least October 2018, the record conclusively shows that AMc and Dorsey knew that it was the Audit Committee that desired compliance reviews, [18] not Brewer or his firm.[19] As AMc and its counsel proceeded to obstruct the September 2018 records examination, Defendant Anthony Makris ("Makris")

---

[12] ECF 488. p. 11.
[13] *See, e.g.,* NRA Bankruptcy Hearing, April 13, 2021, testimony of S. Rowling, ECF 475-11 at [App. 0256-0257].
[14] *See* Declaration of Michael Erstling dated April 29, 2020, ECF 122 [App.262-265].
[15] *See, e.g.,* Email chain from Steve Hart to Anthony Makris, dated October 8, 2018 (AMcTX-00010526), ECF 422, Ex. 14, [App. 165-166].
[16] *See* Deposition of John Frazer, dated March 18, 2021, ECF 422, Ex. 48 at 158:3-16 [App. 2948].
[17] *See, e.g.,* ECF No. 422, Ex. 14, at [App. 165-166 ].
[18] **Wayne LaPierre testified that he informed Angus McQueen that the "audits" were prompted by a "need to self-correct."** *See* ECF No. 419-1, Ex. 4, at [App. 376].
[19] *See* email thread between J. Steven Hart, Esq. and Anthony Makris, ECF No. 422, Ex. 14, at [App. 165-166].

3

contacted J. Steven Hart ("Hart"), former counsel to the NRA Board, complaining about the NRA's requests and Brewer.[20] Hart advises Makris that it is not the NRA's attorneys, but the "audit committee" that wants a review and ***"we will improve practices going forward with no exceptions. This self correction is critical […] Repeat to yourself-self correction."***[21] (emphasis added). On October 8, 2018, Hart informs AMc[22] that the past practices to which AMc refers as a basis to obstruct NRA's requests, for information to which it was entitled as set forth in BAC's correspondence, are beside the point, noting: ***"[…] 38 years of historical practice could be a nice target for a NYAG."***[23] (emphasis added).

Equally impermissible is AMc's invasion of the privilege on the pretense of needing to know the "who, what and when" of why FRA was selected. In an effort to put an end to time consuming motion practice instigated by AMc, the NRA produced the FRA's spreadsheets and observations to AMc in October 2021.[24] The insinuation by AMc that FRA and its selection was disreputable and not independent should be disregarded as a basis for questioning Brewer. The record is devoid of evidence that FRA is anything but a reputable institution, represented by Debevoise & Plimpton; and, that it recorded the deficiencies of AMc's records disclosure in an independent manner, ***not the least of which is the fact that AMc blocked review of 2018-2019, key years when the NRA advertising budget escalated.***

Further, AMc can no longer attempt to even contend that it was harmed by the FRA examination. Having been forced during recent discovery to admit its failure to produce and to log documents, its belated production of a log shows Dorsey was heavily involved before and

---

[20] *Id.* at [App. 166].
[21] Id.
[22] AMc's Second Amended Privilege Log produced on October 22, 2021 shows dozens of previously unlogged entries during the time period (*see* AMc's Second Am. Privilege Log, ECF 421, Ex. 39, App. 01108-01302 at Log numbers 959-974, 981-1003, 1005-1035, 1049-1050, 1140, 1145, 1374-1378, 1385-1386, and 1389-1394) when the NRA initiated its records examination (*Id.* at pp. 37-38).
[23] ECF 422, Ex. 14, at [App. 166].
[24] Because those observations contradict AMc's "we gave the auditors 'everything'" narrative, AMc now seeks to strike the FRA materials after fomenting years of litigation to get them. *See* ECF 438 at § III.A.

4

during the FRA examination.[25] The Response now admits, as it must, that Dorsey was "involved in arranging the logistics of the audit […],"although it falsely states that neither AMc nor Dorsey "participated in the audit,"[26] when both did. Indeed, they determined its nature, scope, timing, and protocol.[27] AMc, not Brewer, possessed and controlled the files, books, and records. FRA reviewed that which AMc made available. Indisputably, AMc and Dorsey refused to allow FRA to copy NRA records that AMc selected.[28] In sum, recent discovery proves that AMc and Dorsey are and were intimately familiar with the "logistics" of the FRA examination, which they dictated and controlled, obviating the need to question Brewer.

Finally, Defendants allege "unsuccessful" attempts to elicit information about FRA from NRA witnesses. Although they claim the NRA's counsel obstructed questioning, their citations to the record fail to support this. Defendants complain about an objection during the Dillon deposition, but they fail to mention that, after the objection was made, she completely answered the questions.[29] Defendants also complain that former NRA board counsel Steven Hart was prohibited from testifying as to the individual's identity who decided "on which vendors to audit" and who "suggested FRA." These were inappropriate questions. Hart's f knowledge could only derive from privileged communications. Nothing prevented Defendants from asking these questions to LaPierre or Frazer. They chose not to. Their failure to depose NRA nonlawyer fact witnesses bars the intrusion of counsel's deposition.

