IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, <br><br> Plaintiff and Counter-Defendant <br><br> v. <br><br> ACKERMAN MCQUEEN, INC., <br><br> Defendant and Counter-Plaintiff, <br><br> and <br><br> MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § Civil Action No. 3:19-cv-02074-G |

**PLAINTIFF NATIONAL RIFLE ASSOCIATION OF AMERICA'S
REPLY IN SUPPORT OF
<u>ITS MOTION TO STRIKE DEFENDANTS' SUMMARY JUDGMENT EVIDENCE</u>**

                                         **BREWER, ATTORNEYS & COUNSELORS**
                                         Cecelia L. Fanelli
                                         clf@brewerattorneys.com
                                         Sarah B. Rogers
                                         sbr@brewerattorneys.com
                                         Philip J. Furia
                                         pjf@brewerattorneys.com
                                         Konstantin N. Parkhomenko
                                         knp@brewerattorneys.com
                                         **BREWER ATTORNEYS AND COUNSELORS**
                                         1717 Main Street, Suite 5900
                                         Dallas, Texas 75201

                                         **ATTORNEYS FOR PLAINTIFF/COUNTER-
                                         DEFENDANT NATIONAL RIFLE
                                         ASSOCIATION OF AMERICA**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................1

    A.    The Winkler Declaration Contains Improper, Unsupported Conclusory Statements ........................................................................................................................1

    B.    The Jackson Report Is Procedurally And Substantively Deficient ..........................4

        1.    The Jackson Declaration Is Procedurally Deficient ....................................5

        2.    The Jackson Report Is Substantively Deficient ..........................................8

    C.    Other Objectionable Evidence Should Be Excluded ...............................................9

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*A-Pro Towing and Recovery, LLC v. City of Port Isabel*,
  CIVIL ACTION NO. 1:19-CV-00016, 2020 WL 4794657 (S.D. Tex. Aug. 18, 2020)..........10

*Arizpe v. Principal Life Ins. Co.*,
  398 F. Supp. 3d 27, 48 (N.D. Tex. 2019). ...............................................................................5,6

*Bolen v. Dengel*,
  340 F.3d 300 (5th Cir.2003) ....................................................................................................1,3

*Boyd v. State Farm Ins. Cos.*,
  158 F.3d 326 (5th Cir. 1998) .......................................................................................................9

*Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*,
  671 F.3d 512, 516 (5th Cir. 2012) ............................................................................................2,3

*Digital Recognition Network, Inc. v. Accurate Adjustments, Inc.*,
  No. 4:14-cv-903-A, 2016 WL 1023316 (N.D. Tex. Mar. 8, 2016) ............................................6

*DIRECTV, Inc. v. Budden*,
  420 F.3d 521 (5th Cir. 2005) .......................................................................................................5

*Everlast Construction LLC v. McDonald's USA*,
  Civil Action No. 7:19-CV-112, 2020 WL 7658077 (S.D. Tex. Nov. 13, 2020) .......................8

*Goodwin v. Johnson*,
  132 F.3d 162 (5th Cir. 1997) ....................................................................................................3,4

*Haglund v. St. Francis Episcopal Day Sch.*,
  8 F. Supp. 3d 860 (S.D. Tex. 2014) ............................................................................................4

*Hernandez v. Homesley*,
  Civil Action No.3:11-CV-01268–L, 2013 WL 124102 (N.D. Tex. Jan. 10, 2013).................10

*Highland Cap. Mgmt. L.P. v. Bank of Am., Nat. Ass'n*,

    No. 3:10-CV-1632-L, 2013 WL 4502789 (N.D. Tex. Aug. 23, 2013)......................................6

*Joseph v. Doe*,

    No. CV 17-5051, 2021 WL 2176874 (E.D. La. Mar. 23, 2021) 2020) ..................................10

*Logan v. Westfield Ins. Co.*,

    No. CV 17-29, 2020 WL 412216 (W.D. La. Jan. 24, 2020).......................................................4

