**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| **Plaintiff and Counter-Defendant** | § § | |
| **v.** | § § | |
| **ACKERMAN MCQUEEN, INC.,** | § § § | |
| **Defendant and Counter-Plaintiff,** | § § | **Civil Action No. 3:19-cv-02074-G** |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY,** | § § § § § | |
| **Defendants.** | § § § | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' OBJECTIONS TO, AND MOTION TO STRIKE THE NATIONAL RIFLE ASSOCIATION OF AMERICA'S <u>OPPOSITION SUMMARY JUDGMENT EVIDENCE</u>**

**BREWER, ATTORNEYS & COUNSELORS**
Cecelia L. Fanelli
*Pro Hac Vice*
clf@brewerattorneys.com
Sarah B. Rogers
New York Bar No. 4755252
sbr@brewerattorneys.com
Philip J. Furia
*Pro Hac Vice*
pjf@brewerattorneys.com
**Brewer Attorneys and Counselors**
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR PLAINTIFF AND COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ....................................................................................1

II. LEGAL STANDARDS ...........................................................................................2

III. ARGUMENTS AND AUTHORITIES .....................................................................3

    A.    Defendants Cannot Avoid or Exclude the NRA's Expert Reports.........................3

        1.    Jonathan Hochman, Andrew McLean, Gary Goolsby ...............................3

        2.    Brian Buss ..................................................................................................4

        3.    Matthew Klink, Autumn Krauss, and Larry Kanter ...................................6

    B.    Defendants Cannot Exclude Correspondence Constituting and Documenting the Parties' Dispute—Even If It Was Drafted by Counsel. .............7

    C.    The Media Articles Are Offered for Proper, Non-Hearsay Purposes. ....................9

    D.    Defendants' Attacks on Various Fact-Witness Testimony Also Fail. ....................9

        1.    Michael Erstling ........................................................................................9

        2.    Grant Spofford (Ex. 11) ...........................................................................10

        3.    William McLaughlin ................................................................................12

        4.    Andrew Arulanandam ..............................................................................15

        5.    John Frazer (Ex. 52) ................................................................................17

    E.    Defendants Cannot Shirk the Court's Page Limit, or Strike Competent Evidence, by Appending Additional Unsupported Objections Amid Their Sealed Exhibits .........................................................................................17

IV. CONCLUSION ......................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Advoc. Inc. v. Tarrant Cty. Hosp. Dist.*,
No. 4:01-CV-062-BE, 2001 WL 1297688 (N.D. Tex. Oct. 11, 2001) ....................................8

*Aikin v. Q-L Invs.*,
959 F.2d 521 (5th Cir. 1992) ................................................................................................2

*Brown v. JNH Invs., Inc.*,
No. 416CV00675ALMCAN, 2017 WL 3205716 (E.D. Tex. July 7, 2017)..........................13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).............................................................................................................13

*De Franceschi v. BAC Home Loans Servicing, LP*,
No. 4:09-CV-566-Y, 2011 WL 13233575 (N.D. Tex. Oct. 13, 2011) ...................................8

*Dhillon v. Does*
1-10, No. C 13-01465 SI, 2014 WL 722592 (N.D. Cal. Feb. 25, 2014)................................16

*EKF Diagnostics Inc. v. Intermountain Biomedical Servs. Inc.*,
No. 5:18-CV-195-DAE, 2018 WL 3603070 (W.D. Tex. June 18, 2018).............................16

*Esquibel v. Chase Manhattan Bank*
276 F. App'x 393, 397 (5th Cir. 2008)..................................................................................8

*Fid. & Cas. Co. of New York v. Mellon*,
No. 3:99CV1872-AH, 2000 WL 1586446 (N.D. Tex. Oct. 23, 2000)...................................8

*Garcia v. Vasilia*,
No. CV H-17-1601, 2019 WL 4105559 (S.D. Tex. Aug. 29, 2019) .....................................10

*Heinsohn v. Carabin & Shaw, P.C.*,
832 F.3d 224 (5th Cir. 2016) ...............................................................................................10

*Hous. Works, Inc. v. Turner*,
No. 00CIV.1122(LAK)(JCF), 2004 WL 2101900 (S.D.N.Y. Sept. 15, 2004),
*report and recommendation adopted as modified*, 362 F. Supp. 2d 434
(S.D.N.Y. 2005)......................................................................................................................9

*Impala Afr. Safaris, LLC v. Dallas Safari Club, Inc.*,
No. 3:13-CV-2175-G, 2014 WL 4555659 (N.D. Tex. Sept. 9, 2014)...................................18

*Jauch v. Corley*,
    830 F.2d 47 (5th Cir. 1987) ...............................................................................9

*Kie v. Williams*,
    No. 3:15CV1811, 2015 WL 4489653 (W.D. La. July 23, 2013)...............................7

*Mackey v. Owens*,
    182 F.3d 915 (5th Cir. 1999) .............................................................................13

*Meirs v. Cashman*,
    No. 1:15-CV-866, 2018 WL 9815911 (W.D. Mich. Sept. 17, 2018), *aff'd sub
    nom. Meirs v. Ottawa Cty.*, 821 F. App'x 445 (6th Cir. 2020)...............................10

*Mercy Health Servs.-Inc. v. Efstratiadis*,
    No. 21-CV-4052-CJW-KEM, 2022 WL 122926 (N.D. Iowa Jan. 12, 2022).........................16

*Miller v. Advanced Stud., Inc.*,
    635 F. Supp. 1196 (N.D. Ill. 1986) ....................................................................7

*Morgan v. Fed. Bureau of Investigation*,
    No. A-15-CA-1255-SS, 2016 WL 7443397 (W.D. Tex. May 24, 2016) ................................8

*Nat'l Architectural Prod. Co. v. Atlas-Telecom Servs.--USA, Inc.*,
    No. CIV.A. 306CV0751-G, 2007 WL 2051125 (N.D. Tex. July 13, 2007)...........................18

*Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC*,
    No. 2:08-CV-12247, 2010 WL 987772 (E.D. Mich. Mar. 12, 2010) .......................................9

*Pinckney v. Fed. Rsrv. Bank of Dallas*,
    No. SA-12-CV-00324-DAE, 2013 WL 5461873 (W.D. Tex. Sept. 30, 2013).......................17

