# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § | |
| **Plaintiff and Counter-Defendant** | § § | |
| v. | § § | |
| ACKERMAN MCQUEEN, INC., | § § § | |
| **Defendant and Counter-Plaintiff,** | § § | **Civil Action No. 3:19-cv-02074-G** |
| and | § § | |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY, | § § § § § | |
| **Defendants.** | § § | |

## PLAINTIFF NATIONAL RIFLE ASSOCIATION OF AMERICA'S OBJECTIONS TO DEFENDANTS' SUPPLEMENTAL CATEGORICAL PRIVILEGE LOG

**BREWER, ATTORNEYS & COUNSELORS**
Cecelia L. Fanelli
clf@brewerattorneys.com
Sarah B. Rogers
sbr@brewerattorneys.com
Philip J. Furia
pjf@brewerattorneys.com
**BREWER ATTORNEYS AND COUNSELORS**
1717 Main Street, Suite 5900
Dallas, Texas 75201

**ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND .........................................................................................2

      1.    Procedural background: AMc's flagrant violation of document production and logging requirements ...........................................................2

      2.    AMc's continuing withholding of directly relevant information.................4

      3.    The defective categorical log served on January 6, 2022 (the "Categorical Log")......................................................................................8

      4.    The Categorical Log raises the applicability of the crime/fraud waiver to AMc's malfeasance...................................................................10

III. ARGUMENT................................................................................................................14

    A.    Defendants have failed to make a prima facie showing that any of the documents on its Categorical Log are Privileged ..................................14

    B.    The Categorical Log violates the Court's Order and Applicable Rules. ..............15

    C.    Defendants' continued failure to produce a rules-compliant privilege log warrants a finding of waiver. ...............................................................17

    D.    Alternatively, Defendants should be ordered to produce a rules-compliant privilege log and produce certain documents which are clearly not protected by the attorney-client privilege. ...........................................................18

      1.    A document-by-document log is appropriate in this case..........................18

      2.    Certain documents referenced in the Categorical Privilege Log are not privileged and must be produced. .......................................................19

          a.    Communications with Dycio & Biggs ...........................................19

          b.    Entries concerning NRATV...........................................................20

IV. CONCLUSION.............................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bobo v. Frost, PLLC*,
No. 1:17-CV-227-HSO-JCG, 2019 WL 5685692 (S.D. Miss. Sept. 11, 2019)......................15

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*,
408 F.3d 1142 (9th Cir. 2005) ..........................................................................................16

*C.T. v. Liberal School District*,
2008 WL 217203 (D.Kan.2008) ........................................................................................16

*Climb Tech, LLC v. Verble*,
No. A-05-CA-864 LY, 2008 WL 11334947 (W.D. Tex. Nov. 12, 2008) .............................13

*E.E.O.C. v. Parker Drilling Co.*,
No. 3:13-CV-00181-SLG, 2014 WL 5410661 (D. Alaska Oct. 22, 2014)...........................16

*First Horizon Nat'l Corp. v. Houston Cas. Co.*,
No. 2:15-CV-2235-SHL-DKV, 2016 WL 5867268 (W.D. Tenn. Oct. 5, 2016)...................18

*Franco-Gonzalez v. Holder*,
No. CV 10-2211-DMG DTBX , 2013 WL 8116823 (C.D. Cal. May 3, 2013).....................14

*In re Guar. Ins. Servs., Inc.*,
343 S.W.3d 130 (Tex. 2011)..............................................................................................11

*Hirsch v. USHealth Advisors, LLC*,
No. 4:18-CV-245-P, 2020 WL 1271588 (N.D. Tex. Feb. 14, 2020), aff'd, No.
4:18-CV-00245-P, 2020 WL 1271374 (N.D. Tex. Mar. 12, 2020) ........................................15

*Imperati v. Semple*,
No. 3:18-CV-01847 (RNC), 2020 WL 4013304 (D. Conn. July 16, 2020) ...........................16

*Jolivet v. Compass Grp. USA, Inc.*,
No. 3:19-CV-2096-B, 2021 WL 5176930 (N.D. Tex. Sept. 14, 2021) ...................................13

*Madrigal v. Kleberg Cty.*,
No. 2:15-CV-345, 2016 WL 3346522 (S.D. Tex. June 15, 2016)..........................................16

*Manufacturers Collection Co., LLC v. Precision Airmotive*,
LLC, No. 3:12-CV-853-L, 2014 WL 2558888 (N.D. Tex. June 6, 2014)........................15, 17

*Nance v. Thompson Medical Co.*,
173 F.R.D. 178 (E.D. Tex. 1997)........................................................................................16

ii

*Positive Software Solutions, Inc. v. New Century Mortgage Corp.*,
   2004 WL 7329341 (N.D. Tex. Mar. 3, 2004) ...................................................................11, 18

*Rambus, Inc. v. Infineon Techs. AG*,
   220 F.R.D. 264 (E.D. Va. 2004) ...................................................................................18

*Rd. King Dev., Inc. v. JTH Tax LLC*,
   540 F. Supp. 3d 554, 559 (E.D. Va. 2021) ...................................................................11

*In re Reeder*,
   515 S.W.3d 344 (Tex. App. 2016).................................................................................11

*RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*,
   489 F. Supp. 3d 907, 916 (W.D. Mo. 2020) ...................................................................16

*Sevachko v. Commonwealth*,
   35 Va. App. 346 (2001) ...................................................................................18

*Sunbeam Prod., Inc. v. Hamilton Beach Brands, Inc.*,
   727 F. Supp. 2d 469 (E.D. Va. 2010) ...................................................................11

*United States v. Edwards*,
   303 F.3d 606 (5th Cir.2002) ...................................................................................11, 18

*United States v. Hoback*,
   No. 7:17-CR-00066, 2018 WL 3639835 (W.D. Va. July 31, 2018).......................................11

*United States v. Zolin*,
   491 U.S. 554 (1989).................................................................................18

*Vilcheck v. NFP Corp.*,
   No. 6:15-CV-03997-TMC, 2017 WL 11309769 (D.S.C. Mar. 1, 2017) ................................16

**Other Authorities**

FED. R. CIV. P. 26.................................................................................15

FED. R. CIV. P.  37(b)(2) ...................................................................................15

# I.

## INTRODUCTION

Plaintiff the National Rifle Association of America (the "NRA"), files these Objections concerning the Categorical Privilege Log served by Defendants on January 6, 2022.[1]   The Categorical Privilege Log was served in response to Plaintiff's Motion to Compel,[2] and the resulting Order issued by Magistrate Judge Toliver, dated December 16, 2021 [Doc. No. 430] (the "Order").[3] After concealing documents for more than two years that were directly responsive to the NRA's discovery requests—and only after being ordered to do so—Defendants served a purported categorical log (the "Categorical Log") that violates both the formal requirements and substantive purpose of privilege logs in the Fifth Circuit.

