**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § | |
| | § | |
| | § | |
| *Plaintiff and Counter-Defendant,* | § | |
| | § | |
| | § | |
| **v.** | § | **Case No. 3:19-cv-02074-G** |
| | § | |
| **ACKERMAN MCQUEEN, INC.,** | § | |
| | § | |
| *Defendant and Counter-Plaintiff,* | § | |
| | § | |
| **and** | § | |
| | § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY,** | § | |
| | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO THE NRA'S OBJECTIONS TO DEFENDANTS' SUPPLEMENTAL CATEGORICAL PRIVILEGE LOG

TO THE HONORABLE A. JOE FISH:

Defendant/Counter-Plaintiff Ackerman McQueen, Inc. ("***AMc***") and Defendants Mercury Group, Inc. ("***Mercury***"), Henry Martin ("***Martin***"), William Winkler ("***Winkler***"), and Melanie Montgomery ("***Montgomery***") (collectively, "***Defendants***") file this *Response in Opposition to Plaintiff National Rifle Association of America's Objections to Defendants' Supplemental Categorical Privilege Log* (the "***Response***").

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND .............................................................................3

    A.      Case and Discovery Overview................................................................3

        1.      Sprawling Litigation ..................................................................3

        2.      Discovery and Privilege Logs in the Instant Action ...................5

        3.      Overbroad Requests and Draconian Relief.................................8

    B.      Dycio & Biggs .......................................................................................11

III.    ARGUMENTS & AUTHORITIES ...................................................................14

    A.      AMc's Categorical Log is Sufficient. ....................................................14

        1.      Overview of AMc's Categorical Log .........................................14

        2.      The NRA continues to misrepresent legal authority.................18

        3.      The NRA's hypocrisy knows no bounds ...................................20

    B.      There is No Basis for a Document-by-Document Privilege Log...........21

    C.      The NRA's Only Challenges to Withheld Categories Also Fails.........23

        1.      Crime-Fraud Exception is Inapplicable. ...................................23

        2.      Fiduciary Duty Exception is Inapplicable.................................24

IV.     CONCLUSION..................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*BCC Merch. Sols., Inc. v. Jet Pay, LLC*, No. 3:12-CV-5185-B-BK, 2015 U.S. Dist. LEXIS 187197 (N.D. Tex. 2015) (J. Toliver) ........................................................................ 7

*Bobo v. Frost, PLLC*, No. 1:17-cv-227-HSO-JCG, 2019 U.S. Dist. LEXIS 192984 (S.D. Miss. 2019) ............................................................................................................................ 19

*Chandler v. Phx. Servs.*, Civil Action No. 7:19-cv-00014-O, 2020 U.S. Dist. LEXIS 15702 (N.D. Tex. 2020) .................................................................................................... 24, 25

*Fisher v. Halliburton*, No. H-05-1731, 2009 U.S. Dist. LEXIS 152887 (S.D. Tex. Jun. 9, 2009) .................................................................................................................... 16

*Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004 (5th Cir. 1992) .................................................................................................... 24, 25

*Jolivet v. Compass Grp. USA, Inc.*, No. 3:19-CV-2096-B, 2021 WL 5176930 (N.D. Tex. Sept. 14, 2021) ...................................................................................................... 16

*Mfrs. Collection Co. ., LLC v. Precision Airmotive, LLC*, No. 3:12-cv-853-L, 2014 U.S. Dist. LEXIS 77522 (N.D. Tex. 2014) ........................................................... 19, 20, 22

*Santander Consumer United States, Inc. v. Maywood Motors, Inc.*, Civil Action No. 3:16-CV-2499-B-BK, 2017 U.S. Dist. LEXIS 223443 (N.D. Tex. 2017) ................................ 6

*Upjohn v. United States*, 449 U.S. 383 (1981) ............................................................. 16

## I.      INTRODUCTION

As of the date of this Response, the parties' pre-trial conference is set just two weeks away on March 4, 2022, and the parties are set on the Court's four-week trial docket beginning on March 7, 2022.  As no doubt intended by the NRA, its belated, baseless arguments to the Court and continued efforts to rehash previously briefed and adjudicated disputes or issues that it has known about for years has forced AMc to divert valuable time and resources from trial preparations.  And as if the considerable cost and distraction to AMc were not bad enough, the NRA now relies on increasingly hollow arguments to make its most extraordinary demand to date: the complete production of tens of thousands of privileged communications and documents exchanged between AMc and its attorneys during the pendency of numerous lawsuits against the NRA.  Moreover, the NRA's Objections appear to be another blatant attempt to reassert and argue its prior motion to compel that was already addressed by the Court in December 2021.  The Court should put a stop to the NRA's quest for feigned disputes and efforts to delay the imminent trial ***again***.

As a threshold matter, it is unclear whether a motion is properly before the Court. Despite the express guidance in the Court's Standing Order on All Discovery Matters,[1] the NRA filed the instant motion as a standalone pleading and not as a Joint Status Report.[2]  Moreover, the NRA filed its purported motion as an "objection" and not a motion to compel—seemingly because the discovery deadline passed more than three months ago.  It is AMc's understanding, based on discussions during the December 15, 2021 discovery hearing (the "***Discovery Hearing***"), that the

---

[1] ECF 62 at ¶ 3.

[2] This is not the first time the NRA has flouted the Court's requirements.  The NRA represented to the Court that its first Motion to Compel Production of Certain Documents Withheld Under Deficient Claims of Privilege was a "Joint Report."  ECF 397 at 1.  That motion was not a joint report, and the NRA conceded in a later filing that "[t]he parties did not hold a conference concerning th[e] motion prior to the time the motion was filed."  ECF 399 at ¶ 5.

Court would not consider any claim for relief if a proper motion was not on file.[3]  Further, Judge Toliver made clear during the Discovery Hearing that she was not inviting the parties to rebrief the issues after the hearing.[4]  Nonetheless, the NRA unilaterally filed its brief to the Court and did so in violation of the Standing Order on All Discovery Matters, nearly three months after discovery expired, and on the eve of trial.  As a result, the Court can and should summarily overrule the Objections.

