# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § | |
| **Plaintiff and Counter-Defendant** | § § | |
| v. | § § | |
| ACKERMAN MCQUEEN, INC., | § | Civil Action No. 3:19-cv-02074-G |
| **Defendant and Counter-Plaintiff,** | § § § | |
| and | § § | |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY, | § § § § | |
| **Defendants.** | | |

## PLAINTIFF NATIONAL RIFLE ASSOCIATION OF AMERICA'S MOTION IN LIMINE NO. 1 TO COLLATERALLY ESTOP RELITIGATION OF FACTUAL DETERMINATIONS MADE BY THE U.S. BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS AND TO PRECLUDE ACKERMAN MCQUEEN, INC. ET AL FROM REFERRING TO THE BANKRUPTCY ACTION AT TRIAL

**BREWER, ATTORNEYS & COUNSELORS**
Cecelia L. Fanelli
clf@brewerattorneys.com
Sarah B. Rogers
sbr@brewerattorneys.com
Philip J. Furia
pjf@brewerattorneys.com
David J. Partida
djp@brewerattorneys.com
Konstantin Parkhomenko
knp@brewerattorneys.com
**BREWER ATTORNEYS AND COUNSELORS**
1717 Main Street, Suite 5900
Dallas, Texas 75201

ATTORNEYS FOR PLAINTIFF/COUNTER-
DEFENDANT NATIONAL RIFLE
ASSOCIATION OF AMERICA

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ..................................................................................1

II. FACTUAL BACKGROUND ...................................................................................3

III. THE BANKRUPTCY ACTION AND FACTUAL FINDINGS................................................7

IV. ARGUMENT………..........................................................................................10

    A.      Factual issues in the Bankruptcy Action are identical to factual issues AMc seeks to relitigate in this action..................................................................................10

    B.      The factual issues AMc seeks to relitigate in this action were fully litigated in the Bankruptcy Action…………...........................................................................11

    C.      The factual issues decided in the Bankruptcy Action were a necessary part of Judge Hale's ruling in the Bankruptcy Action…….................................................12

    D.      This Court should preclude AMc from referring to the Bankruptcy Action or any of its proceedings, rulings, filings at this trial under Federal Rules of Evidence 401 and 403…………………..................................................................................13

          1.      The Bankruptcy Action and all its proceedings, rulings, filings are irrelevant to this case under FRE 401. ...............................................................................13

          2.      Allowing AMC to present to the jury the Bankruptcy Action or any of its proceedings, rulings, filings if this Court determines that collateral estoppel does not apply to Judge Hale's factual findings in the Bankruptcy Action would unduly prejudice the NRA by confusing the issues, misleading the jury under FRE 403………………............................................................................14

V. REQUEST FOR RELIEF ........................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerojet-Gen. Corp. v. Askew*,
    511 F.2d 710 (5th Cir. 1975) ...............................................................................................10

*Blonder-Tongue Laboratories v. University of Illinois Found.*,
    402 U.S. 313 (1971).............................................................................................................10

*Comer v. Murphy Oil USA, Inc.*,
    718 F.3d 460 (5th Cir. 2013) ...............................................................................................10

*Grant v. CRST Expedited, Inc.*,
    No. 1:18-CV-433, 2021 WL 2101741 (E.D. Tex. Apr. 7, 2021)...............................................1

*In re National Rifle Association of America and Sea Girt LLC*,
    Case No. 21-30085 (Bankr. N.D. Tex.) ............................................................... *passim*

*Randle v. Tregre*,
    147 F. Supp. 3d 581 (E.D. La. 2015), *aff'd*, 670 F. App'x 285 (5th Cir. 2016) ........................1

*Terrell v. Deconna*,
    877 F.2d 1267 (5th Cir. 1989) .............................................................................................10

*Wehling v. Columbia Broadcasting System*,
    721 F.2d 506 (5th Cir.1983) ................................................................................................10

In the 5th Circuit, "motions in limine may be used to secure a pretrial ruling that certain evidence is admissible [or inadmissible]." Motions in limine streamline a trial by settling evidentiary disputes in advance.1 To streamline this case and eliminate prejudice from AMc's false claims, the NRA seeks an in limine ruling from this Court that (1) AMc must immediately cease falsely claiming that the Bankruptcy Action was filed in bad faith (2) that AMc is collaterally estopped from relitigating Judge Hale's factual determinations in the Bankruptcy Action, and (3), that AMC is precluded from presenting at trial any of the testimony or evidence from the Bankruptcy Action.2 The NRA met and conferred with AMc in connection with this motion in limine in accordance with this Court's scheduling order in this case and in accordance with Local Rule 7.1(a).

