# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| *Plaintiff and Counter-Defendant*, | § § § | |
| **v.** | § § | **Case No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** | § § § | |
| *Defendant and Counter-Plaintiff*, | § § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY,** | § § § § | |
| *Defendants*. | § § | |

## DEFENDANTS' RESPONSE TO THE NRA'S MOTION TO DISQUALIFY DORSEY & WHITNEY LLP OR, IN THE ALTERNATIVE, FOR PROTECTION OF CONFIDENTIAL INFORMATION AND DEFENDANTS' MOTION FOR SANCTIONS

TO THE HONORABLE A. JOE FISH:

Defendant/Counter-Plaintiff Ackerman McQueen, Inc. ("*AMc*") and Defendants Mercury Group, Inc. ("*Mercury*"), Henry Martin ("*Martin*"), William Winkler ("*Winkler*"), and Melanie Montgomery ("*Montgomery*") (collectively, "*Defendants*") file this *Response in Opposition to Plaintiff National Rifle Association of America's Motion to Disqualify Dorsey & Whitney LLP or, in the Alternative, for Protection of Confidential Information* (the "*Response*"). Defendants further file *Defendants' Motion for Sanctions* and respectfully request the Court's overruling of the *NRA's Objections to Defendants' Supplemental Categorical Privilege Log* (ECF 533).

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND ................................................................................2

    A.      Dycio and the NRA ..................................................................................2

    B.      NRA Discovery Delays in the Texas Action .........................................4

    C.      AMc's Categorical Log ...........................................................................5

III.    ARGUMENTS & AUTHORITIES ......................................................................6

    A.      There Was No Basis to Disqualify Dycio. ..............................................6

        1.      The NRA has not proven the existence of an attorney-client
            relationship ..................................................................................7

        2.      There is no substantial relationship between Dycio's
            representations ...........................................................................10

    B.      Any Conflict by Dycio Cannot Be Imputed to Dorsey. .......................12

    C.      The NRA Waived its Right to Try to Disqualify Dorsey. ...................15

        1.      The NRA knew of the conflict in April 2019 ...........................16

        2.      There is no valid reason for the NRA's delay ..........................17

        3.      The NRA's Motion was delayed for tactical reasons ...............18

        4.      Disqualification will result in severe prejudice to AMc ..........19

    D.      The NRA's Alternative Relief Must Be Denied ..................................21

        1.      There is No Basis to Dismiss AMc's Counterclaims ...............21

        2.      Production of Privileged Documents is Improper ....................22

        3.      Alternative Frameworks are Likewise Improper ......................22

IV.     MOTION FOR SANCTIONS ............................................................................23

V.      REQUEST FOR RULING ..................................................................................25

VI.     PRAYER ..............................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Abney v. Wal-Mart*, 984 F. Supp. 526 (E.D. Tex. 1997) ............................................. 15, 18, 20, 21

*BCC Merch. Sols., Inc. v. Jet Pay, LLC*, No. 3:12-CV-5185-B-BK, 2015 U.S. Dist. LEXIS 187197 (N.D. Tex. 2015) (J. Toliver) ........................................................................... 4

*Centerboard Secs., LLC v. Benefuel, Inc.*, No. 3:15-CV-2611-G, 2016 U.S. Dist. LEXIS 72476 (N.D. Tex. June 3, 2016) (Fish, J.) ........................................................................... 7, 10

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) .............................................................. 23

*Dynamic 3D Geosolutions, LLC v. Schlumberger Ltd.*, No. A-14-CV-112-LY, 2015 U.S. Dist. LEXIS 67353 (W.D. Tex. Mar. 31, 2015) ........................................................... 15, 22

*Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466 (Tex. 1994) (per curiam) ..................... 16

*In re Am. Home Prods. Corp.*, 985 S.W.2d 68 (Tex. 1998) ............................................. 13, 14, 22

*In re American Airlines, Inc.*, 972 F.2d 605 (5th Cir. 1992) .................................................... 7, 10

*In re Crosby*, No. 17-5391, 2019 U.S. Dist. LEXIS 200250 (E.D. La. Nov. 18, 2019) ... 16, 18, 20

*In re Stone*, 986 F.2d 898 (5th Cir. 1993) ...................................................................... 24

*OrchestrateHR, Inc. v. Trombetta*, 178 F. Supp. 3d 476 (N.D. Tex. 2016) ................................ 24

*Pena v. Lone Star Nat'l Bank, N.A.*, 807 Fed. App'x 353 (5th Cir. 2020) .................................. 23

*Santander Consumer United States, Inc. v. Maywood Motors, Inc.*, Civil Action No. 3:16-CV-2499-B-BK, 2017 U.S. Dist. LEXIS 223443 (N.D. Tex. 2017) (J. Toliver) ............................ 4

*Simpson v. James*, 903 F.2d 372 (5th Cir. 1990) .............................................................. 7

*Stonecoat of Tex., LLC v. Procal Stone Design, LLC*, No. 4:17-CV-00303, 2019 U.S. Dist. LEXIS 233044 (E.D. Tex. Mar. 8, 2019) ......................................................................... 15, 21

*Tierra Tech de Mex. SA de CV v. Purvis Equip. Corp.*, No. 3:15-CV-4044-G, 2016 U.S. Dist. LEXIS 99229 (N.D. Tex. 2016) (J. Fish) .................................................................. 1, 7, 8, 10

*United States ex rel. Guzder v. MKM Eng'rs, Inc.*, No. H-05-895, 2008 U.S. Dist. LEXIS 131971 (S.D. Tex. Dec. 17, 2008) ................................................................................................. 15

*Valls v. Johanson & Fairless L.L.P.*, 314 S.W.3d 624 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ....................................................................................................................... 7

*Zichichi v. Jefferson Ambulatory Surgery Ctr., LLC*, No. 07-2774, 2008 U.S. Dist. LEXIS 63133
(E.D. La. July 22, 2008)............................................................................................. 16, 18, 20

## I.      INTRODUCTION

Trial is set on this Court's four-week docket beginning March 7, 2022.  On the eve of trial and in a last ditch effort to again avoid accountability for its refusal to honor its contractual obligations and tortious actions to its long-time former vendor, the NRA brings the epitome of a frivolous and (if the Court so determines) sanctionable **_second_** motion to disqualify AMc's years-long counsel.  The NRA brings this Motion nearly four months after the extended discovery deadline and two week before trial, but more importantly, it brings this Motion nearly **_three years_** after having actual knowledge of the alleged conflict with AMc's trial counsel and Mark R. Dycio ("**_Dycio_**").  This Court should deny the NRA's Motion for numerous independently sufficient reasons.

_First_, the NRA cannot even establish that Dycio himself could be disqualified from **_this_** lawsuit. Dycio's sworn statements that he never formed an attorney-client relationship with the NRA casts serious doubt on whether such relationship ever existed.[1]  _Second_, the NRA fails to establish that any purported representation by Dycio is substantially related to this lawsuit.

_Third_, even if Dycio was potentially subject to disqualification, the NRA has presented no basis to impute any purported conflict against Dorsey & Whitney LLP ("**_Dorsey_**"). Indeed, the Dorsey attorneys affirm that they are not aware of Dycio disclosing or Dorsey receiving confidential information from Dycio resulting from any purported relationship with the NRA.

