IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFFLE ASSOCIATION OF AMERICA, | § § § § § § § | |
| *Plaintiff and Counter-Defendant*, | | |
| v. | § § § | Case No. 3:19-cv-02074-G |
| ACKERMAN MCQUEEN, INC., | § § § | |
| *Defendant and Counter-Plaintiff*, | § § § | |
| and | § § | |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY, | § § § § | |
| *Defendants*. | § | |

## ACKERMAN MCQUEEN'S TRIAL BRIEF REGARDING CONVERSION OF INTANGIBLE PROPERTY

TO THE HONORABLE A. JOE FISH:

Defendant/Counter-Plaintiff Ackerman McQueen, Inc. ("***AMc***"), Defendants Mercury Group, Inc. ("***Mercury***"), Henry Martin ("***Martin***"), William Winkler ("***Winkler***"), and Melanie Montgomery ("***Montgomery***") (collectively, "***AMc***") hereby file this *Trial Brief* (the "***Brief***"), and respectfully show as follows:

Among the claims and defenses at issue in this case, AMc posits that several of the parties' disputes can be disposed purely on the legal issues involved. Accordingly, AMc provides for the Court's benefit a brief summary and argument of the legal issues related to Texas law's general prohibition on conversion of intangible property claims, which apply here as a matter of law to bar the NRA's conversion claims. AMc hopes this brief will facilitate a speedier, more efficient trial.

I.  BACKGROUND

The NRA's Second Amended Complaint ("*SAC*") includes claims for conversion against AMc (Count 3).[1] The NRA alleges that, by virtue of the parties' Services Agreement, AMc obtained certain NRA-owned information, including registered copyrights and trademarks, as well as the NRA's "confidential information."[2] The NRA alleges further that AMc "acquired, retained, and used confidential information owned by the NRA[],"[3] and, despite the NRA's demands for return, retained the "confidential information" and displayed the NRA's intellectual property on AMc's website, all of which allegedly hindered the value of these property rights.[4] In yet more allegations, the NRA claims that AMc improperly disclosed this information to third parties for the "malicious purpose of smearing the NRA's reputation . . . ."[5]

Deviating from its pleadings, however, the NRA has undoubtedly shifted the content of its conversion claims as litigation has progressed. Through summary judgment briefing,[6] expert reports,[7] and other communications between the parties,[8] the NRA now contends that AMc has converted data held on a server referred to as the PIP Dashboard as well as the login credentials to various NRATV social media accounts. Despite these maneuverings, all of the NRA's conversion claims fail as a matter of law because Texas law does not recognize conversion of intangible property except in limited situations not applicable here, as discussed further below.

---

[1] ECF 209, at 55-58, ¶¶ 127-37.
[2] *Id.* at 55-56, ¶¶ 129-30.
[3] *Id.* at 56, ¶ 130.
[4] *Id.* at 56, ¶¶ 131-32.
[5] *Id.* at 56, ¶ 133.
[6] *See* ECF 440, at 8-10 (discussing the NRA's allegations that AMc is improperly withholding the Dashboard and NRATV social media account login credentials).
[7] *See generally* ECF 442, Exs. 95-96, Expert Report and Supplemental Expert Report of Jonathan Hochman (APP 4678-4897).
[8] ECF 442, Exs. 19, 22, 26-29 (comprising several letters exchanged between party counsels from September 2021 through October 2021).

## II.   ARGUMENTS AND AUTHORITIES

The NRA has three bases for its conversion claims: (1) AMc displayed the NRA's intellectual property AMc's website after the termination of the Services Agreement; (2) AMc failed to return certain confidential information belonging to the NRA upon request; and (3) AMc has improperly withheld from the NRA the data on the PIP Dashboard and the NRATV social media account login credentials. Given that the nature of this property is intangible, these claims fail as a matter of law.

