**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| *Plaintiff and Counter-Defendant,* | § § § | |
| **v.** | § | **Case No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** | § § | |
| *Defendant and Counter-Plaintiff,* | § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY,** | § § § § § | |
| *Defendants.* | § | |

**ACKERMAN MCQUEEN'S TRIAL BRIEF REGARDING THE NONEXISTENCE OF A FIDUCIARY RELATIONSHIP BETWEEN THE NRA AND AMc OR MERCURY**

TO THE HONORABLE A. JOE FISH:

Defendant/Counter-Plaintiff Ackerman McQueen, Inc. ("*AMc*"), Defendants Mercury Group, Inc. ("*Mercury*"), Henry Martin ("*Martin*"), William Winkler ("*Winkler*"), and Melanie Montgomery ("*Montgomery*") (collectively, "*AMc*") hereby file this *Trial Brief* (the "*Brief*"), and respectfully show as follows:

Among the claims and defenses at issue in this case, AMc posits that several of the parties' disputes can be disposed purely on the legal issues involved. Accordingly, AMc provides for the Court's benefit a brief summary and argument of the legal issues related to the nonexistence of any fiduciary relationship between AMc and the NRA. AMc hopes this brief will facilitate a speedier, more efficient trial.

## I.    BACKGROUND

This Court previously dismissed the NRA's claims for breach of fiduciary duty for lack of an agency relationship stated in the NRA's First Amended Complaint.[1]  In spite of that dismissal, the NRA returned with more claims for breach of fiduciary duty in its Second Amended Complaint.[2]  Whether there is a fiduciary relationship, formal or informal, between the NRA and either AMc or Mercury is a contested legal issue in this case.  Because AMc contends no such relationship exists as a matter of law, AMc submits this trial brief to assist the Court in understanding the issue as applied in this case.

## II.    ARGUMENTS AND AUTHORITIES

The NRA pleaded two separate breach of fiduciary duty claims against AMc and Mercury, Count Five under Texas law and Count Seven under Virginia law.  Under both Texas and Virginia law, the elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the breach of that duty; and (3) injury to the plaintiff or benefit to the defendant.[3]  Despite the NRA's allegations, it has utterly failed to demonstrate that a fiduciary relationship exists between the NRA and AMc or Mercury.

A fiduciary relationship may arise from formal and informal relationships as well as by contract.[4]  A formal fiduciary relationship arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers.[5]  An informal fiduciary relationship, however, can arise only "where one person trusts in and relies upon another,

---

[1] ECF 165, at 27-28.
[2] ECF 209, at ¶¶ 162-70, 175-83.
[3] *Jacked Up, LLC v. Sara Lee Corp.*, 854 F.3d 797, 808 (5th Cir. 2017); *Johnson v. Bella Gravida*, LLC, 105 Va. Cir. 350, 355 (Cir. Ct. 2020).
[4] *Jacked Up LLC*, 854 F.3d at 808.
[5] *Id*.

whether the relationship is a moral, social, domestic, or purely personal one."[6]  The NRA fails to establish a fiduciary relationship under either the formal or informal approach.

### A.     There Is No Formal Fiduciary Relationship Between the NRA and AMc.

There is no formal fiduciary relationship between the NRA and AMc.  The NRA has tried, and failed, to establish a formal fiduciary relationship by arguing that the Services Agreement created a principal-agent relationship between the NRA and AMc.[7]  In its September 15, 2020 Order addressing the NRA's First Amended Complaint, the Court found the NRA failed to plead facts sufficient to allege a principal-agent relationship between the NRA and AMc.[8]  As the Court noted, "[i]n its response, the NRA simply state[d]: 'the NRA alleges that the Services Agreement between the parties contains language making AMc an agent and fiduciary of the NRA.'"[9]  Notably, the Court specifically considered the language of the Services Agreement and determined that it did not provide a formal fiduciary relationship between AMc and the NRA based upon a principal-agent relationship:

> Although the provisions of the Services Agreement cited by the NRA establish that AMc was to act on the NRA's behalf with respect to various tasks set forth in the agreement, these provisions do not establish that the NRA had "the right to dictate the means and details of the process by which [AMc]" was to accomplish those tasks.[10]

Beyond these claims in the NRA's First Amended Complaint (which were recycled into the live Second Amended Complaint), the language of the Services Agreement itself does not establish a principal-agent relationship.  Of course, "Texas law does not presume agency, and, when claiming agency, the alleging party has the burden of proving its existence."[11]  Proving

