**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| *Plaintiff and Counter-Defendant,* | § § | |
| **v.** | § § | **Case No. 3:19-cv-02074-G** |
| **ACKERMAN MCQUEEN, INC.,** | § § § | |
| *Defendant and Counter-Plaintiff,* | § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, AND MELANIE MONTGOMERY** | § § § § | |
| *Defendants.* | § | |

**PLAINTIFF THE NATIONAL RIFLE ASSOCIATION OF AMERICA'S
<u>PROPOSED JURY INSTRUCTIONS</u>**

Plaintiff the National Rifle Association of America respectfully submits the following proposed jury instructions.

Respectfully submitted,

**BREWER, ATTORNEYS & COUNSELORS**

By:  /s/    *Cecelia L. Fanelli*

Cecelia L. Fanelli
*Pro Hac Vice*
clf@brewerattorneys.com
Sarah B. Rogers
New York Bar No. 4755252
sbr@brewerattorneys.com
Philip J. Furia
*Pro Hac Vice*
pjf@brewerattorneys.com
Konstantin Parkhomenko
TX State Bar No. 24074854

1

knp@brewerattorneys.com
1717 Main St. Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR THE PLAINTIFF/
COUNTER-DEFENDANT THE NATIONAL
RIFLE ASSOCIATION OF AMERICA**

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 25, 2022, a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record.

*/s/       Cecelia L. Fanelli*                    _____

Cecelia L. Fanelli

# I.    PRELIMINARY INSTRUCTIONS[1]

## A.    Instructions Prior to Jury Selection

**MEMBERS OF THE JURY PANEL:**

Thank you for being here.  We are here to select a jury.  Even if you are not chosen for the jury, you are performing a valuable service that is your right and duty as a citizen of a free country.

In any jury trial there are, in effect, two judges. I am one of the judges; you, the jury, are the other judge.  It is my duty to preside over the trial and to decide what evidence is proper for your consideration. I have completed that responsibility.  It is also my duty now, at the end of the trial, to explain to you the rules of law that you must follow and apply in arriving at your verdict. As I have said, you are the other judge - the judge of the facts.  It will be your duty to find from the evidence what the facts are.

Before we begin:  please turn off all phones and other electronic devices.  While you are in the courtroom, do not communicate with anyone through any electronic device.  Do not record or photograph any part of these court proceedings, because it is prohibited by law.

If you are chosen for the jury, your role as jurors will be to decide the disputed facts in this case.  My role will be to ensure that this case is tried in accordance with the rules of law.

Here is some background about this case.  This is a civil case.  It is a lawsuit that is not a criminal case. In a civil case, private citizens can sue – and counter-sue – each other for damages based on alleged violations of state or federal law.  Your role as jurors will be to apply the law that I give you to the facts of the case.  At the end of the trial, you, and you alone, will decide which parties – if any – were in the wrong based on the legal instructions I provide.  You will also decide the amount of monetary damages – if any – to which the wronged parties should be entitled.  **This is a large and important responsibility that is critical to this country's justice system.  I hope you take that solemn duty seriously.**

In a few minutes, the attorneys will ask you some questions during jury selection.  But before their questions begin, I must give you some instructions for jury selection.

Every juror must obey these instructions.  You may be called into court to testify about any violations of these instructions.  If you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again.  This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial.

These are the instructions.

1.    To avoid looking like you are friendly with one side of the case, do not mingle or talk with the lawyers, witnesses, parties, or anyone else involved in the case.  You may exchange casual greetings like "hello" and "good morning."  Other than that, do not talk with them at all.

---

[1] Based on the Fifth Cir. Civil Pattern Jury Instructions at 1.1-1.2 (2020 ed.).

They have to follow these instructions too, so you should not be offended when they follow the instructions.

2.      Do not accept any favors from the lawyers, witnesses, parties, or anyone else involved in the case, and do not do any favors for them.  This includes favors such as giving rides and food.

3.      Do not discuss this case with anyone, even your spouse or a friend, either in person or by any other means, including by phone, text message, email message, chat room, blog, or social networking websites such as Facebook, Twitter, or Instagram.  Do not allow anyone to discuss the case with you or in your hearing.  If anyone tries to discuss the case with you or in your hearing, tell me immediately.  We do not want you to be influenced by something other than the evidence admitted in court.

4.      The parties, through their attorneys, have the right to ask you questions about your background, experiences, and attitudes.  They are not trying to meddle in your affairs.  They are just being thorough and trying to choose fair jurors who do not have any bias or prejudice in this particular case.

5.      Remember that you took an oath that you will tell the truth, so be truthful when the lawyers ask you questions, and always give complete answers.  If you do not answer a question that applies to you, that violates your oath.  Sometimes a lawyer will ask a question of the whole panel instead of just one person.  If the question applies to you, raise your hand and keep it raised until you are called on.

If you feel that you harbor a bias against one of the parties or counsel, or feel that you cannot serve as an impartial juror in this case for any reason, please raise your hand and let me know as soon as possible.

Do you understand these instructions?  If you do not, please tell me now.

The lawyers will now begin to ask their questions.

**B.**   **Preliminary Instructions to Jury After the Panel Has Been Selected**

**MEMBERS OF THE JURY:**

You have now been sworn as the jury to try this case.  As the judge, I will decide all questions of law and procedure.  As the jury, you are the judges of the facts.  At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

### 1.1   Duty of Jury

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  You will be allowed to keep this set of instructions throughout the trial to which you can refer.  This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings.  At the end of the trial, I will give you a final set of instructions.  It is the final set of instructions that will govern your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.  It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

### 1.2   Summary of the Parties and Claims

This lawsuit and countersuit involve complex relationships among the parties.  To assist your understanding of the case, I will give you a brief summary of the parties and claims in this case.

#### 1.2.1   Who Are The Parties?

*__Plaintiff/Counter-Defendant__*

The Plaintiff in this case is the National Rifle Association of America, or the NRA.  The NRA is called a **"Plaintiff"** because it brought the initial lawsuit.  Being a Plaintiff or Defendant in a civil case doesn't carry any special advantage or disadvantage.  A Plaintiff in a civil case has the burden of proof to prove up all the essential requirements – or elements – of each of their claims to a preponderance of the evidence standard (which I will explain in later instructions).

Here, the National Rifle Association is not only the Plaintiff, but also what's called a **"Counter-Defendant."**  A Counter-Defendant means that, after the NRA brought the initial lawsuit, one of the Defendants decided to file a counter-lawsuit, where they acted as a Plaintiff

and the NRA was one of the Defendants.  Therefore, the NRA is a Plaintiff with respect to its own claims, but is also a Defendant with respect to other claims that were brought against it.  Because the two lawsuits are connected, for the sake of efficiency and convenience, both the initial lawsuit and the counter-lawsuit will be presented to you during this one trial.  After listening to the parties' respective cases, you will be able to determine who (if anyone) was in the wrong, and whether (and how much) in damages the parties should be awarded.

### *Defendant/Counter-Plaintiff*

One of the Defendants in this case is Ackerman McQueen, Inc., also called "Ackerman" or "AMc."  AMc is not only a Defendant but also a Counter-Plaintiff in this lawsuit.  "Counter-Plaintiff" means that, after the NRA brought the initial lawsuit, AMc decided to bring a lawsuit of its own against the NRA.  Being a Counter-Plaintiff does not confer any special advantage or disadvantage.  Just like the Plaintiff, NRA, has the burden to prove up its claims against Defendants, AMc also has the burden of proof with respect to the claims AMc brought in its own lawsuit.  You, the jury, will ultimately decide the outcome of both lawsuits.

### *Defendants*

In addition to AMc, the NRA named other Defendants in its initial lawsuit.  They are: Mercury Group, Inc., Henry Martin, William Winkler, and Melanie Montgomery.  You will notice that some of the defendants are individuals and some are corporations.  Being an individual or a corporate defendant does not confer any special significance, other than for the purposes of certain defenses, which I will address separately.

Both corporate and individual parties have equal rights under the law, and the Plaintiff – the NRA – has the burden to prove up each element of its claims with respect to each Defendant.

### 1.2.2   What Are The Claims?

The lawsuit stems from a soured relationship, spanning over more than 30 years, between the NRA and its former public relations and crisis management firm, AMc. The NRA and AMc entered into a Services Agreement which governed their respective obligations. Plaintiff and Counter-Defendant, the NRA asserts that:

- After the parties' relationship was terminated, AMc kept certain NRA-trademarked images on its website, which caused consumer confusion as to AMc's continued association with the NRA (Trademark Infringement and False Association under the Lanham Act)

- After the parties' relationship was terminated, AMc withheld and still retains the login credentials to the NRATV social media accounts, causing a likelihood of consumer confusion and forcing the NRA to remain associated with an entity that it no longer wishes to be associated with (False Association under the Lanham Act).

- AMc possesses and refuses to return certain digital property owned by the NRA. In addition, AMc has taken control of and used without permission certain "confidential information" belonging to the NRA ("Conversion");

- AMc and Defendants had a special relationship of trust – called a *fiduciary relationship* – with the NRA, and AMc and Defendants abused that trust and breached their *fiduciary duties* of loyalty and candor (Breach of Fiduciary Duty);

- AMc defrauded the NRA as to aspects of its services, such as NRATV, and associated bills and costs, and by hiding the related records from inspection. In addition, AMc knew the NRA did not know about NRATV's underperformance and intentionally hid this information from the NRA (Fraud);

- AMc breached the contract between the parties – called the Services Agreement, which was nonexclusive as to the vendor and terminable at will by the NRA. The Services Agreement required AMc to "promote a positive image of the NRA" – a responsibility AMc failed to carry out. The Services Agreement also gave the NRA an unqualified right to examine Defendants' books and records about matters covered by the agreement.  AMc refused to allow the NRA to exercise its right to examination, breaching the contract and terminating the agreement.  In addition, the Services Agreement states that AMc must maintain the confidentiality of the NRA's materials and information. Further, the Services Agreement requires that AMc comply with all security arrangements imposed by the NRA respecting access to confidential information (Breach of Contract); and

- AMc conspired with other Defendants to commit the above wrongful acts (Conspiracy).

The NRA is also seeking "injunctive" relief – meaning that it wants the Court to order AMc to do, and refrain from doing, certain things.  Finally, the NRA is asking for compensatory damages for injuries sustained as a result of Defendants' alleged wrongful conduct above, in at least the amount of $150 million, and "punitive or exemplary damages."

AMc, in turn, denies the NRA's allegations and is arguing the following counterclaims against the NRA:

- The NRA breached the Services Agreement between the parties (Breach of Contract)

- The NRA defamed AMc by publishing false disparaging statements (defamation and defamation *per se*)

- The NRA engaged in fraud by falsely advising AMc that individuals from its outside counsel's law firm would not be involved in a review of the NRA's books and records in AMc's possession; and

- The NRA engaged in a civil conspiracy concerning the above acts.

