**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| **Plaintiff and Counter-Defendant** | § § | |
| **v.** | § § | |
| **ACKERMAN MCQUEEN, INC.,** | § § § | **Civil Action No. 3:19-cv-02074-G** |
| **Defendant and Counter-Plaintiff,** | § § | |
| **and** | § § | |
| **MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY,** | § § § § | |
| **Defendants.** | § § | |

**PLAINTIFF NATIONAL RIFLE ASSOCIATION OF AMERICA'S**
**MOTION IN LIMINE NO. 12 TO EXCLUDE THE EXPERT REPORT OF AMC**
**EXPERT DANIEL JACKSON AND TO PRECLUDE HIS TESTIMONY AT TRIAL**

**BREWER, ATTORNEYS & COUNSELORS**

Cecelia L. Fanelli
clf@brewerattorneys.com
Sarah B. Rogers
sbr@brewerattorneys.com
Philip J. Furia
pjf@brewerattorneys.com
**Brewer Attorneys and Counselors**
1717 Main Street, Suite 5900
Dallas, Texas 75201
**ATTORNEYS FOR PLAINTIFF AND COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

## TABLE OF CONTENTS

I. SUMMARY OF THE ARGUMENT ..................................................................................1

II. FACTUAL BACKGROUND ........................................................................................2

III. ARGUMENT ...............................................................................................................4

      A.     <u>Legal Standards</u>................................................................................................4

      B.     <u>The Opinions in Jackson's Original Report Should be Excluded</u>..........................7

      C.     <u>The Opinions in Jackson's Reports Should be Excluded Because They Are
Not Helpful to the Jury and are Unreliable</u>................................................................8

      D.     <u>Jackson's Testimony Regarding the Invoices Should Be Excluded Because
it is Conclusory and Devoid of Any Analysis</u> ........................................................9

            1.     Alleged Unpaid Invoices......................................................................9

            2.     Allegedly Terminated Leases ...............................................................10

            3.     Alleged Employee Furloughs ...............................................................12

            4.     Alleged Indemnification ......................................................................13

            5.     Alleged AMc-Third Party NRA Contracts .............................................14

            6.     Allegedly Untimely Invoices ...............................................................15

      E.     <u>Jackson's Testimony Should Be Excluded Under Rule 403</u> ................................15

IV. CONCLUSION.............................................................................................................15

Motions in limine streamline a trial by settling evidentiary disputes in advance.[1] To streamline this case and help eliminate undue prejudice, the NRA seeks an in limine ruling from this Court to preclude Defendants from presenting at trial any of the testimony or evidence described identified below, and files this memorandum of law in support. The NRA met and conferred with AMc in connection with this motion in limine in accordance with this Court's scheduling order in this case and in accordance with Local Rule 7.1(a).

## I. <u>SUMMARY OF THE ARGUMENT</u>

One of the experts designated by Defendants is Dr. Daniel L. Jackson ("Jackson"), who was retained to opine as to AMc's counterclaim damages arguments in connection with the NRA's alleged breach of the parties' Services Agreement. Defendants served Jackson's original report on or about June 15, 2021 (the "Original Report"). The Original Report was subsequently amended by the Amended Expert Report of Daniel L. Jackson, dated October 15, 2021 (the "Jackson Report").[2] Jackson's Rebuttal Report was served on July 1, 2021, which was then supplemented by Jackson's Supplemental Report served on October 15, 2021 (the "First Supplemental Report") and his Second Supplemental Report served days later on October 29, 2021 (the "Second Supplemental Report) (all reports, collectively "the Reports").[3]

The Reports are nothing more than Jackson's "say-so," which is impermissible expert testimony. The Reports merely recite the purported facts that AMc has fed to Jackson. This recitation of facts is accompanied by conclusory "opinions" regarding amounts purportedly owed

---

[1] *See Grant v. CRST Expedited, Inc.*, No. 1:18-CV-433, 2021 WL 2101741, at *1 (E.D. Tex. Apr. 7, 2021) ("[Motions in limine] are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues.") (citations omitted).
[2] *See* ECF No. 435, Ex. 35-H, Amended Expert Report of Daniel L. Jackson, dated Oct. 15, 2021 (the "Jackson Report") [App.02434-2509].
[3] Jackson has also submitted a February 22, 2022 "supplemental" report which is the subject of a concurrently filed motion in limine.

to AMc by the NRA, based on nothing more than basic arithmetic. Jackson's Reports fail to help the trier of fact understand the evidence or determine a fact in issue – as required under Federal Rule of Evidence 702 – and also fails to establish any of the alleged facts for which they are offered.

