IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, <br><br> Plaintiff and Counter-Defendant <br><br> v. <br><br> ACKERMAN MCQUEEN, INC., <br><br> Defendant and Counter-Plaintiff, <br><br> and <br><br> MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § §  Civil Action No. 3:19-cv-02074-G |

PLAINTIFF THE NATIONAL RIFLE ASSOCIATION OF AMERICA'S
REPLY IN SUPPORT OF MOTION TO DISQUALIFY DORSEY & WHITNEY LLP OR,
IN THE ALTERNATIVE, FOR PROTECTION OF
<u>THE NRA'S CONFIDENTIAL INFORMATION</u>

BREWER, ATTORNEYS & COUNSELORS
Cecelia L. Fanelli
clf@brewerattorneys.com
Sarah B. Rogers
sbr@brewerattorneys.com
Philip J. Furia
pjf@brewerattorneys.com
**BREWER ATTORNEYS AND COUNSELORS**
1717 Main Street, Suite 5900
Dallas, Texas 75201

**ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ...................................................................................... 1

II. ARGUMENT ..................................................................................................................... 2

    A.    Dycio Had A Disqualifying Conflict. ..................................................................... 2

        1.    The record firmly establishes Dycio's attorney-client relationship with the NRA. ........................................................................................ 2

        2.    Dycio's representation of the NRA substantially related to Dycio's work for AMc. ............................................................................. 4

    B.    Dycio Transmitted His Conflict to Dorsey. ........................................................... 6

        1.    Dycio had "substantive conversations" and exchanged "confidential information". ........................................................................ 6

        2.    Defendants fail to rebut the presumption that Dycio shared the NRA's confidences. ......................................................................... 7

    C.    The NRA Did Not Waive Its Right to Redress Conflicts that Defendants and Dycio Concealed. ........................................................................................... 8

    D.    If Sanctions Are Awarded, They Should Be Awarded In Favor of the NRA. ...................................................................................................................... 9

III. PRAYER FOR RELIEF ................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*In re Am. Airlines, Inc.*,
  972 F.2d 605 (5th Cir. 1992) ...................................................................................................4

*Crostley v. Lamar Cty., Texas*,
  No. 5:10CV17, 2011 WL 13134887 (E.D. Tex. June 23, 2011) ...........................................1, 8

*Felix v. Balkin*,
  49 F. Supp. 2d 260 (S.D.N.Y. 1999) ........................................................................................3

*Hopper v. Frank*,
  16 F.3d 92 (5th Cir. 1994) ........................................................................................................2

**State Cases**

*In re Am. Home Prod. Corp.*,
  985 S.W.2d 68 (Tex. 1998) ...................................................................................................1, 7

*In re Goodman*,
  210 S.W.3d 805 (Tex. App. 2006) ............................................................................................4

*Rio Hondo Implement Co. v. Euresti*,
  903 S.W.2d 128 (Tex. App. 1995) ............................................................................................9

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................................8

**Other Authorities**

Restatement (Third) of the Law Governing Lawyers § 14 (2000) .............................................2, 3

I. **PRELIMINARY STATEMENT**

On January 6, 2022, the NRA learned for the first time that its side-switching former counsel—who told the NRA that he only provided fleeting assistance on "procedural matters" to AMc in prior lawsuit—actually had substantive case-strategy discussions with Dorsey on topics central to this case. The NRA sent multiple meet-confer letters (and filed a prior, pending motion)[1] seeking a document-by-document privilege log that could dispel the appearance of a disqualifying conflict. Defendants rebuffed those efforts, so the NRA, with guidance from an eminent ethics expert,[2] sought relief.[3]

Defendants' burden in response to the Motion is clear: "provid[e] probative and material evidence" that Dycio did not disclose the NRA's confidential information.[4] Instead, Defendants' Opposition[5] relies on cursory, evasive declarations from Dorsey lawyers who "***do not recall . . . believ[ing] or understand[ing]***" that Dycio was disclosing confidences obtained in a prior attorney-client relationship.[6] But Defendants' own cases emphasize[7] that this is not enough: if Dycio shared the NRA's confidential information, even with lawyers who were unaware of his misconduct, an incurable conflict exists. Tellingly, the Opposition is silent on the subject matter, volume, and frequency of Dorsey's communications with Dycio, even though such information could be