2. **Stinchfield's Affidavit and Declarations**[30]

---

[25] ECF 488, p. 12.
[26] Id.
[27] Both William (ECF 432-1, Ex. 1, [App. 0001-13]) and Brandon Winkler (ECF 432, Ex. 2, [App. 0038-0044]) have submitted Declarations about their participation in the audit. *See also* Letter of Jay Madrid, dated January 4, 2019 ECF 448-5, [APP 02714-18] and the discussion of same in the Supplemental Report of Andrew McLean, Dated October 18, 2021 ECF 448-3, at Ex. 36, Ex. B, [App. 01374-01375].
[28] AMc complains that it and its counsel were not able to vet and select FRA, know about Dillion, and have access to the FRA reports. ECF 488, p. 12. Of course, neither AMc nor Dorsey were entitled to any of the above. AMc was ***a non-exclusive vendor with a terminable at will, ninety (90) day notice contract***. Nothing in the Services Agreement gave it the rights that it and Dorsey pretend to have.
[29] *See* ECF 308, Ex. 46, Dillon Depo. at 20:16-17 and 18:10-11.
[30] *See* Stinchfield's Affidavit and two Declarations at: ECF 122, Ex. 44; ECF 315, Ex. 51; ECF 325, Ex.C..

5

Unable to respond to the facts set forth in pages 12-14 of the Objections, AMc instead manufactures four (4) off-point arguments as a prelude to the far-fetched allegation that Brewer "curated" the Stinchfield Affidavit and brokered a "false narrative."

- ***The "mystery":*** AMc claims the Objections are a "mystery" to it because AMc merely "[…] had access to NRATV data." In truth, AMc and Dorsey control that data and have denied access to the NRA[31], including obstructing the appointment of a forensic neutral to image the server at issue[32] and return the relevant digital property. AMc wants to continue its strategy of ambush depositions, with AMc in possession of the documents and systems concerning NRATV.

- ***The "unfounded" NRATV metrics allegations:*** Defendants' own expert, Richard Bergin, describes the bogus NRATV metrics as mere "proxies" for industry standard metrics.[33] The record contains evidence of what the typical industry metrics are. Specifically, contained within the documents produced by the creators of the Dashboard, Performance Improvement Partners ("PIP") is a contract dated August 15, 2016 between PIP and AMc, and documents related to it.[34] That contract contains a list of "important reporting stats and metrics for internal operations and your clients."[35] In fact, that list contains actionable metrics[36] about which NRA's expert opined[37] as opposed to the vanity metrics that AMc's Presentations to NRA executives contained. Tellingly, AMc did not produce the PIP/AMc contract (nor does AMc appear to be logging withheld PIP materials), in an obvious attempt to conceal the actionable metrics that PIP

---

[31] *See, e.g.,* Discovery Status Reports and Accompanying Exhibits, ECFs 342, 365, 377, 380, 385, 390, 394, 400.
[32] A document produced ***late on the night of October 29, 2021***, indicates a logging function on the server. Furia Decl. Ex. 1 at App. [010] (AMcTX-00338227). The NRA has repeatedly sought to image the server to obtain information about logging to enable the NRA to determine who was accessing NRA computer applications and when, and for what purpose, including the extent to which AMc was using NRA money to build an AMc infrastructure to serve other clients. *See, e.g.,* ECF 377 at p. 5 (". . .the NRA sought AMc's agreement to . . . image the server.").
[33] *See, e.g.,* ECF 342 at p. 12 (citing Bergin Expert Report, p. 10, ¶ 16).
[34] *See* ECF 344-1 at Ex. A-1, PIP-00003755-3762. [APP010-018]. See also October 14, 2016 contract executed by PIP and AMc with regard to PIP's design and construction of the Dashboard, ECF 344-1 at Ex A-2, PIP-00000027-34. [APP019-027].
[35] *See* ECF 344-1 at Ex. A-1, PIP-00003757. [APP010-018].
[36] *See* ECF 344-1 at Ex. A-1, The PIP contract dated August 15, 2016 between PIP and AMc considered actionable metrics such as – among others – "ROI [Return On Investment] Calculation – Sentiment and Engagement," and "Viewing Stats Incorporating Paid Media and Organic Reach." Such metrics are designed to evaluate the cost-effectiveness of work done.
[37] *See generally* ECF 448-8, Ex. 91, at Exs. A and B, App. [04358-04581].

proposed and AMC never used, which metrics would have been useful to the NRA in assessing its approximate $45 million investment in NRATV. These facts, and the improbable two-year "loss" of the NRA Dashboard with all of its metrics (which defies belief),[38] have irreparably prejudiced the NRA's trial preparation. Compelling the NRA's counsel to now sit for a deposition covering NRATV metrics would expand that prejudice geometrically[39] when he acted solely as a lawyer in protecting his client from the technological ruse staged and covered up by AMc.