*McLane Company, Inc. v. ASG Technologies Group Inc.*,

    Case No. 6:17-CV-00166-ADAJCM, 2019 WL 590081 (W.D. Tex. Jan. 2, 2019)..................8

*Michaels v. Avitech, Inc.*,

    202 F.3d 746 (5th Cir. 2000) ...................................................................................................9

*Miller v. Gaston*,

    358 Fed.Appx. 573 (5th Cir. 2009).........................................................................................10

*Nationwide Agribusiness Ins. Co. v. Deere & Co.*,

    No. 4:19-CV-00425-O, 2020 WL 9810030 (N.D. Tex. Sept. 22, 2020). .................................7

*Ningbo Bonny Decorative Material Co., Ltd. v. East Systems, Inc.*,

    No. 1:17-CV-114-DMB-DAS, 2020 WL 1333164 (N.D. Miss. Mar. 23, 2020) ......................9

*O'Malley v. U.S. Fidelity & Guar. Co.*,

    776 F.2d 494 (5th Cir. 1985) ...................................................................................................6

*Perez v. City of Austin*,

    No. A-07-CA-044 AWA, 2008 WL 2557492 (W.D. Tex. June 19, 2008)...............................6

*Perez v. Collier*,

    No. 20-20036, 2021 WL 4095263 (5th Cir. Sept. 8, 2021) ......................................................1

*Rx.com Inc. v. Hartford Fire Ins. Co.*,

    426 F. Supp. 2d 546, 554 (W.D. Tex. 2006)............................................................................9

*Sec. & Exch. Comm'n v. Lifepay Grp., LLC*,

No. CV H-18-1098, 2020 WL 1259328 (S.D. Tex. Feb. 26, 2020) .........................................9

*Three Legged Monkey, L.P. v. City of El Paso, Texas,*

No. CV-00260-FM, 2015 WL 12916324 (W.D. Tex. Aug. 10, 2015) ..................................3,5

*Travelers Cas. & Sur. Co. of Am. v. Padron,* No. 5:15-CV-200-DAE,

2019 WL 1602018 (W.D. Tex. Mar. 22, 2019) .......................................................................1

*United States v. Ebron*,

683 F.3d 105 (5th Cir. 2012) ....................................................................................................9

Velasquez v. EAN Holdings, LLC,

No. 3:17-CV-1656-BH, 2018 WL 5924037 (N.D. Tex. Nov. 13, 2018)...................................9

**Rules**

FED. R. EVID. 56 ...............................................................................................................................1

FED. R. EVID. 702...........................................................................................................................9

**Law Review Articles**

David Hittner & Lynne Liberato, *Summary Judgments in Texas State and Federal Practice*,
    46 HOUS. L. REV. 1379, 1438 (2010).......................................................................................1

I. **INTRODUCTION**

The weight of legal precedent, including precedent established by this very Court, requires that certain evidence cited in Defendants' motion for partial summary judgment be stricken as inadmissible. This Reply Brief will respond to the arguments set forth by Defendants in opposition to the NRA's motion to strike.

II. **ARGUMENT**

A. **The Winkler Declaration Contains Improper, Unsupported Conclusory Statements**

To constitute valid summary judgment proof, a supporting declaration must be made on personal knowledge, set forth facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein.[1] While being a party to a lawsuit doesn't automatically prevent one from submitting self-serving declarations,[2] such declarations must still hold some independent probative value and be based on the witness' personal knowledge as opposed to mere assumptions, speculation, and self-serving opinions.[3]

In its moving brief, the NRA argued that Mr. Winkler's declaration falls short of these requirements. While it seeks to create a veneer of probative factual testimony, an examination reveals a document rife with self-serving statements that are based on conclusory assumptions entirely lacking in support and personal knowledge.[4] For example, Mr. Winkler testifies that "AMc invoiced the NRA for work performed prior to the termination of the Services Agreement that the NRA has refused to pay," but then goes on to argue that "[a]ll of the services performed as part of