*Matter of Placid Oil Co.*,
    932 F.2d 394 (5th Cir. 1991) .............................................................................8

*Priester v. Long Beach Mortg. Co.*,
    No. 4:16-CV-449, 2018 WL 4469679 (E.D. Tex. Sept. 18, 2018)...........................................7

*Roque v. Harvel*,
    No. 1:17-CV-932-LY-SH, 2019 WL 5265292 (W.D. Tex. Oct. 16, 2019)...............................9

*Szeinbach v. Ohio State Univ.*,
    No. 2:08-CV-822, 2014 WL 12652318 (S.D. Ohio May 27, 2014) ......................................16

*Thomason v. Aetna Life Ins. Co.*,
    9 F.3d 645 (7th Cir. 1993) .................................................................................2

*Trammell Crow Residential Co. v. Virginia Sur. Co., Inc.*,
    No. 3:08-CV-0685-B, 2009 WL 10677401 (N.D. Tex. Oct. 16, 2009)....................................3

*Travelers Ins. Co. v. Liljeberg Enters.*,
   7. F3d 1203, 1206-07 (5th Cir. 1993) ....................................................................2

*United States v. Moore*,
   748 F.2d 246 (5th Cir. 1984) ...............................................................................8

*Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.*,
   550 F. Supp. 2d 657 (W.D. Tex. 2008).................................................................8

*Watchguard Techs., Inc. v. Valentine*,
   433 F. Supp. 2d 792 (N.D. Tex. 2006) ................................................................16

*Williams v. Valdosta*,
   689 F.2d 964 (11th Cir.1983) ...............................................................................9

*Wong v. SBC Smart Yellow Pages*,
   No. CIV.A.SA03CA0772FBNN, 2005 WL 1293717 (W.D. Tex. May 31,
   2005) .....................................................................................................................2

**Rules**

Fed. R. Civ. P. 56(e) ...................................................................................................2

LOCAL RULE OF CIVIL PROCEDURE 7.2(c)........................................................17

TO THE HONORABLE A. JOE FISH:

Plaintiff/Counter-Defendant the National Rifle Association of America files this *Brief in Opposition to* Defendants' Objections To, And Motion to Strike the National Rifle Association Of America's Opposition Summary Judgment Evidence ("the Motion to Strike").

## I. PRELIMINARY STATEMENT

The Motion to Strike is impermissibly long (incorporating 42 pages of excess arguments that must be stricken),[1] yet still comes up short on the merits.  Defendants contrive attacks on the NRA's experts to deflect attention from their comparative lack of expert testimony—yet the opinions and reports furnished by Jonathan Hochman, Andrew McLean, Gary Goolsby, Matthew Klink, Autumn Krauss, and Larry Kanter are all adequately grounded.  Defendants attempt to exclude the detailed record of correspondence among the parties that documents and constitutes the contract dispute in this case (as well as subsequent, relevant discovery disputes), but their novel insistence that letters signed by lawyers cannot form part of the summary judgment record fails.[2] Defendants urge the Court to exclude media coverage that influenced the NRA's compliance concerns in 2018—and evidences the reputational harm AMc inflicted—but cannot strike articles offered for valid, non-hearsay purposes.[3]

Defendants' attacks on the NRA's fact-witness testimony fail, too.  Michael Erstling, who participated directly in the AMc annual budget process and was charged with tracking performance against the budget, identifies specific items invoiced and never delivered.[4]  Grant Spofford, who was undisputedly an AMc employee staffed on relevant projects, delivers competent and well-

---

[1] *See* discussion *infra* Section III.E.
[2] *See* discussion *infra* Section III.B.
[3] *See* discussion *infra* Section III.C.
[4] *See* discussion *infra* Section III.D.1.

founded testimony.[5]   William McLaughlin, who manages the NRA's social media accounts, is likewise fully competent to testify about the contents of those accounts, the whereabouts of their login credentials, and the impact of AMc's outrageous refusal to relinquish control of NRA-branded accounts to NRA staff.[6]   The NRA's Managing Director of Public Affairs, Andrew Arulanandam, offers valuable personal knowledge regarding the NRA's reputational interests and the impact of AMc's conduct on the same.[7]   NRA General Counsel John Frazer, who set the parameters of the FRA February 2019 record examination and participated in teleconferences and videoconferences as part of the same, can—and will—testify about AMc's obstructive behavior and failure to deliver information specifically sought.[8]

For the foregoing reasons, the Motion to Strike should be denied in its entirety.

## II. LEGAL STANDARDS

The party opposing a motion for summary judgment may file its own summary-judgment proof, such as affidavits showing there is a material fact issue preventing summary judgment.[9] Where such evidence meets with objections, the court should strike only the objectionable portions of relevant affidavits, and not strike the affidavits in their entirety.[10]   At least one court in this Circuit has held that where a fact witness attests to personal knowledge, any alleged failure "to fully articulate the basis for her personal knowledge" goes to the weight of the evidence, but does not bar its admissibility.[11]   For summary judgment purposes, courts "do[] not focus on the

---

[5] *See* discussion *infra* Section III.D.2.
[6] *See* discussion *infra* Section III.D.3.
[7] *See* discussion *infra* Section III.D.4.
[8] *See* discussion *infra* Section III.D.5.
[9] *See* Fed. R. Civ. P. 56(e); *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 646 n. 1 (7th Cir. 1993); *Travelers Ins. Co. v. Liljeberg Enters.*, 7. F.3d 1203, 1206-07 (5th Cir. 1993).
[10] *Aikin v. Q-L Invs.*, 959 F.2d 521, 530-31 (5th Cir. 1992).
[11] *Wong v. SBC Smart Yellow Pages*, No. CIV.A.SA03CA0772FBNN, 2005 WL 1293717, at *4 (W.D. Tex. May 31, 2005).

admissibility of the evidence's form, but rather on the admissibility of its contents."[12] Thus, if an out-of-court declarant "could later present th[e] same evidence through direct testimony," it is properly considered.[13]

## III. ARGUMENTS AND AUTHORITIES

### A. Defendants Cannot Avoid or Exclude the NRA's Expert Reports.

At the outset it should be noted that the arguments made by AMc regarding the untimeliness of Expert Reports are beneath serious consideration by the court in view of AMc's systematic withholding of key documents, systems and accounts. It is indisputable that after the NRA submitted it Expert Reports AMc made numerous document productions. On the night of October 1, 2021, for example, it produced more documents than it had during the entire preceding tenure of this case. Moreover, documents were produced until the night of October 29, 2021 and at the present time the NRA still does not have access to its electronic systems and accounts. The prejudice to the NRA is profound.