The NRA set forth, in detail, AMc's timeline of obstruction with respect to the privilege logs.[4]  Privileges asserted are now waived, and responsive documents withheld by Defendants for the period from April 12, 2019 to present must be produced forthwith. Also, Defendants' selective logging of documents prior to January 2018 consist of one entry from September 6, 2017 to November 17, 2017. This artfully selective logging allows AMc to obliterate from the record all documents that both parties put at issue in this case. If the Court declines to find a global waiver of privilege for documents concealed to date and still not properly logged, then the NRA alternatively requests that specific subcategories of documents from the Categorical Log— for which privilege claims are particularly untenable, and scrutiny particularly important—be produced immediately, logged in detail, and/or subjected to *in camera* review.  Certain of these

---

[1] *See* Supplemental Categorical Privilege Log (the "Categorical Log"), ECF No. 487.
[2] *See* Plaintiff's Motion to Compel Documents Withheld Under Deficient Claims of Privilege, ECF No. 395 (the "Motion").
[3] *See* ECF No. 430, Electronic Order Dated December 16, 2021 (the "Order"). The Order was issued one day after oral argument was held concerning the motion to compel.  A transcript of the Oral Argument, which occurred on December 15, 2021 (the "Transcript"), is located at ECF No. 453, Ex. B [App. 005-94].
[4] See ECF 427, pp. 3-9.

1

categories are set forth in a letter, dated January 13, 2022, to AMc's counsel.[5] That letter emphasized that it was not an exhaustive list of every deficiency because the obscure nature of the log renders it virtually impossible to identify what is missing. Indeed, the log appears deliberately designed to prejudice the NRA's ability to assess the number and content of documents being withheld.

For all the reasons set forth below, the Defendants have waived the attorney-client privilege and should be compelled to produce long concealed documents, or at a minimum, a legally-sufficient log.

## II.

## FACTUAL BACKGROUND

### 1. Procedural background: AMc's flagrant violation of document production and logging requirements

As set forth at length in the NRA's motion to compel, with respect to the certain documents withheld under deficient claims of privilege,[6] the record demonstrably establishes that AMc has withheld relevant, essential documents concerning key issues. Worse yet, it has not even logged those documents.[7] The NRA's longstanding pursuit of logs resulted in a letter sent by AMc's lead trial counsel on September 10, 2021, in which he stated that AMc was going to "determine whether any supplemental modification to the privilege log or production of documents is necessary or appropriate."[8] On September 16, 2021, counsel appeared before the Court at a status conference. At that time, the NRA's counsel noted that there appeared to exist a "pattern of nondisclosure"[9] In response, Defendants' lead counsel at the hearing, Brian E. Mason, did not dispute the substance

---

[5] *See* Rogers Decl., Ex. 6, Letter from P. Furia to B. Mason dated January 13, 2022 [App. 0097-101].
[6] *See* ECF 427.
[7] *Id.*
[8] See Rogers Decl., Ex. 10, Letter from B. Mason to J. Clouser dated September 10, 2021 [App. 0117-19].
[9] ECF 427, FN 22.

of the NRA's counsel's statements. Instead, he stated that "we're going back and looking at those issues[…]"[10] Despite this express representation to the Court, it was not until a month later that on October 22, 2021 that Defendants produced their second amended privilege log.

Defendants have attempted to explain their delay by blaming a vendor. However, Defendants' counsel never advised the NRA's counsel or the Court of the alleged "vendor issue," which was perfunctorily and belatedly revealed only in response to the NRA's motion to compel, and then without elaboration or evidentiary support.

Notably, when the Honorable Judge Fish extended the discovery deadline to October 29, 2021, he required the parties to each submit weekly reports concerning the status of discovery. After discovering the unlogged documents on October 13, 2021, Defendants submitted three status reports to the Court and never once disclosed the fact it had failed to timely produce or log 1,620 supposedly privileged documents. The information provided by Defendants to the Court was deliberately misleading and designed to deceive both the Court and the NRA. For example, on October 15, 2021 – two days after allegedly learning that it had failed to log 1,620 documents – Defendants submitted a status report to the Court which advised only that "AMc intends to produce this final amended privilege log early next week and hopes that it will resolve the concerns the NRA has raised without court intervention."[11] The following week, on the same night Defendants produced its Second Amended Privilege Log with 1,620 new entries, it advised the Court in a status report that "AMc produced its final amended privilege log on October 22, 2021 and anticipates that it will resolve the concerns the NRA has raised without the need for court intervention."[12] Thus, Defendants' self-serving report expressed an increased degree of certainty

---

[10] *See* ECF 427, FN 23.
[11] *See* ECF 427, FN 31.
[12] *See* ECF 427, FN 32.

that its new privilege log – which contained 1,620 new entries – would "resolve the concerns of the NRA" and avoid court intervention. Their final report to the Court, on October 29, 2021, did not mention the privilege log at all, as they were apparently content that they had erected a façade of compliance that covered up its failure to log withheld documents that coincidently relate to key matters at issue here.

On December 15, 2021, the parties appeared before Judge Toliver for oral argument concerning several discovery matters, including Plaintiff's motion to compel. The Court concluded that Defendants' excuses for failing to produce a privilege log concerning documents outside their narrow chosen date range "f[ell] flat," and ordered one to be furnished.[13] On December 16, 2021, this direction was memorialized in an electronic Order requiring Defendants to produce a privilege log for "all post-April 2019 and pre-2018 documents withheld."[14]

As a continuing part of its nondisclosure, AMc produced a defective, categorical log on January 6, 2022. Efforts to resolve the issue have failed. Indeed, AMc's bad faith is underscored by the recent, false assertion of AMc's counsel that the "NRA failed to even raise the issue [of the logs] until October 2021, right before the extended discovery deadline."[15]

### 2.    AMc's continuing withholding of directly relevant information.

In late 2017, as the NRA confronted scrutiny from New York's insurance regulator,[16] it received a warning that it could soon face additional, partisan investigations and attacks in its domicile state.[17]  In order to assist it in connection with those matters, the NRA retained Morgan,

---

[13] *See* ECF No. 453, Ex. B, the Transcript, at 53:18-54:2 [App. 056-59].
[14] *See* the Order.
[15] See Rogers Decl., Ex. 8, Letter from B. Mason to P. Furia, dated January 21, 2022 [App. 0108-111].
[16] *See* ECF No. 421, Ex. 6, David Cole, *New York State Can't Be Allowed to Stifle the NRA's Political Speech*, ACLU (August 24, 2018), https://www.aclu.org/blog/free-speech/new-york-state-cant-be-allowed-stifle-nras-political-speech [App. 00091-96].
[17] ECF No. 421, Ex. 7, Declaration of John C. Frazer in support of NRA's Opposition to Defendants' Motion for Partial Summary Judgment, dated September 1, 2021, Ex. 7, at ¶ 4. [App. 00099].