However, if the Court determines the NRA's Objections[5] are properly before the Court, the Court should overrule the Objections for the following reasons: (1) AMc's Categorical Log[6] complies with this Court's prior order and Fifth Circuit law; (2) there has been no waiver of any privilege, and certainly not any waiver justifying the blanket turning over of the most fundamental and core attorney-client and work product privileged documents between AMc and its counsel directly relating to litigation with the NRA; (3) the production of a document by document privilege log on the eve of trial would be "useless" according to the NRA,[7] but more importantly, would be unduly burdensome as it would require the logging of at least 25,000 documents requiring over 415 hours of attorney time;[8] and (4) the NRA again relies on its "arguments" without any actual evidence or legal authority closely related or supporting its position.

AMc prays that the Court overrule the NRA's Objections in their entirety and put a stop to the NRA's efforts to delay proceedings, manufacture disputes, and avoid the inevitable trial on the merits of this case.

---

[3] ECF 453, Discovery Hr'g Tr., at 63:18-64:5 (App. 68-69).
[4] ECF 453, Discovery Hr'g Tr., at 64:21-65:5 (App. 69-70).
[5] *See* ECF 533, Plaintiff National Rifle Association of America's Objections to Defendants' Supplemental Categorical Privilege Log (the "***Objections***").
[6] *See* ECF 487, Defendants' Supplemental Categorical Log (the "***Categorical Log***").
[7] Indeed, the NRA concedes that, even if it is granted the requested relief of an in camera review or itemized privilege log, it would do nothing with those materials anyways: "[E]ven if Defendants produced a new, compliant privilege log immediately, it is simply too late for the NRA make any use of it."  ECF 533 at 18.
[8] Based upon the conservative estimate of one minute per document.

## II.    FACTUAL BACKGROUND

At its core, the NRA's Objections again seek to compel the wholesale production of AMc's privileged communications throughout the entirety of AMc's litigation against the NRA.  To support its scorched-earth discovery tactics, the NRA continues to provide the Court with distorted legal authority and meager factual analysis.  But to understand the absurdity of the NRA's Objections, it is instructive to consider the scope and breadth of the parties' legal disputes, the NRA's extensive efforts to delay proceedings, the NRA's willful delay in pursuing its feigned complaints, and the volume and breadth of the NRA's discovery requests.

### A.    Case and Discovery Overview

1.  <u>Sprawling Litigation</u>

The NRA and AMc's legal disputes run deep.  In the last four years the parties have been involved in governmental investigations into the NRA, numerous lawsuits first initiated by the NRA, the NRA's bad faith bankruptcy proceedings, and countless ancillary proceedings stemming from the same or similar facts at issue in this lawsuit.  The NRA has filed four lawsuits against AMc on April 12, 2019[9]; May 22, 2019[10]; August 30, 2019[11]; and September 5, 2019.[12]  In the Fall of 2020, the NRA filed a motion to consolidate the four separate cases in the Northern District of Texas before the Judicial Panel on Multidistrict Litigation[13] and, after that was rejected, the NRA filed for bankruptcy on January 15, 2021.[14]

---

[9] *NRA v. AMc and Mercury Group*, Civil Case No. CL19001757, Circuit Court for the City of Alexandria, VA.

[10] *NRA v. AMc and Mercury Group*, Civil Case No. CL19002067, Circuit Court for the City of Alexandria, VA.

[11] *NRA v. AMc et al.*, Case No. 3:19-cv-02074, U.S. District Court for the Northern District of Texas.

[12] *NRA v. AMc and Mercury Group*, Civil Case No. 19002886, Circuit Court for the City of Alexandria, VA.

[13] Mot. to Transfer (Doc. 1), *In re: National Rifle Association Business Expenditures Litigation*, MDL No. 2979, United States Judicial Panel on Multidistrict Litigation (Oct. 20, 2020) ("***MDL Action***").

[14] *In re National Rifle Association of America*, Case No. 21-30085-sgj11, U.S. Bankruptcy Court for the Northern District of Texas.

As a result of these myriad actions, the parties have engaged in countless pleadings, voluminous written discovery, dozens of depositions, and even a hearing in the bankruptcy court that spanned four weeks and resulted in dismissal of the bankruptcy action based on a finding of no good faith basis for filing in the first place.  Naturally, to meet its litigation needs and protect its legal interests, AMc has employed many law firms and attorneys since April 2019 to provide legal services and support, including, but not limited to:

**Dorsey & Whitney LLP**
Gina Betts
Mike Gruber
Jay Madrid
Brian Mason
Brian Vanderwoude
Kelsey Taylor
Christina Carroll
Ron Miller
Doug Lang

**McDermott**
Steve Ryan
Todd Harrison
Joseph Evans

**Schertler & Onorato, LLP**
Dave Schertler
Dave Dickieson
Joseph Gonzales
Paola Pinto

**Dycio & Biggs**
Mark Dycio
Danielle Quinn

**Hartzog Conger Cason**
David A. Elder
Matt W. Brockman

**Carter Ledyard & Milburn, LLP**
Pamela Mann
Ahsaki E. Benion
Jeremy S. Steckel

Matthew Dunn

It necessarily follows that AMc and its attorneys have exchanged thousands upon thousands of emails in the strategizing and handling of these matters.  And also follows that many thousands of emails have been exchanged with attorneys not directly involved in AMc's litigation but nonetheless providing legal services for matters related to issues in this lawsuit or otherwise responsive to the NRA's voluminous, infinitely broad discovery requests (discussed below). AMc's communications and documents exchanged with its attorneys in litigation are unquestionably privileged.  The NRA's continued efforts to compel these communications is unfounded, and its demands for an itemized privilege log for same are unduly burdensome.

2.  <u>Discovery and Privilege Logs in the Instant Action</u>

The egregious and disingenuous nature of the NRA's continued pleas for privileged communications is underscored by the NRA's obfuscation in discovery and its inexcusable delay in first pursuing its purported concerns with AMc's privilege logs.  During the fall of 2020, the parties were engaged in, and conferred about, a variety of discovery matters in this lawsuit, which included voluminous document productions by both parties, numerous third-party subpoenas issued by the NRA, and the production of both parties' privilege logs.  In early December 2020, the parties agreed to exchange privilege logs on or by December 9, 2020,[15] and thereafter, AMc served its privilege log on that date.[16]  In that log and consistent with its prior objections to the scope of the NRA's discovery requests, AMc did not log privileged documents after litigation began between the parties on April 12, 2019.

---

[15] ECF 409 at Ex. A-1 (APP9), Email from K. Taylor to A. Allegretto (Dec. 3, 2020).
[16] ECF 409 at Ex. A-2 (APP10), Email from K. Taylor to A. Allegretto (Dec. 9, 2020); ECF 409 at Ex. A-3 (APP11-49) AMc Privilege Log (Dec. 9, 2020).