## I.      PRELIMINARY STATEMENT

In this case, Ackerman McQueen and its wholly owned subsidiary Mercury Group, Inc. (collectively "AMc") have continuously made demonstrably false assertions concerning the NRA's Bankruptcy Action. Specifically, AMc incessantly makes the knowingly false claim that Judge Hale dismissed the NRA's petition in the Bankruptcy Action because it was filed in "bad faith."3

---

[1] *See Grant v. CRST Expedited, Inc.*, No. 1:18-CV-433, 2021 WL 2101741, at *1 (E.D. Tex. Apr. 7, 2021) ("[Motions in limine] are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues.") (citations omitted).
[2] *Randle v. Tregre*, 147 F. Supp. 3d 581, 596 (E.D. La. 2015), *aff'd*, 670 F. App'x 285 (5th Cir. 2016).
[3] *See, e.g.*, ECF 408 at pp. 1 and 3 (falsely stating "the bankruptcy court dismissed the NRA's Chapter 11 bad faith bankruptcy filing" and falsely stating that the NRA's Bankruptcy petiton "ultimately was dismissed because it was filed in bad faith"); ECF 418 at p. 8 (falsely claiming that "Judge Harlan D. Hale entered an order dismissing the NRA's bad-faith bankruptcy filing" despite Judge Hale's explicit statement otherwise); ECF 461 at p. 2 (referring to "the NRA's bad faith bankruptcy filing"); ECF 463 at p. 2 (referring to "the NRA's bad faith bankruptcy filing"); ECF 466 ("referring to the NRA's bad-faith bankruptcy hearing"); ECF 489 at p. 8 (referring to "the NRA's bad faith bankruptcy trial"); ECF 505 at pp. 1 and 3 (referring to "the NRA bad-faith bankruptcy").

1

In the Bankruptcy Action, Judge Hale went out of his way to carefully explain that "'***bad faith*' … *certainly is not the reason that the case was dismissed*."[4] And as Judge Hale then emphasized, "*I want everybody to know we spent a substantial amount of time on distinguishing reasons for dismissing the bankruptcy case. The reasons for dismissal of this case were painstakingly made. We spent a lot of time trying to get it right.*"[5] Indeed, Judge Hale explicitly rejected Mr. Gruber's objectively false and intentionally misleading claim that Judge Hale had dismissed the Bankruptcy Action as having been filed in bad faith. Judge Hale explained in a hearing following his ruling that:

> "the words 'bad faith'[6] were used this morning in our discussions.  I am not certain, but I don't think that term actually appears in the opinion.[7] *It certainly is not the reason that the case was dismissed*. The case was dismissed for lack of a bankruptcy purpose and lack of good faith."[8]

Despite Judge Hale's rebuke, AMc's counsel continues its misconduct, falsely representing to this Court that Judge Hale dismissed the NRA's bankruptcy petition as having been filed in "bad faith," a claim which it clearly intends to make to the jury in this case.[9]  Perhaps most brazenly, despite Judge Hale's explicit statements above, AMc's counsel filed a "Motion for Relief from Stay Order Due to Dismissal of the NRA's Bad Faith Bankruptcy Filing" in which it makes the

---

[4] Declaration of David J. Partida, Ex. 1, Transcript of May 14, 2021 Status Conference, (ECF 747) ("Bankr. Status Conference") at 24:18 – 19 (emphasis added) [App. 027].

[5] Bankr. Status Conference at 24:22 – 25:1 (emphasis added) [App. 027-28].

[6] The only use of these words at the status conference other than by Judge Hale were made by AMc's counsel, Mr. Gruber.

[7] *See generally*, ECF No. 558-1, Ex. 14, Bankruptcy Order Granting Motions to Dismiss, dated May 11, 2021 (ECF No. 740) ("Bankr. Order") [App. 698–736]

[8] Bankr. Status Conference at p. 24 lines 16-21 (emphasis added).

[9] *See, e.g.*, ECF 408 at pp. 1 and 3 (falsely stating "the bankruptcy court dismissed the NRA's Chapter 11 bad faith bankruptcy filing" and falsely stating that the NRA's Bankruptcy petiton "ultimately was dismissed because it was filed in bad faith"); ECF 418 at p. 8 (falsely claiming that "Judge Harlan D. Hale entered an order dismissing the NRA's bad-faith bankruptcy filing" despite Judge Hale's explicit statement otherwise); ECF 461 at p. 2 (referring to "the NRA's bad faith bankruptcy filing"); ECF 463 at p. 2 (referring to "the NRA's bad faith bankruptcy filing"); ECF 466 ("referring to the NRA's bad-faith bankruptcy hearing"); ECF 489 at p. 8 (referring to "the NRA's bad faith bankruptcy trial"); ECF 505 at pp. 1 and 3 (referring to "the NRA bad-faith bankruptcy")*.*

blatantly false representation to this court that Judge Hale made an "express finding of bad faith"![10]

And in numerous subsequent filings in this case, makes clear that AMc intends to use the

Bankruptcy Action to pollute, confuse, and mislead the jury in this case with the same false

narrative and arguments that Judge Hale forcefully rejected in the Bankruptcy Action.[11] The NRA

respectfully requests that this Court order AMc and its counsel to immediately withdraw these

false representations and to not make these false representations in any filing or at trial for the

remainder of this case.