_Fourth_, even if the NRA established an attorney-client relationship with Dycio, that his purported representation substantially related to this lawsuit, and that that conflict was imputed to

---

[1] _See Tierra Tech de Mex. SA de CV v. Purvis Equip. Corp._, No. 3:15-CV-4044-G, 2016 U.S. Dist. LEXIS 99229, at *4 (N.D. Tex. 2016) (J. Fish) ("Whether the agreement is express or implied, however, there still must be some manifestation that both parties intended to create an attorney-client relationship; therefore, one party's mistaken belief is not sufficient, by itself.").

Dorsey (which it did not and cannot do as a matter of law), the NRA's Motion must be denied because it waived long ago the right to disqualify Dorsey. The NRA has known of Dycio's brief relationship with AMc and Dycio's temporary status as co-counsel to Dorsey since at least April 2019, and the NRA has known that communications existed between Dycio and Dorsey since at least that same time.

*Finally*, it is undeniable that Dorsey's disqualification on the literal eve of trial will result in grave, incurable prejudice to AMc, including another continuance and more dilatory litigation tactics by the NRA.

The NRA's incessant desire to delay a trial of this case has carried on repeatedly.  Its last ditch attempt to again delay the case with the filing of this frivolous Motion warrants the Court's full arsenal of appropriate sanctions.  The Motion is meritless on its face and the NRA's delay in raising these purported issues is deliberate and harassing. The NRA's obfuscation will not stop until the parties' claims are presented at trial and adjudicated once and for all.  AMc respectfully requests that the Court swiftly and summarily deny the NRA's Motion, sanction the NRA, overrule the NRA's objections to AMc's categorical privilege log dealing with the same issues raised in the Motion, and allow this case to finally proceed to trial.

## II.    FACTUAL BACKGROUND

### A.    Dycio and the NRA

Dycio is lawyer based in Virginia and President of the Law Office of Mark R. Dycio, P.C. d/b/a Dycio & Biggs.[2]  Around 2013, Wayne LaPierre ("*LaPierre*") apparently retained Dycio to represent LaPierre personally on an "as needed" basis.[3]  Dycio represented LaPierre on various personal matters, such as advising him in negotiations regarding his employment contract, and,

---

[2] ECF 555, Ex. A-10, Affidavit of Mark R. Dycio, at ¶ 1 (App. 182).
[3] *Id.* at ¶¶ 5, 8 (App. 183).

according to him, Dycio's fees were billed to and paid by the NRA at LaPierre's request.[4]  Also, according to Dycio himself, he never represented the NRA, the NRA was never a client of Dycio, and there was never an attorney-client relationship between Dycio and the NRA.[5]

On April 12, 2019, the NRA filed a lawsuit against AMc and Mercury Group in Virginia.[6] On April 17, 2019, Dycio sent a preservation notice to the NRA advising the NRA that "[t]his law firm represents Ackerman McQueen, Inc. in connection with the ongoing litigation brought forth by the National Rifle Association of America ("NRA")."[7]  Notably, "Dycio consulted with the Virginia State Bar's Ethics Hotline before accepting the representation of Ackerman McQueen, and the lawyers in that office confirmed there was no conflict."[8]  Regardless, LaPierre took great exception and demanded that Dycio terminate its representation of AMc on April 20, 2019.[9]

On April 22, 2019, LaPierre terminated Dycio as his attorney[10] and that same day Dycio withdrew from representing AMc in the Virginia Action, despite being "absolutely certain" that he had "acted appropriately."[11]  From that date forward, AMc was represented by Dorsey and a local law firm, Schertler & Onorato LLP.[12]  Still objecting to Dycio's representation of AMc and with knowledge of Dorsey's representation of AMc, LaPierre emailed Dycio on May 8, 2019, alleging conflicts in Dycio's representations and requesting the production of Dycio's communications with Dorsey about the NRA.[13]  On May 21, 2019, Dycio's attorney declined

---

[4] *Id.* at ¶¶ 8, 10-11 (App. 183).
[5] *Id.* at ¶¶ 17, 20 (App. 184).
[6] *NRA v. AMc and Mercury Group*, Civil Case No. CL19001757, Circuit Court for the City of Alexandria, VA (the "***Virginia Action***").
[7] ECF 535, Ex. 3 (App. 15).
[8] ECF 559, Ex. G (App. 358-59).
[9] ECF 535, Ex. 2 (App. 12-13).
[10] ECF 555, Ex. A-10, Affidavit of Mark R. Dycio, at ¶ 22 (App. 185); Ex. A-2, Depo. of W. LaPierre, dated June 17, 2020, at 627:16-628:10 (stating that the NRA "separated from Dycio when he . . . started representing Ackerman" because the NRA and LaPierre felt it "was a total inappropriate conflict of interest.") [App. 10-11].
[11] ECF 535, Ex. 2 (App. 10).
[12] Ex. A, Decl. of B. Mason, dated Feb. 25, 2022, at ¶ 3 [App. 2].
[13] ECF 559, Ex. K (App. 519-20).

LaPierre's demand, explaining that such an act would violate Rule 1.6 of Virginia's Rules of Professional Conduct.[14]

The next day, the NRA filed another lawsuit against AMc and Mercury Group.[15]  More than three months later, on August 30, 2019, the NRA filed the instant lawsuit in the Northern District of Texas.[16]  In addition to its lawsuits against AMc, the NRA has filed countless other lawsuits against government officials, former employees, and other third-parties, including two lawsuits against Dycio relating to his alleged conflicts in representing AMc in April 2019.[17]

**B.     NRA Discovery Delays in the Texas Action**

The parties have exchanged extensive discovery in the Texas Action, including dozens of third-party subpoenas, at least 60 depositions, and, among many discovery instruments, 238 requests for production from the NRA.[18]  But a recurring theme in this case is the NRA's incessant desire to manufacture disputes, delay proceedings, and avoid the merits at all costs.

On August 17, 2021—more than eight months after AMc served its privilege log—the NRA conferred with AMc for the first time regarding its purported concerns with AMc's privilege log.  Notably, the NRA's belated inquiry occurred eleven days after the then-controlling August 6, 2021 discovery deadline had passed[19] and the NRA's complaints were therefore moot.[20]  On September 7, 2021, the Court extended the discovery deadline from August 6, 2021 to October 29,

---

[14] ECF 559, Ex. G (App. 358-59).

[15] *NRA v. AMc and Mercury Group*, Civil Case No. CL19002067, Circuit Court for the City of Alexandria, VA.

[16] *NRA v. AMc et al.*, Case No. 3:19-cv-02074, U.S. District Court for the Northern District of Texas.

[17] *See* ECF 555, Ex. A-11, Complaint dated Dec. 27, 2019, *NRA v. Mark R. Dycio and Law Offices of Mark R. Dycio, P.C.*, Case No. 2019-17571, Circuit Court of Fairfax County, Virginia (App. 186); ECF 555, Ex. A-12, Complaint dated Feb. 11, 2022, *NRA and Wayne LaPierre v. Mark R. Dycio and Law Offices of Mark R. Dycio, P.C.*, Case No. 2022001960, Circuit Court of Fairfax County, Virginia (App. 200).

[18] *See generally* ECF 555, Ex. Nos. A-2—A-9 (App. 60-181).

[19] *See* ECF 236 (granting continuance to extend discovery deadline to August 6, 2021).