"To prove conversion, a claimant must establish (1) it owned or had legal possession of the property or entitlement to possession, (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the claimant's rights, (3) the claimant demanded return of the property, and (4) the defendant refused to return the property."[9]  "Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted."[10] "[T]o the extent that a plaintiff alleges conversion of intangible, copyrightable material, the claim is either outside the scope of Texas conversion law and therefore fails to state a claim under state law or, in the alternative, preempted by the Copyright Act."[11]

### A.   Conversion Claims Based on Second Amended Complaint

Recognizing that the NRA based its conversion claim on the alleged conversion of intangible property and was therefore preempted by the Copyright Act, this Court dismissed the

---

[9] *Hill v. New Concept Energy, Inc. (In re Yazoo Pipeline Co., L.P.)*, 459 B.R. 636, 652 (S.D. Tex. Bankr. Oct. 14, 2011); *Bandy v. First State Bank*, 835 S.W.2d 609, 622 (Tex. 1992).
[10] *Id.*
[11] *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 823 F. Supp. 2d 578, 587 (S.D. Tex. 2011).

NRA's conversion claim in the First Amended Complaint by its Order dated September 15, 2020.[12] Following the Court's dismissal, the NRA re-pled its conversion claim (*i.e.*, Count 3 in the SAC), supplementing its prior argument by stating the NRA seeks the value of "confidential information" that AMc allegedly converted and disclosed to the media and unauthorized NRA directors in a misguided attempt to circumvent Copyright Act preemption.[13] As examples of the property AMc allegedly converted, the NRA referenced Exhibits B and C of its SAC, which supplied outdated screenshots of AMc's website, displaying content AMc created for the NRA.[14] The fact remains, despite amending its complaint to add conversion of "confidential information," the NRA continues to improperly base its claim on intangible property.[15]

To the extent the NRA's conversion claim relies on the promotional material formerly displayed on AMc's website, that claim should once again be dismissed because it is preempted by the Copyright Act as set forth in AMc's prior Motion to Dismiss.[16] Further, the NRA admits it could equally have used those images contemporaneously with AMc for any other NRA purpose.[17] Accordingly, the NRA cannot show AMc exercised "dominion and control" over the images or used them to the "exclusion" of the NRA.[18]

As for the "confidential information," "Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted."[19] In other words, intangible

---

[12] ECF 165 at 21.
[13] ECF 209, at 55-58, ¶¶ 127-37.
[14] ECF 209 at Exs. B & C.
[15] *See* ECF 209, at 56, ¶ 131 (falsely claiming that "Defendants have refused to remove from its website and return all such confidential information…").
[16] *See* ECF 28, 29, which are incorporated herein for all purposes.
[17] *See* ECF 419-1, Ex. 34-E, NRA Obj. and Resp. to AMc RFA at 11, No. 21 [APP 2325].
[18] *See Bandy*, 835 S.W.2d at 622 ("dominion and control" required for conversion claim).
[19] *Express One Int'l v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App.—Dallas 2001, no pet.); *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 982 (S.D. Tex. 1997).

information is only protected by conversion when physically contained on such documents as stock certificates, lease documents, and a copy of a confidential customer list, and the property converted is that physical media containing the information.[20]

Confidential information has been analyzed under this framework.[21] Recognizing that intangible property is not subject to the tort of conversion in Texas except where that property is part of a physical item or document that has been converted, the court in *Neles-Jamesbury, Inc.* cited "confidential customer lists" as information that may be subject to conversion only when it is converted in the form of physical documents.[22] Although the NRA has failed to state with any specificity to what confidential information its claims refer, it has not referenced conversion of any physical media, and there can be no doubt that the confidential information is intangible property, which does not meet the elements of conversion. Moreover, much of the so-called "confidential information" could not possibly maintain any recognized "confidential" status. The intellectual property the NRA now claims was "confidential"[23] was publicly displayed on AMc's website—without objection by the NRA—prior to the termination of the Services Agreement.[24] In fact, some of the images had been on display since 2017.[25] Thus, none of the NRA's claims for conversion as pled in the SAC are cognizable as a matter of law.