---

[6] *Id*.
[7] ECF 209, at ¶ 164.
[8] ECF 165, at 27.
[9] *Id.*
[10] *Id.*
[11] ECF 165, at 27 (quoting *Buchoz v. Klein*, 184 S.W.2d 271, 286 (Tex. 1944)).

agency requires demonstrating a "consensual relationship between two parties when one, the agent, acts on behalf of the other, the principal, *and is subject to the principal's control*."[12]   The principal's right of control over the agent includes the right to "dictate the means and details of the process by which an agent will accomplish the task."[13]   In prior briefing, the NRA attempted to establish that certain provisions of the Services Agreement established the NRA's right to control AMc's work under the Services Agreement.[14]   These arguments all fail.

The NRA pointed to Section I.A to suggest that it had the right to control AMc's work based on the following language: "[c]oordinat[e] with internal NRA public relations staff in the Executive Office, General Operations, and Institute for Legislative Action."[15]   It pointed to Section I.B, which envisioned AMc submitting "cost estimates . . . for approval" so long as "reasonable time is available."[16]   It pointed to Section I.C, which called for AMc, following the NRA's approval, to "plan and order by written contract or insertion order the print, space, radio and television time, or other media to be used for advertising."[17]   And it pointed to Section I.D, which invested AMc with wide latitude to produce certain "Owned Media Services."[18]

Just as this Court determined when examining the NRA's First Amended Complaint, an examination of these contractual provisions fails to show how the NRA retained the right to "dictate the means and details of the process by which" AMc was to perform its work for the NRA. As such, there is no formal fiduciary relationship between AMc or Mercury and the NRA as a matter of law based upon the language of the Services Agreement or otherwise.

---

[12] *Id.* at 26 (quoting *Akerblom v. Ezra Holdingts, Ltd.*, 848 F. Supp. 2d 673, 690 (S.D. Tex. 2012)) (emphasis added).
[13] *Id.* (citing and quoting sources).
[14] ECF 440, at 19-22.
[15] ECF 419-1, Ex. 35-A, 2017 Services Agreement § I.A (APP 2378); ECF 440, at 20-21.
[16] ECF 419-1, Ex. 35-A, 2017 Services Agreement § I.B (APP 2378); ECF 440, at 21.
[17] ECF 419-1, Ex. 35-A, 2017 Services Agreement § I.C (APP 2379); ECF 440, at 20.
[18] ECF 419-1, Ex. 35-A, 2017 Services Agreement § I.D (APP 2379); ECF 440, at 20.

**B.      There Is No Informal Fiduciary Relationship Between the NRA and AMc.**

Likewise, there was no informal fiduciary relationship between AMc or Mercury and the NRA at any time. Texas law does not recognize informal fiduciary relationships lightly, "especially in the commercial context."[19]   To impose an informal fiduciary duty in an arms-length business transaction, the special relationship of trust and confidence "must exist prior to, and apart from, the agreement made the basis of the suit."[20]   In fact, the Texas Supreme Court has already determined that certain relationships fail to establish an informal fiduciary relationship as a matter of law: (1) a businessman trusts another businessman to perform a contract and relies on a promise to perform[21]; (2) the parties' relationship has been cordial and long-lasting[22]; and (3) the parties had dealt with each other previously and one party subjectively trusts the other.[23]

The contract at issue here is the 2017 Services Agreement; however, the parties previously relied upon a 1999 Services Agreement that governed their relationship.[24]   There is no evidence of any special relationship of trust and confidence that preceded the parties' contractual relationship.[25]   Nevertheless, even where the contracting parties develop a relationship of mutual trust and friendship, the Texas Supreme Court has opined:

> [T]he fact that Cathey trusted Meyer does not transform their business arrangement into a fiduciary relationship. *See Morris*, 981 S.W.2d at 674 ("'Mere subjective trust does not . . . transform arm's-length dealing into a fiduciary relationship.'"). Nor can we justify imposing a fiduciary duty based on the fact that, for four years,

---

[19] *Jacked Up LLC*,  854 F.3d at 809 (internal citations omitted); *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) ("[I]n order to give full force to contracts, we do not create such a relationship lightly."); *see also Mullins v. TestAmerica, Inc.*, No. 3:02-CV-106-M, 2002 U.S. Dist. LEXIS 4877, at *8 (N.D. Tex. 2002) ("Because the relationship places an onerous burden of loyalty on the fiduciary, it is an extraordinary one and will not be lightly created.").