AMc also seeks a declaratory judgment that "the NRA and its counsel have waived and/or are estopped from claiming that the confidentiality provision of the Services Agreement applies only to AMc."

### 1.3     Taking Notes During Trial

You may take notes during the trial.  Do not allow your notetaking to distract you from listening to the testimony.  Your notes are an aid to your memory.  If your memory should later be different from your notes, you should rely on your memory.  Do not be unduly influenced by the notes of other jurors.  A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony.  Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence.  This includes your spouse, children, relatives, friends, coworkers, and people with whom you commute to court each day.  During your jury service, you must not communicate any information about this case by any means, by conversation or with the tools of technology.  For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, website, or app, such as Facebook, TikTok, YouTube, Snapchat, Instagram, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

### 1.4     Discussion of the Case With Others

Do not discuss the case, even with the other jurors, until the end of the case when you retire to deliberate.  It is unfair to discuss the case before all of the evidence is in, because you may become an advocate for one side or the other.  The parties, the witnesses, the attorneys, and persons associated with the case are not allowed to communicate with you.  And you may not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

### 1.5     Reading Press Articles And Independent Research

Do not make any independent investigation of this case.  You must rely solely on what you see and hear in this courtroom.  Do not try to learn anything about the case from any other source.  In particular, you may not read any press coverage, or use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any issue touching on this case.  Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it.  Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony.  In sum, you may not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.

### 1.6     Objections

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be

answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

### 1.7    Side-Bar Discussions With Counsel

There are some issues of law or procedure that I must decide that the attorneys and I must discuss.  These issues are not part of what you must decide and they are not properly discussed in your presence.  To avoid having you leave the courtroom and to save time, I may choose to discuss these issues with the attorneys at the bench, out of your hearing.  When I confer with the attorneys at the bench, please do not listen to what we are discussing.  If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues.  I will try to keep these interruptions as few and as brief as possible.

### 1.8    Burden of Proof: Preponderance of The Evidence

The parties have the burden of proving their respective cases by a preponderance of the evidence.  To prove by a "preponderance of the evidence" means to show that some fact is more likely so than not so.  If you are not convinced that a party has proven every element of its claim by a preponderance of the evidence, then it may not recover on that claim.

You may not award damages on claims that have not been proven by a preponderance of the evidence.

### 1.9    Evidence

There are many different kinds of evidence.  The evidence you are to consider in this case consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.  The law doesn't give any particular kind of evidence more weight than others.  Instead, you, the jury, will determine how much weight – if any – to give any particular piece of evidence that was presented to you, based on the credibility of its sources.

### 1.10    Witnesses

One kind of evidence you are to consider is witness testimony.  Remember – you alone are to determine the questions of credibility or truthfulness of the witnesses.  In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence?  Has he or she made statements at other times and places contrary to those made here on the witness stand?  You must give the testimony of each witness the credibility that you think it deserves.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness can be sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if, after considering all of the other evidence, you believe that witness.

### 1.10.1   Witness as a Party

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony. As with any witness, you alone decide how much weight to give witness testimony.

### 1.10.2   Expert Witnesses

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. You may, but are not required to, accept that opinion. As with any other witness, it is up to you to decide whether to rely on it and how much weight to give the testimony.

### 1.11   No Inference from Filing Suit

The fact that a person or corporation brought a lawsuit – or a counter-lawsuit – and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

### 1.12   Publicity[2]

This case has been highly publicized in the press, and there may be temptation for you to read or consider such press articles in your deliberations. Don't do it. Your verdict must be based solely on the evidence presented in this courtroom in accordance with the instructions. You must completely disregard any report which you have read in the press or on the internet or on social media, seen on television, or heard on the radio. It would be unfair to consider such reports, since they are not evidence and the parties have no opportunity of contradicting their accuracy or otherwise explaining them away. In short, it would be a violation of your oath as jurors to allow yourselves to be influenced in any manner by such publicity.

### 1.13   Duty to Deliberate; Notes

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

---

[2] Based on 1B Fed. Proc. Forms § 1D:97.50.

Remember at all times, you are the judges of the facts.  You have been allowed to take notes during this trial.  Any notes that you took during this trial are only aids to memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence.  If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors.  Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.  When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes.  You must select a presiding juror to guide you in your deliberations and to speak for you here in the courtroom. Your verdict must be unanimous.  After you have reached a unanimous verdict, your presiding juror must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.  If you need to communicate with me during your deliberations, the presiding juror should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.  Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.  You may now proceed to the jury room to begin your deliberations.

## II.    OTHER GENERAL INSTRUCTIONS[3]

The following instructions may be applicable on a situational basis during the trial, as a need may arise.

### 2.0    First Recess

We are about to take our first break in this trial.  Remember, until the trial is over, you are not to discuss this case with anyone, including your fellow jurors.  If anyone approaches you and tries to talk to you about the case, advise me about it immediately.  Do not read or listen to any news reports of the trial or use any technology tools to do independent research.  Remember to keep an open mind until all the evidence has been received.  Finally, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel.

### 2.1    Stipulated Testimony

A "stipulation" is something that the attorneys agree is accurate.  When there is no dispute about certain testimony, the attorneys may agree or "stipulate" to that testimony.

Stipulated testimony must be considered in the same way as if that testimony had been received here in court.

### 2.2    Stipulations of Fact

A "stipulation" is an agreement.  When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts.  You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

### 2.3    Judicial Notice

You must accept as proved facts of which the court takes judicial notice.  The court has taken judicial notice that [state the facts].

### 2.4    Discontinuance as to Some Parties

Certain parties are no longer involved in this trial.  As jurors, it is your duty to consider the issues among the remaining parties.

### 2.5    Limiting Instruction

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

---

[3] Based on Fifth Cir. Civil Pattern Jury Instructions at 2.1-2.18 (2020 ed.).

### 2.6    Charts and Summaries

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

### 2.7    Demonstrative Evidence

Exhibit [specify] is an illustration. It is a party's [description/picture/model] used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

### 2.8    Witness Not Called

[Name of witness] was available to both sides. The NRA and Defendants cannot complain that [name of witness] was not called to testify, because either the NRA or Defendants could have called [name of witness].

### 2.9    Impeachment by Witness's Inconsistent Statements

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

### 2.10    Impeachment by Witness's Felony Conviction

In weighing the credibility of a witness, you may consider the fact that he or she has previously been convicted of a felony. Such a conviction does not necessarily destroy the witness's credibility, but it is one of the circumstances you may take into account in determining the weight to give to his or her testimony.

### 2.11    Deposition Testimony

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been read or shown to you today. This deposition testimony is entitled to the same consideration and is to be judged by

13

you as to credibility and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

### 2.12    Bias—Corporate Party Involved

Do not let bias, prejudice or sympathy play any part in your deliberations.  A corporation and all other natural persons are equal before the law and must be treated as equals in a court of justice.

### 2.13    Joint and Several Liability[4]

The doctrine of joint and several liability applies when the plaintiff has suffered as a result of the separate negligent acts of two or more tortfeasors and "it is impossible to determine in what proportion each contributed to the injury." In such a case, each individual defendant can be held responsible for the entire amount of the damages sought by the plaintiff. Conversely, when the injury is divisible, each tortfeasor is liable for the amount of injury caused by his or her actions.

Once one of two or more tortfeasors pays joint and several damages to a plaintiff, then the paying party can attempt to obtain contribution from the other tortfeasors. Payment of the entire joint and several damages amount to the plaintiff discharges all joint wrongdoers from liability for the judgment, but, again, contribution may be obtained.

### 2.14    A Witness That Invokes the Fifth Amendment[5]

A witness testifying on the stand or during a deposition may refuse to answer a question if he or she reasonably believes that answering the question might incriminate them.  This means that a witness does not have to admit to committing a crime.

However, if a witness invokes this right and refuses to answer a question for this reason, you, the jury, are allowed to draw adverse inferences against that witness.  This means that you can assume that the witness would be admitting to committing a crime if they answered the question.

### 2.15    Facts to be Taken as True[6]

There are certain facts in this case that have already been determined to be true by a Judge in another case involving the NRA and AMc.  You are to take these determinations to be true:

---

[4] Va. Prac. Tort and Personal Injury Law, Joint tortfeasors—Joint and several liability § 16:3; *Dickenson v. Tabb*, 156 S.E.2d 795, 801 (Va. 1967); *Gross v. Shearson Lehman Brothers Holdings, Inc.*, 43 Fed. Appx. 672, 677 (4th Cir. 2002); *Wiley N. Jackson Co. v. City of Norfolk*, 87 S.E.2d 781, 784 (Va. 1955); Va. Code Ann. § 8.01-443.

[5] *Izen v. Catalina*, 256 F.3d 324, 329 (5th Cir. 2001) (explaining the invocation of the Fifth Amendment right against self-incrimination during civil proceedings; *Hinojosa v. Butler*, 547 F.3d 285, 291 (5th Cir. 2008) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)) (setting forth the adverse inference in civil proceedings).

[6] *See* ECF No. 558-1, Ex. 14, Bankruptcy Order Granting Motions to Dismiss, dated May 11,2021 [App. 698-736].

1) "NRA Board Member Tom King was advised in the middle of 2017 by then New York Attorney General, Eric Schneiderman, that investigations into the NRA were being opened and that it should "prepare for the worst."[7]

2) "In response to this warning which King relayed to the NRA's executive vice president, Wayne LaPierre, LaPierre decided that the "NRA ought to take a look at everything, a 360-degree look to make sure [the NRA] w[as] in total compliance with New York State not-for-profit law, and if [the NRA] w[asn't] [the NRA] needed to fix things.""[8]

3) "In early 2018, the NRA retained two different firms—Morgan, Lewis & Bockius LLP and Brewer Attorneys & Counselors ("BAC") – to carry out LaPierre's directive."[9]

4) "In July 2018, several whistleblowers came forward with the encouragement of Mr. Spray and presented a memo to the NRA Audit Committee regarding their top concerns (the "Whistleblower Memo")."