Jackson is also entirely unqualified to render the opinions he seeks to offer in this case.

Lastly, at the very least, Jackson's opinions should be excluded under Rule 403 of the Federal Rules of Evidence because any probative value Jackson's opinions may have  is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and the likelihood of misleading the jury.  Accordingly, Jackson should be precluded from testifying in this case.

## II. FACTUAL BACKGROUND

As part of its disclosures, the Defendants served the NRA with the Original Report on or about June 15, 2021 and the Rebuttal Report on or about July 1, 2021. In the Rebuttal Report, and subsequent Supplemental Rebuttal Reports, served on or about July 15, October 15, and October 29, 2021, Jackson seeks to offer opinions relating to AMc's claims for alleged damages. Specifically, the Original Report indicates that he was retained by Defendants' counsel to: 1) comment on the Reports of Brian Buss, Gary Goolsby, and Andrew McLean; and 2) "determine the appropriate amount due to the NRA from the Defendants, if any, assuming the Court or a jury determines that the Defendants are liable on certain of the causes of action."[4]

Jackson steps well outside the bounds of what he was assigned to do and offers the following opinions in his Rebuttal Report:

---

[4] ECF No. 448-8, Ex. 97, Original Report, p. 4 [App. 04902].

a.      "Certain of Mr. Buss's opinions are flawed, irrelevant, or otherwise incorrect. Mr. Buss's current damages claim does not appropriately measure any damages that may be due from AMc to the NRA."

b.      "Mr. Goolsby has not determined any damages in this matter, and his opinions in this matter are related to legal, not economic, issues. Nevertheless, Mr. Goolsby's opinions, to the extent appropriate for an accountant's report, ignore important considerations that existed between the parties."

c.      "Mr. McLean has not determined any damages in this matter, and his opinions in this matter are in part related to legal, not economic, issues. His opinions, to the extent appropriate for an expert report, ignore important considerations that existed between the parties."

d.      "Based on my analysis, AMc did not generate a profit related to NRATV over the time period that it was operating. Thus, the NRA would not be due any damages based on a disgorgement of profits methodology. To the extent it is determined that AMc is not able to offset certain annual profits by an annual loss (2017) for purposes of a profit disgorgement claim, the NRA's damages in this matter would be limited to $733,270.9 *See* **Exhibit 1**."[5]

In the Original Report, Jackson states that he was retained: 1) "to determine the appropriate amounts due from the NRA to AMc as a result of the breach and termination of the Services Agreement and certain of the NRA's other actions"; and 2) "to determine the amounts due from Mr. LaPierre if the Court or a jury determines that he is liable to AMc relating to certain other causes of action."[6] The Original Report was Amended on October 15, 2021, with the only change in opinion coming in item (d), increasing the alleged amount dur to AMc for legal expenses from

---

[5] ECF No. 448-8, Ex. 97, Original Report, p. 4-5 [App. 04902-03].

[6] ECF No. 448-8, Ex. 97, Original Report, p. 4 [App. 04902].

$593,000 to $973,000. Jackson again steps outside the scope of his assignment and offers the following additional opinions:

a.      "For so-called 'non-cancellable contracts entered into between AMc and third parties for the benefit of the NRA,' AMc is due approximately $12.8 million as a result of the termination of the Services Agreement."

b.      "Additionally, AMc is due 'a fair and equitable termination fee' of approximately $2.0 million 'to compensate it for the inevitable severances and other reasonable costs incurred in conjunction with' the termination of the Services Agreement."

c.      "AMc is due approximately $5.0 million as a result of the NRA not paying certain of AMc's invoices, as well as the interest associated with unpaid and late-paid invoices."

d.      "AMc is due approximately $973,000 as a result of AMc incurring legal expenses related to government inquiries and other disputes that are covered by the indemnification clause of the Services Agreement."

e.      "Therefore, based on the above-referenced analyses, AMc is due a total of approximately $20.8 million as a result of the NRA's actions as alleged by AMc in its Counterclaim. See **Exhibit 1**."[7]

### III. <u>ARGUMENT</u>

#### A.      <u>Legal Standards</u>

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact at issue. However, not just any expert can testify as he or she sees fit. As an initial matter, the expert witness must be qualified "by knowledge, skill, experience, training, or education . . . ."[8] A court must exclude an

---

[7] ECF No. 448-3, Ex. 23, Amended Report, p. 5 [App. 00971].