---

[1] *See* ECF No. 533, Objections to Categorical Log.
[2] Professor Eads has supplemented her earlier declaration in connection with this reply. *See* Declaration of Sarah B. Rogers, dated February 28, 2022 ("Rogers Decl."), Ex. 1, Supplemental Expert Declaration of Professor Linda Eads, dated February 28, 2022 [App. 003-09].
[3] *See* ECF No. 557, the NRA's Motion to Disqualify Dorsey & Whitney LLP or, in the Alternative, for Protection of Confidential Information (the "Motion").
[4] *See In re Am. Home Prod. Corp.*, 985 S.W.2d 68, 81 (Tex. 1998).
[5] The "Opposition" shall refer to Defendant' Response in Opposition to the NRA's Motion to Disqualify Dorsey & Whitney LLP Or, in the Alternative, for Protection of Confidential Information and Defendants' Motion for Sanctions (ECF No. 581).
[6] *See* Declaration of J. Brian Vanderwoude, ECF No. 583-7, Ex. D [App. 0019] (emphasis added); *see also* Declaration of Gina Betts, ECF No. 583-7, Ex. B [App. 0014] (same language); Declaration of Jay J. Madrid, ECF No. 583-7, Ex. C [App. 0016] ("I know of no instance in which I believed or understood.").
[7] *See* ECF No 581, Defendants' Response to the NRA's Motion to Disqualify, p. 13, *citing In re Am. Home Prod. Corp.*, 985 S.W.2d at 81.

1

divulged without compromising privilege.[8]  The NRA believes that there is a reason for this: the Categorical Log is correct, and Dycio's involvement in Defendants' litigation strategy was much deeper than previously admitted.

Unable to rebut the presumption that NRA confidences were shared, Defendants insist that Dycio never represented the NRA at all, or his representation had nothing to do with the instant case, or the NRA waited too long to raise the conflict that Defendants concealed. These arguments contradict detailed, sworn testimony from NRA executives, contemporaneous attorney invoices, and even Dycio's response to an auditor inquiry. Defendants' assertion that the NRA waived the substantive rights asserted in the Motion is particularly untenable given the timeline (distilled in Exhibit 2 hereto) of the NRA's diligence and Defendants' secrecy.[9]  In sum, in 2019, the NRA was told that Dycio's brief work for AMc concerned "procedural matters." In June 2021, the NRA was substantially all responsive documents had either been produced or logged. When both representations turned out to be false, the NRA swiftly asserted its rights.

As the Motion emphasizes, the Court may order alternative safeguards to firewall improperly-shared confidences. However, some form of relief is required. Moreover, if sanctions in the form of fees or costs are awarded, they should be awarded to the NRA.

## II.   ARGUMENT

**A.   Dycio Had A Disqualifying Conflict.**

### 1. The record firmly establishes Dycio's attorney-client relationship with the NRA.

An attorney-client relationship arises when (i) a person manifests consent to a lawyer the person's intent that the lawyer provide legal services, and (ii) the lawyer either manifests consent to

---

[8] For example, parties are routinely ordered to identify the "subject matter" of each of their privileged communications as part of the privilege-log process. *See, e.g.*, *Crostley v. Lamar Cty., Texas*, No. 5:10CV17, 2011 WL 13134887, at *6 (E.D. Tex. June 23, 2011).
[9] *See* Declaration of Sarah B. Rogers, dated February 28, 2022 ("Rogers Decl."), Ex. 2, Timeline of Defendants' Nondisclosures and the NRA's Efforts to Obtain Documents (the "Timeline") [App. 010-11].