- **The alleged "recantation":** AMc falsely states the "NRA points out" that Stinchfield "recanted" in his April 23, 2021 Declaration. Stinchfield, even under the duress of AMc's libel lawsuit, did not withdraw his allegations. Rather, he qualifies them because he did "not review any of the PowerPoint presentations, digital dashboards, and other metrics in detail only glimpsing at what I was provided by Brewer instead."[40] AMc seeks to depose Brewer because they accuse him of "curating" content. But, Stinchfield's Affidavit and Declaration make clear he formed opinions based upon on-the-job observations.[41] In reality, AMc and its counsel were "curating" content with Stinchfield in April 2021, because they knew that AMc's metrics were invented "proxies;" they knew that PIP had suggested actionable metrics not used by AMc; and, they allowed Stinchfield to sign a Declaration under penalty of perjury that mentions his failure to review a digital dashboard, which AMc now claims was "lost" at the very time Stinchfield signed his "recantation" in April 2021.[42]

---

[38] *See, e.g.,* ECF 377, p.5.
[39] At a December 15, 2021 conference before Judge Toliver, AMc's counsel acknowledged the existence of unproduced and unlogged documents in response to Judge Toliver's perceptive questions. She ordered a categorical log to be produced (see ECF 430 and ECF 453, Ex. B, App. 62:1-11) which AMc supplied on January 6, 2021. The log is defective, but shows the depth and breadth of the continued non-production by AMc, whose defective description of the withholding concerning NRATV consists of the following: "NRATV."
[40] ECF 325, Ex. C, App. [156] at ¶ 5.
[41] *See e.g. Id.* at ¶ 6.
[42] Shortly thereafter AMc's expert Richard Bergin, requested access to the Dashboard and AMc denied it. ECF 344-1, Ex. A-20, Bergin Deposition, at 59:24-25; 60:1-2 App. [197-198]. Then on August 10, AMc's counsel spent seven hours deposing the NRA's expert computer scientist about the NRA Dashboard and metrics. AMc asks the Court to believe that it never occurred to it or its counsel to provide Dashboard

- ***The "brazen smokescreen":*** The Court will take particular note of the four items that AMc demeans as a smokescreen, which includes the productive weekly Status Reports ordered by the Court which outline the NRA's struggle to obtain discovery about the remaining three items AMc mentions—the NRA Dashboard, the social media accounts,[43] and privilege logs. ***Notably, although AMc asserts that the NRA's focus on the NRA Dashboard is a "smokescreen," it neglects to disclose that it served an improper Supplemental Rebuttal Expert Report of Richard Bergin[44] on the last night of the discovery period, October 29, 2021.*[45] *AMc's bad faith is shown by the fact that it gave Bergin permission to access the NRA Dashboard about which access Bergin then opines extensively, despite receiving a cease and desist letter issued by the NRA's counsel on September 3, 2021 instructing AMc not to access the NRA's computer systems.*[46]**

As the above proves, Brewer was not the "broker" of NRATV facts, but a lawyer competently representing his client. He is not a fact witness and only provided privileged legal services. As further evidence of AMc and its counsel's "curation" of this record, ***on the night of October 29, 2021***, AMc produced an email showing how it gave Cambridge Analytica "[…] all that sweet NRA data for free."[47] AMc and its counsel, not Brewer, were the repository of these key facts which they chose to conceal until discovery ended, thus "brokering" a litigation advantage for themselves that they will deploy on January 22, 2022.

### 3. North's "Investigation" as to Brewer's Fees

---

access to any witness, expert, or opposing counsel until after the August 20, 2021 Bergin deposition (when it became clear that AMc's deliberate and strategic withholding of access had backfired on it).

[43] The harm created by AMc's obdurate refusal to turn over the NRATV social media account is demonstrated in the Declaration of William McLaughlin, ECF 448-2, Ex. 20, App. [939-41].

[44] ECF 448, Ex. 39, App. [1481-1505].

[45] ***The Declaration of Grant Spofford, a Senior Program Manager at the NRA, demonstrates the bogus nature of Bergin's manufactured report.*** See ECF 448-2, Ex. 11, App. [441-49]. ***Spofford was an AMc employee before joining the NRA and content mapped the NRA Dashboard. AMc never sought to take his deposition.***

[46] ECF 365-4, Ex. C.