---

[1] *See generally Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003), as amended (Oct. 1, 2003); *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997).
[2] *Perez v. Collier*, No. 20-20036, 2021 WL 4095263, at *3 (5th Cir. Sept. 8, 2021); *but see Travelers Cas. & Sur. Co. of Am. v. Padron*, No. 5:15-CV-200-DAE, 2019 WL 1602018, at *6 (W.D. Tex. Mar. 22, 2019) (holding that a self-serving declaration by itself was insufficient to establish a genuine issue of fact on summary judgment).
[3] *See, e.g.*, Fed. R. Evid. 56; *Bolen*, 340 F.3d at 313 ("Rule 56(e) requires statements in affidavits to be based on personal knowledge and not based on information and belief."); *see also, e.g.*, Judge David Hittner & Lynne Liberato, *Summary Judgments in Texas: State and Federal Practice*, 46 HOUS. L. REV. 1379, 1438 (2010) ("The key is whether the affidavit clearly shows the affiant is testifying from personal knowledge.").
[4] *See, e.g.*, ECF 419-1, Ex. 35, Winkler Decl. (hereinafter "Winkler Decl.") at ¶¶ 15, 16, 26, 28, 32 [App. 2366-74].

1

the Unpaid Invoices [were] approved by the NRA pursuant to the terms of the Services Agreement."[5] This is a self-serving conclusion regarding an ultimate legal issue (the NRA "approved" the services on those invoices).[6] No explanation is provided as to how Mr. Winkler, an *AMc employee*, can possibly have the requisite personal knowledge to testify whether *the NRA* – in its internal decision-making process – "approved" of certain services performed by AMc. It is apparent that Mr. Winkler is basing his argument not on his own personal knowledge, but on his subjective *beliefs* and Defendants' interpretation of the case.

Defendants attempt to rebut this argument by citing to supposed "context" on which the witness relies to reach his self-serving conclusions.[7] The problem with Defendants' argument is that Mr. Winkler's reliance on other evidence is no substitute for having his own personal knowledge. For example, the fact that the invoices were "transmitted" or "delivered" to the NRA does not support the notion that the invoice were approved by the NRA or that AMc performed work to justify the amounts billed.  Nor does the fact that Mr. Winkler "repeatedly testified in depositions" somehow inoculate his testimony from basic evidentiary requirements such as need for personal knowledge.[8] Mr. Winkler's insistence that AMc's services were "approved . . . .pursuant to the terms of the Services Agreement" is therefore not factual testimony, but comprises Mr. Winkler's subjective interpretation that he arrived at based on naked regurgitation of AMc's legal arguments rather than through his own, first-hand knowledge. It may or may not be Mr. Winkler's subjective *belief* that the NRA "approved" those services, but a witness' belief is no

---

[5] Winkler Decl. at ¶ 16 [App. 2367].
[6] *See Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (statements of an ultimate conclusion are "not proper summary judgment evidence and must be disregarded").
[7]  *See* ECF 489, Defs.' Resp. to NRA's Objections to, & Mot. to Strike, Summ. J. Evidence at pp. 7-8: "Winkler provides context and facts supporting his knowledge elsewhere in the declaration. For example, Winkler stated that all of the Unpaid Invoices were 'transmitted' to the NRA . . . through email. Further, he explained his lack of awareness that the NRA ever challenged these invoices within the 10-day notice period . . . . Also, Winkler stated he has been AMc's CFO for thirty years and under his 'authority . . . AMc invoices are produced and delivered to the [NRA].'"
[8] *See id*. at p. 8.