#### 1. Jonathan Hochman, Andrew McLean, Gary Goolsby

Defendants purportedly incorporate by reference their Motions and Supporting Briefs to Exclude the Testimony of and Opinions of Jonathan Hochman,[14] Andrew McLean,[15] and Gary Goolsby[16] into their Motion to Strike.[17] Likewise, the NRA incorporates by reference its Motions and Supporting Briefs in Opposition to these Motions: Jonathan Hochman (ECF No. 506), Andrew McLean (ECF No. 507), and Gary Goolsby (ECF No. 508).

---

[12] *Trammell Crow Residential Co. v. Virginia Sur. Co., Inc.*, No. 3:08-CV-0685-B, 2009 WL 10677401, at *1 (N.D. Tex. Oct. 16, 2009).
[13] *Id.* (internal citations and quotation marks omitted).
[14] *See* ECF Nos. 457 & 458.
[15] *See* ECF Nos. 460 & 461.
[16] *See* ECF Nos. 462 & 463.
[17] *See* ECF No. 466.

To summarize the arguments made therein, Jonathan Hochman does not propose opinions about the parties' states of mind, his harm analysis is relevant and based on recognized methodology, his supplemental report is timely, and AMc's arguments regarding exclusion of his opinions concerning the dashboard and social media, damages, and PowerPoint presentations are unavailing.[18] Andrew McLean is eminently qualified, his opinions are relevant and reliable, AMc's argument that his Supplemental Report is untimely is meritless, his opinions regarding fiduciary duties are not legal conclusions, and AMc is attempting to conceal its obstruction of information in the FRA review by attempting to exclude his Supplemental Report concerning FRA.[19] And, Gary Goolsby's methodology is well supported and reliable, his opinions do not amount to legal conclusions or infringe upon the province of the jury, he offers no opinions on Defendants' honesty and veracity, and defendants' arguments for excluding his damages opinions are unavailing.[20]

## 2.   **Brian Buss**

Brian Buss is an economist who provides a valuation opinion concerning NRATV. He concludes, among other things, that based on application of standard valuation approaches and the information available at the Report Date, the Fair Market Value of the NRA's ownership interest in NRATV at the Termination Date of the Services Agreement was $0, and the Fair Market Value of the NRA's ownership interest in NRATV at the Report Date is $0.[21] AMc's three tedious complaints about Buss are a meritless distraction as described below:

---

[18] *See generally*, ECF No. 506, Memorandum of Law in Support of NRA's Opposition to Defendant's Motion to Exclude Certain Opinions of Jonathan Hochman.

[19] *See generally*, ECF 507, Memorandum of Law in Support of NRA's Opposition to Defendant's Motion to Exclude Certain Opinions of Andrew McLean.

[20] *See generally*, ECF 508, Memorandum of Law in Support of NRA's Opposition to Defendant's Motion to Exclude Certain Opinions of Gary Goolsby.

[21] *See, e.g.* ECF 448-3, Ex. 25 at Ex. A, Amended and Updated Expert Report of Brian Buss, at p.1; 16-19 [App.01245; 01260-63].

*First*, AMc's complains about footnote 85 and the fact that it is part of a section of the Opposition dealing with "The NRA's Damages," and cites to the entirety of Buss' deposition. However, the text accompanying footnote 85 is directed to the precise subject of monetization and AMc's contrived claim that NRATV was never "set up to be a revenue generator." Individual page examples to Buss' monetization discussion in his Report are noted below.[22] Further, Buss at his deposition was questioned extensively about NRATV never being "set up as a revenue generator," and very effectively addressed that frivolous argument.[23] In any event, both his Report and deposition encapsulate this concept generally and this general citation should not result in the draconian relief of striking evidence.

*Second*, after complaining about the NRA's citation to the full deposition transcript, AMc's second argument complains about the narrowness of the citation. Page one of Buss' Report summarizes both his observations and opinions, which are based upon Valuation Presentations generated by AMc for NRA executives, which specifically address monetization, albeit in a misleading fashion. Buss addresses monetization specifically, describes AMc's presentations on the topic and notes the multiple and inconsistent data presented to the NRA executives.[24] AMc itself places monetization Valuation Presentations. Accordingly, AMc's attempt to strike this evidence is without basis – page one of Buss' Report is a summary of a Report that clearly encapsulates his work concerning monetization including as presented by AMc throughout his report.

---

[22] ECF 440, at p.11.

[23] *See, e.g.,* ECF 448-3, Ex. 34, at 39:16-23; 40:16-44:21, [App.01226]. *See also* ECF 448- , Ex. 11, Decl. Of Grant Spofford dated December 20, 2021, at § c, [App.00444-47]. In any event, AMc's latest version of its improbable non-monetization assertion is to concede that as of 2018, NRATV was intended to be a revenue generator. *See generally* ECF 448-8, Ex. 94, [App.04663-77]. One of the NRA's other experts, Andrew McLean, likewise had to endure tedious and repetitive questioning aimed at the far-fetched notion that NRATV was not set up as a revenue generator. ECF 448-3, Ex. 33, Dep. Tr. of Andrew McLean, at 290:17-294:15; 296:8-299:6, [App.01194-95, 01195-96].

[24] *See, e.g.* ECF 448-3, Ex. 35, at Ex. A, Amended and Updated Expert Report of Brian Buss, at p.1, p.12-13, p.19, [App.01245, 01256-57, 01263].

*Third*, AMc's attempt to conflate damages and valuation is unavailing. For example, The citation in footnote 193 to page 13 of Buss' report addresses the issue of the inception of NRATV in late 2016 and AMc's presentation of valuation results using inconsistent time periods, as well as the failure of the "Presentations" to provide performance data by week, month, or quarter. This citation is not an attempt to establish damages. ***It is evidence of AMc's consistent misrepresentations about valuation over time.*** The vehicle for the dissemination of those misrepresentations was the "bespoke" NRA Dashboard, which AMc represented to be a "Single Source of Truth."[25] The "Single Source of Truth" became the "Source of Multiple Untruths" in terms of valuation and monetization representations to the NRA. Buss extensively describes the flaws in what was supposed to be a dynamic reporting tool for the NRA.[26]

The technical evidence that AMc seeks to exclude is essential for the jury to hear on the issue of valuation as AMc presented it to the NRA through the Dashboard "Presentations" over the years and the extent to which the $45 million investment had any value at the Termination Date or now.