4

Lewis & Bockius, LLP, and later, Brewer, Attorneys & Counselors ("BAC").[18]   During the summer of 2018, the NRA examined and strengthened its controls procedures to fortify itself against investigations and litigation from regulators, developing a new compliance training regimen that included an emphasis on vendor oversight.[19]   Witnessing these efforts, multiple employee whistleblowers came forward with concerns about vendors—especially AMc.[20]   In response the Audit Committee of the NRA Board of Directors "ordered deeper scrutiny of AMc,"[21] along with other vendors of interest.

In furtherance of the Audit Committee's concerns, the NRA in August 2018 sought to exercise its rights under the record-examination clause of the parties' Services Agreement.[22]   At the same time, the NRA acted to protect its interests in intersecting legal and regulatory matters— including a lawsuit against its insurance broker, Lockton, and an investigation by the New York State Department of Financial Services ("DFS"), regarding a concealed-carry membership program known as Carry Guard for which AMc had issued millions of dollars in invoices.[23]   Other counsel remained involved alongside BAC and Morgan Lewis.   For example, the Virginia firm of Dycio & Biggs LLP ("Dycio"), which had historically represented both the NRA and its Executive Vice President, Wayne LaPierre, worked consistently on the Lockton matter in September 2018[24] and attended a closed executive session of the NRA Board of Directors on September 8, 2018,[25]

---

[18] *See* ECF No. 422, Ex. 87, Deposition of John Frazer, dated March 18, 2021, at 158:3-16, 167:14-21 [App. 02948, 02950].

[19] *See* ECF No. 422 at 85:8-91:14 [App. 00148-14] (discussing compliance and governance refresher seminar).

[20] ECF 422, Ex. 8, Declaration of Michael Erstling, dated April 29, 2020, at ¶ 8. [App. 00105].

[21] *See* ECF No. 22, Declaration of Charles Cotton in Support of the NRA's Opposition to Defendants' Motion for Partial Summary Judgment, at ¶ 5 [App. FUS0292].

[22] ECF 422, Ex. 55, Letter from Wilson H. Phillips Jr. to Bill Winkler, dated August 08, 2018 (NRA-AMc-00068307), at 1. [App. 01659].

[23] ECF No. 422, Ex. 13, Deposition transcript of Susan Dillon, dated July 28, 2021, at 97:18-99:06. [App. 00151].

[24] *See* Rogers Decl., Ex. 1, Dycio & Biggs Invoice, dated Oct. 8, 2018 [App. 0006-8].

[25] *See* Rogers Decl., Ex. 1, Dycio & Biggs Invoice, dated Oct. 8, 2018 [App. 0006-8].

where BAC provided legal advice regarding the Lockton and DFS matters—as well as vendor oversight, compliance and transparency matters.[26]

Shortly after the September board meeting, the NRA conducted its first (attempted) examination of AMc's files, books, and records. AMc's Second Amended Privileged log, produced on October 22, 2021, added literally hundreds of entries for previously unlogged documents showing AMc's orchestration of the "audits" requested by the NRA. AMc was represented by multiple Dorsey lawyers engaged to render advice about the "audits."

A cursory review of the Second Amended Privilege Log demonstrates those facts. For example, privilege log entry numbers 1593, 1596, 1597, 1598, 1599, 1600, 1601, 1612, 1613, 1614, 1616, 1618, and 1622 between AMc and counsel, dated January 16, 2019 through January 22, 2019, describe "…legal advice regarding audit timing and procedure," in the period leading up to a review by FRA, a forensic accounting firm hired to complete the examination. Further, log entry numbers 1662 and 1673 dated January 30, 2019 through February 4, 2019 describe "…legal advice regarding audit scope and procedure." On February 5, 2019, the FRA review began. It continued for eight days in February: 6, 7, 12, 13, 14, 15, 19, and 21. The Second Amended Privilege Log is replete with an avalanche of references to "audit protocol" and "information requests from FRA" during this time period.[27]

Throughout the fall of 2018 and into the early winter of 2019, AMc obstructed the books and records review. Indeed, its recalcitrance caused J. Steven Hart ("Hart"), the NRA's now former outside general counsel, to attempt to reason with AMc's recalcitrant behavior. As AMc and its counsel began to obstruct examinations, Hart advises them that it is not the NRA's attorneys, but the "audit committee" that wants a review and that ***"we will improve practices going forward with***

---

[26] See Rogers Decl. at ¶ 7.
[27] *See* ECF 403, FN 128.

*no exceptions. This self correction is critical […] Repeat to yourself-self correction.*"[28]
(emphasis added). On October 8, 2018, he informs AMc that the past practices to which AMc
refers as a basis to refuse to respond to the NRA's requests, as set forth in BAC's correspondence,
are beside the point, noting: **"You make me laugh. Well said — 38 years of historical practice
could be a nice target for a NYAG."**[29] (emphasis added). Hart's email underscores the
malfeasance of AMc's conduct in connection with the FRA review. Both it and its counsel were
on notice that reviews were part of an Audit Committee mandate and a necessity because of the
threat that the NRA faced from New York regulators.[30]

Having exhausted its efforts to obtain compliance from AMc over the preceding eight
months, the NRA filed a narrow action for specific performance in Virginia state court to enforce
its books-and-records inspection right.[31]   In response*, **Dycio switched sides and purported to
represent AMc in its litigation against the NRA**—an ethics violation so obvious that Dycio
withdrew on April 22, 2019, after it was raised.[32]  In the days before his withdrawal, Dycio had
been publicly involved at the preliminary stages of the parties' Virginia record-inspection
litigation; the NRA knew, for example, that he had disseminated document-preservation notices.[33]
What the NRA did not know, and what the January 6, 2022 categorical log now reveals, was that
Dycio also worked directly with Dorsey surrounding the events at the crux of the parties' dispute
here—such as the "April 22, 2019 Winkler letters" that set off the sequence of events characterized
by the NRA as an extortion-and-coup attempt (a characterization which AMc, in turn, calls