One month later on January 15, 2021, the NRA filed for Chapter 11 bankruptcy, which effectively stayed a majority of the above-captioned case.[17]  That bankruptcy process lasted from January through May 2021 and halted most of the parties' discovery efforts in the above-captioned matter.[18]  Critically, however, the NRA's claims were not stayed,[19] and it could have continued prosecuting its claims against AMc had it so desired, including continuing discovery activities.

On May 11, 2021, the bankruptcy court dismissed the NRA's bad faith bankruptcy filing and the NRA resumed action in this case, albeit with obvious disregard for the approaching discovery deadline of August 6, 2021.  By way of illustration, when AMc provided the NRA with dozens of dates for depositions of the seven witnesses the NRA had requested,[20] the NRA did not actually schedule *any* deposition until July 30, 2021[21]—exactly one week before the discovery deadline.  Further, the NRA did not present *any* dates for four of its six experts' depositions until after the deadline.[22]  The NRA's delay efforts have already drawn the ire of the Court.[23]

On August 17, 2021—more than eight months after AMc served its privilege log and after the August 6, 2021 discovery deadline—the NRA conferred with AMc for the first time regarding its purported concerns with AMc's privilege log.  Notably, the NRA's belated inquiry occurred eleven days after the then-controlling August 6, 2021 discovery deadline had passed.[24]  Under the facts of this case and Fifth Circuit precedent, the NRA's complaints were untimely and moot.[25]

---

[17] ECF 200.
[18] *See id.*
[19] *See id.*
[20] ECF 409 at Ex. A-4 (APP50-52), Letter from B. Mason to NRA Counsel (Jul. 7, 2021)
[21] *See* ECF 345 at 1-5 (outlining NRA's repeated failure to prosecute its claims or take depositions timely).
[22] ECF 409 at Ex. A-5 (APP53-57), Email from S. Rogers to B. Mason (Jul. 19, 2021).
[23] *See* Ex. A-1, Status Hr'g Tr. dated Sep. 16, 2021, at 5:1-10 (Judge Fish speaking at length to his concern with the progress of discovery and the deadlines in the Amended Scheduling Order) [App. 5], 29:3-20 (Judge Fish asking NRA counsel, "Who made the decision on your side to ignore the discovery deadline?") [App. 29], 57:1-4 ("You may have caught my drift earlier that I'm not happy that the previous discovery deadline was not only observed but ignored. I do intend to enforce the current one in late October.") [App. 57].
[24] *See* ECF 236 (granting continuance to extend discovery deadline to August 6, 2021).
[25] *See e.g., Santander Consumer United States, Inc. v. Maywood Motors, Inc.*, Civil Action No. 3:16-CV-2499-B-BK, 2017 U.S. Dist. LEXIS 223443, at *2 (N.D. Tex. 2017) (J. Toliver) (holding that motion to compel filed after discovery

On September 7, 2021, the Court extended the discovery deadline from August 6, 2021 to October 29, 2021.[26]  Soon thereafter, AMc conferred with the NRA regarding its August 17, 2021 letter.[27]  Despite its continued contentions that its Original Privilege Log provided sufficient information to substantiate its assertions of privilege, AMc undertook to amend its log in an effort to meet the NRA's allegations and to mitigate baseless disputes brought to the Court.[28]  In serving its amended log and de-designated documents, AMc believed that it had fully addressed the NRA's concerns—especially because the format of AMc's privilege descriptions now mirrored the exact format of the NRA's privilege descriptions, which the NRA contended were sufficient.[29]

In response, the NRA sent additional correspondence *the very next day* on September 22, 2021, ignoring AMc's revised entries, expanding the scope of its complaints, and now contesting the validity of every single entry on the First Amended Privilege Log.[30]  In that letter, the NRA expressed new concerns that certain communications might be missing from AMc's Original Privilege Log—concerns that had never previously been raised at any time.  Despite the NRA "shifting the goal posts" of its privilege log complaints, AMc nevertheless continued to seek an expedient resolution.  Immediately thereafter, beginning on October 13, 2021, AMc undertook an investigation of the NRA's concerns and discovered for the first time that previously withheld communications might in fact have been omitted from AMc's Original Privilege Log.[31]  The factual explanation for this omission has been already been thoroughly briefed by AMc in motions already adjudicated by the Court.[32]

---

deadline was untimely); *BCC Merch. Sols., Inc. v. Jet Pay, LLC*, No. 3:12-CV-5185-B-BK, 2015 U.S. Dist. LEXIS 187197, at *2 (N.D. Tex. 2015) (J. Toliver) (same).
[26] *See* ECF 358.
[27] ECF 409 at Ex. A ¶ 6 (APP3).
[28] *See* ECF 398 at Ex. F, AMc's First Am. Privilege Log.
[29] *Id.*
[30] ECF 398 at Ex. G, Letter from S. Rogers to B. Mason (Sep. 22, 2021).
[31] ECF 409 at Ex. A ¶ 8 (APP3-APP4).
[32] *See* ECF 408 at 5-6; *see also* ECF 409, B. Mason Decl. dated Nov. 19, 2021, at ¶¶ 7-12 (App. 3-5).

As soon as the omission was discovered by AMc's counsel, it promptly completed a review of the documents to reaffirm the privilege protection of each document and to properly identify the documents on its privilege log before the close of discovery on October 29, 2021.[33]  In addition to addressing the NRA's complaints about "documents withheld but not logged," AMc sought to resolve the NRA's purported issues of deficient attorney-client and work product descriptions[34] by providing greater detail for the basis of each privilege in its Second Amended Privilege Log, which it served on October 22, 2021.[35]

The NRA was still not satisfied, sought additional relief and, at the Court's invitation,[36] objected to nearly 800 documents on AMc's Second Amended Privilege Log[37] based solely on generalized, conclusory grievances and unsubstantiated conspiracy theories.[38]  These documents have been produced to the Court for an *in camera* review, but the NRA has now shifted its focus to AMc's Categorical Log while still arguing the merits of its original motion to compel.

### 3. Overbroad Requests and Draconian Relief

In its Objections, the NRA wants additional relief and delay, seeking to compel the production and/or individual logging of all of AMc's communications since the start of the litigation between the parties in April 2019.  The extraordinarily prejudicial and draconian nature of this requested relief is further evidenced by the volume and breadth of its requests for production.