Judge Hale did however make express findings of facts with respect to his decision to not

appoint a trustee as AMc had unsuccessfully requested and the NRA therefore requests that this

Court collaterally estop AMc from relitigating those factual findings here and instruct the jury that

the factual determinations set forth in Section III, *infra*, are indisputable and binding.  Finally,

other than those factual findings which were made in connection with AMc's unsuccessful request

to appoint a trustee, none of the issues in the Bankruptcy Action or the NRA's reason for filing it

have any relevance to any claim, defense, or counterclaim at issue in this case and AMc should

therefore be precluded from referring to the Bankruptcy Action or the Judge's dismissal of it at

trial in this case.

## II.      FACTUAL BACKGROUND

On January 15, 2021, the NRA and its affiliate, Sea Girt, LLC, filed voluntary petitions for

relief under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Northern

---

[10] ECF 232 at p. 3.

[11] *See, e.g.*, ECF 408 at pp. 1 and 3 (falsely stating "the bankruptcy court dismissed the NRA's Chapter 11 bad faith bankruptcy filing" and falsely stating that the NRA's Bankruptcy petiton "ultimately was dismissed because it was filed in bad faith"); ECF 418 at p. 8 (falsely claiming that "Judge Harlan D. Hale entered an order dismissing the NRA's bad-faith bankruptcy filing" despite Judge Hale's explicit statement otherwise); ECF 461 at p. 2 (referring to "the NRA's bad faith bankruptcy filing"); ECF 463 at p. 2 (referring to "the NRA's bad faith bankruptcy filing"); ECF 466 ("referring to the NRA's bad-faith bankruptcy hearing"); ECF 489 at p. 8 (referring to "the NRA's bad faith bankruptcy trial"); ECF 505 at pp. 1 and 3 (referring to "the NRA bad-faith bankruptcy").

District of Texas, styled as *In re National Rifle Association of America and Sea Girt LLC*, Case

No. 21-30085 (Bankr. N.D. Tex.) (the "Bankruptcy Action"). AMc was a party to the Bankruptcy

Action. AMc moved to dismiss the Bankruptcy Action, or alternatively, appoint a trustee (AMc's

"Motion to Dismiss"). As a party to the Bankruptcy Action and in connection with its Motion to

Dismiss that case, AMc fully participated in fact and testimonial discovery as well as in the

subsequent trial which occurred over twelve days with twenty-three witnesses.[12]

In the Bankruptcy Action, AMc purposely litigated issues of fact that were essential to

Judge Hale's ruling. Indeed, AMc's central theme in its Motion to Dismiss was the same as its

central theme in this case—"[s]ince 2018, when the NRA and LaPierre hired the Brewer Firm, the

NRA has embarked on a scorched-earth litigation strategy designed to identify various scapegoats

for its "the NRA" decades-long fraud and mismanagement and to keep Brewer's promise to

LaPierre that he was going to keep him out of jail."[13] Indeed, here, AMc parrots the same

allegations averred in its Motion to Dismiss, when it alleges that "the NRA's malicious and

fraudulent actions towards AMc were made possible by LaPierre's paranoia and guilty conscience,

as he repeatedly proclaimed that Brewer was the only one who 'could keep him out of jail.'"[14]

Furthermore, in the Bankruptcy Action, AMc's counsel specifically argued to Judge Hale that

AMc's arguments extended far beyond just the purpose for the bankruptcy. Indeed, AMc's

counsel, Mr. Mason told Judge Hale in his opening statement in the Bankruptcy Action

> However, as you will see throughout this trial, the NRA's leadership has become just a
> shadow of itself.  Once a credible voice defending the Second Amendment, the NRA's
> leadership has been relegated to fraud, dishonesty, incompetence, and gross
> mismanagement – ***and I am just not talking about with respect to this bankruptcy***.[15]

---

[12] Bankr. Order, at p. 11 [App. 709].
[13] Partida Decl. Ex. 2 AMc's Motion to Dismiss the Chapter 11 Bankruptcy Petition, , dated February 10, 2021 (ECF No. 131) ("AMc MTD") ¶ 14 [App. 041]
[14] Second Amended Counterclaims, EFC No. 238-1 at p. 2.
[15] Partida Decl. Ex. 3 Transcript of April 5, 2021 proceedings in the Bankruptcy Action ("Mason Opening Statement") at 23:5-23:10 [App. 107].