[20] *See e.g., Santander Consumer United States, Inc. v. Maywood Motors, Inc.*, Civil Action No. 3:16-CV-2499-B-BK, 2017 U.S. Dist. LEXIS 223443, at *2 (N.D. Tex. 2017) (J. Toliver) (holding that motion to compel filed after discovery deadline was untimely); *BCC Merch. Sols., Inc. v. Jet Pay, LLC*, No. 3:12-CV-5185-B-BK, 2015 U.S. Dist. LEXIS 187197, at *2 (N.D. Tex. 2015) (J. Toliver) (same).

2021.[21]  Soon thereafter, AMc conferred with the NRA regarding its August 17, 2021 letter.[22]  In the following months, and as briefed in prior pleadings,[23] AMc would serve its First Amended Privilege Log, its Second Amended Privilege Log, and its Supplemental Categorical Privilege Log (the "Categorical Log").[24]  At every turn, the NRA has rejected AMc's efforts and sought to manufacture disputes.  The NRA is not looking to resolve discovery disputes—it is looking to delay this case or avoid its merits.

On January 6, 2022, as permitted by the Court,[25] the NRA objected to nearly 800 documents on AMc's Second Amended Privilege Log[26] based solely on generalized, conclusory grievances and unsubstantiated conspiracy theories.[27]  These documents have been produced to the Court for an *in camera* review.  The NRA then promptly shifted its ire to Objections to AMc's Categorical Log,[28] followed soon after by the instant last ditch effort to disqualify Dorsey.

## C.    AMc's Categorical Log

On October 29, 2021, the NRA filed a motion seeking to compel, in part, the production of the entirety of AMc's privileged communications with its attorneys from April 12, 2019 through the present.[29]  In denying the NRA's requested relief, Judge Toliver ordered AMc to produce a categorical privilege log for privileged communications occurring after the commencement of the lawsuit.[30]  AMc timely served its Supplemental Categorical Privilege Log (the "***Categorical Log***")

---

[21] *See* ECF 358.
[22] ECF 409 at Ex. A ¶ 6 (APP3).
[23] *See e.g.*, ECF 408 (AMc's Response to NRA's Motion to Compel), 554 (AMc's Response to the NRA's Objections to AMc's Categorical Log).
[24] *See* ECF 487 (AMc's Categorical Log).
[25] ECF 430 (Electronic Order).
[26] ECF 486.
[27] *See* ECF 526 (AMc's Response to NRA's Objections to AMc's Second Amended Privilege Log).
[28] ECF 533 (NRA's Objections to AMc's Categorical Log).
[29] *See* ECF 395.
[30] ECF 430 (Electronic Order).

on January 9, 2022.[31] AMc's Categorical Log sets forth twenty-six categories of documents withheld from AMc's production since the date the NRA filed the Virginia Action on April 12, 2019. For purposes relevant to this Response, the Categorical Log also includes four categories of documents with communications exchanged with Dycio and other counsel at Dycio & Biggs.[32] Each of these categories includes communications exchanged between April 14, 2019 and April 22, 2019[33]—the same date that Dycio voluntarily withdrew as counsel in the Virginia Action.

### III.    ARGUMENTS & AUTHORITIES

The NRA makes an incredible plea to disqualify Dorsey a week before trial (*i.e.*, to delay proceedings) and dismiss all of AMc's counterclaims (*i.e.*, to avoid the merits at all costs). But the Motion is legally and factually deficient as it fails to satisfy the several hurdles required to disqualify a party's counsel. In many instances, the NRA declines to even address required elements, further evidencing the NRA's dilatory, bad-faith intent.

### A.    There Was No Basis to Disqualify Dycio.

Dorsey never represented the NRA. Therefore, to disqualify Dorsey from representing AMc in this instant lawsuit, the NRA must first establish that there was an incurable conflict that would require the disqualification of Dycio—an attorney that withdrew from representing AMc in litigation in April 2019, that is not counsel of record in this case, and that has zero involvement in AMc's trial preparations. The NRA fails to establish elements required to disqualify Dycio.

To disqualify opposing counsel, a party "must establish two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present

---

[31] ECF 487 (AMc's Categorical Log).
[32] *See id.*, Categories 11-14.
[33] *Id.*

representations."[34]   As this Court has recognized recently, a party has no standing to seek disqualification if it cannot even establish the existence of an attorney-client relationship.[35]

>    1.   <u>The NRA has not proven the existence of an attorney-client relationship</u>

This Court has explained that forming an "attorney-client relationship depends on a contract, express or implied, between the parties."[36]   To be sufficient, "there must be some manifestation that *both* parties intended to create an attorney-client relationship; therefore, one party's mistaken belief is not sufficient, by itself."[37]   Hence, a court must "examine the parties' statements and actions under an objective standard rather than their subjective beliefs."[38]

At the outset, the NRA's Motion fails because the NRA declined to show that an attorney-client relationship ever existed between Dycio and the NRA.   Specifically, while the NRA acknowledges that it must make this showing to the Court,[39] it immediately proceeds to the second element of showing a substantial relationship between the subject matter of the former and present representations.   Absent the initial required showing that an attorney-client relationship existed between Dycio and the NRA, the NRA's Motion fails as a matter of law.

Regardless, even with the limited evidence available to AMc,[40] and despite not being AMc's burden to establish, it is apparent that Dycio did not manifest intent to form an attorney-

---

[34] *Centerboard Secs., LLC v. Benefuel, Inc.*, No. 3:15-CV-2611-G, 2016 U.S. Dist. LEXIS 72476, at *3 (N.D. Tex. June 3, 2016) (Fish, J.) (citing *In re American Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992)).

[35] *Id.* at *6-7 ("Here, [Husch Blackwell] has never represented Centerboard. Therefore, Centerboard has failed to prove the first step of the 'substantial relationship' test and has no standing to seek [Husch Blackwell's] disqualification . . . .").

[36] *Purvis Equip. Corp.*, 2016 U.S. Dist. LEXIS 99229, at *4 (quoting *Simpson v. James*, 903 F.2d 372, 376 (5th Cir. 1990)).

[37] *Id.* (quoting *Valls v. Johanson & Fairless L.L.P.*, 314 S.W.3d 624,634 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

[38] *Id.*

[39] ECF 557, at 18 (acknowledging it "must show . . . an actual attorney-client relationship.").

[40] AMc is foreclosed from conducting its own discovery on this matter because (a) Dycio has never been a counsel of record in this case, (b) Dycio's relationship with the NRA has no bearing on the claims and defenses asserted in this case, (c) the NRA waited to raise this purported issue until nearly four months after discovery concluded, and (d) AMc had four days to prepare this Response.

client relationship with the NRA.  The NRA relies on what purports to be a draft engagement letter from Dycio in 2013.[41]  This Court has previously looked to the existence of an alleged engagement letter to inform relationship status,[42] but, tellingly, the NRA's purported engagement letter is not signed by Dycio, LaPierre, or the NRA.[43]  And while LaPierre is unable to remember if the letter was *ever* signed,[44] Dycio confirms that the "engagement was not executed as Mr. LaPierre made clear that my representation was limited to him in his personal capacity."[45]  Dycio has also sworn he represented LaPierre's interests and "not those of the NRA," he "never represented the NRA as an entity," and he never had an attorney-client relationship with the NRA.[46]

The NRA similarly relies upon invoices Dycio submitted to the NRA, suggesting that payments made by the NRA evidence the existence of an attorney-client relationship.  But LaPierre, according to Dycio, instructed Dycio to submit legal fee invoices to the NRA for payment so the NRA could pay Dycio's fees on behalf of LaPierre,[47] yet another payment structure where LaPierre incurs personal expenses for the NRA to pay on his behalf.