    B.    **PIP Dashboard and Social Media Account Login Credentials**

Largely abandoning the content of the SAC's claims for conversion, the NRA now claims the "confidential information" that AMc has allegedly converted consists of the PIP Dashboard, a

---

[20] *Neles-Jamesbury, Inc.* 974 F. Supp. at 982.
[21] *See id.*
[22] *See id.*
[23] ECF 209, Exs. B, C.
[24] ECF 419-1, Ex. 39, McQueen Decl. at ¶ 5 [APP 2666].
[25] *See id.*

collection of data related to NRATV, as well as NRATV social media account login credentials.[26] Initially, because the NRA never pled claims related to the PIP dashboard and NRATV social media accounts, the Court should not consider these claims.[27]

Insofar as the Court considers the new factual content in these conversion claims, they are barred as a matter of Texas law. As explained above, "Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted."[28] While conversion of physical documents representing a property interest such as a lease or stock certificate is cognizable,[29] Texas courts have determined that "an internet webpage address is intangible property not subject to conversion"[30] because it was not reduced to physical form.

Undoubtedly, the underlying data comprising the PIP Dashboard and the website-based social media account credentials are not tangible property. Rather, such data is accessible only through electronic means. Unlike a lease or stock certificate, which are physical documents reflecting ownership of an intangible asset, the data on the PIP Dashboard exists on a server and the social media credentials are useful only by accessing an internet webpage address, inputting them, and unlocking the user's profile. The NRA claims AMc's refusal to transmit the data housed in the server with other AMc client information and retention of the login credentials is the act constituting the unlawful possession amounting to conversion. Yet, much like the internet

---

[26] *See* ECF 440, at 8-10 (discussing the NRA's allegations that AMc is improperly withholding the Dashboard and NRATV social media account login credentials).
[27] *See, e.g.*, *King Aero. Commercial Corp. v. Al-Anwa Aviation, Inc.*, No. 3:08-CV-0999-L, 2010 U.S. Dist. LEXIS 62677, at *9, 17-18 (N.D. Tex. June 24, 2010) (denying motion for leave to amend complaint where movant sought to "add factual allegations regarding its *existing* claims" largely because it was "simply too late in the litigation").
[28] *Hill v. New Concept Energy, Inc. (In re Yazoo Pipeline Co., L.P.)*, 459 B.R. 636, 652 (S.D. Tex. Bankr. Oct. 14, 2011); *Bandy v. First State Bank*, 835 S.W.2d 609, 622 (Tex. 1992).
[29] *Neles-Jamesbury, Inc.* 974 F. Supp. at 982.
[30] *Express One Int'l*, 53 S.W.3d at 901 (citing *Ciccorp, Inc. v. Aimtech Corp.*, 32 F. Supp. 2d 425, 430 n.9 (S.D. Tex. 1998)).

webpage addresses, this information is purely intangible, and the NRA cannot, as a matter of law, assert a claim for conversion (let alone establish any damages) as to it.

### III.   CONCLUSION

For the aforementioned reasons, the NRA's conversion claim is disposable as a matter of law. Accordingly, AMc hopes this trial brief may assist the Court in understanding the legal issues and analysis relevant to adjudicating these claims.

February 25, 2022.

                                      Respectfully submitted,

                                      */s/ Brian E. Mason*
                                      **Brian E. Mason, Esq.**
                                      Texas Bar No. 24079906
                                      mason.brian@dorsey.com
                                      **G. Michael Gruber, Esq.**
                                      Texas Bar No. 08555400
                                      gruber.mike@dorsey.com
                                      **Jay J. Madrid, Esq.**
                                      Texas Bar No. 12802000
                                      madrid.jay@dorsey.com
                                      **J. Brian Vanderwoude, Esq.**
                                      Texas Bar No. 24047558
                                      vanderwoude.brian@dorsey.com
                                      **DORSEY & WHITNEY LLP**
                                      300 Crescent Court, Suite 400
                                      Dallas, Texas 75201
                                      (214) 981-9900 Phone
                                      (214) 981-9901 Facsimile

                                      **ATTORNEYS FOR DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.**

## CERTIFICATE OF SERVICE

       I hereby certify that on February 25, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

                                           */s/ Brian E. Mason*
                                           BRIAN E. MASON