[20] *Jacked Up LLC*, 854 F.3d at 809 (*citing Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998)).

[21] *Consolidated Gas & Equip. Co. v. Thompson*, 405 S.W.2d 333, 336 (Tex. 1966).

[22] *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962).

[23] *Meyer*, 167 S.W.3d at 331.

[24] *See* ECF 419-1, Ex. 35-C, 1999 Services Agreement [APP 2390-401].

[25] *See Meyer*, 167 S.W.3d at 331 ("These earlier projects were arms-length transactions entered into for the parties' mutual benefit, and thus do not establish a basis for a fiduciary relationship.").

Cathey and Meyer were friends and frequent dining partners. *See Crim Truck & Tractor Co*., 823 S.W.2d at 595 ("The fact that the relationship has been a cordial one, of long duration, [is not] evidence of a confidential relationship.").[26]

As to what kinds of relationships *do* lead to findings of informal fiduciary duty in the business context, Texas courts have made clear that they arise from *personal relationships*[27]—typically relationships predating and existing outside of the contractual relationship.[28]  The NRA's Second Amended Complaint fails to demonstrate any such relationship.  The first sentence in Count 5 states, that "[o]ver the course of more than thirty years of close collaboration (including decades that precluded [sic] the Services Agreement), the NRA reposed extensive trust and confidence in, and relied upon, AMc."[29]  Count 7 reiterates this line as well.[30]  As noted above, a long-lasting and cordial business relationship between businessmen, without more, fails as a matter of law to create an informal fiduciary relationship.[31]

Beyond this deficient pleading, the NRA has failed to produce evidence establishing an informal fiduciary relationship.  In fact, the evidence demonstrates the opposite.  Wayne LaPierre ("*LaPierre*") himself defined his relationship with Angus McQueen as strictly an arms-length business relationship:

> Q:  Did you – for the almost 30 years that you were working with
>      Ackerman McQueen, did you regard Angus McQueen as a friend?

---

[26] *Id.* (some internal citations omitted).

[27]  *Lee v. Hasson*, 286 S.W.3d 1, 14 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("The existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved."); *Kalb v. Norsworthy*, 428 S.W.2d 701, 705 (Tex. Civ. App.—Houston [1st Dist.] 1968, no pet.) (By reason of appellant's long association with appellee in a business relationship, as well as the *close personal friendship* existing between them, appellant was justified in placing confidence in the belief that appellee would act in his best interest.) (emphasis added).

[28] *Ritchie v. Rupe*, 443 S.W.3d 856, 875 (Tex. 2014) ("Informal fiduciary duties are not owed in business transactions unless the special relationship of trust and confidence existed prior to, and apart from, the transaction(s) at issue in the case.").

[29] ECF 209, at ¶ 163.

[30] ECF 209, at ¶ 177.

[31] *See, e.g.*, *Meyer*, 167 S.W.3d at 331; *Consolidated Gas & Equip. Co.*, 405 S.W.2d at 336; *Thigpen*, 363 S.W.2d at 253.

> A:   You know, with Angus, I always knew it was business.  I regarded
> him as a friend, but I always knew with Angus it was business. [32]

LaPierre's admission squarely shows the decades-long relationship between the NRA and AMc was rooted in business.  Although personally they may have considered each other friends, no evidence suggests this business relationship emerged out of a prior *personal* relationship.  Accordingly, the NRA has failed to demonstrate an informal fiduciary relationship existed between AMc or Mercury and the NRA.

### III.    CONCLUSION

For the aforementioned reasons, the NRA's breach of fiduciary duty claims are disposable as a matter of law.  Accordingly, Defendants hope this trial brief may assist the Court in understanding the legal issues and analysis relevant to adjudicating these claims.

---

[32] ECF 419-1, Ex. 4, LaPierre Depo. (Virginia Action), at 47:13-19 [APP 310]; *see also id.*, at 42:24-43:4 (describing the relationship as a "business colleague relationship") [APP 309].

February 25, 2022.

Respectfully submitted,

*/s/ Brian E. Mason*
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR DEFENDANT/COUNTER-PLAINTIFF ACKERMAN MCQUEEN, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Brian E. Mason*
BRIAN E. MASON