5) The Whistleblower Memo included concerns regarding, *inter alia*:

   a. "senior management override of internal controls relating to, among other things, accounts payable procedures, travel and expense reporting, and procurement/contracts policy,"[10]

   b. "management making decisions in the best interests of vendors instead of the NRA,"[11] and

   c. "vague and deceptive billing practices of vendors."[12]

6) "Following the presentation of the Whistleblower Memo to the Audit Committee, the NRA took several actions, including examining related party transactions and reviewing vendor contracts.[13]

7) "As a result of this review process, the NRA required the inclusion of specific metrics in all contracts and improved documentation and recordkeeping."[14]

8) "One of the more significant actions taken in response to the Whistleblower Memo was to send letters to the NRA's vendors notifying them of the rules regarding proper invoicing."[15]

---

[7] *Id.* at p. 3 [App. 701].
[8] *Id.*
[9] *Id.* at pp. 3-4 [App. 701-02].
[10] *Id.* at p. 4 [App. 702].
[11] *Id.* at pp. 4-5 [702-03].
[12] *Id.* at p. 5 [App. 703].
[13] *Id.*
[14] *Id.*
[15] *Id.*

9)  "While most vendors complied with these new measures, some did not. As a result, some contracts with vendors were re-negotiated, and some were terminated."[16]

10)  "This process caused a rift between the NRA and one of its most significant vendors, Ackerman McQueen, Inc. ("Ackerman")."[17]

11)  "Ackerman had very close ties with the NRA and had been the NRA's marketing and public relations firm for decades, but several of the concerns expressed in the Whistleblower Memo related to the NRA's relationship with Ackerman."[18]

12)  "The disagreements [between the NRA and AMc] that came from discussions regarding billing practices and their business relationship escalated and have spawned four overlapping lawsuits—three in Virginia state court and one in federal court in the Northern District of Texas."[19]

13)  "Whether it is yet complete or not, there has been more disclosure and self-reporting since 2017. Both Ms. Rowling and Mr. Erstling. the NRA's Director of Budget and Financial Analysis, testified that the concerns they expressed in the 2017 Whistleblower Memo are no longer concerns. Mr. Frazer testified regarding the compliance training program that the NRA now has for employees. Mr. Spray testified credibly that the change that has occurred within the NRA over the past few years could not have occurred without the active support of Mr. LaPierre. It is also an encouraging fact that Ms. Rowling has risen in the ranks of the NRA to become the acting chief financial officer, both because of her former status as a whistleblower and because of the Court's impression of her from her testimony as a champion of compliance."[20]

14)  "In short, the testimony of Ms. Rowling and several others suggests that the NRA now understands the importance of compliance. Outside of bankruptcy, the NRA can pay its creditors, continue to fulfill its mission, continue to improve its governance and internal controls, contest dissolution in the NYAG Enforcement Action, and pursue the legal steps necessary to leave New York."[21]

---

[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* at pp. 5-6 [App. 703-04].
[20] *Id.* at p. 35 [App. 733].
[21] *Id.*

## III.   JURY CHARGE[22]

### 3.0 (Case-specific, post-trial instructions)

#### MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case.  The law contained in these instructions is the only law you may follow.  It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression.  If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression.  You are the sole judges of the facts of this case.  Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence.  The statements of counsel are not evidence; they are only arguments.  It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest.  What the lawyers say or do is not evidence.  You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments.  You must determine the facts from all the testimony that you have heard and the other evidence submitted.  You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom.  You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.

---

[22] Based on Fifth Cir. Civil Pattern Jury Instructions at 3.1-3.7 (2020 ed.).

## IV.    SPECIFIC INSTRUCTIONS: THE NRA'S CLAIMS

### 4.0    Claim One: For False Association Under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (Against All Defendants)[23]

Under the first count, the NRA brings a claim for False Association under the Lanham Act. The NRA alleges that AMc and the other Defendants displayed, or caused to be displayed, NRA-trademarked materials on a certain AMc-controlled website without authorization.  The NRA alleges this display caused consumer confusion about whether the NRA continued to be an AMc client, and about whether the NRA endorsed the services provided by AMc.

In addition, the NRA asserts that AMc withheld, and continues to refuse to release, the login credentials to the NRATV social media accounts. The NRA further asserts that by withholding the login credentials, AMc has seized control of NRATV's digital existence and excluded the NRA from access to its online followers and control over its digital presence and real-world perception. This has, as the NRA claims, forced the NRA to endure ongoing, unwanted association with NRATV and the content that the public continues to post on these social media pages. It has been recognized that seizure and control of another's social media accounts can support a Lanham Act claim.[24]

Defendants maintain that the NRA has not established the required elements of its claims and raise the affirmative defenses of fair use and acquiescence, both of which I will address after instructing you on the elements of the claim.

Let's break down what NRA must prove to prevail on this count.  The section of the federal law, 15 U.S.C. § 1125(a)(1)(A), states, in relevant part:

> *§ 1125. False designations of origin, false descriptions, and dilution forbidden*

> *(a) Civil action*

> *(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or*

---

[23] *Transparent Energy LLC v. Premiere Mktg. LLC*, 2020 WL 4678438, at *5-6 (N.D. Tex. July 28, 2020) (setting forth the elements of false association and trademark infringement under the Lanham Act); *Choice Hotels Intern., Inc. v. Patel*, 940 F. Supp. 2d 532, 540 (S.D. Tex. Apr. 16, 2013) ("When a defendant uses a plaintiff's exact marks, as occurred in this case, courts within this Circuit have determined that a thorough analysis of the digits of confusion is unnecessary, and a presumption of confusion exists."); *Paulsson Geophysical Servs. v. Sigmar*, 529 F. 3d 303, 310–11 (5th Cir. 2008) (noting that marks that are similar, rather than the same, require a greater confusion analysis); 15 U.S.C. § 1127 (defining trademark for purposes of the Lanham Act); Affirmative Defense Definition, Black's Law Dictionary (11th ed. 2019), available at Westlaw; *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 854 (N.D. Tex. 2009) (describing the nominative fair use doctrine); *Reservoir, Inc. v. Truesdell*, 1 F. Supp. 3d 598, 612-13 (S.D. Tex. 2014) (describing acquiescence defense).

[24] *JLM Couture, Inc. v. Gutman*, No. 20 CV 10575-LTS-SLC, 2021 WL 827749, at *1 (S.D.N.Y. Mar. 4, 2021), *opinion modified on denial of reconsideration*, No. 20 CV 10575-LTS-SLC, 2021 WL 2227205 (S.D.N.Y. June 2, 2021); *Lancaster v. The Bottle Club, LLC*, Civ. No. 8:19-cv-634-T-33JSS, 2017 WL 3008434 (M.D. Fla. July 14, 2017).

*any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which*

*(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . .*

*shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.*

### 4.1   Who or what is a "person?"

The word "person" in the statute encompasses both natural persons and corporations. Therefore, the National Rifle Association of America, Ackerman McQueen, Inc., Mercury Group, Inc., as well as the individuals Henry Martin, William Winkler, and Melanie Montgomery are all "persons" with respect to 15 U.S.C. § 1125(a)(1)(A).

### 4.2   What Must Be Proven By The NRA

Looking at the statute, in order to prevail, the NRA must convince you of the following facts (as to one or more Defendants) by the preponderance of the evidence:

1) The Defendant or Defendants in question "used" a term, name, symbol, or device that belonged to the NRA, and/or made a "false designation of origin," "false or misleading description of fact," or "false or misleading representation of fact"

2) The "use" of the above term, name, symbol, device, or "false designation of origin" was "in commerce."

3) The use was "likely to cause confusion, to cause mistake, or to deceive as to the affiliation" with the NRA or to cause confusion as to approval of services by the NRA.

As to the first element, the NRA must prove that *something* associated with the NRA was "used" by the Defendants.  That *something* could be an NRA-trademarked image, word, term, name, or symbol.  Or it could be something else, like a statement or image, that you believe is a "false designation of origin" that clearly identifies a false association with the NRA.  Please note and consider the words "false" or "misleading."  *I.e.*, for this element to be proven, you must find that *something* that shows association with the NRA was displayed without the NRA's permission. You must consider carefully whether NRA's permission existed and whether – and when – it may have been withdrawn.

As to the second element, a use "in commerce" can be shown by proving that the image, term, name, symbol, or alleged "false designation" appeared in some media open to the public. For example, proof of being displayed on a website connected to the internet may be sufficient to show a use "in commerce."

As to the third element, if the first two elements are present, you must then use your best judgment to decide whether the "use" was likely to "cause confusion" either as to Defendants' affiliation with the NRA or as to whether the NRA endorsed or approved of the Defendants' services.

If you are convinced that it is more likely than not that all three of the above elements are present, then the next step in your analysis is to see whether one or more Affirmative Defenses apply.

### 4.3    **Affirmative Defenses**

An "affirmative defense" means that, under some circumstances, even if the plaintiff has proven the elements of its claim, the defendant still cannot be found liable if the defense applies. Put another way, an affirmative defense is an **excuse** for otherwise actionable behavior. Defendants would effectively be saying "yes, I did it, but here's why it was OK to do."

**Importantly, while Plaintiff has the burden to prove every element of their claim, the Defendants bear the burden of proving every element of an affirmative defense by a preponderance of the evidence.**

Here, Defendants assert the affirmative defense of nominative fair use and acquiescence to the NRA's false association claim.

### 4.3.1    **Affirmative Defense -- Fair Use Doctrine**

It is legally acceptable for others to display symbols associated with the NRA if this is done only for comparison and illustrative purposes.  For this defense to apply, Defendants must prove by a preponderance of the evidence:

(1)    that they only used so much of the NRA's trademarks as necessary to identify the product or service, and

(2)    that they did not do anything that suggested affiliation, sponsorship, or endorsement by the NRA

You will note that the second element of this defense is, logically, mutually exclusive with the third element of the False Association claim.  Only one of them may be true. As the jury, you must decide whether you believe that Defendants' actions were "likely to cause confusion, to cause mistake, or to deceive as to the affiliation" with the NRA.  If you find that confusion regarding affiliation, sponsorship, or endorsement was likely, then the second element of the Fair Use defense cannot apply because it requires that Defendants "did not do anything that suggested affiliation, sponsorship, or endorsement" by the NRA.  On the other hand, if Defendants convince you by a preponderance of the evidence that they did nothing suggesting "affiliation, sponsorship, or endorsement" by the NRA, then the third element of the False Association count has not been proven and you must find for Defendants.

### 4.3.2    **Affirmative Defense – Acquiescence**

To Prove Acquiescence, Defendants must prove the following three elements by a preponderance of the evidence:

1)   The NRA "actively represented" to Defendants that it would not pursue a claim

2)   The delay between the "active representation" and the lawsuit was not excusable, and

3)   The delay caused undue prejudice

4)   The "active representation" promising not to pursue a claim may be oral or in writing.

5)   If you find that Defendants proved all three of the above by a preponderance of the evidence, you must find for Defendants – otherwise, you must find for the NRA.