[8] FED. R. EVID. 702.

expert witness "if it finds that the witness is not qualified to testify in a particular field or on a given subject."[9]

As to expert testimony, a court is fundamentally charged with a "gatekeeping function" to ensure an expert is qualified and that his testimony is both reliable and relevant before allowing the expert to testify.[10] Expert testimony is only admissible if it is both (1) reliable and (2) relevant.[11] Reliability is analyzed under Rule 702, which requires that: (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[12] An expert's opinion must be supported and the court looks to the basis of the expert's opinion, and not the bare opinion alone.[13] "A claim cannot stand or fall on the mere *ipse dixit* of a credentialed witness."[14] The proponent of the expert testimony must provide the court with some objective independent validation of the expert's methodology.[15] The expert's assurances that he has utilized generally accepted scientific methodology is insufficient.[16]

To be relevant, the expert's opinion must be helpful to the jury in understanding the evidence or determining a fact at issue.[17] Expert testimony is inadmissible as to matters which obviously are within the common knowledge of the jury.[18] The trial court "must be wary lest the expert become nothing more than an advocate of policy before the jury . . .[and] ought to insist

---

[9] *Jones v. Halliburton Co.*, No. 4:07-cv-2719, 2011 U.S. Dist. LEXIS 51841, at *6 (S.D. Tex. 2011) (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).
[10] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597(1993).
[11] *Id* at 591.
[12] FED. R. EVID. 702 (b)-(d).
[13] *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005).
[14] *Id*.
[15] *Lane v. Target Corp.*, No. C-05-306, 2006 U.S. Dist. LEXIS 23573, at *1 (S.D. Tex. Apr. 3, 2006).
[16] *Id*.
[17] *Daubert*, 509 U.S. at 591.
[18] *Lane,*2006 U.S. Dist. LEXIS 23573, at *3.

5

that a proffered expert bring to the jury more than the lawyers can offer in argument."[19] While Rule 704 allows opinion testimony concerning the ultimate issue decided by the trier of fact in some instances, Rule 704 does not open the door to all opinions.[20] Importantly, expert witnesses may neither tell the jury what result to reach nor provide legal conclusions.[21]

The party seeking to rely on expert testimony bears the burden of establishing, by a preponderance of the evidence, that all requirements have been met.[22]

Even if a witness qualifies as an expert under *Daubert*, his testimony must still meet the balancing test of Federal Rule of Evidence 403.[23] Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[24] The trial judge must exercise more control under Rule 403 regarding experts than lay witnesses because of the increased risk of misleading or confusing the jury.[25]

Federal Rule of Civil Procedure 26(e) provides that a party must take steps to correct or supplement its expert report or other disclosure.[26] For expert witnesses, this duty to supplement "extends both to information included in the report and to information given during the expert's deposition." *Id.* at 26(e)(2). However, Rule 26(e) cannot be abused by a party attempting to

---

[19] *Id.* (citing *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1234 (5th Cir. 1986)).

[20] *See Briley v. Wal-Mart Stores, Inc.*, No. 2:15-CV-439, 2018 U.S. Dist. LEXIS 1078, at *21-23 (S.D. Tex. Jan. 3, 2018) (citing *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)).

[21] *Owen*, 698 F.2d at 240.

[22] *DAC Surgical Partners, P.A. v. United Healthcare Servs.*, No. 11-cv-01355, 2014 U.S. Dist. LEXIS 136120, at *9 (S.D. Tex. July 31, 2014) (citing *Moore v. Ashland Chem, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Daubert*, 509 U.S. at 593, n.10; *Brickley v. Scattered Corp. (In re H&M Oil & Gas, LLC)*, 511 B.R. 408, 419-20 (Bankr. N.D. Tex. 2014) ("To meet this burden, the [party] cannot simply rely on their expert's assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required").