2

provide them, or fails to manifest nonconsent under circumstances where the lawyer reasonably should know that the person relies on him to provide legal services.[10] In detailed testimony that the Opposition ignores, LaPierre identifies topics on which he, and other NRA executives,[11] sought legal advice from Dycio on behalf of the NRA. These include "the NRA's review of vendor relationships,"[12] a regulatory investigation where the NRA's oversight of AMc was a significant issue,[13] and the Audit Committee's efforts to "determine whether major vendors, such as AMc, were complying with their contracts."[14]

Importantly, the Dycio Firm **never told the NRA that it viewed its representation as limited to LaPierre individually**[15]—even though Dycio had clear notice that the NRA viewed the Dycio Firm as NRA outside counsel. For example, during the NRA's annual audit-letter process, Dycio responded that he had no loss contingencies to report—but never told the NRA or its auditors that he was not NRA counsel.[16] Therefore, even if there had not been an explicit, mutual understanding that Dycio represented the NRA, an attorney-client relationship would have arisen based on Dycio's "consent or failure to object."[17] Finally, even if Dycio merely represented the NRA's chief

---

[10] Restatement (Third) of the Law Governing Lawyers § 14 (2000). The Restatement is authoritative in the Fifth Circuit. *See, e.g.*, *Hopper v. Frank*, 16 F.3d 92, 95 (5th Cir. 1994) (finding attorney-client relationship with entity, not individual executives, and citing Restatement).

[11] *See* ECF No. 567-1, Ex. 12, LaPierre Decl. [App. 689–694]. The NRA's General Counsel testifies similarly that Dycio represented the Association. *See* ECF No. 567-1, Ex. 9, at Ex. H, Declaration of John Frazer, dated March 13, 2020, p. 2 [App. 362].

[12] *Id*. ¶¶ 6-7.

[13] *Id*. ¶ 7.

[14] *Id*. ¶ 10. Dycio was invited to attend this closed meeting in his capacity as NRA counsel, along with other named NRA counsel. *See* ECF No. 567-1, Ex. 9, at Ex. H, Declaration of John Frazer, dated March 13, 2020, p. 2 [App. 362].

[15] Rogers Decl., Ex 3, Declaration of John Frazer ("Frazer Decl."), dated February 28, 2022, ¶ 2-3 [App. 013-14].

[16] *Id*. Nor did Dycio clarify his status at the September 2018 Board meeting where NRA counsel were invited to remain for a closed-door, privileged discussion of the NRA's handling of whistleblower complaints and its plan to examine records at AMc. *See* ECF No. 567-1, Ex. 9, at Ex. H, Declaration of John Frazer, dated March 13, 2020, p. 2–3 [App. 362–63].

[17] Restatement (Third) of the Law Governing Lawyers § 14 (2000), cmt. e.

executive, until April 22, 2019,[18] and not the NRA, with respect to the matters attested, LaPierre and the NRA had common interests concerning the NRA's oversight of its vendors and its response to related whistleblower concerns—giving rise to an identical conflict.[19]

### 2. Dycio's representation of the NRA substantially related to Dycio's work for AMc.

Two matters are "substantially related" for conflicts purposes if "a genuine threat exists that a lawyer may divulge in one matter confidential information obtained in the other because the facts and issues involved are [] similar."[20] Even if a lawyer's prior representation had a different "focus" than his subsequent, conflicting one, the Fifth Circuit has found that the matters are "substantially related" if overlapping issues were "also raised."[21] The Opposition ignores evidence of legal services rendered by Dycio on topics central to this lawsuit, focusing almost entirely on the Lockton litigation and the NRA's September 2018 board meeting.[22] AMc's artificial narrowing of the topics at issue is unavailing. In fact, Dycio represented the NRA in communications with AMc about the NRA's record-examination efforts[23] and participated in privileged, strategic meetings about "whether major vendors, such as AMc, were complying with their contracts."[24] Dycio not only knew which records the NRA sought to examine, but knew the import of those records to the NRA's

---

[18] *See* Rogers Decl. Ex. 4, Affidavit of Mark Dycio, dated March 5, 2020, at ¶ 22 [App. 019]. Indeed, Dycio's admission of his representation of Wayne LaPierre until April 22, 2019 is striking. Dycio concedes at a minimum that he concurrently represented AMc and the Executive Vice President of the NRA in matter where their interests were clearly adverse.

[19] *See, e.g.*, *Felix v. Balkin*, 49 F. Supp. 2d 260, 270 (S.D.N.Y. 1999) (disqualifying counsel because "[counsel] could [] reasonably believe that its representation of [the employer] could extend to the representation of [employee]" due to the common interest of the employer and employee).

[20] *In re Goodman*, 210 S.W.3d 805, 812 (Tex. App. 2006) (internal citations and quotation marks omitted).