[47] ECF 485, Ex. 2, App. [0007].

8

As AMc admits in its Response, it wishes to use its former employee Oliver North's attempt to derail the investigation into the merits of complaints made by the CPA/whistleblowers about his conduct and that of his employer as leverage to explore virtually every argument AMc has raised. Oliver North cannot serve as a basis to depose the NRA's counsel. In violation of New York regulations for non-profits, North and AMc engaged in self-dealing with North becoming an employee of a vendor, AMc, at a multi-million dollar per year salary, plus substantial benefits, and an assistant with a six-figure per year salary. Worse yet, as the NRA pointed out in its Reply to AMc's Motion for Partial Summary Judgment, North was: ***"[...]obligated to produce twelve episodes during each of the 12 months of his Employment Agreement. The evidence shows that he only produced four (4) episodes, but AMc billed the NRA for twelve (12) episodes during the first year of the contract. Tellingly, AMc's Opposition is silent as to this evidence."***[48]  Brewer acted as a lawyer providing legal services, and as discovery has proven, oversight of the North contract and its billing was prudent representation.

    **4.**    <u>**RICO Threats and Family Relationships**</u>

There is no record of Brewer making threats of criminal investigation against AMc and the Response contains none. The Response alludes to hearsay testimony regarding what Makris and Winkler say that Brewer said,[49] of course LaPierre, Hart and Skye Brewer testified that they never attributed any such statements to Brewer. Even assuming there was any proof that Brewer said what they claim (there is not) the Response acknowledges that it does not constitute a cause of action,[50] making this topic a waste of judicial time and resources. Moreover, AMc has already

---

[48] ECF 420 at pp 21-22 (emphasis added); *id.* at 22, n. 149.
[49] ECF 488 at pp. 15-16.
[50] AMc relies on the Texas Disciplinary Rules of Professional Conduct--which do not give rise to civil causes of action. ECF 488, p. 15, n. 67.

9

deposed Brewer's wife, Skye Brewer, about RICO, as well as "familial animosity" [51] concerning the Winklers' company.[52] Her deposition is instructive as to the agenda for Brewer's deposition on the latter topic. Mrs. Brewer's deposition is disturbing with respect to its intrusive and abusive questions. The topics ranged far and wide from her mother's good looks and father's funeral, to RICO and personal questions about her relationship with her husband. The Defendants clearly want to stage another day long distracting deposition spectacle.

C.   **Judge Toliver did not Rule that the Brewer Deposition had an Unlimited Scope**

Judge Toliver did not rule, as AMc suggests, that the Brewer deposition was unlimited in scope. She noted "some" topics could be pursued. On another note, AMc's characterization of Judge Stickney's comments are not accurate. Judge Stickney's position is reflected accurately in a January 11, 2022 email that he sent to counsel.[53]

D.   **AMc's Motion to Strike is Without Merit**

The Fifth Circuit has made clear that when reviewing a Magistrate's Order *de novo*, "the district court need not reject newly-proffered evidence simply because it was not presented to the magistrate judge."[54] Because Judge Toliver's Order was contrary to established law in this Circuit, the *de novo* standard applies[55] and this Court has discretion to consider evidence which was not submitted to Judge Toliver.

### III.   CONCLUSION

The NRA respectfully requests that this Court sustain its Objections and grant the relief sought in its initial filing.

---

[51] *See* ECF 332, Ex. O-1, App. [299-230]. *See also* Furia Decl. Ex. 2, Deposition of Skye Brewer, 200:4-201:6; 230:4-10; 44:2-6; 44:13-45:22; 168:11-25 App. [077-078; 085; 038; 038-39; 069].
[52] Late **on the night of October 29, 2021**, AMc belatedly produced a report that belies its "competition narrative." AMc. ECF 477, at p. 10, n. 55.
[53] Furia Decl. Ex. 3, email from Judge Stickney to counsel dated Jan. 11, 2022 App. [095].
[54] *Freeman v. County of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998).
[55] *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 476 (N.D. Tex. 2005) ("The Court reviews the Magistrate Judge's legal conclusions de novo[].").

10

Dated: January 14, 2022          Respectfully submitted,

By:  /s/Philip J. Furia
Cecelia L. Fanelli
*Pro Hac Vice*
clf@brewerattorneys.com
Sarah B. Rogers
New York Bar No. 4755252
sbr@brewerattorneys.com
Philip J. Furia
*Pro Hac Vice*
pjf@brewerattorneys.com

**BREWER ATTORNEYS AND COUNSELORS**
1717 Main Street, Suite 5900
Dallas, Texas 75201

**ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 14th day of January 14, 2022.

/s/ Philip J. Furia
Philip J. Furia