2

substitute for independent personal knowledge.[9] A Declaration based on mere belief adds nothing to the case and lacks probative value. [10]

Winkler's testimony that "[a]ll of the Legal Fees submitted to the NRA were incurred as a result of the activities that AMc performed on behalf of the NRA pursuant to the Services Agreement or that were otherwise requested or approved by the NRA"[11] is equally problematic. "[T]he content of the evidence [in a summary judgment declaration] must meet evidentiary requirements."[12] It is not appropriate for a witness to simply conclude that Legal Fees were appropriate.[13] Instead, the witness must, at minimum, engage in some analysis that lays the foundation for that opinion and gives it probative value beyond mere "unsubstantiated assertions."[14] Mr. Winkler's declaration fails to do so – giving his self-serving opinion, but engaging in no analysis whatsoever pertaining to whether and how the NRA proximately caused these damages. Such testimony is of no probative value.[15]

Mr. Winkler's declaration is also problematic in that it "adopts" the Jackson Report[16] (itself inadmissible hearsay)[17] in its entirety, before presuming to then give unsupported opinion testimony referencing the subject matter of that report.[18] The court should not allow such "evidence" for two reasons. First, Mr. Winkler is not an expert witness in this case, which begs

---

[9] *See Bolen*, 340 F.3d at 313.
[10] See generally *id.*
[11] *See* Winkler Decl. at ¶ 28 [App. 2371].
[12] *See Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997) (finding that the hearsay statements in an affidavit submitted to defeat summary judgment were "incompetent summary judgment evidence").
[13] *See* Winkler Decl. at ¶ 28.
[14] *See, e.g., Three Legged Monkey, L.P. v. City of El Paso, Texas*, No. CV-00260-FM, 2015 WL 12916324, at *7 (W.D. Tex. Aug. 10, 2015) ("Thus, to the extent that Armstrong's affidavit contains unsubstantiated assertions, these will be excluded as incompetent summary judgment evidence.").
[15] See, e.g., Cutting Underwater Techs., 671 F.3d at 516.
[16] *See* Winkler Decl. at ¶ 14 [App. 2366]; *see also* ECF 489, Defs.' Resp. to NRA's Objections to, & Mot. to Strike, Summ. J. Evidence at p. 9 ("Winkler extensively reviewed all of the Jackson Report's findings and adopted those findings as his own.").
[17] *See infra* discussion in section B.
[18] *See* Winkler Decl. at ¶ 32 [App. 2374]; ECF 417, Ex. 35-H, Jackson Am. Report at ¶ 47 [APP 2451].

3

the questions: on what basis is he "adopting" the Jackson Report findings "as his own,"[19] and what is the independent evidentiary and probative value of doing so? Neither Mr. Winkler's declaration nor Defendants' response brief shed any light on these questions, and Defendants cite no supporting authority allowing for the practice of wholesale "adoption" of expert testimony by a lay witness. The Court should disallow this unfair, unduly prejudicial, and frankly unprecedented attempt to "adopt" an expert's testimony in this way.[20] Second, the so-called "adoption" of the Jackson Report doesn't excuse the content of Mr. Winkler's declaration from standard evidentiary requirements.[21] For example, Mr. Winkler argues that AMc was "forced" to abandon the leases it entered into "on behalf of the NRA"[22] – but that conclusion is not admissible evidence because it is an unsupported and improper lay opinion.[23] There was no detail provided as to the terms of the supposed leases; copies of the leases were not included with Winkler's Declaration. Winkler's naked conclusions that the leases were "for the benefit of the NRA" and that AMc had to terminate them are absolutely without support because there is no explanation for why he believes any of this to be the case.[24] Mr. Winkler's opinions are merely unsubstantiated assertions without probative value. [25]