### 3.   Matthew Klink, Autumn Krauss, and Larry Kanter

The NRA did not randomly cite the declarations of "Kanter, Krause, and Kanter [sic] [Klink]" in footnote 40. Read in context, the sentence in which footnote 40 appears makes the point that AMc provided "'Vanity Metrics', designed to impress and dupe the NRA, but which lacked any real substance."

The declarations of Kanter, Krause, and Klink were cited as "see also" citations in the footnote, because those experts also opine regarding the dearth of data supporting the NRA's

---

[25] *Id.* at p.7, [App.01251].
[26] *See, e.g., id.* at p. 7-10, [App.01251-54].

defenses, as is the situation with data withheld as to claims.  *See* Kanter Decl. at e.g., ¶¶ 14, 26, 28; Kraus Decl. at e.g., ¶¶ 4, 15, 18; Klink Decl. at e.g., ¶¶ 27-28.

## B.  Defendants Cannot Exclude Correspondence Constituting and Documenting the Parties' Dispute—Even If It Was Drafted by Counsel.

Defendants surprisingly move to strike true and correct copies of correspondence between the parties, which the NRA cites for the propositions that: it requested software access codes from Defendants;[27] it requested social media passwords from Defendants, and cannot access its accounts without them;[28] it notified Defendants about information-security concerns,[29] and about its inability to access software systems until those concerns were resolved;[30] it complained during discovery that files produced from the "dashboard" were deconstructed;[31] it sent a cease-and-desist letter in September 2021;[32] and, it asked AMc to affirm that the agency was not charging the NRA more than other clients for identical work.[33]

Attempting to exclude the detailed record of the NRA's patient, repeated requests for information and access and Defendants' own refusals, Defendants cite cases where unsworn letters from counsel—often unaccompanied by any other evidence—were deemed to be insufficient substitutes for sworn declarations or affidavits.[34] But there is no authority, and no common-sense justification, for excluding *all* true and correct copies of correspondence among the parties, or their

---

[27] ECF No. 440 FN 57.

[28] ECF No. 440 FN 60.

[29] ECF No. 440 FN 62.

[30] ECF No. 440 FN 63, 271, 273.

[31] ECF No. 440 FN 78.

[32] ECF No. 440 FN 89.

[33] ECF No. 440 FN 164 and 222 (citing a letter from the NRA setting forth this request, along with a responsive letter from AMc refusing to answer the NRA's question).

[34] *See Priester v. Long Beach Mortg. Co.*, No. 4:16-CV-449, 2018 WL 4469679, at *3 (E.D. Tex. Sept. 18, 2018) (plaintiff could not avoid foreclosure on the basis of two unsworn letters from his counsel asserting that his mortgage did not comply with Texas law); *Miller v. Advanced Stud., Inc.*, 635 F. Supp. 1196, 1200 (N.D. Ill. 1986) (defendant employer could not obtain summary judgment at the motion-to-dismiss stage by proffering a letter from counsel asserting that the plaintiff was an independent contractor, rather than an employee); *Kie v. Williams*, No. 3:15CV1811, 2015 WL 4489653, at *3 (W.D. La. July 23, 2013) (on a motion to remand, unsworn emails exchanged among counsel were insufficient to establish the amount in controversy).

counsel, from the summary judgment record. Importantly, "[s]tatements which are introduced solely for the purpose of proving that they were made" are not hearsay.[35] Thus, letters exchanged among the parties are admissible, and can be indispensable, to establish matters such as: the existence of a billing dispute and the form of grievances raised therein;[36] whether a party was on notice regarding the unauthorized retention of proprietary data;[37] the fact that a cease-and-desist demand was made;[38] and, the fact that files, books, or records were requested by a party who had a putative right to view them.[39] As detailed above, letters cited by the NRA and disputed by AMc primarily chronicle the fact that the NRA made repeated requests for information and cooperation—including access to the NRA Dashboard, access to the NRA's social media accounts, and clarity about "fair market value" pricing under the Services Agreement. The letters are plainly admissible for the purpose for which the NRA offers them, and Defendants' objections should be overruled.

---

[35] *United States v. Moore*, 748 F.2d 246, 248 (5th Cir. 1984); *see also De Franceschi v. BAC Home Loans Servicing, LP*, No. 4:09-CV-566-Y, 2011 WL 13233575, at *3 (N.D. Tex. Oct. 13, 2011) ("In addition, in paragraph 10, Boyd highlights the contents of the 'breach letter' that BAC purportedly sent to Plaintiffs in January 2009. The breach letter is not hearsay because it is not being offered for its contents. It is, instead, being offered merely to show that Plaintiffs received notice of their delinquency on the mortgage loan at issue.").

[36] *See, e.g., Esquibel v. Chase Manhattan Bank* U.S.A., N.A., 276 F. App'x 393, 397 (5th Cir. 2008) (conducting detailed review of summary judgment record, which consisted of letters exchanged among creditor and bank, and affirming summary judgment under Fair Credit Billing Act).

[37] *Matter of Placid Oil Co.*, 932 F.2d 394, 400 (5th Cir. 1991).

[38] *Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 665 (W.D. Tex. 2008).

[39] *See, e.g., Morgan v. Fed. Bureau of Investigation*, No. A-15-CA-1255-SS, 2016 WL 7443397, at *1 (W.D. Tex. May 24, 2016) (granting summary judgment in FOIA case based on review of, *inter alia*, records of FOIA-request letters); *Fid. & Cas. Co. of New York v. Mellon*, No. 3:99CV1872-AH, 2000 WL 1586446, at *3 (N.D. Tex. Oct. 23, 2000) (plaintiff's written demand for his medical records); *Advoc. Inc. v. Tarrant Cty. Hosp. Dist.*, No. 4:01-CV-062-BE, 2001 WL 1297688, at *1 (N.D. Tex. Oct. 11, 2001) (granting summary judgment based on review of evidentiary record that included correspondence among plaintiff, and defendant's custodian of records, wherein plaintiff sought access to records and access was denied).