---

[28] *See* ECF 403, FN 121.
[29] *Id.*, FN 122.
[30] *Id.*, FN 123.
[31] *See* Case No. 2019-17571 (Fairfax Cir. Ct.).
[32] Rogers Decl. Ex. 2, Email chain between W. LaPierre and M. Dycio, dated April 22, 2019 (withdrawing Dycio from representation) [App. 0009-13].
[33] *See, e.g.*, Rogers Decl. Ex. 3, Letters from M. Dycio regarding Document Preservation, dated April 16 & 17, 2019 [App. 0014-26].

defamatory). [34]

Obviously, Defendants and Dorsey knew that their email communications about these events existed, and were responsive to the NRA's discovery requests. They failed to produce *or even log* the documents, inferably due to the damning implications of logging communications with a side-switching NRA lawyer, concerning ***eleven*** issues concerning an array of disputes. Those disputes are outlined in a letter from NRA's counsel to AMc's counsel on January 28, 2022.[35]

**3.      The defective categorical log served on January 6, 2022 (the "Categorical Log").**

On January 6, 2022, Defendants served a purported Categorical Log that largely omits pre-2018 documents and instead begins on the date the parties commenced the preceding Virginia litigation: April 12, 2018.[36]  Rather than enable an assessment of each claimed privilege, the Categorical Log appears designed to obfuscate one.  It combines communications over months-long periods among dozens of parties on a dizzying assortment of overlapping topics, with no apparent logical criteria distinguishing the logged categories from one another.  For example, a single illustrative "category" on the Categorical Log is as follows:

---

[34] *See* ECF No. 487, the Categorical Log, at categories 11-14 (purporting to withhold communications with Dycio & Biggs LLP. Dycio undisputedly represented Wayne LaPierre, and the Dycio firm has been sued by the NRA for breach of fiduciary duty.); Rogers Decl., Ex. 4, The NRA's First Amended Complaint, NRA v. Law Offices of Mark P. Dycio, P.C., No. 17571, In the Circuit Court of the County of Fairfax (Va. Cir. Ct. May 8, 2020) [App. 0027-50].
[35] *See* Rogers Decl., Ex. 9, Letter from C. Fanelli to B. Mason, dated Jan. 28, 2022 [App. 0112-16].
[36] *See* ECF No. 487, the Categorical Log.

Ackerman McQueen's Supplemental Categorical Privilege Log
January 6, 2022

| No. | Type of Document(s) | Privilege Description | Date Range of Document | Author, Addressee, Recipient | Privilege Asserted |
|---|---|---|---|---|---|
| 1 | Emails and attachments, including Microsoft Word, Microsoft Excel, and Portable Document Format attachments; Microsoft Word documents; Microsoft Excel documents; and handwritten notes prepared by counsel | Confidential communications between AMc employees and counsel at Dorsey & Whitney LLP, Schertler & Onorato, LLP, and McDermott Will & Emery for purposes of obtaining legal advice and case strategies after the commencement of litigation regarding the claims and defenses for the four lawsuits filed by the NRA against AMc in Virginia and Texas beginning on April 12, 2019 and AMc's affirmative claims in the same lawsuits, the forwarding of confidential communications by AMc employees with counsel to other AMc employees for purpose of same, and work product in furtherance of the rendition of legal advice and services regarding same. This includes but is not limited to issues regarding: Services Agreement; documentation relating to AMc's work for the NRA; Wayne LaPierre's involvement and direction in to the NRA's relationship with AMc; lack of fiduciary relationship between the NRA and AMc; AMc's prior clients; NRATV; American Heroes; April 22, 2019 Winkler letters; NRA's allegations of leaks; Oliver North; Life of Duty; billing and invoicing; time records; special assignments other projects; budgeting; media placement; Carry Guard; Steve Hart; Susan LaPierre's makeup; out of pocket expenses; Youth For Tomorrow; and government and regulatory investigations into the NRA. | April 22, 2019 - November 7, 2019 | **Ackerman McQueen** Angus McQueen; Revan McQueen; Bill Winkler; Brandon Winkler; Melanie Montgomery; Lacey (Duffy) Cresmer; Henry Martin; Tony Makris; Nader Tavangar; Ariana Azimi; Katie McQueen; Jesse Greenberg; Mike Demastis; Eric Van Horn; Jason Peek; Brian Darley; Peter Farrell; Mark Ackerman; Kurt Atterbury; Edward Martin; Bill Powers; Ashley Heckler Wilson; Kelsey Lipe; Harley Holman  **Dorsey & Whitney LLP** Mike Gruber; Brian Mason; Jey Madrid; Brian Vanderwoude; Gina Betts; Kelsey Taylor; Christina Carroll; Ron Miller; Doug Lang  **Schertler & Onorato, LLP** Dave Schertler; Dave Dickieson; Joseph Gonzalez; Paola Pinto; Danny Onorato; Penny Frye; Lisa Schertler; Stuart Sears  **McDermott Will & Emery** Steve Ryan; Todd Harrison; Joseph Evans; Jeremy White; Brian Mead; Cheryl Jordan | Attorney-Client; Work Product |

The Categorical Log fails to specify the number of documents contained in each privilege description raising the specter of thousands of withheld documents, first identified on the eve of trial. The Categorical Log is an assortment of repetitive, rote, non-descriptive topics that do not appear in chronological order or in any other recognizable order. There are also unexplained, inconsistent date gaps. The Categorical Log also purports to identify the individuals to each massive category of privilege description, but it appears that the listed attorneys in each category may not appear on all of the emails contained in the privilege description which may be exchanged only among individuals at AMc.[37] The Categorical Log fails to specify the number of documents in each category.

On January 13, 2022, the NRA raised the Categorical Log deficiencies, demanded that logging and production deficiencies be remedied by Defendants via a meet-and-confer letter.[38] The letter also expressly noted that the list of deficiencies was non-exhaustive.

On January 21, 2022, the parties held a meet-and-confer teleconference regarding the NRA's concerns. During the teleconference, Defendants refused to remedy their Categorical Log and could not even answer whether they had withheld ***more than ten documents, or more than ten thousand.***[39] Defendants were unable to answer whether responsive communications between

---

[37] *See, e.g.*, ECF No. 487, the Categorical Log, at Category 1, "Privilege Description" (admitting that Category 1 includes internal email forwards among AMc employees) [PageID 53442].