---

[33] ECF 409, B. Mason Decl. dated Nov. 19, 2021, at ¶ 11 (App. 4-5).
[34] ECF 398 at Ex. G.
[35] *See* ECF 398 at Ex. A, AMc's Second Am. Privilege Log.
[36] ECF 430.
[37] ECF 486.
[38] ECF 526.

The NRA has served 238 requests for production to AMc in the above-captioned action, including numerous egregiously vague and/or broad requests, which number excludes those the NRA previously served in the Virginia Action.  Such requests include, but are not limited to:

> **REQUEST FOR PRODUCTION NO. 21**: All documents supporting, undermining, or otherwise concerning Defendants' records which support their billing statements.[39]

> **REQUEST FOR PRODUCTION NO. 64**: Documents referring or relating to the reaction of Defendants upon learning that the NRA sued AMc in Virginia State court on April 12, 2019 and/or any actual or contemplated response by Defendants for the filing of the lawsuit.[40]

> **REQUEST FOR PRODUCTION NO. 87**: All documents referring or relating to complaints about AMc, including but not limited to its services, officers, and executives from any sources.[41]

> **REQUEST FOR PRODUCTION NO. 148**: All documents and communications referring or relating to letters sent by William Winkler to Craig Spray, Wayne LaPierre and Tyler Schropp on April 22, 2019.[42]

> **REQUEST FOR PRODUCTION NO. 173**: All documents and communications referring or relating to any audits of or accounting of AMc services by any of its clients.[43]

> **REQUEST FOR PRODUCTION NO. 195**: All documents referring or relating to any government or regulatory investigation or inquiry concerning (i) AMc's work for the NRA, or (ii) AMc's billing, invoicing, or timekeeping practices regarding any other clients.[44]

> **REQUEST FOR PRODUCTION NO. 211**: All documents CONCERNING the relationship between or among the MCQUEEN FAMILY, on the one hand, and William A. Brewer III and/or BAC, on the other hand . . ..[45]

---

[39] Ex. A-2, NRA's First Request for Production, at Request No. 21 [App. 74].
[40] *Id*. at Request No. 64 [App. 86].
[41] Ex. A-3, NRA's Second Request for Production, at Request No. 87 [App. 104].
[42] *Id*. at Request No. 148 [App. 125].
[43] *Id*. at Request No. 173 [App. 133].
[44] Ex. A-5, NRA's Fourth Request for Production, at Request No. 195 [App. 146].
[45] Ex. A-8, NRA's Seventh Request for Production, at Request No. 211 [App. 168-69].

These requests are but examples of the broad requests proffered by the NRA and to which AMc's objections remain uncontested by the NRA.  Moreover, the NRA's requests expressly seek documents created and communications exchanged well after the commencement of litigation and, in some instances, through August 28, 2020.  The natural consequence of the volume and scope of these requests is that there is virtually no topic of discussion between AMc and any of its attorneys that would not be responsive to the NRA's requests and, as a result, be withheld from production by AMc as privileged.  For example, in request for production No. 211, the NRA sought documents relating to the conflict between Mr. Brewer and the McQueens/AMc.  This conflict has been raised in numerous pleadings filed by AMc since April 2019 in both Virginia and the above-captioned litigation, and was a significant aspect of the prior Motion to Disqualify the Brewer Firm filed by AMc in April 2020.[46]  The NRA's request for production No. 211 would necessarily request the production of each and every single attorney client communication and draft of every pleading relating to Brewer.

Thus, the unduly burdensome nature of the NRA's requests to compel and/or log the entirety of AMc's responsive, privileged communications is grossly exacerbated by the breadth of the NRA's 238 requests for production.[47]  This burden is present in the current case where, as explained above, AMc has retained numerous law firms and worked with dozens of lawyers to provide legal services relating to numerous NRA lawsuits, government investigations into the NRA, and the NRA's failed bad faith bankruptcy, comprising many hundreds of discovery requests, dozens of third-party subpoenas, and at least 60 different depositions.  The NRA's

---

[46] *See* ECF 105 (Brief in Support of Motion to Disqualify Plaintiff's Counsel).
[47] To be clear, AMc made timely objections to the NRA's request on these grounds.  The NRA appears intent to ignore these still-standing objections with its end-run attempt to stylize a motion to compel as the instant "Objections."

demand that AMc be required to produce all of these communications or individually log every communication is unreasonable, unduly burdensome, and deliberately harassing on the eve of trial.

## B.    Dycio & Biggs

The NRA goes to considerable lengths to disrepute Mark Dycio ("*Dycio*") and his relationship with AMc, bizarrely suggesting that it had no knowledge of AMc communications with Dycio and that AMc deliberately did not disclose its relationship with Dycio "inferably due to the damning implications of logging communications with a side-switching NRA lawyer."[48] First and foremost, the NRA's only substantive argument relating to Dycio in its Objections is that such communications may not be privileged under the crime fraud exception.  As set forth below, this assertion fails and AMc's communications with Dycio remain privileged.

Regardless, the NRA had actual knowledge of the AMc and Dycio relationship at least as early as April 17, 2019 when Dycio sent a preservation notice to the NRA stating in no uncertain terms that "[t]his law firm represents Ackerman McQueen, Inc. in connection with the ongoing litigation brought forth by the National Rifle Association of America ("NRA")."[49]  Indeed, the NRA confirmed its knowledge on April 20, 2019 when it demanded that Dycio terminate its representation of AMc.[50]  There can be no doubt that the NRA knew communications exist between Dycio and AMc, and it is revealing that the NRA now seeks to challenge these communications on the eve of trial.  Further, the descriptions of the categories set forth on the Categorical Log cannot possibly come as any surprise to the NRA given that these are the exact issued raised by the NRA in its original lawsuit against AMc in April 2019.  Stated differently, the

---

[48] ECF 533 at 8.
[49] ECF 535 at Ex. 3 (App. 0015).
[50] *Id.* at Ex. 2 (App. 0012-13).

NRA's attempt to convince this Court of some groundbreaking revelation with respect to Dycio's representation of AMc is grossly misleading.

To support its claim that AMc's communications with Dycio should be produced, the NRA does not allege or argue that AMc does not have an attorney-client relationship with Dycio; rather, the NRA relies on its assertions that Dycio was formerly counsel to the NRA and therefore conflicted from representing AMc. On its face, proving up the existence of a confidential relationship with Dycio does not support a finding that AMc's communications with Dycio are not privileged. Being charitable to the NRA, the most that can be said is that the NRA has alleged a conflict of interest by Dycio, which is not at issue in this case.