Despite Judge Hale's findings of fact in the Bankruptcy Action, and his specific declaration that

he did not dismiss the NRA's bankruptcy petition as having been filed in bad faith, AMc wants

this Court to allow it to present evidence and argue to the jury that the NRA's "compliance

initiative" was a part of an elaborate, far-fetched scheme by NRA counsel to scapegoat AMc and

steal its business as part of a personal vendetta by the NRA's counsel against his now-deceased

father-in-law – and issue that AMc specifically litigated in the Bankruptcy Action.[16]  And in fact,

Mr. Mason stated in his opening statement in the Bankruptcy Action that the issue whether the

NRA's attempts at compliance were the source of its litigation issues which it is vigorously

litigating in this case *was at issue in the Bankruptcy Action*.  Indeed, Mr. Mason stated in arguing

for the appointment of a trustee that

> Throughout this trial we expect that the NRA is going to contend that it's cleaned up its
> act.  It sued my client Ackerman, it hired the Brewer law firm to do a complete top-down
> review of its compliance issues, regulatory issues, and congressional issues like Congress'
> Russian investigation, and litigation issues, and that the allegations of wrongdoing are
> stale; that the appointment of a trustee would end the existence of the NRA's [sic] as we
> know it.[17]

Confronted with this same narrative, Judge Hale gave it no weight and made findings of

facts directly contrary to the factual contentions that AMc seeks to present to the jury in this case.

And, as detailed above, Judge Hale found that the NRA's efforts to come into compliance with

New York Law and to resolve whistleblower concerns about AMc and other vendors, along with

AMc's refusal to cooperate with the NRA's compliance efforts,[18] resulted in the current litigation

between the NRA and AMc.[19]

---

[16] The Services Agreement emphasized that AMc was retained as a "nonexclusive source for the services described
[t]herein," leaving the NRA free to hire any competing advertising, public relations, or service providers it wished.
Services Agreement at p. 1.  And the NRA was entitled, in its "sole and exclusive discretion, [to] terminate the Services
Agreement without any cause whatsoever" upon 90 days' notice. Services Agreement at § XI.B.

[17] Mason Opening Statement at 24:6-13 [App. 108].

[18] *See, e.g.,* Bankr. Order at pp. 2-5, 35 [App. 700-703, 733].

[19] Bankr. Order at pp. 5-6 [App. 703-704].

As a result of Judge Hale's ruling in the Bankruptcy Action, AMc is now collaterally estopped from relitigating the issues of fact that it litigated and which were explicitly decided by Judge Hale in the Bankruptcy Action in this lawsuit. Allowing AMc to present testimony otherwise would prejudice the NRA, especially given Judge Hale's clear finding that it was AMc's own refusal to cooperate with the NRA's compliance initiative that resulted in the litigation with the NRA of which it now complains. Therefore, the NRA requests that this Court adopt Judge Hale's factual findings in the Bankruptcy Action as set forth below and that this Court preclude AMc from introducing any evidence or legal arguments that conflict with Judge Hale's findings of fact in the Bankruptcy Action.

Finally, even if this Court does not apply collateral estoppel with regard to Judge Hales' factual determinations with respect to AMc's request to appoint a trustee, this Court should still preclude AMc from referring to the Bankruptcy Action or any of its proceedings, rulings, filings at this trial under Federal Rules of Evidence 401 and 403 because they are not relevant and their prejudicial impact far outweigh any iota of probative value. Indeed, if this Court determines that collateral estoppel does not apply to Judge Hale's findings of fact in the Bankruptcy Action, it will necessarily have determined that (1) the issues in the Bankruptcy Action and this case are not the same; and/or (2) the issues in the Bankruptcy Action relevant to this case (if any) were not actually litigated in the Bankruptcy Action; and/or that (3) Judge Hale's factual determinations in the Bankruptcy Action were not necessary to his ruling in that case. If this Court makes any or all of those determinations, then, *a fortiori* under Federal Rule of Evidence 401, the Bankruptcy Action has no relevance to this case or trial because this Court will have already decided that the Bankruptcy Action dealt with different issues; and/or that the issues in this case were not actually

litigated in the Bankruptcy Action; and/or that Judge Hale's factual findings in the Bankruptcy

action were not necessary to his ruling in the Bankruptcy Action.