There is further evidence that the NRA did not have an attorney-client relationship with Dycio, as revealed beyond records created by Dycio.  Steve Hart, former General Counsel to the NRA Board, testified that Dycio never represented the NRA[48] but represented LaPierre in his individual capacity. [49]   Even LaPierre regarded Dycio as only his personal attorney.  In correspondence from LaPierre to Dycio on October 1, 2019, LaPierre objected to Dycio's

---

[41] ECF 537, Ex. 7 (App. 0103).
[42] *See Purvis Equip. Corp.*, 2016 U.S. Dist. LEXIS 99229, at *4.
[43] ECF 537, Ex. 7 at 5 (App. 107).
[44] ECF 559, Ex. 12 at ¶ 4 (App. 690).
[45] ECF 555, Ex. A-10, Affidavit of Mark R. Dycio, dated Mar. 5, 2020, at ¶ 9 (App. 183).
[46] *Id.* at ¶¶ 9, 10, 17, 20 (App. 182-85).
[47] *Id.* at ¶ 10 (App. 183).
[48] ECF 419, Ex. 10, Depo. of S. Hart, dated Feb. 4, 2020, at 453:19-454:8 ("I don't think they were allowed to represent the NRA. I think they were conflicted out.") (App. 882).
[49] *Id.* at 456:1-8 ("I mean, Dycio comes in with the board meetings. He has been counsel to Wayne and I have worked with Dycio on personal matters relating to Wayne, which I believe is privileged.") (App. 882).

representation of another party in a lawsuit against the NRA.[50]  Critically, LaPierre's objections were not based on the alleged attorney-client relationship with the NRA, but based on Dycio's representation of LaPierre in his individual capacity.[51]  LaPierre tells Dycio the sole basis for his objection is because, "The lawsuit you filed on behalf of Under Wild Skies asserts that the organization *that I lead* has breached contracts *that I signed*."[52]  LaPierre makes no mention or justification based on purported representation of the NRA, instead referring to Dycio as "my attorney" representing parties "whose interests are adverse to my own."[53]  LaPierre's silence as to purported representation of the NRA—especially regarding a lawsuit against the NRA—speaks volumes.

On a similar topic, albeit unrelated to its burden of showing the existence of an attorney-client relationship, the NRA implies that Dycio previously conceded a conflict in his representation of AMc.[54]  This is not true and, in his email to the NRA providing notice of his withdrawal, Dycio contradicts the NRA's insinuation and affirms that he had acted appropriately.[55]  In addition, the NRA asserts that any attorney-client relationship between Dycio and the NRA "was never terminated by the NRA or LaPierre.[56]  While again irrelevant to the NRA's burden to show first that such a relationship even existed, the NRA's contention is at direct odds with LaPierre's sworn testimony that the NRA terminated the relationship when Dycio started representing AMc.[57]

---

[50] ECF 559, Ex. O (App. 530-31).

[51] *Id*.

[52] *Id*.

[53] *Id*.

[54] ECF 533, at 7 ("In response, Dycio switched sides and purported to represent AMc in its litigation against the NRA—an ethics violation so obvious that Dycio withdrew on April 22, 2019, after it was raised").

[55] *Id*. at Ex. 2 (App. 10).

[56] ECF 557 at 4.

[57] Ex. A-2, Depo. of W. LaPierre, dated June 17, 2020, at 627:16-628:10 (stating that the NRA "separated from Dycio when he . . . started representing Ackerman" because the NRA and LaPierre felt it "was a total inappropriate conflict of interest") [App. 10-11].

Regardless, the NRA's burden is to demonstrate that the NRA and Dycio had an attorney client relationship.  Because the NRA neither attempted nor achieved this burden, its Motion must fail.

    2.  <u>There is no substantial relationship between Dycio's representations</u>

Even if the Court finds that Dycio and the NRA had an attorney-client relationship, the NRA has not shown "a substantial relationship between the subject matter of the former and present representations."[58]  Irrespective of this lawsuit, the NRA cannot even show that Dycio had a conflict representing AMc in the NRA's first lawsuit in Virginia.  As it relates to any claims in this lawsuit—which was not filed until more than four months after Dycio withdrew from the first Virginia lawsuit—the NRA's claims are even less compelling.

This Court has explained that to satisfy the "substantial relationship" prong, "the movant must show 'a substantial relationship between the subject matter of the former and present representations.'"[59]  Of course, "[t]he burden is on the moving party to 'delineate[] with specificity *the subject matters, issues, and causes of action common to prior and current representations*,'" and "'the movant may not rely upon conclusory statements but must provide the trial court with sufficient information so that it can engage in painstaking analysis of the facts.'"[60]

Here, the NRA has not provided the trial court with "sufficient information so that it can engage in painstaking analysis of the facts."[61]  Reading between the distracting theatrics within the NRA's Motion, and being generous to its unclear allegations, the NRA appears to identify two bases to challenge Dycio's engagement: (1) that Dycio was involved in the Lockton Lawsuit and (2) that Dycio participated in the NRA's September 2018 Board meeting,

---

[58] *Centerboard Secs., LLC*, 2016 U.S. Dist. LEXIS 72476, at *3 (citing *In re American Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992)).
[59] *Purvis Equip. Corp.*, 2016 U.S. Dist. LEXIS 99229, at *8 (quoting *In re American Airlines, Inc.*, 972 F.2d at 614).
[60] *Id.*
[61] *Id.* at *4.

a.   *Lockton Lawsuit*

The NRA contends that Dycio was "closely involved" in the Lockton litigation, [62] supporting its assertions with a 1.3 hour billing entry described as "Review Lockton lawsuit"[63] and an appearance at a single hearing in the Lockton litigation in 2018.[64] These discrete facts do not evidence that Dycio was "closely involved" in anything, especially since the former was billed by Danielle Quinn ("**Quinn**") and the latter was notated as "D. Quinn court appearance."[65]  And while it is telling that the NRA's Motion is devoid of specific facts—despite its delay and despite being the only party with firsthand information about Dycio's relationship with the NRA—that still does not address the substantial relationship prong of the NRA's efforts of disqualify Dycio.

Simply stated, the Lockton Lawsuit is not related to the claims and defenses in this matter. The NRA attempts to gloss over this chasm by arguing the Lockton Lawsuit "touched on" issues involving "AMc's marketing" of same.[66]  Even if that were true, such a fact has nothing to do with the claims and defenses asserted in this lawsuit.

b.   *September 2018 Board Meeting*

The NRA next appears to argue that Dycio's presence at a September 2018 NRA Board meeting during executive session establishes a "substantial relationship" for Dycio's prior representation of the NRA and all matters at issue in this lawsuit.  This argument fails.  As a threshold matter, the NRA has not established that an attorney-client relationship with Dycio and the NRA even existed, regardless of whether Dycio was at the meeting or not.  Nonetheless, the NRA's arguments regarding the purported substance of that meeting are unavailing.

---

[62] ECF 557, at 5-6.
[63] ECF 559, Ex. 5 (App. 16).
[64] ECF 537, Ex. 1 (App. 7).
[65] *Id.*
[66] ECF 557, at 5.