## 5.0   Claim Two: Trademark Infringement (Against All Defendants) [25]

The elements of Trademark Infringement are similar to the elements of Plaintiffs' Count One – the False Association claim.  In order to show trademark infringement, the NRA must prove the following two elements:

(1)   the NRA possesses a legally protectable mark; and

(2)   Defendants' use of the trademark creates a likelihood of confusion as to source, affiliation, or sponsorship with the NRA.

As to the first element, showing that particular trademark or trademarks are registered establishes what's called *prima facie* case that there is a protectable mark.  A *prima facie* case is a legal term that means a rebuttable presumption – *i.e.*, you can presume the mark is legally protectable if it has been registered.

As to the second element, you must decide whether Defendants' use of the trademark created a "likelihood of confusion as to source, affiliation, or sponsorship" with the NRA.  To answer this question, you must first ask whether the displayed trademarks were *exactly the same* or merely *similar* to the ones registered by the NRA.  When a defendant uses a plaintiff's **exact** marks, then a thorough analysis of confusion is unnecessary, because a presumption of confusion

---

[25] *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998) (elements of trademark infringement); *Transparent Energy LLC v. Premiere Mktg. LLC*, 2020 WL 4678438, at *5-6 (N.D. Tex. July 28, 2020) (setting forth the elements of false association and trademark infringement under the Lanham Act); *Choice Hotels Intern., Inc. v. Patel*, 940 F. Supp. 2d 532, 540 (S.D. Tex. Apr. 16, 2013) ("When a defendant uses a plaintiff's exact marks, as occurred in this case, courts within this Circuit have determined that a thorough analysis of the digits of confusion is unnecessary, and a presumption of confusion exists."); *Paulsson Geophysical Servs. v. Sigmar*, 529 F. 3d 303, 310–11 (5th Cir. 2008) (noting that marks that are similar, rather than the same, require a greater confusion analysis); 15 U.S.C. § 1127 (defining trademark for purposes of the Lanham Act); Affirmative Defense Definition, Black's Law Dictionary (11th ed. 2019), available at Westlaw; *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 854 (N.D. Tex. 2009) (describing the nominative fair use doctrine); *Reservoir, Inc. v. Truesdell*, 1 F. Supp. 3d 598, 612-13 (S.D. Tex. 2014) (describing acquiescence defense).

exists.  In other words, you can presume confusion if the displayed trademarks were exactly the same as the ones belonging to the NRA.

On the other hand, if you find that the displayed material was merely similar – but not exactly the same – as what the NRA trademarked, then you must ask whether Defendants' use was likely to cause "confusion as to source, affiliation, or sponsorship with the NRA."

### 5.1  Affirmative Defenses

An "affirmative defense" means that, under some circumstances, even if the plaintiff has proven the elements of its claim, the defendant still cannot be found liable if the defense applies. Put another way, an affirmative defense is an **excuse** for otherwise actionable behavior. Defendants would effectively be saying "yes, I did it, but here's why it was OK to do."

**Importantly, while Plaintiff has the burden to prove every element of their claim, <u>the Defendants</u> bear the burden of proving every element of an affirmative defense by a preponderance of the evidence.**

Here, Defendants assert the affirmative defense of nominative fair use and acquiescence to the NRA's false association claim.

### 5.1.1  Affirmative Defense -- Fair Use Doctrine

The "nominative fair use doctrine" allows the use of another's mark to truthfully identify another's goods or services in order to describe or compare its product to the markholder's product. In other words, it's okay to display someone else's trademark if it's done only for comparison and illustrative purposes.  For this defense to apply, Defendants must prove by a preponderance of the evidence:

(1)    that they only used so much of the NRA's trademarks as necessary to identify the product or service, and

(2)    that they did not do anything that suggested affiliation, sponsorship, or endorsement by the NRA.

You will note that the second element of this defense is, logically, mutually exclusive with the second element of the False Association claim.  As the jury, only you may decide whether there was confusion "as to the source, affiliation, or sponsorship" with the NRA.

### 5.1.2  Affirmative Defense – Acquiescence

To Prove Acquiescence, Defendants must prove the following three elements by a preponderance of the evidence:

1)    The NRA "actively represented" to Defendants that it would not pursue the trademark claim

2)    The delay between the "active representation" and the lawsuit was not excusable, and

3) The delay caused undue prejudice

4) The "active representation" promising not to pursue a claim may be oral or in writing.

  If you find that Defendants proved all three of the above by a preponderance of the evidence, you must find for Defendants – otherwise, you must find for the NRA.

## 6.0    Conversion (against all Defendants)[26]

### 6.1    Elements of Conversion

"Conversion" means taking or exercising dominion over someone else's property without permission. A person commits conversion by any act of dominion wrongfully exerted over property in denial of, or inconsistent with, the owner's rights. This means that any wrongful action exerting control over the property of another is enough to constitute conversion.

### 6.2    Definition of Property

The property does not have to be physical in nature. Virtual property is property. Wrongfully taking or retaining possession of electronic documents of another constitutes conversion. What is alleged to be "converted" here is documents as well as virtual property belonging to the NRA.

### 6.3    Confidential Information and Documents

The NRA claims that—despite its requests—AMc has not returned its Confidential Information. Defendants deny liability for the NRA's conversion claim.

To prevail on its claim for conversion, the NRA must prove that Defendants exercised dominion and control over the NRA's property without the NRA's consent and to the exclusion of the NRA's right of possession and use. Intangible Confidential Information, such as stock proceeds and trade secrets, can be converted if it is embodied in a misappropriated document. The definition of document includes electronic documents. Therefore, in considering whether conversion occurred, you must consider whether there is a corresponding physical or electronic document that was "converted" – for example, by failure to return it to the NRA or by restricting the NRA's access to that document after the NRA asked for access.

### 6.4    Damages

The measure of damages for conversion is the total value of the property. Therefore, if you find Defendants converted the property of the NRA, you must award the NRA the total value of the NRA's confidential information stored on the Dashboard.

---

[26] *Maine v. Adams*, 672 S.E.2d 862, 869 (Va. 2009)(defining conversion); *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 688 F. Supp. 2d 443, 455 (E.D. Va. 2009) ("[U]nder Virginia law, a conversion claim does not fail merely because the property at issue is "an electronic version of [the] list rather than a hard copy."); *Id.* (explaining the "expansive definition of conversion employed in Virginia") (citing *Simmons v. Miller*, 544 S.E.2d 666, 679 (Va. 2001)); *Se. Wholesale Corp. v. Cox Commc'ns Hampton Roads, LLC*, No. 2:12CV701, 2013 WL 2147478, at *5 (E.D. Va. May 14, 2013) ("Virginia recognizes a property interest in confidential information."); *Combined Ins. Co. of Am. v. Wiest*, 578 F. Supp. 2d 822, 835 (W.D. Va. 2008) (applying Virginia Law) (confidential and proprietary lists of targets for recruitment); *Mackey v. McDannald*, 842 S.E.2d 379, 389 (Va. 2020) (stock proceeds); *Shenandoah Assocs. Ltd. P'ship v. Tirana*, 182 F. Supp. 2d 14, 22 (D.D.C. 2001) ("Virginia case law also indicates, however, that claims for conversion can extend to intangible property rights arising from or merged with documents such as stock certificates, promissory notes, checks or bonds."); *Buckey Nat. Bank of Findlay v. Cook*, 75 S.E. 769, 772 (Va. 1912) (stating measure of damages for conversion).

## 7.0    Breach of Fiduciary Duty[27]

A "fiduciary duty" is a special relationship of trust and confidence that arises between a party and its agent. Betrayal of that relationship can make someone liable for "breach of fiduciary duty."

The NRA alleges that AMc breached its fiduciary duty to the NRA. That fiduciary duty arose, according to the NRA, because AMc was the NRA's agent under the Services Agreement and because of the special trust and confidence that the NRA reposed in AMc throughout the parties' decades-long relationship.  The NRA claims that AMc breached that fiduciary duty by doing the following:

- failing to disclose material facts relating to its invoice and billing practices, the performance of NRATV, and the negotiation and existence of the North Contract;

- attempting to obstruct or stop the NRA's attempt to review its own books and records in the possession of AMc;

- attempting to extort the NRA; and

- conspiring to affect an out-of-context, partial disclosure of certain NRA confidential information to the media – thus harming the NRA and tarnishing the NRA's reputation.

AMc denies that it owed a "fiduciary duty" to the NRA and argues that the NRA has not offered sufficient evidence in support of its breach-of-fiduciary duty claim.

To prevail on its breach-of-fiduciary duty claim, the NRA must prove by a preponderance of the evidence that:

(1)    there was a "fiduciary relationship" between the NRA and AMc,

(2)    AMc breached that fiduciary duty, and

(3)    AMc's breach resulted in injury to the NRA or benefit to AMc.

With respect to the first element, AMc owed the NRA a fiduciary duty if AMc was the NRA's agent or if the NRA reposed in AMc trust and confidence.

---

[27] Bacigal, Va. Prac. Jury Instruction § 53:1, 2, 4 Fraud (2021 ed.); Virginia Model Jury Instruction No. 8.000 (defining agent and principal/employer and employee); *Plumbers & Steamfitters Union Local No. 10 v. Waters*, 451 F. Supp. 3d 543, 550 (E.D. Va. 2020) (applying Virginia law) (setting forth the elements of breach of fiduciary duty); *H-B Ltd. P'Ship v. Wimmer*, 257 S.E. 2d 770, 773 (Va. 1979) ("[A] fiduciary relationship exists in all cases when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence."); *Nassabeh v. Montazami*, 2019 WL 3892863, at *8 (Va. Ct. App. Feb. 7, 2019) ("A fiduciary relationship exists in all cases when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence.").

In evaluating whether there was a "fiduciary relationship" between the NRA and AMc, you should consider whether AMc was the NRA's "agent" and whether there was a relationship characterized by a special trust and confidence between Defendants and the NRA.

### 7.1      Definition of Agent and Principal

An agent is the person who is subject to the power or right of an principal to control the means and methods of performing the work.

A principal is a person or legal entity with the power or right to control the means and methods of performance by which another person performs the principal's work.

Agency is the consensual relationship between two parties when one, the agent, agrees to act on behalf of the other, the principal, and is subject to the principal's control. That right of control includes not only the right to assign tasks, but also the right to dictate <u>the means and details of the process by which</u> an agent will accomplish the task. If you find that AMc was the NRA's agent, then AMc owed a fiduciary duty to the NRA. Similarly, if you find that the NRA put trust and confidence in AMc, then AMc owed the NRA a fiduciary duty.

### 7.2      Presumption of Fraud for Self-Interested Transactions[28]

If you find that AMc participated in a transaction by which it, as agent, acquired the NRA's property or benefits financially, these acts are presumptively fraudulent and the burden is on Defendants to overcome the presumption of constructive fraud by clear and convincing evidence, and more than a mere preponderance of the evidence.