[23] *See United States v. Posado*, 57 F.3d 428, 435 (5th Cir. 1995).

[24] FED. R. EVID. 403.

[25] *Daubert*, 113 S. Ct. at 2798.

[26] FED. R. Civ. P. 26.

produce information in a belated fashion or to merely bolster previous expert reports, like here. A supplemental report must actually supplement a previous report and not merely add additional information which was available to the party at the time of the original report.[27]

## B.   The Opinions in Jackson's Original Report and Amended Should be Excluded Because His Opinions are Not Reliable

"The Fifth Circuit has repeatedly held that an expert's opinion set forth in a conclusory fashion is insufficient summary judgment proof."[28]  It is fundamental that expert testimony "setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment," and that "[w]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."[29]  Indeed, "[t]o be competent summary judgment evidence, an expert's report must contain some 'indication of the reasoning process underlying the opinion,'" and "[n]either *Daubert* nor the Federal Rules of Evidence 'requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.'"[30]  Thus, "[w]here ... expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally assist the trier of fact, while it must be viewed as needless presentation."[31]  The burden is on the proponent of the expert testimony to establish

---

[27] *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 571 (5th Cir.) ("[supplemental] disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information"); *see also Seascape Aquarium, Inc. v. Associated Diversified Servs.*, Case No: 8:17-cv-2137-T-17JSS (M.D. Fla. June 29, 2018) ("'Courts have broad discretion to exclude untimely-disclosed expert witness testimony – even when they are designated as 'supplemental' reports . . . [c]onsequently, a party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report.'") (citation omitted).

[28] *Stagliano v. Cincinnati Insurance Company*, Civil Action No. 3:13-cv-2474-O, 2014 WL 11332295, *3 (N.D. Tex. Dec. 9. 2014) (citing *Hayter v. City of Mount Vernon,* 154 F.3d 269, 274 (5th Cir.1998)).

[29] *Hayter,* 154 F.3d at 274; *Boyd v. State Farm Ins. Companies*, 158 F.3d 326, 331 (5th Cir. 1998) (same).

[30] *Velasquez v. EAN Holdings, LLC*, Civil Action No. 3:17-CV-1656-BH, 2018 WL 5924037, *4 (N.D. Tex. Nov. 13, 2018) (citing *General Electric Co. v. Joiner*, 522 U.S.136, 146 (1997)).

[31] *McLane Company, Inc.*, 2019 WL 590081 at *9 (excluding plaintiff's expert testimony and denying plaintiff's motion for partial summary judgment, finding that plaintiff's counsel could present expert's unsupported analysis to the jury "without the needless distraction created by the shimmering veneer of expertise").

its admissibility by a preponderance of the evidence.[32]

Here, AMc purports to rely on the Jackson Report to support its damages arguments in connection with the NRA's alleged breach of the parties' Services Agreement.  However, the Jackson Report contains mere recitations of purported facts that have been fed to Jackson by AMc, along with conclusory "opinions" that assert amounts purportedly owed by the NRA, while doing nothing more than performing basic arithmetic.  The Jackson Report presents no independent analysis of any facts that would undergird the Report's conclusory opinions.  Such "it is so" expert testimony is inconsistent with Federal Rule of Evidence 702, which requires that an "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," and certainly fails to establish any of the alleged facts for which it is offered.[33]  Accordingly, as discussed below, Defendants' citations to the Jackson Report should be excluded as inadmissible.

## C.    The Opinions in Jackson's Reports Should be Excluded Because They Are Not Helpful to the Jury and are Unreliable

One of the main items offered in support of AMc's request for judgment as to its indemnity claims is the Original and Amended Jackson Report (together the "Jackson Reports").[34]  The Jackson Reports lacks analysis or investigation of the purported bases for the indemnity claims or the alleged indemnity amounts for legal fees. They simply regurgitate the amounts that AMc informed him are due and owing.[35]  In fact, during his deposition, Mr. Jackson admitted that he was simply "calculating the amount of the fees, assuming the trier of fact finds the indemnification provision as alleged by Ackerman to be accurate." He also explained that he performed his

---

[32] *Velasquez*, 2018 WL 5924037 at *2.
[33] Fed. R. Evid. 702.
[34] Ex. 32, Expert Report of Daniel Jackson ("Jackson Report") at Exhibit 7 [APPENDIXFUS0490-0554].
[35] *See id.* ¶¶ 76, 82, 88.