[21] *See, e.g.*, *In re Am. Airlines, Inc.*, 972 F.2d 605, 621 (5th Cir. 1992) ("Northwest argues that the Texas cases are not substantially related to this case because the allegations in these cases, unlike in California, pertained only to CRS services, not air transportation services. We disagree. While the focus was certainly CRS systems, the plaintiffs also raised claims involving air transportation markets.").

[22] *See* ECF No. 581 at 14-16.

[23] ECF No. 567-1, Ex. 12, LaPierre Decl., ¶ 12 [App. 692–93].

[24] *Id*. at ¶ 10 [App. 593]. Dycio was invited to attend this closed meeting in his capacity as NRA counsel, along with other named NRA counsel. *See* ECF No. 567-1, Ex. 9, at Ex. H, Declaration of John Frazer, dated March 13, 2020, p. 2 [App. 362].

4

regulatory concerns in New York (on which Dycio also advised).[25] Thus Defendants, drawing on Dycio's confidences, were perfectly positioned to prejudice the NRA by wielding its own executive-expense inquiries against it in the pivotal April 22, 2019 Winkler letters which Dycio presumably helped to draft.[26] On its face, the Categorical Log admits that Dycio provided case-strategy advice and prepared written work product on topics central to this lawsuit.[27] These topics include the same "NRA[] audits of AMc" about which Dycio advised,[28] and the same "[o]ut of pocket expenses" that the NRA sought to examine in response to whistleblower concerns.[29] Further, the January 6, 2021 log entries disclose for the first time that Oliver North was the subject of communications involving Dycio and Defendants. North's contractual relationship with AMc figured prominently in the Audit Committee's compliance efforts; and, his obstructionist behavior with respect to the NRA's attempted book and records examination fomented the "extortion/coup" litigation. The record demonstrates Defendants' concealment with respect to North. On October 22, 2021, seven days before the close of discovery, Defendants disclosed for the first time that they were withholding as allegedly privileged ***241 communications*** concerning North.[30] Then on January 6, 2022, Defendants revealed for the first time that they were withholding ***additional distinct "categories" of documents concerning North***.[31] As these facts establish, any "delay" concerning this motion was created solely by AMc's studied withholding of information. By October 22, 2021, AMc and its counsel obviously knew that matters with respect to North, who they tout as a central witness, were essential to be logged. Yet, they stalled another three months before revealing additional materials relating to North

---

[25] ECF No. 567-1, Ex. 12, LaPierre Decl., ¶¶ 6–7 [App. 690–91].
[26] The Categorical Log asserts that Dycio prepared written work product on issues including the April 22 Winkler letters. *See* ECF No. 487-2, AMc's Supplemental Categorical Log ("Categorical Log"), at Categories 11, 12, 13, 14.
[27] *See id.*
[28] *See* ECF No. 567-1, Ex. 12, LaPierre Decl., ¶ 5 [App. 690].
[29] *See* ECF No. 487-2, Categorical Log, at Categories 11–14.
[30] *See, e.g.,* ECF No. 571, Pl. Mot. In Limine No. 3 at p. 5-6, *see also id.* at FN 14.
[31] *Id.*

that encompass communications that egregiously also involve the NRA's side-switching lawyer.

Defendants' make-weight argument that Dycio only represented AMc in the previous Virginia lawsuit, not this one, is frivolous.[32] The cases are so similar that the Virginia litigation was stayed pending adjudication of this case,[33] and the affirmative-claim allegations crafted with Dycio's help[34] in the Virginia litigation are substantially reproduced here.[35]

B. **Dycio Transmitted His Conflict to Dorsey.**

Defendants concede that the NRA need only show "substantive conversations," and/or an exchange of "confidential information," among Dycio and Dorsey in order to raise the presumption that Dycio's conflict transmitted to Dorsey.[36] The NRA shows both, and Defendants' opposing proof is more notable for what it omits than the (scant) declarations proffered.