### B.     The Jackson Report Is Procedurally And Substantively Deficient

---

[19] *See* ECF 489, Defs.' Resp. to NRA's Objections to, & Mot. to Strike, Summ. J. Evidence at p. 9.
[20] *See, e.g.*, *Logan v. Westfield Ins. Co.*, No. CV 17-29, 2020 WL 412216, at *6 (W.D. La. Jan. 24, 2020) (holding that "lay witnesses may not testify concerning any opinions based on scientific, technical, or other specialized knowledge within the scope of Rule 702") (internal citations and quotations omitted).
[21] *Cf. Goodwin*, 132 F.3d at 186.
[22] Winkler Decl., at ¶ 32 [APP 2374].
[23] *See, e.g.*, *Haglund v. St. Francis Episcopal Day Sch.*, 8 F. Supp. 3d 860, 870 (S.D. Tex. 2014) (sustaining summary judgment declaration objections based on lack of personal knowledge, lack of foundation, improper speculation, and improper lay opinion).
[24] AMc appears to argue that the basis for Mr. Winkler's conclusion is contained in Mr. Jackson's report that he incorporated by reference – but reliance on the Jackson Report is improper because Mr. Winkler's declaration must be based on Mr. Winkler's own personal knowledge – not Mr. Jackson's "expert" opinions.
[25] *See Three Legged Monkey*, 2015 WL 12916324, at *7.

The Jackson Report is flawed both procedurally and substantively. On the procedural issue, the NRA relied on the prevailing Fifth Circuit precedent and Your Honor's ruling in the analogous case of *Arizpe v. Principal Life Ins. Co.*[26] The Jackson Report is deficient because, in order for an expert report to qualify as admissible Summary Judgment evidence, it must be sworn or otherwise be accompanied by an affidavit stating – under the penalty of perjury – that the witness in fact wrote or supervised the methods behind the report, and that the contents of that report are true and correct.[27] Substantively, even if the Jackson Report were otherwise allowable as summary judgment evidence, the report would still be inadmissible because its substance is defective and fails to comport with Rule 702.

In its response, Defendants assert the following: 1) the Jackson Declaration is sufficient, 2) the Jackson Declaration is a "functional equivalent" of the Buss Declaration, 3) the report either can or has been rendered admissible, and 4) the substance of the report comports with Rule 702. These arguments are addressed below.

### 1. The Jackson Declaration Is Procedurally Deficient

It is axiomatic that an unsworn expert report does not become proper summary judgment evidence merely as a result of a declaration identifying a "true and correct copy" of such a report.[28] Defendants contend that the Jackson Declaration is sufficient to rescue the report. This is not the case. The issue here is not *just* that the Jackson Declaration provides "insufficient

---

[26] *See Arizpe v. Principal Life Ins. Co.*, 398 F. Supp. 3d 27, 48 (N.D. Tex. 2019).
[27] *See id.*; *see also, e.g., DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005) ("When confronted with an unsworn declaration, we have held that because the 'affidavit is neither sworn nor its contents stated to be true and correct nor stated under penalty of perjury,' it was not proper summary judgment evidence.").
[28] *See generally, e.g., Arizpe*, 398 F. Supp. 3d at 48; *Highland Cap. Mgmt. L.P. v. Bank of Am., Nat'l Ass'n*, No. 3:10-CV-1632-L, 2013 WL 4502789, at *6 (N.D. Tex. Aug. 23, 2013), *aff'd sub nom. Highland Cap. Mgmt., L.P. v. Bank of Am.*, N.A., 574 F. App'x 486 (5th Cir. 2014); *see also Digital Recognition Network, Inc. v. Accurate Adjustments, Inc.*, No. 4:14-cv-903-A, 2016 WL 1023316, at *4 (N.D. Tex. Mar. 8, 2016) (unsworn expert reports are not competent summary judgment evidence).

authentication;"[29] but also that the unsworn Jackson expert report constitutes inadmissible hearsay to which no exception applies.[30] A Declaration that identifies a "true and correct copy" of the report is not sufficient to fix the underlying issue – and furthermore, the Jackson Declaration is additionally objectionable to the extent it: 1) fails to specify who actually authored the expert report, 2) fails to specify that proper industry-recognized methods were used in the course of drafting the report, and 3) fails to swear or affirm under the penalty of perjury that the expert believes the <u>content</u> of the report (as opposed to the content of the declaration) is true and correct.[31] Because Jackson Declaration is facially insufficient to render the Jackson Report admissible, the entire report should be excluded.