C.     **The Media Articles Are Offered for Proper, Non-Hearsay Purposes.**

Although media articles are inadmissible for the truth of the facts purportedly reported, courts routinely admit them as evidence that statements were publicly made,[40] to prove "that a controversy existed,"[41] or to show that a litigant had notice of accusations it might face.[42] Here, AMc argues that the NRA fabricated and staged its record-examination and invoice-compliance efforts in 2018 as part of an elaborate scheme to defraud and damage its erstwhile advertising agency.[43] The NRA, meanwhile, maintains that it confronted a hostile political and media environment, and thus sought to fortify itself against potential challenges to its governance.[44] Therefore, the NRA should be permitted to cite newspaper articles as evidence of the public hostility it confronted, and should be permitted to present evidence that such reports shaped its decision to seek documents from AMc. The same articles are cited as evidence of adverse media coverage that the NRA faced regarding a racist, Ku Klux Klan-themed cartoon which AMc broadcast,[45] and the NRA should likewise be permitted to cite them for this purpose.

D.     **Defendants' Attacks on Various Fact-Witness Testimony Also Fail.**

1.     **Michael Erstling**

---

[40] *See, e.g., Jauch v. Corley*, 830 F.2d 47, 52 (5th Cir. 1987) (upholding trial court's admission of newspaper article and videotape in defamation case); *Williams v. Valdosta*, 689 F.2d 964 (11th Cir.1983)(plaintiff, who alleged that he was demoted as retaliation for engaging in First Amendment activities, was properly able to admit newspaper articles that chronicled his speech and allegedly prompted retaliation).

[41] *See, e.g., Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC*, No. 2:08-CV-12247, 2010 WL 987772, at *3 (E.D. Mich. Mar. 12, 2010) (denying motion to exclude newspaper articles, to the extent the articles were offered "for purposes other than for the truth of the matter asserted, such as to prove notice, damages, or that a controversy existed."); *Hous. Works, Inc. v. Turner*, No. 00CIV.1122(LAK)(JCF), 2004 WL 2101900, at *4 (S.D.N.Y. Sept. 15, 2004), *report and recommendation adopted as modified*, 362 F. Supp. 2d 434 (S.D.N.Y. 2005) (citing *United States v. Pedroza*, 750 F.2d 187 (2d Cir.1984), for the proposition that media articles may be admitted to provide "background information pertinent to the underlying events" in the case).

[42] *See, e.g., Roque v. Harvel*, No. 1:17-CV-932-LY-SH, 2019 WL 5265292, at *10 (W.D. Tex. Oct. 16, 2019) (denying motion to exclude newspaper articles, and collecting cases where such articles were admissible to show that municipalities had notice of excessive-force complaints against police).

[43] *See* ECF No. 238-1, Counter-Plaintiff Ackerman McQueen, Inc.'s Second Amended Counterclaim, p. 2; p. 7 ¶ 12; pp. 26-31 ¶¶ 60-72.

[44] ECF No. 201-1, Plaintiff's Second Amended Complaint, pp. 3-6; pp. 30-36 ¶¶ 57-70.

[45] *See* ECF 421 (App. In Support of NRA Motion for Partial Summary Judgement), Exs. 43 – 46 [App. 01447-01461].

Defendants next seek to exclude the testimony of Michael Erstling, the NRA's Director of Budget and Financial Analysis, who participated in the annual AMc budget process,[46] reviewed AMc's billing,[47] and was responsible for measuring the actual performance during the year against the annual budget.[48]  The NRA cites Erstling's testimony for the proposition that AMc invoiced the NRA for work that was not performed.[49]  Although AMc is free to contend at trial that it actually delivered the work invoiced and budgeted-for, the NRA executive charged with tracking AMc's performance to the NRA's budget can likewise offer his personal knowledge, and assessment,[50] of whether AMc held up its end of the parties' bargain.  Mr. Erstling's assessments are especially relevant because Defendants contend that the NRA's complaints about AMc's performance under the Services Agreement, and the NRA's allegations of breach, are bad-faith contrivances driven by a family feud,[51] not organic concerns raised by NRA whistleblowers such as Mr. Erstling.  Even if Defendants dispute the veracity of Mr. Erstling's testimony about AMc's compliance with the NRA's budget and invoicing expectations, disputes about veracity are an improper basis to strike summary judgment evidence[52]—and the mere existence of Mr. Erstling's concerns discredits Defendants' deflection that the NRA's transparency and record-inspection efforts were a sham concocted to enable litigation.

## 2. Grant Spofford (Ex. 11)

---

[46] *See* ECF No. 448-1 at ¶ 4.

[47] *Id.*

[48] *Id.* ¶ 3.

[49] ECF 440 at 19 & n.138, 30 & n.218.

[50] Courts routinely admit testimony from fact witnesses regarding their relevant beliefs and perceptions—including their perceptions of whether policies they administered were followed, or whether business dealings to which they were party seemed transparent or fair. *See, e.g., Meirs v. Cashman*, No. 1:15-CV-866, 2018 WL 9815911, at *2 (W.D. Mich. Sept. 17, 2018), *aff'd sub nom. Meirs v. Ottawa Cty.*, 821 F. App'x 445 (6th Cir. 2020) (supervisor competent to offer lay opinion regarding whether employer's policies were followed); *Garcia v. Vasilia*, No. CV H-17-1601, 2019 WL 4105559, at *3 (S.D. Tex. Aug. 29, 2019) (executive could properly testify to his belief that his company's drivers were deceived).

[51] *See* ECF No. 238-1, Counter-Plaintiff Ackerman McQueen, Inc.'s Second Amended Counterclaim, p. 2; p. 7 ¶ 12; pp. 26-31 ¶¶ 60-72.

[52] *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016).