[38] *See* Rogers Decl., Ex. 6, Letter from P. Furia to B. Mason dated January 13, 2022 [App. 0097-101].

[39] *See* Rogers Decl., p. 4 ¶ 15.

counsel of record in this case (Dorsey) and the NRA's side-switching former lawyer (Dycio) were comprehensively entered onto the Categorical Log.[40]  With respect to documents vintaged pre-2018, which they had also been ordered to log, Defendants stated that they had logged the sole document from this timeframe withheld under a claim of privilege, but did not know which categories of pre-2018 documents requested by the NRA were actually reviewed or treated as responsive.  In other words, it is possible that additional documents sought by the NRA since 2019 in this lawsuit, and subject to the NRA's motion to compel,[41] remain unproduced and/or unlogged.[42]

**4.      The Categorical Log raises the applicability of the crime/fraud waiver to AMc's malfeasance.**

It is undisputed that the Virginia law firm Dycio & Biggs LLP represented Wayne LaPierre as recently as September 2018; indeed, Defendants allege that Dycio engaged was by LaPierre ***to plan this litigation***.[43] In truth, Dycio participated in privileged conversations on subject matter that did not directly anticipate, but does overlap with, the claims and defenses here.[44]  Dycio was previously engaged by the NRA and LaPierre, jointly and severally, to represent "the interests of both LaPierre and the NRA" on multiple litigation and corporate matters.[45]  Incredibly, while maintaining that Dycio was engaged by LaPierre and/or the NRA to develop the claims and defenses in this lawsuit, Defendants and their counsel appear have flouted common sense and professional ethics by working directly with Dycio to craft the communications comprising the "extortion/coup" fact pattern underlying many of the claims here—*e.g.*, a series of letters

---

[40] *See id.*
[41] *See* ECF No. 397, NRA's Motion to Compel Certain Documents Withheld Under Deficient Claims of Privilege, p. 11.
[42] *See* Rogers Decl., p. 4-5 ¶ 16.
[43] *See* ECF No. 441, Defendants' Response in Opposition to NRA's Motion for Partial Summary Judgment, p. 45-46.
[44] *See* ECF 477, NRA's Reply in Support of Motion for Partial Summary Judgment, p. 22-24.
[45] *See* Rogers Decl., Ex. 7, 2013 Dycio & Biggs Engagement Letter, p. 1 [App. 00102-07].

containing damaging and misleading representations about LaPierre's expenses.  For example, Category 12 of the Categorical Log concedes that Dycio was party to communications with both AMc and Dorsey concerning the "April 22 Winkler letters" during the week preceding the dissemination of those letters.[46]  The letters were constructed to be intentionally misleading, including by (i) insinuating the existence of an improper relationship between LaPierre and an NRA intern;[47] and (ii) insinuating that Zegna wardrobe purchases made by AMc were billed to the NRA (AMc concedes they were not).[48]

When a lawyer who previously represented a client works alongside lawyers adverse to the same client on a subsequent, substantially related matter, there is "an irrebuttable presumption that the lawyer obtained confidential information [during the prior representation] [and] . . . a second irrebuttable presumption [] that the lawyer has shared the client's confidences" with his new co-counsel.[49]  The concealment of such material facts from Dycio's former client and from the Court in this litigation—concealment that Defendants effected by failing and refusing to produce or log communications they knew were responsive to discovery—raises the specter of crime/fraud waiver.[50]  Moreover, where, as here, attorney-client communications and work product are

---

[46] *See* ECF No. 487, the Categorical Log, at Category 1, Category 12 [PageID 53442, 53445]. Categories 13 and 14, which cover the same time period and subject matter, raise similar concerns.

[47] *See* ECF No. 448-4, Ex. 53, Letters from W. Winkler to W. LaPierre, dated April 22, 2019; *id.*, Ex. 8, Dep. Tr. of W. LaPierre, dated Sept. 24, 2019, p. 240:9-248:11 [App. 00220-222].

[48] ECF No. 118-5, Ex. 71, Dep. Tr. of W. Winkler, dated March 26, 2021, at 152:21-153:4 [App. 02203-04].

[49] *See In re Guar. Ins. Servs., Inc*., 343 S.W.3d 130, 133–34 (Tex. 2011); *In re Reeder*, 515 S.W.3d 344, 349 (Tex. App. 2016).  Although many such cases deal with side-switching lawyers who join adverse law firms, the same concern arises here, where Dorsey and Dycio appear to have collaborated to provide legal advice, and prepare documents in anticipation of litigation, on topics such as LaPierre's expenses.  The same result obtains in Virginia. *See, e.g.*, *Sunbeam Prod., Inc. v. Hamilton Beach Brands, Inc.*, 727 F. Supp. 2d 469, 472 (E.D. Va. 2010); *Rd. King Dev., Inc. v. JTH Tax LLC*, 540 F. Supp. 3d 554, 559 (E.D. Va. 2021); *United States v. Hoback*, No. 7:17-CR-00066, 2018 WL 3639835, at *2 (W.D. Va. July 31, 2018).

[50] Indeed, this court has ordered *in camera* review to determine the applicability of the crime/fraud exception based on evidence of litigation misconduct considerably less flagrant.  *See, e.g.*, *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, et al.*, No. 3l03-cv-0257-N*, 2004 WL 7329341 (N.D. Tex. Mar. 3, 2004) (ordering *in camera* review of counsel's communications after litigant aggressively interpreted protective order in a manner inconsistent with representations made at a prior conference).

"intended to further continuing or future criminal or fraudulent activity"—in this case, the dissemination of misleading letters as part of an extortion attempt—the privilege is overcome.[51] If the Court declines to find that Defendants have waived privilege over *all* post-April-2019 documents they intentionally concealed from discovery, it should at minimum order a document-by-document log, and *in camera* review, for Categorical Log categories no. 11-14.

Importantly, the Categorical Log is obscure with respect to a major issue in this litigation-namely the NRA's massive investment in the failed NRATV venture. The Categorical Log simply refers to the term "NRATV." This logging is not only evasive in terms of content, but with respect to the time period, at issue as well. This Court is undoubtedly familiar with the Status Reports it required the parties to provide leading up to the end of discovery on October 29, 2021.