Unsurprisingly, and because it has long known of Dycio's representation of AMc, the NRA already filed a lawsuits against Dycio on December 27, 2019[51] and more recently on February 11, 2022.[52] In truth, the NRA's attempts to compel the production of communications with Dycio in this matter is not only untimely and completely irrelevant, but it appears to be a brazen run-around attempt to circumvent discovery proceedings in the NRA's separate frivolous lawsuits against Dycio. Indeed, hours before this filing, the NRA sent another correspondence to AMc regarding the same issues set forth in its Objections, but now referring to the testimony of an attorney from Dycio's firm.[53]

Even if the NRA's relationship with Dycio were relevant for purposes of the NRA's Objections to AMc's Categorical Log (it is not), the NRA still has not provided evidence of a conflict. First, the NRA cites to an invoice from Dycio & Biggs suggesting that a single entry

---

[51] *See* Ex. A-11, Complaint, *NRA v. Mark R. Dycio and Law Offices of Mark R. Dycio, P.C.*, Case No. 2019-17571, Circuit Court of Fairfax County, Virginia [App. 186].
[52] *See* Ex. A-12, Complaint, *NRA and Wayne LaPierre v. Mark R. Dycio and Law Offices of Mark R. Dycio, P.C.*, Case No. 2022001960, Circuit Court of Fairfax County, Virginia [App. 200].
[53] Ex. A-14, Letter from S. Rogers to B. Mason, dated Feb. 18, 2022 [App. 243].

referencing a "[b]oard meeting" means that Dycio represented the NRA and was conflicted from representing the NRA.[54]  No explanation for this logical leap is provided.  Second, the NRA cites to the declaration of Sarah Rogers, which, despite Dycio's appearance at an NRA board meeting not being relevant, nonetheless says nothing about Dycio or his role in the disputed board meeting.[55]  Third, the NRA attaches what purports to be a draft and unsigned engagement letter from 2013.[56]  Tellingly, Dycio has since confirmed that this "engagement was not executed as Mr. LaPierre made clear that my representation was limited to him in his personal capacity."[57]  Dycio has also sworn to the following:

- Dycio only represented LaPierre's interests and "not those of the NRA;"[58]

- LaPierre instructed Dycio to submit legal fee invoices to the NRA for payment so the NRA could pay Dycio's fees on behalf of LaPierre;[59]

- Dycio "never represented the NRA as an entity;"[60] and

- There was never an attorney-client relationship between Dycio and the NRA.[61]

Thus, the NRA's incendiary remarks that Dycio "switched sides" are unsupported and false.  While the NRA's attempts to imply that Dycio previously conceded a conflict,[62] Dycio's email to the NRA contradicts this insinuation and Dycio affirms that he had acted appropriately.[63]

The NRA further suggests that the Court could at the least order a document by document privilege log with respect to AMc's communications with Dycio.  This request should also be

---

[54] *See* ECF 533 at 5 (citing Rogers Decl., Ex. 1, Dycio & Biggs Invoice, dated Oct. 8, 2018 (App. 0006-8)).
[55] ECF 533 at 6 (citing Rogers Decl. at ¶ 7).
[56] *Id.* at Ex. 7 (App. 0103).
[57] Ex. A-10, Affidavit of Mark R. Dycio, dated Mar. 5, 2020, at ¶ 9 [App. 183].
[58] *Id*.
[59] *Id.* at ¶ 10 [App. 183].
[60] *Id.* at ¶ 17 [App. 184].
[61] *Id.* at ¶ 20 [App. 184].
[62] ECF 533 at 7 ("In response, Dycio switched sides and purported to represent AMc in its litigation against the NRA— an ethics violation so obvious that Dycio withdrew on April 22, 2019, after it was raised").
[63] *Id.* at Ex. 2 (App. 0010).

rejected.  First, the NRA has not come close to establishing any deficiencies with respect to the Categorical Log, including with respect to the categories involving Dycio.  Second, granting the NRA any of the relief that it seeks at this eleventh hour will simply result in more requested discovery relief and potential delay of the long-awaited trial.  Stated differently, it is unfortunately not surprising that the NRA is objecting to the Categorical Log despite that fact that it complies with this Court's orders and Fifth Circuit law. In actuality, it does not matter what was on the Categorical Log because the NRA would find something to complain about regardless of the actual facts and the applicable law.  If AMc is compelled to log any of the post-litigation privileged documents, in whole or in part, it will undoubtedly lead to another round of threats and false accusations of insufficiency. Notwithstanding the NRA's Dycio sideshow, the NRA's Objections must be overruled.

## III.    ARGUMENTS & AUTHORITIES

### A.    AMc's Categorical Log is Sufficient.

    1.  Overview of AMc's Categorical Log

        *a)  AMc asserted an adequate basis for privilege.*

The NRA first argues that AMc has not demonstrated the applicability of any privilege, which argument fails.  As the NRA acknowledged in its prior pleadings *on this exact same issue*, "AMc's log must allege facts indicating: (1) a confidential communication; (2) made to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding; and/or (4) a communication from the lawyer to the client that would reveal the same."[64]  AMc's privilege descriptions include this information.  For example, the first entry on AMc's Categorical Log begins as follows:

---

[64] ECF 397 at 8-9.

> **Confidential communications** between **AMc employees and counsel** at Dorsey & Whitney LLP, Schertler & Onorato, LLP, and McDermott Will & Emery **for purposes of obtaining legal advice** and case strategies after the commencement of litigation regarding the claims and defenses for the four lawsuits filed by the NRA against AMc in Virginia and Texas beginning on April 12, 2019 and AMc's affirmative claims in the same lawsuits, the forwarding of confidential communications by AMc employees with counsel to other AMc employees for purpose of same, and work product **in furtherance of the rendition of legal advice and services** regarding same.[65]

Following this privilege description is a list of subject matters for which the category of communications pertains.  This is the exact information required by the authorities that the NRA itself cited in prior pleadings challenging the exact same issue.  AMc is unable to provide a more specific response because the NRA again relies on generalized, universal complaints that the Court has addressed before:

> THE COURT: Let me -- let me -- let me say to you that I'm having no problem with you looking at their privilege log and objecting to something being listed on that log when the description doesn't support privilege or work product. That's what the point of the privilege log is.
>
> **My concern is that -- you know, sort of a wholesale the privilege log is not sufficient and, therefore, we should have it kind of thing**.
>
> I'm -- I'm fine with the specific examples that – you know, that you're giving and the reason that you would naturally have an objection to those. But it's the -- you know, **it's the basically we just know everything is bad because these are bad kind of argument that is causing me some difficulty**, especially from the position of one who might have to look at them.[66]

The NRA next argues that AMc's Categorical Log must include "the category, date range, authors and recipients, privilege asserted, and representations that the materials fall within the

---

[65] ECF 487, AMc's Categorical Log, at 1 (emphasis added).
[66] ECF 453, Discovery Hr'g Tr., at 43:24-44:12 (emphasis added) (App. 48-49).

scope of the privilege."[67]   The NRA concludes that AMc's log "does not adhere to these standards," but the Categorical Log plainly identifies the category, date range, all authors and recipients, the privileges asserted, and a privilege description that affirms the materials fall within the scope of the privilege.[68]

The NRA continues with additional generalized arguments that ring hollow.  It argues that the categorical log does not enable the NRA "to determine which individuals are participating in any particular communication,"[69] but the deliberate point of a categorical log is to not be required to break down individual communications.  The NRA complains that it is unable to identify the number of documents withheld in connection with each category,[70] but the NRA provides no legal support for its claim that this is required, AMc knows of no such requirement, and it is irrational to argue that quantifying the number of documents in a particular category supports the application of privilege for that category.  Finally, the NRA complains that it is unable to determine "whether a privilege has been appropriately applied,"[71] but, as explained above, each categorical entry identifies the exact elements required by even the NRA's legal authorities.

> b)  Internal privileged communications are still privileged.

AMc's Categorical Log includes emails of AMc employees forwarding communications with counsel to further the rendition of legal advice.  An employee forwarding a confidential communication to another employee does not waive a privilege.[72]  "[P]rivileged communications may be shared by non-attorney employees in order to relay information requested by attorneys."[73]

---

[67] ECF 533 at 14 (quoting *Jolivet v. Compass Grp. USA, Inc.*, No. 3:19-CV-2096-B, 2021 WL 5176930, at *10 (N.D. Tex. Sept. 14, 2021)).
[68] *See* ECF 487.
[69] ECF 533 at 15.
[70] *Id*.
[71] *Id*.
[72] *See Upjohn v. United States*, 449 U.S. 383, 394-95, 101 S. Ct. 677 (1981).
[73] *Fisher v. Halliburton*, No. H-05-1731, 2009 U.S. Dist. LEXIS 152887, at *33 (S.D. Tex. Jun. 9, 2009).

For each of its entries, AMc has adequately articulated the basis for privilege applying to these communications and the preservation of same in subsequent internal correspondence.

c) <em>The Categorical Log's termination date is appropriate.</em>

Finally, the NRA argues that AMc's Categorical Log impermissibly terminates in August 2020.  The Categorical Log concludes in August 2020 because that is the last date for which responsive documents were requested.  A review of the NRA's eight different request for production instruments confirms that the latest date for which it requested documents was on August 28, 2020.  Specifically, the NRA's Fifth Request for Production, served on August 28, 2020, contained an instruction that "the time period covered by these Requests is January 1, 2015 to present."[74]  Each subsequent request for production from the NRA states that the instructions from the NRA's Fifth Request for Production "are incorporated as if repeated verbatim and fully set forth herein."  It therefore follows that no request for production seeks documents created or transmitted after August 28, 2020.[75]

The purpose of a privilege log is to identify documents withheld on the basis of privilege. Because no documents after August 28, 2020 were responsive to the NRA's requests, AMc has not withheld any documents after that date.  AMc was never compelled to log documents that the NRA did not request.  The NRA's demand for this information is preposterous, not to mention unduly burdensome.  Notably, AMc has timely responded to each instrument and AMc has asserted numerous objections as to the time and scope of the NRA's requests—objections that are

---

[74] Ex. A-6, NRA's Fifth Request for Production to AMc, at 7 [App. 155].

[75] Similarly, the NRA's First Request for Production sought documents "to present" and were served on November 5, 2019. [App. 67]. The NRA's Second, Third, and Fourth requests incorporate this instruction. [App. 102; App. 141; App. 146] Thus, requests in the NRA's First, Second, Third, and Fourth Request for Production seek documents through November 5, 2019.  Requests in the NRA's Fifth, Sixth, Seventh, and Eighth Request for Production seek documents through August 28, 2020.

still standing because they were timely asserted and because the NRA declined to challenge them before the Court.[76]

The NRA also complains that AMc provided "no justification for [its] decision to conclude [its] log in August 2020,"[77] but the NRA refused AMc that opportunity when it unilaterally filed an opposed discovery motion in lieu of the required joint report.[78]  Nonetheless, (a) in a conference between counsel for the NRA and AMc on January 21, 2022 and (b) in a letter to NRA counsel dated January 1, 2022,[79] counsel for AMc explained the basis for the terminal date on its Categorical Log.[80]  It was not until the NRA filed its Objections that AMc understood the NRA to have ignored, forgotten, or rejected AMc's repeated explanations.

### d)  AMc has logged all withheld pre-2018 documents

Finally, the NRA complains that AMc's Categorical Log "omits pre-2018 documents."[81] AMc's Categorical Log includes all pre-2018 responsive documents withheld on the basis of privilege. The NRA's spattering of lawsuits against AMc did not begin until April 12, 2019 and the NRA's sham audits of AMc didn't even begin until September 2018. It is unclear what communications the NRA expects to exist in 2017 (and years prior), long before the NRA's plot to manufacture a legal dispute against AMc unfolded. Regardless, as stated above, all pre-2018 responsive documents withheld on the basis of privilege are included on the Categorical Log.

### 2.  The NRA continues to misrepresent legal authority

---

[76] For example, AMc's responses to the NRA's First Requests for Production object to the duration scope as overly broad and unduly burdensome, confirming "[u]nless specifically set forth below, Defendants will produce responsive non-privileged documents from January 1, 2018 to the commencement of this lawsuit."  ECF 48, at Ex. B.
[77] ECF 533 at 15.
[78] *See* ECF 62 at ¶ 3.
[79] ECF 534, Ex. 8 at 2 (App. 0110).
[80] Mason Declaration.
[81] ECF 533 at 8.