Further, if this Court determines that collateral estoppel does not apply to Judge Hale's

ruling in the Bankruptcy Action, under Federal Rule of Evidence 403, AMc's reference to the

Bankruptcy Action and any of its proceedings, rulings, filings at trial in this case would result in

unfair prejudice to the NRA. Indeed, allowing AMc to present to the jury such information at trial

in this case—which this Court would have already determined to involve different issues, and/or,

which were not actually litigated, and/or which were extraneous to Judge Hale's ruling in the

Bankruptcy Action—would allow AMc to present information that would confuse the issues and

mislead the jury and unduly prejudice the NRA because the jury could rely upon those misleading

and irrelevant misrepresentations to unreliably infer that AMc's false allegations (which were

expressly rejected by Judge Hale in the Bankruptcy Action) are true in this case.

### III. THE BANKRUPTCY ACTION AND FACTUAL FINDINGS

For the reasons stated herein, AMc is precluded from introducing any evidence

contradicting or seeking to contradict Judge Hale's factual findings in the Bankruptcy Action that

the NRA's actions were solely the result of an effort by the NRA to address compliance concerns

and to satisfy regulatory and legal requirements:

1) "NRA Board Member Tom King was advised in the middle of 2017 by then New York Attorney General, Eric Schneiderman, that investigations into the NRA were being opened and that it should "prepare for the worst."[20]

2) "In response to this warning which King relayed to the NRA's executive vice president, Wayne LaPierre, LaPierre decided that the "NRA ought to take a look at everything, a 360-degree look to make sure [the NRA] w[as] in total compliance with New York State not-for-profit law, and if [the NRA] w[asn't] [the NRA] needed to fix things.'"[21]

---

[20] Bankr. Order at p. 3.[App. 701]
[21] *Id.*

3) "In early 2018, the NRA retained two different firms—Morgan, Lewis & Bockius LLP and Brewer Attorneys & Counselors ("BAC") – to carry out LaPierre's directive."[22]

4) "In July 2018, several whistleblowers came forward with the encouragement of Mr. Spray and presented a memo to the NRA Audit Committee regarding their top concerns (the "Whistleblower Memo")."

5) The Whistleblower Memo included concerns regarding, *inter alia*:

    a. "senior management override of internal controls relating to, among other things, accounts payable procedures, travel and expense reporting, and procurement/contracts policy,"[23]

    b. "management making decisions in the best interests of vendors instead of the NRA,"[24] and

    c. "vague and deceptive billing practices of vendors."[25]

6) "Following the presentation of the Whistleblower Memo to the Audit Committee, the NRA took several actions, including examining related party transactions and reviewing vendor contracts.[26]

7) "As a result of this review process, the NRA required the inclusion of specific metrics in all contracts and improved documentation and recordkeeping."[27]

8) "One of the more significant actions taken in response to the Whistleblower Memo was to send letters to the NRA's vendors notifying them of the rules regarding proper invoicing."[28]

9) "While most vendors complied with these new measures, some did not. As a result, some contracts with vendors were re-negotiated, and some were terminated."[29]

10) "This process caused a rift between the NRA and one of its most significant vendors, Ackerman McQueen, Inc. ("Ackerman")."[30]

---

[22] Bankr. Order at pp. 3-4.  Note, Morgan, Lewis & Bockius retained beginning in the summer of 2017 followed by BAC in early 2018. [App. 701-702]
[23] Bankr. Order at p. 4. [App. 702]
[24] Bankr. Order at pp. 4-5. [App. 702-703]
[25] Bankr. Order at p. 5. [App. 703]
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*

11) "Ackerman had very close ties with the NRA and had been the NRA's marketing and public relations firm for decades, but several of the concerns expressed in the Whistleblower Memo related to the NRA's relationship with Ackerman."[31]

12) "The disagreements [between the NRA and AMc] that came from discussions regarding billing practices and their business relationship escalated and have spawned four overlapping lawsuits—three in Virginia state court and one in federal court in the Northern District of Texas."[32]

13) "Whether it is yet complete or not, there has been more disclosure and self-reporting since 2017. Both Ms. Rowling and Mr. Erstling,[33] the NRA's Director of Budget and Financial Analysis, testified that the concerns they expressed in the 2017 Whistleblower Memo are no longer concerns. Mr. Frazer testified regarding the compliance training program that the NRA now has for employees. Mr. Spray testified credibly that the change that has occurred within the NRA over the past few years could not have occurred without the active support of Mr. LaPierre. It is also an encouraging fact that Ms. Rowling has risen in the ranks of the NRA to become the acting chief financial officer, both because of her former status as a whistleblower and because of the Court's impression of her from her testimony as a champion of compliance.[34]