The NRA vaguely states that its "transparency and vendor-oversight effort" was discussed at the meeting,[67] but stops short of explaining any "substantial relationship" with the claims and defenses in this case. The NRA separately contends, and LaPierre has sworn under oath, that the NRA did not even discuss potential litigation against AMc during the meeting.[68] The NRA's efforts to argue otherwise are yet another example of the NRA "talking out of both sides of its mouth," clinging to whatever position is convenient at that moment.

The NRA also points to a single invoice from Dycio to suggest that Dycio communicated on behalf of the NRA in disputes revolving around the NRA's audits of AMc in Fall 2018.[69] This insinuation is as baseless as it is baffling. First, the single invoice entry the NRA identified is from September 27, 2018, which was *after* the September 2018 Brewer Audit already occurred.[70] Second, the description of this entry is simply "Discussion w/Makris."[71] While the NRA would presumably have additional support or explanation for how this three-word description identifies conversations with AMc about audit disputes, the NRA remains silent and fails to provide sufficient information so that the Court can engage in "painstaking analysis of the facts." The NRA has failed to establish that an attorney-client relationship existed or that there is a substantial relationship between the relationship alleged and the claims and defenses asserted in this lawsuit.

**B.    Any Conflict by Dycio Cannot Be Imputed to Dorsey.**

Even if Dycio is conflicted from representing AMc in this matter (which, as the NRA concedes, he has never been counsel for AMc in this lawsuit[72]), there is no basis to impute that conflict to Dorsey. As outlined by the Texas Supreme Court, a multi-step rebuttable presumption

---

[67] ECF 557, at 19.
[68] ECF 419, Ex. 33, Depo. of W. LaPierre, dated Aug. 21, 2021, at 170:10-12, 173:1-2 (App. 2231, 2232).
[69] ECF 557, at 19.
[70] ECF 537, Ex. 1 (App. 7).
[71] *Id.*
[72] ECF 557, at 20.

test applies where a party seeks disqualification of co-counsel by imputing to it the conflicts of disqualified counsel.  "A party seeking disqualification *must first* demonstrate that there were substantive conversations between disqualified counsel and co-counsel, joint preparation for trial by those counsel, or the apparent receipt by co-counsel of confidential information."[73]  Assuming the movant can demonstrate either of the above, a "rebuttable presumption then arises that disqualified counsel shared confidential information with co-counsel."[74]

In providing such rebuttal evidence, the Court cautioned that "a party seeking disqualification should not be permitted to broadly pierce privileges to probe whether its confidential information was actually revealed." [75]  Moreover, although the party seeking disqualification may ask "whether co-counsel have jointly prepared the case for trial or whether they have had substantive discussions . . .[,]" the party may not "inquir[e] into the substance of the work that has been done or of discussions between co-counsel."[76]

The NRA does not allege that Dycio's purported conflict applies to the "Tainted Dorsey Lawyers" due to joint trial preparations.  Thus, the NRA can only succeed in demonstrating that Dorsey received confidential information insofar as it can meet its burden that (i) Dycio and the "Tainted Dorsey Lawyers" had "substantive conversations," or (ii) there was an apparent exchange of confidential information.  The NRA points to AMc's Categorical Privilege Log, declaring, *ipso facto*, that either of these prongs are satisfied.  Yet, the NRA fails to meet its burden.

The NRA's only proffered evidence for "substantive conversations" or an apparent exchange of confidential information is AMc's Categorical Privilege Log that lists Dycio as a recipient of e-mails between April 14, 2019 and April 22, 2019.  The NRA fails to explain how

---

[73] *In re Am. Home Prods. Corp.*, 985 S.W.2d 68, 81 (Tex. 1998).
[74] *Id.*
[75] *Id.* (emphasis added).
[76] *Id.*

the mere inclusion of a lawyer as a recipient of an email constitutes that lawyer's participation in a "substantive conversation" or an apparent revelation of confidential information about the NRA's past confidences.  Thus, the NRA has only its allegations and speculation.

Assuming such raw allegations successfully shifted the burden to AMc, AMc's evidence ably dismantles the NRA's claims.  Of course, the NRA may not pierce AMc's privileged communications with Dorsey to discern their accusations; however, the NRA may inquire as to whether a "substantive conversation or a revelation of confidential information occurred."[77]  The "Tainted Dorsey Lawyers" have each testified that they never had any conversation with Dycio regarding Dycio's prior representation of LaPierre (or even the NRA, to the extent Dycio ever represented the NRA) and never received any NRA confidential information.[78]

The timeline of events also underscores that Dorsey never received any NRA confidential information.  Notably, Dycio is listed as a recipient of emails for ten days at most in April 2019.[79]  In fact, on April 22, 2019, he withdrew from the NRA's initial Virginia lawsuit against AMc filed April 12, 2019.[80]  Following his withdrawal, *months passed* before the NRA sued AMc in this case on August 30, 2019.[81]  Another month passed before AMc filed its answer and counterclaims against the NRA on October 1, 2019.[82]  To believe the NRA's claims that Dycio and Dorsey "formulated case strategies" and prepared documents "constituting AMc's affirmative claims"[83] is to believe that Dycio and Dorsey were drafting counterclaims for a lawsuit that the NRA would not file for another four months.  Thus, when the time came for AMc to respond to the NRA's

---

[77] *In re Am. Home Prods. Corp.*, 985 S.W.2d at 81.
[78] Ex. B, Decl. of G. Betts, at ¶ 4 [App. 14]; Ex. C, Decl. of J. Madrid, at ¶¶ 4-5 [App. 16-17]; Ex. D, Decl. of B. Vanderwoude at ¶¶ 4-5 [APP 19].
[79] ECF 486 (AMc's Categorical Log).
[80] ECF 535, Ex. 2 (App. 10).
[81] ECF 1 (NRA's Original Complaint).
[82] ECF 12 (AMc's Original Answer)
[83] ECF 557, at 14-15.

August 30, 2019 complaint by filing its answer and counterclaims on October 1, 2019, Dycio had ceased representing AMc for close to six months.  Additionally noteworthy, the thrust of AMc's counterclaims involve breach of contract claims for failure to pay invoices under the parties' Services Agreement, but nowhere has the NRA alleged that Dycio, in his alleged representation of the NRA, provided legal services related to obligations under the Services Agreement.

Finally, the NRA's two cited cases where a conflict was imputed to disqualify co-counsel are inapposite here.  This case is distinguishable from *Guzder*[84] because Dycio voluntarily withdrew in April of 2019 and has had zero involvement representing AMc in the above-captioned case since its inception.[85]  *Dynamic 3D Geosolutions*  is also distinguishable because Dycio had no similar involvement alongside Dorsey in defending and bringing claims against the NRA and (b) never appeared in this lawsuit.[86] The NRA fails to impute whatever conflict Dycio may have onto Dorsey.

## C.    The NRA Waived its Right to Try to Disqualify Dorsey.

The NRA's Motion also must be denied because the NRA has indisputably waived its rights to challenge the tenuously alleged conflicts of AMc's former counsel.  Fifth Circuit precedent recognizes that a party waives its right to disqualify opposing counsel for alleged conflicts of interest where the movant either: (1) delays seeking disqualification as relief for an extended period of time, or (2) seeks such relief on the eve of trial.[87]  Courts often focus on "when

---

[84] *United States ex rel. Guzder v. MKM Eng'rs, Inc.*, No. H-05-895, 2008 U.S. Dist. LEXIS 131971, at *7-8 (S.D. Tex. Dec. 17, 2008).