When a party has the burden of proving an issue by clear and convincing evidence, he must produce evidence that creates in your minds a firm belief or conviction that he has proved the issue.

If you find that the presumption of fraud arises, you shall find your verdict for Defendants if Defendants have proven by clear and satisfactory evidence that Defendants did not breach their fiduciary duty to the NRA when they benefitted financially from their actions as agent.

### 7.3      Proving Breach of Fiduciary Duty Absent the Presumption of Fraud

Absent a presumption of fraud, to prove that AMc failed to comply with its fiduciary duty, the NRA must show one or more of the following:

(1)      the transactions in question were not fair and equitable to the NRA;

(2)      AMc did not make reasonable use of the confidence that the NRA placed in it;

---

[28] Bacigal, Va. Prac. Jury Instruction § 53:3 Fraud (2021 ed.);  Virginia Model Jury Instruction No. 3.110; *Harold v. Devening*, No. 181308, 2020 WL 1943524, at *3 n. 3 (Va. 2020) (presumption of fraud in breach of fiduciary cases); *Grubb v. Grubb*, 630 S.E.2d 746, 751 (Va. 2006)("any transaction involving [the [principal's] assets that [the fiduciary] consummated to his own benefit while acting as her fiduciary is presumptively fraudulent").

(3)     AMc failed to act in the utmost good faith or exercise the most scrupulous honesty toward the NRA;

(4)     AMc placed its own interests before the NRA, used the advantage of its position to gain a benefit for itself at the expense of the NRA, or placed itself in a position where its self-interest might conflict with its obligations as a fiduciary; or

(5)     AMc failed to fully and fairly disclose all important information to the NRA concerning the transactions.

If one of the above is proven and you found that there was a "fiduciary" relationship, then that relationship was breached.  To prove that AMc failed to comply with that duty, the NRA must establish that AMc did not act in good faith and with due regard for the NRA's interests.

If you find that the NRA has proven, by a preponderance of the evidence, the elements of its breach-of-fiduciary duty claim, then your verdict must be for the NRA.  Otherwise, your verdict must be for AMc.

## 8.0     Fraud (Against All Defendants)[29]

The NRA also asserts a claim for fraud against Defendants, alleging that Defendants have made misrepresentations and failed to disclose information about AMc's billing and about the performance and value of the NRATV platform. Defendants, in turn, argue that the NRA has not offered sufficient evidence in support of its fraud claim.

### 8.1     Actual Fraud

If you believe by clear and convincing evidence that

1)   The statements and misrepresentations made by Defendants to the NRA were

a) A false representation of a material fact,

b) Made intentionally and knowingly by Defendants,

c) With the intention to mislead the NRA into taking action based on the representation,

and

2) The NRA took action, or forbore to take action, in reliance on the representation, and

3) The NRA's reliance on the representation caused the NRA damage, then you shall return your verdict in favor of the plaintiff.

#### 8.1.1 Definition of Misrepresentation

A misrepresentation is any words or conduct which produce a false or misleading impression of fact in the mind of another. The misrepresentation must be made concerning an actually existing or past fact. A promise, an expression of interest, or an expectation or opinion concerning the future is not a misrepresentation.

A misrepresentation may result from silence or from the suppression of facts as well as from an affirmative representation.

#### 8.1.2 Definition of Material Fact

A material fact is one which influences a person to act or not to act.

---

[29] Bacigal, Va. Prac. Jury Instruction § 53:1, 2, Fraud (2021 ed.); Virginia Model Jury Instruction No. 39.010, 39.020, 39.030; *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994) (actual fraud); *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335 (Va. 2008) (constructive fraud); *Thompson v. Bacon*, 245 Va. 107, 111 (Va. 1993) (setting forth elements of fraud by misrepresentation and by nondisclosure); *Prospect Development Co., Inc. v. Bershader*, 515 S.E.2d 291, 300 (Va. 1999); *Golf Ranch Resort Motel, Inc. v. Tar Heel Mortg. Co.*, 341 F. Supp. 846, 850 (E.D. Va. 1972) (recognizing that Virginia law acknowledges that representations "made without specific fraudulent intent but made with reckless abandon and disregard for the truth may constitute fraud[.]"); *In re Volkswagen "Clean Diesel" Litig.*, 94 Va. Cir. 189 (Va. Cir. Ct. 2016) ("'[C]oncealment of a fact that is material to the transaction, knowing that the other party is acting on the assumption that no such fact exists, is as much fraud as if existence of the fact were expressly denied.'") (quoting *Metrocall of Delaware v. Cont'l Cellular Corp.*, 246 Va. 365, 374 (Va. 1993)).

### 8.1.3 Definition of Reliance

Reliance is a belief that a representation is true which causes a person to take action he would not otherwise have taken; not to take action he otherwise would have taken.

**8.2   Constructive Fraud**

If you believe by clear and convincing evidence that

1) The statements and misrepresentations made by Defendants to the NRA was

a) A false representation of an actually existing or past material fact,

b) Made innocently or negligently by Defendants,

c) With the intention of causing the NRA to act on the representation, and

2) The NRA actually relied on the representation, and

3) The NRA's reliance on the representation caused the NRA damage, then you shall return your verdict for the NRA.

**8.3   Fraud by Nondisclosure**

Similar to the above elements, the NRA can also prove that AMc committed fraud by nondisclosure if it can show: (1) the Defendants failed to disclose facts to the NRA; (2) the Defendants had a duty to disclose those facts; (3) the facts were material; (4) the Defendants knew the NRA was ignorant of the facts and the NRA did not have an equal opportunity to discover the facts; (5) the Defendants were deliberately silent when it had a duty to speak; (6) by failing to disclose the facts, the Defendants intended to induce the NRA to take some action or refrain from acting; (7) the NRA relied on the Defendants' nondisclosure, and (8) the NRA was injured as a result of acting without that knowledge.

If you find, by a preponderance of the evidence, that AMc's nondisclosure about NRATV or budgeting and invoicing practices meets all of the elements above, you must find that AMc committed fraud against the NRA.

**8.4   Damages**

If you find that the NRA is entitled to recover from the Defendants, then the measure of damages is the difference between the actual value of the property at the time the contract was made and the value that the property would have possessed had the fraudulent representation been true.

**9.0**     **Conspiracy**[30]

The NRA alleges that Defendants engaged in a conspiracy by misrepresenting to the NRA that certain AMc employees were dedicated to NRA work and fraudulently failing to disclose that several were in fact dedicating a portion of their time or more to other clients.  The NRA further alleges that, when it sued AMc for access to documents that would expose Defendants' scheme, Defendants attempted to remove and replace the NRA's leadership. Defendants deny liability for the NRA's conspiracy claim.

To prevail on its conspiracy claim, the NRA must show (1) an agreement between two or more persons (2) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (3) results in damage to the NRA.

If you find that the NRA has proven, by a preponderance of the evidence, the elements of conspiracy, then your verdict must be for the NRA.  Otherwise, your verdict must be for AMc.

**9.1**     **No Conspiracy Independent from Other Counts**

A Conspiracy cannot exist independently – that is to say, Defendants must have conspired to do the wrongs alleged in one or more of the above counts.  If you find for Defendants on all of the other counts, then there can be no Conspiracy because there's nothing left to conspire to.  On the other hand, if you find for the NRA on even one of the above counts, then there may legally be a Conspiracy.

---

[30] Bacigal, Va. Prac. Jury Instruction § 51.1, Civil Conspiracy (2021 ed.); *Borg v. Warren,* No. 3:21-CV-12 (DJN), 2021 WL 2657005, at *17 (E.D. Va. June 28, 2021) (applying Virginia Law) (setting forth the elements of conspiracy); *Gelber v. Glock*, 800 S.E. 2d 800, 820 (Va. 2017) (same).

## 10.0   <u>Breach of Contract</u>[31]

A breach of contract happens when there is a contract between the parties, that contract imposes rights and duties on the parties to do or refrain from doing certain things, and one of the parties fails to abide by the terms of – or "breaches" – the contract.

Therefore, to prevail on its breach-of-contract claim, the NRA must prove the following:

(1) AMc owed the NRA a legally enforceable obligation under the Services Agreement;

(2) AMC violated or breached that obligation; and

(3) the NRA sustained injury or damages as a result of the breach.

The NRA alleges that AMc failed to comply with two the Services Agreement, particularly the records-examination clause and the confidentiality clause.

With respect to AMc's alleged breach of the records-examination clause, the NRA alleges that AMc has repeatedly failed to permit the NRA to examine specified categories of files, books, and records – both in hard copy and electronic. The NRA alleges that AMc didn't fully comply with the required examinations and thereafter continued to conceal information owed to the NRA.

Regarding AMc's alleged breach of the confidentiality clause, the NRA contends that AMc disclosed confidential information to third parties, including the media, without authorization.

The Services Agreement also included a clause that required AMC to "promote a positive image of the NRA." The NRA asserts that AMc breached this clause because, under AMc's supervision, Dana Loesch aired a Ku Klux Klan-themed cartoon which harmed the NRA's public image.  AMc denies liability for the NRA's breach-of-contract claim.

If you find that the NRA has proven, by a preponderance of the evidence, the elements of the Breach of Contract – regarding one or more of the Services Agreement clauses discussed above – then your verdict must be for the NRA.  Otherwise, your verdict must be for AMc.

---

[31] *Squire v. Virginia Hous. Dev. Auth.*, 758 S.E.2d 55, 60 (Va. 2014) (setting forth the elements of a breach of contract claim); *Hamlet v. Hayes*, 641 S.E.2d 115, 117 (Va. 2007) (same).

# V.   AMC'S COUNTERCLAIMS

## 11.0   Breach of Contract[32]

As for AMc's counterclaims against the NRA, AMc first claims that the NRA breached the Services Agreement.  AMc alleges that the NRA breached the Services Agreement by allegedly failing (1) to pay, or to timely pay, upon termination, for services AMc rendered; (2) to reimburse AMc for expenses it incurred in connection with termination: (a) in responding to government subpoenas for documents concerning the NRA and (b) in defending an arbitration brought by Dana Loesch; and (3) to post a $3 million letter of credit; and (4) to pay a termination fee.

The NRA denies these allegations.  And the NRA counters that, even if the NRA breached the Services Agreement, AMc would have no right to enforce the agreement given AMc's prior material breaches.

To prevail on its breach-of-contract claim, AMc must prove the following: (1) the NRA owed AMc a legally enforceable obligation under the Services Agreement; (2) the NRA violated or breached that obligation; and (3) AMc sustained injury or damages as a result of the breach.