calculations after receiving a series of redacted legal invoices from representatives of AMc, and when asked if he "relied on the invoices without further discussion about the nature and content of the work," Mr. Jackson responded "that's correct."[36] Confusingly, Mr. Jackson then goes on to describe that in an Amended Report (the "Amended Jackson Report") that he issued on October 15, 2021, he chose to simply "reclassify" several invoices, and testified during his deposition that "four of the invoices that we included on the list of unpaid invoices more appropriately fit under the legal fees related to indemnification rather than just generally unpaid. So we moved them from Schedule 7 to Schedule 9." Again, he offers no meaningful explanation regarding the reclassification, rather, he just adds more than $260,000 to the alleged amount of attorney's fees that AMc claims it is owed.[37]

## D.   **Jackson's Testimony Regarding the Invoices Should Be Excluded Because it is Conclusory and Devoid of Any Analysis**

### 1.   **Alleged Unpaid Invoices**

AMc relies on the Jackson Report to assert that "numerous invoices" allegedly submitted to the NRA totaling $4,371,037 remain unpaid.[38]  However, Exhibit 7 to the Jackson Report as cited by AMc merely provides a list of purported invoices, their reference numbers, their dates, the amounts allegedly owed on each invoice, plus purported interest due, among other data, and then adds up the total.[39]  The Jackson Report provides no factual basis or analysis whatsoever; it is simple arithmetic under the "veneer of expertise."[40]  Such conclusory testimony which is

---

[36] *Id.* at 122:11.
[37] *Id.* at 125:23-25.
[38] *See* AMc SJ Brief at ¶ 27, fn. 68 and ¶ 30, fn. 75 (citing Ex. 2-G, Jackson Report at Exhibit 7 [APP 168-69]).
[39] Jackson Report at Exhibit 7 [APP 168-69].
[40] *See* Fed. R. Evid. 702; *S.E.C. v. Lifepay Group, LLC*, CIVIL ACTION NO. H-18-1098, 2020 WL 1259328, *6 (S.D. Tex. Feb. 26, 2020) (holding that because purported expert's chart consisted of totaling deposits and withdrawals involved in the underlying transactions, she did not qualify as an expert witness) (citing *S.E.C. v. Seghers*, 298 F. App'x 319, 326 (5th Cir. 2008) ("[W]hen a chart does not contain complicated calculations requiring the need of an expert for accuracy no special expertise is required in presenting the chart.")); *Rx.com Inc. v. Hartford Fire Ins. Co.*, 426 F.Supp.2d 546, 554 (W.D. Tex. 2006) ("The motion to strike the affidavit of Rusinko is granted because an expert is not necessary at any stage to perform the arithmetic calculations he performs."); *Ningbo Bonny Decorative Material*

connected to existing data only by the *ipse dixit* of the expert is inadmissible and must be excluded.[41]

## 2. **Allegedly Terminated Leases**

Similarly, AMc cites the Jackson Report to contend that as a result of the termination of the Services Agreement, "AMc has shut down offices in Alexandria, Virginia, Colorado Springs, Colorado, and half of its office in Dallas, Texas," and that, allegedly, AMc "has incurred expenses of $6,525,436 related to these various expenses ($6,216,735 for Offices and Leases; $230,185 for Other Contracts; $78,516 for Office Disassembly/Move-out)."[42]   Again, the Jackson Report simply calculates the amounts allegedly due and owing by AMc for office space rents through the expiration of the relevant lease, operating expenses/parking, sublease realtor fees, and termination fees, as well as sublease income earned on the Colorado Springs location.[43]

The Jackson Report is devoid of any independent analysis regarding, for example, why AMc was required to terminate these leases, when it was required to do so, what clients other than the NRA were serviced from these offices, whether the NRA authorized AMc, in writing, to acquire the premises in accord with the provisions of the contract between the parties, and whether AMc could have mitigated its alleged damages.   Instead, the Report merely states in conclusory

---

*Co., Ltd. v. East Systems, Inc.*, NO. 1:17-CV-114-DMB-DAS, 2020 WL 1333164, *5 (N.D. Miss. Mar. 23, 2020) (excluding part of expert opinion that simply added amounts stated on invoices, holding: "The performance of simple arithmetic is ordinarily not helpful to a trier of fact. Because Section III merely purports to total the sums set forth in Sections I and II, the Court concludes that the opinion would not be helpful to the jury."); *McLane Company, Inc.*, 2019 WL 590081 at *9.