1. **Dycio had "substantive conversations" and exchanged "confidential information"**

The Categorical Log indicates that Dycio engaged in "[c]onfidential communications" for purposes of "legal advice and case strategies after the commencement of litigation," and moreover that Dycio "prepared" emails, attachments, and other written work product, regarding issues including the Services Agreement, the April 22 Winkler letters, billing and invoicing, out-of-pocket expenses, travel-security arrangements, and the NRA's record-examination efforts.[37] In doing so,

---

[32] *See* ECF No. 581, Defendants' Response to NRA's Motion to Disqualify, p. 6–10.
[33] *See* Case No. 2019-17571 (Fairfax Cir. Ct.).
[34] *See* ECF No. 487-2, Categorical Log, at Category 14 (withholding work product "prepared by counsel [Dycio]" regarding "AMc's affirmative claims.").
[35] *See* Rogers Decl., Ex. 5, AMc's Answer, Plea in Bar, and Counterclaim, Case No. CL19001757, p. 35– 43 [App. 055- 63]; *compare* ECF No. 241, AMc's Second Amended Counterclaim Against the NRA, p. 66–73 (setting forth AMC's counterclaim for breach of contract for the same allegations set forth in the Virginia action).
[36] *See* ECF No. 581, AMC's Response, at 13-14, *citing Am. Home Prods*.
[37] *See* Categorical Log Category No. 14. Notably, although Categories 11-14 assert privilege and work product on an identical list of substantive topics, and contain identical language identifying confidential case-strategy communications and "[e]mails and attachments . . . [and other] documents prepared by counsel," Category 14 identifies Dycio as the sole counsel involved in such communications—not Dorsey or any other firm. Thus, if the assertions in Category 14 are true, it was Dycio—not other counsel—who prepared at least some of the written work product constituting or relating to the April 22 Winkler letters, AMc's affirmative claims, and other items listed. This also suggests that Dycio did not play a mere ancillary, supporting local-counsel role; instead, he liaised directly with AMc's executive control group (Category 14) while simultaneously communicating on the same topics with Dorsey and other lawyers (Categories 11-13).

Dycio liaised directly with AMc's executive control group, communicating simultaneously with Dorsey and other counsel.[38] Before filing the Motion, the NRA went out of its way to obtain additional context and clarity about these privilege-log entries[39] Defendants refused to provide any further information.[40]

Now facing a disqualification motion, Defendants assert (unsworn) in their brief that Dycio was only "a recipient of emails."[41] If this were true, Defendants could have attested to it in their declarations (which are substantially silent on the subject matter and depth of Dycio's involvement), or proved it by providing the document-by-document privilege log that the NRA repeatedly requested. Defendants have done neither. The most straightforward inference is that the assertions in the Categorical Log are truthful: Dycio had substantive "case strateg[y]"[42] conversations, and exchanged confidential information embodied in a flurry of calls, emails,[43] and written work product, with both AMc leadership and Dorsey.

### 2. Defendants fail to rebut the presumption that Dycio shared the NRA's confidences.

Burdened to "provid[e] probative and material evidence" that Dycio did not disclose the NRA's confidential information,[44] Defendants offer cursory declarations from three Dorsey partners who communicated with Dycio. These declarations do not deny the occurrence of "substantive conversations" with Dycio or the receipt of "confidential information" from Dycio. Instead, the Dorsey lawyers each attest that they do not ***know*** of an instance in which Dycio disclosed

---

[38] *Id.*
[39] *See* ECF No. 537, Ex. 6, Letter from P. Furia to B. Mason, dated January 13, 2022 [App. 0097-101].
[40] *Id.*
[41] ECF No. 581, Defendants' Response to the NRA's Motion to Disqualify, p. 14.
[42] *See* ECF No. 487-2, Categorical Log, at Categories 11-14.
[43] *See* ECF No. 567-1, Ex. 10, Dep. Tr. of Danielle Quinn, dated Jan. 27, 2022, at 225:16-226:2 [App. 599].
[44] *See In re Am. Home Prod. Corp.*, 985 S.W.2d 68, 81 (Tex. 1998) ("The party resisting disqualification of co-counsel may rebut the[s] presumption [of a disqualifying conflict] by providing probative and material evidence that the tainted person, in this case Herrera, did not disclose confidential information of his adversary.").