Defendants next argue that the Jackson Declaration is a "functional equivalent" of the Buss Declaration, and therefore, it would be unfair to apply the strict formal standards for expert declarations to Defendants' witness but not the NRA's witness.[32] Defendants' argument misses the mark because they cite and compare to the wrong Buss declaration. In fact, the newest, amended incarnation of the Buss Declaration is free of formal deficiencies and is far more robust than the current Jackson Declaration.[33] The NRA welcomes the application of the same formal standards to all witnesses, but the truth is that the Jackson Declaration and Buss Declaration are not remotely comparable.

Nor can the Jackson Report – without leave of court – be rendered into an admissible form. Defendants argue that "the substance of the Jackson Report can be authenticated at trial where

---

[29] *See* ECF 489, Defs.' Resp. to NRA's Objections to, & Mot. to Strike, Summ. J. Evidence at p. 10 (Section B).
[30] *See, e.g., O'Malley v. U.S. Fidelity & Guar. Co.*, 776 F.2d 494, 500 (5th Cir. 1985) (finding that an expert report was hearsay and inadmissible); *Perez v. City of Austin*, No. A-07-CA-044 AWA, 2008 WL 2557492, at *3 (W.D. Tex. June 19, 2008) (noting that "an expert report is generally not an admissible document at trial, as it is hearsay").
[31] *See* ECF 419-1, Ex. 36, Jackson Decl. [APP 2586-87] (hereinafter "Jackson Decl.").
[32] *See* ECF 489 at p. 12, n. 35 (comparing the Buss Declaration at ECF 351, Ex. G-5 [App. 61-62] with the Jackson Declaration at ECF 419-1, Ex. 36 [App. 2586-87]).
[33] *Compare* ECF 443-3, Exhibit 35, Buss Decl. [App. 01240-42] *with* the Jackson Declaration.

6

Jackson will be available as a witness,"[34] but this doesn't rescue the Jackson Report because Defendants are currently attempting to rely on said report to obtain summary judgment before trial. At present, Mr. Jackson has not adopted the Jackson Report as his sworn testimony[35] for summary judgment purposes – therefore, his hypothetical willingness to do so later, at the trial stage, is simply irrelevant to curing the report's admissibility problem *now*. Finally, Defendants argue that the Jackson Report is admissible under the reasoning articulated in the *Nationwide Agribusiness* case;[36] however, this reliance is misplaced. The *Nationwide Agribusiness* decision cited *Arizpe* to confirm that "as a general matter, unsworn expert reports are not proper summary judgment evidence," and then pointed out that, nevertheless, "an unsworn expert report may be considered at summary judgment where the opinions therein **are otherwise adopted or reaffirmed in an admissible affidavit or deposition testimony** by the expert."[37] Neither of the two exceptions apply here. While Defendants did attempt to cure the formal deficiency of the Jackson report via affidavit – i.e., through the Jackson Declaration – the Jackson Declaration is rife with deficiencies and woefully inadequate.[38] Nor does the second exception apply here. Defendants argue that the report is admissible because "the NRA had the chance to depose Jackson following the Jackson Report,"[39] but a mere "chance" is insufficient. As the *Nationwide Agribusiness* case requires, Defendants must point to actual deposition ***testimony*** where the witness "reaffirmed*"* the substance of his expert report in a way that could replace every necessary part of a proper expert declaration or affidavit. Because they serve the same function, the same technical requirements

---

[34] *See* ECF 489, Defs.' Resp. to NRA's Objections to, & Mot. to Strike, Summ. J. Evidence at p. 11.
[35] *See* discussion *supra* B.1.
[36] *See Nationwide Agribusiness Ins. Co. v. Deere & Co.*, No. 4:19-CV-00425-O, 2020 WL 9810030, at *5, n.2 (N.D. Tex. Sept. 22, 2020).
[37] *See id.* (emphasis added).
[38] *See* discussion *supra* section B.1 (explaining that the Jackson Declaration failed to specify who wrote the report, failed to specify which methodology was used in the report, and failed to swear under the penalty of perjury that the content of the report is true and correct).
[39] *See* ECF 489, Defs.' Resp. to NRA's Objections to, & Mot. to Strike, Summ. J. Evidence at p. 11.