AMc urges the Court to disregard the declaration of its former employee, Grant Spofford, who attests that he was "aware that monetization was a key goal of NRATV." [53] AMc insists that Spofford, who was undisputedly employed as a digital producer at AMc until July 2019, [54] must lack personal knowledge about NRATV's objectives.   But Spofford's declaration lays ample foundation for his testimony concerning the emphasis and objectives of NRATV, especially the NRATV "dashboard," which Spofford was extensively involved in mapping, populating, [55] and attempting to monetize. [56]   Spofford spent hours each day [57] reviewing, aggregating, and reporting data "specifically to track NRATV's monetization impact in terms of renewals, gifts, joins, and donations" [58]—a project so significant that it commanded its own "dashboard" separate from the one originally created to track social media metrics. [59]   Spofford liaised directly with NRA personnel to track and report monetization-related data. [60]   Moreover, Spofford chronicles, authenticates, and attaches correspondence from other AMc personnel reflecting a consistent focus on a key NRATV priority: monetization. [61]   Indeed, Spofford was even aware of discrete dollar-amount thresholds and goals, such as the $5 million goal set for the year 2018 and reflected in contemporaneous AMc PowerPoint presentations. [62]   In light of the foregoing, Spofford is more than adequately qualified to testify about the monetization objectives of NRATV—and how AMc did, or did not, advance them.

---

[53] *See* ECF No. 466 at 16-17; *see* ECF No. 448-2, Ex. 11 at ¶ 17 [App.00445].

[54] *See* ECF No. 448-2, Ex. 11, at ¶ 1 [App.00441]; *see also* ECF No. 466 at 16-17 (failing to dispute Spofford's account of his title or any of his duties).

[55] *See* ECF No. 448-2, Ex. 11 [App.00440-617] at ¶ 7.

[56] *See id.* at ¶ 18.

[57] *See id.* at ¶ 7 (describing expenditure of time).

[58] *See id.* at ¶¶ 18-19.

[59] *See id.* at ¶ 19 (describing a unique monetization dashboard "separate from the one created by PIP").

[60] *See id.* at ¶ 22 (describing coordinating with Brenda Godstrey).

[61] *See id.* at ¶ 18 (working with digital producer Brian Darley, who "overs[aw] projects for NRATV"), ¶ 21 (correspondence with Eric Wang), ¶ 24 (correspondence among senior executives including Defendants Martin and Montgomery).

[62] *See id.* at ¶ 25.

3.     **William McLaughlin**

Defendants seek to exclude the testimony of the NRA's Digital Director, William McLaughlin ("McLaughlin"), by mischaracterizing his declaration and feigning inability to draw obvious inferences from the facts therein.

*First*, Defendants inexplicably claim that the responsibilities of a "Digital Director" do not include familiarity with social media accounts or awareness of AMc's retention of control of NRATV social media account credentials.[63] Not so, McLaughlin's main duties as Digital Director are creating content for and publishing content to NRA social media accounts and managing, monitoring, and responding to comments on social media posts.[64] McLaughlin is in charge of managing access to all of the official NRA social media accounts, including Facebook, Instagram, Twitter, and YouTube.[65] As McLaughlin has testified, it would be odd if the Digital Director of the NRA was unaware of these NRATV social media accounts.[66] Through his access to the NRA social media accounts, McLaughlin can moderate the content posted on behalf of the accounts and the comments of other users posted to the accounts.[67] The account names of each NRATV social media account are identified in McLaughlin's testimony, showing the accounts are with Twitter, Facebook, Instagram, and YouTube.[68]

*Second*, Defendants falsely claim that the NRA has not properly authenticated Exhibits A, B, and C, of McLaughlin's Declaration.[69] The documents are properly authenticated because

---

[63] *See* ECF No. 466, p. 17.
[64] *See* Declaration of Sarah B. Rogers, dated Jan. 25, 2022 ("Rogers Decl."), Ex. 2, Declaration of William McLaughlin, dated January 24, 2022, p. 1, ¶ 3 [App. 014-37]
[65] *Id.*
[66] *Id.*, at ¶ 5 [App. 016]
[67] *Id,* at ¶ 4 [App. 016].
[68] *Id.*
[69] *See* ECF No. 466, p. 17. *See also,* ECF No. 448, Ex. 20, Declaration of William McLaughlin, dated December 20, 2021, Exs. A-C [App. 00942-59].

McLaughlin attests to their authenticity in his testimony.[70] And, even if they were not, they are still proper summary judgment evidence because they can be authenticated at trial.[71] Therefore, it is irrelevant whether Exhibits A, B, and C are properly authenticated. However, Exhibits A, B, and C are properly authenticated and each contain a valid URL at the top of the page, a record of the date and time of the screenshot is located at the bottom right corner of each page, and the comments on each post contains the platform's timestamp, indicating the duration of time since the comment was first posted.[72]

Courts may consider website screenshots and printouts as summary judgment evidence, which can be authenticated by an affidavit or declaration.[73] The burden to authenticate a website screenshot or printout is not a heavy one, according to the Fifth Circuit.[74] Testimony by a person with personal knowledge that the screenshot fairly and fully captures the material offered as evidence is enough to authenticate the document.[75] McLaughlin has personal knowledge that these posts and comments exist, as he has viewed them, and authenticates the screenshots by attesting to their accuracy in his Declaration.[76]

Defendants claim that because social media platforms do not display comments in month-day-year format, and instead simply indicate the number of minutes, hours, weeks, or months the

---

[70] *See* ECF No. 448-2, Ex. 20, McLaughlin Decl., dated December 20, 2021, p. 2 ¶ 5 [App. 00940].

[71] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."); *Mackey v. Owens*, 182 F.3d 915, *1 (5th Cir. 1999) ("[T]he fact that a document is unauthenticated does not mean that it is inadmissible for purposes of summary judgment. Admissible evidence may be submitted in an inadmissible form at the summary judgment stage, although at trial such evidence must be submitted in admissible form.").

[72] *See* ECF No. 448-2, Ex. 20, McLaughlin Decl., dated December 20, 2021, Exs. A-C [App. 00942-59].

[73] *See Brown v. JNH Invs., Inc.*, No. 416CV00675ALMCAN, 2017 WL 3205716, at *2 (E.D. Tex. July 7, 2017).

[74] *See id.* (quoting *Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1027 (5th Cir. 2015)).

[75] *See id.* ("Representations by such a witness that the proffered printout fairly and fully captures the cited material (i.e., the webpage and material thereon) will suffice under this standard to establish the website's authenticity.") (citation omitted).