As a result of Court's imposition of the Status Report protocol, AMc claimed to have located, after two years, a computer application designed especially for the NRA – and paid for by the NRA – the NRA Dashboard. The NRA Dashboard was purportedly located and "revived" as first disclosed in AMc's September 1, 2021 Status Report. Later, document productions that it produced in October 2021, revealed that AMc had accessed the NRA's computer applications, without notice to, or the consent of the NRA. Worse yet, on the night of October 29, 2021, AMc produced a "supplemental" expert report of Richard Bergin, where it is revealed that he was given access to the NRA's Dashboard, despite the existence of a cease and desist letter issued by the NRA's counsel on September 23, 2021. AMc's behavior has profoundly prejudiced the NRA, yet there is not a single log issue related to the supposed discovery of the NRA's "lost" computer application, nor is there any logging with respect to multiple times, when unbeknown to the NRA, AMc was accessing the computer application so it could prepare for trial, preventing the NRA

---

[51] *United States v. Edwards*, 303 F.3d 606, 618 (5th Cir.2002).

from doing so. The NRA requests that AMc be compelled to produce a detailed log outlining its supposed loss and subsequent revival of key evidence in this case, as well as the dates of its unauthorized access into the NRA's computer system.  Additionally concerning are documents pertaining to NRATV performance metrics and the NRATV "Dashboard," which was purportedly misplaced by Defendants during discovery, then "revived" after the NRA asked questions about it during a deposition of an AMc expert.[52]  Importantly, the "discovery" and "revival" of the concealed Dashboard purportedly occurred in late summer 2020—the moment at which AMc's Categorical Log terminates.  Thus, despite being ordered to log documents after commencement of litigation, AMc unilaterally omitted those that might have provided visibility concerning its unexplained concealment of hundreds of thousands of responsive records in this case.  At a minimum, the NRA is entitled to a document-by-document log of communications regarding the purported loss and subsequent "revival" of this computer platform and AMc's unauthorized access into the NRA's systems and accounts. The impropriety of AMc's conduct with respect to NRATV clearly raises the specter of the crime fraud exception to the attorney-client privilege. Conveniently for AMc, the latest date on its log is August 8, 2020[53], a full year before it claims that it found the key computer application relating to a $45 million by the NRA[54]

### 5.     The NRATV "Talent": Dana Loesch and Oliver North.

Now, at the last possible moment, shortly before trial, the NRA is also confronted with additional logging with respect to the so called NRATV "Talent," Dana Loesch ("Loesch") and Oliver North ("North"). These individuals have been used by AMc to proliferate litigation against the NRA for years. Indeed, North is at the epicenter of the specious defamation claim that AMc

---

[52] *See* ECF No. 385-1, Ex. A, Plaintiff's Status Report on Discovery Issues, dated Oct. 8, 2021, pp .8-9, 16; ECF No. 390-1, Plaintiff's Status Report on Discovery Issues, dated Oct. 22, 2021, at Ex. B, p. 4-5; *See also* ECF 345, p 13.
[53] Categories 15-22, which end on August 28, 2020.
[54] See ECF 507, FN 67.

asserts against the NRA for conducting a books and records examination, and as for Loesch, the record has been devoid of any documents regarding her supposed claims, raising the specter that the claim is simply manufactured. Both the fiduciary duty and the crime fraud exception mandate the remedies sought here.

### III.

### ARGUMENT

**A.    Defendants have failed to make a prima facie showing that any of the documents on its Categorical Log are Privileged**

A party seeking to withhold a document and assert a privilege "bears the burden of demonstrating the applicability of the privilege."[55] "If documents are withheld by a party because they claim they are protected by privilege, the party must produce a privilege log expressly making that claim and describing the nature of the document in a way that enables others to evaluate the claim of privilege."[56] When a party logs withheld documents using a categorical approach "**the log must still provide information needed to evaluate claims of privilege, including the category, date range, authors and recipients, privilege asserted, and representations that the materials fall within the scope of the privilege**."[57] The Categorical Log does not adhere to these standards.

The Categorical Log is not organized by category but, rather, by the names of those who apparently participated in some communication from a long list of sparsely worded topics.  For example, the first entry on the Categorical log includes dozens of individuals listed as "Author; Addressees; Recipients" affiliated with AMc and three different law firms.  In addition, topics are

---

[55] *Climb Tech, LLC v. Verble*, No. A-05-CA-864 LY, 2008 WL 11334947, at *3 (W.D. Tex. Nov. 12, 2008) (citing *In re E.E.O.C.*, 207 F. App'x 426, 431 (5th Cir. 2006)).

[56] *Climb Tech, LLC*, 2008 WL 11334947, at *3 (citing FED. R. CIV. P. 26(b)(5)).

[57] *Jolivet v. Compass Grp. USA, Inc*., No. 3:19-CV-2096-B, 2021 WL 5176930, at *10 (N.D. Tex. Sept. 14, 2021) (quoting *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc*., No. 3:12-CV-00463, 2018 WL 3628890, at *1 (M.D. Tenn. Mar. 29, 2018)).

deliberately amalgamated to render the log essentially incomprehensible.   The "Privilege Description" for the first entry on the Categorical Log includes the following vague topics which do not provide any information as to the privileged nature of the communication:   "NRATV;" "Oliver North;" "Steve Hart;" and "Susan LaPierre's makeup."   These topics, and other similarly worded topics, appear throughout the Categorical Log.

The descriptions provided for withheld documents throughout the Categorical Log do not provide sufficient information to enable the NRA or the Court to evaluate whether privileges have been appropriately asserted.   When employing the categorical approach, "the detail offered cannot be so minimal as to prevent the court from evaluating the privilege claimed."[58]  AMc's Categorical Log does not enable the NRA or the Court to determine which individuals are participating in any particular communication, about which topic or category, the number of documents being withheld in connection with that topic or category, and whether a privilege has been appropriately applied.

In sum, AMc has failed to meet its burden of establishing that privileges apply to the documents described in its Categorical Log.