The NRA complains that the Categorical Log "do[es] not provide any detail as to the number of documents withheld – either in total or by category."[82]  The NRA *again* fails to provide *any* support for its claim that this is required.  While the NRA cites a single case for the proposition that AMc is required to detail the number of documents withheld, a cursory review of the case confirms no such requirement.[83]  In *Bobo*, the movant on a motion to deem privilege waived argued, in part, that more than 300 pages of documents in a privilege log included entries "described generically as 'Attorney Workpapers' and 'Josh Mars Remaining File'."[84]  The court held that "Bobo ha[d] not attempted to explain what the 300 pages of documents are" and that "Bobo must identify each document within the 300 pages."[85]  Thus, the court did not admonish Bobo for failing to count the number of documents; it admonished Bobo for providing an insufficient description of documents listed in its privilege log—the total number of which was "unspecified."[86]  Indeed, the court in *Bobo* made no mention or demand that Bobo count "the number of documents withheld – either in total or by category" as portrayed by the NRA.[87]  In fact, *Bobo* has *nothing* to do with categorical privilege logs.

The NRA further asserts that AMc "must break out each type of claimed protection—including work-product protection, attorney-client privilege, joint-defense privilege, joint-prosecution privilege, allied-litigant privilege, and common legal interest—into separate rows as to each category of withheld documents."[88]  Upon reading this in the NRA's Objections, AMc was shocked to see such a standard because AMc found no such authority when conducting extensive

---

[82] ECF 533 at 16.
[83] *See Bobo v. Frost, PLLC*, No. 1:17-cv-227-HSO-JCG, 2019 U.S. Dist. LEXIS 192984, at *5 (S.D. Miss. 2019).
[84] *Id*.
[85] *Id*.
[86] *Id*.
[87] ECF 533 at 16.
[88] *Id.* (quoting *Mfrs. Collection Co. ., LLC v. Precision Airmotive, LLC*, No. 3:12-cv-853-L, 2014 U.S. Dist. LEXIS 77522 (N.D. Tex. 2014)).

legal research on the requirements of a categorical privilege log.  Upon further review, AMc confirmed that the NRA apparently misunderstood its cited authority.

In *Precision Airmotive*, Judge Horan evaluated whether a party's categorical privilege log was sufficient for that litigation.[89]  Ultimately, for reasons similar to the present case, the Court ordered that a categorical privilege log was appropriate and that a document-by-document log would be unduly burdensome.[90]  While the court also ordered that the privilege log contain additional information, the court did so clearly invoking the specific facts and circumstances in that case.[91]  Indeed, the court qualified its opinion that a categorical privilege log was appropriate "under these particular circumstances."[92]

*Precision Airmotive* does not establish or identify a bright line rule that a categorical log "must break out each type of claimed protection—including work-product protection, attorney-client privilege, joint-defense privilege, joint-prosecution privilege, allied-litigant privilege, and common legal interest—into separate rows as to each category of withheld documents," as the NRA argues.  Judge Horan merely held that, based on the particular facts in that case, the party must include this additional information in its categorical privilege log.  The NRA has provided zero analysis of why "these particular circumstances" require AMc to again revise its privilege log.  The NRA's arguments fail.

3.  <u>The NRA's hypocrisy knows no bounds</u>

The NRA previously sought to compel the production of privileged documents through December 31, 2019,[93] and its request was denied.  Soon thereafter, the NRA filed the instant

---

[89] *Precision Airmotive, LLC*, 2014 U.S. Dist. LEXIS 77522 at *6.
[90] *Id.* at *12.
[91] *Id.* at **13-16.
[92] *Id.* at *6 ("As to AVCO's privilege log, the dispute over its adequacy turns on whether AVCO can properly submit a log that is organized categorically and not 'document-by-document.' The Court concludes that, under these particular circumstances, AVCO can properly do so consistent with Rule 26(b)(5)(A).").
[93] ECF 397.

motion, shifting its complaints, objecting to communications logged only through August 2020, and seeking to compel the production of privileged documents through the present. Notwithstanding the NRA's parsed and inapposite legal authority and unpersuasive arguments, it is striking that the NRA itself does not comply with the standard it now professes to be the "formal requirements . . . of privilege logs in the Fifth Circuit."[94]

In stark contrast to its draconian demands of AMc, the NRA has failed and refused to log *any* documents it withheld after 2019. Incredibly, despite now complaining that AMc's Categorical Log terminates on August 28, 2020, and demanding that documents be produced and/or logged through the present, the NRA itself has decided not to log *any* documents withheld after December 31, 2019. On numerous occasions, the NRA has attempted to skirt around its double standard, professing half-truths about its own practices and even arguing to the Court that: "The NRA logged documents after the start of litigation, so the defendant should too."[95] Despite its grandstanding before the Court, the bottom line is that the NRA has failed and refused to comply with the standards it now demands of AMc.

## B. There is No Basis for a Document-by-Document Privilege Log.

Understanding the unprecedented, draconian relief it demands from the Court, the NRA also seeks alternative relief for which there is still no basis. The NRA asserts that "Defendants' insistence to produce a categorical log for documents which should have been logged more than a year ago is unacceptable as a matter of law."[96] The NRA provides parsed legal standards and no factual analysis for this conclusion. Nevertheless, the issue is moot. The Court has already heard

---

[94] ECF 533 at 1.
[95] ECF 453, Discovery Hr'g Tr., at 58:22-23 (App. 58).
[96] ECF 533 at 18.

the parties' arguments regarding the permissibility of a categorical privilege log and adjudicated same.[97]

Regardless, the NRA acknowledges that a categorical privilege log is appropriate where "(a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded."[98]   Both of these factors are resoundingly satisfied in the present case.

*First*, requiring AMc to produce a document-by-document privilege log would be exceedingly burdensome, time consuming, wasteful, not proportional to the needs of the case, and expensive.   Based upon the NRA's nearly 300 requests for production, it is requesting ***at least 25,000 withheld privileged documents from April 12, 2019 through August 2020 alone***.[99]   By very conservative estimates, if an attorney spent one minute to properly log each document, it would take *at least 415 hours of billable time*.[100]   This time and expense is unduly burdensome on any occasion, but especially in the final weeks before a trial.