14) "In short, the testimony of Ms. Rowling and several others suggests that *the NRA now understands the importance of compliance*. Outside of bankruptcy, the NRA can pay its creditors, *continue to fulfill its mission, continue to improve its governance and internal controls*, contest dissolution in the NYAG Enforcement Action, and pursue the legal steps necessary to leave New York."[35]

In light of Judge Hale's express and detailed factual findings in the Bankruptcy Action as set forth above, there can be no doubt that the NRA's efforts to come into compliance with New York law and its efforts to resolve the complaints in the Whistleblower Memo were the driving force behind the vendor correspondence and subsequent books and records demand that the the NRA made to AMc in accordance with the parties' Services Agreement. Accordingly, based upon Judge Hale's findings of fact in the Bankruptcy Action, the NRA moves to exclude any evidence that AMc might introduce to imply that the NRA's vendor communications with it, books and records demands to it, or that the litigation that the NRA instituted against AMc as a result of

---

[31] *Id.*
[32] Bankr. Order at pp. 5-6. [App. 703-704]
[33] These are two of the whistleblowers.
[34] Bankr. Order at p. 35. [App. 733]
[35] Bankr. Order at p. 35 (emphasis added) [App. 703].

9

AMc's refusal to comply with its obligations to produce its books and records to the NRA under the Services Agreement was for any purpose other than legal compliance and addressing the concerns in the Whistleblower Memo.

## IV.    ARGUMENT

Federal collateral estoppel principles govern the preclusive effect of Judge Hale's findings of fact in the Bankruptcy Action in this case.[36] Collateral estoppel is an equitable doctrine applied by courts to preclude the relitigating of issues of fact or law that were actually litigated previously. The doctrine of collateral estoppel (*i.e.*, issue preclusion), applies "***even if the second suit is for a different cause of action***, the right, question, or fact once so determined must, as between the same parties ***or their privies***, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."[37]

Collateral estoppel has three elements: (1) the issue at stake must be same as one involved in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a necessary part of the judgment in the earlier action.[38] In this case, all three elements are met.

**A.    Factual issues in the Bankruptcy Action are identical to factual issues AMc seeks to relitigate in this action.**

The factual issues here concerning the NRA's alleged pretextual scheme for seeking to examine the files, books, and records used by AMc in connection with the NRA and, later to file

---

[36] *See Blonder-Tongue Laboratories v. University of Illinois Found.,* 402 U.S. 313, 324 n. 12*,* (1971); *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466–67 (5th Cir. 2013) (collecting cases) ("This rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." [citations] The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.") (internal citations and quotations omitted); *see also*, *Aerojet-Gen. Corp. v. Askew*, 511 F.2d 710, 716 n. 8 (5th Cir. 1975) ("The application of state law on collateral estoppel cannot nullify a federal court judgment.")

[37] *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013) (emphasis added) (internal citations and quotations omitted) (collecting cases).

[38] *See Terrell v. Deconna*, 877 F.2d 1267, 1270 (5th Cir. 1989) (citing *Wehling v. Columbia Broadcasting System*, 721 F.2d 506, 508 (5th Cir.1983)).

suit against AMc are identical to the factual issues that were litigated and decided by Judge Hale in the Bankruptcy Action. AMc had every incentive to litigate,[39] and did in fact litigate, these same issues in the Bankruptcy Action. AMc's Motion to Dismiss repeatedly cites and incorporates its own filings in this action and the concurrent Virginia litigations between the NRA and AMc.[40]

Indeed, AMc urged in its Motion to Dismiss that a trustee must be appointed "given the presence of the Brewer firm in communication with NRA's litigation strategy."[41] In that same motion, AMc made allegations which it now expressly and repeatedly incorporates into this case. For example, AMc alleges that "the NRA's self-imposed, wasteful, and destructive litigation largely stems from claims intentionally initiated by the NRA to deflect the spotlight off its own malfeasance."[42] According to AMc, it was for these reasons that "[t]he NRA has instituted a bevy of litigation against numerous parties, including four lawsuits against AMc."[43] In summary, AMc argued that the Bankruptcy Action was part of the NRA's alleged litigation scheme in this case.[44]

**B.      The factual issues AMc seeks to relitigate in this action were fully litigated in the Bankruptcy Action.**

AMc fully litigated the identical factual issues it seeks to relitigate here in the Bankruptcy Action. Indeed, Judge Hale specifically highlighted in his ruling on AMc's Motion to Dismiss that "Ackerman accused the NRA of … using the bankruptcy filing to escape civil prosecution and avoid regulatory oversight from the NYAG *but also to stall litigation.*"[45] In noting this, Judge

---

[39] This is highlighted by AMc's allegations in its Motion to Dismiss the Bankruptcy Action that "litigants against the NRA, like AMc *are the largest stakeholders in this Bankruptcy Case.*" AMc MTD at ¶ 83  [App. 073].