[85] Ex. A, Decl. of B. Mason, dated Feb. 25, 2022, at ¶ 3 [App. 2].

[86] *See Dynamic 3D Geosolutions, LLC v. Schlumberger Ltd.*, No. A-14-CV-112-LY, 2015 U.S. Dist. LEXIS 67353, at *3-4, 17-19 (W.D. Tex. Mar. 31, 2015). In *Schlumberger*, an attorney was disqualified based on specific evidence that the conflicted lawyer engaged in in-depth research and legal analysis regarding the company's potential infringement on a patent, then represented a party against the former company regarding the same patent supported by the very research and legal analysis the conflicted lawyer prepared.[86]

[87] *Stonecoat of Tex., LLC v. Procal Stone Design, LLC*, No. 4:17-CV-00303, 2019 U.S. Dist. LEXIS 233044, at *33 (E.D. Tex. Mar. 8, 2019) (citing *Abney v. Wal-Mart*, 984 F. Supp. 526, 530 (E.D. Tex. 1997)).

the movant learned of the conflict, why the delay occurred, whether the motion was delayed for tactical reasons, and whether disqualification would result in prejudice to the nonmoving party."[88] Emphasizing these federal authorities, the Texas Supreme Court has stated, unequivocally, "[t]he untimely urging of a disqualification motion lends support to any suspicion that the motion is being used as a tactical weapon."[89] Thus, "[a] party that fails to seek disqualification timely waives the complaint."[90] Each of these factors weigh resoundingly in favor of denying the NRA's Motion.

    1.   The NRA knew of the conflict in April 2019

It cannot be disputed that the NRA had actual knowledge of Dycio's representation of the NRA in April 2019 and that the NRA had actual knowledge of Dycio's status as co-counsel to Dorsey in April 2019.  On April 17, 2019, Dycio sent a preservation notice to the NRA stating in no uncertain terms that "[t]his law firm represents Ackerman McQueen, Inc. in connection with the ongoing litigation brought forth by the National Rifle Association of America ("NRA")."[91]  In subsequent correspondence, the NRA confirms its knowledge of Dycio's involvement and its opposition to same when it demanded Dycio terminate his representation of AMc on April 20, 2019.[92]  Thus, by at least April 20, 2019, the NRA had knowledge that Dycio represented AMc. The NRA also had actual knowledge that Dorsey was counsel to AMc as early as July 2018 because Dorsey exchanged direct correspondence with the NRA on behalf of AMc on countless occasions.[93]  More critically, the NRA also had actual knowledge that Dycio and Dorsey were co-counsel to AMc in actions against the NRA in 2019 (if only briefly).  For example, on April 19,

---

[88] *Zichichi v. Jefferson Ambulatory Surgery Ctr., LLC*, No. 07-2774 SECTION: "R"(5), 2008 U.S. Dist. LEXIS 63133, at *17-21 (E.D. La. July 22, 2008); *see also In re Crosby*, No. 17-5391 SECTION M (4), 2019 U.S. Dist. LEXIS 200250, at *24-27 (E.D. La. Nov. 18, 2019) (applying these same factors and determining movant waived ability to disqualify based on a conflict).
[89] *Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466, 468 (Tex. 1994) (per curiam).
[90] *Id.*
[91] ECF 535, at Ex. 3 (App. 0015).
[92] *Id.* at Ex. 2 (App. 0012-13).
[93] *See e.g.*, Ex. A-3, Letter from J. Madrid to B. Brewer, dated July 13, 2018 [App. 12].

2019, AMc's counsel at Dorsey sent a letter to Gayle Stanford ("**Stanford**") regarding the NRA's lawsuit against AMc and Mercury Group in Virginia.[94]  The letter states plainly that Dorsey "is co-counsel with the Dycio & Biggs law firm."[95]  This letter was sent to the NRA's Treasurer and CFO on April 22, 2019.[96]  There is no basis for the NRA to now contend that it had no knowledge of communications between Dycio and Dorsey from April 14, 2019 ***through April 22, 2019***, as reflected on AMc's Categorical Log.[97]

  2.   <u>There is no valid reason for the NRA's delay</u>

   In addition, there is no reason for the NRA to delay until the eve of trial to file its Motion. As set forth above, the NRA has known about Dycio and Dorsey's involvement for nearly three years.  The NRA attempts to convince the Court that "[t]he facts that prompted this motion surfaced late because Defendants concealed them,"[98] pointing to AMc's Supplemental Categorical Privilege Log (the "***Categorical Log***") and the deposition testimony of Dycio's colleague, Danielle Quinn ("***Quinn***"), which argument rings hollow.

   First, the NRA cannot seriously contend that AMc's Categorical Log—which identifies communications with Dycio from April 14, 2019 through April 22, 2019—revealed for the first time that communications existed between Dycio and Dorsey.  As set forth above, the NRA itself has produced emails showing actual knowledge of Dycio's representation during this period.[99]

   Similarly, the NRA cannot contend that AMc's Categorical Log revealed *for the first time* communications between Dycio and Dorsey existed because ***the NRA has previously attempted to request these exact communications***.  On May 8, 2019—several months before the NRA filed

---

[94] Ex. A-1, Email from W. Winkler to C. Spray and J. Steven Hart, dated Apr. 22, 2019 [App. 5-6].
[95] *Id*.
[96] *Id*. [App. 4].
[97] ECF 487, AMc's Categorical Log, at 7.
[98] ECF 557, at 1.
[99] ECF 535, Ex. 3 (App. 15); Ex. 2 (App. 12-13).

the instant lawsuit—LaPierre alleged conflicts in Dycio's representations and requested the production of Dycio's communications with Dorsey about the NRA.[100]  ***The NRA plainly knew these communications existed and LaPierre requested same from Dycio several weeks after Dycio's withdrawal in April 2019***.

Second, for the same reasons stated above, the NRA's assertion that Quinn's testimony was the first time the NRA learned of emails exchanged between Dycio and Dorsey is absurd.  The NRA had actual knowledge of all relevant facts as early as April 2019; there is nothing new identified in Quinn's testimony.  That the NRA "believed the issue to be remedied" on April 22, 2019 "when Dycio withdrew in the Virginia litigation"[101] does not negate the fact that the NRA had knowledge of Dycio and Dorsey's involvement.  On the contrary, it confirms that fact.

With no valid justification, the NRA's delay far exceeds the delay in other cases holding that the moving party had waived its rights to disqualify opposing counsel.[102]

3.  The NRA's Motion was delayed for tactical reasons

The apparent reason for the NRA's delay is the only plausible reason: tactical distraction and delay.  The NRA clearly has no interest in facing verdict before a jury.  Instead it desires to drag out this nearly three-year-old dispute that has cost the parties tens of millions of dollars.  Even if the Court accepted the NRA's misrepresentations that it had no knowledge of communications between Dycio and Dorsey until it received the Categorical Log,[103] there is no doubt the NRA's Motion was intentionally delayed for tactical reasons.  The Categorical Log was served on January 9, 2022 and, even then, the NRA waited 43 days to file this Motion.