If you find that AMc has proven, by a preponderance of the evidence, that the NRA breached the Services Agreement, then you must consider the NRA's affirmative defense under the prior-material breach doctrine.  Otherwise, your verdict must be for the NRA.

### 11.1   Prior Material Breach

As previously discussed, the NRA alleges that, during 2018 and early 2019, AMc repeatedly materially breached the Services Agreement's Records-Examination clause. A party that commits the first breach of a contract is not entitled to enforce the contract.  The breach, however, must be material.  A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract.

If you find that the NRA has proven, by a preponderance of the evidence, its prior-material-breach defense, then your verdict must be for the NRA.  Otherwise, your verdict must be for AMc.

### 11.2   The Contract was Non-Exclusive and Terminable At-Will[33]

Certain contacts are non-exclusive and terminable-at-will.   The Services Agreement between the NRA and AMc was one of these types of contracts.  Non-exclusive means that the

---

[32] *Squire v. Virginia Hous. Dev. Auth.*, 758 S.E.2d 55, 60 (Va. 2014) (setting forth the elements of a breach of contract claim); *Countryside Orthopaedics, OP.C. v. Peyton*, 541 S.E.2d 279 (Va. 2001) ("Generally, a party who commits the first breach of a contract is not entitled to enforce the contract."); *Horton v. Horton*, 487 S.E.2d 200 (Va. 1997) ("If the first breaching party committed a material breach, however, that party cannot enforce the contract.") (citation omitted).

[33] *Wood v. Hutchinson Coal Co.*, 176 F.2d 682, 686 (4th Cir. 1949) (ruling that a nonexclusive contractual relationship creates an open field for competition); *Duggin v. Adams*, 234 Va. 221, 226, 360 S.E.2d 832, 836 (1987) ("Unlike a party to a contract for a definite term, however, an individual's interest in a contract terminable at will is essentially only an expectancy of future economic gain, and he has no legal assurance that he will realize the expected gain.").

NRA was free to hire any advertising or public relations providers it wished, in addition to or instead of AMc.  Terminable-at-will means that the NRA could terminate the relationship at any time, for any reason.  AMc has argued that this lawsuit was a strategy for William Brewer to take AMc's business from the NRA.  Even if you find that Brewer was in competition with AMc, this alleged competition alone cannot constitute breach of contract.

### 11.3    Indemnification[34]

AMc claims that the Services Agreement required the NRA to indemnify it for costs AMc claims it suffered as a result of the Loesch Arbitration and responding to governmental investigations. Indemnify means to reimburse another for a loss suffered because of a third party's or one's own act or failure to act or to promise to reimburse another for such a loss.

The Services Agreement required the NRA to indemnify AMc for 3 specific categories:

(1) claims concerning NRA data or materials incorporated into AMc's work product;

(2) claims for damages related to violence committed with firearms, or for injunctive relief with respect to the conduct of NRA-approved activities; and

(3) spokesperson activities directed or supervised by the NRA.

If you find, by a preponderance of the evidence, that AMc's claims for indemnification for the costs AMc alleges it incurred as a result of the NYAG investigation and the Loesch Arbitration do not fit within these categories, you must find that the NRA is not required to indemnify AMc.

### 11.3.1   Notice Requirement for Indemnification[35]

AMc was required to give the NRA prompt notice of any matter for which it seeks indemnification. Even if you find that the NYAG Investigation and/or the Loesch Arbitration fit within the indemnity categories above, if you find by a preponderance of the evidence that AMc did not give the NRA prompt notice of these matters, you must find that the NRA is not required to indemnify AMc.

---

[34] Indemnify, Black's Law Dictionary (11th ed. 2019), available on Westlaw; Services Agreement, dated April 30, 2017, at V.B.1.

[35] *See* Services Agreement, dated April 30, 2017, at V.B .2.

**12.0** **Defamation and Defamation *Per Se*[36]**

In addition to its breach of contract claim, AMc alleges that NRA representatives defamed AMc by accusing it of criminal extortion.  AMc claims that Mr. LaPierre circulated a letter to the NRA Board of Directors recounting a conversation with an AMc employee, Oliver North, that Mr. LaPierre interpreted as an extortion: either resign from the NRA or AMc will make destructive allegations made against Mr. LaPierre and the NRA.  AMc also alleges that the NRA subsequently disseminated this extortion narrative to multiple media outlets.

The NRA, in turn, denies AMc's allegations and argues that, in any event, the statements at issue are substantially true. Substantially truth is an affirmative defense to a defamation claim.

A person has a right to an uninterrupted enjoyment of his or her reputation, and any attack upon his or her reputation is defamation. Defamation is a false factual statement that concerns and harms the plaintiff or the plaintiff's reputation.

To prevail on its defamation claim, AMc must prove:

(1) The NRA made a statement that the NRA knew was false, or

(2) believing the statement was true, lacked a reasonable basis to believe the statement was true; and

(3) the statement harmed AMc or AMc's reputation.

In determining whether the statement made by the defendant is defamatory, you are to consider the words used in their proper context and in their plain and natural meaning as other people would understand them and according to the sense in which they appear to have been used. Defamation may be made by inference, implication or insinuation by the words used if such an

---

[36] Bacigal, Va. Prac. Jury Instruction §§ 48:1, 2, 3, 4, 8, 11, 12, 15, 16, 19, 20, 21, 22, 34, 35, 37 (2021 ed.); Virginia Model Jury Instruction No. 37.110; 37:111; *Hyland v. Raytheon Technical Services Co.*, 670 S.E.2d 746, 750 (Va. 2009); *Food Lion, Inc. v. Melton*, 458 S.E.2d 580, 584 (Va. 1995) ("[A] published statement is defamatory and is actionable *per se* when it imputes to a person the commission of a criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished."); *Thalhimer Bros. v. Shaw*, 159 S.E. 87, 90 (Va. 1931) (defining publication); *Carwile v. Richmond Newspapers*, 196 Va. 1, 7, 82 S.E.2d 588, 591–592 (1954) (determination of whether statement is defamatory); *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964); *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 721 (Va. 1985); *Government Micro Resources, Inc. v. Jackson*, 624 S.E.2d 63, 69 (Va. 2006) (setting forth the burden of proof); *Williams v. Garraghty*, 455 S.E.2d 209, 216 (Va. 1995), cert. denied 516 U.S. 814 (1995); *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 724–725, cert. denied 472 U.S. 1032 (1985); *Slaughter v. Valleydale Packers, Inc., of Bristol*, 94 S.E.2d 260, 265 (Va. 1956); *Fleming v. Moore*, 275 S.E.2d 632, 639 (Va. 1981), *appeal after remand* 229 Va. 1, 325 S.E.2d 713 (1985), cert. denied 472 U.S. 1032, 105 S.Ct. 3513 (1985); *Ingles v. Dively*, 435 S.E.2d 641, 646 (Va. 1993) (punitive damages). The most recent Supreme Court of Virginia case on the subject states that, at common law, the following defamatory words are actionable per se: (1) Those that impute the commission of a criminal offense involving moral turpitude for which the person may be indicted and punished; (2) Those which impute that a person is infected with some contagious disease that would exclude the person from society; (3) Those that impute to a person unfitness to perform the duties of an office or employment of profit, or lack of integrity in the discharge of the duties of such an office or employment; (4) Those that prejudice a person in his or her profession or trade. *See Perk v. Vector Resources Group, Ltd.*, 485 S.E.2d 140, 144 (1997).

inference, implication or insinuation is a reasonable one and if a reasonable person would draw it from the words used.

AMc must prove by preponderance of the evidence that the defamatory statement was published. However, publication may be proven either by direct evidence of a third party or by circumstantial evidence.

Publish means to communicate orally, in writing, or in print to a person other than the alleged injured party who is capable of understanding and does understand the matter communicated.

### 12.1    Recovery Based on Malice

"Actual malice" is that malice that shows that a statement was made with knowledge that it is false or with reckless disregard of whether it is false or not.

The burden of proving "actual malice" requires the plaintiff to demonstrate with clear and convincing evidence that the NRA realized that its statement was false or that the NRA subjectively entertained serious doubt as to the truth of its statement.

If you believe from a preponderance of the evidence that the statement of the NRA was of and concerning AMc and that it was defamatory and false, and if you further believe from clear and convincing evidence that in making the statement the NRA either knew that it was false or that it made the statement with reckless disregard as to whether it was false or not, and if you further believe from a preponderance of the evidence that publication of the statement was the proximate cause of injury to the plaintiff, then you shall find your verdict in favor of the plaintiff and award compensatory damages.

In order to recover punitive damages from the defendant in this action, the burden is upon the plaintiff to prove by clear and convincing evidence that the NRA either:

1) knew that the statements were false at the time that it made them; or

2) made the statements with reckless disregard for their truth.

### 12.2    Recovery Based on Negligence

Alternatively, if you believe from a preponderance of the evidence that the statement of the defendant was of and concerning the plaintiff and that it was defamatory and false, and if you further believe from such evidence that the defendant failed to exercise ordinary care to ascertain the facts upon which publication of the statement was made, then the defendant was guilty of negligence. If you further believe from such evidence that any such negligence was the proximate cause of injury to the plaintiff, then you shall find your verdict in favor of the plaintiff and award compensatory damages.

In order to recover damages against the NRA in this action, the burden is on AMc to prove by a preponderance of the evidence:

1) That the statement made by the NRA was of and concerning the plaintiff, and

2) That it was defamatory, and

3) That it was false, and

4) That the NRA failed to exercise ordinary care, and

5) That publication of the statement was the proximate cause of injury to AMc.

If AMc fails to prove any one of the foregoing elements of its action by the standard of proof required, you shall find your verdict in favor of the NRA.

The fact that Wayne LaPierre is the Executive Vice President of the NRA, did not in itself vest in him any authority from the NRA to make any slanderous or insulting statement concerning AMc.

In order for the NRA to be liable for a statement made by Mr. LaPierre, the NRA must have expressly authorized such statement, or authority to make the statement can be fairly implied from the nature of his employment and the duties incident to it or from some impulse or emotion that naturally grew out of or was incident to the attempt to perform his company's business.

### 12.3 [Optional Instruction: only if the court finds defamation *per* se]:

The words published by the defendant were defamatory as a matter of law, that is, they were defamatory from their very nature without further proof thereof. If from the evidence and the other instructions of the court you find your verdict in favor of AMc, then damages for injury to AMc's reputation, and for humiliation and embarrassment are presumed without further proof thereof.