[41] *See Hayter*, 154 F.3d at 274; *Stagliano*, 2014 WL 11332295 at *3 (granting defendants summary judgment where plaintiffs' expert "offer[ed] a factually devoid conclusion that . . . fails to include the necessary factual support linking the hail damage he witnessed in 2014 to the storm occurring in May 2011."); *Velasquez*, 2018 WL 5924037 at *4 (granting motion to exclude and strike expert report that "offers a subjective opinion devoid of an underlying factual basis," and because the expert's "opinions are unsupported by any analysis of the facts of this litigation, and are silent on the methodology or reasoning process utilized, the conclusions of this report cannot be used as summary judgment evidence on the element of causation.").

[42] AMc SJ Brief at ¶ 34, fn. 79 (citing Jackson Report at pp. 18-21 [APP 127-130]) and ¶ 34, fn. 80 (citing Jackson Report at Exhibits 1-3, 6 [APP 158-161, 167]).

[43] Jackson Report at pp. 18-21, Exhibit 2 [APP 159].

fashion: "I understand that, as a result of the termination of the Services Agreement, AMc will no longer utilize this office space. I also understand that the employees working at this location were dedicated to fulfilling AMc's obligations to the NRA per the Services Agreement."[44]

With respect to mitigation of damages, the Jackson Report addresses only the Colorado Springs and Dallas locations. Regarding AMc's Colorado Springs office, it states that AMc entered into a sublease with Innate.ly/New Planet Technologies, Inc., for which AMc was to receive total sublease payments of $230,300 through June 30, 2020.[45] The Jackson Report states that subsequent to entering into the sublease, "I understand that Innate.ly sought (and was granted) its release from the sublease agreement with AMc as a result of the COVID-19 global pandemic. AMc continues to attempt to sublease this space to minimize damages, but it has been unable to do so at this time."[46] No further analysis is offered regarding what steps AMc has taken to sublease the Colorado Springs office nor any specific analysis as to why AMc has been unable to do so. Similarly, with regard to the Dallas office, the Jackson Report states in conclusory fashion: "AMc continues to attempt to sublease this space to minimize damages, but it has been unable to do so at this time. Therefore, AMc is due from the NRA the post-June 2019 and continuing lease amounts payable related to Suite 1800."[47] Again, the Jackson Report offers no analysis or details at all concerning AMc's purported efforts to sublease its Dallas office.

The Jackson Report's conclusory, *ipse dixit* testimony regarding the purported termination of AMc's leases is inadmissible and must be excluded.[48]

---

[44] Jackson Report at p. 18, ¶ 47; p. 19, ¶ 50; p. 20, ¶ 54 [APP 127-129].
[45] Jackson Report at p. 20, ¶ 52 [APP 129].
[46] *Id*.
[47] *Id*.
[48] *See Hayter,* 154 F.3d at 274; *Stagliano*, 2014 WL 11332295 at *3; *Velasquez*, 2018 WL 5924037 at *4.

3.      **Alleged Employee Furloughs**

AMc further relies on the Jackson Report for its argument that "as a result of the termination of the Services Agreement, the jobs of numerous AMc employees were no longer required. These employees were furloughed, and AMc incurred $509,492 in expenses in the form of COBRA premiums for continuing medical coverage and calculated severance amounts totaling $1,929,146.82."[49]

The Jackson Report in turn simply repeats that "[a]s a result of the termination of the Services Agreement, AMc has determined that numerous employees' job duties are no longer required. To date, these employees have been placed on unpaid leave (*i.e.*, furloughed)."[50]   Therefore, the Report states in conclusory fashion: "AMc has estimated the severance amounts payable to these identified employees. In particular, the calculated severance amounts are based on the employees' ending salaries and severance periods equal to approximately 1.25 weeks for each year of the employees' tenures. Based on my review, this is a reasonable, if not conservative, formula by which to calculate severance payments."[51]   The Jackson Report states that AMc's payment of "severance payments to individuals impacted by the termination of the Services Agreement totals approximately $1.4 million."[52]   The Jackson Report sets forth its calculation on Exhibit 5 to the Report.[53]   In Exhibit 5, the Report simply sets forth the "Severance per AMc's Methodology" for each employee listed, for a total of $1,313,634.[54]   The Report once again does nothing more than simple arithmetic: adding up the severance payments as reported by AMc.[55]   No analysis is provided concerning, for example,