7

confidences learned during a prior representation,[45] and do not recall "believ[ing] or understand[ing]" that such confidences were being shared.[46] But this is not enough: The Opposition and supporting declarations do not provide a description of the subject matter of the communication to which Dycio and his colleague were involved. Having failed to do so, they fail to rebut the presumption of shared confidences.[47] Instead, Defendants evaded and resisted providing a privilege log for two years until ordered by this Court,[48] and ***still*** refuse to provide a document-by-document log of the communications that are the subject of this Motion.[49] Defendants cannot continue to conceal such information and rebut the inference of an imputed conflict here.

### C. The NRA Did Not Waive Its Right to Redress Conflicts that Defendants and Dycio Concealed.

The NRA first raised this conflict immediately after Dycio purported to send a document-preservation notice on AMc's behalf.[50] Out of an abundance of caution, it inquired about communications between Dorsey and Dycio in May 2019,[51] and was reassured—falsely—that Dycio only provided "assist[ance] with Virginia procedural matters."[52] If Defendants had complied with their Rule 26 disclosure or discovery obligations, the NRA would have learned of the existence of the Dycio communications during 2020.[53] Defendants did not. ***In fact, Defendants told the NRA***

---

[45] See ECF No. 583-6, Ex. C, Declaration of Jay Madrid, dated February 25, 2022, at ¶ 5 [App. 0016]; Ex. B, Declaration of Gina Betts, dated February 25, 2022, at ¶ 4 [App. 0014]; Ex. D, Declaration of J. Brain Vanderwoude, dated February 25, 2022, at ¶ 5 [App. 019].

[46] See ECF No. 583-6, Ex. C, Declaration of Jay Madrid, dated February 25, 2022, at ¶ 5 [App. 0016]; Ex. B, Declaration of Gina Betts, dated February 25, 2022, at ¶ 4 [App. 0014] ; Ex. D, Declaration of J. Brain Vanderwoude, dated February 25, 2022, at ¶. 5 [App. 019].

[47] See, e.g., Crostley v. Lamar Cty., Texas, No. 5:10CV17, 2011 WL 13134887, at *6 (E.D. Tex. June 23, 2011) ("The privilege log shall set forth the dates, authors, and subject matters of all documents being withheld and shall indicate those individuals with whom all such documents have been shared.").

[48] See ECF No. 453, Ex. B, Transcript, dated Dec. 15, 2021 (the "Transcript"), at 53:18-54:2 [App. 056-59].

[49] ECF No. 534, Ex. 8, Letter from B. Mason to P. Furia, dated January 21, 2022 [App. 0108–111].

[50] ECF 535, Ex. 3. Letters from M. Dycio regarding Document Preservation, dated April 16-17, 2019 [App. 0015–26].

[51] ECF No. 567-1, Ex. 9, at Ex. G, Letter from W. LaPierre to M. Dycio, dated May 8, 2019 [App. 355].

[52] ECF No. 567-1, Ex. 9, at Ex. Q, Letter from D. Quinn to W. LaPierre, dated May 21, 2019 [App. 536].

[53] See ECF No. 557 at 16. (NRA served discovery request to which the documents in Categories 11-14 of the Categorical Log are responsive in February 2020); ECF 409 at Ex. A-3, AMc Privilege Log (Dec. 9, 2020) [APP11-49] (omitting any mention of Dycio).

*in June 2021 that its discovery response was substantially complete: no additional responsive documents were lurking undisclosed*.[54] After the NRA concluded that Defendants' assurance appeared false, it grappled with three successive amended privilege logs that *still* omitted the Dycio communications now known to exist. The NRA then filed its motion to compel.[55]

In January 2022, the Categorical Log revealed that Dycio provided substantive representation on topics germane to his prior work for the NRA (not mere "procedural matters").[56] The NRA sent multiple meet-confer letters, and filed an already-pending motion, seeking clarity on the Dorsey-Dycio communications.[57] After Defendants ignored the NRA's final letter emphasizing the "appearance of an incurable, disqualifying conflict of interest,"[58] the NRA filed the Motion. Under such circumstances, Defendants' accusations of a tactical delay are meritless, and no grounds for waiver exists.[59] Indeed, the real victim of delay here is the NRA: if Defendants had furnished a compliant privilege log in 2020 instead of hiding documents, misrepresenting the completeness of their discovery response, and stonewalling the NRA's efforts to resolve its meritorious privilege-log concerns throughout the Fall of 2021 before finally acceding to a categorical log in response to a motion to compel, these issues could have been resolved sooner. Instead, the NRA faces imminent trial with responsive documents from Defendants still outstanding, and freshly-surfaced conflict concerns unresolved.