that apply to a legally sufficient declaration logically must also apply to the "adopting" or "reaffirming" deposition testimony: i.e., regardless of whether the party chooses to proceed via deposition testimony or affidavit, the witness must still testify that he wrote the report, that he used appropriate industry methods, and that the contents of the report are true and correct.[40] Defendants do not appear to argue that Dr. Jackson's deposition testimony was formally sufficient to achieve this purpose.[41] Moreover, Mr. Jackson is not the NRA's witness, and the burden on rendering his expert report admissible is squarely on the Defendants – the parties seeking to introduce his report into evidence.[42] Like the NRA, Defendants too had "a chance" to conduct a direct examination of Mr. Jackson and could have gone through the list of necessary questions to establish admissibility. The NRA can hardly be blamed for Defendants' failure to fully prime and authenticate their own expert's testimony.

### 2. The Jackson Report Is Substantively Deficient

The Jackson Report is also <u>substantively</u> deficient because Mr. Jackson merely added up numbers under the veneer of expertise – but without true financial analysis or understanding of what he was doing.[43] "To be competent summary judgment evidence, an expert's report must contain some 'indication of the reasoning process underlying the opinion.'"[44] The expert report

---

[40] *See supra* section B.1.

[41] Indeed, the deposition testimony cited by Defendants seems insufficient for this purpose when examined in detail. *See* ECF 422, Ex. 50, Jackson Dep. at 100:12-111:19 [App. 1500-03], 113:2-135-25 [APP 1504-09] (failing to satisfy the general declaration requirements of stating under oath that the expert wrote the report, that he used industry-accepted methodology, and that he swears the content of his report is true and correct).

[42] *See, e.g.*, *Everlast Constr. LLC v. McDonald's USA*, No. 7:19-CV-112, 2020 WL 7658077, at *2 (S.D. Tex. Nov. 13, 2020); *McLane Company, Inc. v. ASG Techs. Group Inc.*, No. 6:17-CV-00166-ADAJCM, 2019 WL 590081, at *5 (W.D. Tex. Jan. 2, 2019) ("The burden of establishing the admissibility and relevance of the expert testimony is on the party offering the testimony.").

[43] *See* Fed. R. Evid. 702 (expert opinion testimony is admissible only if it is helpful to the fact finder in understanding the evidence or determining a fact in issue).

[44] *Velasquez v. EAN Holdings, LLC*, No. 3:17-CV-1656-BH, 2018 WL 5924037, at *4 (N.D. Tex. Nov. 13, 2018); *see also Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 331 (5th Cir. 1998); *Michaels v. Avitech, Inc.*, 202 F.3d 746, 754 (5th Cir. 2000) (an expert's unjustified statement that a repair to an aircraft should take longer than 3.2 hours could not defeat summary judgment).

must have reasoning and probative value that goes beyond simple lay testimony.[45] As the *Lifepay* case makes clear, performing mere arithmetic and creating simple summary charts is not enough to qualify as financial expert witness.[46] Defendants claims that *Lifepay* and other cases cited by the NRA are inapplicable here "because the "chart" at issue there . . . did not calculate interest."[47] Defendants' narrow focus on particular mathematical operations misses the forest for the trees. Any middle school student with a calculator can "calculate interest."[48] The broader point of NRA's argument is that Mr. Jackson is unfit to give *expert* testimony in this case because he performed only simple mathematical operations without adding value to the analysis or having a true understanding of the case.[49] Because the Jackson Report lacks the indicia of the required "reasoning process," and constitutes mere summary evidence under the veneer of expert testimony, it falls short of the requirements of Rule 702.