[76] ECF No. 448-2, Ex. 20, McLaughlin Decl., dated December 20, 2021, p. 2 ¶ 5 [App. 00940]. *See also*, Rogers Decl., Ex. 2, McLaughlin Decl., dated January 24, 2022, p. 2, ¶ 5 [App. 016].

comment has been active, that they are not timestamped and somehow misleading.[77] Social media companies such as Facebook and YouTube independently determine how to display comment timestamps. And, regardless, the timestamps are not so vague as to be misleading or fail to indicate that the comments are continuing. In fact, some of the comments captured in the screenshot were posted merely minutes before the screenshots were taken on December 16, 2021.[78] Additionally, comments on the NRATV's Facebook and Instagram accounts indicate activity during 2020 and 2021.[79]

*Third*, Defendants mischaracterize McLaughlin's testimony, alleging that he speculates about the mental state of comment posters.[80] However, the commenters specifically reference the NRA, and in some cases post comments addressed directly to the NRA.[81] McLaughlin does not need to speculate as to the mental state of these comment posters, whose comments clearly reflect their mental status.[82]

If McLaughlin had access to the NRATV social media accounts, he could, as he does with the official NRA accounts, comment back or private message these users to help clear up any confusion.[83] Instead, McLaughlin cannot address these commenters as the NRA's Digital Director, and the commenters are left with no response from an account which appears to be affiliated with and controlled by the NRA.[84]

The comments on these posts are disparaging, negative, and inflammatory.[85] McLaughlin, acting on behalf of the NRA, has no ability to control or moderate the comments made on these

---

[77] *See* ECF No. 466, p. 18.
[78] *See, e.g.*, ECF No. 448, Ex. 20, McLaughlin Decl., dated December 20, 2021, Ex. C, p. 1 [App. 00956].
[79] *See id.* at Exs. A, B [00943-54].
[80] *See* ECF No. 466, p. 18.
[81] *See* Rogers Decl., Ex. 2, McLaughlin Decl., dated January 24, 2022, p. 4, ¶¶ 10, 11 [App. 018].
[82] *Id.*
[83] *Id.* at ¶ 10 [App. 018].
[84] *Id.* at ¶ 11 [App. 018].
[85] *Id.* at ¶ 6 [App. 016].

NRATV social media posts, as he routinely does with the official NRA social media pages which he has access to.[86] The NRA suffers damage to its reputation as it continues to be forced to be affiliated with digital content which it does not want its trademark and/or brand associated.[87]

### 4.    Andrew Arulanandam

Unsurprisingly, the NRA's erstwhile public affairs agency wishes to exclude the testimony of Andrew Arulanandam, the NRA's Managing Director of Public Affairs, regarding the agency's conduct and its impact on the NRA's reputation.  Mr. Arulanandam was a contractual "designee" who directly oversaw Defendants' work;[88] moreover, in his role as Managing Director of Public Affairs, he interfaces with NRA board members[89] and major media outlets[90] to field reputational attacks and advance the NRA's reputational interests.    Defendants' objections to Mr. Arulanandam's testimony are without merit.

*First*, Defendants attack Mr. Arulanandam's testimony that AMc "orchestrated negative stories"[91] about the NRA and, similarly, that internal NRA documents were "leaked onto the Internet."[92] Contrary to Defendants' insistence that Arulanandam "cites nothing to support Arulanandam's personal knowledge for the claim that AMc 'orchestrated negative stories,'"[93] the Arulanandam Declaration cites (i) damaging media advisories transmitted by AMc to the press (which AMc does not deny authoring or disseminating),[94] and (ii) specific negative news articles that openly cite AMc or AMc employees as sources.[95]   Meanwhile, Mr. Arulanandam's factual

---

[86] *Id.* at ¶ 3 [App 015-16].
[87] *Id.* at ¶ 6, 8 [App. 016-17].
[88] *See* ECF No. 448-1, Ex. 59 at ¶ 3 [App. 01666-671].
[89] *See* ECF No. 448-1, Ex. 59 at ¶ 7 [App. 01666-671].
[90] *See* ECF No. 448-1, Ex. 59 at ¶ 11 [App. 01666-671].
[91] ECF No. 446 at 19.
[92] *See id.* at 20; *see also* ECF No. 448-1, Ex. 59 at ¶ 10 [App. 01666-671].
[93] ECF No. 466 at 19.
[94] *See* ECF No. 448-4, Ex. 59, at ¶ 12 [App.01667].
[95] *See* ECF No. 448-4, Ex. 59, at ¶ 4 [App.01671].

recitation that internal NRA materials were "leaked"—*i.e.*, published without NRA authorization—falls well within the purview of his personal knowledge as Managing Director of Public Affairs.[96]

*Second*, AMc seeks to strike Mr. Arulanandam's testimony that the NRA suffered "reputational harm" (in one instance, "significant reputational harm"), and/or that the "image of the NRA" was "materially damaged."[97] But the Arulanandam Declaration (and additional testimony submitted herewith) lays ample foundation for these statements. Mr. Arulanandam's role and expertise involve interfacing the media[98] and NRA stakeholders[99] to monitor and manage the NRA's public image.[100] Moreover, Mr. Arulanandam marshals multiple, specific examples of angry, concerned, and critical outreach from NRA board members, and from media outlets, concerning AMc's conduct and NRATV's content.[101] Courts routinely admit testimony from the subject of an article, work, or publication regarding the actual or expected impact of the publication on the subject's public image,[102] and Mr. Arulanandam's testimony about the impact of specific events and articles on the NRA's reputation is similarly admissible here.