**B.      The Categorical Log violates the Court's Order and Applicable Rules.**

This Court ordered Defendants to provide a log for "all post-April 2019 and pre-2018 documents withheld."[59]  During the hearing concerning the NRA's Motion, the Court agreed that Defendants could provide a categorical log for withheld documents which consist of "communications between the attorneys and . . . the representatives of the parties."[60]   The Categorical Privilege Log violates this Court's directives in several ways.  Defendants' failure to

---

[58] *See Franco-Gonzalez v. Holder,* No. CV 10-2211-DMG DTBX, 2013 WL 8116823, at *6 (C.D. Cal. May 3, 2013) (when employing the categorical approach, "the detail offered cannot be so minimal as to prevent the court from evaluating the privilege claimed.").
[59] *See* the Order.
[60] ECF No. 453, Ex. B, the Transcript at 65:21-23 [App. 070].

abide by this Court's directions is immediately apparent as their log includes categorical entries for communications solely by and between Ackerman representatives and individuals not representatives of Ackerman or attorneys for Ackerman. [61]

Further, Defendants were Ordered to produce a privilege log for "all post-April 2019 and pre-2018 documents withheld." However, the Categorical Log consists almost entirely of entries from between April 2019 until August 2020. Defendants provide no justification for their decision to conclude their log in August 2020. Moreover, the Categorical Log contains only one entry from prior to 2018, on a single discrete issue concerning an employment contract.[62]

Defendants also do not provide any detail as to the number of documents withheld – either in total or by category. "An allegation of categorical privilege as to an unspecified number of documents does not comply with the Court's Order to provide a privilege log fully satisfying the requirements of Federal Rules of Civil Procedure 26(b)(5) and 45(e)(2)."[63]

As well, several rows in the Categorical Log contain references to materials withheld on the basis of attorney-client privilege and as work-product. This is not permitted. Instead, a categorical log "must break out each type of claimed protection—including work-product protection, attorney-client privilege, joint-defense privilege, joint-prosecution privilege, allied-litigant privilege, and common legal interest—into separate rows as to each category of withheld documents."[64]

Based on the foregoing, Defendants have failed to abide by this Court's Order. As such, this Court must now consider an appropriate remedy.

---

[61] *See, e.g.*, ECF No. 487, the Categorical Log, Entry Nos. 3, 4, 5, 6 (stating that the entries are confidential attorney-client communications, but adding a caveat that certain documents are communications forwarded between AMc employees) [PageID 53442-43].
[62] *Id.*, Entry No. 23 [PageID 53448].
[63] *Bobo v. Frost, PLLC*, No. 1:17-CV-227-HSO-JCG, 2019 WL 5685692, at *2 (S.D. Miss. Sept. 11, 2019).
[64] *Manufacturers Collection Co.*, LLC 2014 WL 2558888, at *6.

C.      **Defendants' continued failure to produce a rules-compliant privilege log warrants a finding of waiver.**

Failure to timely log withheld documents may be deemed a waiver of any privilege or protection.[65]  Waiver is particularly appropriate where a party has had an opportunity (or several opportunities) to amend or supplement its log.[66]  In this case, Defendants, by their conduct, make clear that they have no intention of voluntarily disclosing the details of the documents they have withheld from production from prior to January 2018 and after April 10, 2019.

In the Motion, the NRA requested that this Court find that privileges were waived for all documents which were withheld but not logged.  This Court was generous with the Defendants when it permitted them to produce a log of withheld documents rather than simply finding that privileges were waived for unlogged documents.  Indeed, Courts throughout the country have found that the failure to timely log documents warrants a finding of wholesale privilege waiver.[67]

Rather than meet this Court's generosity with candor, the Defendants elect to continue to

---

[65] *See, e.g.*, Fed. R. Civ. P. 26 – Advisory Committee Commentaries ("A party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work product protection. To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection."); *Hirsch v. USHealth Advisors, LLC*, No. 4:18-CV-245-P, 2020 WL 1271588, at *8 (N.D. Tex. Feb. 14, 2020), aff'd, No. 4:18-CV-00245-P, 2020 WL 1271374 (N.D. Tex. Mar. 12, 2020) (failure to log documents resulted in the waiver of attorney-client privilege and work-product doctrine).

[66] *See Nance v. Thompson Medical Co.*, 173 F.R.D. 178, 182 (E.D. Tex. 1997) (finding waiver of work product doctrine where its elements were not adequately asserted, even after the defendant had the opportunity to supplement its log); *C.T. v. Liberal School District*, 2008 WL 217203 (D.Kan.2008) (finding privileges waived after plaintiff had an opportunity to amend the original privilege log and correct its deficiencies); *Madrigal v. Kleberg Cty.*, No. 2:15-CV-345, 2016 WL 3346522, at *2 (S.D. Tex. June 15, 2016) ("Failure to timely serve a privilege log may be deemed waiver of any privilege or protection."); *E.E.O.C. v. Parker Drilling Co.*, No. 3:13-CV-00181-SLG, 2014 WL 5410661, at *6 (D. Alaska Oct. 22, 2014) (privileges newly asserted in an amended log were waived because they were not identified in the initial log).

[67] *See e.g. Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (affirming decision where "the district court found a waiver where the log not only was not filed during the Rule 34 time limit, but was filed *five months* later."); *Vilcheck v. NFP Corp.*, No. 6:15-CV-03997-TMC, 2017 WL 11309769, at *3 (D.S.C. Mar. 1, 2017) ("Based on a review of the facts presented and consideration of the associated circumstances, the Court finds that Defendants' greater than seven-month delay in producing the privilege logs is unjustified."); *Imperati v. Semple*, No. 3:18-CV-01847 (RNC), 2020 WL 4013304, at *7 (D. Conn. July 16, 2020) (noting that "the weight of authority in the District of Connecticut regards a five-month delay as supporting a finding of waiver[].").

obscure the issue by producing an unusable indecipherable categorical log.  As a result, the NRA finds itself less than two months from trial and still without a comprehensible privilege log.  The time for Defendants to produce a privilege log and assert a valid privilege has long passed.  With discovery and, particularly, depositions now a distant memory, even if Defendants produced a new, compliant privilege log immediately, it is simply too late for the NRA make any use of it.  This further warrants a finding of privilege waiver.[68]

**D.      Alternatively, Defendants should be ordered to produce a rules-compliant privilege log and produce certain documents which are clearly not protected by the attorney-client privilege.**

If this Court is not inclined to find that Defendants have waived their purported privileges, they should be required to produce a new document-by-document log and produce documents which, on their face, do not warrant privilege protection.

**1.      <u>A document-by-document log is appropriate in this case.</u>**

Throughout discovery, the parties solely produced privilege logs using a document-by-document approach.  Defendants' insistence to produce a categorical log for documents which should have been logged more than a year ago is unacceptable as a matter of law.

"Typically, a privilege log must identify each document and provide basic information, including the author, recipient, date and general nature of the document."[69]  Courts permit a party to instead log documents using the "categorical approach" where "(a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more

---

[68] *See RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*, 489 F. Supp. 3d 907, 916 (W.D. Mo. 2020) (Finding that party waived privilege and determining that the failure to log documents until after the need of discovery "is at best completely unjustifiable and at worst an intentional decision not to provide a privilege log until it was too late for Plaintiffs to do anything with it, placing Plaintiffs at a strategic disadvantage.").