*Second*, it is undisputed that the "the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party."[101]   Indeed, the NRA admits that "even if [AMc] produced a new, compliant privilege log immediately, it is simply too late for the NRA make any use of it."[102]   There can be no better example of circumstances justifying the

---

[97] ECF 453, Discovery Hr'g Tr., at 57:1-11 (App. 57).
[98] ECF 533 at 19 (quoting *Manufacturers Collection Co., LLC v. Precision Airmotive, LLC*, No. 3:12-CV-853-L, 2014 WL 2558888, at *3 (N.D. Tex. June 6, 2014)).
[99] Ex. A, B. Mason Decl., at ¶ 5.
[100] *Id.* at ¶ 6.
[101] *See Manufacturers Collection Co., LLC v. Precision Airmotive, LLC*, No. 3:12-CV-853-L, 2014 WL 2558888, at *3 (N.D. Tex. June 6, 2014).
[102] ECF 533 at 18.

use of a categorical privilege log.  As a result, the NRA's attempt to rehash previously briefed and decided issues falls flat.

## C.     The NRA's Only Challenges to Withheld Categories Also Fails.

Finally, the NRA seeks to challenge the application of privilege for two distinct categories of communications on AMc's Categorical Log, communications with Dycio & Biggs and communications regarding NRATV.  Notably, the NRA's arguments on these points evidences the utility of a categorical privilege log.  AMc produced its Categorical Log and the NRA was able to identify discrete categories of communications for which it challenges the application of privilege—the exact purpose of logging withheld documents.  Nonetheless, these arguments—relegated to the final few paragraphs of the NRA's Objections—are without merit and should be overruled.

### 1.   Crime-Fraud Exception is Inapplicable.

The NRA argues that logged communications with Dycio & Biggs are not privileged because they relate to the April 22, 2019 Winkler Letters that the NRA contends form the basis of its false extortion claims against AMc.[103]  Notwithstanding the wanting merits of its argument, it is instructive that the NRA waits until the eve of trial to make this argument to the Court.  As detailed above, the NRA has known of Dycio's relationship with AMc as early as April 2019.  There can be no doubt that the NRA knew communications to exist between Dycio and AMc.  The NRA's extreme delay in seeking Court relief regarding these communications is inexcusable.

Regardless, the NRA's attempts to invoke the crime-fraud exception are meritless.  Fifth Circuit law is clear: "'To invoke the crime-fraud exception, a party must establish a prima facie

---

[103] *See* ECF 533 at 20.

case that a crime has been committed.'"[104]  The NRA has not established such a *prima facie* case, and, in fact, the NRA does not even attempt to meet this standard in its Objections.[105]

The NRA apparently seeks to invoke the crime-fraud exception based solely on its accusation against AMc that AMc took part in an extortion plot against the NRA.  To grant the NRA's requested relief based solely on its own accusations would produce absurd results.  Such a standard would mean that any party with baseless, fantastical accusations of extortion (or any other crime) can use their own conclusory claims to pierce the protection of other parties' attorney-client communications.  This result would be especially egregious in this case where the NRA was not subject to extortion, AMc did not participate in any extortion of the NRA, and the NRA's witnesses to the alleged conduct have corroborated AMc's position [106] (which the Court has already acknowledged[107]), and, to AMc's knowledge, the NRA has never pursued a criminal complaint against AMc regarding same.  Indeed, the NRA's entire extortion fallacy is the subject of AMc's defamation claim at trial.  The NRA's Objections should be overruled.

2.  Fiduciary Duty Exception is Inapplicable.

The NRA similarly argues that it is entitled to any and all confidential communications concerning NRATV under the crime fraud exception and the fiduciary duty exception.  Again, the NRA's egregious delay in filing this motion to compel is inexcusable.  AMc served its original Privilege Log on December 9, 2020, which included numerous references to NRATV.[108]  Yet the

---

[104] *Chandler v. Phx. Servs.*, Civil Action No. 7:19-cv-00014-O, 2020 U.S. Dist. LEXIS 15702, at *6 (N.D. Tex. 2020) (quoting *Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1008 (5th Cir. 1992)).
[105] ECF 533 at 18-19.
[106] *See* ECF 418 at ¶ 78; ECF 472 at 7, n. 48.
[107] *See* ECF 329, Memorandum Opinion and Order, at 30 ("First, the April 25 letter falsely accuses Col. North of issuing a "threat" to LaPierre on behalf of AMc. AMc points to testimony by three individuals with direct knowledge of the contents of the call (Col. North, LaPierre's Executive Assistant Millie Hallow, and now-current President of the NRA Carolyn Meadows), each of whom denied either that Col. North was acting on behalf of AMc or that Col. North issued a threat to LaPierre.").
[108] *See e.g.*, AMc Original Privilege Log, Entry Nos. 411, 412, 413, 414, 415, 416, 417, 418, 419, 420, 421.

NRA presents its arguments to the Court for the first time in a document filed 415 days after receiving that Original Privilege Log and merely five weeks before trial.  Regardless, the NRA again provides no legal support or factual analysis to meet its burden in invoking these exceptions.

*First*, the fiduciary duty exception cannot apply when there is no fiduciary relationship between AMc and the NRA.  As has been thoroughly established in prior briefs filed by AMc, there is neither a formal fiduciary relationship invoked by the terms of the Services Agreement nor an informal fiduciary relationship arising from the nature of the parties' relationship.[109]  The NRA makes no attempt to establish the existence of this relationship in its Objections; therefore, its argument fails.

*Second*, as explained above, a party asserting the crime-fraud exception "'must establish a prima facie case that a crime has been committed.'"[110]  The NRA has not attempted to meet that burden, let alone actually satisfied it.  To grant the NRA's requested relief based solely on the premise of its allegations of fraud would produce the untenable result that, in effect, a party is entitled to another party's privileged communications so long as it accuses that party of fraud.  The NRA's objection must be overruled.

## IV.    CONCLUSION

The NRA has no basis, in law or in fact, for the unprecedented relief it seeks. AMc respectfully requests this Court overrule the NRA's Objections in their entirety, and grant AMc any further relief, at law or in equity, to which it may be justly entitled.

---

[109] *See* ECF 279 at ¶¶ 77-85; ECF 418 at ¶¶ 61-67; and ECF 472 at 9-11.
[110] *Chandler v. Phx. Servs.*, Civil Action No. 7:19-cv-00014-O, 2020 U.S. Dist. LEXIS 15702, at *6 (N.D. Tex. 2020) (quoting *Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1008 (5th Cir. 1992)).

February 18, 2022.

Respectfully submitted,

*/s/ Brian E. Mason*
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com
**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR
DEFENDANTS/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 18, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Brian E. Mason*
BRIAN E. MASON