[40] *See*, *e.g.*, AMc at ¶¶ 14, 15, 83, 84 and footnotes 11, 12, 193, 194, 198, and 199. [App. 041, 042, 073, 074].

[41] AMc MTD at ¶ 84 [App. 074].

[42] AMc MTD at ¶ 4 [App. 037], Second Amended Counterclaims, EFC No. 238-1 at p. 2 ("Acting on behalf of the NRA, LaPierre sought assistance from lawyer, William A. Brewer III ("Brewer"), and his law firm/public-relations firm, Brewer Attorneys & Counselors (the "Brewer Firm"), who together with LaPierre's Chief of Staff, Joshua Powell ("Powell"), formulated a plan to pin all liability on a convenient scapegoat, deflect media attention from LaPierre's malfeasance and failed NRA programs, and maintain LaPierre's domination of the NRA.").

[43] AMc MTD at ¶ 15 [App. 042].

[44] AMc MTD at ¶ 30  [App. 049].

[45] Bankr. Order at p. 15 (citing AMc MTD at ¶¶ 2, 29-31) [App. 670].

Hale explicitly cited AMc's allegations in its Motion to Dismiss that the Bankruptcy Action was a tactic in its overarching alleged litigation plot against AMc which was being pursued in this case.

Contrary to AMc's baseless theory, after having specifically considered AMc's central argument – that the NRA was engaged in malicious litigation against AMc to scapegoat its own wrongdoing – Judge Hale instead found that the NRA's attempts to improve record keeping and compliance with New York law in response to the Whistleblower Memo and AMc's failure to cooperate resulted in this litigation between AMc and the NRA. As Judge Hale determined, "***this process*** caused a rift between the NRA and one of its most significant vendors, Ackerman McQueen, Inc. ("Ackerman")"[46] and further that ***"[t]he disagreements [between the NRA and AMc] that came from discussions regarding billing practices and their business relationship*** escalated and have spawned four overlapping lawsuits—three in Virginia state court and one in federal court in the Northern District of Texas."[47]

## C. The factual issues decided in the Bankruptcy Action were a necessary part of Judge Hale's ruling in the Bankruptcy Action.

The factual issues decided by Judge Hale in the Bankruptcy Action were critical and necessary to his ruling on AMc's Motion to Dismiss. And Judge Hale specifically denied AMc's request to appoint a trustee, ***because***, based upon the factual findings set forth in Section II above, "***the NRA has made progress since 2017 with its course correction***."[48] As Judge Hale detailed:

> ***Whether it is yet complete or not, there has been more disclosure and self-reporting since 2017. Both Ms. Rowling and Mr. Erstling, the NRA's Director of Budget and Financial Analysis, testified that the concerns they expressed in the 2017 Whistleblower Memo are no longer concerns. Mr. Frazer testified regarding the compliance training program that the NRA now has for employees. Mr. Spray testified credibly that the change that has occurred within the NRA over the past few years could not have occurred without the active support of Mr. LaPierre. It is also an encouraging fact that Ms. Rowling has risen in the ranks of the NRA to become the acting chief financial officer, both because***

---

[46] Bankr. Order at p. 5 (emphasis added) [App. 703].
[47] Bankr. Order at pp. 5-6 (emphasis added) [App. 703-704].
[48] Bankr. Order at p. 35 (emphasis added). [App. 733]

*of her former status as a whistleblower and because of the Court's impression of her from her testimony as a champion of compliance*.[49]

On that basis, Judge Hale concluded that appointment of a trustee or an examiner would not be in the best interests of the bankruptcy estate because

> In short, the testimony of Ms. Rowling and several others suggests that **the NRA now understands the importance of compliance**. Outside of bankruptcy, the NRA can pay its creditors, **continue to fulfill its mission, continue to improve its governance and internal controls**, contest dissolution in the NYAG Enforcement Action, and pursue the legal steps necessary to leave New York.[50]

Judge Hale's outright rejection of AMc's theory that the NRA's litigation strategy in this case was motivated by scapegoating and not compliance was essential to his refusal to appoint a trustee in the Bankruptcy Action.