---

[100] ECF 559, Ex. K (App. 519-20).
[101] ECF 557, at 20.
[102] For example, In *Zichichi*, a party waived its rights when a year had elapsed between when the movant learned of the alleged conflict and when he moved to disqualify. *Zichichi*, 2008 U.S. Dist. LEXIS 63133, at *18.  Similarly, the court in *Crosby* found waiver after a two year delay, and the court in *Abney* found waiver after a one year delay. *See In re Crosby*, 2018 U.S. Dist. LEXIS 200250, at *24-25; *Abney*, 984 F. Supp. at 530.
[103] *See* ECF 559, Ex. K (LaPierre requesting Dycio's communications with Dorsey in May 2019) (App. 519-20).

The reality is that the NRA knew that Dycio represented AMc as early as April 2019,[104] and the NRA first expressed concern regarding, and a desire for, communications between Dycio and Dorsey as early as May 2019.  Despite that May 2019 demand, the NRA remained silent in this case for the next 1,022 days.  The NRA did not raise this issue when Dorsey first appeared on behalf of AMc on October 1, 2019,[105] or in the NRA's first attempt to disqualify Dorsey on April 16, 2020.[106]  The NRA did not raise the issue when the discovery deadline elapsed on October 29, 2019, or even when AMc served its Categorical Log on January 9, 2022.  The NRA waited.

The NRA waited until it was out of other options.  The NRA waited until after the Court declined the NRA's request to compel the production of the entirety of AMC's privileged communications on December 15, 2021.[107]  The NRA waited until the Court denied the NRA's appeal of Judge Toliver's order compelling the deposition of William A. Brewer ("***Brewer***") on January 18, 2022.[108]  The NRA waited until the Court denied the NRA's Motion for Partial Summary Judgment on February 3, 2022.[109]  The NRA waited until all other attempts to avoid the merits of this lawsuit had failed and trial was imminent.

Regardless of the outcome of this Motion, the NRA's intent has been largely achieved as AMc has been forced to reallocate considerable time and resources to preparing this Response.  For purposes of this portion of the analysis, however, the success of the NRA's tactical intent is not relevant (*see* Motion for Sanctions, below).  The relevant conclusion is that the NRA's delay was for tactical purposes.

    4.   Disqualification will result in severe prejudice to AMc

---

[104] ECF 535, Ex. 3 (App. 15).
[105] ECF 12, AMc's Original Answer, dated Oct. 1, 2019.
[106] ECF 107.
[107] ECF 395.
[108] ECF 501.
[109] ECF 539.

The final factor militating against disqualification of Dorsey is the severe prejudice that would be suffered by AMc.  In *Zichichi*, the Court noted that the high degree of involvement the allegedly conflicted lawyer devoted to the case weighed against disqualification due to the prejudice the non-movant's would suffer were they to lose their chosen counsel.[110]  Similarly, in *Crosby*—where the movants delayed for two years before filing their motion—the court observed:

> Crosby has incurred significant expenses defending this suit over the last two years and would incur a great deal more if it had to retain new counsel, ***who would have to learn and prepare a case which was almost ready for trial. Crosby would, therefore, be immensely prejudiced by a disqualification so late in the game***.[111]

Even when a motion to disqualify is meritorious, prejudice against the nonmoving party weighs against disqualification.  For example, in *Abney*, the court found the moving party waived seeking disqualification because the movant waited a year after learning of the non-movant's counsel's alleged conflict and chose to file its motion a month before trial.[112]  Critically, given the shockingly late filing of the motion, the *Abney* court stressed that even if the movant's disqualification motion had merit, the court would still deny it because of the ghastly prejudice that would otherwise befall the non-movants.[113]

It cannot be overstated the prejudice that would be endured by AMc if Dorsey was disqualified at this stage.  Dorsey filed AMc's Original Answer in this lawsuit in October 2019[114] and has been AMc's lead trial counsel at all times in this case and in the NRA's bad faith bankruptcy.[115]  There is no other trial counsel.[116]  If Dorsey were disqualified from this lawsuit, it would first cause AMc irreparable harm because of the invaluable knowledge, experience, and

---

[110] *Zichichi*, 2008 U.S. Dist. LEXIS 63133, at *18.
[111] *See In re Crosby*, 2018 U.S. Dist. LEXIS 200250, at *24-25.
[112] *Abney*, 984 F. Supp. at 530.
[113] *Id.* ("Granting the Motion, even if it were meritorious, would work too great an injustice on the Defendant.").
[114] ECF 12, AMc's Original Answer, dated Oct. 1, 2019.
[115] Ex. A, Decl. of B. Mason, dated Feb. 25, 2022, at ¶¶ 3-4 [App. 2].
[116] *Id.* at ¶ 3 [App. 2]; Ex. E, Decl. of R. McQueen, at ¶ 7 [App. 22].

substantive expertise Dorsey has gained in being AMc's sole counsel on this matter for the past two and a half years.[117]  It would further cause AMc substantial time and expense to retain new counsel, who would have to learn and prepare a case that is ready for trial,[118] if AMc is even able to retain new trial counsel.[119]

The NRA's Motion must be denied.  It is plainly evident that the NRA unreasonably delayed in seeking its requested relief and filed this Motion on the eve of trial.[120]  The NRA has known of its purported conflicts for years and its delay in challenging same is inexcusable.  The NRA filed this Motion for purely tactical reasons, and Dorsey's disqualification would result in grave prejudice to AMc.  Indeed, "[g]ranting the Motion, even if it were meritorious, would work too great an injustice on [AMc]."[121]  For these reasons, the NRA has waived its right to seek the disqualification of Dorsey and the NRA's Motion should be denied.

**D.      The NRA's Alternative Relief Must Be Denied**

      1.   There is No Basis to Dismiss AMc's Counterclaims

The NRA's relief requesting dismissal of AMc's counterclaims, which will become ripe for judicial resolution ***less than a week before trial commences***, is nothing less than shocking.  Notwithstanding the bases for denial outlined in detail above, the NRA has still failed to provide legal support for its dramatic, sweeping relief of dismissing AMc's counterclaims.  To support its request, the NRA relies solely on *Dynamic 3D Geosolutions*, a case that does not support the

---

[117] Ex. A, Decl. of B. Mason, dated Feb. 25, 2022, at ¶¶ 3-4 [App. 2]; Ex. E, Decl. of R. McQueen, dated Feb. 25, 2022, at ¶¶ 3-8 [App. 21-23].

[118] Ex. E, Decl. of R. McQueen, dated Feb. 25, 2022, at ¶¶ 3-8 [App. 21-23].

[119] Because of the NRA's prior efforts to protract the scope and longevity of this lawsuit (and others), including by filing multiple lawsuits, dragging the parties through multidistrict litigation, filing a bad-faith bankruptcy, and causing multiple continuances, AMc quickly exhausted its available insurance coverage and Dorsey accepted the remainder of the matter in a contingency arrangement. There is no assurance that AMc could locate another firm to step into the shoes of Dorsey's representation.

[120] *See Stonecoat of Tex., LLC*, 2019 U.S. Dist. LEXIS 233044, at *33 (citing *Abney*, 984 F. Supp. at 530).

[121] *Abney*, 984 F. Supp. at 530.

---

NRA's contorted position because the egregiousness of the facts there differ categorically from those here.[122]  Dycio is not counsel of record for AMc in this case, Dycio has had zero involvement in the litigation of this case and zero involvement in trial preparations,[123] and Dycio withdrew from representation of AMc in the first Virginia lawsuit—and all contested communications occurred— more than four months before the NRA filed the instant lawsuit against AMc.