### 12.4 Damages and Mitigation

If you find from the evidence and the other instructions of the court that AMc is entitled to recover, then in determining the amount of compensatory damages to which it is entitled to recover, you shall take into consideration all the facts and circumstances of the case as disclosed by the evidence, the nature and character of the charges in the statement, the language in which they are expressed, the occasion on which they were published, the extent of their circulation, the probable effect upon those to whose attention they came, and their probable and natural effect upon AMc's business, personal feelings, and its standing in the community. You should award AMc such compensatory damages as will fairly and adequately compensate AMc for:

1)   Any damage to AMc's reputation and standing in the community, and

2)   Any embarrassment or humiliation suffered by AMc, and

3)   Any pecuniary loss suffered by AMc.

If you find your verdict in favor of AMc for compensatory damages, and if you believe from clear and convincing evidence that the NRA either knew that the statement was false or that it was made with reckless disregard as to whether it was false, then you may also award the plaintiff punitive damages. Punitive damages are not awarded to compensate AMc for any loss suffered by it, but to punish the NRA for wrongful conduct and to deter it, and set an example for others, from engaging in similar conduct in the future.

Evidence of bad reputation of the plaintiff does not bar his or her right to recovery, but it may be considered by the jury in determining the damages, if any, which the plaintiff may be entitled to recover.

### 12.4.1 <u>Punitive Damages (Defamatory *Per Se*)</u>

If you have found by clear and convincing evidence that a defendant made the statements knowing they were false or made them so recklessly as to amount to a willful disregard for the truth, that is, with a high degree of awareness that the statement was probably false, then you may award punitive damages to punish that defendant for such actions and to serve as an example to prevent others from making such statements in the future.

You must state separately in your verdict any amount you allow as compensatory damages, if any, and the amount you allow as punitive damages.

### 12.4.2 <u>Punitive Damages (Not Defamatory *Per Se*)</u>

If you find that the plaintiff is entitled to recover compensatory damages, and if you further find by clear and convincing evidence that a defendant made the statements knowing the statement was false or made the statements so recklessly as to amount to a willful disregard for the truth, that is, with a high degree of awareness that the statement was probably false, then you may also award punitive damages to punish that defendant for such actions and to serve as an example to prevent others from making such statements in the future.

If you award punitive damages, you must state separately in your verdict any amount you allow as compensatory damages and the amount you allow as punitive damages.

### 12.4 <u>Defense of Truth</u>[37]

If you find that the statement allegedly made by Mr. LaPierre was true, then you must find that the NRA did not commit defamation against AMc.  Truth is an absolute defense to defamation.

---

[37] *See Massey v. Jones*, 28 S.E.2d 623, 627 (Va. 1944) ("In Virginia both the truth and privilege are complete defenses in bar of any action for defendant[.]") (internal quotations omitted); *Guide Pub. Co. v. Futrell*, 7 S.E.2d 133 (Va. 1940) (same); *Rosenberg v. Mason*, 160 S.E. 190 (Va. 1931) (same); ., *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 23 (Va. 1985)  See Food Lion, Inc. v. Melton, 250 Va. 144, 458 S.E.2d 580, 584 (1995); *PBM Prod., LLC v. Mead Johnson Nutrition Co.*, 678 F. Supp. 2d 390, 399–400 (E.D. Va. 2009), *aff'd sub nom. PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111 (4th Cir. 2011) ("Thus, truthful statements and expressions of opinion rather than declarations of fact both operate as absolute defenses to any defamation claim. Hence, to be actionable as defamatory, a plaintiff must prove by a preponderance of the evidence that the statement at issue is actually and provably false.") (internal citations omitted).

Even if the exact details of the statement were not true, Mr. LaPierre did not commit defamation against AMc if the gist of the statement was true or the statement was substantially true.

AMc has the burden of proving to you that the statement was false.

## 13.0   Fraud[38]

AMc also asserts a claim for fraud against the NRA.  There is only one category of allegedly fraudulent statements at issue: those in connection with Forensic Risk Alliance's February 2019 books-and-records examination of AMc.  You should disregard any other allegations of fraud.

AMc's fraud claim centers on NRA Executive Vice President Wayne LaPierre's allegedly prior, forward-looking promises that AMc would not need to deal with lawyer William A. Brewer III or his namesake firm, Brewer, Attorneys & Counselors.  AMc alleges that, based on these promises, it agreed to an audit with FRA, on the purportedly false premise that FRA was independent.  LaPierre's alleged implicit assurances that FRA was independent amounted to fraud, AMc claims, because FRA employed a then-former Brewer employee named Susan Dillon.  AMc alleges that it was injured because it spent money and time to furnish records for FRA's examination, and because the NRA brought lawsuits informed by problems that examination revealed.

To prevail on its fraud claim, AMc must establish that: (1) the NRA made a material misrepresentation that was false; (2) the NRA knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the NRA intended to induce AMc to act upon the representation; and (4) AMc actually and justifiably relied on the representation and suffered injury as a result.

With respect to these elements, the NRA asserts that there is no evidence that LaPierre made the alleged promises with the intent to deceive AMc.  It also alleges that AMc cannot prove actual or justifiable reliance, because (1) it had actual, continuous notice of the Brewer firm's involvement in the NRA's legal affairs before, during, and after FRA's examination and (2) AMc was contractually required to cooperate in the records examination irrespective of the Brewer firm's involvement.  Finally, the NRA argues that AMc did not sustain damages: AMc was obligated to comply with the NRA's records request, and/or would have been sued, according to the NRA, regardless of whether it believed or knew that the Brewer firm was involved.

If you find that AMc has proven, by a preponderance of the evidence, the elements of fraud, then your verdict must be for AMc.  Otherwise, your verdict must be for the NRA.

---

[38] Bacigal, Va. Prac. Jury Instruction § 53:1, 2, 3, Fraud (2021 ed.); *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994) (actual fraud); *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335 (Va. 2008) (constructive fraud); *Thompson v. Bacon*, 245 Va. 107, 111 (Va. 1993) (setting forth elements of fraud by misrepresentation and by nondisclosure); *Harold v. Devening*, No. 181308, 2020 WL 1943524, at *3 n. 3 (Va. 2020) (presumption of fraud in breach of fiduciary cases); *Prospect Development Co., Inc. v. Bershader*, 515 S.E.2d 291, 300 (Va. 1999); *Golf Ranch Resort Motel, Inc. v. Tar Heel Mortg. Co.*, 341 F. Supp. 846, 850 (E.D. Va. 1972) (recognizing that Virginia law acknowledges that representations "made without specific fraudulent intent but made with reckless abandon and disregard for the truth may constitute fraud[.]"); *In re Volkswagen "Clean Diesel" Litig.*, 94 Va. Cir. 189 (Va. Cir. Ct. 2016) ("'[C]oncealment of a fact that is material to the transaction, knowing that the other party is acting on the assumption that no such fact exists, is as much fraud as if existence of the fact were expressly denied.'") (quoting *Metrocall of Delaware v. Cont'l Cellular Corp.*, 246 Va. 365, 374 (Va. 1993)).

**13.1    The NRA's Duties Under New York State Not-For Profit Corporations Law**[39]

Under the laws of New York State, the NRA was required to be informed and take appropriate steps to inquire about any suspicions of wrongdoing or non-compliance. After the presentation of the Whistleblower Memo, the NRA took several actions, including examining related party transactions and reviewing vendor contracts, such as its contract with AMc. If you find that the NRA undertook the audit and review of AMc's records in accordance with its obligations under the laws of New York State, you must find that the NRA's motivations were not fraudulent.

Additionally, Section 720 of the New York Not-For Profit Law provides a safe harbor against liability by providing that a person serving without compensation as a director or officer of a not-for-profit entity shall not be liable to persons other than the not-for-profit entity unless the director's or officer's conduct with respect to the person asserting liability constituted gross negligence or was intended to cause the resulting harm.  As fiduciaries of the non-for-profit organizations they serve, directors and officers are subject to the duties of care, loyalty, and obedience.

"Gross negligence" is that degree of negligence which shows such indifference to others as constitutes an utter disregard of caution amounting to a complete neglect of the safety of another. It is such negligence as would shock fair-minded people, although it is something less than willful recklessness.

If you find that the directors and officers of the NRA did not act with the intent to defraud or with gross negligence, then you must find that they are not liable to AMc.

---

[39] *Vacco, as Attorney General of the State of New York v. Peter Diamandopoulos et al.*, 715 N.Y.S.2d 269 (1998), Index No. 401253/97 (Sup. Ct. N.Y. Cty., March 24, 1997 complaint); American Bar Association, Nonprofit Organizations Committee, *Guidebook for Directors of Nonprofit Corporations,* (the "Nonprofit Guidebook") at 26-30 (3d. ed. 2012); N.Y. Not-for-Profit Corp. Law § 720-a (McKinney); *Scheuer Family Foundation, Inc. v. 61 Associates*, 179 A.D.2d 65 (1st Dept. 1992) (analyzing the safe-harbor under NPCL § 720-a); Virginia Model Jury Instruction No. 4.030; *Community Motor Bus Co., Inc. v. Windley*, 299 S.E.2d 367, 369 (Va. 1983) (defining gross negligence).

## 14.0    Conspiracy[40]

Lastly, AMc alleges that the NRA, LaPierre, and Joshua Powell, the former Chief of Staff to the NRA, conspired to defame and defraud AMc.  To prevail on its conspiracy claim, AMc must show: (1) two or more persons, (2) with an object to be accomplished, (3) with a meeting of minds on the object or course of action, (4) committed one or more unlawful or overt acts, and (5) caused damage or injury.  I will briefly provide further instructions on the first and fourth elements.

As for the first element (the two-or-more-persons prong), AMc must establish that there was a conspiracy among the NRA, LaPierre, Dillon, and Powell, or at least two of them.  A corporation, however, cannot conspire with its employees who are acting within the scope of their employment.  A corporate executive acts within the scope of his employment when he takes action that is necessary or incidental to achieving his employer's objectives. The fact that an executive derives simultaneous personal benefit—such as receiving value in the form of travel or entertainment while entertaining clients—does not remove his actions from the scope of his employment.  The NRA maintains that there is no evidence that LaPierre or Powell were acting outside the scope of his employment in connection with any alleged fraud of defamation.

As for the fourth element (the overt-act prong), AMc must prove either its fraud or defamation claim. Civil conspiracy is not an independent cause of action. It requires a separate underlying tort (as opposed to a breach-of-contract claim).  The NRA alleges that AMc's fraud and defamation claims fail for the reasons previously discussed.

If you find that AMc has proven, by a preponderance of the evidence, the elements of conspiracy, then your verdict must be for AMc. Otherwise, your verdict must be for the NRA.