---

[49] AMc SJ Brief at ¶ 35, fn. 80 and 81 (citing Jackson Report at pp. 28-29 [APP 137-138] and Exhibits 1, 5, 5A, 5B [APP 158, 164-166]).
[50] Jackson Report at p. 28, ¶ 77 [APP 137].
[51] Jackson Original Report at p. 28, ¶ 78 [APP 137].
[52] *Id*. (citing Exhibit 5 to Jackson Report) [APP 138].
[53] Jackson Report, Exhibit 5 [APP 164].
[54] *Id*.
[55] *Seghers*, 298 F.App'x at 326; *Lifepay Group, LLC*, 2020 WL 1259328 at *6; *Rx.com Inc.*, 426 F.Supp.2d at 554; *Ningbo Bonny Decorative Material Co., Ltd.*, 2020 WL 1333164 at *5.

whether the purportedly furloughed employees could have been retained at a lower salary, why these employees were furloughed, or whether any other formula for severance payments was considered.

Similarly, the Report simply adds to the $1,313,634 severance total the amount of $509,492 in purported COBRA premiums AMc reported paying for the furloughed employees, for the period from July 1, 2019 through December 31, 2020,[56] as well as $106,019 purportedly paid by AMc in payroll taxes for these employees.[57]   The Jackson Report's *ipse dixit* assertions of amounts as reported by AMc as having been purportedly paid are bald and conclusory statements made under the veneer of expertise that are inadmissible as a matter of law.[58]

### 4.   Alleged Indemnification

AMc invoiced over $3,991,024 in charges beginning in April 2019 which failed to adhere to the terms of the Services Agreement and the letters' explicit directives. The Amended Jackson Report purports to summarize these invoices in its Exhibit 7. A cursory review of Exhibit 7 confirms that the invoices were for Services incurred in 2019, subsequent to the two compliance notices. A major portion of the $3,991,024 in invoices consists of two invoices for "Talent," each in the amount of $680,355.45, for a total of $1,360,710.90.[59] The narrative on each bill consists solely of the following: "Talent Fee," "Per approved budget." Notably, another large component of the invoiced amounts listed on Exhibit 7 of Mr. Jackson's Original Report,[60] was for "legal fees," and those charges were removed from the updated Exhibit 7 included in Mr. Jackson's Amended Report, and included on Exhibit 9 instead.[61] By way of additional example, on

---

[56] Jackson Original Report at p. 29, ¶ 79 [APP 138].
[57] *Id*. and at Exhibits 5, 5A and 5B. [APP 164-166].
[58] *See McLane Company, Inc.*, 2019 WL 590081 at *9.
[59] Ex. 24, AMc-041863 (Invoice No. 166340) [APPENDIXFUS0342-0348]; Ex. 25, AMc-042052 (Invoice No. 167038) [APPENDIXFUS0349-0360].
[60] Ex. 32, Expert Report of Daniel Jackson ("Jackson Report") at Exhibit 7 [APPENDIXFUS0490-0554].
[61] On Exhibit 7 of Mr. Jackson's Original Report, Dorsey submitted an invoice for $42,773.06 in March 2019 with the description, "For Legal Services Rendered through March 31, 2019."  During the same time, McDermott Will &

September 12, 2019, AMc invoiced the NRA for $264,008.09 with an assortment of invoices from Akin Gump, Carter Ledyard & Milburn, LLP, Dorsey & Whitney and Schertler & Onorato, LLP. Most of the invoices appear to relate to government inquires and all, except Schertler & Onorato, lack detail.[62] Dorsey has no description other than "For Legal Services…." Schertler & Onorato did submit a description of services, but the description is completely redacted.[63] All of these charges are also included on Exhibit 9 of the Amended Jackson Report.