**D.    If Sanctions Are Awarded, They Should Be Awarded In Favor of the NRA.**

Defendants' accusation of "bad faith" and their demand for sanctions based on the allegation

---

[54] *See* Rogers Decl., Ex. 6, Letter from B. Mason to P. Furia, dated June 16, 2021 [App. 084-87].
[55] ECF No. 397, NRA's Memorandum of Law in Support of its Motion to Compel Certain Documents Withheld Under Deficient Claims of Privilege.
[56] ECF No. 567, Ex. Q [App. 536].
[57] *See, e.g.*, ECF No. 567-1, Ex. N [App. 528].
[58] ECF No. 567-1, Ex. 13, Letter from Sarah B. Rogers to Brian E. Mason, dated February 18, 2022 [App. 695-697].
[59] *See, e.g.*, *Rio Hondo Implement Co. v. Euresti*, 903 S.W.2d 128, 131 (Tex. App. 1995) (rejecting waiver, where party seeking disqualification spent two preceding months exchanging telephone calls and letters in an effort to resolve the conflict).

9

that the Motion diverted their trial-preparation efforts is beneath serious consideration.[60] The record in this case establishes Defendants' two pronged strategy of withholding documents and not logging them.[61] Defendants' complaint that they had to respond to this motion last week, is due solely to their delay in producing the log until January 2022. Defendants should not be heard to complain about this motion, which the NRA was forced to file in reaction to Defendants' plan to conceal the extensive involvement of NRA's counsel with them. The prejudice to the NRA has been profound, prejudicing both the discovery program and the NRA's trial preparation. Rather than preparing for trial, the NRA was forced to file motions, including this one, to obtain documents and logs of materials that were withheld because of the unprecedented malfeasance of Defendants and their counsel. The NRA has confronted months of delay, tactical document dumps,[62] and successive contrived amended privilege logs that became a high stakes game of hide and seek.[63] If the Court is inclined to impose sanctions, it should find that AMc and their counsel acted in bad faith, and should award the NRA fees and costs.

### III.  PRAYER FOR RELIEF

For all the reasons stated above, the NRA respectfully requests that the Court deny Defendants' motion for sanctions, grant the Motion and the relief sought therein, and award the NRA its attorneys' fees and costs incurred bringing the Motion. The NRA also requests that the Court deny AMc's "request for a ruling" concerning the NRA's Objections to the Categorical Log (which are not fully briefed), which request is an eleventh hour attempt by AMc to escape accountability with respect to its withholding and opaque, inadequate logging of documents.

---

[60] *See* ECF No. 581, Defendants' Response to the NRA's Motion to Disqualify, p. 27-28.
[61] *See* ECF Nos. 342; 346; 365; 366; 376; 377; 379; 380; 384; 385; 387; 388; 389; 390; 393; 394 (Status Reports).
[62] *See* ECF No. 557, the Motion, p. 10–13.
[63] *See* ECF 398 at Ex. F, AMc's First Am. Privilege Log; ECF 398 at Ex. A, AMc's Second Am. Privilege Log; *see also* ECF No. 554, Defendants' Response in Opposition to the NRA's Objections to Defendants' Supplemental Categorical Privilege Log, p. 2.

Dated: February 28, 2022                    Respectfully submitted,

                                                  By:    */s/ Sarah B. Rogers*
                                                         Cecelia L. Fanelli
                                                         *Pro Hac Vice*
                                                         clf@brewerattorneys.com
                                                         Sarah B. Rogers
                                                         New York Bar No. 4755252
                                                         sbr@brewerattorneys.com
                                                         Philip J. Furia
                                                         *Pro Hac Vice*
                                                         pjf@brewerattorneys.com
                                                         **BREWER ATTORNEYS AND COUNSELORS**
                                                         1717 Main Street, Suite 5900
                                                         Dallas, Texas 75201

                                                         **ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT NATIONAL RIFLE ASSOCIATION OF AMERICA**

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 28th day of February 2022.

                                                          */s/ Sarah B. Rogers*
                                                          Sarah B. Rogers