C.   **Other Objectionable Evidence Should Be Excluded**

Lastly, the NRA reiterates the objections to deposition testimony and non-testimonial exhibits it made in its Motion to Strike.[50] Defendants have opposed the NRA's objections with their own chart detailing their responses. The NRA's reply to Defendants' opposition chart is embodied in Exhibit 1 annexed to this brief.[51]

---

[45] *See, e.g.*, *United States v. Ebron*, 683 F.3d 105, 136–37 (5th Cir. 2012) ("[L]ay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field.") (internal citations and quotations omitted).
[46] *See, e.g.*, *Sec. & Exch. Comm'n v. Lifepay Group, LLC*, No. CV H-18-1098, 2020 WL 1259328, at *6 (S.D. Tex. Feb. 26, 2020), report and recommendation adopted, No. CV H-18-1098, 2020 WL 1308202 (S.D. Tex. Mar. 16, 2020) (where the purported expert's chart consisted of performing simple calculations such as totaling deposits and withdrawals involved in the underlying transactions, she did not qualify as an expert witness."
[47] *See* ECF 489 at p.15.
[48] *See Ebron*, 683 F.3d at 136-37.
[49] *See Rx.com Inc. v. Hartford Fire Ins. Co.*, 426 F. Supp. 2d 546, 554 (W.D. Tex. 2006) (excluding testimony not helpful to the trier of fact); *see also Ningbo Bonny Decorative Material Co., Ltd. v. East Sys., Inc.*, No. 1:17-CV-114-DMB-DAS, 2020 WL 1333164, *5 (N.D. Miss. Mar. 23, 2020).
[50] *See* ECF 435 at p. 22-25; ECF 435-1.
[51] *See* the NRA's replies to Defendants' objection responses, annexed as Exhibit 1 [App.003 – App. 033].

9

Defendants oppose NRA's leading objections with respect to deponents Wilson Phillips, Steven Hart, and Oliver North on the grounds that they are NRA-friendly witnesses; however, all three witnesses are clearly not aligned with the NRA. Mr. Phillips is no longer employed by the NRA and has been accused of misusing NRA finds by the NYAG's office.[52] Mr. Hart is former counsel to the NRA board who was terminated from his position.[53] Mr. North is a well-compensated former AMc employee who is currently adverse to the NRA in litigation pending in New York.[54] In sum, because the three witnesses are not aligned with the NRA, the court should sustain the NRA's objections to leading.[55]

For these reasons, the Court should strike the inadmissible summary judgment evidence and grant the NRA such other and further relief as this Court deems just and proper.

Dated: January 24, 2022                           Respectfully submitted,

By:   /s/ Philip J. Furia
      Philip J. Furia
      *Pro Hac Vice*
      clf@brewerattorneys.com
      Sarah B. Rogers
      *Pro Hac Vice*
      sbr@brewerattorneys.com
      Philip J. Furia
      *Pro Hac Vice*
      pjf@brewerattorneys.com
      Konstantin N. Parkhomenko
      TX Bar No. 24074854
      knp@brewerattorneys.com

      **BREWER ATTORNEYS AND COUNSELORS**
      1717 Main Street, Suite 5900

---

[52] *See People of the State of New York v. The National Rifle Association of New York*, New York State Supreme Court, New York County, Index No. 451625/2020, Doc. No. 333 (Amended and Supplemental Complaint) at ¶ 230.
[53] *See, e.g.,* ECF 422, Ex. 82, Meadows Dep. at 239:7-9 [App. 2465].
[54] *See National Rifle Association v. Oliver North*, New York State Supreme Court, Albany County, Index No. 903843/2020.
[55] *See Joseph v. Doe*, No. CV 17-5051, 2021 WL 2176874, at *1 (E.D. La. Mar. 23, 2021).

Dallas, Texas 75201

**ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

11

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 24th day of January 2022.

                                          */s/ Philip J. Furia*
                                          *Philip J. Furia*