---

[96] *See* Rogers Decl., Ex 3, Declaration of Andrew Arulanadam, dated Jan. 24, 2022 ("Arulanandam Decl."), p. 2 ¶¶ 3-4 [App. 040]
[97] ECF No. 466 at 19.
[98] *See* ECF No. 448-4, Ex. 59, at ¶ 11 [App.01670].
[99] *See* ECF No. 448-4, Ex. 59, at ¶¶ 4, 6, 7, 9 [App.01666-669].
[100] *See* Rogers Decl., Ex. 3, Arulanandam Decl., p. 2 ¶¶ 3-4 [App. 040]
[101] *See* ECF No. 448-4, Ex. 59, at ¶¶ 4, 6, 7, 9, 12 [App.01666-671].
[102] *See, e.g.*, *Watchguard Techs., Inc. v. Valentine*, 433 F. Supp. 2d 792, 794 (N.D. Tex. 2006) (hearing the testimony of the plaintiff company's Vice President of World Sales as to damages to the plaintiff's reputation and goodwill); *Dhillon v. Does* 1-10, No. C 13-01465 SI, 2014 WL 722592, at *5 (N.D. Cal. Feb. 25, 2014) (crediting testimony that plaintiff believed her headshot photo had been "tainted with a prior negative association" as a result of defendant's use); *EKF Diagnostics Inc. v. Intermountain Biomedical Servs. Inc.*, No. 5:18-CV-195-DAE, 2018 WL 3603070, at *13 (W.D. Tex. June 18, 2018) (finding persuasive the testimony of plaintiff company's General Manager regarding irreparable injury to goodwill and reputation, and loss of business because of defendant's trademark infringement); *Szeinbach v. Ohio State Univ.*, No. 2:08-CV-822, 2014 WL 12652318, at *6 (S.D. Ohio May 27, 2014) (allowing the plaintiff to testify about her personal knowledge of harm to her reputation); *Mercy Health Servs.-Inc. v. Efstratiadis*, No. 21-CV-4052-CJW-KEM, 2022 WL 122926, at *6 (N.D. Iowa Jan. 12, 2022) ("For instance, a court might properly find irreparable harm when a plaintiff's Vice President of Retail testifies that 'losing customers—and thus market share—harms [the plaintiff]'s brand, goodwill, and reputation.'") (quoting *Smithfield Packaged Meats Sales Corp. v. Dietz & Watson, Inc.*, 452 F. Supp. 3d 843, 864 (S.D. Iowa 2020).

**5.      John Frazer (Ex. 52)**

Defendants additionally move to strike the NRA's citation of John Frazer's declaration (Exhibit 52) for the proposition that AMc failed to comply with the FRA records examination.[103] Mr. Frazer, the NRA's Secretary and General Counsel, set the parameters for the FRA records examination—*i.e.*, delineated what the NRA wished to see[104]—and was uniquely situated to assess whether his own questions and concerns were satisfactorily addressed.  As additional foundation for his testimony, Mr. Frazer cites a telephone call he overheard between NRA counsel and AMc counsel,[105] along with his participation in regular "conference calls and/or Zoom sessions" during the FRA examination.[106]  It is well settled that a witness may testify to personal knowledge derived from teleconferences[107] and emails, and even from telephone calls the witness merely overheard but did not participate in.[108]  Moreover, Mr. Frazer identifies a specific document—"a seven-figure related-party contract between AMc and the NRA's then-President"—which he requested, and which AMc failed to provide for months.[109]

**E.      Defendants Cannot Shirk the Court's Page Limit, or Strike Competent Evidence, by Appending Additional Unsupported Objections Amid Their Sealed Exhibits.**

Under Local Rule 7.2(c), a brief may not exceed 25 pages.[110]  Where, as here, a movant attempts to flout the page limit by incorporating, by reference, extraneous voluminous materials,

---

[103] ECF No. 466 at 20.

[104] *See* ECF No. 410, Ex. A-16, Email from John Frazer, dated January 30, 2019 [App. 00083-87].

[105] ECF No. 448-4, Ex. 52, at ¶ 6 [App.01585-586].

[106] ECF No. 448-4, Ex. 52, at ¶ 8 [App.01586].

[107] *See, e.g.*, *Pinckney v. Fed. Rsrv. Bank of Dallas*, No. SA-12-CV-00324-DAE,  2013 WL 5461873, at *2 (W.D. Tex. Sept. 30, 2013) (overruling  hearsay and lack-of-foundation objections, where witness "was describing his perception of the substance of [a] telephone conversation" and another witness overheard him).

[108] *See, e.g.*, *id.* ("Moreover, Tannen laid a sufficient foundation of personal knowledge because he lived with Pinckney and testified to overhearing the telephone conversation.").

[109] ECF No. 448-4, Ex. 52, at ¶ 8 [App.01586-587].

[110] *See* LOCAL  RULE  OF  CIVIL PROCEDURE  7.2(c).

such materials are properly excluded from consideration.[111]   After setting forth particularized (albeit failed) objections to the discrete items briefed above, Defendants' Motion appends a conclusory, catch-all paragraph insisting that "[n]umerous [o]ther" documents and testimony, listed in a 42-page exhibit, are inadmissible and must be stricken.[112] Nonetheless, while maintaining that AMc's additional ***42 pages of arguments appended to a 25-page brief*** should be stricken and reserving related rights, the NRA sets forth its response to each item in **Appendix 1** hereto.[113]

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Motion to Strike should be denied in its entirety.

Dated: January 24, 2022                     Respectfully submitted,

                                            **BREWER, ATTORNEYS & COUNSELORS**

                          By:   */s/ Sarah B. Rogers*
                                Cecelia L. Fanelli
                                *Pro Hac Vice*
                                clf@brewerattorneys.com
                                Sarah B. Rogers
                                New York Bar No. 4755252
                                sbr@brewerattorneys.com

---

[111] *See, e.g., Impala Afr. Safaris, LLC v. Dallas Safari Club, Inc.*, No. 3:13-CV-2175-G, 2014 WL 4555659, at *2 (N.D. Tex. Sept. 9, 2014) ("Plaintiffs' brief is already at the maximum 25 pages without the incorporated paragraphs . . . Incorporating additional 110 paragraphs from Plaintiffs' other briefs would unnecessarily lengthen the brief far beyond the limit."), *citing Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir.1993) ( "[Plaintiff's] incorporation of arguments from other pleadings would lengthen a brief already at the 50–page limit. Therefore, only the issues presented and argued in the brief are addressed."); *Nat'l Architectural Prod. Co. v. Atlas-Telecom Servs.--USA, Inc.*, No. CIV.A. 306CV0751-G, 2007 WL 2051125, at *3 (N.D. Tex. July 13, 2007) ("Because defense counsel has exceeded the page limit for reply briefs without leave to do so, the court will consider only the information included in the first 10 pages of the respective replies").

[112] ECF No. 466 at 21.

[113] Appendix 1 is attached as NRA's *Motion for Leave to File Under Seal Appendix in Opposition to Defendants' Motion to Strike Opposition Summary Judgment Evidence*, that is being filed simultaneously with this Opposition and supporting Memorandum of Law.

Philip J. Furia
*Pro Hac Vice*
pjf@brewerattorneys.com
**Brewer Attorneys and Counselors**
1717 Main Street, Suite 5900

**ATTORNEYS FOR PLAINTIFF AND COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 24th day of January 2022.

/s/ Sarah B. Rogers