[69] *Manufacturers Collection Co., LLC v. Precision Airmotive*, LLC, No. 3:12-CV-853-L, 2014 WL 2558888, at *3 (N.D. Tex. June 6, 2014) (citing *S.E.C. v. Thrasher, C.A.* No. 92–6987, 1996 WL 125661, at *1 (S.D.N.Y. Mar.20, 1996)).

detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded."[70]

Use of a categorical log is appropriate only when the party claiming privilege establishes "undue burden with specificity . . . [and] articulate[s] explicitly why production of an itemized and descriptive privilege log is unduly burdensome.'"[71] Conversely, maximum detail is required where, as here, crime/fraud waiver is a possibility.[72]

### 2.   Certain documents referenced in the Categorical Privilege Log are not privileged and must be produced.

#### a.   Communications with Dycio & Biggs

The Categorical Log, at entries 11-14, lists communications between April 14, 2019 through April 22, 2019 which include individuals associated with the law firm Dycio & Biggs ("D&B"). As Defendants are aware, D&B was counsel to the NRA and to NRA Executive Vice President Wayne LaPierre. Any communications Defendants may have had with the NRA's and Mr. LaPierre's former counsel cannot possibly be protected by the attorney-client privilege.

If Defendants claim to have commenced their own attorney-client relationship with D&B, privilege will not attach to these documents due to the crime-fraud exception.[73] The Categorical

---

[70] *Id.*

[71] *First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-CV-2235-SHL-DKV, 2016 WL 5867268, at *6 (W.D. Tenn. Oct. 5, 2016) (quoting *Bethea v. Merchants Commercial Bank*, No. 11-51, 2012 WL 5359536, at *2 (D.V.I. Oct. 31, 2012)).

[72] *See, e.g.*, *Positive Software Solutions, Inc. v. New Century Mortgage Corp.,* et al.*, No. 3l03-cv-0257-N,* 2004 WL 7329341 (N.D. Tex. Mar. 3, 2004) (ordering *in camera* review of counsel's communications after litigant aggressively interpreted protective order to permit review, by chief technology officer, of adversary's sensitive intellectual property which the litigant had promised to sequester and not use).

[73] *See Sevachko v. Commonwealth*, 35 Va. App. 346, 356 (2001) (citing *Seventh Dist. Comm. of Virginia State Bar v. Gunter*, 212 Va. 278, 287 (1971)) ("It is settled under modern authority that the [attorney-client] privilege does not extend to communications between attorney and client where the client's purpose is the furtherance of a future intended crime or fraud."); *see also United States v. Zolin*, 491 U.S. 554, 560 (1989) ("It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the seal of secrecy, between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." (internal citations and quotations omitted)); *United States v. Edwards,* 303 F.3d 606, 618 (5th Cir.2002) ("Under the crime-fraud exception to the attorney-client privilege, the privilege can be overcome where communication or work product is intended to further continuing or future criminal or fraudulent activity." (internal citations and quotations

Log establishes that Defendants coordinated with the NRA's former counsel for the purpose misusing the NRA's confidential information to craft and distribute the purposefully misleading "April 22, 2019 Winkler letters."  Considering the fact that both Defendants and D&B were obliged to maintain the NRA's confidences, it is hard to imagine a more obvious scenario for the application of the crime-fraud doctrine.

### b.     Entries concerning NRATV

References to "NRATV" and "AMc's purchase of equipment for NRATV" appear throughout the Categorical Log.  These communications do not qualify for privilege protection for a number of reasons.  First, the fiduciary exception applies to these communications since all work concerning NRATV was performed in Defendants' capacity as an agent and fiduciary of the NRA. The NRA is entitled to any and all information in Defendants' possession concerning NRATV and any related equipment purchased by Defendants.

Second, the NRA alleges that Defendants perpetrated a fraud upon it by the use of worthless and misleading vanity metrics for the purpose of inducing the NRA to spend tens of millions of dollars. Further, concealment of the NRA Dashboard and its data, which was not provided until October 2021, warrants application of the crime fraud exception.

### IV.

### CONCLUSION

For all the reasons stated above, the NRA respectfully requests that this Court sustain

---

omitted)).  Moreover, "[a]ctual success as to the fraudulent or criminal scheme, however, is immaterial to the application of the crime/fraud exception, because it is the planning and pursuit of the scheme with the advice of counsel, not the scheme's success or failure, that animates the crime/fraud exception. *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 279 (E.D. Va. 2004) (citing *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1039 (2d Cir.1984) ("The crime or fraud need not have occurred for the exception to be applicable; it need only have been the objective of the client's communication. And the fraudulent nature of the objective need not be established definitively; there need only be presented a reasonable basis for believing that the objective was fraudulent.")).

Plaintiff's Objections, compel Defendants to:

**(i)**     Produce, within fourteen (14) days, all documents responsive to Plaintiff's discovery requests which are vintaged after April 11, 2019 and before January 1, 2018; and/or

**(ii)**    Produce, within fourteen (14) days:

    **a)**     a document-by-document log identifying any responsive documents from the foregoing time periods withheld under claims of privilege; and

    **b)**     for *in camera* review, all previously-withheld communications with (1) Dycio & Biggs LLP; (2) communications concerning NRATV; and (3) North and Loesch.

**(iii)**   Any other relief the Court deems just and proper.

**(iv)**    Fees and costs with respect to this Motion.

Dated: January 28, 2022                                    Respectfully submitted,

                                      By:     */s/ Sarah B. Rogers*            
                                              Cecelia L. Fanelli
                                              *Pro Hac Vice*
                                              clf@brewerattorneys.com
                                              Sarah B. Rogers
                                              New York Bar No. 4755252
                                              sbr@brewerattorneys.com
                                              Philip J. Furia
                                              *Pro Hac Vice*
                                              pjf@brewerattorneys.com
                                              **BREWER ATTORNEYS AND COUNSELORS**
                                              1717 Main Street, Suite 5900
                                              Dallas, Texas 75201

                                              **ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT NATIONAL RIFLE**

**ASSOCIATION OF AMERICA**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically

served via the Court's electronic case filing system upon all counsel of record on this 28th day of

January 2022.

<u>*/s/ Sarah B. Rogers*</u>
Sarah B. Rogers

23