**D.      This Court should preclude AMc from referring to the Bankruptcy Action or any of its proceedings, rulings, filings at this trial under Federal Rules of Evidence 401 and 403.**

**1.      The Bankruptcy Action and all its proceedings, rulings, filings are irrelevant to this case under FRE 401.**

Federal Rule of Evidence 401 provides that evidence is relevant only if "(a) it has a tendency to make a fact more or less probably than it would be without the evidence; **and** (b) the fact is of consequence in determining the action." In this case, the NRA's reasons for seeking bankruptcy protection have no relevance to any claim, defense, or counterclaim of any party. In addition, if the Court determines that (1) the issues in the Bankruptcy Action are not the same as the issues in this case; and/or (2) the issues in the Bankruptcy Action were not actually litigated; and/or (3) Judge Hale's factual findings set forth above were not necessary to Judge Hale's ruling in the Bankruptcy Action, then *a fortiori*, the Bankruptcy Action or any of its proceedings, rulings, filings have no relevance to this case. For these reasons, any reference to the Bankruptcy Action

---

[49] Bankr. Order at p. 35 (emphasis added) [App. 733].
[50] Bankr. Order at p. 35 (emphasis added) [App. 733].

or any of its proceedings, rulings, filings by AMc to the jury in this case must be precluded under

Rule 401.

> **2.      Allowing AMC to present to the jury the Bankruptcy Action or any of its proceedings, rulings, filings if this Court determines that collateral estoppel does not apply to Judge Hale's factual findings in the Bankruptcy Action would unduly prejudice the NRA by confusing the issues, misleading the jury under FRE 403.**

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if

its probative value is substantially outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence." Here, despite Judge Hale's findings of fact in the Bankruptcy

Action, AMc wants this Court to allow it to present evidence and argue to the jury that the NRA's

"compliance initiative" was a part of an elaborate scheme by NRA counsel to scapegoat AMc and

steal its business as part of a personal vendetta by the NRA's counsel against his now-deceased

father-in-law. Confronted with this same narrative, Judge Hale gave it no weight and made

findings of facts directly contrary to the factual contentions that AMc seeks to present to the jury

in this case. Despite AMc's continuous false representations about Judge Hale's rulings in the

Bankruptcy Action—created out of whole cloth by Mr. Gruber, as detailed above, Judge Hale

expressly found that the NRA's efforts to come into compliance with New York Law and to resolve

whistleblower concerns about AMc and other vendors, along with AMc's refusal to cooperate with

the NRA's compliance efforts,[51] resulted in the current litigation between the NRA and AMc.[52]

If, assuming *arguendo*, that AMc has viable counterclaims against the NRA or any viable

defenses to the NRA's claims against it in this case, for the reasons set forth in detail above, AMc

may not use the Bankruptcy Action or the related filings or rulings therein to argue to the jury that

---

[51] *See, e.g.,* Bankr. Order at pp. 2-5, 35. [App. 700-703, 733]
[52] Bankr. Order at pp. 5-6 [App. 703-704].

the NRA somehow was scheming to defraud AMc or to scapegoat AMc when it exercised its contractual right under the Services Agreement to demanded all of AMc's books and records which AMc has still refused to provide. Judge Hale's dismissal of the NRA's bankruptcy petition has no probative value in this case—AMc simply wants to use that ruling to prejudice the jury against the NRA by implying that the dismissal of the Bankruptcy Action somehow gives credence to AMc's unhinged conspiracy theory in this case. For these reasons, any reference to the Bankruptcy Action or any of its proceedings, rulings, filings by AMc to the jury in this case must be precluded under Rule 403.

## V. <u>REQUEST FOR RELIEF</u>

For the foregoing reasons, the NRA requests that this Court rule that AMc is collaterally estopped from relitigating Judge Hale's factual determinations in the Bankruptcy Action, or, in the alternative, to preclude AMc from presenting at trial any of the testimony or evidence from the Bankruptcy Action.

Dated: February 24, 2022    Respectfully submitted,

           By: /s/ *Cecelia L. Fanelli*

           Cecelia L. Fanelli
           clf@brewerattorneys.com
           Sarah B. Rogers
           sbr@brewerattorneys.com
           Philip J. Furia
           pjf@brewerattorneys.com
           David J. Partida
           djp@brewerattorneys.com
           Konstantin Parkhomenko
           knp@brewerattorneys.com
           **BREWER ATTORNEYS AND COUNSELORS**
           1717 Main Street, Suite 5900
           Dallas, Texas 75201

           **ATTORNEYS FOR PLAINTIFF/COUNTER-
           DEFENDANT NATIONAL RIFLE
           ASSOCIATION OF AMERICA**

## CERTIFICATE OF CONFERENCE

On February 23, 2022, counsel for the NRA conferred with counsel for Defendants regarding this Motion.

           */s/ Cecelia L. Fanelli*
           Cecelia L. Fanelli

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel of record by a manner authorized by the Federal Rules of Civil Procedure.

*/s/ Cecelia L. Fanelli*
Cecelia L. Fanelli