     2.  <u>Production of Privileged Documents is Improper</u>

The NRA separately asks the Court to compel the production of all communications with Dycio identified in Categories 11-14 of AMc's Categorical Log.  This relief is first inappropriate because the NRA has waived its rights to disqualify Dycio or Dorsey and, even permitting the Motion, the NRA has failed to establish the required showing to disqualify Dycio and then impute that disqualification to Dorsey.  Regardless, it is instructive that the NRA's requested relief here does not appear to address the harm it contends to have incurred as a result of Dycio's prior representation.  Instead, the NRA's alternative relief is intentionally harassing and an attempt to circumvent the discovery parameters in the NRA's separate lawsuits against Dycio.

In any event, the NRA's requested relief is improper because "a party seeking disqualification should not be permitted to broadly pierce privileges to probe whether its confidential information was actually revealed."[124]  The NRA is not entitled to AMc's privileged communication just because the NRA baselessly contends that such communications evidence a conflict with AMc's former counsel.  For these reasons, the NRA's request should be denied.

     3.  <u>Alternative Frameworks are Likewise Improper</u>

---

[122] *Dynamic 3D Geosolutions, LLC*, 837 F.3d at 1282.
[123] Ex. A, Decl. of B. Mason, dated Feb. 25, 2022, at ¶ 2 [App. 2].
[124] *In re American Home Prods. Corp.*, 985 S.W.2d at 81.

Finally, the NRA's pleas for myriad alternative relief is equally improper and reveals the NRA's true intentions. The NRA first seeks to forbid AMc's use of any information obtained from Dycio, despite the fact that the NRA itself is unable and/or unwilling to identify any confidential information it claims Dycio provided Dorsey that is relevant to this lawsuit. Instead of meeting its burden here to substantiate its drastic requested relief, the NRA asks to be allowed to challenge AMc's evidence during the trial by making "an initial *prima facie* showing of the connection between the allegedly tainted evidence and Dycio's representation of the NRA."[125] In other words, the NRA requests the Court sanction more *waiting* so that it may establish a "substantial relationship" with Dycio's representation throughout the trial in hopes of (again) circumventing the Court and presenting the matter to the jury. This is an improper, thinly veiled attempt to defer the NRA's present burden and grind the wheels of trial to a halt at the NRA's discretion.

The NRA additionally seeks even greater relief, explaining "the Court could simply enter an order preventing Defendants from presenting evidence or testimony at trial regarding any of the subject matter identified in Categories 11-14 of the Categorical Log."[126] The extreme, far-reaching implications of the NRA's "simple" request cannot be overstated. Such relief cannot be substantiated on the face of the NRA's Motion, but the NRA's request for same is revealing to its intent to avoid the merits of AMc's claims at any cost.

## IV. MOTION FOR SANCTIONS

As the Fifth Circuit has stated recently, "[d]istrict courts can impose sanctions using their inherent authority" upon finding that "the sanctioned person acted in bad faith."[127] While the threshold for issuing such sanctions is high, a court has "the power to levy sanctions in response

---

[125] ECF 557, at 25.

[126] ECF 557, at 25.

[127] *Pena v. Lone Star Nat'l Bank, N.A.*, 807 Fed. App'x 353, 356 (5th Cir. 2020) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49-50 (1991)).

to abusive litigation practices."[128]  Exercising this discretion requires restraint, and, accordingly, any sanction awarded must be tailored specifically to respond to the sanctioned conduct.[129]

The NRA should be sanctioned because it declined to even attempt proving material elements of the radical, sweeping relief it begs from the Court.  Invalid on its face, the Motion serves as nothing more than a billing exercise and a deliberate distraction.  This factor provides further support for the second basis for sanctions against the NRA: the Motion was unreasonably delayed and filed for a tactical purpose.  The NRA's decision to file its Motion on February 21, 2022—two weeks before trial and five days before the parties submit manifold filings in preparation for trial—is not a coincidence.  This decision was patently abusive.

Per the Court's Order, the parties are to file a joint pre-trial report, motions in limine, deposition designations, objections to witness lists, and other pretrial materials on February 25, 2022.  Yet, the NRA still waited 43 days following receipt of AMc's Categorical Log to bring this motion, and timed its filing to when the NRA knew both parties would be busy preparing their respective evidence for the impending trial.  Responding to this Motion obviously forced AMc to divert significant time during the week of February 21, 2022 away from trial preparations.  While AMc cannot recover this time, a narrow, tailored sanction commensurate with the NRA's abusive, tactical, bad-faith filing of this Motion includes the following relief:

- A specific finding from this Court that the NRA's Motion was filed in bad-faith;

- Attorney's fees to compensate AMc's lost time in responding to this Motion;

- A formal admonishment that, should the NRA continue with any bad-faith conduct either before trial or during trial, the Court will once again take up the issue of additional tailored sanctions.

---

[128] *OrchestrateHR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 482 (N.D. Tex. 2016) (quoting *In re Stone*, 986 F.2d 898, 901 (5th Cir. 1993)).
[129] *Id.* at 482-83.

AMc believes this sanction is appropriately tailored to the NRA's bad-faith, abusive conduct.

## V.   REQUEST FOR RULING

Finally, AMc respectfully requests the Court's ruling on the NRA's Objections to Defendants' Supplemental Categorical Privilege Log (the "***Objections***").[130]  As set forth in AMc's Response to same, it is AMc's position that the NRA's Objections have no basis, in law or in fact, and should be overruled in their entirety.[131]  Notably, even absent an order on the NRA's Objections, the NRA's instant Motion seeks to relitigate its arguments and contentions in the Objections[132] and in other discovery filings by the NRA.[133]  While the Court's order on the instant Motion may dispose of certain arguments in the Objections, AMc believes it is in the best interests of all parties to have the NRA's Objections swiftly and summarily resolved so that the parties can finally proceed to trial.  Absent the Court's intervention, it is plainly evident that the NRA will use the substance of any outstanding matters to protract disputes even where none exist.

## VI.   PRAYER

For the foregoing reasons, AMc respectfully requests that the Court:

1.    Deny the NRA's Motion to Disqualify Dorsey;

2.    Sanction the NRA by:

(a) Issuing a specific finding that the NRA's Motion was filed in bad-faith;

(b) Awarding AMc the recovery of attorney's fees to compensate AMc's lost time in responding to this Motion; and

---

[130] *See* ECF 533.
[131] *See* ECF 554.
[132] *See* ECF 557, at 23 (arguing that Dycio's involvement "raises the specter of crime/fraud waiver," as previously argued in the NRA's Objections (ECF 533, at 19-20)).
[133] *See* ECF 557, at 22 (arguing that privilege for documents on AMc's Categorical Log was not timely asserted and may be deemed waived, as previously argued in the NRA's Motion to Compel Certain Documents Withheld Under Deficient Claims of Privilege (ECF 395)).

(c) Issuing a formal admonishment that, should the NRA continue with any bad-faith conduct either before trial or during trial, the Court will once again take up the issue of additional tailored sanctions;

3.      Issue a ruling denying the NRA's Objections to AMc's Supplemental Categorical Privilege Log (ECF 533); and

4.      Grant AMc any other relief this Court deems just and proper.


February 25, 2022.


Respectfully submitted,

*/s/ Brian E. Mason*
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR
DEFENDANTS/COUNTER-PLAINTIFF
ACKERMAN MCQUEEN, INC.**

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on February 25, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Brian E. Mason*

BRIAN E. MASON