### 14.1    No Conspiracy With One's Attorney[41]

Importantly, it is not legally possible to "conspire" with one's attorney. Therefore, the jury shall disregard any arguments or allegations that the NRA conspired with its General Counsel, Mr. John Frazer or with individuals associated with its outside counsel Brewer, Attorneys & Counselors.

---

[40] Bacigal, Va. Prac. Jury Instruction § 51.1, Civil Conspiracy (2021 ed.); *Borg v. Warren,* No. 3:21-CV-12 (DJN), 2021 WL 2657005, at *17 (E.D. Va. June 28, 2021)(applying Virginia Law) (setting forth the elements of conspiracy); *Gelber v. Glock*, 800 S.E. 2d 800, 820 (Va. 2017) (same).

[41] *See* ECF 329, this court's Order regarding the NRA's Motion to Dismiss; *Hefferman v. Hunter*, 189 F.3d 405 (3rd Cir. 1999) (setting forth the strict threshold for attorney-client conspiracy allegations); *Rodriguez v. Spencer*, 2012 WL 639555 (W.D. Tex. Feb. 27, 2012) (finding the *Hefferman* case persuasive); *Jackley v. City of Live Oak*, Tex. 2009 WL 10669162 (W.D. Tex. Nov. 12, 2009) (same); *Charles E. Brauer Co. v. NationsBank of Virginia, N.A.*, 466 S.E.2d 382, 386-87 (Va. 1996) (holding that conspiracy between agent and principal is a legal impossibility under Virginia law).

## VI.    THE PARTIES' OTHER AFFIRMATIVE DEFENSES

### 15.0   Unclean Hands[42]

Unclean hands is a defense to an equitable claim. Under this doctrine, a party seeking equitable relief may not itself have been guilty of any inequitable or wrongful conduct with respect to the transaction or subject matter sued on.

### 16.0   Economic Loss Rule[43]

When a plaintiff seeks damages for breach of a duty created solely under contract, as opposed to a duty imposed by law, tort damages are unavailable. However, if the duty breached is one not existing only by virtue of a contract, a party can prevail on both tort and breach of contract claims.

You may not consider the economic loss rule to preclude damages for the NRA's breach of fiduciary duty claim.

### 17.0   Statute of Frauds[44]

To be enforceable, an agreement that cannot be performed within one year from the date of the agreement must be reflected in a writing and signed by the party against whom enforcement is sought.

---

[42] *Cline v. Berg*, 639 S.E.2d 231, 233-34 (Va. 2007).

[43] *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004); *Herrmann v. Wells Fargo Bank, N.A.*, 529 F. Supp.3d 549, 561-62 (2021) (applying Virginia law ("[A] party can, in certain circumstances, show both a breach of contract and a tortious breach of duty," but the duty "breached must be a common law duty, not one existing between the parties solely by virtue of the contract."). *See Self Insured Serv. Co. v. Panel Sys.*, 352 F. Supp. 3d 540, 557 (E.D. Va. 2018) (applying Virginia law) (In Virginia, the economic loss doctrine does not preclude claims for breach of fiduciary duty even if the duty arises "solely by virtue of a contract"—so long as the defendant "[took] advantage of the special position occupied by a fiduciary to his benefit and to the detriment of the other party to whom the fiduciary duty is owed by doing something beyond merely failing to perform a duty imposed by the contract.'").

[44] Va. Code § 11-2(8).

# VII.   THE NRA'S DAMAGES

## 18.0   Consider Damages Only If Necessary[45]

If the NRA has proved its claims against Defendants by a preponderance of the evidence, you must determine the damages to which the NRA is entitled. You should not interpret the fact that I am giving instructions about the NRA's damages as an indication in any way that I believe that the NRA should, or should not, win this case. It is your task first to decide whether Defendants are liable. I am instructing you on damages only so that you will have guidance in the event you decide that Defendants are liable and that the NRA is entitled to recover money from Defendants.

## 18.1   Compensatory Damages[46]

If you find that Defendants are liable to the NRA, then you must determine an amount that is fair compensation for all of the NRA's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the NRA whole—that is, to compensate the NRA for the damage that it has suffered. Compensatory damages are not limited to expenses that the NRA may have incurred because of its injury. If the NRA wins, it is entitled to compensatory damages it has suffered because of Defendants wrongful conduct.

You may award compensatory damages only for injuries that the NRA proves were proximately caused by Defendants' allegedly wrongful conduct. The damages that you award must be fair compensation for all of the NRA's damages, no more and no less. You should not award compensatory damages for speculative injuries, but only for those injuries that the NRA has actually suffered or that the NRA is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the NRA prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

## 18.2   Mitigation of Damages[47]

A party who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate its damages, that is, to avoid or to minimize those damages.

If you find that Defendants are liable and the NRA has suffered damages, the NRA may not recover for any item of damage which it could have avoided through reasonable effort. If you find that Defendants proved by a preponderance of the evidence the NRA unreasonably failed to

---

[45] Fifth Cir. Civil Pattern Jury Instructions at 15.1.
[46] *Id.* at 15.2.
[47] *Id.* at 15.5.

take advantage of an opportunity to lessen its damages, you should deny it recovery for those damages that it would have avoided had it taken advantage of the opportunity.

You are the sole judge of whether NRA acted reasonably in avoiding or minimizing its damages.  An injured party may not sit idly by when presented with an opportunity to reduce its damages.  However, it is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. Defendants have the burden of proving the damages that the NRA could have mitigated.  In deciding whether to reduce the NRA's damages because of its failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether Defendants have satisfied their burden of proving that the NRA's conduct was not reasonable.

### 18.3    Damages Under the Faithless Servant Doctrine[48]

If you find that AMc breached its fiduciary duties to the NRA, then you must award must award the NRA damages under to the faithless servant doctrine.  This doctrine provides that when an agent breaches its fiduciary duty, it is not entitled to compensation from the principal for services.

### 18.4    Nominal Damages[49]

Nominal damages are an inconsequential or trifling sum awarded to a party when a technical violation of its rights has occurred but it has suffered no actual loss or injury.

If you find from a preponderance of the evidence that the NRA sustained a technical violation of its right but that the NRA suffered no actual loss as a result of this violation, then you may award the NRA nominal damages.

### 18.5    Consequential Damages

Consequential damages are damages resulting from the breach of the contract that arise from special circumstances actually foreseen or reasonably foreseeable by the parties when they made the contract. If you find your verdict in favor of the plaintiff, you may award him such damages as you believe by the greater weight of the evidence he sustained as a result of the breach.

### 18.6    Punitive Damages[50]

If you find that the NRA is entitled to be compensated for his damages, and if you further believe by the greater weight of the evidence that the defendant acted with actual malice toward the NRA or acted under circumstances amounting to a willful and wanton disregard of the NRA's rights, then you may also award punitive damages to the NRA to punish Defendants for their actions and to serve as an example to deter them and others from acting in a similar way.

---

[48] *Jackson v. Pleasanton*, 101 Va. 282, 288-89 (Va. 1903).
[49] Fifth Cir. Civil Pattern Jury Instructions at 15.6.
[50] Virginia Model Jury Instructions Nos. 9.080, 9.090.

If you award punitive damages, you must state separately in your verdict the amount you allow as compensatory damages and the amount you allow as punitive damages.

## VIII.   AMC'S DAMAGES

### 19.0   Consider Damages Only If Necessary[51]

As for AMc's claims, if AMc has proved its claims against the NRA by a preponderance of the evidence, you must determine the damages to which AMc is entitled.  You should not interpret the fact that I am giving instructions about AMc's damages as an indication in any way that I believe that AMc should, or should not, win this case. It is your task first to decide whether the NRA is liable.  I am instructing you on damages only so that you will have guidance in the event you decide that the NRA is liable and that AMc is entitled to recover money from the NRA.

### 19.1   Compensatory Damages[52]

If you find that the NRA is liable to AMc, then you must determine an amount that is fair compensation for all of AMc's damages.  These damages are called compensatory damages. The purpose of compensatory damages is to make AMc whole—that is, to compensate AMc for the damage that it has suffered.  Compensatory damages are not limited to expenses that AMc may have incurred because of its injury.  If AMc wins, it is entitled to compensatory damages it has suffered because of the NRA's wrongful conduct.

You may award compensatory damages only for injuries that AMc proves were proximately caused by the NRA's allegedly wrongful conduct.  The damages that you award must be fair compensation for all of AMc's damages, no more and no less.  You should not award compensatory damages for speculative injuries, but only for those injuries that AMc has actually suffered or that AMc is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that AMc prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

### 19.2   Mitigation of Damages[53]

A party who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate its damages, that is, to avoid or to minimize those damages.

If you find the NRA is liable and AMc has suffered damages, AMc may not recover for any item of damage which it could have avoided through reasonable effort.  If you find that the NRA proved by a preponderance of the evidence AMc unreasonably failed to take advantage of

---

[51] Fifth Cir. Civil Pattern Jury Instructions at 15.1.
[52] *Id.* at 15.2.
[53] *Id.* at 15.5.

an opportunity to lessen its damages, you should deny it recovery for those damages that it would have avoided had it taken advantage of the opportunity.

You are the sole judge of whether AMc acted reasonably in avoiding or minimizing its damages. An injured party may not sit idly by when presented with an opportunity to reduce its damages. However, it is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The NRA has the burden of proving the damages that AMc could have mitigated. In deciding whether to reduce AMc's damages because of its failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the NRA has satisfied their burden of proving that AMc's conduct was not reasonable.

### 19.3    Nominal Damages[54]

Nominal damages are an inconsequential or trifling sum awarded to a party when a technical violation of its rights has occurred, but it has suffered no actual loss or injury.

If you find from a preponderance of the evidence that AMc sustained a technical violation of its right but that AMc has suffered no actual loss as a result of this violation, then you may award AMc nominal damages.

### 19.4    Consequential Damages

Consequential damages are damages resulting from the breach of the contract that arise from special circumstances actually foreseen or reasonably foreseeable by the parties when they made the contract. If you find your verdict in favor of the plaintiff, you may award him such damages as you believe by the greater weight of the evidence he sustained as a result of the breach.

### 19.5    Punitive Damages[55]

If you find that AMc is entitled to be compensated for its damages, and if you further believe by the greater weight of the evidence that the NRA acted with actual malice toward the NRA or acted under circumstances amounting to a willful and wanton disregard of AMc's rights, then you may also award punitive damages to AMc to punish the NRA for its actions and to serve as an example to deter it and others from acting in a similar way.

If you award punitive damages, you must state separately in your verdict the amount you allow as compensatory damages and the amount you allow as punitive damages.

---

[54] *Id.* at 15.6.
[55] Virginia Model Jury Instructions Nos. 9.080, 9.090.

4874-5621-5307.11
2277-08