### 5.    Alleged AMc-Third Party NRA Contracts

Defendants contend that "[a]s a result of the NRA's breach of the Services Agreement relating to AMc-Third Party NRA Contracts, AMc is entitled to $6,310,698, plus interest."[64] Defendants rely on Exhibit 4 of the Jackson Report which simply states, without detail or analysis, a "Summary of Employment Agreement Amounts Payable by AMc," purportedly for the salaries of Oliver North, Dave Valinski and Dana Loesch, for the period of July 2019 through May 2021.[65] They also cite to Exhibit 4A, which similarly states in summary fashion a "Summary of Payroll Tax Amounts Payable by AMc Related to Employment Agreements," again devoid of any detail or analysis.[66] The Jackson Report's simple arithmetic of adding numbers merely reported by AMc is inadmissible as expert testimony and must be excluded.[67]

---

Emery submitted a bill for $39,037.78 for "Contract Dispute."  AMc then invoiced both bills to the NRA for a total of $81,810.84 with the description "Legal Fees."
[62] Ex. 27, AMcTx-00046147-00046167 [APPENDIXFUS0365-0386].
[63] Ex. 27, Invoice AMcTx-00046164-00046167 [APPENDIXFUS0365-0386].
[64] AMc SJ Brief at ¶ 43, fn. 92 (citing Jackson Report at Exhibits 1, 4, 4A [APP 158, 162-163]).
[65] Jackson Report at Exhibits 4 [APP 162].
[66] Jackson Report at Exhibits 4A [APP 163].
[67] Fed. R. Evid. 702; *Seghers*, 298 F. App'x at 326; *Lifepay Group, LLC*, 2020 WL 1259328 at *6; *Rx.com Inc.*, 426 F.Supp.2d at 554; *Ningbo Bonny Decorative Material Co., Ltd.*, 2020 WL 1333164 at *5.

6.     **Allegedly Untimely Invoices**

Defendants claim $39,077.00 in interest fees allegedly owed by the NRA in connection with supposed late payments on certain invoices.[68]  Defendants rely on Exhibit 7 of the Jackson Report which sets forth a list of purported invoices, the amounts due, the days or months late, the applicable interest rate and the amounts allegedly due in interest for each invoice.[69] As with the other conclusory assertions contained in the Jackson Report, this listing of amounts purportedly due as reported by AMc, and the simple arithmetic of adding such amounts, is not a proper expert opinion and must be excluded.[70]

E.     **Jackson's Testimony Should Be Excluded Under Rule 403**

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Here, based on Jackson's lack of qualifications and because his opinions are unreliable and conclusory, they are prejudicial and his opinions must not be excluded from this trial.

## IV. CONCLUSION

For all the reasons stated above, the NRA respectfully requests that the Court exclude the introduction of any expert report of Daniel L. Jackson and preclude him from testifying at trial.

---

[68] AMc SJ Brief at ¶ 44, fn. 94 (citing Jackson Report at Exhibit 7 [APP 168-169]).
[69] Jackson Report at Exhibit 7 [APP 168-169].
[70] Fed. R. Evid. 702; *Seghers*, 298 F. App'x at 326; *Lifepay Group, LLC*, 2020 WL 1259328 at *6; *Rx.com Inc.*, 426 F.Supp.2d at 554; *Ningbo Bonny Decorative Material Co., Ltd.*, 2020 WL 1333164 at *5.

Dated: February 25, 2022

Respectfully submitted,

**BREWER, ATTORNEYS & COUNSELORS**

By:
*/s/ Cecelia L. Fanelli*
Cecelia L. Fanelli
clf@brewerattorneys.com
Sarah B. Rogers
sbr@brewerattorneys.com
Philip J. Furia
pjf@brewerattorneys.com
**Brewer Attorneys and Counselors**
1717 Main Street, Suite 5900
Dallas, Texas 75201
**ATTORNEYS FOR PLAINTIFF AND
COUNTER-DEFENDANT NATIONAL RIFLE
ASSOCIATION OF AMERICA**

## CERTIFICATE OF CONFERENCE

On February 25, 2022, counsel for the NRA conferred with counsel for Defendants

regarding this Motion.

*/s/ David J. Partida*
David J. Partida

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically

served via the Court's electronic case filing system upon all counsel of record on this XX day of

February 2022.

*/s/ Cecelia L. Fanelli*

16

4859-1736-2961.3
2277-08